# EXHIBIT D

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3
      IN RE:                        )  MDL 2455
 4                                  )
      STERICYCLE, INC., STERISAFE   )  Case No. 13 C 5795
 5    CONTRACT LITIGATION           )
                                    )  Chicago, Illinois
 6                                  )  October 26, 2017
                                    )  9:11 a.m.
 7                                  )
                                    )
 8                                  )

 9                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE MILTON I. SHADUR
10
      APPEARANCES:
11
      For Class Plaintiffs: MR. STEVEN W. BERMAN
12                          MR. GARTH WOJTANOWICZ
                            Hagens Berman Sobol Shapiro, LLP
13                          1918 8th Avenue
                            Suite 3300
14                          Seattle, WA  98101
                            (206) 623-7292
15                          E-mail:  Steve@hbsslaw.com

16                          MS. ELIZABETH A. FEGAN
                            (Via speakerphone)
17                          Hagens Berman Sobol Shapiro, LLP
                            455 N. Cityfront Plaza Drive
18                          NBC Tower - Suite 2410
                            Chicago, IL  60611
19                          (708) 628-4960
                            E-mail:  Beth@hbsslaw.com
20

21    Court Reporter:

22              KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                       Official Court Reporter
23                    United States District Court
            219 South Dearborn Street, Suite 2524-A
24                    Chicago, Illinois  60604
                    Telephone:  (312) 435-5569
25                     www.KathyFennell.com
```

1   APPEARANCES:   (Continued)

2   For Alabama plaintiffs,
    Internal Medicine
3   Associates and
    Surgical Specialists: MR. BENJAMIN B. COULTER
4                         (Via speakerphone)
                          Burr & Forman LLP
5                         420 North 20th Street
                          Suite 3400
6                         Birmingham, AL  35203
                          (205) 251-3000
7                         E-mail:  Benjamin.Coulter@burr.com

8   For the Mississippi
    Plaintiffs:           MR. SAMUEL D. GREGORY
9                         (Via speakerphone)
                          Baker Donelson Bearman Caldwell &
10                        Berkowitz
                          P.O. Box 14167
11                        Jackson, MS  39236-4167
                          (601) 969-4656
12                        E-mail:  Sdgregory@bakerdonelson.com

13  For the Defendants:   MR. MARK S. MESTER
                          MS. KATHLEEN P. LALLY
14                        Latham & Watkins LLP
                          330 N. Wabash Avenue
15                        Suite 2800
                          Chicago, IL  60611
16                        (312) 876-7700
                          E-mail:  Mark.mester@lw.com
17                                 Kathleen.lally@lw.com

18

19

20

21

22

23

24

25

1    (Proceedings heard in open court:)

2         THE COURT:  Okay.

3         THE CLERK:  13 C 5795, In the Matter of Stericycle,

4    Inc.

09:11:12    5         THE COURT:  You also ought to add the MDL number.

6         THE CLERK:  Oh, I don't have it.

7         THE COURT:  2455.

8         THE CLERK:  Okay, MDL 2455.

9         THE COURT:  Counsel here in court, and then there are

09:11:25   10    counsel I think that are out on speakerphone.  So let's hear

11    from counsel here in court in the first instance.

12         MR. BERMAN:  Good morning, your Honor.  Steve Berman

13    and Garth Wojtanowicz, my partner, on behalf of the class.

14         THE COURT:  Good morning.

09:11:39   15         MR. MESTER:  Mark Mester and Kate Lally on behalf of

16    Stericycle.

17         THE COURT:  Good morning.

18         Now, counsel out on Telephoneland, if you'd please

19    first identify yourselves and whom you're representing, and

09:11:52   20    then whenever you have occasion to speak again, please give

21    your name up front so that the courtroom can get on the record

22    whom is saying what.

23         So let's have the appearances first.

24         MS. FEGAN:  Good morning, your Honor.  Elizabeth

09:12:15   25    Fegan from Hagens Berman for plaintiff.

1          THE COURT:  I'm sorry?

2          MS. FEGAN:  Elizabeth Fegan on behalf of plaintiffs.

3          THE COURT:  Okay.  So you're just an adjunct also to

4    counsel who are in court on behalf of the plaintiff --

09:12:30    5          MS. FEGAN:  Correct.

6          THE COURT:  -- right?

7          MS. FEGAN:  That's correct, your Honor.

8          THE COURT:  Okay.  Next?

9          MR. COULTER:  Good morning, your Honor.  Ben Coulter

09:12:40   10    from Burr Forman for Alabama plaintiffs --

11          THE COURT:  Yes.

12          MR. COULTER:  -- Internal Medicine Associates and

13    Surgical Specialists.

14          THE COURT:  Anybody?

09:12:55   15          MR. GREGORY:  Hi, yes, your Honor.  This is Samuel

16    Gregory.  I'm with the law firm Baker Donelson, and we

17    represent the Mississippi plaintiffs in one of the tag-along

18    actions.

19          THE COURT:  You haven't filed anything.  I gather you

09:13:07   20    want to make sure that you know what's happened, right?  Or

21    have you filed something?

22          MR. GREGORY:  Correct, your Honor.

23          THE COURT:  Okay, thank you.

24          MR. GREGORY:  We had filed --

09:13:20   25          THE COURT:  I'm not asking you to file.  I'm asking

1    if you had filed.  Is the answer no?

2         MR. BERMAN:  To my knowledge, we have not seen

3    anything.

4         THE COURT:  Okay.

09:13:29    5         All right, now, everybody can be seated because, as

6    you know, this is my first day back after a big lapse, and I'm

7    delighted to say that you're the last leaf on the tree,

8    although I'm not delighted to be retiring at the end of this

9    thing, but I have a number of things that I want to cover

09:13:49    10   upfront, and then we'll talk about where we are both in terms

11   of the preliminary approval order and also what -- a

12   memorandum opinion and order that I have signed and am

13   issuing.  And I have -- Carol has copies for each of you who's

14   in court of the memorandum opinion and order.

09:14:17    15        THE CLERK:  Right.

16        (Tendered.)

17        THE COURT:  Now, this is a document you haven't seen,

18   but you're going to get a chance to see it obviously.  There's

19   no reason that anybody has to be standing around shifting from

09:14:28    20   foot to foot.  Shifting from foot to foot is somewhat

21   difficult for me anyway these days, but for you out of mercy,

22   if nothing else, I'll let you sit down because I also have a

23   couple of oral remarks at the beginning, which are not going

24   to be of record but give you something in the way of

09:14:50    25   background as to why we are here and where we're here in terms

1    of the memorandum opinion and order, as well as looking at the
2    preliminary approval order.

3         So you can all be seated.

4         MR. MESTER:  Thank you.

5         THE COURT:  You'll get an opportunity to talk
6    afterwards, of course.

7         As I say, this is not really a matter of record what
8    I'm going to be dealing with orally, but it is really
9    background explanation of why we are here and what we're going
10   to be doing here.  So I'd appreciate it if you'd just listen
11   to this one as an oral statement.

12        As you know, this is the date that was previously set
13   for either the approval or non-approval of the proposed
14   settlement agreement, which has been supported by very
15   extensive documentation.  But before I turn to that task, I do
16   want to make this preliminary oral statement about the
17   document, the accessory memorandum opinion and order that you
18   haven't previously seen but are going to be receiving this
19   morning.  And you're going to get time to do that, so you
20   don't have to try to start reading it now.

21        Class actions under the Federal Rules of Procedure
22   and the statute setting the operative standards for
23   considering them by the judiciary have, as all of you know,
24   always been a source of controversy.  That hasn't been limited
25   to consumer class actions, but they extend as well to any

1  situations in which it is, for one reason or another, usually

2  for multiple reasons, unrealistic to expect that individual

3  claims are going to be pursued against defendants who have far

4  more resources to fight the litigation.

09:16:52   5  Sometimes the views of people who are hostile to

6  class actions as such are bolstered by the conduct of class

7  counsel who regrettably view such actions as a sort of

8  warrior-oriented rather than class-member-oriented vehicle.

9  The best -- well, that's not true.  More accurately, the worst

09:17:16  10  example of that mindset in this circuit, as you probably know,

11  came just two months ago, August 25th, almost two months to

12  the day, in the Subway Footlong Sandwich Litigation in which

13  our Court of Appeals, quite justifiably, threw out a

14  settlement that had set a cap of a little more than a half

09:17:38  15  million, 525,000, on the fees of class counsel.  And I just

16  picked two pungent paragraphs from that one to tell you why

17  they said it.

18  They said, "First, the injunctive relief approved by

19  the district judge is utterly worthless.  The settlement

09:17:57  20  enriches only class counsel and, to a lesser degree, the class

21  representative.  Because the settlement yields fees for class

22  counsel and zero benefits for the class, the class should not

23  have been certified.  The settlement should not have been

24  approved.  Because these consolidated class actions seek only

09:18:18  25  worthless benefits for the class, they should have been denied

1    out of hand."

2         Now, that highlights really and puts in stark relief

3    the appearance and importance of a fairly balanced statement,

4    an ideal that has, I find, been met most admirably here.

09:18:43    5         One of the components of the parties' submission as

6    you know is the preliminary approval order that has been

7    tendered by Hagens Berman, whose total presentation has

8    been -- has more than validated, as I think of it, any initial

9    designation of them as interim class counsel, lead counsel,

09:19:01    10   and then my appointment of them this last February as class

11   counsel.

12        There's some irony in that, and that is, the better

13   that a preliminary approval order prescribes a very carefully

14   crafted procedure that looks toward a fair, reasonable and

09:19:22    15   adequate outcome, while it also anticipates and provides

16   procedures to foster that end, some objector might be tempted

17   to say, oh, that's just boilerplate.  Not so.  That possible

18   reaction could not really be farther from the truth.

19        For that reason, I have separately prepared this

09:19:43    20   memorandum opinion and order that, as I say, you haven't seen,

21   but you're going to be given an opportunity to read over and

22   respond.  We'll take a break for that purpose.

23        That's one that has dealt with each section in the

24   proposed settlement agreement.  It's replete with adjectives

09:20:02    25   that I very seldom use in my opinions dealing with submissions

1    by counsel.  After all, when you do that, overuse cheapens the

2    currency, as I think of it.  But in this instance, every

3    characterization of the settlement agreement that you'll find

4    in my opinion and of the Hagens Berman handling by using such

09:20:24    5    terms as "comprehensive," "professionalism of the highest

6    order," "impeccable," "high quality work product," "a model,"

7    and "well-drafted class actions treatment of the highest

8    order" is entirely merited, as I think of it.

9            So what I've done is to produce a written opinion

09:20:45    10    that does talk about every section of the settlement agreement

11    so that you'll see that what we're dealing with is not just

12    boilerplate.  It is not just language.  It is really, as I

13    have thought of it, an in-depth analysis of the document,

14    section by section, commenting on its use, and also of things

09:21:11    15    that you might perhaps think of as surplusage.  Not at all.

16    Not at all.  In every instance, the thing that's done there in

17    each of these sections provides the ample opportunity for

18    objection and for comment and provides a timetable for that

19    purpose.

09:21:37    20            So, one copy, as I say, has been prepared for each of

21    you of this memorandum opinion and order, and we're going to

22    take a break later on to give you the opportunity to read it.

23    And because it's supplemental to and it does not alter the

24    materials that you've already seen, I would expect, I hope, I

09:22:00    25    may be wrong, but I hope a minimal need for comment on it.

1         Now, having said that, I should say something to the

2    Alabama plaintiffs in that regard, which you'll see covered in

3    the opinion, and that is, I'm not sure whether this

4    represents, and I don't mean to be inordinate in criticizing

09:22:21    5    because I don't intend it that way, I suspect that this may

6    represent some possible lack of experience or perhaps some

7    absence of a full understanding of a preliminary approval

8    order of the type that's been tendered here, and of objections

9    to them, because you get an ample opportunity, if you look at

09:22:48    10    the timetable that was set up as an adjunct to the preliminary

11    approval order, to see that at every step of the way, there's

12    an opportunity to voice objections.

13         Now, why do I say it doesn't make sense to do, for

14    example, what the Alabama plaintiffs have done?  And I'm not

09:23:07    15    saying this critically because they certainly are entitled to

16    objections, and as a matter of fact, as you'll see, I am

17    denying it quite without prejudice because they have multiple

18    opportunities to interpose objections, to decide to step out

19    if they so wish, and, if you think about it, to do it

09:23:27    20    piecemeal really makes no sense.  That is, to have one side or

21    one party and one of the constituents in the package of

22    plaintiffs that make up the MDL package and have them

23    interpose a particular objection doesn't make a lot of sense.

24    Why do that prematurely?  It's much better if Alabama

09:23:55    25    plaintiffs, and anyone else who wants to interpose objections,

1   can do that contemporaneously, which is what the sections of

2   the preliminary approval agreement call for, and the Court can

3   then have an opportunity to consider things in their totality,

4   which is always the way that a court ought to proceed.

09:24:16  5   So I wanted to explain up front that nothing said

6   here is critical of the Alabama plaintiffs because they're

7   going to have every opportunity to voice whatever objections

8   they may have, but it obviously makes much better sense to do

9   that in a group, to do that in terms of any objections they

09:24:38  10   may interpose, any objections either Mississippi parties who

11   are listening in, or anyone else in the -- there are some

12   20 cases, as you know, besides the MDL itself.  If you look as

13   those, they're listed as one of the exhibits here.  So I did

14   want to cover that up front.

09:25:01  15   There's a second thing that I wanted to cover up

16   front, and that is this:  As you know, I regrettably have been

17   disabled from further proceedings.  What happened is that I --

18   I went through my, carefully, my total calendar when I

19   suffered stenosis that required surgery and that initially

09:25:31  20   called me -- called on me to vacate any statuses and other

21   proceedings that were set for June, and then I had to go into

22   July, and then August unfortunately.

23   Nerves have their own timetable.  They tell you.

24   What is it?  Man proposes, God disposes.  And regenerating

09:25:52  25   those, which was the offshoot of the stenosis, caused me to,

1    by dint of due force, to decide.  I went through my calendar,

2    which fortunately, I don't know how fortunately, I worked at

3    it for 37 years, so I had mine down to 150-some cases.

4    Average calendar on our court per judge is something over 300.

09:26:22    5    And I went through them one by one, and I singled out those

6    that would be treated if a judge passes away or a judge leaves

7    the court personally, and I arranged to have all of those

8    reassigned to my colleagues.

9        I got myself down to a reducible minimum of maybe a

09:26:42    10    dozen cases that I had kept.  In every instance, they were --

11    I had been told that the case had been settled, and it seemed

12    to make very little sense to think about farming them out to

13    one of my colleagues who didn't know anything about the case

14    when I'd been living with it from day one, so I withheld those

09:27:03    15    simply pending the completion of settlement.

16        By the end, after all this time -- well, regrettably,

17    August arrived and the departure of my two law clerks by their

18    tenure.  I had two incoming law clerks, and I had to call them

19    up and say, you know, I warned you to read the actuarial

09:27:31    20    tables before you signed on to me, and I can't keep a promise

21    that I'm not in a position to keep.  So I tried to make

22    arrangements for them to get other clerkships, but in the

23    meantime, I've been operating essentially without legal staff,

24    although I have two invaluable people still with me.

09:27:51    25    Rosemary, whom you saw come in, has gotten a well-deserved

1   promotion.  She's heading up our court reporter staff and
2   doing a wonderful job on it.

3           I have Carol Wing, here, as my courtroom deputy, and
4   Mary Ann Braasch, as my invaluable secretary.  So she's been
09:28:11
5   pursuing these questions about what are you doing with your
6   cases, you told me they're settled, settlements are
7   implemented, but I got myself down to about five that were
8   left.  And I said, wait a minute, we'll give them one last
9   notice and if not, I'm sending them out, and I did.

09:28:28
10          I had one other case that I had tried, a case against
11  the federal government, which in this instance because it was
12  against the Postal Service had been tried to a jury.  The
13  government isn't bound to have a jury trial unless it
14  consents.

09:28:47
15          They ruled for the plaintiff, a disability claimant,
16  and awarded some compensatory damages of a fair amount.  But
17  then the judge has the responsibility for equitable relief.
18  So I had set October 5th, as chance would have it, as the date
19  for responses to an opinion that I had issued that said here's
09:29:11
20  my calculation, which was very complicated, on equitable
21  relief.  They came in on time.  I ruled on it.  So that one
22  was gone, which left you, as I say, as the last leaf on the
23  limb.

24          And in a way, I'm happy to see you possibly go.  In
09:29:28
25  another way, I'm not happy to do it because that marks a

1   retirement that I had not looked forward to, but I wanted to
2   let you know about that.
3           Now, there is one important adjunct to that.  If you
4   look at the timetable, and I'm particularly talking about the
5   timetable for my ruling on final objections, it's very short.
6   For you people to be filing a document down here which then,
7   consistent with my procedure that I've had to set up with Mary
8   Ann, has been a relay system in which she e-mails something to
9   my daughter, who's a spectator here but who's a convenient
10  intermediary.  She delivers those to me.  I then have an
11  opportunity to take a look at them.  When it's something I had
12  dictated, we follow the same kind of relay system, but as you
13  can see, that cuts short the amount of time, and it's a
14  limited time, that I get for final ruling.
15          What I'm going to require the parties is that you
16  file the documents that were called for here, but you also
17  make delivery by FedEx or some means to my home because that's
18  where I'm operating.  And so let me give you that information
19  and make sure that that gets to me contemporaneously with
20  filing so that I have an ample opportunity to rule.
21          My residence address is ███████████████████
22  ████████████████████████████████████████████████
23  ██████████████████████ .  ██████████████████████
24  ████████████████████████████████████████████████
25  ██████████████████████████████████████████████ .

|       |                                                                              |
|-------|------------------------------------------------------------------------------|
| 1     | In any event, if you get that to me that way, you                            |
| 2     | see, you're not going to have to go through security.  It's                  |
| 3     | not going to have to get processed down here before it can                   |
| 4     | even get to me, and that way, I'll have the maximum amount of                 |
| 5     | available time to consider the objections.                                   |
| 6     | So I want to make sure that that's something that                            |
| 7     | gets done in terms of any objections, anything that I have to                 |
| 8     | deal with after analysis.  That's going to be my opportunity                 |
| 9     | for analysis.                                                                |
| 10    | Now, before I go on, is there anything else that you                         |
| 11    | can think of just as purely a preliminary?                                   |
| 12    | MR. BERMAN:  Yes, your Honor, may I approach?                                 |
| 13    | THE COURT:  Surely.  First you've got to tell your                           |
| 14    | name for the record and then again.                                          |
| 15    | MR. BERMAN:  Steve Berman again, your Honor.                                  |
| 16    | THE COURT:  Yes.                                                             |
| 17    | MR. BERMAN:  First of all, thank you for your remarks                         |
| 18    | about our work in the case, and I'm glad that we confirmed                    |
| 19    | your appointment in terms of our professionalism.                            |
| 20    | On the timing, we suggested a final approval date of                         |
| 21    | February 19th.                                                              |
| 22    | THE COURT:  Yes.                                                             |
| 23    | MR. BERMAN:  And there's -- it's a holiday, so we                             |
| 24    | made a mistake there.                                                        |
| 25    | THE COURT:  Oh, really.  That -- I knew there was                            |

09:31:53 (line 5)
09:32:09 (line 10)
09:32:23 (line 15)
09:32:33 (line 20)
09:32:43 (line 25)

something wrong, yeah.

     MR. BERMAN:  So we're suggesting either the 23rd or the 27th, and that would give you more time to consider those objections as well.

09:32:54

     THE COURT:  I knew that there was something suspicious about the 19th.  That's President's Day, right?

     MR. BERMAN:  Yes, correct.

     THE COURT:  That's what happened when we had presidents, and they decided to dishonor both of them by

09:33:12

making the 12th and the 22nd non-holidays in Congress's infinite wisdom.

     Let me take a look.  You're suggesting either what day?

     MR. BERMAN:  Either February 23rd or February 27th.

09:33:39

     THE COURT:  The 23rd's a Friday.  Yeah, let's say the 23rd.

     Now, let's take a look here at the preliminary approval order, which, as you see, I have -- well, you haven't seen it, but I have signed on to it physically, and I'm going

09:34:03

to change that to the 23rd, and I'm initialing opposite that line on Page 10.

     MR. BERMAN:  And it also appears on Page 9, your Honor.

     THE COURT:  Wait just a minute.  Page 12?

09:34:39

     MR. BERMAN:  Page 9.

1    THE COURT:  Wait just a minute.  Why do I have only
2  11 pages here?
3    MR. BERMAN:  That's what I have, 11 pages.
4    THE COURT:  Let me take a look at yours.
5    (Tendered.)
6    THE COURT:  Because Page 11 was your -- you've just
7  given me 11 pages.
8    MR. BERMAN:  Yes.
9    THE COURT:  So what's Page 12?
10   MR. BERMAN:  There is no Page 12 in anything we have.
11   THE COURT:  Nor mine.
12   MR. BERMAN:  Okay.
13   THE COURT:  So why do you refer to another page?
14   MR. BERMAN:  I referred to Page 9.
15   THE COURT:  Oh, wait just a minute.
16   Yes, yes, yes.  Thank you.  Let me initial that, too.
17  Here you go.
18   (Tendered.)
19   THE COURT:  Okay.  Is there anything else on the
20  preliminary approval order?
21   MR. BERMAN:  Not from the plaintiffs, your Honor.
22   THE COURT:  Okay.  What we're going to do is to take
23  a break now, give you enough time to read over the memorandum
24  opinion and order, which, as I say, you've not seen before.
25   You'll find that there's nothing new in that

09:35:27
09:35:35
09:36:23
09:36:36

1    document.  Quite the contrary.  What it reflects is the fact

2    that I, after due analysis, I have taken a look at each of

3    those things.  I have found that in each instance, you've

4    heard the adjectives that I've used because it is a thorough

09:36:55    5    job, and in each instance, I've simply confirmed that the

6    signing on to the preliminary approval order is not just a

7    matter of adding a signature at the point that the Court is

8    obligated to sign.

9        So let's take a break on that, and you'll tell me

09:37:15    10    when you're ready to resume, okay?

11            MR. BERMAN:  Thank you, your Honor.

12            THE COURT:  Thank you.  We're in recess.

13        (Recess taken.)

14            MR. COULTER:  Your Honor, this is Ben Coulter.

09:43:14    15            THE COURT:  Yes.

16            MR. COULTER:  I just want to make sure that you were

17    aware that we were still on the line.  I didn't want you to --

18            THE COURT:  I'm sorry --

19            MR. COULTER:  -- get the feeling that we were

20    eavesdropping.

21            THE COURT:  No, thank you.  You heard my comments

22    about what I thought was a much more sensible and desirable

23    procedure to consider objections because we're better off if

24    we get everybody's input, and they will need to deal with any

09:43:39    25    objections that may be interposed of any type rather than

1    duplicative.

2        So no offense was intended at all in connection with

3    the Alabama plaintiffs' effort.  Quite the contrary.  You have

4    the full rights that are set up under the two sections of the

09:44:00    5    preliminary approval agreement.

6        Okay.  Thank you.  But you're entitled to be off.

7    Now, when the counsel come back in, you ought to leave your

8    number with --

9        THE CLERK:  They call me.

09:44:14    10        THE COURT:  Oh, they'll call you?  All right.  So

11    Carol will take care of that with you.  Thank you.

12        THE CLERK:  I'll call Ms. Fegan and then --

13        MR. COULTER:  Okay.  I just want -- no offense taken

14    incidentally, but I also wanted to just make sure that -- I

09:44:31    15    didn't want you to not know we were here on the line and --

16        THE CLERK:  No, no.

17        MR. COULTER:  -- have a personal conversation or

18    something.  Okay.  Thank you very much.

19        THE CLERK:  I could call Ms. Fegan, or everybody can

09:44:45    20    stay on the line and hold, you know, it's up to you.

21        MR. COULTER:  All right.  I'm fine staying on the

22    line.  I just wanted to -- didn't want to listen in

23    inappropriately.  I'll just sit here at my desk and work on

24    something else while I wait.

09:45:03    25        THE CLERK:  Okay.

1    MR. COULTER:  Thank you.

2       (Recess taken.)

3          THE COURT:  Recall the case, please.

4          THE CLERK:  13 C 5795, In the Matter of Stericycle,

09:53:36  5  Inc., and MDL 2455.

6          THE COURT:  Counsel, you don't have to repeat your

7    appearances, of course.

8          You've had an opportunity now to look at the

9    memorandum opinion and order, which, as I have said, is -- it

09:53:51  10  might be regarded as collateral, but it plays an important

11    collateral position because it demonstrates, I think and I

12    believe, represents the Court's careful review and analysis of

13    each of the sections, comments on their appropriateness, and

14    really fleshes out, in a sense, the preliminary approval order

09:54:16  15  to show that it's really an order of the Court as -- I don't

16    mean to contrast it, as contrasted in that sense with the

17    submission that has been jointly made by the parties and that

18    reflected Set 1 in the ultimate process that look forward to

19    ultimate approval or non-approval.

09:54:40  20     So if any one of you has a comment or a question that

21    you want to raise about the opinion in that supplemental

22    position, I'd welcome that now.

23         MR. BERMAN:  Thank you, your Honor.  We have three

24    comments.

09:54:59  25        THE COURT:  Yes.

1         MR. BERMAN:  Okay.  And I have handwritten the

2 comments if you want to see them so you could follow along.

3         Do you want me to hand it up to Carol?

4         THE COURT:  No, that's okay.  Tell me where they are.

09:55:09   5         MR. BERMAN:  Sure.  The first is on Page 2,

6 Paragraph 6, where you wrote, "On March 12th, 2017, Hagens

7 Berman filed a motion," it actually should be "Stericycle

8 filed that motion."

9         THE COURT:  Oh, yes.  Of course.  That's my fault.

09:55:29  10         And what I'll do is I'll have, rather than doing it

11 with handwritten change, I'm going to have Mary Ann make that

12 change so that the document, which, as you know, was lacking a

13 manual signature, has my electronic signature, it will be in

14 the form that we're talking about here.  So let me make a note

09:55:58  15 of that.  You're absolutely right.

16         Now, it's interesting because if you'll look at that,

17 I did not continue that in through my actual conclusion --

18         MR. BERMAN:  Right, right.

19         THE COURT:  -- which accurately stated that

09:56:35  20 Stericycle had filed that motion.

21         MR. BERMAN:  Right.

22         THE COURT:  And as I indicate, it has essentially

23 been rendered moot rather than my saying withdraw it.  It was

24 superseded.

09:56:50  25         What's the second item?

1        MR. BERMAN:  The second item is on the next page,

2   Page 3.

3        THE COURT:  Yes.

4        MR. BERMAN:  In the 7th line down, your Honor, where

5   you wrote that you appointed Steve Berman as class

6   representative, and I think you meant to say class counsel.

7        THE COURT:  Yes, yes, yes.  That's -- matter of fact,

8   I hate to say this, but who was it who said, "Even Homer hath

9   been known to nod"?  In this instance, that was my wonderful

10  secretary, no, she's judicial assistant who did that one and I

11  didn't catch it.  But thank you.  I had dictated class counsel

12  and didn't catch it on the rewrite, but go ahead.

13       MR. MESTER:  Your Honor, the third one is -- starts

14  on Page 7 and continues on Page 8.  It's the item that you

15  referenced just earlier.

16       We would ask that with respect to the Stericycle

17  motion to reconsider that it be denied as moot without

18  prejudice.

19       THE COURT:  No, no.  There's no reason to deny it

20  without prejudice.

21       MR. MESTER:  Well, with due respect, your Honor, our

22  concern is this:  If this would all unravel --

23       THE COURT:  In its form as it was tendered, it's

24  moot.  That --

25       MR. MESTER:  Understood, your Honor.

09:56:59

09:57:39

09:57:57

09:58:23

09:58:36

1    THE COURT:  That's a given motion that is denied as

2  moot.  That doesn't tell you anything about the future.

3    MR. MESTER:  And I appreciate that, your Honor.  My

4  concern, though, is 23(f) and the time period that's allowed

5  under 23(f) for the taking of an interlocutory appeal from a

6  granting of class certification.

7    You've stayed the case, or will be staying the case,

8  assuming you grant preliminary approval.  The denial of the

9  motion without prejudice would at least give us some argument

10  were this whole --

11    THE COURT:  That's a legal consequence potentially,

12  and I don't think that it really obviates the appropriateness

13  of saying that motion is off the pad.  And to the extent that

14  you have any occasion for let's say renewing it, you're going

15  to have to provide support for renewal, which means it gets

16  looked at independently.

17    So you're not -- you're not prejudiced at all by a

18  flat-out denial.  I don't want to be in a position in which

19  somehow there's an unintended consequence.  When something has

20  been superseded by time, which is what happened here, it's

21  like I could have said withdrawal, but I didn't want to put

22  the onus on you for that purpose.  It seems to me that it's

23  perfectly appropriate to do it this way.

24    MR. MESTER:  Can we just then, your Honor, for

25  purposes of clarification --

1    THE COURT:  Absolutely, you may.

2    MR. MESTER:  -- have an indication on the record that

3    the time period has stopped so that we're not deemed to be out

4    of time in the event that the settlement were to unravel at

5    some point?

6    THE COURT:  That's quite true, and it not being *nunc*

7    *pro tunc*, it would be operative.  If you file a motion, I then

8    take that motion on its face.

9    MR. MESTER:  Thank you, your Honor.

10    THE COURT:  Okay.  So I'm going to make the two

11    changes involved here, and you can -- as a matter of fact, I'm

12    going to have Mary Ann do that now so that you can have a

13    fully executed one in its present form because it has my

14    electronic signature.

15    So, Beth, if you want to ask Mary Ann to come in,

16    please.

17    (Discussion held off the record.)

18    THE COURT:  Okay.  Thank you, counsel.

19    MR. BERMAN:  Thank you, your Honor.

20    MR. MESTER:  Thank you, your Honor.

21    THE COURT:  So if you'll wait, Mary Ann will bring

22    you replacement pages, and, Carol, that's for you as well.

23    THE CLERK:  Right.

24    (Pause.)

25    THE COURT:  Thank you, counsel.  I think that

10:00:14
10:00:25
10:00:44
10:01:31
10:04:49

1    concludes this morning's proceeding.  I very much appreciate

2    your coming in, and we'll look forward to the future status.

3          Thank you.

4          MR. MESTER:  Thank you, your Honor.

5          MR. BERMAN:  Thank you, your Honor.

6          THE CLERK:  Is the February 23rd hearing at 9:15

7    also?

8          THE COURT:  Yes, 9:15 on February 23rd.

9       (Which were all the proceedings heard.)

10                        CERTIFICATE

11      I certify that the foregoing is a correct transcript from

12   the record of proceedings in the above-entitled matter.

13   /s/Kathleen M. Fennell            October 30, 2017

14   _____        _____
     Kathleen M. Fennell                    Date
15   Official Court Reporter

16

17

18

19

20

21

22

23

24

25