UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MOEHRL, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No: 1:19-cv-01610 |
| v. | ) ) | Judge Andrea Wood |
| THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, RE/MAX HOLDINGS, INC. and KELLER WILLIAMS REALTY, INC. | ) ) ) ) ) ) | Magistrate Judge M. David Weisman |
| Defendants. | ) ) | |

**BRIEF IN SUPPORT OF THE MOTION OF THE
<u>NATIONAL ASSOCIATION OF REALTORS® TO DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

RELEVANT ALLEGATIONS AND NAR RULES .................................................................. 3

        A.    Moehrl ................................................................................................................ 3

        B.    The MLS System ............................................................................................... 4

        C.    Relevant NAR Policies That May Be Considered On A Motion To Dismiss ........................................................................................................ 4

STANDARD OF REVIEW ..................................................................................................... 6

ARGUMENT ............................................................................................................................ 7

    I.    THE COMPLAINT DOES NOT ALLEGE FACTS THAT, IF PROVEN, WOULD VIOLATE THE ANTITRUST LAWS. ................................................. 7

        A.    The Complaint's Central Theory Is Belied By The Plain Language Of The Challenged NAR Rules. ...................................................................... 7

        B.    The Complaint Should Be Dismissed Because Moehrl's Allegations That NAR Rules Harm Competition Are Economically Implausible And Fly In The Face Of Long-Established Precedent. ........ 11

            1.    Several Courts Have Found The Challenged NAR Rules To Be Procompetitive. ....................................................................... 12

            2.    Moehrl's Claim That The Challenged NAR Rules Injure Competition Is Unsupported By Alleged Facts And Does Not Make Economic Sense. ........................................................ 13

    II.    PLAINTIFF HAS FAILED TO ALLEGE FACTS SHOWING THAT HE WAS INJURED BY THE ALLEGED RESTRAINT OF TRADE. .................... 16

CONCLUSION ...................................................................................................................... 17

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 7

*BCB Anesthesia Care, Ltd. v. Passavant Mem'l Area Hosp. Ass'n*,
    36 F.3d 664 (7th Cir. 1994) ..................................................................................... 8

*Bell Atlantic v. Twombly*,
    550 U.S. 554 (2007) .................................................................................................. 7

*Car Carriers, Inc. v. Ford Motor Co.*,
    745 F.2d 1101 (7th Cir. 1984) ............................................................................... 16

*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*,
    998 F.2d 391 (7th Cir. 1993) ........................................................................ 3, 18, 19

*JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*,
    190 F.3d 775 (7th Cir. 1999) ................................................................................. 15

*Kochert v. Greater Lafayette Health Servs., Inc.*,
    463 F.3d 710 (7th Cir. 2006) ........................................................................... 18, 19

*Limestone Dev. Corp. v. Vill. of Lemont*,
    520 F.3d 797 (7th Cir. 2008) ................................................................................... 7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................................ 15

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
    708 F.2d 1081 (7th Cir. 1983) ............................................................................... 19

*McReynolds v. Merrill Lynch & Co.*,
    694 F.3d 873 (7th Cir. 2012) ............................................................................. 7, 17

*Murphy v. Alpha Realty*,
    Case No. 76 C 2446, 1978 WL 1451 (N.D. Ill. Dec. 7, 1978) ............................... 14

*O'Neill v. Coca-Cola Co.*,
    669 F. Supp. 217 (N.D. Ill. 1987) ......................................................................... 16

*O'Riordan v. Long Island Bd. of Realtors*,
    707 F. Supp. 111 (E.D.N.Y. 1988) ................................................................... 4, 14

*Pirard v. Bank of Am.*,
    No. 12 C 2901, 2013 WL 1154294 (N.D. Ill. Mar. 19, 2013) ............................... 17

*Reifert v. South Cent. Wisconsin MLS Corp.*,
450 F.3d 312 (7th Cir. 2006) ........................................................... 2, 4, 13

*Rocha v. FedEx Corp., et al.*,
15 F. Supp. 3d 796 (N.D. Ill. 2014) ........................................................... 12

*Schachar v. Am. Acad. of Ophthalmology, Inc.*,
870 F.2d 397 (7th Cir. 1989) ........................................................... 12

*Shuffle Tech Int'l, LLC v. Scientific Games Corp.*,
2015 WL 5934834 (N.D. Ill. Oct. 20, 2015) ........................................................... 18

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) ........................................................... 18

*Supermarket of Homes v. San Fernando Valley Bd. of Realtors*,
No. CV 80-1888 PAR, 1983 WL 2199 (C.D. Cal. Sept. 1, 1983), ........................................................... 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*,
551 U.S. 308 (2007) ........................................................... 5

*U.S. v. Nat'l Ass'n of Realtors*, No. 1:05-cv-05140
(N.D. Ill. Nov. 18, 2008) ........................................................... 14

*U.S. v. Reality Multi-List, Inc.*,
629 F.2d 1351 (5th Cir. 1980). ........................................................... 2, 4

*Venture Assocs. Corp. v. Zenith Data Systems Corp.*,
987 F.2d 429 (7th Cir. 1993) ........................................................... 5

*Venture Res. Grp, Inc. v. Greater New Jersey Reg'l Multiple Listing Serv., Inc.*,
Civ. A No. 95-1401, 1995 WL 866841 (D.N.J. Aug. 24, 1995) ........................................................... 14

*Viamedia, Inc. v. Comcast Corp.*,
335 F. Supp. 3d 1036 (N.D. Ill. 2018) ........................................................... 19

## **Statutes**

15 U.S.C. § 15 ........................................................... 18

15 U.S.C. §1 ........................................................... 1

## **Rules**

Rule 12(b)(6) ........................................................... 6

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Christopher Moehrl claims that the National Association of Realtors® ("NAR") and four corporations offering residential real estate brokerage services ("Corporate Defendants") have violated Section 1 of the Sherman Act, 15 U.S.C. §1, by following NAR rules that have been in place for decades for the operation of Multiple Listing Services ("MLSs") as part of a system that has been repeatedly found by courts to be procompetitive. In order to survive a motion to dismiss, Moehrl must allege *facts* – that are not demonstrably false and that are not just conclusory allegations – that, if proven, would show (1) an agreement that unlawfully suppresses competition and (2) that has injured him in a manner violative of the antitrust laws. He has failed to do either. Accordingly, his complaint must be dismissed.

The centerpiece of Moehrl's complaint is his fundamental, and wholly inaccurate, misreading of certain provisions in the NAR Handbook on Multiple Listing Policy (the "NAR Handbook") and the NAR Code of Ethics. He refers to these provisions, collectively, as the "Buyer Broker Commission Rule." Moehrl claims that this "Rule" restrains trade by prohibiting brokers for buyers of residential real property ("buyers brokers") from negotiating commissions with brokers who represent sellers of such property ("listing brokers") and who list such property on a Multiple Listing Service. The fundamental problem for Moehrl is that there is no such Rule, either in name or in substance – and even a quick review of the NAR Handbook and Code of Ethics, on which Moehrl relies, reveals that Moehrl's allegations are directly contrary to what these authorities actually provide.

Contrary to Moehrl's allegations, NAR's actual rules and guidelines simply require that a listing broker make a unilateral offer of compensation to participating brokers who bring a ready, willing, and able buyer to the table. Nothing in NAR's rules either states or suggests that such compensation is non-negotiable or requires any specific commission amount. In fact, both the

NAR Handbook and the NAR Code of Ethics (1) expressly permit listing brokers to offer *any amount* of compensation to buyers brokers in connection with their listings (as low as $1 or even one cent), and (2) expressly permit listing brokers and buyers brokers to negotiate and agree upon a commission to the buyer's broker that is different from that offered in the listing. Moehrl's allegation that the challenged NAR rules somehow require that buyers brokers' commissions be set via "non-negotiable" offers made by listing brokers, which cannot later be negotiated or reduced, is demonstrably false. Having chosen to base his claim entirely on the NAR rules, Moehrl's claim cannot survive his failure to describe those rules accurately.

Moehrl's total mischaracterization of the relevant NAR rules is reason enough to dismiss his complaint. However, there are two additional grounds for dismissal. First, Moehrl cannot state a cause of action under the antitrust laws because there is nothing anticompetitive about rules that require a broker who lists a property on an MLS to offer cooperation and compensation to any other MLS participant who finds a buyer for the listed property. Indeed, Moehrl's basic theory is flatly inconsistent with numerous cases in which the Seventh Circuit and other courts have recognized that MLSs, and the NAR rules that govern them, are procompetitive precisely *because* they foster the sort of information-sharing and cooperation in the sale of real estate that Moehrl decries. *See, e.g., Reifert v. South Cent. Wisconsin MLS Corp.*, 450 F.3d 312, 321 (7th Cir. 2006); *U.S. v. Reality Multi-List, Inc.*, 629 F.2d 1351, 1368 (5th Cir. 1980). In light of this judicial recognition that MLSs are procompetitive – and that NAR rules for the offering of cooperation and compensation that have existed for decades are an essential component of the MLS system – the complaint must be dismissed for failing to allege facts that would support a finding of an unlawful restraint of trade.

Second, as an additional basis for dismissal, Moehrl has failed to discharge his obligation to plead facts showing that the challenged NAR rules caused him to suffer injury-in-fact or antitrust injury. *See Greater Rockford Energy & Tech. Corp. v. Shell Oil Co*., 998 F.2d 391, 401 (7th Cir. 1993) (holding that a plaintiff under the Clayton Act § 4 must show that, "but for" the alleged violation, the injuries would not have occurred). Moehrl alleges nothing more than that he recently sold a house and paid a commission to his broker, who paid a portion of that commission to the buyer's broker. Notably, Moehrl does not, and cannot, make any factual allegations that the relevant NAR rules in any way (1) dictated the buyer's broker compensation that Moehrl's broker offered or paid, (2) prevented negotiation of the buyer's broker commission that the listing broker offered, or (3) decreased the net proceeds that Moehrl received from the sale of his home. Moehrl has thus pleaded no facts to support a conclusion that he was injured by the NAR rules that he challenges.

## RELEVANT ALLEGATIONS AND NAR RULES

The relevant allegations and NAR rules are drawn from the complaint, the materials incorporated by reference therein, and other limited materials that are appropriate for consideration on a motion to dismiss.

### A.  **Moehrl**

On November 15, 2017, Moehrl sold a home in the Minneapolis metropolitan area. Complaint ¶ 17. The home was listed for sale on the Northstar MLS. *Id*. As part of the transaction, Moehrl paid his broker a total listing commission of 6% of the sales price. *Id*. Moehrl's broker offered and paid out of the commission that he received 2.7% of the sales price to the brokerage firm that represented the buyer. *Id*. Moehrl makes no allegations that any of the commissions that were offered and paid were dictated by NAR rules or that NAR rules prevented negotiation of those commissions.

3

### B. The MLS System

An MLS is a joint venture of real estate brokers which features a database of properties listed for sale in a particular geographic region and thereby conveys relevant information about listed properties to all brokers participating in the MLS. *Id*. at ¶ 3. Because of the efficiency of the system, the vast majority of home transactions in the United States are consummated through an MLS. As several courts have noted, the purpose of an MLS is to encourage communication and cooperation among brokers who participate in the MLS, in order to incentivize all MLS participants to come forward with a buyer for the listed property, and thereby to increase market transparency and efficiency. *See, e.g., Reifert*, 450 F.3d at 321; *U.S. v. Reality Multi-List, Inc.*, 629 F.2d 1351, 1368 (5th Cir. 1980) (finding that MLSs offer "a central processing and distributing point for listings of real estate," thereby reducing "information and communication barriers"); *O'Riordan v. Long Island Bd. of Realtors*, 707 F. Supp. 111, 115 (E.D.N.Y. 1988) (noting that MLSs function "like an exchange and provide[] wide dissemination of market information"). This increase in market efficiency ensures that participating brokers have the same access to necessary knowledge about listed properties and offers, which ultimately benefits both buyers and sellers. *See Reifert*, 450 F.3d at 321.

Moehrl alleges that most MLSs (including the MLSs at issue in the complaint) are administered by local Realtor® associations. Complaint ¶ 3. He also alleges that a broker's right to list homes on these MLSs is conditioned on the broker following the rules set forth in the NAR Handbook and the NAR Code of Ethics. *Id*.

### C. Relevant NAR Policies That May Be Considered On A Motion To Dismiss

The complaint references and purports to describe both the NAR Handbook and NAR's

Code of Ethics and Standards of Practice. *See, e.g.*, Complaint ¶¶ 2, 33, 39-42, 48.[1] In particular, Moehrl focuses on Section G-1 of the NAR Handbook,[2] which he calls the "Buyer Broker Commission Rule" (a term dreamed up by Moehrl that appears nowhere in the Handbook itself). *Id.* ¶¶ 2, 3, 37. Moehrl inaccurately alleges that this "Rule" requires that listing brokers make "***non-negotiable"*** offers of compensation to buyer's brokers. *Id.* ¶ 37 (emphasis added).

Significantly, however, the actual text of Section G-1 says nothing of the kind. The words "non-negotiable" appear nowhere in the Rule; they were deliberately and falsely inserted by plaintiff. While Section G-1 does require that listing brokers make blanket unilateral offers of commission to buyers' brokers, the Rules explicitly provide that listing brokers and buyers brokers may negotiate a commission that differs from the blanket unilateral offer made by the listing broker. See Johnson Decl., Ex. A at 34-35.

Specifically, NAR Standard of Practice 3 provides, in pertinent part, as follows:

**Standard of Practice 3-2**

Any change in compensation offered for cooperative services must be communicated to the other Realtor® prior to the time that Realtor® submits an offer to purchase/lease their property. After a Realtor® has submitted an offer to purchase/lease the property, the listing broker may not attempt to unilaterally modify the offered compensation with respect to that cooperative transaction.[3]

---

[1] When a complaint relies on documents not attached to the complaint, the Court may consider the entire document – not just the portions cited by the plaintiff – when deciding a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Venture Assocs. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). True and correct copies of the 2019 versions of the NAR Handbook on Multiple Listing Policy and Code of Ethics and Standards of Practice, each referenced in and central to the complaint, are attached to this motion. *See* Declaration of Katie Johnson (Johnson Decl.), Ex. A and Ex. B).

[2] The NAR Handbook is "intended to guide member associations of Realtors® in the operation of multiple listing services consistent with the policies established by the National Association's Board of Directors." *See* Johnson Decl., Ex. A at iii.

[3] It is also worth noting that this SOP, by its terms, applies to negotiations between brokers, not to negotiations between a home buyer or seller and their brokers. Nothing in NAR rules prevents a home seller from insisting that the listing broker offer a cooperative commission of only $1, or

**Standard of Practice 3-3**

Standard of Practice 3-2 ***does not preclude the listing broker and cooperating broker from entering into an agreement to change cooperative compensation.***

*See* Johnson Decl., Ex. B at 3.  Nothing in the NAR rules prohibits a listing broker from offering any MLS participant compensation different from the listing as published on the MLS.

The complaint also references Standard of Practice ("SOP") 16-16 from the NAR Code of Ethics.[4]  Moehrl claims that this SOP prohibits buyers from attempting to lower their brokers' commission rates.  Complaint ¶ 42.  Even a cursory review of the relevant text, however, reveals that this claim has no basis in the actual SOP.  As the text of SOP 16-16 makes clear, that SOP applies only to brokers, not to the parties to the transaction.  It merely prohibits the buyer's broker from employing a negotiating tactic that could potentially jeopardize a home sale (and his or her client's interests): conditioning submission of a purchase offer on a change in the compensation offered to the buyer's broker.  *Id.*

## STANDARD OF REVIEW

"[A]lthough the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (internal citations omitted). Thus, a pleading "supported by mere conclusory statements does not suffice." *Id.*  Rather, a plaintiff must assert factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 554, 555 (2007).  A complaint does not

---

even one cent, to the buyer's broker.  In such a case a buyer's broker would look to his client for compensation.

[4]  The NAR Code of Ethics establishes obligations that Realtors® must follow when carrying out their duties.  Its seventeen Articles, the application of which are further explained in Standards of Practice, address the duties that Realtors® owe towards clients, customers, the public and each other.  *See* Johnson Decl., Ex. B.

suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *McReynolds*, 694 F.3d at 885 (internal citations omitted).

The requirement that complaints be based on facts, not conclusions or speculation, is especially important in potentially burdensome and expensive cases like this one. As the Seventh Circuit has explained: "In a complex antitrust or RICO case, a fuller set of factual allegations than found in the sample complaints in the civil rules' Appendix of Forms may be necessary to show that the plaintiff's claim is not largely groundless." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008) (internal citations and quotations omitted). *See also BCB Anesthesia Care, Ltd. v. Passavant Mem'l Area Hosp. Ass'n*, 36 F.3d 664, 669 (7th Cir. 1994) (affirming dismissal of a Sherman Act §1 case and noting "judicial concern with avoiding burdensome litigation unless there is an apparent justification for it").

## ARGUMENT

## I. THE COMPLAINT DOES NOT ALLEGE FACTS THAT, IF PROVEN, WOULD VIOLATE THE ANTITRUST LAWS.

In order to survive a motion to dismiss, Moehrl has to plead "factual content" that is not demonstrably false and that, if proven, would make out a violation of the antitrust laws. Here, Moehrl's centerpiece allegations about NAR rules are demonstrably false. Moreover, NAR's actual rules are, and have been found by the courts, to be procompetitive.

### A. The Complaint's Central Theory Is Belied By The Plain Language Of The Challenged NAR Rules.

As noted above, Moehrl's claim rests on a fundamental misstatement of NAR rules. His main claim is that Section G-1 of the NAR Handbook requires "all brokers to make a blanket, ***non-negotiable*** offer of buyer broker compensation when listing a property on a(n) MLS . . . ."

Complaint ¶¶ 2, 3, 37 (emphasis added). But Section G-1 does nothing of the kind. The Rule requires that listing brokers make "blanket unilateral" (***not*** "blanket non-negotiable") offers of compensation to other MLS participants. The words, "non-negotiable" simply do not appear in the Rule. To the contrary, NAR rules expressly state that they do "not preclude the listing broker from offering any MLS participant compensation ***other than the compensation indicated on his listings as published by the MLS***." *See* Johnson Decl., Ex. A at 34-35 (emphasis added).

Tellingly, Moehrl has improperly rewritten the relevant NAR rule by substituting the word "non-negotiable" for "unilateral" when citing section G-1. Further, he has failed to note the text of that section that expressly refutes his assertion of non-negotiability and that permits listing brokers to make compensation offers different than their initial "blanket unilateral" offer. Moehrl's claim that Section G-1 prevents listing brokers from making any changes to their initial, blanket compensation offers is demonstrably false.

Nor has Moehrl alleged any facts to suggest that the amount of the listing broker's initial compensation offer is established or restrained by NAR rule. Moehrl admits that home sellers themselves determine how much commission they will pay to listing brokers, with full understanding that some portion of that commission may be paid to buyer's brokers in order to facilitate the sale. *See* Complaint ¶ 34. Notably, NAR rules specifically state that brokers and MLSs may not "[f]ix, control, recommend or suggest the ***cooperative compensation offered by listing brokers to potential cooperating brokers***." Johnson Decl., Ex. A at 7 (emphasis added). The offer of buyers broker compensation can be expressed as a percentage of the sale price or as a fixed dollar amount, and nothing in NAR rules prevent sellers like Moehrl from insisting that their brokers offer buyers brokers compensation as low as one cent. Moehrl has alleged no facts

to support the claim that Section G-1, or anything else in the NAR Handbook, unreasonably restrains how commission offers are set or negotiated, or how much must be offered.

Moehrl's reference to the Standards of Practice set forth in the NAR Code of Ethics does nothing to save his claim. Moehrl claims that Standard of Practice 16-16 is meant to "foreclose the possibility" that home buyers would try to reduce their brokers' commission by insisting that their broker refuse to accept the full amount of the listing broker's "blanket unilateral" commission offer. Complaint ¶ 42. This claim is without merit.

Moehrl misreads SOP 16-16, and fails to account for NAR's Case Interpretations providing guidance for that SOP. As Moehrl's own allegations demonstrate, the terms of SOP 16-16 merely caution that negotiation between the listing broker and the buyers broker may take place prior to the submission of the buyer's offer and that brokers should neither use the terms of a purchase offer to negotiate the buyers broker's compensation nor make an offer contingent on such modification. *See* Complaint ¶ 42. That practice ensures that any negotiations between listing and buyers brokers regarding the amount of the buyer's broker compensation do not disrupt the negotiation of the underlying real estate transaction. In other words, a buyers broker cannot seek to increase the commission that he or she will receive by holding the buyer's offer hostage. By its terms, this SOP prohibits only a particular negotiating tactic, not negotiation itself.

Moehrl also ignores publicly available Case Interpretations, which confirm the analysis set forth above.[5] In Case #16-15, REALTOR® A filed a complaint against REALTOR® B, alleging that REALTOR® B violated Article 16 by bringing REALTOR® A a purchase agreement with

---

[5] As noted earlier, Moehrl's complaint is expressly based on SOP 16-16 of the NAR Code of Ethics. The Code of Ethics provides that Case Interpretations, like SOPs, are meant to clarify the obligations that the Code of Ethics imposes on Realtors®. Johnson Decl., Ex. B at 8. It is therefore appropriate for the Court to take judicial notice of Case Interpretations that bear on Standard of Practice 16-16.

copies of deposit receipts that made presentation of the offer conditioned upon REALTOR® A's agreement to pay REALTOR® B a greater amount of cooperating broker compensation than that which REALTOR® A, as the listing broker, had offered through the MLS. *See* Johnson Decl., Ex. C at 89. REALTOR® A accepted the offer but subsequently filed an ethical complaint. *Id*. The Hearing Panel held that "***REALTOR® B was indeed entitled to negotiate with REALTOR® A concerning cooperating broker compensation***" but that such negotiation should be completed prior to the showing of the property by REALTOR® B, and that it was improper for REALTOR® B to insert the amount of cooperating broker compensation to be paid by the listing broker into the contract between the buyer and seller. *Id*. (emphasis added).

Similarly, the plain language of SOP 16-16 does not preclude a buyer from demanding a change in the amount of the buyers broker's commission. It only applies to negotiations between the brokers in order to protect sellers and buyers from having their deal held hostage by buyers brokers seeking larger commissions. *See* Complaint ¶ 42. In Case Interpretation #16-17, a broker was found not to be in violation of Article 16 as interpreted by SOP 16-16 when his client, the buyer, made a successful demand for payment of buyer broker commission directly of the seller. The Hearing Panel noted that there might have been an Article 16 problem (namely, interference with the listing broker's relationship with his seller-client) if that demand had been made by the buyer's broker or by the buyer at his broker's urging. *See* Johnson Decl., Ex. C at 90.

Finally, Moehrl has overlooked the fact that other Standards of Practice in the NAR Code of Ethics expressly permit the types of commission negotiations that he inaccurately claims are foreclosed by SOP 16-16. As noted earlier, SOPs 3-2 and 3-3 in the NAR Code of Ethics explicitly provide that listing and cooperating brokers may "enter[] into an agreement to change cooperative

compensation." *See* Johnson Decl., Ex. B at 3.[6]  In other words, brokers are expressly permitted to do what Moehrl wrongly claims they may not do: negotiate over commissions.  Moehrl's reference to the NAR Code of Ethics, like his reference to the NAR Handbook, provides no factual support for his claims.

In sum, Moehrl's claim depends upon misstatements and mischaracterizations of NAR's actual policies.  The rules, as written, directly contradict Moehrl's central claim and antitrust theory and, therefore, require that the complaint be dismissed.  *See Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 397 (7th Cir. 1989) ("There can be no restraint of trade without a restraint.").  This Court cannot draw a reasonable inference that NAR rules prohibit negotiations that those rules expressly contemplate and permit.  *See, e.g.*, *Rocha v. FedEx Corp., et al.*, 15 F. Supp. 3d 796, 811 (N.D. Ill. 2014) (rejecting allegation that plaintiff was forced to buy a product when contract relied on by plaintiff stated that plaintiff was not required to do so).

**B. The Complaint Should Be Dismissed Because Moehrl's Allegations That NAR Rules Harm Competition Are Economically Implausible And Fly In The Face Of Long-Established Precedent.**

Moehrl's complaint also is contrary to sound economic analysis and applicable precedent. Indeed, Moehrl's own allegations suggest the procompetitive effect of Section G-1:  Moehrl asserts that home sellers agree to pay their brokers a commission that will be split with the buyer's broker to incentivize buyer's brokers to show the property to their clients.  Complaint ¶ 59 (second bullet). This effect is procompetitive and, as Moehrl admits, has caused the MLS to become an effective tool for marketing homes to potential buyers.

---

[6]  SOPs 3-2 and 3-3 interpret Article 3, which provides that "Realtors® shall cooperate with other brokers except when cooperation is not in the client's best interest.  The obligation to cooperate does not include the obligation to share commissions, fees, or to otherwise compensate another broker."  *See* Johnson Decl., Ex. B at 3.

Significantly, Moehrl does not, and cannot, allege facts contradicting any of the recognized procompetitive effects of NAR rules:

- Home sellers may negotiate with potential listing brokers, who are competing for the listing, over the commission that the seller will pay the listing broker, including how much of that commission will be offered to the buyer's broker as an incentive to deliver a willing buyer.

- Home buyers may negotiate with competing brokers about how much the buyer will pay the broker in the event that the commission offered by the listing broker to the buyer's broker is inadequate.

- The buyer's broker and the listing broker may agree to change cooperative compensation as offered on the MLS. For example, if the seller and buyer cannot come to terms, the buyer's broker and listing broker can agree to lower their commissions to get the deal done.

- The home seller and the home buyer may negotiate the purchase offer with full transparency and knowledge of what each party to the transaction will be paying in commissions without the conflicts that can be caused when brokers place concerns about their compensation over the interests of the buyer and seller reaching a deal.

- When a seller elects to permit their broker to pay compensation to the buyer's broker, it frees up buyer cash thereby potentially increasing the number of buyers able to bid for that home and the amount of funds available for the purchase price.

### 1. Several Courts Have Found The Challenged NAR Rules To Be Procompetitive.

These considerations and others have caused several courts to recognize the procompetitive nature of MLSs and the NAR rules that govern them. The Seventh Circuit, for example, has rejected antitrust challenges to Article 16 of the NAR Code of Ethics – the subject of SOP 16-16 that Moehrl claims is anticompetitive. Complaint ¶ 4. Specifically, the Court of Appeals concluded that: "Article 16 aids competition and fulfills the purposes of the Sherman Act by providing a more transparent marketplace." *Reifert*, 450 F.3d at 321. Other courts that have considered the practice of disclosing in the MLS the offer of compensation to buyer's brokers have concluded that the practice is fully consistent with the antitrust laws. *See Supermarket of Homes v. San Fernando Valley Bd. of Realtors*, No. CV 80-1888 PAR, 1983 WL 2199, at *7 (C.D. Cal. Sept. 1, 1983), *aff'd*, 786 F.2d 1400, 1407-08 (9th Cir. 1986) ("[T]he circulation of commission

rates in the MLS does not violate the antitrust laws."); *Murphy v. Alpha Realty*, Case No. 76 C 2446, 1978 WL 1451, at *4 (N.D. Ill. Dec. 7, 1978) (finding the "practice of exchanging information concerning commission rates and the division of those commissions" to be insufficient to support plaintiffs' price-fixing claim).

Other attacks on the rules governing MLSs have been rejected because courts have recognized the efficiency and consumer benefits provided by MLSs. *See, e.g.*, *O'Riordan*, 707 F. Supp. at 115 (noting that MLSs are procompetitive); *Venture Res. Grp, Inc. v. Greater New Jersey Reg'l Multiple Listing Serv., Inc.*, Civ. A No. 95-0401, 1995 WL 866841 at *3 (D.N.J. Aug. 24, 1995) (noting procompetitive benefits of "encourag[ing] realtors to share listing information and to cooperate in the sale of real estate"). The Department of Justice, similarly, entered into a consent decree, approved by a court in this District, expressly permitting NAR to maintain a rule that provides that MLS membership may be made contingent on a broker's agreement to "actively endeavor" to "make or accept offers of cooperation and compensation" through the MLS.[7] Moehrl has improperly ignored the long antitrust scrutiny of MLSs and the repeated judicial conclusion that MLSs and the rules that govern them are procompetitive.

### 2. Moehrl's Claim That The Challenged NAR Rules Injure Competition Is Unsupported By Alleged Facts And Does Not Make Economic Sense.

Moehrl's speculative allegations of injury to competition are not backed up by any properly alleged facts.[8] Moehrl seems to claim that requiring MLS participants to include cooperative compensation offers in their listings creates an incentive for listing brokers to set those offers at a

---

[7] *See U.S. v. Nat'l Ass'n of Realtors*, No. 1:05-cv-05140 (N.D. Ill. Nov. 18, 2008). *See* Johnson Decl., Ex. D at 26 (2008 Consent Decree at Ex. B).

[8] Antitrust plaintiffs cannot proceed on claims that fail to make economic sense. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 593-97 (1986); *JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 778 (7th Cir. 1999).

supra-competitive rate in order to better attract buyer brokers. Complaint ¶ 4. But he has alleged no facts to explain why this would necessarily be the case.

As demonstrated above, listing brokers and buyers brokers are free to make their own decisions about what commission rates to seek, and Moehrl has made no allegation that brokers will not compete on commission levels in order to win clients. Brokers are also free to negotiate with one another over commission amounts. Even Moehrl admits that home sellers control how much they pay in commission to their brokers, including how much of that commission will go to the brokers involved in the transaction, subject to further negotiations by the seller and buyer. *See* Complaint ¶ 34. Notably, the complaint contains no factual allegations to support the conclusory allegation that the so-called "Buyer Broker Commission Rule" sets the amount of this commission that the seller must pay the listing broker (*see, e.g.*, Complaint ¶ 32), or the amount the listing broker must offer the buyer's broker (*see, e.g.*, *id.* ¶ 2).

Moehrl has thus failed to allege any facts suggesting that commission rates are set by anything other than market forces. Nor has he alleged facts that would support his claim that NAR rules unlawfully restrain the operation of market forces relating to those rates. The complaint must be dismissed in light of its failure to make such allegations. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106-08 (7th Cir. 1984) (explaining that failure to sufficiently allege anticompetitive effects of an alleged violation typically warrants dismissal of the antitrust claim); *O'Neill v. Coca-Cola Co.*, 669 F. Supp. 217, 224 (N.D. Ill. 1987) (granting defendant's motion to dismiss complaint upon finding that plaintiff's conclusory allegations were not sufficient to establish antitrust injury).

Similarly, given (according to Moehrl) that the seller has the "expectation" that part of the commission will be paid to the buyer's broker, the economically plausible conclusion is that the

14

seller recognizes that aspects of the buyers broker's services are in the seller's own economic self-interest. It makes no economic sense to suggest that sellers can best protect their interest in selling their homes by allowing the buyer to decide what commission should be paid to the buyer's broker. Further, Moehrl alleges that many buyers do not use buyer's brokers at all. If true, then the sellers' "expectation" that part of the commission will be paid to buyers brokers simply further demonstrates that the fee is for services that sellers value. In ruling on this motion, "the court is not required to don blinders and to ignore commercial reality." *Car Carriers*, 745 F.2d at 1110. Moehrl's conclusory and implausible allegations should be rejected due to their failure to accord with this reality.

In sum, the complaint contains no factual support for the claim that the NAR policies – which make the amount of cooperative compensation offers matters of individual discretion for each listing broker, and subject to individual negotiation in each home sale – somehow result in those offers being uniformly inflated. Without such allegations, Moehrl's claim rests entirely on his speculation that the nonexistent "Buyer Broker Commission Rule" is, somehow, the reason that U.S. real estate markets do not more closely resemble the markets that he alleges exist in other countries. *See, e.g*., Complaint ¶¶ 7, 62.[9] That sort of speculation is insufficient to withstand a motion to dismiss. *See, e.g., McReynolds*, 694 F.3d at 885. Indeed, the very article that Moehrl offers in purported corroboration of his argument actually undermines it, since it notes that services

---

[9] Moehrl's conclusory allegations that real estate markets function more efficiently in other countries do nothing to support his claims. Moehrl has made no allegations of fact to tie the allegedly lower commissions in other countries to any alleged absence of American-style MLS rules or practices in those countries. *See Pirard v. Bank of Am.*, No. 12 C 2901, 2013 WL 1154294 at *2 (N.D. Ill. Mar. 19, 2013) (dismissing claim for failure to allege facts linking alleged wrongdoing to alleged anticompetitive effect). Nor has Moehrl made any allegations regarding the relative efficiency of foreign markets for home sales, who bears the costs of promoting properties, how long it takes to sell a property, or any other relevant consideration.

vary from one jurisdiction to another. Natalya Delcoure and Norm Miller, *International Residential Real Estate Brokerage Fees and Implications for the US* (2002) (cited in Complaint ¶ 62).

For all of the reasons noted above, Moehrl's allegations are insufficient, and the Court should dismiss his claim.

## II. PLAINTIFF HAS FAILED TO ALLEGE FACTS SHOWING THAT HE WAS INJURED BY THE ALLEGED RESTRAINT OF TRADE.

Moehrl's complaint must also be dismissed on the alternative and independent ground that he has not alleged, and cannot allege, that the relevant NAR rules caused injury to him. An antitrust plaintiff who seeks damages is required to plead and prove injury-in-fact and antitrust injury. Injury-in fact is both a constitutional requirement and an express requirement of the antitrust laws. *Silha v. ACT, Inc*., 807 F.3d 169, 174-75 (7th Cir. 2015); 15 U.S.C. § 15 (to seek damages, a private plaintiff must be able to show that he was, in fact, "injured in his business or property" by the alleged antitrust violation). For antitrust injury, Moehrl must plead and prove "a direct link between the antitrust violation and the antitrust injury." *Greater Rockford Energy*, 998 F.2d at 395. *See also Kochert v. Greater Lafayette Health Servs., Inc*., 463 F.3d 710, 718 (7th Cir. 2006); *Shuffle Tech Int'l, LLC v. Scientific Games Corp.*, 2015 WL 5934834, *9-10 (N.D. Ill. Oct. 20, 2015).

Moehrl has failed to satisfy the requirement of injury-in-fact. He has not even clearly identified his alleged injury. The only facts that Moehrl alleges going to injury are that he sold a home in Minneapolis in 2017; that he paid his listing broker a commission of 6%; and that his listing broker paid the buyer's broker a commission of 2.7% out of the commission received by the listing broker. Complaint ¶ 17. Moehrl has not alleged that he even attempted to negotiate a lower commission for either his listing broker or the buyer's broker, let alone that his broker

refused to do so because that broker believed that the "Buyer Broker Commission Rule" precluded such negotiations. Moehrl's alleged facts provide no support for his claim that the purported "Buyer Broker Commission Rule" even came into play. *See Greater Rockford Energy*, 998 F.2d at 402 (rejecting antitrust claim when plaintiff, due to "numerous intervening economic and market factors," failed to establish but-for causation). Thus, he has not alleged any injury to him by virtue of the alleged NAR Rules.

Moehrl has also failed to allege antitrust injury. Antitrust plaintiffs must "be able to distinguish between 'financial loss from the *lawful* activities of a [defendant]' from loss 'caused by the *unlawful* acts of the defendant.'" *Viamedia, Inc. v. Comcast Corp.*, 335 F. Supp. 3d 1036, 1070 (N.D. Ill. 2018) (emphasis in original) (quoting *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1171 (7th Cir. 1983)); *Kochert*, 463 F.3d at 718 (rejecting claim when plaintiff failed to establish that alleged antitrust violation was cause in fact of her alleged injury). Moehrl has not even attempted to allege facts demonstrating that that the allegedly anticompetitive feature of the "Buyer Broker Commission Rule" – *i.e.*, its nonexistent prohibition on negotiating the amount of the buyer broker's commission – had anything to do with the amount of commission he paid to his broker.

## CONCLUSION

For the reasons stated above, the complaint should be dismissed with prejudice.

Dated:  May 17, 2019                          Respectfully submitted,

                                              */s/ Jack R. Bierig*
                                              Jack R. Bierig
                                              Adam J. Diederich
                                              Robert J. Wierenga
                                              Schiff Hardin LLP
                                              233 South Wacker Drive, Suite 7100
                                              Chicago, IL 60606
                                              312-258-5500 (Phone)
                                              312-258-5600 (Fax)
                                              jbierig@schiffhardin.com
                                              rwierenga@schiffhardin.com
                                              adiederich@schiffhardin.com

                                              *Attorneys for Defendant*
                                              *National Association of Realtors®*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on May 17, 2019, the foregoing Brief in Support of the Motion of the National Association of Realtors® to Dismiss Plaintiff's Complaint was electronically filed with the Clerk of the Court by utilizing the CM/ECF System, which will provide electronic notification to all counsel of record:


<u>/s/ *Jack R. Bierig*</u>
Jack R. Bierig