**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER MOEHRL, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No: 1:19-cv-01610 |
| v. | ) ) | Judge Andrea R. Wood |
| THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, RE/MAX HOLDINGS, INC. and KELLER WILLIAMS REALTY, INC. | ) ) ) ) ) | Magistrate Judge M. David Weisman |
| Defendants. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**CORPORATE DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

SUMMARY OF ALLEGATIONS ............................................................................ 3

A.  Moehrl .......................................................................................................... 3

B.  NAR ............................................................................................................... 3

C.  The MLS System ....................................................................................... 4

D.  Corporate Defendants ............................................................................. 4

ARGUMENT ............................................................................................................... 5

I.  PLAINTIFF FAILS TO ALLEGE THE EXISTENCE OF ANY CONSPIRACY. ........... 6

A.  Plaintiff's Impermissible Group Pleading Is Not Sufficient to State a Cause of Action ........................................................................................ 9

B.  Plaintiff Fails to Allege An Agreement or Concerted Action by Any Corporate Defendant. ....................................................................... 9

   1.  Encouraging Compliance with NAR or MLS Rules Is Consistent with Independent Action. ............................................. 10

   2.  Participation in NAR or Its Local Associations, Even in Leadership Roles, Does Not Plausibly Support Involvement in a Conspiracy. ................................. 12

   3.  Encouraging or Requiring Franchisees Agents to Join Local Realtor Associations Does Not Show Conspiracy. .............................. 14

II.  ALLEGATIONS AS TO EACH CORPORATE DEFENDANT ARE INSUFFICIENT TO MAINTAIN A CLAIM AGAINST ANY OF THEM. ................... 15

A.  The Court Should Dismiss the Claim as to Keller Williams. ........................... 15

   1.  Plaintiff Fails to Identify Keller Williams Personnel Involved in NAR Leadership. ........................................................ 16

   2.  Keller Williams' Encouragement to Franchisees' Agents to Be Involved in Local Realtor Associations is Consistent with Independent Action. .................... 16

B.  The Court Should Dismiss the Claim as to RE/MAX Holdings. ....................... 18

C.  The Court Should Dismiss the Claim as to Realogy. ........................................ 19

D.  The Court Should Dismiss the Claim as to HomeServices. .............................. 20

III.     PLAINTIFF HAS FAILED TO ALLEGE A RESTRAINT OF TRADE IN A
         PROPERLY DEFINED RELEVANT MARKET. ........................................................... 21

CONCLUSION ............................................................................................................................ 23

# TABLE OF AUTHORITIES

## CASES

*AD/SAT, Div. of Skylight, Inc. v. Associated Press*,
181 F.3d 216 (2d Cir. 1999) ................................................................................... 13

*Agnew v. NCAA*,
683 F.3d 328 (7th Cir. 2012) ............................................................................... 2, 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................... 12

*Ass'n of Am. Physicians & Surgeons v. Am. Bd. of Med. Specialties*,
No. 14-cv-02705, 2017 U.S. Dist. LEXIS 205845 (N.D. Ill. Dec. 13, 2017) ............ 6

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) ............................................................................ 7, 14

*Bates v. City of Chicago*,
726 F.3d 951 (7th Cir. 2013) ................................................................................. 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................... passim

*Car Carriers, Inc. v. Ford Motor Co.*,
745 F.2d 1101 (7th Cir. 1984) ............................................................................... 6

*Copperweld Corp. v. Independence Tube Corp.*,
467 U.S. 752 (1984) ............................................................................................. 15

*Denny's Marina, Inc. v. Renfro Prods., Inc.*,
8 F.3d 1217 (7th Cir. 1993) ................................................................................... 5

*Estate Constr. Co. v. Miller & Smith Holding Co.*,
14 F.3d 213 (4th Cir. 1994) ................................................................................... 8

*Frantzides v. Northshore Univ. HealthSystem Faculty Practice Assoc., Inc.*,
787 F. Supp. 2d 725 (N.D. Ill. 2011) ..................................................................... 7

*Hackman v. Dickerson Realtors, Inc.*,
520 F. Supp. 2d 954 (N.D. Ill. 2007) ............................................................... 14, 18

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
602 F.3d 237 (3d Cir. 2010) ................................................................................... 8

*In re Elevator Antitrust Litig.*,
502 F.3d 47 (2d Cir. 2007) ................................................................... 9, 18, 19, 20

*In re Text Messaging Antitrust Litig.*,
    782 F.3d 867 (7th Cir. 2015) ................................................................................. 7

*JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*,
    190 F.3d 775 (7th Cir. 1999) ............................................................................... 22

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ............................................................................. 13

*Kleen Prods. LLC v. Georgia-Pac. LLC*,
    910 F.3d 927 (7th Cir. 2018) ............................................................................... 13

*Kleen Prods. LLC v. Int'l Paper*,
    276 F. Supp. 3d 811 (N.D. Ill. 2017) .................................................................. 13

*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
    No. 80 C 1405, 1991 WL 5827 (N.D. Ill. Jan. 15, 1991),
    *aff'd*, 977 F.2d 585 (7th Cir. 1992) .................................................................... 13

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................................ 22

*McReynolds v. Merrill Lynch & Co.*,
    694 F.3d 873 (7th Cir. 2012) ................................................................................. 6

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984) .............................................................................................. 1

*Moore v. Boating Indus. Assocs.*,
    819 F.2d 693 (7th Cir. 1987) ............................................................................... 13

*O'Neill v. Coca-Cola Co.*,
    669 F. Supp. 217 (N.D. Ill. 1987) ......................................................................... 6

*O'Riordan v. Long Island Bd. of Realtors*,
    707 F. Supp. 111 (E.D.N.Y. 1998) ..................................................................... 11

*Ohio v. Am. Express Co.*,
    138 S. Ct. 2274 (2018) ................................................................................... 21, 22

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*,
    629 F.3d 697 (7th Cir. 2011) ............................................................................ 1, 7

*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*,
    No. 08-CV-42 JG VVP, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011), *R&R adopted*,
    No. 08-CV-00042 JG VVP, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) ............................. 9

*Reifert v. S. Cent. Wisconsin MLS Corp.,*
    450 F.3d 312 (7th Cir. 2006) ................................................................. 4, 11

*Rocha v. FedEx Corp.,*
    15 F. Supp. 3d 796 (N.D. Ill. 2014) ........................................................ 7

*SD3, LLC v. Black & Decker (U.S.) Inc.,*
    801 F.3d 412 (4th Cir. 2015) ................................................................. 8

*Standard Iron Works v. ArcelorMittal,*
    639 F. Supp. 2d 877 (N.D. Ill. 2009) ..................................... 7, 9, 14, 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ................................................................... 4, 17, 22

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.,*
    987 F.2d 429 (7th Cir. 1993) ........................................................... 4, 17

*Williams v. I.B. Fischer Nevada,*
    794 F. Supp. 1026 (D. Nev. 1992), *aff'd*, 999 F.2d 445 (9th Cir. 1993) ................................. 15

## OTHER AUTHORITIES

Decloure & Miller,
    *International Residential Real Estate Brokerage Fees and Implications for the US Brokerage Industry,*
    5 Int'l Real Estate Rev. 12, 13 n.3 (2002) ............................................ 22

NAR, Handbook on Multiple Listing Policy 2019 ....................................... 4

## INTRODUCTION

The premise of Plaintiff's Complaint reflects a fundamental misunderstanding of the rules of Defendant The National Association of Realtors® ("NAR") and the roles of Defendants Realogy Holdings Corp. ("Realogy"), HomeServices of America, Inc. ("HomeServices"), RE/MAX Holdings, Inc. ("RE/MAX Holdings"), and Keller Williams Realty, Inc. ("Keller Williams") (collectively, the "Corporate Defendants").[1]  As a result, the Complaint fails to state a claim against any of the Defendants for a violation of the antitrust laws.  Some of the Complaint's deficiencies, which apply to all Defendants, are addressed in NAR's separately filed Motion to Dismiss, which the Corporate Defendants join in its entirety.  But there are additional flaws in the Complaint that independently mandate dismissal of the Corporate Defendants. Indeed, Plaintiff's allegations defeat, rather than support, the existence of the supposed conspiracy asserted against the Corporate Defendants.  Accordingly, this Memorandum addresses two additional grounds on which Plaintiff's claim against the Corporate Defendants should be dismissed.

First, Plaintiff fails to allege any facts to support the existence of any *agreement* among any of the Defendants—namely*,* the "conscious commitment to a common scheme designed to achieve an unlawful objective"—that is necessary to state a claim under Section 1 of the Sherman Act.  *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 706 (7th Cir. 2011).  The Complaint

---

[1] As not all of the Corporate Defendants are franchisors, this memorandum does not adopt Plaintiff's "Franchisor Defendants" terminology, but we understand that, for purposes of a motion to dismiss, all well-pleaded factual allegations in the Complaint must be taken as true.  In addition, Plaintiff has sued the wrong RE/MAX entity because RE/MAX Holdings is not a franchisor, an owner, or an operator of brokerages, and does not engage in any activities that relate to Plaintiff's allegations.  The same is true of HomeServices, which likewise is not a franchisor or operator of brokerages.  Because at this point the allegations must be taken as true, RE/MAX Holdings and HomeServices respond herein, but do not waive any rights or make any concessions as to whether they are proper defendants.

contains no allegations that any of the Corporate Defendants were involved back in 1996 in creating or adopting the set of rules containing the language Plaintiff misstates and labels as the so-called "Buyer Broker Commission Rule." Moreover, rather than plausibly supporting the alleged conspiracy, the allegation that each Corporate Defendant requires or encourages its franchisees and/or agents to comply with NAR's rules is completely consistent with each Corporate Defendant's own rational, independent, and unilateral business decision because, as Plaintiff alleges, participation in multiple listing services ("MLSs") run by local Realtor® associations is a "commercial necessity" for real estate brokers and agents. Compl. ¶ 47. For this reason alone, Plaintiff's Complaint should be dismissed. In addition, the few specific, albeit sparse, references to each Corporate Defendant further illustrate the lack of plausible conspiracy allegations within the Complaint.

Second, Plaintiff has failed to allege the requisite "unreasonable restraint of trade in [a] relevant market." *Agnew v. NCAA*, 683 F.3d 328, 335 (7th Cir. 2012). As a threshold matter, as NAR's brief demonstrates, Plaintiff has alleged no restraint of trade at all. *See* Def. NAR's Mem. of Law ISO Mot. Dismiss at 8-11 ("NAR Mem"). In addition, Plaintiff's Complaint further fails to state a claim for the independent reason that it defines the relevant market as "the bundle of services provided to home *buyers and sellers* by residential real estate brokers with MLS access," Compl. ¶ 65 (emphasis added  ), but fails to allege anticompetitive effects in that defined market—the same type of fatal legal error identified by the Supreme Court in its recent *American Express* decision.

For these reasons, as amplified below, the Complaint against the Corporate Defendants should be dismissed.[2]

## SUMMARY OF ALLEGATIONS

### A.     Moehrl

On November 15, 2017, Plaintiff, Christopher Moehrl, sold a home in the Minneapolis metropolitan area.  Compl. ¶ 17.  The home was listed for sale on the Northstar MLS, one of the alleged Covered MLSs.  *Id.*  As part of the transaction, Plaintiff paid his broker a total listing commission of six percent of the sales price.  *Id.*  Plaintiff's broker agreed to share 2.7 percent of that commission with the brokerage that represented the buyer.  *Id.*  Notably, Plaintiff fails to allege that he tried to negotiate the listing commission, how the commission would be split with the buyer's broker, or that he in any way sought to pay less to either broker.  But Plaintiff does allege he understood that the buyer broker would be paid from the commission he paid to his broker.  *Id.*  Plaintiff does not allege that he objected to that practice or attempted to negotiate any alternative payment structure.

### B.     NAR

NAR is a trade association for the real estate industry, and it includes local Realtor® associations and boards.  *Id.* ¶ 18.  NAR develops "standards for efficient, effective, and ethical real estate business practices," NAR, About Us, *at* https://www.nar.realtor/about-nar, including its Code of Ethics and Handbook on Multiple Listing Policy, which are "intended to guide member associations of Realtors in the operation of [MLSs] consistent with the policies

---

[2] The Corporate Defendants are investigating whether the underlying listing agreement potentially requires arbitration of the claims asserted by Plaintiff in this lawsuit.  That information is not readily available to the Corporate Defendants at this point because it resides with Plaintiff and the third-party franchisee.  The Corporate Defendants do not waive their right to compel arbitration if they determine arbitration is warranted.

established by the National Association's Board of Directors."  NAR, Handbook on Multiple

Listing Policy 2019, at iii ("NAR Handbook");[3] Compl. ¶¶ 39, 45 (citing NAR Handbook).

### C.     The MLS System

An MLS is a database of properties listed for sale in a particular geographic region, and is

the system used to convey sales information for the vast majority of home transactions in the

United States.  Compl. ¶ 3.  MLSs are procompetitive and increase market transparency and

efficiency by matching buyers with sellers and encouraging communication and cooperation

between brokers.  *See, e.g., Reifert v. S. Cent. Wisconsin MLS Corp.*, 450 F.3d 312, 321 (7th Cir.

2006) (finding the procompetitive benefits "weigh[s] heavily" in favor of rejecting an antitrust

challenge to a NAR rule).  This increase in market efficiency ensures that participating brokers

have access to equal knowledge about listed properties and offers, ultimately benefitting both

buyers and sellers, and facilitating efficient home sale transactions.  *See id.*

As alleged, brokers are required to list all properties on the MLS in which they are

members.  Compl. ¶ 3.  Most MLSs (including the so-called "Covered MLSs" named in the

Complaint) are run by local Realtor associations.  *Id.*  The Complaint alleges that a broker's

ability to list homes on the Covered MLSs is conditioned on the broker following NAR's rules.

*Id.* ¶ 47.

### D.     Corporate Defendants

Plaintiff does not allege that any of the Corporate Defendants helped draft the NAR rules

of which he complains.  Instead, the Complaint makes conclusory general allegations that the

Corporate Defendants somehow contributed to the implementation of the so-called Buyer Broker

---

[3] The Court can take judicial notice of the NAR Handbook because Plaintiff cites and discusses that document extensively in his Complaint.  *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

Commission Rule through involvement in NAR activities and by requiring or encouraging franchisees to join local Realtor associations, participate in the local MLS, and comply with NAR, local Realtor association, and local MLS rules.[4]  *Id.* ¶¶ 51-57.  The few specific allegations against each Corporate Defendant contradict even those general conclusions and do not sufficiently allege a plausible conspiracy.

## ARGUMENT

The Corporate Defendants join in all respects NAR's Memorandum in Support of its Motion To Dismiss.  NAR's Motion demonstrates that Plaintiff's claim is precluded by the very documents Plaintiff purports to rely on because there is no NAR rule proscribing negotiation of cooperative compensation.  In addition, Plaintiff has separately failed to allege the required elements of his claim under Section 1 of the Sherman Act against the Corporate Defendants.  To state such a claim, Plaintiff must allege facts plausibly suggesting "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in [a] relevant market; and (3) an accompanying injury."  *Denny's Marina, Inc. v. Renfro Prods., Inc.*, 8 F.3d 1217, 1220 (7th Cir. 1993).  And merely asserting these elements in the complaint is insufficient.  Rather, to survive a Rule 12(b)(6) challenge, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  For that reason, "labels and conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice to state a claim for relief.  *Twombly*, 550 U.S. at 555.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line

---

[4] Plaintiff alleges that Corporate Defendants franchise residential brokerages around the country.  *Id.* ¶¶ 19-22.  Certain of the Corporate Defendants own some franchisees directly, and some Defendants do not franchise or own brokerages.

between possibility and plausibility of entitlement to relief." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quotation omitted).

As to the first element of a Section 1 claim, the complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Thus, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" because "that could just as well be independent action." *Id.* at 556-57. As to the second element of a Section 1 claim, a complaint "must sufficiently plead that [each defendant's] actions have caused an unreasonable restraint of trade in a relevant market. The determination of whether a restraint is unreasonable must focus on the competitive effects of challenged behavior relative to such alternatives as its abandonment or a less restrictive substitute." *Ass'n of Am. Physicians & Surgeons v. Am. Bd. of Med. Specialties*, No. 14-cv-02705, 2017 U.S. Dist. LEXIS 205845, at *8-9 (N.D. Ill. Dec. 13, 2017) (Wood, J.) (dismissing complaint that failed to plead a restraint of trade) (quotation and original alteration omitted). Where a plaintiff has failed to plead anticompetitive effects in a properly defined relevant market, dismissal is appropriate. *See, e.g.*, *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106-07 (7th Cir. 1984) (lack of anticompetitive effects warrants dismissal of the antitrust claim); *Agnew*, 683 F.3d at 347 (affirming dismissal with prejudice where complaint failed to plead a cognizable relevant market); *O'Neill v. Coca-Cola Co.*, 669 F. Supp. 217, 224 (N.D. Ill. 1987) (dismissing complaint and holding that conclusory allegations were insufficient to establish antitrust injury).

## I. PLAINTIFF FAILS TO ALLEGE THE EXISTENCE OF ANY CONSPIRACY.

Plaintiff's Complaint lacks a basic and necessary element of a Section 1 Sherman Act claim: factual allegations making it plausible that Defendants entered into an anticompetitive agreement. An antitrust plaintiff "must allege facts that, if true, demonstrate that the conspirators 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.'"

*Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 809 (N.D. Ill. 2014) (quoting *Omnicare, Inc.*, 629 F.3d at 706); *see also In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 879 (7th Cir. 2015) ("Collusion is illegal only when based on agreement."). The plaintiff "must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." *Standard Iron Works v. ArcelorMittal*, 639 F. Supp. 2d 877, 900 (N.D. Ill. 2009). Further, it is "essential to show that a particular defendant joined the conspiracy and knew of its scope." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

Plaintiff's perfunctory allegations fail to meet these requirements by a wide margin. As NAR's Motion to Dismiss explains, the "Buyer Broker Commission Rule," which is the foundation of Plaintiff's Complaint, does not exist. NAR Mem. at 4-5, 16. Plaintiff, therefore, cannot allege a conspiracy asserting that the Corporate Defendants adopted, implemented, or enforced a non-existent rule. That should end the inquiry.

Plaintiff's claim fails as against the Corporate Defendants for other, additional reasons. Plaintiff fails to allege any agreement among any of the Corporate Defendants, or between any particular Defendant and NAR. He alleges no interactions among the Corporate Defendants whatsoever, and certainly nothing that would support the existence of an anticompetitive conspiracy among them sufficient to survive a motion to dismiss. *See, e.g., Twombly*, 550 U.S. at 557; *Frantzides v. Northshore Univ. HealthSystem Faculty Practice Assoc., Inc.*, 787 F. Supp. 2d 725, 731-32 (N.D. Ill. 2011); *see also Rocha*, 15 F. Supp. 3d at 809 (dismissing antitrust

claim where "the complaint does not provide 'enough factual matter' to suggest that an agreement was made").[5]

The Complaint, in fact, does not allege *any* conduct in furtherance of the alleged conspiracy by any individual Corporate Defendant. Instead, Plaintiff relies on insufficient and improper group pleading regarding the "Defendants." *See, e.g.,* Compl. ¶¶ 51, 52, 58; *see also SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 423 (4th Cir. 2015) (quoting *Bates v. City of Chicago*, 726 F.3d 951, 958 (7th Cir. 2013)) (affirming dismissal of antitrust claims as to defendants that the complaint "lumped" together). In those rare instances where the Complaint does assert individualized allegations against any of the four Corporate Defendants, the allegations describe entirely different, independent, and unilateral decisions made by each Corporate Defendant regarding whether and how that Corporate Defendant incorporates NAR's ethical guidance or particular rules into its business. Such allegations both preclude Plaintiff's impermissible group pleading attempt and are insufficient, even taken as true, to show conspiracy. Plaintiff's failure to plead any facts plausibly suggesting that any Corporate Defendant entered into any anticompetitive agreement is fatal to his claim. *See, e.g.*, *Twombly*,

---

[5] There is no suggestion in the Complaint that the Corporate Defendants ever communicated about NAR's rules or that they any had any awareness whatsoever of each other's policies concerning their franchisees or affiliated brokers' or agents' participation in MLSs. Plaintiff therefore fails to allege that the Corporate Defendants had a conscious commitment to enter into a conspiracy with one another and fails to plead a sustainable conspiracy claim. *Twombly*, 550 U.S. at 565 n.10 (affirming dismissal of complaint and noting that the complaint "furnishes no clue as to which of the [defendants] supposedly agreed, or when and where the illicit agreement took place"); *see also Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 256 (3d Cir. 2010) (dismissing claim based on finding that plaintiff's "allegations do not offer even a gossamer inference of any degree of coordination," or an opportunity to coordinate, among defendants); *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 221 (4th Cir. 1994) (affirming dismissal of complaint "lack[ing] completely any allegations of communications, meetings, or other means through which one might infer the existence of a conspiracy").

550 U.S. at 556 (dismissing for failure to allege facts that are "suggestive enough" of any coordinated conduct "to render a § 1 conspiracy plausible").

### A.     Plaintiff's Impermissible Group Pleading Is Not Sufficient to State a Cause of Action.

Plaintiff's Complaint should be dismissed because he does not "allege that each individual defendant joined the conspiracy and played some role in it." *Standard Iron Works*, 639 F. Supp. 2d at 900.  Plaintiff cannot meet his pleading burden through allegations as to "Defendant Franchisors" generally, with no allegations of "any particular activities" by each individual Corporate Defendant.  *See, e.g., In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007); *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 JG VVP, 2011 WL 7053807, at *19 (E.D.N.Y. Jan. 4, 2011), *R&R adopted*, No. 08-CV-00042 JG VVP, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) (rejecting antitrust claims with group pleading that ignored corporate separateness).  Plaintiff's conclusory allegations that "Defendants" engaged in conduct or that "for example," a particular Defendant did something, fail to make the requisite plausible allegations about each Defendant's "particular activities."  On this basis the Complaint should be dismissed.

### B.     Plaintiff Fails to Allege An Agreement or Concerted Action by Any Corporate Defendant.

Setting aside Plaintiff's attempt to rely on undifferentiated allegations concerning "Defendants," those allegations also fail to support a plausible conspiracy because the Complaint itself supplies the independent, non-conspiratorial reasons each Defendant has for engaging in the alleged conduct.  Because there are equally plausible lawful explanations for the Corporate Defendants' alleged conduct, the Complaint's conspiracy allegations fail.

Plaintiff describes three activities as the basis for his allegation that the Corporate Defendant conspired with NAR:  (1) requiring or encouraging franchisees to comply with certain

NAR rules; (2) supervision of NAR by executives of certain Corporate Defendants, and others; and (3) influence by franchisees (but not the Corporate Defendants themselves) over local associations of Realtors.  Compl. ¶ 51.  Those allegations do not plausibly establish an agreement of any kind, let alone an anticompetitive agreement in restraint of trade, or that any Corporate Defendant consciously committed to a common scheme to commit some *unlawful* activity.  At best, Plaintiff describes participation in lawful real estate industry activities that are as consistent with independent, unilateral conduct as they are with the purported conspiracy— making those allegations insufficient to state a claim under Section 1 of the Sherman Act.  *See Twombly*, 550 U.S. at 556-57 ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

Furthermore, Plaintiff cannot plausibly state a Section 1 Sherman Act claim merely by alleging that the Corporate Defendants participated in lawful industry activities.  *See id.* at 557 ("without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory").  But that is all Plaintiff here does.  As a result, his claim should be dismissed.

### 1. Encouraging Compliance with NAR or MLS Rules Is Consistent with Independent Action.

Plaintiff's allegations are consistent with independent, lawful actions by each Corporate Defendant, rather than indicative of an unlawful conspiracy.  Unsurprisingly, the Supreme Court requires conspiracy allegations to suggest the existence of a "preceding agreement" or "meeting of the minds," and not merely "conduct that could just as well be independent action."  *Twombly,* 550 U.S. at 557.  Yet Plaintiff does not even attempt to allege any "preceding agreement" (or any agreement at all) among the Corporate Defendants to adopt any of NAR's challenged rules.

Moreover, Plaintiff's own allegations demonstrate that the conduct he describes was in each Corporate Defendant's own individual interest and not probative of any claimed conspiracy.

Plaintiff himself explains in the Complaint that participation in MLSs is a "commercial necessity" for real estate brokers and agents. Compl. ¶ 47. Access to MLSs is "critical for brokers to compete and to assist home buyers and sellers in the areas in which . . . MLSs operate." *Id.* ¶ 65. Given that "critical" fact, it is in each Corporate Defendant's individual interest to encourage its franchisees to participate in MLSs, because, as Plaintiff alleges, such participation is necessary for competitive success. Accordingly, Plaintiff's allegation that Corporate Defendants provide such encouragement does not support an inference of an illegal agreement, but instead, reflects independent competitive conduct.

Plaintiff also alleges that the Covered MLSs require compliance with NAR's rules and that, without compliance with NAR's MLS rules, brokers cannot participate in MLSs. *Id.* Thus, according to Plaintiff's Complaint, Corporate Defendants' franchisees adhere to MLS rules not in furtherance of a conspiracy, but because each needs to do so in order to be able to receive essential services from its local MLS. Moreover, the Seventh Circuit has concluded that NAR's rules are intended to ensure the effective and efficient functioning of its affiliated MLSs and ethical interactions among real estate professionals. *See, e.g., Reifert*, 450 F.3d at 315 (holding that NAR code of ethics provision prohibiting Realtors from soliciting clients who have already entered into agreement with other Realtors "aids competition and fulfills the purposes of the Sherman Act by providing a more transparent marketplace").[6] Compliance with MLS rules thus reflects a sound decision on the part of each Corporate Defendant's franchisees to promote a

---

[6] *See also O'Riordan v. Long Island Bd. of Realtors*, 707 F. Supp. 111, 115 (E.D.N.Y. 1998) (noting that MLSs function "like an exchange and provide[] wide dissemination of market information").

competitive market by fostering transparency, and does nothing to support the existence of a conspiracy.

On this basis, Plaintiff's conspiracy claim fails.  Plaintiff's few factual allegations are fully consistent with independent, non-conspiratorial action and thus, "stop[] short of the line" between the possibility and plausibility of the existence of a conspiracy, and fail to support Plaintiff's conspiracy allegations, even at the pleading stage.  *See Twombly*, 550 U.S. at 557; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 2. Participation in NAR or Its Local Associations, Even in Leadership Roles, Does Not Plausibly Support Involvement in a Conspiracy.

Nor can Plaintiff save his deficient conspiracy allegations by asserting that certain Corporate Defendants' executives participated in the management and operation of NAR and that certain Corporate Defendants encouraged their franchisees to be involved in local Realtor association governance.  Compl. ¶¶ 51, 54-57.  Neither allegation sufficiently suggests the existence of any agreement that can support a claim for relief against any of the Corporate Defendants.

Put simply, Plaintiff's allegations of participation by some executives of some Corporate Defendants (but not all of them) in the leadership of NAR at a time unrelated to the 1996 implementation of the so-called Buyer Broker Commission Rule, do not suggest the existence of a conscious commitment to a common scheme by even those allegedly participating Corporate Defendants.[7]  Trade associations are a ubiquitous feature in many industries, and courts hold that "[m]ere membership in a trade association, attendance at trade association meetings, and participation in trade association activities are not, in and of themselves, condemned or even

---

[7] This is an example of allegations that demonstrate a lack of even parallel conduct among the Corporate Defendants, making the existence of the alleged conspiracy among them even less plausible.

-12-

discouraged by the antitrust laws." *Kleen Prods. LLC v. Int'l Paper*, 276 F. Supp. 3d 811, 834 (N.D. Ill. 2017), *aff'd sub nom. Kleen Prods. LLC v. Georgia-Pac. LLC*, 910 F.3d 927 (7th Cir. 2018) (quoting *Moore v. Boating Indus. Assocs.*, 819 F.2d 693, 712 (7th Cir. 1987) (internal quotation and alteration marks omitted).  To hold the Corporate Defendants whose executives allegedly participated in NAR leadership liable, "there must be some evidence of, and participation in, an illegal scheme" with NAR.  *Marrese v. Am. Acad. of Orthopaedic Surgeons*, No. 80 C 1405, 1991 WL 5827, at *6 (N.D. Ill. Jan. 15, 1991), *aff'd*, 977 F.2d 585 (7th Cir. 1992) (internal quotation omitted); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) ("[e]ven participation on the association's board of directors is not enough by itself" to create liability) (citing *Twombly*, 550 U.S. at 556-57); *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999).  Plaintiff's Complaint lacks any such allegations.

Here, the Complaint contains only the bare assertions that some Corporate Defendants' executives recently held or currently hold certain leadership positions in NAR.  *See* Compl. ¶¶ 54, 55.  The Complaint fails, however, to allege that any Corporate Defendant executive engaged in conduct relating to the alleged Buyer Broker Commission Rule in 1996, when adopted, or since it was allegedly implemented, or otherwise to allege a meeting of the minds among NAR and any executive of the Corporate Defendants.  Furthermore, Plaintiff's allegations regarding the Corporate Defendants' leadership in NAR also fail to account for (1) differences in the nature of the alleged participation by the different Corporate Defendants; (2) Plaintiff's concession that at least one Corporate Defendant, Keller Williams, did not participate at all; or (3) that the only purported involvement of each of Realogy and RE/MAX was actually by neither, but by non-defendants, employees of independently owned and operated franchisees.

-13-

*See* Compl. ¶¶ 55, 57, and text *infra* at 20-21 for the similarly insufficient alleged involvement by HomeServices. Accordingly, Plaintiff's allegations do not establish "that each individual defendant joined the conspiracy and played some role in it," *Standard Iron Works*, 639 F. Supp. 2d at 900, or that each "defendant joined the conspiracy and knew of its scope," *Knight*, 725 F.3d at 818. Rather, the differences in the levels of alleged participation suggest the absence of coordination among the Corporate Defendants or with NAR.

### 3. Encouraging or Requiring Franchisees Agents to Join Local Realtor Associations Does Not Show Conspiracy.

Plaintiff alleges that executives of franchisees or affiliated brokerages of Corporate Defendants, but not any of the Corporate Defendants themselves, "influence" local Realtor associations. Compl. ¶¶ 51, 56-57. Plaintiff cannot connect Corporate Defendants to an illegal agreement based on such bare allegations.

This Court has found that a plaintiff fails to state a conspiracy claim when the complaint merely alleges that defendants encouraged others to participate in anticompetitive activity. *Hackman v. Dickerson Realtors, Inc.*, 520 F. Supp. 2d 954, 967 (N.D. Ill. 2007) (dismissing antitrust conspiracy claims based on conclusory allegations of alleged fixing of commission rates by Realtors, a state Realtor association, and a local association). "[A]n allegation of encouragement is not a sufficient allegation of fact that raises [plaintiff's] right to relief above a speculative level." *Id*. (citing *Twombly*, 550 U.S. at 554-55). In other words, "encouragement absent an agreement is not enough" to allege a plausible Section 1 claim under the Sherman Act. *Id*. at 965. Thus, allegations that a Corporate Defendant encourages involvement in local Realtor associations do not cross "the line between possibility and plausibility" in order to state a valid conspiracy claim. *Twombly*, 550 U.S. at 557.

Plaintiff's allegations are even thinner than the allegations found to be insufficient in *Hackman*. Here, Plaintiff alleges only that certain Corporate Defendants encouraged local franchisees *to participate* in governance of local Realtor associations. Compl. ¶ 57. There are no allegations, however, that the Corporate Defendants encouraged anticompetitive activity through participation in local associations. And there are no allegations of any agreement whatsoever between any Corporate Defendant and its franchisees to conspire or engage in illegal activity.[8] Thus, Plaintiff's allegations regarding the franchisees' participation in local Realtor associations are far below the *Twombly* standards for a plausible conspiracy claim.

## II. ALLEGATIONS AS TO EACH CORPORATE DEFENDANT ARE INSUFFICIENT TO MAINTAIN A CLAIM AGAINST ANY OF THEM.

As shown above, Plaintiff's assertions about Defendants' undifferentiated conduct do not plausibly allege conspiracy. Moreover, the asserted conduct is more consistent with independent, unilateral action than with conspiracy. Additionally, Plaintiff fails plausibly to allege conspiracy for another reason: the limited, specific references to each Corporate Defendant do not save the allegations or plausibly tie any of the individual Corporate Defendants to a conspiracy. The claim as to all of them, as well as with respect to each individually, should therefore be dismissed.

### A. The Court Should Dismiss the Claim as to Keller Williams.

Plaintiff devotes only one substantive paragraph in his Complaint to Keller Williams specifically, and fails in that paragraph to allege any conduct on the part of Keller Williams that

---

[8] The Supreme Court in *Copperweld* discussed the legal requirements to assess whether related corporate entities can be legally capable of conspiring with one another in violation of the antitrust laws. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984). Here, Plaintiff fails entirely to allege any facts to support a legal conclusion that any of the Corporate Defendants are legally capable of conspiring with their respective franchisees in violation of the antitrust laws. *See, e.g.*, *Williams v. I.B. Fischer Nevada*, 794 F. Supp. 1026, 1031 (D. Nev. 1992), *aff'd*, 999 F.2d 445 (9th Cir. 1993).

supports its involvement in a conspiracy. For this reason, the Court should dismiss the Complaint as to Keller Williams.

### 1. Plaintiff Fails to Identify Keller Williams Personnel Involved in NAR Leadership.

By failing to identify a single person associated with Keller Williams involved in "supervis[ing] NAR's operations" or "actively participat[ing] in the management and operation of NAR," Compl. ¶¶ 51, 54, Plaintiff's allegations provide no support whatsoever for Keller Williams' participation in any alleged conspiracy. Allegations that the Corporate Defendants participated in NAR are central to Plaintiff's theory that these Defendants conspired with each other and NAR through their involvement in NAR leadership. But with no factual allegations concerning involvement by any of its executives or franchisees in NAR activities, these allegations could not possibly support a claim against Keller Williams.

### 2. Keller Williams' Encouragement to Franchisees' Agents to Be Involved in Local Realtor Associations is Consistent with Independent Action.

As previously discussed, conduct as consistent with independent action as with participation in an alleged conspiracy does not plead a plausible conspiracy that can withstand a motion to dismiss. *See Twombly*, 550 U.S. at 556-57. In Plaintiff's sole factual allegation related to Keller Williams, he alleges that Keller Williams' policies encourage franchisees "to be involved in local realtor association governance," Compl. ¶ 57; but to support his point, he selectively quotes from Keller Williams' policies in a misleading way. Keller Williams' Policies & Guidelines Manual not only fails to support the points for which it is cited, but in fact provides an explanation for the encouragement that supports each agent's independent (non-conspiratorial) interest.

The complete provisions of the Keller Williams Policy & Guidelines Manual from which Plaintiff selectively quotes read as follows:[9]

- § 4.9.1.28.3: **State or Provincial [REALTOR® Associations]**: We encourage you to be actively involved to the greatest possible extent. We realize the time factor causes you to be less active in these than your local Board, but we do want to encourage you to attend these conventions and seminars. These seminars could put money in your pocket as you might receive referrals from other associates.

- § 4.9.1.28.4: **Local [REALTOR® Associations]**: A REALTOR® association is a trade association of the professionals dealing in the real-estate business. Members conform to the high ideals set forth in the Code of Ethics. We encourage you to take an active role in any such local association.

Allen Decl. Ex. A, at 4-30. Contrary to the impression Plaintiff sought to leave by quoting only parts of these provisions, neither suggests involvement in "local realtor association *governance*." Compl. ¶ 57 (emphasis added). Each calls only for involvement in the associations themselves, with no explicit or even implicit reference to involvement in governing activities. As stated above, participation in a trade association itself, without more, does not support a claim under Section 1 of the Sherman Act. *See supra* Part I(B)(2). Without any allegations of involvement by Keller Williams in Realtor association governance, Plaintiff's allegation that Corporate Defendants "implemented the conspiracy" through "participat[ion] in the governance of local realtor associations," Compl. ¶ 56, does not apply to Keller Williams and does not plausibly show its involvement in any conspiracy.

Moreover, the selectively quoted provisions, read in context, explain the independent basis behind Keller Williams' encouragement to franchisees (and franchisees' agents) to become

---

[9] As noted, *supra* n.1, when a complaint relies on documents not attached to the complaint, the court may consider the entire document–not just the portions cited by the plaintiff–when deciding a motion to dismiss. *See Tellabs, Inc.,* 551 U.S. at 322; *Venture Assocs. Corp.,* 987 F.2d at 431. True and correct copies of the pages of the Keller Williams "Policy & Guidelines Manual" containing the quoted provisions referenced in and central to the complaint are attached to this motion. *See* Ex. 1: Declaration of Chad Allen at Ex. A.

involved in local Realtor associations.  The Policy & Guidelines Manual expressly encourages participation because doing so "could put money in your pocket as you might receive referrals" from local brokers and agents.  With this independent, non-conspiratorial explanation for Keller Williams' encouragement, Plaintiff's thin allegation of Keller Williams' involvement in a conspiracy based only on that encouragement "stops short of the line" between the possibility and plausibility of the existence of a conspiracy, and fails to support allegations that Keller Williams participated in a conspiracy.  *See Twombly*, 550 U.S. at 557.

Finally, the quoted provisions of Keller Williams' Policies & Guidelines Manual simply "encourage" participation by its franchisees' agents in local Realtor associations.  As discussed above, encouragement alone does not support a claim against Keller Williams.  *Hackman*, 520 F. Supp. 2d at 967.

For these reasons, Keller Williams respectfully requests that the Court dismiss Plaintiff's claim as against it.

### B.     The Court Should Dismiss the Claim as to RE/MAX Holdings.

As set forth above, to sustain his claim, Plaintiff "must allege that each individual defendant joined the conspiracy and played some role in it," *Standard Iron Works*, 639 F. Supp. 2d at 900, and cannot engage in generalized group pleading with no allegations of "any particular activities" by RE/MAX Holdings.  *In re Elevator Antitrust Litig.*, 502 F.3d at 50.  The Complaint fails to satisfy this burden as to RE/MAX Holdings.

As discussed *supra*, leadership in a trade association does not show conspiracy, but in any event, Plaintiff has failed to allege even that as to RE/MAX Holdings.  The Complaint nowhere alleges that any RE/MAX Holdings employee or executive is or has been involved in NAR leadership, and notes only that an employee of an independently owned and operated

franchisee has held a NAR position.  Compl. ¶ 55.  The Complaint thus fails to allege plausibly any participation in NAR leadership by RE/MAX Holdings.

Even more importantly, Plaintiff does not allege that RE/MAX Holdings participated in the creation or adoption of the provisions of the NAR Handbook and Code of Ethics that Plaintiff challenges; or that RE/MAX Holdings agreed with any other Defendant to require or encourage broker compliance.  Plaintiff's general, conclusory assertion that the Corporate Defendants require franchisees to join "local realtor associations that adopted and enforced NAR's rules" fails to allege conspiracy not only because it is wholly conclusory, but for at least two additional reasons.  First, as set forth above, Plaintiff himself provides the procompetitive, non-conspiratorial explanation for this requirement, namely, it provides brokers with access to necessary information to enable home sales.  Second, instead of meeting his burden to allege "particular activities" by RE/MAX Holdings, *In re Elevator Antitrust Litig*., 502 F.3d at 50, Plaintiff offers a quotation from a RE/MAX franchise agreement that actually precludes his assertion.  The quote states that RE/MAX Holdings required a Las Vegas franchisee join a "local Board of Realtors® (***or comparable organizations***)."  Compl. ¶ 53 (emphasis added).  A requirement to join a local board of Realtors is, as shown above, consistent with lawful activity.  *See supra* Part I(B).  Moreover, Plaintiff provides no factual allegation to show that whatever unstated "comparable organizations" require compliance with NAR rules.[10]

### C.    The Court Should Dismiss the Claim as to Realogy.

As to Realogy, the Complaint is fatally deficient as well.  The only substantive factual allegations in the Complaint that even mention Realogy assert that NAR's Vice President of

---

[10] The franchise agreement is with a franchisee in Las Vegas, even though Plaintiff's home sale was in Minnesota.

Association Affairs, Colleen Badagliacco, is an agent for Legacy Real Estate & Associates, which is an independently owned and operated *franchisee* of Realogy, and that the 2019 NAR leadership team includes another independent Realogy franchisee. Compl. ¶ 55. Thus, the Complaint only alleges a Realogy franchisee on both the 2018 and 2019 leadership teams; it alleges *no* conduct by Realogy itself, either now or in 1996, at the time the challenged commission rule was adopted by NAR. *Id.*

As a result, Plaintiff has failed to allege any facts that Realogy entered into an agreement (either between Realogy and NAR, or among Realogy and any other Defendant) or engaged in any anticompetitive restraint of trade, and the claims against Realogy should be dismissed. *See, e.g.*, *In re Elevator Antitrust Litig.*, 502 F.3d at 50-51.

### D. The Court Should Dismiss the Claim as to HomeServices.

The Complaint likewise fails to allege any specific conduct by HomeServices that plausibly indicates HomeServices participated in a conspiracy. The sole factual allegations in the Complaint specifically relating to HomeServices—as opposed to the collective "Defendants"—are that HomeServices is headquartered in Minneapolis, Minnesota, Compl. ¶ 20; that it is an affiliate of Berkshire Hathaway, *id.*; that it owns, operates, and franchises many real estate brokerage firms, *id.*; and that HomeServices' chairman currently serves as a NAR director, *id.* ¶ 54. Plaintiff does not allege that HomeServices, or its current chairman, had anything to do with the adoption, implementation, or enforcement of the alleged Buyer Broker Commission Rule or NAR's Code of Ethics, Standard of Practice 16-16. Indeed, the Complaint does not even allege that HomeServices *existed* at that time of the November 1996 enactment of the so-called Buyer Broker Commission Rule. The Complaint also does not allege that HomeServices (or any of its current or former personnel) have had anything to do with enforcing the alleged Buyer Broker Commission Rule or Standard of Practice 16-16, much less that any

such action occurred pursuant to a conspiracy. The Complaint alleges no specific facts regarding HomeServices' "participat[ion] in the governance of local realtor associations," *see id.* ¶ 56, nor that any allegations plausibly support an inference that it participated in a conspiracy. Plaintiff does not allege any agreement between HomeServices and NAR, or among HomeServices and any other Defendant.

Likewise, although the Complaint mentions four employees of "HomeServices franchisees and/or subsidiaries," *see id.* ¶¶ 54, 55, there is no factual content linking the alleged conduct of these persons to the claimed Buyer Broker Commission Rule, Standard of Practice 16-16, or HomeServices itself. For these additional reasons, HomeServices respectfully requests that the Court dismiss Plaintiff's claim as against it.

## III. PLAINTIFF HAS FAILED TO ALLEGE A RESTRAINT OF TRADE IN A PROPERLY DEFINED RELEVANT MARKET.

Plaintiff has also fatally failed to allege adequately that the supposed conspiracy had an anticompetitive effect in a legally cognizable relevant market because Plaintiff has failed to allege anticompetitive effects in a properly defined market.

Because the Complaint fails to allege either an agreement as to each individual Defendant, the Court need go no further and should dismiss Plaintiff's Complaint. In addition to these threshold deficiencies, the Supreme Court has explained that in order to assess whether an antitrust claim has been adequately asserted, a plaintiff must allege a cognizable relevant market in which the supposed anticompetitive restraint has been imposed by defendant's conduct. *See Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018). The relevant market in a Section 1 case is "the area of effective competition . . . within which significant substitution in consumption or production occurs." *Id.* Here, Plaintiff alleges that the relevant market is the market of "the bundle of services provided to home *buyers and sellers* by residential real estate brokers with

-21-

MLS access." Compl. ¶ 65 (emphasis added). Not only is the procompetitive rationale for sellers offering buyer broker commissions apparent from the face of the Complaint (*i.e.*, sellers that are motivated to sell quickly can offer a higher commission and receive more buyer interest while sellers that are motivated to reduce transaction costs can offer lower commissions), *see* Compl. ¶ 41,[11] but Plaintiff has also failed to allege facts showing that broker commissions for the relevant market would be lower in the absence of the supposed rule being challenged. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 593-97 (1986) (rejecting antitrust claim that was unsupported by economic theory); *JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 778 (7th Cir. 1999). Rather, Plaintiff points to one academic study that suggests brokerage rates "should run closer to 3.0%" in comparison to international markets, but Plaintiff alleges no facts that relate this assertion to the conduct alleged in the Complaint. Moreover, the report that Plaintiff cites itself acknowledges that "*agents do not earn excess profits.*" *See* Decloure & Miller, *International Residential Real Estate Brokerage Fees and Implications for the US Brokerage Industry*, 5 Int'l Real Estate Rev. 12, 13 n.3 (2002) (emphasis added), attached as Ex. 2.[12] Because Plaintiff's authority affirmatively demonstrates that "agents do not earn excess profits," and Plaintiff alleges no other facts that show anticompetitive effects in the alleged relevant market "as a whole," *American Express*, 138 S. Ct. at 2287, Plaintiff's Complaint should be dismissed.

---

[11] *See also* NAR Mem. at 12-13.

[12] The full text of this report is subject to judicial notice because it is cited and quoted in Plaintiff's Complaint. *See, e.g.*, *Tellabs, Inc.*, 551 U.S. at 322.

## CONCLUSION

For the foregoing reasons, and the arguments made in NAR's Memorandum in which the Corporate Defendants have joined, the Court should grant the Corporate Defendants' Motion To Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: May 17, 2019                                    Respectfully submitted by:

*Counsel for Homeservices of America, Inc.*

/s/ Karoline E. Jackson

Matthew B. Barr
  matthew.barr@btlaw.com
Matthew T. Ciulla
  matthew.ciulla@btlaw.com
Karoline E. Jackson
  kjackson@btlaw.com
Robert D. Macgill
  robert.macgill@btlaw.com
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
(317) 231-6498

Denise A. Lazar
  denise.lazar@btlaw.com
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
(312) 214-4816

Jay N. Varon
  jvaron@foley.com
Jennifer M. Keas
  jkeas@foley.com
FOLEY AND LARDNER LLP
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 672-5436

*Counsel for Keller Williams Realty, Inc.*

/s/Timothy Ray

Timothy Ray
  Timothy.Ray@hklaw.com
Martin G. Durkin
  martin.durkin@hklaw.com
William F. Farley
  william.farley@hklaw.com
HOLLAND & KNIGHT LLP
131 South Dearborn Street
30th Floor
Chicago, IL 60603
(312) 263-3600

David C. Kully
  david.kully@hklaw.com
Anna P. Hayes
  anna.hayes@hklaw.com
HOLLAND & KNIGHT LLP
800 17th Street NW, Suite 1100
Washington, DC 20530
(202) 469-5415

-23-

Erik Kennelly
 ekennelly@foley.com
FOLEY & LARDNER LLP
321 N. Clark St., Suite 2800
Chicago, IL 60654
(312) 832-4588

*Counsel for Realogy Holdings Corp.*

/s/ Kenneth M. Kliebard
_____

Kenneth Michael Kliebard
 kenneth.kliebard@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601-5094
(312) 324-1000

Stacey Anne Mahoney
 stacey.mahoney@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

*Counsel for RE/MAX Holdings, Inc.*

/s/ Paula W. Render
_____

Paula W. Render
 prender@jonesday.com
Erin L. Shencopp
 eshencopp@jonesday.com
Odeshoo Hasdoo
 ehasdoo@jonesday.com
JONES DAY
77 W Wacker, Suite 3500
Chicago, IL 60605
(312) 782-3939