UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER MOEHRL, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., RE/MAX HOLDINGS, INC., and KELLER WILLIAMS REALTY, INC.,<br><br>    Defendants. | Civil Action No. 1:19-cv-01610<br><br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY AND DEFER COMPLIANCE WITH MIDP REQUIREMENTS PENDING RESOLUTION OF MOTIONS TO DISMISS |

i

Defendants have asked the Court "to stay discovery and defer compliance with Mandatory Initial Discovery Program ("MIDP") requirements" pending resolutions of Defendants' motions to dismiss. Two developments subsequent to Defendants' filing are relevant.[1] First, Plaintiff has advised Defendants that, in accordance with Federal Rule of Civil Procedure 15(a), Plaintiff is filing an Amended Complaint (the parties have agreed that, subject to the Court's approval, the Amended Complaint shall be filed on June 14, 2019). Second, it has been publicly reported that the United States Department of Justice Antitrust Division is actively "investigating potentially anti-competitive practices in the residential real estate brokerage business, with a focus on compensation to brokers and restrictions on their access to listings," and has commenced the Civil Investigative Demand process. *See* Exhibits A & B.[2]

The categorical stay requested by Defendants is unwarranted. Instead, the parties should proceed with focused discovery that is consistent with the goals underlying the Mandatory Initial Discovery Pilot Program. Plaintiff has proposed to Defendants that both sides submit Mandatory Initial Discovery Responses, and that Defendants provide copies of any documents they are already, or will be, producing to the Justice Department in response to CID's. Proceeding with the MIDP Initial Discovery Responses is, in fact, *supported* by two of the cases relied upon in Defendants' motion. Plaintiff's counsel is also available to meet with defense counsel at any convenient time to discuss any particularized concerns Defendants may have (such as entry of a

---

[1] Defendants' Motion to Stay Discovery and Defer Compliance With MIDP Requirements Pending Resolution of Motion to Dismiss, ECF No. 71 ("Def. Mot.").

[2] Exhibit B is the Civil Investigate Demand that the Justice Department's Antitrust Division has served upon CoreLogic, the largest aggregator of MLS data in the United States. Plaintiff does not know what other CID's have been served by the Department of Justice and has informally asked the Defendants if they have already been served with CID's.

1

protective order, which is a standard practice in antitrust litigation). Specifically, Plaintiff proposes:

- Plaintiff's Amended Complaint shall be filed on June 14, 2019.

- Defendants' renewed motions to dismiss should be due by July 12, 2019; Plaintiff's opposition should be filed by August 12, 2019; and Defendants' replies should be filed by September 11, 2019.

- The Plaintiff should submit Mandatory Initial Discovery Responses by August 12, 2019; the Defendants' Mandatory Initial Discovery Responses should be submitted by September 11, 2019.

- The Defendants' should produce any CID's received from the Department of Justice in the past 12 months (or hereafter), and responsive documents produced to the Justice Department, by September 11, 2019, or as soon thereafter as such documents are produced.

- Plaintiff's counsel are prepared to confer with the Defendants at any time that is convenient for them so that a standard protective order and ESI protocol may be entered in this case.

In support of Plaintiff's opposition to Defendants' request "to stay discovery and defer compliance with Mandatory Initial Discovery ("MIDP") requirements," Plaintiff states as follows:

1. This case challenges conduct by the Defendant' that has caused the plaintiff class of home sellers to pay supra-competitive commissions (i.e., overcharges) to buyer-brokers. Plaintiff's case focuses primarily on the rule set forth in the National Association of Realtors' (NAR's) Handbook on Multiple Listing Policy and quoted in paragraph 40 of the Complaint ("the Rule"):

> "In filing a property with the multiple listing service of an association of Realtors®, the participant of the service is making blanket unilateral offers of compensation to the other participants, and shall therefore specify on each listing filed with the service, the compensation being offered to the other MLS participants."

The Rule further provides that:

2

> "Multiple listing services shall not publish listings that do not include an offer of compensation expressed as a percentage of the gross selling price or as a definite dollar amount, nor shall they include general invitations by listing brokers to other participants to discuss terms and conditions of possible cooperative relationships."

Complaint ¶ 40.

2. The Rule is manifestly anti-competitive in its terms, application, and entirely predictable market impact. Specifically:

- The Rule requires all Sellers using the MLS to make an offer of compensation to "the other MLS participants," which includes all buyer-brokers participating on the MLS. In other words, *it compels the seller to make an offer of payment to the buyer-broker*, even though the buyer-broker is working on behalf of the buyer, not the seller.

- It requires that this be a *blanket* offer – i.e., the compensation terms must be offered to every buyer-broker without regard to their experience, the services they are providing to the buyer, or the financial arrangement they have made with the buyer.

- Because this blanket offer must be made available to every buyer-broker using the MLS (i.e., virtually all buyer-brokers) – and can be compared by the buyer-broker with the blanket offers that every other seller must post on the MLS – *the Rule creates tremendous pressure on sellers to offer the high commission that has long been maintained in this industry* so that buyer-brokers will not "steer" buyers to properties offering higher buyer-broker commissions.

- Indeed, *the Rule facilitates anti-competitive steering by buyer-brokers* because it allows them to identify and compare the buyer-broker compensation offered by every seller in the MLS and steer clients to properties offering higher commissions. (The prevalence of such steering – including its anticompetitive impact on consumers and exclusionary impact on agents trying to compete with alternative, lower-cost models - - is widely recognized in the economic literature).

- These impacts are magnified by the Rule's requirement that the required compensation must be offered as a percentage of the gross selling price or a definite dollar amount – a requirement that facilitates comparisons and steering by the buyer-broker – and the Rule's *prohibition* on "general invitations by listing [i.e., seller] brokers to other participants to discuss terms and conditions of possible cooperative relationships."

- *These anti-competitive effects are further compounded by the fact that neither the buyer nor the seller is even permitted to view this universe of buyer-broker commission terms* and thus are unlikely to know whether the buyer-broker is engaged in steering to higher commission properties. (The obfuscation for buyers is made

3

even worse by NAR's ethical rule expressly permitting buyer-brokers to tell buyers that the broker's services are "free" for the buyer).

3. The "agreement" that the NAR-controlled multiple listing services ("MLS") offers to agents is thus quite straightforward and readily provable in this case: if you want to participate in the MLS, you must agree to these anti-competitive terms. As set forth in the Complaint, each of the Corporate Defendants requires its groups and agents to become a party to the NAR/MLS agreement in order to gain the benefits of the corporation's brand, structure and additional support. This situation is analogous to an entity (here, NAR) that says to brokerage groups and agents "you can gain the benefits of partnering with us, but you have to agree to fix prices," and the corporate brokerages then require its agents to enter that agreement. Here, they are being directed to join and participate in an agreement that is highly anti-competitive and illegal. And the agreement serves the same goals for NAR and the Corporate Defendants – it maintains a system in which sellers must pay buyer-brokers, buyer-broker commissions are maintained at supra-competitive levels, and entry by lower-cost alternative models is restrained. As set forth in the Complaint, this has resulted in overcharges paid by home sellers to buyer-brokers that are supra-competitive by every relevant measure – they are far higher than the charges in many other countries, they have increased over-time despite the emergence of new technologies that drive down costs, and the overcharges are maintained at this supra-competitive level with little regard to the value of the house being sold, the costs involved, the market, or the experience of the buyer-broker.[3]

---

[3] Although this is not the occasion to debate the merits of Defendants' motions to dismiss, because they are referenced in the Motion to Stay, we will simply note that Defendants' focus on the Complaint's use of the term "non-negotiable" ignores the actual terms and anti-competitive effects of the Rule quoted in the complaint. Regardless of the *buyer's* ability to negotiate with his or her broker, the *seller* must still pay the buyer's commissions, causing significant harm to the seller. Moreover, although Plaintiff will prove that significant constraints are imposed on negotiation of

4. In accordance with Federal Rule of Civil Procedure 15(a), Plaintiff intends to file an Amended Complaint so these issues can be framed as clearly as possible. From Plaintiff's perspective, the challenges to the Rule are plainly sufficient to survive a motion to dismiss. Indeed, it is telling that the very cases Defendants rely upon to assert that "numerous courts, including the Seventh Circuit, have held" that the "actual NAR rule and the MLS system of which it is a key part are procompetitive"[4] do not even discuss (let alone uphold) the anti-competitive features of the Rule being challenged in this case and were decided *at the summary judgment stage, not on a motion to dismiss.*

5. Although Plaintiff agrees that it is appropriate to extend the time for mandatory disclosures, so they can be predicated on the Amended Complaint, Defendants' request for a categorical stay of all disclosures and any other discovery until motions to dismiss are resolved is unwarranted and would unnecessarily delay progress in this case. The MIDP, as amended effective December 1, 2018, provides as follows:

> Effective December 1, 2018, the MIDP will be amended to provide that answers are due under the time periods established by Rule 12(a). Rule 12(a)(4) provides that answers need not be filed while a Rule 12 motion is pending. As a result, answers no longer will be required – and the MIDP response period will not be triggered – while a motion is pending under Rule 12(b)(6) or any other provision of Rule 12. Under Rule 12(a)(4), *even if a motion to dismiss is filed, the Court retains authority to order an answer and/or permit the parties to make Rule 26(a)(1) initial disclosure and commence discovery under the Federal Rules of Procedure.*

https://www.ilnd.uscourts.gov/_assets/_documents/MIDP%20Changes%20Effective%2012-1-18.pdf (emphasis added).

---

the buyer-broker commission (and that negotiation of that commission occurs infrequently, in no small part because (a) the buyer can be told that the buyer-broker's services are "free" to the buyer, and (b) the buyer-broker has substantial disincentives to negotiate *a reduction* in the buyer-broker commission that has been offered), it is irrelevant to the anticompetitive consequences of the quoted rule, as described above.

[4] Def. Mot. at 2.

6. The purpose of the Mandatory Initial Discovery Pilot Project is to examine innovations that may reduce the costs and delays of underlying civil litigation. Consistent with these goals, Plaintiff has proposed that Plaintiff submit initial Mandatory Initial Discovery Responses by August 12, 2019 (31 days after the date Plaintiff proposes for filing of Defendants' renewed motion to dismiss), and Defendants provide their initial Responses by September 11, 2019. If Defendants have specific concerns about any burden in providing an initial Response, Plaintiff's counsel are prepared to meet and discuss these concerns at any convenient time. This, in fact, is *supported* by *Tichy v. Hyatt Hotels Corp.,* No. 18-cv-01959 (ND. Ill. May 7, 2018), a case cited favorably by the Defendants. (Def. Mot. at 6). In *Tichy,* the Court did *not* stay Mandatory Initial Discovery Responses and, to the contrary, the parties simultaneously *served* the initial disclosures required by Paragraphs (B)(1) through (B)(6) of the MIDP, while the Defendants' motions to dismiss were pending. This allowed the parties to make meaningful progress in the discovery process even though, with the parties' agreement, the Defendant were permitted to defer the actual collection and production of hard copy documents and ESI. *See id*., ECF No. 52 at 2 (joint motion explaining that the parties were only seeking a "narrowly tailored" order to defer obligation to produce documents within 40 days after serving Mandatory Initial Discovery Responses). Indeed, they made clear that:

> The parties do not seek relief from any of the other MIDP requirements and plan to engage in the expeditious discovery process required by the MIDP. As such, Defendants will answer the Complaint at the same time they move to dismiss, and *the parties will serve timely their initial disclosures* required by Paragraphs (B)(1) through (B)(6) of the MIDP.

*Id.* at 2-3 (appended as Exhibit C) (emphasis added). *See also id.,* ECF Nos. 82-87 (Notices of Service of Responses to Mandatory Initial Discovery by the Plaintiff and Defendants).

Similarly, in *Zhirovetskiy v. Zayo Group, LLC,* No. 17-cv-05876 (N.D. Ill. Jan. 23, 2018), also cited favorably by Defendants (Def. Mot. at 6), the parties *did* serve their Mandatory Initial Discovery Responses (ECF Nos. 17 & 18), and subsequently served Amended MIDP Responses (ECF Nos. 34 & 35), notwithstanding the filing of a motion to dismiss. Further discovery was stayed only after Plaintiff filed a motion to have the case remanded to state court.[5] Thus, like *Tichy*, *Zhirovetskiy supports* the position taken by Plaintiff here. *See also Zak v. Bose Corp.*, No. 17-cv-02928 (N.D. Ill. June 29, 2017), ECF No. 23 (Wood, J.) (Ex. D) (denying Defendant's request, in class action case filed prior to effective date of MIDP, that "[f]act discovery should not commence until after the Court rules on Defendant's pending Motion to Dismiss" – ECF No. 22 – and ruling that initial disclosures pursuant to FRCP 26(a)(1) and written and document should proceed, except for discovery related only to class certification and deposition discovery.

Contrary to these cases, the Defendants seek to stay *all* discovery here (including the Mandatory Initial Discovery Responses that proceeded in *Tichy* and *Zhirovetskiy*), based simply on a generalized claim that Plaintiff's discovery requests will be exceedingly broad and burdensome. Such a generalized claim of burden is legally insufficient to justify a stay,[6] and is particularly

---

[5] In *Palmucci* v. Twitter, *Inc.*, No. 1:18-cv-01165 (N.D. Ill. 2018), cited by Defendants, the Plaintiff had already filed eight similar cases against the Defendant and discovery had been stayed in all of them (four times with the plaintiff's consent). In the ninth action, the court stayed discovery after the defendant filed a motion to transfer the case to another jurisdiction – a motion subsequently granted by the court. This case has no bearing on the issues presented here.

[6] The party seeking a stay of discovery bears the burden of showing that "good cause" exists for such an order. *New England Carpenters Health & Welfare Fund. V. Abbott Labs.*, No. 12 C 1662, 2013 WL 690613, at **1, 3 (N.D. Ill. Feb. 20, 2013). Before a stay may be imposed, the moving party must make a "clear showing of [their] burden or cost with any anticipated discovery." *Id.*, 2013 WL at *3. The mere filing of a motion to dismiss is ordinarily not sufficient to justify a stay of discovery. *See, e.g., SK Hand Tool Corp. v. Dresser Indust., Inc.*, 852 F.2d 936, 945 n.11 (7th Cir. 1988) ("Discovery need not cease during the pendency of a motion to dismiss."); *Tomburo v. Dworkin*, No. 04 C 3317, 2010 WL 4867346, at *2 (N.D. Ill. Nov. 7, 2010). As the Court explained in *New England Carpenters*, "[h]ad the Federal Rules contemplated that a motion to dismiss under

7

inapposite here because the Mandatory Discovery Requests are authored by the Court itself, not the Parties. The Mandatory Discovery Requests are specifically designed to facilitate the discovery process ensuring reasonable and timely disclosure of relevant information.  Defendants' argument is essentially a claim that compliance with the MIDP requirements should always be stayed in antitrust (and other) class actions because "permitting any sort of discovery" would impose "disproportionate burden on Defendant" relative to individual plaintiffs seeking class action relief. Nothing in the language or purpose of the MIDP project warrants that conclusion. Courts have also repeatedly rejected Defendants' contention that *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (1977), justifies an automatic stay of discovery in antitrust cases.[7]  Indeed, *Tichy* – where the parties agreed that initial disclosures should proceed – is itself an antitrust class action that utilized the MIDP provisions regarding initial disclosures to efficiently initiate the discovery process.  The same approach should be followed here.

7. Plaintiffs further propose that Defendant's produce by September 11, 2019, any CIDs in their possession that were issued in the past year (or hereafter) from the Justice Department regarding anti-competitive practices in the real estate brokerage industry, any responses to CIDs, and any documents produced in response to those CIDs. This is highly relevant material that would already be encompassed within the scope of materials that Defendants would be obligated to produce under the MIDP. Defendants face no burden in

---

Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." 2013 WL 690613 at *1.

[7] *See New England Carpenters*, 2013 WL 690613, at *3 ("*Twombly and Iqbal* do not *mandate* that a motion to stay should be granted every time a motion to dismiss is filed"); *In re Flash Memory Antitrust Litig.,* No. 07-cv-0086, 2008 WL 62278, at *3 (N.D. Cal. Jan. 4, 2008)("[*Twombly*] did not hold, implicitly or otherwise, that discovery in antitrust actions is stayed or abated until after a complaint survives a Rule 12(b)(6) challenge.").

producing these materials as it is material that has already been produced. Courts have routinely ordered the production of antitrust investigation documents prior to resolution of motions to dismiss or the filing of final consolidated amended complaints. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 1:09-cv-03690 (N.D. Ill. Mar. 4, 2010), ECF No. 75 (ordering "[t]argeted discovery, including, but not limited to the previously produced material in the CFTC investigation" prior to resolution of the motions to dismiss); *In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2017 WL 4417447, at *7 (N.D. Ill. Sept. 28, 2107) (ordering production in antitrust class action of subset of documents were produced to Florida Attorney General investigation).[8] Indeed, prompt production and review of these documents can help inform and target subsequent discovery needs and thus facilitate the efficient and expeditious completion of discovery. It allows the parties to begin making significant progress on discovery with minimal burden on the Defendant because the documents have already been produced to the Government. *See In re Broilers*, 2017 WL 4322823, at ** 2, 6, 7 (discussing benefits of producing, during

---

[8] *See, e.g., In re Liquid Aluminum Sulfate Antitrust Litig.,* No. 16-md-2687-JLL-JAD, at *6 (D.N.J. July 5, 2016), ECF No. 209 ("As Defendants have already compiled … material and produced it to the DOJ, there would be little burden (in effort or expense) associated with making a second copy and producing it to Plaintiffs' counsel);; *In re Pool Products Distribution Market Antitrust Litig.,* No 12-md-02328-SSV-JCW (E.D. La. June 4, 2012), ECF No. 93 (ordering production of FTC documents prior to answer or motion to dismiss); *In re High Tech Employee Antitrust Litig.,* No. 11-cv-2509 (N.D. Cal., Oct. 26, 2011), ECF No. 88 (production of DOJ documents prior to resolution of motion to dismiss); *In re Optical Disk Drive Antitrust Litig.,* No 3:20-md-02143-RS (N.D. Cal. Apr. 7, 2011), ECF No. 379 (order requiring production of DOJ documents prior to resolution of motions to dismiss); *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617-WHP, 2010 WL 11578945, at *1 (S.D.N.Y. Nov. 30, 2010) (compelling defendants to produce 250,000 pages of documents already produced to government authorities before the decision on the motion to dismiss); *In re Static Random Access Memory (SRAM) Antitrust Litig.,* 580 F.Supp.2d 896, 899 (N.D. Cal. 2008) (describing case management order allowing discovery of documents already being provided to the Department of Justice while motion to dismiss pending); *In re Pharm. Indus. Average Wholesale Price Litig.,* MDL No. 1456, No. 01-12257-PBS (D. Mass. Oct. 28, 2002), ECF No. 161 (ordering defendants to produce documents previously produced "to any federal or state" entity "in connection with any investigation" less than two months after numerous related complaints were consolidated).

pendency of motions to dismiss, subset of documents already produced to Government because this would enhance ability of Plaintiffs "to discuss meaningfully key words and search methodologies, and to understand and discuss with Defendants the appropriate universe of document custodians and other discovery parameters" in preparation for more fulsome discovery after are decided).

8. Because Defendants have raised concerns about confidentiality, Plaintiff's counsel are available to discuss the terms of an appropriate Protective Order (and ESI Order) at any time that is convenient for the Defendants. These are commonly entered in antitrust litigation of this kind and are unlikely to raise any significant issues. Similarly, Plaintiff's counsel are always prepared to confer with Defendants about any particularized concerns they may have, but a generalized request to stay all disclosure and discovery is not warranted.

In short, Plaintiff proposes to focus initially on disclosures, documents produced to the Government, and threshold discovery tasks (such as entry of a protective order). This focused discovery falls well short of full document discovery but avoids starting from a near standstill on key discovery tasks after the motions to dismiss are resolved. Proceeding with this foundational discovery also ensures that there is not undue delay in litigating the case while motions to dismiss are resolved. "[T]he public's interest in the enforcement of the antitrust laws is furthered by the expeditious resolution" of class action lawsuits. *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d at 636 (denying stay pending resolution of a parallel criminal antitrust investigation). This concern is particularly timely here as Plaintiff is requesting injunctive relief against *ongoing* anticompetitive conduct by Defendants that causes homeowners each day to pay excessive commissions on the sale of their homes.

DATED: May 28, 2019            HAGENS BERMAN SOBOL SHAPIRO LLP

By    _____
      STEVE W. BERMAN (Bar No. 3126833)

1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Daniel Kurowski
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
danriok@hbsslaw.com

Jeff D. Friedman
Rio S. Pierce
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
jefff@hbsslaw.com
riop@hbsslaw.com

Carol V. Gilden (Bar No. 6185530)
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
cgilden@cohenmilstein.com

Daniel A. Small
Kit A. Pierson
Benjamin D. Brown
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
(Telephone: (202) 408-4600
dsmall@cohenmilstein.com
bbrown@cohenmilstein.com
celgart@cohenmilstein.com

Matthew R. Berry

SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
mberry@susmangodfrey.com

Marc M. Seltzer
Steven G. Sklaver
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

George Farah
HANDLEY FARAH & ANDERSON PLLC
81 Prospect Street
Brooklyn, NY 11201
Telephone: (212) 477-8090
gfarah@hfajustice.com

William H. Anderson
HANDLEY FARAH & ANDERSON PLLC
4730 Table Mesa Drive, Suite G-200
Boulder, CO 80305
Telephone: (303) 800-9109
wanderson@hfajustice.com

Benjamin David Elga
Brian Shearer
JUSTICE CATALYST LAW
25 Broadway, Ninth Floor
New York, NY 10004
Telephone: (518) 732-6703
belga@justicecatalyst.org
brianshearer@justicecatalyst.org

Monte Neil Stewart
Russell E. Marsh
WRIGHT MARSH & LEVY
300 S. 4th Street, Suite 701
Las Vegas, NV 89101
Telephone: (702) 382-4004
monteneilstewart@gmail.com
rmarsh@wmllawlv.com

Vildan A. Teske
Marisa C. Katz
TESKE KATZ KITZER & ROCHEL PLLP
222 South Ninth Street, Suite 4050
Minneapolis, MN 55402
Telephone: (612) 746-1558

teske@tkkrlaw.com
katz@tkkrlaw.com

*Attorneys for Plaintiff Christopher Moehrl*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on May 28, 2019, a true and correct copy of the foregoing was electronically filed by CM/ECF, which caused notice to be sent to all counsel of record.

                                                   s/ *Kit Pierson*
                                                   KIT A. PIERSON