UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, VALERIE NAGER, JACK RAMEY, SAWBILL STRATEGIC, INC., DANIEL UMPA and JANE RUH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Civil Action No.: 1:19-cv-01610 and<br>Civil Action No.: 1:19-cv-2544<br><br>**PLAINTIFFS' MOTION IN SUPPORT OF (A) DISCOVERY OF CIVIL INVESTIGATIVE DEMAND MATERIALS; AND (B) PRODUCTION OF MANDATORY INITIAL DISCOVERY PROGRAM INITIAL DISCOVERY RESPONSES**<br><br>Hon. Andrea R. Wood |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

In accordance with the Court's directions, Plaintiffs filed the Consolidated Amended Complaint ("CAC") on June 14, 2019. Plaintiffs propose that the parties move forward on the following schedule:

- Defendants' renewed motions to dismiss shall be filed by July 12, 2019; Plaintiffs' opposition papers shall be filed by August 9, 2019; and Defendants' replies shall be filed by September 6, 2019.

- Defendants shall produce any Civil Investigative Demands ("CIDs") in their possession, custody or control from the United States Department of Justice that relate to buyer-broker commissions or other conduct alleged in the CAC by July 1, 2019 (or within one week of receipt of any CIDs).

- Plaintiffs shall review the CIDs and, by July 8, 2019, identify to Defendants the requests relevant to this litigation. Defendants shall have one week (i.e., until July 15, 2019) to object to the requests and meet and confer with Plaintiffs. Defendants

- shall have until July 29, 2019 to produce documents responsive to requests for which there is no objection, and to file a five-page brief setting forth the basis for any objections. Plaintiffs shall file a five-page opposition brief by August 5, 2019. No reply briefs would be filed.

- Plaintiffs shall file Mandatory Initial Discovery Program ("MIDP") Initial Discovery Responses by August 9, 2019. Defendants shall file MIDP Initial Discovery Responses by September 6, 2019.

Defendants have indicated that they oppose *any* discovery until their anticipated motions to dismiss are resolved, including production of CIDs.[1] In fact notwithstanding the Court's suggestion that the parties begin discussing terms of a Protective Order and Electronic Discovery Protocol in advance of the June 24, 2019 status conference, Defendants have declined even to discuss those subjects.

Defendants' position is inconsistent with the law of this jurisdiction and would substantially and unnecessarily delay the progress of this litigation. Instead, as discussed at the May 29th status conference, Plaintiffs respectfully request leave to proceed with discovery of relevant CIDs and MIDP Initial Discovery Responses so the parties can begin to make material progress in the discovery process. This discovery is appropriate for the following reasons.

First, there is no significant burden on the Defendants in producing CIDs in their possession relating to conduct at issue in this litigation, and the materials they produce in response to those CIDs. It is clear from both news reports and the one CID that has become available to Plaintiffs that the CIDs being issued by the DOJ are *highly* relevant to this litigation. *See* Exhibit A (reporting that the Antitrust Division is actively "investigating potentially anticompetitive practices in the residential real estate brokerage business, with a focus on compensation to brokers and restrictions on their access to listings"); Exhibit B (CID served on

---

[1] Defendants have proposed that their motions to dismiss should not be filed until August 1, 2019 (i.e., almost seven weeks after the CAC was filed on June 14) and that all discovery be stayed until their motions are resolved.

CoreLogic), and CAC at ¶¶ 70-72 (ECF No. 84) (alleging, *inter alia,* that CoreLogic databases have been misused by Defendants to steer home buyers away from properties offering reduced buyer-broker commissions). Plaintiffs have been advised that the DOJ takes no position on production of the requested CIDs, undermining any objection Defendants may have on confidentiality grounds.[2]

Cases in this jurisdiction strongly support production of these materials. In *In re Dairy Farmers of America, Inc., Cheese Antitrust Litigation,* No. 09 C 3690, MDL No. 2031 (N.D. Ill. March 4, 2010) (ECF No. 75) (appended as Exhibit C), the District Court rejected the defendants' request for a stay pending resolution of motions to dismiss and ruled that "[d]iscovery in the Consolidated Action will not be stayed. Targeted discovery, including, but not limited to the previously produced material in the CFTC investigation shall be allowed to proceed." *Id.* at 4. The Defendants were directed to "produce the documents that the defendants previously produced to the CFTC" within two weeks. *Id.* Similarly, in *In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2017 WL 4417447, at *7 (N.D. Ill. Sept. 28, 2017), the defendants were ordered to produce the subset of documents previously produced to the Florida Attorney General that were relevant to plaintiffs' allegations while motions to dismiss were pending. The Court explained that early production of those materials involved limited burden and would enhance the ability of the plaintiffs "to discuss meaningfully key words and search methodologies, and to understand and discuss with Defendants the appropriate universe of document custodians and other discovery parameters" in preparation for more robust discovery after Defendants' motions to dismiss are resolved. *Id*

---

[2] Plaintiffs have not communicated with DOJ about production of documents subsequent to production of the actual CIDs. As soon as Defendants produce CIDs and Plaintiffs have identified the relevant requests, Plaintiffs would so notify both the Defendants and DOJ so that DOJ will have an opportunity to raise objections, if any, to production of responsive documents here.

Second, moving forward with MIDP Initial Discovery Responses will allow the parties to establish the foundation for subsequent discovery: identifying witnesses; disclosing the factual basis for claims and defenses; and identifying relevant document sources. If Defendants have particular concerns, Plaintiffs are fully prepared to discuss matters such as entry of a protective order (a subject Defendants have thus far declined even to discuss). Notably, cases relied on by Defendants in previously seeking a stay on all discovery until motions to dismiss are decided, *support* proceeding with Initial Discovery Responses now. *See Tichy v. Hyatt Hotels Corp.*, No. 18-cv-01959 (N.D. Ill. May 7, 2018); *Zhirovetskiy v. Zayo Group, LLC*, No. 17-cv-05876 (N.D. Ill. Jan. 23, 2018); *accord Zak v. Bose Corp.*, No. 17-cv-02928 (N.D. Ill. June 29, 2017), ECF No. 23 (Wood, J.). There is no rule that discovery must or should be stayed pending resolution of a motion to dismiss.

## BACKGROUND

This case challenges conduct by the Defendants that has caused the plaintiff class of home sellers to pay supra-competitive buyer-broker commissions (i.e., overcharges). Plaintiffs' case focuses primarily on the rule set forth in the National Association of Realtors' (NAR's) Handbook on Multiple Listing Policy and quoted in paragraph 60 of the Complaint ("the Rule"):

> "In filing a property with the multiple listing service of an association of Realtors®, the participant of the service is making blanket unilateral offers of compensation to the other participants, and shall therefore specify on each listing filed with the service, the compensation being offered to the other MLS participants."

The Rule further provides that:

> "Multiple listing services shall not publish listings that do not include an offer of compensation expressed as a percentage of the gross selling price or as a definite dollar amount, nor shall they include general invitations by listing brokers to other participants to discuss terms and conditions of possible cooperative relationships."

CAC ¶ 60.

4

Plaintiffs allege that the Rule is manifestly anticompetitive in its terms, application, and entirely predictable adverse impact on competition. Specifically:

- The Rule requires all Sellers using the MLS to make an offer of compensation to "the other MLS participants," which includes all buyer-brokers participating on the MLS. In other words, *it compels the seller to make an offer of payment to the buyer-broker*, even though the buyer-broker is working on behalf of the buyer, not the seller.

- It requires that this be a *blanket* offer – i.e., the exact same compensation terms must be simultaneously offered to every buyer-broker without regard to their experience, the services they are providing to the buyer, or the financial arrangement they have made with the buyer.

- Because this blanket offer must be made available to every buyer-broker using the MLS (i.e., virtually all buyer-brokers) – and can be compared by the buyer-broker with the blanket offers that every other seller-broker must post on the MLS – *the Rule creates tremendous pressure on sellers to offer the high commission that has long been maintained in this industry* so that buyer-brokers will not "steer" buyers to properties offering higher buyer-broker commissions.

- Indeed, *the Rule facilitates anticompetitive steering by buyer-brokers* because it allows them to identify and compare the buyer-broker compensation offered by every seller in the MLS and steer clients to properties offering higher commissions. (The prevalence of such steering – including its anticompetitive impact on consumers and exclusionary impact on agents trying to compete with alternative, lower-cost models -- is widely recognized in the economic literature).

- These effects are magnified by the Rule's requirement that the required compensation must be offered as a percentage of the gross selling price or a definite dollar amount – a requirement that facilitates comparisons and steering by the buyer-broker – and the Rule's *prohibition* on "general invitations by listing [i.e., seller] brokers to other participants to discuss terms and conditions of possible cooperative relationships."

- *These anticompetitive effects are further compounded by the fact that neither the buyer nor the seller is even permitted to view this universe of buyer-broker commission terms* and thus are unlikely to know whether the buyer-broker is engaged in steering to higher commission properties. (The obfuscation for buyers is made even worse by NAR's ethical rule expressly permitting buyer-brokers to tell buyers that the broker's services are "free" for the buyer).

CAC ¶ 4.

The "agreement" that the NAR-controlled multiple listing services ("MLS") offer to agents is thus quite straightforward and readily provable in this case: if a real estate broker wants to participate in the MLS, you must agree to these anti-competitive terms. As alleged in the CAC, each of the Corporate Defendants has joined, facilitated and furthered the conspiracy at issue here in numerous respects, including through their requirements that franchisees, groups and individual realtors comply with the anticompetitive NAR and MLS rules. CAC ¶¶ 6-8, 93-121.

This has resulted in overcharges paid by home sellers to buyer-brokers that are supra-competitive by every relevant measure – they are far higher than the charges in many other countries, they have increased over-time despite the emergence of new technologies that drive down costs, and the overcharges are maintained at this supra-competitive level with little regard to the value of the house being sold, the costs involved, the market, or the experience of the buyer-broker. CAC ¶¶ 9-16, 122-32.

As explained *supra,* the DOJ's Antitrust Division has an ongoing investigation into the residential and real estate brokerage business, "with a focus on compensation to brokers and restrictions on their access to listings." Exh A. A recent article published a copy of the CID served on a third party, CoreLogic, which is the dominant provider of software and databases used by MLSs controlled by NAR and used by the Defendants' real estate brokerages. The subjects of the CID relate directly to conduct challenged in the CAC. *See* CAC at ¶¶ 70-72. To date, Defendants have declined to answer whether they have received CIDs relating to the practices at issue here.

## ARGUMENT

As reflected in *Cheese Antitrust Litigation Broiler Chicken, Tichy, Zak* and *Zhirovetskiy,* there are important reasons meaningful progress on discovery should be made during the

pendency of a motion to dismiss. The type of discovery sought now involves only modest, if any, burdens and allows the parties to begin serious discussions about a host of issues that will allow discovery to proceed far more expeditiously and efficiently once Defendants' motions are resolved. Indeed, the need to begin moving forward with such discovery, is evidenced by the Defendants' apparent unwillingness even to discuss standard terms for a Protective Order and ESI Protocol, as suggested by the Court at the May 29, 2019 status conference. On May 31, 2019, Plaintiffs proposed the parties adopt verbatim the Protective Order and ESI Protocol that was approved by the District Court and adopted in the *Broiler Chicken* antitrust litigation. In adopting the ESI Protocol in that case, Magistrate Judge Gilbert explained that the protocol was "the result of extensive negotiation, compromise by both sides, and guidance provided by the Court over many months." *In re Broiler Chicken Antirust Litigation*, No. 1:16-cv-08637 (N.D. Ill. July 17, 2018) (ECF No. 1079). In proposing use of the same Protective Order and ESI Protocol here, Plaintiffs indicated their availability to meet and confer on any convenient date between June 3 and June 14. To date, none of the Defendants has even responded, let alone agreed to meet and confer on this subject.

Defendants' apparent views that discovery should remain at a standstill until their anticipated motions to dismiss are resolved is not in accord with the law of this jurisdiction or principles of sound case management. As the Mandatory Initial Discovery Program (as amended effective December 1, 2018) makes clear, "[u]nder Rule 12(a)(4), even if a motion to dismiss is filed, the Court retains authority to order an answer and/or permit the parties to make Rule 26(a)(1) initial disclosure and commence discovery under the Federal Rules of Procedure."[3] The party seeking a stay of discovery bears the burden of showing that "good

---

[3] Https://www.ilnd.uscourts.gov/_assets/_documents/MIDP%20Changes%20Effective%2012-1-18.pdf.

cause" exists for such an order.[4] Before a stay may be imposed, the moving party must make a "clear showing of [their] burden or cost with any anticipated discovery."[5] The mere filing of a motion to dismiss is ordinarily not sufficient to justify a stay of discovery.[6] As the Court explained in *New England Carpenters*, "[h]ad the Federal Rules contemplated that a motion to dismiss under Fed. R.Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect."[7] Courts have also rejected vague burden objections like the ones Defendants raise here, even in the early stages of antitrust litigation where discovery obligations between the parties may be asymmetrical.[8] Defendants' desire to delay all discovery until their motions are resolved is especially unfounded where, as here, the CAC sets forth very detailed

---

[4] *New England Carpenters Health & Welfare Fund v. Abbott Labs.*, No. 12 C 1662, 2013 WL 690613, at **1, 3 (N.D. Ill. Feb. 20, 2013).

[5] *Id.* at *3.

[6] *See, e.g., SK Hand Tool Corp. v. Dresser Indust., Inc.*, 852 F.2d 936, 945 n.11 (7th Cir. 1988); *Tomburo v. Dworkin*, No. 04 C 3317, 2010 WL 4867346, at *2 (N.D. Ill. Nov. 7, 2010).

[7] *New England Carpenters*, 2013 WL 690613, at 1; *see also id.* at *3 ("*Twombly* and *Iqbal* do not *mandate* that a motion to stay should be granted every time a motion to dismiss is filed"); *In re Dairy Farmers of America, Inc., Cheese Antitrust Litigation*, No. 09-cv-03690, at *4 (N.D. Ill. Mar. 4, 2010) (ECF No. 75) (rejecting defendants' argument that *Twombly* and *Iqbal* decisions warranted stay of discovery pending resolution of motions to dismiss (ECF No. 34 at 1), and holding that discovery "will not be stayed" and "[t]argeted discovery, including, but not limited to the previously produce material in the CFTC investigation shall be allowed to proceed"); *In re Flash Memory Antitrust Litig.*, No. 07-cv-0086, 2008 WL 62278, at *3 (N.D. Cal. Jan. 4, 2008) ("While the *Twombly* Court was certainly concerned with the expense of discovery in antitrust cases, its resolution of this concern was to require plaintiffs to plead non-conclusory, factual allegations giving rise to a plausible claim or claims for relief. The Court did not hold, implicitly or otherwise, that discovery in antitrust actions is stayed or abated until after a complaint survives a Rule 12(b)(6) challenge. Such a reading of that opinion is overbroad and unpersuasive.") (citation omitted).

[8] *See, e.g., SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-cv-01468, 2011 WL 4018207, at *3 (D. Colo. Sept. 8, 2011) (denying stay because the defendant "argues generally that antitrust discovery is burdensome, but it fails to point to any pending discovery and provide evidence as to the burden it imposes"); *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 16-cv-6370, 2018 WL 1569811, at *2 (N.D. Cal. Feb. 16, 2018) ("Defendants also rely on ubiquitous comments made in other cases noting that antitrust discovery can be costly, but fail to convincingly explain why those comments resonate here. . . . Discovery is not stayed just because it imposes *some* burden.").

factual allegations about the illegal agreement and conspiracy that provide significantly greater specificity than Rule 8 of the Federal Rules of Civil Procedure requires. *See* CAC ¶¶ 53-121.[9]

### A. The Parties Should Promptly Move Forward with Discovery of the CIDs and Materials Produced in Response to the DOJ's CIDs.

Although it has been publicly reported that the DOJ has an ongoing investigation into "potentially anti-competitive practices in the residential real estate brokerage business, with a focus on compensation to brokers and restrictions on their access to listings," Defendants have declined even to indicate whether they have received CIDs (or otherwise have them in their possession, custody or control) or have produced (or are in the process of producing) documents responsive to CIDs. At least one CID – served on CoreLogic – is now in the public domain, and the documents sought in that CID are highly relevant to allegations in the CAC here. Plaintiffs have been advised that the DOJ takes no position regarding production of the CIDs in this litigation.

Accordingly, Plaintiffs propose a two-step process that will allow this discovery to proceed without delay. First, Defendants should produce within one week from the next case management conference (by July 1) any CIDs in their possession, custody or control from the DOJ relating to buyer-broker commissions or other conduct alleged in the CAC (or within one week of receipt of any CIDs). Second, Plaintiffs will promptly review those CIDs and identify to Defendants all relevant requests within one week (by July 8). Defendants would then have until July 29, 2019 to: (a) produce documents responsive to requests for which there is no

---

[9] *See In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 764 F.Suppp.2d 991 (N.D. Ill. 2011) (explaining that "it is important to recognize that *Twombly* does not call for detailed factual allegations. It only requires enough facts to show that an alleged conspiracy is plausible."). Notably, Defendants' earlier motions to dismiss relied heavily on cases decided at the summary judgment stage following the *completion* of full discovery. Accordingly, those authorities do not provide any basis for delaying discovery here and, to the contrary, support allowing discovery to proceed.

9

objection, and (b) file a five-page brief explaining the basis for any objections. Plaintiffs would file a five-page opposition brief by August 5, 2019.

Cases in this District and many other federal jurisdictions have agreed that plaintiffs should have access to documents produced in parallel criminal or government investigations early in litigation. For example, in the *Cheese Antitrust Litigation*, the District Court rejected the Defendants' request that all discovery be stayed until motions to dismiss were resolved and Ordered the Defendants to produce within two weeks all documents previously produced to the CFTC.[10] Similarly, in *Broiler Chicken*, the Court ordered defendants to produce – prior to resolution of motions to dismiss – a subset of documents already produced to the Florida Attorney General. *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, 2017 WL 4322823, at *3-4 (N.D. Ill. Sept. 28, 2017); *see also In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687-JLL-JAD (D.N.J. July 5, 2016), ECF No. 209 (order requiring production of documents produced to DOJ); *In re Pool Products Distribution Market Antitrust Litig.*, No. 12-md-02328-SSV-JCW (E.D. La. June 4, 2012), ECF No. 93 (production of FTC-requested documents prior to answer or motion to dismiss); *In re High Tech Employee Antitrust Litig.*, No. 11-cv-2509 (N.D. Cal. Oct. 26, 2011), ECF No. 88 (production of DOJ-requested documents prior to resolution of motion to dismiss); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-02143-RS (N.D. Cal. Apr. 7, 2011), ECF No. 379 (same); *In re Platinum & Palladium Commodities Litig.*, No. 10-cv03617-WHP (S.D.N.Y. Nov. 30, 2010), ECF No. 59 (ordering defendants to produce 250,000 pages of documents already produced to government

---

[10] Exh. C at 4 (denying defendants' request for a stay and ordering production of documents produced to CFTC). *See also id.*, ECF No. 34 at 4 (defendant's motion arguing that all discovery should be deferred based on the Supreme Court's decision in *Twombly* until motions to dismiss were resolved); ECF No. 60 at 15 (transcript of status conference at which District Court indicated that requested stay would be inefficient and, in such a complicated matter, it was preferable to make progress on discovery).

authorities before the decision on the motion to dismiss); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F.Supp.2d 896, 899 (N.D. Cal. 2008) (describing case management order allowing discovery of documents already being provided to the Department of Justice while motion to dismiss pending); *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456, No. 01-12257-PBS (D. Mass. Oct. 28, 2002), ECF No. 161 (ordering defendants to produce documents previously produced "to any federal or state executive or legislative entity in connection with any investigation" less than two months after numerous related complaints were consolidated).

As these decisions reflect, early production serves the goal of judicial efficiency and the policies underlying Rule 1 of the Federal Rules of Civil Procedure, which directs the Court to construe, administer, and employ the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Where "there is at most minimal burden involved in producing" documents already produced to the DOJ, "then the benefits of producing those documents now in terms of moving the case forward to a fair and efficient resolution consistent with Rule 1 of the Federal Rules of Civil Procedure weigh in favor of not putting off production until after the motions to dismiss are decided." *Broiler Chicken*, 2017 WL 4322823, at *3-4.

Plaintiffs' proposal is strongly supported by the law of this jurisdiction and would establish a process to facilitate prompt production of relevant materials with limited, if any, burden. Given the great weight of authority favoring production of such materials, there are compelling reasons to produce the CIDs and commence that discussion without delay.

**B.     The Parties Should Submit MIDP Mandatory Initial Discovery Responses.**

Plaintiffs have proposed that the Plaintiffs submit MIDP Initial Discovery Responses by August 9, 2019, and Defendants submit MIDP responses by September 6, 2019. There are

11

sound reasons to commence that process now, rather than postponing the process for *at least* several months as Defendants have urged.

First, the MIDP responses provide a critical starting point in the discovery process because they will identify the parties' respective claims and defenses; and supporting facts, potential witnesses, and sources of relevant documents. Disclosing this information at an early juncture in the case will allow the parties to engage in a meaningful dialogue about the scope of production, search terms and other matters in order to move discovery forward efficiently and expeditiously.

Second, the CAC in this case provides highly detailed allegations about the challenged conduct and sets forth key terms of the challenged agreement and conspiracy. Defendants' earlier motions to dismiss relied heavily on cases decided *after* the competition of discovery (i.e., at the summary judgment stage).

Third, the Defendants' actions to date – opposing all discovery, declining to discuss the terms of a Protective Order, and declining to discuss an ESI Protocol (even though the proposed terms are *identical* to those approved and used in the *Broiler Chicken* antitrust class action) -- is a further indication of the need to start the discovery process moving forward.

Fourth, commencing that process is especially appropriate where, as here, Plaintiffs are challenging *ongoing* illegal activity and seek significant injunctive relief to protect the plaintiff class.

This conclusion is supported by two of the very cases relied on by Defendants in their earlier stay motion. In *Tichy v. Hyatt Hotels Corp.,* No. 18-cv-01959 (ND. Ill. May 7, 2018), the parties simultaneously *served* the initial disclosures required by Paragraphs (B)(1) through (B)(6) of the MIDP while defendants' motions to dismiss were pending. This allowed the parties to make meaningful progress in the discovery process even though, with the parties'

agreement, the defendants were permitted to defer the actual collection and production of hard copy documents and ESI. *See id.*, ECF No. 52 at 2 (joint motion explaining that the parties were only seeking a "narrowly tailored" order to defer obligation to produce documents within 40 days after serving Mandatory Initial Discovery Responses). Indeed, they made clear that:

> The parties do not seek relief from any of the other MIDP requirements and plan to engage in the expeditious discovery process required by the MIDP. As such, Defendants will answer the Complaint at the same time they move to dismiss, and *the parties will serve timely their initial disclosures* required by Paragraphs (B)(1) through (B)(6) of the MIDP.

*Id.* at 2-3 (emphasis added); *see also id.*, ECF Nos. 82-87 (Notices of Service of Responses to Mandatory Initial Discovery by the Plaintiff and Defendants).

Similarly, in *Zhirovetskiy v. Zayo Group, LLC*, No. 17-cv-05876 (N.D. Ill. Jan. 23, 2018), also cited favorably in Defendants' earlier motion (Def. Mot. at 6), the parties *did* serve their Mandatory Initial Discovery Responses (ECF Nos. 17 & 18), and subsequently served Amended MIDP Responses (ECF Nos. 34 & 35), notwithstanding the filing of a motion to dismiss. Further discovery was stayed only after *the Plaintiff* filed a motion to have the case remanded to state court.[11] Thus, like *Tichy*, *Zhirovetskiy* supports the position taken by Plaintiffs here.

In *Zak v. Bose Corp.*, No. 17-cv-02928 (N.D. Ill. June 29, 2017), ECF No. 23 (Wood, J.), this Court reached the same conclusion. The Court denied the defendant's request, in a class action case filed prior to effective date of MIDP, that "[f]act discovery should not commence until after the Court rules on Defendant's pending Motion to Dismiss." ECF No. 22. The Court

---

[11] In *Palmucci* v. Twitter, *Inc.*, No. 1:18-cv-01165 (N.D. Ill. 2018), previously cited by Defendants, the plaintiff had already filed eight similar cases against the defendant and discovery had been stayed in all of them (four times with the plaintiff's consent). In the ninth action, the court stayed discovery after the defendant filed a motion to transfer the case to another jurisdiction – a motion subsequently granted by the court. This case has no bearing on the issues presented here.

ruled that initial disclosures pursuant to FRCP 26(a)(1) and written and document should proceed, except for discovery related only to class certification and deposition discovery.

Plaintiffs are fully prepared to address Defendants' concerns about confidentiality (and, in fact, agreed to utilize the *Broiler Chicken* protective order so any such concerns can be promptly addressed), and are also prepared to discuss and negotiate any other concerns Defendants may have about the most efficient way to proceed with discovery. The policies underlying the MIDP process, recent case law in this jurisdiction, and the circumstances set forth above, all strongly counsel for commencing that process now.

June 19, 2019

Respectfully submitted,

/s/ Carol V. Gilden
Carol V. Gilden (Bar No. 6185530)
cgilden@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
(312) 357-0370

Daniel A. Small
dsmall@cohenmilstein.com
Kit A. Pierson
kpierson@cohenmilstein.com
Benjamin D. Brown
bbrown@cohenmilstein.com
Alison Deich
adeich@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
(202) 408-4600
(202) 408-4699 Fax

Marc M. Seltzer
mseltzer@susmangodfrey.com
Steven G. Sklaver
ssklaver@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
(310) 789-3100

Matthew R. Berry
mberry@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
(206) 516-3880

Beatrice C. Franklin
bfranklin@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
(212) 729-2021

Steve W. Berman
steve@hbsslaw.com
Jeff D. Friedman
jeff@hbsslaw.com
Rio S. Pierce riop@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue ● Suite 2000
Seattle, WA 98101
(206) 623-7292
(206) 623-0594 fax

George Farah
gfarah@hfajustice.com
HANDLEY FARAH & ANDERSON PLLC
81 Prospect Street
Brooklyn, NY 11201
(212) 477-8090

William H. Anderson
wanderson@hfajustice.com
HANDLEY FARAH & ANDERSON PLLC

15

4730 Table Mesa Drive, Suite G-200
Boulder, CO 80305
(303) 800-9109

Benjamin David Elga
belga@justicecatalyst.org
Brian Shearer
brianshearer@justicecatalyst.org
JUSTICE CATALYST LAW
25 Broadway, Ninth Floor
New York, NY 10004
(518) 732-6703

Monte Neil Stewart
monteneilstewart@gmail.com
Russell E. Marsh
rmarsh@wmlawlv.com
WRIGHT MARSH & LEVY
300 S. 4th Street, Suite 701
Las Vegas, NV 89101
(702) 382-4004

Vildan A. Teske
teske@tkkrlaw.com
Marisa C. Katz
katz@tkkrlaw.com
TESKE KATZ KITZER & ROCHEL PLLP
222 South Ninth Street, Suite 4050
Minneapolis, MN 55402
(612) 746-1558

Kenneth A. Wexler
kaw@wexlerwallace.com
Mark R. Miller
mrm@wexlerwallace.com
Thomas A. Doyle
tad@wexlerwallace.com
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
(312)346-2222
(312)346-0022 Fax

Daniel E. Gustafson
dgustafson@gustafsongluek.com
Daniel C. Hedlund

dhedlund@gustafsongluek.com
Daniel J. Nordin
dnordin@gustafsongluek.com
Kaitlyn L. Dennis
kdennis@gustafsongluek.com
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 333-8844
(612) 339-6622 Fax

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2019, I electronically filed PLAINTIFFS' MOTION IN SUPPORT OF (A) DISCOVERY OF CIVIL INVESTIGATIVE DEMAND MATREIALS; AND (B) PRODUCTION OF MANDATORY INITIAL DISCOVERY PROGRAM INITIAL DISCOVERY RESPONSES with the Clerk of the Court using the ECF, who in turn sent notice to all counsel of record.

Dated:   June 19, 2019              /s/ Kit A. Pierson
                                    Kit A. Pierson