# EXHIBIT B

# United States Department of Justice

**Antitrust Division**
Washington, DC 20530

To: Arnold Pinkston
Chief Legal Officer and Corporate Secretary
CoreLogic
40 Pacifica, Suite 900
Irvine, CA 92618

Civil Investigative
Demand Number: -29938

This civil investigative demand is issued pursuant to the Antitrust Civil Process Act, 15 U.S.C. §§ 1311-1314, in the course of an antitrust investigation to determine whether there is, has been, or may be a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 by conduct, activities, or proposed action of the following nature: Practices that may unreasonably restrain competition in the provision of residential real-estate brokerages services in local markets in the United States, including Greater Las Vegas.

You are required by this demand to produce all documentary material described in the attached schedule that is in your possession, custody, or control, and to make it available at your address indicated above for inspection and copying or reproduction by a custodian named below. You are also required to answer the interrogatories on the attached schedule. Each interrogatory must be answered separately and fully in writing, unless it is objected to, in which event the reasons for the objection must be stated in lieu of an answer. Such production of documents and answers to interrogatories shall occur on the 16th day of May, 2019 at 5:00 p.m.

The production of documentary material and the interrogatory answers in response to this demand must be made under a sworn certificate, in the form printed on the reverse side of this demand, by the person to whom this demand is directed or, if not a natural person, by a person or persons having knowledge of the facts and circumstances relating to such production and/or responsible for answering each interrogatory.

For the purposes of this investigation, the following are designated as the custodian and deputy custodian(s) to whom the documentary material shall be made available and the interrogatory answers shall be submitted: Owen Kendler (custodian) and Steven Kramer and Ethan Stevenson (deputy custodians), U.S. Dept. of Justice, Antitrust Division, Media, Entertainment, and Professional Services Section, 450 Fifth Street NW, Suite 4000, Washington, DC 20530.

Inquiries concerning compliance should be directed to Steven Kramer at 202-307-0997 or Ethan Stevenson at 202-598-8091.

Your attention is directed to 18 U.S.C. § 1505, printed in full on the reverse side of this demand, which makes obstruction of this investigation a criminal offense.

Issued in Washington, D.C., this 16th day of April, 2019.

*Assistant Attorney General*

**18 U.S.C. § 1505. Obstruction of proceedings before departments, agencies, and committees**

Whoever, with intent to avoid, evade, prevent, or obstruct compliance, in whole or in part, with any civil investigative demand duly and properly made under the Antitrust Civil Process Act, willfully withholds, misrepresents, removes from any place, conceals, covers up, destroys, mutilates, alters, or by other means falsifies any documentary material, answers to written interrogatories, or oral testimony, which is the subject of such demand; or attempts to do so or solicits another to do so; or

Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress -

Shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both.

**Form of Certificate of Compliance***

I/We have read the provisions of 18 U.S.C. § 1505 and have knowledge of the facts and circumstances relating to the production of the documentary material and have responsibility for answering the interrogatories propounded in Civil Investigative Demand No. _____. I/We do hereby certify that all documentary material and all information required by Civil Investigative Demand No. _____ which is in the possession, custody, control, or knowledge of the person to whom the demand is directed has been submitted to a custodian named therein.

If any documentary material otherwise responsive to this demand has been withheld or any interrogatory in the demand has not been fully answered, the objection to such demand and the reasons for the objection have been stated in lieu of production or an answer.

Signature _____

Title _____

Sworn to before me this _____ day of

_____, 20\_\_\_.

_____
    Notary Public

*In the event that more than one person is responsible for producing the documents and answering the interrogatories, the certificate shall identify the documents and interrogatories for which each certifying individual was responsible. In place of a sworn statement, the above certificate of compliance may be supported by an unsworn declaration as provided by 28 U.S.C. § 1746.

# CIVIL INVESTIGATIVE DEMAND FOR DOCUMENTS AND ANSWERS TO INTERROGATORIES
# ISSUED TO CORELOGIC

Unless otherwise indicated or modified by the Department of Justice, each document demand and interrogatory included in this Civil Investigative Demand requires a complete search of the documents and information in your Company's possession, custody, or control. In the Department's experience, modifications to this Demand may reduce the burden of searching for responsive documents and information in a way that is consistent with the Department's needs. The Company is encouraged to propose such modifications, but all modifications must be agreed to in writing by the Department.

## DOCUMENT DEMANDS

1. Submit all documents relating to any MLS member's search of, or ability to search, MLS listings on any of the Company's multiple listing platforms, based on (i) the amount of compensation offered by listing brokers to buyer brokers; or (ii) the type of compensation, such as a flat fee, offered by listing brokers to buyer brokers, including all documents relating to any:
   (a) possible or actual reason, rationale, or basis for adoption, approval, disapproval, maintenance, revision, retention, or elimination of the ability of any member of any MLS to search MLS listings, based on the amount or type of compensation offered;
   (b) complaint about or request to change or eliminate any MLS member's search of, or ability to search, MLS listings on any of the Company's multiple listing platforms, based on the amount or type of compensation offered;
   (c) possible or actual benefit, drawback, advantage, disadvantage, or effect of any MLS member's search of, or ability to search, MLS listings on any of the Company's multiple listing platforms, based on the amount or type of compensation offered;
   (d) discussion or other communication, including those internal to the Company or between the Company and any MLS or MLS member, relating to any MLS member's search of, or ability to search, MLS listings on any of the Company's multiple listing platforms, based on the amount or type of compensation offered.
   (e) training session, video, or materials relating to any MLS member's search of, or ability to search, MLS listings on any of the Company's multiple listing platforms, based on the amount or type of compensation offered; or
   (f) possible or actual antitrust or other legal or ethical issue, relating to any MLS member's search of, or ability to search, MLS listings on any of the Company's multiple listing platforms, based on the amount or type of compensation offered.

2. Submit all documents relating to any policy, guideline, rule, practice, agreement, or contract term that restricts the Company's usage, distribution, sale, or licensing of any MLS data, including all documents relating to any:
   (a) possible or actual reason, rationale, or basis for adoption, approval, maintenance, revision, or retention of any such policy, guideline, rule, practice, agreement, or contract term;
   (b) complaint about or any request to change, eliminate, or not enforce any such policy, guideline, rule, practice, agreement, or contract term;
   (c) possible or actual implementation or enforcement of any such policy, guideline, rule, practice, agreement, or contract term;
   (d) possible or actual benefit, drawback, advantage, disadvantage, or effect of any such policy, guideline, rule, practice, agreement, or contract term;
   (e) discussion or communication relating to any such policy, guideline, rule, practice, agreement, or contract term, including any:
      i. discussion or communication between the Company and any MLS;
      ii. discussion or communication between the Company and any potential licensee or purchaser of MLS data; and
      iii. internal discussion or communication;
   (f) training session, video, or materials relating to any such policy, guideline, rule, practice, agreement, or contract term; or
   (g) possible or actual antitrust or other legal or ethical issue relating to any such policy, guideline, rule, practice, agreement, or contract term.

3. Submit each database or data set used or maintained by the Company that may be used to measure the frequency of searches of MLS listings by each member of any MLS on the Company's multiple listing platform that condition results based on the amount of compensation or type of compensation offered by listing brokers to buyer brokers.

4. Submit documents sufficient to show all of the Company's rules, policies, and practices existing currently or at any time during 2018 and 2019, relating to:
   (a) the retention and destruction of documents, including the retention, storage, deletion, and archiving of electronically stored information, including e-mail; or
   (b) the use of personal electronic devices for CoreLogic business.

## WRITTEN INTERROGATORIES

1. Identify each MLS to which the Company currently provides a multiple listing platform, and for each MLS identified, state:
   (a) whether members of that MLS can condition searches for MLS listings based on the amount of compensation offered by listing brokers to buyer brokers;
   (b) whether members of that MLS can condition searches for MLS listings based on the type of compensation offered by listing brokers to buyer brokers;

(c) whether that MLS has instructed the Company to suppress MLS members' ability to search MLS listings based on the amount of compensation offered by listing brokers to buyer brokers, and the date on which the Company received this instruction;
(d) whether that MLS has instructed the Company to suppress MLS members' ability to search MLS listings based on the type of compensation offered by listing brokers to buyer brokers;
(e) whether that MLS has instructed the Company to enable MLS members to search MLS listings based on the amount of compensation offered by listing brokers to buyer brokers, and the date on which the Company received this instruction;
(f) whether that MLS has instructed the Company to enable MLS members to search MLS listings based on the type of compensation offered by listing brokers to buyer brokers; and
(g) whether that MLS has acted to limit the Company's usage, distribution, sale, or licensing of MLS data to any potential user, licensee, or purchaser.

2. To the extent not fully reflected in documents produced in response to this Demand, describe the Company's rules, policies, and practices existing currently or at any time during 2018 and 2019, relating to:
(a) the retention and destruction of documents, including the retention, storage, deletion, and archiving of electronically stored information, including e-mail; or
(b) the use of personal electronic devices for CoreLogic business.

## DEFINITIONS

The following definitions apply for the purposes of this Demand:

A. The terms "**the Company**" or "**your**" means CoreLogic, each of its subsidiaries, and affiliates, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each partnership or joint venture to which any of them is a party, and all present and former officers, directors, agents, employees, consultants, or other persons acting for or on behalf of any of it.

B. The term "**agreement**" means any understanding, formal or informal, written or unwritten.

C. The term "**any**" means each and every.

D. The term "**broker**" means a person licensed by a state to provide real-estate brokerage services to either a buyer or seller in a real-estate transaction and includes any listing agent or buyer agent or sales associate who is affiliated with a broker.

E. The term "**collaborative work environment**" means a platform used to create, edit, review, approve, store, organize, share, and access documents and information by and among authorized users, potentially in diverse locations and with different devices. Even when based on a common technology platform, collaborative work environments are often configured as separate and closed environments, each one of which is open to a select group of users with layered access control rules (reader vs. author vs. editor). Collaborative work environments include Microsoft Sharepoint sites, eRooms, document management systems (e.g., iManage), intranets, web content management systems (CMS) (e.g., Drupal), wikis, and blogs.

F. The term "**communication**" means any formal or informal disclosure, transfer, or exchange of information or opinion, however made.

G. The term "**Data Dictionary**" means documentation of the organization and structure of the databases or data sets that is sufficient to allow their reasonable use by the Department, including, for each table of information: (a) the size (number of records and overall volume); (b) a general description; (c) a list of field names; (d) a definition for each field as it is used by the Company, including the meanings of all codes that can appear as field values; (e) the format, including variable type and length, of each field; and (f) the primary key in a given table that defines a unique observation.

H. The term "**documents**" means all written, printed, or electronically stored information ("ESI") of any kind in the possession, custody, or control of the Company, including information stored on social media accounts like Twitter or Facebook, chats, instant messages, and documents contained in collaborative work environments and other document databases. "Documents" includes metadata, formulas, and other embedded, hidden, and bibliographic or historical data describing or relating to any document. Unless otherwise specified, "documents" excludes bills of lading, invoices in non-

4

electronic form, purchase orders, customs declarations, and other similar documents of a purely transactional nature; architectural plans and engineering blueprints; and documents solely relating to environmental, tax, human resources, OSHA, or ERISA issues.

I. The term **"documents sufficient to show"** means documents sufficient to provide the Department with a true and correct disclosure of the factual matter requested.

J. The term **"identify"** means to state a person's name, principal address, and telephone number.

K. The term **"including"** means including but not limited to.

L. The term **"MLS"** means multiple-listing service.

M. The term **"person"** includes the Company and means any natural person, corporate entity, partnership, firm, association, sole proprietorship, joint venture, governmental entity, or trust.

N. The term **"relating to"** means in whole or in part constituting, containing, concerning, discussing, describing, analyzing, reflecting, commenting or reporting on, mentioning, identifying, stating, or referring or alluding to.

O. The terms **"and"** and **"or"** have both conjunctive and disjunctive meanings. The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted.

# INSTRUCTIONS

*Timing*

A. All references to year refer to calendar year. Unless otherwise specified, this Demand calls for documents, data, and other information prepared, created, sent, altered, or received by the Company since January 1, 2017.

For responses to document demand 1, submit all responsive documents prepared, created, sent, altered, or received by the Company since January 1, 2014.

For interrogatory responses, submit a separate response for each year or year-to-date unless otherwise specified. If calendar-year data are not available, supply the Company's fiscal-year data indicating the twelve-month period covered, and submit the Company's best estimate of calendar-year data.

*Production Format*

B. Department representatives must approve the format and production method of any documents, data, or other information before the Company makes an electronic production in response to this Demand. Before preparing its production, the Company must contact the Department to explain what materials are available and how they are stored. This discussion must include Company personnel who are familiar with its electronically stored information and databases/data sets.

C. Before using software or technology (including search terms, predictive coding, de-duplication, or similar technologies) to identify or eliminate documents, data, or information potentially responsive to this Demand, the Company must submit a written description of the method(s) used to conduct any part of its search. In addition, for any process that relies on search terms to identify or eliminate documents, the Company must submit: (a) a list of proposed terms; (b) a tally of all the terms that appear in the collection and the frequency of each term; (c) a list of stop words and operators for the platform being used; and (d) a glossary of industry and Company terminology. For any process that instead relies on predictive coding to identify or eliminate documents, you must include (a) confirmation that subject-matter experts will be reviewing the seed set and training rounds; (b) recall, precision, and confidence-level statistics (or an equivalent); and (c) a validation process that allows for Department review of statistically significant samples of documents categorized as non-responsive documents by the algorithm.

D. If the Department agrees to narrow the scope of this Demand to a limited group of custodians, a search of each custodian's files must include files of their predecessors; files maintained by their assistants or under their control; and common or shared databases or data sources maintained by the Company that are accessible by each custodian, their predecessors, or assistants.

E. Submit responses to this Demand in a reasonably usable format as required by the Department in the letter sent in connection with this investigation. Documents must be

6

complete and unredacted, except for privilege. Documents must be submitted as found and ordered in the Company's files and must not be shuffled or otherwise rearranged. The Company is encouraged to submit copies of hard-copy documents electronically (with color hard copies where necessary to interpret the document) in lieu of producing original hard-copy documents. Absent a Department request, produce electronic documents in electronic form only. Electronic productions must be free of viruses. The Department will return any infected media for replacement, which may delay the Company's date of compliance with this Demand.

F. Do not produce any Sensitive Personally Identifiable Information ("Sensitive PII") or Sensitive Health Information ("SHI") before discussing the information with the Department representatives. If any document responsive to a particular request contains Sensitive PII or SHI that is not responsive to that request, redact the unresponsive Sensitive PII or SHI before producing the document. To avoid any confusion about the reason for the redaction, produce a list of such redacted documents by document control number. Sensitive PII includes a person's Social Security Number; or a person's name, address, or phone number in combination with one or more of their: (a) date of birth; (b) driver's license number or other state identification number, or a foreign country equivalent; (c) passport number; (d) financial account number; or (e) credit or debit card number. Sensitive Health Information includes medical records and other individually identifiable health information, whether on paper, in electronic form, or communicated orally. SHI relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

G. Provide any index of documents prepared by any person in connection with your response to this Demand. If the index is available in electronic form, provide it in that form.

H. Data called for by this Demand must be submitted electronically in a reasonably useable compilation that will allow the Department to access the information it contains. Producing a database or data set in its entirety often does not satisfy this requirement. For the Department to be able to access and interpret data, the Company must provide, for each database, a description of each database or data set to be produced, including: (1) its software platform; (2) its type (e.g., flat, relational, or enterprise); (3) the sources (e.g., other databases or individuals) used to populate the database; (4) for relational or enterprise databases, documents specifying the relationships among tables (e.g., an entity relationship diagram); (5) any query forms; (6) any regularly prepared reports produced from that database; and (7) a Data Dictionary that includes, for each table in the database:

  a. the name of the table;

  b. a general description of the information contained;

  c. the size in both number of records and megabytes;

    d. a list of fields;

    e. the format, including variable type and length, of each field;

    f. a definition for each field as it is used by the Company, including the meanings of all codes that can appear as field values;

    g. the fields that are primary keys for the purpose of identifying a unique observation;

    h. the fields that are foreign keys for the purpose of joining tables; and

    i. an indication of which fields are populated.

It is likely that only a subset or compilation of the contents of any particular database or data set will need to be produced. After providing the information above, counsel and knowledgeable personnel from the Company should discuss with Department representatives what constitutes a sufficient production from the database or data set in a reasonably useable format.

I. The Company must continue to preserve documents or data contained in disaster recovery systems or back-up media that may contain information responsive to this Demand. Please contact the Division's representative to discuss your obligation to preserve back up media.

J. Produce all non-privileged portions of any responsive document (including non-privileged or redacted attachments) for which a privilege claim is asserted. Each document withheld in whole or in part from production based on a claim of privilege must be assigned a unique privilege identification number and separate fields representing the beginning and ending document control numbers and logged as follows:

    a. Each log entry must contain, in separate fields: privilege identification number; beginning and ending document control numbers; parent document control numbers; attachments document control numbers; family range; number of pages; all authors; all addressees; all blind copy recipients; all other recipients; date of the document; an indication of whether it is redacted; the basis for the privilege claim (e.g., attorney-client privilege), including the anticipated litigation for any work-product claim and the underlying privilege claim if subject to a joint-defense or common-interest agreement; and a description of the document's subject matter sufficiently detailed to enable the Department to assess the privilege claim and the facts relied upon to support that claim.

    b. Include a separate legend containing an alphabetical list (by last name) of each name on the privilege log, identifying titles, company affiliations, the members

8

      of any group or email list on the log (e.g., the Board of Directors) and any name variations used for the same individual.

   c. On the log and the legend, list all attorneys acting in a legal capacity with the designation ESQ after their name (include a space before and after the "ESQ").

   d. Produce the log and legend in electronic form that is both searchable and sortable. Upon request, the Company must submit a hard copy of the log and legend.

   e. Department representatives will provide an exemplar and template for the log and legend upon request.

Any responsive document asserted to be privileged in its entirety created by the Company's in-house counsel or the Company's outside counsel that has not been distributed outside the Company's in-house counsel's office or the Company's outside counsel's law firm does not have to be logged. But if the document was distributed to any attorney who does not work exclusively in the Company's in-house counsel's office or who has any business responsibilities, it must be logged. Unlogged documents are subject to any preservation obligations the Company or counsel may have.

K. If the Company is unable to answer a question fully, it must supply all available information; explain why such answer is incomplete; describe the efforts made by the Company to obtain the information; and list the sources from which the complete answer may be obtained. If the information that allows for accurate answers is not available, submit best estimates and describe how the estimates were derived. Estimated data should be followed by the notation "est." If there is no reasonable way for the Company to estimate, provide an explanation.

L. If documents, data, or other information responsive to a particular request no longer exists for reasons other than the Company's document-retention policy, describe the circumstances under which it was lost or destroyed, describe the information lost, list the specifications to which it was responsive, and list persons with knowledge of such documents, data, or other information.

M. To complete this Demand, the Company must submit the certification on the reverse of the Civil Investigative Demand form, executed by the official supervising compliance with this Demand, and notarized.

Direct any questions you have relating to the scope or meaning of anything in this Demand or suggestions for possible modifications thereto to Steven Kramer at (202) 307-0997 or Ethan Stevenson at (202) 598-8091. The response to this Demand must be addressed to the attention of Steven Kramer and delivered between 8:30 a.m. and 5:00 p.m. on any business day to 450 Fifth Street, NW, Suite 4000, Washington, DC 20001. If the Company wishes to submit its response by U.S. mail, please call Steven Kramer or Ethan Stevenson for mailing instructions.