**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, VALERIE NAGER, JACK RAMEY, DANIEL UMPA, And JANE RUH, on behalf of themselves and all others similarly situated | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case Nos. 1:19-cv-01610 and 1:19-cv-2544 |
| v. | ) ) | Judge Andrea R. Wood |
| THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX HOLDINGS, INC. and KELLER WILLIAMS REALTY, INC. | ) ) ) ) ) ) ) ) ) | Magistrate Judge M. David Weisman |
| Defendants. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT**
**OF THE CORPORATE DEFENDANTS' MOTION TO DISMISS**
**THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................... 1

I.   THE PARTIES .......................................................................................... 2

   A.   Plaintiffs ......................................................................................... 2

   B.   NAR and the MLS ......................................................................... 3

   C.   The Corporate Defendants ............................................................ 3

II.  STANDARD OF REVIEW ...................................................................... 4

III. ARGUMENT ............................................................................................ 5

   A.   Plaintiffs' Antitrust Claims Do Not Allege an Unlawful
      Agreement. ...................................................................................... 6

      1.   Plaintiffs Admit that the Corporate Defendants' Requiring
         Brokerages and/or Franchisees to Join an MLS Is Consistent
         with Independent and Unilateral Action. ...................................... 8

      2.   Participation in NAR Does Not Plausibly Support
         Involvement in a Conspiracy. ....................................................... 9

      3.   Individuals' Participation in Local Realtor® Associations
         Does Not Sufficiently Allege Conspiracy. ................................... 11

      4.   That Corporate Defendants May Require Their Brokerages
         or Franchisees to Follow NAR Rules Is Consistent with
         Competitive, Unilateral Behavior. ............................................... 11

      5.   Plaintiffs' Allegation of an Invitation to an Unlawful
         Agreement Is Both Facially Implausible and Lacks Any
         Supporting Facts. .......................................................................... 12

      6.   Plaintiffs' Allegations About "Steering," at Best, Allege an
         Effect But Do Not Allege an Antitrust Conspiracy. .................... 13

   B.   Allegations as to Each Corporate Defendant Are Insufficient to
      Maintain A Claim Against Any of Them. ..................................... 15

      1.   The Court Should Dismiss the Claim as to Keller Williams. ...... 15

      2.   The Court Should Dismiss the Claim as to RE/MAX. ................ 17

      3.   The Court Should Dismiss the Claim as to Realogy. ................... 19

4.      The Court Should Dismiss the Claim as to HomeServices and Its Subsidiaries. ................................................................ 20

C.     Plaintiffs Have Failed to Allege Competitive Harm in a Properly Defined Relevant Market. ....................................................... 22

CONCLUSION ................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AD/SAT, Div. of Skylight, Inc. v. Associated Press*,
  181 F.3d 216 (2d Cir. 1999)................................................................................9

*Agnew v. NCAA*,
  683 F.3d 328 (7th Cir. 2012) ........................................................................2, 4, 5

*Alarm Detection Sys., Inc. v. Vill. of Schaumburg*,
  No. 18-3316, 2019 WL 3071744 (7th Cir. July 15, 2019)....................................7, 8

*Ass'n of Am. Physicians & Surgeons v. Am. Bd. of Med. Specialties*,
  No. 14-cv-02705, 2017 WL 6821094 (N.D. Ill. Dec. 13, 2017) (Wood, J.)............5

*Bank of Am., N.A. v. Knight*,
  725 F.3d 815 (7th Cir. 2013) ............................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................. *passim*

*Besser Pub. Co. v. Pioneer Press, Inc.*,
  571 F. Supp. 640 (N.D. Ill. 1983) ......................................................................22

*Brown v. Visa U.S.A., Inc.*,
  674 F. Supp. 249 (N.D. Ill. 1987) ........................................................................6

*Car Carriers, Inc. v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir. 1984) .......................................................................5, 22

*Cascades Computer Innovation LLC v. RPX Corp.*,
  No. 12-CV-01143 YGR, 2013 WL 316023 (N.D. Cal. Jan. 24, 2013) ..................23

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007)........................................................................15, 17, 19

*Estate Constr. Co. v. Miller & Smith Holding Co.*,
  14 F.3d 213 (4th Cir. 1994) ...........................................................................7, 13

*Frantzides v. Northshore Univ. HealthSystem Faculty Practice Assoc., Inc.*,
  787 F. Supp. 2d 725 (N.D. Ill. 2011) ...................................................................8

*Hansche v. Comm'r*,
  457 F.2d 429 (7th Cir. 1972) ..............................................................................4

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
    602 F.3d 237 (3d Cir. 2010)............................................................7, 13

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010)....................................................................20

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*,
    797 F.3d 538 (8th Cir. 2015) ...................................................................15

*In re Interest Rate Swaps Antitrust Litig.*,
    261 F. Supp. 3d 430 (S.D.N.Y. 2017)....................................................20

*JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*,
    190 F.3d 775 (7th Cir. 1999) ...................................................................23

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ...........................................................7, 10

*Kleen Prods. LLC v. Int'l Paper*,
    276 F. Supp. 3d 811 (N.D. Ill. 2017), *aff'd sub nom. Kleen Prods. LLC v.*
    *Georgia-Pac. LLC*, 910 F.3d 927 (7th Cir. 2018) ...................................9

*Kyhl v. A-One Plumbing, Inc.*,
    679 F. Supp. 911 (E.D. Mo. 1988).........................................................11

*Little Rock Cardiology Clinic PA v. Baptist Health*,
    591 F.3d 591 (8th Cir. 2009) .....................................................................5

*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
    No. 80 C 1405, 1991 WL 5827 (N.D. Ill. Jan. 15, 1991), *aff'd*, 977 F.2d 585
    (7th Cir. 1992).............................................................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..............................................................................7, 23

*McReynolds v. Merrill Lynch & Co.*,
    694 F.3d 873 (7th Cir. 2012) .....................................................................4

*Moe v. RE/MAX Caribbean Islands, LLC*,
    Civ. Action No. 3:11-cv-00073, ECF No. 60 (D.V.I. Mar. 23, 2012)....................18

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984).................................................................................2, 5

*O'Neill v. Coca-Cola Co.*,
    669 F. Supp. 217 (N.D. Ill. 1987) .............................................................5

*O'Riordan v. Long Island Bd. of Realtors, Inc.*,
  707 F. Supp. 111 (E.D.N.Y. 1998) ........................................................................12

*Ohio v. Am. Express Co.*,
  138 S. Ct. 2274 (2018)..............................................................................2, 22, 24

*Oliveira-Brooks v. RE/MAX Int'l, Inc.*,
  865 N.E.2d 252 (Ill. App. Ct. 2007) ....................................................................18

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*,
  629 F.3d 697 (7th Cir. 2011) ...................................................................................2

*Perdomo v. Ask 4 Realty & Mgmt., Inc.*,
  298 F. App'x 820 (11th Cir. 2008) ..........................................................................4

*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*,
  No. 08-CV-42 JG VVP, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011)...................15

*Reifert v. S. Cent. Wis. MLS Corp.*,
  450 F.3d 312 (7th Cir. 2006) ................................................................................12

*Rocha v. FedEx Corp.*,
  15 F. Supp. 3d 796 (N.D. Ill. 2014) ....................................................................6, 7

*Rock v. Nat'l Collegiate Athletic Ass'n*,
  928 F. Supp. 2d 1010 (S.D. Ind. 2013) .................................................................22

*Schuyler v Sotheby's Int'l Realty, Inc.*,
  No. 112578/2011, 2013 N.Y. Misc. LEXIS 4487 (NY Sup. Ct. Oct. 2, 2013) .......19

*Standard Iron Works v. ArcelorMittal*,
  639 F. Supp. 2d 877 (N.D. Ill. 2009) ...............................................................6, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...........................................................................3, 16, 23

*In re Text Messaging Antitrust Litig.*,
  782 F.3d 867 (7th Cir. 2015) ..................................................................................6

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
  987 F.2d 429 (7th Cir. 1993) .........................................................................3, 16, 23

*Wilks v. Am. Med. Ass'n*,
  854 F.2d 352 (7th Cir. 1990) ..................................................................................9

**Statutes**

820 ILCS 305/1 (2018) ...............................................................................................4

**Other Authorities**

Delcoure & Miller, *International Residential Real Estate Brokerage Fees and Implications for the US Brokerage Industry,* 2002 Vol. 5 No. 1 pp 12-39..............................23

## INTRODUCTION

The Consolidated Amended Class Action Complaint ("Complaint") fails to state a Sherman Act Section 1 claim because it lacks facts plausibly alleging an anticompetitive agreement between The National Association of Realtors® ("NAR") and the non-NAR Defendants (the "Corporate Defendants"). Plaintiffs fail to allege any anticompetitive agreement, express or implied, among the Corporate Defendants or between any Corporate Defendant and one or more multiple listing services ("MLSs") run by local Realtor® associations (the so-called "Covered MLSs") or any real estate agents. Nothing in the Complaint supports an inference that any of the Corporate Defendants did anything other than unilaterally act in their individual interests, including by encouraging or requiring the real estate brokerage companies that they respectively own and/or franchise to abide by NAR's rules and code of ethics and to generally support and improve the professionalism and ethical standards in the industry. Plaintiffs themselves acknowledge that participation in the Covered MLSs is a "commercial necessity" and "critical" for brokers, agents and real estate franchisees to compete effectively, admitting that such participation is in their individual interests and thus not evidence of any agreement involving any Corporate Defendant. *See* Compl. ¶¶ 2, 50, 98, 133, 137.

Plaintiffs claim that the Corporate Defendants violated antitrust laws by agreeing "to adopt, promote, implement, and enforce" a NAR rule that allegedly requires home sellers' real estate brokers to offer buyers' real estate brokers part of the commission received upon the sale of a seller's home. *Id.* Plaintiffs entirely fail, however, to allege any facts that would show that the Corporate Defendants have a "conscious commitment to a common scheme designed to achieve an unlawful objective" as required to state their antitrust claims under Section 1 of the Sherman

Act. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 706 (7th Cir. 2011).

Plaintiffs also fail plausibly to allege anticompetitive effects in a relevant market, which is an independent basis upon which to dismiss Plaintiffs' Complaint. *Agnew v. NCAA*, 683 F.3d 328, 335 (7th Cir. 2012). Plaintiffs define the relevant market as "the bundle of services provided to *homebuyers and sellers* by residential real estate brokers with MLS access," Compl. ¶ 133 (emphasis added), but fail to allege anticompetitive effects in that defined market – the same type of fatal legal error identified by the Supreme Court in its recent *American Express* decision. *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018).

For these reasons, as well as the reasons stated in NAR's Brief in Support of Its Motion to Dismiss, which the Corporate Defendants join, the Complaint against the Corporate Defendants should be dismissed.[1]

## I.  THE PARTIES

### A.  Plaintiffs

Plaintiffs are citizens of seven different states – Colorado, Texas, Minnesota, California, West Virginia, Wisconsin and Maryland – who sold homes in seven separate metropolitan areas – Denver, Austin, Minneapolis, Tampa, Baltimore, Milwaukee and Washington, D.C. Compl. ¶¶ 23-28, 30. Each Plaintiff is alleged to have paid an unspecified, "substantial buyer-broker commission." *Id.* Plaintiffs fail to allege that they sought to negotiate the commission paid to

---

[1] The Corporate Defendants are investigating whether the underlying listing agreements potentially require arbitration of the claims asserted by Plaintiffs in this lawsuit. That information is not readily available to the Corporate Defendants because it resides with Plaintiffs and third-party real estate brokerages or franchisees. The Corporate Defendants do not waive their right to compel arbitration if they determine that arbitration is warranted.

their own real estate brokers[2] or the portion to be offered to any buyer's broker, or that they were precluded in any way from negotiating a lower commission.

### B.     NAR and the MLS

NAR is a trade association for the real estate industry, and it includes local Realtor® associations and boards.  *Id.* ¶ 32.  The Complaint alleges that the rules set forth in NAR's Handbook on Multiple Listing Policy (the "NAR Handbook") and its Code of Ethics must be followed in order for real estate agents to access and list homes on the Covered MLSs that are operated by local member Realtors® associations.  Compl. ¶¶ 2-3, 95.  An MLS is a database of properties listed for sale in a particular geographic region, and is the system used to convey sales information for the vast majority of home transactions in the United States.  Compl. ¶¶ 2, 50, 137. Plaintiffs' challenge centers on what they have termed the "Buyer Broker Commission Rule," which is Section 2-G-1 of the NAR Handbook.[3]  Compl. ¶¶  3, 56, 60.

### C.     The Corporate Defendants

Corporate Defendants are franchise or holding companies and some of them also own brokerages.   None of the Corporate Defendants is alleged to be a broker or to oversee the independent contractor real estate agents who are affiliated with a broker and who handle real estate sales for home sellers.  Instead, Plaintiffs' theory appears to center on different, unspecified ownership or franchise relationships that the Corporate Defendants have with various nonparty real estate brokerage subsidiaries, franchisees and/or independent contractor real estate agents

---

[2] The term broker, which Plaintiffs use in their Complaint, means certain entities and individuals with a state license to lead a real estate office and supervise real estate agents.  The Corporate Defendants have used the term "real estate agents" to refer to individuals who act as independent contractor agents for buyers and sellers in the real estate transactions.

[3] In ruling on a Rule 12(b)(6) motion, a district court may consider documents referenced in the complaint and central to the plaintiff's claims.  *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

affiliated with brokerages or franchisees.[4]  No Corporate Defendant is alleged to have membership in NAR.

## II.    STANDARD OF REVIEW

To state a claim under Section 1 of the Sherman Act against the Corporate Defendants, Plaintiffs must allege: "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in a relevant market; and (3) an accompanying injury."  *Agnew*, 683 F.3d at 335. Merely asserting these elements in a complaint is insufficient.  Rather, to survive a Rule 12(b)(6) challenge, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  For that reason, "labels and conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice to state a claim for relief.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quotation omitted).

As to the first element of a Section 1 claim, a complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made."  *Twombly*, 550 U.S. at 556.  This requires plausible factual allegations that the defendants demonstrated a "conscious commitment

---

[4] A number of the Corporate Defendants are holding companies.  Two of the seven Corporate Defendants, Realogy Holdings Corp. ("Realogy") and HomeServices of America, have company-owned brokerages and/or franchisors, as well as franchisees who are real estate brokerages. RE/MAX, LLC, Keller Williams Realty, Inc., and BHH Affiliates, LLC are franchise companies with no company-owned brokerages. The Long & Foster Companies, Inc. ("L&F Companies") has a company-owned brokerage but no franchise operations.  Regardless of whether a brokerage is owned by a Corporate Defendant or is a franchisee, the underlying real estate agents who are affiliated with a brokerage are independent contractors of the brokerage, not employees.  *See Hansche v. Comm'r*, 457 F.2d 429, 434 (7th Cir. 1972) (noting that "ordinary real estate broker-owner relationship" is that of an independent contractor); *Perdomo v. Ask 4 Realty & Mgmt., Inc.*, 298 F. App'x 820, 822 (11th Cir. 2008) (holding that a real estate agent is an independent contractor); *see also* 820 Ill. Comp. Stat. Ann. 305/1 (2018) (exempting real estate brokers, broker-salesmen and salesman paid by commission from classification as employees under Illinois's workers' compensation law).

to a common scheme designed to achieve an unlawful objective." *See Monsanto*, 465 U.S. at 764. Thus, a mere "allegation of parallel conduct and a bare assertion of conspiracy will not suffice" because "that could just as well be independent action." *Twombly*, 550 U.S. at 556-57.

The second element of a Section 1 claim requires that a complaint "must sufficiently plead that [each defendant's] actions have caused an unreasonable restraint of trade in a relevant market." *Ass'n of Am. Physicians & Surgeons v. Am. Bd. of Med. Specialties*, No. 14-cv-02705, 2017 WL 6821094 at *3 (N.D. Ill. Dec. 13, 2017) (Wood, J.) (quotation and original alteration omitted). "Without a well-defined relevant market, a court cannot determine the effect that an allegedly illegal act has on competition." *Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 596 (8th Cir. 2009). Where a plaintiff has failed to plead anticompetitive effects in a properly defined relevant market, dismissal is appropriate. *See, e.g.*, *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106-07 (7th Cir. 1984) (lack of anticompetitive effects warrants dismissal of the antitrust claim); *Agnew*, 683 F.3d at 347 (affirming dismissal with prejudice where complaint failed to plead a cognizable relevant market); *O'Neill v. Coca-Cola Co.*, 669 F. Supp. 217, 224 (N.D. Ill. 1987) (dismissing complaint and holding that conclusory allegations were insufficient to establish antitrust injury).

## III.   ARGUMENT

The Corporate Defendants join in NAR's Brief in Support of its Motion to Dismiss (ECF No. 114). In addition, the Corporate Defendants move to dismiss the Complaint because Plaintiffs: (1) fail to allege facts supporting any anticompetitive agreement between or among any Defendants or other co-conspirators; (2) fail to allege any actions by the Corporate Defendants other than those that are fully consistent with each Corporate Defendant acting in its own lawful, independent interest; and (3) fail to allege any competitive harm in a properly defined relevant market. These

are independent bases upon which the Court should dismiss Plaintiffs' claims against the Corporate Defendants.

### A.  Plaintiffs' Antitrust Claims Do Not Allege an Unlawful Agreement.

Rather than alleging facts that the Corporate Defendants had the required "conscious commitment" to show conspiracy or agreement, Plaintiffs' Complaint alleges only independent, lawful actions by the Corporate Defendants that cannot support Plaintiffs' antitrust allegations. *Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 809 (N.D. Ill. 2014) (quoting *Omnicare, Inc.*, 629 F.3d at 706); *Brown v. Visa U.S.A., Inc.*, 674 F. Supp. 249, 251 (N.D. Ill. 1987) ("To state a claim under Section 1 [of the Sherman Act], a plaintiff must allege joint conduct or concerted action; independent action is not proscribed.").  It is also well established that Plaintiffs "must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." *Standard Iron Works v. ArcelorMittal*, 639 F. Supp. 2d 877, 900 (N.D. Ill. 2009); s*ee also In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 879 (7th Cir. 2015) ("Collusion is illegal only when based on agreement.").

Plaintiffs allege that the Corporate Defendants participated in the purported conspiracy through (i) participation in NAR; (ii) assistance in enforcement of NAR rules;[5] (iii) participation in local Realtor® associations and (iv) requirement that franchisees join NAR and MLSs.  Compl. ¶ 103.  However, these allegations provide no basis for inferring that the Corporate Defendants entered into an unlawful agreement with NAR or anyone else to restrain trade.  There is no

---

[5] Plaintiffs' allegation that the Corporate Defendants and/or their franchisees enforce NAR rules is based solely on their allegations of participation in governance of NAR, local real estate associations, local MLSs and a requirement to comply with NAR rules, *see* Compl. ¶¶ 103-21, which are discussed in Sections A.1-A.4.  The Complaint contains no allegations that any Corporate Defendant, or any brokerage or franchisee of any Corporate Defendant, has actually enforced any NAR rules.

suggestion in the Complaint that the Corporate Defendants ever communicated about NAR's rules or that they any had any awareness whatsoever of each other's policies concerning their franchisees or affiliated brokers' or agents' participation in MLSs. Plaintiffs therefore fail to allege that the Corporate Defendants had a conscious commitment to enter into a conspiracy with one another and fail to plead a sustainable conspiracy claim. *Twombly*, 550 U.S. at 565 n.10 (affirming dismissal of complaint and noting that the complaint "furnishes no clue as to which of the [defendants] supposedly agreed, or when and where the illicit agreement took place"); *see also Alarm Detection Sys., Inc. v. Vill. of Schaumburg,* No. 18-3316, 2019 WL 3071744, at *8 (7th Cir. July 15, 2019) (dismissing conspiracy claim because complaint provided "no direct allegations of agreement" between the parties); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 256 (3d Cir. 2010) (dismissing claim based on finding that plaintiff's "allegations do not offer even a gossamer inference of any degree of coordination," among defendants); *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 221 (4th Cir. 1994) (affirming dismissal of complaint "lack[ing] completely any allegations of communications, meetings, or other means through which one might infer the existence of a conspiracy").

All Plaintiffs' allegations amount to are allegations of conduct that is consistent with each Corporate Defendant acting in its own independent interest. Alleging "facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy [is] insufficient to plead a violation of the antitrust laws." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008) (citing *Twombly*, 550 U.S. at 553-57 & n.5); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cited favorably in *Twombly*, 550 U.S. at 554, 560-61); *see also Rocha*, 15 F. Supp. 3d at 809 (dismissing antitrust claim where "the complaint does not provide 'enough factual matter' to suggest that an agreement

was made"); *Frantzides v. Northshore Univ. HealthSystem Faculty Practice Assoc., Inc.*, 787 F. Supp. 2d 725, 731-32 (N.D. Ill. 2011).

      1.        **Plaintiffs Admit that the Corporate Defendants' Requiring Brokerages and/or Franchisees to Join an MLS Is Consistent with Independent and Unilateral Action.**

Corporate Defendants requiring brokerages and franchisees to join NAR, local real estate associations and/or local MLSs is consistent with independent and unilateral action. First, a requirement imposed by a Corporate Defendant that its brokerages or franchisees join NAR and a local real estate association or MLS, even if true, fails to support an agreement between the Corporate Defendants and NAR or among the Corporate Defendants. Second, Plaintiffs' own allegations provide the best explanation for why any such requirement or encouragement is lawful and in each Corporate Defendant's independent interest: according to Plaintiffs, "access to the Covered MLSs, and other MLSs, is a commercial necessity for all brokers and individual realtors." Compl. ¶ 98; *see also id*. ¶¶ 133 ("Access to the Covered MLSs is critical for brokers to compete and to assist home buyers and sellers in the areas in which those MLSs operate."), 137 ("Brokers cannot compete effectively without access to a listing service."). Given the "critical" importance of belonging to an MLS, it is in each Corporate Defendant's individual interest to encourage its franchisees or brokerages to participate in MLSs, because, as Plaintiffs allege, such participation is necessary for competitive success. Accordingly, Plaintiffs' allegation that Corporate Defendants require their brokerages or franchisees to join NAR and a local real estate association or MLS does not support an inference of an illegal agreement, but only identifies rational independent business judgment. *See Alarm Detection Sys., Inc.*, 2019 WL 3071744, at *9 (affirming dismissal of conspiracy claim for failure to adequately plead the existence of a conspiracy, including because defendants' conduct had a lawful alternative explanation).

### 2. Participation in NAR Does Not Plausibly Support Involvement in a Conspiracy.

Plaintiffs offer no evidence to support an agreement. Allegations that one Corporate Defendant's executive[6] participated in NAR governance or that independent contractor real estate agents or individuals affiliated with Corporate Defendants' independent brokerages or franchisees participated in NAR, *see* Compl. ¶¶ 103- 104, 106, are insufficient to support an inference that any of the Corporate Defendants entered into an unlawful agreement with NAR or each other to restrain trade.

First, trade associations are a ubiquitous feature in many industries, and the law provides that "[m]ere membership in a trade association, attendance at trade association meetings, and participation in trade association activities are not, in and of themselves, condemned or even discouraged by the antitrust laws." *Kleen Prods. LLC v. Int'l Paper*, 276 F. Supp. 3d 811, 834 (N.D. Ill. 2017), *aff'd sub nom. Kleen Prods. LLC v. Georgia-Pac. LLC*, 910 F.3d 927 (7th Cir. 2018) (quotation and citation omitted). To hold a Corporate Defendant liable based on its executives' alleged participation in NAR leadership, "there must be some evidence of, and participation in, an illegal scheme" with NAR. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, No. 80 C 1405, 1991 WL 5827, at *6 (N.D. Ill. Jan. 15, 1991), *aff'd*, 977 F.2d 585 (7th Cir. 1992) (internal quotation omitted); *accord AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999). *See also Wilks v. Am. Med. Ass'n*, 854 F.2d 352, 374 (7th Cir. 1990) ("[A] trade association is not, just because it involves collective action by competitors, a walking conspiracy."). Plaintiffs' Complaint lacks any factual allegations of such knowledge or participation.

---

[6] The Complaint purports to list more than one executive from HomeServices entities, but only one of the HomeServices entities listed is a Defendant. Compl. ¶ 104, 106, 108.

Second, the Complaint does not allege that, in 1996 when the challenged rule was allegedly adopted, any Corporate Defendant participated in conduct that supported Section 2-G-1 of the NAR Handbook. Indeed, only one of the seven Corporate Defendants is alleged to have personnel who participated in NAR leadership at all, making NAR governance an implausible vehicle for the claimed conspiracy.

Third, although the Complaint identifies various independent contractor real estate agents associated with various franchisees or brokerages who allegedly participated in some way in NAR leadership, it does not allege that any Corporate Defendant directed them to do so or even knew of their involvement. There are also no allegations identifying the manner in which the identified individuals participated in NAR leadership or any actions they took concerning any NAR rule. In fact, Plaintiffs specifically allege that while NAR "has modified *other* MLS rules" NAR has left the so-called Buyer Broker Commission Rule untouched. Compl. ¶ 107. Plaintiffs simply allege that certain individuals served on NAR boards or committees, nothing more. *Id.* ¶ 104, 106. That is not enough to support an inference of any illegal agreement. *Kendall*, 518 F.3d at 1048 ("[e]ven participation on the association's board of directors is not enough by itself" to create liability) (citing *Twombly*, 550 U.S. at 556-57).

Plaintiffs' allegation that certain independent contractor real estate agents affiliated with some franchisees or brokerages of the Corporate Defendants have participated in the NAR Multiple Listing Issues and Policies Committee at some undisclosed point over the past four years, Compl. ¶ 106, is also unavailing. Plaintiffs do not allege that the Committee did anything with respect to the challenged rule, much less discussed it; that the Corporate Defendants had anything to do with the Committee; or that any of the participating independent contractor real estate agents were directed by any Corporate Defendant to participate on the Committee or to take any action

-10-

with respect to any rule. Alleged participation on this Committee, without more, does not support an inference of conspiracy.

In sum, Plaintiffs' allegations do not establish, as required, each Corporate Defendant's "role in the conspiracy," *Kyhl v. A-One Plumbing, Inc.*, 679 F. Supp. 911, 914 (E.D. Mo. 1988), or that each "defendant joined the conspiracy and knew of its scope." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Rather, the differences in the levels of alleged participation suggest the absence of coordination among the Corporate Defendants or with NAR.

### 3. Individuals' Participation in Local Realtor® Associations Does Not Sufficiently Allege Conspiracy.

No inference of a conspiracy can be drawn from the allegation that executives and independent contractor real estate agents of franchisees or brokerages of Corporate Defendants, but not any of the Corporate Defendants themselves, participated in local Realtor® association governance or committees. Compl. ¶¶ 103, 109-110, 113. Additionally, Plaintiffs allege only that a few representatives of franchisees of certain Corporate Defendants participated in governance of local Realtor® associations that may operate a Covered MLS. *Id.* ¶¶ 108-110, 113. There are no allegations regarding the specific nature of those individuals' alleged participation or that it had or has anything to do with the issues in this case. Again, a general allegation that certain individuals from entities separate from the Corporate Defendants might participate in a local Realtor® association does not come close to establishing a knowing agreement between any Corporate Defendant and NAR or among any Corporate Defendants or anyone else to restrain trade.

### 4. That Corporate Defendants May Require Their Brokerages or Franchisees to Follow NAR Rules Is Consistent with Competitive, Unilateral Behavior.

That the Corporate Defendants may require their brokerages or franchisees to follow NAR rules also does not raise an inference of any illegal agreement with NAR or any other entity. Courts

on several occasions have concluded that NAR's rules are intended to ensure the effective and efficient functioning of its affiliated MLSs and ethical interactions among real estate professionals. *See Reifert v. S. Cent. Wis. MLS Corp.*, 450 F.3d 312, 321 (7th Cir. 2006) (holding that NAR code of ethics provision prohibiting Realtors® from soliciting clients who have already entered into agreement with other Realtors® "aids competition and fulfills the purposes of the Sherman Act by providing a more transparent marketplace"); *O'Riordan v. Long Island Bd. of Realtors, Inc.*, 707 F. Supp. 111, 115 (E.D.N.Y. 1998) (noting that MLSs function "like an exchange and provide[] wide dissemination of market information"). Compliance with NAR's rules thus reflects a sound decision on the part of each real estate brokerage to promote a competitive and ethical market that facilitates real estate transactions by fostering transparency and professionalism. Those independent business reasons for adhering to NAR's rules make implausible any inference from them of coordinated conduct.

5. **Plaintiffs' Allegation of an Invitation to an Unlawful Agreement Is Both Facially Implausible and Lacks Any Supporting Facts.**

In an attempt to at least reference some "agreement," Plaintiffs allege that, by keeping Section 2-G-1 in existence when the NAR Handbook has been periodically reissued, NAR somehow "invited" each of the Corporate Defendants and other unnamed co-conspirators (apparently numbering in the hundreds) to enter into a made-up agreement: that the Corporate Defendants "can participate in the MLS, and gain the benefits provided by NAR and the MLS, but only upon the condition that they agree to adhere to and enforce the anticompetitive restraints set forth in the Handbook." Compl. ¶ 58. But according to Plaintiffs, Section 2-G-1, which appears once in NAR's 160-page Handbook, has been included in the Handbook without change since at least 1996. *Id.* ¶ 56. Accordingly, Plaintiffs' implausible theory is that the Corporate Defendants

continuously, over the years, accepted NAR's invitation and consciously committed to a common scheme with NAR by standing by passively as NAR maintained its rule for over twenty years.

Plaintiffs, however, do not allege that any Corporate Defendant understood that NAR's maintenance of existing rules meant that it was extending an invitation to agree to violate the antitrust laws or explain how the Corporate Defendants could have accepted an invitation they did not understand existed. Moreover, because the Corporate Defendants are not members of NAR or its affiliated MLSs, they were in no position to accept NAR's alleged invitation, even if they understood it to have been made. Plaintiffs allege no facts regarding the how, when, or what any Corporate Defendant did to accept this supposed invitation. Thus, this allegation regarding NAR's supposed "invitation" should be disregarded. *See Twombly*, 550 U.S. at 565 n.10 (affirming dismissal of complaint and noting that the complaint "furnishes no clue as to which of the [defendants] supposedly agreed, or when and where the illicit agreement took place"); *see also Howard Hess*, 602 F.3d at 256 (dismissing claim based on finding that plaintiff's "allegations do not offer even a gossamer inference of any degree of coordination," or an opportunity to coordinate among defendants); *Estate Constr.,* 14 F.3d at 221 (affirming dismissal of complaint "lack[ing] completely any allegations of communications, meetings, or other means through which one might infer the existence of a conspiracy").

> ### 6.    Plaintiffs' Allegations About "Steering," at Best, Allege an Effect But Do Not Allege an Antitrust Conspiracy.

Finally, Plaintiffs fail to allege facts from which a conspiracy may be inferred by claiming that because sellers and their real estate brokers extend offers of compensation to buyers' brokers, such buyers' agents can compare compensation offered and "steer their clients to properties where the seller-broker is offering higher commissions." Compl. ¶ 4; *see also id.* ¶ 64. Plaintiffs' assumption about steering is directly contradicted by Plaintiffs' other allegation that buyers locate

homes they want to see on their own through online services without any assistance from a real estate agent and often before they even retain one. *Id.* at ¶14. If most home buyers are finding their own homes as a result of accessing information publicly available over the internet, buyers' real estate agents are unable, as a practical matter, to steer their customers away from the customers' preferred homes, regardless of their ultimate compensation. [7]

At best, Plaintiffs' steering allegations show a purported *effect* of the alleged conspiracy, but this alleged conduct does not support an inference of an underlying conspiracy because the claimed incentive to offer compensation to buyers' brokers is as consistent, if not more consistent, with the demands of the marketplace, and the value accorded buyer broker services than it is with an inference of collusion. *See Twombly*, 550 U.S. at 557 (to be viable, an antitrust claim must plausibly allege that conduct resulted from an agreement, "not merely parallel conduct that could just as well be independent action").

Moreover, the practice of offering compensation to brokers helping buyers preceded by many years the adoption in 1996 of the challenged rule. Compl. ¶ 53. While Plaintiffs assert that there is no reason for sellers to pay for the services of buyer brokers, id. ¶ 55, the rule they contest does not require this result. The fact that many home sellers, in conjunction with their listing brokers, still make offers of compensation to incentivize agents to find buyers for the property shows that the practice would likely continue even if Section 2-G-1 were repealed.

---

[7] Likewise, whether one of twenty Covered MLSs has allegedly adopted software that will sort listings according to a number of different criteria, including the amount of buyer broker compensation being offered, thus allegedly promoting steering (*e.g.* Compl. ¶ 71), says nothing about an antitrust conspiracy. Buyers' brokers and agents have a fiduciary duty to their buyer clients to show them homes that satisfy the buyer's criteria, and there is no allegation that any of the Corporate Defendants instructs or allows their brokerages or franchisees to ignore their ethical and fiduciary obligations by allowing real estate agents to show homes based solely on the listing broker's offer of compensation.

**B.**   **Allegations as to Each Corporate Defendant Are Insufficient to Maintain A Claim Against Any of Them.**

Plaintiffs fail plausibly to allege a conspiracy for another reason: the limited, specific references to each Corporate Defendant do not plausibly tie any of the individual Corporate Defendants to a conspiracy.   Plaintiffs do not meet their pleading obligations through general allegations that "Corporate Defendants" did one thing or another—with no specifics as to which Defendant did what.  *See, e.g.,* Compl. ¶¶ 102-103, 109.  This kind of vague, group pleading does not satisfy the *Twombly* standard.  *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 546 (8th Cir. 2015) (affirming dismissal of claim containing "vague references to concerted action" that failed to allege "when the agreements occurred or even identify which of the distributors named as defendants . . . were party to the agreements"); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (affirming dismissal of antitrust claims based on conclusory allegations "without any specification of any particular activities by any particular defendant"); *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 JG VVP, 2011 WL 7053807, at *19 (E.D.N.Y. Jan. 4, 2011), *R&R adopted*, No. 08-CV-00042 JG VVP, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) (rejecting antitrust claims with group pleading that ignored corporate separateness).  Plaintiffs' antitrust claim as to all of the Corporate Defendants, as well as with respect to each individually, should therefore be dismissed.

**1.**   **The Court Should Dismiss the Claim as to Keller Williams.**

Plaintiffs fail to allege any conduct by Keller Williams that supports its involvement in any conspiracy.  They identify no employee of Keller Williams involved in any way in the leadership of NAR or in any MLS or local Realtor association.  The best Plaintiffs can do is identify agents and brokers affiliated with Keller Williams' independently owned and operated franchises – entities distinct from Keller Williams itself, *see* Compl. ¶ 36 – who have participated in NAR,

local associations, or MLS activities. *Id.* ¶¶ 104, 106, 108, 110. Even if the actions of these individuals could be attributed to Keller Williams (and they cannot), these individuals' mere involvement in trade association activities is not sufficient to establish the meeting of the minds with NAR or any of the other Corporate Defendants necessary to support Plaintiffs' claims. *See supra*, § III.A.2. This is particularly true here, because Plaintiffs fail to allege any specific conduct of any Keller Williams-affiliated broker or independent contractor agent relating to the Buyer Broker Commission rule. Plaintiffs' general and conclusory allegations cannot support a claim against Keller Williams.

Plaintiffs' allegation that Keller Williams' policies "require franchisees and realtors to comply with NAR rules and regulations" also fails to support their claims against Keller Williams. Compl. ¶ 119. The Policies & Guidelines Manual from which Plaintiffs quote provides the independent, non-conspiratorial explanation for Keller Williams encouraging involvement by its franchisees in local NAR associations, which in turn requires compliance with the governing NAR rules and regulations:[8]

> § 4.9.1.28.3: **State or Provincial [REALTOR® Associations]**: We encourage you to be actively involved to the greatest possible extent. We realize the time factor causes you to be less active in these than your local Board, but we do want to encourage you to attend these conventions and seminars. These seminars could put money in your pocket as you might receive referrals from other associates.
>
> § 4.9.1.28.4: **Local [REALTOR® Associations]**: A REALTOR® association is a trade association of the professionals dealing in the real-estate business. Members conform to the high ideals set forth in the Code of Ethics. We encourage you to take an active role in any such local association.

Allen Decl. Ex. A, at 4-30.

---

[8] As noted, when a complaint relies on documents not attached to the complaint, the court may consider the entire document–not just the portions cited by the plaintiff–when deciding a motion to dismiss. *See Tellabs*, 551 U.S. at 322; *Venture Assocs.*, 987 F.2d at 431. True and correct copies of the pages of the Keller Williams "Policies & Guidelines Manual" containing provisions central to the Complaint are attached to this motion. *See* Ex. 1: Decl. of Chad Allen at Ex. A.

Contrary to the impression Plaintiffs seek to create, these provisions, read in context, explain the independent basis behind Keller Williams' encouragement to franchisees (and franchisees' agents) to become involved in local Realtor® associations and MLSs. The Policies & Guidelines Manual expressly encourages participation because doing so "could put money in your pocket as you might receive referrals" from local brokers and agents. Additionally, as alleged, "access to the Covered MLSs, and other MLSs, is a *commercial necessity* for *all brokers and individual realtors*." Compl. ¶ 98 (emphasis added). With this independent, economically procompetitive, and non-conspiratorial explanation for Keller Williams' encouragement, Plaintiffs' thin allegation of Keller Williams' involvement in a conspiracy "stops short of the line" between the possibility and plausibility of the existence of a conspiracy, and fails to support allegations that Keller Williams participated in a conspiracy. *See Twombly*, 550 U.S. at 557.

For these reasons, Keller Williams respectfully requests that the Court dismiss Plaintiffs' claim as against it.

### 2. The Court Should Dismiss the Claim as to RE/MAX.

As set forth above, to sustain their antitrust claim, Plaintiffs must allege the role in the conspiracy played by RE/MAX, *Standard Iron Works*, 639 F. Supp. 2d at 900, and cannot engage in generalized group pleading with no allegations of "any particular activities" by RE/MAX. *In re Elevator Antitrust Litig.*, 502 F.3d at 50.

The Complaint nowhere alleges that any RE/MAX employee or executive is or has been involved in NAR leadership, any NAR committees, local real estate associations, or any MLSs, and notes only that individual real estate agents of different, independently owned and operated franchisees have held positions with NAR, two local real estate associations, and one MLS. Compl. ¶¶104, 106, 108, 110, 113. While Plaintiffs describe three individuals on the Bright MLS Board of Directors as generically being with "RE/MAX," as is evident from the Bright MLS

-17-

website, two of these individuals are actually affiliated with independently owned and operated RE/MAX franchisees and one is not even affiliated with RE/MAX at all.[9] Plaintiffs make no allegations that RE/MAX directed or requested that these individuals participate in the Bright MLS Board of Directors or that RE/MAX is tied in any way to any conduct (which Plaintiffs fail to specify) of these individual real estate agents associated with independently owned and operated franchisees. Moreover, the alleged acts themselves amount to nothing more than general participation in NAR, local real estate associations, or an MLS. Plaintiffs further plead no facts upon which the Court could conclude that these individuals, who have no direct relationship with RE/MAX, are agents of RE/MAX whose actions could be attributed to RE/MAX. *See Oliveira-Brooks v. RE/MAX Int'l, Inc.*, 865 N.E.2d 252, 261 (Ill. App. Ct. 2007) (affirming lower court finding that real estate agent was not an agent of RE/MAX International); *Moe v. RE/MAX Caribbean Islands, LLC*, Civ. Action No. 3:11-cv-00073, ECF No. 60 (D.V.I. Mar. 23, 2012) (dismissing claims against RE/MAX Caribbean Islands, LLC and RE/MAX, LLC for acts of franchisee) (Motions at ECF Nos. 4-5). The Complaint thus fails to allege plausibly any participation in NAR, local Realtor® associations, or any MLSs by RE/MAX.

Further, Plaintiffs do not allege that RE/MAX participated in the creation or adoption of the provision of the NAR Handbook and Code of Ethics that Plaintiffs challenge; or that RE/MAX agreed with any other Defendant or anyone else to require or encourage real estate agent compliance. Plaintiffs' general assertion that the Corporate Defendants require franchisees "to comply with NAR rules and regulations," Compl. ¶ 120, fails to allege a conspiracy because it is wholly conclusory. Plaintiffs plead no facts even suggesting that RE/MAX included this alleged

---

[9] Bright MLS, Board of Directors, *available at* https://www.brightmls.com/#/about-bright/board-of-directors (last accessed August 7, 2019).

requirement in its franchise agreement in order to ensure compliance with NAR rules regarding real estate agent compensation, that RE/MAX has ever discussed any NAR rules regarding real estate agent compensation with any of its franchisees, or that RE/MAX has ever enforced the alleged requirement to follow NAR rules with any of its franchisees. Furthermore, Plaintiffs provide the procompetitive, non-conspiratorial explanation for this alleged requirement: access to the MLSs "is critical for brokers to compete and to assist home buyers and sellers" with their real estate transactions. *Id.* ¶ 133. Plaintiffs' claim against RE/MAX should be dismissed.

### 3. The Court Should Dismiss the Claim as to Realogy.

As to Realogy, the Complaint is fatally deficient as well. First, Plaintiffs do not allege that any Realogy employees participate in NAR governance, either now or in 1996, when the broker commission rule was purportedly adopted. *See id.* ¶ 104. Rather, Plaintiffs allege that individuals affiliated with an independently owned and operated franchisee associated with a Realogy-owned brand participated on each of NAR's 2018 and 2019 leadership teams. *Id.* The Complaint also notes that a handful of independent franchisee agents have participated on NAR committees, local associations, or regional MLSs. *Id.* ¶¶ 106, 108, 110, 113. But absent well-pleaded allegations of "any particular activities" by Realogy itself (as opposed to independent contractor agents of franchisees), Plaintiffs' claims against Realogy must be dismissed. *See In re Elevator Antitrust Litig.*, 502 F.3d at 50 (allegations of conspiracy are insufficient "without any specification of any particular activities" by a particular defendant); *see also Schuyler v Sotheby's Int'l Realty, Inc.*, No. 112578/2011, 2013 N.Y. Misc. LEXIS 4487, at *6-7 (NY Sup. Ct. Oct. 2, 2013) (denying motion to amend complaint that sought to "pierce the corporate veil" as futile to hold Realogy responsible for subsidiary).

Plaintiffs cannot salvage their deficient claims against Realogy by asserting that Realogy, like other Corporate Defendants, requires "its franchisees and realtors to comply with NAR rules

-19-

and regulations." *Id.* ¶ 117. Again, Plaintiffs allege no actual conduct by Realogy. *See id.* Rather, Plaintiffs point to several franchise manuals that require membership with local MLSs (which Plaintiffs acknowledge is a commercial necessity, *see id.* ¶ 2), and a general statement from a 2015 Realogy securities filing that a franchisee's failure to comply with each brand's policies and procedures could result in termination of the franchise agreement. *See id.* ¶ 117. As with the other Corporate Defendants, Plaintiffs' conclusory allegations regarding compliance with NAR rules and membership in MLSs stops well "short of the line" from alleging that Realogy entered into a conspiracy, especially where participation in MLSs is a rational business decision that provides an "obvious alternative explanation" for the facts alleged. *See Twombly*, 550 U.S. at 557, 576; *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 321-23 (3d Cir. 2010) ("allegations of conspiracy are deficient if there are 'obvious alternative explanation[s]' for the facts alleged") (quoting *Twombly*, 550 U.S. at 576); *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 483 (S.D.N.Y. 2017) (dismissing complaint as to a defendant where, *inter alia*, the plaintiffs failed to allege that the defendant "did anything specific to further the conspiracy").

### 4. The Court Should Dismiss the Claim as to HomeServices and Its Subsidiaries.

The Complaint likewise fails to allege any specific conduct by HomeServices of America, Inc., or three of its newly named subsidiaries.

In addition to its improper group pleading of the Corporate Defendants, Plaintiffs also engage in impermissible group pleading by lumping together four affiliated, but independent, entities – HomeServices of America, Inc., HSF Affiliates, LLC, BHH Affiliates, LLC and The Long & Foster Companies, Inc. – and referring to them collectively as simply "HomeServices" throughout the Complaint. Compl. ¶ 34. Such pleading tactics cannot survive a motion to dismiss.

To the extent the Plaintiffs differentiate between HomeSerivces of America and its affiliates at all, those allegations have nothing to do with participation in NAR, participation in local Realtor® associations or implementaiton or enforcement of Section 2-G-1 of the NAR Handbook or NAR's Code of Ethics. Thus, HSF Affiliates is alleged only to "operate[] many real estate franchise networks," *id*., with no clarity or supporting factual allegation as to whether or how this may relate to any particular franchisee. Likewise, the Complaint says nothing about BHH Affiliates other than it "is a subsidiary of HSF Affiliates and offers real estate brokerage services." *Id*. As for L&F Companies, it was not even affiliated with HomeServices of America prior to 2017 when HomeServices of America acquired it (*id.*) and there are no allegations about any instructions or guidance that L&F Companies gave to its real estate brokerage subsidiaries with respect to Section 2-G-1 of the NAR Handbook.

The allegations regarding HomeServices of America individually also fail to plausibly state a claim. While the Complaint alleges that HomeServices' executive chairman currently serves as a NAR director, *id.* ¶104, Plaintiffs do not allege that HomeServices, or its chairman or other personnel allegedly acting on its behalf, had anything to do with the adoption, implementation, or enforcement of the Section 2-G-1 of the NAR Handbook or NAR's Code of Ethics, Standard of Practice 16-16. Indeed, the Complaint does not even allege that HomeServices existed at that time of the November 1996 enactment of Section 2-G-1. Plaintiffs also do not allege that HomeServices of America or its executives even discussed Section 2-G-1's operation or had anything to do with any (unalleged) enforcement of the Rule – much less that any such action occurred at HomeServices of America's direction or pursuant to a conspiracy. Plaintiffs' reference to a handful of other current or former independent contractor sales agents or brokerage subsidiary

associated with or employed by HomeServices of America's subsidiaries or franchisees says nothing about HomeServices of America's participation in a conspiracy.

Indeed, this iteration of the Complaint—like the original complaint—is devoid of any factual allegation regarding collusion or conduct between HomeServices of America and any other Corporate Defendant with respect to the challenged rule.

For these additional reasons, HomeServices of America, L&F Companies, HSF Affiliates, and BHH Affiliates each respectfully request that the Court dismiss Plaintiffs' claims against them.

### C. Plaintiffs Have Failed to Allege Competitive Harm in a Properly Defined Relevant Market.

Plaintiffs have also failed to adequately define a legally cognizable relevant market. The Supreme Court has explained that in order to assess whether an antitrust claim has been adequately asserted, a plaintiff must allege a cognizable relevant market in which the supposed anticompetitive restraint has been imposed by the defendant's conduct. *See Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018). The relevant market in a Section 1 case is "the area of effective competition . . . within which significant substitution in consumption or production occurs." *Id.* Where a plaintiff has failed to plead anticompetitive effects in a properly defined relevant market, dismissal is appropriate. *See, e.g.*, *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984) (reasoning that the absence of anticompetitive effects "is ordinarily fatal to the existence" of a Section 1 claim); *Besser Pub. Co. v. Pioneer Press, Inc.*, 571 F. Supp. 640, 642 (N.D. Ill. 1983); *see also Rock v. Nat'l Collegiate Athletic Ass'n,* 928 F. Supp. 2d 1010, 1020-24 (S.D. Ind. 2013) (dismissing antitrust claim for failure to adequately alleged relevant market and failure to alleged anticompetitive effects).

Here, Plaintiffs allege that the relevant market is the market of "the bundle of services provided to *homebuyers and sellers* by residential real estate brokers with MLS access." Compl.

¶ 133 (emphasis added).  Plaintiffs, however, focus entirely on the impact of sellers and ignore the competitive effects on buyers and overall.  *See Am. Express Co.*, 138 S. Ct. at 2287.  Plaintiffs' alleged harm is a shifting of a cost between two participants in its alleged relevant market, and Plaintiffs ignore the corresponding benefits to both home sellers (for example, the ability to incentivize home showings) and home buyers (for example, more money available to purchase a home) under Section 2-G-1.

Moreover, Plaintiffs have failed to allege facts showing that real estate broker commissions for the relevant market would be lower in the absence of the challenged rule.  *See Matsushita Elec.*, 475 U.S. at 593-98 (rejecting antitrust claim that was unsupported by economic theory); *JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 778 (7th Cir. 1999); *Cascades Computer Innovation LLC v. RPX Corp.*, No. 12-CV-01143 YGR, 2013 WL 316023, at *11 (N.D. Cal. Jan. 24, 2013) ("Where the facts alleged in the complaint demonstrate that an alleged conspiracy makes no economic sense, the claim must be dismissed.").  Rather, Plaintiffs point to one academic study that suggests brokerage rates "should run closer to 3.0%" as they supposedly do in certain international markets, Compl. ¶ 125, but Plaintiffs allege no facts that relate this assertion to the conduct alleged in the Complaint and make no allegations that the services provided in such international markets are comparable to those in the United States.  Plaintiffs' cited report itself acknowledges that "*agents do not earn excess profits*."[10]  *See* Delcoure & Miller, *International Residential Real Estate Brokerage Fees and Implications for the US Brokerage Industry*, 5 Int'l Real Estate Rev. 12, 13 n.3 (2002) (emphasis added), attached as Ex. 2.[11]  Because Plaintiffs'

---

[10] This contradicts Plaintiffs' conclusory assertion that even if negotiation does occur, Section 2-G-1 "elevate[s] the base-line" for such negotiation.  Compl. ¶ 83.

[11] The full content of this report is subject to judicial notice because it is cited and quoted in Plaintiffs' Complaint.  *See, e.g.*, *Tellabs*, 551 U.S. at 322; *Venture Assocs.*, 987 F.2d at 431.

authority demonstrates that "agents do not earn excess profits" and Plaintiffs allege no other facts that show anticompetitive effects in the alleged relevant market "as a whole," *Am. Express Co.*, 138 S. Ct. at 2287, the Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, and the arguments made in NAR's Memorandum in Support of its Motion to Dismiss in which the Corporate Defendants have joined, the Court should grant the Corporate Defendants' Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: August 9, 2019          Respectfully submitted by:

*Counsel for Homeservices of America, Inc.,*     *Counsel for Keller Williams Realty, Inc.*
*BHH Affiliates, LLC, HSF Affiliates, LLC,*
*The Long & Foster Companies, Inc.*

/s/ Karoline E. Jackson           /s/ Timothy Ray

| | |
|---|---|
| Matthew B. Barr | Timothy Ray |
| matthew.barr@btlaw.com | Timothy.Ray@hklaw.com |
| Matthew T. Ciulla | Martin G. Durkin |
| matthew.ciulla@btlaw.com | martin.durkin@hklaw.com |
| Karoline E. Jackson | William F. Farley |
| kjackson@btlaw.com | william.farley@hklaw.com |
| Robert D. Macgill | HOLLAND & KNIGHT LLP |
| robert.macgill@btlaw.com | 131 South Dearborn Street |
| BARNES & THORNBURG LLP | 30th Floor |
| 11 South Meridian Street | Chicago, IL 60603 |
| Indianapolis, IN 46204 | (312) 263-3600 |
| (317) 231-6498 | |
| | David C. Kully |
| Denise A. Lazar | david.kully@hklaw.com |
| denise.lazar@btlaw.com | Anna P. Hayes |
| BARNES & THORNBURG LLP | anna.hayes@hklaw.com |
| One North Wacker Drive, Suite 4400 | HOLLAND & KNIGHT LLP |
| Chicago, IL 60606 | 800 17th Street NW, Suite 1100 |
| (312) 214-4816 | Washington, DC 20530 |
| | (202) 469-5415 |

Jay N. Varon
 jvaron@foley.com
Jennifer M. Keas
 jkeas@foley.com
FOLEY AND LARDNER LLP
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 672-5436

Erik Kennelly
 ekennelly@foley.com
FOLEY & LARDNER LLP
321 N. Clark St., Suite 2800
Chicago, IL 60654
(312) 832-4588

*Counsel for Realogy Holdings Corp.*

/s/ Kenneth M. Kliebard
_____
Kenneth Michael Kliebard
 kenneth.kliebard@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601-5094
(312) 324-1000

Stacey Anne Mahoney
 stacey.mahoney@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

*Counsel for RE/MAX Holdings, Inc.*

/s/ Paula W. Render
_____
Paula W. Render
 prender@jonesday.com
Erin L. Shencopp
 eshencopp@jonesday.com
Odeshoo Hasdoo
 ehasdoo@jonesday.com
JONES DAY
77 W Wacker, Suite 3500
Chicago, IL 60605
(312) 782-3939

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2019, I electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF THE CORPORATE DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT with the Clerk of the Court using the CM/ECF system, which will send notice to counsel for all parties that have appeared in this case.


*/s/ Karoline E. Jackson*