# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHRISTOPHER MOEHRL, MICHAEL )
COLE, STEVE DARNELL, VALERIE )
NAGER, JACK RAMEY, DANIEL )
UMPA, and JANE RUH, on behalf of )
themselves and all others similarly situated, )
                                                 )

     Plaintiffs, )
                                                 )    Case No: 1:19-cv-01610
         v. )
                                                 )    Judge Andrea R. Wood

THE NATIONAL ASSOCIATION OF )
REALTORS, REALOGY HOLDINGS )
CORP., HOMESERVICES OF AMERICA, )
INC., BHH AFFILIATES, LLC, HSF )
AFFILIATES, LLC, THE LONG & )
FOSTER COMPANIES, INC., )
RE/MAX LLC, and KELLER )
WILLIAMS REALTY, INC., )
                                                 )

     Defendants. )

## AGREED ORDER REGARDING PRODUCTION OF
## ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS

This Order Regarding Production of Electronically Stored Information and Paper Documents ("ESI Protocol Order") shall govern the Parties in the above-captioned case whether they currently are involved or become so in the future, and any related actions that may later be consolidated with this case (collectively, the "Litigation").

Nothing in this ESI Protocol Order shall be construed to affect the admissibility of any document, data, or discoverable information. Pursuant to the terms of this ESI Protocol Order, any Party's disclosure of information regarding search process and electronically-stored information ("ESI") practices shall not constitute a waiver, by any Party, of any objection to the production of particular ESI, or any document or data, as irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party. All objections to the authenticity or admissibility of any ESI, document or data are preserved and may be asserted at any time. For the avoidance of doubt, a Party's compliance with this ESI Protocol Order will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

## I.  GENERAL PROVISIONS

A.  **Applicability**:  This ESI Protocol Order will govern the production of ESI and paper documents. To the extent that a Party collected and processed documents prior to the entry of this ESI Protocol Order, and production of such documents cannot be made in accordance with the terms of this ESI Protocol Order, the Parties will meet and confer concerning the potential formats of the production of any such documents.

B.  **Cooperation**:  The Parties agree that they will adhere to the principles of cooperation, transparency, reasonableness, and proportionality, as set forth in the Federal Rules of Civil Procedure and as interpreted by federal case law and in the Seventh Circuit Electronic Discovery Committee Principles Relating to the Discovery of Electronically Stored Information, as they conduct discovery in the Litigation. Before initiating discovery about preservation and collection, a Party shall confer with the other Party concerning the specific need for such discovery, including its relevance to claims and defenses, and the suitability of alternative means for obtaining the information.

C.  **ESI Liaisons**:

1.  **Designation**:  Each Party agrees to designate an ESI Liaison within 7 days after entry of this ESI Protocol Order. Any Party is free to change its designated ESI Liaison by providing written notice to the other Parties.

2.  **Duties of ESI Liaison**:  Each ESI Liaison will be prepared to participate in the resolution of any e-discovery disputes or ESI issues that may arise (or designate another person as primarily responsible) and have access to personnel most knowledgeable about the Party's electronic systems and capabilities in order to, as appropriate, answer pertinent questions.

3. **Time Frame for ESI Issue Resolution**:   Each ESI Liaison will acknowledge receipt of an ESI-related inquiry from another ESI Liaison within 3 business days after the initial inquiry and respond substantively no later than 10 business days after the initial inquiry. If the responding ESI Liaison believes the ESI issue in question is particularly complex and requires more than 10 business days to respond substantively, then within 10 business days the responding ESI Liaison will provide a general explanation of the process necessary to answer the question and provide an estimated response date.

D. **Deadlines**:  References to schedules and deadlines in this ESI Protocol Order shall comply with Fed. R. Civ. P. 6 with respect to computing deadlines.

E. **Definitions**:

1. "Discovery Material" is defined as all information produced, given, or exchanged by and among all Parties, or received from non-Parties in the Litigation, including all deposition testimony, testimony given at hearings or other proceedings, interrogatory answers, documents and all other discovery-related materials, whether produced informally or in response to requests for discovery.

2. "ESI" as used herein means "electronically stored information" and shall have the same meaning as defined under the Federal Rules of Civil Procedure.

3. "Metadata" means and refers to data providing information about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

4. Plaintiffs and Defendants, as well as their officers, directors, and employees are referred to as the "Parties" solely for the purposes of this ESI Protocol Order. A single Plaintiff or Defendant, as well as, where applicable, its respective officers, directors, and employees may also be referred to as a "Party" solely for the purposes of this ESI Protocol Order.

5. "Plaintiffs" as used herein shall mean the named Plaintiffs identified in the operative complaint.

6. "Defendants" as used herein shall mean the Defendants named in the operative complaint.

7. To avoid misunderstandings about terms, all Parties should consult the most current edition of The Sedona Conference Glossary.

F. **Confidential Information**: For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as confidential under the Agreed Confidentiality Order.

G. **Encryption**: To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

## II. GENERAL PRODUCTION FORMAT PROTOCOLS

A. **TIFFs or PDFs**: Except for structured data, all production images will be provided as either a TIFF or PDF. If producing a TIFF, the producing Party shall provide a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files. If producing in PDF, each file should be provided as a single 300 DPI, color, text-searchable PDF. Each document level file should be named after the BeginBates. Additionally, the PDF should have the same number of pages as the text files have page breaks. Each image will have a file name that is the unique Bates number of that image, pursuant to ¶ II(E). Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (i.e., portrait to portrait and landscape to landscape). Hidden content, tracked changes, edits, comments, notes, and other similar information viewable within the native file shall, to the extent reasonably practicable, also be imaged so that this information is captured on the produced image file. Documents that are difficult to render in TIFF or PDF because of technical issues, or any other documents that are impracticable to render in TIFF or PDF format, may be produced in their native format with a placeholder TIFF or PDF image stating "Document Produced Natively," unless such documents contain redactions, in which case the documents will be produced in TIFF or PDF format. A producing Party retains the option to produce ESI in alternative formats if so agreed by the requesting Party, which may include native format, or a combination of native and TIFF or PDF formats.

B. **Text Files**: Each text-based or text-heavy ESI item produced under this ESI Protocol Order shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

1. **OCR**: A producing Party may make paper documents available for inspection and copying/scanning in accordance with Fed. R. Civ. P. 34 or, additionally or alternatively, scan and OCR paper documents if it chooses. Where OCR is used, the Parties will endeavor to generate accurate OCR

and will utilize quality OCR processes and technology. OCR text files should indicate page breaks where possible. Even if OCR is used by a producing Party, however, the Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR. In such instances, or in the event that a producing Party does not choose to use OCR at all, the producing Party will make the paper documents available for inspection and copying in accordance with Fed. R. Civ. P. 34.

2. **ESI**: Emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available.

C. **Production of Native Items**: The Parties agree that ESI shall be produced as TIFFs or PDFs with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix 1 hereto. The exception to this rule shall be Adobe Acrobat files (e.g. pdf files), PowerPoint files (e.g., MS Office .ppt or .pptx files), spreadsheet-application files (e.g., MS Excel), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, .mp3, .mp4, and .avi), for which all ESI items shall be produced in native format unless there is an agreement to the contrary. In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production. In addition to producing the above file types in native format, the producing Party shall produce a single-page TIFF or PDF slip sheet indicating that a native item was produced. The filename must retain the file extension corresponding to the original native format; for example, an Excel 2003 spreadsheet's extension must be .xls. The corresponding load file shall include NativeFileLink information for each native file that is produced. Further, the Parties agree to meet and confer prior to producing native file types other than Adobe Acrobat, PowerPoint, MS Excel and multimedia audio/visual file types such as .wav, .mpeg,.mp3, .mp4 and .avi. Prior to processing non-standard native files for production, the producing Party shall disclose the file type to and meet and confer with the requesting Party on a reasonably useable production format. The Parties agree to meet and confer to the extent that there is data in database application files, such as SQL and SAP, to determine the best reasonable form of production of usable data. Through the pendency of the Litigation, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

D. **Requests for Other Native Files**: Other than as specifically set forth above, a producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol Order does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format. The requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. Such requests will not be

unreasonably denied by the producing Party. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

E.    **Bates Numbering**:

    1.    All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters or embedded spaces, except hyphens or underscores; (4) be sequential within a given document; and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

    2.    If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

    3.    The producing Party will brand all TIFF images at a location that does not obliterate or obscure any part of the underlying images.

F.    **Parent-Child Relationships**: Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable.

G.    **Entire Document Families:** Entire Document families must be produced, even if only the parent email or an attachment to an email is responsive, excepting documents that are withheld on the basis of privilege and in compliance with the parties' stipulation or the Court's order on such assertions of privilege.

H.    **Load Files**: All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production.

I.    **Color**: With the exception of native files, ESI and original documents containing color need not be produced initially in color unless otherwise agreed. However, if ESI or an original document contains color markings, the requesting Party may, in good faith, request that the document be produced in its original colors. If the Producing Party believes production in color will be unreasonably burdensome, the Parties may meet and confer in good faith about sharing the costs of such production. For such documents, the requesting Party shall provide a list of Bates

numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page 300 DPI with a minimum quality level of 75, 24-bit, color JPG images. All requirements for productions stated in this ESI Protocol Order regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Requests that a document be produced in color for the reasons set forth in this ¶ II(I) will not be unreasonably denied by the producing Party. If a producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

J. **Foreign Language Documents:** To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language documents and ESI in the original language. The Producing Party has no obligation to provide a translation of the documents or ESI or any portion thereof.

K. **Confidentiality Designations**: If a particular paper document or ESI item qualifies for confidential treatment pursuant to any applicable federal, state, or common law (e.g., Personally Identifiable Information or Protected Health Information), or to the terms of an Agreed Confidentiality Order entered by the Court in the Litigation or a confidentiality stipulation entered into by the Parties, the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images. To the extent reasonably possible, this designation also should be included in the appropriate data field in the load file. Failure to comply with the procedures set forth in this ESI Protocol Order, any protective order or confidential order, or any confidential stipulation shall not waive any protection or confidential treatment. If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided.

L. **Production Media & Protocol**: A producing Party may produce documents via file-sharing service, including any network-based secure file transfer mechanism or FTP protocol. Any requesting Party that is unable to resolve any technical issues with the electronic production method used for a particular production may request that a producing Party provide a copy of that production using Production Media, as described below in this ¶ II(L).

A producing Party may also produce documents on readily accessible computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted, and the producing Party will provide a decryption key to the requesting Party in a communication separate from the production itself. Each piece of Production Media will be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media, as well as the sequence of the material in that production. For example, if the production comprises document images on three DVDs, the producing Party

may label each DVD in the following manner: "[PARTY] Production January 1, 2017-001," "[PARTY] Production January 1, 2017-002," and "[PARTY] Production January 1, 2017-003." Where the Production Media used is a CD-ROM, DVD, external hard drive (with standard PC compatible interface), or USB drive, such production media must be sent no slower than overnight delivery via FedEx, UPS, or USPS. Each item of Production Media (or in the case of productions made via FTP link, each production transmittal letter) shall include: (1) text referencing that it was produced in the Litigation, (2) the production date, (3) the Bates number range of the materials contained on such production media item, and (4) a short description of the production. Any replacement Production Media will cross-reference the original Production Media and clearly identify that it is a replacement and cross-reference the Bates number range that is being replaced. The ESI Liaisons shall designate the appropriate physical address for productions that are produced on Production Media.

M. **Resolution of Production Issues:** Documents that cannot be read because of imaging or formatting problems shall be promptly identified by the Receiving Party. The Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s), to the extent the problem(s) are within the Parties' control.

However produced, a producing Party shall provide clear instructions for accessing the production, including any necessary passwords or encryption keys.

## III. PAPER DOCUMENT PRODUCTION PROTOCOLS

A. **Scanning**: A producing Party may make paper documents available for inspection and copying in accordance with Fed. R. Civ. P. 34 or, additionally or alternatively, OCR paper documents if it chooses. If OCR is used, the Parties agree that the following ¶¶ III(B)-(E) shall apply.

B. **Coding Fields**: The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, (g) Pages and (h) Redacted (YIN). Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y."

C. **Unitization of Paper Documents**: Paper documents should be logically unitized for production to the extent reasonably practicable. Therefore, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records.

D. **File/Binder Structures**:

1. **Unitization**: Where the documents were organized into groups, such as folders, clipped bundles, and binders, this structure shall be maintained and provided in the load file to the extent reasonably practicable.

2.   **Identification**: Where a document, or a document group — such as folder, clipped bundle, or binder — has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

3.   **Fixed Notes:** Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the document. If the content of the Document is obscured by the affixed notes, the Document and note shall be scanned separately.

E.   **Custodian Identification**: The Parties will utilize best efforts to ensure that paper records for a particular Document Custodian are produced in consecutive stamp order. See infra ¶ V(B)(1).

## IV.   ESI METADATA FORMAT AND PROCESSING ISSUES

A.   **System Files**: ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files by agreement of the Parties.

B.   **Metadata Fields and Processing**:

1.   Date and Time: No Party shall modify the date or time as contained in any original ESI.

2.   Time Zone: To the extent reasonably practicable, ESI items shall be processed using a consistent time zone (e.g., GMT), and the time zone used shall be disclosed to the requesting Party.

3.   Auto Date/Time Stamps: To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

4.   Except as otherwise set forth in this ESI Protocol Order, ESI files shall be produced with at least each of the data fields set forth in Appendix 1 that can reasonably be extracted from a document.

5.   The Parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, (g) Redacted (YIN), and (h) NativeLink fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

C.  **Redaction**:

1.  The Parties agree that, where ESI items need to be produced according to Appendix 1 and also must be redacted, they shall be produced solely in TIFF format with each redaction clearly indicated, except in the case of personal database files (e.g., MS Access), which shall be governed by ¶ II(C), supra. Any metadata fields contained in Appendix 1 reasonably available and unnecessary to protect the privilege protected by the redaction shall be provided. In some cases, MS Excel documents that need to be redacted may be redacted in native format if reasonably practicable; otherwise they will be produced in TIFF format.

2.  If the items redacted and partially withheld from production are Excel-type spreadsheets as addressed in ¶ II(C), supra, and the native items are also withheld, to the extent reasonably practicable, each entire ESI item must be produced in TIFF format, including all unprivileged pages, hidden fields, and other information that does not print when opened as last saved by the custodian or end-user to the extent this content can be reasonably extracted from the file and/or imaged.   For PowerPoint-type presentation decks, this shall include, but is not limited to, any speaker notes. For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values, annotations, and notes. The producing Party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images are formatted so as to be legible.   For example, column widths should be formatted so that the numbers in the column will display rather than "##########."

3.  If the items redacted and partially withheld from production are audio/visual files, the producing Party shall, to the extent reasonably practicable, provide the unredacted portions of the content. If the content is a voice recording, the Parties shall meet and confer to discuss the appropriate manner for the producing Party to produce the unredacted portion of the content.

D.  **Email Collection and Processing**:

1.  **Email Threading**:  The Parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread. If thread suppression is used, the Parties agree to provide the group identifying information that can be used to identify and isolate all members of the thread, including attachments.

2. **Email Domains**:  Email messages that can be easily identified as junk via a search of the sender's domain may be excluded from review and production.

E. **De-duplication**:  A producing Party will de-duplicate any file globally (i.e., across Document Custodians, see infra ¶ V(B)(l)). If a requesting Party demonstrates a need for custodian information related to each suppressed duplicate copy after receiving a production, the producing Party shall provide a supplemental data cross-reference or overlay file with information on the custodians of the deduplicated document.

1. Duplicate electronic documents shall be identified by a commercially accepted industry standard (e.g., MD5 or SHA-1 hash values) for binary file content.  All electronic documents bearing an identical value are a duplicate group.  The producing Party shall produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable.  The producing Party is not obligated to extract or produce entirely duplicate ESI documents. Any other methodology for identification of duplicates, including email field selection for hash value creation, must be discussed with the requesting Party and approved in writing before implementation.

2. Duplicate messaging files shall be identified by a commercially accepted industry standard (e.g., hash values) for the email family, which includes the parent and email attachments. Duplicate messaging materials will be identified at a family level, including message and attachments(s). Email families bearing an identical value are considered a duplicate group. The producing Party shall produce only one document image or native file for duplicate emails within the duplicate group to the extent practicable.

F. **Zero-byte Files**:  The Parties may filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names.  If the requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting Party may request that the producing Party produce the zero-byte file.  The requesting Party may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

G. **Hidden Text**:  ESI items processed after the execution date of this ESI Protocol Order shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

H. **Embedded Objects**:  Microsoft Excel (.xls) spreadsheets embedded in Microsoft Word documents will be extracted as separate documents and treated like attachments to the document.  The Parties agree that other embedded objects,

including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a producing Party (e.g., such embedded objects will be produced within the document itself, rather than as separate attachments).

I.  **Compressed Files**:  Compression file types (i.e., .CAB, .GZ, .TAR, .Z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

## V.  PARAMETERS FOR CULLING AND REVIEWING ESI AND PAPER DOCUMENTS

A.  **General Provisions**:

1.  **Meet and Confer**:  A requesting or producing Party may, in good faith, seek to expand or contract the scope of a search. Where such a request is made, the Parties will meet and confer and attempt in good faith to reach agreement as to the timing and conditions of such expansion or contraction. If the Parties cannot reach agreement, any dispute may be presented to the Court. All meet and confer sessions under this ¶ V(A)(2) will involve each Party's respective ESI Liaison and will give appropriate consideration to minimizing expense and ensuring responsive documents are produced.

2.  **Non-Waiver**:  The Parties' discussion of proposed search terms does not preclude a Party from requesting additional search terms pursuant to the terms of this ESI Protocol Order as discovery and the Litigation progress nor does it preclude a Party from objecting to any such additional search terms requested.

B.  **Document Custodians**:

1.  **Document Custodians**:  Each Party will disclose an initial list of Proposed document custodians reflecting those employees with information and/or documents responsive to the agreed-on scope of Rule 34 requests ("Document Custodian(s)").

2.  **Additional Document Custodians**:  If, after the Parties identify initial Document Custodians, a requesting Party determines that an additional Document Custodian should be added, then the requesting Party shall advise the producing Party in writing of the proposed additional Document Custodian and the basis for the request.  If the Parties have not agreed whether to add the Document Custodian within 15 days of the requesting Party's request for an additional Document Custodian, the Parties shall bring the matter to the Court via a joint letter brief.

3.  Except by agreement of the Parties or by order of the Court, a producing Party is not required to add custodians after completion of the above phases.

C.    **Use of Search Terms to Cull Unstructured ESL**

    1.    The Parties may use search terms and other limiters, including, by way of example only, date ranges and email domains in metadata fields, as a means of limiting the volumes of information to be reviewed for responsiveness. To the extent that search terms are used to identify responsive ESI, a producing Party will notify the requesting Party of its intent to use search terms and disclose to the requesting Party (1) an initial list of search terms the producing Party intends to use and (2) whether the producing Party intends to use different search terms with different custodians or data sets. Additionally, the Parties may elect to use a common set of search terms— one common set that applies to all Plaintiffs and one common set that applies to all Defendants. The Parties will cooperate in good faith regarding the disclosure and formulation of appropriate search terms and protocols to cull unstructured ESI.

    2.    **Addition or Removal of Search Terms After Initial Search Term Negotiation**:  If, after the completion of the initial search methodology disclosures, a requesting or producing Party determines that any search terms should be added to or removed from the initial search term list, then the requesting or producing Party shall advise the affected Parties in writing of the proposed change(s) to the search term(s) and of the reason(s) for the proposed change(s).  To the extent necessary to resolve any disputes that arise because of proposed deletions of any search terms, the Parties through their ESI Liaison shall meet and confer in good faith.  Any disputes that cannot be resolved may be submitted by either Party to the Court for further consideration and resolution.

    3.    Except by agreement of the Parties or by order of the Court, a producing Party is not required to add custodians or search terms after completion of the above phases.

D.    **Use of Technology Assisted Review or Other Advanced Technology-Based Analytics to Cull Unstructured ESI**:

    1.    **Use of TAR**:  A Party may use Technology Assisted Review ("TAR") to sort documents for linear review without disclosure of that use. If a Party elects to use TAR to cull or otherwise limit the volume of unstructured ESI subject to linear review, the Parties will meet and confer in good faith to discuss parameters for the use of TAR in those instances.

        i.    **Paper Documents:** The Parties agree to meet and confer to determine whether paper documents may be included in a TAR process.

        ii.    **The TAR Tool:** A Producing Party shall describe to a Requesting Party the vendor and the TAR technology or tool

being used, including a description of the TAR tool's procedures, prioritization and training of the TAR tool, and precision and recall metrics for the TAR tool.

2.    A producing Party need not conduct any additional review of information subjected to, but not retrieved by, a TAR tool as part of the identification of the subset of information that will be subject to review and production.

E.    **Structured Data**:  To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file (e.g., Excel or CSV format) for review by the requesting Party. Upon review of the report, the requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

F.    **Preservation:**

1.    The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

2.    The Parties agree that the following ESI is not reasonably accessible under Federal Rule of Civil Procedure 26(b)(2)(B):

    a.    Shadowed, damaged, residual, slack, fragmented data only accessible by forensics and "unallocated" space on hard drives.

    b.    Data stored in random access memory ("RAM") or other ephemeral data that is difficult to preserve without disabling operating systems.

    c.    On-line access data such as temporary internet files, history, cache files, cookies, and the like, wherever located.

    d.    Data stored on photocopiers, scanners and fax machines.

    e.    Computer programs, operating systems, computer activity logs, programming notes or instructions, batch files, system files, and miscellaneous files or file fragments.

    f.    The Parties reserve the right to assert that other categories of Information are not reasonably accessible under Federal Rule of Civil Procedure 26(b)(2)(B).

3. If a party thinks that not reasonably accessible ESI in its possession, custody, or control is likely to contain relevant material, then the party must preserve the not reasonably accessible ESI and disclose its existence. At that point, the other parties may choose, if possible, to pay for the restoration of the not reasonably accessible ESI.

G. **Custodial Mobile Device Data**: For Document Custodians agreed on by the Parties or ordered by the Court, a producing Party will take reasonable steps to identify whether unique responsive ESI (including cell phone call logs, voicemail logs, text messages and/or iMessages), if any, are located on any cellphones in the possession, custody, or control of the producing Party. For those Document Custodians with responsive ESI, the Parties shall, pursuant to the provisions of this protocol:

1. Produce the responsive non-privileged communications, unless they are "synched" or saved elsewhere (e.g., on a server, laptop, desktop computer, or "cloud" storage);

2. Produce such Document Custodian's relevant contacts (e.g., MS Outlook Contacts or mobile device-based contacts), exported to MS Excel (or .csv) with all reasonably available metadata fields, (producing party has no obligation to disclose contacts that are irrelevant to the claims of this case); and

3. Prior to any culling of the cellphone data of such Document Custodian, a producing Party will disclose the following to the extent reasonably possible: (1) to the extent not already provided, a list of cellphone number(s) used by the Document Custodian for work purposes for the agreed upon timeframe, if any; (2) the name of the phone carrier that provided service for each identified phone number; and (3) whether or not the producing Party claims that a cellphone used by the Document Custodian for work purposes is not within its possession, custody, or control.

## VI. <u>CLAIMS OF PRIVILEGE AND REDACTIONS</u>

A. The Parties agree that they need not initially exchange the text of litigation hold/retention instructions issued in this Litigation.

B. **Production of Privilege Logs**: Except as provided otherwise below, for any document withheld in its entirety or produced but redacted, the producing Party will produce privilege/redaction logs in MS Excel format or any other format that permits electronic sorting and searching.

C. **Exclusions from Logging Potentially Privileged Documents**: The following categories of documents do not need to be contained on a producing Party's initial privilege log, unless good cause exists to require that a Party do so.

1.      Information generated after the date the initial complaint was filed in the above-captioned matter. This provision does not apply to third parties to the Litigation.

2.      Any communications exclusively between a producing Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with specific litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with specific litigation.

3.      Any privileged materials or work product created by or specifically at the direction of a Party's outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with specific litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with specific litigation.

D.      **Privilege Log Requirements**:

1.      **Privilege Log**:  To the extent applicable, each Party's privilege log only needs to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) a description of privileged material consistent with Fed. R. Civ. P. 26(b)(5).

    a.      Objective metadata includes the following (as applicable to the document types as shown in Appendix 1):

        i.      A unique privilege log identifier
        ii.      Custodian
        iii.      CustodianOther or CustodianAll (if applicable)
        iv.      Author
        v.      From
        vi.      To
        vii.      CC
        viii.      BCC
        ix.      Date Sent
        x.      Date Received
        xi.      Date Created

    b.      In addition to the objective metadata fields, a Party must also include a field on its privilege log entitled "Attorney/Description of Privileged Material" that, consistent with Fed. R. Civ. P. 26(b)(5) describes the name of the attorney involved, the nature of the documents, communications, or tangible things not produced or disclosed in a substantive manner that will enable other parties to assess the claim. Further, a Party must manually populate on its privilege log an author and date for any withheld document where

that information is not provided by the objective metadata, unless such information is not reasonably discernable from the document.

    c.    If a document is withheld on the basis of work product, in addition to the objective metadata fields, a Party must also include the basis of the claim in the manner required by Federal Rule of Civil Procedure 26

    2.    **Email Chains**:  If there is more than one branch of (i.e., more than one unique group of recipients of) an email thread, each branch will be individually logged; however, each individual email within the thread need not be logged if the recipients of the email chain are all identical. A Party asserting privilege over a chain of emails may produce only a single redacted copy of such email chain consistent with ¶ VI(E) to the extent some portions are only partially privileged, except that any unique branches of the email chain must also either be produced in redacted form or included on the metadata privilege log.

E.    **Documents Redacted for Privilege**:  As an initial production matter, redacted documents need not be logged as long as (a) for emails, the objective metadata (i.e., to, from, cc, bcc, recipients, date, and time, unless the privilege or protection is contained in these fields) is not redacted, and the reason for the redaction, is included as a metadata field in the load file (for redacted documents where the subject matter is not decipherable as a result of redactions, a description of the contents of the document that is sufficient to understand the subject matter of the document may be requested); and (b) for non-email documents, the reason for the redaction is included as a metadata field in the load file.  In accordance with this  ¶ VI(E), the producing Party will undertake reasonable efforts to make limited, line-by-line redactions of privileged or work product information.  After receipt of the production, the requesting Party may request in good faith that the producing Party create a privilege log for specific redacted documents.  Electronic documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

F.    **Challenges to Privilege Claims**:  Following the receipt of a privilege/redaction log, a requesting Party may identify, in writing (by Bates/unique identified number), the particular documents that it believes require further explanation. The producing Party shall respond to such a request within 30 days. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court.

G.    **Attorney's Ethical Responsibilities:**  Nothing in this order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the Disclosing Party that such materials have been produced.

H. **"Relevancy" Redactions**: A Party may redact irrelevant highly sensitive information about individuals or their immediate family members, including medical information, or personal identification information (e.g., health information or Social Security Numbers). If the Receiving Party thinks that the redacted information may be relevant, then the Parties shall meet and confer in good faith about the redactions. As part of the meet and confer, the Redacting Party must provide a general description of the content of the Redactions. If the Redacting party makes redactions under this provision, then they shall manually populate the "Sensitivity" metadata field in Appendix 1.

## VII. CLAWBACK ORDER

A. **Non-Waiver**: Pursuant to Federal Rule of Evidence 502(d), the production of any material or information shall not be deemed to waive any privilege or work product protection in the Litigation or in any other federal or state proceeding. Nothing in this ¶ VII is intended to or shall serve to limit a Party's right to conduct a review of any material or information for relevance, responsiveness, and/or segregation of privileged and/or protected information before production, subject to ¶ VII(I)(1) below. The Parties stipulate that the ESI Order shall also act as a Rule 502(d) Order.

B. **No Waiver by Disclosure.** This order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. Subject to the provisions of this Order, if a party (the "Disclosing Party") discloses information in connection with the pending litigation that the Disclosing Party thereafter claims to be privileged or protected by the attorney-client privilege or work product protection ("Protected Information"), the disclosure of that Protected Information will not constitute or be deemed a waiver or forfeiture—in this or any other action—of any claim of privilege or work product protection that the Disclosing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

C. **Notification Requirements; Best Efforts of Receiving Party.** A Disclosing Party must promptly notify the party receiving the Protected Information ("the Receiving Party"), in writing, that it has disclosed that Protected Information without intending a waiver by the disclosure. Within five business days of receipt of the notification from the Receiving Party, the Disclosing Party must explain as specifically as possible why the Protected Information is privileged.

D. **Contesting Claim of Privilege or Work Product Protection**. If the Receiving Party contests the claim of privilege or work product protection, the Receiving Party must—within fifteen business days of receipt of the notice of disclosure—move the Court for an Order compelling disclosure of the information claimed as unprotected (a "Disclosure Motion"). The Disclosure Motion must be filed under seal and must not assert as a ground for compelling disclosure the fact or circumstances of the disclosure. Pending resolution of the Disclosure Motion, the Receiving Party, apart from the procedure VII(I)(1), must not use the challenged information in any way or disclose it to any person other than those required by law to be served with a copy of the sealed Disclosure Motion.

E.     **Stipulated Time Periods.** The parties may stipulate to extend the time periods set forth above.

F.     **Burden of Proving Privilege or Work-Product Protection.** The Disclosing Party retains the burden—upon challenge pursuant to VII(D)—of establishing the privileged or protected nature of the Protected Information.

G.     **Voluntary and Subject Matter Waiver.** This Order does not preclude a party from voluntarily waiving the attorney-client privilege or work product protection. The provisions of Federal Rule 502(a) apply when the Disclosing Party uses or indicates that it may use information produced under this Order to support a claim or defense.

H.     **Rule 502(b)(2).** The provisions of Federal Rule of Evidence 502(b)(2) are inapplicable to the production of Protected Information under this Order.

I.     **Assertion of a Clawback**: Any Party or non-Party may request the return of any produced material or information on the grounds of privilege or work product protection by identifying it, stating the basis for withholding such material or information from production, and providing any other information that would be listed on a supplemental privilege log, subject to ¶ VII(I)(1) below.

    1.    **Clawbacks Before Depositions**: If a Party attempts to clawback a document authored or received by an individual who is scheduled for a deposition within 30 days of the date of the deposition, and the propriety of the clawback is not resolved pursuant to ¶ VII(J)(2) prior to the date of the deposition, then the Parties will meet and confer on the appropriate course of action, which may, but need not necessarily, include:

        a.    At the request of the Party resisting the clawback request, rescheduling the deposition until the issue is resolved by the Court;

        b.    conferring prior to the deposition to determine if the document may be used in the deposition subject to agreed-upon limitations;

        c.    calling the Court if the clawback is made during the deposition to determine if immediate resolution is possible; and/or

        d.    allowing the Party resisting the clawback to recall the deponent for the sole and exclusive purpose of questioning the deponent on the document at issue if the Court subsequently determines the clawback was improper (if exercised, recalling the deponent for this purpose will not count against the total number of depositions or deposition hours to which the Party resisting the clawback is entitled and the party making the clawback shall pay for the cost of the additional deposition).

J.     **Clawback Process**: Federal Rule of Civil Procedure 26(B)(5)(b) shall govern the clawback of produced documents or information on the grounds of privilege or

work product protection. If a Party or non-Party requests the return of such produced material or information then in the custody of one or more Parties, the possessing Parties shall within seven (7) business days:

1.      Destroy or return to the requesting Party or non-Party the produced material or information and all copies thereof, and expunge from any other document or material, information derived solely from the produced material or information; or

2.      Notify the producing Party or non-Party that it wishes to challenge the claim of privilege or work product protection and has sequestered the material until the issue can be resolved. The Parties agree to meet and confer regarding the claim of privilege. If, at the conclusion of the meet and confer process, the Parties are still not in agreement, they may bring the issue to the Court. A Party challenging a clawback request under this ¶ VII(J)(2) may use the content of the clawed-back document for the purpose of filing a motion with the Court under seal that challenges whether or not the document is privileged or work product only.

## VIII.   **THIRD PARTY DOCUMENTS**

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and state that the Parties to the Litigation have requested that third Parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce any documents obtained pursuant to a non-Party subpoena to the opposing Party. Nothing in this Stipulation is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third Parties to object to a subpoena.

## IX.   **MISCELLANEOUS PROVISIONS**

A.      **Objections Preserved**:  Nothing in this ESI Protocol Order shall be interpreted to require disclosure of information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

B.      Costs and Burden: Each party fully reserves its rights under Fed. R. Civ. P. 26(b)(2)(C).

C.      **Variations or Modifications**:  Variations from this ESI Protocol Order may be required. Any practice or procedure set forth herein may be varied by agreement of all affected Plaintiffs and all affected Defendants, which will be confirmed in writing. In the event a producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, the producing Party will notify the requesting Party of the variation or modification. Upon request by the requesting Party, those Parties will meet and confer to address any issues in a reasonable and timely manner prior to

seeking Court intervention. To the extent the parties cannot resolve the dispute, the Producing Party must seek relief from the Court if it wants to deviate from this ESI order.

**SO ORDERED.**

Dated: August 20, 2019

_____
Andrea R. Wood
United States District Judge

## Appendix 1:  ESI Metadata and Coding Fields

| Field Name[1] | Populated For (Email, Edoc, Calendar, Contact, Cellphone or All) | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | BegBates number of the first document of the family of attachments |
| EndAttach | All | EndBates number of last attachment of family. |
| Attachnames | Email | Names of each individual attachment, separated by semicolons. |
| Custodian | All | Custodian name (ex. John Doe). |
| CustodianOther or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field, |
| Source | All | Name of party producing the document/data |
| Md5Hash | Edocs | The MD5 hash value of the document |
| Sha1Hash | Edocs | SHA1 hash value of document |
| LogicalPath | All ESI Items | The directory structure of the original file(s). Any container name is included in the path, including location, folder name, filename, and extension |
| NativeFile | All | Native File Link (filename of native file). |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR CONVERSATION INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| Thread Index | Email | Message header identifier, distinct from "PR_ Conversation_Index", that permits threading of email chains in review software. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was modified. |

---

[1] Field Names can vary from system to system and even between different versions of these systems.  Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order. To the extent that a Party does not produce metadata for one of these field names, the Parties will meet and confer in good faith about the metadata that the Parties do possess and the extent to which other metadata information provides the substantive information for the Field Name metadata that is not provided.

| TimeSent | Email | Time email was sent. |
|---|---|---|
| TimeZoneUsed | All | Time zone used to process data during document collection and processing. |
| ReceiveTime | Email | Time email was received. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Edoc | Date the document was created in MM/dd/yyyy, HH:mm:ss Z format. |
| Lastmodified | Edocs | Last modified date in MM/dd/yyyy, HH:mm:ss Z format |
| FileName | Email, Edoc | File name of the edoc or email. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| Modifiedby | Edoc | Name of person(s) who modified document. |
| DocExt | All | File extension of the document. |
| Doctype | All | Document type (e.g. Excel) |
| TextPath | All | Relative path to the document level text file. |
| Deduplicated | All | Number of copies de-duplicated. |
| Redacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Sensitivity | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document has been redacted on the basis of VI. H. Otherwise, blank. |
| MessageID | Email | Unique message id from internet headers |
| Inreplyto | Email | Message id of email this email is in reply to |
| Withheld Placeholder | All | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y" |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Agreed Confidentiality Order. |