```
 1                    IN THE UNITED STATES DISTRICT COURT
                          NORTHERN DISTRICT OF ILLINOIS
 2                              EASTERN DIVISION

 3   CHRISTOPHER MOEHRL, et al.,     )   No. 19 C 1610
     on behalf of themselves and all )
 4   others similarly situated,      )
                                     )
 5              Plaintiffs,          )
                                     )
 6          vs.                      )
                                     )
 7   THE NATIONAL ASSOCIATION OF     )
     REALTORS, et al.,               )   Chicago, Illinois
 8                                   )   August 20, 2019
                Defendants.          )   9:30 a.m.
 9
                          TRANSCRIPT OF PROCEEDINGS
10                     BEFORE THE HONORABLE ANDREA R. WOOD

11   APPEARANCES:

12   For the Plaintiffs:     MR. KIT A. PIERSON
                             Cohen, Millstein, Sellers & Toll, PLLC,
13                           1100 New York Avenue, N.W.,
                             Washington, DC  20005
14
                             MS. WHITNEY KENDALL SIEHL
15                           Hagens Berman Sobol Shapiro LLP,
                             455 North Cityfront Plaza, Suite 2410,
16                           Chicago, Illinois  60611

17   For Defendant NAR:      MR. JACK R. BIERIG
                             Schiff Hardin LLP,
18                           233 South Wacker Drive, Suite 7100,
                             Chicago, Illinois  60606
19
     For Defendant
20   Realogy Holdings:       MS. STACEY ANNE MAHONEY
                             Morgan, Lewis & Bockius, LLP,
21                           101 Park Avenue,
                             New York, New York  10178
22

23                          PATRICK J. MULLEN
                           Official Court Reporter
24                       United States District Court
                    219 South Dearborn Street, Room 1412
25                        Chicago, Illinois  60604
                              (312) 435-5565
```

1  APPEARANCES: (Continued.)

2

3  For Homeservices
   Defendants:                MS. DENISE A. LAZAR
4                             Barnes & Thornburg LLP,
                              One North Wacker Drive, Suite 4400,
5                             Chicago, Illinois  60606

6                             MR. ROBERT D. MACGILL
                              MR. MATTHEW T. CIULLA
7                             Barnes & Thornburg LLP,
                              11 South Meridian Street,
8                             Indianapolis, Indiana  46204

9
   For, Defendant
10 Re/Max LLC:                MS. ERIN L. SHENCOPP
                              Jones Day,
11                            77 West Wacker Drive, Suite 3500,
                              Chicago, Illinois  60601
12
   For Defendant
13 Keller Williams:           MR. TIMOTHY RAY
                              MR. MARTIN G. DURKIN
14                            Holland & Knight LLP,
                              131 South Dearborn Street, 30th Floor,
15                            Chicago, Illinois  60601

16

17

18

19

20

21

22

23

24

25

|   |   |
|---|---|
| 1 | THE CLERK: 19 CV 1610, Moehrl versus National |
| 2 | Association of Realtors. |
| 3 | THE COURT: Okay. Are we ready then? |
| 4 | MR. PIERSON: We are. |
| 5 | THE COURT: Can we get appearances for everyone? |
| 6 | MR. PIERSON: I'm Kit Pierson for the plaintiffs, Your |
| 7 | Honor, and thank you for accommodating us. |
| 8 | MS. SIEHL: Whitney Siehl for the plaintiffs, Your |
| 9 | Honor. |
| 10 | MR. BIERIG: Good morning, Your Honor. Jack Bierig |
| 11 | for defendant National Association of Realtors. |
| 12 | THE REPORTER: I'm sorry. I didn't hear you. |
| 13 | MR. BIERIG: Jack Bierig, B-i-e-r-i-g, for defendant |
| 14 | National Association of Realtors. |
| 15 | MR. RAY: Good morning, Your Honor. Timothy Ray on |
| 16 | behalf of Keller Williams. |
| 17 | MR. DURKIN: Martin Durkin also for Keller Williams. |
| 18 | MS. SHENCOPP: Good morning, Your Honor. Erin |
| 19 | Shencopp on behalf Re/Max, LLC. |
| 20 | MS. LAZAR: Denise Lazar, L-a-z-a-r, for the |
| 21 | Homeservices defendants. |
| 22 | MR. MACGILL: And Rob Macgill also for the |
| 23 | Homeservices defendants. Good morning, Your Honor. |
| 24 | MR. CIULLA: Good morning. Matt Ciulla for |
| 25 | Homeservices. |

1  MS. MAHONEY: Good morning, Your Honor. Stacey Anne
2  Mahoney for Realogy Holdings Corp.
3  THE COURT: Okay. Let me start with the two proposed
4  orders that were submitted, the protective order and the ESI
5  order. I think in general everything looked fine there. I
6  think the only question I have is that there was a reference to
7  sharing information with the sister action. I wasn't sure I
8  knew what that is. Is that another related case?
9  MR. PIERSON: That's the action in Missouri.
10  THE COURT: Oh, that's the one that's in Kansas City.
11  MR. PIERSON: If documents are produced down there
12  that are relevant here, it allows us to use the documents and
13  vice versa. It's just a way to coordinate.
14  THE COURT: Okay. Are they going to have basically
15  the same orders that are entered in their case, or is there
16  going to be a disconnect with their confidentiality provisions?
17  MR. PIERSON: I'll let defendants just speak to that
18  because we're not parties to that case.
19  MR. DURKIN: When they sent us a draft order, it was
20  identical to the order that we received from the plaintiffs in
21  this case, so I suspect it will be similar. We haven't
22  finalized either order in that particular case yet. I suspect
23  they will take a look at whatever court -- whatever order this
24  Courts enters on its docket and that I'll likely receive that
25  by email soon after.

1         THE COURT: Okay.

2         MS. MAHONEY: I will note for the Court that there is
3 a motion to transfer that remains pending in that court to
4 bring that case here. So it may be that we don't actually have
5 a protective order or any of that protocol entered in that case
6 because it may be that it's coming here.

7         MR. RAY: A motion to transfer as to corporate
8 defendants.

9         MR. PIERSON: I would add one thing, Your Honor, which
10 is that the defendants, as I understand it, filed two motions
11 to transfer, one by National Association of Realtors and one by
12 the corporate defendants. The motion to transfer by the
13 National Association of Realtors was denied by the court, and
14 the other motion is still pending.

15         MR. RAY: That's correct.

16         THE COURT: Were they different in substance where
17 they had different arguments? So is the idea that it's
18 possible that the court would sever the case in two and send
19 part of it here and then keep the rest of it?

20         MR. BIERIG: I don't think so, Your Honor. The NAR
21 motion was based on lack of personal jurisdiction over the NAR
22 in the federal court in Missouri. The court found that it had
23 personal jurisdiction. The corporate defendants' motion was to
24 transfer pursuant to 1404 for the convenience of the parties
25 and in the interests of justice, and that remains pending in

1  the court in Missouri.
2  THE COURT: Oh, I see. So the idea is that the whole
3  case would still potentially be transferred on 1404(a) grounds.
4  Okay. We'll see what they decide to do.
5  Other than that, I think the orders that were
6  submitted were fine, so I'm going to grant the motion for entry
7  of the agreed confidentiality order and the agreed ESI order.
8  I particularly liked the agreed ESI order. It looks like the
9  parties were able to work together to cover a lot of different
10 bases, so I applaud you for that and for including provisions
11 on privilege and clawback as well as provisions dealing with
12 limit files and all of the other ESI things. I hope that
13 indicates that you're going to be able to work well together
14 going forward.
15 For the motions to dismiss, I'm going to grant the
16 request for leave to file excess pages. I think what we have
17 then is we have two motions to dismiss that were filed.
18 Plaintiff is planning on filing a single response?
19 MR. PIERSON: We are, Your Honor.
20 THE COURT: And remind me how many pages you wanted to
21 do that.
22 MR. PIERSON: I think the agreement was 53 pages. We
23 may or may not use that much. You know, from our point of
24 view, the motions are pretty straightforward as to factual
25 issues but, you know, we intend to respond comprehensively.

1  They're long motions, so we'll work within that limit and if we
2  can be shorter we will. We do plan to file a single brief
3  because we think it will be easier and just more efficient for
4  the Court.
5      THE COURT: Okay. That's fine. I don't think we
6  agreed upon a date for that yet. How much time do you need?
7      MR. PIERSON: We haven't -- well, I discussed this
8  with Tim, and I don't know if he's discussed it with his
9  co-counsel. I suggested for our brief we can file our
10 oppositions to both briefs within three weeks, give or take a
11 couple days, so we proposed September 13th. Then I think they
12 want 31 days to file a reply, which would be October 14th, and
13 we don't object to that.
14     THE COURT: So September 13th was the response to both
15 briefs, and for the replies it was October 14th?
16     MR. PIERSON: The 14th.
17     THE COURT: That's fine. We'll go forward with that
18 briefing.
19     Now, with respect to discovery, you're going to have
20 ESI and an ESI order in place and you're going to have a
21 protective order in place. I think right now discovery is
22 stayed. Is there other specific discovery that any party would
23 like to have permission to proceed with at this point while the
24 motions are pending?
25     MR. PIERSON: Well, I think here's what I would

1 suggest, Your Honor. Obviously, we would like to get going
2 with discovery, and we are ready, willing, and able to start
3 it. You know, we had requested that the parties start the
4 26(f) process, do initial disclosures and exchange documents,
5 that they produce documents that have already been produced in
6 connection with CIDs from the Government.
7 What I think may make sense, you know, let's see what
8 happens with the second motion in Missouri. We'll see if that
9 action is coming up here or staying there. I think both sides
10 are going to consider the implications of that. What probably
11 makes sense, let's see how that shoe drops, both sides can
12 address it, and then let's have a dialogue about whether we
13 think more discovery is appropriate. If we can agree, we can
14 agree. If not, we'll come back to you. But I don't think
15 there's anything that needs to be done today.
16 MR. BIERIG: I can state, Your Honor, for defendants
17 that we would oppose any effort to commence discovery in this
18 case. I don't know if the Court has had an opportunity to read
19 the motions to dismiss that were filed, but we believe they're
20 very substantial. The costs of discovery, as the Court knows,
21 in an antitrust case of this nature are very great and totally
22 asymmetric in that there's very little discovery that we would
23 take of these individual home sellers, whereas we would
24 anticipate significant discovery from the corporate defendants
25 and the NAR. We think the Seventh Circuit has made it very

1  clear in cases of this nature that it makes sense and it's in
2  the interests of justice to not go forward with discovery until
3  the Court has determined whether a cause of action has been
4  stated.
5       MR. RAY:  I would also point out to the Court, too,
6  that Judge Bough has agreed to delay compliance with Rule 26(f)
7  as well until we sort through some of these same issues.
8       MR. PIERSON:  Well, if I can make a couple of points,
9  Your Honor, number one, you know, I think the appropriate thing
10 -- well, our position on these motions, I'll just be frank
11 about it.  We think these motions are going to be -- they're
12 long, but they are very fact-based.  They rely on summary
13 judgment cases.  They don't rely on motion to dismiss cases.
14 We don't think there's much to these motions, so we'll file our
15 response.
16      We would like discovery to start going forward, but
17 what I would suggest, I would also differentiate this from
18 cases where discovery is stayed where there tends to be a
19 dispositive legal issue, like there's a statute of limitations
20 issue or an immunity issue or something like that.  That's not
21 this case.  That's not what their motions are.  Their motions
22 are fact-based motions that are appropriate for discovery and
23 expert testimony, and I think that's going to be clear as you
24 get into it.
25      But what I would suggest is that rather than guessing

1  about what the judge is going to do down in Missouri, we see
2  what the next step is, so we see if that case is coming up here
3  or if it's staying down there, and we see what is going to
4  happen with discovery there.
5  　　　　My understanding of what's going on with discovery
6  down there is it has only been stayed for -- I don't know that
7  it even was stayed.  It was just 26(f) was put off while the
8  jurisdictional issues were decided.  So discovery may start
9  moving down there.  If it does, you know, well, both sides will
10 have an opportunity to assess the implications of that and then
11 come back.  But I don't think you need to decide this today,
12 and we're not asking you to do it today.
13 　　　　THE COURT:  Well, also, if discovery does move forward
14 down there, it seems like your agreement and understanding is
15 that any information that is produced there is going to be
16 shared up here in this case, so at least you would still have
17 access.
18 　　　　Look, here's what I'm inclined to do, especially since
19 the parties have agreed to a pretty efficient briefing schedule
20 given the amount of paper.  So I'll try to be equally as
21 efficient in getting a ruling to you, given that you're not
22 asking for some of the longer briefing schedules that I
23 sometimes see in these types of cases.  I don't know that
24 there's going to be any real harm to putting things on hold
25 now, so what I'm going to do is continue the stay.  If anybody

1  has any concern with that, you can file a motion to lift the
2  stay.
3  If there's something in particular that you need, you
4  can always ask for a limited purpose carve-out to the stay.
5  So, for example, if there's some information or maybe a third
6  party who's not going to be available for some reason at a
7  later point in the litigation or any concerns about
8  preservation or retention of evidence, that would be, I think,
9  something that would be very reasonable to ask for an exception
10 on.
11 I'm going to set a status date a little bit out to
12 give me time hopefully to rule, but I'm also going to ask the
13 parties to let me know by filing, you know, some sort of a
14 notice or status report within three business days of any
15 ruling on the pending transfer motion in Kansas City, whether
16 it's denied and we know that case is not coming here or it's
17 granted and it will be. If that case is going to be reassigned
18 here, I probably will want to have a status hearing with any
19 new counsel involved who might be coming aboard to make sure
20 that everybody is on the same page. So I would set a separate
21 status hearing specifically for that. Then, of course, if it's
22 denied, then I'd want to know that as well.
23 MR. RAY: I was just going to say just for my own
24 clarification, if there is a ruling only to transfer here, you
25 would ask us to let you know within three days of such a

1 ruling.

2 THE COURT: Yes.

3 MR. RAY: Okay.

4 THE COURT: I mean, I will know when it hits my docket
5 that it comes.

6 MR. RAY: Okay.

7 THE COURT: I will confess I don't regularly follow
8 dockets in the Western District of Missouri, so I suspect left
9 to your own devices the parties will know sooner than I would.
10 Usually it does take a little bit of time logistically for the
11 case to actually get transferred here.

12 MR. PIERSON: Your Honor, I guess I would add, you
13 know, I think it makes sense if the motion is denied so that
14 that action really is going to go forward in some fashion down
15 there, I mean, I think both sides are going to think through
16 the implications of that, and it probably makes sense to let
17 you know. We'll let you know if the motion is decided either
18 way.

19 THE COURT: Yes, certainly, either way, that was my
20 intent, so when the motion is decided either way, if it happens
21 before the next I see you, which I think it would be if you've
22 already gotten a ruling on the personal jurisdiction one.
23 Okay. So that will be within three business days you'll let me
24 know that.

25 We will set a status date mid-December, Enjoli.

| | |
|---|---|
| 1 | THE CLERK: December? Did you say mid-December? |
| 2 | THE COURT: Yes, we're looking at 60 days from the |
| 3 | reply brief. |
| 4 | THE CLERK: Let's do December 18th. |
| 5 | MR. BIERIG: Is it possible to do it the week before, |
| 6 | Your Honor? |
| 7 | MR. PIERSON: That's fine with us. |
| 8 | THE CLERK: That's not going to work. That's before |
| 9 | briefing is over. Do you want that? |
| 10 | THE COURT: Well, let's go ahead. You have a conflict |
| 11 | where you aren't available the entire week of December 16th? |
| 12 | MR. BIERIG: Well, that's the week before Christmas, |
| 13 | and I think people may be traveling. |
| 14 | THE COURT: It is. Okay. Maybe the 12th, Enjoli? |
| 15 | THE CLERK: December 12th at 9:00 a.m. |
| 16 | (Brief pause.) |
| 17 | THE COURT: Okay. So my hope is to get you a ruling |
| 18 | by then, and we'll know what's going on in Kansas City by then. |
| 19 | If it's going to be a more complicated discussion of things, I |
| 20 | may move it either to the end of that call that day or to a |
| 21 | separate time, but I'll give you a heads-up. Also, if there |
| 22 | are specific issues that I want to discuss regarding discovery, |
| 23 | for example, going forward, I may issue another order setting a |
| 24 | specific agenda -- |
| 25 | MR. PIERSON: Okay. |

| | |
|---|---|
| 1 | THE COURT: -- for that hearing. Are there any other |
| 2 | issues at this point? |
| 3 | MR. PIERSON: I don't think so, Your Honor. Thank |
| 4 | you. |
| 5 | MR. DURKIN: No. Thank you. |
| 6 | THE COURT: Okay. Thank you. |
| 7 | MR. BIERIG: Thank you, Your Honor. |
| 8 | MR. RAY: Thank you, Your Honor. |
| 9 | MS. SIEHL: Thank you, Your Honor. |
| 10 | MS. MAHONEY: Thank you, Your Honor. |
| 11 | (Proceedings concluded.) |
| 12 | C E R T I F I C A T E |
| 13 | I, Patrick J. Mullen, do hereby certify that the |
| 14 | foregoing is a complete, true, and accurate transcript of the |
| 15 | proceedings had in the above-entitled case before the Honorable |
| 16 | ANDREA R. WOOD, one of the judges of said Court, at Chicago, |
| 17 | Illinois, on August 20, 2019. |

*/s/ Patrick J. Mullen*
Official Court Reporter
United States District Court
Northern District of Illinois
Eastern Division