



scyther5 / iStock / Getty Images Plus / Getty Images

Breaking Down the 2008 DOJ–NAR Settlement Agreement

**Know what a VOW is — and what NAR and MLSs have done to facilitate competition — when talking about NAR's soon-to-expire 10-year agreement with the Department of Justice.**

February 14, 2018
Being a Broker, MLS & Online Listings
By: Katie Johnson

There has been a lot of speculation recently about the 2008 settlement agreement between the Department of Justice and the National Association of REALTOR® and what will happen when that agreement expires in November 2018. Much of this speculation misconstrues the settlement agreement, the practices it addresses, and what it accomplished. Here, I aim to break it down so that any future discussion about the fate of the settlement agreement, or the conduct of NAR and MLSs following expiration of the agreement, can be based on a correct understanding of that agreement.

# The 2008 DOJ-NAR settlement agreement pertains specifically to NAR's MLS policy for brokers that operate virtual office websites, also called VOWs.

The scope of the 2008 settlement agreement is narrowly focused on a broker's operation of a virtual office website and the use of MLS listing data on such a site: Broker + VOW. Two critical components to any discussion invoking the 2008 settlement agreement.

A VOW is:

- a website operated by a broker;
- through which the broker is capable of providing real estate brokerage services;
- to consumers with whom the broker has first established a broker-consumer relationship, as defined by state law;
- where the consumer has the ability to search MLS data, subject to the broker's oversight, supervision, and accountability.

In 2003, NAR adopted a VOW policy that, among other things:

- Allowed brokers to opt out of having their listings displayed on the VOW sites of other brokers
- Prohibited VOWs from referring consumers to other real estate professionals for a fee
- Prohibited VOWs from displaying an advertisement for one broker on a page displaying the listing of another broker

The Department of Justice believed those three aspects of the VOW policy to be anticompetitive and initiated a two-year investigation that resulted in DOJ filing a lawsuit against NAR in 2005. The 2008 settlement agreement required NAR to replace the existing VOW policy with the Modified VOW Policy approved by the DOJ, and to take other actions described below. Significantly, the settlement agreement does not address or limit distribution of MLS or other property listing data to real estate portals, such as realtor.com or Zillow, or other third-party sites. It covers only the use of MLS listing data on VOW sites.

> ### In the News
>
> For another perspective on NAR's VOW policy and the impending expiration of our agreement with the Department of Justice, read this Feb. 11, 2018, article from the trade newspaper *Banker & Tradesman*.

The Modified VOW policy contains very detailed criteria and requirements for the relationship between the broker operating the VOW site and the consumer receiving the brokerage services on that site. The vast majority of internet sites that make property listing information available to consumers do not comply with those criteria and requirements, and therefore are not websites to which the Modified VOW policy and the 2008 settlement apply.

While we do not know how many VOWs are still operating today, we do know that NAR's MLS policies have evolved over the past decade to permit MLS participants to share a wealth of MLS data with consumers on their public websites, including information that was once only available via VOWs. For example, in 2014, NAR's MLS rules were amended to authorize use of any MLS content for valuation purposes when servicing clients and customers, including online displays of property valuations known as AVMs. In 2015, NAR's MLS rules were amended to require that non-confidential pending sale listing data be included in IDX data feeds and to eliminate any restrictions on participants' display of pending listings. Also in 2015, the NAR MLS Committee approved a policy requiring MLSs to provide at least three years of sold data for display on participants' IDX sites, and that policy was expanded last year to require MLSs to provide all sold data available as of 2012.

Moreover, it's often overlooked that well before adoption of the VOW rules challenged by the DOJ, NAR adopted policies that facilitated the display of property listing data by brokers on public internet sites. That was achieved when NAR established the IDX policy in May 2001. DOJ has never voiced any concerns about the IDX policy, and undoubtedly recognizes the pro-competitive benefits that policy provides.

## The 2008 DOJ-NAR settlement agreement prohibits all REALTOR® associations and association-owned MLSs from impeding a broker's ability to operate a VOW.



*"NAR shall not adopt, maintain, or enforce any Rule, or enter into or enforce any agreement or practice, that directly or indirectly prohibits a Broker from using a VOW or prohibits, restricts, or impedes a Broker who uses a VOW from providing to Customers on its VOW all of the Listing Information that a Broker is permitted to Provide to Customers by hand, mail, facsimile, electronic mail, or any other methods of delivery."*

This is the crux of the 2008 settlement agreement. Every other provision prohibiting or requiring certain conduct of NAR is geared toward achieving this objective that we refer to as "the parity rule." That is, MLSs must treat brokers providing real estate services via websites the same way they treat brokers providing real estate services via bricks-and-mortar businesses. Those other provisions of the settlement agreement include prohibiting NAR from adopting any rule or enforcing any practice that

- Unreasonably disadvantages or discriminates against a broker's use of a VOW
- Impedes referral of customers whose identities are obtained from a VOW by a broker who uses a VOW to other persons
- Imposes unreasonable fees or costs upon any broker who operates a VOW

The agreement requires NAR to

- Adopt the Modified VOW Policy and not change it without DOJ consent
- Deny insurance coverage to any REALTOR® association or association-owned MLS that refuses to act consistently with the Modified VOW Policy
- Report compliance with the Modified VOW Policy to DOJ on a quarterly basis

Apart from these requirements of the settlement agreement, it's clear that discrimination by an MLS among participants based on a participant's business model risks serious challenge under the antitrust laws. The expiration of the 2008 settlement agreement will have no impact in the extent to which MLSs make their services available to their participants. They will continue to do so uniformly, irrespective of the manner in which participants provide brokerage services to consumers.

## The Participation Rule set forth in the 2008 settlement agreement permits MLSs to limit access to only those brokers engaged in real estate brokerage; that is, those actively endeavoring to list real property or to accept offers of cooperation and compensation made by listing brokers or agents in the MLS.

Another important aspect of the 2008 settlement agreement was DOJ's acknowledgement that the purpose of an MLS is to facilitate brokerage services, and it was therefore lawful and appropriate for an MLS to limit participation in the MLS to those actually engaged in brokerage activity. Mere possession of a broker's license was no longer sufficient to qualify for MLS participation. Rather, MLSs may require that participants actively endeavor to list real property of the type listed on the MLS and/or to accept offers of cooperation and compensation made by listing brokers or agents. This added requirement essentially disqualifies any company or individual from joining the MLS if such person has no intention of cooperating with and compensating real estate brokers for their role in listing and selling real property.

The 2008 settlement agreement states that it is permissible for NAR to adopt the Participation Rule attached to the agreement. Such rule is not required and, therefore, amending it without DOJ approval would be permissible provided that the amendment does not violate any other provision of the 2008 settlement agreement.

## NAR has no plans to alter the Modified VOW Policy when the 2008 settlement agreement expires on November 18, 2018.

Since we do not know how many VOWs are in operation today, we cannot know how many brokers are affected by the Modified VOW Policy. Therefore, there has been no real discussion that we are aware of about making any changes to the Modified VOW Policy when the settlement agreement expires. If NAR determines that some modifications to that policy are helpful and lawful, we may consider implementing them but would do so very judiciously and with careful consideration to avoid any potentially anticompetitive implications of such proposed changes.

*Katie Johnson is the General Counsel and Senior Vice President of Member Experience for the National Association of REALTORS®.*

---



### Future of VOW Policy After DOJ-NAR Agreement Expiration

NAR continues to keep VOW policy in place as outlined in the original agreement, steering clear of any potentially anticompetitive implications.

November 27, 2018



### Competition in Real Estate

REALTORS® provide a vibrant, healthy, and vigorously competitive real estate market with more information today than has ever been available.

NAR's exclusive top-level domain.

© 2019 National Association of REALTORS®. All Rights Reserved.