UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COHL, STEVE DARNELL, VALERIE NAGER, JACK RAMEY, SAWBILL STRATEGIC, INC., DANIEL UMPA and JANE RUH, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No: 1:19-cv-01610 |
| v. | ) ) ) | Judge Andrea Wood<br>Magistrate Judge M. David Weisman |
| THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., HSF AFFILIATES, LLC, BHH AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX HOLDINGS, INC. and KELLER WILLIAMS REALTY, INC. | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF CORPORATE DEFENDANTS'
MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1
II. ARGUMENT .................................................................................................................. 3
   A. Plaintiffs Have Not Alleged That the Corporate Defendants Entered Into Any Agreement. .................................................................................................................. 5
   B. Plaintiffs Fail to Allege Facts Sufficiently Tying the Corporate Defendants to Alleged Conduct of Brokerages or Franchisees. ........................................................................ 9
III. CONCLUSION ............................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AD/SAT, Div. of Skylight, Inc. v. Associated Press*,
  181 F.3d 216 ................................................................................................................6

*Am. Needle, Inc. v. Nat'l Football League*,
  560 U.S. 183 (2010) ....................................................................................................1

*Anderson v. Shipowners Ass'n of Pac. Coast*,
  272 U.S. 359 (1926) ....................................................................................................7

*Ariz. v. Maricopa Cty. Med. Soc'y*,
  457 U.S. 332 (1982) ....................................................................................................7

*Associated Press v. United States*,
  326 U.S. 1 (1945) ........................................................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................3, 4, 7, 8, 9, 12

*In re: Blue Cross Blue Shield Antitrust Litig. (MDL No. 2406)*,
  No. 2:13-CV-20000-RDP, 2016 WL 6124143 (N.D. Ala. Oct. 20, 2016) ................8

*Brown v. Visa U.S.A., Inc.*,
  674 F. Supp. 249 (N.D. Ill. 1987) ..............................................................................3

*Esmark, Inc. v. NLRB*,
  887 F.2d 739 (7th Cir. 1989) ....................................................................................11

*FTC v. Ind. Fed'n of Dentists*,
  476 U.S. 447 (1986) ....................................................................................................7

*Gen. Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*,
  744 F.2d 588 (7th Cir. 1984) ....................................................................................11

*Goldfarb v. Va. State Bar*,
  421 U.S. 773 (1975) ....................................................................................................7

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) ...................................................................................3, 9

*In re Managed Care Litig.*,
  298 F. Supp. 2d 1259 (S.D. Fla. 2003) ....................................................................11

*In re Travel Agent Comm'n Antitrust Litig.*,
 583 F.3d 896 (6th Cir. 2009) ...................................................................................................2

*Kendall v. Visa U.S.A., Inc.*,
 518 F.3d 1042 (9th Cir. 2008) ..........................................................................................2, 5, 9

*MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*
 62 F.3d 967 (7th Cir. 1995) ................................................................................................ 7-8

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
 465 U.S. 752 (1984)..............................................................................................................4, 6

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*,
 468 U.S. 85 (1984).....................................................................................................................7

*Nat'l Soc'y of Prof'l Eng'rs v. United States*,
 435 U.S. 679 (1978)...................................................................................................................7

*Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*,
 311 F. Supp. 2d 1048 (D. Colo. 2004)....................................................................................11

*Realcomp II, Ltd. v. FTC.*,
 635 F.3d 815 ...............................................................................................................................7

*Robertson v. Sea Pines Real Estate Cos., Inc.*,
 679 F.3d 278 (4th Cir. 2012) ....................................................................................................6

*Rocha v. FedEx Corp.*,
 15 F. Supp. 3d 796 (N.D. Ill. 2014) .........................................................................................4

*Silver v NYSE*,
 373 U.S. 341 (1963)...................................................................................................................7

*Sitzer v. Nat'l Assoc. Realtors, et al.*,
 No. 14-cv-332 (W.D. Mo.) ......................................................................................................12

*Toscano v. PGA*,
 258 F.3d 978 (9th Cir. 2001) ....................................................................................................8

*United States v. Topco Assocs.*,
 405 U.S. 596 (1972)...................................................................................................................7

*Washington County Health Care Auth., Inc. v. Baxter Int'l Inc.*,
 328 F. Supp. 3d 824 (N.D. Ill. 2018) ..................................................................................4, 9

**Statutes**

815 Ill. Comp. Stat. Ann. 705/3 ......................................................................................................11

Sherman Act Section 1................................................................................................2, 3, 4, 7, 8

I.       **INTRODUCTION**

Plaintiffs' complaint as to the Corporate Defendants is a sandcastle built on conclusion and assumptions with no facts that support Corporate Defendants' participation in a conspiracy based on a rule that was implemented by the National Association of Realtors® ("NAR") (in which the Corporate Defendants are not members) over 20 years ago in 1996.

In their opening brief (ECF No. 116), the Corporate Defendants established that Plaintiffs have made no factual allegations to support a viable claim that the Corporate Defendants joined a conspiracy to adopt or implement Section 2-G-1 of NAR *Handbook on Multiple Listing Policy* ("Section 2-G-1" or the "Rule"). *See* Pls.' June 14, 2019 Cons. Am. Class Action Complaint (ECF No. 84) ("Compl." or "Complaint"). Although Plaintiffs spend much time discussing the NAR Rule and its supposed anticompetitive effects, Plaintiffs' Opposition[1] only confirms Plaintiffs' inability to plead evidentiary facts that the Corporate Defendants joined in any conspiracy. Because Plaintiffs cannot satisfy this fundamental pleading requirement, and because of the other failings argued in Corporate Defendants' opening brief, the Court should dismiss the Corporate Defendants. The Court may order dismissal on this basis regardless of and without reaching the question of what effect NAR's Rule allegedly might have on competition. *See Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 186 (2010) ("The question whether an arrangement is a contract, combination, or conspiracy is different from and antecedent to the question whether it unreasonably restrains trade.").

Specifically, Plaintiffs fail to allege that the Corporate Defendants were involved in the creation of Section 2-G-1, or that they or any of their supposed representatives took any specific action with respect to it thereafter. Instead, Plaintiffs rest their conspiracy claim solely on

---

[1] *See* Pls.' Mem. in Opp. to Defs.' Motions to Dismiss (ECF No. 132) ("Opposition").

inadequate assertions that third parties (*e.g.*, independent contractor sales agents or franchisees) have leadership positions in NAR, local Realtor® associations, or MLSs generally, and that the Corporate Defendants "require" their brokerages and franchisees to join NAR, local Realtor® associations, and/or MLSs and comply with NAR's rules. *See* Compl. ¶¶ 8, 104-09, 116.[2] Missing, however, is any allegation that the Corporate Defendants have *ever* communicated about Section 2-G-1 with NAR, with each other, or with any of their brokerages or franchisees. Plaintiffs instead speculate that those individuals' participation in NAR and local Realtor boards "necessarily includes jointly discussing, approving, and reissuing NAR and MLS rules." (Opp. at 43.) But such assumptions are not well-pleaded facts and they cannot sustain Plaintiffs' claim against the Corporate Defendants. *See, e.g.*, *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 904-05 (6th Cir. 2009) (explaining that an assertion that an "agreement" among defendants exists "is nothing more than a legal conclusion 'masquerading' as a factual allegation" and is insufficient to state a claim for violation of Section 1); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) (explaining that factual allegations "answer the basic questions who, did what, to whom (or with whom), where, and when?").

With respect to the allegation that the Corporate Defendants' brokerages and franchisees are required to join MLSs and local Realtor® association boards and comply with MLS rules, Plaintiffs have pleaded facts explaining precisely why such conduct is actually in each Corporate Defendants' *independent and unilateral economic interest*, rather than evidence of the supposed anticompetitive agreement. Because the facts alleged in the Complaint provide an "obvious

---

[2] Plaintiffs conclusorily claim that the Corporate Defendants "enforce" and "implement" NAR rules generally, but the allegations are silent regarding enforcement and/or implementation of Section 2-G-1 itself. Plaintiffs' trumpeting of a Corporate Defendant's unremarkable statements about driving important industry discussions as leaders within NAR and various MLS organizations (*see* Compl. ¶ 105) does nothing to sustain the conspiracy claim, absent any allegation that a representative of a Corporate Defendant discussed or worked with *this Rule* in some relevant way.

2

alternative explanation" for Corporate Defendants' actions (*i.e.*, independent self-interest to participate in the MLS system), it cannot support an inference of a conspiracy to withstand the Corporate Defendants' Motion to Dismiss. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory"); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 326 (3d Cir. 2010) ("*Twombly* makes clear that a claim of conspiracy predicated on parallel conduct should be dismissed if 'common economic experience,' or the facts alleged in the complaint itself, show that independent self-interest is an 'obvious alternative explanation' for defendants' common behavior.").

Thus, despite amendments to their pleading, Plaintiffs have failed to meet that minimum burden, requiring dismissal with prejudice of Plaintiffs' claims against the Corporate Defendants. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 326.[3]

## II. ARGUMENT

To state a claim under Section 1 of the Sherman Act, Plaintiffs must plead "enough ***factual matter*** (taken as true) to suggest that ***an agreement was made***." *Twombly*, 550 U.S. at 556 (emphasis added);[4] *see also Brown v. Visa U.S.A., Inc.*, 674 F. Supp. 249, 251 (N.D. Ill. 1987).

---

[3] Corporate Defendants support the positions expressed by NAR in its reply that Plaintiffs mischaracterize Section 2-G-1 in material ways (including, most notably, that Section 2-G-1 does not set a minimum amount of compensation to be offered to buyers' brokers and specifically authorizes the parties to negotiate that compensation) and that the Rule promotes competition by supporting the procompetitive MLS system. These arguments supply additional grounds on which the Complaint should be dismissed as against the Corporate Defendants. With respect to NAR's arguments on pages 12–13 concerning the 2008 Department of Justice consent decree, those issues do not affect the Corporate Defendants' Motion to Dismiss, and Corporate Defendants therefore take no position as to issues relating to the consent decree.

[4] In their Opposition, Plaintiffs advance the novel argument that they have alleged an "agreement [that] is out in the open" and, therefore, *Twombly*'s requirement that they plead a plausible conspiracy does not apply. (Opp. at 36, 38, 45.) But Plaintiffs do not allege that Corporate Defendants agreed with each other or with NAR concerning any aspect of Section 2-G-1 and instead ask that the Court infer the existence of an agreement from alleged common, parallel activity on the part of each Corporate Defendant—that each required its associated brokers and real estate agents to participate in MLSs and follow NAR rules.

Here, that fundamentally requires Plaintiffs to plead *facts* that the Corporate Defendants consciously committed to a common scheme or had a unity of purpose with each other and NAR regarding Section 2-G-1. *Twombly*, 550 U.S. at 556; *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984); *Washington County Health Care Auth., Inc. v. Baxter Int'l Inc.*, 328 F. Supp. 3d 824, 840 (N.D. Ill. 2018). A conclusory allegation of an agreement based on terms or conduct that are just as consistent with unilateral decision making as with concerted activity *does not* satisfy that burden. *See Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 809 (N.D. Ill. 2014) (holding that independent, lawful actions by defendants did not support antitrust allegations); *Brown*, 674 F. Supp. at 251 ("To state a claim under Section 1 [of the Sherman Act], a plaintiff must allege joint conduct or concerted action; independent action is not proscribed.").

In opposition, Plaintiffs attempt to sidestep their burden to allege facts demonstrating an agreement by referencing a Department of Justice civil action against NAR—*not against the Corporate Defendants*—in which NAR conceded (for purposes of a motion to dismiss) that an unrelated NAR rule amounted to a "'combination among NAR's members,'" a concession that supported a plausible allegation that NAR itself engaged in concerted action. (Opp. at 37 (citing *United States v. Nat'l Ass'n. of Realtors*, No. 05 C 5140, 2006 WL 3434263, at *13 (N.D. Ill. Nov. 27, 2006) ("[NAR] concedes, for present purposes at least, that the challenged VOW Policies and rules are the product of a 'combination among NAR's members,' which is a prerequisite for the practices to be actionable under Section 1 of the Sherman Act.").)) But Plaintiffs have not alleged—nor can they allege—that the Corporate Defendants are members of NAR, and Plaintiffs set forth no facts plausibly suggesting that any single Corporate Defendant, either alone or in

---

*Twombly*, therefore, is squarely applicable and Plaintiffs fail to meet their requirement to plead a plausible conspiracy as stated in the Corporate Defendants' Motion to Dismiss. (ECF No. 116 at 6-13.)

4

conjunction with any other Corporate Defendant, reached an agreement with NAR regarding Section 2-G-1, or that any Corporate Defendant should be held liable for the conduct of their subsidiaries, franchisees, or their independent contractor real estate agents. The lack of any agreement between or among the Corporate Defendants and NAR is fatal to Plaintiffs' claims against the Corporate Defendants.

### A. Plaintiffs Have Not Alleged That the Corporate Defendants Entered Into Any Agreement.

There is no merit to Plaintiffs' contention that they have sufficiently alleged an agreement *by the Corporate Defendants* by asserting that the NAR Rule itself is an agreement ***among its members***. (Opp. at 37-39.) Plaintiffs have not alleged any facts that any Corporate Defendant is a member of NAR or had any involvement in the creation of Section 2-G-1 in 1996, or in its continued existence as a NAR rule since that time. All Plaintiffs have alleged is that a single executive of one Corporate Defendant currently serves on NAR's Board of Directors and that individual independent contractor real estate agents affiliated with brokerages or franchisees of Corporate Defendants—not any of the Corporate Defendants themselves—generally participate in present-day NAR, local Realtor® association, or MLS governance. Plaintiffs make no allegations of any involvement by these individuals in any communications, consideration, or other actions relating to Section 2-G-1. Not surprisingly, courts have repeatedly rejected similar attempts to tie other entities to a conspiracy to adopt or implement an allegedly anticompetitive rule based only on general allegations of their involvement with association governing bodies.[5] *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) (finding allegations that each bank

---

[5] Throughout their Opposition, Plaintiffs state that Corporate Defendants "do not dispute" or "concede" certain facts alleged by Plaintiffs. (*See, e.g.*, Opp. at 40.) That is not the case. On their motion to dismiss, the Corporate Defendants have taken Plaintiffs' allegations as true, even though nearly all of them are disputed.

"participates in the management" of the Consortiums, "adopt[s] . . . fees set by the Consortiums," and implements the fees by charging them to merchants were insufficient to support claims that the banks "conspired or agreed with each other or with the Consortiums to restrain trade"); *see also see also AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 233-34 (holding that to find a trade association member who "continues his membership without protest may be charged with complicity as a confederate" "would seriously undermine the standards articulated by the Supreme Court in *Matsushita* and *Monsanto*").

Plaintiffs next ask the Court to assume that such discussions involving the Corporate Defendants occurred because participation in NAR or local Realtor® associations "necessarily includes jointly discussing, approving, and reissuing NAR and MLS rules." (Opp. at 43.) However, as Plaintiffs' own cases show, where trade association members were found to have joined the conspiracy and faced liability for an anticompetitive association rule, the defendant members were *directly and substantially* involved—not just assumed to be—in an actual agreement to create or implement the challenged rule. *See, e.g., United States v. Nat'l Ass'n of Real Estate Bds.*, 339 U.S. 485, 495 (1950) (affirming the district court's dismissal of the National Association of Real Estate Boards and its executive vice president, Nelson, because of "doubt as to the extent if any to which the National Association and Nelson were architects of the fee-fixing conspiracy or participants in it"); *see also Robertson v. Sea Pines Real Estate Cos., Inc.*, 679 F.3d 278, 283, 285-86, 288 (4th Cir. 2012) (defendant real estate brokerages were alleged to use the MLS "as an instrumentality to maximize their individual profit" and were the very entities that proposed, adopted, implemented, and enforced the restrictive membership rules).[6]

---

[6] Plaintiffs' reliance on older, pre-*Twombly,* association cases is similarly inapposite because those cases all involve alleged agreements among association members. Again, Plaintiffs have failed to allege that the Corporate Defendants are members of NAR. Those cases further do not directly address the degree of involvement needed by an association member to be liable for an association's rule. *Anderson v.*

6

In other cases Plaintiffs cite regarding trade association activities, only the trade association itself was held liable. *See Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85 (1984) (only the governing trade association was held liable in case brought by member institutions); *see also Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975) (only a state bar and county bar association were found to violate Section 1 where they set a minimum fee for attorneys to perform title examinations on residential properties); *Realcomp II, Ltd. v. FTC.*, 635 F.3d 815 (6th Cir. 2011 (liability against only the MLS); *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 459 (1986) (action against association only); *United States v. Topco Assocs.*, 405 U.S. 596, 602-03 (1972) (same); *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679 (1978) (same); *Ariz. v. Maricopa Cty. Med. Soc'y*, 457 U.S. 332, 346 (1982) (action against foundations only).

In sum, Plaintiffs' proffered authorities provide no basis on which to infer each Corporate Defendant's individual "conscious commitment" to the alleged illegal scheme.

Moreover, Plaintiffs' contention that the Corporate Defendants have joined a conspiracy by "simply agree[ing] to follow" or acquiescing in Section 2-G-1 (Opp. at 38, 43) is insufficient. Because joining MLSs and, as a condition of membership, agreeing to follow MLS rules is in the independent interests of Corporate Defendants' associated brokers and agents, Plaintiffs' allegations do not plausibly establish any agreement involving Corporate Defendants. *See Twombly*, 550 U.S. at 556-57 ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). Unlike the cases cited by Plaintiffs—in which the defendants would not have joined a conspiracy without having been coerced into doing so, *see, e.g.*, *MCM Partners, Inc. v.*

---

*Shipowners Ass'n of Pac. Coast*, 272 U.S. 359, 361 (1926); *Associated Press v. United States*, 326 U.S. 1 (1945); *Silver v NYSE,* 373 U.S. 341, 348 (1963).

7

*Andrews-Bartlett & Assocs., Inc.* 62 F.3d 967, 972-73 (7th Cir. 1995) ("[defendants] did not make independent business decisions" but rather "decided to deal exclusively . . . only in response to" coercion by one of the other defendants)—here, the importance of MLS participation to the Corporate Defendants' associated brokers and agents means that no coercion by others was necessary to cause them to join MLSs and follow MLS rules. As Plaintiffs have alleged, each did so because it was in its unilateral, non-conspiratorial interests. *See In re: Blue Cross Blue Shield Antitrust Litig.,*, (MDL No. 2406), No. 2:13-CV-20000-RDP, 2016 WL 6124143, at *12 (N.D. Ala. Oct. 20, 2016) ("[M]ere acquiescence to service policies created by an alleged coconspirator does not demonstrate conscious commitment to the anticompetitive scheme when an antitrust plaintiff fails to present some evidence that a party influenced or was involved in the service policies at issue."); *see also Toscano v. PGA*, 258 F.3d 978, 983 (9th Cir. 2001) (finding that the trial court correctly determined there was no direct or circumstantial evidence of an agreement in restraint of trade because the defendant tournament sponsors played no role in creating or enforcing the association's set of rules and regulations but instead—acting independently of the association and one another—agreed to abide by them).

Plaintiffs cannot avoid *Twombly* by trying to discredit the Corporate Defendants' "economic reasons to encourage their representatives to join NAR and participate in MLSs," by concluding that these independent unilateral and commercially sound justifications "cannot absolve [the Corporate Defendants] from liability." (Opp. at 46.) The issue here is not liability. It is whether Plaintiffs have alleged sufficient facts plausibly supporting the existence of an agreement—a necessary element of a Section 1 claim. Plaintiffs affirmatively allege that it is in each Corporate Defendant's independent, non-conspiratorial interest to encourage their associated brokers and real estate agents to participate in MLSs and follow NAR rules. These allegations

8

defeat Plaintiffs' conspiracy claim. *See, e.g.*, Compl. ¶ 98 ("access to the Covered MLs, and other MLSs, is a commercial necessity for all brokers and individual realtors"). "[F]acts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy [are] insufficient to plead a violation of the antitrust laws." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008) (citing *Twombly*, 550 U.S. at 553-57 & n.5); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 326 (a complaint should be dismissed where "independent self-interest is an 'obvious alternative explanation' for defendants' common behavior"); *Washington Cty. Health Care Auth.*, 328 F. Supp. 3d at 831. Because Plaintiffs have failed to allege an agreement and the Complaint itself establishes an "obvious alternative explanation" for Corporate Defendants' independent behavior, Plaintiffs have failed to satisfy their burden. The Court should dismiss the Corporate Defendants from the Complaint.

> **B. Plaintiffs Fail to Allege Facts Sufficiently Tying the Corporate Defendants to Alleged Conduct of Brokerages or Franchisees.**

Because Plaintiffs cannot plead facts linking the Corporate Defendants to any alleged agreement relating to Section 2-G-1, they resort to arguing that the Corporate Defendants direct the participation of their subsidiaries and franchisees in the alleged conspiracy. (Opp. at 47-48.) This approach is unavailing. Plaintiffs' Complaint itself contains no factual allegations supporting Plaintiffs' assertions. For example, Plaintiffs do not allege any communications between any Corporate Defendant and their separate brokerages or franchisees about Section 2-G-1, let alone with the individual independent contractor real estate agents alleged to participate in NAR, local Realtor® association, and MLS governance. Plaintiffs also do not allege that any Corporate Defendant required or directed any associated broker or agent to participate in any specific way in NAR, local Realtor® association or MLS governance bodies, much less for any purpose relating to shaping Section 2-G-1 or other MLS policy. While Plaintiffs allege that the Corporate

9

Defendants require or encourage their brokerages and franchisees to join MLSs and local Realtor® associations and comply with their rules generally, Plaintiffs do not allege that Corporate Defendants provided *any* specific requirements or direction with respect to Section 2-G-1.[7]

Notably, Plaintiffs fail to identify a single case supporting the proposition that a conspiracy by the Corporate Defendants somehow can be inferred based on the conduct of employees or independent contractor real estate agents associated with the Corporate Defendants' separate brokerage subsidiaries or franchisees. Rather, Plaintiffs rely exclusively on inapposite case law holding that alleged conduct by the named defendants *themselves* was sufficient to infer the defendants were part of the alleged conspiracy. For example, in *In re Broiler Chicken Antitrust Litigation*, the court identified multiple, specific allegations in the complaint that each named defendant cut production or took other action to restrain production in furtherance of the conspiracy. 290 F. Supp. 3d 772, 803 (N.D. Ill. 2017). Similarly, in *Standard Iron Works v. ArcelorMittal*, the court noted that each named defendant cut production and attended specific trade meetings at which defendants discussed production restraints. 639 F. Supp. 2d 877, 900-03 (N.D. Ill. 2009).

Plaintiffs also ignore the corporate separateness of the Corporate Defendants' franchisees and attempt to rely on cases examining whether a parent can be liable for the conduct of its subsidiary. (*See* Opp. at 47-48.) A franchisee, however, is not a subsidiary; it is an independent entity that has been granted the right to engage in a business associated with the franchisor's

---

[7] Plaintiffs also resort to claiming that because NAR amends some of its rules on an annual basis and those employees or real estate agents of Corporate Defendants franchisees or subsidiaries who are involved in NAR's governance or committees allegedly failed to discuss or review (and hence failed to repeal) Section 2-G-1 as part of that process, they are participants in Plaintiffs' claimed conspiracy by inaction. Such a theory is absurd and would make every such industry participant a co-conspirator and jointly and severally liable for the claimed significant antitrust damages Plaintiffs have alleged.

trademark or advertising. *See, e.g.*, 815 Ill. Comp. Stat. Ann. 705/3 (defining franchise, franchisee, and franchisor). Additionally, the allegations of control in the inapposite parent-subsidiary cases cited by Plaintiffs are much more substantial than the paltry allegations involving any of the employees or independent contractor sales professionals of Corporate Defendants' subsidiaries *or* franchisees. *Compare* ECF. No 166 at 15-21 (summarizing the few facts alleged as to each Corporate Defendant), *with Esmark, Inc. v. NLRB*, 887 F.2d 739, 760 (7th Cir. 1989) (remanding case involving employment policies to determine whether a parent (not a franchisor) exercised "impermissible 'direct' control" over a subsidiary, accompanied by a disregard for the subsidiary's separate corporate form, as opposed to permissible active participation by a parent in its subsidiary's affairs). *See also In re Managed Care Litigation*, 298 F. Supp. 2d 1259, 1277 (S.D. Fla. 2003) (finding allegations more substantial than those made here are sufficient to show the level of control necessary to establish that the defendants "direct[ed] the affairs of the enterprise" under RICO); *Gen. Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*, 744 F.2d 588, 589 (7th Cir. 1984) (addressing an association's geographic restrictions found in agreements directly between an association and its own franchisees); *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1071-73 (D. Colo. 2004) (finding alter ego liability where the parent "treat[ed] its subsidiaries' assets as its own," "wr[ote] most of the checks that subsidiaries require," and "direct[ed] and control[ed] the policies and behavior of its subsidiaries with such a unity of interest and lack of respect given to the separate identity of parent and subsidiary that the personalities and assets of parent and subsidiary are indistinct"). Here, there is nothing in the Complaint suggesting that Corporate Defendants disregarded corporate formalities, and Plaintiffs have failed to allege any facts tying Corporate Defendants to the conspiracy alleged in the Complaint.

**III.    CONCLUSION**

For the foregoing reasons and those stated in Corporate Defendants' Motion to Dismiss, the Court should dismiss Plaintiffs' Complaint with prejudice and/or rule the Plaintiffs have failed to state their claim against any of the Corporate Defendants.

In sum, Plaintiffs have failed to meet their obligation to plausibly allege that the Corporate Defendants participated in any conspiracy, requiring dismissal with prejudice of Plaintiffs claims against the Corporate Defendants.  This conclusion is unaffected by the recent decision in *Sitzer v. Nat'l Assoc. Realtors, et al.*, No. 14-cv-332 (W.D. Mo.) (ECF No. 131), finding that plaintiffs in that case had stated a claim in a similar lawsuit.  The Corporate Defendants respectfully submit that this Court should independently evaluate the pleading in this case and conclude that Plaintiffs here have not satisfied their burden under *Twombly* to allege facts that plausibly suggest any Corporate Defendant reached an anticompetitive agreement with NAR, and dismiss the Complaint.

Dated: October 18, 2019                                              Respectfully submitted,

| *Counsel for HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates, LLC* | *Counsel for Keller Williams Realty, Inc.* |
|---|---|
| /s/ Denise A. Lazar | /s/Timothy Ray |
| Karoline E. Jackson | Timothy Ray |
| kjackson@btlaw.com | Timothy.Ray@hklaw.com |
| Matthew B. Barr | Martin G. Durkin |
| matthew.barr@btlaw.com | martin.durkin@hklaw.com |
| Matthew T. Ciulla | William F. Farley |
| matthew.ciulla@btlaw.com | william.farley@hklaw.com |
| Robert D. Macgill | HOLLAND & KNIGHT LLP |
| robert.macgill@btlaw.com | 131 South Dearborn Street |
| BARNES & THORNBURG LLP | 30th Floor |
| 11 South Meridian Street | Chicago, IL 60603 |
| Indianapolis, IN 46204 | (312) 263-3600 |
| (317) 231-6498 | |
| | David C. Kully |
| | david.kully@hklaw.com |
| | Anna P. Hayes |

Denise A. Lazar
 denise.lazar@btlaw.com
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
(312) 214-4816

Jay N. Varon
 jvaron@foley.com
Jennifer M. Keas
 jkeas@foley.com
FOLEY AND LARDNER LLP
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 672-5436

Erik Kennelly
 ekennelly@foley.com
FOLEY & LARDNER LLP
321 N. Clark St., Suite 2800
Chicago, IL 60654
(312) 832-4588

*Counsel for Realogy Holdings Corp.*

/s/ Kenneth M. Kliebard
Kenneth Michael Kliebard
 kenneth.kliebard@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601-5094
(312) 324-1000

Stacey Anne Mahoney
 stacey.mahoney@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

 anna.hayes@hklaw.com
HOLLAND & KNIGHT LLP
800 17th Street NW, Suite 1100
Washington, DC 20530
(202) 469-5415

*Counsel for RE/MAX Holdings, Inc.*

/s/ Paula W. Render
Paula W. Render
 prender@jonesday.com
Erin L. Shencopp
 eshencopp@jonesday.com
Odeshoo Hasdoo
 ehasdoo@jonesday.com
JONES DAY
77 W Wacker, Suite 3500
Chicago, IL 60605
(312) 782-3939

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on October 18, 2019, the foregoing **Reply Memorandum in Support of the Corporate Defendants' Motion to Dismiss the Consolidated Class Action Complaint** was electronically filed with the Clerk of the Court by utilizing the CM/ECF System, which will provide electronic notification to all counsel of record:

*/s/ Denise A. Lazar*
Denise A. Lazar