# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, VALERIE NAGER, JACK RAMEY, DANIEL UMPA, and JANE RUH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., HSF AFFILIATES, LLC, BHH AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX HOLDINGS, LLC and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Civil Action No.: 1:19-cv-01610<br><br>HON. ANDREA R. WOOD |

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM
## IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs respectfully submit this Supplemental Memorandum to address (a) the recent decision in *Sitzer v. NAR*, No. 19-cv-00332-SRB, 2019 WL 5381984 (W.D. Mo. Oct. 16, 2019) (ECF No. 131), denying Defendants' motions to dismiss and rejecting the same arguments made by NAR and the Corporate Defendants in their motions to dismiss this case; and (b) the recent Statement of Interest filed by the Department of Justice on behalf of the United States of America "to correct the inaccurate portrayal" of the 2008 Consent Decree between the United States and NAR. Plaintiffs wish to apprise the Court of the following:

1

1. Although NAR and the Corporate Defendants comment only in passing on the denial of Defendants' motions to dismiss in "a similar case,"[1] this cursory treatment is in stark contrast to the arguments they made in *Sitzer* prior to the denial of their motions to dismiss. There, Defendants made two points clear. First, they repeatedly told the court in *Sitzer* that the factual and legal issues they are raising are not merely "similar," but—in their words—are "almost entirely the same as that in *Moehrl*."[2] Second, in unsuccessfully urging transfer of the *Sitzer* action to this Court, Defendants repeatedly emphasized the importance of "uniformity and consistency of judicial decisions and factual findings between the two cases."[3] Now, however, Defendants say that the Missouri decision should be disregarded, and urge the Court to reach the opposite conclusion of the Missouri court on virtually identical motions raising exactly the same legal arguments with respect to a complaint that served as the model for the *Sitzer* Plaintiffs' complaint.

---

[1] *See* Reply Br. In Supp. of the NAR Mot. to Dismiss the Consolidated Am. Compl. ("NAR Reply. Br."), ECF No. 142 at 4 n.2 (Oct. 18, 2019) (NAR Reply referencing *Sitzer* decision in a footnote and stating that United States District Court for the Western District of Missouri "erred"); Reply Mem. in Supp. of Corporate Defs.' Mot. to Dismiss Consolidated Am. Compl. ("Corp. Defs.' Reply Mem.") ECF No. 143 at 12 (Corporate Defendants' Reply briefly mentioning *Sitzer* holding and simply stating that Defendants' arguments are "unaffected by the recent decision").

[2] Reply Suggestions in Supp. of Corporate Defs.' Mot. to Transfer, *Sitzer v. NAR*, No. 19-cv-00332-SRB, ECF No. 70 at 1 (W.D. Mo. July 29, 2019); *see also id.* (telling the court that the *Moehrl* and *Sitzer* actions are "proceeding on the same core federal antitrust theories"); *id.* (stating that "the cases are the same and squarely focus on the same supposedly anti-competitive NAR rule and the Corporate Defendants' same supposed anticompetitive agreements"); *id.* (stating that the cases "assert the same core, substantive allegations"); *id.* at 2 (stating that the conduct at issue in the two cases is "virtually identical"); *id.* at 3 (stating that cases involve "the same fundamental allegations"); *id.* at 8 (stating that "the core allegations in the two cases are inescapably the same"); Suggestions in Supp. of Corporate Defs.' Mot. to Transfer, ECF No. 62 at 1 n.1, 2, (July 10, 2019) (representing that *Sitzer* case presents same pleading issues argued by Defendants in *Moehrl*), 6-7, 8 (arguing that *Sitzer* case "consists of nearly identical allegations as the *Moehrl* action").

[3] *Sitzer*, ECF No. 62 at 7 (arguing that transfer "would ensure uniformity and consistency of judicial decisions and factual findings between the two cases"); *id.* at 14 (discussing need to "eliminate the risk of inconsistent judgments"); *Sitzer*, ECF No. 70 at 1 (arguing that "the key legal issues" in the two cases are "almost entirely the same" and discussing importance of avoiding "potentially inconsistent results"); *id.* at 6 (urging transfer to "ensure uniformity and consistency of judicial decisions").

Defendants make no effort to distinguish the decision on the merits, nor could they, for the simple reason that the court's decision in *Sitzer* could not be more squarely on point.[4]

2. Defendants' motions to dismiss in *Sitzer* were denied for an overriding reason that is plainly applicable here: they rely entirely on contentions of fact that are very much in dispute and, in doing so, repeatedly urge that inferences be drawn in their favor even though Rule 12(b)(6) requires exactly the opposite approach. Recognizing this, the court in *Sitzer* had little trouble concluding that virtually identical factual arguments made by the same Defendants here provide no basis for granting a motion to dismiss:

(a) After setting forth applicable Supreme Court law, and explaining the parties' respective arguments relating to the Corporate Defendants' motion to dismiss, the court held:

> [T]he Court finds Plaintiffs satisfy the pleading requirements necessary to survive a motion to dismiss. Plaintiffs' assertion that NAR and Corporate Defendants agreed to carry out NAR's allegedly anticompetitive policies is adequately supported by factual allegations regarding both the substance and nature of their purported agreement. Plaintiffs present facts showing the terms and effects of the alleged agreement and the methods allegedly used by NAR and Corporate Defendants to uphold and perpetuate it. In turn, Plaintiffs' allegations plausibly suggest the franchisees, subsidiaries, and agents of each Corporate Defendant knew of, complied with, participate in, and benefitted from Section 2-G-1 and its related provisions. *See, e.g., Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 227 (1939) ("Acceptance by competitors without previous agreement of an invitation to participate in a plan, the necessary consequence of which, if carried out, is restraint of interstate commerce, is sufficient to establish unlawful 'conspiracy' under the Sherman Anti-Trust Act."). Taken as true and in a light most favorable to them, Plaintiffs adequately allege facts placing the conduct of NAR and each Corporate Defendant "in a context that raises a suggestion of a preceding agreement" rather than "identical, independent action." *Twombly*, 550 U.S. at 557, 549; *see also Interstate Circuit*, 306 U.S. at 227; *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 195, 199 (2010) ("Any joint venture involves multiple sources of economic power cooperating to produce a product. And for many such ventures, the participation of others is necessary. But that does not mean that necessity of cooperation transforms concerted action into independent action.").

---

[4] NAR implies that the Missouri court's decision should not be treated as persuasive because the Seventh Circuit has a more stringent standard governing motions to dismiss. NAR Reply Br. at 4-5 & n.2. This suggestion is completely without merit.

Order Denying Mots. to Dismiss, *Sitzer*, ECF No. 131 at 7-8.

(b) The court in *Sitzer* also held that the myriad factual claims raised in NAR's motion to dismiss—including NAR's claim that "Section 2-G-1 only mandates listing brokers make some offer of compensation and that no minimum commission rate or amount is required"—provided no basis for rejecting the factual allegations in the complaint setting forth the anti-competitive nature and effect of NAR's blanket-offer requirement and other related restraints. The court explained:

> At this stage of the proceeding, the Court's job is not to balance the anticompetitive effects of Section 2-G-1 against the procompetitive justifications advanced by Defendants. Instead, the Court must evaluate whether Plaintiffs' FAC presents facts which, when viewed in a light most favorable to Plaintiffs, show the challenged conduct plausibly exerts an unreasonable restraint on trade. *See Ash*, 799 F.3d at 960. The Court finds Plaintiffs have satisfied that requirement. Given the sheer market power possessed by the Subject MLS and few available listing alternatives, combined with the fact that each MLS participant must adhere to NAR listing rules or face professional sanctions and/or repercussions, Plaintiffs demonstrate the significant influence exerted by Defendants and their listing policies in the Subject MLS. Viewed in a light most favorable to Plaintiffs, allegations that Section 2-G-1 requires seller-brokers to present blanket commission offers to buyer-brokers could plausibly create a skewed compensation structure within the residential real estate market, leading to inflated commissions that would otherwise be lower under competitive market conditions. According to Plaintiffs, Section 2-G-1 and other identified NAR provisions cooperatively limit negotiation, which could plausibly maintain elevated commission rates and deter price-cutting. Plaintiffs also describe buyer-brokers' unique access to MLS listings, the historical practice of steering, and plausibly suggest Section 2-G-1 creates or exacerbates upward pressure on commission rates. The fact-intensive arguments raise by Defendants do not operate as a bar to relief and are appropriate for resolution at a later stage of the proceeding.

*Sitzer*, ECF No. 131 at 12.

(c) Having found that the challenged restraints "could plausibly maintain elevated commission rates and deter price-cutting," the court in *Sitzer* had no difficulty concluding that the Plaintiffs had properly alleged that this was "a material cause, a substantial factor, or a proximate cause" of a cognizable financial injury. *Id.* at 12-13. The court held:

4

> Paying a higher price as a result of the alleged trade restraint is certainly the type of injury "antitrust laws were intended to prevent." *See Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 624-25 (8th Cir. 2011) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Plaintiffs also present facts sufficiently linking their alleged injury to NAR's adoption and implementation of Section 2-G-1, its related rules and provisions, and Corporate Defendants adherence to and enforcement of them. While Plaintiffs will have to account for the various economic and market factors that may have caused or contributed to their alleged injuries, Plaintiffs do not have to do so to survive a motion to dismiss. Instead, Plaintiffs must present enough factual allegations to plausibly show Defendants' alleged anticompetitive actions are a "material cause" of their alleged injuries. *See Concord Boat Corp. v. Brunswick Corp.*[5], 207 F.3d 1039, 1060 (8th Cir 2000) (quoting *Nat'l Ass'n of Rev. Appraisers & Mortgage Underwriters, Inc. v. Appraisal Found.*, 64 F.3d 1130, 1135 (8th Cir. 1995)). They have done so.

*Id.* at 13.

3. The United States Department of Justice has filed a Statement of Interest explaining that NAR's motion to dismiss "inaccurately portrays the 2008 consent decree" with the United States. ("U.S. Statement of Interest") ECF No. 140 at 4 (Oct. 11, 2019). Although the Corporate Defendants originally joined NAR's motion and urged dismissal for "the reasons stated in NAR's Brief,"[6] they now tellingly "take no position as to issues relating to the consent decree." Corp. Defs.' Reply Mem. at 3 n.3. NAR, however, is undaunted and continues to try to defend its reliance on the 2008 consent decree notwithstanding the United States' clear statement that the prior

---

[5] In the *Sitzer* case, as here, Defendants' only factual explanation for the high, persistent, and almost uniform commissions paid to buyer-brokers was that this was simply "the free market" at work—an alternative view that simply disregards the many factual allegations in both the *Sitzer* and *Moehrl* complaints showing that the high commissions being imposed are *not* explained by or consistent with free market principles (*i.e.*, the only alternative explanation proffered by Defendants). Similarly, the allegations about price effects in *Sitzer*—based on numerous factual allegations, highly plausible and detailed explanations of the resulting price impact, and the explanations and findings of both industry and economic experts who have studied the market at issue—were the same allegations made in the *Moehrl* complaint. Precisely the same arguments were presented to the court in *Sitzer* and were correctly rejected. Allegations of this kind easily satisfy any pleading standards and suffice to survive a motion to dismiss—indeed, if this were not so, it is hard to imagine what allegations in a case challenging anti-competitive industry rules would ever be sufficient.

[6] *See* Mem. of Law in Supp. of Corporate Defs.' Mot. to Dismiss Consolidated Am. Class Action Compl. ECF No. 116 at 9 (statement by Corporate Defendants that they join NAR's motion and contend that case should be dismissed for "the reasons stated in NAR's Brief").

consent decree did not "in any way 'authorize' the system that plaintiffs' CAC challenges." U.S. Statement of Interest at 6. NAR's (and the Corporate Defendants') original contention was that the Department of Justice and the judiciary had found the practices challenged in this case to be pro-competitive and lawful. As the United States points out, however, this is both inaccurate and based on a distorted reading of the consent decree:

> NAR's first reference to the decree, by using the ambiguous none "It," suggests that the United States affirmatively approved an entire "MLS system" and all of its related rules. NAR's second reference sandwiches its reference to the consent decree between two sentences asserting that *court decisions* have found MLSs to be procompetitive. Then, by using the word "similarly," NAR gives the impression that the *United States* determined that a NAR rule concerning MLS membership was procompetitive, or even that the specific rules challenged by the plaintiffs here are procompetitive. *These impressions are incorrect.*
>
> The United States' 2005 lawsuit and resulting consent decree . . . , which expired in November 2018, *had nothing to do with the specific NAR rules and "Case Interpretations" challenged by the plaintiffs here*.

U.S. Statement of Interest at 4-5 (emphasis added).[7]

NAR's persistence in invoking the now expired consent decree speaks volumes about the weakness of its arguments and provides no basis for dismissal of Plaintiffs' complaint.

For these reasons, Plaintiffs continue to urge that NAR's and the Corporate Defendants' motions to dismiss the CAC be denied in their entirety.

---

[7] Similarly, Defendants' claim that judicial decisions establish, as a matter of law, that the practices at issue in this case are pro-competitive is simply false. The principal cases they rely on were resolved decades ago at the summary judgment stage on a full discovery record, and dealt with an entirely different system in which agents, who were retained as sub-agents by a seller-agent and owed fiduciary duties *to the seller*, were compensated by the seller—a context *exactly the opposite* of the practices at issue here (where buyer-brokers owe fiduciary duties *to the buyer*). *See* Pls.' Mem. in Opp'n to Defs.' Mots. to Dismiss, ECF No. 132 at 34 n.22 (Sept. 13, 2019). The other cases Defendants rely on were not only decided at the summary judgment stage (and one on a motion for preliminary injunction), but also merely found that, in general, there are benefits to an MLS. Like Defendants' inaccurate depiction of the earlier NAR Consent Decree, these cases provide *no* justification for the anti-competitive restraints at issue here. An MLS does not in any way require these restraints in order to function, let alone provide a basis for dismissal. *See id.* at 34 n.23.

Dated: October 29, 2019					Respectfully submitted,

/s/ Kit A. Pierson
Kit A. Pierson
 kpierson@cohenmilstein.com
Daniel A. Small
 dsmall@cohenmilstein.com
Benjamin D. Brown
 bbrown@cohenmilstein.com
Robert A. Braun
 rbraun@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600

Carol V. Gilden (Bar No. 6185530)
 cgilden@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370

Steve W. Berman (Bar No. 3126833)
 steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

Daniel Kurowski
 dank@hbsslaw.com
Whitney Siehl
 wsiehl@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949

Jeff D. Friedman
 jefff@hbsslaw.com
Rio S. Pierce
 riop@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710

Telephone: (510) 725-3000

Matthew R. Berry
 mberry@susmangodfrey.com
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880

Marc M. Seltzer
 mseltzer@susmangodfrey.com
Steven G. Sklaver
 ssklaver@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100

Beatrice C. Franklin
 bfranklin@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas
32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

George Farah
 gfarah@hfajustice.com
HANDLEY FARAH & ANDERSON PLLC
81 Prospect Street
Brooklyn, NY 11201
Telephone: (212) 477-8090

William H. Anderson
 wanderson@hfajustice.com
HANDLEY FARAH & ANDERSON PLLC
4730 Table Mesa Drive, Suite G-200
Boulder, CO 80305
Telephone: (303) 800-9109

Benjamin David Elga
belga@justicecatalyst.org
Brian Shearer
brianshearer@justicecatalyst.org
JUSTICE CATALYST LAW
25 Broadway, Ninth Floor
New York, NY 10004
Telephone: (518) 732-6703

Monte Neil Stewart
monteneilstewart@gmail.com
Russell E. Marsh
rmarsh@wmllawlv.com
WRIGHT MARSH & LEVY
300 S. 4th Street, Suite 701
Las Vegas, NV 89101
Telephone: (702) 382-4004

Vildan A. Teske
teske@tkkrlaw.com
Marisa C. Katz
katz@tkkrlaw.com
TESKE KATZ KITZER & ROCHEL PLLP
222 South Ninth Street, Suite 4050
Minneapolis, MN 55402
Telephone: (612) 746-1558

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to counsel for all parties that have appeared in this case.

<u>/s/ Kit A. Pierson                    </u>