IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, VALERIE NAGER, JACK RAMEY, DANIEL UMPA, and JANE RUH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., HSF AFFILIATES, LLC, BHH AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No.: 1:19-cv-01610<br><br>Judge Andrea R. Wood |

**PLAINTIFFS' MOTION TO LIFT THE DISCOVERY STAY**

**INTRODUCTION**

In light of recent developments in *Sitzer v. National Association of Realtors*, No. 19-cv-00332-SRB (W.D. Mo.), Plaintiffs move to promptly lift the discovery stay.[1] The stay in this case is now effectively a nullity, and maintaining it would serve no legitimate purpose. Defendants themselves have argued that party discovery in this case would be largely coextensive with *Sitzer*, where discovery is now proceeding full bore. The *Sitzer* court has also determined that the plaintiffs there—whom Defendants assert modeled their complaint after the operative complaint filed in this case and named identical defendants—plausibly pleaded their claims that Defendants conspired to violate federal antitrust law. In doing so, the *Sitzer* court denied Defendants' motions to dismiss that are substantially identical to the motions Defendants submitted in this case—finding that Defendants' arguments, at most, raised factual issues that must be resolved at trial.

In initially granting the stay of discovery in *Moehrl*, this Court implicitly determined that the resulting delay of the case was outweighed by the potential waste of judicial and party resources of starting unnecessary complex discovery if the case is ultimately dismissed. Now that significantly overlapping discovery is proceeding in *Sitzer*, that calculus has drastically changed. Continuing to stay discovery in *Moehrl* while it proceeds against the same parties on the same issues in *Sitzer* would needlessly waste party and judicial resources with no countervailing benefit. Defendants have conceded that largely duplicative depositions should be avoided. Under the compact schedule entered in *Sitzer*, document discovery has already commenced and depositions are likely to begin by Spring 2020. Unless the stay here is lifted promptly, the *Moehrl* Plaintiffs will not be able to coordinate with the *Sitzer* plaintiffs and participate in those depositions because we will be prevented from timely obtaining essential discovery from third parties such as the

---

[1] Plaintiffs bring this motion to lift the discovery stay pursuant to this Court's Minute Order entered on August 20, 2019, ECF No. 124 (noting "[a]ny party may move to lift the stay at any time").

1

relevant MLSs and local Realtor associations that we would use in those depositions. The likely result would be to necessitate separate depositions in *Moehrl* of potentially *dozens* of Defendants' current and former employees whose testimony will be relevant to both cases.

Despite the obvious efficiency advantages to all parties and both courts, Defendants oppose lifting the discovery stay.[2] In staking out this position, Defendants apparently aim to sideline Plaintiffs' counsel and to delay the progress of the *Moehrl* litigation—and, thus, the prospect for relief to millions of Americans who have sold homes, or will do so in the future. These home sellers have been, and until this case is resolved, will continue to be forced to pay thousands of dollars in inflated commissions due to Defendants' anticompetitive practices. Defendants have no legitimate basis for opposing the stay, especially considering the size and sophistication of the 6 law firms representing them. Plaintiffs' counsel stand ready to commit substantial resources and antitrust experience to advancing the Class's interests. Accordingly, Plaintiffs request that the discovery stay be lifted.

## **BACKGROUND**

In an October 16, 2019 decision, the *Sitzer* court denied motions to dismiss by the Defendants that were virtually identical to those the Defendants filed here. The court held that the plaintiffs' claims that "Defendants agreed to carry out NAR's allegedly anticompetitive policies," which run parallel to the claims and allegations pleaded in *Moehrl*, were "adequately supported by factual allegations regarding both the substance and nature of their purported agreement." *Sitzer*

---

[2] Pursuant to Local Rule 37.2, Plaintiffs made a good faith attempt to resolve differences and reach agreement with Defendants regarding lifting of the discovery stay. On October 17, 2019, Kit A. Pierson initiated a phone conference with Jack Bierig, counsel for Defendant NAR, regarding lifting the discovery stay as the *Sitzer* matter was beginning to move forward with discovery. On the same day, Plaintiffs sent email correspondence to all Parties memorializing the conversation, expressing their desire to lift the discovery stay, and seeking a phone conference with all counsel. On October 22, 2019, Kit A. Pierson, Robert A. Braun, and Beatrice C. Franklin initiated a phone conference with Martin Durkin, counsel for Defendant Keller Williams. Plaintiffs continued to correspond via email with Defendants regarding the discovery stay, but were unable to reach an agreement.

*v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332-SRB, 2019 WL 5381984, at *4 (W.D. Mo. Oct. 16, 2019). In particular, the court found that the "Plaintiffs' allegations plausibly suggest the franchisees, subsidiaries, and agents of each Corporate Defendant knew of, complied with, participated in, and benefitted from Section 2-G-1 and its related provisions." *Id*. The court further found that the complaint plausibly alleged that Defendants' actions had anticompetitive effects in an adequately defined relevant market:

> Given the sheer market power possessed by the Subject MLS and few available listing alternatives, combined with the fact that each MLS participant must adhere to NAR listing rules or face professional sanctions and/or repercussions, Plaintiffs demonstrate the significant influence exerted by Defendants and their listing policies in the Subject MLS. Viewed in a light most favorable to Plaintiffs, allegations that [NAR's Buyer-Broker Commission Rule] requires seller-brokers to present blanket commission offers to buyer-brokers could plausibly create a skewed compensation structure within the residential real estate market, leading to inflated commissions that would otherwise be lower under competitive market conditions. According to Plaintiffs, [NAR's Buyer-Broker Commission Rule] and other identified NAR provisions cooperatively limit negotiation, which could plausibly maintain elevated commission rates and deter price-cutting. Plaintiffs also describe buyer-brokers' unique access to MLS listings, the historical practice of steering, and plausibly suggest Section 2-G-1 creates or exacerbates upward pressure on commission rates. The fact-intensive arguments raised by Defendants do not operate as a bar to relief and are appropriate for resolution at a later stage of the proceeding.

*Id*. at *6. Lastly, the court determined that the *Sitzer* "[p]laintiffs allege a legally-cognizable injury under the Sherman Act"—observing that the plaintiffs "present facts sufficiently linking their alleged injury to NAR's adoption and implementation of Section 2-G-1, its related rules and provisions, and Corporate Defendants' adherence to and enforcement of them." *Id*.

Following its decision, the *Sitzer* court entered a scheduling order on October 23, 2019. *Sitzer*, ECF No. 144. That schedule sets an August 12, 2020 deadline for class certification

3

discovery and an August 26, 2020 deadline for class certification motions.[3] Both deadlines are roughly nine months from today's date.

In the weeks before and since the scheduling order was entered, discovery in *Sitzer* has proceeded apace. The *Sitzer* plaintiffs have served document requests and interrogatories on all Defendants, as well as on several other co-conspirators. *See, e.g.*, *Sitzer*, ECF Nos. 89, 124–30, 163. Defendants have likewise served requests on the *Sitzer* plaintiffs and third parties. *See, e.g.*, *Sitzer*, ECF Nos. 133, 135, 146–49, 152–57, 173. Plaintiffs here further understand that the *Sitzer* plaintiffs have begun to confer over the scope of their discovery requests with the Defendants and several third parties. Defendant NAR has also begun producing documents responsive to the *Sitzer* plaintiffs' discovery requests.

## **ARGUMENT**

Given that full discovery is moving forward in *Sitzer*, there is no longer any legitimate reason to maintain a discovery stay in this case. Defendants have repeatedly argued that *Sitzer* is "almost entirely the same as . . . *Moehrl*" and that discovery in both cases will significantly overlap.[4] Defendants have further emphasized the need to "ensure uniformity and consistency" across both cases. *Sitzer*, ECF No. 62 at 7. Indeed, at a June 26, 2019 hearing before this Court,

---

[3] *See also id*. ("Discovery shall not be bifurcated between merits and class discovery. Nonetheless, discovery on class certification issues should be completed on or before August 12, 2020, to ensure that the parties receive all discovery necessary for class certification prior to class certification briefing."); *see also Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 298 (S.D.N.Y. 2012) (noting the need "to develop the record fully before a class motion is considered").

[4] Reply Suggestions in Supp. of Corporate Defs.' Mot. to Transfer, *Sitzer*, ECF No. 70 at 1 (July 29, 2019); *see also id*. (telling the court that the *Moehrl* and *Sitzer* actions are "proceeding on the same core federal antitrust theories"); *id*. (stating that "the cases are the same and squarely focus on the same supposedly anti-competitive NAR rule and the Corporate Defendants' same supposed anticompetitive agreements"); *id*. (stating that the cases "assert the same core, substantive allegations"); *id*. at 2 (stating that the conduct at issue in the two cases is "virtually identical"); *id*. at 3 (stating that cases involve "the same fundamental allegations"); *id*. at 8 (stating that "the core allegations in the two cases are inescapably the same"); Suggestions in Supp. of Corporate Defs.' Mot. to Transfer, ECF No. 62 at 1 n.1, 2, (July 10, 2019) (representing that *Sitzer* case presents same pleading issues argued by Defendants in *Moehrl*), 6-7, 8 (arguing that *Sitzer* case "consists of nearly identical allegations as the *Moehrl* action").

NAR's counsel referred to the *Sitzer* action as "a copycat case." Hearing Tr. at 12:16–17. Counsel for NAR further stated that "the substantive allegations are identical with the exception that they also throw in a count under Missouri law, but the antitrust counts are the same." *Id.* at 14:6–8. Defendants' own arguments show that permitting discovery to proceed in *Moehrl* would result in few, if any, additional burdens on the Defendants.

To the contrary, lifting the discovery stay in *Moehrl* would promote the efficient resolution of both cases, and conserve judicial and party resources—including for Defendants. *See* Fed. R. Civ. P. 1 (directing that discovery and other rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). Defendants and the *Sitzer* plaintiffs have recently started to confer over the scope of discovery requests served in that case. Plaintiffs have expressed to both Defendants and the *Sitzer* plaintiffs that we are ready, willing, and able to participate in those negotiations with the goal of reducing the need for extensive additional negotiations and discovery in the *Moehrl* case. The *Sitzer* plaintiffs have already accepted Plaintiffs' offer.

Plaintiffs have also communicated to Defendants that, if the discovery stay is lifted promptly, we are willing to coordinate with both the *Sitzer* plaintiffs and Defendants to minimize the need for *separate* depositions of the *same* employees of Defendants in the *Moehrl* and *Sitzer* cases. Defendants have indicated that they too would like to avoid duplicative depositions—and for good reason. Cases involving claims comparable in nature, scope, and value to those advanced in *Moehrl* and *Sitzer* typically require dozens of depositions of Defendants' current and former employees.

Here, depositions of Defendants' employees will go forward in *Sitzer* regardless of the discovery stay in *Moehrl*. But unless that stay is lifted soon, Plaintiffs will not be able to participate

5

because we will have been prevented from obtaining key discovery relevant to our claims. Although Defendants have noted that *Moehrl* and *Sitzer* "are the same and squarely focus on the same supposedly anti-competitive NAR rule and the Corporate Defendants' same supposed anticompetitive agreements,"[5] Plaintiffs will require, prior to taking depositions, certain documents and data from third parties, such as the Defendant NAR-controlled MLSs and local Realtor associations that are specific to the geographic areas at issue in *Moehrl* (but not in *Sitzer*). Because depositions of Defendants' employees are likely to begin by Spring 2020 under *Sitzer*'s compact discovery schedule, the stay in *Moehrl* will need to be lifted soon, in order for Plaintiffs to have sufficient time to serve discovery requests, negotiate the scope of those requests, receive responsive documents, and review those documents.

Under these circumstances, lifting the stay is consistent with federal court practice, including in this district. A discovery stay requires a "clear showing" by its proponents of the "burden or cost with any anticipated discovery"—including when a dismissal motion is pending. *New England Carpenters Health & Welfare Fund v. Abbott Labs.*, No. 12-cv-1662, 2013 WL 690613, at *3 (N.D. Ill. Feb. 20, 2013). This "clear showing" standard applies equally to antitrust and other types of litigation.[6] Moreover, in order to expedite the resolution of pending cases, this district adopted the Mandatory Initial Discovery Pilot Program, which specifies that, "[u]nder Rule 12(a)(4), even if a motion to dismiss is filed, the Court retains authority to order an answer and/or

---

[5] Reply Suggestions in Supp. of Corporate Defs.' Mot. to Transfer, *Sitzer*, ECF No. 70 at 1 (July 29, 2019).

[6] *Id*. at *3 ("*Twombly* and *Iqbal* do not mandate that a motion to stay should be granted every time a motion to dismiss is filed."); *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, No. 09-cv-03690, (N.D. Ill. Mar. 4, 2010), ECF No. 75 at 4 (rejecting defendants' argument that *Twombly* and *Iqbal* decisions warranted stay of discovery pending resolution of motions to dismiss, and holding that discovery "will not be stayed"); *In re Flash Memory Antitrust Litig.*, No. 07-cv-0086, 2008 WL 62278, at *3 (N.D. Cal. Jan. 4, 2008) ("While the *Twombly* Court was certainly concerned with the expense of discovery in antitrust cases, its resolution of this concern was to require plaintiffs to plead non-conclusory, factual allegations giving rise to a plausible claim or claims for relief. The Court did not hold, implicitly or otherwise, that discovery in antitrust actions is stayed or abated until after a complaint survives a Rule 12(b)(6) challenge. Such a reading of that opinion is overbroad and unpersuasive.").

permit the parties to make Rule 26(a)(l) initial disclosure and commence discovery under the Federal Rules of Procedure."[7] Whatever conservation of resources or burden justification may have originally supported staying discovery, that justification dissipated as soon as overlapping discovery began to proceed in *Sitzer*. *See, e.g., White v. Eaton Corp. Short Term Disability Plan*, No. 8:04-cv-1848, 2005 WL 8161130, at *1 (D.S.C. Aug. 25, 2005) (lifting discovery stay in an ERISA case because parallel cases against same plan had shown merit, even though "the taking of discovery in ERISA cases is the exception, and not the rule").

Furthermore, the *Moehrl* Plaintiffs will be prejudiced if discovery races ahead in *Sitzer* and stalls here. Even in the context of the Private Securities Litigation Reform Act ("PSLRA")—where discovery is *automatically* stayed pending a motion to dismiss unless a party can show "undue prejudice," 15 U.S.C. § 78u-4(b)(3)(B)—courts often lift stays where discovery is proceeding in parallel litigation. As the court observed in *In re WorldCom, Inc. Securities Litigation*:

> All of the investigations and proceedings concerning WorldCom are moving apace. Without access to documents already made available to the U.S. Attorney, the SEC, and in whole or in part to the WorldCom's Creditors Committee and the documents that will in all likelihood soon be in the hands of the ERISA plaintiffs, NYSCRF would be prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape. It would essentially be the only major interested party in the criminal and civil proceedings against WorldCom without access to documents that currently form the core of those proceedings. This is especially troubling given the likelihood that settlement discussions will begin in December and involve both the securities plaintiffs and the ERISA plaintiffs. The former would be severely disadvantaged in those discussions if they are denied access to the documents they now request.

234 F. Supp. 2d 301, 305–306 (S.D.N.Y. 2002); *see also, e.g.*, *In re Bank of Am. Corp. Secs. Litig.*, No. 09-MDL-2058, 2009 WL 4796169, at *3 (S.D.N.Y. Nov. 16, 2009) ("Discovery is moving apace in parallel litigation. Without access to documents produced in these other proceedings,

---

[7] https://www.ilnd.uscourts.gov/assets/documents/MIDP%20Changes%20Effective%2012-1-18.pdf.

plaintiffs in these cases will be unduly prejudiced and will be less able to make informed decisions about litigation strategy.").

Finally, Defendants can offer no legitimate basis for maintaining the discovery stay. Plaintiffs in *Moehrl* are represented by several of the country's largest and most experienced antitrust class action practices and are able to leverage their considerable resources in furtherance of the Class's interests. These firms filed the *Moehrl* case following an extensive investigation that they conducted. Seeking to sideline *Moehrl* counsel in order to proceed in another forum and against other counsel is not a legally acceptable ground for Defendants to maintain the stay. And continuing to stay discovery in *Moehrl* while *Sitzer* moves forward would substantially delay relief to millions of American homeowners who paid substantial overcharges as a result of Defendants' anticompetitive conduct.

## CONCLUSION

For these reasons, Plaintiffs respectfully seek to lift the stay of discovery.

Dated: November 19, 2019

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Whitney K. Siehl*

Daniel Kurowski (Bar No. 6286656)
dank@hbsslaw.com
Whitney K. Siehl (Bar No. 6313995)
wsiehl@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949

Steve W. Berman (Bar No. 3126833)
steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP

1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

Jeff D. Friedman (*Pro Hac Vice*)
jefff@hbsslaw.com
Rio S. Pierce (*Pro Hac Vice*)
riop@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000


Kit A. Pierson (*Pro Hac Vice*)
kpierson@cohenmilstein.com
Daniel A. Small (*Pro Hac Vice*)
dsmall@cohenmilstein.com
Benjamin D. Brown (*Pro Hac Vice*)
bbrown@cohenmilstein.com
Robert A. Braun (*Pro Hac Vice*)
 rbraun@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600

Carol V. Gilden (Bar No. 6185530)
cgilden@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370


Matthew R. Berry (*Pro Hac Vice*)
mberry@susmangodfrey.com
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880

Marc M. Seltzer (*Pro Hac Vice*)
mseltzer@susmangodfrey.com
Steven G. Sklaver
ssklaver@susmangodfrey.com

9

SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100

Beatrice C. Franklin (*Pro Hac Vice*)
bfranklin@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

George Farah (*Pro Hac Vice*)
gfarah@hfajustice.com
HANDLEY FARAH & ANDERSON PLLC
81 Prospect Street
Brooklyn, NY 11201
Telephone: (212) 477-8090

William H. Anderson (*Pro Hac Vice*)
wanderson@hfajustice.com
HANDLEY FARAH & ANDERSON PLLC
4730 Table Mesa Drive, Suite G-200
Boulder, CO 80305
Telephone: (303) 800-9109

Benjamin David Elga (*Pro Hac Vice*)
belga@justicecatalyst.org
Brian Shearer (*Pro Hac Vice*)
brianshearer@justicecatalyst.org
JUSTICE CATALYST LAW
25 Broadway, Ninth Floor
New York, NY 10004
Telephone: (518) 732-6703

Monte Neil Stewart
monteneilstewart@gmail.com
Russell E. Marsh
rmarsh@wmllawlv.com
WRIGHT MARSH & LEVY
300 S. 4th Street, Suite 701
Las Vegas, NV 89101
Telephone: (702) 382-4004

Vildan A. Teske (*Pro Hac Vice*)
teske@tkkrlaw.com

Marisa C. Katz (*Pro Hac Vice*)
katz@tkkrlaw.com
TESKE KATZ KITZER & ROCHEL PLLP
222 South Ninth Street, Suite 4050
Minneapolis, MN 55402
Telephone: (612) 746-1558

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing to be filed electronically on November 19, 2019. Notice and a copy of this filing will be served upon all counsel of record by operation of the Court's CM/ECF system.

*/s/ Whitney K. Siehl*
Whitney K. Siehl
