1    IN THE UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF ILLINOIS
2                EASTERN DIVISION

3   CHRISTOPHER MOEHRL, on behalf of   )
    himself and all others similarly   )
4   situated,                          )
                                       )
5              Plaintiffs,             )
                                       )
6              -vs-                    )  No. 19 C 1610
                                       )
7   THE NATIONAL ASSOCIATION OF        )
    REALTORS, et al.,                  )  Chicago, Illinois
8                                      )  April 25, 2019
               Defendants.            )  9:00 a.m.
9

10            TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE ANDREA R. WOOD
11
    APPEARANCES:
12
    For the Plaintiff:        HAGENS, BERMAN, SOBOL, SHAPIRO LLP
13                            455 North Cityfront Plaza Drive
                              Chicago, Illinois  60611
14                            BY:  MR. DANIEL J. KUROWSKI

15                            SUSMAN, GODFREY L.L.P.
                              1201 Third Avenue
16                            Seattle, Washington  98101
                              BY:  MR. MATTHEW BERRY
17
    For Defendant
18  National Association:     SCHIFF HARDIN, LLP
                              233 South Wacker Drive
19                            Chicago, Illinois  60602
                              BY:  MR. JACK R. BIERIG
20

21

22          COLETTE M. KUEMMETH, CSR, RMR, FCRR
                  OFFICIAL COURT REPORTER
23               219 South Dearborn Street
                        Room 1928
24               Chicago, Illinois  60604
                     (312) 554-8931
25

1   APPEARANCES:   (Continued)

2   For Defendant
    Realogy:                    MORGAN LEWIS & BOCKIUS LLP
3                               77 West Wacker Drive
                                Chicago, Illinois  60601
4                               BY:  MR. KENNETH MICHAEL KLIEBARD

5   For Defendant
    HomeServices:               BARNES & THORNBURG LLP
6                               One North Wacker Drive
                                Chicago, Illinois  60606
7                               BY:  MS. DENISE A. LAZAR

8   For Defendant
    Re/Max:                     JONES DAY (CH)
9                               77 West Wacker Drive
                                Chicago, Illinois  60601
10                              BY:  MS. PAULA W. RENDER

11  For Defendant
    Keller Williams:            HOLLAND AND KNIGHT, LLP
12                              131 South Dearborn Street
                                Chicago, Illinois  60603
13                              BY:   MR. TIMOTHY RAY
                                      MR. MARTIN G. DURKIN
14

15  For Movant
    Sawbill Strategic:          WEXLER WALLACE LLP
16                              55 West Monroe Street
                                Chicago, Illinois  60603
17                              BY:  MR. THOMAS ARTHUR DOYLE

18

19

20

21

22

23

24

25

1    (Proceedings heard in open court:)

2    THE CLERK:  19 CV 1610, Moehrl versus National

3    Association.

4    MR. DOYLE:  Good morning, your Honor.  I'm Thomas

5    Doyle for the movant, Sawbill Strategic.

6    MR. KUROWSKI:  Good morning, your Honor.  Daniel

7    Kurowski from the law firm Hagens Berman on behalf of the

8    plaintiff, Christopher Moehrl.

9    MR. BERRY:  Good morning, your Honor.  Matt Berry

10   on behalf of the plaintiff, Christopher Moehrl.

11   MR. BIERIG:  Good morning, your Honor.  Jack Bierig

12   for defendant National Association of Realtors.

13   MR. RAY:  Good morning, your Honor.  Timothy Ray on

14   behalf of defendant Keller Williams.

15   MR. KLIEBARD:  Good morning, your Honor.  Ken

16   Kliebard of Morgan, Lewis on behalf of defendant Realogy.

17   MR. DURKIN:  Martin Durkin for Keller Williams.

18   MS. LAZAR:  Good morning, your Honor.  Denise Lazar

19   for HomeServices of America.

20   MS. RENDER:  Good morning, your Honor.  Paula

21   Render for Remax.

22   THE COURT:  Okay.  Good morning.  So let me start

23   by noting, primarily for the benefit of plaintiff's counsel

24   here, that I did see Mr. Doyle and many of the defense

25   counsel who are here today a couple of days ago on the motion

1  for reassignment of a related case that is pending in front

2  of Judge Chang.

3  You may have noted, I don't know if this order has

4  been entered on the docket yet, but perhaps somebody told you

5  about it, I did set a date for any party that wanted to

6  respond to the motion for reassignment to do so of May 17th.

7  I don't know if plaintiffs here have any view on

8  whether reassignment of the Sawbill case is appropriate.  If

9  you know that you're going to have no objection to it, you

10  can let me know now, otherwise you can file a response to the

11  motion by May 17th.

12  MR. BERRY:  Your Honor, first of all, I wanted to

13  note that my *pro hac vice* application has been filed and

14  pending but not yet granted, so with the Court's permission I

15  would like to continue with this hearing.

16  THE COURT:  You may.

17  MR. BERRY:  The plaintiff Moehrl will not oppose

18  that motion.

19  THE COURT:  Okay.  Good to know.  So then I'll just

20  hear from the -- I think at least one defendant, if I recall

21  correctly, wanted an opportunity to discuss it with the

22  client.  I think there was some thought that one or both

23  cases might be subject to motion practice, and they had

24  concerns about timing issues.

25  In any case, my plan with respect to that motion,

as you may recall from two days ago, is to see what's filed on the 17th. I expect to be in a position to rule on it no later than the next time I see the parties on the 29th.

The other case has an initial status hearing in front of Judge Chang on June 7th. I have dropped him a quick note to make sure that he's aware of the fact that the motion for reassignment has been filed here, and to let him know that unless it becomes a more complicated issue as a result of briefing that's filed, I would expect to know the outcome of that motion before the status date. So that is where things stand.

That said, for any of the parties, particularly the defendants who already have obligations in front of Judge Chang, whether it's an answer date that's set, I don't think anybody has been served.

MR. DOYLE: That's right.

THE COURT: But to the extent that changes and you have an answer date or anything else that comes up, do make sure that you attend to it. So if for some reason you need to get an extension of a date in front of him because the motion for reassignment is still pending here, don't just let the date pass. He's aware of the situation. So if you make a reasonable request it shouldn't be an issue.

Now, what's actually noticed for today is a motion for appointment of interim lead counsel. Let me find out if

1  any of the parties who are here today have an objection to

2  that motion.

3  MR. BIERIG:  Yes, your Honor.  Defendants believe

4  that that motion should be deferred.  As your Honor pointed

5  out, on May 17th there will be motions filed by the

6  defendants to dismiss the case.  We believe that those

7  motions will be very meritorious and are at a minimum very

8  serious.

9  We're also going to at that time ask the Court to

10  defer discovery pending ruling on those motions, because

11  discovery is likely to be very expensive in the face of what

12  we regard as a very strong motion to dismiss.  So in the

13  circumstances we would -- we believe it would be most

14  efficient to wait until the Court rules on those motions to

15  decide whether we even need lead counsel.

16  Of course, if the motions to dismiss are granted,

17  there is no need for lead counsel, and depending on how the

18  Court rules on the motion to dismiss and the motion to defer

19  discovery, we may not need three lead counsel.

20  And of course, also as your Honor just pointed out,

21  there is a motion to consolidate the Sawbill case with this

22  case, which also adds a little bit of complexity.

23  So we think there is really no reason to rule on

24  this until the Court and the parties really understand the

25  contours of the case to know whether lead counsel is

1    necessary, and if so whether three lead counsel are

2    necessary.

3            THE COURT:  And do you have an idea of what sort of

4    arguments you're going to be raising in your client's motion

5    to dismiss?

6            MR. BIERIG:  Yes, we do.  Would you like me to

7    state them, your Honor?

8            THE COURT:  Well, I got a preview a couple days ago

9    that there may be venue issues here or in the Sawbill case.

10   I guess the primary focus was venue and personal jurisdiction

11   issues here.  Are those the types of arguments that you

12   expect to raise?

13           MR. BIERIG:  I believe at least one defendant is

14   going to raise those issues, but all defendants will raise

15   the issue, A, that they have not stated a cause of action,

16   that accepting all the allegations in the complaint as true,

17   as we must for purposes of a 12(b)(6) motion, that nothing in

18   the complaint demonstrates in the slightest bit that anything

19   that any of the defendants has done is anti-competitive.  We

20   have a system that's been in place for many, many -- for 50

21   years that has been approved by numerous courts, and we think

22   it will be quite clear after your Honor reads the brief that

23   there is absolutely no violation of the Sherman Act.

24           And second, we also think it's clear that there is

25   no antitrust injury here whatsoever, that this plaintiff has

1  not been injured in any way by the actions of any of the

2  defendants.  So we have that motion.

3  　　　　　　And then some of the franchisor defendants have

4  additional motions, but everyone will join in the motion that

5  there is a failure to state a cause of action and that

6  plaintiff has not been injured by virtue of any of the

7  actions of any of the defendants.

8  　　　　　　THE COURT:  So Mr. -- Berry, correct?

9  　　　　　　MR. BERRY:  Yes.

10  　　　　　　THE COURT:  If I grant the motion for reassignment

11  of the Sawbill case here, would your long-term intent be to

12  file a consolidated complaint?

13  　　　　　　MR. BERRY:  We currently have no plans to do so,

14  your Honor, but I think that if that case were reassigned and

15  consolidated, that would be one thing that we would look at,

16  definitely.

17  　　　　　　If I may, your Honor, respond to some of counsel's

18  arguments?

19  　　　　　　THE COURT:  You may.

20  　　　　　　MR. BERRY:  I think that the points he noted, the

21  fact they're going to ask for a stay of discovery, the fact

22  they're going to file all these various motions to dismiss,

23  that's exactly the reason why it makes sense to appoint

24  interim counsel.  Those are the factors that treatises, the

25  case law identifies, are there going to be decisions made

1  such as a proposed stipulation.  Are there motions to respond

2  to.  If so, that's why appointing lead counsel, interim

3  counsel early makes sense.  It's very efficient case

4  management.

5          We now have two actions that are overlapping

6  that are filed against the same defendants, we've had I think

7  now nine plaintiff's counsel appear, different law firms on

8  behalf of different plaintiffs, we have a number of large

9  defense firms, and to make sure this case is most efficient

10  for the plaintiffs, for the parties and for the Court, I

11  think it makes sense early to appoint interim lead counsel to

12  make sure that these claims can be done efficiently, briefing

13  is done efficiently, but we can speak with one voice with

14  defendants and with the Court.

15          THE COURT:  I think I saw Mr. Doyle nodding along.

16          MR. DOYLE:  Yes, your Honor.

17          THE COURT:  Do you have something to add?

18          MR. DOYLE:  Three things.  No. 1, I totally agree

19  with Mr. Berry that now is the time to address lead counsel

20  rather than waiting, given all of the plates that are going

21  to be spinning quickly in this case.

22          Second, my client, and the firms that are on our

23  complaint, not only do not object to Mr. Berry's motion, we

24  fully support it.  Their motion of why they should be

25  appointed lead counsel for this matter is well-taken and

1    ought to be granted on the papers that it is.

2              My third point, your Honor, is tertiary, which is

3    the complexity of what has already been previewed for this

4    case is one more reason why everything ought to be in one

5    courtroom rather than two.

6              Thank you, your Honor.

7              THE COURT:  Okay.  So --

8              MR. BIERIG:  Your Honor, may I just add one other

9    thing?

10             THE COURT:  Sure.

11             MR. BIERIG:  We also have serious doubts about

12   whether one of these three plaintiffs -- by the way, it's

13   interesting, there are three interim lead counsel that are

14   being appointed.  There is only one plaintiff in the Moehrl

15   case, yet they want three co-counsel for a case in which

16   there is one plaintiff.

17             But beyond that, at least one of the defendants has

18   very serious reservations about one of these three firms that

19   wants to be appointed co-lead counsel.

20             THE COURT:  On what basis?

21             MR. BIERIG:  We think they may have a conflict of

22   interest.  They have other clients whose interests we think

23   compromise their ability to represent this purported class.

24   Of course we don't think there is a class, but we think there

25   may be a conflict of interest.  At least one of the

1  defendants, not my client particularly, but one of the

2  defendants thinks there may be a conflict of interest with

3  respect to one of these three interim lead counsel for this

4  one plaintiff.

5           And one more thing, your Honor.  There is really no

6  efficiency to be had by having these three interim lead

7  counsel.  As we know, everything gets filed on PACER.  The

8  plaintiffs are certainly able to coordinate their response,

9  defendants are certainly working to coordinate their

10 responses.  There really are no efficiencies in having three

11 lead counsel at this point for one plaintiff.

12          THE COURT:  Okay.  So let's assume for the moment

13 that I'm going to reassign the Sawbill case here.  Defendants

14 have not yet been served in that case.  There are no answer

15 dates in that case.  We do have what's going to be a rapidly

16 approaching answer date in this case.

17          What would be the plan for bringing those two cases

18 onto the same schedule for Mr. Doyle or Mr. Barry?

19          MR. DOYLE:  May I suggest, your Honor?

20          THE COURT:  Yes.

21          MR. DOYLE:  My suggestion would be if the Sawbill

22 case is reassigned here, it can be put on administrative hold

23 until whatever needs to be answered in this case, in the way

24 of motions to dismiss, et cetera, get handled.  So the

25 Sawbill case can sit there.  It will either then get folded

1  into this on a consolidated complaint, or my client will be a

2  class member.  But your Honor, the Sawbill case need not have

3  its own track here.

4  THE COURT:  Mr. Berry, you agree with that?

5  MR. BERRY:  Yes, your Honor.  Absolutely.  In fact,

6  the defendants should file their motion to dismiss on May

7  17th, and when we're here before the Court on May 29th, I

8  believe, for the initial status conference, we can discuss

9  and have more knowledge at that point.  But absolutely, I

10  think it makes sense defendants go ahead and file their

11  motions to dismiss on May 17th, and that this case should

12  keep on proceeding forward.

13  THE COURT:  And then just to make sure I'm totally

14  clear, the plan here with respect to the appointing of

15  interim lead counsel is not then to set things up so that

16  when the other case is transferred here you file a

17  consolidated complaint that then folds everything in right

18  from the outset and goes forward, the intent is instead, at

19  least in the short-term, to keep things on two separate

20  tracks?

21  MR. BERRY:  It is, your Honor, until the motions to

22  dismiss are on file.  At that point we'll have more knowledge

23  on what the motions say, and I think when we're back before

24  the Court in late May we'll have more knowledge, but I agree

25  with your Honor that hearing -- we said before that nothing

1  should impact the date.  And this case has been on file for

2  two months now.  Motions to dismiss are due in a little over

3  two weeks.  We don't want to do anything that's going to

4  jeopardize those getting filed on that schedule.

5  MR. BIERIG:  Your Honor, can I say one more thing?

6  THE COURT:  You may.

7  MR. BIERIG:  Your Honor has correctly pointed out

8  that there is an initial status conference set for May 29th.

9  As I mentioned, the defendants are going to be filing both we

10  think very substantial motions to dismiss and motions to stay

11  discovery.  Your Honor will have had those then for

12  approximately 12 days.  We will not have had a response from

13  the plaintiffs on that.

14  We certainly can proceed May 29th if the Court

15  wants, but it might make more sense, particularly with the

16  June 7th date before Judge Chang, to delay the initial

17  conference date until your Honor has reviewed both our

18  motions to dismiss and the response of plaintiffs.  We're not

19  trying in any way to delay this case, but we think it would

20  be very efficient if your Honor actually had an opportunity

21  to read our motions, both to dismiss and to stay discovery,

22  and to see what plaintiffs say in response, and perhaps then

23  we'll also know what the story is with Judge Chang and have

24  the initial status conference after your Honor has had an

25  opportunity to review all those things.

1  THE COURT:  Okay.  So I'm going to keep the May

2  29th status hearing, because one of the purposes of that

3  hearing is to make sure that if the Sawbill case is going to

4  be reassigned here that that gets done, and it gets done

5  before you start having dates in front of Judge Chang.  So

6  that's going to be resolved in the short-term.  How quickly

7  it gets resolved is going to depend on what I get filed on

8  May 17th.

9  If I get nothing and everybody is in agreement with

10  reassignment, based on my initial review of the complaint, I

11  don't see any reason why reassignment would not be proper

12  under our local rules.  It seems that these cases on the

13  surface, based on my initial read, meet the qualifications to

14  be designated as related cases and for the other case to be

15  reassigned here given that in part there would seem to be

16  substantial overlap in the proposed classes, if nothing else.

17  So I think it would make sense to have them both here as soon

18  as possible.

19  That does not mean that I'm agreeing with the

20  suggestion by Mr. Doyle that the other case should be put on

21  hold for a period of time, but once we establish whether or

22  not everything is, in fact, going to be in front of me, we

23  can revisit that.

24  Here's what I'm going to do.  I'm not going to make

25  a decision on the motion for appointment of interim lead

1  counsel today.  I'm not even going to set a briefing schedule

2  on it today.  I'd like to see what's filed on the 17th in

3  terms of motions to dismiss, and, of course, any opposition

4  to reassignment.

5        I'll plan on at least giving a high-level read to

6  whatever motions are filed so I understand what the issues

7  are, and if there is a motion to stay discovery I'll review

8  that as well, and my expectation is that with respect to the

9  latter plaintiff's counsel will come prepared to answer any

10  questions about whether or not discovery should be stayed.

11  Unless, of course, you agree with that.  Perhaps you'll be in

12  agreement.

13        MR. BERRY:  No, your Honor, I can say now that we

14  will not agree with staying discovery.  In fact, we think the

15  mandatory disclosures, we should proceed with those.

16        MR. BIERIG:  It's no wonder they think that,

17  because they represent one plaintiff who will basically

18  disclose nothing other than the fact of his buying a house,

19  and it will be a huge burden on all the defendants to have

20  the mandatory initial discovery.

21        THE COURT:  So what I need to see in order to make

22  that decision is the type of argument that's being raised, if

23  it's going to be strictly an insufficiency-of-the-pleading

24  argument or, as has been suggested, will there be arguments

25  based on venue, personal jurisdiction, or other things that

1   might suggest that the whole matter really belongs somewhere
2   else.

3   Okay.  So for the 29th, I expect I may have some
4   questions for the parties.  If I haven't issued a written
5   ruling on the motion for reassignment I'll either have an
6   oral ruling for that or have a specific request going
7   forward.  I will take a look at any motions that are filed on
8   the 17th so we can address it.  I'm on a little bit of a
9   tight schedule on the 29th due to a trial.  I would expect
10  that I'm going to have this towards the latter end of my 9:00
11  call, just so you know for planning purposes, and hopefully
12  by the end of that status hearing we'll have a plan going
13  forward.  Okay?

14  So the status hearing on the 29th remains firm.
15  You are not required to file the initial status report that
16  would be due on the 22nd, because I think at this point there
17  are a few too many moving parts.  I don't think you're going
18  to agree on anything for the initial status report in any
19  case based on what I've heard.  I have the general outline of
20  the fact that plaintiff wants to move forward with discovery,
21  defendants do not.  I think for present purposes that's
22  sufficient.

23  That said, one thing I will ask you to think about
24  in advance of the 29th is whether there is any possibility
25  that it would be useful to get you all in front of a neutral

1    third party for an early settlement conference.  Perhaps if

2    you're not ready to get in front of a magistrate judge here,

3    perhaps a private third-party mediator might be appropriate

4    in this case as a way of sort of resolving both of the

5    pending cases and all of the defendants at once, so I would

6    just ask that you keep that in mind.  I will probably ask

7    about it again.

8         We could certainly get you to one of our magistrate

9    judges, or the parties might want to consider a third-party

10   mediator.  I don't know if you've discussed that in the past.

11   I can't tell from the expressions in front of me whether it's

12   a futile idea or if it's -- you've already been talking about

13   it and thinking about how to make it work.  I guess I'll find

14   that out on the 29th.

15        Anything else for today?

16        MS. LAZAR:  Yes, your Honor.  Since you're striking

17   the May 22nd date, then the face-to-face or the in-person

18   meeting with the plaintiff's counsel does not need to

19   happen -- I think we were supposed to meet in person to

20   prepare that report.  That's stricken as well?

21        THE COURT:  That's correct.  You do not need to

22   have your discovery planning conference.  Focus on preparing

23   your motions.  Perhaps a phone call, some emails on the

24   subject of whether there is a way to get to an early

25   resolution of the case or not, but no, you do not need to

1  have your planning conference to go through a discovery

2  schedule, et cetera.

3        MR. KLIEBARD:  Administratively, your Honor, is it

4  okay if we pick the presentment date of the 29th for the

5  motion to dismiss and the motion to stay discovery?  Normally

6  we wouldn't wait quite that long, but --

7        THE COURT:  That's fine.

8        MR. KLIEBARD:  I don't want to make argument, but

9  just briefly on the discovery point, the whole purpose of the

10  Twombly and Iqbal line of cases which impose the heightened

11  pleading standard for complex cases and required plausibility

12  in the antitrust context was not to put the defendants to the

13  burden and expense of discovery unless they could overcome

14  the initial obstacle.  So we'll be making those arguments in

15  our papers, but the burden on us would be extraordinary.

16        MR. BERRY:  Your Honor, one suggestion for

17  efficiency is that for the motions to dismiss the plaintiff

18  would not oppose defendants joining in the other, each

19  other's motions on common issues to reduce the number of

20  motions filed or to reduce the duplicativeness to the extent

21  they share in those.

22        THE COURT:  Let me ask this:  Is the working

23  relationship among the defendants such that you would be able

24  to do a joint motion on some or all of the issues?

25        MR. BIERIG:  Your Honor, we are working very hard

1   to have a very good relationship and to minimize the burden

2   on the Court.  My expectation at this time is that there will

3   be one brief filed by the National Association of Realtors

4   and one brief filed on behalf of the four franchisor

5   defendants, and they will not be duplicative.

6           I think the arguments made by the National

7   Association of Realtors will be, in large measure if not

8   totally, accepted and referred to by the other defendants,

9   and then they will make particular arguments that are unique

10  to those four franchisor defendants.

11          So we're well-aware of the need to coordinate and

12  to do this with minimal burden to your Honor, and so there

13  will be at most two briefs.

14          MR. RAY:  And we do reserve the right, your Honor,

15  even among the defendants there are certain of us who have

16  certain issues that are unique to us.  And so even though

17  Jack -- what Jack stated is correct, we are contemplating

18  filing a very small side brief to address the issues that are

19  unique to Keller Williams.

20          MR. BIERIG:  But in any event, we're going to try

21  really hard not to make your Honor read duplicative material.

22          THE COURT:  Okay.  And there is a 15-page limit on

23  briefs.

24          MR. BIERIG:  We may to need to ask your Honor for a

25  few additional pages given all the defendants, but we're

1  going to try very hard to be no more than 20 and hopefully

2  15.

3      THE COURT:  Okay.  Here's what I would like,

4  because I would like to know how much material I'm going to

5  get, so rather than waiting until you file your brief to ask

6  for the additional pages, figure out how you're going to

7  divide up this responsibility, how many briefs I'm going to

8  get, and how many pages you need.  File any request for

9  additional pages by May 15th -- well, let me actually make

10  sure that I will have time to look at and rule on it so that

11  you can adjust.  Your brief is due the 17th.  By May 13th.

12      I will look at it quickly when it's filed so that

13  you'll have a few days if you need to adjust to my rulings.

14  Just be reasonable.  As long as you're reasonable, I would

15  expect -- since I know that it's contemplated to have sort of

16  two sets of briefing, so if the National Association of

17  Realtors needs more than 15, you can do your own.  If the --

18  we're calling them the franchise defendants?

19      MS. LAZAR:  That works.

20      THE COURT:  If you have a single request for how

21  many pages you need, that can incorporate the fact.  If there

22  are going to be five briefs, please let me know.  I think I'm

23  pretty reasonable in granting excess pages as long as the

24  parties are reasonable in return.

25      So just make a reasonable request for what you

1  need, and I'm sure we'll be fine.  But I would like to know

2  in advance what I'm getting and also be able to give you some

3  guidance in advance, so please do file that by the 13th if

4  you need more than 15 pages.

5           MR. BIERIG:  That's very fair, and we'll do that,

6  your Honor.

7           THE COURT:  Okay.  Good.  I'll look forward to

8  seeing you at the end of May.

9       (End of proceedings.)

10              C E R T I F I C A T E

11

12      I certify that the foregoing is a correct transcript

13  from the record of proceedings in the above-entitled case on

14  April 25, 2019.

15

16

17

18  /s/Colette M. Kuemmeth___
         Court Reporter

19

20

21

22

23

24

25