```
1        IN THE UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF ILLINOIS
2                  EASTERN DIVISION

3   CHRISTOPHER MOEHRL, on behalf  )  No. 19 C 1610
    of himself and all others      )
4   similarly situated, et al.,    )
                                   )
5              Plaintiffs,         )
                                   )
6          -vs-                    )
                                   )
7   THE NATIONAL ASSOCIATION OF    )
    REALTORS, et al.,              )  Chicago, Illinois
8                                  )  February 19, 2020
               Defendants.         )  12:30 p.m.
9
               TRANSCRIPT OF PROCEEDINGS
10      BEFORE THE HONORABLE ANDRE R. WOOD

11  APPEARANCES:

12  For the Plaintiffs:      SUSMAN GODFREY, LLP
                             1201 Third Avenue,
13                           Seattle, Washington  98101
                             BY:  MS. BEATRICE FRANKLIN
14
                             COHEN, MILSTEIN, SELLERS & TOLL PLLC,
15                           1100 New York Avenue, NW,
                             Washington, DC  20005
16                           BY:  MR. KIT A. PIERSON
                                  MR. ROBERT A. BRAUN
17
                             HAGENS BERMAN SOBOL SHAPIRO LLP,
18                           455 North Cityfront Plaza,
                             Suite 2410,
19                           Chicago, Illinois  60611
                             BY:  MS. WHITNEY K. SIEHL
20
    For Defendant National
21  Association of Realtors:  SCHIFF HARDIN LLP,
                             233 South Wacker Drive, Suite 7100,
22                           Chicago, Illinois  60602
                             BY:  MR. JACK R. BIERIG
23

24       Patrick J. Mullen, Official Court Reporter
            219 South Dearborn Street, Room 1412,
25               Chicago, Illinois  60604
                      (312) 435-5565
```

APPEARANCES: (Continued.)

For Defendant Realogy:     MORGAN, LEWIS & BOCKIUS LLP
                           77 West Wacker Drive,
                           Chicago, Illinois  60601
                           BY:  MR. KENNETH M. KLIEBARD

                           MORGAN, LEWIS & BOCKIUS LLP
                           101 Park Avenue,
                           New York, New York  10178
                           BY:  MS. STACEY ANNE MAHONEY

For Defendant
HomeServices:              BARNES & THORNBURG LLP
                           One North Wacker Drive,
                           Chicago, Illinois  60606
                           BY:  MS. DENISE A. LAZAR

                           BARNES & THORNBURG LLP
                           11 South Meridian Street,
                           Indianapolis, Indiana  46204
                           BY:  MR. ROBERT D. MACGILL

For Defendant Re/Max:      JONES DAY
                           77 West Wacker Drive,
                           Chicago, Illinois  60601
                           BY:  MS. PAULA W. RENDER

For Defendant Keller
Williams Realty:           HOLLAND & KNIGHT, LLP
                           150 North Riverside Plaza,
                           Suite 2700,
                           Chicago, Illinois  60606
                           BY:  MR. TIMOTHY RAY
                                MR. MARTIN G. DURKIN

                           HOLLAND & KNIGHT LLP,
                           800 17th Street, NW, Suite 1100,
                           Washington, DC  20630
                           BY:  MR. DAVID C. KULLY

1          THE CLERK:  19 CV 1610, Moehrl versus National
2     Association of Relators.

3          THE COURT:  Okay.  Let's start at this end with
4     appearances and work our way across.

5          MR. BRAUN:  My name is Robert Braun with Cohen
6     Milstein for the plaintiffs.

7          MS. FRANKLIN:  Good afternoon, Your Honor.  Beatrice
8     Franklin from Sussman Godfrey on behalf of the plaintiffs.

9          MR. PIERSON:  Good afternoon.  Kit Pierson from Cohen
10    Milstein for the plaintiffs.

11         MS. SIEHL:  Good afternoon, Your Honor.  Whitney Siehl
12    from Hagens Berman for the plaintiffs.

13         MR. BIERIG:  Good afternoon, Your Honor.  Jack Bierig
14    from Schiff Hardin for defendant National Association of
15    Realtors.

16         MR. RAY:  Timothy Ray, Your Honor, on behalf of
17    defendant Keller Williams.

18         MR. KLIEBARD:  Good morning, Your Honor.  Ken Kliebard
19    of Morgan Lewis on behalf of defendant Realogy.

20         MS. MAHONEY:  Good morning, Your Honor -- or good
21    afternoon, Your Honor.  Stacey Anne Mahoney also of Morgan
22    Lewis on behalf of defendant Realogy.

23         MR. MACGILL:  And Rob Macgill on behalf of the
24    HomeServices of America defendants.

25         MS. LAZAR:  Denise Lazar also for the HomeServices

1  defendants.

2        MS. RENDER:  Paula Render on behalf of Re/Max.

3        MR. KULLY:  David Kully for Keller Williams.

4        MR. DURKIN:  Martin Durkin also for Keller Williams.

5        THE COURT:  Okay.  Good afternoon and thank you for

6  your patience.  I think we had set it at this time because I

7  knew I would be having a criminal trial going on.  I do, and we

8  ran a little bit late in getting to our lunch break.  So thank

9  you for your patience while we wrapped up a witness and cleared

10  out the courtroom so that we would have room for all of you.

11        Let's start with updates on what has transpired since

12  the parties were here last.  Who would like to take the lead?

13        MR. PIERSON:  I'm happy to start and give you a

14  highlight and a little more detail for how I see what's going

15  on.  As you know, in the Sitzer case the defendants' motion to

16  dismiss was denied and discovery is going forward in that case.

17  Per the last status conference, we have been coordinating with

18  the Sitzer plaintiffs and with the defendants, and I think it's

19  fair to say a reasonable amount of progress has been made,

20  probably the amount of progress one would hope.

21        So where the parties are at a high level is we're

22  going through the process of exchanging search terms,

23  exchanging custodians, discussing the scope of requests.  My

24  sense, Your Honor -- and defendants can give their own

25  perspective -- is that we can continue to make progress on that

1   front for perhaps another month, and then at some point in

2   these negotiations you sort of reach an impasse where you agree

3   or disagree.  My guess or my sense is that there's probably

4   another month or so of negotiations ahead of us, and then we're

5   going to hit that point where it's going to be very hard to

6   make further progress until the discovery door is open.

7           MR. BIERIG:  You might want to add that you also

8   caused several third party subpoenas to be issued.

9           MR. PIERSON:  We did.  We have issued third party

10  preservation subpoenas per the discussion in court last time.

11          THE COURT:  All right.  So have documents been

12  produced pursuant to those subpoenas?

13          MR. PIERSON:  No, they're just preserving them.  We

14  have been clear to them that they have no obligation to produce

15  documents.  Now, there is discovery from some of those third

16  parties in the Sitzer action, so the Sitzer plaintiffs are

17  moving forward.  We told them all they need to do is preserve

18  documents.

19          THE COURT:  Okay.

20          MR. BIERIG:  You have specified with great

21  particularity what the documents are.  These are

22  multi-specification subpoenas that were issued to I think at

23  least 18 third parties.

24          MR. PIERSON:  Actually, I think actually 23, 23 third

25  parties.  There are 20 MLS in the case, and absolutely we have

1  specified the documents we want preserved, as they would expect
2  us to do.

3  MR. BIERIG:  And there are numbers of documents called
4  for, huge amounts of documents.

5  THE COURT:  Okay.  I don't have a third party coming
6  in front of me to say that preserving a large volume of
7  documents is an undue burden.  They certainly could.  I have
8  heard of parties objecting to even document preservation
9  subpoenas as overbroad if they're asking for a large volume of
10  documents that would not normally be retained to be retained.
11  I haven't received anything along those lines, so I have to
12  assume that the subpoena is being followed and that nobody is
13  claiming any undue burden.  I will make sure that the pending
14  well-briefed motions in front of me are all decided within that
15  month period --

16  MR. PIERSON:  Thank you, Your Honor.

17  THE COURT:  -- so that you will be able to work out
18  and make sure you're on the right track as appropriate for
19  whatever the scope of this case is vis-a-vis the other case.
20  So that's sort of the status of the motions that are in front
21  of me.  That's the status of your discovery.

22  I haven't heard any word of any possibility of a
23  settlement or a resolution among any group of parties here
24  perhaps globally or not with the other case.

25  MR. PIERSON:  Well, I think if I may just comment, I

1  mean, I think realistically, Your Honor, you know, I was struck

2  as I was on the airplane coming out here that a current article

3  in the Economist Magazine has an article about real estate.

4  It's entitled The Real Estate Racket, and it talks about the

5  $75 billion that consumers are paying every year for these

6  commissions.  So I think in all frankness I'm always happy to

7  discuss settlement.  We're happy to discuss settlement, but I

8  think this is a case where there's enough at stake that we're

9  going to need to get well into the discovery.

10  The one other item I would mention is that we have

11  reached an understanding with Keller Williams which is relevant

12  to discovery which Mr. Ray can explain whenever it's

13  appropriate.

14  THE COURT:  Okay.  Go ahead.

15  MR. BIERIG:  And I appreciate Mr. Pierson arguing his

16  case about the $75 billion racket, as he called it, so I'm

17  assuming that we'll ignore that.  But I should advise the Court

18  that the court in Kansas City has set up a mediation for

19  possible resolution of that case which I believe is tentatively

20  scheduled for April 14th.

21  THE COURT:  And is there anything that you think would

22  be appropriate for me to do here to help facilitate the

23  possibility that there might be a global resolution?

24  MR. BIERIG:  I don't think so at this point, Your

25  Honor.  You know, we want to sit down with the plaintiffs in

1  the Sitzer case and see what they're thinking.  I can assure

2  you that the defendants are going to approach the mediation in

3  good faith.

4          THE COURT:  Is it with a magistrate judge --

5          MR. BIERIG:  No.

6          THE COURT:  -- or a district judge or a third party?

7          MR. BIERIG:  No, it will be a third party, former

8  Judge Brown.

9          THE COURT:  And was that by agreement of the parties

10  in that case?

11          MR. BIERIG:  Yes, it was.

12          THE COURT:  Okay.

13          MS. RENDER:  It was court ordered.

14          MR. PIERSON:  Yeah, the Court directed the parties to

15  engage in mediation.  I'm just being frank with Your Honor.

16  You know, we're basically happy to engage in mediation.  You

17  know, most of these cases settle and most of these cases should

18  settle, and that's certainly the perspective we bring to it, if

19  possible.  It's just I've been doing this for 35 years, and my

20  instinct, given just where the case is, a pending motion, no

21  discovery yet, my only instinct would be that it would be quite

22  premature now.  But if we were ever directed to participate or

23  when we think it's appropriate, we'll absolutely proceed

24  zealously and in good faith.

25          THE COURT:  What's the date of the mediation with the

1  Kansas City case?

2          MR. BIERIG:  April 14th.

3          THE COURT:  And it's with a private third-party

4  mediator?

5          MR. BIERIG:  Yes, Your Honor, a former federal judge.

6          THE COURT:  And so the court order from that case was

7  for you to engage in mediation.  Did the Court select the

8  mediator for you?

9          MR. BIERIG:  No, the parties.  What I meant to say

10  earlier is the court ordered it but the parties selected a

11  mediator.

12          THE COURT:  Okay.

13          MS. RENDER:  If I could just to add to that, the court

14  has a routine procedure for all cases that requires mediation

15  to take place very early in the case, and so the court directed

16  us to follow that standing procedure.

17          THE COURT:  Okay.  Who bears the costs, or who will

18  bear the costs of the mediator?  Presumably a third-party

19  mediator is being paid.  Is it paid by the court as part of the

20  court program, or is this a program where the parties bear the

21  costs?

22          MR. BIERIG:  He will be paid by the parties.  How it

23  will be allocated by the parties remains to be seen, but he

24  will be paid by the parties.

25          THE COURT:  Okay.  So in case it comes up, my first

1  option in getting parties to certainly court-ordered mediation

2  is to make use of our magistrate judges who are all very

3  accomplished mediators actually and put a good amount of time

4  into cases that require the effort.  It would not usually be my

5  practice to order parties to go to a mediation that would

6  require the parties to bear the costs of a private mediator.

7  If the parties were in agreement that that's what they wanted

8  to do and they wanted the Court to decide how the costs should

9  be allocated or something like that, that might be a different

10  situation.

11          So I just sort of put that out there as a first option

12  to the parties.  Parties have come to me sometimes in

13  complicated cases and said that they want to do private

14  mediation and ask are there suggestions for people that might

15  be appropriate for that type of case.  That's the kind of thing

16  I may be able to help with if and when we get to that stage.

17          Otherwise, frankly, if this case seems after the

18  motions are decided to be ripe for a settlement conference, I

19  may send you to have a discussion with our mediator, our

20  magistrate judge mediator, I should say, who I think has quite

21  a bit of experience in cases of this sort of complexity.

22          What else should I know about what has happened?

23  Otherwise, we can discuss a timeline and the next steps.

24          MR. RAY:  Yes, Your Honor.  As of January 31, there

25  was an amended scheduling order that was issued in Sitzer, and

1  I have a copy of it if Your Honor would like to see it.

2  THE COURT:  If you have a copy, you can hand up it to
3  Enjoli.  Let's provide a -- is there a docket number or
4  something so that the other parties know what you've handed me?

5  MR. RAY:  Document 203.

6  THE COURT:  Okay.

7  MR. RAY:  So, Your Honor, in light of that amended
8  scheduling order in Sitzer, I'd like to represent the Keller
9  Williams' position.  The time constraints that we were under
10  are now materially different.  When we were here last and
11  facing motions for class certification in August of this year,
12  we all agreed that it would likely be impossible to try to
13  align the cases, but this extension changes that.

14  The Moehrl plaintiffs have now participated in all the
15  Sitzer meet-and-confers and have been involved in all
16  meaningful discovery conversations and decisions in Sitzer.
17  The Moehrl plaintiffs have propounded discovery requests that
18  we have answered.  Those requests overlap substantially with
19  the requests propounded by the Sitzer plaintiffs.

20  We are currently undertaking the effort of gathering
21  discovery in Sitzer, and we believe that because of the overlap
22  we should be able to to collect documents in response to both
23  sets of requests for production through one collection.  By
24  doing so, we also see an opportunity to minimize the need for
25  two depositions of our representatives.

1  I think it should be noted that Keller Williams is
2  situated differently than some of the defendants that are up
3  here.  We are a franchise company, so the burden on us would be
4  different than some of the other defendants in terms of
5  collecting discovery.

6  THE COURT:  Because there's not a centralized system?
7  MR. RAY:  Because there is a centralized system and
8  because we don't have any company-owned brokerages.

9  In recognizing this possibility, we've met and
10  conferred with plaintiffs, as was referred to earlier.  We've
11  met with plaintiffs' counsel in Moehrl, and we have the plan in
12  place concerning various aspects of discovery and know how we
13  would like to proceed.

14  Although we supported the stay the last time we were
15  in court, we now view the amendment of the Sitzer scheduling
16  order as a material change in circumstances that presents an
17  opportunity to try to streamline some aspects of the two cases
18  and align our discovery efforts.

19  THE COURT:  On that point, I see that it looks like
20  the class certification schedule, so discovery related to class
21  certification is now --

22  MR. RAY:  February of 2021.
23  THE COURT:  So a year from now.
24  MR. RAY:  Correct.
25  THE COURT:  So what is it that motivated the amendment

1  of the schedule?

2  MR. PIERSON: I think they -- you know, we're in

3  communication with the Sitzer plaintiffs, and we've been open

4  about that with the defendants. I think they correctly

5  concluded and I think both sides correctly concluded down there

6  that getting that discovery going in August or by August of

7  this summer was just not realistic. So they have basically, as

8  I understand it, they basically have pushed their schedule back

9  by six months with the court's concurrence.

10  THE COURT: Okay.

11  MR. RAY: That's correct.

12  THE COURT: Okay. I didn't mean to divert things a

13  bit, but I wanted to make sure I understood kind of why we are

14  getting to this change in the schedule. Go ahead and let me

15  know why your position has changed. You now think that it's

16  possible to coordinate, and you've discussed a way forward with

17  other parties?

18  MR. RAY: We have.

19  THE COURT: And is everybody in agreement?

20  MR. BIERIG: No.

21  MR. RAY: Well, let me just finish, Your Honor.

22  THE COURT: I guessed that from your expression as he

23  was making his pitch.

24  MR. RAY: I just want to state for the record that at

25  this time we withdraw our support for the stay as to Keller

1  Williams, and we request the Court to allow the discovery to
2  proceed against Keller Williams.

3          THE COURT:  Interesting.  Okay.  Are there other
4  defendants that similarly are open to allowing discovery to
5  stay -- or the stay to be lifted as to their particular
6  clients?

7          MS. MAHONEY:  To the contrary, Your Honor.

8          THE REPORTER:  Could everyone state their names when
9  they speak?  Thank you.

10         MS. MAHONEY:  Stacey Anne Mahoney on behalf of
11 Realogy.  To the contrary, Your Honor, Keller Williams finds
12 itself singularly situated as a defendant who is willing to
13 continue to go forward with discovery in this case despite the
14 stay of discovery.  In fact, what we really think is that the
15 stay of discovery should be in place and continue to be in
16 place.

17         We very much appreciate the Court's suggestion that
18 the motions to dismiss will be able to be addressed within the
19 next month.  We still feel very strongly that our motions are
20 very sound and that either they will eliminate the need for
21 discovery in this case altogether or they will sculpt it in a
22 way that will be meaningfully different from the defendants'
23 perspective.

24         The discovery in these cases, Your Honor, is
25 substantially different.  It's substantially different in the

1   ways that the plaintiffs originally argued in order to defeat

2   the motion to transfer, and now that we've actually seen the

3   plaintiffs' request for discovery in this case and the

4   plaintiffs' requests for discovery in the Kansas City case, we

5   can see with some greater degree of specificity what the

6   differences are, not only as to the parties' discovery but the

7   third-party discovery which is vastly different and was one of

8   the things we talked about with you, Your Honor, the last time

9   we were before you.

10          So what we'd like if you are inclined at all to think

11  about lifting the stay of discovery for any entity other than

12  Keller Williams on the defense side, we would really very much

13  like an opportunity to brief these issues for Your Honor.

14  We've actually now briefed this several times and we've had

15  argument on this issue several times, so what we will be able

16  to share with you is new and additional facts that are actually

17  grounded in where the discovery is in each of these cases.

18          But, no, the other defendants are not at all onboard

19  with this idea that the discovery stay should be lifted,

20  especially and particularly in light of Your Honor's suggestion

21  that the motions to dismiss might be able to be resolved within

22  the next month or so.

23          THE COURT:  So hopefully we can avoid additional

24  briefing on this issue, is there prejudice to the other

25  defendants if I carved out an exception to the stay just for

1  Keller Williams?

2       MS. RENDER:  I don't believe there is, Your Honor.
3  Paula Render for Re/Max.

4       MR. MACGILL:  Rob Macgill for HomeServices.  So long
5  as your stay remains in place as to the other defendants, no,
6  we don't see any reason that this could not go forward as to
7  Keller Williams.  But I would like to echo one of the things
8  that was indicated by Ms. Mahoney, and that is that we're a
9  month away, it sounds like, from a ruling that's going to
10  define the case in material ways, and making a change now does
11  not seem to be reasonable.

12       What I hear as a theme, what Mr. Ray said is that
13  perhaps there's been an accommodation vis-a-vis his client
14  individually in that there may be a single deposition if he
15  lifts his stay as to his client.  Well, that's his business and
16  their business, but taking apart the stay for the reasons
17  stated to us does not make sense in the context of what the
18  Court has planned.

19       Furthermore, with respect to the HomeServices
20  defendants, to suggest in the initial presentation to you here
21  this afternoon, Your Honor, that these cases are similar is
22  just not correct as far as HomeServices is concerned.  If it's
23  going to be visited, we'd like a chance to brief it and
24  describe why these are two materially different cases.

25       But that's a long way of saying that we would ask that

1 the stay be in place, that we wait a month to see how things

2 go, and let the Court get a chance to make the decision.

3 By our calculations -- and we went through the docket

4 somewhat carefully from the HomeServices perspective -- this is

5 the fifth time that the plaintiffs through this new approach to

6 Mr. Ray of making some discovery accommodation, this is the

7 fifth time in this court where we addressed the stay issue.

8 THE COURT: Which is why I don't want any further

9 briefing.

10 MR. PIERSON: Yeah, Your Honor. If I can make a --

11 THE COURT: I've got plenty of briefing on the merits

12 to actually read and address.

13 MR. PIERSON: Of course you did, Your Honor,

14 absolutely. If I could just make a couple comments, first I

15 don't think it will bother Mr. Ray to have me say this, but we

16 were approached by Keller Williams who thought that the stay --

17 you know, Mr. Ray has articulated it adequately for his client.

18 He didn't think the stay made sense at least for his client

19 anymore. So it's not that we were trying to bang on the issue

20 again, but we were approached and had very constructive and

21 professional conversations and agreed at the end of the day

22 that there was a way to move forward with regard to them.

23 I think there's no reason to lift the stay as to them

24 because, you know, why not start making progress where the

25 plaintiffs want to do it and the defendant isn't objecting and

1  other defendants are raising objections. You know, it is our

2  view -- and I don't think the issue needs to be re-briefed. It

3  is our view of the stay that, you know, our goal is to move

4  this case as quickly as possible for everybody.

5  We think the court in Missouri was absolutely right

6  about the motion to dismiss and so, you know, as you know, we

7  think the stay should be lifted. But, you know, I really

8  appreciate the fact that Your Honor says we're going to have a

9  relatively prompt ruling on the motion to dismiss, and then the

10  issue of what discovery goes forward, we can take it up then.

11  THE COURT: Is Keller going to provide copies of all

12  the discovery here to the other defendants as well, or is that

13  already happening because of the other case?

14  MR. RAY: We're all sharing information that's being

15  provided with the others and, yes, we would be happy to do

16  that. Let me just make one other point, because it was said

17  that somehow we're being used by the plaintiffs to advance

18  their point. Nothing could be further from the truth. What we

19  are doing today is what we believe is in the best interest of

20  our client in light of the work, the substantial amount of work

21  that is already going on in both of these cases. So I just

22  want to be clear about that. This is in the best interest of

23  Keller Williams, not because we're being prodded to do so by

24  the plaintiffs.

25  MS. RENDER: Your Honor, may I clarify something?

1 Maybe I'm the only one who's thinks this. It's entirely

2 possible. I'm Paula Render for Re/Max. Defendants are not

3 sharing any productions or documents from Moehrl, for the

4 Moehrl case. When we produce documents in Sitzer, then we are

5 sharing them among ourselves, and we are producing at least

6 part of that to the plaintiffs as well. But I just wouldn't

7 want Your Honor to think that we were producing documents among

8 ourselves in Moehrl.

9           MR. RAY: That's correct.

10          THE COURT: Yes. What I understood -- and I think it

11 was in response to my question which referenced the existence

12 of the other case -- was because there's discovery ongoing

13 there the productions from Keller would be available to the

14 other parties in any case.

15          MR. RAY: Right, and that's what I took it to mean,

16 correct.

17          MS. RENDER: Thank you, Your Honor.

18          THE COURT: Okay. So under these circumstances I

19 don't see a compelling reason not to allow discovery to proceed

20 with respect to Keller Williams. There's no objection from

21 Keller. This is from their perspective sort of an economy of

22 scale type issue. They're producing a lot. They're already

23 doing it once. They want to be able to avoid having to do it a

24 second time. It does not seem like it's going to impose any

25 undue burdens on any of the other parties, so I think that it

1    make sense.

2            In any case, I expect that by the time we get

3    certainly to the end of March you'll know my ruling.  Then I'll

4    probably have you back in around that time, and we'll be

5    discussing a more fulsome discovery plan here anyway, perhaps

6    one that aligns with the new schedule which does look more

7    reasonable to me than what I recall the original schedule was.

8    As you know, I had some --

9            MR. PIERSON:  Reservations.

10           THE COURT:  -- skepticism at how quickly the schedule

11   that was originally imposed had the parties getting to class

12   certification and other issues.  It looks like there's a little

13   more reasonable breathing room in the new schedule.

14           So it will be reflected in the order that the stay is

15   lifted, and it's limited just to Keller Williams.  Does that

16   mean that there is a corporate deposition in the works?  That

17   is the one thing that potentially could make everybody else do

18   a significant amount of work if they have to prepare to attend

19   and hear what your person says.

20           MR. RAY:  No.

21           THE COURT:  Okay.

22           MR. PIERSON:  And what I would say is we reached an

23   understanding about how we'll go forward with depositions, but

24   I wouldn't anticipate a deposition of Keller Williams, you

25   know, unless there's some unforeseeable reason why we might

1   want to do it.  You know, with regard to Keller Williams, we're

2   presumably going to look at their documents first, and that's

3   going to take awhile.

4           (Discussion off the record.)

5           MS. MAHONEY:  And, Your Honor, this may be putting the

6   cart before the horse and more appropriate to discuss in detail

7   the next time we get together, but I will suggest to you on

8   behalf of the defendants that it continues to be unlikely that

9   there is any way that discovery in this case, which is a much

10  broader scope than the Sitzer case, could be completed on the

11  Sitzer schedule even with that extension.  So I just wanted to

12  suggest that to you, Your Honor, because I think you indicated

13  maybe we could get it all done according to that schedule, and

14  I think that that's not a meaningfully likely outcome.

15          So I appreciate what Keller Williams has accomplished

16  for its client here today, but that kind of complete

17  coordination, I think, Your Honor, is not what's going to be

18  able to be accomplished here.  So that's just to share that

19  with you, Your Honor, because you had voiced a thought in the

20  other direction.

21          THE COURT:  You'll have an opportunity to make that

22  argument when we put the schedule in place.

23          Okay.  Good.  I'm glad the parties are making

24  progress.  I will set a date for us to gather again, and I'm

25  working around another trial.  I'm going to suggest Friday,

1  April 10th, 9:00 o'clock.

2          MR. BIERIG:  My birthday.

3          MR. PIERSON:  I'll bring the cake.

4          MR. RAY:  You said 9:00 o'clock?

5          THE COURT:  9:00 o'clock.  So I'm setting it apart

6  from my normal status schedule to make sure we have adequate

7  time to discuss it.

8          MR. BRAUN:  Your Honor, it's my understanding that

9  that day is Passover, actually.

10          THE COURT:  Oh, okay.

11          MR. BRAUN:  So I think that may be an issue that

12  affects, you know, multiple attorneys in the case, though I

13  don't know if that's true.

14          THE COURT:  We can put it someplace else if it imposes

15  a conflict.

16          MR. RAY:  And I would just also add because we're

17  likely to have the mediation the following week, perhaps we

18  could do it the week after that.

19          THE COURT:  After the mediation?

20          MR. RAY:  Correct.

21          THE COURT:  Because you'd like to see how that

22  mediation goes.

23          MR. RAY:  Perhaps, yes.

24          THE COURT:  Okay.  And the mediation is April?

25          MR. RAY:  14th.

1       THE COURT:  The 14th?  I could see the parties, I
2   think, on April 16 sort of mid-morning or the 17th at 9:00
3   o'clock.

4       MR. PIERSON:  Either would be fine with us, Your
5   Honor, whatever works for you and the defendants.

6       MR. RAY:  Either is fine with us as well.

7       MR. KLIEBARD:  I have a slight preference for
8   Thursday, but I don't want to --

9       MR. RAY:  That's fine.

10      THE COURT:  Okay.  Enjoli, let's find a separate time
11  for them on Thursday, April 16?

12      THE CLERK:  And how long or how much time?

13      THE COURT:  Let's allow a half-hour slot, so we're
14  probably talking about a 10:30 or 11:00 time.

15      THE CLERK:  Let's do 4/16 at 11:00.

16      THE COURT:  Okay, April 16th at 11:00 a.m.  At the
17  time I issue the opinion on the pending motions, I may also lay
18  out a little agenda for items that I would like to cover at
19  that hearing, and at that time if other parties want to add
20  things to the agenda you can do so.

21      MR. PIERSON:  Okay.

22      THE COURT:  Okay.  Thank you.

23      MR. PIERSON:  Can I raise one thing quickly, Judge?
24  One of my colleagues who is always sharper than me at these
25  meetings, one of the topics on which he felt there might be

1    some uncertainty is it's possible there are going to be some
2    depositions that would go forward in the Sitzer action.  I
3    don't know that that's the case, but it's possible.  I think
4    our understanding has been -- well, I don't want to overstate
5    it.  I think the question is this.  If they start going forward
6    with some depositions there, can we attend and participate in
7    some way if the depositions are already going forward?  I
8    thought maybe.  That may not happen in the next two months.

9         THE COURT:  I believe the prior ruling was that was
10   not part of the limited coordination that was ordered.
11   Certainly if I were going to revisit the issue, which again I'm
12   really not inclined to do since we've already discussed the
13   stay multiple times, I'd be most concerned with hearing what
14   plaintiffs in the other case thought about that, if having
15   another group come and sit in on depositions does materially
16   affect things and might throw off timing with so many parties.
17   I assume there's some sort of an understanding as to allocation
18   of time, length of depositions, things like that, and throwing
19   in another plaintiff group would seem to me to alter that
20   landscape.

21        MR. PIERSON:  Well, fair enough.  Maybe it's a
22   hypothetical that may not happen.  My guess is the Sitzer
23   plaintiffs would be more than happy to have us there, but maybe
24   we just -- the issue has been raised a lot.  If we can't work
25   it out with them and we feel like we really need to raise it,

1  we will, but we'll try not to.

2  THE COURT:  Yes, try not to.  If you do need to raise

3  it, go ahead and file a motion.  One way to approach motion

4  practice on things like that to avoid prolonging the

5  decisionmaking is if you file a single document that lays out

6  the various positions of the parties, you know, where it's not

7  the type of thing where I would expect to need a lot of legal

8  argument, so it's really just a matter of here are the various

9  positions of the parties, that's the kind of thing that can be

10  decided in one short hearing without additional briefing.

11  MR. PIERSON:  Okay.

12  THE COURT:  Okay.  We're adjourned unless there's any

13  other issue.

14  MR. BIERIG:  One other thing, Your Honor.  As the

15  Court is considering the motions to dismiss, if the Court has

16  any questions, we're happy to come in and try to answer any

17  questions the Court may have as you consider what we regard as

18  a very substantive motion to dismiss.

19  THE COURT:  I appreciate that.  Thank you.

20  MR. PIERSON:  Thank you, Your Honor.

21  MR. BIERIG:  Thank you, Your Honor.

22  MR. RAY:  Thank you, Your Honor.

23  MS. MAHONEY:  Thank you, Your Honor.

24  THE COURT:  We're adjourned.

25  (Proceedings concluded.)

1                    C E R T I F I C A T E

2              I, Patrick J. Mullen, do hereby certify that the

3    foregoing is a complete, true, and accurate transcript of the

4    proceedings had in the above-entitled case before the Honorable

5    SARA L. ELLIS, one of the judges of said Court, at Chicago,

6    Illinois, on February 19, 2020.

7

8                         */s/ Patrick J. Mullen*
                         Official Court Reporter
9                         United States District Court
                         Northern District of Illinois
10                        Eastern Division

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25