# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, VALERIE NAGER, JACK RAMEY, DANIEL UMPA, and JANE RUH, on behalf of themselves and all others similarly situated, ) ) ) ) ) ) )  Plaintiffs, ) ) ) v. ) ) THE NATIONAL ASSOCIATION OF ) REALTORS, REALOGY HOLDINGS ) CORP., HOMESERVICES OF AMERICA, ) INC., BHH AFFILIATES, LLC, HSF ) AFFILIATES, LLC, THE LONG & ) FOSTER COMPANIES, INC., ) RE/MAX LLC, and KELLER ) WILLIAMS REALTY, INC., ) )  Defendants. ) | Case No: 1:19-cv-01610  Judge Andrea Wood |

## JOINT STATUS REPORT

Pursuant to the Court's Order (Dkt. 185, dated October 2, 2020), Plaintiffs Christopher Moehrl, Michael Cole, Steve Darnell, Valerie Nager, Jack Ramey, Daniel Umpa, and Jane Ruh, on behalf of themselves and all others similarly situated ("Plaintiffs"), and Defendants The National Associate of Realtors®, Realogy Holdings Corp., HomeServices of America, Inc., BHH Affiliates, LLC, The Long & Foster Companies, Inc., RE/MAX LLC, and Keller Williams Realty, Inc. ("Defendants") (collectively, the "Parties") respectfully submit this Joint Status Report setting forth the Plaintiffs' and Defendants' respective proposed case schedules and informing the Court as to outstanding issues the Parties wish to discuss at the next status hearing on November 2, 2020.

## I. PROPOSALS FOR CASE SCHEDULE

Though the Parties met and conferred in good faith to attempt to devise an agreed proposed case schedule, the Parties were unable to reach agreement on several issues that drive the case schedule through completion of discovery, class certification, and dispositive motions. Therefore, the Parties set forth their proposals as follows, and an explanation of the Parties' respective positions follows the below table:

| Pltfs' Event | Pltfs' Proposed Date | Defs' Event (if different) | Defs' Proposed Date |
|---|---|---|---|
| Parties serve Rule 26(a) disclosures | 11/16/2020 | | Same |
| Answers | 11/16/2020 | | Same |
| Parties agree to ESI terms/custodians, or submit disputes to court | 12/07/2020, including any dispute re. obligation to produce franchisee discovery | | 1/8/2021 |
| Completion of defendants' production of transactional data responsive to plaintiffs' first set of RFPs (25, 30, 36) | 2/26/2021 | | 7/01/2021 |
| Completion of document productions responsive to each party's first set of RFPs | 4/09/2021 | | 8/01/2021 |
| Filing of plaintiffs' motions for class certification and class expert reports | 11/12/2021 | | 1/15/2022 |
| Filing of defendants' responses on class certification, class expert reports, and *Daubert* motions on class certification experts | 1/21/2022 | | 3/30/2022 |

| Pltfs' Event | Pltfs' Proposed Date | Defs' Event (if different) | Defs' Proposed Date |
|---|---|---|---|
| Filing of plaintiffs' reply briefs on class cert; rebuttal class expert reports; opposition to *Daubert* on defendants' class experts | 3/18/2022 | | 5/15/22 |
| Filing of defendants' *Daubert* reply on plaintiffs' class experts, *Daubert* opposition on defendants' class experts | 4/15/2022 | | 6/15/2022 |
| Filing of plaintiffs' *Daubert* reply on defendants' class experts | 5/13/2022 | | 7/15/2022 |
| | | Class Certification Decision | TBD |
| Fact Discovery Closes | 6/24/2022 | | 45 days > Class Certification ("CC") Order |
| | | Filing of Plaintiffs' Expert Reports | 90 days > CC Order |
| | | Filing of Defendants' Expert Reports | 155 days > CC Order |
| | | Filing of Plaintiffs' Rebuttal to Expert Report | 200 days > CC Order |
| Filing of defendants' dispositive motions and merits expert reports | 8/19/2022 | Filing of all Dispositive Motions and *Daubert* Motions | 275 days > CC Order |

| Pltfs' Event | Pltfs' Proposed Date | Defs' Event (if different) | Defs' Proposed Date |
| --- | --- | --- | --- |
| Filing of plaintiffs' dispositive motions, merits expert reports, opposition to defendants' dispositive motions, *Daubert* motions on defendants' merits experts | 10/14/2022 | Filing of all Oppositions to Dispositive Motions and *Daubert* Motions | 345 days > CC Order |
| Filing of defendants' reply in support of their dispositive motions, opposition to Plaintiffs' dispositive motions, reply merits expert reports, *Daubert* oppositions on defendants' experts, *Daubert* motions on plaintiffs' merits experts | 11/11/2022 | Filing of all Reply Briefs on Dispositive and *Daubert* Motions | 420 days > CC Order |
| Filing of plaintiffs' reply in support of their dispositive motions, reply expert reports, *Daubert* replies on defendants' experts, *Daubert* opposition on plaintiffs' experts | 12/09/2022 | | |
| Filing of defendants' *Daubert* replies on plaintiffs' experts | 1/9/2023 | | |
| | | Summary Judgment Decision | TBD |
| | | Supplemental Expert Reports if warranted in Response to Summary Judgment Order | TBD |

| Pltfs' Event | Pltfs' Proposed Date | Defs' Event (if different) | Defs' Proposed Date |
|---|---|---|---|
| Final pretrial conference | 3/3/2023 | Status Conference to set final dates | 21 days > Summary Judgment Order |
| Trial | 4/3/2023 | | TBD |

## II. PLAINTIFFS' ARGUMENTS FOR ADOPTION OF PLAINTIFFS' PROPOSED SCHEDULE

This case has been pending for nearly 19 months. During that time, millions of Americans have been subjected to thousands of dollars each in anticompetitive commission rates. Plaintiffs propose a schedule that sets realistic deadlines while also ensuring that Plaintiffs are able to obtain relief on a timely basis. *See* Fed. R. Civ. P. 1 ("[The Federal Rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). In contrast, if Defendants' schedule is adopted, this case is unlikely to be tried until 2026 (or later)—more than seven years after it was filed. Defendants' schedule would also result in duplicative briefing and expert submissions, creating unnecessary work for the parties and the Court and materially delaying the litigation's progress.

Among other shortcomings, Defendants' proposal fails to take into account that discovery in this case is not beginning on a blank slate. Plaintiffs served requests for production on January 10, 2020, and Defendants responded on February 10, 2020. Document discovery is nearly complete in the *Sitzer* action, where Defendants have already produced over 700,000 documents consisting of almost four million pages.[1] The vast majority of these documents are already available to Plaintiffs here. Additionally, Plaintiffs and the *Sitzer* plaintiffs jointly participated in many (though not all) discovery conferences, and were able to reach agreement on or narrow several significant discovery matters. Accordingly, the substantial progress already made in *Sitzer* informs the appropriate schedule here.

Plaintiffs address below each of the four primary areas on which the Parties disagree: (1) the deadline to submit disputes regarding custodians and/or franchisee discovery; (2) the deadlines for production of transaction data and documents; (3) whether to set firm deadlines for the close of discovery and dispositive motion practice; and (4) the structure and order of merits expert reports and dispositive motion deadlines.[2]

### A. Custodian/Franchisee Dispute Deadline

---

[1] The *Sitzer* case management schedule is attached as **Exhibit A**.

[2] In addition to these broader issues, Plaintiffs object to Defendants' inequitable proposal to afford Defendants' class certification expert(s) two-and-a-half months to analyze and address Plaintiffs' expert report(s) and backup, while confining Plaintiffs' expert(s) to a one-and-a-half month period for analyzing and addressing Defendants' expert report(s) and backup. Defendants' proposed merits report deadlines are similarly problematic.

5

The Parties have agreed on the search terms (and, for the HomeServices Defendants, TAR protocol) to be used in this case.[3] The Parties have also largely agreed on non-franchisee custodians, based on negotiations in *Sitzer* in which counsel for the *Moehrl* plaintiffs participated. Additional individual custodians for Realogy, RE/MAX, and HomeServices still need to be determined. But the Parties have already begun exchanging proposals and conferring on the remaining custodians, and Plaintiffs believe six additional weeks—until December 7, 2020— provides the Parties with ample time to reach resolution (or determine they are at an impasse and raise any dispute with the Court). Plaintiffs' proposed timeline would also allow any disputes to be resolved before the winter holidays, and would provide Defendants more than five months to collect and review additional custodial documents.

Plaintiffs also expect to seek through the Corporate Defendants targeted discovery from certain of their franchisees, based on discovery to date showing that the Corporate Defendants have possession, custody, or control of their franchisees' documents. If the Parties cannot reach agreement on this issue, Plaintiffs intend to seek a prompt resolution from the Court so that Defendants have sufficient time to produce franchisee documents (or, alternatively, Plaintiffs have sufficient time to seek such discovery from the franchisees directly). Again, December 7, 2020 is an appropriate deadline that strikes the balance between giving the Parties time to discuss these issues and resolving disputes early.

### B. Document/Data Production Deadline

As noted above, Defendants have already produced hundreds of thousands of documents that are relevant to this case. In fact, through these existing productions, NAR and Keller Williams have substantially completed the custodial productions they would need to make for *Moehrl*. The other Corporate Defendants primarily need to supplement their productions with discovery from the geographic regions at issue in *Moehrl*. Plaintiffs' proposed deadlines would reasonably afford each of the Defendants four months to collect and produce data and five months from the deadline for resolving ESI terms/custodian disputes to produce documents, consistent with case management schedules in similar complex antitrust actions.[4] In *Sitzer*, each Defendant largely completed production of documents for a presumptively larger set of custodians in a span of approximately six months.

The limited additional regional- or subsidiary-specific discovery does not warrant Defendants' proposed more than *nine* additional months (for transaction data) or *ten* months (for documents responsive to Plaintiffs' requests served in January 2020). For instance, Keller Williams has represented that it has already completed its production of transactional data for this

---

[3] With the limited exception of search terms to be applied to pre-2011 NAR documents.

[4] *See, e.g.*, Scheduling Order No. 2, *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-08637, ECF No. 574 (N.D. Ill. December 15, 2017) (ordering document production to be completed in seven months in antitrust class action involving more than 15 corporate defendant families and no prior production from a parallel case); Civil Case Management Plan, *In re GSE Bonds Antitrust Litig.*, No. 19-cv-01704, ECF No. 169 (S.D.N.Y. May 14, 2019) (setting a four-month-and-one-week deadline for the production of transactional data and a five-month-and-one week deadline for substantial completion document productions in a complex antitrust suit with more than a dozen groups of defendants).

case, and NAR has represented it does not possess relevant transactional data. Moreover, Realogy and RE/MAX have acknowledged that their transactional data systems are national in scope, and thus they already understand, and have completed, the same basic process for pulling transactional data in *Sitzer* that they will need to use in *Moehrl*.

HomeServices claims it is differently situated from the other Defendants and has represented that it needs nearly a year to complete its document production based on the decentralization of its regional subsidiaries.[5] But even HomeServices has already started producing documents from many of these subsidiaries in the *Sitzer* action, including from subsidiaries that will be at issue in *Moehrl*—such as BHH Carolinas, Edina Realty, Inc., and Fox & Roach. HomeServices is also using a TAR protocol that largely automates the document culling process and greatly expedites the time needed to review documents before production. Additionally, HomeServices asserts that it will need sufficient time to collect transactional data from multiple sources. But it has already initiated the investigation into these data sources and identified the relevant sources. HomeServices fails to explain why any of these sources will "take a team of data professionals months" to collect the data from these already-identified systems, much less why they will require more than *three-quarters of a year* to produce the data.

Defendants say they cannot agree to a schedule without finalizing the scope of discovery and resolving any custodian disputes.[6] That is not how case schedules work; deadlines are set at the outset of the case, and the parties proceed to negotiate discovery according to that schedule. Defendants also contend that their extended discovery deadlines will not cause substantial delay, because their proposal shortens the time between discovery and class certification briefing. This unfairly prejudices Plaintiffs, leaving only five or six months to process data, analyze documents, and conduct depositions before class certification expert reports and briefs are due.

Put simply, there is no reason to allot nearly a year for document production in a case where 700,000 documents have already been produced. Plaintiffs' proposal—which still gives Defendants four more months to produce transaction data, and almost six months to produce documents—is more than adequate.

### C. Dispositive Motion Deadlines

Dispositive motion deadlines should be set now and should not be delayed until after the Court issues a decision on class certification. Plaintiffs filed their complaint on March 6, 2019. Even under Plaintiffs' proposed schedule, the trial date is not until April 3, 2023. Every day of

---

[5] HomeServices is the only defendant to present specific objections to Plaintiffs' proposed data and document production deadlines. If the Court is inclined to grant HomeServices the additional time it seeks, Plaintiffs respectfully request the Court enter Plaintiffs' proposed deadlines for the other defendants. This will diminish (though not cure) the prejudice and delay to Plaintiffs from allowing HomeServices nearly a year to meet its discovery obligations.

[6] HomeServices prematurely uses its briefing on the case schedule to litigate its objections to Plaintiffs' proposal for Long & Foster custodians. Given the scope of the litigation, Plaintiffs' initial proposal for seven Long & Foster custodians, each of whom occupies a senior position with relevance to this litigation (and two of whom were proposed by HomeServices), is modest and appropriate. Regardless, negotiations over the scope of custodial discovery are ongoing, and Plaintiffs will address the issue if and when there is a dispute ready to present to the Court.

delay prejudices Plaintiffs and the putative class: This is an action both for damages and for injunctive relief, and there are thousands of home sales taking place each day under Defendants' anticompetitive rules.

Defendants' proposal would effectively pause the case a *second* time until a class certification decision is issued—causing all progress to halt for an indeterminate period. Defendants contend that it would be inefficient to proceed to dispositive motion practice until there is a class certification order. But the more efficient procedure would be to complete discovery and proceed to dispositive motion practice after class certification briefing is complete, without delay. Among other things, merits expert discovery and motion practice in *Sitzer* will occur from October 2021 to June 2022. Plaintiffs' proposal for *Moehrl* sets expert discovery to begin shortly thereafter, in August 2022—at which point Defendants will already have fully briefed potentially similar merits issues in *Sitzer*, diminishing their complaints about inefficiencies from not delaying merits briefing in *Moehrl*.

For this reason, courts overseeing antitrust class actions—including the *Sitzer* Court— routinely set deadlines for merits expert reports and motion practice that do not depend on the release of a class certification order. *See, e.g.*, *JM Smith Corp. v. Actavis, et al.*, No. 15-cv-7488, ECF No. 330 (S.D.N.Y. July 17, 2017); *In re Electronic Books Antitrust Litig.*, No. 12-cv-2826, ECF No. 71 (S.D.N.Y. June 25, 2012); *In re Interior Molded Doors Antitrust Litig.*, No. 18-cv-718, ECF No. 72 (E.D. Va. Mar. 18, 2019); *In re Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litig.*, No. 12-cv-711, ECF No. 234 (D.N.J. Sept. 17, 2015).[7] Particularly here, where there is overlap with the *Sitzer* action and between class and merits issues, setting deadlines for both class and merits practice is the more reasonable approach.

### D. Order of Reports and Motions

Finally, the Parties disagree about the manner in which expert reports and dispositive motions should be filed. Plaintiffs' proposal is two-fold: (i) merits expert reports and dispositive motions should be served together (as with class certification expert reports and briefs); and (ii) summary judgment motions and briefs should be staggered to avoid simultaneous cross-motions that address identical issues and eliminate duplicative briefing.

First, the interests of efficiency and prompt resolution of this case favor filing merits expert reports and dispositive motions together. Defendants' proposal would separate expert reports and dispositive motion practice, thereby extending the schedule by several months. But this is unnecessary and inefficient. By placing merits expert reports prior to summary judgment briefing, Defendants' schedule creates a significant risk that experts will be required to file sur-rebuttal reports in order to address new issues raised in summary judgment briefing. (Underscoring its efficiency, Defendants' proposal apparently contemplates the possibility that sur-sur-rebuttal reports will be filed "in Response to [the Court's] Summary Judgment Order.")

---

[7] Defendants cite a handful of contrary cases. In each of those cases, however, no party sought firm merits deadlines that did not depend on the date of the class certification order.

Furthermore, by the time expert reports and dispositive motions are filed, Defendants will have the benefit of Plaintiffs' complaint, Plaintiffs' oppositions to their motions to dismiss, full fact discovery (including document productions and depositions), and class certification expert reports and briefing. This gives Defendants and their experts a more than ample basis to inform their decision on which issues to move for summary judgment.

Second, Plaintiffs' proposal to stagger summary judgment deadlines eliminates the significant risk that the parties will file simultaneous, and unnecessarily duplicative, summary judgment briefs on the same issues. For example, if both Parties move for summary judgment on the issue of market power, it would be less burdensome on the Court and more efficient for the Parties to file a total of four briefs (Defendant's opening brief; Plaintiffs' combined opposition and cross-motion; Defendants' reply; and Plaintiffs' reply), rather than six (two simultaneous opening briefs; two simultaneous oppositions; and two simultaneous replies), as would occur under Defendants' schedule. In suits like this one, where cross-motions for summary judgment are likely, courts in this District and many others frequently employ staggered summary judgment briefing schedules.[8] Plaintiffs' staggered briefing schedule is not only efficient, it is also fair. Plaintiffs propose that Defendants file the first summary judgment brief (just as Plaintiffs are filing the first class certification brief). Additionally, in antitrust suits, defendants typically file sweeping summary judgment motions, while plaintiffs often file overlapping but targeted motions. As a result, Plaintiffs' proposed summary judgment briefing schedule would give both Defendants and Plaintiffs the last word on some issues.

## III.  DEFENDANTS' ARGUMENTS FOR ADOPTION OF DEFENDANTS' PROPOSED SCHEDULE

The Parties' competing schedules present three principal areas of disagreement—(a) the difficulties Defendants face in producing commission data and new ESI and related documents of undetermined scope regarding the 20 MLS relevant markets pled in this case; (b) whether expert discovery and summary judgment motions should occur after a class certification decision has been rendered, thereby defining the scope of the classes and the remaining issues to be addressed on the merits; and (c) the order in which expert disclosures, expert depositions, summary judgment, and *Daubert* motions should occur. Defendants' position on these three issues is set out below.

---

[8] *See, e.g.*, Minute Entry, *Nucap Indus. Inc. v. Robert Bosch LLC*, No. 15-cv-02207, ECF No. 1110 (N.D. Ill. Oct. 29, 2018) ("To avoid repetitive briefs, the briefing schedule will comprise four briefs instead of six," beginning with "Defendants' opening motion for summary judgment," and followed by "Plaintiffs' combined response and cross-motion (if any)," "Defendants' reply on their own motion and response to Plaintiffs' motion," and "Plaintiffs' reply on their own motion"); Mem. Decision & Order, *Rhino Metals, Inc. v. Sturdy Gun Safe, Inc*., No. 18-cv-00474, ECF 84 at 5 n.6 (D. Idaho) ("Upon an exhaustive review of hundreds of cases in the District of Idaho over the last 20 years in which cross motions for summary judgment were filed . . . . [i]n the vast majority of cases, the parties utilized the court's preference of staggered, combined briefing"); Minute Order, *Babb v. Merisant USA, Inc*., No. 06-cv-01383 (N.D. Ill. Feb. 7, 2007) (adopting staggered summary judgment briefing schedule); Minute Order, *EPIC v. DOJ*, No. 13-cv-1961 (D.D.C. Aug. 18 2014) (adopting staggered summary judgment briefing schedule).

## A. *Sitzer* Instructs That Defendants Need More Time to Produce Transactional Data, New ESI, and Other Documents That Plaintiffs Seek.

The Defendants here have different business models and organizational configurations. Defendants Keller Williams and RE/MAX have large networks of independently owned and operated franchise real estate brokers. Defendant Realogy has company-owned brokerages, and also has contractual relationships with third-party independently owned and operated franchisees. There are four HomeServices Defendants ("HSDs")—(i) HomeServices of America ("HSoA"), the ultimate parent holding company overseeing a network of approximately twenty-four real estate brokerage subsidiaries (including over forty brands that operate under approximately twenty-nine different data systems), (ii) and (iii) BHH Affiliates, LLC and HSF Affiliates LLC, which operate the BHHS franchise network, and (iv) Long & Foster Companies ("L&F") —the parent of Long & Foster Real Estate and several other brokerage brands, which was acquired by HSoA in late 2017. While other Defendants will have differing levels of difficulty complying with Plaintiffs' proposed schedule, the HSDs' situation, with four separate defendant entities, including one defendant that was not involved in Sitzer (*i.e.,* L&F), best illustrates why Defendants' proposed deadlines for class discovery and class certification briefing should be adopted.

At the outset, Plaintiffs single out the date on which initial custodian and other discovery disputes should be submitted to the Court for special debate. While stating that the case was filed nineteen months ago (but ignoring the stay of discovery entered in this case), and that discovery is not beginning anew, Plaintiffs have not articulated what additional custodians or other discovery they will seek from Defendants pertaining to the additional twenty alleged MLS-relevant-markets pled in this case that are located in approximately fourteen different states (and the District of Columbia), as opposed to *Sitzer* (where only four MLSs in one state are at issue). Accordingly, Defendants' schedule contains a more extended date for the submission of disputes because we do not know what Plaintiffs' requests for discovery parameters discussed above will be or what information Defendants will need to respond to those disputes. By contrast, if Plaintiffs want to move to compel the Defendants to produce information in the possession of independently owned and operated franchisees – as the plaintiffs unsuccessfully did in *Sitzer* where the court instructed the plaintiffs to subpoena the franchisees directly pursuant to Rule 45 – the Plaintiffs can meet and confer with Defendants and move thereafter.

As Plaintiffs acknowledge, their request for real estate commission-related data, obtained at as close to a transaction-by-transaction level as possible, will play a central role in this case, particularly at the class certification stage. For the HSDs, such data is stored in the ordinary course of business in three main locations: accounting systems, transaction-management systems, and document repositories. None of these systems is centralized or easily accessible with respect to the HSDs.

Rather, the HSDs' investigation to date—which is preliminary and subject to further refinement—has revealed a total of twenty-four structured data systems, a cache of physical hard drives, and multiple caches of paper files, all of which may contain commission-related data and information potentially relevant to this case.[9]

---

[9] As stated, the HSDs' investigation is still underway. The HSDs do not waive their right to claim that any data/information source is: inaccessible, unduly burdensome, disproportionate to the needs of the case, or outside of

Even gaining access to and assessing these data sources will take months. Each data system is distinct and maintained in a separate location by separate entities using separate personnel. Many of the software programs are different. Even where they are of the same type, the HSDs' subsidiaries use the systems in different ways, based on their own procedures for recording accounting and transaction data. Further, many subsidiaries outsource their accounting and transaction data information technology work to third-party vendors. And some of the systems are "legacy" or "offline" systems that may require additional time to process.

Simply put, these data and information systems are unwieldly and were never designed for prompt litigation retrieval. It will take a team of data professionals months to collect the required discovery. This does not include time to process and produce the data. Accordingly, the HSDs suggest that the Plaintiffs' proposed February date is not a realistic deadline by which to produce commission-related transaction-level data. By way of example, in *Sitzer*, where it was only necessary to access commission data from two sets of HSD commonly managed subsidiaries running approximately four data systems, it took approximately six months to identify, analyze, access, collect, and retrieve that commission data. Plaintiffs' argument does not properly account for these issues.

Regarding the production of ESI and other documents, Plaintiffs have requested broad email production from seven Long & Foster custodians—separate and apart from the custodians of the ESI produced to Plaintiffs here from the *Sitzer* case. These additional custodians are disproportionate to the needs of the case, given that Plaintiffs here already have received hundreds of thousands of pages of documents from fifteen HSD custodians, and given that the HSDs are producing documents regarding market share, market conditions, financial information, training, and brokerage policy documents from twelve additional non-Missouri based subsidiaries. Yet Plaintiffs have indicated that they may well seek yet *additional* custodians and/or *additional* documents from these or other subsidiaries doing business in the twenty MLS markets pursuant to their exceedingly broad document requests. And for that reason Plaintiffs suggestion that it is unreasonable to allot nearly a year for document production in a case where 700,000 documents have already been produced is a *non sequitur*. Plaintiffs are seeking seven new custodians from Long & Foster alone and will not commit that there will be no additional custodians. At the same time Plaintiffs may seek and hundreds of thousands more documents from Realogy, RE/MAX and the HSDs in the new twenty MLS alleged relevant markets at issue in this case.[10]

In sum, without knowing the full scope of discovery sought by Plaintiffs and the resolution of what is likely to be a dispute over custodians, and having experienced the challenges that have arisen in the similar, but much smaller *Sitzer* case, with respect to similar types of documents, as well as the substantial obstacles encountered with trying to collect transactional data from a much

---

their possession, custody, and control. The HSDs also reserve their right to argue in the future that certain subsidiaries are wholly or partially improper sources of discovery in this matter for reasons including, but not limited to, binding arbitration agreements and/or those subsidiaries' acquisition dates.

[10] Furthermore, in *Sitzer,* HomeServices spent months negotiating the scope of discovery, in particular narrowing *Sitzer*'s similar and overbroad document requests. While the *Moehrl* Plaintiffs were a party to those negotiations, they have also reserved their rights to seek a different resolution here as they deem appropriate. This is another example of a source of potential delay here.

smaller set of information, Defendants cannot agree to the dates sought by Plaintiffs. **That said, Defendants are not seeking a long extension of the proposed schedule. Indeed, Defendants' proposed schedule only seeks to move the class certification briefing schedule a total of two months from Plaintiffs' proposed date of November 12, 2021, to Defendants' proposed date of January 15, 2022**. Moreover, while commission data and documents are being produced in the first half of 2021, the *Moehrl* Plaintiffs can review the millions of pages of documents they have from the *Sitzer* case; analyze the millions of transaction-level records produced in *Sitzer*; and can participate in the depositions of various Corporate Defendants who are common to both cases and whose documents already have been produced to them.

      B.      **Deadlines For Merits Expert Reports And Dispositive Motions Should Be Set After The Court Rules On Class Certification.**

To promote efficiency for the parties and the Court, the exchange of merit expert reports and the filing of summary judgment briefs should follow any decision by the Court relating to class certification. Several judges in this district have used this approach in significant antitrust class action cases currently pending here. *See, e.g.*, *In re Delta Dental Antitrust Litig.*, 1:19-cv-06734 (Bucklo, J.) (Dkt. No. 306) (requiring the parties to meet and confer on dates for "filing of dispositive motions, merits expert discovery, *Daubert* motions for merits expert reports, motions *in limine*, and other final pre-trial matters" within thirty days of the Court's ruling on a motion for class certification); *In re Local TV Advertising Antitrust Litig.*, No. 18-cv-06785 (Kendall, J.) (Dkt. No. 218) (relating plaintiffs' merits expert disclosure, defendants' merits expert disclosure, and motions for summary judgment to time periods after the court makes its class certification decision). Indeed, lead counsel for Plaintiffs have endorsed such a structure before. *See Tichy v. Hyatt Hotels Corp.*, No. 1:18-cv-1959 (Pallmeyer, J.) (Dkt. Nos. 108, 152, 170, 175) (setting case schedule only up to class certification).

Setting deadlines for merits expert reports and dispositive motions after the Court's resolution of Plaintiffs' class certification motion is prudent because the Court's decision on class certification undoubtedly will have a significant impact on the need for, and scope of, merits expert discovery and summary judgment briefing. For example, if no class is certified, merits expert reports and summary judgment briefing would be unnecessary or severely truncated. Even if the Court were to certify a class, the Court's order might alter the class definition advocated by the Plaintiffs, thereby impacting the scope and content of merits expert reports and summary judgment arguments. Setting deadlines that occur at intervals after the Court's class certification decision, as Defendants have proposed, will avoid the risk of engaging in unnecessary and expensive discovery and briefing, and would have no adverse effect on any party.

Thus, Defendants urge the Court to adopt intervals that proceed from the date of the class certification decision, as Defendants have suggested in their proposed schedule and as Judge Kendall did in *In re Local TV Advertising Antitrust Litigation*, or set a hearing to discuss the timing of merits expert reports and summary judgment motions after it has resolved the motion, as Judge Bucklo did last month in *In re Delta Dental Antitrust Litigation*.[11] This is not an unreasonable

---

[11] If the Court believes that date-specific deadlines are needed at this time, Defendants respectfully submit that the Court should adopt the sequence of events provided in Defendants proposed scheduling order. As discussed below, Defendants' sequence of events, whereby expert discovery (in which Plaintiffs disclose their merits expert first) is

proposal, and Plaintiffs' suggestion that it would result in a trial no sooner than 2026 is wholly unsupported.

**C. Plaintiffs' Attempt To Require Defendants To Disclose Expert Reports Before Plaintiffs And To Move For Summary Judgment Without Having Plaintiffs' Expert Reports Is Contrary To How All Antitrust Cases Are Litigated And Would Be Enormously Prejudicial To Defendants.**

The sequence of expert disclosures reflected in Defendants' proposed schedule – i.e., Plaintiffs disclosing their expert reports first, followed by Defendants disclosing their expert reports, and then rebuttal reports that would be followed by simultaneous summary judgment and *Daubert* briefing, is the standard and most sensible scheduling progression for antitrust class actions. *See, e.g.*, *In re Local TV Advertising Antitrust Litig.*, No. 18-cv-06785 (Kendall, J.) (Dkt. No. 218) (requiring plaintiffs to disclose merits expert first followed by motions for summary judgment); *Sitzer v. The National Association of Realtors, et al.*, No. 4:19-cv-00332 (W.D. Mo.) (in antitrust class action alleging similar conduct, the court entered a case management order in which expert disclosures (with plaintiffs disclosing their experts first) are followed by summary judgment briefing). Indeed, Plaintiffs' proposal – that expert discovery proceed in tandem with summary judgment briefing and that Defendants disclose their experts first – has not been adopted by ***any*** court in the Northern District of Illinois of which Defendants are aware, and for good reason.

*First*, Plaintiffs bear the burden of proof to show the existence of a purported conspiracy among the Defendants and the various other elements of the antitrust claims they allege. Plaintiffs also bear the burden to demonstrate antitrust injury and damages. Typically, plaintiffs in these types of cases rely on their experts to "prove up" one or more elements of their claims. Defendants, in turn, will likely rely in whole or in part on experts to rebut these claims. But here, Defendants cannot develop expert opinions to rebut Plaintiffs' claims (or address Plaintiffs' experts' methodologies) in a vacuum without understanding what approach the Plaintiffs' experts may take: How are the relevant antitrust markets defined? What is the nature of the conspiracy? Is there proof that tends to exclude the possibility of independent conduct by the alleged conspirators? How have the members of the Plaintiff class been injured, and how is that injury quantified? These are all questions that plaintiffs' experts in antitrust cases often address, but without Plaintiffs disclosing their reports first, Defendants' experts would be shooting in the dark, anticipating but not responding to, Plaintiffs' theories.

For this reason, courts generally require plaintiffs in antitrust cases to disclose their expert reports first. Defendants are unaware of any antitrust class actions where a court has required the defendants – who do not bear the burden of proof – to disclose any experts' opinions before the party who bears the burden of proof does so.

*Second*, Plaintiffs' suggested schedule – requiring Defendants to file expert reports *and* forcing Defendants to move for summary judgment *before* the theories offered by Plaintiffs' experts are disclosed – would be especially prejudicial to Defendants, and would waste the Court's

---

followed by dispositive motion briefing, is used by practically every other court in the Northern District of Illinois overseeing an antitrust class action case. *See infra* Section C.

time and resources, by forcing the Defendants to move on an incomplete record. Defendants' proposed schedule provides that expert discovery should proceed before summary judgment briefing begins. Rather than promoting "sur-rebuttals" as Plaintiffs contend, this will ensure that the summary judgment record is complete before the parties begin presenting argument regarding whether that record is sufficient to support Plaintiffs' claims. Expert discovery is, after all, discovery. If discovery is not complete before summary judgment motions are filed (as in Plaintiffs' proposal), the Court's consideration of those motions is likely to be a waste of judicial resources because Plaintiffs can simply identify additional summary judgment issues based on expert discovery, resulting in additional, serial, and unwarranted summary judgment motion practice.

## IV. DISCOVERY LIMITATIONS

The Parties agree that any changes to the discovery limitations imposed by the Federal Rules of Civil Procedure or by the Local Rules will be discussed after the Parties serve their initial disclosures.

## V. OTHER ISSUES TO DISCUSS AT NOVEMBER 2 HEARING

The Parties do not have any other disputes to present to the Court at this time. As the Parties previously informed the Court, they have agreed to meet and confer to try to reach agreement on a draft proposal for remote deposition protocols. Once the Parties have reached agreement, they will submit a joint motion to this Court requesting entry of an order regarding remote deposition protocols, or, if they are unable to agree, will submit motions to this Court regarding their separate proposals.

Dated: October 26, 2020

Respectfully submitted,

*/s/ Marc M. Seltzer*
Marc M. Seltzer
  mseltzer@susmangodfrey.com
Steven G. Sklaver
  ssklaver@susmangodfrey.com
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100

Matthew R. Berry
  mberry@susmangodfrey.com
Alexander W. Aiken
  aaiken@susmangodfrey.com
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880

***Counsel for Homeservices of America, Inc., BHH Affiliates, LLC, HSF Affiliates, LLC, The Long & Foster Companies, Inc.***

*/s/ Robert D. Macgill*
Robert D. Macgill
  robert.macgill@macgilllaw.com
Matthew T. Ciulla
  matthew.ciulla@macgilllaw.com
MACGILL PC
55 Monument Circle, Suite 1200C
Indianapolis, IN 46204
(317) 721-1253

Jay N. Varon
  jvaron@foley.com
Jennifer M. Keas
  jkeas@foley.com

Beatrice C. Franklin
  bfranklin@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas
32nd Floor
New York, NY 10019
Telephone: (212) 336-8330

Steve W. Berman (Bar No. 3126833)
  steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

Daniel Kurowski
  dank@hbsslaw.com
Whitney Siehl
  wsiehl@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949

Rio S. Pierce
  riop@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Carol V. Gilden (Bar No. 6185530)
  cgilden@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370

Daniel A. Small
  dsmall@cohenmilstein.com
Kit A. Pierson
  kpierson@cohenmilstein.com
Benjamin D. Brown
  bbrown@cohenmilstein.com

FOLEY AND LARDNER LLP
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 672-5436

James D. Dasso
  jdasso@foley.com
FOLEY & LARDNER LLP
321 N. Clark St., Suite 2800
Chicago, IL 60654
(312) 832-4588


*Counsel for Realogy Holdings Corp.*

/s/ *Kenneth Michael Kliebard*

Kenneth Michael Kliebard
  kenneth.kliebard@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601-5094
(312) 324-1000

Stacey Anne Mahoney
  stacey.mahoney@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000



*Counsel for Keller Williams Realty, Inc.*
/s/ *Timothy Ray*
Timothy Ray
  Timothy.Ray@hklaw.com
HOLLAND & KNIGHT LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60603
(312) 263-3600

David C. Kully
  david.kully@hklaw.com

Robert A. Braun
  rbraun@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600

Anna P. Hayes
  anna.hayes@hklaw.com
HOLLAND & KNIGHT LLP
800 17th Street NW, Suite 1100
Washington, DC 20530
(202) 469-5415

***Counsel for RE/MAX, LLC***
/s/ *Paula Render*
Paula W. Render
  prender@jonesday.com
Jeremy J. Gray
  jjgray@jonesday.com
Odeshoo Hasdoo
  ehasdoo@jonesday.com
Megan E. Ryan
  mryan@jonesday.com
JONES DAY
77 W Wacker, Suite 3500
Chicago, IL 60605
(312) 782-3939

***Counsel for Defendant***
***National Association of Realtors®***
/s/ *Jack Bierig*
Jack R. Bierig
  jbierig@schiffhardin.com
Robert J. Wierenga
  rwierenga@schiffhardin.com
Adam J. Diederich
  adiederich@schiffhardin.com
Schiff Hardin LLP
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
312-258-5500 (Phone)
312-258-5600 (Fax)

## CERTIFICATE OF SERVICE

  I hereby certify that on October 26, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice to counsel for all parties that have appeared in this case.

               /s/  *Marc Seltzer*