UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, VALERIE NAGER, JACK RAMEY, DANIEL UMPA, And JANE RUH, on behalf of themselves and all others similarly situated<br><br>　　　　Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.<br><br>　　　　Defendants. | Case No. 1:19-cv-01610<br><br>Judge Andrea R. Wood<br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |

# MEMORANDUM OF LAW IN SUPPORT
# OF THE HOMESERVICES DEFENDANTS'
# MOTION TO STRIKE CERTAIN CLASS ALLEGATIONS

| | | |
|---|---|---|
| Robert D. MacGill | Jay N. Varon | James D. Dasso |
| Matthew T. Ciulla | Jennifer M. Keas | Erik Kennelly |
| **MACGILL PC** | **FOLEY & LARDNER LLP** | **FOLEY & LARDNER LLP** |
| 55 Monument Circle | 3000 K Street NW | 321 North Clark Street |
| Suite 1200C | Suite 600 | Suite 2800 |
| Indianapolis, IN 46204 | Washington, DC 20007 | Chicago, IL 60654 |

## INTRODUCTION

Plaintiffs' putative class includes tens of thousands of individuals who executed a listing agreement containing a binding arbitration provision with a HomeServices of America subsidiary ("Arbitrating Class Members"). Plaintiffs' Complaint makes no attempt to exclude these individuals from the putative class. The Arbitrating Class Members have no advocate to assure protection of their interests. The named plaintiffs are not typical of the proposed class they propose to represent or adequate to protect the interests of the putative class.

The Court should take action now to excise the Arbitrating Class Members from the putative class so that the discovery to be directed to the HomeServices Defendants[1] can be limited to an appropriate scope and be made proportional to the claims to be litigated against them. For example, certain HomeServices subsidiaries utilized binding arbitration agreements in Pennsylvania, Minnesota, Arizona, and North Carolina for virtually all of their customers for the entire class period—as such, these subsidiaries as a practical matter have no customers in those states who could litigate claims or recover damages in this action. As demonstrated below, the Court should strike the class allegations now and require them to be amended to exclude those class members who agreed to arbitrate this type of dispute with a HomeServices subsidiary.

## FACTUAL BACKGROUND

### A. The Class Definition.

Plaintiffs' class begins on March 6, 2015. Doc. 84 ¶¶ 18, 142. It encompasses "home sellers who paid a broker commission . . . in connection with the sale of residential real estate" listed on a "Covered MLS." *Id.* ¶ 18. Plaintiffs define a Covered MLS as the Bright MLS and My Florida Regional MLS, as well as the MLSs covering the metropolitan areas of Cleveland,

---

[1] The "HomeServices Defendants" are HomeServices of America, Inc., BHH Affiliates, LLC, HSF Affiliates, LLC, and the Long & Foster Companies, Inc.

Ohio; Columbus, Ohio; Detroit, Michigan; Milwaukee, Wisconsin; Minneapolis, Minnesota; Austin, Texas; Dallas, Texas; Houston, Texas; Las Vegas, Nevada; Phoenix, Arizona; San Antonio, Texas; Colorado Springs, Colorado; Denver, Colorado; Salt Lake City, Utah; Fort Myers, Florida; Miami, Florida; Charlotte, North Carolina; or Raleigh, North Carolina. *Id.*

Plaintiffs exclude from the class only "Defendants and their officers and directors, the judicial officers presiding over this action and the members of their immediate families and judicial staff, and Plaintiffs' counsel and employees of their law firms." *Id.* ¶ 143.

**B.     The HomeServices Defendants and Their Relevant Subsidiaries.**

Plaintiffs' Complaint, Doc. 84 (the "Complaint"), attempts to state an antitrust class action claim against four "Corporate Defendants" and the National Association of Realtors, a trade association. One of these Corporate Defendants is what Plaintiffs call "HomeServices"—really a combination of HomeServices of America, Inc., three of its subsidiaries (HSF Affiliates, LLC, BHH Affiliates, LLC, and The Long & Foster Companies, Inc.), and "their wholly-owned or controlled subsidiaries or affiliates." Doc. 84 ¶ 34. Movants here will refer to themselves in the collective, as the "HomeServices Defendants."

HomeServices of America, Inc. is a holding company. Strandmo Decl., attached as Exhibit 1, ¶ 4. It is not a real estate broker, does not sell real estate, does not charge listing commissions, and does not enter into listing agreements with homeowners. *Id.* However, HomeServices of America, Inc. has at least twelve subsidiaries that operate brokerages that list homes on one or more Covered MLS. Of these, eleven subsidiaries provided home seller purported class members with listing agreements containing binding arbitration clauses ("Listing and Arbitration Agreements") for at least some part of the class period:

| Subsidiary | Relevant Time Period of Arbitration Rights | Citation to Arbitration Clauses |
|---|---|---|
| Fox & Roach[2] | Entire class period in Pennsylvania, and September 2018-present in Delaware. Ex. 2 ¶¶ 6–18. | Ex. 2 ¶¶ 8, 10-13, 17-18 (authentication); Ex. 2 at Fox & Roach Decl. Exs. A p.5 § 33(b); B p.3 § 16(b); C p.3 § 16(b); D p.3 § 16(b); E p.3 § 15; F p.3 § 15; G p.1 (arbitration provisions). |
| Ebby Halliday[3] | October 2018-present. Ex. 3 ¶¶ 6-12. | Ex. 3 ¶¶ 10-12 (authentication); Ex. 3 at Ebby Decl. Exs. A p.6 §§ 16-17; B p.6 §§ 16-17; C p.6 §§ 16-17 (arbitration provisions). |
| Lovejoy Realty[4] | April 2019-present. Ex. 4 ¶¶ 6-9. | Ex. 4 ¶ 9 (authentication); Ex. 4 at Lovejoy Realty Decl. Ex. A p.1 (arbitration provisions). |
| Midwest Preferred[5] | April 2019-present. Ex. 5 ¶¶ 6-9. | Ex. 5 ¶ 9 (authentication); Ex. 5 at Midwest Preferred Decl. Ex. A p.1 (arbitration provisions). |
| Edina Realty[6] | Entire class period in Minnesota, and April 2019-present in Wisconsin. Ex. 6 ¶¶ 5-11. | Ex. 6 ¶¶ 10-11 (authentication); Ex. 6 at Edina Realty Decl. Exs. A p.4:141; B p.8 (arbitration provisions). |
| Esslinger-Wooten-Maxwell[7] | August 2018-present. Ex. 7 ¶¶ 5-9. | Ex. 7 ¶ 9 (authentication); Ex. 7 at EWM Decl. Ex. A p.3 § 9 (arbitration provisions). |
| Florida Realty[8] | November 2019-present for homes listed on a Covered MLS. Ex. 8 ¶¶ 6-10. | Ex. 8 ¶ 10 (authentication); Ex. 8 at Florida Realty Decl. Ex. A p.3 § 12 (arbitration provisions). |

---

[2] Fox & Roach is a 99.9% owned subsidiary of Fox & Roach/Trident Limited Partnership, which is a 99.9% owned subsidiary of HomeServices Northeast, LLC. HomeServices Northeast, LLC is a wholly owned subsidiary of HomeServices of America, Inc. Ex. 1 ¶ 5. Fox & Roach lists on at least one Covered MLS. Fox & Roach Decl., attached as Exhibit 2, ¶ 4.

[3] Ebby Halliday is a wholly owned subsidiary of HomeServices of Texas, LLC, which is a wholly owned subsidiary of HomeServices of America, Inc. Ex. 1 ¶ 6. Ebby Halliday lists on at least one Covered MLS. Ebby Decl., attached as Exhibit 3, ¶ 4.

[4] Lovejoy Realty is a wholly owned subsidiary of HomeServices of Minnesota, LLC, which is a wholly owned subsidiary of HomeServices of America, Inc. Ex. 1 ¶ 7. Lovejoy Realty lists on at least one Covered MLS. Lovejoy Realty Decl., attached as Exhibit 4, ¶ 5.

[5] Midwest Preferred is a wholly owned subsidiary of HomeServices of Minnesota, LLC, which is a wholly owned subsidiary of HomeServices of America, Inc. Ex. 1 ¶ 8. Midwest Preferred lists on at least one Covered MLS. Midwest Preferred Decl., attached as Exhibit 5, ¶ 5.

[6] Edina Realty is a wholly owned subsidiary of Edina Financial Services, Inc., which is a wholly owned subsidiary of HomeServices of Minnesota, LLC. HomeServices of Minnesota, LLC is a wholly owned subsidiary of HomeServices of America, Inc. Ex. 1 ¶ 9. Edina Realty lists on at least one Covered MLS. Edina Realty Decl., attached as Exhibit 6, ¶ 4.

[7] Esslinger-Wooten-Maxwell is a wholly owned subsidiary of HomeServices of Florida, Inc., which is a wholly owned subsidiary of HomeServices of America, Inc. Ex. 1 ¶ 10. Esslinger-Wooten-Maxwell lists on at least one Covered MLS. EWM Decl., attached as Exhibit 7, ¶ 4.

[8] Florida Realty is a wholly owned subsidiary of HomeServices of Florida, Inc., which is a wholly owned subsidiary of HomeServices of America, Inc. Ex. 1 ¶ 11. Florida Realty lists on at least one Covered MLS. Florida Realty Decl., attached as Exhibit 8, ¶ 4.

| Subsidiary | Relevant Time Period of Arbitration Rights | Citation to Arbitration Clauses |
|---|---|---|
| Long Realty[9] | Entire class period for homes listed on a Covered MLS. Ex. 9 ¶¶ 5-12. | Ex. 9 ¶¶ 9-12 (authentication); Ex. 9 at Long Realty Decl. Exs. A p.5 § 6; B p.6 § 6; C p.6 § 6; D p.6 § 6 (arbitration provisions). |
| Preferred Carolinas[10] | Entire class period. Ex. 10 ¶¶ 5-15. | Ex. 10 ¶¶ 10-15 (authentication); Ex. 10 at Preferred Carolinas Decl. Exs. A p.7 § 14; B p.6 § 14; C p.7 § 14; D p.7 § 14; E1 pp.1-2; E2 pp.1-2; F pp.1-2 (arbitration provisions). |
| First Weber[11] | July 2019 to present, for those who opted in. Ex. 11 ¶¶ 5-13. | Ex. 11 ¶¶ 9-13 (authentication); Ex. 11 at First Weber Decl. Exs. B, C, D, E (arbitration provisions). |
| Long & Foster[12] | July 2019 to present. Ex. 12 ¶¶ 7-10. | Ex. 12 ¶ 10 (authentication); Ex. 12 at L&F Decl. Ex. B (arbitration provisions). |

These arbitration provisions require arbitration of the instant dispute. *See* citations *supra*; text accompanying note 15, *infra*. Many of the arbitration provisions also require arbitration of "gateway" arbitrability disputes. *See* citations *supra*; text accompanying note 14, *infra*.[13]

### C. The Complaint's Allegations.

In March 2019, Plaintiffs filed the instant suit. Doc. 1. Plaintiffs complain about the listing commission they agreed to pay in listing agreements:

> A seller broker's compensation is specified in a listing agreement, a contract between the seller and the seller broker that details the terms of the listing. A listing agreement typically states that the seller broker has the exclusive right to market the seller's home.

---

[9] Long Realty is a wholly owned subsidiary of HomeServices of America, Inc. Ex. 1 ¶ 12. Long Realty may list on a Covered MLS on occasion. Long Realty Decl., attached as Exhibit 9, ¶ 4.

[10] Preferred Carolinas is a wholly owned subsidiary of HomeServices of the Carolinas, Inc., which is a wholly owned subsidiary of HomeServices of America, Inc. Ex. 1 ¶ 13. Preferred Carolinas lists on at least one Covered MLS. Preferred Carolinas Decl., attached as Exhibit 10, ¶ 4.

[11] First Weber is a wholly owned subsidiary of HomeServices of Wisconsin, LLC, which is a wholly owned subsidiary of HomeServices of America, Inc. Ex. 1 ¶ 14. First Weber lists on at least one Covered MLS. First Weber Decl., attached as Exhibit 11, ¶ 4.

[12] Long & Foster is a wholly owned subsidiary of Long & Foster Real Estate Ventures, Inc., which is a wholly owned subsidiary of The Long & Foster Companies, Inc., which is a wholly owned subsidiary of HomeServices MidAtlantic, LLC, which is a wholly owned subsidiary of HomeServices of America, Inc. Ex. 1 ¶ 15. Long & Foster lists on at least one Covered MLS. L&F Decl., attached as Exhibit 12, ¶ 6.

[13] Many of the Listing and Arbitration Agreements also contain class action waivers, which additionally bar this suit. *See, e.g.*, Ex. 2 at Fox & Roach Decl. Ex. A at 5; Ex. 3 at Ebby Decl. Ex. A at 6; Ex. 4 at Lovejoy Decl. Ex. A at 1; Ex. 5 at Midwest Decl. Ex. A at 1; Ex. 6 at Edina Decl. Ex. A at 4; Ex. 9 at Long Decl. Ex. A at 6; Ex. 11 at First Weber Decl. Ex. B at 1; Ex. 12 at L&F Decl. Ex. B at 2.

> The listing agreement specifies the total commission that a home seller will pay to the seller broker, often with a portion of that amount earmarked to be paid to the buyer broker in the event the buyer has a broker.

Doc. 1 ¶ 32; *see* Doc. 84 ¶ 46. These are the same Listing and Arbitration Agreements in which purported plaintiffs listing their home with a HomeServices subsidiary agreed to arbitrate disputes with that subsidiary. *See* text accompanying notes 2–12, *supra*. Despite this fact, Plaintiffs have made no effort to exclude those who agreed to arbitrate this dispute from their class definition. *Cf., e.g.*, Doc. 84 ¶ 143.

In the Corporate Defendants' First Motion to Dismiss, to which Plaintiffs amended their complaint rather than respond, the HomeServices Defendants expressly reserved their arbitration rights. Doc. 69 at 3 n.2; Doc. 84. The HomeServices Defendants repeated this reservation in the Corporate Defendants' Second Motion to Dismiss, which the Court denied on October 2, 2020, and in their Answer. Doc. 116 at 2 n.1; Doc. 184; Doc. 200 at 28.

On November 2, 2020, the Court ordered that disputes about the scope of discovery are to be submitted to the Court by January 8, 2021. Doc. 192. Plaintiffs have declined to narrow their class allegations to remove arbitrating class members, so HomeServices now brings this Motion.

### D. The Class Representatives.

Of the seven putative class representatives, only one, Daniel Umpa, sold his home using a HomeServices-affiliated company. Doc. 84 ¶¶ 23–31. According to the Complaint, on "October 30, 2017, he sold a home located in the Washington, D.C. metropolitan area" and was "represented by Long and Fosters [sic]." *Id.* ¶ 30. In relation to this sale, Umpa entered a listing agreement with Long & Foster Real Estate, Inc., a subsidiary of The Long & Foster Companies, Inc. and HomeServices of America, Inc. Ex. 12 ¶ 5. Umpa's listing agreement did not contain an arbitration clause. Ex. 12 at L&F Decl. Ex. A.

# ARGUMENT

Federal policy "strongly favors arbitration," as embodied in the Federal Arbitration Act (FAA). *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 805 (7th Cir. 2003). Any doubts with respect to arbitrability "should be resolved in favor of arbitration." *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005).

Here, thousands of purported class members have agreed to arbitrate this dispute. These Arbitrating Class Members are improperly included in this suit. In line with the strong federal policy favoring arbitration, the Court should strike the class definition and require its amendment to exclude the Arbitrating Class Members.

**I.  Because Umpa Cannot Adequately Represent the Arbitrating Class Members, the Court Should Strike the Class Definition and Require Its Amendment.**

The Court should address class certification "[a]t an early practicable time," and it may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(c)(1)(A), (d)(1)(D). The Court may take such action "even before the plaintiff files a motion requesting certification." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011).

Courts in this District "have held that a motion to strike class allegations, made pursuant to these provisions, is an appropriate device to determine whether the case will proceed as a class action." *Cholly v. Uptain Grp., Inc.*, No. 15-C-5030, 2017 WL 449176, 2017 U.S. Dist. LEXIS 14449, at *9 (N.D. Ill. Feb. 1, 2017) (striking class allegations where named plaintiff gave consent for telephone calls and attempted to represent class members who did not give consent); *see, e.g.*, *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 296-97 (N.D. Ill. 2014) (finding proposed class overbroad and requiring amendment); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) ("The rule's text plainly indicates that the court may decide to

reject a plaintiff's attempt to represent a class as soon as it becomes obvious that the plaintiff will be unable to satisfy Rule 23."); *Wright v. Family Dollar, Inc.*, No. 10-C-4410, 2010 WL 4962838, 2010 U.S. Dist. LEXIS 126643, at *6-10 (N.D. Ill. Nov. 30, 2010) (conflicts and unique defenses prevented plaintiff from showing adequacy or typicality).

Such a motion to strike is particularly appropriate where a named plaintiff who is not subject to an arbitration agreement attempts to represent a class containing members who are obligated to arbitrate their claims. *Santangelo v. Comcast Corp.*, No. 15-cv-0293, 2017 WL 6039903, 2017 U.S. Dist. LEXIS 200935, at *6 (N.D. Ill. Dec. 6, 2017) ("[T]here are circumstances when a motion to strike can provide a valuable vehicle to narrow the disputed issues in the case . . . . This is just such an instance."); *see also id.* at *6 & n.5 (disagreeing with case requiring delay of motion to strike, because Rule 23(d)'s drafters "clearly intended the rule to confer on courts broad discretion in managing class actions").

In *Santangelo*, a court in this district decided whether a non-arbitrating plaintiff can adequately represent arbitrating putative class members. *Id.* at *8-12. In that case, named plaintiff brought a putative class action against Comcast, alleging that Comcast ran unauthorized credit inquires. *Id.* at *1-2. Comcast's subscriber agreement contained an arbitration provision with an opt-out provision. *Id.* at *2-3. Plaintiff timely opted out, but many putative class members did not. *Id.* at *2-4. His broad proposed class definition contained no exclusion for arbitrating putative class members, and his proposed class "therefore include[d] subscribers who [were] bound by the arbitration provision." *Id.* at *4. Before plaintiff filed a motion to certify his class, Comcast brought a motion to strike plaintiff's class allegations or to require him to amend the proposed class definition to exclude those who were subject to arbitration. *Id.*

The court conducted an adequacy analysis under Rule 23(a)(4). *Id.* at *8-10. In determining whether plaintiff provided adequate representation for the putative class by "protecting the different, separate, and distinct interest of the class members," the court determined that under Seventh Circuit law, the "presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may make the named plaintiff an inadequate representative of the class." *Id.* (citations omitted).

Under this test, the court found that "the enforceability of the arbitration provision . . . [was] sufficiently 'arguable' to challenge the ability of [named plaintiff], who [was] not bound by the arbitration provision, to adequately represent the interests of the individuals in the four classes who [were]." *Id.* at *10. Named plaintiff "would be unable to assert, in any credible fashion, a number of arguments that would potentially undermine the [arbitration] provision's enforceability." *Id.* Further, named plaintiff had "a structural incentive to trade upon the rights of [the non-arbitrating] absent class members to his own advantage in any potential settlement between himself and Comcast," because the strength of his own claims would "not be impacted by a judicial determination as to the [arbitration] provision's enforceability." *Id.* at *11-12. Such conflict remained intact even despite named plaintiff's pledge to "go to the mat for all putative class members." *Id.* at *12. Accordingly, the court required the amendment of the class definition before a motion for class certification could be filed. *Id.* at *13-14.

This reasoning is consistent with caselaw from across the country. *See, e.g.*, *Avilez v. Pinkerton Gov. Servs., Inc.*, 596 F. App'x 579, 579 (9th Cir. 2015) (vacating certification order where named plaintiff's arbitration agreement did not contain class action waiver and some putative class members' agreements did, finding named plaintiff was "not an adequate representative"); *Hobon v. Pizza Hut of S. Wis., Inc.*, No. 17-cv-947, 2018 WL 4781147, 2018

U.S. Dist. LEXIS 171179, at *3, 9-10 (W.D. Wis. Oct. 3, 2018) (where many putative plaintiffs executed arbitration agreements, requiring amended complaint "which redefines the class to include only those [putative class members] who did not sign arbitration agreements"); *Tan v. Grubhub, Inc.*, No. 15-cv-05128-JSC, 2016 WL 4721439, 2016 U.S. Dist. LEXIS 186342, at *8 (N.D. Cal. July 19, 2016) (finding that non-arbitrating class representative could not adequately represent the interests of arbitrating putative class members because he would not be able to credibly challenge arbitration agreements); *In re H&R Block IRS Form 8863 Litig.*, No. 4:13-md-02474, 2015 WL 13344628, 2015 U.S. Dist. LEXIS 193088, at *16-17 (W.D. Mo. Jan. 7, 2015) (striking class allegations as to those putative class members "bound to individually arbitrate their claims"); *Zieger v. Advance Am.*, No. 13-1614, 2014 WL 7388365, 2014 U.S. Dist. LEXIS 177524, at *19-20 (D. Del. Dec. 29, 2014) (striking class allegations and granting leave to amend class definition); *In re Online Travel Co. Hotel Booking Antitrust Litig.*, 953 F. Supp. 2d 713, 725 (N.D. Tex. 2013) (striking portion of class allegations, as "claims by absent class members bound by the User Agreement would be impertinent, as those class members would be bound to individually arbitrate their claims"); *King v. Capital One Bank (USA), N.A.*, No. 3:11-cv-68, 2012 WL 5570624, 2012 U.S. Dist. LEXIS 163562, at *42-43 (W.D. Va. Nov. 15, 2012) ("If Plaintiff did not sign the Client Agreement containing the arbitration clause, surely she cannot represent anyone who did sign it . . . . Plaintiff could not fairly and adequately represent in this Court the interests of individuals who are bound to pursue their claims in arbitration.").

The instant case compels the same result. Umpa, the named plaintiff allegedly representing the putative class members who listed their homes with a HomeServices subsidiary, did not sign a Listing and Arbitration Agreement. Ex. 12 at L&F Decl. Ex. A. Thousands of those purported class members did. *See* text accompanying notes 2–12, *supra*. Umpa is not an

adequate class representative of the Arbitrating Class Members, as he cannot protect their interests. For instance, he cannot bring any challenge to the Listing and Arbitration Agreements, because—as described below—he lacks constitutional standing to do so. And in any potential class settlement, Umpa possesses a structural incentive to trade on the rights of the Arbitrating Class Members to his own advantage, because the strength of his claims would not be impacted by any determination of the Court as to the arbitration provisions' enforceability or scope—he did not sign one. Just as in *Santangelo* and numerous cases from across the country, this Court should not permit Umpa to inadequately represent these Arbitrating Class Members. It should instead excise them from the class definition.

## II. Any Argument Against the Listing and Arbitration Agreements Is Not Justiciable.

The Arbitrating Class Members are not before the Court. Rather, only the named plaintiffs—none of whom signed a Listing and Arbitration Agreement—are presently part of this suit. These plaintiffs have no justiciable case or controversy with respect to the enforceability of the Listing and Arbitration Agreements. This fact, combined with the fact that arbitration clauses are "presumed to be enforceable," only further reinforces the HomeServices Defendants' argument that the Court should partially strike the class allegations to exclude those subject to Listing and Arbitration Agreements. *See, e.g.*, *Ziegler*, 2014 U.S. Dist. LEXIS 177524, at *19.

"Standing and ripeness are jurisdictional prerequisites." *Smith v. Wis. Dept. of Agric., Trade, & Consumer Prot.*, 23 F.3d 1134, 1142 (7th Cir. 1994). A non-arbitrating class representative lacks standing to challenge the enforceability of arbitration agreements signed by putative class members. *Zieger*, 2014 U.S. Dist. LEXIS 177524, at *9 ("[B]ecause Zieger did in fact opt out of this clause, he lacks standing to challenge it at all. In other words, Zieger cannot allege any individualized, concrete injury resulting from the Dispute Resolution clause because he is not subject to it."); *see also In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1039

(11th Cir. 2015) ("[T]he named plaintiffs lack standing to assert any rights the unnamed putative class members might have to preclude Wells Fargo from moving to compel arbitration because the named plaintiffs have no cognizable stake in the outcome of that question."). Such a dispute is unripe until a party attempts to compel arbitration. *See Falconer v. Gibsons Rest. Grp., LLC*, No. 10-C-1013, 2011 WL 43023, 2011 U.S. Dist. LEXIS 1348, at *8 (N.D. Ill. Jan. 6, 2011).

Here, none of the named plaintiffs presently before the Court signed a Listing and Arbitration Agreement. Ex. 12 at L&F Decl. Ex. A. Accordingly, there is no justiciable case or controversy with respect to the enforceability of the Listing and Arbitration Agreements.

## III. Even if This Court Proceeds With Its Analysis, The Court Should Find That the Instant Allegations Must Be Resolved by the Arbitrator for Those Putative Class Members Who Signed a Listing and Arbitration Agreement.

Any complaint that Umpa or any other named plaintiff has about the Listing and Arbitration Agreements is not justiciable and should be rejected for that reason. Even if this Court were to examine such complaints, however, the Court will see that the instant disputes must be resolved by the arbitrator for the Arbitrating Class Members.

*First*, most of the Listing and Arbitration Agreements delegate "gateway" disputes—such as questions about the scope of the arbitration clauses and about which entity may enforce the arbitration clauses—to the arbitrator directly and/or through the incorporation of the AAA or JAMS rules.[14] *See, e.g.*, *i3 Brands, Inc. v. CDK Global, LLC*, No. 18-cv-864, 2020 WL 832365, 2020 U.S. Dist. LEXIS 29052, at *32-34 (N.D. Ill. Feb. 20, 2020) (collecting cases and

---

[14] *See* text accompanying notes 2–12, *supra*; *see, e.g.*, Ex. 3 at Ebby Decl. Ex. A p.6 § 16 ("interpretation, enforcement" and AAA); Ex. 4 at Lovejoy Realty Decl. Ex. A p.1 ("scope or applicability" and JAMS); Ex. 5 at Midwest Preferred Decl. Ex. A p.1 ("scope or applicability" and JAMS); Ex. 6 at Edina Realty Decl. Ex. A p.4:141 ("interpretation, enforcement or breach"); Ex. 7 at EWM Decl. Ex. A p.3 § 9 (AAA); Ex. 8 at Florida Realty Decl. Ex. A p.3 § 12 (AAA); Ex. 10 at Preferred Carolinas Decl. Ex. A p.7-8 ("any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement" and AAA); Ex. 11 at First Weber Decl. Ex. B ("scope or applicability").

determining that incorporation of the AAA Rules constitutes clear and unmistakable evidence of delegation of gateway questions to the arbitrator); *see also, e.g.*, *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 852 (6th Cir. 2020) (noting that, where arbitration clause incorporates AAA Rules, the question of "whether Domino's can enforce the arbitration agreement under state contract law (specifically, equitable estoppel) . . . should be decided by an arbitrator, not a court"); *see also, e.g.*, *O'Connor v. Uber Techs.*, 904 F.3d 1087, 1094–95 (9th Cir. 2018). Accordingly, Umpa is *two steps* removed from a proper challenge to the Listing and Arbitration Agreements—he has met neither the standing nor ripeness tests, and he has brought his dispute in the wrong forum. The Court should not proceed beyond this analysis.

*Second*, the Listing and Arbitration Agreements' arbitration clauses cover the instant allegations. The Arbitrating Class Members signed Listing and Arbitration Agreements in which they definitively agreed to arbitrate this dispute.[15] The allegations in Plaintiffs' Complaint derive

---

[15] *See* text accompanying notes 2–12, *supra*; *see, e.g.*, Ex. 2 at Fox & Roach Decl. Ex. A p.4-5 §§ 33(a-b) ("[A]ll claims, disputes or controversies between Seller and Broker/Licensee that in any way arise from or relate to this Contract and/or and the services . . . practices and procedures related to the foregoing . . . shall be submitted to arbitration."); Ex. 3 at Ebby Decl. Ex. A p.6 § 16 ("[A]ny dispute or claim between the parties to this Agreement, its interpretation, enforcement or breach . . . will be settled by binding arbitration."); Ex. 4 at Lovejoy Realty Decl. Ex. A p.1 ("Any disputes, claims or controversies arising out of or related to this agreement or the relationship created thereby . . . shall be determined by arbitration."); Ex. 5 at Midwest Preferred Decl. Ex. A p.1 ("Any disputes, claims or controversies arising out of or related to this agreement or the relationship created thereby . . . shall be determined by arbitration."); Ex. 6 at Edina Realty Decl. Ex. A p.4:141 ("Any controversy or claim between the parties to this Exclusive Right to Sell Listing Contract, its interpretation, enforcement or breach . . . shall be settled by binding arbitration."); Ex. 7 at EWM Decl. Ex. A p.3 § 9 ("The Parties agree that any dispute, arising prior to or after a closing arising out of or related to this Agreement . . . will be settled by neutral binding arbitration."); Ex. 8 at Florida Realty Decl. Ex. A p.3 § 12 ("All controversies, claims, and other matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be . . . settled by neutral binding arbitration."); Ex. 9 at Long Realty Decl. Ex. A p.5 § 6 ("In the event that mediation does not resolve all disputes or claims [arising out of or relating to this Agreement], the unresolved issues shall be submitted for arbitration."); Ex. 10 at Preferred Carolinas Decl. Ex. A p.7 ("Any Dispute, claim or controversy between Seller and Broker shall be settled by binding arbitration."); Ex. 11 at First Weber Decl. Ex. B ("[A]ny disputes or claims arising out of or related to this Listing Agreement . . . shall be determined by binding arbitration."); Ex. 12 at L&F Decl. Ex. B p.1 ("[A]ny and all claims, disputes or controversies between them that in any way arise from or relate to (i) the Contract, (ii) . . . the 'Transaction' . . . shall be submitted to arbitration.").

from the commission rates paid by home sellers, which are "specified in a listing agreement, a contract between the seller and the seller broker that details the terms of the listing." Doc. 1 ¶ 32; *see* Doc. 84 ¶ 46. For the Arbitrating Class Members, those Listing and Arbitration Agreements contained binding arbitration clauses covering "all/any disputes" or "all/any claims" between those members and their seller broker or arising from the agreement. *See* note 15, *supra*. Thus, the Arbitrating Class Members must bring the instant allegations in arbitration, not in this Court.

*Third*, the HomeServices Defendants have the right to enforce the Listing and Arbitration Agreements. The Seventh Circuit has recognized the theory of equitable estoppel, which "allows a nonsignatory to compel arbitration when a signatory's claims are grounded in or intertwined with the terms of the written agreement." *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 881 (N.D. Ill. 2006) (citing *Hughes Masonry Co. v. Greater Clark Cty. Sch. Bldg. Corp.*, 659 F.2d 836, 838, 841 (7th Cir. 1981)); *accord Advanced Aerofoil Techs., Inc.* v. *Todaro*, No. 11-cv-7866, 2011 WL 6009616, 2011 U.S. Dist. LEXIS 137230, at *26-27 (N.D. Ill. Nov. 30, 2011); *Dime Grp. Int'l, Inc. v. Soyuz-Victan USA, LLC*, No. 07-c-4178, 2008 WL 450825, 2008 U.S. Dist. LEXIS 11488, at *11-12 (N.D. Ill. Feb. 13, 2008). "[P]laintiff cannot have it both ways. It cannot rely on the contract when it works to its advantage, and repudiate it when it works to its disadvantage." *Hughes Masonry*, 659 F.2d at 839 (alterations adopted) (quoting *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966)) ("[Plaintiff] is estopped from repudiating the arbitration clause of this agreement, upon which it relies.").

Accordingly, when "each of a signatory's claim[s] against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement and arbitration is appropriate" under the equitable estoppel rule. *Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1004–05 (N.D. Ill.

2001) (quotation omitted); *accord Field Sys. Machining, Inc. v. Vestas-Am. Wind Tech., Inc.*, No. 13-cv-301, 2013 WL 1943307, 2013 U.S. Dist. LEXIS 66427, at *10 (N.D. Ill. May 9, 2013).[16]

In this case, if before this Court, the Arbitrating Class Members' claims would arise wholly from the Listing and Arbitration Agreements: per the Complaint, those agreements specify the commission rates about which Plaintiffs complain. Doc. 1 ¶ 32; *see* Doc. 84 ¶ 46.[17]

---

[16] The Seventh Circuit has stated that the Supreme Court in *Arthur Andersen* recognized equitable estoppel as a "state law principle[] that could govern who may enforce [an arbitration] agreement." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 753 (7th Cir. 2017) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)). In *Scheurer*, the court looked to state law as a source of estoppel rights. *Id.* at 754. It is not clear whether federal law survives as well (the HomeServices Defendants suggest that it does). *See, e.g., id.* ("To the extent the [federal] *Hughes Masonry* reasoning survives *Arthur Andersen*, it does not apply here."); *Scheurer v. Fromm Family Foods LLC*, 202 F. Supp. 3d 1040, 1043 (W.D. Wis. 2016) ("The Supreme Court has held that state law generally applies . . . but has not determined whether federal law applies as well."), *aff'd*, 863 F.3d 748 (7th Cir. 2017).

Here, each of the states implicated by the Listing and Arbitration Agreements appear to recognize the equitable estoppel theory. *Tradeline Enters. Pvt Ltd. v. Jess Smith & Sons Cotton, LLC*, 772 F. App'x 585, 586 (9th Cir. 2019) (Ariz.) ("[A] non-signatory may compel arbitration with a signatory to an arbitration agreement if the claims at issue are "intimately founded in and intertwined with the underlying contract obligations."); *Torres v. CleanNet, U.S.A., Inc.*, 90 F. Supp. 3d 369, 379 (E.D. Pa. 2015) ("Pennsylvania law embraces the theory of equitable estoppel."); *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1401 (S.D. Fla. 2014) ("[A]rbitration is appropriate when the signatory's claim against a non-signatory 'makes reference to' or 'presumes the existence of' the agreement."); *Sec. Life Ins. Co. of Am. v. Sw. Reinsure, Inc.*, No. 11-1358-MJD-JJK, 2013 U.S. Dist. LEXIS 17786, 2013 WL 500362, at *6 (D. Minn. Feb. 11, 2013) ("This 'equitable estoppel' rule may compel arbitration for nonsignatories when . . . a signatory's claim 'makes reference to or presumes the existence of the written agreement' containing the arbitration clause."); *Ishimaru v. Fung*, No. Civ.-A-929, 2005 Del. Ch. LEXIS 167, 2005 WL 2899680, at *18 (Del. Ch. Oct. 26, 2005) (noting the "well-established proposition that a signatory to an Arbitration Clause . . . may be required to arbitrate with a non-signatory when, among other grounds, concepts of equitable estoppel dictate that result"); *Carter v. TD Ameritrade Holding Corp.*, 721 S.E.2d 256, 263 (N.C. Ct. App. 2012) ("[D]efendants also contend plaintiffs are equitably estopped from denying enforceability of the arbitration statement. Again, we agree."); *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006) (reversing intermediate court of appeals for not applying equitable estoppel); *Scheurer*, 863 F.3d at 753 (outlining Wisconsin requirements for equitable estoppel) (all internal citations omitted); *see* Ex. 2 ¶¶ 6, 14 (Pennsylvania, Delaware); Ex. 3 ¶ 9 (Texas); Ex. 4 ¶ 8 (Wisconsin, Minnesota); Ex. 5 ¶ 8 (Minnesota); Ex. 6 ¶¶ 6, 7 (Minnesota, Wisconsin); Ex. 7 ¶ 8 (Florida); Ex. 8 ¶ 9 (Florida); Ex. 9 ¶ 8 (Arizona); Ex. 10 ¶ 9 (North Carolina); Ex. 11 ¶ 8 (Wisconsin). Long & Foster's arbitration clause expressly applies federal law only. Ex. 12 at L&F Decl. Ex. B p.1.

A detailed analysis of each state is not required at this time, because, as explained *infra*, (1) the plaintiffs presently before the Court do not have constitutional standing to bring a challenge to the arbitration clauses, (2) any such challenge would not be ripe, and (3) any such challenge has been delegated to the arbitrator under most of the Listing and Arbitration Agreements.

[17] *See* text accompanying notes 2–12; *see, e.g.*, Ex. 2 at Fox & Roach Decl. Ex. A p.1 §§ 7 ("Broker's Fee"); Ex. 3 at Ebby Decl. Ex. A p.1 ("Professional Service Compensation"); Ex. 4 ¶ 6

These same agreements contain the instant arbitration clauses. Further, the Complaint expressly treats all of HomeServices' "wholly-owned or controlled subsidiaries or affiliates" together as one unit: "HomeServices." Doc. 84 ¶ 34; *cf. e.g.*, *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999) (finding estoppel where plaintiff treated defendant entities "as a single unit in its complaint").

Thus, under a theory of equitable estoppel, the Arbitrating Class Members would be estopped from avoiding arbitration. They could not "rely on the contract when it works to [their] advantage," complaining about the commission rates therein, and then "repudiate it when it works to [their] disadvantage," disclaiming the arbitration provision in the contracts. *Hughes Masonry*, 659 F.2d at 839. Accordingly, the HomeServices Defendants, despite being nonsignatories to the Listing and Arbitration Agreements, could compel arbitration.

## **CONCLUSION**

The large number of class members who signed presumptively proper arbitration agreements should not be included in the class definition. To the extent that the class representatives desire to challenge this motion, they lack standing to do so because they have not agreed to arbitrate, their interests are adverse to the class members who did so, and they are not adequate representatives of those class members. Accordingly, the Court should strike the class allegations and require the Complaint's amendment to excise the Arbitrating Class Members.

---

("These listing agreements also set the commission rate at which the broker is compensated."); Ex. 5 ¶ 6 ("These listing agreements also set the commission rate at which the broker is compensated."); Ex. 6 at Edina Realty Decl. Ex. A p.2:51 ("Seller shall pay Broker, as Broker's compensation…"); Ex. 7 at EWM Decl. Ex. A p.2 § 4 ("Broker's Compensation"); Ex. 8 at Florida Realty Decl. Ex. A p.2 § 8 ("Seller will compensate Broker as specified below."); Ex. 9 at Long Realty Decl. Ex. A p.2:53 ("Compensation for Sale of Premises"); Ex. 10 at Preferred Carolinas Decl. Ex. A p.2 § 5 ("Broker's Compensation"); Ex. 11 at First Weber Decl. Ex. A p.1:27 ("Commission"); Ex. 12 ¶ 7 ("These listing agreements also set the commission rate at which the broker is compensated.").

Dated: December 7, 2020

Respectfully submitted by:

Counsel for HomeServices of America, Inc., BHH Affiliates, LLC, HSF Affiliates, LLC, and The Long & Foster Companies, Inc.

/s/ *Robert D. MacGill*

Robert D. MacGill
Matthew T. Ciulla
**MACGILL PC**
55 Monument Circle
Suite 1200C
Indianapolis, IN 46204
(317) 721-1253
robert.macgill@macgilllaw.com
matthew.ciulla@macgilllaw.com

Jay N. Varon
Jennifer M. Keas
**FOLEY AND LARDNER LLP**
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 672-5436
jvaron@foley.com
jkeas@foley.com

James D. Dasso
Erik Kennelly
**FOLEY AND LARDNER LLP**
321 North Clark Street Suite 2800
Chicago, IL 60654
(312) 832-4500
jdasso@foley.com
ekennelly@foley.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2020, I electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF THE HOMESERVICES DEFENDANTS' MOTION TO STRIKE CERTAIN CLASS ALLEGATIONS with the Clerk of the Court using the CM/ECF system, which will send notice to counsel for all parties that have appeared in this case.

*/s/ Robert D. MacGill*