UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COHL, STEVE DARNELL, VALERIE NAGER, JACK RAMEY, SAWBILL STRATEGIC, INC., DANIEL UMPA and JANE RUH, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., HSF AFFILIATES, LLC, BHH AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX HOLDINGS, INC. and KELLER WILLIAMS REALTY, INC.<br><br>    Defendants. | Case No: 1:19-cv-01610<br><br>Judge Andrea Wood<br>Magistrate Judge M. David Weisman<br><br>**EXHIBIT 6** |

**DECLARATION OF SHARRY SCHMID**
**("EDINA REALTY DECL.")**

I, Sharry Schmid, under the penalties for perjury, declare:

1. I am an adult over the age of 21, competent to make this Declaration.

2. I have personal knowledge of the facts stated in this Declaration.

3. I am the President of the brokerage at Edina Realty, Inc. ("Edina Realty"). I am familiar with Edina Realty's business generally and its practices with respect to the form listing agreements Edina Realty has used since at least 2014 in Minnesota and since at least April 2019 in Wisconsin, specifically.

1

4. Edina Realty provides real estate brokerage services through independent contractor agents. Those independent agents, among other things, assist homeowners in selling their homes and list customers' homes for sale on a "Covered MLS" at issue in this case, including, but not necessarily limited to, the MLS(s) "in the Mid-West [sic] that cover the . . . metropolitan area[ of] . . . Minneapolis, Minnesota." *See* Doc. 84 at 11.

5. Edina Realty requires that its independent contractor agents execute listing agreements with homeowners, which articulate the terms of the agreement between Edina Realty and the homeowner. Edina Realty has provided its independent contractor agents with a form listing agreement for use in listing residential real estate in Minnesota since at least 2014 and in Wisconsin since at least April 2019.

6. Since at least 2014, and in every year since, the form listing agreement for Edina Realty's Minnesota operations has included a broad, binding arbitration provision, which precluded class arbitrations and waived the right to litigate in court or jury trials.

7. Since at least April 2019, and in every year since, the form listing agreement for Edina Realty's Wisconsin operations has included an addendum with a broad, binding arbitration provision, which precluded class arbitrations.

8. Since at least 2014, Edina Realty has instructed its independent contractor agents to request that homeowners execute Edina Realty's then relevant form listing agreement.

9. Accordingly, every listing agreement for Edina Realty's Minnesota operations executed in or after January 2014 should contain a clause requiring arbitration of disputes between Edina Realty and the homeowner. Further, every listing agreement for Edina Realty's Wisconsin operations executed in or after April 2019 should contain a clause requiring arbitration of disputes between Edina Realty and the homeowner.

10. A true and accurate copy of the form listing agreement for Edina Realty's Minnesota operations for 2014 to the present is attached as <u>Edina Realty Declaration Exhibit A</u>.

11. A true and accurate copy of the form listing agreement for Edina Realty's Wisconsin operations for April 2019 to the present is attached as <u>Edina Realty Declaration Exhibit B</u>.

[the remainder of this page left blank intentionally]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 12/3/2020

Signed: *[signature]*

Printed: Sharry Schmid



a Berkshire Hathaway affiliate

# EXCLUSIVE RIGHT TO SELL LISTING CONTRACT

1. Date _____
2. Page 1 of _____ pages

3. **DEFINITIONS:** This Contract involves the property located at _____ ,
4. legally described as _____
5. _____ ("Property").
6. Seller is _____ .
7. Broker is _____ **Edina Realty, Inc.** _____ .
   (Real Estate Company Name)
8. This Contract may only be canceled by written mutual agreement of the parties.

9. **LISTING:** Seller gives Broker the exclusive right to sell the Property for the price of $ _____ ;
10. Seller will require the following terms: _____
11. _____ . This Contract starts _____ , 20 _____ , and ends
    (year)
13. at 11:59 p.m. on _____ , 20 _____ . In exchange, Broker agrees to list the Property and try
14. to sell it. Broker may place a "For Sale" sign and a lock box with keys on the Property. Seller authorizes Broker to allow
15. showings and hold open houses at the Property at such dates and times as mutually agreed. Seller understands that
16. Seller shall be fully responsible for the safekeeping and security of any personal property which may be kept or maintained
17. on the Property. Seller understands Broker is a member of a local Multiple Listing Service (MLS), and Broker shall give
18. information to Broker's MLS concerning the Property as provided by MLS rules. Broker may also distribute information
19. regarding Seller's Property to the general public. Seller shall keep Broker notified of relevant information important
20. to the sale of the Property. If Broker sells the Property, Broker may notify Broker's MLS and members of the area
21. boards of REALTORS® of the price and terms of the sale. Seller understands that this Contract DOES NOT give
22. Broker authority to rent or manage Seller's Property. Broker may place information on the internet concerning the
23. property, including the Property's address. Seller understands that Seller has the additional options of allowing:
24. (1) an automated "valuation" of Seller's property, which may be lower than Seller's asking price, to appear alongside
25. the property on websites operated by other brokers; and (2) comments about Seller's property to appear
26. on these websites, including negative comments, made by persons other than the broker operating the website.
27. At this time, however, Seller declines options (1) and (2), understanding that Seller may change these selections at any time.

28. Seller understands that mortgage financing services are usually paid for by the buyer; however, certain
29. insured government loans may require the Seller to pay a portion of the fees for the mortgage loan. Seller
30. understands that Seller shall not be required to pay the financing fees on any mortgage without giving
31. Seller's written consent. Seller understands that Broker may list other properties during the term of this Contract.

32. **LISTED FOR LEASE:** The Property ☐ **IS** ☐ **IS NOT** currently listed for lease. If **IS**, the listing broker is
    ----------(Check one.)----------
33. _____ . If **IS NOT**, Seller ☐ **MAY** ☐ **MAY NOT** list the Property for lease during the
    ----------(Check one.)----------
34. terms of this Contract with another broker.

35. Nothing in this Contract shall prohibit Broker and Seller from entering into a listing agreement for the lease of this
36. Property upon terms acceptable to both parties.

37. **SELLER'S DUTIES:** Seller shall cooperate with Broker in selling the Property. Seller shall promptly
38. tell Broker about all inquiries Seller receives about the Property. Seller agrees to provide
39. and pay for any inspections and reports required by any governmental authority. Seller
40. agrees to provide home owners' association documents, if required. Seller shall remain responsible for security,
41. maintenance, utilities and insurance while Seller owns the Property, and for safekeeping, securing and/or concealing
42. any valuable personal property during Property showings or open houses. Seller shall surrender any
43. abstract of title and a copy of any owner's title insurance policy for this Property, if in Seller's possession or
44. control, to Buyer or Buyer's designated title service provider. Seller shall take all actions necessary to convey

ER 201C-1 (12/14)



a Berkshire Hathaway affiliate

**EXCLUSIVE RIGHT TO SELL
LISTING CONTRACT**

45. Page 2

46. marketable title by the date of closing as agreed to in a purchase agreement. Seller shall sign all documents
47. necessary to transfer to Buyer marketable title to the Property. Seller has the full legal right to sell the Property.

48. **BROKER'S COMPENSATION:**

49. **NOTICE:** THE COMPENSATION FOR THE SALE, LEASE, RENTAL OR MANAGEMENT OF REAL PROPERTY
50. SHALL BE DETERMINED BETWEEN EACH INDIVIDUAL BROKER AND THE BROKER'S CLIENT.

51. Seller shall pay Broker, as Broker's compensation, _____ percent (%) of the selling price and a brokers administrative
52. commission∗ of $424.00 if Seller sells or agrees to sell the Property before this Contract ends,
53. regardless of when the sale closes. Seller authorizes Broker to receive additional compensation from the Buyer.
54. In addition, if before this Contract ends Broker presents a buyer who is willing and able to buy the Property at the price
55. and terms required in this Contract, but Seller refuses to sell, Seller shall still pay Broker the same compensation. Seller
56. agrees to pay Broker's compensation whether Broker, Seller or anyone sells the Property. Seller hereby permits Broker
57. to share part of Broker's compensation with other real estate brokers, including brokers representing only the buyer.
58. Seller understands that Edina Realty Sales Associates other than the Listing Sales Associate may, with Seller's
59. permission, hold open houses at Seller's Property. Seller agrees to pay Broker's compensation in full upon the happening
of any of the following events:
60. (1) the closing of the sale,
61. (2) Seller's refusal to close the sale; or
62. (3) Seller's refusal to sell at the price and terms required in this contract.

63. If, within 6 months after the end of this Contract, Seller sells or agrees to sell the Property to anyone who:
64. (1) during this Contract made inquiry of Seller about the Property and Seller did not tell Broker about the inquiry; or
65. (2) during this Contract made an affirmative showing of interest in the Property or was physically shown the Property
66. by Broker and whose name is on a written list Broker gives Seller within 72 hours after the end of this Contract; then
67. Seller shall still pay Broker Broker's compensation on the selling price, even if Seller sells the Property without Broker's
68. assistance. Seller understands that Seller does not have to pay Broker's compensation if Seller signs another valid
69. listing contract for this Property after the expiration of this Contract, under which Seller is obligated to compensate

70. another licensed real estate broker.
71. To secure the payment of Broker's compensation Seller hereby assigns to Broker the proceeds from the sale of the
72. Property in an amount equal to the compensation due Broker under this Contract.

73. **CLOSING SERVICES:**
74. **NOTICE:** THE REAL ESTATE BROKER, REAL ESTATE SALESPERSON OR REAL ESTATE CLOSING AGENT
75. HAS NOT EXPRESSED AND, UNDER APPLICABLE STATE LAW, MAY NOT EXPRESS OPINIONS
76. REGARDING THE LEGAL EFFECT OF THE CLOSING DOCUMENTS OR OF THE CLOSING ITSELF.

77. After a purchase agreement for the Property is signed, arrangements must be made to close the transaction. Seller understands
78. that no one can require Seller to use a particular service provider in connection with a real estate closing and that Seller may
79. arrange for a qualified closing agent or Seller's attorney to conduct the closing. Seller understands that Seller may be required to pay
80. certain closing costs which may effectively reduce the proceeds from the sale. Different providers may offer these services
81. at various prices.

82. Seller's choice for closing services.
83. *(Initial one.)*
84. _____ _____ Seller wishes to have Edina Realty Title, Inc. provide closing and title services. Edina Realty Title, Inc. is
     (Seller)  (Seller)         an affiliate of Edina Realty, Inc.

85. _____ _____ Seller shall arrange for a qualified closing agent or Seller's attorney to conduct the closing.
     (Seller)  (Seller)

86. _____ _____ Seller agrees to purchase the Edina Realty Home Warranty.
     (Seller)  (Seller)

87. _____ _____ Seller declines to purchase the Edina Realty Home Warranty.
     (Seller)  (Seller)

ER 201C-2 (12/14)


a Berkshire Hathaway affiliate

**EXCLUSIVE RIGHT TO SELL
LISTING CONTRACT**

88.  Page 3

89. **AGENCY REPRESENTATION:** If a Buyer represented by Broker wishes to buy the Seller(s) property, a dual agency will
90. be created. This means that Broker will represent both the Seller(s) and the Buyer(s), and owe the same duties
91. to the Buyer(s) that Broker owes to the Seller(s). This conflict of interest will prohibit Broker from advocating
92. exclusively on the Seller(s) behalf. Dual agency will limit the level of representation Broker can provide. If a dual
93. agency should arise, the Seller(s) will need to agree that confidential information about price, terms, and motivation
94. will still be kept confidential unless the Seller(s) instructs Broker in writing to disclose specific information about the
95. Seller(s). All other information will be shared. Broker cannot act as a dual agent unless both the Seller(s) and the
96. Buyer(s) agree to it. By agreeing to a possible dual agency, the Seller(s) will be giving up the right to exclusive
97. representation in an in-house transaction. However, if the Seller(s) should decide not to agree to a possible dual
98. agency, and the Seller(s) wants Broker to represent the Seller(s), the Seller(s) may give up the opportunity to sell
99. the property to Buyers represented by Broker.
100. Seller's Instructions to Broker: Having read and understood this information about dual agency, Seller(s) now instructs
101. Broker as follows:
102. ☐ Seller(s) will agree to a dual agency representation and will consider offers made by Buyers represented by
103. Broker.
104. ☐ Seller(s) will not agree to a dual agency representation and will not consider offers made by Buyers represented
105. by Broker.
106. Real Estate Company Name: __Edina Realty, Inc._____

107.                                                                Seller: _____
108. By: _____                               Seller: _____
         (Licensee)
109.                                                                Date: _____

110. **FAIR HOUSING NOTICE:** Seller understands that Seller may not refuse to sell, or discriminate in the terms, conditions or privileges
111. of sale, to any person due to his/her race, color, creed, religion, national origin, sex, marital status, status with regard
112. to public assistance, handicap (whether physical or mental), sexual orientation or family status. Seller understands further
113. that local ordinances may include other protected classes.

114. **ADDITIONAL NOTICES AND TERMS:** As of this date Seller has not received notices from any municipality, government
115. agency or unit owners' association about the Property that Seller has not told Broker about, and Seller agrees to
116. promptly tell Broker of any notices of that type that Seller receives.

117. Seller, Broker, and Licensee agree that all intellectual property created by Broker or Licensee relating to the Property,
118. including but not limited to photographs, list price, property descriptions, and marketing remarks, shall be and remain
119. the intellectual property of the Broker.

120. In the event Seller provides content, including, but not limited to, any photos or videos of the Property ("Seller
121. Content") to Broker, Seller grants to Broker a nonexclusive, perpetual, world-wide, transferable, royalty free license
122. to sub-license (including through multiple tiers), reproduce, distribute, display, perform and create derivative works
123. of the Seller Content. Seller represents and warrants that Seller has authority to provide Seller Content and Seller
124. Content does not violate any restrictions regarding use including any third-party intellectual property rights or laws.
125. Seller agrees to execute any further documents that are necessary to effect this license.

126. This shall serve as Seller's written notice granting Broker or the title company closing the sale of the Property permission
127. to obtain mortgage information (e.g., mortgage balance, interest rate, payoff and/or assumption figures) regarding any
128. existing financing on the Property. A copy of this document shall be as valid as the original.

129. Edina Realty's policy is to offer cooperation and compensation to any real estate broker who may sell your property,
130. subject to prior bilateral agreements, if any, and excluding the Broker's Administrative Commission. Equal
131. compensation is offered irrespective of the cooperating broker's agency or non-agency status. For the commission
132. percentage or amount to be offered to cooperating brokers pursuant to this listing contract, please consult your Edina
133. Realty sales agent.

134. Edina Realty's policy is to disclose to all parties to a potential transaction, either directly or through the parties' real
135. estate agents, the existence of multiple or competing offers for the purchase of your property. We believe that this policy
136. best serves the needs of both sellers and buyers. If you do not agree to have this information disclosed, please advise
137. your Edina Realty agent in writing.

ER 201C-3 (12/14)



a Berkshire Hathaway affiliate

**EXCLUSIVE RIGHT TO SELL LISTING CONTRACT**

138. Page 4

139. **\*** The Broker's Administrative Commission consists of a flat fee paid to the Broker in addition to the percentage commission.
140. The Broker's Administrative Commission is not designated for any specific service, but for all the services provided by Broker.

141. **ARBITRATION:** Any controversy or claim between the parties to this Exclusive Right to Sell Listing Contract, its interpretation,
142. enforcement or breach, including but not limited to claims arising from tort (which includes claims of fraud and fraud in
143. the inducement), shall be settled by binding arbitration administered by and under the rules of National Center
144. for Dispute Settlement (NCDS). While either party shall have all the rights and benefits of arbitration, both <u>parties are
145. giving up the right to litigate such claims and disputes in a court or jury trial.</u> The results, determinations,
146. findings, judgments and/or awards rendered through such arbitration shall be final and binding on the
147. parties hereto and may be specifically enforced by legal proceedings. Judgment on the award may be entered
148. into any court having jurisdiction. Neither party shall be entitled to join or consolidate disputes by or against others
149. in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any
150. arbitration in the interest of the general public or in any private attorney general capacity.

151. **CONSENT FOR COMMUNICATION:** Unless Seller has opted out under the procedure below, Seller gives Edina Realty
152. and its affiliated companies express permission to contact Seller by telephone, mail, fax, e-mail or other means of
153. communication, even if the telephone number is listed on a state, federal or company-specific do-not-call list.

154. **FEDERAL NOTICE.** The Edina Realty family of companies is providing this notice. Edina Realty has brokerage,
155. title, mortgage and insurance affiliates that are committed to the highest quality of service. If you choose, however,
156. you may limit the Edina Realty companies from marketing their products or services to you based on your personal
157. information that they receive from other Edina Realty companies, such as your contact and transaction information.
158. (Rest assured, we do not share your financial information with anyone.) Your choice to limit the marketing offers
159. from Edina Realty companies will apply until you tell us to change your choice.

160. To limit marketing offers, contact us by telephone toll-free at 1-877-270-1289.

161. **ELECTRONIC SIGNATURES:** The parties agree the electronic signature of any party on any document related to
162. this transaction constitute valid, binding signatures.

163. **ACCEPTED BY**: Edina Realty, Inc.     **BY**: _____
       (Real Estate Company Name)       (Licensee)

164. Date Signed: _____ , 20 _____

165. **ACCEPTED BY**: _____     **ACCEPTED BY**: _____

166. Address: _____     Address: _____

167. _____     _____

168. Phone: _____     Phone: _____

169. E-mail Address: _____     E-mail Address: _____

170. Federal I.D. # (if corporation): _____

171. I/we would like relocation services. Yes _____ No _____

172. Date Signed: _____ , 20 _____

173.       **THIS IS A LEGALLY BINDING CONTRACT BETWEEN SELLER AND BROKER.**

174.       **IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL**

WISCONSIN REALTORS® ASSOCIATION
4801 Forest Run Road
Madison, Wisconsin 53704
Page 1 of 6, WB-1

Approved by the Wisconsin Real Estate Examining Board
7-1-16 (Mandatory Use Date)

**WB-1 RESIDENTIAL LISTING CONTRACT - EXCLUSIVE RIGHT TO SELL**

1 **SELLER GIVES THE FIRM THE EXCLUSIVE RIGHT TO SELL THE PROPERTY ON THE FOLLOWING TERMS:**
2 ■ **PROPERTY DESCRIPTION:** Street address is: _____
3 _____
4 in the _____ of _____, County of _____,
5 Wisconsin. Insert additional description, if any, at lines 303-308 or attach as an addendum per lines 309-310.
6 ■ **INCLUDED IN LIST PRICE:** Seller is including in the list price the Property, all Fixtures not excluded on lines 12-14,
7 and the following items: _____
8 _____
9 _____
10 _____
11 _____.
12 ■ **NOT INCLUDED IN LIST PRICE:** _____
13 _____
14 _____.
15 **CAUTION: Identify Fixtures to be excluded by Seller or which are rented and will continue to be owned by the**
16 **lessor. (See lines 181-194).**
17 ■ **LIST PRICE:** _____ Dollars ($_____).
18 **MARKETING** Seller authorizes and the Firm and its agents agree to use reasonable efforts to market the Property.
19 Seller agrees that the Firm and its agents may market Seller's personal property identified on lines 7-11 during the term
20 of this Listing. The marketing may include: _____
21 _____.
22 The Firm and its agents may advertise the following special financing and incentives offered by Seller: _____
23 _____.
24 Seller has a duty to cooperate with the marketing efforts of the Firm and its agents. See lines 246-252 regarding the
25 Firm's role as marketing agent and Seller's duty to notify the Firm of any potential buyer known to Seller. Seller agrees
26 that the Firm and its agents may market other properties during the term of this Listing.
27 **COMMISSION** The Firm's commission shall be _____
28 _____.
29 ■ <u>EARNED:</u> Seller shall pay the Firm's commission, which shall be earned, if, during the term of this Listing:
30   1) Seller sells or accepts an offer which creates an enforceable contract for the sale of all or any part of the Property;
31   2) Seller grants an option to purchase all or any part of the Property which is subsequently exercised;
32   3) Seller exchanges or enters into a binding exchange agreement on all or any part of the Property;
33   4) A transaction occurs which causes an effective change in ownership or control of all or any part of the Property; or
34   5) A ready, willing and able buyer submits a bona fide written offer to Seller or Firm for the Property at, or above, the list
35     price and on substantially the same terms set forth in this Listing and the current WB-11 Residential Offer to Purchase,
36     even if Seller does not accept the buyer's offer. A buyer is ready, willing and able when the buyer submitting the
37     written offer has the ability to complete the buyer's obligations under the written offer.
38 The Firm's commission shall be earned if, during the term of the Listing, one seller of the Property sells, conveys,
39 exchanges or options, as described above, an interest in all or any part of the Property to another owner, except by divorce
40 judgment.
41 ■ <u>DUE AND PAYABLE:</u> Once earned, the Firm's commission is due and payable in full at the earlier of closing or the date
42 set for closing, even if the transaction does not close, unless otherwise agreed in writing.
43 ■ <u>CALCULATION:</u> A percentage commission shall be calculated based on the following, if earned above:
44   • Under 1) or 2) the total consideration between the parties in the transaction.
45   • Under 3) or 4) the list price if the entire Property is involved.
46   • Under 3) if the exchange involves less than the entire Property or under 4) if the effective change in ownership or
47     control involves less than the entire Property, the fair market value of the portion of the Property exchanged or for
48     which there was an effective change in ownership or control.
49   • Under 5) the total offered purchase price.
50 **NOTE: If a commission is earned for a portion of the Property it does not terminate the Listing as to any remaining**
51 **Property.**
52 **COMPENSATION TO OTHERS** The Firm offers the following commission to cooperating firms: _____
53 _____. (Exceptions if any):_____.
54 **BUYER FINANCIAL CAPABILITY** The Firm and its agents are not responsible under Wisconsin statutes or regulations to
55 qualify a buyer's financial capability. If Seller wishes to confirm a buyer's financial capability, Seller may negotiate inclusion of
56 a contingency for financing, proof of funds, qualification from a lender, sale of buyer's property, or other confirmation in any
57 offer to purchase or contract.

58 **DISPUTE RESOLUTION** The parties understand that if there is a dispute about this Listing or an alleged breach, and
59 the parties cannot resolve the dispute by mutual agreement, the parties may consider judicial resolution in court or may
60 consider alternative dispute resolution. Alternative dispute resolution may include mediation and binding
61 arbitration. Should the parties desire to submit any potential dispute to alternative dispute resolution, it is recommended
62 that the parties add such in Additional Provisions or in an Addendum.

63 **FAIR HOUSING** **Seller and the Firm and its agents agree that they will not discriminate against any**
64 **prospective buyer on account of race, color, sex, sexual orientation as defined in Wisconsin Statutes, Section**
65 **111.32(13m), disability, religion, national origin, marital status, lawful source of income, age, ancestry, family**
66 **status, status as a victim of domestic abuse, sexual assault, or stalking, or in any other unlawful manner.**

67 **DISCLOSURE TO CLIENTS**
68 Under Wisconsin law, a brokerage firm (hereinafter firm) and its brokers and salespersons (hereinafter agents) owe
69 certain duties to all parties to a transaction:
70 (a) The duty to provide brokerage services to you fairly and honestly.
71 (b) The duty to exercise reasonable skill and care in providing brokerage services to you.
72 (c) The duty to provide you with accurate information about market conditions within a reasonable time if you request
73     it, unless disclosure of the information is prohibited by law.
74 (d) The duty to disclose to you in writing certain Material Adverse Facts about a property, unless disclosure of the
75     information is prohibited by law. (See lines 195-198.)
76 (e) The duty to protect your confidentiality. Unless the law requires it, the firm and its agents will not disclose your
77     confidential information or the confidential information of other parties. (See lines 135-150.)
78 (f) The duty to safeguard trust funds and other property the firm or its agents holds.
79 (g) The duty, when negotiating, to present contract proposals in an objective and unbiased manner and disclose the
80     advantages and disadvantages of the proposals.

81 **BECAUSE YOU HAVE ENTERED INTO AN AGENCY AGREEMENT WITH A FIRM, YOU ARE THE FIRM'S CLIENT.**
82 **A FIRM OWES ADDITIONAL DUTIES TO YOU AS A CLIENT OF THE FIRM:**

83 (a) The firm or one of its agents will provide, at your request, information and advice on real estate matters that affect
84     your transaction, unless you release the firm from this duty.
85 (b) The firm or one of its agents must provide you with all material facts affecting the transaction, not just Adverse
86     Facts.
87 (c) The firm and its agents will fulfill the firm's obligations under the agency agreement and fulfill your lawful requests
88     that are within the scope of the agency agreement.
89 (d) The firm and its agents will negotiate for you, unless you release them from this duty.
90 (e) The firm and its agents will not place their interests ahead of your interests. The firm and its agents will not, unless
91     required by law, give information or advice to other parties who are not the firm's clients, if giving the information or
92     advice is contrary to your interests.
93 If you become involved in a transaction in which another party is also the firm's client (a "multiple representation
94 relationship"), different duties may apply.

95     **MULTIPLE REPRESENTATION RELATIONSHIPS AND DESIGNATED AGENCY**
96 ■ A multiple representation relationship exists if a firm has an agency agreement with more than one client who is a
97 party in the same transaction. If you and the firm's other clients in the transaction consent, the firm may provide
98 services through designated agency, which is one type of multiple representation relationship.
99 ■ Designated agency means that different agents with the firm will negotiate on behalf of you and the other client or
100 clients in the transaction, and the firm's duties to you as a client will remain the same. Each agent will provide
101 information, opinions, and advice to the client for whom the agent is negotiating, to assist the client in the negotiations.
102 Each client will be able to receive information, opinions, and advice that will assist the client, even if the information,
103 opinions, or advice gives the client advantages in the negotiations over the firm's other clients. An agent will not reveal
104 any of your confidential information to another party unless required to do so by law.
105 ■ If a designated agency relationship is not authorized by you or other clients in the transaction you may still authorize
106 or reject a different type of multiple representation relationship in which the firm may provide brokerage services to
107 more than one client in a transaction but neither the firm nor any of its agents may assist any client with information,
108 opinions, and advice which may favor the interests of one client over any other client. Under this neutral approach, the
109 same agent may represent more than one client in a transaction.
110 ■ If you do not consent to a multiple representation relationship the firm will not be allowed to provide brokerage
111 services to more than one client in the transaction.

Property Address: _____ Page 3 of 6, WB-1

112 **CHECK ONLY ONE OF THE THREE BELOW:**

113 [ ] The same firm may represent me and the other party as long as the same agent is not
114 representing us both (multiple representation relationship with designated agency).

115 [ ] The same firm may represent me and the other party, but the firm must remain neutral
116 regardless if one or more different agents are involved (multiple representation relationship
117 without designated agency).

118 [ ] The same firm cannot represent both me and the other party in the same transaction (I reject
119 multiple representation relationships).

120 **NOTE: All clients who are parties to this agency agreement consent to the selection checked above. You may**
121 **modify this selection by written notice to the firm at any time. Your firm is required to disclose to you in your**
122 **agency agreement the commission or fees that you may owe to your firm. If you have any questions about the**
123 **commission or fees that you may owe based upon the type of agency relationship you select with your firm,**
124 **you should ask your firm before signing the agency agreement.**

125 **SUBAGENCY**
126 Your firm may, with your authorization in the agency agreement, engage other firms (subagent firms) to assist your firm by
127 providing brokerage services for your benefit. A subagent firm and the agents associated with the subagent firm will not put
128 their own interests ahead of your interests. A subagent firm will not, unless required by law, provide advice or opinions to
129 other parties if doing so is contrary to your interests.

130 **PLEASE REVIEW THIS INFORMATION CAREFULLY. An agent can answer your questions about brokerage**
131 **services, but if you need legal advice, tax advice, or a professional home inspection, contact an attorney, tax**
132 **advisor, or home inspector.**

133 This disclosure is required by section 452.135 of the Wisconsin statutes and is for information only. It is a plain language
134 summary of the duties owed to you under section 452.133 (2) of the Wisconsin statutes.

135 ■ **CONFIDENTIALITY NOTICE TO CLIENTS:** The Firm and its agents will keep confidential any information given to
136 the Firm or its agents in confidence, or any information obtained by the Firm and its agents that a reasonable person
137 would want to be kept confidential, unless the information must be disclosed by law or you authorize the Firm to
138 disclose particular information. The Firm and its agents shall continue to keep the information confidential after the Firm
139 is no longer providing brokerage services to you.
140 The following information is required to be disclosed by law:
141 1) Material Adverse Facts, as defined in section 452.01 (5g) of the Wisconsin statutes (see lines 195-198).
142 2) Any facts known by the Firm and its agents that contradict any information included in a written inspection report on
143 the property or real estate that is the subject of the transaction.
144 To ensure that the Firm and its agents are aware of what specific information you consider confidential, you may list
145 that information below (see lines 147-148). At a later time, you may also provide the Firm with other information you
146 consider to be confidential.
147 **CONFIDENTIAL INFORMATION:** _____
148 _____.
149 **NON-CONFIDENTIAL INFORMATION** (The following may be disclosed by the Firm and its agents): _____
150 _____.

151 **COOPERATION, ACCESS TO PROPERTY OR OFFER PRESENTATION** The parties agree that the Firm and its
152 agents will work and cooperate with other firms and agents in marketing the Property, including firms acting as
153 subagents (other firms engaged by the Firm - see lines 125-129) and firms representing buyers. Cooperation includes
154 providing access to the Property for showing purposes and presenting offers and other proposals from these firms to
155 Seller. Note any firms with whom the Firm shall not cooperate, any firms or agents or buyers who shall not be allowed
156 to attend showings, and the specific terms of offers which should not be submitted to Seller: _____
157 _____.
158 **CAUTION: Limiting the Firm's cooperation with other firms may reduce the marketability of the Property.**
159 **EXCLUSIONS** All persons who may acquire an interest in the Property who are Protected Buyers under a prior listing
160 contract are excluded from this Listing to the extent of the prior firm's legal rights, unless otherwise agreed to in writing.
161 Within seven days of the date of this Listing, Seller agrees to deliver to the Firm a written list of all such Protected Buyers.
162 **NOTE: If Seller fails to timely deliver this list to the Firm, Seller may be liable to the Firm for damages and costs.**
163 The following other buyers _____
164 _____ are excluded from this Listing until _____ [INSERT DATE].
165 These other buyers are no longer excluded from this Listing after the specified date unless, on or before the specified date,
166 Seller has either accepted a written offer from the buyer or sold the Property to the buyer.

167 **DEFINITIONS**

168 ■ ADVERSE FACT: An "Adverse Fact" means any of the following:
169 (a) A condition or occurrence that is generally recognized by a competent licensee as doing any of the following:
170   1) Significantly and adversely affecting the value of the Property;
171   2) Significantly reducing the structural integrity of improvements to real estate; or
172   3) Presenting a significant health risk to occupants of the Property.
173 (b) Information that indicates that a party to a transaction is not able to or does not intend to meet his or her
174   obligations under a contract or agreement made concerning the transaction.
175 ■ DEADLINES – DAYS: Deadlines expressed as a number of "days" from an event are calculated by excluding the day the
176 event occurred and by counting subsequent calendar days.
177 ■ DEFECT: "Defect" means a condition that would have a significant adverse effect on the value of the Property; that
178 would significantly impair the health or safety of future occupants of the Property; or that if not repaired, removed or
179 replaced would significantly shorten or adversely affect the expected normal life of the premises.
180 ■ FIRM: "Firm" means a licensed sole proprietor broker or a licensed broker business entity.
181 ■ FIXTURES: A "Fixture" is an item of property which is physically attached to or so closely associated with land or
182 buildings so as to be treated as part of the real estate, including, without limitation, physically attached items not easily
183 removable without damage to the premises, items specifically adapted to the premises, and items customarily treated
184 as fixtures, including, but not limited to, all: garden bulbs; plants; shrubs and trees; screen and storm doors and
185 windows; electric lighting fixtures; window shades; curtain and traverse rods; blinds and shutters; central heating and
186 cooling units and attached equipment; water heaters, water softeners and treatment systems; sump pumps; attached or
187 fitted floor coverings; awnings; attached antennas and satellite dishes; audio/visual wall mounting brackets (but not the
188 audio/visual equipment); garage door openers and remote controls; installed security systems; central vacuum systems
189 and accessories; in-ground sprinkler systems and component parts; built-in appliances; ceiling fans; fences; in-ground
190 pet containment systems (but not the collars); storage buildings on permanent foundations and docks/piers on
191 permanent foundations.
192 **CAUTION: Exclude any Fixtures to be retained by Seller or which are rented (e.g., water softener or other water**
193 **treatment systems, home entertainment and satellite dish components, L.P. tanks, etc.) on lines 12-14 and in**
194 **the offer to purchase.**
195 ■ MATERIAL ADVERSE FACT: A "Material Adverse Fact" means an Adverse Fact that a party indicates is of such
196 significance, or that is generally recognized by a competent licensee as being of such significance to a reasonable
197 party, that it affects or would affect the party's decision to enter into a contract or agreement concerning a transaction or
198 affects or would affect the party's decision about the terms of such a contract or agreement.
199 ■ PERSON ACTING ON BEHALF OF BUYER: "Person Acting on Behalf of Buyer" shall mean any person joined in interest
200 with buyer; or otherwise acting on behalf of buyer, including but not limited to buyer's immediate family, agents, employees,
201 directors, managers, members, officers, owners, partners, incorporators and organizers, as well as any and all corporations;
202 partnerships, limited liability companies, trusts or other entities created or controlled by, affiliated with or owned by buyer, in
203 whole or in part whether created before or after expiration of this Listing.
204 ■ PROPERTY: Unless otherwise stated, "Property", means all property included in the list price as described on lines 2-5.
205 ■ PROTECTED BUYER: Means a buyer who personally, or through any Person Acting on Behalf of Buyer, during the term
206 of this Listing:
207   1) Delivers to Seller or the Firm or its agents a written offer to purchase, exchange or option on the Property;
208   2) Views the Property with Seller or negotiates directly with Seller by communicating with Seller regarding any potential
209     terms upon which the buyer might acquire an interest in the Property; or
210   3) Attends an individual showing of the Property or communicates with agents of the Firm or cooperating firms regarding
211     any potential terms upon which the buyer might acquire an interest in the Property, but only if the Firm or its agents
212     deliver the buyer's name to Seller, in writing, no later than three days after the earlier of expiration or termination (lines
213     263-271) of the Listing. The requirement in 3), to deliver the buyer's name to Seller in writing, may be fulfilled as follows:
214     a) If the Listing is effective only as to certain individuals who are identified in the Listing, by the identification of the
215       individuals in the Listing; or,
216     b) If a buyer has requested that the buyer's identity remain confidential, by delivery of a written notice identifying the firm
217       or agents with whom the buyer negotiated and the date(s) of any individual showings or other negotiations.
218 A Protected Buyer also includes any Person Acting on Behalf of Buyer joined in interest with or otherwise acting on behalf of
219 a Protected Buyer, who acquires an interest in the Property during the extension of listing period as noted on lines 220-224.
220 **EXTENSION OF LISTING** The Listing term is extended for a period of one year as to any Protected Buyer. Upon
221 receipt of a written request from Seller or a firm that has listed the Property, the Firm agrees to promptly deliver to
222 Seller a written list of those buyers known by the Firm and its agents to whom the extension period applies. Should this
223 Listing be terminated by Seller prior to the expiration of the term stated in this Listing, this Listing shall be extended for
224 Protected Buyers, on the same terms, for one year after the Listing is terminated (lines 263-271).

225 **OCCUPANCY** Unless otherwise provided, Seller agrees to give the buyer occupancy of the Property at time of closing
226 and to have the Property in broom swept condition and free of all debris and personal property except for personal
227 property belonging to current tenants, sold to the buyer or left with the buyer's consent.
228 **LEASED PROPERTY** If Property is currently leased and lease(s) will extend beyond closing, Seller shall assign Seller's
229 rights under the lease(s) and transfer all security deposits and prepaid rents (subject to agreed upon prorations) thereunder
230 to buyer at closing. Seller acknowledges that Seller remains liable under the lease(s) unless released by tenants.
231 **CAUTION: Seller should consider obtaining an indemnification agreement from buyer for liabilities under the**
232 **lease(s) unless released by tenants.**
233 **NOTICE ABOUT SEX OFFENDER REGISTRY** You may obtain information about the sex offender registry and
234 persons registered with the registry by contacting the Wisconsin Department of Corrections on the Internet at
235 http://www.doc.wi.gov or by telephone at (608)240-5830.
236 **REAL ESTATE CONDITION REPORT** Seller agrees to complete the real estate condition report provided by the Firm
237 to the best of Seller's knowledge. Seller agrees to amend the report should Seller learn of any Defect(s) after completion
238 of the report but before acceptance of a buyer's offer to purchase. Seller authorizes the Firm and its agents to distribute
239 the report to all interested parties and agents inquiring about the Property. Seller acknowledges that the Firm and its
240 agents have a duty to disclose all Material Adverse Facts as required by law.
241 **SELLER REPRESENTATIONS REGARDING DEFECTS** Seller represents to the Firm that as of the date of this
242 Listing, Seller has no notice or knowledge of any Defects affecting the Property other than those noted on the real estate
243 condition report.
244 **WARNING: IF SELLER REPRESENTATIONS ARE INCORRECT OR INCOMPLETE, SELLER MAY BE LIABLE FOR**
245 **DAMAGES AND COSTS.**
246 **SELLER COOPERATION WITH MARKETING EFFORTS** Seller agrees to cooperate with the Firm in the Firm's
247 marketing efforts and to provide the Firm with all records, documents and other material in Seller's possession or
248 control which are required in connection with the sale. Seller authorizes the Firm and its agents to do those acts
249 reasonably necessary to effect a sale and Seller agrees to cooperate fully with these efforts which may include use of a
250 multiple listing service, Internet advertising or a lockbox system on Property. Seller shall promptly refer all persons
251 making inquiries concerning the Property to the Firm and notify the Firm in writing of any potential buyers with whom Seller
252 negotiates or who view the Property with Seller during the term of this Listing.
253 **OPEN HOUSE AND SHOWING RESPONSIBILITIES** Seller is aware that there is a potential risk of injury, damage
254 and/or theft involving persons attending an "individual showing" or an "open house." Seller accepts responsibility for
255 preparing the Property to minimize the likelihood of injury, damage and/or loss of personal property. Seller agrees to
256 hold the Firm and its agents harmless for any losses or liability resulting from personal injury, property damage, or theft
257 occurring during "individual showings" or "open houses" other than those caused by the negligence or intentional
258 wrongdoing of the Firm or its agents. Seller acknowledges that individual showings and open houses may be
259 conducted by licensees other than agents of the Firm, that appraisers and inspectors may conduct appraisals and
260 inspections without being accompanied by agents of the Firm or other licensees, and that buyers or licensees may be
261 present at all inspections and testing and may photograph or videotape Property unless otherwise provided for in
262 additional provisions at lines 303-308 or in an addendum per lines 309-310.
263 **TERMINATION OF LISTING** Neither Seller nor the Firm has the legal right to unilaterally terminate this Listing absent a
264 material breach of contract by the other party. Seller understands that the parties to the Listing are Seller and the Firm.
265 Agents for the Firm do not have the authority to enter into a mutual agreement to terminate the Listing, amend the
266 commission amount or shorten the term of this Listing, without the written consent of the agent(s)' supervising broker. Seller
267 and the Firm agree that any termination of this Listing by either party before the date stated on line 312 shall be
268 effective by the Seller only if stated in writing and delivered to the Firm in accordance with lines 280-302 and effective
269 by the Firm only if stated in writing by the supervising broker and delivered to Seller in accordance with lines 280-302.
270 **CAUTION: Early termination of this Listing may be a breach of contract, causing the terminating party to**
271 **potentially be liable for damages.**
272 **EARNEST MONEY** If the Firm holds trust funds in connection with the transaction, they shall be retained by the Firm in the
273 Firm's trust account. The Firm may refuse to hold earnest money or other trust funds. Should the Firm hold the earnest money,
274 the Firm shall hold and disburse earnest money funds in accordance with Wis. Stat. Ch. 452 and Wis. Admin. Code Ch. REEB
275 18. If the transaction fails to close and the Seller requests and receives the earnest money as the total liquidated damages,
276 then upon disbursement to Seller, the earnest money shall be paid first to reimburse the Firm for cash advances made by the
277 Firm on behalf of Seller and one half of the balance, but not in excess of the agreed commission, shall be paid to the Firm as
278 full commission in connection with said purchase transaction and the balance shall belong to Seller. This payment to the Firm
279 shall not terminate this Listing.

Property Address: _____ Page 6 of 6, WB-1

280 **DELIVERY OF DOCUMENTS AND WRITTEN NOTICES** Unless otherwise stated in this Listing, delivery of
281 documents and written notices to a party shall be effective only when accomplished by one of the methods specified at
282 lines 283-302.
283 (1) Personal Delivery: giving the document or written notice personally to the party, or the party's recipient for delivery
284 if named at line 285 or 286.
285 Seller's recipient for delivery (optional): _____
286 Firm's recipient for delivery (optional): _____
287 [ ] (2) Fax: fax transmission of the document or written notice to the following telephone number:
288 Seller: (_____) _____ Firm: (_____) _____
289 [ ] (3) Commercial Delivery: depositing the document or written notice fees prepaid or charged to an account with a
290 commercial delivery service, addressed either to the party, or to the party's recipient for delivery if named at line 285 or
291 286, for delivery to the party's delivery address at line 295 or 296.
292 [ ] (4) U.S. Mail: depositing the document or written notice postage prepaid in the U.S. Mail, addressed either to the
293 party, or to the party's recipient for delivery if named at line 285 or 286, for delivery to the party's delivery address at
294 line 295 or 296.
295 Delivery address for Seller: _____
296 Delivery address for Firm: _____
297 [ ] (5) E-Mail: electronically transmitting the document or written notice to the party's e-mail address, if given below at
298 line 301 or 302. If this is a consumer transaction where the property being purchased or the sale proceeds are used
299 primarily for personal, family or household purposes, each consumer providing an e-mail address below has first
300 consented electronically as required by federal law.
301 E-Mail address for Seller: _____
302 E-Mail address for Firm: _____
303 **ADDITIONAL PROVISIONS** _____
304 _____
305 _____
306 _____
307 _____
308 _____
309 **ADDENDA** The attached addenda _____
310 _____ is/are made part of this Listing.
311 **TERM OF THE CONTRACT** From the _____ day of _____, _____, up
312 to the earlier of midnight of the _____ day of _____, _____, or the
313 conveyance of the entire Property.
314 **BY SIGNING BELOW, SELLER ACKNOWLEDGES RECEIPT OF A COPY OF THIS LISTING CONTRACT AND**
315 **THAT HE/SHE HAS READ ALL 6 PAGES AS WELL AS ANY ADDENDA AND ANY OTHER DOCUMENTS**
316 **INCORPORATED INTO THE LISTING.**

317 (x)_____ _____ _____
318 Seller's Signature ▲                              Print Name Here ▲              Date ▲

319 (x)_____ _____ _____
320 Seller's Signature ▲                              Print Name Here ▲              Date ▲

321 (x)_____ _____ _____
322 Seller's Signature ▲                              Print Name Here ▲              Date ▲

323 (x)_____ _____ _____
324 Seller's Signature ▲                              Print Name Here ▲              Date ▲

325 Seller Entity Name (if any): _____
326                                                   Print Name Here ▲

327 (x)_____ _____
328 Authorized Signature ▲   Print Name & Title Here ▶                                Date ▲

329 (x)_____ _____ _____
330 Agent for Firm ▲          Print Name Here ▲      Firm Name ▲                    Date ▲



# LISTING CONTRACT ADDENDUM

**Addendum to Listing Contract** dated _____ 20___, between Edina Realty, Inc. ("Firm") and
_____
("Seller(s)"), pertaining to the property at _____
("Property"). The terms of this addendum are deemed incorporated into and made a part of the Listing Contract between the parties.

**BROKER'S ADMINISTRATIVE COMMISSION:** Seller hereby agrees to pay Firm a Broker's Administrative Commission (BAC) of $485 if Seller sells or agrees to sell the Property during the term of the Listing Contract. The BAC will be collected at the closing of the Property. The BAC consists of a flat fee paid to the Firm in addition to the percentage commission. The BAC is not designated for any specific service, but for all the services provided by Firm.

**PROPERTY MANAGEMENT:** Unless Seller and Firm otherwise agree in writing, Firm shall not be responsible for property management services, including but not limited to leasing, maintenance or repairs.

**INSPECTIONS, TESTS AND SERVICES:** Seller authorizes Firm to order inspections, tests and other services (e.g., title insurance, loan payoffs) on behalf of Seller if Firm reasonably believes that Seller must obtain the inspections, tests and other services in order to complete this Agreement or to close any offer or lease proposal entered into by Seller under this Agreement. Seller agrees to indemnify and hold Firm harmless if Firm orders the products and services from persons Firm reasonably believes is/are qualified or if the person is credentialed by a government agency to conduct the inspections/tests or provide the service. Seller shall be responsible for the costs of these inspections, tests and other services (whether or not there is a closing) and shall be solely responsible for negotiating any fee amounts/adjustments unless otherwise agreed in writing. Firm is not obligated to order any inspections, tests and other services unless otherwise agreed in writing.

**INTERNET:** Firm may place information on the internet concerning the Property, including the Property's address. Seller understands that Seller has the additional options of allowing: (1) an automated "valuation" of the Property, which may be lower than Seller's asking price, to appear alongside the Property on virtual office websites operated by other Firms ("VOWs"); and (2) comments about the Property to appear on these VOWs, including negative comments, made by persons other than the Firms operating the VOW. At this time, however, Seller declines options (1) and (2), understanding that Seller may change these selections at any time.

**AUTHORIZATIONS TO RELEASE UTILITY INFORMATION:** Seller authorizes Firm or the title company closing the sale of the Property to obtain Seller's customer information from utilities.

**TELEPHONE CONSENT AND FEDERAL NOTICE:** Seller gives consent to Firm to telephone Seller regarding issues, goods and services related to the real estate transaction and to contact Seller by telephone from time to time let Seller know about some of the products and services that may be of interest to Seller.



# LISTING CONTRACT ADDENDUM

The Edina Realty family of companies is also providing you the following notice: Edina Realty has title, mortgage, and insurance affiliates that are committed to the highest quality of service. If you choose, however, you may limit the Edina Realty companies from marketing their products or services to you based on your personal information that they receive from other Edina Realty companies, such as your contact and transaction information. (Rest assured, we do not share your financial information with anyone.) Your choice to limit marketing offers from the Edina Realty companies will apply until you tell us to change your choice. To limit marketing offers, contact us by telephone toll-free at 1-877-270-1289.

**DISPUTE RESOLUTION.** Any disputes, claims or controversies arising out of or related to this agreement or the relationship created thereby, including but not limited to claims with a statutory basis or those arising from tort, which fall into the jurisdiction of small claims courts shall be resolved in the applicable small claims' courts. Any other such disputes, claims or controversies, including those involving the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Hudson, Wisconsin (or a mutually agreeable location) before a single arbitrator. The time for seeking any remedy under arbitration shall be limited to the period of any applicable statute(s) of limitation under Wisconsin law as would be applied by Wisconsin courts to each specific type of action(s) or claim(s). The arbitration shall be administered pursuant to JAMS' Streamlined Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction. Neither party to this agreement shall be entitled to join or consolidate claims or disputes by or against the other, or to include in any arbitration any claim or dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in any private attorney general capacity.

**CLOSING AND TITLE SERVICES:** I understand that no one can require me to use a particular person in connection with a real estate closing and that I may arrange for a qualified closing agent, or my attorney, to conduct the closing and/or provide title services. I understand that I may be required to pay certain costs.

My choice for closing services: (initial one)

_____  _____  I wish to have Edina Realty Title provide closing and title services.

_____  _____  I will arrange for another qualified closing agent or my attorney to conduct the closing.

_____   _____
Agent for Firm Edina Realty, Inc.                                                          Date

_____   _____
Seller's Signature                                                                                 Date

_____   _____
Seller's Signature                                                                                 Date