UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COHL, STEVE DARNELL, VALERIE NAGER, JACK RAMEY, SAWBILL STRATEGIC, INC., DANIEL UMPA and JANE RUH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., HSF AFFILIATES, LLC, BHH AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX HOLDINGS, INC. and KELLER WILLIAMS REALTY, INC.<br><br>Defendants. | Case No: 1:19-cv-01610<br><br>Judge Andrea Wood<br>Magistrate Judge M. David Weisman<br><br>**EXHIBIT 8** |

# DECLARATION OF REI L. MESA
## ("FLORIDA REALTY DECL.")

I, Rei L. Mesa, under the penalties for perjury, declare:

1. I am an adult over the age of 21, competent to make this Declaration.

2. I have personal knowledge of the facts stated in this Declaration.

3. I am the President of Watermark Realty, Inc. d/b/a Berkshire Hathaway HomeServices Florida Realty d/b/a Florida Title & Guarantee Agency ("Florida Realty"). I am familiar with Florida Realty's business generally and its practices with respect to the form listing agreements Florida Realty has used since 2019, specifically.

1

4. Florida Realty provides real estate brokerage services through independent contractor agents. Those independent agents, among other things, assist homeowners in selling their homes and list customers' homes for sale on a "Covered MLS" at issue in this case, including, but not necessarily limited to, the MLS(s) "in the Southeast that cover the ... metropolitan area[ of] ... Miami, Florida." *See* Doc. 84 at 11.

5. Florida Realty was acquired by HomeServices of Florida, Inc. in January 2019. HomeServices of Florida, Inc. is owned by HomeServices of America, Inc. Before January 2019, Florida Realty was not owned by HomeServices of America, but was a franchisee of HSF Affiliates, LLC.

6. Florida Realty requires that its independent contractor agents execute listing agreements with homeowners, which articulate the terms of the agreement between Florida Realty and the homeowner. Since at least November 2019, Florida Realty has provided its independent contractor agents with a form listing agreement for use in residential real estate listed on Covered MLSs.

7. Since at least November 2019, Florida Realty's form listing agreement has included a binding opt-in arbitration provision, with a blank where the parties can initial to signify their agreement.

8. Since at least November 2019, Florida Realty has instructed its independent contractor agents to request that homeowners execute Florida Realty's then relevant form listing agreement for real estate listed on Covered MLSs. Since at least November 2019, Florida Realty has instructed its independent contractor agents to request that homeowners initial the blanks next to the binding arbitration provisions in the form listing agreement for real estate listed on Covered MLSs.

9. Accordingly, every Florida Realty listing agreement for residential real estate listed on a Covered MLS executed in or after November 2019 should contain an initialed opt-in provision requiring arbitration of disputes between Florida Realty and the homeowner. These agreements were used by Florida Realty's independent contractor agents in the State of Florida.

10. A true and accurate copy of Florida Realty's form listing agreement for November 2019 to the present is attached as <u>Florida Realty Declaration Exhibit A</u>.

[remainder of page intentionally blank]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 12/1/2020

Signed: _____
**Rei L. Mesa**
President
Watermark Realty, Inc. d/b/a
Berkshire Hathaway HomeServices
Florida Realty
d/b/a Florida Title & Guarantee Agency

# FLORIDA REALTY DECLARATION EXHIBIT A - PAGE 1

**Exclusive Right of Sale Listing Agreement**



1  This Exclusive Right of Sale Listing Agreement ("Agreement") is between
2* _____ ("**Seller**")
3* and _____ Berkshire Hathaway HomeServices Florida Realty _____ ("**Broker**").

4  **1. Authority to Sell Property: Seller** gives **Broker** the EXCLUSIVE RIGHT TO SELL the real and personal
5  property (collectively "Property") described below, at the price and terms described below, beginning
6* _____ and terminating at 11:59 p.m. on _____ ("Termination Date"). Upon
7  full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will
8  automatically extend through the date of the actual closing of the sales contract. **Seller** and **Broker** acknowledge
9  that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race,
10  color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local
11  law. **Seller** certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

12  **2. Description of Property:**
13*  (a) **Street Address:** _____
14  _____
15*  **Legal Description:** _____
16* _____  ☐ See Attachment _____

17*  (b) **Personal Property, including appliances:** _____
18* _____  ☐ See Attachment _____

19  (c) **Occupancy:**
20*  Property ☐ is ☐ is not currently occupied by a tenant. If occupied, the lease term expires _____.

21  **3. Price and Terms:** The property is offered for sale on the following terms or on other terms acceptable to **Seller**:
22*  (a) **Price:** $_____
23*  (b) **Financing Terms:** ☐ Cash ☐ Conventional ☐ VA ☐ FHA ☐ Other (specify) _____
24*  ☐ **Seller** Financing: **Seller** will hold a purchase money mortgage in the amount of $_____
25*  with the following terms: _____
26*  ☐ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $_____ plus
27*  an assumption fee of $_____. The mortgage is for a term of _____ years beginning in
28*  _____, at an interest rate of _____% ☐ fixed ☐ variable (describe) _____.
29*  Lender approval of assumption ☐ is required ☐ is not required ☐ unknown. **Notice to Seller:** (1) You may
30  remain liable for an assumed mortgage for a number of years after the Property is sold. Check with your
31  lender to determine the extent of your liability. **Seller** will ensure that all mortgage payments and required
32  escrow deposits are current at the time of closing and will convey the escrow deposit to the buyer at closing.
33  (2) Extensive regulations affect **Seller** financed transactions. It is beyond the scope of a real estate licensee's
34  authority to determine whether the terms of your **Seller** financing agreement comply with all applicable laws or
35  whether you must be registered and/or licensed as a loan originator before offering **Seller** financing. You are
36  advised to consult with a legal or mortgage professional to make this determination.
37*  (c) **Seller Expenses: Seller** will pay mortgage discount or other closing costs not to exceed _____% of the
38  purchase price and any other expenses **Seller** agrees to pay in connection with a transaction.

39  **4. Broker Obligations: Broker** agrees to make diligent and continued efforts to sell the Property until a sales
40  contract is pending on the Property.

41  **5. Multiple Listing Service:** Placing the Property in a multiple listing service (the "MLS") is beneficial to **Seller**
42  because the Property will be exposed to a large number of potential buyers. As a MLS participant, **Broker** is
43  obligated to timely deliver this listing to the MLS. This listing will be promptly published in the MLS unless **Seller**
44  directs **Broker** otherwise in writing. **Seller** authorizes **Broker** to report to the MLS this listing information and price,
45  terms, and financing information on any resulting sale for use by authorized Board / Association members and
46  MLS participants and subscribers unless **Seller** directs **Broker** otherwise in writing.

47  **6. Broker Authority: Seller** authorizes **Broker** to:
48      **(a)** Advertise the Property as **Broker** deems advisable including advertising the Property on the Internet unless
49          limited in (6)(a)(i) or (6)(a)(ii) below.
50          (**Seller opt-out**) (**Check one if applicable**)
51*          **(i)** ☐ Display the Property on the Internet except the street address.
52*          **(ii)** ☐ **Seller** does not authorize **Broker** to display the Property on the Internet.
53          **Seller** understands and acknowledges that if **Seller** selects option (ii), consumers who search for listings
54          on the Internet will not see information about the Property in response to their search.
55*          _____/_____ **Initials of Seller**
56      **(b)** Place appropriate transaction signs on the Property, including "For Sale" signs and "Sold" signs (once **Seller**
57          signs a sales contract) and use **Seller's** name in connection with marketing or advertising the Property.
58      **(c)** Obtain information relating to the present mortgage(s) on the Property.
59      **(d)** Provide objective comparative market analysis information to potential buyers.
60*      **(e)** (**Check if applicable**) ☐ Use a lock box system to show and access the Property. A lock box does not
61          ensure the Property's security. **Seller** is advised to secure or remove valuables. **Seller** agrees that the lock
62          box is for **Seller's** benefit and releases **Broker**, persons working through **Broker**, and **Broker's** local Realtor
63          Board / Association from all liability and responsibility in connection with any damage or loss that occurs.
64*          ☐ Withhold verbal offers. ☐ Withhold all offers once **Seller** accepts a sales contract for the Property.
65      **(f)** Act as a transaction broker.
66      **(g) Virtual Office Websites:** Some real estate brokerages offer real estate brokerage services online. These
67          websites are referred to as Virtual Office Websites ("VOWs"). An automated estimate of market value or
68          reviews and comments about a property may be displayed in conjunction with a property on some VOWs.
69          Anyone who registers on a VOW may gain access to such automated valuations or comments and reviews
70          about any property displayed on a VOW. Unless limited below, a VOW may display automated valuations or
71          comments and reviews about this Property.
72*          ☐ **Seller** does not authorize an automated estimate of the market value of the listing (or a hyperlink to such
73          estimate) to be displayed in immediate conjunction with the listing of this Property.
74*          ☐ **Seller** does not authorize third parties to write comments or reviews about the listing of the Property (or
75          display a hyperlink to such comments or reviews) in immediate conjunction with the listing of this Property.

76  **7. Seller Obligations:** In consideration of **Broker's** obligations, **Seller** agrees to:
77      **(a)** Cooperate with **Broker** in carrying out the purpose of this Agreement, including referring immediately to
78          **Broker** all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.
79      **(b)** Provide **Broker** with keys to the Property and make the Property available for **Broker** to show during
80          reasonable times.
81      **(c)** Inform **Broker** before leasing, mortgaging, or otherwise encumbering the Property.
82      **(d)** Indemnify **Broker** and hold **Broker** harmless from losses, damages, costs, and expenses of any nature,
83          including attorney's fees, and from liability to any person, that **Broker** incurs because of (1) **Seller's**
84          negligence, representations, misrepresentations, actions, or inactions; (2) the use of a lock box; (3) the
85          existence of undisclosed material facts about the Property; or (4) a court or arbitration decision that a broker
86          who was not compensated in connection with a transaction is entitled to compensation from **Broker**. This
87          clause will survive **Broker's** performance and the transfer of title.
88      **(e)** Perform any act reasonably necessary to comply with FIRPTA (Section 1445 of the Internal Revenue Code).
89      **(f)** Make all legally required disclosures, including all facts that materially affect the Property's value and are not
90          readily observable or known by the buyer. **Seller** certifies and represents that **Seller** knows of no such
91          material facts (local government building code violations, unobservable defects, etc.) other than the following:
92*          _____
93          **Seller** will immediately inform **Broker** of any material facts that arise after signing this Agreement.
94      **(g)** Consult appropriate professionals for related legal, tax, property condition, environmental, foreign
95          reporting requirements, and other specialized advice.

96  **8. Compensation: Seller** will compensate **Broker** as specified below for procuring a buyer who is ready, willing,
97      and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other
98      terms acceptable to **Seller. Seller** will pay **Broker** as follows (plus applicable sales tax):
99*      **(a)** _____% of the total purchase price plus $_____ OR $_____, no
100          later than the date of closing specified in the sales contract. However, closing is not a prerequisite for **Broker's**
101          fee being earned.
102*      **(b)** _____ ($ or %) of the consideration paid for an option, at the time an option is created. If the option
103          is exercised, **Seller** will pay **Broker** the Paragraph 8(a) fee, less the amount **Broker** received under this
104          subparagraph.

105*     **(c)** _____ ($ or %) of gross lease value as a leasing fee, on the date **Seller** enters into a lease or
106     agreement to lease, whichever is earlier. This fee is not due if the Property is or becomes the subject of a
107     contract granting an exclusive right to lease the Property.
108     **(d) Broker's** fee is due in the following circumstances: (1) If any interest in the Property is transferred, whether by
109     sale, lease, exchange, governmental action, bankruptcy, or any other means of transfer, regardless of whether
110     the buyer is secured by **Seller**, **Broker**, or any other person. (2) If **Seller** refuses or fails to sign an offer at the
111     price and terms stated in this Agreement, defaults on an executed sales contract, or agrees with a buyer to
112*     cancel an executed sales contract. (3) If, within _____ days after Termination Date ("Protection Period"),
113     **Seller** transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom
114     **Seller**, **Broker**, or any real estate licensee communicated regarding the Property before Termination Date.
115     However, no fee will be due **Broker** if the Property is relisted after Termination Date and sold through another
116     broker.
117*     **(e) Retained Deposits:** As consideration for **Broker's** services, **Broker** is entitled to receive _____% (50% if
118     left blank) of all deposits that **Seller** retains as liquidated damages for a buyer's default in a transaction, not to
119     exceed the Paragraph 8(a) fee.

120 **9. Cooperation with and Compensation to Other Brokers: Notice to Seller:** The buyer's broker, even if
121     compensated by **Seller** or **Broker**, may represent the interests of the buyer. **Broker's** office policy is to cooperate
122     with all other brokers except when not in **Seller's** best interest and to offer compensation in the amount of
123*     ☐ _____% of the purchase price or $_____ to a single agent for the buyer; ☐ _____% of the
124*     purchase price or $_____ to a transaction broker for the buyer; and ☐ _____% of the purchase
125*     price or $_____ to a broker who has no brokerage relationship with the buyer.
126*     ☐ None of the above. (If this is checked, the Property cannot be placed in the MLS.)

127 **10. Brokerage Relationship: Broker** will act as a transaction broker. **Broker** will deal honestly and fairly; will account
128     for all funds; will use skill, care, and diligence in the transaction; will disclose all known facts that materially affect
129     the value of the residential property which are not readily observable to the buyer; will present all offers and
130     counteroffers in a timely manner unless directed otherwise in writing; and will have limited confidentiality with
131     **Seller** unless waived in writing.

132 **11. Conditional Termination:** At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If
133     **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, reimburse **Broker** for all direct
134*     expenses incurred in marketing the Property, and pay a cancellation fee of $_____ plus
135     applicable sales tax. **Broker** may void the conditional termination, and **Seller** will pay the fee stated in Paragraph
136     8(a) less the cancellation fee if **Seller** transfers or contracts to transfer the Property or any interest in the Property
137     during the time period from the date of conditional termination to Termination Date and Protection Period, if
138     applicable.

139 **12. Dispute Resolution:** This Agreement will be construed under Florida law. All controversies, claims, and other
140     matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be
141     settled by first attempting mediation under the rules of the American Mediation Association or other mediator
142     agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover
143     reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows:
144*     **Arbitration:** By initialing in the space provided, **Seller** (____) (____), Sales Associate (____), and **Broker** (____)
145     agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which
146     the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator
147     agreed upon by the parties. Each party to any arbitration (or litigation to enforce the arbitration provision of this
148     Agreement or an arbitration award) will pay its own fees, costs, and expenses, including attorney's fees, and will
149     equally split the arbitrator's fees and administrative fees of arbitration.

150 **13. Miscellaneous:** This Agreement is binding on **Seller's** and **Broker's** heirs, personal representatives,
151     administrators, successors, and assigns. **Broker** may assign this Agreement to another listing office. This
152     Agreement is the entire agreement between **Seller** and **Broker**. No prior or present agreements or representations
153     will be binding on **Seller** or **Broker** unless included in this Agreement. Electronic signatures are acceptable and
154     will be binding. Signatures, initials, and modifications communicated by facsimile will be considered as originals.
155     The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees, and other categories
156     of potential or actual transferees.

# FLORIDA REALTY DECLARATION EXHIBIT A - PAGE 4

157* **14. Additional Terms:** SELLER agrees to pay BHHS Florida Realty an additional brokerage fee in the amount of
158 $395.00 at closing (refer to 8 (a)).
159 Deposits held by BHHS Florida Realty will be deposited in a Florida financial institution selected by it and BHHS
160 Florida Realty may obtain from the financial institution a direct or indirect benefit in connection therewith, including
161 interest or other earnings. Sellers have been provided the privacy disclosure statement and incorporated herein by this
162 reference, and Sellers, by execution of this Contract, acknowledge receipt of such disclosure. We provide referrals to
163 certain vendors as a convenience only. This is just a referral and not a recommendation or endorsement.
164 Responsibility for selecting a vendor resides with the customer. BHHS Florida Realty and its Sales Professionals
165 make no guarantees or warranties concerning the products and or services offered by such vendors.
166
167
168
169

170* **Seller's Signature:** _____ Date: _____
171* Home Telephone: _____ Work Telephone: _____ Facsimile: _____
172* Address: _____
173* Email Address: _____

174* **Seller's Signature:** _____ Date: _____
175* Home Telephone: _____ Work Telephone: _____ Facsimile: _____
176* Address: _____
177* Email Address: _____

178* **Authorized Sales Associate or Broker:** _____ Date: _____
179* Brokerage Firm Name: Berkshire Hathaway HomeServices Florida Realty   Telephone: _____
180* Address: _____

181* Copy returned to **Seller** on _____ by ☐ email ☐ facsimile ☐ mail ☐ personal delivery.

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Seller (_____) (_____) and Broker/Sales Associate (_____) (_____) acknowledge receipt of a copy of this page, which is Page 4 of 4.
ERS-17tb   Rev 6/17                                                                                      ©2017 Florida Realtors®
Serial#: 082145-500158-2056543                                                                           formsimplicity