UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTOPHER MOEHRL, MICHAEL )
COHL, STEVE DARNELL, VALERIE )
NAGER, JACK RAMEY, SAWBILL )
STRATEGIC, INC., DANIEL UMPA and )
JANE RUH, on behalf of )
themselves and all others similarly situated, )
)
     Plaintiffs, )
) Case No: 1:19-cv-01610
)
v. )
) Judge Andrea Wood
) Magistrate Judge M. David Weisman
THE NATIONAL ASSOCIATION OF )
REALTORS, REALOGY HOLDINGS )
CORP., HOMESERVICES OF AMERICA, ) **EXHIBIT 9**
INC., HSF AFFILIATES, LLC, BHH )
AFFILIATES, LLC, THE LONG & )
FOSTER COMPANIES, INC., RE/MAX )
HOLDINGS, INC. and KELLER )
WILLIAMS REALTY, INC. )
)
     Defendants. )
_____ )

**DECLARATION OF JOHN MIJAC**
**("LONG REALTY DECL.")**

I, John Mijac, under the penalties for perjury, declare:

    1.    I am an adult over the age of 21, competent to make this Declaration.

    2.    I have personal knowledge of the facts stated in this Declaration.

    3.    I was the Designated Broker and am currently a Branch Manager at Roy H. Long

Realty Company, Inc. d/b/a Long Realty d/b/a Long Realty Company d/b/a Long Company

("Long Realty"). I am familiar with Long Realty's business generally and its practices with

respect to the form listing agreements Long Realty has used since 2014, specifically.

4.	Long Realty provides real estate brokerage services through independent contractor agents.  Those independent agents, among other things, assist homeowners in selling their homes and list client's homes for sale. Generally, Long Realty provides these services in Southern Arizona. Before April 2, 2020, certain of Long Realty's independent contractor agents utilized the Arizona Regional MLS only on rare occasion. After April 2, 2020, certain of Long Realty's independent contractor agents began using the Arizona Regional MLS more regularly. I understand that the Arizona Regional MLS may be a "Covered MLS" at issue in this case because it "cover[s] the . . . metropolitan area[ of] . . . Phoenix, Arizona." *See* Doc. 84 at 11.

5.	Long Realty requires that its independent contractor agents have homeowners execute listing agreements when they list properties for sale through Long Realty, which articulate the terms of the agreement between Long Realty and the homeowner.  Since at least 2014, Long Realty has provided its independent contractor agents with a form listing agreement for use in listing residential real estate.

6.	Since at least 2014, and in every year since, Long Realty's form listing agreement for residential real estate listed on a Covered MLS has included a broad, binding arbitration provision, which precluded class arbitrations and waived the right to litigate in court or jury trials.

7.	Since at least 2014, Long Realty has instructed its independent contractor agents to request that homeowners execute Long Realty's then relevant form listing agreement.

8.	Accordingly, every Long Realty listing agreement for residential real estate listed on a Covered MLS executed after at least January 2014 should contain a clause requiring arbitration of disputes between Long Realty and the homeowner. These agreements were used in the state of Arizona.

9.      A true and accurate copy of Long Realty's form listing agreement for at least 2014 through March 2016 is attached as <u>Long Realty Declaration Exhibit A</u>.

10.     A true and accurate copy of Long Realty's form listing agreement for March 2016 through January 2019 is attached <u>as Long Realty Declaration Exhibit B</u>.

11.     A true and accurate copy of Long Realty's form listing agreement for January 2019 through May 2020 is attached <u>as Long Realty Declaration Exhibit C</u>.

12.     A true and accurate copy of Long Realty's form listing agreement for May 2020 through the present is attached <u>as Long Realty Declaration Exhibit D</u>.

[remainder of page intentionally blank]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 12-02-2020

Signed: *John Mijac*

Printed: John Mijac

# LISTING AGREEMENT

**(Exclusive Right to Sell)**

**THE PRE-PRINTED PORTIONS OF THIS LISTING AGREEMENT ("AGREEMENT") HAVE BEEN APPROVED BY THE TUCSON ASSOCIATION OF REALTORS® / MULTIPLE LISTING SERVICE, INC. ("MLS"). THIS IS A BINDING CONTRACT. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT YOUR ATTORNEY OR TAX ADVISOR.**

## 1. PROPERTY

1. **EXCLUSIVE RIGHT TO SELL:** I/We ("Seller") hereby give the real estate company named on Line 275 ("Listing
2. Broker") an exclusive and irrevocable right to sell the real estate described below together with all improvements,
3. fixtures, personal property described herein, and appurtenances thereon or incidental thereto (collectively the
4. "Premises"). The term "Listing Broker" shall include the licensed real estate agent(s) of the Listing Broker,
5. if any, named on Line 274 ("Listing Agent").

6. **TERM:** This Agreement shall commence on ____/____/_____ and shall expire at 11:59 P.M. Mountain Standard
7. Time (Arizona) on ____/____/_____ ("Term"). If prior to the expiration of the Term a purchase contract is
8. entered into in writing between Seller and a Buyer, then this Listing Agreement shall be extended through
9. the close of escrow or the termination of said purchase contract, whichever first occurs ("Extended Term").

10. **SELLER REPRESENTATIONS:** Seller represents to all licensed agents involved in the sale of the Premises, to
11. MLS, and to the Buyer(s), and said parties have a right to rely upon: (i) Seller is the sole owner of the Premises;
12. (ii) no other person(s) or entities' consent shall be required to provide marketable title to the Premises;
13. (iii) Seller has the legal standing, capacity, and authority to offer and convey marketable title to the Premises;
14. (iv) Seller is not currently a party to any other listing agreement for the sale of the Premises; and
15. (v) the information provided in this Agreement is complete and accurate.

16. **PREMISES:** The Premises includes the following described real property:

17. **Real Property Address:**_____**Assessor's #:**_____

18. **City/Town/Municipality:** _____ **County:** _____ **AZ, Zip Code:** _____

19. **Legal Description:** _____

20. _____

21. **FIXTURES AND PERSONAL PROPERTY:** The Premises includes all fixtures on the Premises, and any existing
22. personal property specified shall be included in this sale, including but not limited to the following:

23. • free-standing range/oven    • flush-mounted speakers    • landscaping, fountains and lighting
24. • built-in appliances    • attached fireplace equipment    • water-misting/drip irrigation systems
25. • light fixtures    • window/door screens, sun screens    • solar systems
26. • ceiling fans    • storm windows and doors    • pellet, wood-burning or gas-log stoves
27. • towel, curtain/drapery rods    • shutters and awnings    • timers
28. • draperies/other window coverings    • mailbox
29. • attached floor coverings    • storage sheds    • garage door opener(s) and control(s)
30. • attached TV/media antennas    • attached satellite dishes
31. • pool/spa equipment (including all mechanical and cleaning systems)    • water softeners and/or water
32. • security and/or fire systems and/or alarms      purification systems

33. **APPLIANCES AND ADDITIONAL EXISTING PERSONAL PROPERTY:** The Premises shall include the following
34. appliances which are presently located in or upon the Premises: ☐ **Refrigerator** ☐ **Washer** ☐ **Dryer**

35. ☐ **Other** _____

36. **Additional items of personal property included in sale:** _____

37. _____

_____/_____
Seller/Seller

38. **Personal property, fixtures and leased items NOT included in sale** _____

39. _____

## 2. TERMS AND COMPENSATION

40. **LISTED PRICE:** The Premises shall be offered for sale at $_____ ("Listed Price").

41. **TERMS AND CONDITIONS:** The Premises shall be offered for sale pursuant to the provisions of this Listing
42. Agreement, the Information Property Profile Sheet ("Property Profile Sheet"), and any addenda, data and
43. other documentation incorporated into this Listing Agreement (collectively "Agreement").

44. **MODIFICATIONS:** This Agreement may be modified at any time as agreed upon by Seller and Listing Broker
45. in writing.

46. **COMPENSATION: COMPENSATION FOR THE SALE OF THE PREMISES IS NOT SET BY ANY REALTOR®**
47. **ASSOCIATION OR ANY MULTIPLE LISTING SERVICE. THE COMPENSATION PAYABLE FOR THE SALE**
48. **OF THE PREMISES IS NEGOTIATED BETWEEN THE LISTING BROKER AND THE SELLER.**

49. **NON-REFUNDABLE RETAINER FEE:** Listing Broker acknowledges receipt from Seller of a non-refundable
50. retainer fee of $_____ for initial consultation and research ("Retainer Fee") which shall be deemed

51. earned upon receipt and which ☐ **Shall** ☐ **Shall Not** be credited against any other compensation owed by
52. Seller to Listing Broker as provided on Lines 53 through 71.

53. **COMPENSATION FOR SALE OF PREMISES:** Seller shall pay to Listing Broker a total compensation of _____,
54. which is retained solely by Broker, and (Circle One): 7%, 8%, 9% or 10% of the selling price upon the
55. occurrence of any of the following events:
56. A. During the Term or Extended Term of this Agreement, Listing Broker, individually or in cooperation
57.   with a licensed Broker(s)/Agents ("Cooperating Broker"), produces a Buyer ready, willing, and able to
58.   purchase the Premises according to the terms and conditions of this Agreement or upon such other
59.   price and/or terms and conditions as subsequently agreed to by Seller; or
60. B. During the Term or Extended Term of this Agreement, Seller sells/transfers/leases/options/auctions/
61.   encumbers/unilaterally terminates this Agreement or otherwise makes the title of the Premises
62.   unmarketable or in any manner makes the Premises unavailable to Listing Broker for sale; or
63. C. **Within** _____ **days** after the expiration of the Term or Extended Term of this Agreement, Seller
64.   accepts an offer for the sale, lease with option to purchase, exchange, or otherwise conveys title to any
65.   person(s) (or an entity substantially owned by any such person(s)) introduced to the Premises during
66.   the Term or Extended Term of this Agreement by any source whatsoever, unless the Premises has first
67.   been re-listed for sale with another broker on an exclusive-right-to-sell basis; or
68. D. During the Term or Extended Term of this Agreement, Seller agrees to sell, or transfers the title of all or
69.   any portion of the Premises to any governmental entity resulting from an actual, claimed or threatened
70.   taking of all or part of the Premises by the governmental entity pursuant to its power of eminent domain; or
71. E. During the Term or Extended Term of this Agreement, a sale of the Premises is prevented by Seller.

72. **PAYMENT OF COMPENSATION:** If the Premises is sold through Listing Broker, the Compensation shall
73. be paid at and as a condition of the close of escrow. In all other cases set forth in Lines 56 - 71 above, the
74. Compensation shall be paid upon the occurrence of the event.

75. **ESCROW INSTRUCTIONS:** This Agreement may be delivered to escrow and shall constitute instructions by
76. Seller to Escrow Agent to pay the Compensation authorized by this Agreement. If an earnest money deposit
77. is forfeited, Escrow Agent shall pay Compensation to Listing Broker in an amount equal to one-half of the
78. earnest money deposit, not to exceed the full amount of Compensation due pursuant to Lines 53 - 71 above.

79. **CLOSE OF ESCROW:** Close of Escrow ("COE") is when the deed and any other instruments necessary to
80. complete the transfer of title are recorded with the appropriate county recorder's office. Seller shall timely
81. comply with all terms and conditions of the purchase contract, including executing and delivering to Escrow

_____/_____
Seller/Seller

82. Company all closing documents, and performing all other acts necessary in sufficient time to allow COE to occur
83. by the closing date specified in the purchase contract ("COE Date").  Unless otherwise agreed, Seller shall pay a
84. prorated portion of taxes, assessments, HOA fees, and other costs related to COE that are customarily prorated in
85. in the county where the Premises is located.  The sale proceeds shall be promptly distributed following COE.
86. Unless otherwise specified in the purchase contract, Seller shall deliver possession, occupancy, access to keys,
87. and/or means to operate all locks, mailbox, security system/alarms and all common area facilities to Buyer at COE.

## 3.  DUTIES AND AUTHORIZATIONS

88. **REPRESENTATION OF SELLER:**  Unless otherwise agreed, a Listing Broker acts as agent for Seller only and
89. has the duties of loyalty, obedience, disclosure, confidentiality, and accounting ("Fiduciary Duties") as well as other
90. duties imposed by the Arizona Department of Real Estate ("ADRE").  Seller may be responsible for the actions of
91. Listing Broker.  Listing Broker shall always exercise reasonable skill and care in the performance of Listing
92. Broker's duties to Seller.  Seller is aware that Listing Agent may list other properties that are similar to and/or are
93. located in proximity to the Premises.

94. **REPRESENTATION OF BUYER:**  A Buyer's Broker (or "Cooperating Broker") represents only the Buyer and has
95. Fiduciary Duties as well as other duties imposed by ADRE in dealings with Buyer.  Buyer's Broker may receive
96. Compensation from Buyer, Seller, or both.  Seller authorizes Listing Broker to cooperate with and share
97. Compensation with Buyer's Broker as follows: _____.

98. **CONDUCT OF BROKERS:**  Regardless of whom they represent, real estate licensees have the obligation to:
99. (i) treat all parties to a transaction fairly; (ii) disclose, in writing, all facts known to the licensee that may materially
100. and adversely affect the consideration to be paid for the Premises; (iii) disclose that Seller or Buyer may be
101. unable to perform; and (iv) disclose any information concerning any material non-obvious (latent) defect existing
102. in the Premises.  REALTORS® are further obligated by their Code of Ethics to treat all parties honestly.

103. **DUAL (limited) REPRESENTATION:**  Listing Broker, or another licensee(s) within Listing Broker's firm may
104. legally represent Seller and Buyer ("Dual Agent").  A Dual Agent has Fiduciary Duties as well as other duties
105. imposed by ADRE to Seller and Buyer but such duties may be limited.  For instance, Listing Broker may not,
106. without Buyer's prior written consent, disclose to Seller confidential information that Buyer will accept a price or
107. terms other than that offered.  Likewise, Listing Broker may not, without Seller's prior written consent, disclose to
108. Buyer confidential information that Seller may accept a price or terms other than as stated in this Agreement.

109. **CONSENT TO DUAL AGENCY:**  Seller ☐ **Does** ☐ **Does Not** authorize Listing Broker to be a Dual Agent.

**Seller Initials Required:**      _____/_____

Seller/Seller

110. **NON DISCLOSURE:**  Sellers and Listing Brokers are not obligated to disclose that a property has been the site of
111. a natural death, suicide, homicide, or any crime classified as a felony, nor that the property was owned or occupied
112. by a person exposed to HIV, or diagnosed as having AIDS or any other disease not known to be transmitted
113. through common occupancy of real estate, nor that the property is located in the vicinity of a sex offender.

114. **SIGNS/MARKETING:**  Seller ☐ **Does** ☐ **Does Not** agree to the placement of a customary "For Sale" and
115. "Sold" sign(s) together with customary sign riders on the Premises through COE.  In any event, Seller agrees
116. to immediately remove, or have removed, all "For Sale" signs not belonging to Listing Broker.  The placement
117. of directional or other signs on public or private property without the property owner's permission is illegal.
118. Listing Broker/Agent will not illegally place such signage.  Seller agrees not to advertise or market the Premises
119. in any manner without the prior written permission of Listing Broker.

120. **VIDEO/STILL IMAGES:**  Seller ☐ **Does** ☐ **Does Not** consent to the taking and placement of video, still or
121. other images of the Premises on the Internet and in other media at the sole discretion of Listing Broker.  Seller
122. is cautioned to protect valuable items from view.  Listing Broker has no responsibility for loss of such valuable
123. items.  Seller understands the public may have unlimited access to the images and may download and/or

_____/_____

Seller/Seller

124. copy them. Any such images are the property of Listing Broker.

125. **ACCESS AND KEYSAFE:** Seller ☐ **Does** ☐ **Does Not** authorize the installation and use of a Keysafe that
126. contains an access key to the Premises. A Keysafe permits access at any time to the interior of the Premises
127. by MLS Participants together with potential Buyers. Seller is advised to take appropriate security precautions to
128. protect valuable items. Seller agrees, upon reasonable notice, to cooperate with previews and showings of
129. the Premises at reasonable times. If there are any adult occupants of the Premises other than Seller or
130. Seller's family, or if the Premises is subject to a rental agreement, then Seller shall immediately provide
131. Listing Broker with written permission from all adult occupants authorizing access by the MLS Participants
132. and potential buyers at reasonable times upon reasonable prior notice.

133. **HOME WARRANTY PLAN:**      Seller ☐ **Does** ☐ **Does Not** agree to provide Buyer, at Seller's expense, at
134. COE, a home warranty plan acceptable to Seller. Seller is aware that home warranty plans may provide
135. benefits to Seller as well as to the Buyer of the Premises.

136. **SUBSEQUENT OFFER:** Seller shall, prior to close of escrow, receive all offer(s) to purchase the Premises
137. unless otherwise agreed upon by Seller in writing.

138. **INDEMNIFICATION:** As a material condition of this Agreement, Seller agrees that the Tucson Association of
139. REALTORS® ("TAR") and MLS are third-party beneficiaries of this Agreement for the purpose of indemnification.
140. Seller agrees to hold harmless and indemnify TAR, MLS, their Directors, Officers, employees and volunteers
141. as well as Listing Broker and the Cooperating Broker involved in this transaction from any and all claims,
142. damages, liability or other loss, including all attorneys' fees and legal costs incurred arising out of any claim of
143. misrepresentation or for any action or non action by Seller including, but not limited to, the supplying of incorrect
144. information, breach of warranty or any other claim arising out of this Agreement or the sale and purchase of
145. the Premises or as a result of the dissemination of any inaccurate information concerning the listing of the
146. Premises published by a third party website. This provision is to be liberally construed in favor of the indemnified
147. parties.

Seller Initials Required:     _____/_____
                                           Seller/Seller

## 4.   SELLER OBLIGATIONS

148. **FAIR HOUSING:** The Premises shall be offered to all persons without regard to their ancestry, race, religion,
149. color, sex, sexual orientation, handicap, marital status, familial status, age or national origin or any other
150. mandated classification by prevailing federal, state or local laws.

151. **SELLER PROPERTY DISCLOSURE STATEMENT ("SPDS"):** Seller shall complete and return to Listing Broker
152. a SPDS form within five (5) calendar days after receipt thereof. Seller shall fully disclose all material facts
153. known to Seller concerning any previous or current problem(s) or condition(s) that could adversely affect the
154. value or marketability of the Premises. Seller shall immediately advise Listing Broker, in writing, concerning any
155. subsequent changes that occur concerning the Premises or that are subsequently discovered and cause the
156. SPDS form to be amended accordingly and authorizes release of such information to all Cooperating Brokers.

157. **HOMEOWNER'S ASSOCIATION INFORMATION:** Seller shall, upon receipt from Listing Broker, complete,
158. or provide to the Homeowner's Association ("HOA") for completion, the HOA Information form and cause the
159. completed form to be returned to Listing Broker within ten (10) days of the delivery thereof to Seller.

160. **HOA RESALE NOTIFICATION:** If the Premises is in a residential HOA/Condominium or Planned Unit
161. Development ("Planned Community") consisting of less than fifty (50) units, Seller shall deliver to Buyer and
162. Escrow Company the disclosure notice to be provided to Buyer within ten (10) days following acceptance of a
163. purchase contract. If the Premises is in a Planned Community with fifty (50) or more units, the HOA shall mail
164. or deliver the required disclosure notice to Buyer and the Escrow Company within ten (10) days following receipt
165. of a written notice of a pending sale of the Premises. Seller shall promptly notify the HOA of the pending sale of

_____/_____
Seller/Seller

166. the Premises. Upon opening escrow, Seller agrees to pay HOA fees required to obtain said disclosure notice.

167. **INSURANCE CLAIMS HISTORY:** Seller shall deliver to buyer a written five-year insurance claims history
168. regarding the Premises (or a claims history for the length of time Seller has owned the Premises if less than
169. five years) from Seller's insurance company or an insurance support organization, or consumer reporting
170. agency, or if unavailable from those sources, from Seller, within five (5) days after contract acceptance.

171. **CONDITION OF PREMISES AND INSURANCE:** Seller is responsible to maintain the Premises in the same or
172. better condition as on the date of execution of this Agreement through COE. Therefore, Seller should consider
173. maintaining appropriate hazard insurance to cover partial or complete destruction of the Premises as well as
174. any loss due to theft, vandalism, water and glass breakage, if available, as well as liability coverage.

175. **LEAD BASED PAINT:** If any portion of the Premises was constructed prior to 1978, federal law requires that
176. Buyer be provided a Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards form.
177. If applicable, Seller shall provide Listing Broker, simultaneously with the execution of this Agreement or not
178. later than five (5) days following execution of this Agreement, a completed and executed disclosure form.

179. **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 ("FIRPTA"):** If Seller is a foreign person
180. or a nonresident alien, Seller shall provide Escrow Agent with a completed and signed FIRPTA certificate.

181. **REFERRALS-RESPONSIBILITY:** If Listing Broker, Cooperating Broker, or their Agents recommend to Seller any
182. person, entity or service, for any purpose, it shall be Seller's duty to independently investigate the qualifications
183. of the referred party. Seller shall hold harmless and indemnify the referring party from any adverse consequences
184. resulting from such referral.

## 5. FUTURE SELLER OBLIGATIONS

185. **SEPTIC OR ALTERNATIVE TREATMENT SYSTEM:** If the Premises is served in whole or in part by an on-site
186. wastewater treatment facility, Seller shall, at Seller's expense, place in escrow any certification(s) which may be
187. required by any law and/or any appropriate regulatory bodies. Certification may require that the system be
188. inspected, emptied and/or repaired prior to the issuance of the requisite certification. If a public sewer line of
189. sufficient capacity exists within 200 feet of the Premises, the lender or local health authority may require
190. connection to the public sewer line prior to or upon transfer of ownership. Unless otherwise agreed upon with
191. Buyer, such connection to the public sewer line shall be at Seller's expense.

192. **POOL SAFETY:** If the Premises includes a swimming pool or spa, Seller shall provide Buyer with an opportunity
193. to review the relevant pool barrier laws and shall provide Buyer with a notice concerning pool safety which shall
194. be signed by Buyer acknowledging receipt thereof.

195. **DEED/TITLE INSURANCE:** Seller shall convey title to Buyer by general warranty deed. Buyer shall be provided,
196. at Seller's expense, an American Land Title Association ("ALTA") Homeowner's Title Insurance Policy, or if not
197. available, an ALTA Residential Title Insurance Policy ("Plain Language" / "1-4" units") or, if not available, a
198. Standard Owner's Title Insurance Policy.

199. **PREMISES CONDITION AT CLOSING:** Seller shall remove all personal property not included in the sale and all
200. debris from the Premises at the earlier of possession by Buyer or COE whichever first occurs.

## 6. REMEDIES

201. **DISPUTE RESOLUTION:** Listing Broker and Seller agree to mediate any dispute or claim arising out of or relating
202. to this Agreement in accordance with the REALTORS® Dispute Resolution System, or as otherwise agreed. All
203. mediation costs shall be paid equally by the parties. In the event that mediation does not resolve all disputes or
204. claims, the unresolved issues shall be submitted for arbitration. Either party may initiate arbitration by giving notice
205. of the dispute stating with particularity that party's position. The arbitration shall be conducted under the rules and
206. procedures followed by the applicable Association of REALTORS®. If Seller objects to REALTOR® arbitration,

_____/_____
Seller/Seller

207. the arbitration shall be conducted by a mutually agreed-upon arbitrator, or if the parties fail to agree on an arbi-
208. trator, the dispute shall be resolved by an arbitrator appointed through the Pima County Arizona Superior Court
209. pursuant to A.R.S. §12-1501 *et seq.* **While either party shall have all the rights and benefits of arbitration,**
210. **both parties are giving up the right to litigate such claims and disputes in a court or jury trial.** The arbi-
211. trator's award shall be final and binding and not subject to appeal. Neither party shall be entitled to join or conso-
212. lidate disputes by or against others, or to include in any arbitration any dispute as a representative or member of
213. any class, or to act in any arbitration in the interest of the general public or in any private attorney general capacity.

214. **ATTORNEYS' FEES:** In any proceeding, including an arbitration under Section 6, for damages, or to enforce any
215. of the provisions of this Agreement, including a claim by Listing Broker for payment of Compensation, the substan-
216. tially prevailing party shall be entitled to recover from the other party its reasonable attorneys' fees and related
217. expenses including, but not limited to, expert witness fees, fees paid to investigators, and customary court costs.

## 7. ADDITIONAL TERMS

218. **ARIZONA LAW:** This Agreement shall be governed by Arizona law and is subject to the jurisdiction of Arizona.

219. **TIME IS OF THE ESSENCE:** The parties acknowledge that a material and negotiated condition of this Agreement
220. is that time is of the essence in the performance of the obligations described herein.

221. **DAYS:** All references to days in this Agreement shall be construed as calendar days. The day of the act or event
222. from which the time period begins to run is not included and the last day of the time period is included.

223. **COPIES AND COUNTERPARTS:** A fully executed facsimile or electronic copy of this Agreement shall be treated
224. as an original Agreement. This Agreement may be executed in counterparts, which shall become effective upon
225. delivery. All counterparts shall be deemed to constitute one instrument. The Disclosure of Information on Lead-
226. Based Paint and/or Lead-Based Paint Hazards form may not be signed in counterpart.

227. **ENTIRE AGREEMENT/NO MODIFICATION:** This Agreement, the Property Profile Sheet, and any addenda,
228. photographs, data or other documentation which shall be incorporated into this Listing Agreement, constitutes the
229. entire Agreement between Seller and Listing Broker and supersedes any prior written or oral representations or
230. agreements between Seller and Listing Broker. Any release from or modification to this Agreement requested by
231. Seller during the term of this Agreement will be in writing signed by the parties. The pre-printed portions of this
232. Agreement may not be modified without the express written permission of MLS. No modifications shall be made to
233. this Agreement which shall place Listing Broker and his/her agents in violation of the MLS Rules and Regulations.
234. The failure to initial any page of this Agreement will not affect the validity or terms of this Agreement.

235. **IMPORTANT NOTE:** If Seller signs more than one Listing Agreement during the Term or Extended Term
236. of this Agreement, Seller could be responsible for paying Compensation to more than one broker upon
237. the sale of the Premises.

238. **SELLER MATERIALS:** If Seller provides Listing Broker any photographs, floor plans, art work, plot plan
239. drawings, or any other items created by or for Seller ("Seller Materials"), Seller, having the authority to do so,
240. hereby grants Listing Broker and MLS a non-exclusive right and license to all intellectual property rights
241. thereto including the copyright to use and defend Seller Materials in any manner and for any reason. Upon
242. termination of this Agreement, upon written request, the Seller Materials shall be returned to Seller.

243. **ADDITIONAL TERMS:** _____
244. _____
245. _____
246. _____
247. _____
248. _____

_____/_____
Seller/Seller

---

## 8.  ACCEPTANCE

---

249. *__SELLER__*

250. _____     _____
251. Print Seller Name                        Print Seller Name

252. _____     _____
253. Seller Signature          (MO/DA/YR)     Seller Signature          (MO/DA/YR)

254. _____     _____
255. Seller Address                           Seller Address

256. _____     _____
257. City/State               Zip             City/State               Zip

258. _____     _____
259. Seller Email Address                     Seller Email Address

260. _____     _____
261. Seller Home Phone     Seller Home Fax    Seller Home Phone     Seller Home Fax

262. _____     _____
263. Seller Office Phone    Seller Office Fax  Seller Office Phone    Seller Office Fax

264. **ACCEPTANCE BY BROKER:**  By signing below the Authorized Signor acknowledges authority to sign
265. this Agreement and accepts from Seller (and Listing Agent if applicable) an irrevocable assignment of the copyright
266. and other intellectual property rights in Seller Materials, including the right to protect and enforce the ownership
267. rights therein. The Authorized Signor reserves a non-exclusive right to utilize Seller Materials in the promotion and
268. marketing of the Premises.  If and when the Premises is listed in MLS, the Authorized Signor irrevocably assigns
269. an undivided interest in such rights to MLS.  By publication of a listing of the Premises, MLS accepts an irrevocable
270. co-ownership of said property rights during the Term and/or Extended Term of this Agreement.  Each party shall
271. have an independent right to enforce and defend the property rights each has acquired in the Seller (Listing
272. Agent's) Materials.  Upon termination of this Agreement, Seller Materials shall be returned to Seller upon
273. receipt of written request from Seller.

274. Designated Broker: Jerome King        _____
275. Long Realty Company                    Listing Agent Name

276. Branch Office Address:_____

277. _____   _____    _____
278. Office Phone/Agent Contact Phone       Fax                  E-mail Address

279. _____
280. AUTHORIZED SIGNOR (Listing Agent)

---

| File No. _____ | Designated Broker or Designee Initials: _____ | Date: _____ |

_____/_____
Seller/Seller

# LISTING AGREEMENT

### (Exclusive Right to Sell)

**THE PRE-PRINTED PORTIONS OF THIS LISTING AGREEMENT ("AGREEMENT") HAVE BEEN PREPARED BY THE MULTIPLE LISTING SERVICE OF SOUTHERN ARIZONA ("MLS") AND APPROVED BY LONG REALTY COMPANY. THIS IS A BINDING CONTRACT. FOR LEGAL OR TAX ADVICE, CONSULT YOUR ATTORNEY OR TAX ADVISOR.**

## 1. PROPERTY

1    **EXCLUSIVE RIGHT TO SELL:** I/We ("Seller") hereby give the real estate company named on Line 334 ("Listing
2    Broker") an exclusive and irrevocable right to sell the real estate described below together with all improvements,
3    fixtures, personal property described herein, and appurtenances thereon or incidental thereto (collectively the
4    "Premises"). The term "Listing Broker" shall include the licensed real estate agent(s) of the Listing Broker,
5    if any, named on Line 333 ("Listing Agent").

6    **TERM:** This Agreement shall commence on _____/_____/_____ and shall expire at 11:59 P.M. Mountain Standard
7    Time (Arizona) on ___/_____/_____ ("Term"). If prior to the expiration of the Term a purchase contract is
8    entered into in writing between Seller and a Buyer, then this Listing Agreement shall be extended through
9    the close of escrow or the termination of said purchase contract, whichever first occurs ("Extended Term").

10    **SELLER REPRESENTATIONS:** Seller represents to all licensed agents involved in the sale of the Premises, to
11    MLS, and to the Buyer(s), and said parties have a right to rely upon: (i) Seller is the sole owner of the Premises;
12    (ii) no other person(s) or entities' consent shall be required to provide marketable title to the Premises;
13    (iii) Seller has the legal standing, capacity, and authority to offer and convey marketable title to the Premises;
14    iv) Seller is not currently a party to any other listing agreement for the sale of the Premises; and
15    (v) the information provided in this Agreement is complete and accurate.

16    **PREMISES:** The Premises includes the following described real property:

17    **Real Property Address:**_____ **Assessor's #:**_____

18    **City/Town/Municipality:** _____ **County:** _____ **AZ, Zip Code:** _____

19    **Legal Description:** _____

20    _____

21    Addenda Incorporated: ☐ Exempt Delayed ☐ Short Sale ☐ Other: _____

22    **FIXTURES AND PERSONAL PROPERTY:** The Premises includes all fixtures on the Premises, and any existing
23    personal property specified shall be included in this sale, including but not limited to the following:

24    
- free-standing range/oven
- ceiling fans
- attached floor coverings
- window and door screens, sun screens
- garage door openers and controls
- outdoor landscaping, fountains, and lighting
- pellet, wood-burning or gas-log stoves
- storage sheds
- light fixtures
- towel, curtain and drapery rods

- flush-mounted speakers
- storm windows and doors
- attached media antennas/ satellite dishes
- attached fireplace equipment
- timers
- draperies and other window coverings
- shutters and awnings
- water-misting systems

- solar systems (if owned)
- mailbox
- central vacuum, hose, and attachments
- built in appliance
- pool and spa equipment (including . mechanical or other cleaning systems)
- security and/or fire systems and/or alarms
- water softeners
- water purification systems

34    **APPLIANCES AND ADDITIONAL EXISTING PERSONAL PROPERTY:** The Premises shall include the following
35    appliances which are presently located in or upon the Premises: ☐ **Refrigerator** ☐ **Washer** ☐ **Dryer**

36    ☐ **Other** _____

_____/_____
Seller/Seller

37  **Additional items of personal property included in sale (to be listed in a separate Bill of Sale):**
38  _____

39  **Personal property, fixtures and leased items NOT included in sale** _____
40  _____

## 2.   TERMS AND COMPENSATION

41  **LISTED PRICE:** The Premises shall be offered for sale at $_____ ("Listed Price").

42  **TERMS AND CONDITIONS:** The Premises shall be offered for sale pursuant to the provisions of this Listing
43  Agreement, the Information Property Profile Sheet ("Property Profile Sheet"), and any addenda, data and
44  other documentation incorporated into this Listing Agreement (collectively "Agreement"). Seller authorizes the
45  Listing Broker to update and correct incidental information on the Property Profile Sheet as, in Listing Broker's
46  opinion, is necessary. This shall not include price changes, which must be made with Seller's written authorization.

47  **MODIFICATIONS:** This Agreement may be modified at any time as agreed upon by Seller and Listing Broker
48  in writing. The Status Report Form may constitute an addendum to this Agreement.

49  **COMPENSATION:** COMPENSATION FOR THE SALE OF THE PREMISES IS NOT SET BY ANY REALTOR®
50  ASSOCIATION OR ANY MULTIPLE LISTING SERVICE. THE COMPENSATION PAYABLE FOR THE SALE
51  OF THE PREMISES IS NEGOTIATED BETWEEN THE LISTING BROKER AND THE SELLER.

52  **NON-REFUNDABLE RETAINER FEE:** Listing Broker acknowledges receipt from Seller of a non-refundable
53  retainer fee of $_____ for initial consultation and research ("Retainer Fee") which shall be deemed

54  earned upon receipt and which ☐ **Shall** ☐ **Shall Not** be credited against any other compensation owed by
55  Seller to Listing Broker as provided on Lines 56 through 74.

56  **COMPENSATION FOR SALE OF PREMISES:** Seller shall pay to Listing Broker $199.00, which is retained solely

57  by Broker, and (Check One): ☐7%, ☐8%,☐9%, ☐10% or ☐ _____% of the selling price **("Total Compensation")**
58  upon the occurrence of any of the following events:

59  A.   During the Term or Extended Term of this Agreement, Listing Broker, individually or in cooperation
60        with a licensed Broker(s)/Agents ("Cooperating Broker"), produces a Buyer ready, willing, and able to
61        purchase the Premises according to the terms and conditions of this Agreement or upon such other
62        price and/or terms and conditions as subsequently agreed to by Seller; or
63  B.   During the Term or Extended Term of this Agreement, Seller sells/transfers/leases/options/auctions/
64        encumbers/unilaterally terminates this Agreement or otherwise makes the title of the Premises
65        unmarketable or in any manner makes the Premises unavailable to Listing Broker for sale; or
66  C.   **Within** _____ **days** after the expiration of the Term or Extended Term of this Agreement, Seller
67        accepts an offer for the sale, lease with option to purchase, exchange, or otherwise conveys title to any
68        person(s) (or an entity substantially owned by any such person(s)) introduced to the Premises during
69        the Term or Extended Term of this Agreement by any source whatsoever, unless the Premises has first
70        been re-listed for sale with another broker on an exclusive-right-to-sell basis; or
71  D.   During the Term or Extended Term of this Agreement, Seller agrees to sell, or transfers the title of all or
72        any portion of the Premises to any governmental entity resulting from an actual, claimed or threatened
73        taking of all or part of the Premises by the governmental entity pursuant to its power of eminent domain; or
74  E.   During the Term or Extended Term of this Agreement, a sale of the Premises is prevented by Seller.

75  **PAYMENT OF COMPENSATION:** If the Premises is sold through Listing Broker, the Compensation shall
76  be paid at and as a condition of the close of escrow. In all other cases set forth in Lines 56 - 74 above, the
77  Compensation shall be paid upon the occurrence of the event.

78  **ESCROW INSTRUCTIONS:** This Agreement may be delivered to escrow and shall constitute instructions by
79  Seller to Escrow Agent to pay the Compensation authorized by this Agreement out of proceeds due Seller at time

_____/_____
Seller/Seller

80   of closing.  If Seller's proceeds are not sufficient in amount to pay such Compensation, Seller shall deposit a sum
81   sufficient to pay said Compensation. If an earnest money deposit is forfeited, Escrow Agent shall pay
82   Compensation to Listing Broker in an amount equal to one-half of the earnest money deposit, not to exceed the full
83   amount of Compensation due pursuant to Lines 57 - 75 above.

84   **CLOSE OF ESCROW:**  Close of Escrow ("COE") is when the deed and any other instruments necessary to
85   complete the transfer of title are recorded with the appropriate county recorder's office.  Seller shall timely
86   comply with all terms and conditions of the purchase contract, including executing and delivering to Escrow
87   Company all closing documents which may be required to be furnished by Seller, and performing all other acts
88   necessary in sufficient time to allow COE to occur by the closing date specified in the purchase contract ("COE
89   Date").  Unless otherwise agreed, Seller shall pay a prorated portion of taxes, assessments, HOA fees, and other
90   costs related to COE that are customarily prorated in the county where the Premises is located.  The sale
91   proceeds shall be promptly distributed following COE.  Unless otherwise specified in the purchase contract,
92   Seller shall deliver possession, occupancy, existing keys, and/or means to operate all locks, mailbox, security
93   system/alarms and all common area facilities to Buyer at COE.

## 3. DUTIES AND AUTHORIZATIONS

94   **REPRESENTATION OF SELLER:**  Unless otherwise agreed, a Listing Broker acts as agent for Seller only and
95   has the duties of loyalty, obedience, disclosure, confidentiality, and accounting ("Fiduciary Duties") as well as other
96   duties imposed by the Arizona Department of Real Estate ("ADRE").  Seller acknowledges the property may be
97   shown to Buyers by Listing Broker and this shall not constitute a conflict of interest.   Seller should carefully review
98   all advertising materials and contractual documents prepared by Listing Broker as Seller may be bound by these
99   materials. Listing Broker shall always exercise reasonable skill and care in the performance of Listing Broker's
100   duties to Seller.  Seller is aware Listing Broker may list other properties which are similar to and/or which may be
101   located in proximity to the Premises.

102   **REPRESENTATION OF BUYER:**  A Buyer's Broker (or "Cooperating Broker") represents only the Buyer and has
103   Fiduciary Duties as well as other duties imposed by ADRE in dealings with Buyer.  Buyer's Broker may receive
104   Compensation from Buyer, Seller, or both.  Seller authorizes Listing Broker to cooperate with and share
105   Compensation with Buyer's Broker as follows: No less than 3% of gross sales price.

106   **CONDUCT OF BROKERS:**  Regardless of whom they represent, real estate licensees have the obligation to:
107   (i) treat all parties to a transaction fairly; (ii) disclose, in writing, all facts known to the licensee that may materially
108   and adversely affect the consideration to be paid for the Premises; (iii) disclose that Seller or Buyer may be
109   unable to perform; and (iv) disclose any information concerning any material non-obvious (latent) defect existing
110   in the Premises.  REALTORS® are further obligated by their Code of Ethics to treat all parties honestly.

111   **DUAL (limited) REPRESENTATION:**  A dual agency (or limited agency) may occur when the Listing Broker
112   procures a Buyer for the Property.  In this situation, the same real estate company may be representing the
113   Seller's interest and the Buyer's interest.  A dual agency may occur in this or in other ways.  Brokers and their
114   Agents can legally represent both the Seller and the Buyer with the knowledge and written consent of both the
115   Seller and the Buyer.  A Dual Agent has the duties of loyalty, obedience, disclosure, confidentiality and accounting
116   to both the Seller and the Buyer.  Seller recognizes that in a dual agency situation, the duties normally owed the
117   Seller by the Listing Broker and his/her Agents may be limited in that confidential information pertaining to the
118   Buyer may not be disclosed to the Seller (and likewise, confidential information concerning the Seller may not be
119   disclosed to the Buyer).  Seller agrees that the Listing Broker and his/her Agents shall not be liable for failing or
120   refusing to disclose confidential information.  The Dual Agent may receive compensation from the Buyer and/or
121   from the Listing Broker with the written consent of all parties.

122   **CONSENT TO DUAL AGENCY:  Seller ☐ Does ☐ Does Not** authorize Listing Broker to be a Dual Agent.

123                            **Seller Initials Required:**        \_\_\_\_/\_\_\_\_
124                                                              Seller/Seller

125   **NON DISCLOSURE:**  Sellers and Listing Brokers are not obligated to disclose that a property has been the site of
126   a natural death, suicide, homicide, or any crime classified as a felony, nor that the property was owned or occupied

                                                          \_\_\_\_/\_\_\_\_
                                                          Seller/Seller

127 by a person exposed to HIV, or diagnosed as having AIDS or any other disease not known to be transmitted
128 through common occupancy of real estate, nor that the property is located in the vicinity of a sex offender.

129 **SIGNS/MARKETING:** Seller ☐ **Does** ☐ **Does Not** agree to the placement of a customary "For Sale" and
130 "Sold" sign(s) together with customary sign riders on the Premises through COE. In any event, Seller agrees
131 to immediately remove, or have removed, all "For Sale" signs not belonging to Listing Broker. The placement
132 of directional or other signs on public or private property without the property owner's permission is illegal.
133 Listing Broker/Agent will not illegally place such signage. Seller agrees not to advertise or market the Premises
134 in any manner without the prior written permission of Listing Broker.

135 **VIDEO/STILL IMAGES:** Seller ☐ **Does** ☐ **Does Not** consent to the taking and placement of video, still or
136 other images of the Premises on the Internet and in other media at the sole discretion of Listing Broker. Seller
137 is cautioned to protect valuable items from view. Listing Broker has no responsibility for loss of such valuable
138 items. Seller understands the public may have unlimited access to the images and may download and/or
139 copy them. Any such images are the property of Listing Broker.

140 **ACCESS AND KEYSAFE:** Seller ☐ **Does** ☐ **Does Not** authorize the installation and use of a Keysafe that
141 contains an access key to the Premises. A Keysafe permits access at any time to the interior of the Premises
142 by MLS Participants together with potential Buyers. Seller is advised to take appropriate security precautions to
143 protect valuable items. Seller agrees, upon reasonable notice, to cooperate with previews and showings of
144 the Premises at reasonable times. If there are any adult occupants of the Premises other than Seller or
145 Seller's family, or if the Premises is subject to a rental agreement, then Seller shall immediately provide
146 Listing Broker with written permission from all adult occupants authorizing access by the MLS Participants
147 and potential buyers at reasonable times upon reasonable prior notice according to the current Arizona Landlord
148 Tenant Act.

149 **HOME WARRANTY PLAN:** Seller ☐ **Does** ☐ **Does Not** agree to provide Buyer, at Seller's expense, at
150 COE, a home warranty plan acceptable to Seller. Seller is aware that home warranty plans may provide
151 benefits to Seller, during the Term and/or escrow period, as well as to the Buyer of the Premises.

152 **SUBSEQUENT OFFER:** Seller shall, prior to close of escrow, receive all offer(s) to purchase the Premises
153 unless otherwise agreed upon by Seller in writing. Seller understands that any offer accepted by the Seller
154 subsequent to a first accepted offer must be a backup offer contingent on the cancellation of the existing Contract.

155 **INDEMNIFICATION:** As a material condition of this Agreement, Seller agrees that the local association of
156 REALTORS® and local MLS (collectively "MLS") are third-party beneficiaries of this Agreement for the purpose of
157 indemnification. Seller agrees to hold harmless and indemnify MLS, their Directors, Officers, employees and
158 volunteers as well as Listing Broker and the Cooperating Broker involved in any transaction resulting from this
159 listing from any and all claims, damages, liability or other loss, including all attorneys' fees and legal costs incurred
160 arising out of any claim of misrepresentation or for any action or non action by Seller including, but not limited to,
161 the supplying of incorrect information, breach of warranty or any other claim arising out of this Agreement or the
162 sale and purchase of the Premises or as a result of the dissemination of any inaccurate information concerning the
163 listing of the Premises published by a third party website. This provision is to be liberally construed in favor of the
164 indemnified parties.

165                                                                  **Seller Initials Required:** _____/_____
166                                                                                       Seller/Seller

## 4. SELLER OBLIGATIONS

167 **FAIR HOUSING:** The Premises shall be offered to all persons without regard to their ancestry, race, religion,
168 color, gender, sexual orientation, handicap, marital status, familial status, age or national origin or any other
169 mandated classification by prevailing federal, state or local laws.

_____/_____
Seller/Seller

170 **SELLER PROPERTY DISCLOSURE STATEMENT ("SPDS"):** Seller shall complete and return to Listing Broker
171 a SPDS form within five (5) calendar days after receipt thereof. Listing Broker shall have no responsibility, in
172 whole or part, for the preparation of the SPDS. Seller shall fully disclose all material facts known to Seller
173 concerning any previous or current problem(s) or condition(s) that could adversely affect the value or marketability
174 of the Premises. Seller shall immediately advise Listing Broker, in writing, concerning any subsequent changes
175 that occur concerning the Premises or that are subsequently discovered and cause the SPDS form to be amended
176 accordingly and authorizes release of such information to all Cooperating Brokers. Seller agrees to hold Broker
177 harmless from any damages if Seller does not inform Broker of changes in writing.

178 **AFFIDAVIT OF DISCLOSURE:** If the Premises is located in an unincorporated area of the county, and five or fewer
179 parcels of property other than subdivided property are being transferred, the Seller shall be required to provide Listing
180 Broker a completed, notarized State of Arizona Affidavit of Disclosure form required pursuant to Arizona Revised
181 Statute§33-422 within seven (7) days of the commencement date of this Agreement.

182 **DOMESTIC WATER WELL/WATER USE ADDENDUM SELLER'S PROPERTY DISCLOSURE STATEMENT**
183 **("DOMESTIC WATER WELL/WATER USE ADDENDUM SPDS"):** Property ☐ **Does** ☐ **Does Not** have a
184 Domestic Water Well. If the property is served by a domestic water well, Seller shall complete and return the
185 Domestic Water Well/Water Use Addendum SPDS to Listing Broker within five (5) calendar days after receipt
186 thereof. Seller shall fully disclose all material facts known to Seller concerning any previous or current problem(s)
187 or condition(s) that could adversely affect the value or marketability of the Property. Seller shall immediately
188 advise Listing Broker, in writing, concerning any subsequent changes which occur concerning the Property or which
189 are subsequently discovered and cause the Domestic Water Well/ Water Use Addendum SPDS form to be
190 amended accordingly and authorizes release of such information to all Cooperating Brokers. Seller agrees to hold
191 Broker harmless from any damages if Seller does not inform Broker of changes in writing.

192 **WATER / WELL RIGHTS:** The following described water/well rights shall transfer with the subject property, if
193 any: _____

194 **HOMEOWNER'S ASSOCIATION INFORMATION:** Seller shall, upon receipt from Listing Broker, complete,
195 or provide to the Homeowner's Association ("HOA") for completion, the HOA Information form and cause the
196 completed form to be returned to Listing Broker within ten (10) days of the delivery thereof to Seller.

197 **HOA RESALE NOTIFICATION AND ADDENDUM:** If the Premises is in a residential HOA/Condominium or
198 Planned Unit Development, Seller shall complete and return to Listing Broker Page one of the HOA
199 Condominium/Planned Community Addendum within (5) Calendar Days after receipt thereof. Seller shall fully
200 disclose all information requested on the form to the best of Seller's actual knowledge as of the date signed. If the
201 Premises is in a residential HOA/Condominium or Planned Unit Development ("Planned Community") consisting of
202 less than fifty (50) units, Seller shall deliver to Buyer and Escrow Company the disclosure notice to be provided to
203 Buyer within ten (10) days following acceptance of a purchase contract. If the Premises is in a Planned Community
204 with fifty (50) or more units, the HOA shall mail or deliver the required disclosure notice to Buyer and the Escrow
205 Company within ten (10) days following receipt of a written notice of a pending sale of the Premises. Seller shall
206 promptly notify the HOA of the pending sale of the Premises.

**Seller Initials Required:** _____/_____
207
208                                                                    Seller/Seller

209 **INSURANCE CLAIMS HISTORY:** Seller shall deliver to buyer a written five-year insurance claims history
210 regarding the Premises (or a claims history for the length of time Seller has owned the Premises if less than
211 five years) from Seller's insurance company or an insurance support organization, or consumer reporting
212 agency, or if unavailable from those sources, from Seller, within five (5) days after contract acceptance.

213 **CONDITION OF PREMISES AND INSURANCE:** Seller is responsible to maintain the Premises in the same or
214 better condition as on the date of execution of this Agreement through COE. Therefore, Seller should maintain
215 appropriate hazard insurance to cover partial or complete destruction of the Premises as well as any loss due to
216 theft, vandalism, water and glass breakage, if available, as well as liability coverage. Seller shall consider notifying
217 insurance company prior to vacancy of property.

218 **LEAD BASED PAINT:** If any portion of the Premises was constructed prior to 1978, federal law requires that
219 Buyer be provided a Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards form.

_____/_____
Seller/Seller

220 If applicable, Seller shall provide Listing Broker, simultaneously with the execution of this Agreement or not
221 later than five (5) days following execution of this Agreement, a completed and executed disclosure form.

222 **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 ("FIRPTA"):** If Seller is a foreign person
223 or a nonresident alien, Seller shall provide Escrow Agent with a completed and signed FIRPTA certificate. If Seller
224 is a foreign person, Seller acknowledges that any Buyer may be required to withhold a tax of up to 15% of the
225 purchase price unless an exemption applies.

226 **REFERRALS-RESPONSIBILITY:** If Listing Broker, Cooperating Broker, or their Agents recommend to Seller any
227 person, entity or service, for any purpose, it shall be Seller's duty to independently investigate the qualifications
228 of the referred party. Seller shall hold harmless and indemnify the referring party from any adverse consequences
229 resulting from such referral.

## 5. FUTURE SELLER OBLIGATIONS

230 **SEPTIC OR ALTERNATIVE TREATMENT SYSTEM:** If the Premises is served in whole or in part by an on-site
231 wastewater treatment facility, Seller shall, at Seller's expense, place in escrow any certification(s) which may be
232 required by any law and/or any appropriate regulatory bodies. Certification may require that the system be
233 inspected, emptied and/or repaired prior to the issuance of the requisite certification. If a public sewer line of
234 sufficient capacity exists within 200 feet of the Premises, the lender or local health authority may require
235 connection to the public sewer line prior to or upon transfer of ownership. Unless otherwise agreed upon with
236 Buyer, such connection to the public sewer line shall be at Seller's expense.

237 **POOL SAFETY:** If the Premises includes a swimming pool or spa, Seller shall provide Buyer with an opportunity
238 to review the relevant pool barrier laws and shall provide Buyer with a notice concerning pool safety which shall
239 be signed by Buyer acknowledging receipt thereof.

240 **DEED/TITLE INSURANCE:** Seller shall convey title to Buyer by general warranty deed. Buyer shall be provided,
241 at Seller's expense, an American Land Title Association ("ALTA") Homeowner's Title Insurance Policy, or if not
242 available, an ALTA Residential Title Insurance Policy ("Plain Language" / "1-4" units") or, if not available, a
243 Standard Owner's Title Insurance Policy.

244 **PREMISES CONDITION AT CLOSING:** Seller shall remove all personal property not included in the sale and all
245 debris from the Premises at the earlier of possession by Buyer or COE whichever first occurs.

## 6. REMEDIES

246 **DISPUTE RESOLUTION:** Listing Broker and Seller agree to mediate any dispute or claim arising out of or relating
247 to this Agreement in accordance with the REALTORS® Dispute Resolution System, or as otherwise agreed. All
248 mediation costs shall be paid equally by the parties. In the event that mediation does not resolve all disputes or
249 claims, the unresolved issues shall be submitted for arbitration. **While either party shall have all the rights and**
250 **benefits of arbitration, both parties are giving up the right to litigate such claims and disputes in a court or**
251 **jury trial.** Neither party shall be entitled to join or consolidate disputes by or against others, or to include in any
252 arbitration any dispute as a representative or member of any class, or to act in any arbitration in the interest of the
253 general public or in any private attorney general capacity. Either party may initiate arbitration by giving notice of the
254 dispute stating with particularity that party's position. The parties shall cooperate in the expeditious appointment of
255 an arbitrator. If the parties are unable to agree upon an arbitrator, either party may apply to the relevant County
256 Superior Court for appointment of an arbitrator pursuant to A.R.S. §12-1501 *et seq.* The arbitrator's award shall be
257 final and binding and not subject to appeal.

258 **ARBITRATION COSTS AND ATTORNEYS' FEES:** In any proceeding, including arbitration, for damages, or to
259 enforce any of the provisions of this Agreement, including a claim by Listing Broker for payment of Compensation,
260 the substantially prevailing party shall be entitled to recover from the other party its reasonable attorneys' fees and
261 related expenses including, but not limited to, expert witness fees, fees paid to investigators, and customary court

_____/_____
Seller/Seller

262    costs.  The arbitrator shall determine which of the parties shall pay the fees and costs for the arbitration including
263    attorneys' fees.

## 7.  ADDITIONAL TERMS

264    **ARIZONA LAW:**  This Agreement shall be governed by Arizona law and is subject to the jurisdiction of Arizona.

265    **TIME IS OF THE ESSENCE:**  The parties acknowledge that a material and negotiated condition of this Agreement
266    is that time is of the essence in the performance of the obligations described herein.

267    **DAYS:**  All references to days in this Agreement shall be construed as calendar days.  The day of the act or event
268    from which the time period begins to run is not included and the last day of the time period is included.

269    **COPIES AND COUNTERPARTS:**  A fully executed facsimile or electronic copy of this Agreement shall be treated
270    as an original Agreement.  This Agreement may be executed in counterparts, which shall become effective upon
271    delivery.  All counterparts shall be deemed to constitute one instrument. The Disclosure of Information on Lead-
272    Based Paint and/or Lead-Based Paint Hazards form may not be signed in counterpart.

273    **ENTIRE AGREEMENT/NO MODIFICATION:**  This Agreement, the Property Profile Sheet, and any addenda,
274    photographs, data or other documentation which shall be incorporated into this Listing Agreement, constitutes the
275    entire Agreement between Seller and Listing Broker and supersedes any prior written or oral representations or
276    agreements between Seller and Listing Broker.  Any release from or modification to this Agreement requested by
277    Seller during the term of this Agreement will be in writing signed by the parties.  The pre-printed portions of this
278    Agreement may not be modified without the express written permission of MLS.  No modifications shall be made to
279    this Agreement which shall place Listing Broker and his/her agents in violation of the MLS Rules and Regulations.
280    The failure to initial any page of this Agreement will not affect the validity or terms of this Agreement.

281    **IMPORTANT NOTE:  If Seller signs more than one Listing Agreement during the Term or Extended Term**
282    **of this Agreement, Seller could be responsible for paying Compensation to more than one broker upon**
283    **the sale of the Premises.**

284    **SELLER MATERIALS:**  If Seller provides Listing Broker any photographs, floor plans, art work, plot plan
285    drawings, or any other items created by or for Seller ("Seller Materials"), Seller, having the authority to do so,
286    hereby grants Listing Broker and MLS a non-exclusive right and license to all intellectual property rights
287    thereto including the copyright to use and defend Seller Materials in any manner and for any reason.  Upon
288    termination of this Agreement, upon written request, the original Seller Materials shall be returned to Seller.

289    **INTELLECTUAL PROPERTY:**  Listing Broker is specifically authorized to use, for any purposes whatsoever,
290    any and all information obtained by or provided to Listing Broker pursuant to this Listing Agreement (including
291    any information concerning the price and terms of the sale of the  Premises, length of time the Premises is on
292    the market, and any other information relating to the Premises) (the "Work(s)"), both before and after the sale
293    or, in the event there is not a sale, after this listing has expired.  Seller hereby assigns to Listing Broker any and
294    all intellectual property rights Seller may have in the Works and to any pictures or other reproductions of the
295    Premises used in connection with the marketing of the Premises.  For purposes of clarity, Listing Broker is the
296    owner of any and all rights in the Work(s) and may further assign, license, sublicense, or otherwise dispose of
297    these rights to any party whatsoever for any purposes whatsoever.

298    **ADDITIONAL TERMS:** _____
299    _____
300    _____
301    _____
302    _____
303    _____
304    _____
305    _____
306    _____
307    _____

_____/_____
Seller/Seller

---

## 8. ACCEPTANCE

---

308 ___*SELLER*___

309 _____      _____
310 Print Seller Name                      Print Seller Name

311 _____      _____
312 Seller Signature        (MO/DA/YR)     Seller Signature        (MO/DA/YR)

313 _____      _____
314 Seller Address                         Seller Address

315 _____      _____
316 City/State              Zip            City/State              Zip

317 _____      _____
318 Seller Email Address                   Seller Email Address

319 _____      _____
320 Seller Phone        Seller Fax         Seller Phone        Seller Fax

321 _____      _____
322 Seller Office Phone   Seller Office Fax  Seller Office Phone   Seller Office Fax

323 **ACCEPTANCE BY LISTING BROKER:** By signing below the Authorized Signor acknowledges authority to sign
324 this Agreement and accepts from Seller (and Listing Agent if applicable) an irrevocable assignment of the copyright
325 and other intellectual property rights in Seller Materials, including the right to protect and enforce the ownership
326 rights therein. The Authorized Signor reserves a non-exclusive right to utilize Seller Materials in the promotion and
327 marketing of the Premises. If and when the Premises is listed in MLS, the Authorized Signor irrevocably assigns an
328 undivided interest in such rights to MLS. By publication of a listing of the Premises, MLS accepts an irrevocable co-
329 ownership of said property rights during the Term and/or Extended Term of this Agreement. Each party shall have
330 an independent right to enforce and defend the property rights each has acquired in the Seller (Listing Agent's)
331 Materials. Upon termination of this Agreement, Seller Materials shall be returned to Seller upon
332 receipt of written request from Seller.

333 Designated Broker, John Mijac        _____
334 Long Realty Company                       Listing Agent Name

335 Branch Office Address _____

336 _____     _____
337 Office Phone/Agent Contact Phone      Fax        Agent E-mail Address

338 _____
339 AUTHORIZED SIGNATURE (Listing Agent)

---

File No. _____ Designated Broker or Designee **Initials:** _____ Date: _____

_____/_____
Seller/Seller

# LISTING AGREEMENT
### (Exclusive Right to Sell)

THE PRE-PRINTED PORTIONS OF THIS LISTING AGREEMENT ("AGREEMENT") HAVE BEEN PREPARED BY THE MULTIPLE LISTING SERVICE OF SOUTHERN ARIZONA ("MLS") AND APPROVED BY LONG REALTY COMPANY. THIS IS A BINDING CONTRACT. FOR LEGAL OR TAX ADVICE, CONSULT YOUR ATTORNEY OR TAX ADVISOR.

## 1. PROPERTY

1   **EXCLUSIVE RIGHT TO SELL:** I/We ("Seller") hereby give the real estate company named on Line 334 ("Listing
2   Broker") an exclusive and irrevocable right to sell the real estate described below together with all improvements,
3   fixtures, personal property described herein, and appurtenances thereon or incidental thereto (collectively the
4   "Premises"). The term "Listing Broker" shall include the licensed real estate agent(s) of the Listing Broker,
5   if any, named on Line 333 ("Listing Agent").

6   **TERM:** This Agreement shall commence on _____/_____/_____ and shall expire at 11:59 P.M. Mountain Standard
7   Time (Arizona) on _____/_____/_____ ("Term"). If prior to the expiration of the Term a purchase contract is
8   entered into in writing between Seller and a Buyer, then this Listing Agreement shall be extended through
9   the close of escrow or the termination of said purchase contract, whichever first occurs ("Extended Term").

10   **SELLER REPRESENTATIONS:** Seller represents to all licensed agents involved in the sale of the Premises, to
11   MLS, and to the Buyer(s), and said parties have a right to rely upon: (i) Seller is the sole owner of the Premises;
12   (ii) no other person(s) or entities' consent shall be required to provide marketable title to the Premises;
13   (iii) Seller has the legal standing, capacity, and authority to offer and convey marketable title to the Premises;
14   iv) Seller is not currently a party to any other listing agreement for the sale of the Premises; and
15   (v) the information provided in this Agreement is complete and accurate.

16   **PREMISES:** The Premises includes the following described real property:

17   **Real Property Address:**_____ **Assessor's #:**_____

18   **City/Town/Municipality:** _____ **County:** _____ **AZ, Zip Code:** _____

19   **Legal Description:** _____

20   _____

21   Addenda Incorporated: ☐ Exempt Delayed ☐ Short Sale ☐ Other: _____

22   **FIXTURES AND PERSONAL PROPERTY:** The Premises includes all fixtures on the Premises, and any existing
23   personal property specified shall be included in this sale, including but not limited to the following:

24   
| | | |
|---|---|---|
| • free-standing range/oven | • flush-mounted speakers | • solar systems (if owned) |
| • ceiling fans | • storm windows and doors | • mailbox |
| • attached floor coverings | • attached media antennas/ | • central vacuum, hose, and attachments |
| • window and door screens, sun screens |   satellite dishes | • built in appliance |
| • garage door openers and controls | • attached fireplace equipment | • pool and spa equipment (including . |
| • outdoor landscaping, fountains, and lighting | • timers |   mechanical or other cleaning systems) |
| • pellet, wood-burning or gas-log stoves | • draperies and other window | • security and/or fire systems and/or alarms |
| • storage sheds |   coverings | • water softeners |
| • light fixtures | • shutters and awnings | • water purification systems |
| • towel, curtain and drapery rods | • water-misting systems | |

34   **APPLIANCES AND ADDITIONAL EXISTING PERSONAL PROPERTY:** The Premises shall include the following
35   appliances which are presently located in or upon the Premises: ☐ **Refrigerator** ☐ **Washer** ☐ **Dryer**

36   ☐ **Other** _____

_____/_____
Seller/Seller

37 **Additional items of personal property included in sale (to be listed in a separate Bill of Sale):**
38 _____

39 **Personal property, fixtures and leased items NOT included in sale** _____
40 _____

## 2. TERMS AND COMPENSATION

41 **LISTED PRICE:** The Premises shall be offered for sale at $_____ ("Listed Price").

42 **TERMS AND CONDITIONS:** The Premises shall be offered for sale pursuant to the provisions of this Listing
43 Agreement, the Information Property Profile Sheet ("Property Profile Sheet"), and any addenda, data and
44 other documentation incorporated into this Listing Agreement (collectively "Agreement"). Seller authorizes the
45 Listing Broker to update and correct incidental information on the Property Profile Sheet as, in Listing Broker's
46 opinion, is necessary. This shall not include price changes, which must be made with Seller's written authorization.

47 **MODIFICATIONS:** This Agreement may be modified at any time as agreed upon by Seller and Listing Broker
48 in writing. The Status Report Form may constitute an addendum to this Agreement.

49 **COMPENSATION: COMPENSATION FOR THE SALE OF THE PREMISES IS NOT SET BY ANY REALTOR®**
50 **ASSOCIATION OR ANY MULTIPLE LISTING SERVICE. THE COMPENSATION PAYABLE FOR THE SALE**
51 **OF THE PREMISES IS NEGOTIATED BETWEEN THE LISTING BROKER AND THE SELLER.**

52 **NON-REFUNDABLE RETAINER FEE:** Listing Broker acknowledges receipt from Seller of a non-refundable
53 retainer fee of $_____ for initial consultation and research ("Retainer Fee") which shall be deemed
54 earned upon receipt and which ☐ **Shall** ☐ **Shall Not** be credited against any other compensation owed by
55 Seller to Listing Broker as provided on Lines 56 through 74.

56 **COMPENSATION FOR SALE OF PREMISES:** Seller shall pay to Listing Broker $235.00, which is retained solely
57 by Broker, and (Check One): ☐7%, ☐8%,☐9%, ☐10% or ☐ _____% of the selling price **("Total Compensation")**
58 upon the occurrence of any of the following events:

59 A. During the Term or Extended Term of this Agreement, Listing Broker, individually or in cooperation
60     with a licensed Broker(s)/Agents ("Cooperating Broker"), produces a Buyer ready, willing, and able to
61     purchase the Premises according to the terms and conditions of this Agreement or upon such other
62     price and/or terms and conditions as subsequently agreed to by Seller; or
63 B. During the Term or Extended Term of this Agreement, Seller sells/transfers/leases/options/auctions/
64     encumbers/unilaterally terminates this Agreement or otherwise makes the title of the Premises
65     unmarketable or in any manner makes the Premises unavailable to Listing Broker for sale; or
66 C. **Within _____ days** after the expiration of the Term or Extended Term of this Agreement, Seller
67     accepts an offer for the sale, lease with option to purchase, exchange, or otherwise conveys title to any
68     person(s) (or an entity substantially owned by any such person(s)) introduced to the Premises during
69     the Term or Extended Term of this Agreement by any source whatsoever, unless the Premises has first
70     been re-listed for sale with another broker on an exclusive-right-to-sell basis; or
71 D. During the Term or Extended Term of this Agreement, Seller agrees to sell, or transfers the title of all or
72     any portion of the Premises to any governmental entity resulting from an actual, claimed or threatened
73     taking of all or part of the Premises by the governmental entity pursuant to its power of eminent domain; or
74 E. During the Term or Extended Term of this Agreement, a sale of the Premises is prevented by Seller.

75 **PAYMENT OF COMPENSATION:** If the Premises is sold through Listing Broker, the Compensation shall
76 be paid at and as a condition of the close of escrow. In all other cases set forth in Lines 56 - 74 above, the
77 Compensation shall be paid upon the occurrence of the event.

78 **ESCROW INSTRUCTIONS:** This Agreement may be delivered to escrow and shall constitute instructions by
79 Seller to Escrow Agent to pay the Compensation authorized by this Agreement out of proceeds due Seller at time

_____ / _____
Seller/Seller

80 of closing. If Seller's proceeds are not sufficient in amount to pay such Compensation, Seller shall deposit a sum
81 sufficient to pay said Compensation. If an earnest money deposit is forfeited, Escrow Agent shall pay
82 Compensation to Listing Broker in an amount equal to one-half of the earnest money deposit, not to exceed the full
83 amount of Compensation due pursuant to Lines 57 - 75 above.

84 **CLOSE OF ESCROW:** Close of Escrow ("COE") is when the deed and any other instruments necessary to
85 complete the transfer of title are recorded with the appropriate county recorder's office. Seller shall timely
86 comply with all terms and conditions of the purchase contract, including executing and delivering to Escrow
87 Company all closing documents which may be required to be furnished by Seller, and performing all other acts
88 necessary in sufficient time to allow COE to occur by the closing date specified in the purchase contract ("COE
89 Date"). Unless otherwise agreed, Seller shall pay a prorated portion of taxes, assessments, HOA fees, and other
90 costs related to COE that are customarily prorated in the county where the Premises is located. The sale
91 proceeds shall be promptly distributed following COE. Unless otherwise specified in the purchase contract,
92 Seller shall deliver possession, occupancy, existing keys, and/or means to operate all locks, mailbox, security
93 system/alarms and all common area facilities to Buyer at COE.

## 3.   DUTIES AND AUTHORIZATIONS

94 **REPRESENTATION OF SELLER:** Unless otherwise agreed, a Listing Broker acts as agent for Seller only and
95 has the duties of loyalty, obedience, disclosure, confidentiality, and accounting ("Fiduciary Duties") as well as other
96 duties imposed by the Arizona Department of Real Estate ("ADRE"). Seller acknowledges the property may be
97 shown to Buyers by Listing Broker and this shall not constitute a conflict of interest. Seller should carefully review
98 all advertising materials and contractual documents prepared by Listing Broker as Seller may be bound by these
99 materials. Listing Broker shall always exercise reasonable skill and care in the performance of Listing Broker's
100 duties to Seller. Seller is aware Listing Broker may list other properties which are similar to and/or which may be
101 located in proximity to the Premises.

102 **REPRESENTATION OF BUYER:** A Buyer's Broker (or "Cooperating Broker") represents only the Buyer and has
103 Fiduciary Duties as well as other duties imposed by ADRE in dealings with Buyer. Buyer's Broker may receive
104 Compensation from Buyer, Seller, or both. Seller authorizes Listing Broker to cooperate with and share
105 Compensation with Buyer's Broker as follows: No less than 3% of gross sales price.

106 **CONDUCT OF BROKERS:** Regardless of whom they represent, real estate licensees have the obligation to:
107 (i) treat all parties to a transaction fairly; (ii) disclose, in writing, all facts known to the licensee that may materially
108 and adversely affect the consideration to be paid for the Premises; (iii) disclose that Seller or Buyer may be
109 unable to perform; and (iv) disclose any information concerning any material non-obvious (latent) defect existing
110 in the Premises. REALTORS® are further obligated by their Code of Ethics to treat all parties honestly.

111 **DUAL (limited) REPRESENTATION:** A dual agency (or limited agency) may occur when the Listing Broker
112 procures a Buyer for the Property. In this situation, the same real estate company may be representing the
113 Seller's interest and the Buyer's interest. A dual agency may occur in this or in other ways. Brokers and their
114 Agents can legally represent both the Seller and the Buyer with the knowledge and written consent of both the
115 Seller and the Buyer. A Dual Agent has the duties of loyalty, obedience, disclosure, confidentiality and accounting
116 to both the Seller and the Buyer. Seller recognizes that in a dual agency situation, the duties normally owed the
117 Seller by the Listing Broker and his/her Agents may be limited in that confidential information pertaining to the
118 Buyer may not be disclosed to the Seller (and likewise, confidential information concerning the Seller may not be
119 disclosed to the Buyer). Seller agrees that the Listing Broker and his/her Agents shall not be liable for failing or
120 refusing to disclose confidential information. The Dual Agent may receive compensation from the Buyer and/or
121 from the Listing Broker with the written consent of all parties.

122 **CONSENT TO DUAL AGENCY: Seller ☐ Does ☐ Does Not** authorize Listing Broker to be a Dual Agent.

123 **Seller Initials Required:**
124 \_\_\_\_/\_\_\_\_
Seller/Seller

125 **NON DISCLOSURE:** Sellers and Listing Brokers are not obligated to disclose that a property has been the site of
126 a natural death, suicide, homicide, or any crime classified as a felony, nor that the property was owned or occupied

\_\_\_\_/\_\_\_\_
Seller/Seller

127  by a person exposed to HIV, or diagnosed as having AIDS or any other disease not known to be transmitted
128  through common occupancy of real estate, nor that the property is located in the vicinity of a sex offender.

129  **SIGNS/MARKETING:**   Seller ☐ **Does** ☐ **Does Not** agree to the placement of a customary "For Sale" and
130  "Sold" sign(s) together with customary sign riders on the Premises through COE.  In any event, Seller agrees
131  to immediately remove, or have removed, all "For Sale" signs not belonging to Listing Broker.  The placement
132  of directional or other signs on public or private property without the property owner's permission is illegal.
133  Listing Broker/Agent will not illegally place such signage.  Seller agrees not to advertise or market the Premises
134  in any manner without the prior written permission of Listing Broker.

135  **VIDEO/STILL IMAGES:**  Seller ☐ **Does** ☐ **Does Not** consent to the taking and placement of video, still or
136  other images of the Premises on the Internet and in other media at the sole discretion of Listing Broker.  Seller
137  is cautioned to protect valuable items from view.  Listing Broker has no responsibility for loss of such valuable
138  items.  Seller understands the public may have unlimited access to the images and may download and/or
139  copy them.  Any such images are the property of Listing Broker.

140  **ACCESS AND KEYSAFE:**  Seller ☐ **Does** ☐ **Does Not** authorize the installation and use of a Keysafe that
141  contains an access key to the Premises.  A Keysafe permits access at any time to the interior of the Premises
142  by MLS Participants together with potential Buyers. Seller is advised to take appropriate security precautions to
143  protect valuable items.  Seller agrees, upon reasonable notice, to cooperate with previews and showings of
144  the Premises at reasonable times.  If there are any adult occupants of the Premises other than Seller or
145  Seller's family, or if the Premises is subject to a rental agreement, then Seller shall immediately provide
146  Listing Broker with written permission from all adult occupants authorizing access by the MLS Participants
147  and potential buyers at reasonable times upon reasonable prior notice according to the current Arizona Landlord
148  Tenant Act.

149  **HOME WARRANTY PLAN:**     Seller ☐ **Does** ☐ **Does Not** agree to provide Buyer, at Seller's expense, at
150  COE, a home warranty plan acceptable to Seller.  Seller is aware that home warranty plans may provide
151  benefits to Seller, during the Term and/or escrow period, as well as to the Buyer of the Premises.

152  **SUBSEQUENT OFFER:**  Seller shall, prior to close of escrow, receive all offer(s) to purchase the Premises
153  unless otherwise agreed upon by Seller in writing.  Seller understands that any offer accepted by the Seller
154  subsequent to a first accepted offer must be a backup offer contingent on the cancellation of the existing Contract.

155  **INDEMNIFICATION:**  As a material condition of this Agreement, Seller agrees that the local association of
156  REALTORS® and local MLS (collectively "MLS") are third-party beneficiaries of this Agreement for the purpose of
157  indemnification.  Seller agrees to hold harmless and indemnify MLS, their Directors, Officers, employees and
158  volunteers as well as Listing Broker and the Cooperating Broker involved in any transaction resulting from this
159  listing from any and all claims, damages, liability or other loss, including all attorneys' fees and legal costs incurred
160  arising out of any claim of misrepresentation or for any action or non action by Seller including, but not limited to,
161  the supplying of incorrect information, breach of warranty or any other claim arising out of this Agreement or the
162  sale and purchase of the Premises or as a result of the dissemination of any inaccurate information concerning the
163  listing of the Premises published by a third party website.  This provision is to be liberally construed in favor of the
164  indemnified parties.

165                                            **Seller Initials Required:** _____/_____
166                                                                              Seller/Seller

---

## 4.   SELLER OBLIGATIONS

167  **FAIR HOUSING:**  The Premises shall be offered to all persons without regard to their ancestry, race, religion,
168  color, gender, sexual orientation, handicap, marital status, familial status, age or national origin or any other
169  mandated classification by prevailing federal, state or local laws.

_____/_____
Seller/Seller

170  **SELLER PROPERTY DISCLOSURE STATEMENT ("SPDS"):** Seller shall complete and return to Listing Broker
171  a SPDS form within five (5) calendar days after receipt thereof. Listing Broker shall have no responsibility, in
172  whole or part, for the preparation of the SPDS. Seller shall fully disclose all material facts known to Seller
173  concerning any previous or current problem(s) or condition(s) that could adversely affect the value or marketability
174  of the Premises. Seller shall immediately advise Listing Broker, in writing, concerning any subsequent changes
175  that occur concerning the Premises or that are subsequently discovered and cause the SPDS form to be amended
176  accordingly and authorizes release of such information to all Cooperating Brokers. Seller agrees to hold Broker
177  harmless from any damages if Seller does not inform Broker of changes in writing.

178  **AFFIDAVIT OF DISCLOSURE:** If the Premises is located in an unincorporated area of the county, and five or fewer
179  parcels of property other than subdivided property are being transferred, the Seller shall be required to provide Listing
180  Broker a completed, notarized State of Arizona Affidavit of Disclosure form required pursuant to Arizona Revised
181  Statute§33-422 within seven (7) days of the commencement date of this Agreement.

182  **DOMESTIC WATER WELL/WATER USE ADDENDUM SELLER'S PROPERTY DISCLOSURE STATEMENT**
183  **("DOMESTIC WATER WELL/WATER USE ADDENDUM SPDS"):** Property ☐ **Does** ☐ **Does Not** have a
184  Domestic Water Well. If the property is served by a domestic water well, Seller shall complete and return the
185  Domestic Water Well/Water Use Addendum SPDS to Listing Broker within five (5) calendar days after receipt
186  thereof. Seller shall fully disclose all material facts known to Seller concerning any previous or current problem(s)
187  or condition(s) that could adversely affect the value or marketability of the Property. Seller shall immediately
188  advise Listing Broker, in writing, concerning any subsequent changes which occur concerning the Property or which
189  are subsequently discovered and cause the Domestic Water Well/ Water Use Addendum SPDS form to be
190  amended accordingly and authorizes release of such information to all Cooperating Brokers. Seller agrees to hold
191  Broker harmless from any damages if Seller does not inform Broker of changes in writing.

192  **WATER / WELL RIGHTS:** The following described water/well rights shall transfer with the subject property, if
193  any: _____

194  **HOMEOWNER'S ASSOCIATION INFORMATION:** Seller shall, upon receipt from Listing Broker, complete,
195  or provide to the Homeowner's Association ("HOA") for completion, the HOA Information form and cause the
196  completed form to be returned to Listing Broker within ten (10) days of the delivery thereof to Seller.

197  **HOA RESALE NOTIFICATION AND ADDENDUM:** If the Premises is in a residential HOA/Condominium or
198  Planned Unit Development, Seller shall complete and return to Listing Broker Page one of the HOA
199  Condominium/Planned Community Addendum within (5) Calendar Days after receipt thereof. Seller shall fully
200  disclose all information requested on the form to the best of Seller's actual knowledge as of the date signed. If the
201  Premises is in a residential HOA/Condominium or Planned Unit Development ("Planned Community") consisting of
202  less than fifty (50) units, Seller shall deliver to Buyer and Escrow Company the disclosure notice to be provided to
203  Buyer within ten (10) days following acceptance of a purchase contract. If the Premises is in a Planned Community
204  with fifty (50) or more units, the HOA shall mail or deliver the required disclosure notice to Buyer and the Escrow
205  Company within ten (10) days following receipt of a written notice of a pending sale of the Premises. Seller shall
206  promptly notify the HOA of the pending sale of the Premises.

207                                                                **Seller Initials Required:** _____/_____
208                                                                                                          Seller/Seller

209  **INSURANCE CLAIMS HISTORY:** Seller shall deliver to buyer a written five-year insurance claims history
210  regarding the Premises (or a claims history for the length of time Seller has owned the Premises if less than
211  five years) from Seller's insurance company or an insurance support organization, or consumer reporting
212  agency, or if unavailable from those sources, from Seller, within five (5) days after contract acceptance.

213  **CONDITION OF PREMISES AND INSURANCE:** Seller is responsible to maintain the Premises in the same or
214  better condition as on the date of execution of this Agreement through COE. Therefore, Seller should maintain
215  appropriate hazard insurance to cover partial or complete destruction of the Premises as well as any loss due to
216  theft, vandalism, water and glass breakage, if available, as well as liability coverage. Seller shall consider notifying
217  insurance company prior to vacancy of property.

218  **LEAD BASED PAINT:** If any portion of the Premises was constructed prior to 1978, federal law requires that
219  Buyer be provided a Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards form.

                                                                              _____/_____
                                                                                Seller/Seller

220 If applicable, Seller shall provide Listing Broker, simultaneously with the execution of this Agreement or not
221 later than five (5) days following execution of this Agreement, a completed and executed disclosure form.

222 **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 ("FIRPTA"):** If Seller is a foreign person
223 or a nonresident alien, Seller shall provide Escrow Agent with a completed and signed FIRPTA certificate. If Seller
224 is a foreign person, Seller acknowledges that any Buyer may be required to withhold a tax of up to 15% of the
225 purchase price unless an exemption applies.

226 **REFERRALS-RESPONSIBILITY:** If Listing Broker, Cooperating Broker, or their Agents recommend to Seller any
227 person, entity or service, for any purpose, it shall be Seller's duty to independently investigate the qualifications
228 of the referred party. Seller shall hold harmless and indemnify the referring party from any adverse consequences
229 resulting from such referral.

## 5.   FUTURE SELLER OBLIGATIONS

230 **SEPTIC OR ALTERNATIVE TREATMENT SYSTEM:** If the Premises is served in whole or in part by an on-site
231 wastewater treatment facility, Seller shall, at Seller's expense, place in escrow any certification(s) which may be
232 required by any law and/or any appropriate regulatory bodies. Certification may require that the system be
233 inspected, emptied and/or repaired prior to the issuance of the requisite certification. If a public sewer line of
234 sufficient capacity exists within 200 feet of the Premises, the lender or local health authority may require
235 connection to the public sewer line prior to or upon transfer of ownership. Unless otherwise agreed upon with
236 Buyer, such connection to the public sewer line shall be at Seller's expense.

237 **POOL SAFETY:** If the Premises includes a swimming pool or spa, Seller shall provide Buyer with an opportunity
238 to review the relevant pool barrier laws and shall provide Buyer with a notice concerning pool safety which shall
239 be signed by Buyer acknowledging receipt thereof.

240 **DEED/TITLE INSURANCE:** Seller shall convey title to Buyer by general warranty deed. Buyer shall be provided,
241 at Seller's expense, an American Land Title Association ("ALTA") Homeowner's Title Insurance Policy, or if not
242 available, an ALTA Residential Title Insurance Policy ("Plain Language" / "1-4" units") or, if not available, a
243 Standard Owner's Title Insurance Policy.

244 **PREMISES CONDITION AT CLOSING:** Seller shall remove all personal property not included in the sale and all
245 debris from the Premises at the earlier of possession by Buyer or COE whichever first occurs.

## 6.   REMEDIES

246 **DISPUTE RESOLUTION:** Listing Broker and Seller agree to mediate any dispute or claim arising out of or relating
247 to this Agreement in accordance with the REALTORS® Dispute Resolution System, or as otherwise agreed. All
248 mediation costs shall be paid equally by the parties. In the event that mediation does not resolve all disputes or
249 claims, the unresolved issues shall be submitted for arbitration. **While either party shall have all the rights and**
250 **benefits of arbitration, both parties are giving up the right to litigate such claims and disputes in a court or**
251 **jury trial.** Neither party shall be entitled to join or consolidate disputes by or against others, or to include in any
252 arbitration any dispute as a representative or member of any class, or to act in any arbitration in the interest of the
253 general public or in any private attorney general capacity. Either party may initiate arbitration by giving notice of the
254 dispute stating with particularity that party's position. The parties shall cooperate in the expeditious appointment of
255 an arbitrator. If the parties are unable to agree upon an arbitrator, either party may apply to the relevant County
256 Superior Court for appointment of an arbitrator pursuant to A.R.S. §12-1501 *et seq.* The arbitrator's award shall be
257 final and binding and not subject to appeal.

258 **ARBITRATION COSTS AND ATTORNEYS' FEES:** In any proceeding, including arbitration, for damages, or to
259 enforce any of the provisions of this Agreement, including a claim by Listing Broker for payment of Compensation,
260 the substantially prevailing party shall be entitled to recover from the other party its reasonable attorneys' fees and
261 related expenses including, but not limited to, expert witness fees, fees paid to investigators, and customary court

\_\_\_\_\_/\_\_\_\_\_
Seller/Seller

262  costs.  The arbitrator shall determine which of the parties shall pay the fees and costs for the arbitration including
263  attorneys' fees.

## 7.  ADDITIONAL TERMS

264  **ARIZONA LAW:**  This Agreement shall be governed by Arizona law and is subject to the jurisdiction of Arizona.

265  **TIME IS OF THE ESSENCE:**  The parties acknowledge that a material and negotiated condition of this Agreement
266  is that time is of the essence in the performance of the obligations described herein.

267  **DAYS:**  All references to days in this Agreement shall be construed as calendar days.  The day of the act or event
268  from which the time period begins to run is not included and the last day of the time period is included.

269  **COPIES AND COUNTERPARTS:**  A fully executed facsimile or electronic copy of this Agreement shall be treated
270  as an original Agreement.  This Agreement may be executed in counterparts, which shall become effective upon
271  delivery.  All counterparts shall be deemed to constitute one instrument. The Disclosure of Information on Lead-
272  Based Paint and/or Lead-Based Paint Hazards form may not be signed in counterpart.

273  **ENTIRE AGREEMENT/NO MODIFICATION:**  This Agreement, the Property Profile Sheet, and any addenda,
274  photographs, data or other documentation which shall be incorporated into this Listing Agreement, constitutes the
275  entire Agreement between Seller and Listing Broker and supersedes any prior written or oral representations or
276  agreements between Seller and Listing Broker.  Any release from or modification to this Agreement requested by
277  Seller during the term of this Agreement will be in writing signed by the parties.  The pre-printed portions of this
278  Agreement may not be modified without the express written permission of MLS.  No modifications shall be made to
279  this Agreement which shall place Listing Broker and his/her agents in violation of the MLS Rules and Regulations.
280  The failure to initial any page of this Agreement will not affect the validity or terms of this Agreement.

281  **IMPORTANT NOTE:  If Seller signs more than one Listing Agreement during the Term or Extended Term**
282  **of this Agreement, Seller could be responsible for paying Compensation to more than one broker upon**
283  **the sale of the Premises.**

284  **SELLER MATERIALS:**  If Seller provides Listing Broker any photographs, floor plans, art work, plot plan
285  drawings, or any other items created by or for Seller ("Seller Materials"), Seller, having the authority to do so,
286  hereby grants Listing Broker and MLS a non-exclusive right and license to all intellectual property rights
287  thereto including the copyright to use and defend Seller Materials in any manner and for any reason.  Upon
288  termination of this Agreement, upon written request, the original Seller Materials shall be returned to Seller.

289  **INTELLECTUAL PROPERTY:**  Listing Broker is specifically authorized to use, for any purposes whatsoever,
290  any and all information obtained by or provided to Listing Broker pursuant to this Listing Agreement (including
291  any information concerning the price and terms of the sale of the  Premises, length of time the Premises is on
292  the market, and any other information relating to the Premises) (the "Work(s)"), both before and after the sale
293  or, in the event there is not a sale, after this listing has expired.  Seller hereby assigns to Listing Broker any and
294  all intellectual property rights Seller may have in the Works and to any pictures or other reproductions of the
295  Premises used in connection with the marketing of the Premises.  For purposes of clarity, Listing Broker is the
296  owner of any and all rights in the Work(s) and may further assign, license, sublicense, or otherwise dispose of
297  these rights to any party whatsoever for any purposes whatsoever.

298  **ADDITIONAL TERMS:** _____
299  _____
300  _____
301  _____
302  _____
303  _____
304  _____
305  _____
306  _____
307  _____

_____/_____
Seller/Seller

## 8. ACCEPTANCE

308 *SELLER*

309
310 _____          _____
    Print Seller Name                        Print Seller Name

311
312 _____          _____
    Seller Signature        (MO/DA/YR)       Seller Signature        (MO/DA/YR)

313
314 _____          _____
    Seller Address                           Seller Address

315
316 _____          _____
    City/State              Zip              City/State              Zip

317
318 _____          _____
    Seller Email Address                     Seller Email Address

319
320 _____          _____
    Seller Phone         Seller Fax          Seller Phone         Seller Fax

321
322 _____          _____
    Seller Office Phone    Seller Office Fax Seller Office Phone    Seller Office Fax

323 **ACCEPTANCE BY LISTING BROKER:**  By signing below the Authorized Signor acknowledges authority to sign
324 this Agreement and accepts from Seller (and Listing Agent if applicable) an irrevocable assignment of the copyright
325 and other intellectual property rights in Seller Materials, including the right to protect and enforce the ownership
326 rights therein.  The Authorized Signor reserves a non-exclusive right to utilize Seller Materials in the promotion and
327 marketing of the Premises.  If and when the Premises is listed in MLS, the Authorized Signor irrevocably assigns an
328 undivided interest in such rights to MLS.  By publication of a listing of the Premises, MLS accepts an irrevocable co-
329 ownership of said property rights during the Term and/or Extended Term of this Agreement.  Each party shall have
330 an independent right to enforce and defend the property rights each has acquired in the Seller (Listing Agent's)
331 Materials.  Upon termination of this Agreement, Seller Materials shall be returned to Seller upon
332 receipt of written request from Seller.

333 Designated Broker, John Mijac            _____
334 Long Realty Company                          Listing Agent Name

335 Branch Office Address _____

336
337 _____          _____
    Office Phone/Agent Contact Phone         Fax          Agent E-mail Address

338
339 _____
    AUTHORIZED SIGNATURE (Listing Agent)

File No. _____ Designated Broker or Designee **Initials:** _____ Date: _____

_____/_____
Seller/Seller

# LISTING AGREEMENT

**(Exclusive Right to Sell)**

**THE PRE-PRINTED PORTIONS OF THIS LISTING AGREEMENT ("AGREEMENT") HAVE BEEN PREPARED BY THE MULTIPLE LISTING SERVICE OF SOUTHERN ARIZONA ("MLS") AND APPROVED BY LONG REALTY COMPANY. THIS IS A BINDING CONTRACT. FOR LEGAL OR TAX ADVICE, CONSULT YOUR ATTORNEY OR TAX ADVISOR.**

## 1. PROPERTY

1   **EXCLUSIVE RIGHT TO SELL:** I/We ("Seller") hereby give the real estate company named on Line 336 ("Listing
2   Broker") an exclusive and irrevocable right to sell the real estate described below together with all improvements,
3   fixtures, personal property described herein, and appurtenances thereon or incidental thereto (collectively the
4   "Premises"). The term "Listing Broker" shall include the licensed real estate agent(s) of the Listing Broker,
5   if any, named on Line 333 ("Listing Agent").

6   **TERM:** This Agreement shall commence on \_\_\_\_/\_\_\_\_/_____ and shall expire at 11:59 P.M. Mountain Standard
7   Time (Arizona) on \_\_\_/\_\_\_\_/\_\_\_\_\_ ("Term"). If prior to the expiration of the Term a purchase contract is
8   entered into in writing between Seller and a Buyer, then this Listing Agreement shall be extended through
9   the close of escrow or the termination of said purchase contract, whichever first occurs ("Extended Term").

10   **SELLER REPRESENTATIONS:** Seller represents to all licensed agents involved in the sale of the Premises, to
11   MLS, and to the Buyer(s), and said parties have a right to rely upon: (i) Seller is the sole owner of the Premises;
12   (ii) no other person(s) or entities' consent shall be required to provide marketable title to the Premises;
13   (iii) Seller has the legal standing, capacity, and authority to offer and convey marketable title to the Premises;
14   iv) Seller is not currently a party to any other listing agreement for the sale of the Premises; and
15   (v) the information provided in this Agreement is complete and accurate.

16   **PREMISES:** The Premises includes the following described real property:

17   **Real Property Address:**_____ **Assessor's #:**_____

18   **City/Town/Municipality:** _____ **County:** _____ **AZ, Zip Code:** _____

19   **Legal Description:** _____

20   _____

21   Addenda Incorporated: ☐ Exempt Delayed ☐ Short Sale ☐ Other: _____

22   **FIXTURES AND PERSONAL PROPERTY:** The Premises includes all fixtures on the Premises, and any existing
23   personal property specified shall be included in this sale, including but not limited to the following:

| | | |
|---|---|---|
| 24 • free-standing range/oven and built-in appliances | • flush-mounted speakers | • solar systems (if owned) |
| 25 • ceiling fans and remotes | • storm windows and doors | • mailbox |
| 26 • attached floor coverings | • attached media antennas/ | • central vacuum, hose, and attachments |
| 27 • window and door screens, sunscreens | satellite dishes | • wall mounted TV brackets/hardware |
| 28 • garage door openers and controls/remotes | • attached fireplace equipment | • pool and spa equipment (including. |
| 29 • outdoor landscaping, fountains, and lighting | • timers (affixed) | mechanical or other cleaning systems) |
| 30 • pellet, wood-burning or gas-log stoves | • draperies and other window | • security and/or fire systems and/or alarms |
| 31 • smart home devices and access | coverings | • water softeners |
| 32 • light fixtures | • shutters, awnings and sunshades | • water purification systems |
| 33 • towel, curtain and drapery rods | • water-misting systems | • storage sheds |

34   **APPLIANCES AND ADDITIONAL EXISTING PERSONAL PROPERTY:** The Premises shall include the following

35   appliances which are presently located in or upon the Premises: ☐ **Refrigerator** ☐ **Washer** ☐ **Dryer**

36   ☐ **Other** _____

\_\_\_\_\_/\_\_\_\_\_
Seller/Seller

37 **Additional items of personal property included in sale (to be listed in a separate Bill of Sale):**
38 _____

39 **Personal property, fixtures and leased items NOT included in sale** _____
40 _____

## 2.   TERMS AND COMPENSATION

41 __LISTED PRICE:__  The Premises shall be offered for sale at $_____ ("Listed Price").

42 __TERMS AND CONDITIONS:__  The Premises shall be offered for sale pursuant to the provisions of this Listing
43 Agreement, the Information Property Profile Sheet ("Property Profile Sheet"), and any addenda, data and
44 other documentation incorporated into this Listing Agreement (collectively "Agreement").  Seller authorizes the
45 Listing Broker to update and correct incidental information on the Property Profile Sheet as, in Listing Broker's
46 opinion, is necessary. This shall not include price changes, which must be made with Seller's written authorization.

47 __MODIFICATIONS:__  This Agreement may be modified at any time as agreed upon by Seller and Listing Broker
48 in writing.  The Status Report Form may constitute an addendum to this Agreement.

49 __COMPENSATION:  COMPENSATION FOR THE SALE OF THE PREMISES IS NOT SET BY ANY REALTOR®__
50 __ASSOCIATION OR ANY MULTIPLE LISTING SERVICE.  THE COMPENSATION PAYABLE FOR THE SALE__
51 __OF THE PREMISES IS NEGOTIATED BETWEEN THE LISTING BROKER AND THE SELLER.__

52 __NON-REFUNDABLE RETAINER FEE:__  Listing Broker acknowledges receipt from Seller of a non-refundable
53 retainer fee of $_____ for initial consultation and research ("Retainer Fee") which shall be deemed

54 earned upon receipt and which ☐ **Shall**  ☐ **Shall Not**  be credited against any other compensation owed by
55 Seller to Listing Broker as provided on Lines 56 through 74.

56 __COMPENSATION FOR SALE OF PREMISES:__  Seller shall pay to Listing Broker $235.00, which is retained solely

57 by Broker, and (Check One):  ☐7%, ☐8%,☐9%, ☐10% or ☐ _____% of the selling price **("Total Compensation")**
58 upon the occurrence of any of the following events:

59 A.   During the Term or Extended Term of this Agreement, Listing Broker, individually or in cooperation
60       with a licensed Broker(s)/Agents ("Cooperating Broker"), produces a Buyer ready, willing, and able to
61       purchase the Premises according to the terms and conditions of this Agreement or upon such other
62       price and/or terms and conditions as subsequently agreed to by Seller; or
63 B.   During the Term or Extended Term of this Agreement, Seller sells/transfers/leases/options/auctions/
64       encumbers/unilaterally terminates this Agreement or otherwise makes the title of the Premises
65       unmarketable or in any manner makes the Premises unavailable to Listing Broker for sale; or
66 C.   **Within _____ days** after the expiration of the Term or Extended Term of this Agreement, Seller
67       accepts an offer for the sale, lease with option to purchase, exchange, or otherwise conveys title to any
68       person(s) (or an entity substantially owned by any such person(s)) introduced to the Premises during
69       the Term or Extended Term of this Agreement by any source whatsoever, unless the Premises has first
70       been re-listed for sale with another broker on an exclusive-right-to-sell basis; or
71 D.   During the Term or Extended Term of this Agreement, Seller agrees to sell, or transfers the title of all or
72       any portion of the Premises to any governmental entity resulting from an actual, claimed or threatened
73       taking of all or part of the Premises by the governmental entity pursuant to its power of eminent domain; or
74 E.   During the Term or Extended Term of this Agreement, a sale of the Premises is prevented by Seller.

75 __PAYMENT OF COMPENSATION:__  If the Premises is sold through Listing Broker, the Compensation shall
76 be paid at and as a condition of the close of escrow.  In all other cases set forth in Lines 56 - 74 above, the
77 Compensation shall be paid upon the occurrence of the event.

78 __ESCROW INSTRUCTIONS:__  This Agreement may be delivered to escrow and shall constitute instructions by
79 Seller to Escrow Agent to pay the Compensation authorized by this Agreement out of proceeds due Seller at time
80 of closing.  If Seller's proceeds are not sufficient in amount to pay such Compensation, Seller shall deposit a

_____/____
Seller/Seller

81    sum sufficient to pay said Compensation. If an earnest money deposit is forfeited, Escrow Agent shall pay
82    Compensation to Listing Broker in an amount equal to _____ of the earnest money deposit, not to exceed the full
83    amount of Compensation due pursuant to Lines 56-74 above.

84    **CLOSE OF ESCROW:** Close of Escrow ("COE") is when the deed and any other instruments necessary to
85    complete the transfer of title are recorded with the appropriate county recorder's office. Seller shall timely
86    comply with all terms and conditions of the purchase contract, including executing and delivering to Escrow
87    Company all closing documents which may be required to be furnished by Seller, and performing all other acts
88    necessary in sufficient time to allow COE to occur by the closing date specified in the purchase contract ("COE
89    Date"). Unless otherwise agreed, Seller shall pay a prorated portion of taxes, assessments, HOA fees, and other
90    costs related to COE that are customarily prorated in the county where the Premises is located. The sale
91    proceeds shall be promptly distributed following COE. Unless otherwise specified in the purchase contract,
92    Seller shall deliver possession, occupancy, existing keys, and/or means to operate all locks, mailbox, security
93    system/alarms and all common area facilities to Buyer at COE.

## 3. DUTIES AND AUTHORIZATIONS

94    **REPRESENTATION OF SELLER:** Unless otherwise agreed, a Listing Broker acts as agent for Seller only and
95    has the duties of loyalty, obedience, disclosure, confidentiality, and accounting ("Fiduciary Duties") as well as other
96    duties imposed by the Arizona Department of Real Estate ("ADRE"). Seller acknowledges the property may be
97    shown to Buyers by Listing Broker and this shall not constitute a conflict of interest. Seller should carefully review
98    all advertising materials and contractual documents prepared by Listing Broker as Seller may be bound by these
99    materials. Listing Broker shall always exercise reasonable skill and care in the performance of Listing Broker's
100   duties to Seller. Seller is aware Listing Broker may list other properties which are similar to and/or which may be
101   located in proximity to the Premises.

102   **REPRESENTATION OF BUYER:** A Buyer's Broker (or "Cooperating Broker") represents only the Buyer and has
103   Fiduciary Duties as well as other duties imposed by ADRE in dealings with Buyer. Buyer's Broker may receive
104   Compensation from Buyer, Seller, or both. Seller authorizes Listing Broker to cooperate with and share
105   Compensation with Buyer's Broker as follows: No less than 3% of gross sales price.

106   **CONDUCT OF BROKERS:** Regardless of whom they represent, real estate licensees have the obligation to:
107   (i) treat all parties to a transaction fairly; (ii) disclose, in writing, all facts known to the licensee that may materially
108   and adversely affect the consideration to be paid for the Premises; (iii) disclose that Seller or Buyer may be
109   unable to perform; and (iv) disclose any information concerning any material non-obvious (latent) defect existing
110   in the Premises. REALTORS® are further obligated by their Code of Ethics to treat all parties honestly.

111   **DUAL (limited) REPRESENTATION:** A dual agency (or limited agency) may occur when the Listing Broker
112   procures a Buyer for the Property. In this situation, the same real estate company may be representing the
113   Seller's interest and the Buyer's interest. A dual agency may occur in this or in other ways. Brokers and their
114   Agents can legally represent both the Seller and the Buyer with the knowledge and written consent of both the
115   Seller and the Buyer. A Dual Agent has the duties of loyalty, obedience, disclosure, confidentiality and accounting
116   to both the Seller and the Buyer. Seller recognizes that in a dual agency situation, the duties normally owed to
117   Seller by the Listing Broker and his/her Agents may be limited in that confidential information pertaining to the
118   Buyer may not be disclosed to the Seller (and likewise, confidential information concerning the Seller may not be
119   disclosed to the Buyer). Seller agrees that the Listing Broker and his/her Agents shall not be liable for failing or
120   refusing to disclose confidential information. The Dual Agent may receive compensation from the Buyer and/or
121   from the Listing Broker with the written consent of all parties.

122   **CONSENT TO DUAL AGENCY: Seller ☐ Does ☐ Does Not** authorize Listing Broker to be a Dual Agent.

123                                 **Seller Initials Required:**     _____/_____
124                                                                          Seller/Seller

125   **NON DISCLOSURE:** Sellers and Listing Brokers are not obligated to disclose that a property has been the site of
126   a natural death, suicide, homicide, or any crime classified as a felony, nor that the property was owned or occupied
127   by a person exposed to HIV, or diagnosed as having AIDS or any other disease not known to be transmitted
128   through common occupancy of real estate, nor that the property is located in the vicinity of a sex offender.

                                                                   _____/_____
                                                                  Seller/Seller

129 **SIGNS/MARKETING:** Seller ☐ **Does** ☐ **Does Not** agree to the placement of a customary "For Sale" and
130 "Sold" sign(s) together with customary sign riders on the Premises through COE. In any event, Seller agrees
131 to immediately remove, or have removed, all "For Sale" signs not belonging to Listing Broker. The placement
132 of directional or other signs on public or private property without the property owner's permission is illegal.
133 Listing Broker/Agent will not illegally place such signage. Seller agrees not to advertise or market the Premises
134 in any manner without the prior written permission of Listing Broker. Seller acknowledges that any public marketing
135 of the Premises will require submission to the Multiple Listing Service within one business day.

136                                                          **Seller Initials Required:**        _____/_____
137                                                                                               Seller/Seller

138 **VIDEO/STILL IMAGES:** Seller ☐ **Does** ☐ **Does Not** consent to the taking and placement of video, still or
139 other images of the Premises on the Internet and in other media at the sole discretion of Listing Broker. Seller
140 is cautioned to protect valuable items from view. Listing Broker has no responsibility for loss of such valuable
141 items. Seller understands the public may have unlimited access to the images and may download and/or
142 copy them. Any such images are the property of Listing Broker.

143 **ACCESS AND KEYSAFE:** Seller ☐ **Does** ☐ **Does Not** authorize the installation and use of a Keysafe that
144 contains an access key to the Premises. A Keysafe permits access at any time to the interior of the Premises
145 by MLS Participants together with potential Buyers. Seller is advised to take appropriate security precautions to
146 protect valuable items. Seller agrees, upon reasonable notice, to cooperate with previews and showings of
147 the Premises at reasonable times. If there are any adult occupants of the Premises other than Seller or
148 Seller's family, or if the Premises is subject to a rental agreement, then Seller shall immediately provide
149 Listing Broker with written permission from all adult occupants authorizing access by the MLS Participants
150 and potential buyers at reasonable times upon reasonable prior notice according to the current Arizona Landlord
151 Tenant Act.

152 **HOME WARRANTY PLAN:** Seller ☐ **Does** ☐ **Does Not** agree to provide Buyer, at Seller's expense, at
153 COE, a home warranty plan acceptable to Seller. Seller is aware that home warranty plans may provide
154 benefits to Seller, during the Term and/or escrow period, as well as to the Buyer of the Premises.

155 **SUBSEQUENT OFFER:** Seller shall, prior to close of escrow, receive all offer(s) to purchase the Premises
156 unless otherwise agreed upon by Seller in writing. Seller understands that any offer accepted by the Seller
157 subsequent to a first accepted offer must be a backup offer contingent on the cancellation of the existing Contract.

158 **INDEMNIFICATION:** As a material condition of this Agreement, Seller agrees that the local association of
159 REALTORS® and local MLS (collectively "MLS") are third-party beneficiaries of this Agreement for the purpose of
160 indemnification. Seller agrees to defend, hold harmless and indemnify MLS, their Directors, Officers, employees
161 and volunteers as well as Listing Broker and the Cooperating Broker involved in any transaction resulting from this
162 listing from any and all claims, damages, liability or other loss, including all attorneys' fees and legal costs incurred
163 arising out of any injury or damage to persons or property in connection with the marketing or showing of the
164 Premises, any claim of misrepresentation or for any action or non action by Seller including, but not limited to, the
165 supplying of incorrect information, breach of warranty or any other claim arising out of this Agreement or the sale
166 and purchase of the Premises. This provision is to be liberally construed in favor of the indemnified parties.
167 Notwithstanding anything to the contrary, Seller shall not be obligated to defend, indemnify or hold listing Broker
168 harmless with respect to the gross negligence or intentional misconduct of Broker.

169                                                          **Seller Initials Required:**        _____/_____
170                                                                                               Seller/Seller

## 4.   SELLER OBLIGATIONS

171 **FAIR HOUSING:** The Premises shall be offered to all persons without regard to their ancestry, race, religion,
172 color, gender, sexual orientation, handicap, marital status, familial status, age or national origin or any other
173 mandated classification by prevailing federal, state or local laws.

                                                                              _____/_____
                                                                               Seller/Seller

174  **SELLER PROPERTY DISCLOSURE STATEMENT ("SPDS"):**  Seller shall complete and return to Listing Broker
175  a SPDS form within five (5) calendar days after receipt thereof.  Listing Broker shall have no responsibility, in
176  whole or part, for the preparation of the SPDS.  Seller shall fully disclose all material facts known to Seller
177  concerning any previous or current problem(s) or condition(s) that could adversely affect the value or marketability
178  of the Premises.  Seller shall immediately advise Listing Broker, in writing, concerning any subsequent changes
179  that occur concerning the Premises or that are subsequently discovered and cause the SPDS form to be amended
180  accordingly and authorizes release of such information to all Cooperating Brokers. Seller agrees to hold Broker
181  harmless from any damages if Seller does not inform Broker of changes in writing.

182  Public Report: Seller represents that if the Property is located in a subdivision:
183      A.  Have you and/or any entity in which you have a financial interest EVER owned six or more lots in this
184         subdivision? ☐ **Yes** ☐ **No**

185         If Yes to A, Seller has applied for and been issued an approved Public Report ☐ **Yes** ☐ **No**

186  **AFFIDAVIT OF DISCLOSURE:** If the Premises is located in an unincorporated area of the county, and five or fewer
187  parcels of property other than subdivided property are being transferred, the Seller shall be required to provide Listing
188  Broker a completed, notarized State of Arizona Affidavit of Disclosure form required pursuant to Arizona Revised
189  Statute§33-422 within seven (7) days of the commencement date of this Agreement.

190  **DOMESTIC WATER WELL/WATER USE ADDENDUM SELLER'S PROPERTY DISCLOSURE STATEMENT**
191  **("DOMESTIC WATER WELL/WATER USE ADDENDUM SPDS"):**  Property ☐ **Does** ☐ **Does Not** have a
192  Domestic Water Well.  If the property is served by a domestic water well, Seller shall complete and return the
193  Domestic Water Well/Water Use Addendum SPDS to Listing Broker within five (5) calendar days after receipt
194  thereof.  Seller shall fully disclose all material facts known to Seller concerning any previous or current problem(s)
195  or condition(s) that could adversely affect the value or marketability of the Property.  Seller shall immediately
196  advise Listing Broker, in writing, concerning any subsequent changes which occur concerning the Property or which
197  are subsequently discovered and cause the Domestic Water Well/ Water Use Addendum SPDS form to be
198  amended accordingly and authorizes release of such information to all Cooperating Brokers.  Seller agrees to hold
199  Broker harmless from any damages if Seller does not inform Broker of changes in writing.

200  **WATER / WELL RIGHTS:**  The following described water/well rights shall transfer with the subject property, if
201  any: _____

202  **HOA RESALE NOTIFICATION AND ADDENDUM:**  If the Premises is in a residential HOA/Condominium or
203  Planned Unit Development, Seller shall complete and return to Listing Broker Page one of the HOA
204  Condominium/Planned Community Addendum within (5) Calendar Days after receipt thereof.  Seller shall fully
205  disclose all information requested on the form to the best of Seller's actual knowledge as of the date signed.  If the
206  Premises is in a residential HOA/Condominium or Planned Unit Development ("Planned Community") consisting of
207  less than fifty (50) units, Seller shall deliver to Buyer and Escrow Company the disclosure notice to be provided to
208  Buyer within ten (10) days following acceptance of a purchase contract.  If the Premises is in a Planned Community
209  with fifty (50) or more units, the HOA shall mail or deliver the required disclosure notice to Buyer and the Escrow
210  Company within ten (10) days following receipt of a written notice of a pending sale of the Premises. Seller shall
211  promptly notify the HOA of the pending sale of the Premises.
212                                        **Seller Initials Required:**  _____/_____
213                                                 Seller/Seller

214  **INSURANCE CLAIMS HISTORY:**  Seller shall deliver to buyer a written five-year insurance claims history
215  regarding the Premises (or a claims history for the length of time Seller has owned the Premises if less than
216  five years) from Seller's insurance company or an insurance support organization, or consumer reporting
217  agency, or if unavailable from those sources, from Seller, within five (5) days after contract acceptance.

218  **CONDITION OF PREMISES AND INSURANCE:**  Seller is responsible to maintain the Premises in the same or
219  better condition as on the date of execution of this Agreement through COE.  Therefore, Seller should maintain
220  appropriate hazard insurance to cover partial or complete destruction of the Premises as well as any loss due to
221  theft, vandalism, water and glass breakage, if available, as well as liability coverage.  Seller shall consider notifying
222  insurance company prior to vacancy of property.

_____/_____
Seller/Seller

223 **LEAD BASED PAINT:** If any portion of the Premises was constructed prior to 1978, federal law requires that
224 Buyer be provided a Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards form.
225 If applicable, Seller shall provide Listing Broker, simultaneously with the execution of this Agreement or not
226 later than five (5) days following execution of this Agreement, a completed and executed disclosure form.

227 **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 ("FIRPTA"):** If Seller is a foreign person
228 or a nonresident alien, Seller shall provide Escrow Agent with a completed and signed FIRPTA certificate. If Seller
229 is a foreign person, Seller acknowledges that any Buyer may be required to withhold a tax of up to 15% of the
230 purchase price unless an exemption applies.

231 **REFERRALS-RESPONSIBILITY:** If Listing Broker, Cooperating Broker, or their Agents recommend to Seller any
232 person, entity or service, for any purpose, it shall be Seller's duty to independently investigate the qualifications
233 of the referred party.  Seller shall hold harmless and indemnify the referring party from any adverse consequences
234 resulting from such referral.

## 5. FUTURE SELLER OBLIGATIONS

235 **SEPTIC OR ALTERNATIVE TREATMENT SYSTEM:** If the Premises is served in whole or in part by an on-site
236 wastewater treatment facility, Seller shall, at Seller's expense, place in escrow any certification(s) which may be
237 required by any law and/or any appropriate regulatory bodies.  Certification may require that the system be
238 inspected, emptied and/or repaired prior to the issuance of the requisite certification.  If a public sewer line of
239 sufficient capacity exists within 200 feet of the Premises, the lender or local health authority may require
240 connection to the public sewer line prior to or upon transfer of ownership.  Unless otherwise agreed upon with
241 Buyer, such connection to the public sewer line shall be at Seller's expense.

242 **POOL SAFETY:** If the Premises includes a swimming pool or spa, Seller shall provide Buyer with an opportunity
243 to review the relevant pool barrier laws and shall provide Buyer with a notice concerning pool safety which shall
244 be signed by Buyer acknowledging receipt thereof.

245 **DEED/TITLE INSURANCE:** Seller shall convey title to Buyer by general warranty deed.  Buyer shall be provided,
246 at Seller's expense, an American Land Title Association ("ALTA") Homeowner's Title Insurance Policy, or if not
247 available, an ALTA Residential Title Insurance Policy ("Plain Language" / "1-4" units") or, if not available, a
248 Standard Owner's Title Insurance Policy.

249 **PREMISES CONDITION AT CLOSING:** Seller shall remove all personal property not included in the sale and all
250 debris from the Premises at the earlier of possession by Buyer or COE whichever first occurs.

## 6. REMEDIES

251 **DISPUTE RESOLUTION:** Listing Broker and Seller agree to mediate any dispute or claim arising out of or relating
252 to this Agreement in accordance with the REALTORS® Dispute Resolution System, or as otherwise agreed.  All
253 mediation costs shall be paid equally by the parties.  In the event that mediation does not resolve all disputes or
254 claims, the unresolved issues shall be submitted for arbitration. **While either party shall have all the rights and
255 benefits of arbitration, both parties are giving up the right to litigate such claims and disputes in a court or
256 jury trial**. Neither party shall be entitled to join or consolidate disputes by or against others, or to include in any
257 arbitration any dispute as a representative or member of any class, or to act in any arbitration in the interest of the
258 general public or in any private attorney general capacity.  Either party may initiate arbitration by giving notice of the
259 dispute stating with particularity that party's position. The parties shall cooperate in the expeditious appointment of
260 an arbitrator. If the parties are unable to agree upon an arbitrator, either party may apply to the relevant County
261 Superior Court for appointment of an arbitrator pursuant to A.R.S. §12-1501 *et seq*.  The arbitrator's award shall be
262 final and binding and not subject to appeal.

263 **ARBITRATION COSTS AND ATTORNEYS' FEES:** In any proceeding, including arbitration, for damages, or to
264 enforce any of the provisions of this Agreement, including a claim by Listing Broker for payment of Compensation,
265 the substantially prevailing party shall be entitled to recover from the other party its reasonable attorneys' fees and

_____/_____
Seller/Seller

266 related expenses including, but not limited to, expert witness fees, fees paid to investigators, and customary court
267 costs.  The arbitrator shall determine which of the parties shall pay the fees and costs for the arbitration including
268 attorneys' fees.

## 7.   ADDITIONAL TERMS

269 **ARIZONA LAW:**  This Agreement shall be governed by Arizona law and is subject to the jurisdiction of Arizona.

270 **TIME IS OF THE ESSENCE:**  The parties acknowledge that a material and negotiated condition of this Agreement
271 is that time is of the essence in the performance of the obligations described herein.

272 **DAYS:**  All references to days in this Agreement shall be construed as calendar days.  The day of the act or event
273 from which the time period begins to run is not included and the last day of the time period is included.

274 **COPIES AND COUNTERPARTS:**  A fully executed facsimile or electronic copy of this Agreement shall be treated
275 as an original Agreement.  This Agreement may be executed in counterparts, which shall become effective upon
276 delivery.  All counterparts shall be deemed to constitute one instrument. The Disclosure of Information on Lead-
277 Based Paint and/or Lead-Based Paint Hazards form may not be signed in counterpart.

278 **ENTIRE AGREEMENT/NO MODIFICATION:**  This Agreement, the Property Profile Sheet, and any addenda,
279 photographs, data or other documentation which shall be incorporated into this Listing Agreement, constitutes the
280 entire Agreement between Seller and Listing Broker and supersedes any prior written or oral representations or
281 agreements between Seller and Listing Broker.  Any release from or modification to this Agreement requested by
282 Seller during the term of this Agreement will be in writing signed by the parties.  The pre-printed portions of this
283 Agreement may not be modified without the express written permission of MLS.  No modifications shall be made to
284 this Agreement which shall place Listing Broker and his/her agents in violation of the MLS Rules and Regulations.
285 The failure to initial any page of this Agreement will not affect the validity or terms of this Agreement.

286 **IMPORTANT NOTE:  If Seller signs more than one Listing Agreement during the Term or Extended Term
287 of this Agreement, Seller could be responsible for paying Compensation to more than one broker upon
288 the sale of the Premises.**

289 **SELLER MATERIALS:**  If Seller provides Listing Broker any photographs, floor plans, art work**,** plot plan
290 drawings, or any other items created by or for Seller ("Seller Materials"), Seller, having the authority to do so,
291 hereby grants Listing Broker and MLS a non-exclusive right and license to all intellectual property rights
292 thereto including the copyright to use and defend Seller Materials in any manner and for any reason.  Upon
293 termination of this Agreement, upon written request, the original Seller Materials shall be returned to Seller.

294 **INTELLECTUAL PROPERTY**: Listing Broker is specifically authorized to use, for any purposes whatsoever,
295 any and all information obtained by or provided to Listing Broker pursuant to this Listing Agreement (including
296 any information concerning the price and terms of the sale of the  Premises, length of time the Premises is on
297 the market, and any other information relating to the Premises) (the "Work(s)"), both before and after the sale
298 or, in the event there is not a sale, after this listing has expired.  Seller hereby assigns to Listing Broker any and
299 all intellectual property rights Seller may have in the Works and to any pictures or other reproductions of the
300 Premises used in connection with the marketing of the Premises.  For purposes of clarity, Listing Broker is the
301 owner of any and all rights in the Work(s) and may further assign, license, sublicense, or otherwise dispose of
302 these rights to any party whatsoever for any purposes whatsoever.

303 **ADDITIONAL TERMS:**  _____
304 _____
305 _____
306 _____
307 _____
308 _____
309 _____

_____/_____
Seller/Seller

 Original form content copyright by the Multiple Listing Service of Southern Arizona (MLSSAZ).
Reproduced and modified with permission from MLSSAZ .  •  Long Realty Company May 2020

## 8.   ACCEPTANCE

310   ***SELLER***

311
312   Print Seller Name                                                    Print Seller Name

313
314   Seller Signature                    (MO/DA/YR)          Seller Signature                    (MO/DA/YR)

315
316   Seller Address                                                      Seller Address

317
318   City/State                    Zip                              City/State                    Zip

319
320   Seller Email Address                                          Seller Email Address

321
322   Seller Phone               Seller Fax                      Seller Phone               Seller Fax

323
324   Seller Office Phone        Seller Office Fax            Seller Office Phone        Seller Office Fax

325   **ACCEPTANCE BY LISTING BROKER:**  By signing below the Authorized Signor acknowledges authority to sign
326   this Agreement and accepts from Seller (and Listing Agent if applicable) an irrevocable assignment of the copyright
327   and other intellectual property rights in Seller Materials, including the right to protect and enforce the ownership
328   rights therein.  The Authorized Signor reserves a non-exclusive right to utilize Seller Materials in the promotion and
329   marketing of the Premises.  If and when the Premises is listed in MLS, the Authorized Signor irrevocably assigns an
330   undivided interest in such rights to MLS.  By publication of a listing of the Premises, MLS accepts an irrevocable co-
331   ownership of said property rights during the Term and/or Extended Term of this Agreement.  Each party shall have
332   an independent right to enforce and defend the property rights each has acquired in the Seller (Listing Agent's)
333   Materials.  Upon termination of this Agreement, Seller Materials shall be returned to Seller upon
334   receipt of written request from Seller.

335   Designated Broker, Cathy Erchull
336   Long Realty Company                                          Listing Agent Name

337   Branch Office Address

338
339   Office Phone/Agent Contact Phone                    Fax               Agent E-mail Address

340
341   AUTHORIZED SIGNATURE (Listing Agent)

File No. _____  Designated Broker or Designee **Initials**: _____  Date: _____

_____/_____
Seller/Seller

Page 8 of 8     Original form content copyright by the Multiple Listing Service of Southern Arizona (MLSSAZ).
Reproduced and modified with permission from MLSSAZ .  •  Long Realty Company May 2020