UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COHL, STEVE DARNELL, VALERIE NAGER, JACK RAMEY, SAWBILL STRATEGIC, INC., DANIEL UMPA and JANE RUH, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No: 1:19-cv-01610 |
| v. | ) ) | Judge Andrea Wood Magistrate Judge M. David Weisman |
| THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., HSF AFFILIATES, LLC, BHH AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX HOLDINGS, INC. and KELLER WILLIAMS REALTY, INC. | ) ) ) ) ) ) ) ) ) ) | **EXHIBIT 10** |
| Defendants. | ) ) ) | |

**DECLARATION OF CAROL DERNBACH**
**("PREFERRED CAROLINAS DECL.")**

I, Carol Dernbach, under the penalties for perjury, declare:

    1.    I am an adult over the age of 21, competent to make this Declaration.

    2.    I have personal knowledge of the facts stated in this Declaration.

    3.    I am the Chief Financial Officer at Preferred Carolinas Realty, Inc. d/b/a Berkshire Hathaway HomeServices Carolinas Realty d/b/a Berkshire Hathaway HomeServices York Simpson Underwood Realty d/b/a Berkshire Hathaway HomeServices Yost & Little Realty d/b/a Berkshire Hathaway HomeServices Pinehurst Realty Group ("Preferred Carolinas"). I am familiar with Preferred Carolinas' business generally and its practices with

1

respect to the form listing agreements and form arbitration agreements Preferred Carolinas has used since 2014, specifically.

4.      Preferred Carolinas provides real estate brokerage services through independent contractor agents. Those independent agents, among other things, assist homeowners in selling their homes and list customers' homes for sale on a "Covered MLS" at issue in this case, including, but not necessarily limited to, the MLS(s) "in the Southeast that cover . . . the metropolitan areas [of] . . . Charlotte, North Carolina and Raleigh, North Carolina." *See* Doc. 84 at 11.

5.      Preferred Carolinas requires that its independent contractor agents execute listing agreements with homeowners, which articulate the terms of the agreement between Preferred Carolinas and the homeowner. Since at least 2014, Preferred Carolinas has provided its independent contractor agents with a form listing agreement and form arbitration agreement for use in listing residential real estate.

6.      Since at least 2014, and in every year since, Preferred Carolinas' form listing agreement has included a broad, binding arbitration provision, which precluded class arbitrations.

7.      Since at least 2014, Preferred Carolinas' standalone arbitration agreement has included a broad, binding arbitration provision, which precluded class arbitrations, and contained an independent notice of class action and jury trial waivers.

8.      Since at least 2014, Preferred Carolinas has instructed its independent contractor agents to request that homeowners execute Preferred Carolinas' then relevant form listing agreement. If the independent contractor agent used a different listing agreement,[1] Preferred

---

[1] Any different listing agreement used would also set the commission rate at which the broker is compensated.

Carolinas instructed its independent contractor agent to request that homeowners execute, in addition to the listing agreement, Preferred Carolinas' standalone arbitration agreement.

9. Accordingly, every listing agreement executed by Preferred Carolinas in or after January 2014 should contain a clause requiring arbitration of disputes between Preferred Carolinas and the homeowner, or be accompanied by a separate arbitration agreement requiring the same. These agreements were used in the state of North Carolina.

10. A true and accurate copy of Preferred Carolinas' form listing agreement for 2014 is attached as Preferred Carolinas Declaration Exhibit A.

11. A true and accurate copy of Preferred Carolinas' form listing agreement for 2015 to July 2017 is attached as Preferred Carolinas Declaration Exhibit B.

12. A true and accurate copy of Preferred Carolinas' form listing agreement for July 2017 to August 2017 is attached as Preferred Carolinas Declaration Exhibit C.

13. A true and accurate copy of Preferred Carolinas' form listing agreement for August 2017 to the present is attached as Preferred Carolinas Declaration Exhibit D.

14. True and accurate copies of Preferred Carolinas form standalone arbitration agreements for 2014 through August 2017 are attached as Preferred Carolinas Declaration Exhibits E1 – 2.

15. A true and accurate copy of Preferred Carolinas form standalone arbitration agreement for August 2017 to the present is attached as Preferred Carolinas Declaration Exhibit F.

[the remainder of this page left blank intentionally]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 11/19/2020

Signed: Carol Dernbach

Printed: Carol Dernbach



## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This Exclusive Right To Sell Listing Agreement ("Agreement") is entered into between
_____as
Seller(s) ("Seller") and Preferred Carolinas Realty, Inc. dba Berkshire Hathaway HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, and Berkshire Hathaway HomeServices Yost & Little Realty as Listing Broker ("Broker") for the property described below ("Property") and known as or legally described as:

Street Address: _____
City: _____ Zip code: _____
County: _____, North Carolina.
Legal Description:_____
_____.

1.      TERM OF AGREEMENT:  In consideration of Broker's services to procure a buyer for the Property, Broker is hereby granted the exclusive right to sell the Property for a period beginning on _____, 20___ and expiring at 11:59 P.M. on _____, 20___ unless terminated sooner by Broker at its option.

2.      LISTING PRICE AND TERMS:  Seller agrees to list the Property, including all fixtures described in paragraph 3, for sale at a price of $_____ ("Listing Price") on the following terms:
___ Cash          ___ FHA          ___ VA          ___ USDA          ___ Conventional          ___ Loan Assumption
___ Seller Financing          Other: _____.

Seller agrees to sell the Property for the Listing Price and terms set forth above, or at any other price and on any other terms acceptable to Seller.

3.      FIXTURES.  The following items, if any, are deemed fixtures and are included in the Listing Price free of liens: range/stove/oven, any built-in appliances, light fixtures, ceiling fans, attached floor coverings, blinds, shades, drapery rods and curtain rods, brackets and all related hardware, window and door screens, storm windows, combination doors, awnings, antennas, satellite dishes and receivers, burglar/fire/smoke/carbon monoxide alarms, pool and spa equipment, solar energy systems, attached fireplace screens, gas logs, fireplace inserts, electric garage door openers with controls, outdoor plants and trees (other than in movable containers), basketball goals, storage sheds, mailboxes, attached wall and/or door mirrors, fuel tank(s) whether attached or buried and including contents, if any, as of  the date of the closing on the sale of the Property, landscape and/or foundation lighting, invisible fencing including all related equipment, lawn irrigation systems and all related equipment, water softener/conditioner and filter equipment, and any other items attached or affixed to the Property, EXCEPT the following items which are leased or not owned by the Seller or which the Seller does not intend to convey:
_____
_____

4.      PERSONAL PROPERTY.  The following personal property shall be transferred to Buyer free of liens at no value at the closing on the sale of the Property:
_____
_____

5.    BROKER'S COMPENSATION:  Seller agrees to pay Broker compensation in the amount of $_____ plus _____% of the gross contract sales price of the Property, which compensation shall include any compensation paid by Broker to any cooperating real estate brokers.  Note that Broker does not offer any compensation to non-cooperating real estate brokers who are not members of the Multiple Listing Service ("MLS").  Seller authorizes the payment of the compensation owed to Broker pursuant to this Agreement to be paid directly to Broker from Seller's proceeds from the closing on the sale of the Property.

The compensation owed to Broker shall be deemed earned upon Broker, a cooperating real estate broker, Seller, or anyone else procuring or producing a ready, willing and able buyer(s) at the Listing Price and terms agreed to herein by Seller, or at any other price or terms acceptable to Seller, during the term of this Agreement.  If any agreement for the sale or transfer of the Property does not have a selling price, the percentage component of the compensation owed to Broker shall be calculated based on the fair market value of the Property as of the effective date of such agreement. The compensation earned as set forth above shall be due and payable immediately upon the earlier of:

    (a)    The closing on the sale of the Property;
    (b)    Seller's refusal to sign a contract or agreement for the sale of Property at the Listing Price and terms set forth herein, or on any other terms acceptable to Seller;
    (c)    Seller's breach of any contract or agreement for the sale or transfer of the Property;
    (d)    Seller's agreement with any buyer(s) to unreasonably modify or cancel any contract or agreement for the sale or transfer of the Property;
    (e)    Seller's breach of this Agreement.

Provided, however, that in the event the Property is not sold during the term of this Agreement, if within 180 days after expiration of this Agreement (the "Protection Period") Seller sells or enters into any agreement to sell the Property, directly or indirectly, including but not limited to any form of option, exchange, lease/purchase, conveyance or transfer upon any terms whatsoever, to any person or entity with whom Seller, Broker, or any cooperating real estate broker communicated during the term of this Agreement, and whose name(s) Broker has submitted to Seller in writing within 15 days of the expiration of this Agreement, the compensation owed to Broker pursuant to this Agreement shall be immediately due and payable to Broker. However, Seller shall not be obligated to pay the compensation owed to Broker pursuant to this Agreement if a valid listing agreement is entered into with another licensed real estate broker after the expiration of this Agreement and the Property is sold, exchanged, leased, conveyed or transferred during the Protection Period.

Seller acknowledges and agrees that Broker may be offered compensation from other persons or entities in connection with the sale of the Property, and Seller agrees to permit Broker to receive any such additional compensation.  Broker will timely disclose any such additional compensation to Seller.

6.    BROKER'S DUTIES:  Broker accepts the exclusive listing granted by this Agreement and shall use its best efforts and due diligence to solicit and procure a ready, willing and able buyer to purchase the Property at the Listing Price and terms set forth in this Agreement. Broker further agrees to:

    (a)    Perform the terms of this Agreement, exercise reasonable care and skill, and promote Seller's interests;
    (b)    Assist Seller in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to the offers and the counteroffers;
    (c)    Accept delivery of and present to Seller in a timely manner all offers and counteroffers to sell the Property;
    (d)    Respond to Seller's questions relating to the offers, counteroffers, notices, and contingencies.
    (e)    Account in a timely manner for all money and property received on behalf of Seller;
    (f)    Not disclose any confidential information about Seller, unless disclosure is authorized pursuant to this Agreement or is required by statute, rule, regulation or North Carolina law, or the failure to disclose such information would constitute a material misrepresentation.
**BROKER SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT.**

7.    SELLER'S DUTIES:  Seller agrees to cooperate with Broker in marketing the Property for sale, including making the Property available for showings at reasonable times on reasonable notice.  Seller further agrees to complete all required disclosure forms, including but not limited to the Residential Property and Owner's Association Disclosure Statement (unless exempt) and the Lead-Based Paint or Lead-Based Paint Hazard Addendum, if applicable to the Property.

Seller represents that Seller holds title to the Property in fee simple, and that Seller does not know or have reason to know of circumstances or encumbrances that would prohibit Seller from conveying fee simple marketable title to the Property to a ready, willing and able buyer except as follows:

_____

_____

8.      SELLER REPRESENTATIONS:  Seller acknowledges and agrees that Broker is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which Broker knows or reasonably should know.  Seller hereby makes the following representations concerning the Property:

(a)     **Flood Hazard Disclosure/Insurance.**   To the best of Seller's knowledge, the Property ☐ is ☐ is not located partly or entirely within a designated Special Flood Hazard Area.  The Seller ☐ does ☐ does not currently maintain flood hazard insurance on the Property.

(b)     **Synthetic Stucco.**  To the best of Seller's knowledge, the Property ☐ has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system," commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows:

(c)     **Owners' Association**.

(1) Complete ONLY if the Residential Property and Owner's Association Disclosure Statement is required: The name, address and telephone number of the president of the owner's association or the association manager is:

_____

_____

_____

Owner's association website address, if any:_____

(2) Complete ONLY if New Construction or where the Residential Property and Owner's Disclosure Statement is NOT required: To the best of Seller's knowledge there ☐ is ☐ is not an owners' association which imposes various mandatory covenants, conditions and restrictions upon the Property.  If there is an owners' association, Seller agrees to promptly complete an Owners' Association Disclosure and Addendum For Properties Exempt from Residential Property Disclosure Statement at Seller's expense and to attach it as an addendum to any contract for the sale of the Property.

(d)     **Ownership**.  Seller represents that Seller:
☐  has owned the Property for at least one year;
☐  has owned the Property for less than one year.

(e)     **Residence**.  Seller represents that the Property ☐ is or ☐ is not the Seller's primary residence.

(f)     **Receipt of Sample Forms**.
☐  Seller acknowledges receipt of a sample copy of an Offer to Purchase and Contract (Form 2-T) or Offer to Purchase and Contract—New Construction (Form 800-T), as may be appropriate for review purposes.
☐  Seller acknowledges receipt of a sample copy of a Professional Services Disclosure and Election Form (Form #760) for review purposes.

(g)     **Current Liens**.   Seller represents to the best of Seller's knowledge:
(1)     The Property ☐ is ☐ is not encumbered by a deed of trust or mortgage.
*Complete any of the following where applicable:*
(i)     There is a first deed of trust or mortgage on the Property securing a loan held by:
Lender Name: _____
Approximate balance: $_____
Lender Phone #:_____
Lender Address: _____
(ii)    There is a second deed of trust or mortgage on the Property securing a loan held by:
Lender Name: _____
Approximate balance: $_____
Lender Phone #:_____
Lender Address: _____

       (iii)     There is a deed of trust or mortgage on the Property securing an equity line of credit held by:

Lender Name: _____

Approximate balance: $ _____

Lender Phone #: _____

Lender Address: _____

(2)     Seller ☐ is current on all payments for the loans identified in numbered items (i), (ii) and (iii) above except as specified in (7) below.

(3)     Seller ☐ is not in default on any loan identified in numbered items (i), (ii) and (iii) above and has not received any notice(s) from the holder of any loan identified in numbered items (i), (ii) and (iii) above or from any other lien holder of any kind, regarding a default under the loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure except as specified in (7) below.

(4)     There ☐ are not any liens secured against the Property for Federal, State or local income taxes, unpaid real property taxes, unpaid condominium or homeowners' association fees, mechanics', laborers' or materialmens' liens, or other liens affecting the Property, and Seller has no knowledge of any matter that might result in a lien affecting the Property except as specified in (7) below.

(5)     There ☐ are not any judgments against Seller affecting the Property, and Seller has no knowledge of any matter that might result in a judgment that may potentially affect the Property except as specified in (7) below.

(6)     There ☐ are not any Uniform Commercial Code (UCC) fixture filings affecting the Property, and Seller has no knowledge of any matter that might result in a UCC fixture filing affecting the Property except as specified in (7) below.

(7)     Specify any information, including approximate balances, required by Seller representations (2) through (6) above (**NOTE**: Outstanding liens may affect Seller's proceeds.)

_____

_____

(h)     **Bankruptcy**. Seller currently:

     (1)     ☐ is ☐ is not under bankruptcy protection under United States law.

     (2)     ☐ is ☐ is not contemplating seeking bankruptcy protection during the term of this Agreement.

(i)     **Access**. Seller represents that the Property ☐ does ☐ does not have legal access to a public right of way. If access is by private road/easement/other, Seller further represents that there ☐ is ☐ is not an agreement regarding the maintenance of such private road/easement/other means of access. If applicable, Seller agrees to promptly provide Broker information pertaining to any such agreement.

(j)     **Lease(s).** To the best of Seller's knowledge, the Property☐ is ☐ is not subject to any lease(s). If applicable, Seller agrees to promptly provide Broker a copy of any such lease(s) or a written statement of the terms of any oral lease(s).

(k)     **VA/FHA Appraisal**. To the best of Seller's knowledge, a VA or FHA appraisal ☐ has ☐ has not been performed on the Property within six months prior to the Effective Date. If applicable, Seller agrees to promptly provide Firm a copy of any such appraisal if available.

(l)     **Special Assessments**. To the best of Seller's knowledge, there are no proposed or confirmed special assessments (as defined in the sample contract form provided to Seller) regarding the Property except as follows (Insert "none" or the identification of such assessments, if any):_____.

If, during the term of this Agreement, Seller becomes aware that any of the representations set forth in this paragraph 8 are incorrect or no longer accurate, Seller shall promptly notify Broker and cooperate with Broker in taking appropriate corrective action.

9.     HOME INSPECTION: Seller is advised to obtain a home inspection for the purpose of evaluating the condition of the Property in order to enhance its marketability and to help reduce concerns of prospective buyers. Seller ☐ agrees ☐ does not agree to obtain and pay for a home inspection by a licensed NC Home Inspector within _____ days after the execution of this Agreement.

     ☐     Seller acknowledges receipt of a copy of *Questions and Answers on: Home Inspections* by the NC Real Estate Commission.

10.     MARKETING ACTIVITIES:  Seller hereby authorizes Broker to market the Property as described below on: ☐ the date this Agreement has been signed by Seller and Broker OR ☐ (insert date) _____.

   (a)    Cooperate and share the commission payable under this Agreement with other brokers including brokers who have been employed as buyer's agents, subagents, dual agents, or designated agents, subject, where applicable, to authorization as required by law;

   (b)    Submit pertinent information, including virtual tours and images when applicable, concerning the Property to any Multiple Listing Service ("MLS") organizations to which Broker subscribes;

   (c)    Provide to any MLS to which Broker subscribes, for dissemination to others, timely notice of status changes affecting the Property, sales information, including Seller's name, price, and other information concerning the Property for use of the members of such services, to compile reliable statistics, and to establish market value for other properties, and to report sales information about the property, including the price at which the property sold, or is contracted to be sold, to the MLS for dissemination to MLS participants, subscribers, and other licensees or users of the MLS database compilation;

   (d)    Disseminate data about the Property and other information, including Seller's name, price, and other information concerning the Property supplied by, or on behalf of Seller, including creative works depicting the Property, such as virtual tours, images, and any textual descriptions of the Property (collectively referred to as "Content"), to MLS Participants, Subscribers and other licensees or users of the MLS database compilation, or any other MLS in which Broker participates, and to further disseminate, or permit the MLS or other MLS participants to disseminate such Content to potential purchasers through websites on the Internet. Further, Broker is authorized to otherwise advertise the Property in any manner deemed appropriate by Broker, including but not limited to advertising on the Internet, virtual tours, web-sites, trade journals and any other medium, and communications via e-mail and facsimile;

   (e)    Place a "For Sale," "Under Contract," "Sale Pending," and other similar signs on the Property and to remove all other signs during the term of this Agreement;

   (f)    Enter the Property at reasonable times and with reasonable notice for the purpose of evaluation, preview, or showing the Property to prospective purchasers or other brokers;

   (g)    Possess and maintain a key to the Property, and make use of a "Lock Box" during the term of this Agreement; and

   (h)    Conduct open houses of the Property at such times as Seller and Broker may agree.

Seller acknowledges and understands that while the marketing services identified above will facilitate the showing and sale of the Property, there are inherent risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of Broker, including but not limited to:

   (1)    unauthorized use of a lock/key box,
   (2)    control of visitors during or after a showing or an open house,
   (3)    inappropriate use of information about the Property placed on the Internet or furnished to any MLS in which Broker participates.

Seller agrees to indemnify and hold harmless Broker from any damages, costs, attorney's fees or other expenses as a result of any personal injury or property loss or damage to Seller or any other person or entity arising out of any such marketing activities which are not the result of the sole negligence of Broker.

11.     COPYRIGHT ASSIGNMENT:  Broker is specifically authorized to use, both before and after the sale or, in the event there is not a sale, after this listing has expired, for any purposes whatsoever, any and all information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property (including any information concerning the price and terms of the sale of the Property, the description of the Property, length of time the Property is on the market, and any other information relating to the Property) ("Seller Content"). Seller hereby assigns to Broker any and all intellectual property rights Seller may have in the Seller Content and to any photographs or video or other reproductions of the property used in connection with the marketing of the property.  For purposes of clarity, Broker is the owner of any and all rights in the Seller Content and may further assign, license, sublicense, or otherwise dispose of these rights to any party whatsoever for any purposes whatsoever.  If any moral rights are not transferred by the preceding sentences, Seller hereby waives all such rights.

Seller's execution of this Agreement further signifies Seller's representation and warranty that Seller is the sole author and sole owner of all rights in and to the Seller Content; that Seller's contribution to the Seller Content is original and not in the public domain; that Seller's contribution to the Seller Content contains no material from other copyrighted or unpublished work that has been used without the written consent of the copyright owner and/or of the owner of any other rights to or in such other works; that it does not violate or infringe on any personal or property rights of others, whether common law or statutory; that it contains nothing libelous or contrary to law; and that Seller has full power to enter this Agreement. Seller agrees to indemnify and hold harmless Broker for any claims of copyright infringement or other claims arising from any publication or use of the Seller Content.

Broker grants to Seller a non-exclusive, perpetual license for the use of the Seller Content, including the right to display, reproduce, distribute or make derivative works from the Seller Content. For purposes of clarity, the license granted to Seller for the use of the Seller Content applies only to information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property, and not to any information, photographs or video created or provided by or on behalf of Broker.  Seller agrees to indemnify and hold harmless Broker for any and all claims arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of this license. Seller understands and agrees that Broker assumes no responsibility for Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of the license granted by Broker, or for any infringement arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content.

12.     DUAL AGENCY: Seller understands that the potential for dual agency will arise if a buyer who has an agency relationship with Broker becomes interested in viewing the Property.  Broker may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Broker acts.

(a)     Disclosure of Information.  In the event Broker serves as a dual agent, Seller agrees that without permission from the party about whom the information pertains, Broker shall not disclose to the other party the following information:

(1)     that a party may agree to a price, terms, or any conditions of sale other than those offered;
(2)     the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and
(3)     any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute, rule, regulation or North Carolina law.

(b)     Broker's Role as Dual Agent.  If Broker serves as agent for both Seller and a buyer in a transaction involving the Property, Broker shall make every reasonable effort to represent Seller and buyer in a balanced and fair manner.  Broker shall also make every reasonable effort to encourage and effect communication and negotiation between Seller and buyer.  Seller understands and acknowledges that:

(1)     Prior to the time dual agency occurs, Broker will act as Seller's exclusive agent;
(2)     In its separate representation of Seller and buyer, Broker may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Broker;
(3)     Broker is required by law to disclose to Seller and buyer any known or reasonably ascertainable material facts.

Seller agrees Broker shall not be liable to Seller for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

(c)     Seller's Role.  Should Broker become a dual agent, Seller understands and acknowledges that:

(1)     Seller has the responsibility of making Seller's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Broker;

*Copyright © 2013 Preferred Carolinas Realty, Inc.
All Rights Reserved*

(2) Seller is fully aware of and understands the implications and consequences of Broker's dual agency role as expressed herein to provide balanced and fair representation of Seller and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

(3) Seller has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;

(4) Seller may seek independent legal counsel to assist Seller with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Broker become a dual agent, Seller waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Broker's role as a dual agent. Seller shall have a duty to protect Seller's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Seller wants included in said agreement.

(d) Authorization *(initial only ONE)*.

_____ Seller authorizes Broker to act as a dual agent, representing both the Seller and the buyer, subject to the terms and conditions set forth in Paragraph 12.

_____ Seller desires exclusive representation at all times during this agreement and does NOT authorize Broker to act in the capacity of dual agent. *If Seller does not authorize Broker to act as a dual agent, the remainder of this paragraph shall not apply.*

(e) Designated Agent Option (*Initial only if applicable*).

_____ Seller hereby authorizes Broker to designate an individual agent(s) to represent the Seller, to the exclusion of any other individual agents associated with Broker. The individual designated agent(s) shall represent only the interests of the Seller to the extent permitted by law.

(**NOTE**:  When dual agency arises, an individual agent shall not practice designated agency and shall remain a dual agent if the individual agent has actually received confidential information concerning a buyer client of  Broker in connection with the transaction or if designated agency is otherwise prohibited by law.)

(f) Dual Agency Compensation. If Broker acts as a dual agent (including designated agency), the total fee Broker expects to receive for its services in representing Seller and the buyer shall be 6% (+/- up to 4%) and $300 (+/- up to $900). THIS WILL IN NO WAY AFFECT OR MODIFY THE AMOUNT OF THE FEE SET FORTH IN PARAGRAPH 5 ABOVE THAT BROKER EXPECTS TO RECEIVE FOR ITS SERVICES IN REPRESENTING SELLER UNDER THIS AGREEMENT.  In the event Broker's total fee is different from that described in this subparagraph (f), Broker shall timely disclose the fee to Seller and confirm it in writing before Seller accepts an offer to sell the Property.

13. LEGAL AND PROFESSIONAL ADVICE:  Broker recommends that Seller seek legal, tax, and other professional advice relative to any real estate transaction. Broker makes no representation or warranty respecting the advisability of any transaction. Broker is not an expert in matters relating to law (including matters of title to the Property), tax, financing, surveying, structural or mechanical condition, hazardous material, engineering, or other specialized topics. Seller is encouraged to seek expert assistance in such areas. Broker will cooperate with experts engaged by Seller or at the request of Seller, but Broker will have no liability to Seller pertaining to such matters.

14. ARBITRATION AGREEMENT:  Any Dispute, claim or controversy between Seller and Broker shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This agreement to arbitrate and the arbitration proceeding shall be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is inapplicable, unenforceable, or invalid, the North Carolina Revised Uniform Arbitration Act shall govern this Arbitration Agreement and the arbitration proceeding.

As used herein the term "Dispute" shall include, without limitation, any claim, controversy, complaint or disagreement regarding any representations, acts or omissions by any person, party or entity that in any way arises out of or is related to the sale, purchase, financing, condition of any property or any other aspect of Seller's real estate transaction, or that in any way arises out of any of the real estate brokerage services or other settlement services provided by Broker including, without limitation, allegations of concealment, misrepresentation, negligence, breach of fiduciary duty, fraud, constructive fraud, or other wrongful actions or omissions of any type. A Dispute includes any claim, controversy, complaint or disagreement of any kind, including those based on broken promises or contracts, closing charges, or tort (injury caused by negligent or intentional conduct). A Dispute includes any statutory, common law, or equitable claim. A Dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement. No Dispute may be joined in arbitration with a Dispute of any other person or arbitrated on a class action basis.

The American Arbitration Association (AAA) shall administer the arbitration, including the selection of arbitrators, pursuant to its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable. The arbitration shall be held in the county where the real property at issue is located. To find out how to initiate arbitration, Seller can contact AAA at:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Toll free number 877-495-4185
Fax number 877-304-8457

Website: www.adr.org

Email: casefiling@adr.org

All parties to the arbitration (AAA, the arbitrator, Broker, and Seller) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA. The arbitration proceeding shall be conducted at a location determined by AAA in accordance with this Arbitration Agreement. All statutes of limitation and statutes of repose applicable to any Dispute shall apply to any arbitration proceeding between Broker and Seller. If a Dispute is properly filed in Small Claims Court and the Small Claims Court has jurisdiction to resolve the Dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the Dispute from Small Claims Court shall pay AAA's administrative fee and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforceability of the other terms of this Arbitration Agreement.

WHEN YOU SIGN THIS AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER BROKER NOR SELLER SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

Seller's initials: _____  _____

15.     ADDITIONAL TERMS AND CONDITIONS: The following additional terms and conditions shall also be a part of this Agreement:

_____
_____
_____.

16.     ENTIRE AGREEMENT:  This Agreement constitutes the entire agreement between the parties; any prior agreements pertaining thereto, whether oral or written, have been merged and integrated into this Agreement. There shall be no modification of any of the terms of this Agreement unless such modification has been agreed to in writing and signed by all parties.

Seller: _____    _____    _____
                        Print Name                                    Signature                            Date

Contact Information: _____    _____    _____
                                    Home                                Work                                Cell

                        _____
                                    e-mail

Mailing Address:   _____

                        _____

Seller: _____    _____    _____
                        Print Name                                    Signature                            Date

Contact Information: _____    _____    _____
                                    Home                                Work                                Cell

                        _____
                                    e-mail

Mailing Address:   _____

                        _____

Broker:    Preferred Carolinas Realty, Inc                    Phone: _____

By:    _____    _____    _____
                Individual Agent Signature                        Individual License #                    Date

Office:    _____

Office Phone: _____    Fax: _____

e-mail: _____



## BERKSHIRE HATHAWAY
### HomeServices

Carolinas Realty
York Simpson Underwood Realty
Yost & Little Realty

*We make great neighbors.*

## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This Exclusive Right To Sell Listing Agreement ("Agreement") is entered into between _____
_____ as Seller(s) ("Seller") and Preferred Carolinas Realty, Inc. dba Berkshire Hathaway
HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, and Berkshire Hathaway
HomeServices Yost & Little Realty as Listing Broker ("Broker") for the property described below ("Property") and known as or legally
described as:

Street Address: _____
City: _____ Zip code: _____
County: _____, North Carolina.
Legal Description:_____
_____

1.      TERM OF AGREEMENT:  In consideration of Broker's services to procure a buyer for the Property, Broker is hereby
granted the exclusive right to sell the Property for a period beginning on _____, 20__ and expiring at 11:59 P.M. on
_____, 20__ unless terminated sooner by Broker at its option.

2.      LISTING PRICE AND TERMS:  Seller agrees to list the Property, including all fixtures described in paragraph 3, for sale at a
price of $_____ ("Listing Price") on the following terms:
__ Cash          __ FHA          __ VA              __ USDA __ Conventional          __ Loan Assumption
__ Seller Financing          Other: _____.

Seller agrees to sell the Property for the Listing Price and terms set forth above, or at any other price and on any other terms
acceptable to Seller.

3.      FIXTURES.  The following items, if any, are deemed fixtures and are included in the Listing Price free of liens:
range/stove/oven, any built-in appliances, light fixtures, ceiling fans, attached floor coverings, blinds, shades, drapery rods and
curtain rods, brackets and all related hardware, window and door screens, storm windows, combination doors, awnings, antennas,
satellite dishes and receivers, burglar/fire/smoke/carbon monoxide alarms, pool and spa equipment, solar energy systems, attached
fireplace screens, gas logs, fireplace inserts, electric garage door openers with controls, outdoor plants and trees (other than in
movable containers), basketball goals, storage sheds, mailboxes, attached wall and/or door mirrors, fuel tank(s) whether attached and
buried and including contents, if any, as of  the date of the closing on the sale of the Property, landscape and/or foundation lighting,
invisible fencing including all related equipment, lawn irrigation systems and all related equipment, water softener/conditioner and
filter equipment, and any other items attached or affixed to the Property, EXCEPT the following items which are leased or not owned
by the Seller or which the Seller does not intend to convey:
_____
_____

4.      PERSONAL PROPERTY.  The following personal property shall be transferred to Buyer free of liens at no value at the
closing on the sale of the Property:
_____
_____

5.      BROKER'S COMPENSATION:  Seller agrees to pay Broker compensation in the amount of $_____ plus
_____% of the gross contract sales price of the Property, which compensation shall include any compensation paid by Broker to any
cooperating real estate brokers.  Note that Broker does not offer any compensation to non-cooperating real estate brokers who are not
members of the Multiple Listing Service ("MLS").  Seller authorizes the payment of the compensation owed to Broker pursuant to this
Agreement to be paid directly to Broker from Seller's proceeds from the closing on the sale of the Property.

The compensation owed to Broker shall be deemed earned upon Broker, a cooperating real estate broker, Seller, or anyone else
procuring or producing a ready, willing and able buyer(s) at the Listing Price and terms agreed to herein by Seller, or at any other price
or terms acceptable to Seller, during the term of this Agreement.  If any agreement for the sale or transfer of the Property does not
have a selling price, the percentage component of the compensation owed to Broker shall be calculated based on the fair market value
of the Property as of the effective date of such agreement. The compensation earned as set forth above shall be due and payable
immediately upon the earlier of:

        (a)      The closing on the sale of the Property;
        (b)      Seller's refusal to sign a contract or agreement for the sale of Property at the Listing Price and terms set forth
                 herein, or on any other terms acceptable to Seller;
        (c)      Seller's breach of any contract or agreement for the sale or transfer of the Property;

Copyright © 2015 Preferred Carolinas Realty, Inc.
All Rights Reserved

    (d)        Seller's agreement with any buyer(s) to unreasonably modify or cancel any contract or agreement for the sale or transfer of the Property;

    (e)        Seller's breach of this Agreement.

Provided, however, that in the event the Property is not sold during the term of this Agreement, if within 180 days after expiration of this Agreement (the "Protection Period") Seller sells or enters into any agreement to sell the Property, directly or indirectly, including but not limited to any form of option, exchange, lease/purchase, conveyance or transfer upon any terms whatsoever, to any person or entity with whom Seller, Broker, or any cooperating real estate broker communicated during the term of this Agreement, and whose name(s) Broker has submitted to Seller in writing within 15 days of the expiration of this Agreement, the compensation owed to Broker pursuant to this Agreement shall be immediately due and payable to Broker. However, Seller shall not be obligated to pay the compensation owed to Broker pursuant to this Agreement if a valid listing agreement is entered into with another licensed real estate broker after the expiration of this Agreement and the Property is sold, exchanged, leased, conveyed or transferred during the Protection Period.

Seller acknowledges and agrees that Broker may be offered compensation from other persons or entities in connection with the sale of the Property, and Seller agrees to permit Broker to receive any such additional compensation. Broker will timely disclose any such additional compensation to Seller.

6.        BROKER'S DUTIES: Broker accepts the exclusive listing granted by this Agreement and shall use its best efforts and due diligence to solicit and procure a ready, willing and able buyer to purchase the Property at the Listing Price and terms set forth in this Agreement. Broker further agrees to:

    (a)        Perform the terms of this Agreement, exercise reasonable care and skill, and promote Seller's interests;

    (b)        Assist Seller in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to the offers and the counteroffers;

    (c)        Accept delivery of and present to Seller in a timely manner all offers and counteroffers to sell the Property;

    (d)        Respond to Seller's questions relating to the offers, counteroffers, notices, and contingencies.

    (e)        Account in a timely manner for all money and property received on behalf of Seller;

    (f)        Not disclose any confidential information about Seller, unless disclosure is authorized pursuant to this Agreement or is required by statute, rule, regulation or North Carolina law, or the failure to disclose such information would constitute a material misrepresentation.

**BROKER SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT.**

7.        SELLER'S DUTIES: Seller agrees to cooperate with Broker in marketing the Property for sale, including making the Property available for showings at reasonable times on reasonable notice. Seller further agrees to complete all required disclosure forms, including but not limited to the Residential Property and Owner's Association Disclosure Statement (unless exempt), the Mineral and Oil and Gas Rights Mandatory Disclosure Statement (unless exempt), and the Lead-Based Paint or Lead-Based Paint Hazard Addendum, if applicable to the Property.

    (a)        Seller represents that Seller holds title to the Property in fee simple, and that Seller does not know or have reason to know of circumstances or encumbrances that would prohibit Seller from conveying fee simple marketable title to the Property to a ready, willing and able buyer except as follows:

_____

_____

    (b)        If required by N.C.G.S. §44A-11.1, Seller shall designate a Lien Agent, and provide Broker a copy of the appointment of Lien Agent as soon as reasonably possible.

8.        SELLER REPRESENTATIONS: Seller acknowledges and agrees that Broker is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which Broker knows or reasonably should know. Seller hereby makes the following representations concerning the Property:

    (a)        **Flood Hazard Disclosure/Insurance.** To the best of Seller's knowledge, the Property ☐ is ☐ is not located partly or entirely within a designated Special Flood Hazard Area. The Seller ☐ does ☐ does not currently maintain flood hazard insurance on the Property.

    (b)        **Synthetic Stucco.** To the best of Seller's knowledge, the Property ☐ has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system," commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows:

_____

Copyright © 2015 Preferred Carolinas Realty, Inc.
All Rights Reserved

(c)     **Owners' Association**.

(1) Complete ONLY if the Residential Property and Owner's Association Disclosure Statement is required: The name, address and telephone number of the president of the owner's association or the association manager is:

_____
_____
_____

Owner's association website address, if any:_____

(2) Complete ONLY if New Construction or where the Residential Property and Owner's Disclosure Statement is NOT required: To the best of Seller's knowledge there ☐ is ☐ is not an owners' association which imposes various mandatory covenants, conditions and restrictions upon the Property. If there is an owners' association, Seller agrees to promptly complete an Owners' Association Disclosure and Addendum For Properties Exempt from Residential Property Disclosure Statement at Seller's expense and to attach it as an addendum to any contract for the sale of the Property.

(d)     **Ownership**.  Seller represents that Seller:
☐   has owned the Property for at least one year;
☐   has owned the Property for less than one year.

(e)     **Residence**.  Seller represents that the Property ☐ is or ☐ is not the Seller's primary residence.

(f)     **Receipt of Sample Forms**.
☐   Seller acknowledges receipt of a sample copy of an Offer to Purchase and Contract (Form 2-T) or Offer to Purchase and Contract—New Construction (Form 800-T), as may be appropriate for review purposes.
☐   Seller acknowledges receipt of a sample copy of a Professional Services Disclosure and Election Form (Form #760) for review purposes.

(g)     **Current Liens**.     Seller represents to the best of Seller's knowledge:

(1)     The Property ☐ is ☐ is not encumbered by a deed of trust or mortgage.  *Complete any of the following where applicable:*

(i)     There is a first deed of trust or mortgage on the Property securing a loan held by:
Lender Name: _____
Approximate balance: $_____
Lender Phone #:_____
Lender Address: _____

(ii)     There is a second deed of trust or mortgage on the Property securing a loan held by:
Lender Name: _____
Approximate balance: $_____
Lender Phone #:_____
Lender Address: _____

(iii)     There is a deed of trust or mortgage on the Property securing an equity line of credit held by:
Lender Name: _____
Approximate balance: $_____
Lender Phone #:_____
Lender Address: _____

(2)     Seller ☐ is current on all payments for the loans identified in numbered items (i), (ii) and (iii) above except as specified in (7) below.

(3)     Seller ☐ is not in default on any loan identified in numbered items (i), (ii) and (iii) above and has not received any notice(s) from the holder of any loan identified in numbered items (i), (ii) and (iii) above or from any other lien holder of any kind, regarding a default under the loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure except as specified in (7) below.

(4)     There ☐ are not any liens secured against the Property for Federal, State or local income taxes, unpaid real property taxes, unpaid condominium or homeowners' association fees, mechanics', laborers' or materialmens' liens, or other liens affecting the Property, and Seller has no knowledge of any matter that might result in a lien affecting the Property except as specified in (7) below.

(5)     There ☐ are not any judgments against Seller affecting the Property, and Seller has no knowledge of any matter that might result in a judgment that may potentially affect the Property except as specified in (7) below.

(6)     There ☐ are not any Uniform Commercial Code (UCC) fixture filings affecting the Property, and Seller has no knowledge of any matter that might result in a UCC fixture filing affecting the Property except as specified in (7) below.

(7)     Specify any information, including approximate balances, required by Seller representations (2) through (6) above (**NOTE**: Outstanding liens may affect Seller's proceeds.)

_____
_____

        Copyright © 2015 Preferred Carolinas Realty, Inc.
All Rights Reserved

(h) **Bankruptcy**. Seller currently:
    (1) ☐ is ☐ is not under bankruptcy protection under United States law.
    (2) ☐ is ☐ is not contemplating seeking bankruptcy protection during the term of this Agreement.

(i) **Access**. Seller represents that the Property ☐ does ☐ does not have legal access to a public right of way. If access is by private road/easement/other, Seller further represents that there ☐ is ☐ is not an agreement regarding the maintenance of such private road/easement/other means of access. If applicable, Seller agrees to promptly provide Broker information pertaining to any such agreement.

(j) **Lease(s).** To the best of Seller's knowledge, the Property ☐ is ☐ is not subject to any lease(s). If applicable, Seller agrees to promptly provide Broker a copy of any such lease(s) or a written statement of the terms of any oral lease(s).

(k) **VA/FHA Appraisal**. To the best of Seller's knowledge, a VA or FHA appraisal ☐ has ☐ has not been performed on the Property within six months prior to the Effective Date. If applicable, Seller agrees to promptly provide Firm a copy of any such appraisal if available.

(l) **Special Assessments**. To the best of Seller's knowledge, there are no proposed or confirmed special assessments (as defined in the sample contract form provided to Seller) regarding the Property except as follows (Insert "none" or the identification of such assessments, if any):
_____.

(m) Fuel Tank/Fuel: To the best of Seller's knowledge, there ☐ is ☐ is not a fuel tank(s) located on the Property. *If "yes" complete the following to the best of Seller's knowledge:*
Ownership of tank 1: ☐ owned ☐ leased. If leased, the name of tank lessor is:_____
Location of tank 1: ☐ above ground ☐ below ground
Type of fuel: ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other:_____
Ownership of tank 2: ☐ owned ☐ leased. If leased, the name of tank lessor is:_____
Location of tank 2: ☐ above ground ☐ below ground
Type of fuel: ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other:_____

If, during the term of this Agreement, Seller becomes aware that any of the representations set forth in this paragraph 8 are incorrect or no longer accurate, Seller shall promptly notify Broker and cooperate with Broker in taking appropriate corrective action.

9. HOME INSPECTION: Seller is advised to obtain a home inspection for the purpose of evaluating the condition of the Property in order to enhance its marketability and to help reduce concerns of prospective buyers. Seller ☐ agrees ☐ does not agree to obtain and pay for a home inspection by a licensed NC Home Inspector within ____ days after the execution of this Agreement.

    ☐ Seller acknowledges receipt of a copy of *Questions and Answers on: Home Inspections* by the NC Real Estate Commission.

10. MARKETING ACTIVITIES: Seller hereby authorizes Broker to market the Property as described below on: ☐ the date this Agreement has been signed by Seller and Broker OR ☐ (insert date) _____.

(a) Cooperate and share the commission payable under this Agreement with other brokers including brokers who have been employed as buyer's agents, subagents, dual agents, or designated agents, subject, where applicable, to authorization as required by law;

(b) Submit pertinent information, including virtual tours and images when applicable, concerning the Property to any Multiple Listing Service ("MLS") organizations to which Broker subscribes;

(c) Provide to any MLS to which Broker subscribes, for dissemination to others, timely notice of status changes affecting the Property, sales information, including Seller's name, price, and other information concerning the Property for use of the members of such services, to compile reliable statistics, and to establish market value for other properties, and to report sales information about the property, including the price at which the property sold, or is contracted to be sold, to the MLS for dissemination to MLS participants, subscribers, and other licensees or users of the MLS database compilation;

(d) Disseminate data about the Property and other information, including Seller's name, price, and other information concerning the Property supplied by, or on behalf of Seller, including creative works depicting the Property, such as virtual tours, images, and any textual descriptions of the Property (collectively referred to as "Content"), to MLS Participants, Subscribers and other licensees or users of the MLS database compilation, or any other MLS in which Broker participates, and to further disseminate, or permit the MLS or other MLS participants to disseminate such Content to potential purchasers through websites on the Internet. Further, Broker is authorized to otherwise advertise the Property in any manner deemed appropriate by Broker, including but not limited to advertising on the Internet, virtual tours, web-sites, trade journals and any other medium, and communications via e-mail and facsimile;

(e) Place a "For Sale," "Under Contract," "Sale Pending," and other similar signs on the Property and to remove all other signs during the term of this Agreement;

(f) Enter the Property at reasonable times and with reasonable notice for the purpose of evaluation, preview, or showing the Property to prospective purchasers or other brokers;

(g) Possess and maintain a key to the Property, and make use of a "Lock Box" during the term of this Agreement; and

(h) Conduct open houses of the Property at such times as Seller and Broker may agree.

Copyright © 2015 Preferred Carolinas Realty, Inc. All Rights Reserved

Seller acknowledges and understands that while the marketing services identified above will facilitate the showing and sale of the Property, there are inherent risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of Broker, including but not limited to:

    (1)    unauthorized use of a lock/key box,
    (2)    control of visitors during or after a showing or an open house,
    (3)    inappropriate use of information about the Property placed on the Internet or furnished to any MLS in which Broker participates.

Seller agrees to indemnify and hold harmless Broker from any damages, costs, attorney's fees or other expenses as a result of any personal injury or property loss or damage to Seller or any other person or entity arising out of any such marketing activities which are not the result of the sole negligence of Broker.

11.    COPYRIGHT ASSIGNMENT: Broker is specifically authorized to use, both before and after the sale or, in the event there is not a sale, after this listing has expired, for any purposes whatsoever, any and all information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property (including any information concerning the price and terms of the sale of the Property, the description of the Property, length of time the Property is on the market, and any other information relating to the Property) ("Seller Content"). Seller hereby assigns to Broker any and all intellectual property rights Seller may have in the Seller Content and to any photographs or video or other reproductions of the property used in connection with the marketing of the property. For purposes of clarity, Broker is the owner of any and all rights in the Seller Content and may further assign, license, sublicense, or otherwise dispose of these rights to any party whatsoever for any purposes whatsoever. If any moral rights are not transferred by the preceding sentences, Seller hereby waives all such rights.

Seller's execution of this Agreement further signifies Seller's representation and warranty that Seller is the sole author and sole owner of all rights in and to the Seller Content; that Seller's contribution to the Seller Content is original and not in the public domain; that Seller's contribution to the Seller Content contains no material from other copyrighted or unpublished work that has been used without the written consent of the copyright owner and/or of the owner of any other rights to or in such other works; that it does not violate or infringe on any personal or property rights of others, whether common law or statutory; that it contains nothing libelous or contrary to law; and that Seller has full power to enter this Agreement. Seller agrees to indemnify and hold harmless Broker for any claims of copyright infringement or other claims arising from any publication or use of the Seller Content.

Broker grants to Seller a non-exclusive, perpetual license for the use of the Seller Content, including the right to display, reproduce, distribute or make derivative works from the Seller Content. For purposes of clarity, the license granted to Seller for the use of the Seller Content applies only to information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property, and not to any information, photographs or video created or provided by or on behalf of Broker. Seller agrees to indemnify and hold harmless Broker for any and all claims arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of this license. Seller understands and agrees that Broker assumes no responsibility for Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of the license granted by Broker, or for any infringement arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content.

12.    DUAL AGENCY: Seller understands that the potential for dual agency will arise if a buyer who has an agency relationship with Broker becomes interested in viewing the Property. Broker may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Broker acts.

    (a)    Disclosure of Information. In the event Broker serves as a dual agent, Seller agrees that without permission from the party about whom the information pertains, Broker shall not disclose to the other party the following information:

        (1)    that a party may agree to a price, terms, or any conditions of sale other than those offered;
        (2)    the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and
        (3)    any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute, rule, regulation or North Carolina law.

    (b)    Broker's Role as Dual Agent. If Broker serves as agent for both Seller and a buyer in a transaction involving the Property, Broker shall make every reasonable effort to represent Seller and buyer in a balanced and fair manner. Broker shall also make every reasonable effort to encourage and effect communication and negotiation between Seller and buyer. Seller understands and acknowledges that:

        (1)    Prior to the time dual agency occurs, Broker will act as Seller's exclusive agent;
        (2)    In its separate representation of Seller and buyer, Broker may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Broker;
        (3)    Broker is required by law to disclose to Seller and buyer any known or reasonably ascertainable material facts.

Seller agrees Broker shall not be liable to Seller for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

    (c)    Seller's Role. Should Broker become a dual agent, Seller understands and acknowledges that:

(1)     Seller has the responsibility of making Seller's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Broker;

(2)     Seller is fully aware of and understands the implications and consequences of Broker's dual agency role as expressed herein to provide balanced and fair representation of Seller and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

(3)     Seller has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;

(4)     Seller may seek independent legal counsel to assist Seller with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Broker become a dual agent, Seller waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Broker's role as a dual agent. Seller shall have a duty to protect Seller's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Seller wants included in said agreement.

(d)     Authorization *(initial only ONE).*

_____     Seller authorizes Broker to act as a dual agent, representing both the Seller and the buyer, subject to the terms and conditions set forth in Paragraph 12.

_____     Seller desires exclusive representation at all times during this agreement and does NOT authorize Broker to act in the capacity of dual agent. *If Seller does not authorize Broker to act as a dual agent, the remainder of this paragraph shall not apply.*

(e)     Designated Agent Option *(Initial only if applicable).*

_____     Seller hereby authorizes Broker to designate an individual agent(s) to represent the Seller, to the exclusion of any other individual agents associated with Broker. The individual designated agent(s) shall represent only the interests of the Seller to the extent permitted by law.

(**NOTE:** When dual agency arises, an individual agent shall not practice designated agency and shall remain a dual agent if the individual agent has actually received confidential information concerning a buyer client of Broker in connection with the transaction or if designated agency is otherwise prohibited by law.)

(f)     Dual Agency Compensation. If Broker acts as a dual agent (including designated agency), the total fee Broker expects to receive for its services in representing Seller and the buyer shall be shall be 6% (+/- up to 4%) and $300 (+/- up to $900). THIS WILL IN NO WAY AFFECT OR MODIFY THE AMOUNT OF THE FEE SET FORTH IN PARAGRAPH 5 ABOVE THAT BROKER EXPECTS TO RECEIVE FOR ITS SERVICES IN REPRESENTING SELLER UNDER THIS AGREEMENT. In the event Broker's total fee is different from that described in this subparagraph (f), Broker shall timely disclose the fee to Seller and confirm it in writing before Seller accepts an offer to sell the Property.

13.     LEGAL AND PROFESSIONAL ADVICE: Broker recommends that Seller seek legal, tax, and other professional advice relative to any real estate transaction. Broker makes no representation or warranty respecting the advisability of any transaction. Broker is not an expert in matters relating to law (including matters of title to the Property), tax, financing, surveying, structural or mechanical condition, hazardous material, engineering, or other specialized topics. Seller is encouraged to seek expert assistance in such areas. Broker will cooperate with experts engaged by Seller or at the request of Seller, but Broker will have no liability to Seller pertaining to such matters.

14.     ARBITRATION AGREEMENT: Any Dispute, claim or controversy between Seller and Broker shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This agreement to arbitrate and the arbitration proceeding shall be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is inapplicable, unenforceable, or invalid, the North Carolina Revised Uniform Arbitration Act shall govern this Arbitration Agreement and the arbitration proceeding.

As used herein the term "Dispute" shall include, without limitation, any claim, controversy, complaint or disagreement regarding any representations, acts or omissions by any person, party or entity that in any way arises out of or is related to the sale, purchase, financing, condition of any property or any other aspect of Seller's real estate transaction, or that in any way arises out of any of the real estate brokerage services or other settlement services provided by Broker including, without limitation, allegations of concealment, misrepresentation, negligence, breach of fiduciary duty, fraud, constructive fraud, or other wrongful actions or omissions of any type. A Dispute includes any claim, controversy, complaint or disagreement of any kind, including those based on broken promises or contracts, closing charges, or tort (injury caused by negligent or intentional conduct). A Dispute includes any statutory,

common law, or equitable claim. A Dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement. No Dispute may be joined in arbitration with a Dispute of any other person or arbitrated on a class action basis.

The American Arbitration Association (AAA) shall administer the arbitration, including the selection of arbitrators, pursuant to its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable. The arbitration shall be held in the county where the real property at issue is located. To find out how to initiate arbitration, Seller can contact AAA at:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Toll free number 877-495-4185
Fax number 877-304-8457

Website: www.adr.org

Email: casefiling@adr.org

All parties to the arbitration (AAA, the arbitrator, Broker, and Seller) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA. The arbitration proceeding shall be conducted at a location determined by AAA in accordance with this Arbitration Agreement. All statutes of limitation and statutes of repose applicable to any Dispute shall apply to any arbitration proceeding between Broker and Seller. If a Dispute is properly filed in Small Claims Court and the Small Claims Court has jurisdiction to resolve the Dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the Dispute from Small Claims Court shall pay AAA's administrative fee and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforceability of the other terms of this Arbitration Agreement.
WHEN YOU SIGN THIS AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER BROKER NOR SELLER SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

Seller's initials: _____  _____

15.      Seller acknowledges receipt of the brochure describing the HomeServices Warranty Program offered through Home Security of America, Inc. In the above mentioned brochure, Seller accepted or declined coverage. Specific details of the coverage provided by Home Security of America, Inc., including coverage limits, exclusions, deductibles and other information may be obtained from Broker upon request.

Seller's initials: _____  _____

16.      ADDITIONAL TERMS AND CONDITIONS: The following additional terms and conditions shall also be a part of this Agreement:

_____

_____

_____

17.      ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between the parties; any prior agreements pertaining thereto, whether oral or written, have been merged and integrated into this Agreement. There shall be no modification of any of the terms of this Agreement unless such modification has been agreed to in writing and signed by all parties.

Seller: _____   _____   _____
                    Print Name                          Signature                          Date

Contact Information: _____   _____   _____
                                        Home                          Work                          Cell
                              _____
                                                  e-mail

Mailing Address: _____

                             _____

Seller: _____   _____   _____
                    Print Name                          Signature                          Date

Contact Information: _____   _____   _____
                                        Home                          Work                          Cell
                              _____
                                                  e-mail

Mailing Address: _____

                             _____

Broker:    Preferred Carolinas Realty, Inc                  Phone: _____

By: _____   _____   _____
                Individual Agent Signature                  Individual License #                          Date

Office: _____

Office Phone: _____        Fax: _____

e-mail: _____

Copyright © 2015 Preferred Carolinas Realty, Inc.
All Rights Reserved



# BERKSHIRE HATHAWAY
### HomeServices

Carolinas Realty
York Simpson Underwood Realty
Yost & Little Realty

*We make great neighbors.*

## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This Exclusive Right To Sell Listing Agreement ("Agreement") is entered into between _____ _____ as Seller(s) ("Seller") and Preferred Carolinas Realty, Inc. dba Berkshire Hathaway HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, and Berkshire Hathaway HomeServices Yost & Little Realty as Listing Broker ("Broker") for the property described below ("Property") and known as or legally described as:

Street Address: _____
City: _____ Zip code: _____
County: _____, North Carolina.
Legal Description:_____
_____.

1.     TERM OF AGREEMENT:  In consideration of Broker's services to procure a buyer for the Property, Broker is hereby granted the exclusive right to sell the Property for a period beginning on _____, 20__ and expiring at 11:59 P.M. on _____, 20__ unless terminated sooner by Broker at its option.

2.     LISTING PRICE AND TERMS:  Seller agrees to list the Property, including all fixtures described in paragraph 3, for sale at a price of $_____ ("Listing Price") on the following terms:
__ Cash          FHA      __ VA     __ USDA __ Conventional     __ Loan Assumption
__ Seller Financing     Other: _____.

Seller agrees to sell the Property for the Listing Price and terms set forth above, or at any other price and on any other terms acceptable to Seller.

3.     FIXTURES AND EXCLUSIONS.
    (a)   Specified Items: Unless identified in subparagraph (d) below, the  following items, including all related equipment and remote control devices, if any, are deemed fixtures and shall convey, included in the Purchase Price free of liens:

- Alarm and security systems (attached) for security, fire, smoke, carbon monoxide or other toxins with all related access codes, sensors, cameras, dedicated monitors, hard drives, video recorders, power supplies and cables; doorbells/chimes
- All stoves/ranges/ovens; built-in appliances; attached microwave oven; vent hood
- Fuel tank(s) whether attached or buried and including any contents that have not been used, removed or resold to the fuel provider as of Settlement.  **NOTE:** Seller's use, removal or resale of fuel in any fuel tank is subject to seller's obligation under Paragraph 8(c) to provide working, existing utilities through the earlier of Closing or possession by Buyer.
- Garage door openers with all controls
- Generators that are permanently wired
- Invisible fencing with power supply, controls and receivers
- Landscape and outdoor trees and plants (except in moveable containers); raised garden; landscape and foundation lighting; outdoor sound systems; permanent irrigation systems and controls; rain barrels; landscape water features; address markers
- Mailboxes; mounted package and newspaper receptacles
- Antennas; satellite dishes and receivers
- Basketball goals and play equipment (permanently attached or in-ground)
- Ceiling and wall-attached fans; light fixtures (including existing bulbs)
- Fireplace  insert; gas logs or starters; attached fireplace screens; wood or coal stoves
- Floor coverings (attached)
- Mirrors attached to walls, ceilings, cabinets or doors; all bathroom wall mirrors
- Storage shed; utility building
- Swimming pool (excluding inflatable); spa; hot tub
- Solar electric and solar water heating systems
- Sump-pumps, radon fans and crawlspace ventilators; de-humidifiers that are permanently wired
- Surface-mounting brackets for television and speakers; recess-mounted speakers; mounted intercom system
- Water supply equipment, including filters, conditioning and softener systems; re-circulating pumps; well pumps and tanks
- Window/Door blinds and shades, curtain and draper rods and brackets, door and window screens and combination doors, awnings and storm windows.

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

(b) FIXTURES AND EXCLUSIONS.
Items Leased or Not Owned: Any item which is leased or not owned by Seller, such as fuel tanks, satellite dishes and receivers, appliances, and alarm and security systems must be identified here and shall not convey:

_____
_____
_____

(c) Other Fixtures/Unspecified items: Unless identified in subparagraph (d) below, any other item legally considered a fixture is included in the Purchase Price free of all liens.

(d) Other Items That Do Not Convey: The following items shall not convey (*identify those items to be excluded under subparagraphs (a) and (c)*):

_____
_____

Seller shall repair any damage caused by removal of any items excepted above.

4.      PERSONAL PROPERTY.  The following personal property shall be transferred to Buyer free of liens at no value at the closing on the sale of the Property:

_____
_____

5.      BROKER'S COMPENSATION:  Seller agrees to pay Broker compensation in the amount of $_____ plus _____% of the gross contract sales price of the Property, which compensation shall include any compensation paid by Broker to any cooperating real estate brokers.  Note that Broker does not offer any compensation to non-cooperating real estate brokers who are not members of the Multiple Listing Service ("MLS").  Seller authorizes the payment of the compensation owed to Broker pursuant to this Agreement to be paid directly to Broker from Seller's proceeds from the closing on the sale of the Property.

The compensation owed to Broker shall be deemed earned upon Broker, a cooperating real estate broker, Seller, or anyone else procuring or producing a ready, willing and able buyer(s) at the Listing Price and terms agreed to herein by Seller, or at any other price or terms acceptable to Seller, during the term of this Agreement.  If any agreement for the sale or transfer of the Property does not have a selling price, the percentage component of the compensation owed to Broker shall be calculated based on the fair market value of the Property as of the effective date of such agreement. The compensation earned as set forth above shall be due and payable immediately upon the earlier of:

(a)      The closing on the sale of the Property;
(b)      Seller's refusal to sign a contract or agreement for the sale of Property at the Listing Price and terms set forth herein, or on any other terms acceptable to Seller;
(c)      Seller's breach of any contract or agreement for the sale or transfer of the Property;
(d)      Seller's agreement with any buyer(s) to unreasonably modify or cancel any contract or agreement for the sale or transfer of the Property;
(e)      Seller's breach of this Agreement.

Provided, however, that in the event the Property is not sold during the term of this Agreement, if within 180 days after expiration of this Agreement (the "Protection Period") Seller sells or enters into any agreement to sell the Property, directly or indirectly, including but not limited to any form of option, exchange, lease/purchase, conveyance or transfer upon any terms whatsoever, to any person or entity with whom Seller, Broker, or any cooperating real estate broker communicated during the term of this Agreement, and whose name(s) Broker has submitted to Seller in writing within 15 days of the expiration of this Agreement, the compensation owed to Broker pursuant to this Agreement shall be immediately due and payable to Broker. However, Seller shall not be obligated to pay the compensation owed to Broker pursuant to this Agreement if a valid listing agreement is entered into with another licensed real estate broker after the expiration of this Agreement and the Property is sold, exchanged, leased, conveyed or transferred during the Protection Period.

Seller acknowledges and agrees that Broker may be offered compensation from other persons or entities in connection with the sale of the Property, and Seller agrees to permit Broker to receive any such additional compensation.  Broker will timely disclose any such additional compensation to Seller.

6.      BROKER'S DUTIES:  Broker accepts the exclusive listing granted by this Agreement and shall use its best efforts and due diligence to solicit and procure a ready, willing and able buyer to purchase the Property at the Listing Price and terms set forth in this Agreement. Broker further agrees to:

(a)      Perform the terms of this Agreement, exercise reasonable care and skill, and promote Seller's interests;
(b)      Assist Seller in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to the offers and the counteroffers;
(c)      Accept delivery of and present to Seller in a timely manner all offers and counteroffers to sell the Property;
(d)      Respond to Seller's questions relating to the offers, counteroffers, notices, and contingencies;
(e)      Account in a timely manner for all money and property received on behalf of Seller;
(f)      Not disclose any confidential information about Seller, unless disclosure is authorized pursuant to this Agreement or is required by statute, rule, regulation or North Carolina law, or the failure to disclose such information would constitute a material misrepresentation.

**BROKER SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT.**

7.  **SELLER'S DUTIES:** Seller agrees to cooperate with Broker in marketing the Property for sale, including making the Property available for showings at reasonable times on reasonable notice. Seller further agrees to complete all required disclosure forms, including but not limited to the Residential Property and Owner's Association Disclosure Statement (unless exempt), the Mineral and Oil and Gas Rights Mandatory Disclosure Statement (unless exempt), and the Lead-Based Paint or Lead-Based Paint Hazard Addendum, if applicable to the Property.

(a)     Seller represents that Seller holds title to the Property in fee simple, and that Seller does not know or have reason to know of circumstances or encumbrances that would prohibit Seller from conveying fee simple marketable title to the Property to a ready, willing and able buyer except as follows:

_____

_____

(b)     If required by N.C.G.S. §44A-11.1, Seller shall designate a Lien Agent, and provide Broker a copy of the appointment of Lien Agent as soon as reasonably possible.

8.  **SELLER REPRESENTATIONS:** Seller acknowledges and agrees that Broker is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which Broker knows or reasonably should know. Seller hereby makes the following representations concerning the Property:

(a)     **Flood Hazard Disclosure/Insurance.** To the best of Seller's knowledge, the Property ___ is ___ is not located partly or entirely within a designated Special Flood Hazard Area. The Seller ___ does ___ does not currently maintain flood hazard insurance on the Property.

(b)     **Synthetic Stucco.** To the best of Seller's knowledge, the Property ___ has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system," commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows:

_____

(c)     **Owners' Association**.

(1) Complete ONLY if the Residential Property and Owner's Association Disclosure Statement is required: The name, address and telephone number of the president of the owner's association or the association manager is:

_____

_____

Owner's association website address, if any:_____

(2) Complete ONLY if New Construction or where the Residential Property and Owner's Disclosure Statement is NOT required: To the best of Seller's knowledge there ___ is ___ is not an owners' association which imposes various mandatory covenants, conditions and restrictions upon the Property. If there is an owners' association, Seller agrees to promptly complete an Owners' Association Disclosure and Addendum For Properties Exempt from Residential Property Disclosure Statement at Seller's expense and to attach it as an addendum to any contract for the sale of the Property.

(d)     **Ownership**. Seller represents that Seller:
___ has owned the Property for at least one year;
___ has owned the Property for less than one year.

(e)     **Receipt of Sample Forms**.
___ Seller acknowledges receipt of a sample copy of an Offer to Purchase and Contract (Form 2-T) or Offer to Purchase and Contract—New Construction (Form 800-T), as may be appropriate for review purposes.
___ Seller acknowledges receipt of a sample copy of a Professional Services Disclosure and Election Form (Form #760) for review purposes.

(f)     **Current Liens**. Seller represents to the best of Seller's knowledge:
(1)     The Property ___ is ___ is not encumbered by a deed of trust or mortgage. *Complete any of the following where applicable:*

(i)     There is a first deed of trust or mortgage on the Property securing a loan held by:
Lender Name: _____
Approximate balance: $_____
Lender Phone #:_____
Lender Address: _____
(ii)     There is a second deed of trust or mortgage on the Property securing a loan held by:
Lender Name: _____

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

Approximate balance: $_____

Lender Phone #:_____

Lender Address: _____

    (iii)    There is a deed of trust or mortgage on the Property securing an equity line of credit held by:

Lender Name: _____

Approximate balance: $_____

Lender Phone #:_____

Lender Address: _____

(2)    Seller  is current on all payments for the loans identified in numbered items (i), (ii) and (iii) above except as specified in (7) below.

(3)    Seller  is not in default on any loan identified in numbered items (i), (ii) and (iii) above and has not received any notice(s) from the holder of any loan identified in numbered items (i), (ii) and (iii) above or from any other lien holder of any kind, regarding a default under the loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure except as specified in (7) below.

(4)    There  are not any liens secured against the Property for Federal, State or local income taxes, unpaid real property taxes, unpaid condominium or homeowners' association fees, mechanics', laborers' or materialmens' liens, or other liens affecting the Property, and Seller has no knowledge of any matter that might result in a lien affecting the Property except as specified in (7) below.

(5)    There  are not any judgments against Seller affecting the Property, and Seller has no knowledge of any matter that might result in a judgment that may potentially affect the Property except as specified in (7) below.

(6)    There  are not any Uniform Commercial Code (UCC) fixture filings affecting the Property, and Seller has no knowledge of any matter that might result in a UCC fixture filing affecting the Property except as specified in (7) below.

(7)    Specify any information, including approximate balances, required by Seller representations (2) through (6) above (**NOTE**: Outstanding liens may affect Seller's proceeds.)

_____

_____

(g)    **Bankruptcy**. Seller currently:

    (1)    is  is not under bankruptcy protection under United States law.

    (2)    is  is not contemplating seeking bankruptcy protection during the term of this Agreement.

(h)    **Access**. Seller represents that the Property  does  does not have legal access to a public right of way. If access is by private road/easement/other, Seller further represents that there  is  is not an agreement regarding the maintenance of such private road/easement/other means of access. If applicable, Seller agrees to promptly provide Broker information pertaining to any such agreement.

(i)    **Lease(s).**  To the best of Seller's knowledge, the Property  is  is not subject to any lease(s).  If applicable:

    (i)    Seller agrees to promptly provide Broker a copy of any such lease(s) or a written statement of the terms of any oral lease(s);

    (ii)    If the Property is managed by someone other than Seller, the manager's name and contact information is as follows: _____.

Seller authorizes any such manager to release and disclose to Broker any relevant information about any lease(s) and to cooperate with Broker in the sale of the Property.

(j)    **FHA Appraisal**. To the best of Seller's knowledge, a FHA appraisal  has  has not been performed on the Property within four months prior to the Effective Date.  If applicable, Seller agrees to promptly provide Firm a copy of any such appraisal if available.

NOTE: Any such appraisal may or may not be binding on a buyer who intends to obtain FHA financing.

(k)    **Special Assessments**.  To the best of Seller's knowledge, there are no proposed or confirmed special assessments (as defined in the sample contract form provided to Seller) regarding the Property except as follows (Insert  "none"  or  the  identification  of  such  assessments,  if  any):

_____.

(l)    Fuel Tank/Fuel: To the best of Seller's knowledge, there  is  is not a fuel tank(s) located on the Property. *If "yes" complete the following to the best of Seller's knowledge:*

Ownership of tank 1:  owned  leased. If leased, the name and contact information of tank lessor/fuel vendor is:

_____

Location of tank 1:  above ground  below ground

Type of fuel:  oil  propane  gasoline and/or diesel  other:_____

Ownership of tank 2:  owned  leased. If leased, the name and contact information of tank lessor/fuel vendor is:

_____

Location of tank 2:  above ground  below ground

Type of fuel:  oil  propane  gasoline and/or diesel  other:_____

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

If, during the term of this Agreement, Seller becomes aware that any of the representations set forth in this paragraph 8 are incorrect or no longer accurate, Seller shall promptly notify Broker and cooperate with Broker in taking appropriate corrective action.

9.        HOME INSPECTION:  Seller is advised to obtain a home inspection for the purpose of evaluating the condition of the Property in order to enhance its marketability and to help reduce concerns of prospective buyers.  Seller      agrees      does not agree to obtain and pay for a home inspection by a licensed NC Home Inspector within ___ days  after  the  execution  of  this Agreement.

                Seller acknowledges receipt of a copy of *Questions and Answers on: Home Inspections* by the NC Real Estate Commission.

10.       MARKETING ACTIVITIES:  Seller hereby authorizes Broker to market the Property as described below on:     the date this Agreement has been signed by Seller and Broker OR     (insert date) _____.

        (a)        **Commencement of Marketing.**  Broker is authorized to commence marketing the Property as described in subparagraph (b) below on the Effective Date OR if selected      on (insert date only if applicable) _____ ("Delayed Marketing Date").

**NOTE: If a Delayed Marketing Date is selected, Seller understands and acknowledges the following:**
- **THE PROPERTY MAY NOT BE SHOWN BY ANY REAL ESTATE AGENT, INCLUDING BROKER'S AGENTS, PRIOR TO THE DELAYED MARKETING DATE.**
- **BROKER IS OBLIGATED TO PRESENT TO SELLER ANY OFFERS ON THE PROPERTY THAT MAY BE SUBMITTED TO BROKER PRIOR TO THE DELAYED MARKETING DATE.**
- **IT IS IN THE BEST INTEREST OF MOST SELLERS TO GET THE HIGHEST POSSIBLE PRICE ON THE BEST TERMS FOR THEIR PROPERTY, AND MAXIMIZING EXPOSURE OF THEIR PROPERTY ADVANCES THAT INTEREST.  ACCEPTING AN OFFER ON THE PROPERTY BEFORE IT IS FULLY EXPOSED TO THE WIDEST GROUP OF POTENTIAL BUYERS MAY DENY SELLER THE BEST OPPORTUNITY TO ATTRACT OFFERS AT THE HIGHEST PRICE AND BEST TERMS.**

        (b)        **Marketing Authorization.** Seller authorizes Broker to market the Property as described below:

            (i)        Cooperate and share the commission payable under this Agreement with other brokers including brokers who have been employed as buyer's agents, subagents, dual agents, or designated agents, subject, where applicable, to authorization as required by law;

            (ii)        Submit pertinent information, including virtual tours and images when applicable, concerning the Property to any Multiple Listing Service ("MLS") organizations to which Broker subscribes;

            (iii)        Provide to any MLS to which Broker subscribes, for dissemination to others, timely notice of status changes affecting the Property, sales information, including Seller's name, price, and other information concerning the Property for use of the members of such services, to compile reliable statistics, and to establish market value for other properties, and to report sales information about the property, including the price at which the property sold, or is contracted to be sold, to the MLS for dissemination to MLS participants, subscribers, and other licensees or users of the MLS database compilation;

            (iv)        Disseminate data about the Property and other information, including Seller's name, price, and other information concerning the Property supplied by, or on behalf of Seller, including creative works depicting the Property, such as virtual tours, images, and any textual descriptions of the Property (collectively referred to as "Content"), to MLS Participants, Subscribers and other licensees or users of the MLS database compilation, or any other MLS in which Broker participates, and to further disseminate, or permit the MLS or other MLS participants to disseminate such Content to potential purchasers through websites on the Internet. Further, Broker is authorized to otherwise advertise the Property in any manner deemed appropriate by Broker, including but not limited to advertising on the Internet, virtual tours, web-sites, trade journals and any other medium, and communications via e-mail and facsimile;

            (v)        Place a "For Sale," "Under Contract," "Sale Pending," and other similar signs on the Property and to remove all other signs during the term of this Agreement;

            (vi)        Enter the Property at reasonable times and with reasonable notice for the purpose of evaluation, preview, or showing the Property to prospective purchasers or other brokers;

            (vii)        Possess and maintain a key to the Property, and make use of a "Lock Box" during the term of this Agreement; and

            (viii)        Conduct open houses of the Property at such times as Seller and Broker may agree.

        (c)        **"Coming Soon" Advertising.**        (Check only if applicable).  If applicable, Broker is authorized to market the Property as "Coming Soon," commencing on the Effective Date, in any media Broker may in its discretion select, provided that any "Coming Soon" advertising shall be conducted in accordance with any restrictions and requirements of any listing service in which the Property will be included, a copy of which      are      are not attached to this Agreement.

(d)   **Seller Acknowledgement.**  Seller acknowledges and understands that while the marketing services identified above will facilitate the showing and sale of the Property, there are inherent risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of Broker, including but not limited to:

(1)   unauthorized use of a lock/key box,

(2)   control of visitors during or after a showing or an open house, including the taking and use of photographs and videos of the Property,

(3)   inappropriate use of information about the Property placed on the Internet or furnished to any MLS in which Broker participates, and

(4)   information about the Property placed on the Internet by or through any listing service in which Broker participates which is inaccurate or dated.

Seller therefore agrees to release and discharge Broker and Broker's agents from any and all claims, demands, rights and causes of action of whatsoever kind and nature not caused by Broker's negligence arising directly or indirectly out of any such marketing services.

WARNING: IT MAY BE A CRIME UNDER FEDERAL AND STATE LAWS TO LISTEN TO OR RECORD AN ORAL COMMUNICATION THROUGH THE USE OF ANY ELECTRONIC, MECHANICAL, OR OTHER DEVICE WITHOUT THE CONSENT OF A PARTY TO THAT COMMUNICATION.  If there is a video/audio/surveillance device(s) on the Property, Seller is advised: (i) that no audio surveillance device may be turned on during any showings, open houses, investigations, examinations or inspections of the Property; and (ii) that the placement of any video surveillance device should not violate a visitor's reasonable expectation of privacy.

11.   COPYRIGHT:  Broker is specifically authorized to use, both before and after the sale or, in the event there is not a sale, after this listing has expired, for any purposes whatsoever, any and all information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property (including any information concerning the price and terms of the sale of the Property, the description of the Property, length of time the Property is on the market, and any other information relating to the Property) ("Seller Content"). Seller hereby assigns to Broker any and all intellectual property rights Seller may have in the Seller Content and to any photographs or video or other reproductions of the property used in connection with the marketing of the property. For purposes of clarity, Broker is the owner of any and all rights in the Seller Content and may further assign, license, sublicense, or otherwise dispose of these rights to any party whatsoever for any purposes whatsoever.  If any moral rights are not transferred by the preceding sentences, Seller hereby waives all such rights.

Seller's execution of this Agreement further signifies Seller's representation and warranty that Seller is the sole author and sole owner of all rights in and to the Seller Content; that Seller's contribution to the Seller Content is original and not in the public domain; that Seller's contribution to the Seller Content contains no material from other copyrighted or unpublished work that has been used without the written consent of the copyright owner and/or of the owner of any other rights to or in such other works; that it does not violate or infringe on any personal or property rights of others, whether common law or statutory; that it contains nothing libelous or contrary to law; and that Seller has full power to enter this Agreement. Seller agrees to indemnify and hold harmless Broker for any claims of copyright infringement or other claims arising from any publication or use of the Seller Content.

Broker grants to Seller a non-exclusive, perpetual license for the use of the Seller Content, including the right to display, reproduce, distribute or make derivative works from the Seller Content. For purposes of clarity, the license granted to Seller for the use of the Seller Content applies only to information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property, and not to any information, photographs or video created or provided by or on behalf of Broker. Seller agrees to indemnify and hold harmless Broker for any and all claims arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of this license. Seller understands and agrees that Broker assumes no responsibility for Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of the license granted by Broker, or for any infringement arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content.

12.   DUAL AGENCY: Seller understands that the potential for dual agency will arise if a buyer who has an agency relationship with Broker becomes interested in viewing the Property.  Broker may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Broker acts.

(a)   Disclosure of Information.  In the event Broker serves as a dual agent, Seller agrees that without permission from the party about whom the information pertains, Broker shall not disclose to the other party the following information:

(1)   that a party may agree to a price, terms, or any conditions of sale other than those offered;

(2)   the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and

(3)   any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute, rule, regulation or North Carolina law.

(b)   Broker's Role as Dual Agent.  If Broker serves as agent for both Seller and a buyer in a transaction involving the Property, Broker shall make every reasonable effort to represent Seller and buyer in a balanced and fair manner. Broker shall also make every reasonable effort to encourage and effect communication and negotiation between Seller and buyer.  Seller understands and acknowledges that:

(1)   Prior to the time dual agency occurs, Broker will act as Seller's exclusive agent;

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

(2)    In its separate representation of Seller and buyer, Broker may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Broker;

(3)    Broker is required by law to disclose to Seller and buyer any known or reasonably ascertainable material facts.

Seller agrees Broker shall not be liable to Seller for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

(c)    **Seller's Role.** Should Broker become a dual agent, Seller understands and acknowledges that:

(1)    Seller has the responsibility of making Seller's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Broker;

(2)    Seller is fully aware of and understands the implications and consequences of Broker's dual agency role as expressed herein to provide balanced and fair representation of Seller and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

(3)    Seller has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;

(4)    Seller may seek independent legal counsel to assist Seller with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Broker become a dual agent, Seller waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Broker's role as a dual agent. Seller shall have a duty to protect Seller's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Seller wants included in said agreement.

(d)    Authorization *(initial only ONE).*

_____    Seller authorizes Broker to act as a dual agent, representing both the Seller and the buyer, subject to the terms and conditions set forth in Paragraph 12.

_____    Seller desires exclusive representation at all times during this agreement and does NOT authorize Broker to act in the capacity of dual agent. *If Seller does not authorize Broker to act as a dual agent, the remainder of this paragraph shall not apply.*

(e)    Designated Agent Option (*Initial only if applicable*).

_____    Seller hereby authorizes Broker to designate an individual agent(s) to represent the Seller. The individual designated agent(s) shall represent only the interests of the Seller to the extent permitted by law.

(**NOTE**: When dual agency arises, an individual agent shall not practice designated agency and shall remain a dual agent if the individual agent has actually received confidential information concerning a buyer client of Broker in connection with the transaction or if designated agency is otherwise prohibited by law.)

(f)    **Dual Agency Compensation.** If Broker acts as a dual agent (including designated agency), the total fee Broker expects to receive for its services in representing Seller and the buyer shall be shall be 6% (+/- up to 4%) and $300 (+/- up to $900). THIS WILL IN NO WAY AFFECT OR MODIFY THE AMOUNT OF THE FEE SET FORTH IN PARAGRAPH 5 ABOVE THAT BROKER EXPECTS TO RECEIVE FOR ITS SERVICES IN REPRESENTING SELLER UNDER THIS AGREEMENT. In the event Broker's total fee is different from that described in this subparagraph (f), Broker shall timely disclose the fee to Seller and confirm it in writing before Seller accepts an offer to sell the Property.

13.    **LEGAL AND PROFESSIONAL ADVICE:** Broker recommends that Seller seek legal, tax, and other professional advice relative to any real estate transaction. Broker makes no representation or warranty respecting the advisability of any transaction. Broker is not an expert in matters relating to law (including matters of title to the Property), tax, financing, surveying, structural or mechanical condition, hazardous material, engineering, or other specialized topics. Seller is encouraged to seek expert assistance in such areas. Broker will cooperate with experts engaged by Seller or at the request of Seller, but Broker will have no liability to Seller pertaining to such matters.

14.    **ARBITRATION AGREEMENT:** Any Dispute, claim or controversy between Seller and Broker shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This agreement to arbitrate and the arbitration proceeding shall be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that

All Rights Reserved

Act is inapplicable, unenforceable, or invalid, the North Carolina Revised Uniform Arbitration Act shall govern this Arbitration Agreement and the arbitration proceeding.

As used herein the term "Dispute" shall include, without limitation, any claim, controversy, complaint or disagreement regarding any representations, acts or omissions by any person, party or entity that in any way arises out of or is related to the sale, purchase, financing, condition of any property or any other aspect of Seller's real estate transaction, or that in any way arises out of any of the real estate brokerage services or other settlement services provided by Broker including, without limitation, allegations of concealment, misrepresentation, negligence, breach of fiduciary duty, fraud, constructive fraud, or other wrongful actions or omissions of any type. A Dispute includes any claim, controversy, complaint or disagreement of any kind, including those based on broken promises or contracts, closing charges, or tort (injury caused by negligent or intentional conduct). A Dispute includes any statutory, common law, or equitable claim. A Dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement. No Dispute may be joined in arbitration with a Dispute of any other person or arbitrated on a class action basis.

The American Arbitration Association (AAA) shall administer the arbitration, including the selection of arbitrators, pursuant to its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable. The arbitration shall be held in the county where the real property at issue is located. To find out how to initiate arbitration, Seller can contact AAA at:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Toll free number 877-495-4185
Fax number 877-304-8457

Website: www.adr.org

Email: casefiling@adr.org

All parties to the arbitration (AAA, the arbitrator, Broker, and Seller) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA. The arbitration proceeding shall be conducted at a location determined by AAA in accordance with this Arbitration Agreement. All statutes of limitation and statutes of repose applicable to any Dispute shall apply to any arbitration proceeding between Broker and Seller. If a Dispute is properly filed in Small Claims Court and the Small Claims Court has jurisdiction to resolve the Dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the Dispute from Small Claims Court shall pay AAA's administrative fee and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforceability of the other terms of this Arbitration Agreement.
WHEN YOU SIGN THIS AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER BROKER NOR SELLER SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

Seller's initials: _____  _____

15.      Seller acknowledges receipt of the brochure describing the HomeServices Warranty Program offered through HMS National, Inc. In the above mentioned brochure, Seller accepted or declined coverage. Specific details of the coverage provided by HMS National, Inc., including coverage limits, exclusions, deductibles and other information may be obtained from Broker upon request.

Seller's initials: _____  _____

16.      ADDITIONAL TERMS AND CONDITIONS: The following additional terms and conditions shall also be a part of this Agreement:

_____
_____
_____

17.      ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between the parties; any prior agreements pertaining thereto, whether oral or written, have been merged and integrated into this Agreement. There shall be no modification of any of the terms of this Agreement unless such modification has been agreed to in writing and signed by all parties.

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

Seller: _____ _____ _____
                              Print Name                             Signature                      Date

Contact Information: _____ _____ _____
                                  Home                    Work                Cell
                          _____
                                  e-mail

Mailing Address: _____

_____

Seller: _____ _____ _____
                              Print Name                             Signature                      Date

Contact Information: _____ _____ _____
                                  Home                    Work                Cell
                          _____
                                  e-mail

Mailing Address: _____

_____

Broker:    Preferred Carolinas Realty, Inc                 Phone:   _____

By: _____ _____ _____
                        Individual Agent Signature                 Individual License #              Date

Office: _____

Office Phone: _____     Fax: _____

e-mail: _____

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved



**BERKSHIRE HATHAWAY**
HomeServices

Carolinas Realty
York Simpson Underwood Realty
Yost & Little Realty
Pinehurst Realty Group

*We make great neighbors.*

# EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This Exclusive Right To Sell Listing Agreement ("Agreement") is entered into between _____
_____ as Seller(s) ("Seller") and Preferred Carolinas Realty, Inc. dba Berkshire Hathaway
HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, Berkshire Hathaway
HomeServices Yost & Little Realty, and Berkshire Hathaway HomeServices Pinehurst Realty Group as Listing Broker ("Broker") for the
property described below ("Property") and known as or legally described as:

Street Address: _____
City: _____ Zip code: _____
County: _____, North Carolina.
Legal Description:_____
_____.

1.      TERM OF AGREEMENT:  In consideration of Broker's services to procure a buyer for the Property, Broker is hereby
granted the exclusive right to sell the Property for a period beginning on _____, 20__ and expiring at 11:59 P.M. on
_____, 20__ unless terminated sooner by Broker at its option.

2.      LISTING PRICE AND TERMS:  Seller agrees to list the Property, including all fixtures described in paragraph 3, for sale at a
price of $_____ ("Listing Price") on the following terms:
__ Cash         __ FHA         __ VA         __ USDA __ Conventional         __ Loan Assumption
__ Seller Financing         Other: _____.

Seller agrees to sell the Property for the Listing Price and terms set forth above, or at any other price and on any other terms
acceptable to Seller.

3.      FIXTURES AND EXCLUSIONS.
    (a)   Specified Items: Unless identified in subparagraph (d) below, the  following items, including all related equipment and
remote control devices, if any, are deemed fixtures and shall convey, included in the Purchase Price free of liens:

- Alarm and security systems (attached) for security, fire, smoke, carbon monoxide or other toxins with all related access codes, sensors, cameras, dedicated monitors, hard drives, video recorders, power supplies and cables; doorbells/chimes
- All stoves/ranges/ovens; built-in appliances; attached microwave oven; vent hood
- Fuel tank(s) whether attached or buried and including any contents that have not been used, removed or resold to the fuel provider as of Settlement.  **NOTE:** Seller's use, removal or resale of fuel in any fuel tank is subject to seller's obligation under Paragraph 8(c) to provide working, existing utilities through the earlier of Closing or possession by Buyer.
- Garage door openers with all controls
- Generators that are permanently wired
- Invisible fencing with power supply, controls and receivers
- Landscape and outdoor trees and plants (except in moveable containers); raised garden; landscape and foundation lighting; outdoor sound systems; permanent irrigation systems and controls; rain barrels; landscape water features; address markers
- Mailboxes; mounted package and newspaper receptacles

- Antennas; satellite dishes and receivers
- Basketball goals and play equipment (permanently attached or in-ground)
- Ceiling and wall-attached fans; light fixtures (including existing bulbs)
- Fireplace  insert; gas logs or starters; attached fireplace screens; wood or coal stoves
- Floor coverings (attached)
- Mirrors attached to walls, ceilings, cabinets or doors; all bathroom wall mirrors
- Storage shed; utility building
- Swimming pool (excluding inflatable); spa; hot tub
- Solar electric and solar water heating systems
- Sump-pumps, radon fans and crawlspace ventilators; de-humidifiers that are permanently wired
- Surface-mounting brackets for television and speakers; recess-mounted speakers; mounted intercom system
- Water supply equipment, including filters, conditioning and softener systems; re-circulating pumps; well pumps and tanks
- Window/Door blinds and shades, curtain and drapery rods and brackets, door and window screens and combination doors, awnings and storm windows.

 Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

(b) FIXTURES AND EXCLUSIONS.
Items Leased or Not Owned: Any item which is leased or not owned by Seller, such as fuel tanks, satellite dishes and receivers, appliances, and alarm and security systems must be identified here and shall not convey:

_____
_____
_____

(c) Other Fixtures/Unspecified items: Unless identified in subparagraph (d) below, any other item legally considered a fixture is included in the Purchase Price free of all liens.

(d) Other Items That Do Not Convey: The following items shall not convey (*identify those items to be excluded under subparagraphs (a) and (c)*):
_____
_____

Seller shall repair any damage caused by removal of any items excepted above.

4.     **PERSONAL PROPERTY.** The following personal property shall be transferred to Buyer free of liens at no value at the closing on the sale of the Property:

_____
_____

5.     **BROKER'S COMPENSATION:** Seller agrees to pay Broker compensation in the amount of $_____ plus _____% of the gross contract sales price of the Property, which compensation shall include any compensation paid by Broker to any cooperating real estate brokers. Note that Broker does not offer any compensation to non-cooperating real estate brokers who are not members of the Multiple Listing Service ("MLS"). Seller authorizes the payment of the compensation owed to Broker pursuant to this Agreement to be paid directly to Broker from Seller's proceeds from the closing on the sale of the Property.

The compensation owed to Broker shall be deemed earned upon Broker, a cooperating real estate broker, Seller, or anyone else procuring or producing a ready, willing and able buyer(s) at the Listing Price and terms agreed to herein by Seller, or at any other price or terms acceptable to Seller, during the term of this Agreement. If any agreement for the sale or transfer of the Property does not have a selling price, the percentage component of the compensation owed to Broker shall be calculated based on the fair market value of the Property as of the effective date of such agreement. The compensation earned as set forth above shall be due and payable immediately upon the earlier of:

(a)     The closing on the sale of the Property;
(b)     Seller's refusal to sign a contract or agreement for the sale of Property at the Listing Price and terms set forth herein, or on any other terms acceptable to Seller;
(c)     Seller's breach of any contract or agreement for the sale or transfer of the Property;
(d)     Seller's agreement with any buyer(s) to unreasonably modify or cancel any contract or agreement for the sale or transfer of the Property;
(e)     Seller's breach of this Agreement.

Provided, however, that in the event the Property is not sold during the term of this Agreement, if within 180 days after expiration of this Agreement (the "Protection Period") Seller sells or enters into any agreement to sell the Property, directly or indirectly, including but not limited to any form of option, exchange, lease/purchase, conveyance or transfer upon any terms whatsoever, to any person or entity with whom Seller, Broker, or any cooperating real estate broker communicated during the term of this Agreement, and whose name(s) Broker has submitted to Seller in writing within 15 days of the expiration of this Agreement, the compensation owed to Broker pursuant to this Agreement shall be immediately due and payable to Broker. However, Seller shall not be obligated to pay the compensation owed to Broker pursuant to this Agreement if a valid listing agreement is entered into with another licensed real estate broker after the expiration of this Agreement and the Property is sold, exchanged, leased, conveyed or transferred during the Protection Period.

Seller acknowledges and agrees that Broker may be offered compensation from other persons or entities in connection with the sale of the Property, and Seller agrees to permit Broker to receive any such additional compensation. Broker will timely disclose any such additional compensation to Seller.

6.     **BROKER'S DUTIES:** Broker accepts the exclusive listing granted by this Agreement and shall use its best efforts and due diligence to solicit and procure a ready, willing and able buyer to purchase the Property at the Listing Price and terms set forth in this Agreement. Broker further agrees to:

(a)     Perform the terms of this Agreement, exercise reasonable care and skill, and promote Seller's interests;
(b)     Assist Seller in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to the offers and the counteroffers;
(c)     Accept delivery of and present to Seller in a timely manner all offers and counteroffers to sell the Property;
(d)     Respond to Seller's questions relating to the offers, counteroffers, notices, and contingencies;
(e)     Account in a timely manner for all money and property received on behalf of Seller;
(f)     Not disclose any confidential information about Seller, unless disclosure is authorized pursuant to this Agreement or is required by statute, rule, regulation or North Carolina law, or the failure to disclose such information would constitute a material misrepresentation.

**BROKER SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT.**

7.     SELLER'S DUTIES: Seller agrees to cooperate with Broker in marketing the Property for sale, including making the Property available for showings at reasonable times on reasonable notice. Seller further agrees to complete all required disclosure forms, including but not limited to the Residential Property and Owner's Association Disclosure Statement (unless exempt), the Mineral and Oil and Gas Rights Mandatory Disclosure Statement (unless exempt), and the Lead-Based Paint or Lead-Based Paint Hazard Addendum, if applicable to the Property.

(a)    Seller represents that Seller holds title to the Property in fee simple, and that Seller does not know or have reason to know of circumstances or encumbrances that would prohibit Seller from conveying fee simple marketable title to the Property to a ready, willing and able buyer except as follows:

_____

_____

(b)    If required by N.C.G.S. §44A-11.1, Seller shall designate a Lien Agent, and provide Broker a copy of the appointment of Lien Agent as soon as reasonably possible.

8.    SELLER REPRESENTATIONS: Seller acknowledges and agrees that Broker is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which Broker knows or reasonably should know. Seller hereby makes the following representations concerning the Property:

(a)    **Flood Hazard Disclosure/Insurance.** To the best of Seller's knowledge, the Property    is   is not located partly or entirely within a designated Special Flood Hazard Area. The Seller    does   does not currently maintain flood hazard insurance on the Property.

(b)    **Synthetic Stucco.** To the best of Seller's knowledge, the Property    has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system," commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows:

_____

(c)    **Owners' Association**.

(1) Complete ONLY if the Residential Property and Owner's Association Disclosure Statement is required: The name, address and telephone number of the president of the owner's association or the association manager is:

_____

_____

Owner's association website address, if any:_____

(2) Complete ONLY if New Construction or where the Residential Property and Owner's Disclosure Statement is NOT required: To the best of Seller's knowledge there   is   is not an owners' association which imposes various mandatory covenants, conditions and restrictions upon the Property. If there is an owners' association, Seller agrees to promptly complete an Owners' Association Disclosure and Addendum For Properties Exempt from Residential Property Disclosure Statement at Seller's expense and to attach it as an addendum to any contract for the sale of the Property.

(d)    **Ownership**. Seller represents that Seller:
    has owned the Property for at least one year;
    has owned the Property for less than one year.

(e)    **Receipt of Sample Forms**.
    Seller acknowledges receipt of a sample copy of an Offer to Purchase and Contract (Form 2-T) or Offer to Purchase and Contract—New Construction (Form 800-T), as may be appropriate for review purposes.
    Seller acknowledges receipt of a sample copy of a Professional Services Disclosure and Election Form (Form #760) for review purposes.

(f)    **Current Liens**. Seller represents to the best of Seller's knowledge:
(1)    The Property   is   is not encumbered by a deed of trust or mortgage. *Complete any of the following where applicable:*
    (i)    There is a first deed of trust or mortgage on the Property securing a loan held by:
Lender Name: _____
Approximate balance: $_____
Lender Phone #:_____
Lender Address: _____
    (ii)    There is a second deed of trust or mortgage on the Property securing a loan held by:
Lender Name: _____

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

Approximate balance: $_____

Lender Phone #:_____

Lender Address: _____

    (iii)    There is a deed of trust or mortgage on the Property securing an equity line of credit held by:

Lender Name: _____

Approximate balance: $_____

Lender Phone #:_____

Lender Address: _____

(2)    Seller   is current on all payments for the loans identified in numbered items (i), (ii) and (iii) above except as specified in (7) below.

(3)    Seller   is not in default on any loan identified in numbered items (i), (ii) and (iii) above and has not received any notice(s) from the holder of any loan identified in numbered items (i), (ii) and (iii) above or from any other lien holder of any kind, regarding a default under the loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure except as specified in (7) below.

(4)    There   are not any liens secured against the Property for Federal, State or local income taxes, unpaid real property taxes, unpaid condominium or homeowners' association fees, mechanics', laborers' or materialmens' liens, or other liens affecting the Property, and Seller has no knowledge of any matter that might result in a lien affecting the Property except as specified in (7) below.

(5)    There   are not any judgments against Seller affecting the Property, and Seller has no knowledge of any matter that might result in a judgment that may potentially affect the Property except as specified in (7) below.

(6)    There   are not any Uniform Commercial Code (UCC) fixture filings affecting the Property, and Seller has no knowledge of any matter that might result in a UCC fixture filing affecting the Property except as specified in (7) below.

(7)    Specify any information, including approximate balances, required by Seller representations (2) through (6) above (**NOTE**: Outstanding liens may affect Seller's proceeds.)

_____

_____

(g)    **Bankruptcy**. Seller currently:

    (1)    is   is not under bankruptcy protection under United States law.

    (2)    is   is not contemplating seeking bankruptcy protection during the term of this Agreement.

(h)    **Access**. Seller represents that the Property   does   does not have legal access to a public right of way. If access is by private road/easement/other, Seller further represents that there   is   is not an agreement regarding the maintenance of such private road/easement/other means of access. If applicable, Seller agrees to promptly provide Broker information pertaining to any such agreement.

(i)    **Lease(s).**   To the best of Seller's knowledge, the Property   is   is not subject to any lease(s). If applicable:

    (i)    Seller agrees to promptly provide Broker a copy of any such lease(s) or a written statement of the terms of any oral lease(s);

    (ii)    If the Property is managed by someone other than Seller, the manager's name and contact information is as follows: _____.

Seller authorizes any such manager to release and disclose to Broker any relevant information about any lease(s) and to cooperate with Broker in the sale of the Property.

(j)    **FHA Appraisal**. To the best of Seller's knowledge, a FHA appraisal   has   has not been performed on the Property within four months prior to the Effective Date. If applicable, Seller agrees to promptly provide Firm a copy of any such appraisal if available.

NOTE: Any such appraisal may or may not be binding on a buyer who intends to obtain FHA financing.

(k)    **Special Assessments**. To the best of Seller's knowledge, there are no proposed or confirmed special assessments (as defined in the sample contract form provided to Seller) regarding the Property except as follows (Insert "none" or the identification of such assessments, if any): _____.

(l)    Fuel Tank/Fuel: To the best of Seller's knowledge, there   is   is not a fuel tank(s) located on the Property. *If "yes" complete the following to the best of Seller's knowledge:*

Ownership of tank 1:   owned   leased. If leased, the name and contact information of tank lessor/fuel vendor is:

_____

Location of tank 1:   above ground   below ground

Type of fuel:   oil   propane   gasoline and/or diesel   other:_____

Ownership of tank 2:   owned   leased. If leased, the name and contact information of tank lessor/fuel vendor is:

_____

Location of tank 2:   above ground   below ground

Type of fuel:   oil   propane   gasoline and/or diesel   other:_____

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

If, during the term of this Agreement, Seller becomes aware that any of the representations set forth in this paragraph 8 are incorrect or no longer accurate, Seller shall promptly notify Broker and cooperate with Broker in taking appropriate corrective action.

9.      HOME INSPECTION:  Seller is advised to obtain a home inspection for the purpose of evaluating the condition of the Property in order to enhance its marketability and to help reduce concerns of prospective buyers.  Seller    agrees    does not agree to obtain and pay for a home inspection by a licensed NC Home Inspector within ___ days  after the  execution of this Agreement.

> Seller acknowledges receipt of a copy of *Questions and Answers on: Home Inspections* by the NC Real Estate Commission.

10.    MARKETING ACTIVITIES:

(a)      **Commencement of Marketing.**  Broker is authorized to commence marketing the Property as described in subparagraph (b) below on the Effective Date OR if selected     on (insert date only if applicable) _____ ("Delayed Marketing Date").

**NOTE: If a Delayed Marketing Date is selected, Seller understands and acknowledges the following:**
- **THE PROPERTY MAY NOT BE SHOWN BY ANY REAL ESTATE AGENT, INCLUDING BROKER'S AGENTS, PRIOR TO THE DELAYED MARKETING DATE.**
- **BROKER IS OBLIGATED TO PRESENT TO SELLER ANY OFFERS ON THE PROPERTY THAT MAY BE SUBMITTED TO BROKER PRIOR TO THE DELAYED MARKETING DATE.**
- **IT IS IN THE BEST INTEREST OF MOST SELLERS TO GET THE HIGHEST POSSIBLE PRICE ON THE BEST TERMS FOR THEIR PROPERTY, AND MAXIMIZING EXPOSURE OF THEIR PROPERTY ADVANCES THAT INTEREST.  ACCEPTING AN OFFER ON THE PROPERTY BEFORE IT IS FULLY EXPOSED TO THE WIDEST GROUP OF POTENTIAL BUYERS MAY DENY SELLER THE BEST OPPORTUNITY TO ATTRACT OFFERS AT THE HIGHEST PRICE AND BEST TERMS.**

(b)      **Marketing Authorization.** Seller authorizes Broker to market the Property as described below:

(i)      Cooperate and share the commission payable under this Agreement with other brokers including brokers who have been employed as buyer's agents, subagents, dual agents, or designated agents, subject, where applicable, to authorization as required by law;

(ii)     Submit pertinent information, including virtual tours and images when applicable, concerning the Property to any Multiple Listing Service ("MLS") organizations to which Broker subscribes;

(iii)    Provide to any MLS to which Broker subscribes, for dissemination to others, timely notice of status changes affecting the Property, sales information, including Seller's name, price, and other information concerning the Property for use of the members of such services, to compile reliable statistics, and to establish market value for other properties, and to report sales information about the property, including the price at which the property sold, or is contracted to be sold, to the MLS for dissemination to MLS participants, subscribers, and other licensees or users of the MLS database compilation;

(iv)    Disseminate data about the Property and other information, including Seller's name, price, and other information concerning the Property supplied by, or on behalf of Seller, including creative works depicting the Property, such as virtual tours, images, and any textual descriptions of the Property (collectively referred to as "Content"), to MLS Participants, Subscribers and other licensees or users of the MLS database compilation, or any other MLS in which Broker participates, and to further disseminate, or permit the MLS or other MLS participants to disseminate such Content to potential purchasers through websites on the Internet. Further, Broker is authorized to otherwise advertise the Property in any manner deemed appropriate by Broker, including but not limited to advertising on the Internet, virtual tours, web-sites, trade journals and any other medium, and communications via e-mail and facsimile;

(v)     Place a "For Sale," "Under Contract," "Sale Pending," and other similar signs on the Property and to remove all other signs during the term of this Agreement;

(vi)    Enter the Property at reasonable times and with reasonable notice for the purpose of evaluation, preview, or showing the Property to prospective purchasers or other brokers;

(vii)   Possess and maintain a key to the Property, and make use of a "Lock Box" during the term of this Agreement; and

(viii)  Conduct open houses of the Property at such times as Seller and Broker may agree.

(c)      **"Coming Soon" Advertising.**      (Check only if applicable).  If applicable, Broker is authorized to market the Property as "Coming Soon," commencing on the Effective Date, in any media Broker may in its discretion select, provided that any "Coming Soon" advertising shall be conducted in accordance with any restrictions and requirements of any listing service in which the Property will be included, a copy of which    are    are not attached to this Agreement.

(d) **Seller Acknowledgement.** Seller acknowledges and understands that while the marketing services identified above will facilitate the showing and sale of the Property, there are inherent risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of Broker, including but not limited to:

(1) unauthorized use of a lock/key box,
(2) control of visitors during or after a showing or an open house, including the taking and use of photographs and videos of the Property,
(3) inappropriate use of information about the Property placed on the Internet or furnished to any MLS in which Broker participates, and
(4) information about the Property placed on the Internet by or through any listing service in which Broker participates which is inaccurate or dated.

Seller therefore agrees to release and discharge Broker and Broker's agents from any and all claims, demands, rights and causes of action of whatsoever kind and nature not caused by Broker's negligence arising directly or indirectly out of any such marketing services.

WARNING: IT MAY BE A CRIME UNDER FEDERAL AND STATE LAWS TO LISTEN TO OR RECORD AN ORAL COMMUNICATION THROUGH THE USE OF ANY ELECTRONIC, MECHANICAL, OR OTHER DEVICE WITHOUT THE CONSENT OF A PARTY TO THAT COMMUNICATION. If there is a video/audio/surveillance device(s) on the Property, Seller is advised: (i) that no audio surveillance device may be turned on during any showings, open houses, investigations, examinations or inspections of the Property; and (ii) that the placement of any video surveillance device should not violate a visitor's reasonable expectation of privacy.

11. COPYRIGHT: Broker is specifically authorized to use, both before and after the sale or, in the event there is not a sale, after this listing has expired, for any purposes whatsoever, any and all information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property (including any information concerning the price and terms of the sale of the Property, the description of the Property, length of time the Property is on the market, and any other information relating to the Property) ("Seller Content"). Seller hereby assigns to Broker any and all intellectual property rights Seller may have in the Seller Content and to any photographs or video or other reproductions of the property used in connection with the marketing of the property. For purposes of clarity, Broker is the owner of any and all rights in the Seller Content and may further assign, license, sublicense, or otherwise dispose of these rights to any party whatsoever for any purposes whatsoever. If any moral rights are not transferred by the preceding sentences, Seller hereby waives all such rights.

Seller's execution of this Agreement further signifies Seller's representation and warranty that Seller is the sole author and sole owner of all rights in and to the Seller Content; that Seller's contribution to the Seller Content is original and not in the public domain; that Seller's contribution to the Seller Content contains no material from other copyrighted or unpublished work that has been used without the written consent of the copyright owner and/or of the owner of any other rights to or in such other works; that it does not violate or infringe on any personal or property rights of others, whether common law or statutory; that it contains nothing libelous or contrary to law; and that Seller has full power to enter this Agreement. Seller agrees to indemnify and hold harmless Broker for any claims of copyright infringement or other claims arising from any publication or use of the Seller Content.

Broker grants to Seller a non-exclusive, perpetual license for the use of the Seller Content, including the right to display, reproduce, distribute or make derivative works from the Seller Content. For purposes of clarity, the license granted to Seller for the use of the Seller Content applies only to information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property, and not to any information, photographs or video created or provided by or on behalf of Broker. Seller agrees to indemnify and hold harmless Broker for any and all claims arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of this license. Seller understands and agrees that Broker assumes no responsibility for Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of the license granted by Broker, or for any infringement arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content.

12. DUAL AGENCY: Seller understands that the potential for dual agency will arise if a buyer who has an agency relationship with Broker becomes interested in viewing the Property. Broker may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Broker acts.

(a) Disclosure of Information. In the event Broker serves as a dual agent, Seller agrees that without permission from the party about whom the information pertains, Broker shall not disclose to the other party the following information:

(1) that a party may agree to a price, terms, or any conditions of sale other than those offered;
(2) the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and
(3) any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute, rule, regulation or North Carolina law.

(b) Broker's Role as Dual Agent. If Broker serves as agent for both Seller and a buyer in a transaction involving the Property, Broker shall make every reasonable effort to represent Seller and buyer in a balanced and fair manner. Broker shall also make every reasonable effort to encourage and effect communication and negotiation between Seller and buyer. Seller understands and acknowledges that:

(1) Prior to the time dual agency occurs, Broker will act as Seller's exclusive agent;

 Copyright © 2017 Preferred Carolinas Realty, Inc. All Rights Reserved

    (2)    In its separate representation of Seller and buyer, Broker may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Broker;

    (3)    Broker is required by law to disclose to Seller and buyer any known or reasonably ascertainable material facts.

Seller agrees Broker shall not be liable to Seller for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

    (c)    **Seller's Role.**  Should Broker become a dual agent, Seller understands and acknowledges that:

    (1)    Seller has the responsibility of making Seller's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Broker;

    (2)    Seller is fully aware of and understands the implications and consequences of Broker's dual agency role as expressed herein to provide balanced and fair representation of Seller and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

    (3)    Seller has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;

    (4)    Seller may seek independent legal counsel to assist Seller with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Broker become a dual agent, Seller waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Broker's role as a dual agent. Seller shall have a duty to protect Seller's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Seller wants included in said agreement.

    (d)    Authorization *(initial only ONE)*.

_____    Seller authorizes Broker to act as a dual agent, representing both the Seller and the buyer, subject to the terms and conditions set forth in Paragraph 12.

_____    Seller desires exclusive representation at all times during this agreement and does NOT authorize Broker to act in the capacity of dual agent. *If Seller does not authorize Broker to act as a dual agent, the remainder of this paragraph shall not apply.*

    (e)    Designated Agent Option (*Initial only if applicable*).

_____    Seller hereby authorizes Broker to designate an individual agent(s) to represent the Seller.  The individual designated agent(s) shall represent only the interests of the Seller to the extent permitted by law.

(**NOTE:**  When dual agency arises, an individual agent shall not practice designated agency and shall remain a dual agent if the individual agent has actually received confidential information concerning a buyer client of Broker in connection with the transaction or if designated agency is otherwise prohibited by law.)

    (f)    Dual Agency Compensation. If Broker acts as a dual agent (including designated agency), the total fee Broker expects to receive for its services in representing Seller and the buyer shall be shall be 6% (+/- up to 4%) and $300 (+/- up to $900). THIS WILL IN NO WAY AFFECT OR MODIFY THE AMOUNT OF THE FEE SET FORTH IN PARAGRAPH 5 ABOVE THAT BROKER EXPECTS TO RECEIVE FOR ITS SERVICES IN REPRESENTING SELLER UNDER THIS AGREEMENT.  In the event Broker's total fee is different from that described in this subparagraph (f), Broker shall timely disclose the fee to Seller and confirm it in writing before Seller accepts an offer to sell the Property.

13.    LEGAL AND PROFESSIONAL ADVICE:  Broker recommends that Seller seek legal, tax, and other professional advice relative to any real estate transaction. Broker makes no representation or warranty respecting the advisability of any transaction. Broker is not an expert in matters relating to law (including matters of title to the Property), tax, financing, surveying, structural or mechanical condition, hazardous material, engineering, or other specialized topics. Seller is encouraged to seek expert assistance in such areas. Broker will cooperate with experts engaged by Seller or at the request of Seller, but Broker will have no liability to Seller pertaining to such matters.

14.    ARBITRATION AGREEMENT:  Any Dispute, claim or controversy between Seller and Broker shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This agreement to arbitrate and the arbitration proceeding shall be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

Act is inapplicable, unenforceable, or invalid, the North Carolina Revised Uniform Arbitration Act shall govern this Arbitration Agreement and the arbitration proceeding.

As used herein the term "Dispute" shall include, without limitation, any claim, controversy, complaint or disagreement regarding any representations, acts or omissions by any person, party or entity that in any way arises out of or is related to the sale, purchase, financing, condition of any property or any other aspect of Seller's real estate transaction, or that in any way arises out of any of the real estate brokerage services or other settlement services provided by Broker including, without limitation, allegations of concealment, misrepresentation, negligence, breach of fiduciary duty, fraud, constructive fraud, or other wrongful actions or omissions of any type. A Dispute includes any claim, controversy, complaint or disagreement of any kind, including those based on broken promises or contracts, closing charges, or tort (injury caused by negligent or intentional conduct). A Dispute includes any statutory, common law, or equitable claim. A Dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement. No Dispute may be joined in arbitration with a Dispute of any other person or arbitrated on a class action basis.

The American Arbitration Association (AAA) shall administer the arbitration, including the selection of arbitrators, pursuant to its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable. The arbitration shall be held in the county where the real property at issue is located. To find out how to initiate arbitration, Seller can contact AAA at:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Website: www.adr.org

All parties to the arbitration (AAA, the arbitrator, Broker, and Seller) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA. The arbitration proceeding shall be conducted at a location determined by AAA in accordance with this Arbitration Agreement. All statutes of limitation and statutes of repose applicable to any Dispute shall apply to any arbitration proceeding between Broker and Seller. If a Dispute is properly filed in Small Claims Court and the Small Claims Court has jurisdiction to resolve the Dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the Dispute from Small Claims Court shall pay AAA's administrative fee and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforceability of the other terms of this Arbitration Agreement.
WHEN YOU SIGN THIS AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER BROKER NOR SELLER SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

Seller's initials: _____  _____

15.      Seller acknowledges receipt of the brochure describing the HomeServices Warranty Program offered through HMS National, Inc. In the above mentioned brochure, Seller accepted or declined coverage. Specific details of the coverage provided by HMS National, Inc., including coverage limits, exclusions, deductibles and other information may be obtained from Broker upon request.

Seller's initials: _____  _____

16.      ADDITIONAL TERMS AND CONDITIONS: The following additional terms and conditions shall also be a part of this Agreement:

_____
_____
_____

17.      ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between the parties; any prior agreements pertaining thereto, whether oral or written, have been merged and integrated into this Agreement. There shall be no modification of any of the terms of this Agreement unless such modification has been agreed to in writing and signed by all parties.

# PREFERRED CAROLINAS DECLARATION EXHIBIT D - PAGE 9

Seller: _____ _____ _____
                        Print Name                               Signature                      Date

Contact Information: _____ _____ _____
                              Home                               Work                      Cell
                              _____
                                        e-mail

Mailing Address: _____

_____

Seller: _____ _____ _____
                        Print Name                               Signature                      Date

Contact Information: _____ _____ _____
                              Home                               Work                      Cell
                                          e-mail

Mailing Address: _____

_____

Broker:    Preferred Carolinas Realty, Inc                 Phone:   _____

By: _____ _____ _____
              Individual Agent Signature                  Individual License #                   Date

Office: _____

Office Phone: _____    Fax:   _____

e-mail: _____

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved



**BERKSHIRE HATHAWAY**
HomeServices

Carolinas Realty
York Simpson Underwood Realty
Yost & Little Realty

*We make great neighbors.*

## ARBITRATION DISCLOSURE AND RESIDENTIAL REAL PROPERTY AGREEMENT

**Resolving Disputes – Arbitration Agreement:**

In this Arbitration Agreement, "Company" means Preferred Carolinas Realty, Inc. dba Berkshire Hathaway HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, and Berkshire Hathaway HomeServices Yost & Little Realty, its affiliates and parent company, and "I", "me", "my", "you" and "your" means the undersigned customer or customers, individually and jointly.

I understand that I am a valued customer of the Company and agree to contact the Company immediately, in writing or by telephone, if I have a problem with the real estate brokerage services or any of the other settlement services provided to me by the Company. The Company will use its best efforts to work with me to resolve any problems that I may have. If the Company and I cannot arrive at a mutually agreeable solution, I agree that any Dispute, claim or controversy between me and the Company shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This Arbitration Agreement and the arbitration proceeding shall be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is inapplicable, unenforceable, or invalid, the North Carolina Revised Uniform Arbitration Act shall govern this Arbitration Agreement and the arbitration proceeding.

**Disputes:**

The term "Dispute" shall include, without limitation, any claim, controversy, complaint or disagreement regarding any representations, acts or omissions by any person, party or entity that in any way arises out of or is related to the sale, purchase, financing, condition of any property or any other aspect of your real estate transaction, or that in any way arises out of any of the real estate brokerage services or other settlement services provided by the Company including, without limitation, allegations of concealment, misrepresentation, negligence, breach of fiduciary duty, fraud, constructive fraud, or other wrongful actions or omissions of any type. A Dispute includes any claim, controversy, complaint or disagreement of any kind, including those based on broken promises or contracts, closing charges, or tort (injury caused by negligent or intentional conduct). A Dispute includes any statutory, common law, or equitable claim. A Dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement. No Dispute may be joined in arbitration with a Dispute of any other person or arbitrated on a class action basis.

**Binding Arbitration:**

Binding arbitration is a means of having one or more independent third parties (arbitrators) resolve disputes without using the court system, judges or juries. Arbitration is often a more cost effective and efficient means of resolving disputes. If either the Company or I fail to submit to binding arbitration following a lawful demand, the party who fails to submit to arbitration shall bear the cost and expenses incurred by the party that demanded arbitration, except as otherwise provided with respect to claims filed in Small Claims Court as discussed below.

The American Arbitration Association (AAA) shall administer the arbitration, including the selection of arbitrators, pursuant to its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable. The arbitration shall be held in the county where the real property at issue is located. To find out how to initiate arbitration, I can contact AAA at:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Toll free number 877-495-4185
Fax number 877-304-8457

Website: www.adr.org

Email: casefiling@adr.org

**Miscellaneous:**

All parties to the arbitration (AAA, the arbitrator, the Company, and I) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA. The arbitration proceeding shall be conducted at a location determined by AAA in accordance with this Arbitration Agreement. All statutes of limitation and statutes of repose applicable to any Dispute shall apply to any arbitration proceeding between the Company and me. If a Dispute is properly filed in Small Claims Court and the Small Claims Court has jurisdiction to resolve the Dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the Dispute from Small Claims Court shall pay AAA's administrative fee and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

**Severability:**

If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforceability of the other terms of this Arbitration Agreement.

**Notice:**

WHEN YOU SIGN THIS ARBITRATION AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A RESPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER THE COMPANY NOR I SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

**CUSTOMER(S):**                                    **Preferred Carolinas Realty, Inc.**

_____ **DATE** _____        **BY:**_____

                                                    **ITS AUTHORIZED**
                                                    **REPRESENTATIVE**

_____ **DATE**_____        **DATE:** _____



**BERKSHIRE HATHAWAY** | Carolinas Realty
HomeServices | York Simpson Underwood Realty
| Yost & Little Realty

*We make great neighbors.*

## ARBITRATION DISCLOSURE AND RESIDENTIAL REAL PROPERTY ARBITRATION AGREEMENT

**Resolving Disputes – Arbitration Agreement:**

In this Arbitration Agreement, "Company" means Preferred Carolinas Realty, Inc. dba Berkshire Hathaway HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, and Berkshire Hathaway HomeServices Yost & Little Realty, its affiliates and parent company, and "I", "me", "my", "you" and "your" means the undersigned customer or customers, individually and jointly.

I understand that I am a valued customer of the Company and agree to contact the Company immediately, in writing or by telephone, if I have a problem with the real estate brokerage services or any of the other settlement services provided to me by the Company. The Company will use its best efforts to work with me to resolve any problems that I may have. If the Company and I cannot arrive at a mutually agreeable solution, I agree that any Dispute, claim or controversy between me and the Company shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This Arbitration Agreement and the arbitration proceeding shall be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is inapplicable, unenforceable, or invalid, the North Carolina Revised Uniform Arbitration Act shall govern this Arbitration Agreement and the arbitration proceeding.

**Disputes:**

The term "Dispute" shall include, without limitation, any claim, controversy, complaint or disagreement regarding any representations, acts or omissions by any person, party or entity that in any way arises out of or is related to the sale, purchase, financing, condition of any property or any other aspect of your real estate transaction, or that in any way arises out of any of the real estate brokerage services or other settlement services provided by the Company including, without limitation, allegations of concealment, misrepresentation, negligence, breach of fiduciary duty, fraud, constructive fraud, or other wrongful actions or omissions of any type. A Dispute includes any claim, controversy, complaint or disagreement of any kind, including those based on broken promises or contracts, closing charges, or tort (injury caused by negligent or intentional conduct). A Dispute includes any statutory, common law, or equitable claim. A Dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement. No Dispute may be joined in arbitration with a Dispute of any other person or arbitrated on a class action basis.

**Binding Arbitration:**

Binding arbitration is a means of having one or more independent third parties (arbitrators) resolve disputes without using the court system, judges or juries. Arbitration is often a more cost effective and efficient means of resolving disputes. If either the Company or I fail to submit to binding arbitration following a lawful demand, the party who fails to submit to arbitration shall bear the cost and expenses incurred by the party that demanded arbitration, except as otherwise provided with respect to claims filed in Small Claims Court as discussed below.

The American Arbitration Association (AAA) shall administer the arbitration, including the selection of arbitrators, pursuant to its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable. The arbitration shall be held in the county where the real property at issue is located. To find out how to initiate arbitration, I can contact AAA at:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Toll free number 877-495-4185
Fax number 877-304-8457

Website: www.adr.org

Email: casefiling@adr.org

**Miscellaneous:**

All parties to the arbitration (AAA, the arbitrator, the Company, and I) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA. The arbitration proceeding shall be conducted at a location determined by AAA in accordance with this Arbitration Agreement. All statutes of limitation and statutes of repose applicable to any Dispute shall apply to any arbitration proceeding between the Company and me. If a Dispute is properly filed in Small Claims Court and the Small Claims Court has jurisdiction to resolve the Dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the Dispute from Small Claims Court shall pay AAA's administrative fee and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

**Severability:**

If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforceability of the other terms of this Arbitration Agreement.

**Notice:**

WHEN YOU SIGN THIS ARBITRATION AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A RESPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER THE COMPANY NOR I SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

**CUSTOMER(S):**                                    **Preferred Carolinas Realty, Inc.**

_____ **DATE** _____        **BY:**_____

                                                   **ITS AUTHORIZED**
                                                   **REPRESENTATIVE**

_____ **DATE** _____        **DATE:** _____



**BERKSHIRE HATHAWAY**
HomeServices

Carolinas Realty
York Simpson Underwood Realty
Yost & Little Realty
Pinehurst Realty Group

*We make great neighbors.*

## ARBITRATION DISCLOSURE AND RESIDENTIAL REAL PROPERTY ARBITRATION AGREEMENT

**Resolving Disputes – Arbitration Agreement:**

In this Arbitration Agreement, "Company" means Preferred Carolinas Realty, Inc. dba Berkshire Hathaway HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, Berkshire Hathaway HomeServices Yost & Little Realty and Berkshire Hathaway HomeServices Pinehurst Realty Group, its affiliates and parent company, and "I", "me", "my", "you" and "your" means the undersigned customer or customers, individually and jointly.

I understand that I am a valued customer of the Company and agree to contact the Company immediately, in writing or by telephone, if I have a problem with the real estate brokerage services or any of the other settlement services provided to me by the Company. The Company will use its best efforts to work with me to resolve any problems that I may have. If the Company and I cannot arrive at a mutually agreeable solution, I agree that any Dispute, claim or controversy between me and the Company shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This Arbitration Agreement and the arbitration proceeding shall be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is inapplicable, unenforceable, or invalid, the North Carolina Revised Uniform Arbitration Act shall govern this Arbitration Agreement and the arbitration proceeding.

**Disputes:**

The term "Dispute" shall include, without limitation, any claim, controversy, complaint or disagreement regarding any representations, acts or omissions by any person, party or entity that in any way arises out of or is related to the sale, purchase, financing, condition of any property or any other aspect of your real estate transaction, or that in any way arises out of any of the real estate brokerage services or other settlement services provided by the Company including, without limitation, allegations of concealment, misrepresentation, negligence, breach of fiduciary duty, fraud, constructive fraud, or other wrongful actions or omissions of any type. A Dispute includes any claim, controversy, complaint or disagreement of any kind, including those based on broken promises or contracts, closing charges, or tort (injury caused by negligent or intentional conduct). A Dispute includes any statutory, common law, or equitable claim. A Dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement. No Dispute may be joined in arbitration with a Dispute of any other person or arbitrated on a class action basis.

**Binding Arbitration:**

Binding arbitration is a means of having one or more independent third parties (arbitrators) resolve disputes without using the court system, judges or juries. Arbitration is often a more cost effective and efficient means of resolving disputes. If either the Company or I fail to submit to binding arbitration following a lawful demand, the party who fails to submit to arbitration shall bear the cost and expenses incurred by the party that demanded arbitration, except as otherwise provided with respect to claims filed in Small Claims Court as discussed below.

The American Arbitration Association (AAA) shall administer the arbitration, including the selection of arbitrators, pursuant to its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable. The arbitration shall be held in the county where the real property at issue is located. To find out how to initiate arbitration, I can contact AAA at:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Website: www.adr.org

**Miscellaneous:**

All parties to the arbitration (AAA, the arbitrator, the Company, and I) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA. The arbitration proceeding shall be conducted at a location determined by AAA in accordance with this Arbitration Agreement. All statutes of limitation and statutes of repose applicable to any Dispute shall apply to any arbitration proceeding between the Company and me. If a Dispute is properly filed in Small Claims Court and the Small Claims Court has jurisdiction to resolve the Dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the Dispute from Small Claims Court shall pay AAA's administrative fee and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

**Severability:**

If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforceability of the other terms of this Arbitration Agreement.

**Notice:**

WHEN YOU SIGN THIS ARBITRATION AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A RESPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER THE COMPANY NOR I SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

**CUSTOMER(S):**                                        **Preferred Carolinas Realty, Inc.**

_____ **DATE** _____       **BY:**_____

                                                       **ITS AUTHORIZED**
                                                       **REPRESENTATIVE**

_____ **DATE** _____       **DATE:** _____