UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COHL, STEVE DARNELL, VALERIE NAGER, JACK RAMEY, SAWBILL STRATEGIC, INC., DANIEL UMPA and JANE RUH, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., HSF AFFILIATES, LLC, BHH AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX HOLDINGS, INC. and KELLER WILLIAMS REALTY, INC. <br><br> Defendants. | Case No: 1:19-cv-01610 <br><br> Judge Andrea Wood <br> Magistrate Judge M. David Weisman <br><br> **EXHIBIT 12** |

### DECLARATION OF J. NICHOLAS D'AMBROSIA
### ("L&F DECL.")

I, J. Nicholas D'Ambrosia, under the penalties for perjury, declare:

1. I am an adult over the age of 21, competent to make this Declaration.

2. I have personal knowledge of the facts stated in this Declaration.

3. I am the Principal Broker and Broker of Record of Long & Foster Real Estate, Inc. ("Long & Foster"). I am familiar with Long & Foster's business generally and its practices with respect to listing agreements.

4. Long & Foster's parent company was acquired by HomeServices of America, Inc. in September 2017. Before September 2017, Long & Foster was not affiliated with the

HomeServices of America family of companies, and was not affiliated with any other Corporate Defendant in this case.

5. Long & Foster entered a listing agreement with Daniel Umpa. A true and accurate copy of Daniel Umpa's listing agreement with Long & Foster is attached as L&F Declaration Exhibit A.

6. Long & Foster provides real estate brokerage services through independent contractor agents. Those independent agents, among other things, assist homeowners in selling their homes and list customers' homes for sale on a "Covered MLS" at issue in this case, including, but not necessarily limited to, the Bright MLS. *See* Doc. 84 at 11.

7. Long & Foster requires that its independent contractor agents execute listing agreements with homeowners, which articulate the terms of the agreement between Long & Foster and the homeowner. These listing agreements also set the commission rate at which the broker is compensated. Since at least July 2019, Long & Foster has provided its independent contractor agents with a form addendum to each listing agreement that has included a broad, binding arbitration provision.

8. Since at least July 2019, Long & Foster has instructed its independent contractor agents to request that homeowners execute Long & Foster's then relevant form addendum.

9. Accordingly, every Long & Foster listing agreement executed in or after July 2019 should be accompanied by an executed addendum requiring arbitration of disputes between Long & Foster and the homeowner.

10. A true and accurate copy of Long & Foster's form addendum to listing agreements for July 2019 to the present is attached as L&F Declaration Exhibit B.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 11-17-2020

Signed: *[signature]*

Printed: JOHN NICHOLAS D'AMBROSIO

  

## Listing Agreement for Improved Real Property and Co-operatives
*(For use in Montgomery County and Washington, DC – Attach Jurisdictional Addendum and Required Disclosures)*

Property Address: **1324 Euclid St NW #402**   Unit: **402**
Subdivision: **Columbia Heights**
Project: _____
City: **Washington**   State: **DC**   Zip: **20009**
Known as Lot (s) **2036**   Block/Square: **2866**   Tax ID# **2866//2036**
Parking Space(s) # _____   Storage Unit(s) # _____

**1. SELLER:** (List all Sellers):

**Daniel Umpa**            **Lisa Umpa**

Mailing address, if different: _____
Office Telephone: _____ / _____   Office/Home Fax: _____
Home Telephone: _____ / _____   Cell Phone(s) _____ / _____
Email Addresses: _____ / _____

**2. BROKER: Long & Foster Real Estate, Inc.**   MRIS BROKER CODE: **LNG**   OFFICE ID: **194**

Office Address: **7700 Old Georgetown Rd**   **Bethesda, MD 20814**
Office Telephone: **(240) 497-1700**   Office Fax: _____
Listing Agent: **Stephen Withrow**   License #: **AB98377344**

Cell Phone: **(301) 404-0410**   Direct Line: _____   Email: **steve.withrow@longandfoster.com**

**3. PURPOSE:** This Agreement ("Agreement") between Seller and Broker grants to Broker the exclusive right to sell, exchange or convey the herein described property ("Property"), together with all improvements, rights and easements thereon and under the terms and conditions set forth herein.

**4. LISTING PRICE:** The Property is offered for sale at a listing price ("Listing Price") of $ **470,000**
or such other price as is later agreed upon by Seller in writing.

**5. LISTING PERIOD :** This Agreement commences when signed and expires at 11:59 pm on **03/15/18**
("Listing Period"). If a Sales Contract is ratified before this Agreement expires, providing for settlement beyond the Listing Period, the terms hereof shall be extended automatically until final disposition of the Sales Contract.

**6. ENTRY INTO MRIS :** Seller may elect not to have the Property listing entered into MRIS Seller hereby acknowledges that by electing not to enter the Property listing into MRIS: 1) real estate licensees from other companies and their buyer clients who have access to MRIS may not be aware that Seller's Property is for sale and the terms and conditions under which Seller is marketing the Property; 2) Seller's Property will not be included in the MRIS download to various real estate internet sites that are used by the public to search for property listings; and 3) any reduction in the exposure of the Property may negatively impact the sales price.

_____ / _____   Seller does not authorize their Property to be entered into MRIS.

©2016, The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is the property of The Greater Capital Area Association of REALTORS®, Inc. and is for use by REALTOR® members only.
Previous editions of this form should be destroyed.

____/____ Seller hereby authorizes the use of the "Coming Soon" status in MRIS prior to property becoming Active in MRIS in accordance with MRIS rules and policies. Seller and Listing Broker understand the property cannot be shown while in the "Coming Son" status of MRIS. The listing may remain in "Coming Soon" status for up to 21 days.

____/____ Seller authorizes Property to be entered into Active status in MRIS on _____ . All listings shall be available for showing immediately upon their entry into Active status in MRIS.

*JPW/JPV* Seller hereby instructs Listing Broker to:
Withhold Property from MRIS + Market Until directed by Seller

### 7. BROKER'S FEE:
**A. Fee:** Seller agrees to pay to Broker __4.5__ % of the sale price or $ _____ (strike one) and an additional flat fee in the amount of $ __345.00__ as Broker's Fee ("Broker's Fee"). The amount of Broker's Fee is stated in this Contract and is not prescribed by law or established by any membership organization with which the Broker is affiliated. Seller acknowledges that Broker's Fee shall be earned and payable in the event that:
1) Seller enters into a sales contract during the listing period, with any buyer procured by seller, listing broker, or his sales associates, or other brokers or their sales associates, or any other buyer, provided the buyer performs and settles on said contract.
2) Further, such Broker's Fee shall be paid if the Property is sold, exchanged, conveyed, or otherwise transferred within __30__ days after the expiration of the Listing Period or termination of this Agreement (the "Protection Period") to anyone to whom the Property has been shown by Broker or anyone else, including the Seller, during the Listing Period, unless a valid listing agreement is entered into during the term of said Protection Period with another licensed real estate broker.

**B. Authority to Cooperate With and Compensate Other Brokers:** Seller authorizes Broker to cooperate with other brokers as subagents of Broker ("Subagents") and/or as Brokers retained by prospective buyers to represent buyer's interests ("Buyer Agents and Dual Agents"). Broker shall pay to Subagent's Broker, who has earned and is entitled to share in the Broker's Fee, __2.5__ % of the Sales Price. Broker shall pay to any Buyer Agent's Broker who has earned and is entitled to share in the Broker's Fee __2.5__ % of the Sales Price.

**C. Payment of Broker's Fee:** Payment of Broker's Fee is due at Settlement, unless Seller, after contract acceptance, fails to perform or is otherwise in default of the sales contract, or executes a release of the sales contract to which the Broker is not a party. In such case, the Broker's entire fee is due no later than the agreed settlement date.

**D. Forfeiture of Deposit:** If the earnest money deposit ("Deposit") is forfeited, or if there is an award of damages by a court or a compromise agreement between the Seller and Purchaser, the Broker may accept and the Seller agrees to pay the Broker one-half of the Deposit in lieu of a Broker's Fee (provided Broker's share of any forfeited Deposit will not exceed the amount which would have otherwise been due at Settlement).

**E. Default by Buyer:** If Seller enters into a contract with a Buyer during the original listing period, and Buyer subsequently defaults, then the original listing period is extended by the number of days property was under contract.

**F. Attorney's Fees:** If Broker prevails in any action brought to obtain payment of the Broker's Fee, Broker shall also be entitled to recover in such action Broker's reasonable attorney's fees and court costs.

### 8. AGENCY:
The State of Maryland and Washington, DC have each adopted specific laws governing the disclosure of agency relationships and dual agency (i.e., the situation where the listing and selling agents are associated with the same broker). Seller hereby gives consent for Broker's non-assigned agent, who holds their home open, to later represent a Buyer in purchasing Seller's property or another property. All applicable jurisdictional Agency disclosure forms have been made available to Seller who acknowledges receipt of those checked below:

| Maryland | Washington, DC |
|---|---|
| ☐ Understanding Whom Real Estate Agents Represent | ☑ Consent for Dual Representation and Designated Representation in the District of Columbia |
| ☐ Consent for Dual Agency | |
| ☐ Dual Agency within a Team | |

### 9. AUTHORIZATIONS:
**A. Sign:** Seller authorizes Broker to install a "For Sale" sign on the Property, in accordance with applicable zoning ordinances and community association regulations.

**B. Key and KeyBox:**
1) Use: Seller authorizes Broker to allow key-entry showings and the installation of a lock box ("KeyBox") and the delivery of door access keys for use by the Greater Capital Area Association of REALTORS®, Inc. ("GCAAR") members and members of current REALTOR® Associations Signatory to the ELECTRONIC KEYBOX SERVICE

©2016, The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is the property of The Greater Capital Area Association of REALTORS®, Inc. and is for use by REALTOR® members only.
Previous editions of this form should be destroyed.

AGREEMENT ("Authorized Users") to access the Property and to accompany prospective buyers, inspectors, appraisers, exterminators and other parties necessary for showings and inspecting the Property. Affiliate or non-affiliate members (i.e., inspectors, appraisers, estimators) may have access for their business purposes if permission for limited access showing code is granted below.

2) Limited Access Showing Codes: Seller hereby: (Seller to initial): _____/_____ **Authorizes OR**
_____/_____ **Does Not Authorize** use of a one day showing code. It is understood by Seller that there is a possibility that a person may use the access code in an unauthorized manner. Therefore, caution should be used with these codes as such codes will allow certain individuals to access the property without an electronic record as to their identity. The seller recognizes that it is often desirable and advantageous to Seller and may expedite the sale of their Property to have such access available.

3) Leased Property: If the Property is under lease during the Listing Period, Seller will furnish Broker with a written authorization, signed by all lessees, authorizing the use of a KeyBox and/or keys.

4) Private Insurance: Seller is advised to take all precautions for safekeeping of valuables and to maintain appropriate insurance through Seller's own insurance company.

5) Liability: Seller agrees that he, his heirs and assigns shall indemnify, save and hold harmless said Broker, his agents, and his affiliated brokers, salespeople, cooperating brokers, subagents, affiliate members with key(s) and with KeyBox access and other individuals who have use through a one day access code and the Greater Capital Area Association of REALTORS®, Inc., from any and all claims, loss or liability arising from the use of said key(s) or Key Boxes, including Broker's negligence, breach of contract or any wrongdoing exclusive of gross negligence or willful misconduct. Seller assumes all risk of any loss, damage and injury, except those caused by gross negligence or willful misconduct of any party.

## 10. MARKETING/VIRTUAL OFFICE WEBSITES ("VOW"):

**Internet Marketing Options:** Certain features may be displayed on the websites of multiple listing service(s) ("MLS"), participants, including:

Seller to Initial    YES/NO:

☑ ☐ 1) Seller authorizes the listed Property to be displayed on the Internet.
If Seller has selected "No" for this Option, consumers who conduct searches for listings on the Internet will not see information about the listed property in response to their searches.
Initial here _____/_____

IF "No" was selected for Option 1, skip Options 2-4. If "Yes" was selected for Option 1, continue to Options 2-4.

☑ ☐ 2) Seller authorizes the listing address (including house/unit numbers and street name) to be displayed on the Internet.
If Seller has selected "No" for this Option, consumers who conduct searches for listings on the Internet will not see this particular information about the listed Property in response to their searches.
Initial here _____/_____

☑ ☐ 3) Seller authorizes the display of an automated estimate of the market value of the property (or a hyperlink to such estimate) on MLS participants' websites.

☑ ☐ 4) Seller authorizes the display of unedited comments or reviews of the property (or display a hyperlink to such comments or reviews) on MLS participants' websites. (Aka the "Blogging Feature")

During the term of this agreement, Seller may, by written request to Broker, authorize Broker to enable or disable use of either feature as described above. Broker agrees to promptly transmit the request to the MLS. Broker cannot control if unauthorized or disabled features are displayed by others on the Internet. Seller understands and agrees that public websites determine their own content and use of data, and therefore Broker has no control over public websites and no obligation to remove any of the above content from public websites at any time. Broker is further authorized to and shall market the Property through various means including, but not limited to, entering the Property into the applicable MLS, installing a sign, photographing the interior and exterior of the Property and installing a lock box. Seller authorizes Broker to market Property, including use of address and

©2016, The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is the property of The Greater Capital Area Association of REALTORS®, Inc. and is for use by REALTOR® members only.
Previous editions of this form should be destroyed.

interior and exterior photographs, in media which may include, but not be limited to publications at Broker's discretion. Seller acknowledges that Broker is bound by the bylaws, policies, procedures, rules and regulations governing MRIS and the Key Box system. Seller hereby authorizes Broker to report any contract of sale with sales price and terms of sale to MRIS for dissemination, in accordance with MRIS rules and policies.

**11. INCLUSIONS/EXCLUSIONS:** Unless otherwise negotiated in the sales contract, the sales price shall include those items of personal property as described in the attached INCLUSIONS/EXCLUSIONS DISCLOSURE. It is recommended that this Disclosure be left at the Property or placed online for prospective buyers.

**12. PROPERTY CONDITION AND DISCLOSURE OF MATERIAL FACTS:**
    A. **Legal Requirement:** Seller acknowledges that the Broker has informed Seller of Seller's obligation to provide a property condition disclosure to prospective buyers, as defined in applicable jurisdictional forms attached hereto.
    B. **Indemnify:** Seller agrees to indemnify, save, and hold Broker and his sales associates harmless from all claims, complaints, disputes, litigation, judgments and attorney's fees arising from any incorrect information supplied by Seller or from Seller's failure to disclose any material facts.
    C. **Hazardous Materials and Conditions:** There are environmental conditions and hazardous materials that could affect the Property and sale. Broker does not have the technical expertise to advise Seller of their presence. Seller may employ an expert to inspect for same. In the event Seller conducts such tests and makes reports available to Broker, Seller authorizes Broker to make said reports available to prospective buyers.
    D. **Amend as Applicable:** Seller agrees to amend in writing the applicable Disclosures, if any material change affecting the Property occurs during the Listing Period.

**13. LEAD PAINT REGULATIONS:** A SELLER WHO FAILS TO GIVE THE REQUIRED LEAD-BASED PAINT DISCLOSURE FORM AND EPA PAMPHLET ENTITLED "PROTECT YOUR FAMILY FROM LEAD IN YOUR HOME" MAY BE LIABLE UNDER THE ACT FOR THREE TIMES THE AMOUNT OF DAMAGES AND MAY BE SUBJECT TO BOTH CIVIL AND CRIMINAL PENALTIES. Seller and any agent involved in the transaction are required to retain a copy of the completed Federal Lead-Based Paint Disclosure Form for a period of three (3) years following the date of settlement.

**14. RENOVATION, REPAIR AND PAINTING OF PROPERTY:** In accordance with the Lead Renovation, Repair and Painting Rule ("RRP") as adopted by the Environmental Protection Agency ("the EPA"), effective April 22, 2010, if the improvements on the Property were built before 1978, contractor(s) engaged by Seller to renovate, repair or paint the Property must be certified by the EPA where such work will disturb more than six square feet of lead-based paint per room for interior projects; more than 20 square feet of lead-based paint for any exterior project; or includes window replacement or demolition ("Covered Work"). Before and during any Covered Work project, contractor(s) must comply with all requirements of the RRP.

A Seller who personally performs any Covered Work on a rental property is required to be certified by the EPA prior to performing such Covered Work. No certification is required for a Seller who personally performs Covered Work on a Seller's principal residence. However, Seller has the ultimate responsibility for the safety of Seller's family or children while performing such Covered Work. For detailed information regarding the RRP, Seller should visit http://www2.epa.gov/lead/renovation-repair-and-painting-program.

**15. WOOD-DESTROYING INSECTS:** Seller agrees to provide access to the Property for an inspection to determine evidence of of infestation by termites and/or other wood-destroying insects. This inspection is in addition to the pre-settlement inspection and other inspections as agreed to in the sales contract. The inspection shall include the house, garage or other outbuildings and any fences abutting the house, as may be required by the sales contract. If infestation or damage exists, then prior to or at settlement, Seller agrees, at Seller's expense, to treat infestation and repair damage in accordance with the terms of the contract of sale or lender requirements. In the event Seller accepts a contract that includes VA financing, Seller agrees to reimburse Buyer for the reasonable cost of said inspection.

**16 ENCUMBRANCES/LIENS/OTHER TITLE MATTERS:** Seller represents that no other person or entity owns any portion of the Property or has any ownership rights to the Property. Seller has the capacity to convey clear title and that the Property is not subject to any right to purchase, lease or acquisition by virtue of an existing option, right of first refusal or other agreement. Seller agrees not to negotiate new leases, or extend existing leases, during the Listing Period without written notification to Broker.

Seller warrants clear title and agrees to provide sufficient cash to discharge at settlement all liens and encumbrances including, but not limited to, existing deeds of trust, home equity loans, mechanic's liens, deferred transportation-related facility charges/taxes, tax judgment liens, property taxes, Coop, Condo, HOA fees or any specific unit assessments. Seller shall comply with all orders, requirements, or notices of violations of any county or local authority, condominium unit owners' association, homeowner's or property owners' association or actions in any court on account thereof, against or

affecting the Property on the date of settlement. Title is to be good and marketable, and insurable by a licensed title insurance company with no additional risk premium. In case action is required to perfect the title, such action must be taken promptly by the Seller at the Seller's expense. Seller shall convey the Property by special warranty deed. Seller shall sign such affidavits, lien waivers, tax certifications and other documents as may be required by the lender, title insurance company, Settlement Agent, or government authority, and authorizes the Settlement Agent to obtain pay-off or assumption information from any existing lender(s) and/or lien holder(s).

Seller discloses to Broker that the following are the only existing liens/encumbrances against the Property and existing matters that could affect the title to the Property, and further agrees to disclose any new liens or matters which arise during the Listing Period:

**Yes/No:**

☐ / ☑ A). Is the Property owned FREE AND CLEAR of any liens/loans or equity lines of credit? Please note that a lien may still exist if there is an equity line of credit even if the seller has no current balance on the equity line. **If Yes, go to F.**

☑ / ☐ B). Is the Property security for a first mortgage or Deed of Trust loan? If yes, held by (Lender or Servicer's Name): _____ with an approximate balance of $ _____

☐ / ☑ C). Is the Property security for a second mortgage or Deed of Trust loan? If yes, held by (Lender or Servicer's Name): _____ with an approximate balance of $ _____

☐ / ☑ D). Is the Property security for a line of credit or home equity line of credit? If yes, held by (Lender or Servicer's Name): _____ with an approximate balance of $ _____

☐ / ☑ E). Is the Seller in default on any of the loans identified in numbered items B, C, and D above for which the Seller has received any notices of such default(s), notice of threatened foreclosure or notice of the actual filing of foreclosure?

☐ / ☑ F). Are there any liens filed or secured against the Property for Federal, State or local income taxes; unpaid real property taxes; or unpaid Co-operative, Condominium or Homeowners' Association fees/assessments; or utility liens?

☐ / ☑ G). Are there any judgments against Seller (including each Seller for jointly held property) or does the Seller have any knowledge of any matter that might result in a judgment that may potentially affect the property?

☐ / ☑ H). Has the Seller filed for bankruptcy protection under United States law, or is the Seller contemplating doing so during the term of this Listing Agreement? Seller expressly authorizes Broker to contact bankruptcy attorney to determine the impact of such filing, including but not limited to if Seller has the authority to enter into this Listing Agreement, if this Listing Agreement must be approved by the Bankruptcy Court, and if any future sales contract requires Bankruptcy Court approval. Seller must immediately notify Broker if Seller files during the term of this Listing Agreement.

☐ / ☑ I). Is this Property subject to an estate?

☐ / ☑ J). Is there a deceased co-owner? If yes, a death certificate will be required at settlement.

☐ / ☑ K). Is there a pending divorce proceeding? If yes, please attach a copy of any Separation Agreement.

☐ / ☑ L). Are there any other legal proceedings pending that could result in a judgment against the Seller or affect the property? If yes, please list below:

☐ / ☑ M). Could this transaction result in a Short Sale? If yes, the GCAAR **Short Sale Addendum to Listing Contract must be attached.**

**During the term of the Listing Agreement, should any change occur with respect to any of the answers to items A-M above, Seller shall IMMEDIATELY give written Notice to Broker and Listing Agent of such change(s).**

**17. OWNERSHIP WITH ASSESSMENTS:** ☑ Condominium OR ☐ Co-operative OR ☐ Homeowners' Association (HOA)

The following required Seller Disclosure and Resale Addendum is attached:

☑ Condominium Seller Disclosure and Resale Addendum (GCAAR DC form #921/MC form #922)
☐ Co-operative Seller Disclosure and Resale Addendum (GCAAR form # 924)
☐ Homeowners Association (HOA) Seller Disclosure and Resale Addendum (GCAAR form #923/MC form #904)

©2016, The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is the property of The Greater Capital Area Association of REALTORS®, Inc. and is for use by REALTOR® members only.
Previous editions of this form should be destroyed.

**18. SMOKE DETECTOR REQUIREMENTS:** Seller shall have smoke detectors installed and operational in accordance with the requirements of the jurisdiction in which the Property is located prior to settlement of any sale.

**19. FAIR HOUSING LAWS:** In compliance with federal fair housing regulations, the Property shall be made available to all persons without regard to race, color, religion, national origin, sex, physical or mental handicaps or familial status. Additional protected classes exist for the District of Columbia, the State of Maryland and some local jurisdictions.

**20. CLOSING COSTS:** Seller acknowledges that Buyers have the right to select the title insurance company, settlement or escrow company or title attorney. Seller agrees to pay settlement costs including, but not limited to, the release of liens or encumbrances against the property, deed preparation, other legal document preparation, courier/delivery charges, reasonable settlement fees, and, in addition, transfer and recordation taxes and any other costs agreed upon in the sales contract.

**21. FEDERAL TAX REPORTING/WITHHOLDING:**

   A. **1099 Reporting:** Section 1445 of the Internal Revenue Code may require the settlement agent to report the gross sales price, Seller's federal tax identification number and other required information to the IRS. Seller will provide to the settlement agent such information at the time of settlement.

   B. **Foreign Investment Real Property Tax Act Withholding ("FIRPTA"):** If Seller is a foreign person for purposes of U.S. Income Taxation, IRS requires that a percentage of the sales price (currently 10%) be withheld from Seller's proceeds at the time of settlement, which funds are to be applied towards the payment of any capital gains tax that might be due. A foreign person includes, but is not limited to: non-resident aliens, foreign corporations, foreign partnerships, foreign trusts or foreign estates ("Foreign Person"). Sellers are advised to seek legal and/or financial advice concerning these matters.

   Seller represents that Seller ☐ is OR ☑ is not a Foreign Person for purposes of U.S. income taxation. If Seller is not a Foreign Person, Seller shall execute an affidavit to this effect at the time of Settlement.

**22. GENERAL PROVISIONS:**

   A. **Laws and Regulations:** Seller acknowledges that Broker must comply with federal, state and local laws and regulations as well as real estate licensing laws and regulations of either the District of Columbia or the State of Maryland.

   B. **Competing Properties:** Seller understands that Broker may have or obtain listings of other similar properties and that potential buyers may consider, make offers on, or purchase through Broker properties that are similar to Seller's property. Seller consents to Broker's representation of Sellers and Buyers of other similar properties before, during and after the expiration of this Agreement.

   C. **Subsequent Offers:** Upon receipt by Broker of a ratified contract of sale pursuant to this Listing Agreement, Broker shall have no further obligation hereunder to procure any additional purchase offers.

   D. **Delivery:** Delivery or Delivered means hand carried, sent by overnight delivery service, sent by wired or electronic medium which produces a tangible record of the transmission (such as telegram, mailgram, telecopier or "Fax", email which includes an attachment with an actual copy of the executed instruments being transmitted, or U.S. Postal mailing.) In the event of overnight delivery service, Delivery will be deemed to have been made on the next business day following the sending, unless earlier receipt is acknowledged in writing. In the event of U.S. Postal mailing, Delivery will be deemed to have been made on the third business day following the mailing, unless earlier receipt is acknowledged in writing.

   E. **Notice:** This agreement shall be deemed enforceable when it and all addenda and any modifications thereto have been signed, initialed where required by Seller and Broker (or Supervising Manager), and Delivered to the other party.

   F. **Paragraph Headings:** The Paragraph headings in this Agreement are for reference and convenience only, and do not define or limit the intent, rights or obligations of the parties.

   G. **Definitions:** The singular shall include the plural, the plural the singular, and the use of either gender shall include the other gender.

   H. **"Buyer"** means "purchaser" and vice versa.

**23. AUTHORITY TO DISCLOSE EXISTING OFFERS:** Seller is advised that prospective buyers or cooperating brokers may inquire of Broker or Broker's agents the existence of other offers for the purchase of the Property. Disclosure of other offers could result in the buyer making the highest and best offer as promptly as possible or such disclosure could result in the interested buyer electing not to make an offer. Seller(s) hereby ☑ **Authorizes OR** ☐ **Does Not Authorize** the Broker to disclose the existence of other offers on the Property in response to inquiries from buyers or cooperating brokers. Such disclosure may include the source of offers (the listing licensee, another licensee in the listing firm, or a cooperating broker).

### 24. HOMEOWNER WARRANTY:

Seller ☐ does or ☑ does not elect to purchase a homeowner warranty, which may be in effect during the Listing Period and may transfer to the buyer upon settlement. Seller should review the scope of coverage, exclusions and limitations.

Cost not to exceed $ _____ Warranty provider to be _____

### 25. BINDING AGREEMENT:

A. This Agreement contains the entire legally binding agreement between Seller and Broker and cannot be changed except with written consent of all parties. Any prior discussion between the parties concerning this subject matter is superseded by this Agreement. B. This Agreement shall survive execution and delivery of the deed and shall not be merged therein. If this Agreement is signed by more than one person, it shall constitute the joint and several obligations of each party. Further, this Agreement is binding upon the parties, their personal representatives, successors, heirs and assigns.

C. This Agreement shall be interpreted and construed in accordance with the laws of the jurisdiction where the Property is located.

D. Seller hereby acknowledges that he has read and understands this Agreement, understands he may seek legal advice prior to signing it, and acknowledges that all information provided to Broker by Seller is true and correct to the best of Seller's knowledge. Seller hereby acknowledges receipt of a copy of this legally binding agreement and agrees to be bound by its terms and conditions.

### 26. TERMINATION:

A. **D.C. Properties:** This Agreement may be terminated prior to the end of the Listing Period only by mutual written agreement of the Parties.

B. **Montgomery County Properties:** See required Jurisdictional Addendum to the Listing Agreement.

### 27. ADDITIONAL TERMS:

☐ Please check if sole owner

_____ 15 Aug 2017   Company: **Long & Foster Real Estate, Inc.**
Seller                                Date

_____ 15 Aug 2017   By: _Dottie Crago Faust_ 81
Seller                                Date        Broker/Supervising Manager (Signature)   Date

_____                    Dottie Crago Faust
Seller                                Date  (Broker/Supervising Manager (Print Name)

                                                                                    8/15/17
                                           Listing Agent                             Date

**NOTE:** If any party is signing for another as a fiduciary, attach appropriate Power of Attorney, Letter of Administration, or other authorization as applicable. An original document will be required for settlement.

©2016, The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is the property of The Greater Capital Area Association of REALTORS®, Inc. and is for use by REALTOR® members only.
Previous editions of this form should be destroyed.



## Mutual Agreement to Arbitrate Certain Disputes and to Waive Class Actions

The following provisions are hereby incorporated into the Listing Contract or Buyer Agency Contract ("Contract") between Long & Foster Real Estate, Inc. ("Broker/Licensee") and you ("You" or "Consumer") (together, the "Parties").

### Agreement to Arbitrate and Claims Included and Excluded from Arbitration:

The Parties hereby mutually agree that, other than Excluded Claims, any and all claims, disputes or controversies between them that in any way arise from or relate to (i) the Contract, (ii) the real estate transaction relating to the Contract (the "Transaction"); and/or (iii) the services, advertising, disclosures, practices and procedures related to the Contract or the Transaction (collectively, a "Claim") shall be submitted to arbitration. Arbitration shall be in lieu of commencing a lawsuit. BY AGREEING TO ARBITRATION, THE PARTIES EACH GIVE UP THEIR RIGHTS TO TRIAL BY ANY STATE OR FEDERAL COURT AND BY JURY, AND/OR TO FILING A COMPLAINT WITH ANY GOVERMENTAL OR ADMINISTRATIVE AGENCY. The arbitration shall be administered by an arbitrator agreed to by the Parties or, in the absence of agreement, by the American Arbitration Association ("AAA"). "Excluded Claim" means the following:

**(A)** any dispute about the validity, enforceability, coverage, or scope of this Agreement to Arbitrate Certain Disputes and to Waive Class Actions or any part thereof;

**(B)** any individual dispute that Consumer brings against Broker/Licensee in small claims court or Consumer's state's equivalent court, so long as that claim is not transferred, removed or appealed to a different court (in which event such dispute becomes a "Claim" and Broker/ Licensee then has the right to demand arbitration); and

**(C)** any dispute arising out of or relating to: (i) the presence of a material defect in the Property; (ii) alleged negligence, gross negligence, or breach of contract; or (iii) alleged misrepresentation, conspiracy, or breach of fiduciary duty, arising out of the facts which form the basis for any Excluded Claim described in the foregoing (C)(i-ii).

Excluded Claims do not include any arising under the Real Estate Settlement Procedures Act or any consumer fraud or consumer financial protection laws. Any Excluded Claim is for a court and not an arbitrator to decide.

### Location and Costs of Arbitration:

Any in-person arbitration hearing must be at a venue reasonably convenient to Consumer. Broker/Licensee will pay any and all fees of AAA and/or the arbitrator, if and to the extent Consumer prevails in the arbitration or if Consumer makes a written request for Broker/Licensee to pay such fees and Consumer acts reasonably and in good faith. If Consumer brings a Claim against Broker/Licensee in arbitration or Broker/Licensee elects to require arbitration of a Claim Consumer brings, then Broker/Licensee will pay Consumer's reasonable attorneys' and experts' fees if and to the extent Consumer prevails. Also, Broker/Licensee will bear any such fees if applicable law so requires. Regardless of the outcome of the arbitration, Broker/Licensee will not seek from Consumer reimbursement of any of the fees of the Administrator and arbitrator, or attorneys' fees and expert costs, unless Broker/Licensee is permitted to recover such fees from Consumer under the Contract and applicable law.

### Governing Law:

The Contract involves interstate commerce and is governed by the Federal Arbitration Act ("FAA") and not by any state arbitration law. The arbitrator must apply applicable substantive law consistent with the FAA and applicable statutes of limitations and claims of privilege recognized at law. The arbitrator may award any remedy provided by the substantive law that would apply if the action were pending in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts) and individual injunctive, equitable, and declaratory relief. At the timely request of either party, the arbitrator must provide a brief written explanation of the basis for the award.

## Arbitration Result and Right of Appeal:

Judgment upon the arbitrator's award may be entered by any court having jurisdiction. The arbitrator's decision is final and binding, except for any right of appeal provided by the FAA.

## Prohibition against Certain Proceedings:

FOR CLAIMS SUBJECT TO ARBITRATION: **(1) CLASS ACTION WAIVER**. BOTH CONSUMER AND BROKER/LICENSEE HEREBY EACH UNCONDITIONALLY WAIVE ANY RIGHT TO PARTICIPATE IN A CLASS OR COLLECTIVE ACTION IN COURT OR IN A CLASS-WIDE ARBITRATION, EITHER AS A PLAINTIFF, CLASS REPRESENTATIVE, OR CLASS MEMBER, AND HEREBY UNCONDITOINALLY AGREE THAT ANY CLAIM WILL BE ADJUDICATED ON AN INDIVIDUAL BASIS ONLY; **(2)** NEITHER CONSUMER NOR BROKER/LICENSEE MAY ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; **(3)** CLAIMS BROUGHT BY OR AGAINST CONSUMER OR BROKER/LICENSEE MAY NOT BE JOINED OR CONSOLIDATED WITH CLAIMS BROUGHT BY OR AGAINST ANY OTHER PERSON (OTHER THAN NONSIGNATORY BROKER/LICENSEE AFFILIATES, AS SET FORTH BELOW); AND **(4)** THE ARBITRATOR SHALL HAVE NO POWER OR AUTHORITY TO CONDUCT A CLASS-WIDE ARBITRATION, PRIVATE ATTORNEY GENERAL ARBITRATION, OR MULTIPLE-PARTY ARBITRATION. THIS SUBSECTION DOES NOT APPLY TO ANY LAWSUIT OR ADMINISTRATIVE PROCEEDING FILED AGAINST BROKER/LICENSEE BY A STATE OR FEDERAL GOVERNMENT AGENCY EVEN WHEN SUCH AGENCY IS SEEKING RELIEF ON BEHALF OF A CLASS OF CONSUMERS, INCLUDING CONSUMER. THIS MEANS THAT BROKER/LICENSEE WILL NOT HAVE THE RIGHT TO COMPEL ARBITRATION OF A CLAIM BROUGHT BY SUCH AN AGENCY.

## Non-Signatory Broker/Licensee Affiliates:

Non-signatory parent or other affiliated companies of Broker/Licensee shall have the benefit of electing to utilize this Agreement to Arbitrate Certain Disputes and to Waive Class Actions to the extent that a Claim is asserted against them (*i.e.*, a Claim that arises from the Contract, the Transaction, and/or the services, advertising, disclosures, practices and procedures related to the Contract or the Transaction).

## Severability:

If any portion of the aforementioned, other than the Class Action Waiver (provision (1) under Prohibition against Certain Proceedings), is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. If a determination is made that the Class Action Waiver is unenforceable, only this sentence of the Dispute Resolution Provision will remain in force and the remaining provisions shall be null and void, provided that the determination concerning the Class Action Waiver shall be subject to appeal.

_____   _____
Buyer                              Date    Seller                             Date

_____   _____
Buyer                              Date    Seller                             Date