IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MOEHRL, et al., <br> on behalf of themselves and all others <br> similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE NATIONAL ASSOCIATION OF <br> REALTORS, et al., <br><br> Defendants. | No. 19-cv-01610 <br><br> Judge Andrea R. Wood |

**ORDER**

Defendants HomeServices of America, Inc., HSF Affiliates, LLC, The Long & Foster Companies, Inc., and BHH Affiliates, LLC's motion to strike the class definition and require its amendment to excise arbitrating plaintiffs [205] is denied. See the accompanying Statement for details.

**STATEMENT**

Plaintiffs are seven individuals who sold their homes on a local database of properties for sale known as a Multiple Listing Service ("MLS"). They have brought the present antitrust class action alleging that the National Association of Realtors and multiple real estate brokerage firms violated § 1 of the Sherman Act, 15 U.S.C. § 1, by conspiring to implement and enforce anticompetitive restraints that cause home sellers like Plaintiffs and other members of the putative class to pay inflated commissions in connection with the sale of their homes. Specifically, Plaintiffs challenge Defendants' alleged agreement to allow home sellers to list their homes on an MLS only if they make a single, set offer of compensation to any broker who successfully finds a buyer for their home. Defendants HomeServices of America, Inc., HSF Affiliates, LLC, The Long & Foster Companies, Inc., and BHH Affiliates, LLC (collectively, "HomeServices Defendants") have now moved to strike certain class allegations and narrow the class definition to exclude putative class members who signed an arbitration agreement. (Dkt. No. 205.) For the reasons that follow, HomeServices Defendants' motion is denied.

**I.**

At the heart of the antitrust conspiracy alleged in Plaintiffs' Consolidated Class Action Complaint ("CAC") is one of the policies governing MLSs set forth in the Handbook on Multiple Listing Policies, which the local realtor associations that own the MLSs must agree to and enforce. (CAC ¶¶ 57–59, 94, 97, Dkt. No. 84.) In particular, Section 2-G-1 of the Handbook on

Multiple Listing Policies requires any real estate broker listing a property for sale on an MLS to make a blanket unilateral offer of compensation to any broker who finds a buyer for the home. (*Id.* ¶¶ 3, 51, 60.) As a result of Section 2-G-1, a homebuyer does not have to pay any compensation to their broker. (*Id.* ¶ 47, 79.) Rather, according to the listing agreement between the seller and the seller-broker, the seller will set the total commission to be paid to the seller-broker with the expectation that a portion of the commission will be paid to the buyer-broker. (*Id.* ¶¶ 46–48.) Thus, the buyer-broker receives their commission out of the total commission paid by the seller. (*Id.*)

According to Plaintiffs, by adopting and enforcing Section 2-G-1 and certain related rules, Defendants have engaged in a continuing contract, combination, or conspiracy to unreasonably restrain price competition among real estate brokers in violation of § 1 of the Sherman Act. (*Id.* ¶¶ 1, 156.) Furthermore, those anti-competitive restraints caused Plaintiffs to pay inflated commissions in connection with the sale of their homes. (*Id.*) Thus, Plaintiffs have brought the present action on behalf of themselves and a class of "all persons who paid a broker commission since March 6, 2015 in connection with the sale of residential real estate listed on one of" twenty MLSs covering various regions across the United States. (*Id.* ¶¶ 18, 142–43.)

Plaintiffs' CAC treats HomeServices Defendants and their wholly owned or controlled subsidiaries collectively as a single real estate brokerage firm that it describes as "the second largest residential real estate brokerage firm in the United States of America." (*Id.* ¶ 34.) In their motion to strike, HomeServices Defendants take issue with the CAC's treatment of their corporate structure. They describe Defendant HomeServices of America, Inc. as a holding company that owns at least twelve subsidiaries that operate brokerages that list homes on MLSs. Relevant here, HomeServices Defendants emphasize that eleven of those twelve subsidiaries used, for at least a portion of the class period, listing agreements containing a binding arbitration clause. Consequently, HomeServices Defendants claim that thousands of putative class members have agreed to arbitrate the antitrust claim brought in this action. None of the named Plaintiffs' listing agreements contained an arbitration clause. HomeServices Defendants therefore contend that no Plaintiff can adequately represent putative class members who agreed to arbitrate. Accordingly, HomeServices Defendants move to strike the class definition and amend it to exclude from the class those home sellers whose listing agreement contained an arbitration agreement.

## II.

Federal Rule of Civil Procedure 23(c)(1)(A) requires a federal district court to rule at "an early practicable time after a person sues or is sued as a class representative . . . whether to certify the action as a class action." "Although most often it will not be 'practicable' for the court to do that at the pleading stage, sometimes the complaint will make it clear that class certification is inappropriate." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (internal quotation marks and alterations omitted). Thus, a motion to strike class allegations may be appropriate where "the plaintiff's class allegations are facially and inherently deficient." *Id.* Where that is the case, a motion to strike class allegations may be ruled on before the plaintiff moves for class certification. *Valentine v. WideOpen West Finance, LLC*, 288 F.R.D. 407, 414 (N.D. Ill. 2012). However, if "the dispute concerning class certification is factual in nature and

discovery is needed to determine whether a class should be certified, a motion to strike the class allegations at the pleading stage is premature." *Buonomo*, 301 F.R.D. at 295.

A motion to strike class allegations is evaluated under Rule 23, rather than Rule 12(f). *Buonomo*, 301 F.R.D. at 295. Rule 23 requires a plaintiff to satisfy each of the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Valentine*, 288 F.R.D. at 414. Rule 23(a) performs a gate-keeping function for all class actions, and a plaintiff must satisfy each requirement of Rule 23(a) before the Court's analysis may proceed. *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015). Once the plaintiff has satisfied Rule 23(a), he must also meet at least one of Rule 23(b)'s provisions. *Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *2 (N.D. Ill. Nov. 30, 2010). Plaintiffs here seek certification under Rules 23(b)(2) and (b)(3). Rule 23(b)(2) allows class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(3) allows class certification where "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "Failure to meet any of Rule 23's requirements precludes class certification." *Buonomo*, 301 F.R.D. at 295 (quoting *Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009)).

Here, HomeServices Defendants contend that the class definition must be narrowed to exclude class members whose listing agreement included an arbitration clause because no named Plaintiff will be able to represent those absent class members adequately. In support of their motion, HomeServices Defendants attach as exhibits numerous of their affiliates' listing agreements that contain arbitration provisions. (*See generally* Dkt. Nos. 206-2–206-12.) That, however, raises the issue of whether it is even appropriate for the Court to consider these materials from outside the pleadings in connection with a motion to strike class allegations.[1] Many courts in the Seventh Circuit deciding motions to strike class allegations often find that their "review is limited to whether the class allegations in the Complaint are facially and inherently defective." *E.g.*, *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 292–93 (N.D. Ill. 2014). Others have found that because a "motion to strike class allegations is a vehicle for analyzing the appropriateness of class certification . . . the court is not limited to the face of [the] complaint when considering the motion." *Lee v. Child.'s Place Retail Stores, Inc.*, No. 14 C 3258, 2014 WL 5100608, at *2 (N.D. Ill. Oct. 8, 2014). Nonetheless, "the majority view is that, when a defendant moves to strike class allegations, the inquiry is limited to the facial plausibility of the class as alleged in the complaint." *Lukis v. Whitepages Inc.*, No. 19 C 4871, 2021 WL 1600194, at *12 (N.D. Ill. Apr. 23, 2021).

---

[1] Matters outside of the pleadings can, of course, be incorporated by reference "if they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 691 (7th Cir. 2012). While the CAC refers generally to Defendants' listing agreements, those general references are not sufficient to incorporate by reference listing agreements from HomeServices Defendants' subsidiaries, especially since no subsidiary is named as a Defendant.

3

In this case, it does not matter which view the Court adopts. Under the majority view, there is nothing in the CAC indicating that any class member agreed to arbitrate this dispute, nor is there any other basis for the Court to conclude that the class definition is facially and inherently defective. *See Pang v. Samsung Elecs. Am., Inc.*, No. 18-cv-01882-PJH, 2018 WL 4491154, at *2 (N.D. Cal. Sept. 19, 2018) ("[T]he court has serious concerns about the scope of plaintiffs' proposed class because in contrast to a majority of the putative class members, the named plaintiffs are not subject to an arbitration agreement. However, the court does not believe that defendant's motion to strike—supported by external evidence—is the appropriate vehicle for resolving those concerns."). But even taking into account that many of the listing agreements of HomeServices Defendants' subsidiaries contained arbitration agreements, the Court concludes that it would be premature to narrow the class definition at this stage. *See, e.g.*, *Woodburn v. City of Henderson*, No. 2:19-cv-01488-JAD-VCF, 2020 WL 5805503, at *4 & n.4 ("[N]umerous district courts have declined to strike class allegations on the basis that some or all absent class members are bound by arbitration provisions.").

The issues surrounding the arbitration agreements are highly factual and involve dozens of different arbitration provisions, each with differing language and scope. *See Delgado v. I.C. Sys., Inc.*, No. 17 C 1366, 2017 WL 9939630, at *1 (N.D. Ill. May 18, 2017) (declining to strike the plaintiff's class allegations on the ground that some absent class members agreed to arbitrate because "[t]he numerous legal and factual issues that would need to be resolved before enforcing any arbitration agreement that may be at issue . . . preclude resolution of this issue" on a motion to strike). And, as HomeServices Defendants acknowledge, certain subsidiaries' arbitration provisions were not even in effect for the entirety of the class period. Discovery in this matter is ongoing and the fact that an unknown number (but surely a minority)[2] of the putative class agreed to arbitrate constitutes an adequate basis to narrow the class definition before class discovery has concluded.

---

[2] HomeServices Defendants do not contend that the class members who agreed to arbitrate would constitute a majority or even a substantial minority of the class. Indeed, none of the other three real estate brokerage firms named as Defendants contend that their listing agreements contain arbitration agreements, and HomeServices Defendants concede that not every one of their home-seller clients agreed to arbitrate. By contrast, the case that HomeServices Defendants cite as support for narrowing the class definition on the basis of a motion to strike, *Santangelo v. Comcast Corp.*, No. 15-cv-0293, 2017 WL 6039903 (N.D. Ill. Dec. 6, 2017), involved a plaintiff who had opted out of an arbitration provision but sought to represent a proposed class consisting mainly of individuals who had not opted out of arbitration. *Id.* at *2.

      Regardless of the merits of HomeServices Defendants' arguments for narrowing the class definition, the matter is best addressed when Plaintiffs move for class certification. Indeed, once necessary class-related discovery has concluded, Plaintiffs might voluntarily decide to amend the class definition to exclude those members who signed an arbitration agreement. *See Dietrich v. C.H. Robinson Worldwide, Inc.*, No. 18 C 4871, 2018 WL 6399199, at *1 (N.D. Ill. Dec. 6, 2018) (denying motion to strike class allegations where the plaintiff, unlike the majority of the proposed class, did not sign arbitration agreement due to the prospect that the plaintiff would "seek to amend her proposed class description based on information obtained during discovery"). For that reason, the Court denies as premature HomeServices Defendants' motion to strike class allegations.

Dated: July 5, 2021

                                                  Andrea R. Wood
                                                  United States District Judge