**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, VALERIE NAGER, JACK RAMEY, SAWBILL STRATEGIC, INC., DANIEL UMPA and JANE RUH, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) ) ) | Case No: 1:19-cv-01610 Case No.: 1:19-cv-2544 |
| v. | ) ) | Judge Andrea Wood Magistrate Judge M. David Weisman |
| THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., HSF AFFILIATES, LLC, BHH AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX HOLDINGS INC. and KELLER WILLIAMS REALTY, INC. | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

<u>**OPPOSITION OF DEFENDANT NATIONAL ASSOCIATION OF REALTORS® TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND ............................................................................................................... 3

ARGUMENT ...................................................................................................................... 6

I.    Plaintiffs' Motion for All Documents Related to Realtor.com and Upstream is Untimely and Unduly Burdensome ................................................................................................ 7

    A.    Plaintiffs' Request is Untimely ............................................................................ 7

    B.    Producing Documents Related to Realtor.com and Upstream that are Outside of Central File Locations Would Be Unduly Burdensome ......................................... 8

II.    Plaintiffs' Request for NAR Meeting Minutes and Reports is Untimely, Seeks Many Irrelevant Documents, and Is Unduly Burdensome .................................................... 9

    A.    Plaintiffs' Request is Untimely .......................................................................... 10

    B.    Unproduced Meeting Materials and Reports are Irrelevant and Producing Them Would Be Unduly Burdensome ................................................................. 11

III.    Post-December 2019 Documents Should Not Be Required Absent a Clear Showing of Relevance to the Issues in This Case, and Production Would Be Unduly Burdensome ... 11

    A.    The December 31, 2019 Document Collection Cut-Off Should Apply Absent a Clear Showing of Relevance to the Issues in This Case ....................................... 12

    B.    Plaintiffs' New Request for the Post-June 2019 Documents is Unduly Burdensome and Seeks Largely Irrelevant Documents ......................................... 14

CONCLUSION ................................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Campos-Eibeck v. C R Bard Inc.*,
No. 19CV2026-W(BLM), 2020 WL 835305 (S.D. Cal. Feb. 20, 2020) ...............................13

*CornerStone Staffing Sols., Inc. v. James*,
No. 12-CV-01527-RS, 2015 WL 13037132 (N.D. Cal. June 24, 2015)..................................8

*Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*,
2008 WL 4786671 (N.D. Cal. Oct. 29, 2008)........................................................................13

*PsyBio Therapeutics, Inc. v. Corbin*,
2021 WL 4459527 (N.D. Ill. Sept. 29, 2021) .........................................................................6

*In re Sulfuric Acid Antitrust Litig.*,
231 F.R.D. 331, 333 (N.D. Ill. 2005) ......................................................................................8

**Other Authorities**

Fed. R. Civ. P. 1 ...........................................................................................................................6

Fed. R. Civ. P. 26 ................................................................................................................. *passim*

Defendant National Association of REALTORS® ("NAR") served its Responses and Objections to plaintiffs' Requests for Production of Documents in February 2020; agreed with plaintiffs, after much negotiation and compromise, to search terms in May 2020; and completed its document production in December 2020, well in advance of the Court's June 2021 deadline. Discovery has been open in this case for nearly a year, and plaintiffs have had NAR's document production for almost as long. Yet plaintiffs waited until September and October 2021 to raise any issues with respect to the scope of NAR's document production.

Plaintiffs now seek three categories of documents from NAR: (1) documents related to Realtor.com and Upstream; (2) meeting minutes and reports from three NAR groups; and (3) all documents generated since June of 2019 related to proposed changes to NAR rules "pertaining to the Challenged Restraints in this lawsuit, or otherwise addressing broker compensation or the display or filtering of MLS listings."[1] Plaintiffs' Motion (October 19, 2021), ECF No. 271.

Notably, none of the issues raised by plaintiffs in their motion to compel are timely. NAR objected in February of 2020 to producing documents related to Realtor.com, documents related to Upstream, and committee materials unrelated to the challenged NAR rules. Plaintiffs have known, and tacitly acknowledged, since at least April 2020 that the parties intended to observe a general December 31, 2019 document collection cut-off, and plaintiffs have had the NAR's production of documents since December 2020. In essence, plaintiffs are now seeking documents whose production they did not pursue when the parties were negotiating the scope of production.

---

[1] Plaintiffs define the "Challenged Restraints" as being those defined in their Requests for Production and identified in at paragraphs 56-93 of their Consolidated and Amended Class Action Complaint. Plaintiffs' Motion to Compel (Oct. 19, 2021), ECF No. 272 at 4 n. 2. Tellingly, however, NAR rules generally "addressing broker compensation or the display or filtering of MLS listings" are not included in either their RFP definition or in the Amended Complaint. Those rules are, therefore, not relevant to this case.

Plaintiffs' untimely raising of these issues undermines the agreement that had been reached regarding production of documents as part of the meet-and-confer process.

In any event, many of the documents now sought by plaintiffs are irrelevant to their claims. Moreover, plaintiffs' delay in raising these issues has prejudiced NAR. Far from being "targeted" requested, those requests seek sweeping categories of irrelevant and likely privileged documents. Requiring production of these documents would cause NAR to incur substantial costs that would have been greatly reduced had these issues been raised in a timely fashion. To compound the prejudice, plaintiffs have threatened to require NAR deponents to sit for two depositions if plaintiffs do not receive the irrelevant and untimely documents that they now seek.

Finally, it is important to note that NAR has committed to producing a great deal of the documents sought by plaintiffs. Specifically, NAR offered in a meet-and-confer on October 13, 2021 to produce (1) post-2014 agreements related to Realtor.com and Upstream and (2) non-privileged meeting minutes and reports from the Strategic Thinking Committee; the Large Firm Directors Forum; and the Real Estate Services (RES) Advisory Group and their predecessors, to the extent such documents exist in NAR's central file locations. However, plaintiffs abruptly terminated the meet and confer process and filed their motion. Had plaintiffs continued the process, NAR would have offered to produce documents relating to post-2019 changes in rules that are at issue in this case and that can be located in central file locations or discovered via targeted inquiries. But plaintiffs' premature termination of the meet-and-confer process pre-empted this offer.

NAR will produce the documents that it has committed to produce. But it should not be required to produce documents that are irrelevant or whose production would be unduly burdensome. Plaintiffs' conduct should not be rewarded. Their motion should be denied.

## BACKGROUND

In December 2019, this Court partially lifted the discovery stay that had been entered while defendants' Motions to Dismiss was pending. Specifically, the Court at that time permitted plaintiffs to serve document requests. Minute Entry (Dec. 12, 2019), ECF No. 159. Plaintiffs' Requests for Production were served on January 10, 2020. NAR timely served its objections and responses on February 10, 2020. Ex. B and C to Plaintiffs' Motion, ECF No. 272-2 and 272-3. Over the next few months, counsel for the *Moehrl* plaintiffs joined counsel for the *Sitzer* plaintiffs in negotiating search terms and custodians with respect to NAR. The parties ultimately reached an agreement on those topics on May 1, 2020.[2] Based on the compromises reached in those negotiations, NAR undertook a massive document review and production at significant cost. NAR's production to the *Moehrl* plaintiffs was completed on December 18, 2020.

Meanwhile, the Court lifted the discovery stay and entered a new scheduling order on November 7, 2020. Scheduling Order (Nov. 7, 2020), ECF No. 196. That Order required any disputes about ESI terms or custodians to be submitted by January 8, 2021. *Id.* Although plaintiffs have been in receipt of NAR's objections and responses to their document requests since February 2020 and in receipt of NAR's production since December 2020, they did not raise any disputes with NAR. Likewise, they did not submit any dispute regarding NAR's ESI terms or custodians to the Court prior to the Court's January 2021 deadline. Indeed, in the nearly a year and a half between the time that agreement was reached regarding NAR's search terms and custodians and plaintiffs' recent request for production of documents, plaintiffs never raised any issue regarding the scope of document production by NAR. Nor did plaintiffs raise any issues

---

[2] Exhibit 1, May 1, 2020 email from plaintiffs' counsel Robert A. Braun, to NAR's counsel Suzanne Wahl, Jack Bierig and Chuck Hatfield, and *Sitzer* plaintiffs' counsel Brandon Boulware, Matt Dameron and Courtney Stout.

with NAR's document production (including the custodians or search terms) before the Court's June 15, 2021 deadline for the parties to complete their document productions. Scheduling Order (Nov. 7. 2020), ECF No. 196.

Further, in the *Sitzer* case, the parties agreed on a discovery collection cut-off of December 31, 2019 with an exception for custodians who were collected prior to that date. Motion to Compel (Oct. 19, 2021), ECF No. 272 at 3. While the *Moehrl* plaintiffs were not part of the negotiation of the discovery collection cut-off in *Sitzer*, they were nonetheless aware of the agreed terms. They therefore knew and understood that NAR's production was made based on that agreement, which generally contemplated a December 31, 2019 cut-off. The use of this deadline was also clear from NAR's production, which was completed on December 18, 2020.

Most significantly, during an April 21, 2021 meet and confer between counsel for the *Moehrl* plaintiffs and counsel for some of the defendants regarding discovery requests to the *Moehrl* plaintiffs, counsel for the *Moerhl* plaintiffs stated they did not object to using the same cut-offs for document collection and production as those used in *Sitzer*. At no point before the June 15, 2021 deadline did the *Moehrl* plaintiffs raise the issue of changing the discovery collection cut-off from what had been used in *Sitzer*.

Plaintiffs waited until September 16, 2021 – nine months after NAR had completed its production, eight months after the Court's deadline for submitting disputes over ESI terms or custodians, and three months after the Court's document production deadline – to demand that NAR produce documents responsive to RFP No. 33.[3] They waited until September 2021 even though NAR's objection to that RFP had appeared in the responses it served on plaintiffs more

---

[3] Exhibit 2, September 16, 2021 email from plaintiffs' counsel Robert A. Braun to NAR counsel Jack Bierig and Suzanne Wahl.

than a year and a half earlier, in February 2020.

Plaintiffs similarly waited until September 28, 2021, to demand that NAR produce "meeting minutes for and any reports produced by the NAR's Strategic Thinking Advisory Committee (and its predecessor the Strategic Planning Committee), the Large Firms Directors Forum (and any predecessors), and the Real Estate Services (RES) Advisory Group (and any predecessors)." Plaintiffs claimed that these new document requests were covered by RFPs No. 6, 19, 25, 34, and 39.[4] Prior to September 2021, however, plaintiffs had neither raised this issue with NAR nor expressed any concern that NAR's document production did not contain these documents. Thus, they again waited more than a year and a half to seek to undermine the compromises that had been reached.

Finally, plaintiffs waited until October 6 – not even two weeks before filing this motion – to demand that NAR produce additional documents related to ongoing NAR rulemaking.[5] This request was a flat reversal of plaintiffs' prior acquiescence to the *Sitzer* December 31, 2019 document collection cut-off. It was also the first time that plaintiffs had claimed that NAR was required to collect and produce documents created in 2020 and 2021.

The time for raising disputes about plaintiffs' original requests has long passed. NAR has already completed a substantial document production based on a good faith compromise resulting from the meet-and-confer process. But despite NAR's efforts to meet plaintiffs far more than halfway, plaintiffs now seek to undo that compromise by an untimely effort to seek production of documents that are either irrelevant or whose production would be unduly

---

[4] Exhibit 3, September 28, 2021 email from plaintiffs' counsel Robert A. Braun to NAR counsel Jack Bierig and Suzanne Wahl.

[5] Exhibit 4, October 6, 2021 email from plaintiffs' counsel Robert A. Braun to NAR counsel Jack Bierig and Suzanne Wahl.

burdensome. In these circumstances, NAR should not be required to produce documents beyond those that it has committed to producing.

Specifically, NAR will be producing the documents it offered in the October 13, 2021 meet and confer: (1) post-2014 agreements related to Realtor.com and Upstream; and (2) non-privileged meeting minutes and reports from the Strategic Thinking Committee; the Large Firm Directors Forum; and the Real Estate Services (RES) Advisory Group and their predecessors to the extent such documents exist in NAR's central file locations. NAR is further willing to produce post December 2019 documents that (1) are relevant to the rules at issues in this case and (2) can be located in central file locations or discovered via targeted inquiries that would not require essentially restarting the discovery process. But NAR should not be required to produce any additional documents.

## ARGUMENT

"Despite the liberal breadth of discovery allowed under Rule 26 of the Federal Rules of Civil Procedure, a proponent of a motion to compel discovery bears the initial burden to prove that the information sought is relevant." *PsyBio Therapeutics, Inc. v. Corbin*, 2021 WL 4459527, at *1 (N.D. Ill. Sept. 29, 2021). FRCP 26(b)(1) requires that discovery requests be "relevant to any party's claim or defense and proportional to the needs of the case" and requires consideration, among other things, of "whether the burden or expense of the proposed discovery outweighs its likely benefit." Thus, FRCP 1 requires that all Federal Rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." The discovery that plaintiffs now insist upon is neither just, speedy, nor inexpensive.

## I. Plaintiffs' Motion for Documents Related to Realtor.com and Upstream is Untimely and Unduly Burdensome

In February 2020, NAR objected to plaintiffs' RFP No. 33, which included a demand for documents related to Realtor.com and Upstream. Ex. C to Plaintiffs' Motion, ECF No. 272-3 at 32-33 and 38-39. Plaintiffs did not propose search terms related to the requests during the 2020 discovery negotiation,[6] did not raise additional search terms as an issue prior to the Court's January 8, 2021 deadline, and gave every indication of having abandoned this request.

In the meantime, NAR engaged in substantial document production based on the negotiated search terms and scope of discovery. It completed its discovery production in December 2020, well in advance of the Court's deadline. Nevertheless, plaintiffs now ask NAR to engage in burdensome discovery. In fact, they argue that NAR's deponents will be at risk of repeated depositions because of plaintiffs' delay. Plaintiffs' request for these documents is untimely and creates an undue burden.

### A. Plaintiffs' Request is Untimely

This Court gave the parties a deadline of January 2021 to raise any issues regarding

---

[6] Plaintiffs misrepresent NAR as "acknowledg[ing] that it did not even collect Realtor.com and Upstream-related documents." ECF No. 272 at 11. This is false. Rather, NAR pointed out that both the search terms proposed by and agreed to by the *Sitzer* and *Moehrl* Plaintiffs did not include "Realtor.com" or "Upstream" as search terms. Exhibit 5, January 21, 2020 email and attachment titled "Plaintiffs' Proposed NAR Search Terms" from *Sitzer* plaintiffs' counsel Brandon Boulware to NAR counsel Jack Bierig and Suzanne Wahl, copying *Moehrl* plaintiffs' counsel Kit A. Pierson and Robert A. Braun and *Sitzer* plaintiffs' counsel Jeremy Suhr and Courtney Stout; Exhibit 6, May 1, 2020 email and attachment titled "2020.05.01 – Search Terms – as agreed" from NAR counsel Suzanne Wahl to *Moehrl* plaintiffs' counsel Robert A. Braun, *Sitzer* plaintiffs' counsel Brandon Boulware, Matt Dameron, Jeremy Suhr and Courtney Stout, and NAR counsel Jack Bierig and Chuck Hatfield.

To the extent a non-privileged responsive document regarding Realtor.com or Upstream in the document collection hit for the agreed-upon search terms, NAR already produced it. Indeed, searching for "Project Upstream" or "UpstreamRE" returns nearly 300 documents in NAR's production.

custodians and search terms, and a deadline of June 2021 to make their productions. These deadlines have come and gone, and so too has the time for moving on these requests. *See CornerStone Staffing Sols., Inc. v. James*, No. 12-CV-01527-RS, 2015 WL 13037132, at *1 (N.D. Cal. June 24, 2015) (denying motion to compel where movants waited until after court's deadline to raise issues).[7] NAR conducted its document discovery in reliance on its spring 2020 negotiations with plaintiffs and on the Court's schedule. Having met its obligations, NAR should not be required to conduct document discovery a second time.

Plaintiffs argue that they are under no obligation to have raised these issues in a timely manner and that they are within their rights to have waited until days or weeks before the close of discovery to make these arguments. Plaintiffs' Mem., ECF No. 272 at 14-15. That is simply not true in light of this Court's Order requiring any disputes over custodians and search terms to have been filed by January 2021. Moreover, plaintiffs' decision to wait to raise these issues has prejudiced NAR by increasing the burden of producing documents, by reopening settled issues, and by – according to plaintiffs – putting NAR deponents at risk of a second deposition. The Court should not reward plaintiffs' dilatory behavior.

### B. Producing Documents Related to Realtor.com and Upstream that are Outside of Central File Locations Would Be Unduly Burdensome

Plaintiffs' untimely request is unduly burdensome. Notably, NAR has already committed to producing post-2014 agreements related to Realtor.com and Upstream that can be located from a central file location. But plaintiffs' request goes far beyond what can readily be found. Rather, they ask the Court to order NAR to produce "***all*** communications, reports, studies, or

---

[7] *See also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 333 (N.D. Ill. 2005) (whether motion to compel is timely depends on "the entire complex of circumstances that gave rise to the motion").

strategy documents related to those agreements"—without regard to where such document might reside or how burdensome a full blown search for those documents would be. Plaintiffs' Mem., ECF 272 at 5 (emphasis added).

Adding additional search terms in 2020 would have created less additional burden when NAR was already hosting a review platform and using a review team. Restarting the process today will have significant costs. Since active document production had seemingly ceased in this case, NAR took the step of archiving its production database to avoid paying hosting costs for the documents that were not produced. Because of the size of the database, running new search terms on the previously collected but unproduced documents would likely require a week of technical time to restore the database and generate thousands of dollars in technical assistance and hosting costs. When the database was previously active, it cost over $15,000 per month just to host the data, without even accounting for technical assistance. And those costs are even before NAR undertakes the work of once again reviewing documents for responsiveness and privilege, a task on which it has already spent over $500,000 on contract reviewers alone.

Second, plaintiffs' delay in raising this issue has created a second burden, beyond the additional time and money that would have to be spent. Specifically, plaintiffs threatened to re-open the depositions of NAR deponents if the requested documents were not produced before the depositions. It would be unduly burdensome, and highly prejudicial, for the Court to allow plaintiffs to leverage their own delay into requiring double depositions of NAR deponents.

## II. Plaintiffs' Request for NAR Meeting Minutes and Reports is Untimely, Seeks Many Irrelevant Documents, and Is Unduly Burdensome

In February 2020, NAR objected to plaintiffs' RFP No. 6, which requested meeting minutes related to the Strategic Thinking Advisory Committee ("STAC") and the Large Firm Directors Forum. NAR explained that meeting minutes addressing matters other than the rules at

issue in this case. Nevertheless, as part of the negotiated compromise, NAR agreed to search for documents related to those committees and the rules at issue using agreed-upon search terms.[8] Ex. C to Plaintiff's Motion, ECF No. 272-3 at 9-10. And that is precisely what NAR did. Plaintiffs' January 2020 requests for production did not specifically seek documents related to the RES Advisory Group.[9]

Again, NAR has already made its productions based on the parties' negotiations and agreed-upon search terms. Plaintiffs' request for meeting materials is untimely, attempts to create a risk of repeated depositions of NAR witnesses, and seek documents irrelevant to this case. Despite all this, NAR will produce non-privileged meeting minutes and reports from the Strategic Thinking Committee; the Large Firm Directors Forum; and the Real Estate Services (RES) Advisory Group and their predecessors, to the extent they exist in NAR's central file.

## A. Plaintiffs' Request is Untimely

NAR specifically objected to the request that it produce all meeting material for the STAC and the Large Firm Directors Forum in February 2020, stating that the request was "overbroad and seeking irrelevant documents. Plaintiffs have challenged specific NAR policies only and cannot expand the scope of discovery to include documents that are not relevant to their

---

[8] *See* Exhibit 6, May 1, 2020 email and attachment titled "2020.05.01 – Search Terms – as agreed" from NAR counsel Suzanne Wahl to *Moehrl* plaintiffs' counsel Robert A. Braun, *Sitzer* plaintiffs' counsel Brandon Boulware, Matt Dameron, Jeremy Suhr and Courtney Stout, and NAR counsel Jack Bierig and Chuck Hatfield (search terms include (commission* or compensation*) and "strategic thinking"; (commission* or compensation*) and large firm*). The agreed-upon search terms also contain terms related to the D.A.N.G.E.R. Report. *Id.* (search terms include ((Danger or d.a.n.g.e.r. or "definitive analysis of negative") w/5 (report or study or *paper or summar* or ppt* or powerpoint* or slide* or deck* or present* or meeting* or interview* or call* or note* or research*)).

[9] As with the Realtor.com and Project Upstream documents, to the extent that non-privileged responsive documents related to the RES Advisory Group were collected and hit for the agreed-upon search terms, such documents were produced.

claims." ECF No. 272-3 at 9. NAR agreed to search for only meeting minutes related to the rules at issue in this case, and the agreed-upon search terms reflect this.[10] Plaintiffs agreed to these search terms. The Court ordered that search term disputes be raised by January 2021 and productions completed by June 2021. Plaintiffs' motion is untimely.

### B.      Unproduced Meeting Materials and Reports are Irrelevant and Producing Them Would Be Unduly Burdensome

NAR's February 2020 objection to plaintiffs' request for meeting materials remains as true today as it was nearly two years ago: Plaintiffs have challenged specific NAR policies. They should not be permitted to expand discovery to include documents that are beyond the scope of their claims. Ex. C to Plaintiffs' Motion, ECF No. 272-3 at 9. To the extent that meeting materials discussing the rules at issue exist (and were within the agreed-upon scope of search terms and locations), they have been produced. To the extent that additional meeting minutes and reports exist and do not relate to the rules at issue, they are irrelevant and need not be produced.

Further, plaintiffs have threatened to re-open depositions of NAR deponents if the requested documents are not produced prior to the upcoming NAR depositions. Again, allowing plaintiffs to leverage their own delay would be highly burdensome and prejudicial to NAR.

### III.    Post-December 2019 Documents Should Not Be Required Absent a Clear Showing of Relevance to the Issues in This Case, and Production Would Be Unduly Burdensome

Finally, plaintiffs move to compel NAR to produce "Documents from June 1, 2019 to the present related to considering, proposing, or adopting new NAR rules or amendments to existing rules pertaining to the Challenged Restraints in this lawsuit, or otherwise addressing broker

---

[10] *See* Exhibit 6, May 1, 2020 email and attachment titled "2020.05.01 – Search Terms – as agreed" from NAR counsel Suzanne Wahl to *Moehrl* plaintiffs' counsel Robert A. Braun, *Sitzer* plaintiffs' counsel Brandon Boulware, Matt Dameron, Jeremy Suhr and Courtney Stout, and NAR counsel Jack Bierig and Chuck Hatfield.

compensation or the display or filtering of MLS listings (Exhibit B, RFPs 8-10, 13, 40, 43, Pls.'
First Set of RFPs at 5-6, 8, 13-14)." Plaintiffs' Motion, ECF No. 272 at 4. Plaintiffs requested
this additional production for the first time on October 6, 2021, well after document discovery
negotiations had been resolved and NAR had made its production.[11] Plaintiffs' motion is
inconsistent with the December 31, 2019 discovery collection cut-off negotiated in *Sitzer* and
previously accepted by counsel for the *Moehrl* plaintiffs. It would essentially force NAR to
restart document discovery, introducing massive cost and delay by requiring production of
irrelevant documents.

### A.    The December 31, 2019 Document Collection Cut-Off Should Apply Absent a Clear Showing of Relevance to the Issues in This Case

NAR does not dispute that the December 2019 document collection cut-off was initially
negotiated by the *Sitzer* plaintiffs only, or that the *Moehrl* plaintiffs did not commit their
agreement to abide by that deadline to writing. But the *Moehrl* plaintiffs did advise NAR that
they did not object to a December 2019 document collection cut-off. During an April 21, 2021
meet and confer between the *Moehrl* plaintiffs and several of the defendants, counsel for the
*Moehrl* plaintiffs represented that they intended to abide by the *Sitzer* cut-off. The
communications in 2020 identified by plaintiffs are therefore irrelevant to the question of
whether there was a representation made by plaintiffs; the representation in question was not
made until April 2021.[12] Plaintiffs' Mem., ECF No. 272 at 12-13. NAR counsel would be
pleased to submit a declaration to this effect if there is a factual dispute.

---

[11] Exhibit 4, October 6, 2021 email from plaintiffs' counsel Robert A. Braun to NAR counsel
Jack Bierig and Suzanne Wahl.

[12] NAR's statement that "the *Moehrl* plaintiffs may later seek additional search terms or
custodians if subsequent discovery indicates that additional search terms or custodians are
necessary," Plaintiffs' Memorandum, ECF No. 272 at 13, must be read in conjunction with the

Crucially, the April 21, 2021 meet and confer occurred five months after NAR had completed its production and less than two months before the Court's discovery production deadline. In that time, and consistent with the *Moehrl* plaintiffs' April 2021 representation, the *Moehrl* plaintiffs had never raised the issue of the discovery collection cut-off with NAR. NAR was therefore justified in relying on the December 31, 2019 collection cut-off.

Additionally, a document collection cut-off of December 31, 2019 is completely appropriate. Without a discovery cut-off, NAR would have to make repeated document collections from its custodians and repeatedly train and deploy review teams. As discussed in further detail below, this would generate huge discovery costs and substantial disruption to NAR's employees. Significantly, relevant post-2019 documents are likely to be privileged, as this litigation was filed in March 2019. Many, if not most, arguably relevant documents created after 2019 will involve the advice of counsel – and are therefore protected by the attorney-client privilege or the work product doctrine. Extending discovery to documents generated after 2019 is likely to result only in the creation of burdensome privilege logs.

Courts have recognized the need for discovery cut-offs and that Rule 26(e) does not "impose[] a never ending obligation to produce documents continuously as they are created." *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, 2008 WL 4786671, at *2 (N.D. Cal. Oct. 29, 2008) ("The duty to supplement under Rule 26(e)(1) is directed to documents generated during the relevant time period previously not produced but subsequently discovered."); *see also Campos-Eibeck v. C R Bard Inc.*, No. 19CV2026-W(BLM), 2020 WL 835305, at *5 (S.D. Cal. Feb. 20, 2020) ("Fed. R. Civ. P. 26(e) is not intended to create never ending discovery

---

Court's order setting the January 8, 2021 deadline for raising such issues. Scheduling Order (November 7, 2020), ECF No. 196.

obligations or continuous rolling discovery").

**B.     Plaintiffs' New Request for the Post-June 2019 Documents is Unduly Burdensome and Seeks Largely Irrelevant Documents**

Far from "targeted discovery," plaintiffs essentially ask this Court to order NAR to restart document discovery, nearly a year after NAR completed its document production. NAR would have to re-collect documents from its nineteen document custodians, disrupting its business processes, and likely requiring the retention of an e-discovery vendor. NAR would have to implement a new discovery review tool, requiring it to pay for hosting costs and technician time. Once the collected documents were available, NAR would have to test search terms, as the current search terms are not tailored to the requested scope of additional discovery. NAR counsel would likely have to engage once again in protracted negotiations with plaintiffs.

Once the scope of the review was defined, NAR would have to train a team of reviewers on responsiveness and privilege and undertake a new document review, in order to identify non-privileged and responsive documents. NAR knows precisely how burdensome and expensive this work will be, as it is exactly the project that NAR undertook in 2020 when it made its production. It took nearly a year from start of negotiations with the *Moehrl* and *Sitzer* plaintiffs until its final production in December 2020.

All of this expensive and time consuming work would likely result in very few non-privileged and responsive documents. Plaintiffs seek documents from June 2019 to present, a time period in which NAR has been a defendant in multiple lawsuits regarding its rules and in which NAR has been addressing a Department of Justice investigation. Even more than in a typical case, the vast majority of post-litigation documents addressing relevant rule changes are almost certain to be privileged or work product. Forcing NAR to undertake such great expense for so little return at this late date is not proportional to the needs of the case.

Moreover, plaintiffs' delay in raising this issue has increased the burden on NAR. Plaintiffs note that they are seeking documents from June 1, 2019 to the present because certain NAR custodians were collected prior to December 2019, and the *Sitzer* plaintiffs agreed that NAR did not have to re-collect those custodians. Plaintiffs' Mem., ECF No. 272 at 11 n. 8. But this only underlines the burden plaintiffs have created by waiting until now to raise these issues. Had plaintiffs raised this issue when the parties were negotiating in spring 2020 or when discovery opened in this case in November 2019 or even when the Court ordered the parties to raise any custodian disputes in January 2021, the question of the discovery collection cut-off would have been resolved long before now – when the parties are engaged in depositions and the plaintiffs are threatening to re-depose NAR witnesses.

Additionally, plaintiffs claim that the post-2019 documents are called for by their original RFPs, but they ignore that NAR objected strenuously to the overbreadth and burden of those requests. Ex. C to Plaintiffs' Motion, ECF No. 272-3 at 11, 12, 18, 43, 45-46. Plaintiffs' current motion for documents "considering, proposing, or adopting new NAR rules or amendments to existing rules pertaining to the Challenged Restraints in this lawsuit, or otherwise addressing broker compensation or the display or filtering of MLS listings" are similarly overbroad.

Plaintiffs have challenged a finite number of NAR rules that they term the "Challenged Restraints." They have not challenged every NAR rule addressing broker compensation or MLS listings and are not entitled to discovery on issues beyond the scope of their case.

## CONCLUSION

For all these reasons, plaintiffs' motion should be denied.

Dated: November 16, 2021

Respectfully submitted,

*/s/ Jack R. Bierig*

Jack R. Bierig
Robert J. Wierenga
Adam Diederich
Suzanne Wahl
SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
(312) 258-5500

jbierig@schiffhardin.com
rwierenga@schiffhardin.com
adiederich@schiffhardin.com
swahl@schiffhardin.com

*Attorneys for Defendant*
*National Association of Realtors®*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused a true and correct copy of the foregoing to be filed electronically on November 16, 2021. A copy of this filing will be served upon all counsel of record by operation of the Court's CM/ECF system.

*/s/Jack R. Bierig*
Jack R. Bierig

CH2:25443492.1