# EXHIBIT 4

| | |
|---|---|
| **From:** | Robert A. Braun |
| **To:** | Bierig, Jack R.; Wahl, Suzanne L. |
| **Subject:** | [EXT] RE: Realtors: Following Up |
| **Date:** | Wednesday, October 6, 2021 5:29:35 PM |
| **Attachments:** | mg_info.txt |

Jack,

We respectfully disagree with your characterization of the *Moehrl* Plaintiffs' discovery negotiations with NAR. As you know, at NAR's request, the *Moehrl* case was stayed at the time that NAR negotiated its productions for the *Sitzer* case. *Moehrl* counsel were permitted to attend the negotiations related to the *Sitzer* case productions and to receive those productions to the extent the documents at issue were not exclusively related to the MLSs at issue in *Sitzer*. Because our case was stayed, however, the *Moehrl* plaintiffs had no mechanism prior to NAR's production of documents in *Sitzer* for enforcing the *Moehrl* document requests in instances where: (i) we served requests for documents not reflected in requests served by the *Sitzer* plaintiffs; and/or (ii) the parties did not reach an agreement on the scope of NAR's productions but the *Sitzer* plaintiffs did not move to compel.

With respect to our request that NAR produce meeting minutes and reports from the Strategic Thinking Advisory Committee, the Large Firms Directors Forum, and the Real Estate Services (RES) Advisory Group (and the predecessors and successors of each), we are confused by your reference to the search terms that NAR applied for searching emails. We understand that NAR meeting minutes and committee reports are typically maintained in NAR's central files and would not be collected by using of search terms. For that reason, we do not understand the relevance of NAR's arguments regarding agreements on or burden of applying search terms and custodians. Nor does the collection of meeting minutes and reports limited to three NAR committees appear to impose any undue burden on NAR.

With respect to our request for agreements pertaining to Realtor.com or Upstream (and related documents), we again expect that many (though not all) responsive documents are located in NAR's central files or in non-email custodial files that are susceptible to searches without the application of search terms. Moreover, as I previously indicated, we are concerned that in connection with its "go get" productions, NAR failed to search agreements pertaining to Realtor.com or Upstream (and related documents) in order to ascertain whether they were responsive even to document requests for which NAR agreed to produce documents for purposes of its *Sitzer* productions (e.g., RFP 10(a), 10(b), 10(k), 21, 25). Please confirm what efforts NAR undertook to search its central files and non-email custodial files in order to determine the responsiveness of agreements pertaining to Realtor.com or Upstream (and related documents).

Finally, we recently learned that since the time NAR collected documents in connection with its *Sitzer* document productions, NAR has considered and/or proposed repealing, modifying, or adopting several rules that are directly relevant to our case. *See, e.g.*, https://cdn.nar.realtor/sites/default/files/documents/MLS-AB-List-of-Recommendations-Sept-21.pdf. Given these events, we are troubled by the fact that NAR has apparently not complied with its obligations under Federal Rule of Civil Procedure 26(e) to supplement its productions in a timely

manner. Please produce these documents as soon as possible.

Thank you for your invitation to discuss these issues further. What is your availability over the next several days for a call?

Best,
Robby

**From:** Bierig, Jack R. <JBierig@schiffhardin.com>
**Sent:** Friday, October 1, 2021 6:28 PM
**To:** Robert A. Braun <RBraun@cohenmilstein.com>; Wahl, Suzanne L. <SWahl@schiffhardin.com>
**Subject:** [EXTERNAL] RE: Realtors: Following Up

Robby,

Thanks for your note regarding joint depositions of NAR deponents in *Moehrl* and *Sitzer* and various discovery issues. NAR appreciates your willingness to treat the NAR deposition as joint – subject to the possibility of reopening them as I represented to Judge Wood at the most recent status conference. However, in connection with that representation to the Court, I would note the following:

As stated in my September 17 email and as discussed on our September 20 phone call, the idea of substantially reopening document discovery at this point in the case, as you have sought to do by your invocation of REP 33, is not appropriate. NAR served its objections and responses to plaintiffs' Requests for Production on February 10, 2020. In an effort to reach a compromise, we spent several months negotiating custodians and search terms. On May 1, 2020, plaintiffs' counsel and NAR agreed on search terms. NAR completed its production of documents on December 18, 2020.

Turning to some of your specific requests, we agreed, in May of 2020, on search terms with respect to the Strategic Thinking Advisory Committee and the Large Firms Directors Forum. Those terms were designed to find documents related to those groups that are actually relevant to the litigation (*e.g.,* (commission* or compensation*) and "strategic thinking"; (commission* or compensation*) and large firm*). The parties also agreed on terms related to the DANGER Report ((Danger or d.a.n.g.e.r. or "definitive analysis of negative") w/5 (report or study or *paper or summar* or ppt* or powerpoint* or slide* or deck* or present* or meeting* or interview* or call* or note* or research*)). To the extent that they exist, responsive documents that hit for those search terms have already been produced to you and have been in your possession for at least 9 months. We will not agree to reopen those negotiations now – nearly 18 months after we had agreed on search terms and custodians for compliance with plaintiffs' RFP to NAR.

With respect to the Real Estate Services (RES) Advisory Group, Realtor.com, or Project Upstream, the time to negotiate search terms or documents related to these entities or projects was well over a year ago. Additionally, you continue to request "all Communications, reports, studies, or strategy documents" related to Realtor.com and Project Upstream. To the extent that such documents exist but have not been identified and produced, identifying them would require re-establishing NAR's archived document collection database. This would impose a significant cost even as an initial step – to say nothing of the cost of document review and production. This would be unduly burdensome – particularly given that these issues were negotiated more than a year ago.

As I said at the outset of this note, NAR appreciates your agreement to move ahead with

the NAR deponents jointly with the *Sitzer* plaintiffs. However, while we will work with you if you later receive new information that you reasonably believe requires a follow-up deposition, we do not consider any of the information or documents discussed above to constitute new information. As you point out, the documents raised in your email were covered by your January 10, 2020 Requests for Production that were previously the subject of negotiations and agreement – and that were resolved by compromise more than a year ago.

Finally, as I previously represented, NAR is willing to produce the Little Report. As we have previously offered, moreover, if there are a very limited number of specific, non-privileged documents that plaintiffs want, *e.g.* a specifically identified report or NAR statement, we would be willing to discuss production of those specific documents.  To minimize costs, we would like to discuss any additional specific documents promptly so that we can make one additional production that would include the Little Report.

Suzanne and I would be pleased to discuss these issues further with you after you have discussed them with counsel for the *Sitzer* plaintiffs and with your co-counsel.  We look forward to hearing from you.

Thanks,

Jack


Jack R. Bierig | Schiff Hardin LLP
312.258.5511
jbierig@schiffhardin.com

---

**From:** Robert A. Braun [mailto:RBraun@cohenmilstein.com]
**Sent:** Tuesday, September 28, 2021 9:39 PM
**To:** Bierig, Jack R. <JBierig@schiffhardin.com>; Wahl, Suzanne L. <SWahl@schiffhardin.com>
**Subject:** [EXT] Realtors: Following Up

Jack and Suzanne,

I'm following up on a couple of issues that we discussed last week:

1. In the interests of cooperating with and reducing the burden on NAR and its current employees, the *Moehrl* Plaintiffs intend to depose Kevin Milligan, Dale Stinton, Bob Goldberg, Cliff Niersbach, and Rodney Gansho on the dates previously noticed by the plaintiffs in the *Sitzer* action.  We are participating in these depositions based on the understanding that, consistent with Mr. Bierig's recent representations to the Court, "[if] there is some information that is provided to plaintiffs after these depositions . . . and Mr. Braun or his colleagues would like to have a follow-up deposition limited to certain things that have emerged that they didn't know at the time of the depositions, we will certainly work with Mr. Braun and his colleagues to try to accommodate them."  Sept. 22, 2021 Hr'g Tr. 31:5-12.

2. On September 16, 2021, we requested that NAR produce: (i) the "2005 scenario project," also sometime referred to as the "the Little Report" and (ii) all documents (including agreements) responsive to RFP No. 33 (or to confirm that all such documents have been produced).

    a. On our 9/20 call, you indicated that NAR would likely be willing to produce the "2005 scenario project," and, during the 9/22 status conference, you confirmed to the Court that NAR would produce this document. Sept. 22, 2021 Hr'g Tr. 15:21-22. Please advise when NAR intends to produce the "2005 scenario project."

    b. During our 9/20 conversation, you objected on burden grounds to producing all documents responsive to Request No. 33, but indicated that NAR would be willing to consider a narrowed version of this Request. As a compromise, Plaintiffs request that NAR produce: All agreements made since January 1, 2014 relating to Realtor.com or Upstream, and all Communications, reports, studies, or strategy documents relating to those agreements. This compromise proposal significantly narrows both the time period and substantive scope of our request.

        We further observe that the requested agreements and other responsive documents should independently been produced in response to our other document requests to the extent that they touch upon *inter alia*: the use of NAR's trade names or trademarks (RFP 3); restricting display or publication to consumers of compensation offered by listing brokers to cooperating brokers (RFP 10(a)); requiring listing brokers to make an offer of compensation to buyer brokers (RFP 10(b)); restricting, limiting, or prohibiting the copyrighting, distribution, sale, resale or syndication of MLS data (RFP 10(k)); the Challenged Restraints or the amount or type of compensation Brokers seek or obtain for providing real estate services (RFP 21); the role of MLSs in the market for Real Estate Services and any actual or potential competitors of or alternatives to MLSs (RFP 25). Please confirm that NAR collected and reviewed these documents (including from central files) in order to assess their responsiveness to these document requests.

3. Please produce meeting minutes for and any reports produced by the NAR's Strategic Thinking Advisory Committee (and its predecessor the Strategic Planning Committee), the Large Firms Directors Forum (and any predecessors), and the Real Estate Services (RES) Advisory Group (and any predecessors). These are responsive to Requests 6, 19, 25, 34, and 39. The Strategic Thinking Advisory Committee's self-described mission is to "[t]o identify and gather data that may affect the future of the National Association of REALTORS®, and to monitor and research threats, opportunities, key trends and issues, particularly from the fields that may impact the industry, our members, the Association, and the real estate consumer." For example, consistent with its mission, the Strategic Thinking Advisory Committee commissioned the DANGER Report, which addresses numerous issues that are relevant to the litigation, including real estate commissions and competition with MLSs. The Large Firms Directors Forum (and any predecessors), and the Real Estate Services (RES) Advisory Group are likewise relevant because they were vehicles for the Corporate Defendants to influence NAR policy and meet with senior NAR officials. Collecting and producing these meeting minutes and reports from NAR's central files should not be unduly burdensome.

Best,
Robby

**Robert A. Braun**
Partner

**COHEN**MILSTEIN

**Cohen Milstein Sellers & Toll PLLC**

1100 New York Ave. NW | Fifth Floor
Washington, DC 20005

phone 202.408.4600
fax 202.408.4699

**website** | **map**

**Powerful Advocates. Meaningful Results.**

*This e-mail was sent from Cohen Milstein Sellers & Toll PLLC. It may contain information that is privileged and confidential. If you suspect that you were not intended to receive it, please delete it and notify us as soon as possible.*

```
-------------------------------------------------------------------
This message and any attachments may contain confidential
information protected by the attorney-client or other privilege.
If you believe that it has been sent to you in error,
please reply to the sender that you received the message in
error. Then delete it. Thank you.
-------------------------------------------------------------------
```