# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, VALERIE NAGER, JACK RAMEY, DANIEL UMPA, and JANE RUH, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC., <br><br> Defendants. | Civil Action No.: 1:19-cv-01610 <br><br> **PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT THE NATIONAL ASSOCIATION OF REALTORS** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs request that Defendant The National Association of Realtors ("NAR") produce the documents and things herein requested within 30 days of the date of service at the offices of Cohen Milstein Sellers & Toll, PLLC, 190 South LaSalle Street, Suite 1705, Chicago, IL 60603, or such other time and place as may be agreed upon by counsel. Pursuant to Federal Rule of Civil Procedure 34(b), unless otherwise specified, all documents must be organized and labeled to correspond to the categories in the associated document request. Corrections and supplemental responses and production of documents are required to be made as provided for in Rule 26(e) of the Federal Rules of Civil Procedure.

### DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions shall apply to these document requests:

1. Unless otherwise specified, these requests for documents call for documents, data, and other information prepared, created, sent, altered, or received since January 1, 2007.

2. The terms "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of the requests documents which might otherwise be construed to be outside the scope so as to give the broadest possible meaning to a particular request in which either or both is used. The singular includes the plural number and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

3. "Meeting" means any assembly, convocation, or encounter, or contemporaneous presence of two or more persons for any purpose, whether or not planned, arranged, or scheduled in advance.

4.  The terms "the Association" or "NAR" mean the National Association of Realtors®, and all present and former officers, directors, agents, employees, or other persons acting for or on behalf of any of it.

5.  "Agreement" means any understanding, formal or informal, written or unwritten.

6.  "Any" means each and every.

7.  "Broker" means a person licensed by a state to provide real estate brokerage services to either a buyer or seller in a real estate transaction and includes any listing agent or buyer agent or sales associate who is affiliated with a broker.

8.  "Challenged Restraint" means (i) the requirement in NAR's Handbook on Multiple Listing Policy (2019) that "In filing a property with the multiple listing service of an association of REALTORS®, the participant of the service is making blanket unilateral offers of compensation to the other MLS participants, and shall therefore specify on each listing filed with the service, the compensation being offered to the other MLS participants"; (ii) the requirement in NAR's Handbook on Multiple Listing Policy (2019) that "Multiple listing services shall not publish listings that do not include an offer of compensation expressed as a percentage of the gross selling price or as a definite dollar amount, nor shall they include general invitations by listing brokers to other participants to discuss terms and conditions of possible cooperative relationships"; (iii) NAR Standards of Practice 3-2, 12-2, and 16-16; and (iv) NAR Case Interpretation #16-15; and the predecessors of each.

9.  "Communication" means any electronic, written, or oral exchange of information by any means.

10.  "Complaint" means the Consolidated Amended Class Action Complaint (ECF No. 84) or any superseding complaint filed in this case.

11. "Covered MLS" is defined according to the Complaint.

12. "Defendant" means any Defendant named in this action and its predecessors, wholly owned or controlled subsidiaries, successors, parents, and affiliates, together with present and former directors, officers, employees, agents, attorneys, representatives, or any persons acting or purporting to act on its behalf.

13. "Document" means any writing or other thing as described in Federal Rule of Civil Procedure 34.

14. "Franchisee" means any Broker or direct or indirect owner of Brokers that licenses intellectual property, a business model, a brand name, or other similar rights.

15. "Local Realtor Boards" means member associations of REALTORS ®.

16. "MLS" is defined according to Section 1 of the National Association of Realtors' Handbook on Multiple Listing Policy (2019).

17. "Person" means, without limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state or any foreign country.

18. "Policy" means any rule, procedure, directive, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized by you.

19. "Real Estate Services" means real estate brokerage services provided to home buyers, home sellers, and renters in a residential real-estate transaction by any listing agent or buyer agent or sales associate affiliated with a Broker.

20. "*Sitzer* action" means *Joshua Sitzer, et al., v. The National Association of Realtors, et al.,* Case No. 4:19-cv-00332-SRB (W.D. Mo).

21. "Trade Association" means any group, committee, subcommittee, or association, formal or informal, relating to Real Estate Services, including, but not limited to, the National Association of Realtors, Local Realtor Boards, and the Council on Multiple Listing Services.

22. "You" and "Your" mean The National Association of Realtors, its subcommittees, predecessors, successors, parents, subsidiaries and affiliates, together with its present and former directors, officers, employees, agents, consultants, attorneys, representatives, or any persons acting or purporting to act on its behalf.

23. Any documents withheld on the basis of privilege shall be identified and logged in accordance with the procedures set forth in the parties' ESI Order.

## SPECIFIC DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 1:**

Your annual and quarterly financial statements from 2011 to the present.

**REQUEST FOR PRODUCTION NO. 2:**

Charts or other documents sufficient to show from 1995 through the present Your organizational structure, including committees, subcommittees, groups, and boards; identification of officers, directors, and employees and the positions they hold or held; and Your ownership or other financial interests in other entities.

**REQUEST FOR PRODUCTION NO. 3:**

All agreements made by You relating to the right to use Your trade names or trademarks, whether those agreements are made directly with You or Your subsidiaries, affiliates, sub-franchisees, or sub-licensees, including documentation showing how any payments under such agreements are calculated and paid to You.

4

**REQUEST FOR PRODUCTION NO. 4:**

Documents sufficient to identify each person who has served on any NAR board, committee, subcommittee, group, or forum from January 1, 1996, to the present and the corporate affiliation of each.

**REQUEST FOR PRODUCTION NO. 5:**

Documents sufficient to identify each person who has obtained NAR membership as a "Corporate officer[] of a national real estate brokerage franchise organization," pursuant to Article III, Section 1(C)(1)(b) of the NAR Constitution or its predecessors.

**REQUEST FOR PRODUCTION NO. 6:**

From 1992 to the present, meeting minutes for NAR's Multiple Listing Policy Committee, Strategic Thinking Advisory Committee, Board of Directors, Large Firms Directors Forum, and Professional Standards Committee, and the predecessors of each.

**REQUEST FOR PRODUCTION NO. 7:**

All documents reflecting any communication or meeting with any Defendant, Franchisee, Trade Association, MLS, or Local Realtor Board regarding the Challenged Restraints.

**REQUEST FOR PRODUCTION NO. 8:**

All documents reflecting any communication or meeting with any Defendant, Franchisee, Trade Association, MLS, or Local Realtor Board regarding NAR's Handbook on Multiple Listing Policies.

**REQUEST FOR PRODUCTION NO. 9:**

All documents reflecting any communication or meeting with any Defendant, Franchisee, Trade Association, MLS, or Local Realtor Board regarding the commissions offered, paid, or received by Brokers in connection with Real Estate Services.

**REQUEST FOR PRODUCTION NO. 10:**

All documents and communications reflecting or relating to practices, policies, procedures, training materials (formal or informal), or software:

(a) Prohibiting, restricting, or inhibiting display or publication to consumers (including potential sellers, buyers, clients, or customers) of compensation offered by listing brokers to cooperating brokers;

(b) Requiring listing brokers to make an offer of compensation to buyer brokers in order to list a home on an MLS or conditioning MLS membership or participation on offering or accepting compensation to and from other MLS participants;

(c) Prohibiting buyer brokers from making the submission of an executed offer to purchase contingent on the listing broker's agreement to modify the offer of compensation or using the terms of an offer to purchase to attempt to modify the listing broker's offer of compensation;

(d) Permitting listing brokers to simultaneously represent a seller and buyer in a single transaction and receive the offer of compensation;

(e) Permitting brokers to represent their services as free—either provided that the potential for the broker to obtain a benefit from a third party is clearly defined or otherwise;

(f) Restricting or inhibiting any relationship or interaction between MLS and third-party real-estate platforms that provide information to consumers, such as Zillow;

(g) Enabling or permitting brokers to search for, filter, or exclude MLS listings based on the level or type of cooperative compensation offered by a listing broker;

(h) Prohibiting or restricting brokers from including identification of the listing broker in photographs of a residence listed for sale or in client views of listing;

(i) Inhibiting, restricting, prohibiting, or impeding the negotiation of offers of cooperative compensation between brokers;

(j) Requiring MLS members or participants to be a member of a local association of realtors®;

(k) Restricting, limiting, or prohibiting the copyrighting, distribution, sale, resale or syndication of MLS data;

(l) Encouraging or requiring syndicators, purchasers, or users of MLS data or operators if IDX sites, when displaying MLS listings, to separate MLS and non-MLS listings or discrimination between MLS and non-MLS listings;

(m) Restricting, limiting, or allowing the restriction or limitation of information contained in listings or entire listings displayed by IDX sites or VOWs; or

(n) Affecting any fiduciary duty owed by brokers to customers (including potential buyers, sellers, clients, or customers).

**REQUEST FOR PRODUCTION NO. 11:**

All documents relating to lower, reduced, or discounted real-estate brokers' offers of compensation or commissions, or to any particular real-estate broker's lower, reduced, or discounted offer of compensation or commissions, whether the lower, reduced, or discounted commission pertains to a listing broker or to a buyer broker, or to both, including all documents relating to:

(a) Discouraging or inhibiting lowering, reducing, or discounting commissions,

(b) Boycotting, refusing or declining to deal with brokers that offer lower, reduced, or discounted offers of compensation to buyer brokers;

(c) Any buyer broker declining or refusing to display, present, or provide information on any property to any buyer client because of the amount of compensation the buyer broker would receive, or

7

(d)     Any buyer broker using a residential purchase agreement to demand or require that the listing broker increase or otherwise change the listing commission or amount of compensation offered.

**REQUEST FOR PRODUCTION NO. 12:**

All documents relating to encouraging or recommending that buyer brokers contract or reach agreement with any client who is a potential buyer of real estate, including all documents relating to any:

(a)     Possible or actual reason, rationale, or basis for encouraging or recommending that buyer brokers contract or reach agreement with any client who is a potential buyer of real estate; or

(b)     Training session, video, or materials relating to encouraging or recommending that buyer brokers contract or reach agreement with any client who is potential buyer of real estate.

**REQUEST FOR PRODUCTION NO. 13:**

For the period from January 1, 1996, to the present, all documents relating to (i) any Trade Association meeting or event at which the Challenged Restraints were voted on, discussed, proposed, adopted, modified, repealed, implemented, or enforced; (ii) the legality of the Challenged Restraints; (iii) proposed changes to the Challenged Restraints, including any discussions to modify or abolish the Challenged Restraints; or (iv) the impact of the Challenged Restraints on the real estate market, including on discount or low-cost Brokers, buyer self-representation, competitive conditions, or broker or agent compensation.

**REQUEST FOR PRODUCTION NO. 14:**

All Civil Investigative Demands (CIDs) received regarding the Challenged Restraints or otherwise relating to the offer or payment of commissions by Brokers.

**REQUEST FOR PRODUCTION NO. 15:**

All documents, including any written answers, produced in response to any CIDs regarding the Challenged Restraints or otherwise relating to the offer or payment of commissions by Brokers.

**REQUEST FOR PRODUCTION NO. 16:**

All transcripts, recordings, or other documents reflecting any testimony given in response to any CIDs regarding the Challenged Restraints or otherwise relating to the offer or payment of commissions by Brokers.

**REQUEST FOR PRODUCTION NO. 17:**

All subpoenas or other process received from, or communications with, any state or federal regulatory or law enforcement agency regarding the Challenged Restraints or otherwise relating to the offer or payment of commissions by Brokers.

**REQUEST FOR PRODUCTION NO. 18:**

All documents produced in or discussing the *Sitzer* action.

**REQUEST FOR PRODUCTION NO. 19:**

Documents sufficient to show any financial or other material support You have received from Defendants, their affiliates, or their franchisees.

**REQUEST FOR PRODUCTION NO. 20:**

All documents relating to enforcement of the Challenged Restraints.

**REQUEST FOR PRODUCTION NO. 21:**

All manuals, brochures, guidelines, recommendations, policies, publications, and training materials relating to the Challenged Restraints or the amount or type of compensation Brokers may seek or obtain for providing Real Estate Services.

**REQUEST FOR PRODUCTION NO. 22:**

All documents relating to Brokers steering, encouraging, or discouraging potential buyers toward or away from a home based on the amount or type of compensation offered in that home's MLS listing.

**REQUEST FOR PRODUCTION NO. 23:**

All documents relating to complaints received from any customer of Real Estate Services, Broker, or agent regarding the Challenged Restraints or prices, pricing, or terms or conditions of sale, and all Documents reflecting any policy of Your organization concerning the handling of such complaints.

**REQUEST FOR PRODUCTION NO. 24:**

All documents relating to the development or use of standardized agreements concerning broker compensation, including listing agreements.

**REQUEST FOR PRODUCTION NO. 25:**

All documents evaluating, commenting on, or analyzing the role of MLSs in the market for Real Estate Services and any actual or potential competitors of or alternatives to MLSs.

**REQUEST FOR PRODUCTION NO. 26:**

Documents sufficient to show the types and format of data you retain concerning commissions or real estate transactions.

**REQUEST FOR PRODUCTION NO. 27:**

All documents relating to the named plaintiffs in this action.

**REQUEST FOR PRODUCTION NO. 28:**

Documents sufficient to describe Your policies or practices with respect to the retention or destruction of documents and the use of personal electronic devices for NAR business.

**REQUEST FOR PRODUCTION NO. 29:**

All documents referring to or reflecting communications with public relations, marketing, consultancy, or lobbying firms that relate to the Challenged Restraints or to the commissions offered or paid by Brokers in connection with real estate transactions.

**REQUEST FOR PRODUCTION NO. 30:**

All documents relating to communications with (i) CoreLogic, Inc., FBS Data Systems, or other companies that provide services to MLSs; and (ii) individuals or companies that use listing information re-sold by MLSs.

**REQUEST FOR PRODUCTION NO. 31:**

All documents relating to the collection, possession, compilation, maintenance, or retention of any data, transactional record, aggregation or summary of Broker commissions (including offers or actual commissions, whether setting forth the total commission or some portion of the commission) by NAR, an MLS, a Local Realtor Board, a Defendant or its franchisees or other subsidiaries or affiliates, or any third party.

**REQUEST FOR PRODUCTION NO. 32:**

All documents relating to rules considered, proposed, adopted or modified by the Northwest Multiple Listing Service on or after January 1, 2018, to allow commissions to be published on a Broker's public website; to allow home sellers and Brokers to choose not to offer a commission (or some part of a commission) in the listing agreement; to allow buyers to negotiate the commission as part of the buyer's offer to purchase the subject property; or otherwise to revise rules relating to commissions.

**REQUEST FOR PRODUCTION NO. 33:**

All agreements made since January 1, 1995 relating to Realtor.com, Realtor Information Network (RIN), or SpotRealtor.com, Opcity, ListHub, Upstream, and Propy, and all Communications, reports, studies, or strategy documents relating to those agreements.

**REQUEST FOR PRODUCTION NO. 34:**

All documents relating to the D.A.N.G.E.R. (Definitive Analysis of Negative Game Changers Emerging in Real Estate) report, including but not limited to (a) all drafts, versions, and iterations; and (b) all related communications.

**REQUEST FOR PRODUCTION NO. 35:**

All agreements with and policies applicable to any Covered MLS or associated Local Realtor Board, including any documents relating to Your legal right or practical ability to obtain documents in possession, custody, or control of any such Covered MLS or Local Realtor Board.

**REQUEST FOR PRODUCTION NO. 36:**

All documents relating to the Department of Justice's investigation of GLVAR and the Civil Investigative Demand to GLVAR, including all communications with GLVAR or the Nevada Association of Realtors®.

**REQUEST FOR PRODUCTION NO. 37:**

One copy of each edition of NAR's publication titled, "The Answer Book – The Source for Realtor® Association Management Leaders" (or similar publications) published or in effect since January 1, 1996.

**REQUEST FOR PRODUCTION NO. 38:**

Data sufficient to show, for each actual or potential purchase, sale, or rental of residential real estate, (i) the location of the property; (ii) the date of the transaction; (iii) whether either of the counterparties was self-represented and, if not, the Broker representing each; (iv) any unique

identifier associated with the transaction; (v) the amount and other terms of any offer; (vi) the amount and other terms of any commission offered or paid; (vii) the length of time the property was on the market; (viii) all other pricing information concerning the property purchase, sale, or rental; and (ix) any other available pricing or commission information.

**REQUEST FOR PRODUCTION NO. 39:**

All documents and data concerning projected, estimated, planned, or actual conditions in the markets for residential real estate and Real Estate Services (both within the United States and internationally), including: (i) the extent or type of competition; (ii) market shares; (iii) competitive position; (iv) agent and Broker compensation; (v) residential real estate costs, supply, and demand; (vi) profits, revenues, margins; and (vii) other industry statistics.

**REQUEST FOR PRODUCTION NO. 40:**

All reports, studies, or data concerning the offer or payment of commissions by real estate agents in the United States and internationally, including the level of commissions, how commissions are set, how commissions are split between brokers, whether buyers and sellers are informed that commissions are negotiable, and any impact of commission level on property sales.

**REQUEST FOR PRODUCTION NO. 41:**

All documents relating to any prohibition, restriction, or inhibition by REcolorado of the display or publication to consumers (including potential sellers, buyers, clients, or customers) of compensation offered by listing brokers to cooperating brokers.

**REQUEST FOR PRODUCTION NO. 42:**

All documents relating to possibly or actually decoupling or uncoupling the listing broker and buyer broker, or to the necessity or purpose of coupling the listing broker and buyer broker.

**REQUEST FOR PRODUCTION NO. 43:**

All Documents that support or disprove any defense actually or intended to be alleged or asserted by any Defendant in this action.

**REQUEST FOR PRODUCTION NO. 44:**

All expert reports, testimony, and reliance materials in the *Sitzer* action.

**REQUEST FOR PRODUCTION NO. 45:**

All documents reflecting or relating to efforts to comply with or conceal violations of antitrust laws, including compliance policies, training materials, and documents or communications reflecting concealment efforts

January 10, 2020                          Respectfully submitted,

                                       */s/ Kit A. Pierson*

Kit A. Pierson
Daniel A. Small
Benjamin D. Brown
Robert A. Braun
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
(202) 408-4600
(202) 408-4699 Fax
kpierson@cohenmilstein.com
dsmall@cohenmilstein.com
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com

Carol V. Gilden (Bar No. 6185530)
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
(312) 357-0370
cgilden@cohenmilstein.com

Marc M. Seltzer
Steven G. Sklaver
SUSMAN GODFREY L.L.P.

14

1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
(310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Matthew R. Berry
Alex Aiken
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
(206) 516-3880
mberry@susmangodfrey.com
aaiken@susmangodfrey.com

Beatrice C. Franklin
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
(212) 729-2021
bfranklin@susmangodfrey.com

Steve W. Berman (Bar No. 3126833)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Daniel Kurowski
Whitney Siehl
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
wsiehl@hbsslaw.com

Jeff D. Friedman
Rio S. Pierce
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000
jeff@hbsslaw.com
riop@hbsslaw.com

15

George Farah
Rebecca Chang
HANDLEY FARAH & ANDERSON PLLC
81 Prospect Street
Brooklyn, NY 11201
(212) 477-8090
gfarah@hfajustice.com
rchang@hfajustice.com

William H. Anderson
HANDLEY FARAH & ANDERSON PLLC
4730 Table Mesa Drive Suite G-200
Boulder, CO 80305
(303) 800-9109
wanderson@hfajustice.com

Benjamin David Elga
Brian Shearer
JUSTICE CATALYST LAW
25 Broadway, Ninth Floor
New York, NY 10004
(518) 732-6703
belga@justicecatalyst.org
brianshearer@justicecatalyst.org

Monte Neil Stewart
Russell E. Marsh WRIGHT MARSH & LEVY
300 S. 4th Street, Suite 701
Las Vegas, NV 89101
(702) 382-4004
monteneilstewart@gmail.com
rmarsh@wmlawlv.com

Vildan A. Teske
Marisa C. Katz
TESKE KATZ KITZER & ROCHEL PLLP
222 South Ninth Street ● Suite 4050
Minneapolis, MN 55402
(612) 746-1558
teske@tkkrlaw.com
katz@tkkrlaw.com

Kenneth A. Wexler
Mark R. Miller
Thomas A. Doyle

16

        WEXLER WALLACE LLP
        55 W. Monroe Street, Suite 3300
        Chicago, IL 60603
        (312)346-2222
        (312)346-0022 Fax
        kaw@wexlerwallace.com
        mrm@wexlerwallace.com
        tad@wexlerwallace.com

        Daniel E. Gustafson
        Daniel C. Heldlund
        Daniel J. Nordin
        Kaitlyn L. Dennis
        GUSTAFSON GLUEK PLLC
        Canadian Pacific Plaza
        120 South Sixth Street, Suite 2600
        Minneapolis, MN 55402
        (612) 333-8844
        (612) 339-6622 Fax
        dgustafson@gustafsongluek.com
        dhedlund@gustafsongluek.com
        dnordin@gustafsongluek.com
        kdennis@gustafsongluek.com

        *Attorneys for Plaintiffs*