IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, JACK RAMEY, DANIEL UMPA, and JANE RUH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No: 1:19-cv-01610<br><br>Judge Andrea Wood |

## JOINT STATUS REPORT

Pursuant to the Court's Order (ECF No. 299), Plaintiffs Christopher Moehrl, Michael Cole, Steve Darnell, Jack Ramey, Daniel Umpa, and Jane Ruh, on behalf of themselves and all others similarly situated ("Plaintiffs"), and Defendants The National Association of Realtors®, Realogy Holdings Corp., HomeServices of America, Inc., BHH Affiliates, LLC, HSF Affiliates, LLC, The Long & Foster Companies, Inc. (collectively, "HomeServices"), RE/MAX LLC ("RMLLC"), and Keller Williams Realty, Inc. ("Defendants"), (collectively, the "Parties"), respectfully submit this Joint Status Report setting forth the current status of discovery.

### I. DISCOVERY UPDATE

Fact discovery is continuing to progress. Plaintiffs have now conducted twenty-five depositions to date and have two additional depositions scheduled for next week. The Parties have also served and responded to several sets of interrogatories and requests for production. Plaintiffs and NAR continue to confer regarding certain discovery issues, including: (i) the additional discovery that was the subject of Plaintiffs' October 19, 2021 motion to compel; and (ii) NAR's production of certain meeting and event recordings. Although the Parties have made considerable progress on these issues, Plaintiffs anticipate seeking the Court's assistance in the event that

productions do not occur shortly and/or the parties are unable to resolve their remaining differences over the scope of any production. Plaintiffs and the other Defendants are also conferring on certain document discovery issues, including the supplementation of Defendants' prior document productions.

The Parties have also served and received discovery from various third parties, including the covered MLSs. Plaintiffs await the production of certain additional documents that some of the subpoenaed MLSs have not yet produced, despite agreeing to do so. Plaintiffs expect that if they do not receive these documents shortly, they will seek the Court's assistance.

The current disputes between the Parties are discussed below. The Court should note, however, that while the Parties have generally exchanged positions and views, unlike past status reports, the Parties have been unable to review each other's arguments before presenting them to the Court. As noted above, the Parties continue to confer on additional discovery issues, including the scope of certain document requests. If, after further conferring, the Parties are unable to resolve these discovery issues, they will raise them with the Court when they become ripe for submission.

## II.     POSITIONS ON SETTLEMENT DISCUSSIONS

Plaintiffs are open to discussing settlement. Defendants are always willing to consider settlement. Defendants would be willing to engage in discussions with Plaintiffs at the appropriate time, but do not believe this is an appropriate time for any such dialogue.

## III.    DEFENDANTS' REQUEST FOR AN EXTENSION OF THEIR MAY 10, 2022 DEADLINES

Plaintiffs' motion for class certification and original brief in support of class certification were filed on February 22, 2022. *See* Docket Nos. 301, 302. Plaintiffs filed corrected class certification materials on March 9, 2022. *See* Docket No. 306. Under the prior schedule, Defendants' deadlines for filing a response to Plaintiffs' class certification motion and for filing *Daubert* motions regarding Defendants' class certification experts are currently May 10, 2022. *See* Docket No. 278. Defendants seek an extension of the current deadline, which was set before Plaintiffs filed their class certification papers. The Parties conferred regarding an extension of both deadlines, but were unable to reach agreement. The Parties' respective positions are set out below.

### Defendants' Position

Defendants request that the schedule for filing opposition materials to Plaintiffs' class certification motion and for filing *Daubert* motions on Plaintiffs' two class certification experts be extended from May 10, 2022 to June 14, 2022. This extension is requested with the expectation that the Parties will agree upon dates for the depositions of Plaintiffs' experts to occur before May 30, 2022.

Under the Court's November 11, 2021 Scheduling Order, Plaintiffs' motion for class certification and supporting expert reports were due on February 23, 2022. *See* Docket No. 278 at 1. Without any advance warning, and without leave of court, Plaintiffs filed a "corrected" class

certification brief two weeks later on March 9, 2022, to make substantive changes to Plaintiffs' brief and the two expert reports. *See* Docket No. 306. The supposed "corrections" included a change of hundreds of millions of dollars to Plaintiffs' damages figure. Thus, Plaintiffs' final class certification brief and expert reports were not provided to Defendants until more than two weeks after the this Court's deadline for those filings. In light of these delays, an extension of time for Defendants to respond and file *Daubert* motions by *at least* two and a half weeks is warranted.

Beyond that, the complexity and unanticipated length of Plaintiffs' two expert reports – nearly 400 pages in total – separately justifies the modest extension requested by Defendants. Defendants' request for additional time to respond to class certification and file *Daubert* motions comports with the briefing schedules by courts in this district and other districts involving similarly complex lawsuits. *See, e.g.*, *In re. Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, (Docket No. 3788, at 2) (providing three months for defendants to respond to plaintiffs' class certification motion and to file *Daubert* motions); *see also Sitzer v. National Association of Realtors*, No. 4:19-cv-00332 (W.D. Mo.) (Docket Nos. 203 459, 543) (providing approximately nine weeks for defendants to respond to plaintiffs' class certification motion and to file *Daubert* motions, which was later changed to five months upon agreement of the parties and after the filing of Plaintiffs' class certification materials).

Further, the parties are still negotiating dates for the depositions of Plaintiffs' experts, both of whom have limited availability, as well as dates for the depositions of the named Plaintiffs. As of this filing, the expert deposition dates proposed by Plaintiffs would occur within two weeks of the class certification opposition and *Daubert* motion deadline. That would leave Defendants with insufficient time to incorporate that deposition testimony into their briefs and their opposition expert report(s). The compressed timeline in the current schedule will unfairly prejudice Defendants. Conversely, an additional few weeks for Defendants to complete that discovery and file their class certification brief and *Daubert* motions will not prejudice Plaintiffs.

For these reasons, Defendants respectfully request that the deadlines for filing their response to Plaintiffs' class certification motion, filing their own expert reports, and for filing *Daubert* motions on Plaintiffs' two class certification experts be extended from May 10, 2022 to June 14, 2022. The remaining deadlines associated with class certification briefing would be extended by a commensurate interval. Since there are no other deadlines that would be affected by this extension, there should be no prejudice to Plaintiffs.

**Plaintiffs' Position**

Plaintiffs opposed Defendants' baseless request for a 5-week extension of their May 10, 2022 filing deadline. As this Court previously recognized: "th[e] case schedule was the product of extensive negotiations between the parties and embodies the Court's resolution of certain of their disputes." ECF No. 259 at 4. As a result, the Parties "were entitled to rely on that schedule . . . ." *Id*. Defendants previously represented to the Court that they required just under 11 weeks to prepare and submit their class certification and *Daubert* filings. Joint Status Report, ECF No. 191 (reflecting Defendants' request for 74 days to file these materials). The Court subsequently granted Defendants' proposed interval over Plaintiffs' proposed (slightly shorter) interval.

Scheduling Order, ECF No. 196 at 2 (reflecting a 76-day interval); Scheduling Order, ECF No. 278 (reflecting a 76-day interval).

Defendants now seek a substantial 5-week (nearly 50%) increase in the amount of time they have to prepare their class certification and *Daubert* materials. Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Accordingly, to justify their requested extension, Defendants have attempted to manufacture a deposition scheduling crisis through their own dilatory and obstinate conduct.

Defendants waited a month into their 11-week preparation period before even requesting dates for the depositions of Profs. Elhauge and Economides. *See* Mar. 23, 2022 email from David Kully to Pls.' Counsel (first requesting dates for expert depositions). Despite Defendants' delay, Plaintiffs began proposing deposition dates a week later and, in response to Defendants' request for additional dates, ultimately proposed 3 different potential deposition dates for each of Plaintiffs' experts (including options in both late April and the first week of May). Defendants responded by categorically refusing *all* of these dates and demanding to schedule both experts' depositions *after* Defendants' class certification and *Daubert* filings are due. Notably, Defendants have not actually indicated that they are unavailable during the multiple dates Plaintiffs have proposed. Defendants have simply refused to schedule these depositions on the circular grounds that they are seeking an extension to their May 10, 2022 filing deadline.

Defendants have erected similar obstacles to scheduling the class representatives' depositions. Plaintiffs proposed dates for the majority of the class representatives on March 25—and two weeks later still have not received *any* response regarding the dates proposed for two of those class representatives (Jane Ruh and Michael Cole). Moreover, the particular deposition dates that Plaintiffs have proposed are consistent with the time period requested by Defendants and are not a basis for granting a five-week extension. Defendants asked Plaintiffs to propose dates "before the end of April." Mar. 23, 2022 email from David Kully to Pls.' Counsel. All of Plaintiffs' proposed deposition dates were consistent with Defendants' requested period with only one exception.[1]

Defendants have also sought to pin their request for a **5-week** extension on the modest corrections that Profs. Elhauge and Economides made to their expert reports only **2 weeks** after those reports were originally filed.[2] But these corrections, which were made promptly and were

---

[1] Despite being consistent with Defendants' practice for many of the witnesses that Plaintiffs have sought to depose in this case, Defendants complained that Plaintiffs initially proposed one date for their requested depositions. In response, Plaintiffs proposed multiple dates for many of the class representative and expert deponents—e.g., Prof. Einer Elhauge (3 dates proposed); Prof. Nicholas Economides (3 dates proposed); Jack Ramey (3 dates proposed). But in each case, Defendants have rejected *all* of Plaintiffs' proposed dates.

[2] Sixteen days after Plaintiffs' class certification deadline, on March 11, 2022, Defendants sent Plaintiffs a letter identifying minor coding issues with a handful of the programs included in the expert backup materials Plaintiffs produced. *See* Email from Robert MacGill to Pls. Counsel, dated Mar. 11, 2022 at 10:41 am ET. Plaintiffs addressed these issues less than 5 hours later. *See* Email from Robert Braun to Robert MacGill, dated Mar. 11, 2022 at 3:25 pm ET. These minor issues—which were promptly resolved (i) nearly a month

overwhelmingly non-substantive, would not have had *any* meaningful impact on Defendants' ability to meet their existing May 10, 2022 deadline. The Corrected Expert Reports include no new conclusions, methodologies, analyses, or opinions—Plaintiffs encourage the Court to review the redlines submitted with the corrected report to confirm this. ECF Nos. 306-8, 306-10. As those redlines reflect, the changes made to the reports were overwhelmingly limited to correcting typos and a handful of minor calculation errors that resulted in small adjustments to certain numbers reflected in the reports. As an example, the original report inadvertently used the median, rather than the mean, UK commission rate (even though the median rate was used for the remaining benchmark countries). Correcting this (and other even more minor) issues—which did not alter any methodologies reflected in the original reports or result in any substantive changes to either expert's opinions—yielded small adjustments to the damages estimates.[3] These sorts of corrections, which were made more than a month ago, would not have impeded Defendants' ability to depose either expert or otherwise meet their May 10, 2022 deadline. But even if one assumes counterfactually that these corrections prevented Defendants from doing *any* work during the two weeks between Plaintiffs' class certification deadline and the filing of the corrected reports, this would still only support a 2-week extension; not the 5-week extension Defendants seek.

To the extent that the Court nonetheless grants Defendants an extension, Plaintiffs request an equivalent extension to our class certification deadlines—e.g., to the extent Defendants' filing interval is increased from 76 to 86 days, Plaintiffs' next filing interval would increase from 63 to 73 days. Plaintiffs are already disadvantaged by having less time to reply to Defendants filings than Defendants have to respond to ours. Moreover, Defendants would inevitably use any additional time allotted them to include additional analyses to which Plaintiffs and our expert would need to respond. For this reason, among the most important considerations to Plaintiffs when the parties negotiated the original case schedule was ensuring that the time intervals between Defendants' class certification opposition and Plaintiffs' class certification reply were roughly equivalent. Plaintiffs further understand that Defendants do not oppose extending the interval for Plaintiffs' filings by a period equivalent to any extension they are granted.

---

ago and (ii) just over two weeks after Plaintiffs' class certification deadline—cannot logically justify Defendants' request for a five-week extension.

[3] To the extent Defendants attempt to suggest otherwise, Plaintiffs note that the modest corrections to the expert reports of Profs. Elhauge and Economides are consistent with both Federal Rules of Civil Procedure and common practice. Expert reports must be supplemented "when required under Rule 26(e)." Fed. R. Civ. P. 26(a)(2)(E). Under Rule 26(e), a party "must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1) (emphasis added). Such corrections are generally timely as long as they are "disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2); see also Gilbane Building Co. v. Downers Grove Community High School District No. 99, 2005 WL 838679, at *7 n.11 (N.D. Ill. Apr. 5, 2005) ("Leave of court is not required before a party may supplement its expert disclosures. Rather, it is the opposing party's obligation to bring any objections to supplemental disclosures to the court's attention."); Qualcomm Inc. v. Broadcom Corp., 2006 WL 5201392, at *2-3 (S.D. Cal. Dec. 14, 2006) (holding a supplemental declaration served "three months after the expert disclosure deadline" timely because it was served prior to the "pretrial disclosures deadline, or within the time expressly allotted for such supplementation under the Federal Rules").

## IV. PLAINTIFFS' REQUEST FOR PRODUCTION OF THE CLASS CERTIFICATION AND *DAUBERT* FILINGS IN THE *BURNETT* LITIGATION

Plaintiffs request Defendants produce: (1) the class certification briefs and exhibits in *Burnett*, and (2) the *Daubert* briefs and exhibits filed in *Burnett*. Defendants believe production of sealed class certification briefs in *Burnett* and the *Daubert* motions filed in *Burnett* would be improper in this matter.

### **Plaintiffs' Position**

Plaintiffs seek to compel the production of sealed class certification and *Daubert* briefing and exhibits submitted in the *Burnett* case. Defendants have refused to produce these materials even though they are both relevant to and plainly within the scope of Plaintiffs' discovery requests. *See* Pls.' Req. for Production No. 55 ("From the *Sitzer* action, produce unredacted versions of . . . pleadings, motions, and briefs, including exhibits thereto that are not publicly available on the court docket").

The *Burnett* class certification and *Daubert* filings are discoverable because they are relevant to, and may constitute admissible evidence in, the *Moehrl* litigation—which involves identical Defendants, challenges similar conduct, and involves overlapping evidence. Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).

The *Burnett* filings are relevant, including because a party's filings may be admissible evidence in a subsequent case. Federal courts routinely hold that statements made on behalf of a party in other legal proceedings are admissible in separate litigation. *See, e.g.*, *Williams v. Union Carbide Corp.*, 790 F.2d 552, 555-56 (6th Cir. 1986) ("An opening statement by an attorney is admissible in a later lawsuit against his client."); *United States v. GAF Corp.*, 928 F.2d 1253, 1259 (2d Cir. 1991) (same). For instance, many courts "have allowed introduction of prior inconsistent pleadings as substantive evidence pursuant to Fed. R. Evid. 801(d)(2)." *Thyssen Elevator Co. v. Drayton-Bryan Co.*, 106 F. Supp. 2d 1355, 1360 (S.D. Ga. 2000) (citing *Koch v. Koch Indus., Inc.*, 996 F. Supp. 1273, 1277 (D. Kan. 1998) for the point that "statements made in briefs may be considered admissions")). In addition, "[p]rior pleadings may be introduced on cross examination for use as an impeachment tool under Fed. R. Evid. 613." *Thyssen Elevator Co.*, 106 F. Supp. 2d 1355, 1360 (S.D. Ga. 2000). Accordingly, Plaintiffs have the right to examine Defendants' experts and witnesses on Defendants' filings in the *Burnett* case—including to point out inconsistencies in the positions taken by Defendants and their experts on identical or similar issues.

Moreover, Defendants' refusal to produce these materials contradicts Defendants' repeated representations—in federal court—about the close relationship between the *Moehrl* and *Burnett* lawsuits. Defendants themselves have argued that the *Burnett* (formerly *Sitzer*) suit "alleges the same core, substantive allegations as in *Moehrl*"; that "both *Moehrl* and *Sitzer* allege the same general anticompetitive conduct"; and that "[d]espite the complementary MLSs at issue in each complaint, the core allegations are the same, are not alleged to vary by geographic market, and

discovery would necessarily overlap because each complaint focuses on Defendants' alleged conduct—i.e., Defendants' corporate policies and an alleged agreement between Corporate Defendants and NAR." Suggestions in Support of Corporate Defendants' Motion to Transfer, *Burnett v. NAR*, No. 19-cv-00332 (W.D. Mo.), ECF No. 62, at 5-7 (July 10, 2019). Defendant NAR has likewise asserted that the *Sitzer* and *Moehrl* actions are "virtually identical." Suggestions in Support of Motion of Defendant National Association of Realtors to Transfer this Case to the Northern District of Illinois, *Burnett*, No. 19-cv-00332 (W.D. Mo.), ECF No. 59, at 14 (July 10, 2019).[4]

Nor can Defendants make any serious argument that providing Plaintiffs with briefing and exhibits already drafted and filed in the *Burnett* litigation would be unduly burdensome. *See Belcastro v. United Airlines, Inc.*, No. 17-cv-1682, 2019 WL 1651709, at *6 (N.D. Ill. Apr. 17, 2019) ("The Court cannot sustain a proportionality objection without a specific showing of the burden that the objecting party would endure and why it is disproportionate to the needs of the cast."). The process of conveying these documents to Plaintiffs here would require a few hours—at most.

Finally, Plaintiffs' motion is necessitated in part by Defendants' own conduct. Ordinarily, a party need not seek court filings through discovery because such filings are required to be made on the public docket. Here, however, Defendants filed their *Burnett* class certification and *Daubert* briefing entirely under seal—and, despite the passage of many months, have not filed redacted versions on the public docket. Defendants' failure to timely file public versions of these documents appears to be an effort to keep the relevant materials out of the hands of Plaintiffs and the public.

This is a misuse of the judicial sealing procedure and a violation of the First Amendment and common law rights of the public (which includes Plaintiffs and the proposed class). The Seventh Circuit has acknowledged a "long-recognized presumption in favor of public access to judicial records."[5] *Matter of Cont'l Illinois Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984). This presumption in favor of access is so "fundamental to a democratic state" that it is "of constitutional magnitude." *Id*. Nor is it sufficient for a party to promise access to court filings at some future date—"the presumption of access normally involves a right of *contemporaneous* access." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) ("We hold that documents submitted to a court in support of or in opposition to a motion for summary judgment are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment."). The constitutional presumption that Plaintiffs will have access

---

[4] This Courts' prior ruling limiting Plaintiffs' access to a *different* set of materials (i.e., Defendants' expert reports in *Sitzer*) until after Defendants' expert disclosure deadline in this case does not preclude Plaintiffs' separate request here for non-expert materials. At minimum, Defendants should be required to produce the *Burnett* class certification and *Daubert* filings on their deadline for serving their expert disclosures.

[5] Consistent with this presumption, the rules of this District ordinarily require the contemporaneous filing of public versions of sealed documents. *See, e.g.*, *Nwoke v. Univ. of Chicago Med. Ctr.*, No. 16-cv-9153, 2020 WL 1233829, at *1 (N.D. Ill. Mar. 13, 2020) (holding that N.D. Ill. Local Rule 26.2 requires that, when documents are filed under seal, parties must file public redacted versions).

to Defendants' filings in the *Burnett* case further underscores Plaintiffs' right to obtain these materials through the discovery process.

**Defendants' Position**

Defendants oppose producing the class certification briefs and *Daubert* motions filed in *Burnett* on two grounds. First, the class certification and *Daubert* briefs filed in *Burnett* primarily reflect legal argument that relate to a different expert, different named plaintiffs, and a different damages analysis. As such, they have no probative value here. Plaintiffs fail to offer any explanation for why such materials should be produced in this litigation. Second, the filings requested by Plaintiffs are under the purview of the *Burnett* court and currently remain under seal.

Moreover, although Defendants have disputed the relevance of expert opinion offered in opposition to class certification in the *Burnett* case, Defendants have agreed to produce the class certification opposition expert report(s) filed in *Burnett* and any deposition transcripts of Defendants' expert taken by the *Burnett* Plaintiffs. Defendants have offered to produce these materials when Defendants (under the Expert Discovery Order (Docket No. 189)) produce their *Moehrl* expert's backup materials, only five days after Defendants file their opposition brief and accompanying expert materials in this case. This offer should more than satisfy Plaintiffs' demand for materials from the *Burnett* case.

V. **DEFENDANTS' REQUEST TO ENLARGE THE TIME PERMITTED FOR EXPERT DEPOSITION QUESTIONING**

Defendants request up to nine hours on the record to depose each of Plaintiffs' class certification experts. Plaintiffs oppose allotting nine hours of record time for each deposition.

**Defendants' Position**

Defendants request up to nine hours of record time to depose each of Plaintiffs' class certification experts. The significance and complexity of the issues in the expert reports necessitate that the deposition of these two experts be longer than the 7-hour general limit for depositions. As noted above, the expert witness reports by Professors Elhauge and Economides span approximately 400 pages. *See* Docket Nos. 302-6 and 302-7. Moreover, because these reports are dense and highly technical and claim that Plaintiffs can produce common class-wide evidence to support billions of dollars of damages, it is likely that more than one defendant may wish to examine these experts on non-duplicative issues. To fully and adequately address relevant topics raised by Plaintiffs' experts, Defendants require additional time for each expert deposition.

The Federal Rules of Civil Procedure explicitly provide that depositions longer than seven hours should be permitted if necessary to fairly examine a deponent. *See* Fed. R. Civ. P. 30(d)(1) ("The court *must* allow additional time consistent with Rule 26(b)(1) and (2) *if needed to fairly examine the deponent*." (emphasis added)). The advisory committee notes clarify that extended depositions may be particularly justified "[i]n multi-party cases [where] the need for each party to examine the interest may warrant additional time." Fed. R. Civ. P. 30(d) Advisory Committee Notes to the 2000 Amendment. This is such a multi-party case where Defendants require more than seven hours to depose Plaintiffs' expert witnesses.

Further, in factually parallel cases, courts have permitted depositions longer than seven hours. *See, e.g.*, *Sexton v. Exxon Mobil Corp.*, No. 17-482-JWD-RLB (M.D. La. Jan. 31, 2020) (Docket No. 224) at 4–5 (requiring expert witness to be available for two days of depositions, not to exceed 7 hours a day, and "highlight[ing]" as a justification that the matter involved "multi-party litigation [with] a voluminous expert report"); *see also MRP Properties, LLC v. United States of America*, No. 17-11174 (E.D. Mich. Apr. 2, 2020) (Docket No. 59) (permitting 10-hour depositions in factually complex case). Similar to those cases, this matter involves multiple parties and Plaintiffs' experts have provided voluminous expert witness reports.

### **Plaintiffs' Position**

Defendants fail to demonstrate any basis for their request to extend their deposition questioning of Profs. Elhauge and Economides beyond the time provided for in the Federal Rules of Civil Procedure. "Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. . . ." Fed. R. Civ. P. 30(d)(1). In order for a court to depart from the 7-hour rule, the moving party must establish "good cause" that additional time is necessary for a fair examination of the deponent. *See* Fed. R. Civ. P. 30(d)(1); *Withers v. eHarmony, Inc.*, 267 F.R.D. 316, 321 (C.D. Cal. 2010) ("The party seeking a court order to extend or shorten a deposition examination, or otherwise alter the deposition limitations, is expected to show good cause to justify such an order.").

In making such a determination, "the court should begin with the presumption that the seven-hour limit was carefully chosen and that extension of that limit should be the exception, not the rule." *Somerset Studios, LLC v. Sch. Specialty, Inc.*, No. 10-cv-5527, 2011 WL 4344596, at *5 (N.D. Cal. Sept. 14, 2011) (citation omitted). This is because "[t]he seven-hour limit imposed by Rule 30(d)(1) encourages efficiency in depositions." *Apollo v. Stasinopoulos*, No. 18-cv-6475, 2021 WL 1414090, at *2 (N.D. Ill. Apr. 14, 2021). "While parties may wish to cover a wide breadth of topics in a given deposition, they are necessarily required to prioritize their questions in order to remain within the time limits set by the Federal Rules." *Id*.

There is no good cause here for extending Defendants' depositions of Plaintiffs' experts beyond the 7 hours specified in the Federal Rules. In this case, Defendants will already have *at least three* opportunities to examine Plaintiffs' experts—at class certification, summary judgment, and trial. In addition, Defendants have already indicated that they will seek a *fourth* opportunity to examine Plaintiffs' experts at a class certification hearing (and they may seek a *fifth* opportunity to examine Plaintiffs' experts at a future summary judgment hearing). Defendants will also have multiple other opportunities to examine, respond to, and attempt to rebut the opinions of Plaintiffs' experts, including through their own experts' reports, their class certification briefing, and any *Daubert* motions that they decide to submit. In addition, because Profs. Elhauge and Economides submitted two separate reports, under the Federal Rules, Defendants will be permitted 14 hours of expert deposition questioning at the class certification stage.

It is likely for this reason that, in counsel's experience, in the substantial majority of antitrust cases (even those involving multiple defendants), courts do not deviate from the default 7-hour limit. Defendants are unable to demonstrate why this case counsels a different result. Nor

does the existence of multiple Defendants justify additional question time. The opinions offered by Profs. Elhauge and Economides are common to all of the Defendants.

The course of the Parties' negotiations on this issue also casts serious doubt on how genuine Defendants' claims are regarding their need for additional expert deposition questioning time. Plaintiffs previously advised Defendants that Prof. Elhauge's deposition could proceed in person (barring specific circumstances agreed by the parties), but Prof. Economides' deposition would need to occur remotely because he was at increased risk from contracting COVID. In response, Defendants indicated that they would seek additional time to question Prof. Economides—but did not ask for *any* additional time to question Prof. Elhauge. Moreover, the only justification Defendants offered for seeking additional time for questioning Prof. Economides was their concern over the efficiency of remote deposition technology.[6]

But Defendants reversed course when Plaintiffs advised that, if Defendants sought additional time for Prof. Economides' deposition due to its remote status, then Plaintiffs too would seek additional questioning time for any remote depositions we have conducted or will conduct going forward. In response, *the evening before this status report was due*, Defendants advised Plaintiffs that they were jettisoning their prior justification for extending Prof. Economides' deposition on the basis of it proceeding remotely. Defendants further stated—for the first time— that they intended to seek additional time to depose Prof. Elhauge (as well as Prof. Economides) and that they would justify their request for additional questioning time on the nature of the opinions offered by Profs. Elhauge and Economides. Defendants' changing positions, and the shifting justifications for those positions, belie Defendants' claimed need for additional deposition time for either expert.

To the extent Defendants are nonetheless permitted additional time to question Plaintiffs' experts, Plaintiffs seek a similar extension for our questioning of Defendants' expert (or experts). Specifically, if Defendants are permitted 9 hours of questioning time for Plaintiffs' two class

---

[6] To the extent Defendants revive this argument, Plaintiffs oppose any effort by Defendants to use Prof. Economides' health status in order to obtain an exception to Rule 30(d)(1)'s 7-hour limit on deposition testimony. The remote deposition protocol that Defendants initially proposed, and which has already governed two dozen depositions in this case, does not provide for any additional time for remote depositions. Moreover, there is no evidence that remote depositions are less efficient than in-person depositions. To the contrary, in Plaintiffs' counsel's experience, remote depositions are often *more* efficient than in-person depositions. *See, e.g.*, *Lopez v. CIT Bank, N.A.*, No. 15-cv-00759, 2015 WL 10374104, at *2 (N.D. Cal. Dec. 18, 2015) (finding that remote depositions are "effective, efficient, and costeffective" and that "[m]odern videoconference software permits participants to quickly and conveniently share documents and images with each other."); *In re Terrorist Attacks on Sept. 11, 2001*, 337 F.R.D. 575, 578 (S.D.N.Y. 2020) ("remote depositions do not cause undue hardship and can be conducted with relative ease given current technology"). For instance, taking counsel are freed from the requirement that they distribute paper exhibit copies to each of the numerous other participating counsel. Taking counsel can also use advanced exhibit sharing software to quickly focus the deponent and other participating counsel on the exhibit page or paragraph relevant to any questioning. Moreover, now that most counsel have several years of remote deposition experience, significant technical difficulties are rare and those that do arise are usually quickly resolved and do not count against taking counsel's deposition time. Finally, the particular amount of time Defendants request (10 hours) for questioning further appears calculated to force a two-day deposition, which would confer an unfair advantage on Defendants.

certification experts (for a total of 18 hours), Plaintiffs seek the greater of (i) 18 hours total or (ii) 9 hours per expert for our questioning of Defendants' experts.

## VI. THIRD PARTY DEPOSITION LIMITS

The Parties previously agreed to "meet and confer regarding any limit for third-party fact depositions and either reach agreement or raise any issues with the Court no later than February 18, 2022." Docket No. 260 at 5. After conferring on the issue, the Parties were unable to reach an agreement but advised the Court that the Parties would "continue to meet and confer" and would "provide an update or submit any disputes to the Court in the Parties' April 8, 2022 status report (or earlier) for discussion at the April 13, 2022 status conference." Docket No. 300. Despite continuing to confer on the issue of third-party deposition limits, the Parties have not been able to reach agreement.

Plaintiffs request a cap of 25 third-party depositions per side, exclusive of all MLSs identified in the Complaint. Defendants request a cap of 20 third-party depositions per side, inclusive of all MLSs identified in the Complaint.

**Plaintiffs' Position**

Plaintiffs seek the opportunity to conduct: (i) up to 25 depositions of third parties; and (ii) up to one Rule 30(b)(6) deposition of each of the Covered MLSs in this case. Under Plaintiffs' proposal, to the extent that Plaintiffs decline to conduct a Rule 30(b)(6) deposition of a Covered MLS, Plaintiffs would not receive an additional third-party deposition above the 25 allotted. In addition, in order to minimize any burdens on the MLSs and Defendants, Plaintiffs propose that any Rule 30(b)(6) deposition of a Covered MLS proceed entirely remotely and that Plaintiffs' questioning be limited to 5 hours.

Plaintiffs' proposal is proportional to the size and needs of this case. This case involves a class consisting of millions of home sellers who have suffered billions of dollars in damages. Given the size and stakes of this case, the deposition discovery that Plaintiffs seek is exceedingly modest. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 122 (D.N.J. 2012) (reflecting that class counsel have "taken hundreds of depositions"); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 614 (7th Cir. 1997) (discovery involved more than 1,000 depositions); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 818 (3rd Cir. 1982) (court permitted taking of 270 depositions). In contrast to many other antitrust cases of comparable size and complexity, Plaintiffs have not sought hundreds of depositions. And for those depositions that Plaintiffs have conducted, Plaintiffs have taken steps to reduce the burdens on counsel, the parties, and the witnesses—including by voluntarily coordinating many of those depositions with counsel in another case and by conducting the vast majority of those depositions remotely.

Plaintiffs' proposal is also modest when compared to the wide range of third-party witnesses that likely have knowledge bearing on important aspects of the litigation. Under Plaintiffs' proposal, Plaintiffs will have a maximum of only 25 depositions to examine each of the of following categories of third-party witnesses (as well as other categories not reflected here): (i) owners or employees of franchisee brokerages associated with four different sets of Corporate

Defendants; (ii) intendent contractor real estate agents associated with the Corporate Defendants' owned or franchised brokerages; (iii) real estate industry trainers used by the Defendant NAR or the Corporate Defendants; (iv) Defendants' current or former competitors who have been injured by Defendants' anticompetitive conduct; (v) consultants retained by the Defendants to produce reports evidencing anticompetitive conduct or other facts at issue in the litigation; and (vi) and Rule 30(b)(1) testimony from executives or employees of MLSs or local Realtor associations.

In addition, Plaintiffs have proposed a separate category for Covered MLS depositions for at least two reasons. First, whether Plaintiffs seek only a few exemplar depositions of Covered MLSs or a deposition of each Covered MLS will depend, in part, on the litigation strategy that *Defendants* adopt. For instance, if Defendants attempt to argue (incorrectly) that each of the Covered MLSs are not subject to or do not enforce the rules challenged in the litigation, Plaintiffs should have the right to demonstrate that each Covered MLS is, in fact, subject to the challenged anticompetitive restraints. To the extent Defendants do not take such an approach, however, Plaintiffs are unlikely to need to depose each Covered MLS. Thus, by treating Covered MLS depositions separately from other third-party depositions, Plaintiffs' approach ensures that, Plaintiffs will not receive a "windfall" of 45 total third-party depositions.

Second, the Covered MLSs are not ordinary third parties—they are non-Defendant co-conspirators that Plaintiffs have not (but still could) sue as Defendants. *See* Consol. Am. Class Action Compl. ¶ 38, ECF No. 84 ("The Covered MLSs, among others, have participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance thereof, including by adopting the Buyer Broker Commission Rule in their own respective rules and regulations."). Despite the fact that the Covered MLSs are implicated in the anticompetitive conduct at issue in this suit, Plaintiffs have not sought to treat them like the Defendants for deposition discovery purposes. Instead, Plaintiffs' request is a modest one: a maximum of one Rule 30(b)(6) deposition per Covered MLS, conducted remotely and limited to 5 hours.

Finally, Defendants' proposed limit of only 20 third-party depositions is not appropriate in light of the size, complexity, and discovery needs of this particular case. In particular, Defendants' proposal fails to account for the special status of the Covered MLSs as non-Defendant co-conspirators whose conduct and rules are central to the claims in the litigation. Indeed, under Defendants' proposal, if Plaintiffs are required—due to Defendants' own litigation strategy—to depose each of the 20 Covered MLSs in this case, Plaintiffs will be precluded from taking a single additional third-party deposition. For these reasons, Defendants' proposed third-party deposition limit is neither realistic under, nor suited to, the particular circumstances of this case.

**Defendants' Position**

Plaintiffs should be limited to 20 third-party depositions, including depositions taken pursuant to Rule 30(b)(1) and Rule 30(b)(6). Depositions of franchisees of the Corporate Defendants and depositions of MLSs would count towards the limit of 20 depositions. Neither the franchisees nor the MLSs are named defendants in this case. Thus, they are third parties. This conclusion is not altered by the fact that they have some relationship, contractual or otherwise, with the Defendants. MLSs are separately incorporated entities with their own boards of directors.

Pursuant to this Court's Orders of September 22, 2021 (Docket No. 269) and December 1, 2021 (Docket No. 286), Plaintiffs are already entitled to 50 depositions of party witnesses – 10 per Defendant family, including 30(b)(6) depositions. Plaintiffs now seek an additional 45 third-party depositions (20 MLS depositions plus 25 depositions of other third parties), bringing the overall total to be taken by Plaintiffs to 95 depositions (under Rules contemplating as a default only 10 depositions per side). Plaintiffs' demand would be excessively burdensome and costly to Defendants. And, as held in other significant antitrust cases, more than 20 third-party depositions are unnecessary. As the Court observed previously in the context of discussing limits on party depositions, Plaintiffs are not entitled to unlimited depositions to accommodate individual depositions of all third parties Plaintiffs believe could conceivably have discoverable information and must instead "make choices." *See* Sept. 22, 2021 Hr'g Tr. at 24. By making reasonable choices, Plaintiffs can limit third-party depositions to no more than 20 and limit the already substantial burden imposed by this litigation to a more manageable level.

Preparing for any deposition requires significant effort. For Defendant-affiliated third parties, even more time and effort will be required from the Defendant affiliated with that third-party. In addition, third-party deposition place an enormous burden on the third parties themselves, who are not parties to this case, but they are required to shoulder the costs of providing responsive documents to a subpoena and producing a witness for deposition. Most third parties in these circumstances will feel compelled to retain outside counsel, who will then be required to familiarize themselves with the pleadings and issues in the case so that they can adequately represent their client. Plaintiffs' proposal ignores these burdens entirely.

Plaintiffs also have not explained the need for an excessive number of third-party depositions, when parties accommodated reasonable limits in other recent complex antitrust cases. *See In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill. Aug. 28, 2018) (Docket No. 1155) (in a case involving a *nationwide* class and several groups of plaintiffs pursuing independent claims, rejecting the plaintiffs' request for an unlimited number of third party depositions and instead allowing each side to take up to 25 third party depositions); *Opana ER Antitrust Litig.*, 1:14-cv-10150 (N.D. Ill. Nov. 7, 2016) (Docket No. 218) (imposing on the requesting party the obligation to explain the need for "excess depositions," rejecting plaintiffs' request for 40 depositions, and imposing limits of 20 depositions per side). Additionally, in the factually similar case *Burnett v. NAR*, No. 4:19-cv-332 (W.D. Mo.), plaintiffs noticed only four third-party depositions, with discovery set to close at the end of this month.

This proposal would allow Plaintiffs a fair opportunity to depose MLSs, Defendant-affiliated franchisees, brokers, or agents, and other third parties, without imposing undue burden on the Parties and third parties in preparing for and participating in depositions.

For these reasons, Defendants ask that the Court impose a limit of 20 third-party depositions per side.

Dated: April 8, 2022

Respectfully submitted,

| | |
|---|---|
| *Co-Lead Counsel for Plaintiffs* | *Counsel for HomeServices of America, Inc., BHH Affiliates, LLC, HSF Affiliates, LLC, The Long & Foster Companies, Inc.* |

/s/      Robert A. Braun
Daniel A. Small
 dsmall@cohenmilstein.com
Kit A. Pierson
 kpierson@cohenmilstein.com
Benjamin D. Brown
 bbrown@cohenmilstein.com
Robert A. Braun
 rbraun@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600

Carol V. Gilden (Bar No. 6185530)
 cgilden@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370

Marc M. Seltzer
 mseltzer@susmangodfrey.com
Steven G. Sklaver
 ssklaver@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100

Beatrice C. Franklin
 bfranklin@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas
32nd Floor
New York, New York 10019
Telephone: (212) 336-8330

Matthew R. Berry
 mberry@susmangodfrey.com

/s/      Robert D. MacGill
Robert D. Macgill
 robert.macgill@macgilllaw.com
Matthew T. Ciulla
 matthew.ciulla@macgilllaw.com
MACGILL PC
55 Monument Circle, Suite 1200C
Indianapolis, IN 46204
(317) 721-1253

Jay N. Varon
 jvaron@foley.com
Jennifer M. Keas
 jkeas@foley.com
FOLEY AND LARDNER LLP
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 672-5436

James D. Dasso
 jdasso@foley.com
FOLEY & LARDNER LLP
321 N. Clark St., Suite 2800
Chicago, IL 60654
(312) 832-4588

*Counsel for Realogy Holdings Corp.*

/s/      Kenneth Kliebard
Kenneth Michael Kliebard
 kenneth.kliebard@morganlewis.com
Heather Nelson
 heather.nelson@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
77 West Wacker Drive, Suite 500
Chicago, IL 60601-5094
(312) 324-1000

Alexander W. Aiken
aaiken@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880

Steve W. Berman (Bar No. 3126833)
steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

Daniel Kurowski
dank@hbsslaw.com
Jeannie Evans
jeannie@hbsslaw.com
Whitney Siehl
wsiehl@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949

Rio S. Pierce
riop@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Stacey Anne Mahoney
stacey.mahoney@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

William T. McEnroe
william.mcenroe@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

***Counsel for Keller Williams Realty, Inc.***

*/s/ Timothy Ray*
Timothy Ray
Timothy.Ray@hklaw.com

HOLLAND & KNIGHT LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60603
(312) 263-3600

David C. Kully
david.kully@hklaw.com
Anna P. Hayes
anna.hayes@hklaw.com
HOLLAND & KNIGHT LLP
800 17th Street NW, Suite 1100
Washington, DC 20530
(202) 469-5415

***Counsel for RE/MAX, LLC***

*/s/     Jeffrey LeVee*
Jeffrey A. LeVee
jlevee@jonesday.com
Eric P. Enson
epenson@jonesday.com
JONES DAY
555 S. Flower Street, 50th Floor
Los Angeles, CA 90071
(213) 243-2572

15

Eddie Hasdoo
ehasdoo@jonesday.com
JONES DAY
77 W Wacker, Suite 3500
Chicago, IL 60605
(312) 782-3939

***Counsel for Defendant
National Association of Realtors®***

*/s/     Jack R. Bierig*
Jack R. Bierig
jbierig@schiffhardin.com
Adam J. Diederich
adiederich@schiffhardin.com
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
312-258-5500 (Phone)
312-258-5600 (Fax)

Robert J. Wierenga
rwierenga@schiffhardin.com
Suzanne L. Wahl
swahl@schiffhardin.com
SCHIFF HARDIN LLP
350 S. Main Street, Suite 210
Ann Arbor, MI 48104
(734) 222-1517