IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, JACK RAMEY, DANIEL UMPA, and JANE RUH, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC., <br><br> Defendants. | Case No: 1:19-cv-01610 <br><br> Judge Andrea Wood |

## JOINT STATUS REPORT

Pursuant to the Court's Order (Docket No. 339), Plaintiffs Christopher Moehrl, Michael Cole, Steve Darnell, Jack Ramey, Daniel Umpa, and Jane Ruh, on behalf of themselves and all others similarly situated ("Plaintiffs"), and Defendants The National Association of Realtors®, Realogy Holdings Corp., HomeServices of America, Inc., BHH Affiliates, LLC, HSF Affiliates, LLC, The Long & Foster Companies, Inc. (collectively, "HomeServices"), RE/MAX LLC ("RMLLC"), and Keller Williams Realty, Inc. ("Defendants"), (collectively, the "Parties"), respectfully submit this Joint Status Report setting forth the current status of discovery.

### 1. DISCOVERY STATUS

Fact discovery is nearing completion. Both Defendants and Plaintiffs have substantially completed their supplemental and refresh productions of documents. The parties are in the process of scheduling the remaining depositions of party and third-party witnesses. The parties anticipate meeting the current October 6, 2022 deadline for the close of fact discovery, apart from an agreed-upon extension of three weeks, through October 27, for the completion of certain depositions, which is discussed in more detail below.

2. **LIMITED EXTENSION FOR SCHEDULING OF DEPOSITIONS**

The parties are continuing to work to schedule the depositions of certain Defendant and third-party witnesses. To address scheduling conflicts, Plaintiffs and Keller Williams have agreed that the 30(b)(6) deposition of Keller Williams's designated representative will occur on November 15, 2022. The parties jointly request leave to take the deposition on that date.

The parties have also agreed upon the following parameters: 1) in addition to already noticed depositions, plaintiffs will only notice up to five more additional depositions of parties and related entities (including subsidiaries, franchisees, and persons associated therewith), and no more than two depositions per Defendant family, with Plaintiffs providing notice by September 14th; 2) the parties will provide notice of all remaining third party depositions by September 28th; 3) the parties anticipate completing all remaining depositions (apart from the Keller Williams 30(b)(6)) by October 27th and apart from supplemental depositions of Plaintiffs' experts if permitted by the Court after reviewing the discussion in Point 4). The parties jointly request leave of the Court to amend the schedule accordingly.[1]

3. **UPDATED DISCOVERY STIPULATION**

Plaintiffs and Defendants have prepared a joint discovery stipulation and order reflecting both the Parties' prior agreements about certain discovery issues as well as certain orders of the Court on previously disputed issues. The parties will submit the stipulation for approval.

4. **SUPPLEMENTAL DEPOSITIONS OF PLAINTIFF EXPERTS**

Defendants have requested supplemental depositions of Plaintiff experts based on the rebuttal reports that Plaintiff experts submitted. The parties have met and conferred on this issue and have been unable to reach agreement. The parties' respective positions are set out below.

Plaintiffs' Position

Defendants were entitled under the Federal Rules of Civil Procedure to conduct a single deposition of up to 7 hours of each of Plaintiffs' experts. Instead, Defendants demanded an exception to those rules so that they could depose each expert for 9 hours across two days. Now Defendants demand at this late stage yet another exception to the Federal Rules: they want an additional 7 hours of deposition testimony from each expert—for a total *32 hours* of expert deposition questioning *solely at the class certification stage*. (By contrast, Plaintiffs have only been permitted 9 hours to depose Defendants' expert.)

Defendants fail to identify any good cause that would justify such an extreme request. This is particularly so given that, at minimum, Defendants will have the opportunity to examine Plaintiffs' experts again at the merits and at trial. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. CIV 08CV335 IEG NLS, 2009 WL 861733, at *5 (S.D. Cal. Mar. 25, 2009)

---

[1] The HomeServices Defendants and Plaintiffs are in discussions with respect to certain deposition issues that they are hopeful about resolving but that could require the assistance of the Court.

("In seeking leave from the Court to depose Dr. Ewell again, ATC has not demonstrated that the benefit of subjecting Dr. Ewell to a second deposition would outweigh the burden and expense.").

The Court first entered a case schedule for class certification on November 7, 2020. (Docket No 196). The schedule has subsequently been modified by the Court several times, but it has *always* provided for Plaintiffs to file expert rebuttal reports in support of their class certification reply. Until a week ago, Defendants had never sought, or even raised the possibility of two depositions of Plaintiffs' experts—one after their opening reports and another after their rebuttal.

In that time Defendants specifically sought modifications to the case schedule asserting and representing to the Court it would provide them with sufficient time to depose Plaintiffs' experts and incorporate the testimony into Defendants' class certification brief and *Daubert* motion. (Dkt. 309). The Court granted Defendants' request. At no point during this process did Defendants raise the prospect of taking multiple depositions of Plaintiffs experts, or raise to the Court that they intended to seek both additional time for the first deposition of Plaintiffs' experts *and* a second seven-hour deposition for rebuttal reports that Plaintiffs would file. They asked for nine hours over two days, not sixteen hours over three days, despite being on notice of the detailed analysis that Plaintiffs' experts had provided in their opening reports. Defendants could also have chosen to request a single enlarged deposition after the Rebuttal Reports were filed, but did not do so. *Cf. In re Sulfuric Acid Antitrust Litig.*, 230 F.R.D. 527, 531 (N.D. Ill. 2005) (noting as a general matter that under FRCP 30(a)(2)(A)(ii), a party must obtain leave of the court before seeking a second deposition of a witness).

Defendants then waited another four months before requesting second, full-length depositions of both Professor Elhauge and Professor Economides on September 1, 2022. Courts in this district have routinely rejected similar requests for supplemental depositions of experts. They have done so even when defendants have identified specific reasons for seeking supplemental depositions. *See La Playita Cicero, Inc. v. Town of Cicero, Illinois*, No. 11-CV-1702, 2017 WL 1151066, at *6 (N.D. Ill. Mar. 28, 2017) (rejecting request for supplemental deposition of expert based on supplemental report submitted after the close of discovery because "[t]he Court is unpersuaded that the admission of Green's supplement and declaration warrants a second deposition of Green."); *Sutton v. Wexford Health Sources, Inc.*, No. 10 C 8137, 2014 WL 551546, at *6 (N.D. Ill. Feb. 12, 2014) (rejecting Defendants' attempt to take a second deposition based on instructions not to answer certain questions related to attorney-expert communications because "Defendants fail to explain why a second deposition of Dr. Shakoor is necessary.").

Defendants here do not even do that much. They have identified no specific circumstances that support their abrupt request for supplemental depositions that has never, until this point, been contemplated by the parties, the Court, or the experts as part of the schedule in this case. Defendants' primary argument for 14 more hours of deposition appears to be the length of pages in the expert reports of Professor Elhauge and Professor Economides, emphasizing that the two reports – in total – run approximately 250 pages. That argument is a red herring. Plaintiffs' Rebuttal Reports offer no new affirmative opinions and do not change Plaintiffs' experts' opinions. Plaintiffs' experts' reports are confined to the traditional subject matter of rebuttal reports: responding in detail to the opinions offered in Defendants' expert's report. Defendants already had the opportunity to depose Plaintiffs' experts about the opinions they are offering. In fact, they used almost every available minute on the record to do so. Notably, Defendants did not obtain any

supplemental depositions of Plaintiffs' expert at class certification in the *Burnett* case despite that expert (as here) submitting a rebuttal report responding to Defendants' expert. Their inconsistent acts belie their argument that second depositions are necessary. They are simply seeking another bite at the apple.

Rather than identify any new affirmative opinions that either Plaintiff expert offers in their reports that would warrant a supplemental deposition, Defendants repeatedly resort to generalizations. Defendants state that Plaintiff experts attempted to clarify or correct their opinions, but do not identify a single actual (or even attempted) example of where Plaintiff experts clarified or corrected their original opinions. Defendants also vaguely claim they are unable to fully describe the new arguments offered in the rebuttal reports in a public filing since they were designated as highly confidential. But Plaintiffs designated the reports as highly confidential because they rely on Defendants' information. Defendants are free to share that information if they wish. In fact, Plaintiffs have already proposed to Defendants that the entire rebuttal reports be publicly filed. No genuine concern about confidentiality is preventing Defendants from being able to identify the new opinions purportedly offered in the reports. They simply do not and cannot cite new opinions.

Defendants briefly discuss that Plaintiff' experts responded to additional international benchmarks identified by Dr. Stiroh as potential candidates. But the same potential international benchmarks (both the ones included and excluded from Professor Economides' yardstick analysis) were each affirmatively discussed in Professor Economides' Opening Report, Dr. Stiroh's Opposition Report, and Professor Economides' Rebuttal Report. And Defendants already had the chance to depose Professor Economides on those exclusions. Indeed, their *Daubert* motion specifically quotes from their questioning of Professor Economides regarding his exclusion of Germany as a yardstick. (Dkt. 309 at 21, fn. 88). Defendants have not identified any specific additional countries discussed in Professor Economides' Rebuttal Report. And it is obvious and undisputed that Professor Economides did *not* add any new countries to his yardstick analysis for purposes of the Rebuttal Report. Both the Opening Report and Rebuttal Report contain the same three yardstick countries for purposes of Professor Economides' affirmative opinions.

Defendants have also offered a few isolated examples of analyses that Plaintiff experts specifically performed in rebuttal to analyses or opinions offered by Dr. Stiroh.[2] Defendants mention that Professor Elhauge analyzed the frequency of commission rates in the Covered MLSs. But this was specifically in response to arguments that Defendants advanced in both their motion and opposition report about the frequency at which certain commission rates were charged. Professor Elhauge's analysis was, in essence, a different graphical depiction of the same underlying commission data. Defendants mention an analysis that Professor Economides performed of the relationship between home prices and commission rates. But, again, this limited, empirical analysis was specifically in response to speculation by Dr. Stiroh about a potential relationship between home prices and commission rates (which Dr. Stiroh chose not to empirically

---

[2] The parties exchanged initial drafts of their portions on this issue on the afternoon of September 8th. Plaintiffs respond to the analyses that Defendants identified in that initial draft. Plaintiffs do not have the opportunity to respond to any additional analyses that Defendants identify in subsequently preparing their final draft of their respective portion of the joint statement.

test). Professor Economides' empirical analysis showed that there was *no* meaningful economic relationship between home prices and commission rates.

Defendants also do not attempt to explain what specific aspects of these analyses make it necessary for Defendants to take full-length depositions of both Plaintiffs' experts. Instead, Defendants' real argument is that the mere act of offering a detailed rebuttal report entitles them to a second deposition, regardless of the circumstances. But Defendants' own cited cases do not support this position. In *Smith v. City of Chicago*, the Court allowed a second, ninety minute deposition based on the party's contention that the expert had made misrepresentations about his methodology, and referenced documents at his first deposition that had been specifically requested by the deposing party prior to the deposition but not yet produced. *Smith v. City of Chicago*, No. 15-CV-03467, 2019 WL 4825232, at *6 (N.D. Ill. Oct. 1, 2019). Defendants have not identified *any* misrepresentations by Plaintiffs' experts or any deficiencies in document production that would support a second deposition. In *94,594 Acres of Land*, the Court authorized a rebuttal deposition where the deposing party had "convincingly explain[ed] that the…rebuttal report is likely to be significantly different from his case-in-chief report, and affirmatively states that it does not intend to use its second deposition to ask Mr. Godfrey about his case-in-chief report." *United States v. 94.594 Acres of Land, More or Less, Situated in Bernalillo Cnty., New Mexico*, No. CV 18-877 JAP/KK, 2020 WL 1189385, at *2 (D.N.M. Mar. 12, 2020). Here, Defendants have not explained how the rebuttal reports are significantly different, have failed to identify a single new affirmative opinion offered by either Plaintiff expert, and have not committed to not ask at the rebuttal depositions about the case-in-chief report (nor have they even explained how such a restriction would be workable since Professor Elhauge and Professor Economides have not offered any new affirmative opinions). In *DRAM*, the Court concluded that a limited supplemental deposition, at the merits stage, was appropriate where the rebuttal report contained "new conclusions as to the amount of damages." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJHJCS, 2006 WL 3462580, at *1 (N.D. Cal. Nov. 29, 2006). Defendants have not identified new conclusions by either Professor Elhauge or Professor Economides on any of the opinions that they offer.

Defendants also make general cites to certain Seventh Circuit cases. But in *Am. Honda*, the Seventh Circuit simply stated that district courts must conclusively rule on *Daubert* motions "when an expert's report is critical to class certification." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010). And in *Szabo*, the Seventh Circuit stated that "Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675–76 (7th Cir. 2001). Defendants have failed to cite any case permitting a second deposition simply because an expert submitted a rebuttal report consistent with a Court's schedule or identify any way that a second deposition is required under the standards for class certification set forth by the Seventh Circuit.

Furthermore, Defendants specifically justified their demand for additional time for the initial depositions of Plaintiffs' experts because it would allow them to fully examine them before filing their class certification opposition and *Daubert* motions. (Dkt. 309). By contrast, Defendants' demand for second depositions here does not make sense within the context of the agreed upon class certification schedule and is not tied to any scheduled briefing. The class certification schedule will conclude when Defendants file the Reply in Support of their Motion to

Exclude on September 22, 2022. (Dkt No. 310). Yet Defendants have proposed dates for the expert depositions in mid to late October, well after the class certification briefing schedule is entirely completed. Therefore, Defendants' supplemental depositions have no purpose within the context of the class certification briefing schedule because Defendants will be unable to use the supplemental depositions for the purpose of preparing the reply brief in support of their motion to exclude

Defendants have vaguely gestured that they may need the depositions for usage at a hypothetical future class certification hearing. But the Court has not yet set a class certification hearing or the format of the class certification hearing. Nor have Defendants specified why the possibility of a class certification hearing, in itself, creates a substantial need for Defendants to take 14 hours of additional depositions of Plaintiffs' experts. Indeed, to the extent the class certification hearing includes testimony from experts, Defendants will have a chance to cross-examine Plaintiffs' experts at that hearing. Defendants have cursorily asserted that they will be prejudiced but failed to identify any specific reason why they actually would be prejudiced.

Defendants, in short, do not offer any persuasive reason they should be able to depose Plaintiffs' experts again about opinions they already asked about. On the other side, Plaintiffs and Plaintiffs' Experts would face a significant burden and be highly prejudiced if forced to prepare for a second deposition. Plaintiffs expect, based on preparations for the original deposition, that preparations for a second deposition would require hundreds of hours collectively of attorney and expert time, especially in light of the fact that Defendants are requesting full-day depositions of both experts without any limits on the scope of questioning. Defendants cannot justify imposing this burden on Plaintiffs and their experts simply by citing the length of Plaintiffs' expert rebuttal reports and vaguely referencing (but not identifying) new opinions being offered.

Because supplemental depositions of Plaintiffs' experts would be burdensome, costly, and unnecessary within the context of the agreed-upon schedule and Defendants have failed to articulate any detailed explanation for why there is a substantial need for this deposition, their request should be denied. *See Medicines Co. v. Mylan Inc.*, No. 11-CV-1285, 2013 WL 2926944, at *5 (N.D. Ill. June 13, 2013) (rejecting request for supplemental deposition related to the extent to which Plaintiffs' expert report was copied from expert reports in related litigation because the deposing Party "had ample time and opportunity to question Dr. Regnier regarding his report and the opinions therein" at the initial deposition.). To the extent that the Court authorizes a second deposition of Plaintiffs' Experts, Plaintiffs request that it be specifically limited to an appropriate, limited length of time on any new affirmative opinions that Defendants can specifically identify in the Rebuttal Reports.[3]

Defendants' Position

Defendants want to depose Plaintiffs' class certification experts, Professors Einer Elhauge and Nicholas Economides, regarding their extensive rebuttal expert reports. In early March,

---

[3] *See Plunk v. Vill. of Elwood, Ill.*, No. 07 C 88, 2009 WL 1444436, at *4-5 (N.D. Ill. May 20, 2009) (Due to discovery deficiencies by one of the parties, the court found good cause for a second deposition of plaintiffs' expert, but held that it must be a "short deposition" limited to the new findings in the expert's supplemental report that were not included in his opening report and reimbursing the defending party for the costs associated with the second deposition.)

Elhauge filed a 265 page corrected opening report while Economides filed a 123 page corrected opening report. Defendants deposed these individuals in May of 2022 regarding their opening expert reports:

 On August 22, 2022, Plaintiffs filed their reply memorandum in support of their motion for class certification. That memorandum was accompanied by a 175 page additional report from Elhauge and a 69 page additional report from Economides. Plaintiffs contend that Defendants waited too long to request supplemental depositions, that there is nothing new in the supplemental reports, and that Defendants have offered no reason to permit supplemental depositions. There is absolutely no basis for these contentions.

 To begin, Defendants did not receive the rebuttal reports until late August. We needed to study them to determine if there was a need to take follow up depositions. All of this was occurring while numerous depositions were taking place. In the circumstances, waiting until September 1 to request supplemental depositions is hardly undue delay.

 Second, if there is nothing new in these nearly 250 pages of rebuttal reports, why did plaintiffs even file them? More fundamentally, contrary to Plaintiffs' assertions, Defendants have offered persuasive reasons for the need for supplemental depositions. Specifically, the rebuttal reports introduce new arguments, new analyses, and new materials on which the experts have not been deposed. For example, Elhauge performed additional calculations relating to commission rates in transactions through each covered MLS. Economides reviewed commission rate data produced by Defendants and performed a regression analysis to opine about whether commission rates vary as home prices change

 The rebuttal reports made several other points that were not covered in the initial reports. However, since these reports were designated as "highly confidential", Defendants do not believe that we are at liberty to identify these points in this publicly filed Joint Status Report. What we can say here is that the supplemental reports analyzed additional countries discussed in Defendants' expert report, expanding on the analysis in their initial reports. Moreover, both experts responded at length to the criticisms of their reports raised by Defendants' expert and attempted to clarify or correct their opinions in response. Thus, their "rebuttal" reports are not simply rebuttal; rather, they add and expand on their initial opinions and analysis.

 Plaintiffs' argument that supplemental depositions are unnecessary because Defendants will have the opportunity to examine Plaintiffs experts at the merits and at trial is unpersuasive. Examining an expert on new material in a court hearing is fundamentally different from taking a deposition. One of the basic purposes of depositions is to enable the party taking the deposition to effectively cross-examine witnesses at trial or in other court-room proceedings. A decision not to permit supplemental depositions would undermine that purpose.

 This Court has broad discretion to grant additional time for expert depositions when an expert's opinion changes or new information is provided after the first deposition. *See, e.g., Smith v. City of Chicago*, No. 15-CV-03467, 2019 WL 4825232, at *6 (N.D. Ill. Oct. 1, 2019) (court granted request for second deposition regarding information produced after first deposition). Indeed, an opposing party "is ***clearly entitled*** to depose [the expert] about ***both***" initial and rebuttal reports. *United States v. 94.594 Acres of Land, More or Less, Situated in Bernalillo Cnty., New*

7

*Mexico*, No. CV 18-877 JAP/KK, 2020 WL 1189385, at *2 (D.N.M. Mar. 12, 2020) (allowing plaintiff to depose defendant's expert about both his initial and his rebuttal report) (emphasis added). Permitting a deposition on an expert's rebuttal report is the "***fair result***" because "Defendants should not have to proceed to trial without a brief deposition on this new report*.*" *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJHJCS, 2006 WL 3462580, at *1 (N.D. Cal. Nov. 29, 2006) (permitting four-hour deposition regarding expert's rebuttal report) (emphasis added).

Deposing experts regarding rebuttal reports is of particular importance at the class certification stage. The Court "must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010); *see also Szabo v. Bridgeport Machs., Inc*., 249 F.3d 672, 676 (7th Cir. 2001) (a district court must make whatever factual and legal inquiries are necessary to ensure that Rule 23 requirements are met). Defendants are entitled to an opportunity to test the new opinions contained in Plaintiffs' rebuttal expert reports in depositions before a ruling on the motion for class certification. We will be prejudiced in our presentation to the Court on the class certification issue if we are not permitted to take supplemental depositions.

Plaintiffs respond in two ways: First they say that, at the class certification stage, Defendants will have no opportunity to use any information that they might obtain from supplemental depositions. But that assertion is demonstrably false. At a minimum, Defendants can use such information in their presentation at any hearing before this Court on the motion for class certification. Moreover, if this Court determines that it would be useful to have experts appear at such a hearing, Plaintiffs' suggestion that Defendants could examine them on the new material for the first time without the benefit of a prior deposition is utterly unpersuasive.

Second, Plaintiffs argue that supplemental depositions will be unduly costly. This position is ironic indeed in light of the number of depositions that Plaintiffs have taken and propose to take. Those depositions have cost Defendants vastly more money than would be involved in the supplement depositions that are being requested. Moreover, it was Plaintiffs who decided to engage two experts and to have them file rebuttal reports totaling nearly 250 pages and containing new analyses, calculations, and arguments. Perhaps most importantly, Plaintiffs are seeking billions of dollars in damages. The costs of two supplemental depositions are minimal in comparison to the damages that Plaintiffs are seeking in this case.

In this connection, Defendants would note that each deposition would take less than one day. If the Court deems it appropriate, Defendants are willing to limit each deposition regarding the rebuttal expert reports to six hours. This should not pose any significant burden on Plaintiffs. By contrast, as noted above, Defendants will be significantly prejudiced if they are denied the opportunity to conduct depositions of the new material in the rebuttal reports of Elhauge and Economides.

For all these reasons, Defendants respectfully submit that this Court should permit supplemental depositions of Elhauge and Economides not to exceed six hours per deposition.

Dated: September 8, 2022

*Co-Lead Counsel for Plaintiffs*

/s/     Marc M. Seltzer
Marc M. Seltzer
 mseltzer@susmangodfrey.com
Steven G. Sklaver
 ssklaver@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100

Beatrice C. Franklin
 bfranklin@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas
32nd Floor
New York, New York 10019
Telephone: (212) 336-8330

Matthew R. Berry
 mberry@susmangodfrey.com
Alexander W. Aiken
 aaiken@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880

Daniel A. Small
 dsmall@cohenmilstein.com
Kit A. Pierson
 kpierson@cohenmilstein.com
Benjamin D. Brown
 bbrown@cohenmilstein.com
Robert A. Braun
 rbraun@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600

Carol V. Gilden (Bar No. 6185530)

Respectfully submitted,

*Counsel for HomeServices of America, Inc., BHH Affiliates, LLC, HSF Affiliates, LLC, The Long & Foster Companies, Inc.*

/s/     Robert D. MacGill
Robert D. MacGill
 robert.macgill@macgilllaw.com
Scott E. Murray
 scott.murray@macgilllaw.com
Matthew T. Ciulla
 matthew.ciulla@macgilllaw.com
MACGILL PC
156 E. Market St., Suite 1200
Indianapolis, IN 46204
(317) 961-5085

Jay N. Varon
 jvaron@foley.com
Jennifer M. Keas
 jkeas@foley.com
FOLEY AND LARDNER LLP
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 672-5436

James D. Dasso
 jdasso@foley.com
FOLEY & LARDNER LLP
321 N. Clark St., Suite 2800
Chicago, IL 60654
(312) 832-4588

*Counsel for Realogy Holdings Corp.*

/s/     Kenneth Kliebard
Kenneth Michael Kliebard
 kenneth.kliebard@morganlewis.com
Heather Nelson
 heather.nelson@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
(312) 324-1000

9

cgilden@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370

Steve W. Berman (Bar No. 3126833)
 steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

Daniel Kurowski
 dank@hbsslaw.com
Jeannie Evans
 jeannie@hbsslaw.com
Whitney Siehl
 wsiehl@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949

Rio S. Pierce
 riop@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Stacey Anne Mahoney
 stacey.mahoney@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

William T. McEnroe
 william.mcenroe@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

*Counsel for Keller Williams Realty, Inc.*

*/s/ Timothy Ray*
Timothy Ray
 Timothy.Ray@hklaw.com
HOLLAND & KNIGHT LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60603
(312) 263-3600

David C. Kully
 david.kully@hklaw.com
Anna P. Hayes
 anna.hayes@hklaw.com
HOLLAND & KNIGHT LLP
800 17th Street NW, Suite 1100
Washington, DC 20530
(202) 469-5415


*Counsel for RE/MAX, LLC*

*/s/ Eddie Hasdoo*
Eddie Hasdoo
 ehasdoo@jonesday.com
JONES DAY
110 N. Wacker, Suite 4800
Chicago, IL 60606
(312) 782-3939

Jeffrey A. LeVee
 jlevee@jonesday.com

10

Eric P. Enson
  epenson@jonesday.com
JONES DAY
555 S. Flower Street, 50th Floor
Los Angeles, CA 90071
(213) 243-2572


*Counsel for National Association of Realtors®*

*/s/      Jack R. Bierig*
Jack R. Bierig
 jbierig@schiffhardin.com
Adam J. Diederich
 adiederich@schiffhardin.com
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
312-258-5500 (Phone)
312-258-5600 (Fax)

Robert J. Wierenga
 rwierenga@schiffhardin.com
Suzanne L. Wahl
 swahl@schiffhardin.com
SCHIFF HARDIN LLP
350 S. Main Street, Suite 210
Ann Arbor, MI 48104
(734) 222-1517

Ethan Glass (N.D. Ill. Bar #1034207)
 eglass@cooley.com
Deepti Bansal (*pro hac vice*)
 dbansal@cooley.com
Samantha Strauss (*pro hac vice*)
 sastrauss@cooley.com
COOLEY LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC  20004-2400
Telephone: (202) 776-2244

Beatriz Mejia (*pro hac vice*)
 mejiab@cooley.com
COOLEY LLP

11

3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000

Elizabeth Wright (*pro hac vice*)
 ewright@cooley.com
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116
Telephone: (617) 937-2300