UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, VALERIE NAGER, JACK RAMEY, DANIEL UMPA, and JANE RUH, on behalf of themselves and all others similarly situated, Plaintiffs, | ) |
| vs. | ) No. 1:19-cv-01610 |
| THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, THE LONG AND FOSTER COMPANIES, INC., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC., | ) Chicago, Illinois<br>) September 15, 2022<br>) 10:32 a.m. |
| Defendants. | ) |

TRANSCRIPT OF PROCEEDINGS - TELEPHONIC STATUS HEARING

BEFORE THE HONORABLE ANDREA R. WOOD

APPEARANCES:

For the Plaintiffs:

COHEN MILSTEIN SELLERS & TOLL, PLLC
BY: MR. ROBERT A. BRAUN
1100 New York Avenue, Suite 500
Washington, DC 20002
(504) 258-9894
rbraun@cohenmilstein.com

HAGENS BERMAN SOBOL SHAPIRO LLP
BY: MR. RIO S. PIERCE
715 Hearst Avenue, Suite 202
Berkeley, California 94710
(510) 725-3000
riop@hbsslaw.com

APPEARANCES: (Continued)

For the Plaintiffs:

SUSMAN GODFREY LLP
BY: MS. BEATRICE FRANKLIN
1301 Avenue of the Americas
New York, New York 10019
(212) 336-8330
bfranklin@susmangodfrey.com

For the Defendant National Association of Realtors:

ARENTFOX SCHIFF LLP
BY: MR. JACK R. BIERIG
233 South Wacker Drive, Suite 7100
Chicago, Illinois 60602
(312) 258-5500
jbierig@afslaw.com

COOLEY LLP
BY: MR. ETHAN C. GLASS
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800
eglass@cooley.com

For the Defendant Realogy Holdings Corp.:

MORGAN LEWIS & BOCKIUS LLP
BY: MR. KENNETH M. KLIEBARD
110 North Wacker Drive, Suite 2800
Chicago, Illinois 60606
(312) 324-1000
kenneth.kliebard@morganlewis.com

MORGAN LEWIS & BOCKIUS LLP
BY: MS. STACEY ANNE MAHONEY
101 Park Avenue
New York, New York 10178
(212) 309-6000
stacey.mahoney@morganlewis.com

APPEARANCES: (Continued)

For the Defendant HomeServices of America; BHH Affiliates, LLC; HSF Affiliates, LLC; The Long and Foster Companies, Inc.: MACGILL PC
BY: MR. ROBERT DEAN MACGILL
55 Monument Circle, Suite 1200C
Indianapolis, Indiana 46204
(317) 721-1253
robert.macgill@macgilllaw.com

For the Defendant Re/Max Holdings: JONES DAY
BY: MR. JEFFREY A. LeVEE
555 South Flower Street, 50th Floor
Los Angeles, California 90071
(213) 243-2572
jlevee@jonesday.com

For the Defendant Keller Williams Realty, Inc.: HOLLAND & KNIGHT, LLP
BY: MR. TIMOTHY RAY
MS. ANNA HAYES
MR. DAVID C. KULLY
150 North Riverside Plaza, Suite 2700
Chicago, Illinois 60606
(312) 928-6042
timothy.ray@hklaw.com

Court Reporter: Brenda S. Tannehill, CSR, RPR, CRR
Official Court Reporter
219 South Dearborn Street, Suite 1928
Chicago, Illinois 60604
(312) 554-8931
*brenda_tannehill@ilnd.uscourts.gov*

(Proceedings held remotely, via telephone:)

THE COURT: Okay. So this is Judge Wood. I can see that we have many, if not all, of our counsel for the Moehrl case already on the line.

I just wanted to give you all a heads up that we are having a slight technical issue on our end with respect to our telephone conference monitor. So it's a little trickier for us to be able to tell, you know, who all we have on the line and who's speaking when.

I know that all the counsel on this case are very good about not speaking over each other and making clear who you represent and who is speaking when. I would just ask that you be sort of extra aware of that today. And if you're able to do that, then I don't think our little technical glitch on our end will cause any problems.

I don't know if we have everybody that we need on the line, but I'm going to go ahead and ask my courtroom deputy today who is filling in for today's hearing to go ahead and call the case, and we'll go around and get appearances. If there's somebody that is missing that Counsel would otherwise expect to be here, just let me know once we get through that. Okay?

Lauren, if you would go ahead and call the case.

THE CLERK: Calling case number 19 CV 1610, Moehrl versus the National Association of Realtors, for status.

THE COURT: Do we have Plaintiffs' counsel?

MR. PIERCE: Good morning, Your Honor. Rio Pierce from Hagens Berman for Plaintiffs.

MR. BRAUN: Good morning, Your Honor. You've got Robbie Braun from Cohen Milstein Sellers & Toll, PLLC for the plaintiffs.

MS. FRANKLIN: Good morning. You've got Beatrice Franklin from Susman Godfrey also on behalf of the plaintiffs.

THE COURT: I believe that may be all of Plaintiffs' counsel. Let's move on to the defense side. Do we have counsel for the National Association of Realtors?

MR. GLASS: Good morning, Your Honor. Ethan Glass on behalf of the National Association of Realtors. And I've also been nominated by the group to at least do the initial speaking.

MR. BIERIG: And also, Your Honor, Jack Bierig of ArentFox Schiff for NAR.

THE COURT: Thank you.

And congratulations to Mr. Glass on his nomination. I won't ask whether you consider it to be an honor or a punishment.

Do we have counsel for the Realogy defendants?

MR. KLIEBARD: Yes. Good morning, Your Honor. It's Ken Kliebard and Stacey Anne Mahoney from Morgan Lewis on

behalf of Realogy, now known as Anywhere.

MS. MAHONEY: Good morning, Your Honor.

THE COURT: And counsel for Home Services?

MR. MACGILL: Good morning, Your Honor. It's Rob Macgill. I'm representing Home Services and HSF and BHH as well as Long & Foster.

THE COURT: Thank you.

Re/Max.

MR. LeVEE: Good morning, Your Honor. This is Jeff LeVee from Jones Day on behalf of defendant Re/Max.

THE COURT: And Keller Williams?

MR. RAY: Good morning, Your Honor. This is Timothy Ray along with David Kully and Anna Hayes of the law firm of Holland & Knight on behalf of defendant Keller Williams, Inc.

THE COURT: Okay. And I believe that may be everyone. Is there anybody else who needs to make an appearance this morning? Okay. Then let's proceed.

I've taken a look at the parties' status report. I've also reviewed the proposed stipulation. So as I read the stipulation, it seems the parties are seeking to memorialize in one place a lot of the rulings that have been made over the past several months on the record. Is that fair to say?

MR. PIERCE: Your Honor, Rio Pierce for Plaintiffs.

Yes, that's basically our position. We wanted to, as

you say, put in one place all of the rulings and make sure everybody had certainty on sort of where we stood on particularly depos going forward. So that was the main purpose of the joint stipulation from our end.

THE COURT: And I did review it. Based on my recollection and my notes, it appears to be consistent with the rulings that I have made. I will acknowledge I didn't go back to every transcript or every minute entry to double check every detail, but it seems to be consistent.

Were there any points of contention or disagreement, Mr. Pierce?

MR. PIERCE: Your Honor, I'm not aware of any.

THE COURT: What about from the defense side? Mr. Glass, is this one of the issues that you are appointed to speak on?

MR. GLASS: It is, Your Honor.

No, from our perspective, there are no disputes on the stipulation.

THE COURT: Okay. So I'll go ahead and enter the stipulation. Again, my sense is that it's wholly consistent with and largely memorialized as rulings that have been previously made, so that is fine with me. We'll enter that order separately on the docket.

In the status report, the parties also lay out the schedule that you have agreed upon for depositions which

includes a couple of modifications to the schedule, including allowing the 30(b)(6) deposition of Keller Williams' representative to occur on November 15th. It sounds like the parties are in agreement, so that's fine with me.

Is that fair to say, Mr. Ray, that Keller Williams is in agreement with that?

MR. RAY: We are, Your Honor.

THE COURT: Good.

And then under the "Scheduling of Depositions" section, I think the parties are in agreement on certain other deposition matters. It appears that the only current discovery dispute that you've teed up is this issue of whether there will be supplemental depositions of Plaintiffs' experts.

Other than that issue of the supplemental depositions, are there other discovery disputes that the parties feel are ripe for discussion?

MR. PIERCE: Your Honor, Rio Pierce for Plaintiffs.

No.

I also would note that I think we had reached -- we drafted a footnote in the status report referencing that we were in discussions with Home Services regarding certain depo issues, and we have resolved those, too. So as Your Honor surmised, the only open issue from our perspective at this point is the supplemental expert depositions.

THE COURT: And Defendants would agree with that?

MR. GLASS: Your Honor, Ethan Glass on behalf of NAR.

Yes, we agree. The only issue, discovery issue, ripe for Your Honor's decision is the question of the two expert depositions.

THE COURT: So I guess I have maybe or one or two questions for the parties on that issue. You have written quite a bit on that issue in the status report, so I don't need you to repeat that during the hearing today, but what is still a bit unclear to me from reviewing the report is exactly why the defendants feel that the rebuttal reports contain new opinions or information rather than just appropriate rebuttal material.

And I appreciate that you were hesitant to file actual reports that might reveal that information. Ultimately, that may be something that I would need to take a look at, but it seems to me that a rebuttal report is always going to contain some new information. That's in the nature of rebuttal.

So why is it that the information in these two reports goes beyond what you would usually expect as rebuttal from an expert?

MR. GLASS: Your Honor, Ethan Glass on behalf of NAR. I can answer that question, if I may.

THE COURT: Go ahead.

MR. GLASS: So, Your Honor, we are trying to limit

the amount of paper that we submit to the Court for review, but there is a series of fundamental changes in the expert opinions of Elhauge and Economides.

In their initial reports, Elhauge and Economides review what they call the buyer-broker commission rule which is the rule that the National Association of Realtors has that says the listing broker must make an offer of compensation to buyer-brokers. Not an amount, just an offer.

What the plaintiffs' experts do is they say, "We need to look at foreign countries to determine whether or not the rule had an impact." And so they selected some foreign countries that the plaintiffs' experts claim are benchmarks that do not have the buyer-broker commission rule.

Our expert on the class certification, Dr. Styro, she said, "Actually, there are US territories that do not have the buyer-broker commission rule." And she identified four of them.

She analyzes the commission rates in those four US territories that do not have a buyer-broker commission rule, and she concludes that those commission rates are on par and similar to the calculated commission rates for the multiple listing services at issue in this case.

And so according to Professor Styro, the entire fundamental premise of the class certification experts on behalf of Plaintiffs is false, which is that without the rule,

commissions would be lower because you can look to these four cities in the US that do not have NAR rules and you can say, "Well, are commissions lower there." And the answer is no. And so this goes to the heart of class-wide harm and whether a class should be certified.

Of course, Professor Economides and Elhauge wanted to address that. They did not address it in their initial reports. They did not talk about the cities that are good potential benchmarks in the US like Dr. Styro did.

And so what Professor Economides and Elhauge do is they say, "Well, those cities in the US that do not have the buyer-broker commission rule are irrelevant because there are other NAR rules that apply there, the NAR ethical rules."

And the theory, the new theory, that's posited in the rebuttal reports of Plaintiffs' experts is that it is the ethical rules which include things like brokers must put the interests of their own clients ahead of their own are really the cause of the commission rate difference and not the buyer-broker commission rule; and so we can ignore the US territories that do not have the buyer-broker commission rule because they still have the NAR ethical rules.

And, Your Honor, what that means is that the original theory that the plaintiffs' expert had, which is the buyer-broker commission rule is what is affecting, along with other things, but is important to the effect on the class for

common, wide harm, that rule is unnecessary for them to show harm which now completely undermines their initial opinion and says that with or without the buyer-broker commission rule, there's harm.

We think, of course, this is devastating for the class certification and for these experts' credibility and perhaps even as Daubert-able, but it is a brand new theory that even without the buyer-broker commission rule, the experts' opinions are the same because there are other things that are happening in these areas that do not have the NAR rules apply to the multiple listing services.

Your Honor, I certainly can go on and on, but this is one of those unique cases where it's not simply that the plaintiffs submitted rebuttal reports and we are seeking to take the deposition.

In fact, the plaintiffs make a big deal about how we've never raised a deposition after rebuttal before. And that's because our expectation was consistent with Your Honor's, which is that the rebuttal reports would simply rebut what Dr. Styro did.

But instead, when we received these reports and we noticed they had fundamentally new arguments that are inconsistent with the prior arguments, that's when we, as a group, thought it's important for us to get this on the record and take the depositions so that we can adequately inform the

Court about all of the arguments on whether or not our class should be certified.

And as Your Honor knows, in the Seventh Circuit, the Court has a tough job. The Court needs to make findings and decisions on not only Daubert but whether or not to adopt one expert report over the other. And we think that the deposition testimony is incredibly helpful for the Court doing that and for us to prepare for an evidentiary hearing.

So, Your Honor, I'm happy to answer any specific questions, but that is one major example. It's about 45 pages of Professor Elhauge's new report that discusses the four multiple listing services that are not following the NAR rules and connecting that to the fact that it doesn't matter if you have NAR rules; there still is the same one.

THE COURT: So my next question is let's say you were allowed to take this deposition. How are you planning to address it? Because your deadline for the filing of your reply in support of the Daubert motion is rapidly approaching. I think we're just about a week out from it.

And so one of my concerns here is that your requests will have the effect of modifying the briefing schedule. I'm going to assume that there's going to be a request for further rebuttal. You're going to want your expert to file something to rebut what you consider to be these new opinions, that that's going to push the schedule out further and basically

disrupt the schedule that it took a long time for us to get in place.

Is that what you're asking for, or are you actually suggesting you're going to take these depositions and still file your reply brief a week from now?

MR. GLASS: So, Your Honor, excellent question.

Our intent is not to disrupt the schedule. We asked for this to be stipulated along the lines of the other issues that we put in our status report, and the plaintiffs refused. And so a lot of these scheduling issues are due to the fact that the plaintiffs have required Court intervention for us even to get these depositions.

What we would promise to the Court, make representations to the Court, is that we will move as promptly as we can to take these depositions. If there needs to be some change on the Daubert reply, we will meet and confer with the plaintiffs and find a date that is not disruptive generally.

And the back and forth which Your Honor has noted -- I've been in cases -- like, you don't want endless back and forth, you know, rebuttal, reply, reply, rebuttal, sur-reply, sur-rebuttal, but it is important, I think, for the Court to have some understanding of what our expert is going to say from an economic perspective.

Now, Your Honor, I think this can be resolved,

though. Once we've deposed the experts for the plaintiffs, I am quite confident that we don't need to have a second expert report. Instead, we can present testimony at the evidentiary hearing from Professor Styro to the extent that there is any economic evidence that's necessary to raise with Your Honor.

But, Your Honor, the core fundamental question here really is can the plaintiffs' experts completely switch their economic theory in rebuttal, and that's the core issue to take the depositions of. And any disruption really, unfortunately, is due to the fact that the plaintiffs have completely changed their theory. But we would --

THE COURT: Let me stop you there because if that's correct, if the real problem here is that the plaintiffs have exceeded the proper scope of a rebuttal report, why aren't you filing a motion to strike? Because that would seem to be the actual remedy for what you've identified is you should say, "You know what, you shouldn't consider these opinions in deciding class certification."

MR. GLASS: So, Your Honor, we thought that it would benefit the Court for us to take the deposition before that motion to strike so that we could get on the record that these are switches.

Right now, attorney argument trying to interpret economic reports is all we have for our motion to strike.

Now, if Your Honor --

THE COURT: Don't you have your own expert? Don't you have your own experts who are facile in this subject matter?

MR. GLASS: We do. Certainly our own expert could help us out, and she could submit a declaration along with our motion to strike pointing out these inconsistencies. Absolutely, Your Honor.

What we wouldn't have is we wouldn't have the deposition testimony from the plaintiffs' experts that confirms that this is a new theory that first came on reply.

But, Your Honor, you're absolutely right, a motion to strike is definitely within the type of relief that we may seek, and we thought that it was helpful to the Court if we could get the deposition testimony to include in that motion to strike.

THE COURT: You're asking for another full day's worth of deposition testimony. Even if I were inclined to allow it, isn't another seven hours excessive?

MR. GLASS: Yes, Your Honor, I am authorized to discuss any limitations on the amount of time that the Court thinks is reasonable.

We offered to the plaintiffs that we would take less than seven hours. And I think that the issues that are newly raised in the rebuttal report can be resolved in far shorter than seven hours. So, Your Honor, the request is not another

full day of depositions but, instead, enough time that we can ask them about the new issues in the rebuttal report so that we can put together our motion to strike and prepare for the hearing in person.

Last time, all these depositions were by video which just makes everything take longer, and I think that can be done in a modest amount of time and certainly not seven hours.

MR. PIERCE: Your Honor, this is Rio Pierce for Plaintiffs. May I be heard?

THE COURT: It's your turn. Go ahead.

MR. PIERCE: Thank you.

So I would say this is a new argument that Mr. Glass is raising in his oral argument that was not in Defendants' papers, and it's also simply incorrect.

If you would refer to our amended complaint, we have always identified that we are challenging a set of restraints, including restraints embedded in NAR's code of ethics.

I would specifically refer Your Honor to paragraphs 87 through 95 of our amended complaint which details that the restraints that we're challenging include not just the buyer-broker commission rule but also NAR rules that allow buyer-brokers to represent that their services are free, not ethical rules that impede negotiations between seller-brokers and buyer-brokers. So that's always been part of our case.

Your Honor has access, I believe, to the expert

reports that were filed under seal. In our original expert reports, our expert discussed not just the buyer-broker commission rule but also the other rules and restraints that we are challenging which include the restraints in the NAR code of ethics.

Their expert selected certain yardsticks in the United States where some of the restraints that we're challenging are present. And in our response to their expert, we pointed out that the way you do a yardstick analysis is you find comparable markets where the challenged conduct is entirely absent. And their expert didn't do that because their expert and they themselves chose to ignore large portions of what we were including as part of the challenged conduct.

So these are not new opinions that we are offering on rebuttal. If Your Honor checks the record, you will be able to see that those restraints have always been part of our case. They were part of our complaint. They were part of our original report. And it's simply rebuttal for us to say in response to their expert that their expert has poorly chosen yardsticks because the yardsticks that their expert chose contain the very restraints that we're challenging.

So we were unable to fully provide certain written statements on this to Your Honor because this is not an issue that Defendants chose to put in their section of the joint

status report. It's not an issue that they expressed to us on any of our meet and confers regarding this topic.

So we are having to scramble a bit on the fly, but, Your Honor, we are very firmly of the opinion that these are not new opinions that our experts are offering, and we are not changing the theory of our case, and there is no justification for their arguments to that effect.

So that's the first point, and then I can move on unless Your Honor had questions on that.

THE COURT: Well, very briefly.

So it may be that the theory is found in your complaint. I have no reason to doubt that. That jibes with my recollection; however, just because it's a theory that you've alleged doesn't mean that it's something that your experts originally opined on.

So I take it what you're saying is if I go and look at the expert reports for these two individuals which are appended in support of your motion for class certification, I will see that these issues described by Mr. Glass are actually implicated by the opinions that they've already given.

MR. PIERCE: Yes, you will, Your Honor.

THE COURT: You can move on to your next topic of response.

MR. PIERCE: Yes.

And as Your Honor, I think, raised, there are

significant concerns that Defendants are going to use this as an avenue to upset the carefully negotiated schedule that we have all agreed upon. In our experience, these things have a tendency to spiral out of control.

To the extent that Your Honor is inclined to allow additional deposition time, what we would say is that it should be limited to a very short period of time. We don't think more than an hour is necessary. We don't think there's any reason to inconvenience our experts by demanding that this be an in-person deposition.

And we also think that Your Honor should make clear that on this single short deposition, which, again, we think is unnecessary and Your Honor will see that if and when you check the reports, should not be a justification for any further additional briefing or any further additional paperwork by Defendants that risks further delaying the case.

THE COURT: Just a moment here.

Mr. Glass, are you asking for an in-person deposition? And maybe more to the point, are you opposing a remote deposition, particularly since this would be a follow-up deposition?

MR. GLASS: So, Your Honor, we do not oppose a deposition by videoconference.

I took the deposition of one of these experts, and I can tell you that a significant amount of our time was eaten

up by both speaking objections and just the logistics of it being remote. And so it just goes to time, Your Honor. I think it could just be much faster if it's in person, but I don't object to it being remote.

THE COURT: Okay.

MR. GLASS: Your Honor, may I be heard quickly on --

THE COURT: Let me make sure there's nothing further from Mr. Pierce.

Did you have anything else you wanted to add?

MR. PIERCE: Your Honor, I want to get you the cites to the original expert report. So I'll let Mr. Glass finish up, and I will work on seeing if I can get you those cites.

THE COURT: If you can find the docket entry for me, that would be helpful.

MR. PIERCE: Okay.

THE COURT: Okay. Mr. Glass, you wanted to raise a point in rebuttal.

MR. GLASS: Yes, Your Honor. Thank you.

So what Mr. Pierce is describing is not an accurate description of what the experts' opinions are.

So simply, the experts' first opinion is that there were multiple causes of increased commission rates, one of which was the buyer-broker commission rule, and that together, those multiple reasons worked together to have an effect of having class-wide harm.

What our expert showed is that one of those reasons can't be the cause of the harm because the same commissions and the same practices exist in areas that do not have the buyer-broker commission rule.

And even if they still have three of the four reasons, because the plaintiffs' experts used the four reasons collectively, the fact that one reason isn't there completely undermines their opinion. And so it is really irrelevant that the plaintiffs in their complaint and the plaintiffs' experts have mentioned these other reasons in their initial report and their subsequent report.

What is the real issue is that now, the plaintiffs' experts are saying one of the core reasons, maybe the single-most important reason, that they found that buyer-broker commissions are too high isn't the reason that buyer-broker commissions are too high because they say it's the same result in areas that don't have that rule.

And that's the problem here. The problem is that they've now made a different argument that it's really the three remaining rules that have a negative effect, not the buyer-broker commission rule which is really the brand new opinion.

THE COURT: Okay. I believe --

MR. PIERCE: Your Honor, --

THE COURT: Is there a need for any further response

to that, Mr. Pierce? I think I kind of circled back around to where we started.

MR. PIERCE: I think you're right, Your Honor.

I would direct you to pages 97 through 107 of Professor Elhauge's original report. And, I think, in general, our papers, including our reply briefs, show that we are not changing our opinion. We continue to think the buyer-broker commission rule is a key restraint, and we will stand on that.

THE COURT: I believe we are still operating under a schedule where the parties are due to finish fact discovery by October 6th. Is that correct?

MR. GLASS: Yes.

MR. PIERCE: Rio Pierce for Plaintiffs.

Yes, that's correct. I think, as we note in the status report, there's a short extension for depositions specifically, but all other fact discovery should conclude by October 6th.

THE COURT: And I believe that our scheduling order actually only goes through the end of fact discovery.

I think the parties were anticipating that class certification would be ruled upon and that that might dictate how things would go forward with respect to any additional expert discovery on the merits and the dispositive motion schedule.

Am I recalling that correctly?

MR. BRAUN: Your Honor, this is Robbie Braun for the plaintiffs.

My understanding is actually that initially, I think the parties had proposed a schedule that went through summary judgment and merits expert reports, but I think Your Honor had decided to hold off on entering any deadlines through the merits until after class certification was resolved.

THE COURT: Okay. And likely anticipating there could be adjustments to the schedule along the way which there have been. I believe, all along, it's been anticipated that there would be a post fact discovery time period for expert discovery on the merits.

Are the plaintiffs planning to -- I guess, let me rephrase my question.

Is it fair to say that these two class certification experts who are at issue here are also merits discovery experts as well?

There's some suggestion in the status report that one of the issues here is that potentially, the defendants will have another opportunity to depose these experts during merits expert discovery. And I just wanted to confirm that the plaintiffs do consider these individuals to be merits experts and that this is something that would have to be worked out for merits expert discovery if the defendants seek another

opportunity to depose them again.

MR. PIERCE: Your Honor, Rio Pierce.

Yes, as of now, we certainly expect fully that they will be some of our -- at least some of our merits experts. And to the extent that they have these issues that Mr. Glass is raising which we think are merits issues, Defendants will have one, potentially two chances to depose them at the merits stage regarding these issues.

THE COURT: And do you expect that you would be offering a different report from them, or is it really the same work that they've already done that you would just be offering for the merits of your position as opposed to class certification?

There seems to be a significant overlap here with respect to the merits and the class certification issues, so I guess I'm wondering whether this really is a situation where for these experts, they would actually do new opinions and be deposed anew during merits expert discovery.

MR. PIERCE: Your Honor, Rio Pierce.

I mean, we would submit the reports, but as Your Honor has surmised, there is a very significant amount of overlap between the class certification reports and the merits reports, and we are not going to be changing our theory of the case.

We've articulated our view of the merits in our class

certification reports. And so as Your Honor surmised, much of the substance, including, I think, the issue that Mr. Glass has raised, will be part of our merits reports. And Defendants will have a chance to depose them at that point.

THE COURT: And one more question for the parties, and then I think I'll have all the information that I need. And this is for the defense side.

If I were -- well, I don't know if the parties have agreed that you are bearing the cost of your own experts' time for depositions. Of course, the Federal Rules of Civil Procedure actually provide that the party seeking discovery from an expert can be required to pay for the time that they spend responding to discovery, including time sitting for a deposition. But way back in my own experience in complex litigation, I found that parties most often agree to bear the expense for their own experts' time.

In this case, is this a situation where the defendants would be ready and willing to foot the cost of having these two experts prepare for a second deposition and sit for those depositions?

MR. GLASS: So, Your Honor, the case has been the parties are bearing their own experts' costs.

I certainly think these depositions are important. I think if Your Honor is ordering that unless we bear the costs, we don't get the depositions, I think the defendants would

like the opportunity to then assess whether or not the cost is merited by the depositions or whether or not we just want to bring our motions as Your Honor indicated.

What I would say, though, is it would reward the plaintiffs for changing their theory in their reply report. And so I would respectfully request that the Court limit the burden, you know, other than imposing burden on the defendants such as we're amenable to video.

And these are paid experts, so it's not like they have business that's being disrupted. They're not party witnesses. And so the amount of time that we'd have to depose them really can be the constraint instead of having some sort of ability for them to bill whatever they want to bill to the defendants.

THE COURT: Okay. Thank you for answering my questions.

I am going to take the matter under advisement because I'm going to take a look at the filing for class certification just to make sure that I have a good understanding of the scope of the issues, particularly in light of the further explanation that Mr. Glass has provided.

I will let you know by Monday and issue an order because I do also think that this obviously has an effect on the schedule.

It's difficult for me to contemplate how even if I do

rule this morning that the deposition would be scheduled to take place and allow for reply briefs to be filed on the 22nd. And I am going to take that into account because this is a schedule that has been worked out, and it does seem to me that the parties could have anticipated a desire to depose experts after their rebuttal reports; but I'd like to see the opinions and get a better idea.

The other thing that I'll comment on is that I had not necessarily anticipated that there would be a need certainly not for any evidentiary hearing in support of class certification. I think I heard a suggestion of that.

I might entertain or even request oral argument once I have a chance to look more closely at the briefing, but I would not expect that to include any actual testimony.

So to the extent there's been a concern raised throughout this discussion about whether or not these experts would testify why at an evidentiary hearing at the cost certification stage, that seems very unlikely to me.

Whether they would testify at trial, I think, is a different issue, but that would, of course, occur after the additional period of merits discovery had taken place. So I'll just indicate that as well.

Here is what I'd like to do since we don't have a firm schedule in place past the close of fact discovery and since I do think there is some possibility that I would be

interested in oral argument on the class certification issue.

With fact discovery closing on October 6th, I'm going to set a little bit of a shorter status date than what we have had in the past.

I'm going to ask the parties to submit your status report which will include a schedule for resolving the remaining discovery as well as for dispositive motions by October -- let's say by October 20th. Let's see. Actually, I'm going to bump it by a day. I'd like that report by October 19th, which is the Wednesday, because I'm going to set our next telephone status hearing for October 26th.

So as I said, I'm looking for reasonable, firm deadlines for the completion of the outstanding discovery as well as filing of dispositive motions. I will be taking a look at that for the purpose of considering what sort of trial date we might be looking at down the line just because I'm anticipating that when the time comes, there will be a lot of moving pieces to coordinate. So I think the sooner that we can look ahead to a potential trial date perhaps in 2023, the better.

MR. RAY: Your Honor.

THE COURT: Who's speaking?

MR. RAY: This is Timothy Ray.

I have a conflict on the date that you proposed. I was wondering if the 24th might be doable.

THE COURT: The 24th is the Monday. So what I would do in that circumstance is also adjust the date for your status report and make the status report due October 17th and then the status hearing be -- I could do the 24th. I suppose I would do the 24th at 11:00 a.m. if Counsel are available.

Does that date and time work for the other counsel as well?

Not hearing any objection. Any objection from the plaintiffs' side?

MR. PIERCE: No objection from the plaintiffs, Your Honor.

THE COURT: Any of the other defendants have an objection or concern with an October 24th status hearing at 11:00 a.m. with the status report due on the 17th?

Not hearing any, that will be the schedule.

I'd also like the status report on the 17th to include a written update on where things are in the other litigation. I don't want to hear that update now, but I'd like to know where things are on the 17th, particularly since we're going to be talking about longer-term scheduling in this case.

I will take a look at those expert reports. I will get an order that will be clear about what's going to be permitted going forward.

Thank you for your time today.

MR. KLIEBARD: Your Honor, Ken Kliebard. Can I raise one issue very briefly, please?

THE COURT: I'm sorry. Who's speaking again?

MR. KLIEBARD: It's Ken Kliebard on behalf of Realogy.

I just am responding to Your Honor's comment that there will not be an evidentiary hearing on class certification, and I did want to just raise one issue that we don't necessarily need to discuss today.

I think as the Court is aware, the Seventh Circuit was the first circuit and certainly one of the strongest circuits in this regard to require a full Daubert analysis at the class certification stage. That's the Seventh Circuit *American Honda* decision. And I'd note the Seventh Circuit in *United States v. Ozuna*, 561 F.3d 728, Seventh Circuit, 2009, has endorsed evidentiary hearings for Daubert purposes.

And I'd note that I don't know what this Court's practice is. I know that other courts -- Judge St. Eve, for example, had a standing order on Daubert hearings and how those would proceed. And I was wondering for planning -- and those generally do include testimony from the expert witnesses so that the Court can evaluate the experts for purposes of complying with the Seventh Circuit's edict in *American Honda*. And I would like to at least like to raise that issue and see if the Court would be willing to entertain that type of

Daubert hearing.

And we can certainly brief this later if that's the Court's preference, but I did want to raise it now in response to the Court's comment.

THE COURT: Sure.

So I'm obviously familiar with *American Honda*. I do hold Daubert hearings. You know, the necessity and propriety of the hearing, I think, also depends on the nature of the challenge that's being made to the experts and the nature of the record that is already available.

I don't know, at this point, whether I would consider that to be a necessity. And I'm not sure whether live testimony would shed any further light on the challenges that have been raised beyond what's going to be in the briefing; but if I were going to hold an evidentiary hearing in connection with class certification, it would likely be to address the Daubert issues and not, you know, more squarely class certification itself.

I would consider it, but as I said, I think that under the Seventh Circuit's standard, there is room -- indeed, it would be contemplated that the decision on whether such testimony is necessary will take into account the record that's already been developed as well as the nature of the challenge because frankly, sometimes live testimony is really not going to be all that helpful other than to add time and

perhaps, more significantly, the expenditure of resources into the process. Expert testimony does not come cheap.

And so I would consider it my general practice would be that if there is a party who wants to have either an evidentiary hearing or has a specific request for oral argument on a motion that you can go ahead and make that filing in connection with your briefing of the motion or shortly after it's fully briefed, and I would consider it. So you can request either or both if you would like it.

As I said, I think the thing that I would on my own be most likely to request would be oral argument related to class certification more so than testimony on Daubert. But, again, you've filed a lot of material. I haven't had a chance to dig into it to see what I think would be helpful.

MR. KLIEBARD: Again, Your Honor, thank you on that. And I realize that expert testimony doesn't come cheap, and not to state the obvious, but Plaintiffs are seeking billions of dollars in enterprise-driven litigation here, so we do want to make sure that we are given every opportunity. And we will file a separate motion at the appropriate time and make our argument as to why we do think an evidentiary hearing on Daubert is appropriate if that's the direction that we go.

THE COURT: I do need to wrap up the hearing, but I do think there was somebody else who wanted to jump in. So I'll see if there's any other issue that we need to address,

and then I need to turn to other folks who I assume are waiting patiently on the line even though I can't see them due to our technical issues.

MR. PIERCE: Your Honor, this is Rio Pierce for Plaintiffs just to say Plaintiffs don't think a full evidentiary hearing would be necessary but defer to what Your Honor thinks is most appropriate after you've had a chance to review the papers. And I won't keep the other cases waiting any longer for that.

MR. BRAUN: Sorry, Your Honor. This is Robbie Braun for Plaintiffs. Just a housekeeping matter.

I just did want to make sure the record was clear that the Court was granting the parties' proposed joint extension with respect to the deposition discovery as is reflected in the joint status report.

THE COURT: Yes. So the separate stipulation will be entered separately on the docket with my signature. The agreements reached, I think they're, for the most part, reflected on page 2 of the status report. But the agreements you've reached are fine with me, and they'll be memorialized in the minute order from today.

MR. BRAUN: Okay. Much appreciated, Your Honor.

THE COURT: Thank you, Counsel. Have a good day.

(Proceedings adjourned at 11:21 a.m.)

C E R T I F I C A T E

I, Brenda S. Tannehill, certify that the foregoing is a complete, true, and accurate transcript from the record of proceedings on September 15, 2022, before the HONORABLE ANDREA R. WOOD in the above-entitled matter.

*/s/Brenda S. Tannehill, CSR, RMR, CRR* 9/19/2022

Official Court Reporter Date
United States District Court
Northern District of Illinois
Eastern Division