**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, VALERIE NAGER, JACK RAMEY, DANIEL UMPA, And JANE RUH, on behalf of themselves and all others similarly situated </br></br>Plaintiffs,</br></br>v.</br></br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.</br></br>Defendants. | Case No. 1:19-cv-01610 </br></br> Judge Andrea R. Wood |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR EVIDENTIARY DAUBERT HEARING TO EXCLUDE CLASS
CERTIFICATION EXPERT TESTIMONY OF ELHAUGE AND ECONOMIDES**

## PRELIMINARY STATEMENT

A pressing issue before the Court, previously foreshadowed by Defendants, is whether the Court should conduct an evidentiary hearing with respect to Defendants' *Daubert* challenge to Plaintiffs' experts who support class certification.[1] The answer is yes.

The Supreme Court has consistently emphasized that class actions are an "exception to the usual rule" of individual adjudication, and that Rule 23 therefore requires courts to conduct a "rigorous analysis" to ensure that classwide adjudication of truly predominantly common issues creates judicial efficiencies without sacrificing procedural fairness. *Wal-Mart Stores, Inc. v. Dukes*, 564 338, 351, 367 (2011) (quotations omitted). Because of the hydraulic pressure to settle even meritless claims if a class is certified, Rule 23 contains a number of procedural safeguards. Thus, Rule 23 requires the plaintiff to show at the class certification stage "through evidentiary proof" that the class's claims "*in fact*" can be litigated on a class-wide basis. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013). This imposes upon District Courts the "duty to take a close look" at whether putative class plaintiffs can in fact satisfy Rule 23's requirements. *Id*. at 34 (quotations omitted).

Perhaps ahead of its time, in 2010 the Seventh Circuit issued its landmark decision in *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010), requiring a full *Daubert* analysis of expert testimony at the class certification phase. That is critical here because Plaintiffs' Motion for Class Certification depends entirely on the interdependent opinions offered by Plaintiffs' two proffered experts, Mr. Einer Elhauge and Dr. Nicholas Economides. As result of *American Honda* and its progeny, this Court is required to conduct a full Daubert analysis and

---

[1] September 15, 2022 Hearing Tr. at 33:3-14 (inviting parties to submit requests for evidentiary hearing on class certification or *Daubert* motions).

rule on Defendants' challenge to Plaintiffs' proffered expert testimony before it rules on Plaintiffs' Motion for Class Certification. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812 (7th Cir. 2012) (citing *Am. Honda Motor,* 600 F.3d at 815–16). A full *Daubert*[2] analysis includes an evidentiary hearing if necessary to give the Court and Defendants an opportunity to test the reliability of the opinions offered by Plaintiffs' experts. *Am. Honda*, 600 F.3d at 815-16; *see also In re Groupon, Inc. Sec. Litig.,* No. 12 C 2450, 2014 WL 2035853, at *2 (N.D. Ill. May 16, 2014) (requiring evidentiary hearing to permit full *Daubert* analysis of expert testimony critical to class certification). This is particularly important here given the serious challenges raised by Defendants in their *Daubert* motion, and because Plaintiffs were allowed to file extensive supplemental expert reports yet Defendants were not permitted to depose the experts on the new reports.

In defiance of controlling precedent, Plaintiffs argue that the Court should disregard its gatekeeper function under *Daubert* because "the correctness of [an] expert's conclusions . . . are factual matters to be determined by the trier of fact." Plaintiffs' Reply in Support of Motion for Class Certification, Dkt. No. 345 ("Pls. Reply ISO Class Cert.") at 10 (quoting *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir. 2000)). The only case Plaintiffs cite for that proposition, however, was not a class action at all, and thus did not involve a motion for class certification and for that reason did not implicate the concerns expressed in *American Honda*.[3] That is a critical distinction because Seventh Circuit law leaves no doubt that a trial court deciding a motion for class certification is required to "make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether

---

[2] *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993).

[3] *Id*. (assessing admissibility of plaintiff's expert testimony for merits of products liability case brought by single plaintiff alleging accident was caused by defect in van's power steering gearbox).

a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda,* 600 F.3d at 815 (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). "Tough questions must be faced and squarely decided, *if necessary by holding evidentiary hearings and choosing between competing perspectives*." *Am. Honda,* 600 F.3d at 815 (emphasis added) (quoting *West v. Prudential Sec., Inc.*, 282 F.3d 935, 938 (7th Cir. 2002)). The "tough questions" that the Court is required to decide here include determining whether Plaintiffs' experts' opinions, which are critical to their Motion for Class Certification, are reliable under *Daubert*. An evidentiary hearing is necessary for this Court properly to decide those questions.

## ARGUMENT

### A. The opinions offered by Mr. Elhauge and Dr. Economides are critical to Plaintiffs' motion for class certification.

Plaintiffs readily admit that the opinions offered by Mr. Elhauge and Dr. Economides are critical to Plaintiffs' Motion for Class Certification. Pls.' Reply ISO Class Cert. at 1. Specifically:

- Plaintiffs rely on Mr. Elhauge to support their primary claim that the challenged NAR rules "produced pervasive effects (including steering incentives) that impacted commissions across the board." *Id.*; and

- Plaintiffs rely on Dr. Economides' "yardstick analysis" to "identify the international real estate markets most similar to the United States" and on his analysis of "the full distribution of buyer broker rates and usage in both the actual world and the international comparators." *Id.*

Given that these opinions are central to plaintiffs' motion for class certification, this Court cannot decide plaintiffs' motion without first conducting a full *Daubert* inquiry into the reliability of these opinions. *Am. Honda,* 600 F.3d at 815.

4

**B.  The Court should determine whether the opinions offered by Mr. Elhauge and Dr. Economides meet the requirements of *Daubert*.**

A trial court's gatekeeper duty under *Daubert* and Federal Rule of Evidence 702[4] cannot be satisfied by a conclusory determination of admissibility. *Am. Honda,* 600 F.3d at 816 ("the court must provide more than just conclusory statements of admissibility to show that it adequately performed the *Daubert* analysis") (quoting *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009)). *Daubert* requires the trial court to determine not just "whether a given expert is qualified to testify in the case in question," but whether the expert's "testimony is scientifically reliable." *Id*. at 817 (citing *Gayton v. McCoy,* 593 F.3d 610, 616 (7th Cir. 2010). Even a qualified expert cannot provide opinions in support of a motion for class certification "unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert*." *Id*. at 817 (quoting *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999)).

This Court is therefore required to evaluate whether the opinions offered by Mr. Elhauge and Dr. Economides are "based on a correct application of a reliable methodology and that the expert[s] considered sufficient data to employ the methodology." *Elward v. Electrolux Home Prod., Inc.*, No. 15-CV-09882, 2020 WL 2850982, at *11 (N.D. Ill. June 1, 2020) (granting *Daubert* motion and denying motion for class certification) (quoting *Stollings v. Ryobi Tech., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013)).

Defendants urge the Court to find that an evidentiary hearing is necessary to perform the full *Daubert* analysis required under *American Honda* before class certification can be

---

[4] Fed. R. Evid. 702 permits testimony by an expert—someone with the requisite "knowledge, skill, experience, training, or education"— if (1) "the testimony is based on sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) the expert "has reliably applied the principles and methods to the facts of the case." *Id.*

addressed. 600 F.3d at 815. If neither party requests an evidentiary hearing, it may be appropriate for the court to forego one, but that is not the case here. *In re Groupon, Inc. Sec. Litig.*, No. 12 C 2450, 2014 WL 2035853, at *2 (N.D. Ill. May 16, 2014) (finding evidentiary hearing procedurally appropriate prior to ruling on the admissibility of proffered experts' opinions and testimony, and distinguishing cases where neither party requested a hearing) (citing *Am. Honda*, 600 F.3d at 815–16). More importantly, for the reasons indicated below, an evidentiary hearing is necessary for the Court to conduct the assessment required by *Daubert* of the opinions offered by Mr. Elhauge and Dr. Economides, and the methodologies on which those opinions are based. As another ILND judge observed, that while discretionary, "[a] Daubert hearing permits the parties to examine the challenged expert in open court to develop his or her testimony for purposes of evaluating its admissibility." (Judge St. Eve Standing Order On Challenges To The Admissibility Of Expert Testimony Under Rule 702 and Daubert, *available at* https://www.ilnd.uscourts.gov/_assets/_documents/_forms/_judges/St_Eve/Daubert%20Standing%20Order.pdf).

      **C.**      **The Court should exercise its discretion in holding an evidentiary hearing to determine the reliability of Mr. Elhauge's opinions.**

Mr. Elhauge offered hundreds of pages of expert opinion in his opening and rebuttal reports ***without describing any methodology at all***. He likewise failed to describe in his deposition any methodology supporting his voluminous (yet conclusory) opinions. Rather, he relied on Dr. Economides' "yardstick analysis" of selected international markets and applied "elementary economic concepts" to reach the ultimate legal conclusions on which Plaintiffs rely:

    Q      Have you undertaken any analysis of those markets outside of the United States or are you relying entirely on Professor Economides?

6

      A      I'm relying on Professor Economides['] report and my read of it that the methodology seem[s] reliable like I would with any academic paper.[5]

Mr. Elhauge, who has no degree in economics and whose formal training in economics consists of undergraduate courses in microeconomics and macroeconomics and participation in "numerous workshops on law economics,"[6] then purported to apply his superficial knowledge of basic economic principles to Dr. Economides' analysis as the support for his core opinion that the challenged conduct caused "pervasive effects (including steering incentives) that impacted commissions across the board" in the alleged relevant markets. Pls.' Reply ISO Class Cert. at 1.[7] Because Mr. Elhauge did not describe any recognized methodology at all in his reports or in his deposition testimony, it is incumbent on this Court to hear testimony from Mr. Elhauge and from Defendants' economic expert, Dr. Lauren Stiroh, to determine whether Mr. Elhauge's opinions are reliable, are based on any accepted economic methodology, or are impermissibly connected to the evidence only by the *ipse dixit* of Mr. Elhauge himself. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999); s*ee also GE v. Joiner*, 522 U.S. 136, 146 (1997).

For example, Defendants' expert, Dr. Lauren Stiroh, noted in her report that Mr. Elhauge's conclusions were inconsistent with the undisputed fact that similar patterns and levels of buyer broker compensation existed long before the challenged NAR Rule was adopted.[8] In his rebuttal report, Mr. Elhauge responded – without any evidentiary or analytical support – that the prior patterns were caused by "other rules."[9] But if "other rules," and not the

---

[5] Elhauge Dep. I (May 18, 2022), attached as Exhibit A, at 19:4-9.

[6] *Id*. at 148:12-149:23.

[7] *See, e.g.,* Elhauge Rep., Dkt. No. 306-9, ¶¶ 147, 212; Elhauge Reply Rep. Dkt. No. 345-3, ¶ 151 (applying basic economic principle that offering a service as "free" may lead to overconsumption of that service to conclude that home buyers would rarely use a buyer broker in the but for world (absent the challenged NAR rules)).

[8] *See* Stiroh Rep., Dkt. No. 322-2, ¶¶ 33, 54–55.

[9] Elhauge Reply Rep., Dkt. No. 345-3, ¶¶ 24, 26–29, 34.

7

Cooperative Compensation Rule principally at issue in this case, explain observed frequency of use and levels of offers of cooperative compensation, that calls into question Mr. Elhauge's views as to whether the Cooperative Compensation Rule had any impact at all.. More importantly, Dr. Stiroh has not yet had an opportunity to address Mr. Elhauge's latest explanation and the inconsistencies and flaws in Mr. Elhauge's *ipse dixit* conclusions concerning causation. An evidentiary hearing is required for the Court to hear from both parties' experts on this and other fundamental flaws in Mr. Elhauge's analysis that cast doubt on its reliability under *Daubert*.

> **D.  An evidentiary hearing is necessary for this Court to determine the reliability of Dr. Economides' opinions.**

Similarly, an evidentiary hearing is needed for this Court to determine whether Dr. Economides' damages opinions (and the benchmark analysis on which those opinions are based) are reliable under *Daubert*. As discussed in Defendants' opening brief in support of their motion to exclude his testimony, Dr. Economides fails to explain how his benchmark analysis accounts for the wide variation in real estate brokerage practices in the three foreign countries he considered. Defendants' Motion to Exclude Expert Testimony of Elhauge and Economides, Dkt. No. 319 ("Defendants' MOL ISO Motion to Exclude"). Unless he can explain how these variations arose, he cannot reliably use the three foreign markets he selected to predict what would have happened in the relevant U.S. markets if the challenged NAR rules had never been adopted. Rather than offering such an explanation, however, Dr. Economides simply ***assumes*** that his reliance on three foreign markets is reasonable based on *per capita* GDP, relative corruption levels, and an arbitrary minimum population in those three countries.[10] He offers no

---

[10] Economides Rep., Dkt. No. 306-7 ¶¶ 22-25.

8

explanation, however, why it is reasonable to assume that countries with similar GDP levels, corruption levels, and some arbitrary minimum population would necessarily develop similar real estate brokerage practices. That explanation is essential to a determination whether his methodology is reliable under *Daubert* and, because it is nowhere to be found in his report or his deposition testimony, an evidentiary hearing is necessary for this Court to determine if his opinions are reliable.

Dr. Economides also included in his reply report – which Dr. Stiroh has not yet had an opportunity to address – an entirely new regression analysis to support his conclusions concerning whether commission rates vary as home prices change.[11] Even if an additional deposition of Dr. Economides is not required to test this new analysis, Dr. Stiroh should be given an opportunity to explain to the Court why neither this new analysis nor any of the additional justifications and post hoc rationalizations in Dr. Economides' reply report resolve the criticisms Dr. Stiroh made of Dr. Economides' initial analysis and conclusions.

Finally, the reasonableness of Dr. Economides' reliance on Mr. Elhauge's opinions is also in question – particularly given the novel circularity of the two experts' reliance on each other. Dr. Economides testified that he "rel[ied] on Professor Elhauge's report for the findings of liability and everything else."[12] Dr. Economides was "convinced from Professor's Elhauge's report" that the challenged conduct caused anticompetitive effects in the alleged relevant market, but he has nowhere explained why it was reasonable for him – as a PhD economist – to rely on those conclusions reached by a law school professor without any degree an economics.[13]

---

[11] Economides Reply Rep., Dkt. No. 345-4, ¶¶ 86–87.

[12] Economides Dep. I (May 20, 2022), attached as Exhibit B, at 18:16-18.

[13] *See id.* at 20:1-6.

## CONCLUSION

For the foregoing reasons, Defendants request an opportunity to present live testimony from the experts in connection with their motion to exclude the impact and damages testimony of Mr. Elhauge and Dr. Economides.

Dated: October 21, 2022

Respectfully submitted,

<u>/s/ Kenneth M. Kliebard</u>
Kenneth M. Kliebard
Heather J. Nelson
**MORGAN, LEWIS & BOCKIUS LLP**
110 N. Wacker Drive, Suite 2800
Chicago, Illinois 60601
Tel: 312.324.1000
Fax: 312.324.1001
kenneth.kliebard@morganlewis.com
heather.nelson@morganlewis.com

Stacey Anne Mahoney, *pro hac vice*
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
Tel: 212.309.6000
Fax: 212.309.6001
stacey.mahoney@morganlewis.com

William T. McEnroe, *pro hac vice*
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, Pennsylvania 19103
Tel: 215.963.5000
Fax: 215.963.5001

William S. D. Cravens, *pro hac vice*
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Ave. NW
Washington, DC 20004
Tel: 202.373.6083
Fax 202.739.3001

*Attorneys for Defendant Realogy Holdings Corp. n/k/a Anywhere Real Estate Inc.*

10

*/s/ Robert D. MacGill*
Robert D. MacGill
robert.macgill@macgilllaw.com
Scott E. Murray
scott.murray@macgilllaw.com
Matthew T. Ciulla
matthew.ciulla@macgilllaw.com
**MACGILL PC**
156 E. Market St., Suite 1200
Indianapolis, IN 46204
(317) 961-5085

Jay N. Varon
jvaron@foley.com
Jennifer M. Keas
jkeas@foley.com
**FOLEY AND LARDNER LLP**
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 672-5436
James D. Dasso
jdasso@foley.com
**FOLEY & LARDNER LLP**
321 N. Clark St., Suite 2800
Chicago, IL 60654
(312) 832-4588

*Counsel for Defendants HomeServices of America, Inc., BHH Affiliates, LLC, HSF Affiliates, LLC, The Long & Foster Companies, Inc.*


*/s/ Timothy Ray*
Timothy Ray
Timothy.Ray@hklaw.com
**HOLLAND & KNIGHT LLP**
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60603
(312) 263-3600

David C. Kully
david.kully@hklaw.com
Anna P. Hayes
anna.hayes@hklaw.com
**HOLLAND & KNIGHT LLP**

11

800 17th Street NW, Suite 1100
Washington, DC 20530
(202) 469-5415

*Counsel for Defendant Keller Williams Realty, Inc.*


*/s/ Eddie Hasdoo*
Eddie Hasdoo
 hasdoo@jonesday.com
**JONES DAY**
110 N. Wacker, Suite 4800
Chicago, IL 60606
(312) 782-3939

Jeffrey A. LeVee
 jlevee@jonesday.com
Eric P. Enson
 epenson@jonesday.com
**JONES DAY**
555 S. Flower Street, 50th Floor
Los Angeles, CA 90071
(213) 243-2572

*Counsel for Defendant RE/MAX, LLC*


*/s/ Jack R. Bierig*
Jack R. Bierig
 jbierig@schiffhardin.com
Adam J. Diederich
 adiederich@schiffhardin.com
**SCHIFF HARDIN LLP**
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
312-258-5500 (Phone)
312-258-5600 (Fax)

Robert J. Wierenga
 rwierenga@schiffhardin.com
Suzanne L. Wahl
 swahl@schiffhardin.com
SCHIFF HARDIN LLP
350 S. Main Street, Suite 210
Ann Arbor, MI 48104

12

(734) 222-1517

*Counsel for Defendant*
*National Association of Realtors®*

**CERTIFICATE OF SERVICE**

      I, the undersigned attorney, hereby certify that on October 21, 2022, I filed a copy of the foregoing using the Court's electronic filing system, which will send notification of the same to all counsel of record.

*/s/ Kenneth M. Kliebard*
Kenneth M. Kliebard