# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, JACK RAMEY, DANIEL UMPA, and JANE RUH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No.: 1:19-cv-01610<br><br>Judge Andrea R. Wood |

## JOINT STATUS REPORT

Pursuant to the Court's Order (Dkt. 376), Plaintiffs Christopher Moehrl, Michael Cole, Steve Darnell, Jack Ramey, Daniel Umpa, and Jane Ruh, on behalf of themselves and all others similarly situated ("Plaintiffs"), and Defendants The National Association of Realtors®, Realogy Holdings Corp., HomeServices of America, Inc., BHH Affiliates, LLC, HSF Affiliates, LLC, The Long & Foster Companies, Inc. (collectively, "HomeServices"), RE/MAX LLC ("RMLLC"), and Keller Williams Realty, Inc. ("Defendants"), (collectively, the "Parties"), respectfully submit this Joint Status Report setting forth the current status of discovery.

1. **FACT DISCOVERY STATUS**

The Parties confirm that fact discovery is largely complete, with the following exceptions. Due to scheduling conflicts and a witness's illness, the depositions of The Real Estate Board of New York, Inc. and Brooklyn MLS have been rescheduled for December 15 and December 16, 2022. Defendants filed a motion to extend the December 9, 2022 fact discovery deadline to accommodate the rescheduled depositions. Dkt. No. 388. Plaintiffs have consented to that motion. In addition, a small number of other fact depositions and interrogatory responses are subject to disputes among the Parties. Those disputes are separately addressed below.

**2.     PLAINTIFFS' MOTION TO COMPEL CERTAIN HOMESERVICES DISCOVERY**

Plaintiffs filed a motion to compel certain HomeServices-related discovery, including to complete the depositions of Alan Taylor and HomeServices' Rule 30(b)(6) designee Alex Seavall. Dkt. 382. The HomeServices Defendants have opposed that motion (Dkt. 386), which is now ripe.

**3.     DISPUTES OVER CERTAIN INTERROGATORY RESPONSES BY DEFENDANTS KELLER WILLIAMS, RE/MAX, AND REALOGY**

In the prior status report, the Parties advised the Court that they were conferring over Defendants' responses to certain interrogatories served by Plaintiffs. Dkt. 373. Despite the Parties' efforts, Plaintiffs and Defendants RE/MAX, Realogy, and Keller Williams have now reached an impasse with respect to Interrogatory Nos. 1, 2, and 3 in Plaintiffs' Second Set of Interrogatories to the Corporate Defendants.[1] The interrogatories at issue are as follows:[2]

> INTERROGATORY NO. 1:
> Identify and Describe each procompetitive justification or benefit to consumers that you contend applies to NAR's rules concerning the Buyer Broker Commission Rule, Commission Filtering and Disclosure, Restraints on Negotiation, or Advertising Commissions as "Free" and all facts and evidence that you contend support each such procompetitive justification or benefit.
>
> INTERROGATORY NO. 2:
> Identify and Describe all facts and evidence that you contend show that any such procompetitive justification or benefit could not be reasonably achieved through less anticompetitive means.
>
> INTERROGATORY NO. 3:
> To the extent You contend that Defendants do not collectively possess market power, Identify and Describe all facts and evidence that you contend support that position, including what you contend to be relevant geographic and product markets.

Subject to certain objections, Defendants responded to Interrogatory Nos. 1 and 2 as follows:

> <u>Keller Williams</u>: "KWRI refers Plaintiffs to expert testimony and/or reports that have been or will be produced in this litigation, as well as any documents relied upon by the experts in forming their opinions."[3]

---

[1] Certain Defendants have agreed to supplement certain of their interrogatory responses by 1/23/2023. In so doing, those Defendants have further agreed with respect to the interrogatories at issue that they waive arguments regarding the timeliness of subsequent enforcement efforts (if any).

[2] Ex. 1, Plaintiffs' Second Set of Interrogatories to the Corporate Defendants, 9/2/2022.

[3] Ex. 2, Defendant Keller Williams Realty, Inc.'s Responses to Plaintiffs' Second Set of Interrogatories to the Corporate Defendants, 10/3/2022.

> <u>RE/MAX</u>: "RMLLC states that it will disclose expert opinions on this subject in accordance with the scheduling order entered by the Court, as well as any documents relied upon by the experts in forming their opinions."[4]
>
> <u>Realogy</u>: "[A]t this time Realogy refers Plaintiffs to expert testimony and/or reports that have been or will be produced in this litigation."[5]

Those Defendants' responses to Interrogatory No. 3 similarly refer Plaintiffs to "expert testimony and/or reports that have been or will be produced in this litigation."[6]

The Parties' positions are set forth below.

<u>Plaintiffs' Position</u>

Plaintiffs have requested that Defendants identify by the close of fact discovery basic information about their contentions on issues that are material to Plaintiffs' merits expert reports. In particular, Plaintiffs seek through Interrogatory Nos. 1–3 information about Defendants' claimed procompetitive justifications for their allegedly anticompetitive conduct and the relevant market definition and market power. In response, Corporate Defendants Keller Williams, RE/MAX, and Realogy have refused to timely identify *any* of their contentions or *any* evidence in support of those contentions. Instead, those Defendants claim that they will not provide substantive responses, of any sort, until some point after the Parties have already served their merits expert disclosures. Permitting Defendants to continue to shield their litigation contentions and supporting facts nearly four years into the litigation, and even after fact discovery is complete, would severely prejudice Plaintiffs and their experts. Accordingly, Plaintiffs respectfully request that this Court order Keller Williams, RE/MAX, and Realogy to identify the facts and evidence in support of their contentions by January 23, 2023—two months in advance of Plaintiffs' expert deadline.

A primary purpose behind a "contention interrogatory" is to "allow[] a plaintiff to learn the factual bases of the opposing party's defense." *Zaborowski v. Sheriff of Cook Cnty.*, No. 08-cv-06946, 2011 WL 247289, at *1 (N.D. Ill. Jan. 26, 2011). Toward that end, "contention interrogatories require the answering party to commit to a position and give factual specifics supporting its claims." *Thomas & Betts Corp. v. Panduit Corp.*, No. 93-cv-4017, 1996 WL 169389, at *2 (N.D. Ill. Apr. 9, 1996). Contention interrogatories are commonly used to narrow the facts and issues in advance of merits expert reports and summary judgment motions. *See, e.g.*, Manual for Complex Litigation § 26:837 ("Interrogatories may also be used . . . to provide the foundation for a summary judgment motion. Whether certain facts are genuinely in dispute may be difficult to ascertain from depositions and affidavits . . . . Interrogatories are a means of requiring a party to disclose any facts that it believes raise a triable issue with respect to particular elements of a claim or defense.").

---

[4] Ex. 3, Re/Max, LLC's Objections and Responses to Plaintiffs' Second Set of Interrogatories to the Corporate Defendants, 10/3/2022.

[5] Ex. 4, Realogy Holdings Corp.'s Objections and Responses to Plaintiffs' Second Set of Interrogatories, 10/3/2022.

[6] *See* Ex. 2, 3, and 4.

Permitting Defendants to continue to delay providing substantive interrogatory responses would severely prejudice Plaintiffs' ability to prepare their merits expert disclosures, which are subject to a March 23, 2023 deadline. Plaintiffs' merits expert disclosures may limit the scope of their testimony at trial. For this reason, Plaintiffs and their merits experts need to be aware of Defendants' claims and defenses so that they can properly account for them in their reports. Requiring defendants to provide substantive responses in advance of expert disclosures is also a useful tool for reducing costs and streamlining the litigation. Expert expenses in antitrust cases are notoriously high. To the extent Defendants do not intend, for instance, to raise certain disputes with respect to market power or to assert a particular affirmative defense, by having this information in advance of their reports, Plaintiffs' experts can avoid the burden of addressing those issues in their merits reports.

It is more than reasonable to expect Defendants to provide the requested information by, at minimum, the end of fact discovery. Plaintiffs' original complaint was filed nearly four years ago, on March 6, 2019. Since that time, the Parties have briefed motions to dismiss (which, among other things, addressed affirmative defenses). The Parties have substantially completed document discovery and have conducted dozens of depositions. And both parties' experts have submitted reports and have been deposed in connection with class certification. Defendants have also served merits experts disclosures in the related *Burnett* case and have finished briefing summary judgment there as well.[7] Given the advance stage of both this litigation and the *Burnett* case, there is every reason to believe that Defendants and their law firms (among the largest in the world) not only *could* reasonably identify their responsive contentions and supporting evidence—but that they *already have*. Indeed, their co-Defendants NAR and HomeServices have already identified in their interrogatory responses much of the information that Keller Williams, RE/MAX, and Realogy claim will not be available to them until after their merits expert disclosures.[8] Defendants should not be permitted to obtain an improper litigation advantage by shielding from Plaintiffs discoverable information already in their possession.

Defendants nevertheless argue that Interrogatory Nos. 1–3 implicate expert opinion and, thus, no answer should be required until after merits reports are submitted. This is a red herring. Regardless of whether Defendants' experts may offer opinions on certain claimed procompetitive benefits, Plaintiffs are entitled to the underlying factual and evidentiary support that Defendants themselves already possess and intend to rely on. "[E]xpert witnesses are unlikely to be the ultimate source of much of the information sought," and their opinions will "be rendered upon an analysis of facts obtained from other sources." *United Technologies Motor Systs. v. Borg-Warner Automotive, Inc.*, 1998 WL 1796257, at *3 (E.D. Mich. 1998). If those facts, including economic support, are in Defendants' possession, Plaintiffs are entitled to them now. *Id*. By contrast, if Defendants have no facts, they should be required to say as much. *Holmes v. Detroit Public*

---

[7] *Burnett, et al. v Nat'l Assoc. of Realtors, et al.*, No. 19-CV-00332 (W.D. Missouri).

[8] Although NAR and HomeServices included in their interrogatory responses certain contentions and supporting facts, Plaintiffs have identified deficiencies in their responses. In response, NAR has agreed to supplement certain of its responses by January 23, 2023. Plaintiffs do not waive any rights should those responses remain deficient after that date.

*Schools*, 2011 WL 4709163, at *2 (E.D. Mich. 2011); *United States v. Blue Cross Blue Shield of Michigan*, No. 10-cv-14155, 2012 WL 12930840, at *4–7 (E.D. Mich. May 30, 2012).

For these same reasons, courts regularly require defendants to respond to interrogatories nearly identical to those served by Plaintiffs here well in advance of merits expert disclosure deadlines. *See, e.g.*, *Blue Cross Blue Shield of Michigan*, 2012 WL 12930840, at *4–7 (granting plaintiffs' motion to compel defendant to respond to its first interrogatory—to "[d]escribe in detail 'the extensive ***factual and economic support for [defendant's] MFNs' procompetitive effects,***" notwithstanding defendant's argument that the interrogatory "seeks information relating to the anticipated testimony of [its] expert witnesses."); *Procaps S.A. v. Patheon, Inc.*, No. 12-cv-24356, 2015 WL 1608807, at *6 (S.D. Fla. Apr. 10, 2015) (granting motion to compel more complete answers to contention interrogatories and ***interrogatories regarding market power***).

For instance, in the *American Needle* case from this district, the plaintiff moved to compel the defendants to provide complete responses to contention interrogatory Nos. 3 and 4 (similar to interrogatories 1-3 in this case)—asking defendants "whether they contend that the Reebok Agreement was procompetitive or produced economic efficiencies that benefitted consumers, and if so, provide a thorough [ ] and detail[ed] explanation." *Am. Needle, Inc. v. New Orleans*, No. 04-cv-7806, 2012 WL 4327395, at *1 (N.D. Ill. Aug. 17, 2012). Similar to Defendants here, the defendants in that case argued that the interrogatories were premature, in part, because expert reports had not been submitted, and because "the substance of these contention interrogatories will be addressed in [defendants'] expert report(s)." *Id.* at *2. Notwithstanding that "not a single deposition [had] taken place and expert reports [had] not been submitted," the court held that the defendants were required to answer Interrogatory Nos. 3 and 4 "as fully as they can." *Id*. The court noted that "[t]he end of fact discovery is near, and [plaintiff] is entitled to know the theories under which the NFL Defendants are proceeding and the factual basis of their contentions." *Id*.

Defendants misread the court's ruling in *Auto Meter Prod., Inc. v. Maxima Techs. & Sys., LLC*, No. 05-cv-4587, 2006 WL 3253636, at *4 (N.D. Ill. Nov. 6, 2006). The plaintiff in that case requested in contention Interrogatory Numbers 12, 13, and 15 that defendant ***"state fully the basis, including all supporting facts, documents, exhibits, testimony and/or expert opinions"*** for its affirmative defenses, allegation of non-infringement, and counterclaim respectively. *Id.* at *1. As to the portion of these interrogatories seeking "expert opinions," the court indeed held that defendant could address them later pursuant to the expert discovery schedule. *Id.* at *5. But as to the balance of each of these disputed interrogatories—to "state fully the basis, including all supporting facts, documents, exhibits, testimony," the court granted plaintiff's motion to compel, holding: "At this late stage of the case, the court agrees that it is time for [defendant] to fully and completely answer [plaintiff's] interrogatories." *Id.* at *3, *5. The same applies here. Although Defendants Keller Williams, RE/MAX, and Realogy may supplement with additional expert opinions at a later date, they are required to answer as fully as possible now, "including all supporting facts, documents, exhibits, [and] testimony" currently available.

Other cases cited by Defendants are not on point. For example, *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, 2016 WL 6091244, at *1, did not involve contention interrogatories, but rather motions to strike expert testimony. Similarly, *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, 230 F.R.D. 538, 539–545, addresses interrogatories regarding a

5

defendant's damages theories, counter-theories, and methods for calculating damages—not the subject matter at issue here.

Moreover, Defendants' own litigation conduct contradicts any claims that the information sought by Interrogatories 1–3 is premature and solely the province of experts. Defendants have repeatedly taken positions on these issues. Over three years ago, in their motion to dismiss the complaint, the Corporate Defendants asserted:

> "Plaintiffs ignore the corresponding benefits to both home sellers (for example, the ability to incentivize home showings) and home buyers (for example, more money available to purchase a home) under Section 2-G-1 [the Buyer Broker Commission Rule]." (Memo. in Support of Corp. Defs' Motion to Dismiss (Dkt. 116) 8/9/2019, at 23).

In their reply brief, Defendants further stated:

> "Corporate Defendants support the positions expressed by NAR in its reply that . . . the [Buyer-Broker Commission] Rule promotes competition by supporting the procompetitive MLS system." (Reply in Support of Corp. Defs' Motion to Dismiss [Dkt. 143], at 3, fn.3.).

And, in opposing class certification, Defendants contend:

> "These offers of cooperative compensation by listing brokers directly benefit their seller clients. First, offers to buyer brokers can provide an incentive to other brokers in the MLS to find a buyer (even one who may not already be their client)." (Defs' Memo. in Opp. to Pls.' Motion for Class Cert. [\_\_] 5/31/2022, at 6). Defendants argue that Plaintiffs "fail to address the myriad ways in [*sic*] individual class members may have benefitted from the Challenged Rules …" *Id*. at 52.

Defendants have taken positions on whether the challenged restraints benefit consumers. Now, at the close of fact discovery, they must provide verified answers, under oath, identifying what exactly are the "myriad ways" they contend class members have benefitted from the challenged rules. And they must identify the specific facts, documents, and other evidence they intend to rely on for support. Regardless of the personal knowledge of any particular fact witness, each Defendant is in a position to verify the defenses it intends to assert in the litigation.

However, to the extent Defendants fail to "articulate their contentions and the bases of their contentions" with supporting facts and evidence, they should be barred from relying on such contentions or evidence in the litigation, *See American Needle*, 2012 WL 4327395, at *1–2 (N.D. Ill. Aug. 17, 2012); *Auto Meter Prods.*, 2006 WL 3253636, at *4 (N.D. Ill. Nov. 6, 2006) ("any facts or documents not so disclosed cannot be relied upon in this case."); *E & J Gallo Winery v. Encana Energy Servs., Inc.*, No. 03-cv-5412, 2005 WL 8172972, at *13 (E.D. Cal. Jan. 28, 2005) (admonishing party to comply with its Fed. R. Civ. P. 26(e)(2) obligations or the court will "preclude evidence"). Alternatively, Defendants should be required to affirmatively state that (1) they do not intend to assert any procompetitive justifications; (2) any such purported justifications

could not be reasonably achieved through less anticompetitive means; and/or (3) Defendants do not collectively possess market power.

For these reasons, Plaintiffs' respectfully request that this Court issue an order requiring Defendants Keller Williams, RE/MAX, and Realogy to disclose by January 23, 2023 their contentions responsive to Interrogatory Nos. 1–3, along with the specific facts and evidence in support, or be barred from relying on such contentions, facts, and evidence in the litigation.

Defendants' Position

Plaintiffs' Interrogatory Nos. 1-3 seek "all facts and evidence" supporting any contention by each Defendant that the rules at issue are procompetitive (Interrogatory No. 1), that any procompetitive benefits cannot be achieved through less anticompetitive means (Interrogatory No. 2), and that Defendants do not collectively possess market power in any relevant geographic and product market (Interrogatory No. 3). As Plaintiffs' have acknowledged, the issues raised by these interrogatories are ones that Defendants are likely to support with the opinions of economic experts, which, under the schedule set by the Court on October 24, 2022 (ECF 376), Defendants will not disclose until May 25, 2023. Plaintiffs nevertheless assert that they are entitled to answers from Defendants now so that their economic experts have positions from Defendants to which they can respond. Plaintiffs' position suffers from several flaws.

First, Plaintiffs' insistence that Defendants reveal the positions of their economic experts in response to discovery requests before Plaintiffs must disclose their expert opinions on March 23, 2023 is a repeat of their improper efforts at the class certification stage to get an "early peek" at the opinions of Defendants' experts "even though the case schedule calls for Plaintiffs to make their . . . disclosures first." *See* July 28, 2021 Order Denying Plaintiffs' Motion to Compel, at 3 (ECF 259). The Court already examined this issue and denied Plaintiffs' attempt to circumvent the scheduling order relating to disclosure of expert opinions, and the same result should be reached here. Plaintiffs have no more need to obtain advance disclosure of the opinions of Defendants' experts on procompetitive justifications, market power, and market definition here than they did when they sought previously to discover opinions rendered by Defendants' experts in the *Burnett* case.

Second, even if Plaintiffs argue that they are not seeking advance disclosure of *expert* opinions, but merely Defendants' positions on these issues based only on the *factual* discovery record, Plaintiffs' position fares no better. Economic subjects like procompetitive justifications for challenged conduct or the proper definition of an antitrust product market are not issues to which Corporate Defendants' executives have devoted attention. For example, executives at RE/MAX, LLC, including its recently retired CEO and its co-founder, have testified during depositions that they were not even aware that there was an MLS rule requiring listing agents to extend offers of compensation. These are simply not matters that Corporate Defendants' employees have examined and can verify under Rule 33(b)(5), and Plaintiffs have not identified any witnesses from Corporate Defendants who could provide such verification.

Third, even if Corporate Defendants could respond to the interrogatories based on the views of their lawyers or economic opinions rendered by experts in another litigation, without factual verification by their executives, doing so would not help narrow issues in the case or

7

produce any efficiencies. Answers by counsel, not informed by fully developed expert opinion, would be only provisional and subject to almost-certain change once Defendants disclose expert opinions in this case pursuant to the Court's scheduling order. *See U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.,* 230 F.R.D. 538, 542 (N.D. Ill. 2005) ("The answer to the interrogatory would not be binding on the defendants and could be abandoned during the course of expert discovery, thereby defeating the goals of the interrogatory."); *see also Suture Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, No. 3:11-CV-268 JD, 2016 WL 6091244, at *2 (N.D. Ind. Oct. 19, 2016) ("An economist's expertise would be valuable in deciding, for example, what effect certain facts may have on a party's ability to exercise market power."); *Express, Inc. v. Cardinal Health 200, LLC*, No. 14-CV-04737, 2014 WL 6478077, at *9 (N.D. Ill. Nov. 18, 2014) ("[i]f the Parties wish to introduce opinions about the anticompetitive and procompetitive effects" of the challenged practice "then they should retain an industry expert to provide such testimony").

The "evanescent and illusory" narrowing of issues in this case that might come from such a provisional response by counsel, *Tyson,* 230 F.R.D. at 542, is not justified here when Defendants' positions on these issues will be disclosed to Plaintiffs in May pursuant to the scheduling order. *See Diamond Servs. Mgmt. Co., LLC v. C&C Jewelry Mfg., Inc.*, No. 19 C 7675, 2021 WL 4258800, at *3 (N.D. Ill. May 11, 2021) (denying motion to compel responses to interrogatory responses as promoting "neither fairness nor efficiency" where upcoming expert disclosures would be "highly 'revelatory of the theory or theories actually to be relied upon,'" making contention interrogatories "exercises in futility" (quoting *Tyson*, 230 F.R.D. at 541-42)).

Finally, in meeting and conferring over this issue, Plaintiffs have repeatedly cited to case law that merely holds that contention interrogatories may be appropriate during discovery. None of Plaintiffs' case law, however, holds that a responding party must provide facts and evidence to support a position that will be the subject of economic expert testimony. In fact, one of Plaintiffs' cases holds the exact opposite. *See Auto Meter Prod., Inc. v. Maxima Techs. & Sys., LLC*, No. 05 C 4587, 2006 WL 3253636, at *3-4 (N.D. Ill. Nov. 6, 2006) ("In addition to the information discussed above, Interrogatory Nos. 12, 13, and 15 all seek expert opinions supporting Maxima's defenses and counterclaim. The court agrees with Maxima that these disclosures are properly addressed pursuant to the expert discovery schedule set by this court on September 11, 2006. (Minute Order of 9/11/06, Doc. 51.) This portion of Auto Meter's motion to compel is denied.").

Plaintiffs' reliance on caselaw from outside this district fares no better. In *United States v. Blue Cross Blue Shield of Michigan*, the defendant (Blue Cross Blue Shield) was required to provide facts that it conceded it had "at its disposal" and that related to the observed impact on prices after it implemented the most favored nation clause at issue in the litigation. *See* Case No. CV 10-14155, 2012 WL 12930840, at *5 (E.D. Mich. May 30, 2012). In ruling on the issue, the court noted that the interrogatory did not call for "facts known only to experts." *Id.* In contrast, there is no evidence or concession here that RMLLC, Keller Williams, or Realogy played a role in the development and implementation of the rules at issue in this litigation. Accordingly, each defendant, consistent with *Blue Cross Blue Shield of Michigan*, has responded that it will disclose such facts in accordance with expert discovery. *See id.* at *6 ("If BCBS does not have the information, such as this third-party information, then BCBS must state so.").

8

Plaintiffs' efforts to have Defendants' respond to contention interrogatories that will be the subject of expert disclosures in the near future should be denied. To the extent Plaintiffs' concern is having Defendants' contentions concerning procompetitive justifications and market power *before* filing summary judgment motions—as suggested by their citation to the Manual for Complex Litigation (which does not, as they misleadingly suggest, describe interrogatories as a tool to narrow disputes in advance of expert reports)—the Court's schedule addresses their concern directly. Under the schedule (ECF 376), Defendants are to serve their expert reports on May 23, 2023 and the deadline for filing dispositive motions is not until October 19, 2023—approximately five months later. In short, the Court should again deny Plaintiffs' attempt to get an "early peek" at the opinions of Defendants' experts under the guise of contention interrogatories.

**4. DISPUTES OVER THE SWANEPOEL AND T3 SIXTY DEPOSITIONS**

The HomeServices Defendants filed a motion seeking leave to serve a deposition cross-subpoena on Stefan Swanepoel. Dkt. 378. Plaintiffs have opposed that motion (Dkt. 380), which is ripe. The Parties also have a disagreement over the scheduling of the depositions of Mr. Swanepoel and his company T3 Sixty. The Parties' positions are set forth below.

<u>Plaintiffs' Position</u>

Defendants demand that Plaintiffs be ordered to schedule—without any workable plan for allocating the time among two different sets of plaintiffs' counsel and five sets of defendants across two cases—three, or even four, different depositions, all to take place on a single day. Specifically, Defendants seek an order requiring Plaintiffs to schedule our noticed depositions of T3Sixty and Stefan Swanepoel for January 4, 2023. This is the same date that Defendants, without consulting Plaintiffs here, subsequently noticed a deposition of Mr. Swanepoel in the *Burnett* case. It is also the same date on which Defendants now also seek (subject to HomeServices' motion for relief from the Court's discovery deadlines) to schedule their own deposition of Mr. Swanepoel in the *Moehrl* case. In spite of Plaintiffs' best efforts over several weeks to reach a fair resolution, at this point, it is no longer feasible to schedule all three (or four) depositions to take place on January 4, 2023. The Parties' disputes (which include whether HomeServices will be permitted to serve a cross-notice) are unlikely to be resolved until the December 21 status conference, at the earliest. After this point, like many others, Plaintiffs' counsel will be out of the office for an extended period for the winter holidays.

Plaintiffs previously attempted over the course of several weeks to secure Defendants' agreement to time limits that would reasonably permit three—or, possibly, four—depositions to take place in a single day.[9] In doing so, Plaintiffs had to contend with a number of complications. Among them, Mr. Swanepoel's counsel advised that he is not available for a second day of testimony on January 5. Nor has Mr. Swanepoel, who is in his mid-60s, agreed to sit for more than the allotted seven hours in a single day. As a result, if scheduled for January 4, all three (or four)

---

[9] In spite of Plaintiffs' best efforts over several weeks to reach a fair resolution, at this point, it is no longer feasible to schedule all three (or four) depositions to take place on January 4, 2023. The Parties' disputes (which include whether HomeServices will be permitted to serve a cross-notice) are unlikely to be resolved until the December 21 status conference, at the earliest. After this point, like many others, Plaintiffs' counsel will be out of the office for an extended period for the winter holidays.

9

depositions would need to both start and conclude on a single day, possibly consisting of no more than 7 hours of testimony across all depositions. Complicating matters further, counsel for the plaintiffs in the *Burnett* case indicated that they will not consent to combined depositions across both cases. This means that, to the extent the *Moehrl* and *Burnett* depositions are scheduled for the same day, they would have to proceed sequentially.

In light of these challenges, Plaintiffs made every reasonable effort to accommodate Defendants. Plaintiffs advised that we would be willing to schedule all two (or three) *Moehrl* depositions on the same day as the January 4 *Burnett* deposition—on the condition that Defendants stipulate that the *Burnett* deposition will proceed for no more than 2 hours.[10] To facilitate this, Plaintiffs secured an agreement from the *Burnett* plaintiffs that they would limit their questioning of Mr. Swanepoel to one hour, as long as Defendants agreed to do the same. In response, Defendants refused to agree to the proposed limits—in fact, Defendants refused to agree to *any* time limits at all.

Without such an agreement, Plaintiffs would have been severely prejudiced. Defendants have taken the position that the *Burnett* deposition should proceed first on January 4. As a result, unless there are strict limits on the length of the examinations in the *Burnett* case, the amount of time available to Plaintiffs here for questioning in the *Moehrl* depositions will be both uncertain and at Defendants' whim. Such uncertainty would make any reasonable attempt to prepare examinations impossible.

Moreover, without a fixed time allocation, further disputes between the numerous interested parties (i.e., the *Moehrl* Plaintiffs, the *Burnett* Plaintiffs, Mr. Swanepoel, and the five groups of Defendants) are not merely likely—they are inevitable. Attempting to cram so many depositions into a single day also creates a substantial risk of admissibility issues. For instance, in the not unlikely event that a party is unable to complete—or even begin its examination—in one or more of the multiple depositions Defendants ask to be scheduled on a single day, there may be a valid basis for excluding any testimony already obtained in that deposition by other parties.

Defendants nevertheless claimed in a prior version of this status report that Plaintiffs have "manufactured" this dispute. They continue to imply that the January 4, 2023 date was selected through the combined, good faith efforts of Defendants, the *Burnett* Plaintiffs, and Mr. Swanepoel's counsel. Plaintiffs believe that it is important the Court be aware of the record in case this claim is resurrected at next week's status conference.

In HomeServices' November 3, 2022 motion, HomeServices represented to the Court that granting the requested relief would facilitate rescheduling Mr. Swanepoel's deposition for a date prior to the December 9, 2022 discovery deadline. Contrary to this representation, HomeServices worked to stymied efforts by others to promptly and cooperatively schedule the Swanepoel and T3 Sixty depositions prior to the fact discovery cutoff. On November 4, 2022, Mr. Swanepoel's counsel offered three dates for the rescheduled depositions of Mr. Swanepoel and T3 Sixty—all of which were before the December 9, 2022 fact discovery cut-off. Plaintiffs' counsel promptly

---

[10] Plaintiffs' proposal to reserve 2 hours for the *Burnett* deposition of Mr. Swanepoel was based on an effort to allocate questioning roughly equally among the three (or four) depositions at issue.

confirmed their availability, as did counsel for Defendant RE/MAX. Counsel for HomeServices subsequently refused to indicate whether they were available—one way or the other—for any of the three suggested dates. *See* Dkt. 380, at 3 (and Exs. C–F to that filing).

Instead, unbeknownst to Plaintiffs here, counsel for HomeServices circumvented the *Moehrl* Parties' attempts to reach agreement on a mutually convenient date, by obtaining a separate agreement with the *Burnett* Plaintiffs on a January 4, 2023 date. Apparently to avoid including the *Moehrl* Plaintiffs in these discussions, Defendants withheld from counsel for the *Burnett* plaintiffs Defendants' intention to try to schedule the *Moehrl* and *Burnett* depositions for the same day. As a consequence, Plaintiffs here only learned of the January 4, 2023 date, on which Defendants intended *Plaintiffs' own previously noticed depositions to proceed*, after it had been selected by others. That Plaintiffs nonetheless undertook considerable efforts to reach an agreement permitting all of the depositions at issue to proceed on January 4 suggests that it is not Plaintiffs who have "manufactured" the present dispute.

For these reasons, Defendants' demand should be rejected, and the *Moehrl* Parties should be ordered to schedule the depositions of Mr. Swanepoel and T3 Sixty on a mutually convenient date that is separate from the scheduled January 4, 2023 deposition of Mr. Swanepoel in the *Burnett* case.

Defendants' Position

Defendants have worked with counsel for third party Stefan Swanepoel and the *Burnett* Plaintiffs to arrange the January 4, 2023 deposition of Mr. Swanepoel in this case and in the *Burnett* antitrust litigation. All defendants, the *Burnett* Plaintiffs, and Swanepoel's counsel have agreed to this date and the location of Irvine, California, with a remote video link available to any counsel upon request.

The *Moehrl* Plaintiffs have indicated that they are available on this date. However, they seek to impose a time limit of two hours upon the *Burnett* trial deposition. If Defendants do not agree to this limitation upon the *Burnett* trial deposition, the *Moehrl* Plaintiffs have threatened to issue yet another subpoena for a separate date for a discovery deposition of Mr. Swanepoel in *Moehrl* only.

Mr. Swanepoel lives in Hawaii and has limited availability. He is in California on January 4, 2023 on other matters, and he has offered to make himself available for one day for a deposition in both cases. The *Burnett* Plaintiffs and Defendants will be in California in person to depose him. Defendants have imposed no limitation upon the *Moehrl* Plaintiffs' deposition on January 4.

The *Moehrl* Plaintiffs are available on January 4 but will only proceed if Defendants agree to limit the *Burnett* deposition to two hours. This is not reasonable. The *Moehrl* Plaintiffs can sit in on the first deposition, and much or all of the testimony adduced from Mr. Swanepoel can either be stipulated to be admissible in the *Moehrl* case or can be more easily introduced in the *Moehrl* deposition than it might if the testimony had not already been taken. The *Moehrl* Plaintiffs should of course have a full opportunity to take whatever additional testimony or cross examination they want. HomeServices has the same incentive to insure that the deposition in *Moehrl* can be timely

11

completed as do the *Moehrl* Plaintiffs. If in the unlikely event the *Moehrl* Plaintiffs claim to need more time to complete the deposition, the parties can agree on a procedure to resume or seek the help of the Court.

Further, the Motion for Leave to Subpoena Swanepoel (Doc. 378) is now ready for resolution. Authorization of the requested subpoena will permit Defendants to subpoena Mr. Swanepoel for deposition in this case on January 4 and to proceed with the deposition. Plaintiffs' counsel in this case can attend and cross examine as appropriate on January 4.

Dated: December 14, 2022                                  Respectfully submitted,

*Co-Lead Counsel for Plaintiffs*                          *Counsel for HomeServices of America, Inc., BHH Affiliates, LLC, HSF Affiliates, LLC, The Long & Foster Companies, Inc.*

/s/      Steve W. Berman
Steve W. Berman (Bar No. 3126833)
 steve@hbsslaw.com                                        /s/      Robert D. MacGill
HAGENS BERMAN SOBOL SHAPIRO LLP                           Robert D. MacGill
1301 Second Avenue, Suite 2000                             robert.macgill@macgilllaw.com
Seattle, WA 98101                                         Scott E. Murray
Telephone: (206) 623-7292                                  scott.murray@macgilllaw.com
                                                          Matthew T. Ciulla
Rio S. Pierce                                              matthew.ciulla@macgilllaw.com
 riop@hbsslaw.com                                         MACGILL PC
HAGENS BERMAN SOBOL SHAPIRO LLP                           156 E. Market St., Suite 1200 Indianapolis,
715 Hearst Avenue, Suite 202                              IN 46204
Berkeley, CA 94710                                        (317) 961-5085
Telephone: (510) 725-3000

                                                          Jay N. Varon
Daniel Kurowski                                            jvaron@foley.com
 dank@hbsslaw.com                                         Jennifer M. Keas
Jeannie Evans                                              jkeas@foley.com
 jeannie@hbsslaw.com                                      FOLEY AND LARDNER LLP
Whitney Siehl                                             3000 K Street NW, Suite 600
 wsiehl@hbsslaw.com                                       Washington, DC 20007
HAGENS BERMAN SOBOL SHAPIRO LLP                           (202) 672-5436
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611                                         James D. Dasso
Telephone: (708) 628-4949                                  jdasso@foley.com
                                                          FOLEY & LARDNER LLP
                                                          321 N. Clark St., Suite 2800
Marc M. Seltzer                                           Chicago, IL 60654
 mseltzer@susmangodfrey.com                               (312) 832-4588
Steven G. Sklaver
 ssklaver@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400                      *Counsel for Realogy Holdings Corp.*

Los Angeles, California 90067
Telephone: (310) 789-3100

Beatrice C. Franklin
 bfranklin@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas
32nd Floor
New York, New York 10019
Telephone: (212) 336-8330

Matthew R. Berry
 mberry@susmangodfrey.com
Alexander W. Aiken
 aaiken@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880

Kit A. Pierson
 kpierson@cohenmilstein.com
Benjamin D. Brown
 bbrown@cohenmilstein.com
Robert A. Braun
 rbraun@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600

Carol V. Gilden (Bar No. 6185530)
 cgilden@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370

*/s/     Kenneth Kliebard*
Kenneth Michael Kliebard
 kenneth.kliebard@morganlewis.com
Heather Nelson
 heather.nelson@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
77 West Wacker Drive, Suite 500
Chicago, IL 60601-5094
(312) 324-1000

Stacey Anne Mahoney
 stacey.mahoney@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

William T. McEnroe
 william.mcenroe@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

***Counsel for Keller Williams Realty, Inc.***

*/s/ Timothy Ray*
Timothy Ray
 Timothy.Ray@hklaw.com

HOLLAND & KNIGHT LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60603
(312) 263-3600

David C. Kully
 david.kully@hklaw.com
Anna P. Hayes
 anna.hayes@hklaw.com
HOLLAND & KNIGHT LLP
800 17th Street NW, Suite 1100
Washington, DC 20530
(202) 469-5415

***Counsel for RE/MAX, LLC***

/s/     Jeremy J. Gray
Jeremy J. Gray
jjgray@jonesday.com
Odeshoo Hasdoo
ehasdoo@jonesday.com
JONES DAY
77 W Wacker, Suite 3500
Chicago, IL 60605
(312) 782-3939

Jeffrey A. LeVee
jlevee@jonesday.com
JONES DAY
555 S. Flower Street, 50th Floor
Los Angeles, CA 90071

(213) 243-2572

*Counsel for Defendant*
*National Association of Realtors®*

/s/     Jack R. Bierig
Jack R. Bierig
jbierig@schiffhardin.com
Adam J. Diederich
adiederich@schiffhardin.com
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
312-258-5500 (Phone)
312-258-5600 (Fax)

Robert J. Wierenga
rwierenga@schiffhardin.com
Suzanne L. Wahl
swahl@schiffhardin.com
SCHIFF HARDIN LLP
350 S. Main Street, Suite 210
Ann Arbor, MI 48104
(734) 222-1517