

## BERKSHIRE HATHAWAY
HomeServices

Carolinas Realty
York Simpson Underwood Realty
Yost & Little Realty

### *We make great neighbors.*

## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This Exclusive Right To Sell Listing Agreement ("Agreement") is entered into between **F Nelson Tomlinson Jr, Dorothy E Tomlinson** as Seller(s) ("Seller") and Preferred Carolinas Realty, Inc. dba Berkshire Hathaway HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, and Berkshire Hathaway HomeServices Yost & Little Realty as Listing Broker ("Broker") for the property described below ("Property") and known as or legally described as:

Street Address: **2728 Bartram Road**
City: **Winston-Salem** _____ Zip code: **27106**
County: **Forsyth** _____ , North Carolina.
Legal Description: **Parcel ID: 6826-35-2737.00; Tax Block: 2690, Tax Lot: 033A; Deed Book: 2553, Deed Page: 4327**

1.   TERM OF AGREEMENT:  In consideration of Broker's services to procure a buyer for the Property, Broker is hereby granted the exclusive right to sell the Property for a period beginning on _____ **July 22** _____ , **2016** _____ and expiring at 11:59 P.M. on _____ **January 22** _____ , **2017** unless terminated sooner by Broker at its option.

2.   LISTING PRICE AND TERMS:  Seller agrees to list the Property, including all fixtures described in paragraph 3, for sale at a price of $ **950,000.00** _____ ("Listing Price") on the following terms:
**X** Cash _____   _____ FHA   ___ VA   _____ USDA   **X** Conventional   _____ Loan Assumption
_____ Seller Financing   Other: _____ .

Seller agrees to sell the Property for the Listing Price and terms set forth above, or at any other price and on any other terms acceptable to Seller.

3.   FIXTURES.  The following items, if any, are deemed fixtures and are included in the Listing Price free of liens: range/stove/oven, any built-in appliances, light fixtures, ceiling fans, attached floor coverings, blinds, shades, drapery rods and curtain rods, brackets and all related hardware, window and door screens, storm windows, combination doors, awnings, antennas, satellite dishes and receivers, burglar/fire/smoke/carbon monoxide alarms, pool and spa equipment, solar energy systems, attached fireplace screens, gas logs, fireplace inserts, electric garage door openers with controls, outdoor plants and trees (other than in movable containers), basketball goals, storage sheds, mailboxes, attached wall and/or door mirrors, fuel tank(s) whether attached or buried and including contents, if any, as of the date of the closing on the sale of the Property, landscape and/or foundation lighting, invisible fencing including all related equipment, lawn irrigation systems and all related equipment, water softener/conditioner and filter equipment, and any other items attached or affixed to the Property, EXCEPT the following items which are leased or not owned by the Seller or which the Seller does not intend to convey:
**No Exceptions**

4.   PERSONAL PROPERTY.  The following personal property shall be transferred to Buyer free of liens at no value at the closing on the sale of the Property:

5.   BROKER'S COMPENSATION:  Seller agrees to pay Broker compensation in the amount of $ **200.00** _____ plus _____ **6.000** _____ % of the gross contract sales price of the Property, which compensation shall include any compensation paid by Broker to any cooperating real estate brokers.  Note that Broker does not offer any compensation to non-cooperating real estate brokers who are not members of the Multiple Listing Service ("MLS").  Seller authorizes the payment of the compensation owed to Broker pursuant to this Agreement to be paid directly to Broker from Seller's proceeds from the closing on the sale of the Property.

The compensation owed to Broker shall be deemed earned upon Broker, a cooperating real estate broker, Seller, or anyone else procuring or producing a ready, willing and able buyer(s) at the Listing Price and terms agreed to herein by Seller, or at any other price or terms acceptable to Seller, during the term of this Agreement.  If any agreement for the sale or transfer of the Property does not have a selling price, the percentage component of the compensation owed to Broker shall be calculated based on the fair market value of the Property as of the effective date of such agreement.  The compensation earned as set forth above shall be due and payable immediately upon the earlier of:

   (a)   The closing on the sale of the Property;

RE/FORM/Listing: 1/1/2015                      Page 1 of 8                      Copyright © 2015 Preferred Carolinas Realty, Inc.
                                                                                                    All Rights Reserved

(b)    Seller's refusal to sign a contract or agreement for the sale of Property at the Listing Price and terms set forth herein, or on any other terms acceptable to Seller;

(c)    Seller's breach of any contract or agreement for the sale or transfer of the Property;

(d)    Seller's agreement with any buyer(s) to unreasonably modify or cancel any contract or agreement for the sale or transfer of the Property;

(e)    Seller's breach of this Agreement.

Provided, however, that in the event the Property is not sold during the term of this Agreement, if within 180 days after expiration of this Agreement (the "Protection Period") Seller sells or enters into any agreement to sell the Property, directly or indirectly, including but not limited to any form of option, exchange, lease/purchase, conveyance or transfer upon any terms whatsoever, to any person or entity with whom Seller, Broker, or any cooperating real estate broker communicated during the term of this Agreement, and whose name(s) Broker has submitted to Seller in writing within 15 days of the expiration of this Agreement, the compensation owed to Broker pursuant to this Agreement shall be immediately due and payable to Broker. However, Seller shall not be obligated to pay the compensation owed to Broker pursuant to this Agreement if a valid listing agreement is entered into with another licensed real estate broker after the expiration of this Agreement and the Property is sold, exchanged, leased, conveyed or transferred during the Protection Period.

Seller acknowledges and agrees that Broker may be offered compensation from other persons or entities in connection with the sale of the Property, and Seller agrees to permit Broker to receive any such additional compensation. Broker will timely disclose any such additional compensation to Seller.

6.    BROKER'S DUTIES: Broker accepts the exclusive listing granted by this Agreement and shall use its best efforts and due diligence to solicit and procure a ready, willing and able buyer to purchase the Property at the Listing Price and terms set forth in this Agreement. Broker further agrees to:

(a)    Perform the terms of this Agreement, exercise reasonable care and skill, and promote Seller's interests;

(b)    Assist Seller in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to the offers and the counteroffers;

(c)    Accept delivery of and present to Seller in a timely manner all offers and counteroffers to sell the Property;

(d)    Respond to Seller's questions relating to the offers, counteroffers, notices, and contingencies.

(e)    Account in a timely manner for all money and property received on behalf of Seller;

(f)    Not disclose any confidential information about Seller, unless disclosure is authorized pursuant to this Agreement or is required by statute, rule, regulation or North Carolina law, or the failure to disclose such information would constitute a material misrepresentation.

**BROKER SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT.**

7.    SELLER'S DUTIES: Seller agrees to cooperate with Broker in marketing the Property for sale, including making the Property available for showings at reasonable times on reasonable notice. Seller further agrees to complete all required disclosure forms, including but not limited to the Residential Property and Owner's Association Disclosure Statement (unless exempt), and the Lead-Based Paint or Lead-Based Paint Hazard Addendum, if applicable to the Property.

(a)    Seller represents that Seller holds title to the Property in fee simple, and that Seller does not know or have reason to know of circumstances or encumbrances that would prohibit Seller from conveying fee simple marketable title to the Property to a ready, willing and able buyer except as follows:

**N/A**

(b)    If required by N.C.G.S. §44A-11.1, Seller shall designate a Lien Agent, and provide Broker a copy of the appointment of Lien Agent as soon as reasonably possible.

8.    SELLER REPRESENTATIONS: Seller acknowledges and agrees that Broker is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which Broker knows or reasonably should know. Seller hereby makes the following representations concerning the Property:

(a)    **Flood Hazard Disclosure/Insurance.** To the best of Seller's knowledge, the Property ☐ is ☒ is not located partly or entirely within a designated Special Flood Hazard Area. The Seller ☐ does ☒ does not currently maintain flood hazard insurance on the Property.

(b)    **Synthetic Stucco.** To the best of Seller's knowledge, the Property ☒ has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system," commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows:

(c)    **Owners' Association.**

(1) Complete ONLY if the Residential Property and Owner's Association Disclosure Statement is required: The name, address and telephone number of the president of the owner's association or the association manager is:
    **N/A**

Copyright © 2015 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    Nelson

Owner's association website address, if any: _____

(2) Complete ONLY if New Construction or where the Residential Property and Owner's Disclosure Statement is NOT required: To the best of Seller's knowledge there ☐ is ☐ is not an owners' association which imposes various mandatory covenants, conditions and restrictions upon the Property. If there is an owners' association, Seller agrees to promptly complete an Owners' Association Disclosure and Addendum For Properties Exempt from Residential Property Disclosure Statement at Seller's expense and to attach it as an addendum to any contract for the sale of the Property.

(d)   **Ownership.** Seller represents that Seller:
     ☒  has owned the Property for at least one year;
     ☐  has owned the Property for less than one year.

(e)   **Residence.** Seller represents that the Property ☐ is or ☒ is not the Seller's primary residence.

(f)   **Receipt of Sample Forms.**
     ☒  Seller acknowledges receipt of a sample copy of an Offer to Purchase and Contract (Form 2-T) or Offer to Purchase and Contract—New Construction (Form 800-T), as may be appropriate for review purposes.
     ☒  Seller acknowledges receipt of a sample copy of a Professional Services Disclosure and Election Form (Form #760) for review purposes.

(g)   **Current Liens.** Seller represents to the best of Seller's knowledge:
    (1)    The Property ☐ is ☒ is not encumbered by a deed of trust or mortgage. *Complete any of the following where applicable:*
        (i)     There is a first deed of trust or mortgage on the Property securing a loan held by:
        Lender Name: _____
        Approximate balance: $ _____
        Lender Phone #: _____
        Lender Address: _____
        (ii)    There is a second deed of trust or mortgage on the Property securing a loan held by:
        Lender Name: _____
        Approximate balance: $ _____
        Lender Phone #: _____
        Lender Address: _____
        (iii)   There is a deed of trust or mortgage on the Property securing an equity line of credit held by:
        Lender Name: _____
        Approximate balance: $ _____
        Lender Phone #: _____
        Lender Address: _____

    (2)    Seller ☐ is current on all payments for the loans identified in numbered items (i), (ii) and (iii) above except as specified in (7) below.

    (3)    Seller ☐ is not in default on any loan identified in numbered items (i), (ii) and (iii) above and has not received any notice(s) from the holder of any loan identified in numbered items (i), (ii) and (iii) above or from any other lien holder of any kind, regarding a default under the loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure except as specified in (7) below.

    (4)    There ☒ are not any liens secured against the Property for Federal, State or local income taxes, unpaid real property taxes, unpaid condominium or homeowners' association fees, mechanics', laborers' or materialmens' liens, or other liens affecting the Property, and Seller has no knowledge of any matter that might result in a lien affecting the Property except as specified in (7) below.

    (5)    There ☒ are not any judgments against Seller affecting the Property, and Seller has no knowledge of any matter that might result in a judgment that may potentially affect the Property except as specified in (7) below.

    (6)    There ☐ are not any Uniform Commercial Code (UCC) fixture filings affecting the Property, and Seller has no knowledge of any matter that might result in a UCC fixture filing affecting the Property except as specified in (7) below.

    (7)    Specify any information, including approximate balances, required by Seller representations (2) through (6) above (**NOTE:** Outstanding liens may affect Seller's proceeds.)
        _____
        _____

(h)   **Bankruptcy.** Seller currently:
    (1)    ☐ is ☒ is not under bankruptcy protection under United States law.
    (2)    ☐ is ☒ is not contemplating seeking bankruptcy protection during the term of this Agreement.

(i)   **Access.** Seller represents that the Property ☒ does ☐ does not have legal access to a public right of way. If access is by private road/easement/other, Seller further represents that there ☐ is ☒ is not an agreement regarding the maintenance of such private road/easement/other means of access. If applicable, Seller agrees to promptly provide Broker information pertaining to any such agreement.

(j)   **Lease(s).** To the best of Seller's knowledge, the Property ☐ is ☒ is not subject to any lease(s). If applicable, Seller agrees to promptly provide Broker a copy of any such lease(s) or a written statement of the terms of any oral lease(s).

Copyright © 2015 Preferred Carolinas Realty, Inc. All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com        Nelson

(k) **VA/FHA Appraisal.** To the best of Seller's knowledge, a VA or FHA appraisal☐ has ☒ has not been performed on the Property within six months prior to the Effective Date. If applicable, Seller agrees to promptly provide Firm a copy of any such appraisal if available.

(l) **Special Assessments.** To the best of Seller's knowledge, there are no proposed or confirmed special assessments (as defined in the sample contract form provided to Seller) regarding the Property except as follows (Insert "none" or the identification of such assessments, if any):

**None** .

(m) Fuel Tank/Fuel: To the best of Seller's knowledge, there☐ is ☒ is not a fuel tank(s) located on the Property. *If "yes" complete the following to the best of Seller's knowledge:*
Ownership of tank 1: ☐ owned ☐ leased. If leased, the name of tank lessor is: _____
Location of tank 1: ☐ above ground ☐ below ground
Type of fuel: ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____
Ownership of tank 2: ☐ owned ☐ leased. If leased, the name of tank lessor is: _____
Location of tank 2: ☐ above ground ☐ below ground
Type of fuel: ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____

If, during the term of this Agreement, Seller becomes aware that any of the representations set forth in this paragraph 8 are incorrect or no longer accurate, Seller shall promptly notify Broker and cooperate with Broker in taking appropriate corrective action.

9. HOME INSPECTION: Seller is advised to obtain a home inspection for the purpose of evaluating the condition of the Property in order to enhance its marketability and to help reduce concerns of prospective buyers. Seller ☐ agrees ☒ does not agree to obtain and pay for a home inspection by a licensed NC Home Inspector within _____ days after the execution of this Agreement.

☒ Seller acknowledges receipt of a copy of *Questions and Answers on: Home Inspections* by the NC Real Estate Commission.

10. MARKETING ACTIVITIES: Seller hereby authorizes Broker to market the Property as described below on:☐ the date this Agreement has been signed by Seller and Broker OR ☒ (insert date) **August 15, 2016** .

(a) Cooperate and share the commission payable under this Agreement with other brokers including brokers who have been employed as buyer's agents, subagents, dual agents, or designated agents, subject, where applicable, to authorization as required by law;

(b) Submit pertinent information, including virtual tours and images when applicable, concerning the Property to any Multiple Listing Service ("MLS") organizations to which Broker subscribes;

(c) Provide to any MLS to which Broker subscribes, for dissemination to others, timely notice of status changes affecting the Property, sales information, including Seller's name, price, and other information concerning the Property for use of the members of such services, to compile reliable statistics, and to establish market value for other properties, and to report sales information about the property, including the price at which the property sold, or is contracted to be sold, to the MLS for dissemination to MLS participants, subscribers, and other licensees or users of the MLS database compilation;

(d) Disseminate data about the Property and other information, including Seller's name, price, and other information concerning the Property supplied by, or on behalf of Seller, including creative works depicting the Property, such as virtual tours, images, and any textual descriptions of the Property (collectively referred to as "Content"), to MLS Participants, Subscribers and other licensees or users of the MLS database compilation, or any other MLS in which Broker participates, and to further disseminate, or permit the MLS or other MLS participants to disseminate such Content to potential purchasers through websites on the Internet. Further, Broker is authorized to otherwise advertise the Property in any manner deemed appropriate by Broker, including but not limited to advertising on the Internet, virtual tours, web-sites, trade journals and any other medium, and communications via e-mail and facsimile;

(e) Place a "For Sale," "Under Contract," "Sale Pending," and other similar signs on the Property and to remove all other signs during the term of this Agreement;

(f) Enter the Property at reasonable times and with reasonable notice for the purpose of evaluation, preview, or showing the Property to prospective purchasers or other brokers;

(g) Possess and maintain a key to the Property, and make use of a "Lock Box" during the term of this Agreement; and

(h) Conduct open houses of the Property at such times as Seller and Broker may agree.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Nelson

Seller acknowledges and understands that while the marketing services identified above will facilitate the showing and sale of the Property, there are inherent risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of Broker, including but not limited to:

(1)     unauthorized use of a lock/key box,
(2)     control of visitors during or after a showing or an open house,
(3)     inappropriate use of information about the Property placed on the Internet or furnished to any MLS in which Broker participates.

Seller agrees to indemnify and hold harmless Broker from any damages, costs, attorney's fees or other expenses as a result of any personal injury or property loss or damage to Seller or any other person or entity arising out of any such marketing activities which are not the result of the sole negligence of Broker.

11.     COPYRIGHT ASSIGNMENT: Broker is specifically authorized to use, both before and after the sale or, in the event there is not a sale, after this listing has expired, for any purposes whatsoever, any and all information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property (including any information concerning the price and terms of the sale of the Property, the description of the Property, length of time the Property is on the market, and any other information relating to the Property) ("Seller Content"). Seller hereby assigns to Broker any and all intellectual property rights Seller may have in the Seller Content and to any photographs or video or other reproductions of the property used in connection with the marketing of the property. For purposes of clarity, Broker is the owner of any and all rights in the Seller Content and may further assign, license, sublicense, or otherwise dispose of these rights to any party whatsoever for any purposes whatsoever. If any moral rights are not transferred by the preceding sentences, Seller hereby waives all such rights.

Seller's execution of this Agreement further signifies Seller's representation and warranty that Seller is the sole author and sole owner of all rights in and to the Seller Content; that Seller's contribution to the Seller Content is original and not in the public domain; that Seller's contribution to the Seller Content contains no material from other copyrighted or unpublished work that has been used without the written consent of the copyright owner and/or of the owner of any other rights to or in such other works; that it does not violate or infringe on any personal or property rights of others, whether common law or statutory; that it contains nothing libelous or contrary to law; and that Seller has full power to enter this Agreement. Seller agrees to indemnify and hold harmless Broker for any claims of copyright infringement or other claims arising from any publication or use of the Seller Content.

Broker grants to Seller a non-exclusive, perpetual license for the use of the Seller Content, including the right to display, reproduce, distribute or make derivative works from the Seller Content. For purposes of clarity, the license granted to Seller for the use of the Seller Content applies only to information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property, and not to any information, photographs or video created or provided by or on behalf of Broker. Seller agrees to indemnify and hold harmless Broker for any and all claims arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of this license. Seller understands and agrees that Broker assumes no responsibility for Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of the license granted by Broker, or for any infringement arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content.

12.     DUAL AGENCY: Seller understands that the potential for dual agency will arise if a buyer who has an agency relationship with Broker becomes interested in viewing the Property. Broker may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Broker acts.

(a)     Disclosure of Information. In the event Broker serves as a dual agent, Seller agrees that without permission from the party about whom the information pertains, Broker shall not disclose to the other party the following information:

(1)     that a party may agree to a price, terms, or any conditions of sale other than those offered;
(2)     the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and
(3)     any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute, rule, regulation or North Carolina law.

(b)     Broker's Role as Dual Agent. If Broker serves as agent for both Seller and a buyer in a transaction involving the Property, Broker shall make every reasonable effort to represent Seller and buyer in a balanced and fair manner. Broker shall also make every reasonable effort to encourage and effect communication and negotiation between Seller and buyer. Seller understands and acknowledges that:

(1)     Prior to the time dual agency occurs, Broker will act as Seller's exclusive agent;
(2)     In its separate representation of Seller and buyer, Broker may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Broker;
(3)     Broker is required by law to disclose to Seller and buyer any known or reasonably ascertainable material facts.

Seller agrees Broker shall not be liable to Seller for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

Copyright © 2015 Preferred Carolinas Realty, Inc.
All Rights Reserved

(c)     Seller's Role. Should Broker become a dual agent, Seller understands and acknowledges that:

(1)     Seller has the responsibility of making Seller's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Broker;

(2)     Seller is fully aware of and understands the implications and consequences of Broker's dual agency role as expressed herein to provide balanced and fair representation of Seller and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

(3)     Seller has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;

(4)     Seller may seek independent legal counsel to assist Seller with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Broker become a dual agent, Seller waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Broker's role as a dual agent. Seller shall have a duty to protect Seller's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Seller wants included in said agreement.

(d)     Authorization *(initial only ONE)*.

Seller authorizes Broker to act as a dual agent, representing both the Seller and the buyer, subject to the terms and conditions set forth in Paragraph 12.

Seller desires exclusive representation at all times during this agreement and does NOT authorize Broker to act in the capacity of dual agent. *If Seller does not authorize Broker to act as a dual agent, the remainder of this paragraph shall not apply.*

(e)     Designated Agent Option *(Initial only if applicable)*.

Seller hereby authorizes Broker to designate an individual agent(s) to represent the Seller, to the exclusion of any other individual agents associated with Broker. The individual designated agent(s) shall represent only the interests of the Seller to the extent permitted by law.

(**NOTE:** When dual agency arises, an individual agent shall not practice designated agency and shall remain a dual agent if the individual agent has actually received confidential information concerning a buyer client of Broker in connection with the transaction or if designated agency is otherwise prohibited by law.)

(f)     Dual Agency Compensation. If Broker acts as a dual agent (including designated agency), the total fee Broker expects to receive for its services in representing Seller and the buyer shall be 6% (+/- up to 4%) and $300 (+/- up to $900). THIS WILL IN NO WAY AFFECT OR MODIFY THE AMOUNT OF THE FEE SET FORTH IN PARAGRAPH 5 ABOVE THAT BROKER EXPECTS TO RECEIVE FOR ITS SERVICES IN REPRESENTING SELLER UNDER THIS AGREEMENT. In the event Broker's total fee is different from that described in this subparagraph (f), Broker shall timely disclose the fee to Seller and confirm it in writing before Seller accepts an offer to sell the Property.

13.     LEGAL AND PROFESSIONAL ADVICE: Broker recommends that Seller seek legal, tax, and other professional advice relative to any real estate transaction. Broker makes no representation or warranty respecting the advisability of any transaction. Broker is not an expert in matters relating to law (including matters of title to the Property), tax, financing, surveying, structural or mechanical condition, hazardous material, engineering, or other specialized topics. Seller is encouraged to seek expert assistance in such areas. Broker will cooperate with experts engaged by Seller or at the request of Seller, but Broker will have no liability to Seller pertaining to such matters.

14.     ARBITRATION AGREEMENT: Any Dispute, claim or controversy between Seller and Broker shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This agreement to arbitrate and the arbitration proceeding shall be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is inapplicable, unenforceable, or invalid, the North Carolina Revised Uniform Arbitration Act shall govern this Arbitration Agreement and the arbitration proceeding.

As used herein the term "Dispute" shall include, without limitation, any claim, controversy, complaint or disagreement regarding any representations, acts or omissions by any person, party or entity that in any way arises out of or is related to the sale, purchase, financing, condition of any property or any other aspect of Seller's real estate transaction, or that in any way arises out of any of the real estate brokerage services or other settlement services provided by Broker including, without limitation, allegations of concealment, misrepresentation, negligence, breach of fiduciary duty, fraud, constructive fraud, or other wrongful actions or omissions of any type. A Dispute includes any claim, controversy, complaint or disagreement of any kind, including those based on broken promises or contracts, closing charges, or tort (injury caused by negligent or intentional conduct). A Dispute includes any statutory, common law, or equitable claim. A Dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement. No Dispute may be joined in arbitration with a Dispute of any other person or arbitrated on a class action basis.

Copyright © 2015 Preferred Carolinas Realty, Inc. All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Nelson

The American Arbitration Association (AAA) shall administer the arbitration, including the selection of arbitrators, pursuant to its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable. The arbitration shall be held in the county where the real property at issue is located. To find out how to initiate arbitration, Seller can contact AAA at:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Toll free number 877-495-4185
Fax number 877-304-8457

Website: www.adr.org

Email: casefiling@adr.org

All parties to the arbitration (AAA, the arbitrator, Broker, and Seller) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA. The arbitration proceeding shall be conducted at a location determined by AAA in accordance with this Arbitration Agreement. All statutes of limitation and statutes of repose applicable to any Dispute shall apply to any arbitration proceeding between Broker and Seller. If a Dispute is properly filed in Small Claims Court and the Small Claims Court has jurisdiction to resolve the Dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the Dispute from Small Claims Court shall pay AAA's administrative fee and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforceability of the other terms of this Arbitration Agreement.
WHEN YOU SIGN THIS AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER BROKER NOR SELLER SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

Seller's initials: _____

15.     Seller acknowledges receipt of the brochure describing the HomeServices Warranty Program offered through Home Security of America, Inc. In the above mentioned brochure, Seller accepted or declined coverage. Specific details of the coverage provided by Home Security of America, Inc., including coverage limits, exclusions, deductibles and other information may be obtained from Broker upon request.

Seller's initials: _____

16.     ADDITIONAL TERMS AND CONDITIONS: The following additional terms and conditions shall also be a part of this Agreement:
**N/A** _____
_____
_____

17.     ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between the parties; any prior agreements pertaining thereto, whether oral or written, have been merged and integrated into this Agreement. There shall be no modification of any of the terms of this Agreement unless such modification has been agreed to in writing and signed by all parties.

Copyright © 2015 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    Nelson

Seller: __**F Nelson Tomlinson Jr**__   _____   _8/8/16_
Print Name                              Signature                       Date

Contact Information: _____   _____   _____
Home                     Work                     Cell

_____
e-mail

Mailing Address: _____

Seller: __**Dorothy E Tomlinson**__   _Dorothy E. Tomlinson_   _08-08-16_
Print Name                              Signature                       Date

Contact Information: _____   _____   _____
Home                     Work                     Cell

_____
e-mail

Mailing Address: _____

Broker: Preferred Carolinas Realty, Inc.                Phone: __(336) 768-3300__

By: _____        __79998__          _8-10-16_
Individual Agent Signature              Individual License #         Date
**Cindy Rosenberg**

Office: __110 Oakwood Drive, Suite 110 Winston-Salem, NC 27103__

Office Phone: __(336) 650-8330__              Fax: __(336) 714-6528__

e-mail: __cindy.rosenberg@bhhscarolinas.com__

Copyright © 2015 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Nelson

DocuSign Envelope ID: D70BB5BF-F8D4-45CF-ACE3-DC74BC6420C3



**BERKSHIRE HATHAWAY** | Carolinas Realty
HomeServices | York Simpson Underwood Realty
| Yost & Little Realty
| Pinehurst Realty Group

WE MAKE GREAT NEIGHBORS.®

## MEDIATION & ARBITRATION AGREEMENT

> **Customer(s) and Broker identified below hereby agree that Sections 18(b) (Breach), 18(c) (Mediation), and 18(d) (Attorney's Fees) of Customer(s)' Exclusive Right to Sell Listing Agreement (North Carolina), if applicable, or Sections 15(b) (Breach), 15(c) (Mediation), and 15(d) (Attorney's Fees) of Customer(s)' Exclusive Buyer Agency Agreement (North Carolina), if applicable, or Section 21 (Mediation Clause) of Customer(s)' Exclusive Right To Sell Agreement Listing Agreement (South Carolina), if applicable, or Section 14 (Mediation Clause) of Customer(s)' Exclusive Right To Buy Buyer Agency Contract (South Carolina), if applicable, are hereby stricken in their entirety, and that this Mediation & Arbitration Agreement replaces those specific sections of those agreements in their entirety.**

**Who is Covered?** In this Mediation & Arbitration Agreement, which is hereby incorporated into and made part of Customer(s)' Exclusive Right to Sell Listing Agreement, Exclusive Buyer Agency Agreement, or Non-Exclusive Buyer Agency Agreement (in North Carolina), or Customer(s)' Exclusive Right to Sell Agreement Listing Agreement, or Exclusive Right To Buy Buyer Agency Contract (in South Carolina), as applicable (the "Agreement"), Customer(s) is referred to as "you" or "your"; Preferred Carolinas Realty, Inc. (dba Berkshire Hathaway HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, Berkshire Hathaway HomeServices Yost & Little Realty, and Berkshire Hathaway HomeServices Pinehurst Realty Group) ("Broker"), its ultimate parent company HomeServices of America, Inc., and their affiliates, subsidiaries, employees, and agents are collectively referred to as "Broker-Related Party"; Broker-Related Party and you are individually referred to as a "party," and, collectively, the "parties." Any Broker-Related Party may enforce the Agreement and this Mediation & Arbitration Agreement.

**Agreement to Mediate; Small Claims.** If a dispute or other claim or controversy between you and a Broker-Related Party (collectively, "Claims") arises out of the Agreement, or a breach of the Agreement, and if the parties cannot settle the Claims informally, then the parties first must attempt to resolve the Claims by mediation administered by the American Arbitration Association ("AAA") under its Commercial Mediation Procedures in effect on the date of the Agreement (see www.adr.org). If you can show that you cannot afford the initial mediation fee, if any, then the Broker-Related Party will pay that initial mediation fee, but you must pay your own attorney's fees and costs for the mediation and your pro rata share of the AAA's post-filing mediation fees and costs. If a small-claims or equivalent court ("Small Claims Court") in the county where Broker's principal business office is located (the "County Jurisdiction") has jurisdiction over the Claims, and you want to resolve the Claims in the Small Claims Court, then the Broker-Related Party will waive the mediation and arbitration requirements in this Mediation & Arbitration Agreement and the parties will finally resolve the Claims in the Small Claims Court, on the condition that you waive in writing your rights, if any, to (a) appeal the final judgment or decision of the Small Claims Court; or (b) remove or transfer the case from the Small Claims Court to another court.

**Agreement to Arbitrate; Excluded Claims.** If the parties cannot resolve the Claims as set forth above, then, unless limited below, they must submit and resolve the Claims using binding arbitration conducted by the AAA under its Commercial Arbitration Rules ("AAA Rules") (see www.adr.org) in effect on the date of the Agreement, except to the extent that this Mediation & Arbitration Agreement conflicts with the AAA Rules. Alternatively, the parties may agree in writing to use another arbitration provider and/or different rules for the arbitration. You are not, however, required to arbitrate Claims that you are authorized by law or regulation to file in an administrative agency, commission, or board, unless the law or regulations governing these types of Claims require or allow you to first bring them in arbitration.

**The Arbitration & Arbitrator.** The Broker-Related Party or you must commence the arbitration by filing a written demand with the AAA (or the other chosen arbitration provider). The arbitration will take place in the County Jurisdiction. If you can show that you cannot afford the initial arbitration filing fee, then the Broker-Related Party will pay your initial filing fee, but you must pay your own attorney's and expert fees and costs and your pro rata share of the AAA's or other arbitration provider's post-filing fees and costs. The AAA or other arbitration provider must designate one neutral arbitrator for the arbitration. The Agreement and, if applicable, the listing and sale of your property, evidences a transaction involving interstate commerce and this Mediation & Arbitration Agreement must be interpreted and the arbitration conducted under the Federal Arbitration Act

BHHS Carolinas Realty - Charlotte, Ballantyne, 3420 Toringdon Way, Suite 200 Charlotte NC 28277     Phone: 803-415-4530     Fax: 267.341.1956     CASHAW,
Michelle Zawacki     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201     www.lwolf.com

DocuSign Envelope ID: D70BB5BF-F8D1-45CF-ACE3-DC74BC6420C3

("FAA"). The arbitrator will have the exclusive authority to resolve any Claims between the parties relating to the formation, enforceability, enforcement (including by non-signatories to the Agreement), applicability, waiver, or interpretation of this Mediation & Arbitration Agreement under the FAA, including whether all or any part of this Mediation & Arbitration Agreement is void or voidable. The arbitrator must rule on (a) his or her jurisdiction, including any objections with respect to the existence, scope, or validity of this Mediation & Arbitration Agreement; (b) the arbitrability of any Claims; and (c) the existence or validity of the Agreement. The arbitrator must interpret this Mediation & Arbitration Agreement as an enforceable contract independent of the other terms of the Agreement, and the arbitrator's decision that the Agreement, or any other part of the Agreement, is null and void will not for that reason alone render this Mediation & Arbitration Agreement invalid or unenforceable.

**Discovery; Confidentiality.** The arbitrator may order discovery sufficient to enable a full and fair exploration of the facts and legal issues underlying the Claims, consistent with the expedited nature of arbitration. The parties and the arbitrator must keep all aspects of the arbitration confidential and not make them part of the public record, including all (a) pleadings, motions, discovery, memoranda, and other work product in the parties' or the arbitrator's files that were prepared for use in an arbitration hearing or conference or used in an arbitral award; and (b) communications made by or to a party, the arbitrator, or any other person in or in connection with the arbitration (the "Confidential Materials"). The parties must not disclose any Confidential Materials in any judicial or administrative proceeding, except that a party may disclose certain Confidential Materials if the parties agree in writing to waive confidentiality over the Confidential Materials.

**Award Limitations.** The arbitrator may award a party any remedy that would have been available had the parties litigated the Claims in court, including money damages and injunctive relief. The arbitrator, however, cannot issue any award that includes any punitive, special, consequential, incidental, indirect, or exemplary damages. Any arbitrator determination, finding, or award will be final and binding on the parties, and either party may confirm any of them in a court with jurisdiction in the County Jurisdiction. A party cannot arbitrate any Claims unless the party commences the arbitration within the statutes of limitation governing the Claims.

**Jury Waiver & Class Action Waiver. THE PARTIES WILL HAVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT THEY ARE HEREBY GIVING UP THEIR RIGHTS TO RESOLVE THEIR CLAIMS IN A COURT OR JURY TRIAL.** The parties must submit their own, individual Claims for resolution in the arbitration. **The parties hereby waive the following rights:** (a) the right to represent the interests of any other person or join or consolidate any Claims by or against third parties; (b) the right to bring, join, or maintain any Claims (in arbitration or otherwise) where the party or another person seeks to act (i) as a representative or member of a class, collective, or mass action, (ii) in the general-public interest, or (iii) in any private-attorney-general capacity; and (c) the right to participate in a class-action lawsuit or class-wide arbitration; and (d) the right to participate as a representative or member in a class arbitration or any consolidation of individual arbitrations (collectively, the "Class Action Waivers"). The Class Action Waivers will control and supersede any contrary agreements, statements, or rules in the AAA Rules or other arbitration provider's rules.

**Validity.** If any part of this Mediation & Arbitration Agreement, other than the Class Action Waivers, is determined to be invalid or unenforceable, then the remaining parts of this Mediation & Arbitration Agreement still will remain fully enforceable. If any part of the Class Action Waivers is determined to be unenforceable against a party or another person, then the party or the other person will have the unilateral right to determine whether to proceed in arbitration or require that the Claims be brought in a court with jurisdiction over the Claims, on the condition that a determination that the Class Action Waivers are unenforceable will be subject to appeal.

**CUSTOMER(S):**                                    **Preferred Carolinas Realty, Inc.**

_Terrence D. Cashaw_ **DATE** 3/29/2023 | 3:45 PM EDT    **BY** _Michelle Zawacki_

**Terrence D. Cashaw**                              **Michelle H. Zawacki**

                                                    **ITS AUTHORIZED REPRESENTATIVE**

_Pamela E. Cashaw_ **DATE** 3/29/2023 | 11:57 AM EDT  **DATE:** 3/20/2023 | 8:15 PM EDT

**Pamela E. Cashaw**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          CASHAW,

DocuSign Envelope ID: 368DE589-08DC-40A8-8D82-8E72734A9CA5



# BERKSHIRE HATHAWAY
## HomeServices

| Carolinas Realty
York Simpson Underwood Realty
Yost & Little Realty
Pinehurst Realty Group

WE MAKE GREAT NEIGHBORS.®

## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This Exclusive Right To Sell Listing Agreement ("Agreement") is entered into between **Victoria Hunter Hitz**
_____ as Seller(s) ("Seller") and Preferred Carolinas Realty, Inc. dba Berkshire Hathaway
HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, Berkshire Hathaway HomeServices Yost &
Little Realty, and Berkshire Hathaway HomeServices Pinehurst Realty Group as Listing Broker ("Broker") for the property described below
("Property") and known as or legally described as:

Street Address:   **2833 Wesleyan Lane**

City:  **Winston Salem**                                                                 Zip code:  **27106**

County:  **Forsyth**                                                                                  , North  Carolina.

Legal   Description:   **6816-86-9114, Lot 8, Block 2515**

_____.

1.        TERM OF AGREEMENT:    In consideration of Broker's services to procure a buyer for the Property, Broker is hereby granted the exclusive
right to sell the Property for a period beginning on _____**September 4**_____ , **2020**_____ and expiring at 11:59 P.M. on
_____**March 4**_____ , **2021**_____ unless terminated sooner by Broker at its option.

2.        LISTING PRICE AND TERMS:   Seller agrees to list the Property, including all fixtures described in paragraph 3, for sale at a price of
$ **415,000.00**_____ ("Listing Price") on the following terms:
**X** Cash _____ __ FHA _____ __ VA _____ __ USDA _____ **X** Conventional _____ __ Loan Assumption
__ Seller Financing                  Other: _____

Seller agrees to sell the Property for the Listing Price and terms set forth above, or at any other price and on any other terms acceptable to Seller.

3.        FIXTURES AND EXCLUSIONS.
   (a)   Specified Items: Unless identified in subparagraph (d) below, the following items, including all related equipment and remote control
         devices, if any, are deemed fixtures and shall convey, included in the Purchase Price free of liens:

- Alarm and security systems (attached) for security, fire, smoke, carbon monoxide or other toxins with all related access codes, sensors, cameras, dedicated monitors, hard drives, video recorders, power supplies and cables; doorbells/chimes
- All stoves/ranges/ovens; built-in appliances; attached microwave oven; vent hood
- Fuel tank(s) whether attached or buried and including any contents that have not been used, removed or resold to the fuel provider as of Settlement. **NOTE:** Seller's use, removal or resale of fuel in any fuel tank is subject to seller's obligation under Paragraph 8(c) to provide working, existing utilities through the earlier of Closing or possession by Buyer.
- Garage door openers with all controls
- Generators that are permanently wired
- Invisible fencing with power supply, controls and receivers
- Landscape and outdoor trees and plants (except in moveable containers); raised garden; landscape and foundation lighting; outdoor sound systems; permanent irrigation systems and controls; rain barrels; landscape water features; address markers
- Mailboxes; mounted package and newspaper receptacles

- Antennas; satellite dishes and receivers
- Basketball goals and play equipment (permanently  attached or in-ground)
- Ceiling and wall-attached fans; light fixtures (including existing bulbs)
- Fireplace insert; gas logs or starters; attached fireplace screens; wood or coal stoves
- Floor coverings (attached)
- Mirrors attached to walls, ceilings, cabinets or doors; all bathroom wall mirrors
- Storage shed; utility building
- Swimming pool (excluding inflatable); spa; hot tub
- Solar electric and solar water heating systems
- Sump-pumps, radon fans and crawlspace ventilators; de-humidifiers that are permanently wired
- Surface-mounting brackets for television and speakers; recess-mounted speakers; mounted intercom system
- Water supply equipment, including filters, conditioning and softener systems; re-circulating pumps; well pumps and tanks
- Window/Door blinds and shades, curtain and draper rods and brackets, door and window screens and combination doors, awnings and storm windows.

RE/FORM/Listing: 5/1/2020                                        Page 1 of 9                            Copyright© 2020 Preferred Carolinas Realty, Inc.
All Rights Reserved

DocuSign Envelope ID: 368DE589-08DC-40A8-8D82-8E72734A9CA5

(b) FIXTURES AND EXCLUSIONS.
Items Leased or Not Owned: Any item which is leased or not owned by Seller, such as fuel tanks, satellite dishes and receivers, appliances, and alarm and security systems must be identified here and shall not convey:
**N/A**
_____
_____
_____

(c) Other Fixtures/Unspecified items: Unless identified in subparagraph (d) below, any other item legally considered a fixture is included in the Purchase Price free of all liens.

(d) Other Items That Do Not Convey: The following items shall not convey *(identify those items to be excluded under subparagraphs (a) and (c):*
**N/A**
_____
_____

Seller shall repair any damage caused by removal of any items excepted above.

4.      PERSONAL PROPERTY. The following personal property shall be transferred to Buyer free of liens at no value at the closing on the sale of the Property:
**N/A**
_____

5.      BROKER'S COMPENSATION:   Seller agrees to pay Broker compensation in the amount of $ **200.00** _____ plus **6.000** % of the gross contract sales price of the Property, which compensation shall include any compensation unpaid by Broker to any cooperating real estate brokers. Note that Broker does not offer any compensation to non-cooperating real estate brokers who are not members of the Multiple Listing Service ("MLS"). Seller authorizes the payment of the compensation owed to Broker pursuant to this Agreement to be paid directly to Broker from Seller's proceeds from the closing on the sale of the Property.

The compensation owed to Broker shall be deemed earned upon Broker, a cooperating real estate broker, Seller, or anyone else procuring or producing a ready, willing and able buyer(s) at the Listing Price and terms agreed to herein by Seller, or at any other price or terms acceptable to Seller, during the term of this Agreement. If any agreement for the sale or transfer of the Property does not have a selling price, the percentage component of the compensation owed to Broker shall be calculated based on the fair market value of the Property as of the effective date of such agreement. The compensation earned as set forth above shall be due and payable immediately upon the earlier of:

(a)     The closing on the sale of the Property;
(b)     Seller's refusal to sign a contract or agreement for the sale of Property at the Listing Price and terms set forth herein, or on any other terms acceptable to Seller;
(c)     Seller's breach of any contract or agreement for the sale or transfer of the Property;
(d)     Seller's agreement with any buyer(s) to unreasonably modify or cancel any contract or agreement for the sale or transfer of the Property;
(e)     Seller's breach of this Agreement.

Provided, however, that in the event the Property is not sold during the term of this Agreement, if within 180 days after expiration of this Agreement (the "Protection Period") Seller sells or enters into any agreement to sell the Property, directly or indirectly, including but not limited to any form of option, exchange, lease/purchase, conveyance or transfer upon any terms whatsoever, to any person or entity with whom Seller, Broker, or any cooperating real estate broker communicated during the term of this Agreement, and whose name(s) Broker has submitted to Seller in writing within 15 days of the expiration of this Agreement, the compensation owed to Broker pursuant to this Agreement shall be immediately due and payable to Broker. However, Seller shall not be obligated to pay the compensation owed to Broker pursuant to this Agreement if a valid listing agreement is entered into with another licensed real estate broker after the expiration of this Agreement and the Property is sold, exchanged, leased, conveyed or transferred during the Protection Period.

Seller acknowledges and agrees that Broker may be offered compensation from other persons or entities in connection with the sale of the Property, and Seller agrees to permit Broker to receive any such additional compensation. Broker will timely disclose any such additional compensation to Seller.

6.      BROKER'S DUTIES: Broker accepts the exclusive listing granted by this Agreement and shall use its best efforts and due diligence to solicit and procure a ready, willing and able buyer to purchase the Property at the Listing Price and terms set forth in this Agreement. Broker further agrees to:

(a)     Perform the terms of this Agreement, exercise reasonable care and skill, and promote Seller's interests;
(b)     Assist Seller in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to the offers and the counteroffers;
(c)     Accept delivery of and present to Seller in a timely manner all offers and counteroffers to sell the Property;
(d)     Respond to Seller's questions relating to the offers, counteroffers, notices, and contingencies.
(e)     Account in a timely manner for all money and property received on behalf of Seller;
(f)     Not disclose any confidential information about Seller, unless disclosure is authorized pursuant to this Agreement or is required by statute, rule, regulation or North Carolina law, or the failure to disclose such information would constitute a material misrepresentation.

Copyright© 2020 Preferred Carolinas Realty, Inc.
All Rights Reserved
**2833 Wesleyan**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: 368DE589-08DC-40A8-8D82-8E72734A9CA5

Seller acknowledges that the rules of any listing service of which Broker is a member or in which any of Broker's agents participate may obligate Broker to provide a copy of this Agreement to any such listing service at its request, and Seller consents to Broker providing a copy of this Agreement in the event of any such request.

**BROKER SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT.**

7.      SELLER'S DUTIES:  Seller agrees to cooperate with Broker in marketing the Property for sale, including making the Property available for showings at reasonable times on reasonable notice. Seller further agrees to complete all required disclosure forms, including but not limited to the Residential Property and Owner's Association Disclosure Statement (unless exempt), the Mineral and Oil and Gas Rights Mandatory Disclosure Statement  (unless exempt),and the Lead-Based Paint or Lead-Based Paint Hazard Addendum, if applicable to the Property.

(a)      Seller represents that Seller holds title to the Property in fee simple, and that Seller does not know or have reason to know of circumstances or encumbrances that would prohibit Seller from conveying fee simple marketable title to the Property to a ready, willing and able buyer except as follows:

N/A _____

_____

(b)      If required by N.C.G.S. §44A-11.1, Seller shall designate a Lien Agent, and provide Broker a copy of the appointment of Lien Agent as soon as reasonably possible.

8.      SELLER REPRESENTATIONS:  Seller acknowledges and agrees that Broker is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which Broker knows or reasonably should know. Seller hereby makes the following representations concerning the Property:

(a)      **Flood Hazard Disclosure/Insurance.** To the best of Seller's knowledge, the Property ☐ is ☒ not located partly or entirely within a designated Special Flood Hazard Area. The Seller ☐ does ☒ does not currently maintain flood hazard insurance on the Property.

(b)      **Synthetic Stucco.** To the best of Seller's knowledge, the Property ☒ has not been clad previously (either in whole or in part) with an" exterior insulating and finishing system, "commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows:

_____

(c)      **Owners' Association.**

(1) Complete ONLY if the Residential Property and Owner's Association Disclosure Statement is required: The name, address and telephone number of the president of the owner's association or the association manager is:
N/A _____

_____

Owner's association website address, if any: _____

(2) Complete ONLY if New Construction or where the Residential Property and Owner's Disclosure Statement is NOT required: To the best of Seller's knowledge there ☐ is ☒ is not an owners' association which imposes various mandatory covenants, conditions and restrictions upon the Property. If there is an owners' association, Seller agrees to promptly complete an Owners' Association Disclosure and Addendum For Properties Exempt from Residential Property Disclosure Statement at Seller's expense and to attach it as an addendum to any contract for the sale of the Property.

(d)      **Ownership.** Seller represents that Seller:
☒    has owned the Property for at least one year;
☐    has owned the Property for less than one year.

(e)      **Receipt of Sample Forms.**
☐    Seller acknowledges receipt of a sample copy of an Offer to Purchase and Contract (Form 2-T) or Offer to Purchase and Contract–New Construction (Form800-T), as may be appropriate for review purposes.
☐    Seller acknowledges receipt of a sample copy of a Professional Services Disclosure and Election Form (Form #760) for review purposes.

(f)      ==Current Liens. Seller represents to the best of Seller's knowledge:==
==(1)      The Property ☒ is ☐ is not encumbered by a deed of trust or mortgage. *Complete any of the following where applicable:*==

Copyright© 2020 Preferred Carolinas Realty, Inc.
All Rights Reserved
**2833 Wesleyan**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

(i) There is a first deed of trust or mortgage on the Property securing a loan held by:

Lender Name: _____

Approximate balance: $ _____

Lender Phone #: _____

Lender Address: _____

(ii) There is a second deed of trust or mortgage on the Property securing a loan held by:

Lender Name: _____

Approximate balance: $ _____

Lender Phone #: _____

Lender Address: _____

(iii) There is a deed of trust or mortgage on the Property securing an equity line of credit held by:

Lender Name: _____

Approximate balance: $ _____

Lender Phone #: _____

Lender Address: _____

(2) Seller [X] is current on all payments for the loans identified in numbered items (i), (ii) and (iii) above except as specified in (7) below.

(3) Seller [X] is not in default on any loan identified in numbered items (i), (ii) and (iii) above and has not received any notice(s) from the holder of any loan identified in numbered items (i), (ii) and (iii) above or from any other lien holder of any kind, regarding a default under the loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure except as specified in (7) below.

(4) There [X] are not any liens secured against the Property for Federal, State or local income taxes, unpaid real property taxes, unpaid condominium or homeowners' association fees, mechanics', laborers' or materialmens' liens, or other liens affecting the Property, and Seller has no knowledge of any matter that might result in a lien affecting the Property except as specified in (7) below.

(5) There [X] are not any judgments against Seller affecting the Property, and Seller has no knowledge of any matter that might result in a judgment that may potentially affect the Property except as specified in (7) below.

(6) There [X] are not any Uniform Commercial Code (UCC) fixture filings affecting the Property, and Seller has no knowledge of any matter that might result in a UCC fixture filing affecting the Property except as specified in (7) below.

(7) Specify any information, including approximate balances, required by Seller representations (2) through (6) above (**NOTE**: Outstanding liens may affect Seller's proceeds)

_____

_____

(g) **Bankruptcy.** Seller currently:

(1) [ ] is [X] is not under bankruptcy protection under United States law.

(2) [ ] is [ ] is not contemplating seeking bankruptcy protection during the term of this Agreement.

(h) **Access.** Seller represents that the Property [X] does [ ] does not have legal access to a public right of way. If access is by private road/easement/other, Seller further represents that there [ ] is [X] is not an agreement regarding the maintenance of such private road/easement/other means of access. If applicable, Seller agrees to promptly provide Broker information pertaining to any such agreement.

(i) **Lease(s).** To the best of Seller's knowledge, the Property [ ] is [X] is not subject to any lease(s). If applicable:

(i) Seller agrees to promptly provide Broker a copy of any such lease(s) or a written statement of the terms of any oral lease(s);

(ii) If the Property is managed by someone other than Seller, the manager's name and contact information is as follows:

_____ .

Seller authorizes any such manager to release and disclose to Broker any relevant information about any lease(s) and to cooperate with Broker in the sale of the Property.

(j) **FHA Appraisal.** To the best of Seller's knowledge, a FHA appraisal [ ] has [X] has not been performed on the Property within four months prior to the Effective Date. If applicable, Seller agrees to promptly provide Firm a copy of any such appraisal if available. NOTE: Any such appraisal may or may not be binding on a buyer who intends to obtain FHA financing.

(k) **Special Assessments.** To the best of Seller's knowledge, there are no proposed or confirmed special assessments (as defined in the sample contract form provided to Seller) regarding the Property except as follows (Insert "none" or the identification of such assessments, if any):

**N/A** _____ .

(l) **Fuel Tank/Fuel:** To the best of Builder's knowledge, there [ ] is [X] is not a fuel tank(s) located on the Property. *If "yes" complete the following to the best of Builder's knowledge:*

Ownership of tank 1: [ ] owned [ ] leased. If leased, the name and contact information of tank lessor/fuel vendor is: _____

_____ .

Location of tank 1: [ ] above ground [ ] below ground

Type of fuel: [ ] oil [ ] propane [ ] gasoline and/or diesel [ ] other: _____

Copyright© 2020 Preferred Carolinas Realty, Inc.
All Rights Reserved

Ownership of tank 2: ☐ owned ☐ leased. If leased, the name and contact information of tank lessor/fuel vendor is: _____

_____ .

Location of tank 2: ☐ above ground ☐ below ground
Type of fuel: ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____

If, during the term of this Agreement, Seller becomes aware that any of the representations set forth in this paragraph 8 are incorrect or no longer accurate, Seller shall promptly notify Broker and cooperate with Broker in taking appropriate corrective action.

9.      HOME INSPECTION:  Seller is advised to obtain a home inspection for the purpose of evaluating the condition of the Property in order to enhance its marketability and to help reduce concerns of prospective buyers. Seller ☐ agrees ☒ does not agree to obtain and pay for a home inspection by a licensed NC Home Inspector within _____ days after the execution of this Agreement.

☐       Seller acknowledges receipt of a copy of *Questions and Answers on: Home Inspections* by the NC Real Estate Commission.

10.      MARKETING ACTIVITIES:

(a)      **Submission to Listing Service.** Broker shall submit pertinent information concerning the Property to any listing service of which Broker is a member, or in which any of Broker's agents participate, in accordance with the rules of any such listing service. Seller authorizes Broker (i) to furnish to the listing service notice of all changes of information concerning the Property authorized in writing by Seller, (ii) upon execution of a sales contract for the Property, to notify the listing service of the pending sale and the expiration date of any due diligence period, and (iii) upon closing of the sale, to disseminate sales information, including sales price, to the listing service, appraisers and real estate brokers.

(b)      **Commencement of Marketing.** Broker is authorized to commence marketing the Property as described in subparagraph (c) below on the Effective Date OR if selected ☒ on (insert date only if applicable) _____**September 17, 2020**_____ ("Delayed Marketing Date"). If a Delayed Marketing Date is selected, Seller understands and acknowledges (i) that listing service rules may prohibit the Property being previewed or shown by Seller or any real estate agent, including Broker's agents, prior to the Delayed Marketing Date, and (ii) that listing service rules may prohibit any Public Marketing of the Property before the Delayed Marketing Date except as may be permitted under "Coming Soon" Advertising in subparagraph (c) below. "Public Marketing" includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public-facing websites, brokerage website displays (including IDX and VOW), digital communications marketing (email blasts), multi-brokerage listing sharing networks, and applications available to the general public. Broker is obligated to present Seller any offers on the Property that may be submitted to Broker prior to the Delayed Marketing Date.

**NOTE: IT IS IN THE BEST INTEREST OF MOST SELLERS TO GET THE HIGHEST POSSIBLE PRICE ON THE BEST TERMS FOR THEIR PROPERTY, AND MAXIMIZING EXPOSURE OF THEIR PROPERTY ADVANCES THAT INTEREST. ACCEPTING AN OFFER ON THE PROPERTY BEFORE IT IS FULLY EXPOSED TO THE WIDEST GROUP OF POTENTIAL BUYERS MAY DENY SELLER THE BEST OPPORTUNITY TO ATTRACT OFFERS AT THE HIGHEST PRICE AND BEST TERMS.**

(c)      **Marketing Authorization.** Seller authorizes Broker to market the Property as described below:

(i)      Cooperate and share the commission payable under this Agreement with other brokers including brokers who have been employed as buyer's agents, subagents, dual agents, or designated agents, subject, where applicable, to authorization as required by law;

(ii)      Submit pertinent information, including virtual tours and images when applicable, concerning the Property to any Multiple Listing Service ("MLS") organizations to which Broker subscribes;

(iii)      Market the Property as "Coming Soon," commencing on the Effective Date, in any media Broker may in its discretion select, provided that any "Coming Soon" advertising shall be conducted in accordance with any restrictions and requirements of any listing service in which the Property will be included, a copy of which ☐ are ☒ not attached to this Agreement;

(iv)      Disseminate data about the Property and other information, including Seller's name, price, and other information concerning the Property supplied by, or on behalf of Seller, including creative works depicting the Property, such as virtual tours, images, and any textual descriptions of the Property (collectively referred to as "Content"), to MLS Participants, Subscribers and other licensees or users of the MLS database compilation, or any other MLS in which Broker participates, and to further disseminate, or permit the MLS or other MLS participants to disseminate such Content to potential purchasers through websites on the Internet. Further, Broker is authorized to otherwise advertise the Property in any manner deemed appropriate by Broker, including but not limited to advertising on the Internet, virtual tours, websites, trade journals and any other medium, and communications via e-mail and facsimile;

(v)      Place a "For Sale," "Under Contract," "Sale Pending," and other similar signs on the Property and to remove all other signs during the term of this Agreement;

(vi)      Enter the Property at reasonable times and with reasonable notice for the purpose of evaluation, preview, or showing the Property to prospective purchasers or other brokers;

DocuSign Envelope ID: 368DE589-08DC-40A8-8D82-8E72734A9CA5

(vii) Possess and maintain a key to the Property, and make use of a "Lock Box" during the term of this Agreement; and

(viii) Conduct open houses of the Property at such times as Seller and Broker may agree.

(d) **Seller Acknowledgement.** Seller acknowledges and understands that while the marketing services identified above will facilitate the showing and sale of the Property, there are inherent risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of Broker, including but not limited to:

(i) unauthorized use of a lock/key box,

(ii) control of visitors during or after a showing or an open house, including the taking and use of photographs and videos of the Property,

(iii) inappropriate use of information about the Property placed on the Internet or furnished to any MLS in which Broker participates, and

(iv) information about the Property placed on the Internet by or through any listing service in which Broker participates which is inaccurate or dated, or information about the Property which may remain on the Internet following the expiration of the expiration of this Agreement, including but not limited to photographs and video.

Seller acknowledges and understands that neither Broker nor its agents have control over information about the Property that has been placed on the Internet in connection with the marketing of the Property for sale, whether by or through a listing service or otherwise, including but not limited to photographs and video, and that it may not be possible to remove any such information.

Seller therefore agrees to release and discharge Broker and Broker's agents from any and all claims, demands, rights and causes of action of whatsoever kind and nature not caused by Broker's negligence arising directly or indirectly out of any such marketing services.

WARNING: IT MAY BE A CRIME UNDER FEDERAL AND STATE LAWS TO LISTEN TO OR RECORD AN ORAL COMMUNICATION THROUGH THE USE OF ANY ELECTRONIC, MECHANICAL, OR OTHER DEVICE WITHOUT THE CONSENT OF A PARTY TO THAT COMMUNICATION. If there is a video/audio/surveillance device(s) on the Property, Seller is advised: (i) that no audio surveillance device may be turned on during any showings, open houses, investigations, examinations or inspections of the Property; and (ii) that the placement of any video surveillance device should not violate a visitor's reasonable expectation of privacy.

(e) **Office Exclusive.** ☐ (Check only if applicable) Seller has chosen to withhold from publication and dissemination to other participants of any listing service of which Broker is a member, or in which any of Broker's agents participate, and Seller understands and acknowledges that : (i) the rules of any such listing service may require that the listing be filed with the listing service or that the listing service be notified of the listing, but that the listing will not be disseminated to the listing service's participants, and (ii) the listing service may require Broker to provide a certification signed by Seller that Seller does not desire the listing to be disseminated by the listing service. Seller further understands and acknowledges that listing service rules may require that the listing be submitted to the listing service and disseminated to its participants within one (1) business day if any Public Marketing of the Property occurs (see subparagraph (b)).

11. COPYRIGHT: Broker is specifically authorized to use, both before and after the sale or, in the event there is not a sale, after this listing has expired, for any purposes whatsoever, any and all information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property (including any information concerning the price and terms of the sale of the Property, the description of the Property, length of time the Property is on the market, and any other information relating to the Property) ("Seller Content"). Seller hereby assigns to Broker any and all intellectual property rights Seller may have in the Seller Content and to any photographs or video or other reproductions of the property used in connection with the marketing of the property. For purposes of clarity, Broker is the owner of any and all rights in the Seller Content and may further assign, license, sublicense, or otherwise dispose of these rights to any party whatsoever for any purposes whatsoever. If any moral rights are not transferred by the preceding sentences, Seller hereby waives all such rights.

Seller's execution of this Agreement further signifies Seller's representation and warranty that Seller is the sole author and sole owner of all rights in and to the Seller Content; that Seller's contribution to the Seller Content is original and not in the public domain; that Seller's contribution to the Seller Content contains no material from other copyrighted or unpublished work that has been used without the written consent of the copyright owner and/or of the owner of any other rights to or in such other works; that it does not violate or infringe on any personal or property rights of others, whether common law or statutory; that it contains nothing libelous or contrary to law; and that Seller has full power to enter this Agreement. Seller agrees to indemnify and hold harmless Broker for any claims of copyright infringement or other claims arising from any publication or use of the Seller Content.

Broker grants to Seller a non-exclusive, perpetual license for the use of the Seller Content, including the right to display, reproduce, distribute or make derivative works from the Seller Content. For purposes of clarity, the license granted to Seller for the use of the Seller Content applies only to information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property, and not to any information, photographs or video created or provided by or on behalf of Broker. Seller agrees to indemnify and hold harmless Broker for any and all claims arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of this license. Seller understands and agrees that Broker assumes no responsibility for Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of the license granted by Broker, or for any infringement arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content.

DocuSign Envelope ID: 368DE589-08DC-40A8-8D82-8E72734A9CA5

12.    DUAL AGENCY: Seller understands that the potential for dual agency will arise if a buyer who has an agency relationship with Broker becomes interested in viewing the Property. Broker may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Broker acts.

(a)    Disclosure of Information. In the event Broker serves as a dual agent, Seller agrees that without permission from the party about whom the information pertains, Broker shall not disclose to the other party the following information:

(1)    that a party may agree to a price, terms, or any conditions of sale other than those offered;

(2)    the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and

(3)    any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute, rule, regulation or North Carolina law.

(b)    Broker's Role as Dual Agent. If Broker serves as agent for both Seller and a buyer in a transaction involving the Property, Broker shall make every reasonable effort to represent Seller and buyer in a balanced and fair manner. Broker shall also make every reasonable effort to encourage and effect communication and negotiation between Seller and buyer. Seller understands and acknowledges that:

(1)    Prior to the time dual agency occurs, Broker will act as Seller's exclusive agent;

(2)    In its separate representation of Seller and buyer, Broker may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Broker;

(3)    Broker is required by law to disclose to Seller and buyer any known or reasonably ascertainable material facts.

Seller agrees Broker shall not be liable to Seller for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

(c)    Seller's Role. Should Broker become a dual agent, Seller understands and acknowledges that:

(1)    Seller has the responsibility of making Seller's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Broker;

(2)    Seller is fully aware of and understands the implications and consequences of Broker's dual agency role as expressed herein to provide balanced and fair representation of Seller and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

(3)    Seller has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;

(4)    Seller may seek independent legal counsel to assist Seller with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Broker become a dual agent, Seller waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Broker's role as a dual agent. Seller shall have a duty to protect Seller's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Seller wants included in said agreement.

(d)    Authorization *(initial only ONE)*.

Seller authorizes Broker to act as a dual agent, representing both the Seller and the buyer, subject to the terms and conditions set forth in Paragraph 12.

Seller desires exclusive representation at all times during this agreement and does NOT authorize Broker to act in the capacity of dual agent. *If Seller does not authorize Broker to act as a dual agent, the remainder of this paragraph shall not apply.*

(e)    Designated Agent Option *(Initial only if applicable)*.

Seller hereby authorizes Broker to designate an individual agent(s) to represent the Seller. The individual designated agent(s) shall represent only the interests of the Seller to the extent permitted by law.

(**NOTE**: When dual agency arises, an individual agent shall not practice designated agency and shall remain a dual agent if the individual agent has actually received confidential information concerning a buyer client of Broker in connection with the transaction or if designated agency is otherwise prohibited by law.)

Copyright© 2020 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   **2833 Wesleyan**

(f)    Dual Agency Compensation. If Broker acts as a dual agent (including designated agency), the total fee Broker expects to receive for its services in representing Seller and the buyer shall be 6% (+/- up to 4%) and $300 (+/- up to $900). THIS WILL IN NO WAY AFFECT OR MODIFY THE AMOUNT OF THE FEE SET FORTH IN PARAGRAPH 5 ABOVE THAT BROKER EXPECTS TO RECEIVE FOR ITS SERVICES IN REPRESENTING SELLER UNDER THIS AGREEMENT. In the event Broker's total fee is different from that described in this subparagraph (f), Broker shall timely disclose the fee to Seller and confirm it in writing before Seller accepts an offer to sell the Property.

13.    LEGAL AND PROFESSIONAL ADVICE: Broker recommends that Seller seek legal, tax, and other professional advice relative to any real estate transaction. Broker makes no representation or warranty respecting the advisability of any transaction. Broker is not an expert in matters relating to law (including matters of title to the Property), tax, financing, surveying, structural or mechanical condition, hazardous material, engineering, or other specialized topics. Seller is encouraged to seek expert assistance in such areas. Broker will cooperate with experts engaged by Seller or at the request of Seller, but Broker will have no liability to Seller pertaining to such matters.

14.    ARBITRATION AGREEMENT: Any Dispute, claim or controversy between Seller and Broker shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This agreement to arbitrate and the arbitration proceeding shall be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is inapplicable, unenforceable, or invalid, the North Carolina Revised Uniform Arbitration Act shall govern this Arbitration Agreement and the arbitration proceeding.

As used herein the term "Dispute" shall include, without limitation, any claim, controversy, complaint or disagreement regarding any representations, acts or omissions by any person, party or entity that in any way arises out of or is related to the sale, purchase, financing, condition of any property or any other aspect of Seller's real estate transaction, or that in any way arises out of any of the real estate brokerage services or other settlement services provided by Broker including, without limitation, allegations of concealment, misrepresentation, negligence, breach of fiduciary duty, fraud, constructive fraud, or other wrongful actions or omissions of any type. A Dispute includes any claim, controversy, complaint or disagreement of any kind, including those based on broken promises or contracts, closing charges, or tort (injury caused by negligent or intentional conduct). A Dispute includes any statutory, common law, or equitable claim. A Dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement. No Dispute may be joined in arbitration with a Dispute of any other person or arbitrated on a class action basis.

The American Arbitration Association (AAA) shall administer the arbitration, including the selection of arbitrators, pursuant to its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable. The arbitration shall be held in the county where the real property at issue is located. To find out how to initiate arbitration, Seller can contact AAA at:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Toll free number 877-495-4185
Fax number 877-304-8457

Website: www.adr.org

Email: casefiling@adr.org

All parties to the arbitration (AAA, the arbitrator, Broker, and Seller) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA. The arbitration proceeding shall be conducted at a location determined by AAA in accordance with this Arbitration Agreement. All statutes of limitation and statutes of repose applicable to any Dispute shall apply to any arbitration proceeding between Broker and Seller. If a Dispute is properly filed in Small Claims Court and the Small Claims Court has jurisdiction to resolve the Dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the Dispute from Small Claims Court shall pay AAA's administrative fee and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforceability of the other terms of this Arbitration Agreement.
WHEN YOU SIGN THIS AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER BROKER NOR SELLER SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY

ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

Seller's initials: _____ _____

15.     Seller acknowledges receipt of the brochure describing the HomeServices Warranty Program offered through Cinch Home Services. In the abovementioned brochure, Seller accepted or declined coverage. Specific details of the coverage provided by Cinch Home Services, including coverage limits, exclusions, deductibles and other information may be obtained from Broker upon request.

Seller's initials: _____ _____

16.     ADDITIONAL TERMS AND CONDITIONS: The following additional terms and conditions shall also be a part of this Agreement: **N/A**

_____
_____ .

17.     ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between the parties; any prior agreements pertaining thereto, whether oral or written, have been merged and integrated into this Agreement. There shall be no modification of any of the terms of this Agreement unless such modification has been agreed to in writing and signed by all parties.

Seller: _____**Victoria Hunter Hitz**_____     ___*Victoria Hunter Hitz*___     ___9/4/2020___
                         Print Name                                          72C45090DQ4541B                Signature                                Date

Contact Information: _____     _____     _____
                                             Home                                        Work                                         Cell

                                     _____
                                             e-mail

Mailing Address: _____

Seller: _____     _____     _____
                         Print Name                                          Signature                                Date

Contact Information: _____     _____     _____
                                             Home                                        Work                                         Cell

                                     _____
                                             e-mail

Mailing Address: _____

Broker:  Preferred Carolinas Realty, Inc.        Firm License Number C9751        Phone: _____

By: _____*Cindy Rosenberg*_____        ___79998___     ___9/4/2020___
                     Individual Agent Signature                              Individual License #                Date
                     **Cindy Rosenberg**
Office: **110 Oakwood Drive, Suite 110 Winston-Salem, NC 27103**
Office Phone: **(336)650-8330**                                    Fax: _____
e-mail: **cindy.rosenberg@bhhscarolinas.com**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com                          2833 Wesleyan



**BERKSHIRE HATHAWAY**
HomeServices

Carolinas Realty
York Simpson Underwood Realty
Yost & Little Realty

*We make great neighbors.*

## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This Exclusive Right To Sell Listing Agreement ("Agreement") is entered into between **John Patrick Martin, Lisa Marie F. Martin** as Seller(s) ("Seller") and Preferred Carolinas Realty, Inc. dba Berkshire Hathaway HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, and Berkshire Hathaway Yost & Little Realty as Listing Broker ("Broker") for the property described below ("Property") and known as or legally described as:

Street Address: **444 Anita Drive**
City: **Winston-Salem**                                Zip code: **27103**
County: **Forsyth**                                                                , North Carolina.
Legal Description: **PIN:  6815-43-9594.00;  Tax Block:3802, Tax Lot: 000F;  Deed Book: 2750, Deed Page:  3093**

1.      **TERM OF AGREEMENT:** In consideration of Broker's services to procure a buyer for the Property, Broker is hereby granted the exclusive right to sell the Property for a period beginning on _____**January 4**_____, **2017**_____ and expiring at 11:59 P.M. on _____**July 4**_____, **2017** unless terminated sooner by Broker at its option.

2.      **LISTING PRICE** AND TERMS: Seller agrees to list the Property, including all fixtures described in paragraph 3, for sale at a price of $____*239,000*____ ("Listing Price") on the following terms:

**X** Cash           **X** FHA           **X** VA           ___ USDA           **X** Conventional           ___ Loan Assumption
___ Seller Financing                    Other: _____ .

Seller agrees to sell the Property for the Listing Price and terms set forth above, or at any other price and on any other terms acceptable to Seller.

3.      **FIXTURES AND EXCLUSIONS.**
(a) Items Leased or Not Owned: Any item which is leased or not owned by Seller, such as fuel tanks, satellite dishes and receivers, appliances, and alarm and security systems must be identified here and shall not convey:
**N/A**

(b) Specified Items: Unless identified in subparagraph (d) below the following items, if any, are deemed fixtures and are included in the Purchase Price free of liens: range/stove/oven, any built-in appliances, light fixtures, ceiling fans, attached floor coverings, blinds, shades, drapery rods and curtain rods, brackets and all related hardware, window and door screens, storm windows, combination doors, awnings, antennas, satellite dishes and receivers, mounting brackets for televisions and for speakers and related hardware, burglar/fire/smoke/carbon monoxide alarms and security systems, pool, hot tub, spa and all related equipment, solar energy systems, attached fireplace screens, gas logs, fireplace inserts, electric garage door openers with controls, outdoor plants and trees (other than in movable containers), basketball goals, storage sheds, mailboxes, all bathroom wall mirrors and all attached wall and/or door mirrors, fuel tank(s) whether attached or buried and including any contents that have not been used, removed or resold to the fuel provider as of Settlement *, landscape and/or foundation lighting, invisible fencing including all related equipment, lawn irrigation systems and all related equipment, and water softener/conditioner and filter equipment.
(c) Other Fixtures/Unspecified items: Unless identified in subparagraph (d) below, any other item legally considered a fixture is included in the Purchase Price free of all liens.
(d) Other Items That Do Not Convey: The following items shall not convey (identify those items to be excluded under subparagraphs (b) and (c):
**N/A**

Seller shall repair any damage caused by removal of any items excepted above.

* NOTE: Seller's use, removal or resale of fuel in any fuel tank is subject to Seller's obligation to provide working, existing utilities through the earlier of  Settlement or possession by buyer.

4.      **PERSONAL PROPERTY.** The following personal property shall be transferred to Buyer free of liens at no value at the closing on the sale of the Property:
~~Refrigerator~~

RE/FORM/Listing: 7/1/2016                           Page 1 of 8                           Copyright © 2016 Preferred Carolinas Realty, Inc.
                                                                                              All Rights Reserved

BHHS Carolinas Realty - Winston-Salem, 110 Oakwood Drive Winston-Salem, NC 27103                 Phone: 336-768-3300       Fax:                    Martin
Cindy Rosenberg                       Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

5.  BROKER'S COMPENSATION: Seller agrees to pay Broker compensation in the amount of $ __200.00__ plus __6.000__ % of the gross contract sales price of the Property, which compensation shall include any compensation paid by Broker to any cooperating real estate brokers. Note that Broker does not offer any compensation to non-cooperating real estate brokers who are not members of the Multiple Listing Service ("MLS"). Seller authorizes the payment of the compensation owed to Broker pursuant to this Agreement to be paid directly to Broker from Seller's proceeds from the closing on the sale of the Property.

The compensation owed to Broker shall be deemed earned upon Broker, a cooperating real estate broker, Seller, or anyone else procuring or producing a ready, willing and able buyer(s) at the Listing Price and terms agreed to herein by Seller, or at any other price or terms acceptable to Seller, during the term of this Agreement. If any agreement for the sale or transfer of the Property does not have a selling price, the percentage component of the compensation owed to Broker shall be calculated based on the fair market value of the Property as of the effective date of such agreement. The compensation earned as set forth above shall be due and payable immediately upon the earlier of:

    (a)   The closing on the sale of the Property;
    (b)   Seller's refusal to sign a contract or agreement for the sale of Property at the Listing Price and terms set forth herein, or on any other terms acceptable to Seller;
    (c)   Seller's breach of any contract or agreement for the sale or transfer of the Property;
    (d)   Seller's agreement with any buyer(s) to unreasonably modify or cancel any contract or agreement for the sale or transfer of the Property;
    (e)   Seller's breach of this Agreement.

Provided, however, that in the event the Property is not sold during the term of this Agreement, if within 180 days after expiration of this Agreement (the "Protection Period") Seller sells or enters into any agreement to sell the Property, directly or indirectly, including but not limited to any form of option, exchange, lease/purchase, conveyance or transfer upon any terms whatsoever, to any person or entity with whom Seller, Broker, or any cooperating real estate broker communicated during the term of this Agreement, and whose name(s) Broker has submitted to Seller in writing within 15 days of the expiration of this Agreement, the compensation owed to Broker pursuant to this Agreement shall be immediately due and payable to Broker. However, Seller shall not be obligated to pay the compensation owed to Broker pursuant to this Agreement if a valid listing agreement is entered into with another licensed real estate broker after the expiration of this Agreement and the Property is sold, exchanged, leased, conveyed or transferred during the Protection Period.

Seller acknowledges and agrees that Broker may be offered compensation from other persons or entities in connection with the sale of the Property, and Seller agrees to permit Broker to receive any such additional compensation. Broker will timely disclose any such additional compensation to Seller.

6.  BROKER'S DUTIES: Broker accepts the exclusive listing granted by this Agreement and shall use its best efforts and due diligence to solicit and procure a ready, willing and able buyer to purchase the Property at the Listing Price and terms set forth in this Agreement. Broker further agrees to:

    (a)   Perform the terms of this Agreement, exercise reasonable care and skill, and promote Seller's interests;
    (b)   Assist Seller in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to the offers and the counteroffers;
    (c)   Accept delivery of and present to Seller in a timely manner all offers and counteroffers to sell the Property;
    (d)   Respond to Seller's questions relating to the offers, counteroffers, notices, and contingencies.
    (e)   Account in a timely manner for all money and property received on behalf of Seller;
    (f)   Not disclose any confidential information about Seller, unless disclosure is authorized pursuant to this Agreement or is required by statute, rule, regulation or North Carolina law, or the failure to disclose such information would constitute a material misrepresentation.

**BROKER SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT.**

7.  SELLER'S DUTIES: Seller agrees to cooperate with Broker in marketing the Property for sale, including making the Property available for showings at reasonable times on reasonable notice. Seller further agrees to complete all required disclosure forms, including but not limited to the Residential Property and Owner's Association Disclosure Statement (unless exempt), the Mineral and Oil and Gas Rights Mandatory Disclosure Statement (unless exempt), and the Lead-Based Paint or Lead-Based Paint Hazard Addendum, if applicable to the Property.

    (a)   Seller represents that Seller holds title to the Property in fee simple, and that Seller does not know or have reason to know of circumstances or encumbrances that would prohibit Seller from conveying fee simple marketable title to the Property to a ready, willing and able buyer except as follows:

**N/A** _____

_____

    (b)   If required by N.C.G.S. §44A-11.1, Seller shall designate a Lien Agent, and provide Broker a copy of the appointment of Lien Agent as soon as reasonably possible.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Martin

8.     **SELLER REPRESENTATIONS:** Seller acknowledges and agrees that Broker is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which Broker knows or reasonably should know. Seller hereby makes the following representations concerning the Property:

(a)     **Flood Hazard Disclosure/Insurance.** To the best of Seller's knowledge, the Property ☐ is ☒ is not located partly or entirely within a designated Special Flood Hazard Area. The Seller ☐ does ☒ does not currently maintain flood hazard insurance on the Property.

(b)     **Synthetic Stucco.** To the best of Seller's knowledge, the Property ☒ has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system," commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows:
_____

(c)     **Owners' Association.**

(1) Complete ONLY if the Residential Property and Owner's Association Disclosure Statement is required: The name, address and telephone number of the president of the owner's association or the association manager is:
_____
_____

Owner's association website address, if any:  _____

(2) Complete ONLY if New Construction or where the Residential Property and Owner's Disclosure Statement is NOT required: To the best of Seller's knowledge there ☐ is ☒ is not an owners' association which imposes various mandatory covenants, conditions and restrictions upon the Property. If there is an owners' association, Seller agrees to promptly complete an Owners' Association Disclosure and Addendum For Properties Exempt from Residential Property Disclosure Statement at Seller's expense and to attach it as an addendum to any contract for the sale of the Property.

(d)     **Ownership.** Seller represents that Seller:
☒  has owned the Property for at least one year;
☐  has owned the Property for less than one year.

(e)     **Receipt of Sample Forms.**
☒  Seller acknowledges receipt of a sample copy of an Offer to Purchase and Contract (Form 2-T) or Offer to Purchase and Contract—New Construction (Form 800-T), as may be appropriate for review purposes.
☐  Seller acknowledges receipt of a sample copy of a Professional Services Disclosure and Election Form (Form #760) for review purposes.

(f)     **Current Liens.** Seller represents to the best of Seller's knowledge:
(1)     The Property ☒ is ☐ is not encumbered by a deed of trust or mortgage. *Complete any of the following where applicable:*
(i)     There is a first deed of trust or mortgage on the Property securing a loan held by:
Lender Name:  _____ *TD Bank* _____
Approximate balance: $ _____ *110,000* _____
Lender Phone #: _____
Lender Address: _____
(ii)     There is a second deed of trust or mortgage on the Property securing a loan held by:
Lender Name:  _____ *Allegacy* _____
Approximate balance: $ _____ *63,000* _____
Lender Phone #: _____
Lender Address: _____
(iii)     There is a deed of trust or mortgage on the Property securing an equity line of credit held by:
Lender Name: _____
Approximate balance: $ _____
Lender Phone #: _____
Lender Address: _____
(2)     Seller ☒ is current on all payments for the loans identified in numbered items (i), (ii) and (iii) above except as specified in (7) below.
(3)     Seller ☒ is not in default on any loan identified in numbered items (i), (ii) and (iii) above and has not received any notice(s) from the holder of any loan identified in numbered items (i), (ii) and (iii) above or from any other lien holder of any kind, regarding a default under the loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure except as specified in (7) below.
(4)     There ☒ are not any liens secured against the Property for Federal, State or local income taxes, unpaid real property taxes, unpaid condominium or homeowners' association fees, mechanics', laborers' or materialmens' liens, or other liens affecting the Property, and Seller has no knowledge of any matter that might result in a lien affecting the Property except as specified in (7) below.
(5)     There ☒ are not any judgments against Seller affecting the Property, and Seller has no knowledge of any matter that might result in a judgment that may potentially affect the Property except as specified in (7) below.

Copyright © 2016 Preferred Carolinas Realty, Inc.
All Rights Reserved

(6)    There ☒ are not any Uniform Commercial Code (UCC) fixture filings affecting the Property, and Seller has no knowledge of any matter that might result in a UCC fixture filing affecting the Property except as specified in (7) below.

(7)    Specify any information, including approximate balances, required by Seller representations (2) through (6) above (**NOTE:** Outstanding liens may affect Seller's proceeds.)

_____
_____

(g)   **Bankruptcy.** Seller currently:
    (1)    ☐ is ☒ is not under bankruptcy protection under United States law.
    (2)    ☐ is ☒ is not contemplating seeking bankruptcy protection during the term of this Agreement.

(h)   **Access.** Seller represents that the Property ☒ does ☐ does not have legal access to a public right of way. If access is by private road/easement/other, Seller further represents that there ☐ is ☒ is not an agreement regarding the maintenance of such private road/easement/other means of access. If applicable, Seller agrees to promptly provide Broker information pertaining to any such agreement.

(i)   **Lease(s).** To the best of Seller's knowledge, the Property ☐ is ☒ is not subject to any lease(s). If applicable:
    (i)    Seller agrees to promptly provide Broker a copy of any such lease(s) or a written statement of the terms of any oral lease(s);
    (ii)    If the Property is managed by someone other than Seller, the manager's name and contact information is as follows:
    _____ .
    Seller authorizes any such manager to release and disclose to Broker any relevant information about any lease(s) and to cooperate with Broker in the sale of the Property.

(j)   **FHA Appraisal.** To the best of Seller's knowledge, a FHA appraisal ☐ has ☒ has not been performed on the Property within four months prior to the Effective Date. If applicable, Seller agrees to promptly provide Firm a copy of any such appraisal if available. NOTE: Any such appraisal may or may not be binding on a buyer who intends to obtain FHA financing.

(k)   **Special Assessments.** To the best of Seller's knowledge, there are no proposed or confirmed special assessments (as defined in the sample contract form provided to Seller) regarding the Property except as follows (Insert "none" or the identification of such assessments, if any):
    None _____ .

(l)   ==Fuel Tank/Fuel:== To the best of Seller's knowledge, there ☐ is ☒ is not a fuel tank(s) located on the Property. *If "yes" complete the following to the best of Seller's knowledge:*

Ownership of tank 1: ☐ owned ☐ leased. If leased, the name and contact information of tank lessor/fuel vendor is: _____
_____ .
Location of tank 1: ☐ above ground ☐ below ground
Type of fuel:     ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____

Ownership of tank 2: ☐ owned ☐ leased. If leased, the name and contact information of tank lessor/fuel vendor is: _____
_____ .
Location of tank 2: ☐ above ground ☐ below ground
Type of fuel:     ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____

If, during the term of this Agreement, Seller becomes aware that any of the representations set forth in this paragraph 8 are incorrect or no longer accurate, Seller shall promptly notify Broker and cooperate with Broker in taking appropriate corrective action.

9.    HOME INSPECTION: Seller is advised to obtain a home inspection for the purpose of evaluating the condition of the Property in order to enhance its marketability and to help reduce concerns of prospective buyers. Seller ☐ agrees ☒ does not agree to obtain and pay for a home inspection by a licensed NC Home Inspector within _____ days after the execution of this Agreement.

    ☐    Seller acknowledges receipt of a copy of *Questions and Answers on: Home Inspections* by the NC Real Estate Commission.

10.   ==MARKETING ACTIVITIES==: Seller hereby authorizes Broker to market the Property as described below on: ☐ the date this Agreement has been signed by Seller and Broker OR ☐ (insert date) _1 – 11 – 2017_ _____ .

(a)   Cooperate and share the commission payable under this Agreement with other brokers including brokers who have been employed as buyer's agents, subagents, dual agents, or designated agents, subject, where applicable, to authorization as required by law;

(b)   Submit pertinent information, including virtual tours and images when applicable, concerning the Property to any Multiple Listing Service ("MLS") organizations to which Broker subscribes;

(c)   Provide to any MLS to which Broker subscribes, for dissemination to others, timely notice of status changes affecting the Property, sales information, including Seller's name, price, and other information concerning the Property for use of the members of such services, to compile reliable statistics, and to establish market value for other properties, and to report sales information about the property, including the price at which the property sold, or is contracted to be sold, to the MLS for dissemination to MLS participants, subscribers, and other licensees or users of the MLS database compilation;

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com         Martin

(d)  Disseminate data about the Property and other information, including Seller's name, price, and other information concerning the Property supplied by, or on behalf of Seller, including creative works depicting the Property, such as virtual tours, images, and any textual descriptions of the Property (collectively referred to as "Content"), to MLS Participants, Subscribers and other licensees or users of the MLS database compilation, or any other MLS in which Broker participates, and to further disseminate, or permit the MLS or other MLS participants to disseminate such Content to potential purchasers through websites on the Internet. Further, Broker is authorized to otherwise advertise the Property in any manner deemed appropriate by Broker, including but not limited to advertising on the Internet, virtual tours, web-sites, trade journals and any other medium, and communications via e-mail and facsimile;

(e)  Place a "For Sale," "Under Contract," "Sale Pending," and other similar signs on the Property and to remove all other signs during the term of this Agreement;

(f)  Enter the Property at reasonable times and with reasonable notice for the purpose of evaluation, preview, or showing the Property to prospective purchasers or other brokers;

(g)  Possess and maintain a key to the Property, and make use of a "Lock Box" during the term of this Agreement; and

(h)  Conduct open houses of the Property at such times as Seller and Broker may agree.

Seller acknowledges and understands that while the marketing services identified above will facilitate the showing and sale of the Property, there are inherent risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of Broker, including but not limited to:

(1)  unauthorized use of a lock/key box,

(2)  control of visitors during or after a showing or an open house,

(3)  inappropriate use of information about the Property placed on the Internet or furnished to any MLS in which Broker participates.

(4)  information about the Property placed on the Internet by or through any listing service in which Broker participates which is inaccurate or dated.

Seller agrees to indemnify and hold harmless Broker from any damages, costs, attorney's fees or other expenses as a result of any personal injury or property loss or damage to Seller or any other person or entity arising out of any such marketing activities which are not the result of the sole negligence of Broker.

11.  COPYRIGHT ASSIGNMENT:  Broker is specifically authorized to use, both before and after the sale or, in the event there is not a sale, after this listing has expired, for any purposes whatsoever, any and all information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property (including any information concerning the price and terms of the sale of the Property, the description of the Property, length of time the Property is on the market, and any other information relating to the Property) ("Seller Content"). Seller hereby assigns to Broker any and all intellectual property rights Seller may have in the Seller Content and to any photographs or video or other reproductions of the property used in connection with the marketing of the property.  For purposes of clarity, Broker is the owner of any and all rights in the Seller Content and may further assign, license, sublicense, or otherwise dispose of these rights to any party whatsoever for any purposes whatsoever.  If any moral rights are not transferred by the preceding sentences, Seller hereby waives all such rights.

Seller's execution of this Agreement further signifies Seller's representation and warranty that Seller is the sole author and sole owner of all rights in and to the Seller Content; that Seller's contribution to the Seller Content is original and not in the public domain; that Seller's contribution to the Seller Content contains no material from other copyrighted or unpublished work that has been used without the written consent of the copyright owner and/or of the owner of any other rights to or in such other works; that it does not violate or infringe on any personal or property rights of others, whether common law or statutory; that it contains nothing libelous or contrary to law; and that Seller has full power to enter this Agreement. Seller agrees to indemnify and hold harmless Broker for any claims of copyright infringement or other claims arising from any publication or use of the Seller Content.

Broker grants to Seller a non-exclusive, perpetual license for the use of the Seller Content, including the right to display, reproduce, distribute or make derivative works from the Seller Content. For purposes of clarity, the license granted to Seller for the use of the Seller Content applies only to information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property, and not to any information, photographs or video created or provided by or on behalf of Broker.  Seller agrees to indemnify and hold harmless Broker for any and all claims arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of this license. Seller understands and agrees that Broker assumes no responsibility for Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of the license granted by Broker, or for any infringement arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content.

12.  DUAL AGENCY: Seller understands that the potential for dual agency will arise if a buyer who has an agency relationship with Broker becomes interested in viewing the Property.  Broker may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Broker acts.

(a)  Disclosure of Information.  In the event Broker serves as a dual agent, Seller agrees that without permission from the party about whom the information pertains, Broker shall not disclose to the other party the following information:

(1)  that a party may agree to a price, terms, or any conditions of sale other than those offered;

(2)  the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and

(3)  any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute, rule, regulation or North Carolina law.

Copyright © 2016 Preferred Carolinas Realty, Inc.
All Rights Reserved

(b)    **Broker's Role as Dual Agent.** If Broker serves as agent for both Seller and a buyer in a transaction involving the Property, Broker shall make every reasonable effort to represent Seller and buyer in a balanced and fair manner. Broker shall also make every reasonable effort to encourage and effect communication and negotiation between Seller and buyer. Seller understands and acknowledges that:

    (1)    Prior to the time dual agency occurs, Broker will act as Seller's exclusive agent;

    (2)    In its separate representation of Seller and buyer, Broker may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Broker;

    (3)    Broker is required by law to disclose to Seller and buyer any known or reasonably ascertainable material facts.

Seller agrees Broker shall not be liable to Seller for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

(c)    **Seller's Role.** Should Broker become a dual agent, Seller understands and acknowledges that:

    (1)    Seller has the responsibility of making Seller's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Broker;

    (2)    Seller is fully aware of and understands the implications and consequences of Broker's dual agency role as expressed herein to provide balanced and fair representation of Seller and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

    (3)    Seller has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;

    (4)    Seller may seek independent legal counsel to assist Seller with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Broker become a dual agent, Seller waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Broker's role as a dual agent. Seller shall have a duty to protect Seller's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Seller wants included in said agreement.

(d)    Authorization *(initial only ONE).*

JM. LMM    Seller authorizes Broker to act as a dual agent, representing both the Seller and the buyer, subject to the terms and conditions set forth in Paragraph 12.

_____    Seller desires exclusive representation at all times during this agreement and does NOT authorize Broker to act in the capacity of dual agent. *If Seller does not authorize Broker to act as a dual agent, the remainder of this paragraph shall not apply.*

(e)    Designated Agent Option *(Initial only if applicable).*

JP.M. LMM    Seller hereby authorizes Broker to designate an individual agent(s) to represent the Seller, to the exclusion of any other individual agents associated with Broker. The individual designated agent(s) shall represent only the interests of the Seller to the extent permitted by law.

(**NOTE:** When dual agency arises, an individual agent shall not practice designated agency and shall remain a dual agent if the individual agent has actually received confidential information concerning a buyer client of Broker in connection with the transaction or if designated agency is otherwise prohibited by law.)

(f)    **Dual Agency Compensation.** If Broker acts as a dual agent (including designated agency), the total fee Broker expects to receive for its services in representing Seller and the buyer shall be 6% (+/- up to 4%) and $300 (+/- up to $900). THIS WILL IN NO WAY AFFECT OR MODIFY THE AMOUNT OF THE FEE SET FORTH IN PARAGRAPH 5 ABOVE THAT BROKER EXPECTS TO RECEIVE FOR ITS SERVICES IN REPRESENTING SELLER UNDER THIS AGREEMENT. In the event Broker's total fee is different from that described in this subparagraph (f), Broker shall timely disclose the fee to Seller and confirm it in writing before Seller accepts an offer to sell the Property.

13.    **LEGAL AND PROFESSIONAL ADVICE:** Broker recommends that Seller seek legal, tax, and other professional advice relative to any real estate transaction. Broker makes no representation or warranty respecting the advisability of any transaction. Broker is not an expert in matters relating to law (including matters of title to the Property), tax, financing, surveying, structural or mechanical condition, hazardous material, engineering, or other specialized topics. Seller is encouraged to seek expert assistance in such areas. Broker will cooperate with experts engaged by Seller or at the request of Seller, but Broker will have no liability to Seller pertaining to such matters.

Copyright © 2016 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Martin

14.     ARBITRATION AGREEMENT: Any Dispute, claim or controversy between Seller and Broker shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This agreement to arbitrate and the arbitration proceeding shall be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is inapplicable, unenforceable, or invalid, the North Carolina Revised Uniform Arbitration Act shall govern this Arbitration Agreement and the arbitration proceeding.

As used herein the term "Dispute" shall include, without limitation, any claim, controversy, complaint or disagreement regarding any representations, acts or omissions by any person, party or entity that in any way arises out of or is related to the sale, purchase, financing, condition of any property or any other aspect of Seller's real estate transaction, or that in any way arises out of any of the real estate brokerage services or other settlement services provided by Broker including, without limitation, allegations of concealment, misrepresentation, negligence, breach of fiduciary duty, fraud, constructive fraud, or other wrongful actions or omissions of any type. A Dispute includes any claim, controversy, complaint or disagreement of any kind, including those based on broken promises or contracts, closing charges, or tort (injury caused by negligent or intentional conduct). A Dispute includes any statutory, common law, or equitable claim. A Dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement. No Dispute may be joined in arbitration with a Dispute of any other person or arbitrated on a class action basis.

The American Arbitration Association (AAA) shall administer the arbitration, including the selection of arbitrators, pursuant to its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable. The arbitration shall be held in the county where the real property at issue is located. To find out how to initiate arbitration, Seller can contact AAA at:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Toll free number 877-495-4185
Fax number 877-304-8457

Website: www.adr.org
Email: casefiling@adr.org

All parties to the arbitration (AAA, the arbitrator, Broker, and Seller) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA. The arbitration proceeding shall be conducted at a location determined by AAA in accordance with this Arbitration Agreement. All statutes of limitation and statutes of repose applicable to any Dispute shall apply to any arbitration proceeding between Broker and Seller. If a Dispute is properly filed in Small Claims Court and the Small Claims Court has jurisdiction to resolve the Dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the Dispute from Small Claims Court shall pay AAA's administrative fee and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforceability of the other terms of this Arbitration Agreement.
WHEN YOU SIGN THIS AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER BROKER NOR SELLER SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

Seller's initials: _OP M_   _L MM_

15.     Seller acknowledges receipt of the brochure describing the HomeServices Warranty Program offered through Home Security of America, Inc. In the above mentioned brochure, Seller accepted or declined coverage. Specific details of the coverage provided by Home Security of America, Inc., including coverage limits, exclusions, deductibles and other information may be obtained from Broker upon request.

Seller's initials: _OP M_   _L MM_

16.     ADDITIONAL TERMS AND CONDITIONS: The following additional terms and conditions shall also be a part of this Agreement:

_____
_____
_____.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    Martin

17.     ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between the parties; any prior agreements pertaining thereto, whether oral or written, have been merged and integrated into this Agreement. There shall be no modification of any of the terms of this Agreement unless such modification has been agreed to in writing and signed by all parties.

Seller: _____John Patrick Martin_____   _____Signature_____   __01/04/2017__
                      Print Name                                         Signature                          Date

Contact Information: _____   _____   __(336)287-9035__
                            Home                              Work                          Cell

                    __johnmartin@poochpad.com__
                              e-mail

Mailing Address: _____

Seller: _____Lisa-Marie Martin_____   _____Signature_____   __01/04/2017__
                      Print Name                                         Signature                          Date

Contact Information: _____   _____   _____
                            Home                              Work                          Cell

                    __microfinelmm@aol.com__
                              e-mail

Mailing Address: _____

Broker:  Preferred Carolinas Realty, Inc.                    Phone:  __(336)768-3300__

By: _____   __79998__   __01/04/2017__
              Individual Agent Signature                  Individual License #                Date

Office: __110 Oakwood Drive, Suite 110 Winston-Salem, NC 27103__

Office Phone: __(336)650-6880__                    Fax: __(336)714-6528__

e-mail: __cindy.rosenberg@bhhscarolinas.com__

Copyright © 2016 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    Martin



# BERKSHIRE HATHAWAY
HomeServices

Carolinas Realty
York Simpson Underwood Realty
Yost & Little Realty

## We make great neighbors.

# EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This Exclusive Right To Sell Listing Agreement ("Agreement") is entered into between **Donald J. Wilson** as Seller(s) ("Seller") and Preferred Carolinas Realty, Inc. dba Berkshire Hathaway HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, and Berkshire Hathaway Yost & Little Realty as Listing Broker ("Broker") for the property described below ("Property") and known as or legally described as:

Street Address: **328 Lamplighter Circle**
City: **Winston Salem** _____ Zip code: **27104**
County: **Forsyth** _____ , North Carolina.
Legal Description: **5895-94-0255 LO328 BL4052**

1. TERM OF AGREEMENT: In consideration of Broker's services to procure a buyer for the Property, Broker is hereby granted the exclusive right to sell the Property for a period beginning on _____ **August 17** , **2017** and expiring at 11:59 P.M. on **February 17** , **2018** unless terminated sooner by Broker at its option.

2. LISTING PRICE AND TERMS: Seller agrees to list the Property, including all fixtures described in paragraph 3, for sale at a price of $ ~~87,900.00~~ *95,000* ("Listing Price") on the following terms:

**X** Cash _____ FHA _____ VA _____ USDA **X** Conventional _____ Loan Assumption
_____ Seller Financing _____ Other: _____ .

Seller agrees to sell the Property for the Listing Price and terms set forth above, or at any other price and on any other terms acceptable to Seller.

3. FIXTURES AND EXCLUSIONS.
   (a) Specified Items: Unless identified in subparagraph (d) below, the following items, including all related equipment and remote control devices, if any, are deemed fixtures and shall convey, included in the Purchase Price free of liens:

- Alarm and security systems (attached) for security, fire, smoke, carbon monoxide or other toxins with all related access codes, sensors, cameras, dedicated monitors, hard drives, video recorders, power supplies and cables; doorbells/chimes
- All stoves/ranges/ovens; built-in appliances; attached microwave oven; vent hood
- Fuel tank(s) whether attached or buried and including any contents that have not been used, removed or resold to the fuel provider as of Settlement. **NOTE:** Seller's use, removal or resale of fuel in any fuel tank is subject to seller's obligation under Paragraph 8(c) to provide working, existing utilities through the earlier of Closing or possession by Buyer.
- Garage door openers with all controls
- Generators that are permanently wired
- Invisible fencing with power supply, controls and receivers
- Landscape and outdoor trees and plants (except in moveable containers); raised garden; landscape and foundation lighting; outdoor sound systems; permanent irrigation systems and controls; rain barrels; landscape water features; address markers
- Mailboxes; mounted package and newspaper receptacles

- Antennas; satellite dishes and receivers
- Basketball goals and play equipment (permanently attached or in-ground)
- Ceiling and wall-attached fans; light fixtures (including existing bulbs)
- Fireplace insert; gas logs or starters; attached fireplace screens; wood or coal stoves
- Floor coverings (attached)
- Mirrors attached to walls, ceilings, cabinets or doors; all bathroom wall mirrors
- Storage shed; utility building
- Swimming pool (excluding inflatable); spa; hot tub
- Solar electric and solar water heating systems
- Sump-pumps, radon fans and crawlspace ventilators; de-humidifiers that are permanently wired
- Surface-mounting brackets for television and speakers; recess-mounted speakers; mounted intercom system
- Water supply equipment, including filters, conditioning and softener systems; re-circulating pumps; well pumps and tanks
- Window/Door blinds and shades, curtain and draper rods and brackets, door and window screens and combination doors, awnings and storm windows.

(b) FIXTURES AND EXCLUSIONS.
Items Leased or Not Owned: Any item which is leased or not owned by Seller, such as fuel tanks, satellite dishes and receivers, appliances, and alarm and security systems must be identified here and shall not convey:

N/A

(c) Other Fixtures/Unspecified items: Unless identified in subparagraph (d) below, any other item legally considered a fixture is included in the Purchase Price of each of this liens.
(d) Other Items That Do Not Convey: The following items shall not convey *(identify those items to be excluded under subparagraphs (a) and (c)*:

N/A

Seller shall repair any damage caused by removal of any items excepted above.

4.     PERSONAL PROPERTY.  The following personal property shall be transferred to Buyer free of liens at no value at the closing on the sale of the Property:
N/A

5.     BROKER'S COMPENSATION: Seller agrees to pay Broker compensation in the amount of $ **N/A** _____ plus
   __**6.000**__     % of the gross contract sales price of the Property, which compensation shall include any compensation paid by Broker to any cooperating real estate brokers. Note that Broker does not offer any compensation to non-cooperating real estate brokers who are not members of the Multiple Listing Service ("MLS").  Seller authorizes the payment of the compensation owed to Broker pursuant to this Agreement to be paid directly to Broker from Seller's proceeds from the closing on the sale of the Property.

The compensation owed to Broker shall be deemed earned upon Broker, a cooperating real estate broker, Seller, or anyone else procuring or producing a ready, willing and able buyer(s) at the Listing Price and terms agreed to herein by Seller, or at any other price or terms acceptable to Seller, during the term of this Agreement.  If any agreement for the sale or transfer of the Property does not have a selling price, the percentage component of the compensation owed to Broker shall be calculated based on the fair market value of the Property as of the effective date of such agreement. The compensation earned as set forth above shall be due and payable immediately upon the earlier of:

   (a)     The closing on the sale of the Property;
   (b)     Seller's refusal to sign a contract or agreement for the sale of Property at the Listing Price and terms set forth herein, or on any other terms acceptable to Seller;
   (c)     Seller's breach of any contract or agreement for the sale or transfer of the Property;
   (d)     Seller's agreement with any buyer(s) to unreasonably modify or cancel any contract or agreement for the sale or transfer of the Property;
   (e)     Seller's breach of this Agreement.

Provided, however, that in the event the Property is not sold during the term of this Agreement, if within 180 days after expiration of this Agreement (the "Protection Period") Seller sells or enters into any agreement to sell the Property, directly or indirectly, including but not limited to any form of option, exchange, lease/purchase, conveyance or transfer upon any terms whatsoever, to any person or entity with whom Seller, Broker, or any cooperating real estate broker communicated during the term of this Agreement, and whose name(s) Broker has submitted to Seller in writing within 15 days of the expiration of this Agreement, the compensation owed to Broker pursuant to this Agreement shall be immediately due and payable to Broker. However, Seller shall not be obligated to pay the compensation owed to Broker pursuant to this Agreement if a valid listing agreement is entered into with another licensed real estate broker after the expiration of this Agreement and the Property is sold, exchanged, leased, conveyed or transferred during the Protection Period.

Seller acknowledges and agrees that Broker may be offered compensation from other persons or entities in connection with the sale of the Property, and Seller agrees to permit Broker to receive any such additional compensation.  Broker will timely disclose any such additional compensation to Seller.

6.     BROKER'S DUTIES:  Broker accepts the exclusive listing granted by this Agreement and shall use its best efforts and due diligence to solicit and procure a ready, willing and able buyer to purchase the Property at the Listing Price and terms set forth in this Agreement. Broker further agrees to:

   (a)     Perform the terms of this Agreement, exercise reasonable care and skill, and promote Seller's interests;
   (b)     Assist Seller in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to the offers and the counteroffers;
   (c)     Accept delivery of and present to Seller in a timely manner all offers and counteroffers to sell the Property;
   (d)     Respond to Seller's questions relating to the offers, counteroffers, notices, and contingencies.
   (e)     Account in a timely manner for all money and property received on behalf of Seller;
   (f)     Not disclose any confidential information about Seller, unless disclosure is authorized pursuant to this Agreement or is required by statute, rule, regulation or North Carolina law, or the failure to disclose such information would constitute a material misrepresentation.

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                 Donald Wilson

DocuSign Envelope ID: E03F0993-9482-4646-97C-075151A5B8A8

**BROKER SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT.**

7.     SELLER'S DUTIES: Seller agrees to cooperate with Broker in marketing the Property for sale, including making the Property available for showings at reasonable times on reasonable notice. Seller further agrees to complete all required disclosure forms, including but not limited to the Residential Property and Owner's Association Disclosure Statement (unless exempt), the Mineral and Oil and Gas Rights Mandatory Disclosure Statement (unless exempt), and the Lead-Based Paint or Lead-Based Paint Hazard Addendum, if applicable to the Property.

    (a)     Seller represents that Seller holds title to the Property in fee simple, and that Seller does not know or have reason to know of circumstances or encumbrances that would prohibit Seller from conveying fee simple marketable title to the Property to a ready, willing and able buyer except as follows:

N/A

    (b)     If required by N.C.G.S. §44A-11.1, Seller shall designate a Lien Agent, and provide Broker a copy of the appointment of Lien Agent as soon as reasonably possible.

8.     SELLER REPRESENTATIONS: Seller acknowledges and agrees that Broker is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which Broker knows or reasonably should know. Seller hereby makes the following representations concerning the Property:

    (a)     **Flood Hazard Disclosure/Insurance.** To the best of Seller's knowledge, the Property ☐ is ☒ is not located partly or entirely within a designated Special Flood Hazard Area. The Seller ☐ does ☒ does not currently maintain flood hazard insurance on the Property.

    (b)     **Synthetic Stucco.** To the best of Seller's knowledge, the Property ☒ has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system," commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows:

    (c)     **Owners' Association.**

    (1) Complete ONLY if the Residential Property and Owner's Association Disclosure Statement is required: The name, address and telephone number of the president of the owner's association or the association manager is:

Messick Properties/ Zach Lancaster - Manager
111 S. Marshall Street,WS NC 27101 - 336-727-8600

Owner's association website address, if any: _____

    (2) Complete ONLY if New Construction or where the Residential Property and Owner's Disclosure Statement is NOT required: To the best of Seller's knowledge there ☐ is ☐ is not an owners' association which imposes various mandatory covenants, conditions and restrictions upon the Property. If there is an owners' association, Seller agrees to promptly complete an Owners' Association Disclosure and Addendum For Properties Exempt from Residential Property Disclosure Statement at Seller's expense and to attach it as an addendum to any contract for the sale of the Property.

    (d)     **Ownership.** Seller represents that Seller:
       ☒   has owned the Property for at least one year;
       ☐   has owned the Property for less than one year.

    (e)     **Receipt of Sample Forms.**
       ☒   Seller acknowledges receipt of a sample copy of an Offer to Purchase and Contract (Form 2-T) or Offer to Purchase and Contract—New Construction (Form 800-T), as may be appropriate for review purposes.
       ☒   Seller acknowledges receipt of a sample copy of a Professional Services Disclosure and Election Form (Form #760) for review purposes.

    (f)     **Current Liens.** Seller represents to the best of Seller's knowledge:
    (1)     The Property ☐ is ☒ is not encumbered by a deed of trust or mortgage. *Complete any of the following where applicable:*
       (i)     There is a first deed of trust or mortgage on the Property securing a loan held by:
    Lender Name: _____
    Approximate balance: $ _____
    Lender Phone #: _____
    Lender Address: _____
       (ii)     There is a second deed of trust or mortgage on the Property securing a loan held by:
    Lender Name: _____

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

DocuSign Envelope ID: E03F0093-2482-4646-827C-075151A5B8A8

Approximate balance: $ _____

Lender Phone #: _____

Lender Address: _____

    (iii)    There is a deed of trust or mortgage on the Property securing an equity line of credit held by:

Lender Name: _____

Approximate balance: $ _____

Lender Phone #: _____

Lender Address: _____

(2)    Seller ☐ is current on all payments for the loans identified in numbered items (i), (ii) and (iii) above except as specified in (7) below.

(3)    Seller ☐ is not in default on any loan identified in numbered items (i), (ii) and (iii) above and has not received any notice(s) from the holder of any loan identified in numbered items (i), (ii) and (iii) above or from any other lien holder of any kind, regarding a default under the loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure except as specified in (7) below.

(4)    There ☒ are not any liens secured against the Property for Federal, State or local income taxes, unpaid real property taxes, unpaid condominium or homeowners' association fees, mechanics', laborers' or materialmens' liens, or other liens affecting the Property, and Seller has no knowledge of any matter that might result in a lien affecting the Property except as specified in (7) below.

(5)    There ☒ are not any judgments against Seller affecting the Property, and Seller has no knowledge of any matter that might result in a judgment that may potentially affect the Property except as specified in (7) below.

(6)    There ☒ are not any Uniform Commercial Code (UCC) fixture filings affecting the Property, and Seller has no knowledge of any matter that might result in a UCC fixture filing affecting the Property except as specified in (7) below.

(7)    Specify any information, including approximate balances, required by Seller representations (2) through (6) above (**NOTE**: Outstanding liens may affect Seller's proceeds.)

_____

_____

(g)    **Bankruptcy.** Seller currently:

(1)    ☐ is ☐ is not under bankruptcy protection under United States law.

(2)    ☐ is ☒ is not contemplating seeking bankruptcy protection during the term of this Agreement.

(h)    **Access.** Seller represents that the Property ☒ does ☐ does not have legal access to a public right of way. If access is by private road/easement/other, Seller further represents that there ☐ is ☐ is not an agreement regarding the maintenance of such private road/easement/other means of access. If applicable, Seller agrees to promptly provide Broker information pertaining to any such agreement.

(i)    **Lease(s).** To the best of Seller's knowledge, the Property ☐ is ☒ is not subject to any lease(s). If applicable:

    (i)    Seller agrees to promptly provide Broker a copy of any such lease(s) or a written statement of the terms of any oral lease(s);

    (ii)    If the Property is managed by someone other than Seller, the manager's name and contact information is as follows:

**N/A**

Seller authorizes any such manager to release and disclose to Broker any relevant information about any lease(s) and to cooperate with Broker in the sale of the Property.

(j)    **FHA Appraisal.** To the best of Seller's knowledge, a FHA appraisal☐ has ☒ has not been performed on the Property within four months prior to the Effective Date. If applicable, Seller agrees to promptly provide Firm a copy of any such appraisal if available. NOTE: Any such appraisal may or may not be binding on a buyer who intends to obtain FHA financing.

(k)    **Special Assessments.** To the best of Seller's knowledge, there are no proposed or confirmed special assessments (as defined in the sample contract form provided to Seller) regarding the Property except as follows (Insert "none" or the identification of such assessments, if any):

**None**

(l)    Fuel Tank/Fuel: To the best of Seller's knowledge, there ☐ is ☒ is not a fuel tank(s) located on the Property. *If "yes" complete the following to the best of Seller's knowledge:*

Ownership of tank 1: ☐ owned ☐ leased. If leased, the name and contact information of tank lessor/fuel vendor is:_____

_____

Location of tank 1: ☐ above ground ☐ below ground

Type of fuel:    ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____

Ownership of tank 2: ☐ owned ☐ leased. If leased, the name and contact information of tank lessor/fuel vendor is:_____

_____

Location of tank 2: ☐ above ground ☐ below ground

Type of fuel:    ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com      Donald Wilson

DocuSign Envelope ID: E03F0093-2483-4646-897C-075151A5B8A8

If, during the term of this Agreement, Seller becomes aware that any of the representations set forth in this paragraph 8 are incorrect or no longer accurate, Seller shall promptly notify Broker and cooperate with Broker in taking appropriate corrective action.

9.　　HOME INSPECTION: Seller is advised to obtain a home inspection for the purpose of evaluating the condition of the Property in order to enhance its marketability and to help reduce concerns of prospective buyers. Seller ☐ agrees ☒ does not agree to obtain and pay for a home inspection by a licensed NC Home Inspector within _____ days after the execution of this Agreement.

☒　　Seller acknowledges receipt of a copy of *Questions and Answers on: Home Inspections* by the NC Real Estate Commission.

10.　　MARKETING ACTIVITIES:

　　(a)　　**Commencement of Marketing.** Broker is authorized to commence marketing the Property as described in subparagraph (b) below on the Effective Date OR if selected ☑ on (insert date only if applicable) **August 22, 2017** ("Delayed Marketing Date").

**NOTE: If a Delayed Marketing Date is selected, Seller understands and acknowledges the following:**
* **THE PROPERTY MAY NOT BE SHOWN BY ANY REAL ESTATE AGENT, INCLUDING BROKER'S AGENTS, PRIOR TO THE DELAYED MARKETING DATE.**
* **BROKER IS OBLIGATED TO PRESENT TO SELLER ANY OFFERS ON THE PROPERTY THAT MAY BE SUBMITTED TO BROKER PRIOR TO THE DELAYED MARKETING DATE.**
* **IT IS IN THE BEST INTEREST OF MOST SELLERS TO GET THE HIGHEST POSSIBLE PRICE ON THE BEST TERMS FOR THEIR PROPERTY, AND MAXIMIZING EXPOSURE OF THEIR PROPERTY ADVANCES THAT INTEREST. ACCEPTING AN OFFER ON THE PROPERTY BEFORE IT IS FULLY EXPOSED TO THE WIDEST GROUP OF POTENTIAL BUYERS MAY DENY SELLER THE BEST OPPORTUNITY TO ATTRACT OFFERS AT THE HIGHEST PRICE AND BEST TERMS.**

　　(b)　　**Marketing Authorization.** Seller authorizes Broker to market the Property as described below:

　　　　(i)　　Cooperate and share the commission payable under this Agreement with other brokers including brokers who have been employed as buyer's agents, subagents, dual agents, or designated agents, subject, where applicable, to authorization as required by law;

　　　　(ii)　　Submit pertinent information, including virtual tours and images when applicable, concerning the Property to any Multiple Listing Service ("MLS") organizations to which Broker subscribes;

　　　　(iii)　　Provide to any MLS to which Broker subscribes, for dissemination to others, timely notice of status changes affecting the Property, sales information, including Seller's name, price, and other information concerning the Property for use of the members of such services, to compile reliable statistics, and to establish market value for other properties, and to report sales information about the property, including the price at which the property sold, or is contracted to be sold, to the MLS for dissemination to MLS participants, subscribers, and other licensees or users of the MLS database compilation;

　　　　(iv)　　Disseminate data about the Property and other information, including Seller's name, price, and other information concerning the Property supplied by, or on behalf of Seller, including creative works depicting the Property, such as virtual tours, images, and any textual descriptions of the Property (collectively referred to as "Content"), to MLS Participants, Subscribers and other licensees or users of the MLS database compilation, or any other MLS in which Broker participates, and to further disseminate, or permit the MLS or other MLS participants to disseminate such Content to potential purchasers through websites on the Internet. Further, Broker is authorized to otherwise advertise the Property in any manner deemed appropriate by Broker, including but not limited to advertising on the Internet, virtual tours, web-sites, trade journals and any other medium, and communications via e-mail and facsimile;

　　　　(v)　　Place a "For Sale," "Under Contract," "Sale Pending," and other similar signs on the Property and to remove all other signs during the term of this Agreement;

　　　　(vi)　　Enter the Property at reasonable times and with reasonable notice for the purpose of evaluation, preview, or showing the Property to prospective purchasers or other brokers;

　　　　(vii)　　Possess and maintain a key to the Property, and make use of a "Lock Box" during the term of this Agreement; and

　　　　(viii)　　Conduct open houses of the Property at such times as Seller and Broker may agree.

　　(c)　　**"Coming Soon" Advertising.** ☐ (Check only if applicable). If applicable, Broker is authorized to market the Property as "Coming Soon," commencing on the Effective Date, in any media Broker may in its discretion select, provided that any "Coming Soon" advertising shall be conducted in accordance with any restrictions and requirements of any listing service in which the Property will be included, a copy of which ☐ are ☐ are not attached to this Agreement.

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com　　　　Donald Wilson

DocuSign Envelope ID: E03F0093-9488-4646-887C-975151A5B8A8

(d) **Seller Acknowledgement.** Seller acknowledges and understands that while the marketing services identified above will facilitate the showing and sale of the Property, there are inherent risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of Broker, including but not limited to:

    (1)    unauthorized use of a lock/key box,

    (2)    control of visitors during or after a showing or an open house, including the taking and use of photographs and videos of the Property,

    (3)    inappropriate use of information about the Property placed on the Internet or furnished to any MLS in which Broker participates, and

    (4)    information about the Property placed on the Internet by or through any listing service in which Broker participates which is inaccurate or dated.

Seller therefore agrees to release and discharge Broker and Broker's agents from any and all claims, demands, rights and causes of action of whatsoever kind and nature not caused by Broker's negligence arising directly or indirectly out of any such marketing services.

WARNING: IT MAY BE A CRIME UNDER FEDERAL AND STATE LAWS TO LISTEN TO OR RECORD AN ORAL COMMUNICATION THROUGH THE USE OF ANY ELECTRONIC, MECHANICAL, OR OTHER DEVICE WITHOUT THE CONSENT OF A PARTY TO THAT COMMUNICATION. If there is a video/audio/surveillance device(s) on the Property, Seller is advised: (i) that no audio surveillance device may be turned on during any showings, open houses, investigations, examinations or inspections of the Property; and (ii) that the placement of any video surveillance device should not violate a visitor's reasonable expectation of privacy.

11.    COPYRIGHT: Broker is specifically authorized to use, both before and after the sale or, in the event there is not a sale, after this listing has expired, for any purposes whatsoever, any and all information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property (including any information concerning the price and terms of the sale of the Property, the description of the Property, length of time the Property is on the market, and any other information relating to the Property) ("Seller Content"). Seller hereby assigns to Broker any and all intellectual property rights Seller may have in the Seller Content and to any photographs or video or other reproductions of the property used in connection with the marketing of the property. For purposes of clarity, Broker is the owner of any and all rights in the Seller Content and may further assign, license, sublicense, or otherwise dispose of these rights to any party whatsoever for any purposes whatsoever. If any moral rights are not transferred by the preceding sentences, Seller hereby waives all such rights.

Seller's execution of this Agreement further signifies Seller's representation and warranty that Seller is the sole author and sole owner of all rights in and to the Seller Content; that Seller's contribution to the Seller Content is original and not in the public domain; that Seller's contribution to the Seller Content contains no material from other copyrighted or unpublished work that has been used without the written consent of the copyright owner and/or of the owner of any other rights to or in such other works; that it does not violate or infringe on any personal or property rights of others, whether common law or statutory; that it contains nothing libelous or contrary to law; and that Seller has full power to enter this Agreement. Seller agrees to indemnify and hold harmless Broker for any claims of copyright infringement or other claims arising from any publication or use of the Seller Content.

Broker grants to Seller a non-exclusive, perpetual license for the use of the Seller Content, including the right to display, reproduce, distribute or make derivative works from the Seller Content. For purposes of clarity, the license granted to Seller for the use of the Seller Content applies only to information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property, and not to any information, photographs or video created or provided by or on behalf of Broker. Seller agrees to indemnify and hold harmless Broker for any and all claims arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of this license. Seller understands and agrees that Broker assumes no responsibility for Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of the license granted by Broker, or for any infringement arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content.

12.    DUAL AGENCY: Seller understands that the potential for dual agency will arise if a buyer who has an agency relationship with Broker becomes interested in viewing the Property. Broker may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Broker acts.

    (a)    Disclosure of Information. In the event Broker serves as a dual agent, Seller agrees that without permission from the party about whom the information pertains, Broker shall not disclose to the other party the following information:

        (1)    that a party may agree to a price, terms, or any conditions of sale other than those offered;

        (2)    the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and

        (3)    any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute, rule, regulation or North Carolina law.

    (b)    Broker's Role as Dual Agent. If Broker serves as agent for both Seller and a buyer in a transaction involving the Property, Broker shall make every reasonable effort to represent Seller and buyer in a balanced and fair manner. Broker shall also make every reasonable effort to encourage and effect communication and negotiation between Seller and buyer. Seller understands and acknowledges that:

        (1)    Prior to the time dual agency occurs, Broker will act as Seller's exclusive agent;

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com        Donald Wilson

DocuSign Envelope ID: E03F0093-9488-4646-897C-075151A5B8A8

    (2)    In its separate representation of Seller and buyer, Broker may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Broker;

    (3)    Broker is required by law to disclose to Seller and buyer any known or reasonably ascertainable material facts.

Seller agrees Broker shall not be liable to Seller for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

    (c)    Seller's Role. Should Broker become a dual agent, Seller understands and acknowledges that:

    (1)    Seller has the responsibility of making Seller's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Broker;

    (2)    Seller is fully aware of and understands the implications and consequences of Broker's dual agency role as expressed herein to provide balanced and fair representation of Seller and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

    (3)    Seller has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;

    (4)    Seller may seek independent legal counsel to assist Seller with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Broker become a dual agent, Seller waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Broker's role as a dual agent. Seller shall have a duty to protect Seller's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Seller wants included in said agreement.



    (d)    Authorization *(initial only ONE).*

Seller authorizes Broker to act as a dual agent, representing both the Seller and the buyer, subject to the terms and conditions set forth in Paragraph 12.

Seller desires exclusive representation at all times during this agreement and does NOT authorize Broker to act in the capacity of dual agent. *If Seller does not authorize Broker to act as a dual agent, the remainder of this paragraph shall not apply.*



    (e)    Designated Agent Option *(Initial only if applicable).*

Seller hereby authorizes Broker to designate an individual agent(s) to represent the Seller. The individual designated agent(s) shall represent only the interests of the Seller to the extent permitted by law.

(**NOTE:** When dual agency arises, an individual agent shall not practice designated agency and shall remain a dual agent if the individual agent has actually received confidential information concerning a buyer client of Broker in connection with the transaction or if designated agency is otherwise prohibited by law.)

    (f)    Dual Agency Compensation. If Broker acts as a dual agent (including designated agency), the total fee Broker expects to receive for its services in representing Seller and the buyer shall be 6% (+/- up to 4%) and $300 (+/- up to $900). THIS WILL IN NO WAY AFFECT OR MODIFY THE AMOUNT OF THE FEE SET FORTH IN PARAGRAPH 5 ABOVE THAT BROKER EXPECTS TO RECEIVE FOR ITS SERVICES IN REPRESENTING SELLER UNDER THIS AGREEMENT. In the event Broker's total fee is different from that described in this subparagraph (f), Broker shall timely disclose the fee to Seller and confirm it in writing before Seller accepts an offer to sell the Property.

13.    LEGAL AND PROFESSIONAL ADVICE: Broker recommends that Seller seek legal, tax, and other professional advice relative to any real estate transaction. Broker makes no representation or warranty respecting the advisability of any transaction. Broker is not an expert in matters relating to law (including matters of title to the Property), tax, financing, surveying, structural or mechanical condition, hazardous material, engineering, or other specialized topics. Seller is encouraged to seek expert assistance in such areas. Broker will cooperate with experts engaged by Seller or at the request of Seller, but Broker will have no liability to Seller pertaining to such matters.

14.    ARBITRATION AGREEMENT: Any Dispute, claim or controversy between Seller and Broker shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This agreement to arbitrate and the arbitration proceeding shall be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is inapplicable, unenforceable, or invalid, the North Carolina Revised Uniform Arbitration Act shall govern this Arbitration Agreement and the arbitration proceeding.

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    Donald Wilson

DocuSign Envelope ID: E03F0093-9482-4646-897C-075151A5B8A8

As used herein the term "Dispute" shall include, without limitation, any claim, controversy, complaint or disagreement regarding any representations, acts or omissions by any person, party or entity that in any way arises out of or is related to the sale, purchase, financing, condition of any property or any other aspect of Seller's real estate transaction, or that in any way arises out of any of the real estate brokerage services or other settlement services provided by Broker including, without limitation, allegations of concealment, misrepresentation, negligence, breach of fiduciary duty, fraud, constructive fraud, or other wrongful actions or omissions of any type. A Dispute includes any claim, controversy, complaint or disagreement of any kind, including those based on broken promises or contracts, closing charges, or tort (injury caused by negligent or intentional conduct). A Dispute includes any statutory, common law, or equitable claim. A Dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement. No Dispute may be joined in arbitration with a Dispute of any other person or arbitrated on a class action basis.

The American Arbitration Association (AAA) shall administer the arbitration, including the selection of arbitrators, pursuant to its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable. The arbitration shall be held in the county where the real property at issue is located. To find out how to initiate arbitration, Seller can contact AAA at:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Toll free number 877-495-4185
Fax number 877-304-8457

Website: www.adr.org
Email: casefiling@adr.org

All parties to the arbitration (AAA, the arbitrator, Broker, and Seller) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA. The arbitration proceeding shall be conducted at a location determined by AAA in accordance with this Arbitration Agreement. All statutes of limitation and statutes of repose applicable to any Dispute shall apply to any arbitration proceeding between Broker and Seller. If a Dispute is properly filed in Small Claims Court and the Small Claims Court has jurisdiction to resolve the Dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the Dispute from Small Claims Court shall pay AAA's administrative fee and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforceability of the other terms of this Arbitration Agreement.
WHEN YOU SIGN THIS AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER BROKER NOR SELLER SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

Seller's initials: _____

15.   Seller acknowledges receipt of the brochure describing the HomeServices Warranty Program offered through HMS National, Inc. In the above mentioned brochure, Seller accepted or declined coverage. Specific details of the coverage provided by HMS National, Inc., including coverage limits, exclusions, deductibles and other information may be obtained from Broker upon request.

Seller's initials: _____

16.   ADDITIONAL TERMS AND CONDITIONS: The following additional terms and conditions shall also be a part of this Agreement:
N/A

17.   ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between the parties; any prior agreements pertaining thereto, whether oral or written, have been merged and integrated into this Agreement. There shall be no modification of any of the terms of this Agreement unless such modification has been agreed to in writing and signed by all parties.

RE/FORM/Listing: 7/1/2017                    Page 8 of 9                    Copyright © 2017 Preferred Carolinas Realty, Inc.
                                                                                          All Rights Reserved

Seller: _____ Donald J. Wilson _____    _Donald J. Wilson_    08/17/2017
                    Print Name                      Signature              Date

Contact Information: _____ (336) 765-3225 _____  _____  _____
                             Home                      Work                Cell

_____ e-mail _____

Mailing Address: _____
_____

Seller: _____  _____  _____
                    Print Name                      Signature              Date

Contact Information: _____  _____  _____
                             Home                      Work                Cell

_____ e-mail _____

Mailing Address: _____
_____

Broker:  Preferred Carolinas Realty, Inc.                    Phone: _____

By: ___ _Cindy Rosenberg_ _____  _____ 79998 _____  08/17/2017
         5FD4AF9239EC4B8... Individual Agent Signature    Individual License #      Date
              Cindy Rosenberg

Office: 110 Oakwood Drive, Suite 110 Winston-Salem, NC 27103

Office Phone: (336) 650-8330                    Fax: _____

e-mail: cindy.rosenberg@bhhscarolinas.com

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved



**BERKSHIRE HATHAWAY** | Carolinas Realty
HomeServices | York Simpson Underwood Realty
| Yost & Little Realty
| Pinehurst Realty Group

WE MAKE GREAT NEIGHBORS.®

## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This Exclusive Right To Sell Listing Agreement ("Agreement") is entered into between **Vicky L Miller** _____
_____ as Seller(s) ("Seller") and Preferred Carolinas Realty, Inc. dba Berkshire Hathaway
HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, Berkshire Hathaway HomeServices Yost &
Little Realty and Berkshire Hathaway HomeServices Pinehurst Realty Group as Listing Broker ("Broker") for the property described below
("Property") and known as or legally described as:
Street Address: **372 Hanover Arms Ct** _____
City: **Winston-Salem** _____ Zip code: **27104** _____
County: **Forsyth** _____ , North Carolina.
Legal Description: **PIN: 6815-94-5967; Deed Book: 3012, Deed Page:3989** _____

**NOTE: If the Property was most recently owned by a person who is now deceased, the tax listing or last recorded deed to the Property may
not accurately identify the party(ies) who should be named as Seller. In such a case, the deceased owner's will, or applicable North Carolina
law if the deceased owner died without a will, will determine the correct party(ies) to sign this Agreement. Advice from an NC attorney
should be obtained concerning the proper party(ies) prior to completing this Agreement.**

**If the owner of the Property is a corporation, limited liability company, trust or other legal entity, the entity should be named as Seller and a
duly authorized officer, manager, trustee or other legal representative of the entity should sign this Agreement on the entity's behalf.**

**A non-owner spouse should be included as Seller because he or she will be required in most cases to sign the deed to release certain marital
rights in the Property. If a married owner has signed and recorded a pre-nuptial agreement, post-nuptial agreement, or a free trader
agreement, consult an NC attorney to determine whether the non-owner spouse will be required to sign the deed.**

1.      TERM OF AGREEMENT: In consideration of Broker's services to procure a buyer for the Property, Broker is hereby granted the exclusive
right to sell the Property for a period beginning on _____ **September 30** _____ , **2021** _____ and expiring at 11:59 P.M. on
_____ **March 30** _____ , **2022** _____ unless terminated sooner by Broker at its option.

2.      LISTING PRICE AND TERMS: Seller agrees to list the Property, including all fixtures described in paragraph 3, for sale at a price of
$ **174,500.00** _____ ("Listing Price") on the following terms:
**X** Cash      **X** FHA      **X** VA      __ USDA      **X** Conventional      __ Loan Assumption
__ Seller Financing      Other: _____ .

Seller agrees to sell the Property for the Listing Price and terms set forth above, or at any other price and on any other terms acceptable to Seller.

3.      FIXTURES AND EXCLUSIONS.
   (a)   Specified Items: Unless identified in subparagraph (d) below, the following items, , if any, are deemed fixtures and shall convey, included
         in the Purchase Price free of liens. ALL ITEMS LISTED BELOW INCLUDE BOTH TRADITIONAL AND SMART VERSIONS AND
         ANY EXCLUSIVELY DEDICATED, RELATED EQUIPMENT AND/OR REMOTE-CONTROL DEVICES:
   - Alarm and security systems (attached) for security, fire, smoke, carbon monoxide or other toxins with all related access codes, sensors, cameras, dedicated monitors, hard drives, video recorders, power supplies and cables; doorbells/chimes
   - All stoves/ranges/ovens; built-in appliances; attached microwave oven; vent hood
   - Fuel tank(s) whether attached or buried and including any contents that have not been used, removed or resold to the fuel provider as of Settlement. **NOTE:** Seller's use, removal or resale of fuel in any fuel tank is subject to seller's obligation under Paragraph 8(c) to provide working, existing utilities through the earlier of Closing or possession by Buyer.

   - Antennas; satellite dishes and receivers
   - Basketball goals and play equipment (permanently attached or in-ground)
   - Ceiling and wall-attached fans; light fixtures (including existing bulbs)
   - Fireplace insert; gas logs or starters; attached fireplace screens; wood or coal stoves
   - Floor coverings (attached)
   - Mirrors attached to walls, ceilings, cabinets or doors; all bathroom wall mirrors
   - Storage shed; utility building
   - Swimming pool (excluding inflatable); spa; hot tub
   - Solar electric and solar water heating systems

BHHS Carolinas Realty - Winston-Salem, 110 Oakwood Drive Winston-Salem NC 27103                 Phone: 336-768-3300                 Fax:                 Vicky L Miller
Cindy Rosenberg                 Produced with zipForm® by zipLogix 180/0 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

- Garage door openers with all controls
- Generators that are permanently wired
- Invisible fencing with power supply, controls and receivers
- Landscape and outdoor trees and plants (except in moveable containers); raised garden; landscape and foundation lighting; outdoor sound systems; permanent irrigation systems and controls; rain barrels; landscape water features; address markers
- Mailboxes; mounted package and newspaper receptacles

- Sump-pumps, radon fans and crawlspace ventilators; de-humidifiers that are permanently wired
- Surface-mounting brackets for television and speakers; recess-mounted speakers; mounted intercom system
- Water supply equipment, including filters, conditioning and softener systems; re-circulating pumps; well pumps and tanks
- Window/Door blinds and shades, curtain and draper rods and brackets, door and window screens and combination doors, awnings and storm windows.

Unpairing/deleting data from devices: Prior to Closing, Seller shall "unpair" and devices that will convey from any personal property devices (hubs, intelligent virtual assistants, mobile devices, vehicles, etc.) with which they are paired, delete personal data from any devices that will convey, and restore all devices to factory default settings unless otherwise agreed. Seller's obligations under this paragraph shall survive closing.

(b) FIXTURES AND EXCLUSIONS.
Items Leased or Not Owned: Any item which is leased or not owned by Seller, such as fuel tanks, satellite dishes and receivers, appliances, and alarm and security systems must be identified here and shall not convey:
N/A _____ plus
_____

(c) Other Fixtures/Unspecified items: Unless identified in subparagraph (d) below, any other item legally considered a fixture is included in the Purchase Price free of all liens.
(d) Other Items That Do Not Convey: The following items shall not convey (*identify those items to be excluded under subparagraphs (a) and (c)*):
N/A _____

Seller shall repair any damage caused by removal of any items excepted above.

4.    PERSONAL PROPERTY. The following personal property shall be transferred to Buyer free of liens at no value at the closing on the sale of the Property:
**Refrigerator, Washer and Dryer** _____

5.    BROKER'S COMPENSATION:  Seller agrees to pay Broker compensation in the amount of $ **N/A** _____ plus
      **6.000**      % of the gross contract sales price of the Property, which compensation shall include any compensation paid by Broker to any cooperating real estate brokers. Note that Broker does not offer any compensation to non-cooperating real estate brokers who are not members of the Multiple Listing Service ("MLS"). Seller authorizes the payment of the compensation owed to Broker pursuant to this Agreement to be paid directly to Broker from Seller's proceeds from the closing on the sale of the Property.

The compensation owed to Broker shall be deemed earned upon Broker, a cooperating real estate broker, Seller, or anyone else procuring or producing a ready, willing and able buyer(s) at the Listing Price and terms agreed to herein by Seller, or at any other price or terms acceptable to Seller, during the term of this Agreement. If any agreement for the sale or transfer of the Property does not have a selling price, the percentage component of the compensation owed to Broker shall be calculated based on the fair market value of the Property as of the effective date of such agreement. The compensation earned as set forth above shall be due and payable immediately upon the earlier of:

(a)    The closing on the sale of the Property;
(b)    Seller's refusal to sign a contract or agreement for the sale of Property at the Listing Price and terms set forth herein, or on any other terms acceptable to Seller;
(c)    Seller's breach of any contract or agreement for the sale or transfer of the Property;
(d)    Seller's agreement with any buyer(s) to unreasonably modify or cancel any contract or agreement for the sale or transfer of the Property;
(e)    Seller's breach of this Agreement.

Provided, however, that in the event the Property is not sold during the term of this Agreement, if within 180 days after expiration of this Agreement (the "Protection Period") Seller sells or enters into any agreement to sell the Property, directly or indirectly, including but not limited to any form of option, exchange, lease/purchase, conveyance or transfer upon any terms whatsoever, to any person or entity with whom Seller, Broker, or any cooperating real estate broker communicated during the term of this Agreement, and whose name(s) Broker has submitted to Seller in writing within 15 days of the expiration of this Agreement, the compensation owed to Broker pursuant to this Agreement shall be immediately due and payable to Broker. However, Seller shall not be obligated to pay the compensation owed to Broker pursuant to this Agreement if a valid listing agreement is

                                   Copyright© 2021 Preferred Carolinas Realty, Inc.
All Rights Reserved
Vicky I. Miller

entered into with another licensed real estate broker after the expiration of this Agreement and the Property is sold, exchanged, leased, conveyed or transferred during the Protection Period.

Seller acknowledges and agrees that Broker may be offered compensation from other persons or entities in connection with the sale of the Property, and Seller agrees to permit Broker to receive any such additional compensation. Broker will timely disclose any such additional compensation to Seller.

6.     BROKER'S DUTIES: Broker accepts the exclusive listing granted by this Agreement and shall use its best efforts and due diligence to solicit and procure a ready, willing and able buyer to purchase the Property at the Listing Price and terms set forth in this Agreement. Broker further agrees to:

      (a)    Perform the terms of this Agreement, exercise reasonable care and skill, and promote Seller's interests;
      (b)    Assist Seller in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to the offers and the counteroffers;
      (c)    Accept delivery of and present to Seller in a timely manner all offers and counteroffers to sell the Property;
      (d)    Respond to Seller's questions relating to the offers, counteroffers, notices, and contingencies.
      (e)    Account in a timely manner for all money and property received on behalf of Seller;
      (f)    Not disclose any confidential information about Seller, unless disclosure is authorized pursuant to this Agreement or is required by statute, rule, regulation or North Carolina law, or the failure to disclose such information would constitute a material misrepresentation.

Seller acknowledges that the rules of any listing service of which Broker is a member or in which any of Broker's agents participate may obligate Broker to provide a copy of this Agreement to any such listing service at its request, and Seller consents to Broker providing a copy of this Agreement in the event of any such request.

**BROKER SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT. FURTHER, REALTORS® HAVE AN ETHICAL DUTY TO CONDUCT SUCH ACTIVITIES WITHOUT RESPECT TO THE SEXUAL ORIENTATION OR GENDER IDENTITY OF ANY PARTY OR PROSPECTIVE PARTY.**

**WARNING: Buyer Letters to Seller. To entice a seller to choose their offer, some buyers write personal letters to sellers expressing why they wish to purchase the seller's property. Such letters often contain personal information and reveal characteristics of the buyer which could be used, knowingly or through unconscious bias, as a basis for the seller's decision to accept or reject an offer that may violate State and Federal Fair Housing laws, or used to form the basis for a claim that the seller, and possibly the seller's agent, have violated Fair Housing laws. In order to avoid potential liability for unlawful discrimination as well as the appearance of impropriety, Seller should discuss with Firm how any such letters that may be submitted will be handled.**

7.     SELLER'S DUTIES: Seller agrees to cooperate with Broker in marketing the Property for sale, including making the Property available for showings at reasonable times on reasonable notice. Seller further agrees to complete all required disclosure forms, including but not limited to the Residential Property and Owner's Association Disclosure Statement (unless exempt), the Mineral and Oil and Gas Rights Mandatory Disclosure Statement (unless exempt), and the Lead-Based Paint or Lead-Based Paint Hazard Addendum, if applicable to the Property.

      (a)    Seller represents that Seller holds title to the Property in fee simple, and that Seller does not know or have reason to know of circumstances or encumbrances that would prohibit Seller from conveying fee simple marketable title to the Property to a ready, willing and able buyer except as follows:

**N/A** _____

_____

      (b)    If required by N.C.G.S. §44A-11.1, Seller shall designate a Lien Agent, and provide Broker a copy of the appointment of Lien Agent as soon as reasonably possible.
      (c)    making the Property available for showing (including working, existing utilities) at reasonable times and upon reasonable notice.
      (d)    providing Firm as soon as reasonably possible after the execution of this Agreement copies of the following documents (where relevant) in the possession of Seller:
            (1)  restrictive covenants affecting the Property;
            (2)  bylaws, articles of incorporation, rules and regulations, and other governing documents of the owners' association and/or the subdivision;
            (3)  owners' association's statement of account, master insurance policy showing coverage provided and deductible amount, current financial statement and budget of the owners' association, parking restrictions and information, and architectural guidelines;
            (4) title insurance policies, attorney's opinions on title, surveys, covenants, deeds, notes and deeds of trust and easements relating to the Property.

Copyright© 2021 Preferred Carolinas Realty, Inc.
All Rights Reserved
Vicky L Miller

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.ziplogix.com

Seller authorizes (1) any attorney presently or previously representing Seller to release and disclose any title insurance policy in such attorney's file to Firm, (2) the Property's title insurer or its agent to release and disclose all materials in the Property's title insurer's (or title insurer's agent's) file to Firm, and (3) the owners' association manager (or other authorized representative) to release and disclose copies of all documents referenced in subparagraphs (c)(1), and (c)(2), **and (c)(3)** above. Seller acknowledges and understands that Firm is under no obligation to acquire any of the information referenced in this subparagraph (c) or to verify the accuracy of any such information that may be provided to Firm.

8.      SELLER REPRESENTATIONS: Seller acknowledges and agrees that Broker is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which Broker knows or reasonably should know. Seller hereby makes the following representations concerning the Property:

(a)     **Flood Hazard Disclosure/Insurance.** The Property ☐ is ☐ not located partly or entirely within a designated Special Flood Hazard Area. The Seller ☐ does ☒ does not currently maintain flood hazard insurance on the Property.

(b)     **Synthetic Stucco.** The Property ☒ has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system," commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows:

_____

(c)     **Owners' Association.**

(1) Complete ONLY if the Residential Property and Owner's Association Disclosure Statement is required: The name, address and telephone number of the president of the owner's association or the association manager is:
**Hanover Arm HOA** _____

_____

Owner's association website address, if any: _____

(2) Complete ONLY if New Construction or where the Residential Property and Owner's Disclosure Statement is NOT required: To the best of Seller's knowledge there ☐ is ☐ is not an owners' association which imposes various mandatory covenants, conditions and restrictions upon the Property. If there is an owners' association, Seller agrees to promptly complete an Owners' Association Disclosure and Addendum For Properties Exempt from Residential Property Disclosure Statement at Seller's expense and to attach it as an addendum to any contract for the sale of the Property.

(d)     **Ownership.** Seller:
☒ has owned the Property for at least one year;
☐ has owned the Property for less than one year.
☐ does not yet own the Property.
If Seller does not yet own the Property, Seller agrees to promptly provide Firm information pertaining to Seller's acquisition of the Property, such as a copy of a sales contract or option for the Property, and to keep Firm timely informed of all developments pertaining to Seller's acquisition of the Property.

(e)     **Receipt of Sample Forms.**
☐ Seller acknowledges receipt of a sample copy of an Offer to Purchase and Contract (Form 2-T) or Offer to Purchase and Contract–New Construction (Form800-T), as may be appropriate for review purposes.
☐ Seller acknowledges receipt of a sample copy of a Professional Services Disclosure and Election Form (Form #760) for review purposes.

(f)     **Current Liens.** Seller represents to the best of Seller's knowledge:
(1)     The Property ☒ is ☐ is not encumbered by a deed of trust or mortgage. *Complete any of the following where applicable:*
    (i)     There is a first deed of trust or mortgage on the Property securing a loan held by:
    Lender Name: _Hank Perkins            - JHP INVESTMENTS_
    Approximate balance: $ _130,000.00_
    Lender Phone #: _____
    Lender Address: _____
    (ii)    There is a second deed of trust or mortgage on the Property securing a loan held by:
    Lender Name: _____
    Approximate balance: $ _____
    Lender Phone #: _____
    Lender Address: _____
    (iii)   There is a deed of trust or mortgage on the Property securing an equity line of credit held by:
    Lender Name: _____
    Approximate balance: $ _____
    Lender Phone #: _____
    Lender Address: _____

Page 4 of 10          Copyright© 2021 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Vicky L Miller

(2)    Seller ☒ is current on all payments for the loans identified in numbered items (i), (ii) and (iii) above except as specified in (7) below.

(3)    Seller ☒ is not in default on any loan identified in numbered items (i), (ii) and (iii) above and has not received any notice(s) from the holder of any loan identified in numbered items (i), (ii) and (iii) above or from any other lien holder of any kind, regarding a default under the loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure except as specified in (7) below.

(4)    There ☒ are not any liens secured against the Property for Federal, State or local income taxes, unpaid real property taxes, unpaid condominium or homeowners' association fees, mechanics', laborers' or materialmens' liens, or other liens affecting the Property, and Seller has no knowledge of any matter that might result in a lien affecting the Property except as specified in (7) below.

(5)    There ☒ are not any judgments against Seller affecting the Property, and Seller has no knowledge of any matter that might result in a judgment that may potentially affect the Property except as specified in (7) below.

(6)    There ☒ are not any Uniform Commercial Code (UCC) fixture filings affecting the Property, and Seller has no knowledge of any matter that might result in a UCC fixture filing affecting the Property except as specified in (7) below.

(7)    Specify any information, including approximate balances, required by Seller representations (2) through (6) above (**NOTE**: Outstanding liens may affect Seller's proceeds)

_____

_____

(g)    **Bankruptcy.** Seller:
(1)    ☐ is ☒ is not under bankruptcy protection under United States law.
(2)    ☐ is ☒ is not contemplating seeking bankruptcy protection during the term of this Agreement.

(h)    **Access.** The Property ☒ does ☐ does not have legal access to a public right of way. If access is by private road/easement/other, Seller further represents that there ☐ is ☒ is not an agreement regarding the maintenance of such private road/easement/other means of access. If applicable, Seller agrees to promptly provide Broker information pertaining to any such agreement.

(i)    **Lease(s).** The Property ☐ is ☒ is not subject to any lease(s). If applicable:
(i)    Seller agrees to promptly provide Broker a copy of any such lease(s) or a written statement of the terms of any oral lease(s);
(ii)    If the Property is managed by someone other than Seller, the manager's name and contact information is as follows:

_____

Seller authorizes any such manager to release and disclose to Broker any relevant information about any lease(s) and to cooperate with Broker in the sale of the Property.

(j)    **FHA Appraisal.** An FHA appraisal ☐ has ☒ has not been performed on the Property within four months prior to the Effective Date. If applicable, Seller agrees to promptly provide Firm a copy of any such appraisal if available. NOTE: Any such appraisal may or may not be binding on a buyer who intends to obtain FHA financing.

(k)    **Special Assessments.** There are no proposed or confirmed special assessments (as defined in the sample contract form provided to Seller) regarding the Property except as follows (Insert "none" or the identification of such assessments, if any):

_____

(l)    **Fuel Tank/Fuel:** There ☐ is ☒ is not a fuel tank(s) located on the Property. *If "yes" complete the following:*

**Use of tank 1:** ☐ currently in use ☐ currently NOT in use *(if not in use, indicate if tank closed and method used to close tank, if known):*

_____

Ownership of tank 1: ☐ owned ☐ leased. If leased, the name and contact information of tank lessor/fuel vendor is:

_____

Location of tank 1: ☐ above ground ☐ below ground
Type of fuel: ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____

**Use of tank 2:** ☐ currently in use ☐ currently NOT in use *(if not in use, indicate if tank closed and method used to close tank, if known):*

_____

Ownership of tank 2: ☐ owned ☐ leased. If leased, the name and contact information of tank lessor/fuel vendor is:

_____

Location of tank 2: ☐ above ground ☐ below ground
Type of fuel: ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____

If, during the term of this Agreement, Seller becomes aware that any of the representations set forth in this paragraph 8 are incorrect or no longer accurate, Seller shall promptly notify Broker and cooperate with Broker in taking appropriate corrective action.

9.    HOME INSPECTION: Seller is advised to obtain a home inspection for the purpose of evaluating the condition of the Property in order to enhance its marketability and to help reduce concerns of prospective buyers. Seller ☐ agrees ☒ does not agree to obtain and pay for a home inspection by a licensed NC Home Inspector within _____ days after the execution of this Agreement.

Copyright© 2021 Preferred Carolinas Realty, Inc.
All Rights Reserved
Vicky L Miller

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

☐    Seller acknowledges receipt of a copy of *Questions and Answers on: Home Inspections* by the NC Real Estate Commission.

10.    MARKETING ACTIVITIES:

(a)    **Submission to Listing Service.** Broker shall submit pertinent information concerning the Property to any listing service of which Broker is a member, or in which any of Broker's agents participate, in accordance with the rules of any such listing service. Seller authorizes Broker (i) to furnish to the listing service notice of all changes of information concerning the Property authorized in writing by Seller, (ii) upon execution of a sales contract for the Property, to notify the listing service of the pending sale and the expiration date of any due diligence period, and (iii) upon closing of the sale, to disseminate sales information, including sales price, to the listing service, appraisers and real estate brokers.

(b)    **Commencement of Marketing.** Broker is authorized to commence marketing the Property as described in subparagraph (c) below on the Effective Date OR if selected ☒ on (insert date only if applicable) _____**October 5, 2021**_____ ("Delayed Marketing Date"). If a Delayed Marketing Date is selected, Seller understands and acknowledges (i) that listing service rules may prohibit the Property being previewed or shown by Seller of any real estate agent, including Broker's agents, prior to the Delayed Marketing Date, and (ii) that listing service rules may prohibit any Public Marketing of the Property before the Delayed Marketing Date except as may be permitted under "Coming Soon" Advertising in subparagraph (c) below. "Public Marketing" includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public-facing websites, brokerage website displays (including IDX and VOW), digital communications marketing (email blasts), multi-brokerage listing sharing networks, and applications available to the general public. Broker is obligated to present Seller any offers on the Property that may be submitted to Broker prior to the Delayed Marketing Date.

**NOTE: IT IS IN THE BEST INTEREST OF MOST SELLERS TO GET THE HIGHEST POSSIBLE PRICE ON THE BEST TERMS FOR THEIR PROPERTY, AND MAXIMIZING EXPOSURE OF THEIR PROPERTY ADVANCES THAT INTEREST. ACCEPTING AN OFFER ON THE PROPERTY BEFORE IT IS FULLY EXPOSED TO THE WIDEST GROUP OF POTENTIAL BUYERS MAY DENY SELLER THE BEST OPPORTUNITY TO ATTRACT OFFERS AT THE HIGHEST PRICE AND BEST TERMS.**

(c)    **Marketing Authorization.** Seller authorizes Broker to market the Property as described below:

(i)     Cooperate and share the commission payable under this Agreement with other brokers including brokers who have been employed as buyer's agents, subagents, dual agents, or designated agents, subject, where applicable, to authorization as required by law;

(ii)    Submit pertinent information, including virtual tours and images when applicable, concerning the Property to any Multiple Listing Service ("MLS") organizations to which Broker subscribes;

(iii)   Market the Property as "Coming Soon," commencing on the Effective Date, in any media Broker may in its discretion select, provided that any "Coming Soon" advertising shall be conducted in accordance with any restrictions and requirements of any listing service in which the Property will be included, a copy of which ☐ are ☐ not attached to this Agreement;

(iv)    Disseminate data about the Property and other information, including Seller's name, price, and other information concerning the Property supplied by, or on behalf of Seller, including creative works depicting the Property, such as virtual tours, images, and any textual descriptions of the Property (collectively referred to as "Content"), to MLS Participants, Subscribers and other licensees or users of the MLS database compilation, or any other MLS in which Broker participates, and to further disseminate, or permit the MLS or other MLS participants to disseminate such Content to potential purchasers through websites on the Internet. Further, Broker is authorized to otherwise advertise the Property in any manner deemed appropriate by Broker, including but not limited to advertising on the Internet, virtual tours, websites, trade journals and any other medium, and communications via e-mail and facsimile;

(v)     Place a "For Sale," "Under Contract," "Sale Pending," and other similar signs on the Property and to remove all other signs during the term of this Agreement;

(vi)    Enter the Property at reasonable times and with reasonable notice for the purpose of evaluation, preview, or showing the Property to prospective purchasers or other brokers;

(vii)   Possess and maintain a key to the Property, and make use of a "Lock Box" during the term of this Agreement; and

(viii)  Conduct open houses of the Property at such times as Seller and Broker may agree.

(d)    **Seller Acknowledgement.** Seller acknowledges and understands that while the marketing services identified above will facilitate the showing and sale of the Property, there are inherent risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of Broker, including but not limited to:

(i)     unauthorized use of a lock/key box,

(ii)    control of visitors during or after a showing or an open house, including the taking and use of photographs and videos of the Property,

(iii)   inappropriate use of information about the Property placed on the Internet or furnished to any MLS in which Broker participates, and

Copyright© 2021 Preferred Carolinas Realty, Inc.
All Rights Reserved
Vicky I. Miller

(iv)     information about the Property placed on the Internet by or through any listing service in which Broker participates which is inaccurate or dated, or information about the Property which may remain on the Internet following the expiration of the expiration of this Agreement, including but not limited to photographs and video.

Seller acknowledges and understands that neither Broker nor its agents have control over information about the Property that has been placed on the Internet in connection with the marketing of the Property, whether by or through a listing service or otherwise, including but not limited to photographs and video, and that it may not be possible to remove any such information.

Seller therefore agrees to release and discharge Broker and Broker's agents from any and all claims, demands, rights and causes of action of whatsoever kind and nature not caused by Broker's negligence arising directly or indirectly out of any such marketing services.

WARNING: IT MAY BE A CRIME UNDER FEDERAL AND STATE LAWS TO LISTEN TO OR RECORD AN ORAL COMMUNICATION THROUGH THE USE OF ANY ELECTRONIC, MECHANICAL, OR OTHER DEVICE WITHOUT THE CONSENT OF A PARTY TO THAT COMMUNICATION. If there is a video/audio/surveillance device(s) on the Property, Seller is advised: (i) that no audio surveillance device may be turned on during any showings, open houses, investigations, examinations, or inspections of the Property; and (ii) that the placement of any video surveillance device should not violate a visitor's reasonable expectation of privacy.

(e)     **"Coming Soon" Advertising.** ☐(Check only if applicable) Seller has chosen to market the Property as "Coming Soon," commencing on the Effective Date, in any media Firm may in its discretion select, provided that any "Coming Soon" advertising shall be conducted in accordance with any restrictions and requirements of any listing service in which the Property will be included, a copy of which ☐ are ☒ are not attached to this Agreement. The status of the listing shall be changed to "active" on _____ .

(f)     **Office Exclusive.** ☐(Check only if applicable) Seller has chosen to withhold from publication and dissemination to other participants of any listing service of which Broker is a member, or in which any of Broker's agents participate, and Seller understands and acknowledges that : (i) the rules of any such listing service may require that the listing be filed with the listing service or that the listing service be notified of the listing, but that the listing will not be disseminated to the listing service's participants, and (ii) the listing service may require Broker to provide a certification signed by Seller that Seller does not desire the listing to be disseminated by the listing service.

**NOTE: THE LISTING MUST BE SUBMITTED TO THE LISTING SERVICE AND DISSEMINATED TO ITS PARTICIPANTS WITHIN ONE (1) BUSINESS DAY OF ANY PUBLIC MARKETING OF THE PROPERTY IF REQUIRED BY LISTING SERVICE RULES. PUBLIC MARKETING INCLUDES, BUT IS NOT LIMITED TO, FLYERS DISPLAYED IN WINDOWS, YARD SIGNS, DIGITAL MARKETING ON PUBLIC FACING WEBSITES, BROKERAGE WEBSITE DISPLAYS (INCLUDING IDX AND VOW), DIGITAL COMMUNICATIONS MARKETING (EMAIL BLASTS), MULTIBROKERAGE LISTING SHARING NETWORKS, AND APPLICATIONS AVAILABLE TO THE GENERAL PUBLIC.**

11.     COPYRIGHT: Broker is specifically authorized to use, both before and after the sale or, in the event there is not a sale, after this listing has expired, for any purposes whatsoever, any and all information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property (including any information concerning the price and terms of the sale of the Property, the description of the Property, length of time the Property is on the market, and any other information relating to the Property) ("Seller Content"). Seller hereby assigns to Broker any and all intellectual property rights Seller may have in the Seller Content and to any photographs or video or other reproductions of the property used in connection with the marketing of the property. For purposes of clarity, Broker is the owner of any and all rights in the Seller Content and may further assign, license, sublicense, or otherwise dispose of these rights to any party whatsoever for any purposes whatsoever. If any moral rights are not transferred by the preceding sentences, Seller hereby waives all such rights.

Seller's execution of this Agreement further signifies Seller's representation and warranty that Seller is the sole author and sole owner of all rights in and to the Seller Content; that Seller's contribution to the Seller Content is original and not in the public domain; that Seller's contribution to the Seller Content contains no material from other copyrighted or unpublished work that has been used without the written consent of the copyright owner and/or of the owner of any other rights to or in such other works; that it does not violate or infringe on any personal or property rights of others, whether common law or statutory; that it contains nothing libelous or contrary to law; and that Seller has full power to enter this Agreement. Seller agrees to indemnify and hold harmless Broker for any claims of copyright infringement or other claims arising from any publication or use of the Seller Content.

Broker grants to Seller a non-exclusive, perpetual license for the use of the Seller Content, including the right to display, reproduce, distribute or make derivative works from the Seller Content. For purposes of clarity, the license granted to Seller for the use of the Seller Content applies only to information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property, and not to any information, photographs or video created or provided by or on behalf of Broker. Seller agrees to indemnify and hold harmless Broker for any and all claims arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of this license. Seller understands and agrees that Broker assumes no responsibility for Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of the license granted by Broker, or for any infringement arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content.

12.     DUAL AGENCY: Seller understands that the potential for dual agency will arise if a buyer who has an agency relationship with Broker becomes interested in viewing the Property. Broker may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Broker acts.

Copyright© 2021 Preferred Carolinas Realty, Inc.
All Rights Reserved
Vicky L Miller
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

(a) Disclosure of Information. In the event Broker serves as a dual agent, Seller agrees that without permission from the party about whom the information pertains, Broker shall not disclose to the other party the following information:

    (1) that a party may agree to a price, terms, or any conditions of sale other than those offered;

    (2) the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and

    (3) any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute, rule, regulation or North Carolina law.

(b) Broker's Role as Dual Agent. If Broker serves as agent for both Seller and a buyer in a transaction involving the Property, Broker shall make every reasonable effort to represent Seller and buyer in a balanced and fair manner. Broker shall also make every reasonable effort to encourage and effect communication and negotiation between Seller and buyer. Seller understands and acknowledges that:

    (1) Prior to the time dual agency occurs, Broker will act as Seller's exclusive agent;

    (2) In its separate representation of Seller and buyer, Broker may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Broker;

    (3) Broker is required by law to disclose to Seller and buyer any known or reasonably ascertainable material facts.

Seller agrees Broker shall not be liable to Seller for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

(c) Seller's Role. Should Broker become a dual agent, Seller understands and acknowledges that:

    (1) Seller has the responsibility of making Seller's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Broker;

    (2) Seller is fully aware of and understands the implications and consequences of Broker's dual agency role as expressed herein to provide balanced and fair representation of Seller and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

    (3) Seller has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;

    (4) Seller may seek independent legal counsel to assist Seller with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Broker become a dual agent, Seller waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Broker's role as a dual agent. Seller shall have a duty to protect Seller's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Seller wants included in said agreement.

(d) Authorization *(initial only ONE).*

Seller authorizes Broker to act as a dual agent, representing both the Seller and the buyer, subject to the terms and conditions set forth in Paragraph 12.

Seller desires exclusive representation at all times during this agreement and does NOT authorize Broker to act in the capacity of dual agent. *If Seller does not authorize Broker to act as a dual agent, the remainder of this paragraph shall not apply.*

(e) Designated Agent Option *(Initial only if applicable).*

Seller hereby authorizes Broker to designate an individual agent(s) to represent the Seller. The individual designated agent(s) shall represent only the interests of the Seller to the extent permitted by law.

(**NOTE**: When dual agency arises, an individual agent shall not practice designated agency and shall remain a dual agent if the individual agent has actually received confidential information concerning a buyer client of Broker in connection with the transaction or if designated agency is otherwise prohibited by law.)

(f) Dual Agency Compensation. If Broker acts as a dual agent (including designated agency), the total fee Broker expects to receive for its services in representing Seller and the buyer shall be 6% (+/- up to 4%) and $300 (+/- up to $900). THIS WILL IN NO WAY AFFECT OR MODIFY THE AMOUNT OF THE FEE SET FORTH IN PARAGRAPH 5 ABOVE THAT BROKER EXPECTS TO RECEIVE FOR ITS SERVICES IN REPRESENTING SELLER UNDER THIS AGREEMENT. In the event Broker's total fee is different from that described in this subparagraph (f), Broker shall timely disclose the fee to Seller and confirm it in writing before Seller accepts an offer to sell the Property.

Copyright© 2021 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     Vicky L Miller

13.     LEGAL AND PROFESSIONAL ADVICE: Broker recommends that Seller seek legal, tax, and other professional advice relative to any real estate transaction. Broker makes no representation or warranty respecting the advisability of any transaction. Broker is not an expert in matters relating to law (including matters of title to the Property), tax, financing, surveying, structural or mechanical condition, hazardous material, engineering, or other specialized topics. Seller is encouraged to seek expert assistance in such areas. Broker will cooperate with experts engaged by Seller or at the request of Seller, but Broker will have no liability to Seller pertaining to such matters.

14.     ARBITRATION AGREEMENT: Any Dispute, claim or controversy between Seller and Broker shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This agreement to arbitrate and the arbitration proceeding shall be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is inapplicable, unenforceable, or invalid, the North Carolina Revised Uniform Arbitration Act shall govern this Arbitration Agreement and the arbitration proceeding.

As used herein the term "Dispute" shall include, without limitation, any claim, controversy, complaint or disagreement regarding any representations, acts or omissions by any person, party or entity that in any way arises out of or is related to the sale, purchase, financing, condition of any property or any other aspect of Seller's real estate transaction, or that in any way arises out of any of the real estate brokerage services or other settlement services provided by Broker including, without limitation, allegations of concealment, misrepresentation, negligence, breach of fiduciary duty, fraud, constructive fraud, or other wrongful actions or omissions of any type. A Dispute includes any claim, controversy, complaint or disagreement of any kind, including those based on broken promises or contracts, closing charges, or tort (injury caused by negligent or intentional conduct). A Dispute includes any statutory, common law, or equitable claim. A Dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement. No Dispute may be joined in arbitration with a Dispute of any other person or arbitrated on a class action basis.

The American Arbitration Association (AAA) shall administer the arbitration, including the selection of arbitrators, pursuant to its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable. The arbitration shall be held in the county where the real property at issue is located. To find out how to initiate arbitration, Seller can contact AAA at:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Toll free number 877-495-4185 | Fax number 877-304-8457 | Website: www.adr.org | Email: casefiling@adr.org

All parties to the arbitration (AAA, the arbitrator, Broker, and Seller) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA. The arbitration proceeding shall be conducted at a location determined by AAA in accordance with this Arbitration Agreement. All statutes of limitation and statutes of repose applicable to any Dispute shall apply to any arbitration proceeding between Broker and Seller. If a Dispute is properly filed in Small Claims Court and the Small Claims Court has jurisdiction to resolve the Dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the Dispute from Small Claims Court shall pay AAA's administrative fee and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforceability of the other terms of this Arbitration Agreement.
WHEN YOU SIGN THIS AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER BROKER NOR SELLER SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

Seller's initials: _um_____

15.     Seller acknowledges receipt of the brochure describing the HomeServices Warranty Program offered through Cinch Home Services. In the above-mentioned brochure, Seller accepted or declined coverage. Specific details of the coverage provided by Cinch Home Services, including coverage limits, exclusions, deductibles and other information may be obtained from Broker upon request.

Seller's initials: _um_____

Copyright© 2021 Preferred Carolinas Realty, Inc.
All Rights Reserved
Vicky L Miller

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

16.     ADDITIONAL TERMS AND CONDITIONS: The following additional terms and conditions shall also be a part of this Agreement:
N/A

17.     ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between the parties; any prior agreements pertaining thereto, whether oral or written, have been merged and integrated into this Agreement. There shall be no modification of any of the terms of this Agreement unless such modification has been agreed to in writing and signed by all parties.

Seller: _____ **Vicky L Miller** _____ _____ 9/30/2021
                        Print Name                    Signature                    Date

Contact Information: _____  _____  _____
                        Home                    Work                    Cell
                        _____
                        e-mail

Mailing Address: **372 Hanover Arms Ct, Winston-Salem, NC** _____

Seller: _____ _____ _____ _____
                        Print Name                    Signature                    Date

Contact Information: _____  _____  _____
                        Home                    Work                    Cell
                        _____
                        e-mail

Mailing Address: _____

Broker: Preferred Carolinas Realty, Inc.        Firm License Number C9751        Phone: _____ **(336)768-3300**

By: _____                             79998                            9-30-21
        Individual Agent Signature              Individual License #              Date
        **Cindy Rosenberg**

Office: **BHHS/ Carolinas Realty** _____
Office Phone: **(336)650-8330** _____        Fax: _____
e-mail: **cindy.rosenberg@bhhscarolinas.com** _____

DocuSign Envelope ID: AD7DB4A4-9016-487C-BDA1-FE8601C0FE43



BERKSHIRE HATHAWAY | Carolinas Realty
HomeServices | York Simpson Underwood Realty
| Yost & Little Realty
| Pinehurst Realty Group

WE MAKE GREAT NEIGHBORS.®

## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This Exclusive Right To Sell Listing Agreement ("Agreement") is entered into between **Bess Kimberly Hatley, Gary Edward Hatley**
_____ as Seller(s) ("Seller") and Preferred Carolinas Realty, Inc. dba Berkshire Hathaway
HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, Berkshire Hathaway HomeServices Yost &
Little Realty and Berkshire Hathaway HomeServices Pinehurst Realty Group as Listing Broker ("Broker") for the property described below
("Property") and known as or legally described as:

Street Address: **361 Ivy Circle**

| City: **Bermuda Run** | Zip code: **27006** |

County: **Davie**                                                                                    , North Carolina.

Legal Description: **DJ8-070-CO-016;  Lot 23 Bermuda Run Golf & Country ; Plat Book: 4, Page:82; Deed Book: 1151, Deed Page:159**

**NOTE: If the Property was most recently owned by a person who is now deceased, the tax listing or last recorded deed to the Property may
not accurately identify the party(ies) who should be named as Seller. In such a case, the deceased owner's will, or applicable North Carolina
law if the deceased owner died without a will, will determine the correct party(ies) to sign this Agreement. Advice from an NC attorney
should be obtained concerning the proper party(ies) prior to completing this Agreement.**

**If the owner of the Property is a corporation, limited liability company, trust or other legal entity, the entity should be named as Seller and a
duly authorized officer, manager, trustee or other legal representative of the entity should sign this Agreement on the entity's behalf.**

**A non-owner spouse should be included as Seller because he or she will be required in most cases to sign the deed to release certain marital
rights in the Property. If a married owner has signed and recorded a pre-nuptial agreement, post-nuptial agreement, or a free trader
agreement, consult an NC attorney to determine whether the non-owner spouse will be required to sign the deed.**

1.      TERM OF AGREEMENT: In consideration of Broker's services to procure a buyer for the Property, Broker is hereby granted the exclusive
right to sell the Property for a period beginning on _____**September 21**_____ , **2022**_____ and expiring at 11:59 P.M. on
_____**March 21**_____ , **2023**_____ unless terminated sooner by Broker at its option.

2.      LISTING PRICE AND TERMS: Seller agrees to list the Property, including all fixtures described in paragraph 3, for sale at a price of
**$ 550,000.00**_____ ("Listing Price") on the following terms:
**X** Cash      __ FHA      __ VA      __ USDA      **X** Conventional      __ Loan Assumption
__ Seller Financing        Other: _____ .

Seller agrees to sell the Property for the Listing Price and terms set forth above, or at any other price and on any other terms acceptable to Seller.

3.      FIXTURES AND EXCLUSIONS.

**WARNING: THE PARTIES SHOULD NOT ASSUME THAT AN ITEM WILL OR WILL NOT BE INCLUDED IN THE SALE BASED ON AN
ORAL OR WRITTEN STATEMENT OR UNDERSTANDING THAT IS NOT A PART OF A SALES CONTRACT. BUYER AND SELLER
SHOULD BE SPECIFIC WHEN NEGOTIATING WHAT ITEMS WILL BE INCLUDED IN OR EXCLUDED FROM THE SALE.**

   (a) **Fixtures Are Included in Purchase Price:** ALL EXISTING FIXTURES ARE INCLUDED IN THE SALE AS PART OF THE
       PURCHASE PRICE, FREE OF LIENS, UNLESS EXCLUDED IN SUBPARAGRAPH (c) OR (d).

   (b) Specified Items: Unless identified in subparagraph (d) below, the following items, , if any, are deemed fixtures and shall convey, included
       in the Purchase Price free of liens. ALL ITEMS LISTED BELOW INCLUDE BOTH TRADITIONAL AND SMART VERSIONS AND
       ANY EXCLUSIVELY DEDICATED, RELATED EQUIPMENT AND/OR REMOTE-CONTROL DEVICES:

   - Alarm and security systems (attached) for
     security, fire, smoke, carbon monoxide or other
     toxins with all related access codes, sensors,
     cameras, dedicated monitors, hard drives, video
     recorders, power supplies and cables;
     doorbells/chimes
   - All stoves/ranges/ovens; built-in appliances;
     attached microwave oven; vent hood

   - Mailboxes; mounted package and newspaper
     receptacles
   - Mirrors attached to walls, ceilings, cabinets, or
     doors; all bathroom wall mirrors
   - Storage shed, utility building
   - Swimming pools; spas; hot tubs (excluding
     inflatable pools, spas, and hot tubs)

RE/FORM/Listing: 7/1/2022

Copyright © 2022 Preferred Carolinas Realty, Inc.
All Rights Reserved

BHHS Carolinas Realty - Winston-Salem, 110 Oakwood Drive Winston-Salem NC 17103          Phone: 336-768-3300          Fax:          Bess and Gary
Cindy Rosenberg                                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com

DocuSign Envelope ID: AD7DB4A4-9016-487C-BDA1-FE8601C0FE43

- Antennas, satellite dishes and receivers
- Basketball goals and play equipment (permanently attached or in-ground)
- Ceiling and wall-attached fans; light fixtures (including existing bulbs)
- Fireplace insert; gas logs or starters; attached fireplace screens; wood or coal stoves
- Floor coverings (attached)
- Garage door openers with all controls
- Generators that are permanently wired
- Invisible fencing with power supply, controls and receivers
- Landscape and outdoor trees and plants (except in moveable containers); raised garden; landscape and foundation lighting; outdoor sound systems; permanent irrigation systems and controls; rain barrels; landscape water features; address markers

- Solar electric and solar water heating systems
- Surface-mounting brackets for television and speakers; recess-mounted speakers; mounted intercom system
- Water supply equipment, including filters, conditioning and softener systems; re-circulating pumps; well pumps and tanks
- Window/Door blinds and shades, curtain/drapery rods and brackets, door and window screens and combination doors, awnings and storm windows.

Unpairing/deleting data from devices: Prior to Closing, Seller shall "unpair" any devices that will convey from any personal property devices (hubs, intelligent virtual assistants, mobile devices, vehicles, etc.) with which they are paired, delete personal data from any devices that will convey, and restore all devices to factory default settings unless otherwise agreed. Seller's obligations under this paragraph shall survive closing.

(c) FIXTURES AND EXCLUSIONS.
Items Leased or Not Owned: Any item which is leased or not owned by Seller, such as antennas, satellite dishes and receivers, appliances, and alarm and security systems must be identified here and shall not convey:
**N/A**

In addition, any leased fuel tank identified in paragraph 8(l) shall not convey.

(d) Other Items That Do Not Convey: The following items shall not convey (*identify those items to be excluded under subparagraphs (a) and (b)*):
**N/A**

Seller shall repair any damage caused by removal of any items excepted above.

4.      PERSONAL PROPERTY. The following personal property shall be transferred to Buyer free of liens at no value at the closing on the sale of the Property:
**Refrigerator**

5.      BROKER'S COMPENSATION: Seller agrees to pay Broker compensation in the amount of $ **N/A**                          plus
**6.000**          % of the gross contract sales price of the Property, which compensation shall include any compensation paid by Broker to any cooperating real estate brokers. Note that Broker does not offer any compensation to non-cooperating real estate brokers who are not members of the Multiple Listing Service ("MLS"). Seller authorizes the payment of the compensation owed to Broker pursuant to this Agreement to be paid directly to Broker from Seller's proceeds from the closing on the sale of the Property.

The compensation owed to Broker shall be deemed earned upon Broker, a cooperating real estate broker, Seller, or anyone else procuring or producing a ready, willing and able buyer(s) at the Listing Price and terms agreed to herein by Seller, or at any other price or terms acceptable to Seller, during the term of this Agreement. If any agreement for the sale or transfer of the Property does not have a selling price, the percentage component of the compensation owed to Broker shall be calculated based on the fair market value of the Property as of the effective date of such agreement. The compensation earned as set forth above shall be due and payable immediately upon the earlier of:

(a)      The closing on the sale of the Property;
(b)      Seller's refusal to sign a contract or agreement for the sale of Property at the Listing Price and terms set forth herein, or on any other terms acceptable to Seller;
(c)      Seller's breach of any contract or agreement for the sale or transfer of the Property;
(d)      Seller's agreement with any buyer(s) to unreasonably modify or cancel any contract or agreement for the sale or transfer of the Property;
(e)      Seller's breach of this Agreement.

RE/FORM/Listing: 7/1/2022

Copyright © 2022 Preferred Carolinas Realty, Inc.
All Rights Reserved

DocuSign Envelope ID: AD7DB4A4-9016-487C-BDA1-FE8601C0FE43

Provided, however, that in the event the Property is not sold during the term of this Agreement, if within 180 days after expiration of this Agreement (the "Protection Period") Seller sells or enters into any agreement to sell the Property, directly or indirectly, including but not limited to any form of option, exchange, lease/purchase, conveyance or transfer upon any terms whatsoever, to any person or entity with whom Seller, Broker, or any cooperating real estate broker communicated during the term of this Agreement, and whose name(s) Broker has submitted to Seller in writing within 15 days of the expiration of this Agreement, the compensation owed to Broker pursuant to this Agreement shall be immediately due and payable to Broker. However, Seller shall not be obligated to pay the compensation owed to Broker pursuant to this Agreement if a valid listing agreement is entered into with another licensed real estate broker after the expiration of this Agreement and the Property is sold, exchanged, leased, conveyed or transferred during the Protection Period.

Seller acknowledges and agrees that Broker may be offered compensation from other persons or entities in connection with the sale of the Property, and Seller agrees to permit Broker to receive any such additional compensation. Broker will timely disclose any such additional compensation to Seller.

6.      BROKER'S DUTIES: Broker accepts the exclusive listing granted by this Agreement and shall use its best efforts and due diligence to solicit and procure a ready, willing and able buyer to purchase the Property at the Listing Price and terms set forth in this Agreement. Broker further agrees to:

|     |     |
|-----|-----|
| (a) | Perform the terms of this Agreement, exercise reasonable care and skill, and promote Seller's interests; |
| (b) | Assist Seller in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to the offers and the counteroffers; |
| (c) | Accept delivery of and present to Seller in a timely manner all offers and counteroffers to sell the Property; |
| (d) | Respond to Seller's questions relating to the offers, counteroffers, notices, and contingencies. |
| (e) | Account in a timely manner for all money and property received on behalf of Seller; |
| (f) | Not disclose any confidential information about Seller, unless disclosure is authorized pursuant to this Agreement or is required by statute, rule, regulation or North Carolina law, or the failure to disclose such information would constitute a material misrepresentation. |

Seller acknowledges that the rules of any listing service of which Broker is a member or in which any of Broker's agents participate may obligate Broker to provide a copy of this Agreement to any such listing service at its request, and Seller consents to Broker providing a copy of this Agreement in the event of any such request.

**BROKER SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT. FURTHER, REALTORS® HAVE AN ETHICAL DUTY TO CONDUCT SUCH ACTIVITIES WITHOUT RESPECT TO THE SEXUAL ORIENTATION OR GENDER IDENTITY OF ANY PARTY OR PROSPECTIVE PARTY.**

**WARNING: Buyer Letters to Seller. To entice a seller to choose their offer, some buyers write personal letters to sellers expressing why they wish to purchase the seller's property. Such letters often contain personal information and reveal characteristics of the buyer which could be used, knowingly or through unconscious bias, as a basis for the seller's decision to accept or reject an offer that may violate State and Federal Fair Housing laws, or used to form the basis for a claim that the seller, and possibly the seller's agent, have violated Fair Housing laws. In order to avoid potential liability for unlawful discrimination as well as the appearance of impropriety, Seller should discuss with Firm how any such letters that may be submitted will be handled.**

7.      SELLER'S DUTIES: Seller agrees to cooperate with Broker in marketing the Property for sale, including making the Property available for showings at reasonable times on reasonable notice. Seller further agrees to complete all required disclosure forms, including but not limited to the Residential Property and Owner's Association Disclosure Statement (unless exempt), the Mineral and Oil and Gas Rights Mandatory Disclosure Statement (unless exempt), and the Lead-Based Paint or Lead-Based Paint Hazard Addendum, if applicable to the Property.

|     |     |
|-----|-----|
| (a) | Seller represents that Seller holds title to the Property in fee simple, and that Seller does not know or have reason to know of circumstances or encumbrances that would prohibit Seller from conveying fee simple marketable title to the Property to a ready, willing and able buyer except as follows: |

**N/A**
_____

_____

|     |     |
|-----|-----|
| (b) | If required by N.C.G.S. §44A-11.1, Seller shall designate a Lien Agent, and provide Broker a copy of the appointment of Lien Agent as soon as reasonably possible; |
| (c) | making the Property available for showing (including working, existing utilities) at reasonable times and upon reasonable notice. |
| (d) | providing Firm as soon as reasonably possible after the execution of this Agreement copies of the following documents (where relevant) in the possession of Seller: |
|     | (1)  restrictive covenants affecting the Property; |

Copyright © 2022 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          Bess and Gary

DocuSign Envelope ID: AD7DB4A4-9016-487C-BDA1-FE8601C0FE43

(2) bylaws, articles of incorporation, rules and regulations, and other governing documents of the owners' association and/or the subdivision;

(3) owners' association's statement of account, master insurance policy showing coverage provided and deductible amount, current financial statement and budget of the owners' association, parking restrictions and information, and architectural guidelines;

(4) title insurance policies, attorney's opinions on title, surveys, covenants, deeds, notes and deeds of trust and easements relating to the Property.

Seller authorizes (1) any attorney presently or previously representing Seller to release and disclose any title insurance policy in such attorney's file to Firm, (2) the Property's title insurer or its agent to release and disclose all materials in the Property's title insurer's (or title insurer's agent's) file to Firm, and (3) the owners' association manager (or other authorized representative) to release and disclose copies of all documents referenced in subparagraphs (c)(1), (c)(2), and (c)(3) above. Seller acknowledges and understands that Firm is under no obligation to acquire any of the information referenced in this subparagraph (c) or to verify the accuracy of any such information that may be provided to Firm.

8.  SELLER REPRESENTATIONS: Seller acknowledges and agrees that Broker is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which Broker knows or reasonably should know. Seller hereby makes the following representations concerning the Property:

(a) **Flood Hazard Disclosure/Insurance.** The Property ☐ is ☒ not located partly or entirely within a designated Special Flood Hazard Area. The Seller ☐ does ☒ does not currently maintain flood hazard insurance on the Property.

(b) **Synthetic Stucco.** The Property ☒ has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system," commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows:

_____

(c) **Owners' Association.**

(1) Complete ONLY if the Residential Property and Owner's Association Disclosure Statement is required: The name, address and telephone number of the president of the owner's association or the association manager is:
**N/A**
_____
_____

Owner's association website address, if any: _____

(2) Complete ONLY if New Construction or where the Residential Property and Owner's Disclosure Statement is NOT required: To the best of Seller's knowledge there ☐ is ☒ is not an owners' association which imposes various mandatory covenants, conditions and restrictions upon the Property. If there is an owners' association, Seller agrees to promptly complete an Owners' Association Disclosure and Addendum For Properties Exempt from Residential Property Disclosure Statement at Seller's expense and to attach it as an addendum to any contract for the sale of the Property.

(d) **Ownership. Seller:**
☒ has owned the Property for at least one year;
☐ has owned the Property for less than one year;
☐ does not yet own the Property.
If Seller does not yet own the Property, Seller agrees to promptly provide Firm information pertaining to Seller's acquisition of the Property, such as a copy of a sales contract or option for the Property, and to keep Firm timely informed of all developments pertaining to Seller's acquisition of the Property.

(e) **Receipt of Sample Forms.**
☐ Seller acknowledges receipt of a sample copy of an Offer to Purchase and Contract (Form 2-T) or Offer to Purchase and Contract–New Construction (Form 800-T), as may be appropriate for review purposes.
☐ Seller acknowledges receipt of a sample copy of a Professional Services Disclosure and Election Form (Form #760) for review purposes.

(f) **Current Liens.** Seller represents to the best of Seller's knowledge:
(1) The Property ☒ is ☐ is not encumbered by a deed of trust or mortgage. *Complete any of the following where applicable:*
(i) There is a first deed of trust or mortgage on the Property securing a loan held by:
Lender Name: _____
Approximate balance: $ _____
Lender Phone #: _____
Lender Address: _____
(ii) There is a second deed of trust or mortgage on the Property securing a loan held by:
Lender Name: _____
Approximate balance: $ _____
Lender Phone #: _____
Lender Address: _____

RE/FORM/Listing: 7/1/2022

Copyright © 2022 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          Bess and Gary

DocuSign Envelope ID: AD7DB4A4-9016-487C-BDA1-FE8601C0FE43

        (iii)     There is a deed of trust or mortgage on the Property securing an equity line of credit held by:

Lender Name: _____

Approximate balance: $ _____

Lender Phone #: _____

Lender Address: _____

(2)    Seller [X] is current on all payments for the loans identified in numbered items (i), (ii) and (iii) above except as specified in (7) below.

(3)    Seller [X] is not in default on any loan identified in numbered items (i), (ii) and (iii) above and has not received any notice(s) from the holder of any loan identified in numbered items (i), (ii) and (iii) above or from any other lien holder of any kind, regarding a default under the loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure except as specified in (7) below.

(4)    There [X] are not any liens secured against the Property for Federal, State or local income taxes, unpaid real property taxes, unpaid condominium or homeowners' association fees, mechanics', laborers' or materialmens' liens, or other liens affecting the Property, and Seller has no knowledge of any matter that might result in a lien affecting the Property except as specified in (7) below.

(5)    There [X] are not any judgments against Seller affecting the Property, and Seller has no knowledge of any matter that might result in a judgment that may potentially affect the Property except as specified in (7) below.

(6)    There [X] are not any Uniform Commercial Code (UCC) fixture filings affecting the Property, and Seller has no knowledge of any matter that might result in a UCC fixture filing affecting the Property except as specified in (7) below.

(7)    Specify any information, including approximate balances, required by Seller representations (2) through (6) above (**NOTE**: Outstanding liens may affect Seller's proceeds)

_____

_____

(g)    **Bankruptcy.** Seller:

(1)    [ ] is [X] is not under bankruptcy protection under United States law.

(2)    [ ] is [X] is not contemplating seeking bankruptcy protection during the term of this Agreement.

(h)    **Access.** The Property [X] does [ ] does not have legal access to a public right of way. If access is by private road/easement/other, there [ ] is [X] is not an agreement regarding the maintenance of such private road/easement/other means of access. If applicable, Seller agrees to promptly provide Broker information pertaining to any such agreement.

(i)    **Lease(s).** The Property [ ] is [X] is not subject to any lease(s). If applicable:

(i)    Seller agrees to promptly provide Broker a copy of any such lease(s) or a written statement of the terms of any oral lease(s);

(ii)    If the Property is managed by someone other than Seller, the manager's name and contact information is as follows:

**N/A**                                                                                                        .

Seller authorizes any such manager to release and disclose to Broker any relevant information about any lease(s) and to cooperate with Broker in the sale of the Property.

(j)    **FHA Appraisal.** An FHA appraisal [ ] has [X] has not been performed on the Property within four months prior to the Effective Date. If applicable, Seller agrees to promptly provide Firm a copy of any such appraisal if available. NOTE: Any such appraisal may or may not be binding on a buyer who intends to obtain FHA financing.

(k)    **Special Assessments.** There are no proposed or confirmed special assessments (as defined in the sample contract form provided to Seller) regarding the Property except as follows (Insert "none" or the identification of such assessments, if any):

_____

(l)    **Fuel Tank/Fuel:** There [ ] is [X] is not a fuel tank(s) located on the Property. *If "yes" complete the following:*

**(i) Description:**

[ ] Tank 1:

Use of tank 1. [ ] currently in use [ ] currently NOT in use (*if not in use, indicate if tank closed and method used to close tank, if known*):

_____

Ownership of tank 1: [ ] owned [ ] leased. If leased, the name and contact information of tank lessor/fuel vendor is:

_____

Location of tank 1: [ ] above ground [ ] below ground

Type of fuel:        [ ] oil [ ] propane [ ] gasoline and/or diesel [ ] other: _____

Copyright © 2022 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com         Bess and Gary

DocuSign Envelope ID: AD7DB4A4-9016-487C-BDA1-FE8601C0FE43

☐ **Tank 2:**

**Use of tank 2:** ☐ currently in use ☐ currently NOT in use *(if not in use, indicate if tank closed and method used to close tank, if known)*:

_____

Ownership of tank 2: ☐ owned ☐ leased. If leased, the name and contact information of tank lessor/fuel vendor is:

_____

Location of tank 2: ☐ above ground ☐ below ground
Type of fuel:     ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____

**(ii) Tank(s) included in sale:** Any tank described above that is owned by Seller shall be included in the sale as part of the Purchase Price free of liens, unless excluded in paragraph 2(d) above.

**(iii) Fuel:** Seller may use fuel in the tank(s) described above through Settlement, but may not otherwise remove the fuel or resell it. Any fuel remaining in the tank(s) as of Settlement shall be included in the sale as part of the Purchase Price, free of liens.

**NOTE: Seller is advised to consult with Seller's fuel provider to discuss the manner in which any fuel tank(s) will be refilled between the date of a contract on the Property and closing on the Property, including discontinuation of any periodic refilling.**

**NOTE: Seller's use of fuel in any fuel tank is subject to Seller's obligation under Paragraph 8(c) of the Offer to Purchase and Contract (Form 2-T) to provide working, existing utilities through the earlier of Closing or possession by Buyer.**

If, during the term of this Agreement, Seller becomes aware that any of the representations set forth in this paragraph 8 are incorrect or no longer accurate, Seller shall promptly notify Broker and cooperate with Broker in taking appropriate corrective action.

9.    HOME INSPECTION: Seller is advised to obtain a home inspection for the purpose of evaluating the condition of the Property in order to enhance its marketability and to help reduce concerns of prospective buyers. Seller ☐ agrees ☒ does not agree to obtain and pay for a home inspection by a licensed NC Home Inspector within _____ days after the execution of this Agreement.

10.    MARKETING ACTIVITIES:

(a)    **Submission to Listing Service.** Broker shall submit pertinent information concerning the Property to any listing service of which Broker is a member, or in which any of Broker's agents participate, in accordance with the rules of any such listing service. Seller authorizes Broker (i) to furnish to the listing service notice of all changes of information concerning the Property authorized in writing by Seller, (ii) upon execution of a sales contract for the Property, to notify the listing service of the pending sale and the expiration date of any due diligence period, and (iii) upon closing of the sale, to disseminate sales information, including sales price, to the listing service, appraisers and real estate brokers.

(b)    **Commencement of Marketing.** Broker is authorized to commence marketing the Property as described in subparagraph (c) below on the Effective Date OR if selected ☒ on (insert date only if applicable) _____**September 30, 2022**_____ ("Delayed Marketing Date"). If a Delayed Marketing Date is selected, Seller understands and acknowledges (i) that listing service rules may prohibit the Property being previewed or shown by Seller of any real estate agent, including Broker's agents, prior to the Delayed Marketing Date, and (ii) that listing service rules may prohibit any Public Marketing of the Property before the Delayed Marketing Date except as may be permitted under "Coming Soon" Advertising in subparagraph (c) below. "Public Marketing" includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public-facing websites, brokerage website displays (including IDX and VOW), digital communications marketing (email blasts), multi-brokerage listing sharing networks, and applications available to the general public. Broker is obligated to present Seller any offers on the Property that may be submitted to Broker prior to the Delayed Marketing Date.

**NOTE: IT IS IN THE BEST INTEREST OF MOST SELLERS TO GET THE HIGHEST POSSIBLE PRICE ON THE BEST TERMS FOR THEIR PROPERTY, AND MAXIMIZING EXPOSURE OF THEIR PROPERTY ADVANCES THAT INTEREST. ACCEPTING AN OFFER ON THE PROPERTY BEFORE IT IS FULLY EXPOSED TO THE WIDEST GROUP OF POTENTIAL BUYERS MAY DENY SELLER THE BEST OPPORTUNITY TO ATTRACT OFFERS AT THE HIGHEST PRICE AND BEST TERMS.**

Copyright © 2022 Preferred Carolinas Realty, Inc.
All Rights Reserved

(c) **Marketing Authorization.** Seller authorizes Broker to market the Property as described below:

    (i)    Cooperate and share the commission payable under this Agreement with other brokers including brokers who have been employed as buyer's agents, subagents, dual agents, or designated agents, subject, where applicable, to authorization as required by law;

    (ii)    Submit pertinent information, including virtual tours and images when applicable, concerning the Property to any Multiple Listing Service ("MLS") organizations to which Broker subscribes;

    (iii)    Market the Property as "Coming Soon," commencing on the Effective Date, in any media Broker may in its discretion select, provided that any "Coming Soon" advertising shall be conducted in accordance with any restrictions and requirements of any listing service in which the Property will be included, a copy of which ☐ are ☐ not attached to this Agreement;

    (iv)    Disseminate data about the Property and other information, including Seller's name, price, and other information concerning the Property supplied by, or on behalf of Seller, including creative works depicting the Property, such as virtual tours, images, and any textual descriptions of the Property (collectively referred to as "Content"), to MLS Participants, Subscribers and other licensees or users of the MLS database compilation, or any other MLS in which Broker participates, and to further disseminate, or permit the MLS or other MLS participants to disseminate such Content to potential purchasers through websites on the Internet. Further, Broker is authorized to otherwise advertise the Property in any manner deemed appropriate by Broker, including but not limited to advertising on the Internet, virtual tours, websites, trade journals and any other medium, and communications via e-mail and facsimile;

    (v)    Place a "For Sale," "Under Contract," "Sale Pending," and other similar signs on the Property and to remove all other signs during the term of this Agreement;

    (vi)    Enter the Property at reasonable times and with reasonable notice for the purpose of evaluation, preview, or showing the Property to prospective purchasers or other brokers;

    (vii)    Possess and maintain a key to the Property, and make use of a "Lock Box" during the term of this Agreement; and

    (viii)    Conduct open houses of the Property at such times as Seller and Broker may agree.

(d) **Seller Acknowledgement.** Seller acknowledges and understands that while the marketing services identified above will facilitate the showing and sale of the Property, there are inherent risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of Broker, including but not limited to:

    (i)    unauthorized use of a lock/key box,

    (ii)    control of visitors during or after a showing or an open house, including the taking and use of photographs and videos of the Property,

    (iii)    inappropriate use of information about the Property placed on the Internet or furnished to any MLS in which Broker participates, and

    (iv)    information about the Property placed on the Internet by or through any listing service in which Broker participates which is inaccurate or dated, or information about the Property which may remain on the Internet following the expiration of the expiration of this Agreement, including but not limited to photographs and video.

Seller acknowledges and understands that neither Broker nor its agents have control over information about the Property that has been placed on the Internet in connection with the marketing of the Property, whether by or through a listing service or otherwise, including but not limited to photographs and video, and that it may not be possible to remove any such information.

Seller therefore agrees to release and discharge Broker and Broker's agents from any and all claims, demands, rights and causes of action of whatsoever kind and nature not caused by Broker's negligence arising directly or indirectly out of any such marketing services.

WARNING: IT MAY BE A CRIME UNDER FEDERAL AND STATE LAWS TO LISTEN TO OR RECORD AN ORAL COMMUNICATION THROUGH THE USE OF ANY ELECTRONIC, MECHANICAL, OR OTHER DEVICE WITHOUT THE CONSENT OF A PARTY TO THAT COMMUNICATION. If there is a video/audio/surveillance device(s) on the Property, Seller is advised: (i) that no audio surveillance device may be turned on during any showings, open houses, investigations, examinations, or inspections of the Property; and (ii) that the placement of any video surveillance device should not violate a visitor's reasonable expectation of privacy.

(e) **"Coming Soon" Advertising.** ☐ (Check only if applicable) Seller has chosen to market the Property as "Coming Soon," commencing on the Effective Date, in any media Firm may in its discretion select, provided that any "Coming Soon" advertising shall be conducted in accordance with any restrictions and requirements of any listing service in which the Property will be included, a copy of which ☐ are ☒ are not attached to this Agreement. The status of the listing shall be changed to "active" on _____.

Copyright © 2022 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        Bess and Gary

DocuSign Envelope ID: AD7DB4A4-9016-487C-BDA1-FE8601C0FE43

(f) **Office Exclusive.** ☐ (Check only if applicable) Seller has chosen to withhold from publication and dissemination to other participants of any listing service of which Broker is a member, or in which any of Broker's agents participate, and Seller understands and acknowledges that : (i) the rules of any such listing service may require that the listing be filed with the listing service or that the listing service be notified of the listing, but that the listing will not be disseminated to the listing service's participants, and (ii) the listing service may require Broker to provide a certification signed by Seller that Seller does not desire the listing to be disseminated by the listing service.

**NOTE: THE LISTING MUST BE SUBMITTED TO THE LISTING SERVICE AND DISSEMINATED TO ITS PARTICIPANTS WITHIN ONE (1) BUSINESS DAY OF ANY PUBLIC MARKETING OF THE PROPERTY IF REQUIRED BY LISTING SERVICE RULES. PUBLIC MARKETING INCLUDES, BUT IS NOT LIMITED TO, FLYERS DISPLAYED IN WINDOWS, YARD SIGNS, DIGITAL MARKETING ON PUBLIC FACING WEBSITES, BROKERAGE WEBSITE DISPLAYS (INCLUDING IDX AND VOW), DIGITAL COMMUNICATIONS MARKETING (EMAIL BLASTS), MULTIBROKERAGE LISTING SHARING NETWORKS, AND APPLICATIONS AVAILABLE TO THE GENERAL PUBLIC.**

11.     COPYRIGHT: Broker is specifically authorized to use, both before and after the sale or, in the event there is not a sale, after this listing has expired, for any purposes whatsoever, any and all information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property (including any information concerning the price and terms of the sale of the Property, the description of the Property, length of time the Property is on the market, and any other information relating to the Property) ("Seller Content"). Seller hereby assigns to Broker any and all intellectual property rights Seller may have in the Seller Content and to any photographs or video or other reproductions of the property used in connection with the marketing of the property. For purposes of clarity, Broker is the owner of any and all rights in the Seller Content and may further assign, license, sublicense, or otherwise dispose of these rights to any party whatsoever for any purposes whatsoever. If any moral rights are not transferred by the preceding sentences, Seller hereby waives all such rights.

Seller's execution of this Agreement further signifies Seller's representation and warranty that Seller is the sole author and sole owner of all rights in and to the Seller Content; that Seller's contribution to the Seller Content is original and not in the public domain; that Seller's contribution to the Seller Content contains no material from other copyrighted or unpublished work that has been used without the written consent of the copyright owner and/or of the owner of any other rights to or in such other works; that it does not violate or infringe on any personal or property rights of others, whether common law or statutory; that it contains nothing libelous or contrary to law; and that Seller has full power to enter this Agreement. Seller agrees to indemnify and hold harmless Broker for any claims of copyright infringement or other claims arising from any publication or use of the Seller Content.

Broker grants to Seller a non-exclusive, perpetual license for the use of the Seller Content, including the right to display, reproduce, distribute or make derivative works from the Seller Content. For purposes of clarity, the license granted to Seller for the use of the Seller Content applies only to information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property, and not to any information, photographs or video created or provided by or on behalf of Broker. Seller agrees to indemnify and hold harmless Broker for any and all claims arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of this license. Seller understands and agrees that Broker assumes no responsibility for Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of the license granted by Broker, or for any infringement arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content.

12.     DUAL AGENCY: Seller understands that the potential for dual agency will arise if a buyer who has an agency relationship with Broker becomes interested in viewing the Property. Broker may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Broker acts.

(a)     Disclosure of Information. In the event Broker serves as a dual agent, Seller agrees that without permission from the party about whom the information pertains, Broker shall not disclose to the other party the following information:

(1)     that a party may agree to a price, terms, or any conditions of sale other than those offered;
(2)     the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and
(3)     any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute, rule, regulation or North Carolina law.

(b)     Broker's Role as Dual Agent. If Broker serves as agent for both Seller and a buyer in a transaction involving the Property, Broker shall make every reasonable effort to represent Seller and buyer in a balanced and fair manner. Broker shall also make every reasonable effort to encourage and effect communication and negotiation between Seller and buyer. Seller understands and acknowledges that:

(1)     Prior to the time dual agency occurs, Broker will act as Seller's exclusive agent;
(2)     In its separate representation of Seller and buyer, Broker may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Broker;
(3)     Broker is required by law to disclose to Seller and buyer any known or reasonably ascertainable material facts.

Seller agrees Broker shall not be liable to Seller for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

RE/FORM/Listing: 7/1/2022                                                                 Copyright © 2022 Preferred Carolinas Realty, Inc.
                                                                                            All Rights Reserved

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 76201   www.lwolf.com                    Bess and Gary

DocuSign Envelope ID: AD7DB4A4-9016-487C-BDA1-FE8601C0FE43

(c)    Seller's Role. Should Broker become a dual agent, Seller understands and acknowledges that:

(1)    Seller has the responsibility of making Seller's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Broker;

(2)    Seller is fully aware of and understands the implications and consequences of Broker's dual agency role as expressed herein to provide balanced and fair representation of Seller and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

(3)    Seller has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;

(4)    Seller may seek independent legal counsel to assist Seller with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Broker become a dual agent, Seller waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Broker's role as a dual agent. Seller shall have a duty to protect Seller's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Seller wants included in said agreement.

(d)    **Designated Dual Agency. When a real estate firm represents both the buyer and seller in the same real estate transaction, the firm may, in its discretion, offer designated dual agency. If offered, designated dual agency permits the firm, with the prior express approval of both the buyer and seller, to designate one or more agents to represent only the interests of the seller and a different agent(s) to represent only the interests of the buyer, unless prohibited by law.**

An individual agent may not be designated to represent a party in a transaction if that agent has received confidential information concerning the other party in connection with the transaction.

Authorization/Direction *(initial either Dual Agency or Exclusive Representation).*

**Dual Agency. Seller authorizes the Firm to act as a dual agent, representing both the Seller and the buyer, subject to the terms and conditions set forth in Paragraph 12.**

Seller ☐ DOES    ☒ DOES NOT authorize the same individual agent to represent both the Seller and the buyer in a transaction.

*(also initial if Firm offers designated dual agency and Seller authorizes designated dual agency)* **Designated Dual Agency. In addition to authorizing Firm to act as a dual agent, Seller authorizes and directs Firm to designate an individual agent(s) to represent the Seller and a different individual agent(s) to represent the buyer. Firm will practice designated dual agency unless: (i) designated agency would not be permitted by law due to circumstances existing at the time of the transaction, or (ii) Seller authorizes Firm in writing to remain in dual agency only.**

**OR**

_____  _____    **Exclusive Representation. Seller desires exclusive representation at all times during this agreement and does NOT authorize dual agency.**

(f)    Dual Agency Compensation. If Broker acts as a dual agent (including designated dual agency), the total fee Broker expects to receive for its services in representing Seller and the buyer shall be 6% (+/- up to 4%) and $300 (+/- up to $900). THIS WILL IN NO WAY AFFECT OR MODIFY THE AMOUNT OF THE FEE SET FORTH IN PARAGRAPH 5 ABOVE THAT BROKER EXPECTS TO RECEIVE FOR ITS SERVICES IN REPRESENTING SELLER UNDER THIS AGREEMENT. In the event Broker's total fee is different from that described in this subparagraph (f), Broker shall timely disclose the fee to Seller and confirm it in writing before Seller accepts an offer to sell the Property.

Copyright © 2022 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com                Bess and Gary

13.     LEGAL AND PROFESSIONAL ADVICE: Broker recommends that Seller seek legal, tax, and other professional advice relative to any real estate transaction. Broker makes no representation or warranty respecting the advisability of any transaction. Broker is not an expert in matters relating to law (including matters of title to the Property), tax, financing, surveying, structural or mechanical condition, hazardous material, engineering, or other specialized topics. Seller is encouraged to seek expert assistance in such areas. Broker will cooperate with experts engaged by Seller or at the request of Seller, but Broker will have no liability to Seller pertaining to such matters.

14.     **Mediation & Arbitration**

**Who is Covered?** In this Paragraph 14, Seller is referred to as "you" or "your"; Broker, its ultimate parent company HomeServices of America, Inc., and their affiliates, subsidiaries, employees, and agents are collectively referred to as "Broker-Related Party"; Broker-Related Party and you are individually referred to as a "party," and, collectively, the "parties." Any Broker-Related Party may enforce this Paragraph 14 and this Agreement.

**Agreement to Mediate; Small Claims.** If a dispute or other claim or controversy between you and a Broker-Related Party (collectively, "Claims") arises out of this Agreement, or a breach of this Agreement, and if the parties cannot settle the Claims informally, then the parties first must attempt to resolve the Claims by mediation administered by the American Arbitration Association ("AAA") under its Commercial Mediation Procedures in effect on the date of this Agreement (see www.adr.org). If you can show that you cannot afford the initial mediation fee, if any, then the Broker-Related Party will pay that initial mediation fee, but you must pay your own attorney's fees and costs for the mediation and your pro rata share of the AAA's post-filing mediation fees and costs. If a small-claims or equivalent court ("Small Claims Court") in the county where your property is located (the "County Jurisdiction") has jurisdiction over the Claims, and you want to resolve the Claims in the Small Claims Court, then the Broker-Related Party will waive the mediation and arbitration requirements in this Paragraph 14 and the parties will finally resolve the Claims in the Small Claims Court, on the condition that you waive in writing your rights, if any, to (a) appeal the final judgment or decision of the Small Claims Court; or (b) remove or transfer the case from the Small Claims Court to another court.

**Agreement to Arbitrate; Excluded Claims.** If the parties cannot resolve the Claims as set forth above, then, unless limited below, they must submit and resolve the Claims using binding arbitration conducted by the AAA under its Commercial Arbitration Rules ("AAA Rules") (see www.adr.org) in effect on the date of this Agreement, except to the extent that this Paragraph 14 conflicts with the AAA Rules. Alternatively, the parties may agree in writing to use another arbitration provider and/or different rules for the arbitration. You are not, however, required to arbitrate Claims that you are authorized by law or regulation to file in an administrative agency, commission, or board, unless the law or regulations governing these types of Claims require or allow you to first bring them in arbitration.

**The Arbitration & Arbitrator.** The Broker-Related Party or you must commence the arbitration by filing a written demand with the AAA (or the other chosen arbitration provider). The arbitration will take place in the County Jurisdiction. If you can show that you cannot afford the initial arbitration filing fee, then the Broker-Related Party will pay your initial filing fee, but you must pay your own attorney's and expert fees and costs and your pro rata share of the AAA's or other arbitration provider's post-filing fees and costs. The AAA or other arbitration provider must designate one neutral arbitrator for the arbitration. This Agreement and the listing and sale of your property evidences a transaction involving interstate commerce and this Paragraph 14 must be interpreted and the arbitration conducted under the Federal Arbitration Act ("FAA"). The arbitrator will have the exclusive authority to resolve any Claims between the parties relating to the formation, enforceability, enforcement (including by non-signatories to this Agreement), applicability, waiver, or interpretation of this Paragraph 14 under the FAA, including whether all or any part of this Paragraph 14 is void or voidable. The arbitrator must rule on (a) his or her jurisdiction, including any objections with respect to the existence, scope, or validity of this Paragraph 14; (b) the arbitrability of any Claims; and (c) the existence or validity of this Agreement. The arbitrator must interpret this Paragraph 14 as an enforceable contract independent of the other terms of this Agreement, and the arbitrator's decision that this Agreement, or any other part of this Agreement, is null and void will not for that reason alone render this Paragraph 14 invalid or unenforceable.

**Discovery; Confidentiality.** The arbitrator may order discovery sufficient to enable a full and fair exploration of the facts and legal issues underlying the Claims, consistent with the expedited nature of arbitration. The parties and the arbitrator must keep all aspects of the arbitration confidential and not make them part of the public record, including all (a) pleadings, motions, discovery, memoranda, and other work product in the parties' or the arbitrator's files that were prepared for use in an arbitration hearing or conference or used in an arbitral award; and (b) communications made by or to a party, the arbitrator, or any other person in or in connection with the arbitration (the "Confidential Materials"). The parties must not disclose any Confidential Materials in any judicial or administrative proceeding, except that a party may disclose certain Confidential Materials if the parties agree in writing to waive confidentiality over the Confidential Materials.

**Award Limitations.** The arbitrator may award a party any remedy that would have been available had the parties litigated the Claims in court, including money damages and injunctive relief. The arbitrator, however, cannot issue any award that includes any punitive, special, consequential, incidental, indirect, or exemplary damages. Any arbitrator determination, finding, or award will be final and binding on the parties, and either party may confirm any of them in a court with jurisdiction in the County Jurisdiction. A party cannot arbitrate any Claims unless the party commences the arbitration within the statutes of limitation governing the Claims.

RE/FORM/Listing: 7/1/2022

Copyright © 2022 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          Bess and Gary

DocuSign Envelope ID: 9A673865-68E5-4893-A47F-3D9FE3A27CC2
DocuSign Envelope ID: AD7DB4A4-9016-487C-BDA1-FE8601C0FE43

**Jury Waiver & Class Action Waiver.** THE PARTIES WILL HAVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT THEY ARE HEREBY GIVING UP THEIR RIGHTS TO RESOLVE THEIR CLAIMS IN A COURT OR JURY TRIAL. The parties must submit their own, individual Claims for resolution in the arbitration. **The parties hereby waive the following rights:** (a) the right to represent the interests of any other person or join or consolidate any Claims by or against third parties; (b) the right to bring, join, or maintain any Claims (in arbitration or otherwise) where the party or another person seeks to act (i) as a representative or member of a class, collective, or mass action, (ii) in the general-public interest, or (iii) in any private-attorney-general capacity; and (c) the right to participate in a class-action lawsuit or class-wide arbitration; and (d) the right to participate as a representative or member in a class arbitration or any consolidation of individual arbitrations (collectively, the "Class Action Waivers"). The Class Action Waivers will control and supersede any contrary agreements, statements, or rules in the AAA Rules or other arbitration provider's rules.

**Validity.** If any part of this Paragraph 14, other than the Class Action Waivers, is determined to be invalid or unenforceable, then the remaining parts of this Section 14 still will remain fully enforceable. If any part of the Class Action Waivers is determined to be unenforceable against a party or another person, then the party or the other person will have the unilateral right to determine whether to proceed in arbitration or require that the Claims be brought in a court with jurisdiction over the Claims, on the condition that a determination that the Class Action Waivers are unenforceable will be subject to appeal.

Seller's initials:

15.     Seller acknowledges receipt of the brochure describing the home warranty offered through HSA Home Warranty program. In the above-mentioned brochure, Seller accepted or declined coverage. Specific details of the coverage provided by HSA Home Warranty program, including coverage limits, exclusions, deductibles and other information may be obtained from Broker upon request.

Seller's initials:

16.     ADDITIONAL TERMS AND CONDITIONS: The following additional terms and conditions shall also be a part of this Agreement:
**N/A**

17.     ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between the parties; any prior agreements pertaining thereto, whether oral or written, have been merged and integrated into this Agreement. There shall be no modification of any of the terms of this. Agreement unless such modification has been agreed to in writing and signed by all parties.

**NOTE: The North Carolina Real Estate Commission publishes a series of Q&A brochures that address common questions on a variety of topics relating to real estate transactions, including offer and acceptance, earnest money deposits, home inspections, and real estate closings. They are available free of charge on the Commission's website at www.ncrec.gov.**

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK
SIGNATURE PAGE FOLLOWS

RE/FORM/Listing: 7/1/2022

Copyright © 2022 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          Bess and Gary

DocuSign Envelope ID: AD7DB4A4-9016-487C-BDA1-FE8601C0FE43

Seller: _____ Bess Kimberly Hatley _____     _____ _Beer# Hatley_ _____     9/21/2022 | 4:08 PM E
              Print Name                                        1BEA50BE Signature                             Date

Contact Information: _____ _____ _____
                              Home                          Work                          Cell
                     _____ _____
                              e-mail

Mailing Address: _____ _____

Seller: _____ Gary Edward Hatley _____     _____ _Gary Hatley_ _____     9/21/2022 | 7:36 PM
              Print Name                                        FE89AF4DA Signature                        Date

Contact Information: _____ _____ _____
                              Home                          Work                          Cell
                     _____ _____
                              e-mail

Mailing Address: 110 Oakwood Dr, Winston Salem, NC 27103-1957 _____

Broker: Preferred Carolinas Realty, Inc.     Firm License Number C9751     Phone: _____ **(336)768-3300**

By: _____ _Cindy Rosenberg_ _____                 79998                9/21/2022 | 3:54 PM E
              Individual Agent Signature                       Individual License #              Date
              Cindy Rosenberg

Office: **Berkshire Hathaway Home Services** _____
Office Phone: **(336)650-8330** _____     Fax: _____
e-mail: **cindy.rosenberg@bhhscarolinas.com** _____

RE/FORM/Listing: 7/1/2022                              Copyright © 2022 Preferred Carolinas Realty, Inc.
                                                                  All Rights Reserved

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          Bess and Gary

DocuSign Envelope ID: F1C39574-B3B1-4334-B5FD-B0B32E86929B



**BERKSHIRE HATHAWAY**
HomeServices

Carolinas Realty
York Simpson Underwood Realty
Yost & Little Realty
Pinehurst Realty Group

WE MAKE GREAT NEIGHBORS.®

## MEDIATION & ARBITRATION AGREEMENT

**Who is Covered?** In this Mediation & Arbitration Agreement ("Agreement"), Customer(s) is referred to as "you" or "your"; Preferred Carolinas Realty, Inc. dba Berkshire Hathaway HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, Berkshire Hathaway HomeServices Yost & Little Realty, and Berkshire Hathaway HomeServices Pinehurst Realty Group, its ultimate parent company HomeServices of America, Inc., and their affiliates, subsidiaries, employees, and agents are collectively referred to as "Broker-Related Party"; Broker-Related Party and you are individually referred to as a "party," and, collectively, the "parties." Any Broker-Related Party may enforce this Agreement.

**Agreement to Mediate; Small Claims.** If a dispute or other claim or controversy between you and a Broker-Related Party (collectively, "Claims") arises out of this Agreement, or a breach of this Agreement, and if the parties cannot settle the Claims informally, then the parties first must attempt to resolve the Claims by mediation administered by the American Arbitration Association ("AAA") under its Commercial Mediation Procedures in effect on the date of this Agreement (see www.adr.org). If you can show that you cannot afford the initial mediation fee, if any, then the Broker-Related Party will pay that initial mediation fee, but you must pay your own attorney's fees and costs for the mediation and your pro rata share of the AAA's post-filing mediation fees and costs. If a small-claims or equivalent court ("Small Claims Court") in the county where Broker's principal business office is located (the "County Jurisdiction") has jurisdiction over the Claims, and you want to resolve the Claims in the Small Claims Court, then the Broker-Related Party will waive the mediation and arbitration requirements in this Agreement and the parties will finally resolve the Claims in the Small Claims Court, on the condition that you waive in writing your rights, if any, to (a) appeal the final judgment or decision of the Small Claims Court; or (b) remove or transfer the case from the Small Claims Court to another court.

**Agreement to Arbitrate; Excluded Claims.** If the parties cannot resolve the Claims as set forth above, then, unless limited below, they must submit and resolve the Claims using binding arbitration conducted by the AAA under its Commercial Arbitration Rules ("AAA Rules") (see www.adr.org) in effect on the date of this Agreement, except to the extent that this Agreement conflicts with the AAA Rules. Alternatively, the parties may agree in writing to use another arbitration provider and/or different rules for the arbitration. You are not, however, required to arbitrate Claims that you are authorized by law or regulation to file in an administrative agency, commission, or board, unless the law or regulations governing these types of Claims require or allow you to first bring them in arbitration.

**The Arbitration & Arbitrator.** The Broker-Related Party or you must commence the arbitration by filing a written demand with the AAA (or the other chosen arbitration provider). The arbitration will take place in the County Jurisdiction. If you can show that you cannot afford the initial arbitration filing fee, then the Broker-Related Party will pay your initial filing fee, but you must pay your own attorney's and expert fees and costs and your pro rata share of the AAA's or other arbitration provider's post-filing fees and costs. The AAA or other arbitration provider must designate one neutral arbitrator for the arbitration. This Agreement evidences a transaction involving interstate commerce and this Agreement must be interpreted and the arbitration conducted under the Federal Arbitration Act ("FAA"). The arbitrator will have the exclusive authority to resolve any Claims between the parties relating to the formation, enforceability, enforcement (including by non-signatories to this Agreement), applicability, waiver, or interpretation of this Agreement under the FAA, including whether all or any part of this Agreement is void or voidable. The arbitrator must rule on (a) his or her jurisdiction, including any objections with respect to the existence, scope, or validity of this Agreement; (b) the arbitrability of any Claims; and (c) the existence or validity of this Agreement.

**Discovery; Confidentiality.** The arbitrator may order discovery sufficient to enable a full and fair exploration of the facts and legal issues underlying the Claims, consistent with the expedited nature of arbitration. The parties and the arbitrator must keep all aspects of the arbitration confidential and not make them part of the public record, including all (a) pleadings, motions, discovery, memoranda, and other work product in the parties' or the arbitrator's files that were prepared for use in an arbitration hearing or conference or used in an arbitral award; and (b) communications made by or to a party, the arbitrator, or any other person in or in connection with the arbitration (the "Confidential Materials"). The parties must not disclose any Confidential Materials in any judicial or administrative proceeding, except that a party may disclose certain Confidential Materials if the parties agree in writing to waive confidentiality over the Confidential Materials.

**Award Limitations.** The arbitrator may award a party any remedy that would have been available had the parties litigated the Claims in court, including money damages and injunctive relief. The arbitrator, however, cannot issue any award that includes any punitive, special, consequential, incidental, indirect, or exemplary damages. Any arbitrator determination, finding, or award will be final and binding on the parties, and either party may confirm any of them in a court with jurisdiction in the County Jurisdiction. A party cannot arbitrate any Claims unless the party commences the arbitration within the statutes of limitation governing the Claims.

**Jury Waiver & Class Action Waiver.** THE PARTIES WILL HAVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT THEY ARE HEREBY GIVING UP THEIR RIGHTS TO RESOLVE THEIR CLAIMS IN A COURT OR JURY TRIAL. The parties must submit their own, individual Claims for resolution in the arbitration. **The parties hereby waive the following rights:** (a) the right to represent the interests of any other person or join or consolidate any Claims by or against third parties; (b) the right to bring, join, or maintain any Claims (in arbitration or otherwise) where the party or another person seeks to act (i) as a representative or member of a class, collective, or mass action, (ii) in the general-public interest, or (iii) in any private-attorney-general capacity; and (c) the right to participate in a class-action lawsuit or class-wide arbitration; and (d) the right to participate as a representative or member in a class arbitration or any consolidation of individual arbitrations (collectively, the "Class Action Waivers"). The Class Action Waivers will control and supersede any contrary agreements, statements, or rules in the AAA Rules or other arbitration provider's rules.

**Validity.** If any part of this Agreement, other than the Class Action Waivers, is determined to be invalid or unenforceable, then the remaining parts of this Agreement still will remain fully enforceable. If any part of the Class Action Waivers is determined to be unenforceable against a party or another person, then the party or the other person will have the unilateral right to determine whether to proceed in arbitration or require that the Claims be brought in a court with jurisdiction over the Claims, on the condition that a determination that the Class Action Waivers are unenforceable will be subject to appeal.

**CUSTOMER(S):**                                                  Preferred Carolinas Realty, Inc.

Mark Anthony Lacatena Trustee (Lacatena Living Trust)  **BY:** Ralph Thomas

MARK ANTHONY LACATENA TRUSTEE                          **RALPH THOMAS**
                                                        **ITS AUTHORIZED**
                                                        **REPRESENTATIVE**

_____ **DATE** _____      **DATE:** 4/4/2023 | 7:01 PM PDT

*RE/FORM/Arbitration Agreement: 7/1/2022*          *Page 2 of 2*          *Copyright © 2022 Preferred Carolinas Realty, Inc.*
*All Rights Reserved*

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          522 Guilford



## BERKSHIRE HATHAWAY
HomeServices

Carolinas Realty
York Simpson Underwood Realty
Yost & Little Realty
Pinehurst Realty Group

*We make great neighbors.*

# EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This Exclusive Right To Sell Listing Agreement ("Agreement") is entered into between **Rahul N Kaikini, Shashi Kaikini**
_____ as Seller(s) ("Seller") and Preferred Carolinas Realty, Inc. dba Berkshire Hathaway
HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, Berkshire Hathaway HomeServices Yost &
Little Realty, and Berkshire Hathaway HomeServices Pinehurst Realty Group as Listing Broker ("Broker") for the property described below
("Property") and known as or legally described as:

Street Address: **2015 Waterford Village Dr**
City: **Clemmons** Zip code: **27012-8586**
County: **Forsyth** , North Carolina.
Legal Description: **;PIN:  5883-27-2311.00;  Deed Book: 002508, Deed Page: 03278; Tax**
**Block: 4234B, Tax Lot: 023** .

1.    TERM OF AGREEMENT.  In consideration of Broker's services to procure a buyer for the Property, Broker is hereby granted the exclusive
right to sell the Property for a period beginning on _____ **October 15** _____ , **2017** _____ and expiring at 11:59 P.M. on
_____ **April 15** _____ , 2018 unless terminated sooner by Broker at its option.

2.    LISTING PRICE AND TERMS: Seller agrees to list the Property, including all fixtures described in paragraph 3, for sale at a price of
$ ___ *369,000* _____ ("Listing Price") on the following terms:
**X** Cash      **X** FHA      **X** VA      ___ USDA      **X** Conventional      ___ Loan Assumption
___ Seller Financing          Other: _____ .

Seller agrees to sell the Property for the Listing Price and terms set forth above, or at any other price and on any other terms acceptable to Seller.

3.    FIXTURES AND EXCLUSIONS.
   (a) Specified Items: Unless identified in subparagraph (d) below, the following items, including all related equipment and remote control
   devices, if any, are deemed fixtures and shall convey, included in the Purchase Price free of liens:

- Alarm and security systems (attached) for security, fire, smoke, carbon monoxide or other toxins with all related access codes, sensors, cameras, dedicated monitors, hard drives, video recorders, power supplies and cables; doorbells/chimes
- All stoves/ranges/ovens; built-in appliances; attached microwave oven; vent hood
- Fuel tank(s) whether attached or buried and including any contents that have not been used, removed or resold to the fuel provider as of Settlement. **NOTE:** Seller's use, removal or resale of fuel in any fuel tank is subject to seller's obligation under Paragraph 8(c) to provide working, existing utilities through the earlier of Closing or possession by Buyer.
- Garage door openers with all controls
- Generators that are permanently wired
- Invisible fencing with power supply, controls and receivers
- Landscape and outdoor trees and plants (except in moveable containers); raised garden; landscape and foundation lighting; outdoor sound systems; permanent irrigation systems and controls; rain barrels; landscape water features; address markers
- Mailboxes; mounted package and newspaper receptacles

- Antennas; satellite dishes and receivers
- Basketball goals and play equipment (permanently attached or in-ground)
- Ceiling and wall-attached fans; light fixtures (including existing bulbs)
- Fireplace insert; gas logs or starters; attached fireplace screens; wood or coal stoves
- Floor coverings (attached)
- Mirrors attached to walls, ceilings, cabinets or doors; all bathroom wall mirrors
- Storage shed; utility building
- Swimming pool (excluding inflatable); spa; hot tub
- Solar electric and solar water heating systems
- Sump-pumps, radon fans and crawlspace ventilators; de-humidifiers that are permanently wired
- Surface-mounting brackets for television and speakers; recess-mounted speakers; mounted intercom system
- Water supply equipment, including filters, conditioning and softener systems; re-circulating pumps; well pumps and tanks
- Window/Door blinds and shades, curtain and draper rods and brackets, door and window screens and combination doors, awnings and storm windows.

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

(b) FIXTURES AND EXCLUSIONS.
Items Leased or Not Owned: Any item which is leased or not owned by Seller, such as fuel tanks, satellite dishes and receivers, appliances, and alarm and security systems must be identified here and shall not convey:

**N/A**

_____
_____
_____

(c) Other Fixtures/Unspecified Items: Unless identified in subparagraph (d) below, any other item legally considered a fixture is included in the Purchase Price free of all liens.

(d) Other Items That Do Not Convey: The following items shall not convey *(identify those items to be excluded under subparagraphs (a) and (c)):*

**N/A**

_____
_____

Seller shall repair any damage caused by removal of any items excepted above.

4. PERSONAL PROPERTY. The following personal property shall be transferred to Buyer free of liens at no value at the closing on the sale of the Property:

**Refrigerator**

_____
_____

5. BROKER'S COMPENSATION: Seller agrees to pay Broker compensation in the amount of $ **200.00** _____ plus **6.000** % of the gross contract sales price of the Property, which compensation shall include any compensation paid by Broker to any cooperating real estate brokers. Note that Broker does not offer any compensation to non-cooperating real estate brokers who are not members of the Multiple Listing Service ("MLS"). Seller authorizes the payment of the compensation owed to Broker pursuant to this Agreement to be paid directly to Broker from Seller's proceeds from the closing on the sale of the Property.

The compensation owed to Broker shall be deemed earned upon Broker, a cooperating real estate broker, Seller, or anyone else procuring or producing a ready, willing and able buyer(s) at the Listing Price and terms agreed to herein by Seller, or at any other price or terms acceptable to Seller, during the term of this Agreement. If any agreement for the sale or transfer of the Property does not have a selling price, the percentage component of the compensation owed to Broker shall be calculated based on the fair market value of the Property as of the effective date of such agreement. The compensation earned as set forth above shall be due and payable immediately upon the earlier of:

(a) The closing on the sale of the Property;
(b) Seller's refusal to sign a contract or agreement for the sale of Property at the Listing Price and terms set forth herein, or on any other terms acceptable to Seller;
(c) Seller's breach of any contract or agreement for the sale or transfer of the Property;
(d) Seller's agreement with any buyer(s) to unreasonably modify or cancel any contract or agreement for the sale or transfer of the Property;
(e) Seller's breach of this Agreement.

Provided, however, that in the event the Property is not sold during the term of this Agreement, if within 180 days after expiration of this Agreement (the "Protection Period") Seller sells or enters into an agreement to sell the Property, directly or indirectly, including but not limited to any form of option, exchange, lease/purchase, conveyance or transfer upon any terms whatsoever, to any person or entity with whom Seller, Broker, or any cooperating real estate broker communicated during the term of this Agreement, and whose name(s) Broker has submitted to Seller in writing within 15 days of the expiration of this Agreement, the compensation owed to Broker pursuant to this Agreement shall be immediately due and payable to Broker. However, Seller shall not be obligated to pay the compensation owed to Broker pursuant to this Agreement if a valid listing agreement is entered into with another licensed real estate broker after the expiration of this Agreement and the Property is sold, exchanged, leased, conveyed or transferred during the Protection Period.

Seller acknowledges and agrees that Broker may be offered compensation from other persons or entities in connection with the sale of the Property, and Seller agrees to permit Broker to receive any such additional compensation. Broker will timely disclose any such additional compensation to Seller.

6. BROKER'S DUTIES: Broker accepts the exclusive listing granted by this Agreement and shall use its best efforts and due diligence to solicit and procure a ready, willing and able buyer to purchase the Property at the Listing Price and terms set forth in this Agreement. Broker further agrees to:

(a) Perform the terms of this Agreement, exercise reasonable care and skill, and promote Seller's interests;
(b) Assist Seller in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to the offers and the counteroffers;
(c) Accept delivery of and present to Seller in a timely manner all offers and counteroffers to sell the Property;
(d) Respond to Seller's questions relating to the offers, counteroffers, notices, and contingencies.
(e) Account in a timely manner for all money and property received on behalf of Seller;
(f) Not disclose any confidential information about Seller, unless disclosure is authorized pursuant to this Agreement or is required by statute, rule, regulation or North Carolina law, or the failure to disclose such information would constitute a material misrepresentation.

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

Rahul Kaikini

**BROKER SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT.**

7.    SELLER'S DUTIES: Seller agrees to cooperate with Broker in marketing the Property for sale, including making the Property available for showings at reasonable times on reasonable notice. Seller further agrees to complete all required disclosure forms, including but not limited to the Residential Property and Owner's Association Disclosure Statement (unless exempt), the Mineral and Oil and Gas Rights Mandatory Disclosure Statement (unless exempt), and the Lead-Based Paint or Lead-Based Paint Hazard Addendum, if applicable to the Property.

(a)    Seller represents that Seller holds title to the Property in fee simple, and that Seller does not know or have reason to know of circumstances or encumbrances that would prohibit Seller from conveying fee simple marketable title to the Property to a ready, willing and able buyer except as follows:

N/A

(b)    If required by N.C.G.S. §44A-11.1, Seller shall designate a Lien Agent, and provide Broker a copy of the appointment of Lien Agent as soon as reasonably possible.

8.    SELLER REPRESENTATIONS: Seller acknowledges and agrees that Broker is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which Broker knows or reasonably should know. Seller hereby makes the following representations concerning the Property:

(a)    **Flood Hazard Disclosure/Insurance.** To the best of Seller's knowledge, the Property ☐ is ☒ is not located partly or entirely within a designated Special Flood Hazard Area. The Seller ☐ does ☒ does not currently maintain flood hazard insurance on the Property.

(b)    **Synthetic Stucco.** To the best of Seller's knowledge, the Property ☒ has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system," commonly known as "EIFS" or "synthetic stucco," unless disclosed as follows:

(c)    **Owners' Association.**

(1) Complete ONLY if the Residential Property and Owner's Association Disclosure Statement is required: The name, address and telephone number of the president of the owner's association or the association manager is:

Waterford HOA; David Laws, P.O. Box 834, Clemmons, NC 27012; 336-972-4266

Owner's association website address, if any:

(2) Complete ONLY if New Construction or where the Residential Property and Owner's Disclosure Statement is NOT required: To the best of Seller's knowledge there ☐ is ☐ is not an owners' association which imposes various mandatory covenants, conditions and restrictions upon the Property. If there is an owners' association, Seller agrees to promptly complete an Owners' Association Disclosure and Addendum For Properties Exempt from Residential Property Disclosure Statement at Seller's expense and to attach it as an addendum to any contract for the sale of the Property.

(d)    **Ownership.** Seller represents that Seller:
☒ has owned the Property for at least one year;
☐ has owned the Property for less than one year.

(e)    **Receipt of Sample Forms.**
☒ Seller acknowledges receipt of a sample copy of an Offer to Purchase and Contract (Form 2-T) or Offer to Purchase and Contract—New Construction (Form 800-T), as may be appropriate for review purposes.
☒ Seller acknowledges receipt of a sample copy of a Professional Services Disclosure and Election Form (Form #760) for review purposes.

(f)    **Current Liens. Seller represents to the best of Seller's knowledge:**
(1)    The Property ☒ is ☐ is not encumbered by a deed of trust or mortgage. *Complete any of the following where applicable:*
(i)    There is a first deed of trust or mortgage on the Property securing a loan held by:
Lender Name: _Alkgo C1_
Approximate balance: $ _30,000. 00_
Lender Phone #:
Lender Address:
(ii)    There is a second deed of trust or mortgage on the Property securing a loan held by:
Lender Name:

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Rahul Kaikini

Approximate balance: $ _____

Lender Phone #: _____

Lender Address: _____

   (iii)    There is a deed of trust or mortgage on the Property securing an equity line of credit held by:

Lender Name: _____

Approximate balance: $ _____

Lender Phone #: _____

Lender Address: _____

(2)    Seller ☒ is current on all payments for the loans identified in numbered items (i), (ii) and (iii) above except as specified in (7) below.

(3)    Seller ☒ is not in default on any loan identified in numbered items (i), (ii) and (iii) above and has not received any notice(s) from the holder of any loan identified in numbered items (i), (ii) and (iii) above or from any other lien holder of any kind, regarding a default under the loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure except as specified in (7) below.

(4)    There ☒ are not any liens secured against the Property for Federal, State or local income taxes, unpaid real property taxes, unpaid condominium or homeowners' association fees, mechanics', laborers' or materialmens' liens, or other liens affecting the Property, and Seller has no knowledge of any matter that might result in a lien affecting the Property except as specified in (7) below.

(5)    There ☒ are not any judgments against Seller affecting the Property, and Seller has no knowledge of any matter that might result in a judgment that may potentially affect the Property as specified in (7) below.

(6)    There ☒ are not any Uniform Commercial Code (UCC) fixture filings affecting the Property, and Seller has no knowledge of any matter that might result in a UCC fixture filing affecting the Property except as specified in (7) below.

(7)    Specify any information, including approximate balances, required by Seller representations (2) through (6) above (**NOTE**: Outstanding liens may affect Seller's proceeds.)

_____

_____

(g)   **Bankruptcy.** Seller currently:

   (1)    ☐ is ☒ is not under bankruptcy protection under United States law.

   (2)    ☐ is ☒ is not contemplating seeking bankruptcy protection during the term of this Agreement.

(h)   **Access.** Seller represents that the Property ☒ does ☐ does not have legal access to a public right of way. If access is by private road/easement/other, Seller further represents that there ☐ is ☒ is not an agreement regarding the maintenance of such private road/easement/other means of access. If applicable, Seller agrees to promptly provide Broker information pertaining to any such agreement.

(i)   **Lease(s).** To the best of Seller's knowledge, the Property ☐ is ☒ is not subject to any lease(s). If applicable:

   (i)    Seller agrees to promptly provide Broker a copy of any such lease(s) or a written statement of the terms of any oral lease(s);

   (ii)    If the Property is managed by someone other than Seller, the manager's name and contact information is as follows:

_____

Seller authorizes any such manager to release and disclose to Broker any relevant information about any lease(s) and to cooperate with Broker in the sale of the Property.

(j)   **FHA Appraisal.** To the best of Seller's knowledge, a FHA appraisal ☐ has ☒ has not been performed on the Property within four months prior to the Effective Date. If applicable, Seller agrees to promptly provide Firm a copy of any such appraisal if available. NOTE: Any such appraisal may or may not be binding on a buyer who intends to obtain FHA financing.

(k)   **Special Assessments.** To the best of Seller's knowledge, there are no proposed or confirmed special assessments (as defined in the sample contract form provided to Seller) regarding the Property except as follows (Insert "none" or the identification of such assessments, if any):

**none**

(l)   Fuel Tank/Fuel: To the best of Seller's knowledge, there ☐ is ☒ is not a fuel tank(s) located on the Property. *If "yes" complete the following to the best of Seller's knowledge.*

Ownership of tank 1: ☐ owned ☐ leased. If leased, the name and contact information of tank lessor/fuel vendor is: _____

_____ .

Location of tank 1: ☐ above ground ☐ below ground

Type of fuel:    ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____

Ownership of tank 2: ☐ owned ☐ leased. If leased, the name and contact information of tank lessor/fuel vendor is: _____

_____ .

Location of tank 2: ☐ above ground ☐ below ground

Type of fuel:    ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

If, during the term of this Agreement, Seller becomes aware that any of the representations set forth in this paragraph 8 are incorrect or no longer accurate, Seller shall promptly notify Broker and cooperate with Broker in taking appropriate corrective action.

9.     HOME INSPECTION: Seller is advised to obtain a home inspection for the purpose of evaluating the condition of the Property in order to enhance its marketability and to help reduce concerns of prospective buyers. Seller ☐ agrees ☒ does not agree to obtain and pay for a home inspection by a licensed NC Home Inspector within _____ days after the execution of this Agreement.

     ☒     Seller acknowledges receipt of a copy of *Questions and Answers on: Home Inspections* by the NC Real Estate Commission.

10.     MARKETING ACTIVITIES:

     (a)     **Commencement of Marketing.** Broker is authorized to commence marketing the Property as described in subparagraph (b) below on the Effective Date OR if selected ☒ on (insert date only if applicable) **October 23, 2017** ("Delayed Marketing Date").

**NOTE: If a Delayed Marketing Date is selected, Seller understands and acknowledges the following:**
- **THE PROPERTY MAY NOT BE SHOWN BY ANY REAL ESTATE AGENT, INCLUDING BROKER'S AGENTS, PRIOR TO THE DELAYED MARKETING DATE.**
- **BROKER IS OBLIGATED TO PRESENT TO SELLER ANY OFFERS ON THE PROPERTY THAT MAY BE SUBMITTED TO BROKER PRIOR TO THE DELAYED MARKETING DATE.**
- **IT IS IN THE BEST INTEREST OF MOST SELLERS TO GET THE HIGHEST POSSIBLE PRICE ON THE BEST TERMS FOR THEIR PROPERTY, AND MAXIMIZING EXPOSURE OF THEIR PROPERTY ADVANCES THAT INTEREST. ACCEPTING AN OFFER ON THE PROPERTY BEFORE IT IS FULLY EXPOSED TO THE WIDEST GROUP OF POTENTIAL BUYERS MAY DENY SELLER THE BEST OPPORTUNITY TO ATTRACT OFFERS AT THE HIGHEST PRICE AND BEST TERMS.**

     (b)     **Marketing Authorization.** Seller authorizes Broker to market the Property as described below:

     (i)     Cooperate and share the commission payable under this Agreement with other brokers including brokers who have been employed as buyer's agents, subagents, dual agents, or designated agents, subject, where applicable, to authorization as required by law;

     (ii)     Submit pertinent information, including virtual tours and images when applicable, concerning the Property to any Multiple Listing Service ("MLS") organizations to which Broker subscribes;

     (iii)     Provide to any MLS to which Broker subscribes, for dissemination to others, timely notice of status changes affecting the Property, sales information, including Seller's name, price, and other information concerning the Property for use of the members of such services, to compile reliable statistics, and to establish market value for other properties, and to report sales information about the property, including the price at which the property sold, or is contracted to be sold, to the MLS for dissemination to MLS participants, subscribers, and other licensees or users of the MLS database compilation;

     (iv)     Disseminate data about the Property and other information, including Seller's name, price, and other information concerning the Property supplied by, or on behalf of Seller, including creative works depicting the Property, such as virtual tours, images, and any textual descriptions of the Property (collectively referred to as "Content"), to MLS Participants, Subscribers and other licensees or users of the MLS database compilation, or any other MLS in which Broker participates, and to further disseminate, or permit the MLS or other MLS participants to disseminate such Content to potential purchasers through websites on the Internet. Further, Broker is authorized to otherwise advertise the Property in any manner deemed appropriate by Broker, including but not limited to advertising on the Internet, virtual tours, web-sites, trade journals and any other medium, and communications via e-mail and facsimile;

     (v)     Place a "For Sale," "Under Contract," "Sale Pending," and other similar signs on the Property and to remove all other signs during the term of this Agreement;

     (vi)     Enter the Property at reasonable times and with reasonable notice for the purpose of evaluation, preview, or showing the Property to prospective purchasers or other brokers;

     (vii)     Possess and maintain a key to the Property, and make use of a "Lock Box" during the term of this Agreement; and

     (viii)     Conduct open houses of the Property at such times as Seller and Broker may agree.

     (c)     **"Coming Soon" Advertising.** ☐ (Check only if applicable). If applicable, Broker is authorized to market the Property as "Coming Soon," commencing on the Effective Date, in any media Broker may in its discretion select, provided that any "Coming Soon" advertising shall be conducted in accordance with any restrictions and requirements of any listing service in which the Property will be included, a copy of which ☐ are ☒ are not attached to this Agreement.

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

DocuSign Envelope ID: 01068325-2071-41B1-AFCE-6A09D129C188

    (2)    In its separate representation of Seller and buyer, Broker may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Broker;

    (3)    Broker is required by law to disclose to Seller and buyer any known or reasonably ascertainable material facts.

Seller agrees Broker shall not be liable to Seller for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

    (c)    Seller's Role. Should Broker become a dual agent, Seller understands and acknowledges that:

    (1)    Seller has the responsibility of making Seller's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Broker;

    (2)    Seller is fully aware of and understands the implications and consequences of Broker's dual agency role as expressed herein to provide balanced and fair representation of Seller and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

    (3)    Seller has determined that the benefits of the dual agency outweigh any disadvantages or adverse consequences;

    (4)    Seller may seek independent legal counsel to assist Seller with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Broker become a dual agent, Seller waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Broker's role as a dual agent. Seller shall have a duty to protect Seller's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Seller wants included in said agreement.

    (d)    **Authorization** *(initial only ONE).*

**Seller authorizes Broker to act as a dual agent, representing both the Seller and the buyer, subject to the terms and conditions set forth in Paragraph 12.**

Seller desires exclusive representation at all times during this agreement and does NOT authorize Broker to act in the capacity of dual agent. *If Seller does not authorize Broker to act as a dual agent, the remainder of this paragraph shall not apply.*

    (e)    **Designated Agent Option** *(Initial only if applicable).*

**Seller hereby authorizes Broker to designate an individual agent(s) to represent the Seller. The individual designated agent(s) shall represent only the interests of the Seller to the extent permitted by law.**

**(NOTE:** When dual agency arises, an individual agent shall not practice designated agency and shall remain a dual agent if the individual agent has actually received confidential information concerning a buyer client of Broker in connection with the transaction or if designated agency is otherwise prohibited by law.)

    (f)    Dual Agency Compensation. If Broker acts as a dual agent (including designated agency), the total fee Broker expects to receive for its services in representing Seller and the buyer shall be 6% (+/- up to 4%) and $300 (+/- up to $900). THIS WILL IN NO WAY AFFECT OR MODIFY THE AMOUNT OF THE FEE SET FORTH IN PARAGRAPH 5 ABOVE THAT BROKER EXPECTS TO RECEIVE FOR ITS SERVICES IN REPRESENTING SELLER UNDER THIS AGREEMENT. In the event Broker's total fee is different from that described in this subparagraph (f), Broker shall timely disclose the fee to Seller and confirm it in writing before Seller accepts an offer to sell the Property.

13.    LEGAL AND PROFESSIONAL ADVICE: Broker recommends that Seller seek legal, tax, and other professional advice relative to any real estate transaction. Broker makes no representation or warranty respecting the advisability of any transaction. Broker is not an expert in matters relating to law (including matters of title to the Property), tax, financing, surveying, structural or mechanical condition, hazardous material, engineering, or other specialized topics. Seller is encouraged to seek expert assistance in such areas. Broker will cooperate with experts engaged by Seller or at the request of Seller, but Broker will have no liability to Seller pertaining to such matters.

14.    ARBITRATION AGREEMENT: Any Dispute, claim or controversy between Seller and Broker shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This agreement to arbitrate and the arbitration proceeding shall be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is inapplicable, unenforceable, or invalid, the North Carolina Revised Uniform Arbitration Act shall govern this Arbitration Agreement and the arbitration proceeding.

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    Rahul Kaikini

(d) **Seller Acknowledgement.** Seller acknowledges and understands that while the marketing services identified above will facilitate the showing and sale of the Property, there are inherent risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of Broker, including but not limited to:

(1) unauthorized use of a lock/key box,

(2) control of visitors during or after a showing or an open house, including the taking and use of photographs and videos of the Property,

(3) inappropriate use of information about the Property placed on the Internet or furnished to any MLS in which Broker participates, and

(4) information about the Property placed on the Internet by or through any listing service in which Broker participates which is inaccurate or dated.

Seller therefore agrees to release and discharge Broker and Broker's agents from any and all claims, demands, rights and causes of action of whatsoever kind and nature not caused by Broker's negligence arising directly or indirectly out of any such marketing services.

WARNING: IT MAY BE A CRIME UNDER FEDERAL AND STATE LAWS TO LISTEN TO OR RECORD AN ORAL COMMUNICATION THROUGH THE USE OF ANY ELECTRONIC, MECHANICAL, OR OTHER DEVICE WITHOUT THE CONSENT OF A PARTY TO THAT COMMUNICATION. If there is a video/audio/surveillance device(s) on the Property, Seller is advised: (i) that no audio surveillance device may be turned on during any showings, open houses, investigations, examinations or inspections of the Property; and (ii) that the placement of any video surveillance device should not violate a visitor's reasonable expectation of privacy.

11. COPYRIGHT: Broker is specifically authorized to use, both before and after the sale or, in the event there is not a sale, after this listing has expired, for any purposes whatsoever, any and all information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property (including any information concerning the price and terms of the sale of the Property, the description of the Property, length of time the Property is on the market, and any other information relating to the Property) ("Seller Content). Seller hereby assigns to Broker any and all intellectual property rights Seller may have in the Seller Content and to any photographs or video or other reproductions of the property used in connection with the marketing of the property. For purposes of clarity, Broker is the owner of any and all rights in the Seller Content and may further assign, license, sublicense, or otherwise dispose of these rights to any party whatsoever for any purposes whatsoever. If any moral rights are not transferred by the preceding sentences, Seller hereby waives all such rights.

Seller's execution of this Agreement further signifies Seller's representation and warranty that Seller is the sole author and sole owner of all rights in and to the Seller Content; that Seller's contribution to the Seller Content is original and not in the public domain; that Seller's contribution to the Seller Content contains no material from other copyrighted or unpublished work that has been used without the written consent of the copyright owner and/or of the owner of any other rights to or in such other works; that it does not violate or infringe on any personal or property rights of others, whether common law or statutory; that it contains nothing libelous or contrary to law; and that Seller has full power to enter this Agreement. Seller agrees to indemnify and hold harmless Broker for any claims of copyright infringement or other claims arising from any publication or use of the Seller Content.

Broker grants to Seller a non-exclusive, perpetual license for the use of the Seller Content, including the right to display, reproduce, distribute or make derivative works from the Seller Content. For purposes of clarity, the license granted to Seller for the use of the Seller Content applies only to information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property, and not to any information, photographs or video created or provided by or on behalf of Broker. Seller agrees to indemnify and hold harmless Broker for any and all claims arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of this license. Seller understands and agrees that Broker assumes no responsibility for Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of the license granted by Broker, or for any infringement arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content.

12. DUAL AGENCY: Seller understands that the potential for dual agency will arise if a buyer who has an agency relationship with Broker becomes interested in viewing the Property. Broker may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Broker acts.

(a) Disclosure of Information. In the event Broker serves as a dual agent, Seller agrees that without permission from the party about whom the information pertains, Broker shall not disclose to the other party the following information:

(1) that a party may agree to a price, terms, or any conditions of sale other than those offered;

(2) the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and

(3) any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute, rule, regulation or North Carolina law.

(b) Broker's Role as Dual Agent. If Broker serves as agent for both Seller and a buyer in a transaction involving the Property, Broker shall make every reasonable effort to represent Seller and buyer in a balanced and fair manner. Broker shall also make every reasonable effort to encourage and effect communication and negotiation between Seller and buyer. Seller understands and acknowledges that:

(1) Prior to the time dual agency occurs, Broker will act as Seller's exclusive agent;

RE/FORM/Listing: 8/15/2017      Page 6 of 9     

Copyright © 2017 Preferred Carolinas Realty, Inc. All Rights Reserved

DocuSign Envelope ID: 01066325-2071-41B1-AFCE-6A09D129C188

As used herein the term "Dispute" shall include, without limitation, any claim, controversy, complaint or disagreement regarding any representations, acts or omissions by any person, party or entity that in any way arises out of or is related to the sale, purchase, financing, condition of any property or any other aspect of Seller's real estate transaction, or that in any way arises out of any of the real estate brokerage services or other settlement services provided by Broker including, without limitation, allegations of concealment, misrepresentation, negligence, breach of fiduciary duty, fraud, constructive fraud, or other wrongful actions or omissions of any type. A Dispute includes any claim, controversy, complaint or disagreement of any kind, including those based on broken promises or contracts, closing charges, or tort (injury caused by negligent or intentional conduct). A Dispute includes any statutory, common law, or equitable claim. A Dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement. No Dispute may be joined in arbitration with a Dispute of any other person or arbitrated on a class action basis.

The American Arbitration Association (AAA) shall administer the arbitration, including the selection of arbitrators, pursuant to its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable. The arbitration shall be held in the county where the real property at issue is located. To find out how to initiate arbitration, Seller can contact AAA at:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Toll free number 877-495-4185
Fax number 877-304-8457

Website: www.adr.org
Email: casefiling@adr.org

All parties to the arbitration (AAA, the arbitrator, Broker, and Seller) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA. The arbitration proceeding shall be conducted at a location determined by AAA in accordance with this Arbitration Agreement. All statutes of limitation and statutes of repose applicable to any Dispute shall apply to any arbitration proceeding between Broker and Seller. If a Dispute is properly filed in Small Claims Court and the Small Claims Court has jurisdiction to resolve the Dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the Dispute from Small Claims Court shall pay AAA's administrative fee and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforceability of the other terms of this Arbitration Agreement.
WHEN YOU SIGN THIS AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER BROKER NOR SELLER SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

**Seller's initials:** _____

15. Seller acknowledges receipt of the brochure describing the HomeServices Warranty Program offered through HMS National, Inc. In the above mentioned brochure, Seller accepted or declined coverage. Specific details of the coverage provided by HMS National, Inc., including coverage limits, exclusions, deductibles and other information may be obtained from Broker upon request.

**Seller's initials:** _____

16. ADDITIONAL TERMS AND CONDITIONS: The following additional terms and conditions shall also be a part of this Agreement:
**N/A**
_____
_____
_____

17. ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between the parties; any prior agreements pertaining thereto, whether oral or written, have been merged and integrated into this Agreement. There shall be no modification of any of the terms of this Agreement unless such modification has been agreed to in writing and signed by all parties.

RE/FORM/Listing: 8/15/2017

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Rahul Kaikini

Seller: _____ **Rahul N Kaikini** _____ _____ 10/15/2017
                Print Name                     Signature               Date

Contact Information: _____ _____ **(336) 831-7694**
                         Home                   Work                 Cell

*Kai Kini, Rahul @ gmail. Com*
           e-mail

Mailing Address: _____

Seller: _____ **Shashi Kaikini** _____ *Shashi kaikini* _____ 10/15/2017
                Print Name        —EB2FE296C5D6464...  Signature               Date

Contact Information: _____ _____ *536- 831 - 7695*
                         Home                   Work                 Cell

*KaiKINS @ rjrt. Com*
           e-mail

Mailing Address: **7835 Forsythia Cir, Clemmons, NC 27012-9646**

Broker: Preferred Carolinas Realty, Inc.                 Phone: **(336) 768-3300**

By: _____ *Cindy Rosenberg* _____ 79998 _____ 10/15/2017
      —5FD4AF9239EC4B8...   Individual Agent Signature        Individual License #            Date
             **Cindy Rosenberg**

Office: **110 Oakwood Drive, Suite 110 Winston-Salem, NC 27103**

Office Phone: **(336) 650-8330**                 Fax: **(336) 714-6528**

e-mail: **cindy.rosenberg@bhhscarolinas.com**

Copyright © 2017 Preferred Carolinas Realty, Inc.
All Rights Reserved

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com       Rahul Kaikini

DocuSign Envelope ID: 2B20128B-95BD-4603-A471-326A3A21C3AB



**BERKSHIRE HATHAWAY** | Carolinas Realty
HomeServices | York Simpson Underwood Realty
| Yost & Little Realty
| Pinehurst Realty Group

*We make great neighbors.*

# ARBITRATION DISCLOSURE AND RESIDENTIAL REAL PROPERTY ARBITRATION AGREEMENT

## Resolving Disputes - Arbitration Agreement:

In this Arbitration Agreement, "Company" means Preferred Carolinas Realty, Inc. dba Berkshire Hathaway HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, Berkshire Hathaway HomeServices Yost & Little Realty and Berkshire Hathaway HomeServices Pinehurst Realty Group, its affiliates and parent company, and "I"," me", "my", "you" and "your" means the undersigned customer or customers, individually and jointly.

I understand that I am a valued customer of the Company and agree to contact the Company immediately, in writing or by telephone, if I have a problem with the real estate brokerage services or any of the other settlement services provided to me by the Company. The Company will use its best efforts to work with me to resolve any problems that I may have. If the Company and I cannot arrive at a mutually agreeable solution, I agree that any Dispute, claim or controversy between me and the Company shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This Arbitration Agreement and the arbitration proceeding shall be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is inapplicable, unenforceable, or invalid, the North Carolina Revised Uniform Arbitration Act shall govern this Arbitration Agreement and the arbitration proceeding.

## Disputes:

The term "Dispute" shall include, without limitation, any claim, controversy, complaint or disagreement regarding any representations, acts or omissions by any person, party or entity that in any way arises out of or is related to the sale, purchase, financing, condition of any property or any other aspect of your real estate transaction, or that in any way arises out of any of the real estate brokerage services or other settlement services provided by the Company including, without limitation, allegations of concealment, misrepresentation, negligence, breach of fiduciary duty, fraud, constructive fraud, or other wrongful actions or omissions of any type. A Dispute includes any claim, controversy, complaint or disagreement of any kind, including those based on broken promises or contracts, closing charges, or tort (injury caused by negligent or intentional conduct). A Dispute includes any statutory, common law, or equitable claim. A Dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement. No Dispute may be joined in arbitration with a Dispute of any other person or arbitrated on a class action basis.

## Binding Arbitration:

Binding arbitration is a means of having one or more independent third parties (arbitrators) resolve disputes without using the court system, judges or juries. Arbitration is often a more cost effective and efficient means of resolving disputes. If either the Company or I fail to submit to binding arbitration following a lawful demand, the party who fails to submit to arbitration shall bear the cost and expenses incurred by the party that demanded arbitration, except as otherwise provided with respect to claims filed in Small Claims Court as discussed below.

The American Arbitration Association (AAA) shall administer the arbitration, including the selection of arbitrators, pursuant to its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable. The arbitration shall be held in the county where the real property at issue is located. To find out how to initiate arbitration, I can contact AAA at:

DocuSign Envelope ID: 2B20128B-9BBD-4603-A471-326A3A21C3AB

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Toll free number 877-495-4185
Fax number 877-304-8457

Website: www.adr.org

Email: casefiling@adr.org

## Miscellaneous:

All parties to the arbitration (AAA, the arbitrator, the Company, and I) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA. The arbitration proceeding shall be conducted at a location determined by AAA in accordance with this Arbitration Agreement. All statutes of limitation and statutes of repose applicable to any Dispute shall apply to any arbitration proceeding between the Company and me. If a Dispute is properly filed in Small Claims Court and the Small Claims Court has jurisdiction to resolve the Dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the Dispute from Small Claims Court shall pay AAA's administrative fee and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

## Severability:

If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforce ability of the other terms of this Arbitration Agreement.

## Notice:

WHEN YOU SIGN THIS ARBITRATION AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A RESPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER THE COMPANY NOR I SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION,OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

**CUSTOMER(S):**                                      **Preferred Carolinas Realty, Inc.**

Robert Barbee                       DATE 5/12/2021 | 1:30 PM PDT   BY: Angela F Prince          Binny Orrell
**Robert P. Barbee**                                  **Angela F. Prince/Binny Orrell**
                                                      **ITS AUTHORIZED**
                                                      **REPRESENTATIVE**
_____  DATE _____  DATE: 5/12/2021 | 4:23 PM EDT  5/12/2021 | 4:47 PM

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          **12613 Oak Grove**

DocuSign Envelope ID: 110A6690-EFB1-4355-B706-4BBDE518BBEE



# BERKSHIRE HATHAWAY
## HomeServices

Carolinas Realty
York Simpson Underwood Realty
Yost & Little Realty

### *We make great neighbors.*

## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This Exclusive Right To Sell Listing Agreement ("Agreement") is entered into between **MICHAEL G SIDDONS** _____ as Seller(s) ("Seller") and Preferred Carolinas Realty, Inc. dba Berkshire Hathaway HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, and Berkshire Hathaway HomeServices Yost & Little Realty as Listing Broker ("Broker") for the property described below ("Property") and known as or legally described as:

Street Address: __720 Governor Morrison St__
City: __Charlotte, NC__ _____ Zip code: __28211__
County: __Mecklenburg__ _____, North Carolina.
Legal Description: __Unit 204 Bld E U/F 767-1__ _____

1. **TERM OF AGREEMENT:** In consideration of Broker's services to procure a buyer for the Property, Broker is hereby granted the exclusive right to sell the Property for a period beginning on __07/08__ , 20 __15__ and expiring at 11:59 P.M. on __10/31__ , 20 __15__ unless terminated sooner by Broker at its option.

2. **LISTING PRICE AND TERMS:** Seller agrees to list the Property, including all fixtures described in paragraph 3, for sale at a price of $ __174900__ ("Listing Price") on the following terms:
X Cash    X FHA    X VA    __ USDA X Conventional    Loan Assumption
__ Seller Financing    Other: _____

Seller agrees to sell the Property for the Listing Price and terms set forth above, or at any other price and on any other terms acceptable to Seller.

3. **FIXTURES.** The following items, if any, are deemed fixtures and are included in the Listing Price free of liens: range/stove/oven, any built-in appliances, light fixtures, ceiling fans, attached floor coverings, blinds, shades, drapery rods and curtain rods, brackets and all related hardware, window and door screens, storm windows, combination doors, awnings, antennas, satellite dishes and receivers, burglar/fire/smoke/carbon monoxide alarms, pool and spa equipment, solar energy systems, attached fireplace screens, gas logs, fireplace inserts, electric garage door openers with controls, outdoor plants and trees (other than in movable containers), basketball goals, storage sheds, mailboxes, attached wall and/or door mirrors, fuel tank(s) whether attached or buried and including contents, if any, as of the date of the closing on the sale of the Property, landscape and/or foundation lighting, invisible fencing including all related equipment, lawn irrigation systems and all related equipment, water softener/conditioner and filter equipment, and any other items attached or affixed to the Property, EXCEPT the following items which are leased or not owned by the Seller or which the Seller does not intend to convey:
__n/a__ _____

4. **PERSONAL PROPERTY.** The following personal property shall be transferred to Buyer free of liens at no value at the closing on the sale of the Property:
__REFRIGERATOR, WASHER, DRYER ALL NEGOTIABLE__ _____

5. **BROKER'S COMPENSATION:** Seller agrees to pay Broker compensation in the amount of $__ N/A __ plus __4__ % of the gross contract sales price of the Property, which compensation shall include any compensation paid by Broker to any cooperating real estate brokers. Note that Broker does not offer any compensation to non-cooperating real estate brokers who are not members of the Multiple Listing Service ("MLS"). Seller authorizes the payment of the compensation owed to Broker pursuant to this Agreement to be paid directly to Broker from Seller's proceeds from the closing on the sale of the Property.

The compensation owed to Broker shall be deemed earned upon Broker, a cooperating real estate broker, Seller, or anyone else procuring or producing a ready, willing and able buyer(s) at the Listing Price and terms agreed to herein by Seller, or at any other price or terms acceptable to Seller, during the term of this Agreement. If any agreement for the sale or transfer of the Property does not have a selling price, the percentage component of the compensation owed to Broker shall be calculated based on the fair market value of the Property as of the effective date of such agreement. The compensation earned as set forth above shall be due and payable immediately upon the earlier of:

    (a)      The closing on the sale of the Property;
    (b)      Seller's refusal to sign a contract or agreement for the sale of Property at the Listing Price and terms set forth herein, or on any other terms acceptable to Seller;
    (c)      Seller's breach of any contract or agreement for the sale or transfer of the Property;

 Copyright © 2013 Preferred Carolinas Realty, Inc. All Rights Reserved

(d) Seller's agreement with any buyer(s) to unreasonably modify or cancel any contract or agreement for the sale or transfer of the Property;

(e) Seller's breach of this Agreement.

Provided, however, that in the event the Property is not sold during the term of this Agreement, if within 180 days after expiration of this Agreement (the "Protection Period") Seller sells or enters into any agreement to sell the Property, directly or indirectly, including but not limited to any form of option, exchange, lease/purchase, conveyance or transfer upon any terms whatsoever, to any person or entity with whom Seller, Broker, or any cooperating real estate broker communicated during the term of this Agreement, and whose name(s) Broker has submitted to Seller in writing within 15 days of the expiration of this Agreement, the compensation owed to Broker pursuant to this Agreement shall be immediately due and payable to Broker. However, Seller shall not be obligated to pay the compensation owed to Broker pursuant to this Agreement if a valid listing agreement is entered into with another licensed real estate broker after the expiration of this Agreement and the Property is sold, exchanged, leased, conveyed or transferred during the Protection Period.

Seller acknowledges and agrees that Broker may be offered compensation from other persons or entities in connection with the sale of the Property, and Seller agrees to permit Broker to receive any such additional compensation. Broker will timely disclose any such additional compensation to Seller.

6. BROKER'S DUTIES: Broker accepts the exclusive listing granted by this Agreement and shall use its best efforts and due diligence to solicit and procure a ready, willing and able buyer to purchase the Property at the Listing Price and terms set forth in this Agreement. Broker further agrees to:

(a) Perform the terms of this Agreement, exercise reasonable care and skill, and promote Seller's interests;

(b) Assist Seller in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to the offers and the counteroffers;

(c) Accept delivery of and present to Seller in a timely manner all offers and counteroffers to sell the Property;

(d) Respond to Seller's questions relating to the offers, counteroffers, notices, and contingencies.

(e) Account in a timely manner for all money and property received on behalf of Seller;

(f) Not disclose any confidential information about Seller, unless disclosure is authorized pursuant to this Agreement or is required by statute, rule, regulation or North Carolina law, or the failure to disclose such information would constitute a material misrepresentation.

**BROKER SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT.**

7. SELLER'S DUTIES: Seller agrees to cooperate with Broker in marketing the Property for sale, including making the Property available for showings at reasonable times on reasonable notice. Seller further agrees to complete all required disclosure forms, including but not limited to the Residential Property and Owner's Association Disclosure Statement (unless exempt) and the Lead-Based Paint or Lead-Based Paint Hazard Addendum, if applicable to the Property.

(a) Seller represents that Seller holds title to the Property in fee simple, and that Seller does not know or have reason to know of circumstances or encumbrances that would prohibit Seller from conveying fee simple marketable title to the Property to a ready, willing and able buyer except as follows:

_____

(b) If required by N.C.G.S. §44A-11.1, Seller shall designate a Lien Agent, and provide Broker a copy of the appointment of Lien Agent as soon as reasonably possible.

8. SELLER REPRESENTATIONS: Seller acknowledges and agrees that Broker is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which Broker knows or reasonably should know. Seller hereby makes the following representations concerning the Property:

(a) **Flood Hazard Disclosure/Insurance.** To the best of Seller's knowledge, the Property □ is □ is not located partly or entirely within a designated Special Flood Hazard Area. The Seller □ does □ does not currently maintain flood hazard insurance on the Property.

(b) **Synthetic Stucco.** To the best of Seller's knowledge, the Property □ has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system," commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows:

_____

(c) **Owners' Association.**

(1) Complete ONLY if the Residential Property and Owner's Association Disclosure Statement is required: The name, address and telephone number of the president of the owner's association or the association manager is:
The Lofts at Morrison, LLC
managed by First Residential Services 704-227-0891

_____

Copyright © 2013 Preferred Carolinas Realty, Inc. All Rights Reserved

Owner's association website address, if any: __n/a_____

(2) Complete ONLY if New Construction or where the Residential Property and Owner's Disclosure Statement is NOT required: To the best of Seller's knowledge there ☐ is ☐ is not an owners' association which imposes various mandatory covenants, conditions and restrictions upon the Property. If there is an owners' association, Seller agrees to promptly complete an Owners' Association Disclosure and Addendum For Properties Exempt from Residential Property Disclosure Statement at Seller's expense and to attach it as an addendum to any contract for the sale of the Property.

(d) **Ownership.** Seller represents that Seller:
  ☐ has owned the Property for at least one year;
  ☐ has owned the Property for less than one year.

(e) **Residence.** Seller represents that the Property ☐ is or ☐ is not the Seller's primary residence.

(f) **Receipt of Sample Forms.**
  ☒ Seller acknowledges receipt of a sample copy of an Offer to Purchase and Contract (Form 2-T) or Offer to Purchase and Contract—New Construction (Form 800-T), as may be appropriate for review purposes.
  ☒ Seller acknowledges receipt of a sample copy of a Professional Services Disclosure and Election Form (Form #760) for review purposes.

(g) **Current Liens.** Seller represents to the best of Seller's knowledge:
  (1) The Property ☐ is ☒ is not encumbered by a deed of trust or mortgage. *Complete any of the following where applicable:*
    (i) There is a first deed of trust or mortgage on the Property securing a loan held by:
    Lender Name: __n/a_____
    Approximate balance: $ __n/a_____
    Lender Phone #: __n/a_____
    Lender Address: __n/a_____
    (ii) There is a second deed of trust or mortgage on the Property securing a loan held by:
    Lender Name: __n/a_____
    Approximate balance: $ __n/a_____
    Lender Phone #: __n/a_____
    Lender Address: __n/a_____
    (iii) There is a deed of trust or mortgage on the Property securing an equity line of credit held by:
    Lender Name: _____
    Approximate balance: $ _____
    Lender Phone #: _____
    Lender Address: _____
  (2) Seller ☒ is current on all payments for the loans identified in numbered items (i), (ii) and (iii) above except as specified in (7) below.
  (3) Seller ☐ is not in default on any loan identified in numbered items (i), (ii) and (iii) above and has not received any notice(s) from the holder of any loan identified in numbered items (i), (ii) and (iii) above or from any other lien holder of any kind, regarding a default under the loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure except as specified in (7) below.
  (4) There ☐ are not any liens secured against the Property for Federal, State or local income taxes, unpaid real property taxes, unpaid condominium or homeowners' association fees, mechanics', laborers' or materialmens' liens, or other liens affecting the Property, and Seller has no knowledge of any matter that might result in a lien affecting the Property except as specified in (7) below.
  (5) There ☐ are not any judgments against Seller affecting the Property, and Seller has no knowledge of any matter that might result in a judgment that may potentially affect the Property except as specified in (7) below.
  (6) There ☐ are not any Uniform Commercial Code (UCC) fixture filings affecting the Property, and Seller has no knowledge of any matter that might result in a UCC fixture filing affecting the Property except as specified in (7) below.
  (7) Specify any information, including approximate balances, required by Seller representations (2) through (6) above (**NOTE**: Outstanding liens may affect Seller's proceeds.)
  _____  _____
  _____  _____

(h) **Bankruptcy.** Seller currently:
  (1) ☐ is ☒ is not under bankruptcy protection under United States law.
  (2) ☐ is ☒ is not contemplating seeking bankruptcy protection during the term of this Agreement.

(i) **Access.** Seller represents that the Property ☒ does ☐ does not have legal access to a public right of way. If access is by private road/easement/other, Seller further represents that there ☐ is ☐ is not an agreement regarding the maintenance of such private road/easement/other means of access. If applicable, Seller agrees to promptly provide Broker information pertaining to any such agreement.

(j) **Lease(s).** To the best of Seller's knowledge, the Property ☐ is ☐ is not subject to any lease(s). If applicable,

(k)    Seller agrees to promptly provide Broker a copy of any such lease(s) or a written statement of the terms of any oral lease(s).

(k)    **VA/FHA Appraisal.** To the best of Seller's knowledge, a VA or FHA appraisal ☐ has ☐ has not been performed on the Property within six months prior to the Effective Date. If applicable, Seller agrees to promptly provide Firm a copy of any such appraisal if available.

(l)    **Special Assessments.** To the best of Seller's knowledge, there are no proposed or confirmed special assessments (as defined in the sample contract form provided to Seller) regarding the Property except as follows (Insert "none" or the identification of such assessments, if any):

    none known _____ .

(m)    **Oil and Gas Rights.** (NOTE: Oil and gas rights can be severed from the title to real property by conveyance (deed) of the oil and gas rights from the owner or by reservation of the oil and gas rights by the owner. If oil and gas rights are or will be severed from the property, the owner of those rights may have the perpetual right to drill, mine, explore, and remove any of the subsurface oil or gas resources on or from the property either directly from the surface of the property or from a nearby location.) With regard to the severance of oil and gas rights, Seller makes the following disclosures.

| | | Yes | No | No Representation |
|---|---|:---:|:---:|:---:|
| (1) | Oil and gas rights were severed from the Property by a previous owner. | ☐ | ☐ | ☒ |
| (2) | Seller has severed the oil and gas rights from the Property. | ☐ | ☐ | ☒ |
| (3) | Seller intends to sever the oil and gas rights from the Property prior to Transfer of title to a buyer. | ☐ | ☐ | ☒ |

(n)    **Fuel Tank/Fuel:** To the best of Seller's knowledge, there ☐ is ☒ is not a fuel tank(s) located on the Property. *If "yes" complete the following to the best of Seller's knowledge:*
Ownership of tank 1: ☐ owned ☐ leased. If leased, the name of tank lessor is:_____
Location of tank 1: ☐ above ground ☐ below ground
Type of fuel: ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other:_____
Ownership of tank 2: ☐ owned ☐ leased. If leased, the name of tank lessor is:_____
Location of tank 2: ☐ above ground ☐ below ground
Type of fuel: ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other:___.

If, during the term of this Agreement, Seller becomes aware that any of the representations set forth in this paragraph 8 are incorrect or no longer accurate, Seller shall promptly notify Broker and cooperate with Broker in taking appropriate corrective action.

9.    **HOME INSPECTION:** Seller is advised to obtain a home inspection for the purpose of evaluating the condition of the Property in order to enhance its marketability and to help reduce concerns of prospective buyers. Seller ☐ agrees ☒ does not agree to obtain and pay for a home inspection by a licensed NC Home Inspector within ____ days after the execution of this Agreement.

    ☒    Seller acknowledges receipt of a copy of *Questions and Answers on: Home Inspections* by the NC Real Estate Commission.

10.    **MARKETING ACTIVITIES:** Seller hereby authorizes Broker to market the Property as described below on: ☒ the date this Agreement has been signed by Seller and Broker OR ☐ (insert date) _____

(a)    Cooperate and share the commission payable under this Agreement with other brokers including brokers who have been employed as buyer's agents, subagents, dual agents, or designated agents, subject, where applicable, to authorization as required by law;

(b)    Submit pertinent information, including virtual tours and images when applicable, concerning the Property to any Multiple Listing Service ("MLS") organizations to which Broker subscribes;

(c)    Provide to any MLS to which Broker subscribes, for dissemination to others, timely notice of status changes affecting the Property, sales information, including Seller's name, price, and other information concerning the Property for use of the members of such services, to compile reliable statistics, and to establish market value for other properties, and to report sales information about the property, including the price at which the property sold, or is contracted to be sold, to the MLS for dissemination to MLS participants, subscribers, and other licensees or users of the MLS database compilation;

(d)    Disseminate data about the Property and other information, including Seller's name, price, and other information concerning the Property supplied by, or on behalf of Seller, including creative works depicting the Property, such as virtual tours, images, and any textual descriptions of the Property (collectively referred to as "Content"), to MLS Participants, Subscribers and other licensees or users of the MLS database compilation, or any other MLS in which Broker participates, and to further disseminate, or permit the MLS or other MLS participants to disseminate such Content to potential purchasers through websites on the Internet. Further, Broker is authorized to otherwise advertise the Property in any manner deemed appropriate by Broker, including but not limited to advertising on the Internet, virtual tours, web-sites, trade journals and any other medium, and communications via e-mail and facsimile;

(e)    Place a "For Sale," "Under Contract," "Sale Pending," and other similar signs on the Property and to remove all other signs during the term of this Agreement;

(f)    Enter the Property at reasonable times and with reasonable notice for the purpose of evaluation, preview, or showing the Property to prospective purchasers or other brokers;

(g)    Possess and maintain a key to the Property, and make use of a "Lock Box" during the term of this Agreement; and

(h)    Conduct open houses at the Property at such times as Seller and Broker may agree.

Copyright © 2013 Preferred Carolinas Realty, Inc.
All Rights Reserved

Seller acknowledges and understands that while the marketing services identified above will facilitate the showing and sale of the Property, there are inherent risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of Broker, including but not limited to:

    (1)    unauthorized use of a lock/key box,

    (2)    control of visitors during or after a showing or an open house,

    (3)    inappropriate use of information about the Property placed on the Internet or furnished to any MLS in which Broker participates.

Seller agrees to indemnify and hold harmless Broker from any damages, costs, attorney's fees or other expenses as a result of any personal injury or property loss or damage to Seller or any other person or entity arising out of any such marketing activities which are not the result of the sole negligence of Broker.

11.    COPYRIGHT ASSIGNMENT: Broker is specifically authorized to use, both before and after the sale or, in the event there is not a sale, after this listing has expired, for any purposes whatsoever, any and all information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property (including any information concerning the price and terms of the sale of the Property, the description of the Property, length of time the Property is on the market, and any other information relating to the Property) ("Seller Content"). Seller hereby assigns to Broker any and all intellectual property rights Seller may have in the Seller Content and to any photographs or video or other reproductions of the property used in connection with the marketing of the property. For purposes of clarity, Broker is the owner of any and all rights in the Seller Content and may further assign, license, sublicense, or otherwise dispose of these rights to any party whatsoever for any purposes whatsoever. If any moral rights are not transferred by the preceding sentences, Seller hereby waives all such rights.

Seller's execution of this Agreement further signifies Seller's representation and warranty that Seller is the sole author and sole owner of all rights in and to the Seller Content; that Seller's contribution to the Seller Content is original and not in the public domain; that Seller's contribution to the Seller Content contains no material from other copyrighted or unpublished work that has been used without the written consent of the copyright owner and/or of the owner of any other rights to or in such other works; that it does not violate or infringe on any personal or property rights of others, whether common law or statutory; that it contains nothing libelous or contrary to law; and that Seller has full power to enter this Agreement. Seller agrees to indemnify and hold harmless Broker for any claims of copyright infringement or other claims arising from any publication or use of the Seller Content.

Broker grants to Seller a non-exclusive, perpetual license for the use of the Seller Content, including the right to display, reproduce, distribute or make derivative works from the Seller Content. For purposes of clarity, the license granted to Seller for the use of the Seller Content applies only to information, photographs or video provided by Seller to Broker pursuant to this Agreement for use in marketing the Property, and not to any information, photographs or video created or provided by or on behalf of Broker. Seller agrees to indemnify and hold harmless Broker for any and all claims arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of this license. Seller understands and agrees that Broker assumes no responsibility for Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content pursuant to the terms of the license granted by Broker, or for any infringement arising from Seller's use, display, reproduction, distribution or creation of derivative works from the Seller Content.

12.    DUAL AGENCY: Seller understands that the potential for dual agency will arise if a buyer who has an agency relationship with Broker becomes interested in viewing the Property. Broker may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Broker acts.

    (a)    Disclosure of Information. In the event Broker serves as a dual agent, Seller agrees that without permission from the party about whom the information pertains, Broker shall not disclose to the other party the following information:

        (1)    that a party may agree to a price, terms, or any conditions of sale other than those offered;

        (2)    the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and

        (3)    any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute, rule, regulation or North Carolina law.

    (b)    Broker's Role as Dual Agent. If Broker serves as agent for both Seller and a buyer in a transaction involving the Property, Broker shall make every reasonable effort to represent Seller and buyer in a balanced and fair manner. Broker shall also make every reasonable effort to encourage and effect communication and negotiation between Seller and buyer. Seller understands and acknowledges that:

        (1)    Prior to the time dual agency occurs, Broker will act as Seller's exclusive agent;

        (2)    In its separate representation of Seller and buyer, Broker may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Broker;

        (3)    Broker is required by law to disclose to Seller and buyer any known or reasonably ascertainable material facts.

Seller agrees Broker shall not be liable to Seller for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

Copyright © 2013 Preferred Carolinas Realty, Inc. All Rights Reserved

DocuSign Envelope ID: 140A6690-FF91-4355-B796-4BBD56188BFE

(c)    Seller's Role. Should Broker become a dual agent, Seller understands and acknowledges that:

    (1)    Seller has the responsibility of making Seller's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Broker;

    (2)    Seller is fully aware of and understands the implications and consequences of Broker's dual agency role as expressed herein to provide balanced and fair representation of Seller and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

    (3)    Seller has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;

    (4)    Seller may seek independent legal counsel to assist Seller with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Broker become a dual agent, Seller waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Broker's role as a dual agent. Seller shall have a duty to protect Seller's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Seller wants included in said agreement.

(d)    Authorization (initial only ONE).



Seller authorizes Broker to act as a dual agent, representing both the Seller and the buyer, subject to the terms and conditions set forth in Paragraph 12.

Seller desires exclusive representation at all times during this agreement and does NOT authorize Broker to act in the capacity of dual agent. If Seller does not authorize Broker to act as a dual agent, the remainder of this paragraph shall not apply.

(e)    Designated Agent Option (initial only if applicable).



Seller hereby authorizes Broker to designate an individual agent(s) to represent the Seller, to the exclusion of any other individual agents associated with Broker. The individual designated agent(s) shall represent only the interests of the Seller to the extent permitted by law.

(**NOTE**: When dual agency arises, an individual agent shall not practice designated agency and shall remain a dual agent if the individual agent has actually received confidential information concerning a buyer client of Broker in connection with the transaction or if designated agency is otherwise prohibited by law.)

(f)    Dual Agency Compensation. If Broker acts as a dual agent (including designated agency), the total fee Broker expects to receive for its services in representing Seller and the buyer shall be shall be 6% (+/- up to 4%) and $300 (+/- up to $900). THIS WILL IN NO WAY AFFECT OR MODIFY THE AMOUNT OF THE FEE SET FORTH IN PARAGRAPH 5 ABOVE THAT BROKER EXPECTS TO RECEIVE FOR ITS SERVICES IN REPRESENTING SELLER UNDER THIS AGREEMENT. In the event Broker's total fee is different from that described in this subparagraph (f), Broker shall timely disclose the fee to Seller and confirm it in writing before Seller accepts an offer to sell the Property.

13.    LEGAL AND PROFESSIONAL ADVICE: Broker recommends that Seller seek legal, tax, and other professional advice relative to any real estate transaction. Broker makes no representation or warranty respecting the advisability of any transaction. Broker is not an expert in matters relating to law (including matters of title to the Property), tax, financing, surveying, structural or mechanical condition, hazardous material, engineering, or other specialized topics. Seller is encouraged to seek expert assistance in such areas. Broker will cooperate with experts engaged by Seller or at the request of Seller, but Broker will have no liability to Seller pertaining to such matters.

14.    ARBITRATION AGREEMENT: Any Dispute, claim or controversy between Seller and Broker shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This agreement to arbitrate and the arbitration proceeding shall be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is inapplicable, unenforceable, or invalid, the North Carolina Revised Uniform Arbitration Act shall govern this Arbitration Agreement and the arbitration proceeding.

As used herein the term "Dispute" shall include, without limitation, any claim, controversy, complaint or disagreement regarding any representations, acts or omissions by any person, party or entity that in any way arises out of or is related to the sale, purchase, financing, condition of any property or any other aspect of Seller's real estate transaction, or that in any way arises out of any of the real estate brokerage services or other settlement services provided by Broker including, without limitation, allegations of concealment, misrepresentation, negligence, breach of fiduciary duty, fraud, constructive fraud, or other wrongful actions or omissions

Copyright © 2013 Preferred Carolinas Realty, Inc.
All Rights Reserved

DocuSign Envelope ID: 140A6690-FF91-4255-B706-4BBDF6188BFF

of any type. A Dispute includes any claim, controversy, complaint or disagreement of any kind, including those based on broken promises or contracts, closing charges, or tort (injury caused by negligent or intentional conduct). A Dispute includes any statutory, common law, or equitable claim. A Dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement. No Dispute may be joined in arbitration with a Dispute of any other person or arbitrated on a class action basis.

The American Arbitration Association (AAA) shall administer the arbitration, including the selection of arbitrators, pursuant to its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable. The arbitration shall be held in the county where the real property at issue is located. To find out how to initiate arbitration, Seller can contact AAA at:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Toll free number 877-495-4185
Fax number 877-304-8457

Website: www.adr.org

Email: casefiling@adr.org

All parties to the arbitration (AAA, the arbitrator, Broker, and Seller) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA. The arbitration proceeding shall be conducted at a location determined by AAA in accordance with this Arbitration Agreement. All statutes of limitation and statutes of repose applicable to any Dispute shall apply to any arbitration proceeding between Broker and Seller. If a Dispute is properly filed in Small Claims Court and the Small Claims Court has jurisdiction to resolve the Dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the Dispute from Small Claims Court shall pay AAA's administrative fee and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforceability of the other terms of this Arbitration Agreement.
WHEN YOU SIGN THIS AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER BROKER NOR SELLER SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

Seller's initials: MGS

15.    Seller acknowledges receipt of the brochure describing the HomeServices Warranty Program offered through Home Security of America, Inc. In the above mentioned brochure, Seller accepted or declined coverage. Specific details of the coverage provided by Home Security of America, Inc., including coverage limits, exclusions, deductibles and other information may be obtained from Broker upon request.

Seller's initials: MGS

16.    ADDITIONAL TERMS AND CONDITIONS: The following additional terms and conditions shall also be a part of this Agreement:

_____
_____
_____

17.    ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between the parties; any prior agreements pertaining thereto, whether oral or written, have been merged and integrated into this Agreement. There shall be no modification of any of the terms of this Agreement unless such modification has been agreed to in writing and signed by all parties.

Seller: MICHAEL G SIDDONS

DocuSigned by:

*MICHAEL G SIDDONS*

C11AD822B7944DD...

Signature                    7/8/2015
                              Date

Contact Information: Michael Siddons    704-819-0065         704-819-0065

xxxxx.com          Home          Work              Cell

e-mail

Mailing Address: 197 Fern Brook Drive

Mooresville, NC 28117

Seller: _____          _____

Print Name                    Signature                    Date

Contact Information: _____

Home              Work              Cell

e-mail

Mailing Address: _____

Broker: Preferred Carolinas Realty, Inc          Phone: _____

By: *John Siddons*

5D34F3F8BC4F4C4...Individual Agent Signature       271515              7/8/2015

Individual License #          Date

Office: 4625-135A PIEDMONT ROW DR., CHARLOTTE, NC 28210

Office Phone: 704-458-1843          Fax: 704-936-2242

e-mail: JOHN.SIDDONS@BHHSCAROLINAS.COM



BERKSHIRE HATHAWAY
HomeServices

Carolinas Realty
York Simpson Underwood Realty
Yost & Little Realty

*We make great neighbors.*

## ARBITRATION DISCLOSURE AND RESIDENTIAL REAL PROPERTY AGREEMENT

**Resolving Disputes – Arbitration Agreement:**

In this Arbitration Agreement, "Company" means Preferred Carolinas Realty, Inc. dba Berkshire Hathaway HomeServices Carolinas Realty, Berkshire Hathaway HomeServices York Simpson Underwood Realty, and Berkshire Hathaway HomeServices Yost & Little Realty, its affiliates and parent company, and "I", "me", "my", "you" and "your" means the undersigned customer or customers, individually and jointly.

I understand that I am a valued customer of the Company and agree to contact the Company immediately, in writing or by telephone, if I have a problem with the real estate brokerage services or any of the other settlement services provided to me by the Company. The Company will use its best efforts to work with me to resolve any problems that I may have. If the Company and I cannot arrive at a mutually agreeable solution, I agree that any Dispute, claim or controversy between me and the Company shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This Arbitration Agreement and the arbitration proceeding shall be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is inapplicable, unenforceable, or invalid, the North Carolina Revised Uniform Arbitration Act shall govern this Arbitration Agreement and the arbitration proceeding.

**Disputes:**

The term "Dispute" shall include, without limitation, any claim, controversy, complaint or disagreement regarding any representations, acts or omissions by any person, party or entity that in any way arises out of or is related to the sale, purchase, financing, condition of any property or any other aspect of your real estate transaction, or that in any way arises out of any of the real estate brokerage services or other settlement services provided by the Company including, without limitation, allegations of concealment, misrepresentation, negligence, breach of fiduciary duty, fraud, constructive fraud, or other wrongful actions or omissions of any type. A Dispute includes any claim, controversy, complaint or disagreement of any kind, including those based on broken promises or contracts, closing charges, or tort (injury caused by negligent or intentional conduct). A Dispute includes any statutory, common law, or equitable claim. A Dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a Dispute subject to this Arbitration Agreement. No Dispute may be joined in arbitration with a Dispute of any other person or arbitrated on a class action basis.

**Binding Arbitration:**

Binding arbitration is a means of having one or more independent third parties (arbitrators) resolve disputes without using the court system, judges or juries. Arbitration is often a more cost effective and efficient means of resolving disputes. If either the Company or I fail to submit to binding arbitration following a lawful demand, the party who fails to submit to arbitration shall bear the cost and expenses incurred by the party that demanded arbitration, except as otherwise provided with respect to claims filed in Small Claims Court as discussed below.

The American Arbitration Association (AAA) shall administer the arbitration, including the selection of arbitrators, pursuant to its Commercial Arbitration Rules and its Supplementary Procedures for Consumer-Related Disputes, where applicable. The arbitration shall be held in the county where the real property at issue is located. To find out how to initiate arbitration, I can contact AAA at:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Toll free number 877-495-4185
Fax number 877-304-8457

Website: www.adr.org

Email: casefiling@adr.org

**Miscellaneous:**
All parties to the arbitration (AAA, the arbitrator, the Company, and I) shall take any reasonable action necessary, and reasonably possible, to assure that any arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the Dispute is filed with AAA. The arbitration proceeding shall be conducted at a location determined by AAA in accordance with this Arbitration Agreement. All statutes of limitation and statutes of repose applicable to any Dispute shall apply to any arbitration proceeding between the Company and me. If a Dispute is properly filed in Small Claims Court and the Small Claims Court has jurisdiction to resolve the Dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the Dispute from Small Claims Court shall pay AAA's administrative fee and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

**Severability:**
If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforceability of the other terms of this Arbitration Agreement.

**Notice:**
WHEN YOU SIGN THIS ARBITRATION AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER THE COMPANY NOR I SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

CUSTOMER(S):                                    Preferred Carolinas Realty, Inc.

*Robert P. Barbee*  DATE 6-5-17       BY: *Angela J. Prince*

                                               ITS AUTHORIZED
                                               REPRESENTATIVE

*[signature]*  DATE 6-5-17            DATE: 6-5-17

# EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This Exclusive Right to Sell Listing Agreement ("Agreement") is made on **04/18/21**
("Date") by and between **Nicole Irving** _____ _____ ("Seller")

and (Insert Firm Name) **Long & Foster REALTORS** _____ ("Broker").

1. **APPOINTMENT OF BROKER.** In consideration of the services provided by Broker and
described in this Agreement, Seller hereby appoints Broker as Seller's sole and exclusive
listing agent and grants Broker the exclusive right to sell the real property described below
("Property").

2. **PROPERTY.**

Street Address **12077 Trumbull Way** Unit # **2077-8**

City _____ **Reston**, Virginia ZIP Code **20190**

TAX Map/ID # **0173 13042077**

Parking Space # **N/A** Storage Unit # _____ Mailbox # **5**

Historic District Designation _____

Legal Description:

[x] Lot/Block/Subdivision:

    Lot(s) _____ Block/Square _____ Section _____ Phase **4**

    Subdivision or Condominium **LINCOLN PARK**

    County/Municipality **FAIRFAX** Deed Book/Page # **25777/0918**

[ ] Metes/Bounds: see attached description or survey.

MLS Description :

No. of Levels: **2** Basement: [ ] Yes [x] No Basement Entrance Type: **N/A**

Basement Type: **None** Attic Type: _____

Architectural Style: **Traditional** Type of Exterior: **Half Aluminum/Half Brick**

Disability Access: [ ] Yes [x] No

3. **NOTICES.** All notifications and amendments under this Agreement shall be in writing and
shall be delivered using the contact information below.

**Seller**

Mailing Address: **1765 Brookside Lane**

City, State, and Zip Code: **Vienna**, **VA 22182**

Phone: (H) _____ (W) _____ (Cell) **571-239-4728**

Email: **irvingnic@gmail.com** / Fax: _____

**Broker (Firm)**

Mailing Address: **309 Maple Avenue W**

City, State, and Zip Code: **Vienna**, **VA 22180**

Phone: (W) **(703) 938-4200** (Cell) **(703) 489-9280**

Email: **Jean.Lee@LongandFoster.com** Fax: **(703) 938-6076**

4. **TERM OF AGREEMENT.** This Agreement shall run for the period commencing upon
signature by all parties and expiring at 11:59 p.m. on **08/22/21**
("Listing Period"). If a sales contract for Property is ratified during Listing Period which
provides for a settlement date beyond Listing Period, this Agreement shall be
extended automatically until final disposition of the sales contract.

Seller: **NI** Broker: **FS** /

**5. LISTING PRICE.** Seller instructs Broker to offer Property for sale at a selling price of $ **474,900.00** , or such other price as later agreed upon by Seller, which price includes Broker's compensation. (Note: Broker does not guarantee that Property will appraise or sell at the price stated herein, nor does Broker guarantee any net amount Seller might realize from the sale of Property).

**6. CONVEYANCES.**

**A. Personal Property and Fixtures.** Property includes the following personal property and fixtures, if existing: built-in heating and central air conditioning equipment, plumbing and lighting fixtures, built-in electronics, sump pump, attic and exhaust fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, window shades, blinds, window treatment hardware, smoke and heat detectors, TV antennas, exterior trees and shrubs.

Unless otherwise agreed to in writing, all surface or wall mounted electronic components/devices **DO NOT** convey; however, all related mounts, brackets, and hardware **DO** convey.

If more than one of an item conveys, the number of items is noted. The items marked YES below are currently installed or offered:

| Yes | No | # | Items | | Yes | No | # | Items | | Yes | No | # | Items |
|-----|----|----|-------|--|-----|----|----|-------|--|-----|----|----|-------|
| ☐ | ☒ | ___ | Alarm System | | ☐ | ☒ | ___ | Freezer | | ☐ | ☒ | ___ | Satellite Dish |
| ☒ | ☐ | ___ | Built-in Microwave | | ☐ | ☒ | ___ | Furnace Humidifier | | ☐ | ☒ | ___ | Storage Shed |
| ☒ | ☐ | ___ | Ceiling Fan | | ☒ | ☐ | ___ | Garage Opener | | ☒ | ☐ | ___ | Stove or Range |
| ☐ | ☒ | ___ | Central Vacuum | | ☒ | ☐ | ___ | w/ remote | | ☐ | ☒ | ___ | Trash Compactor |
| ☒ | ☐ | ___ | Clothes Dryer | | ☒ | ☐ | ___ | Gas Log | | ☐ | ☒ | ___ | Wall Oven |
| ☒ | ☐ | ___ | Clothes Washer | | ☐ | ☒ | ___ | Hot Tub, Equip & Cover | | ☐ | ☒ | ___ | Water Treatment System |
| ☐ | ☒ | ___ | Cooktop | | ☐ | ☒ | ___ | Intercom | | ☐ | ☒ | ___ | Window A/C Unit |
| ☒ | ☐ | ___ | Dishwasher | | ☒ | ☐ | ___ | Playground Equipment | | ☐ | ☒ | ___ | Window Fan |
| ☒ | ☐ | ___ | Disposer | | ☐ | ☒ | ___ | Pool, Equip, & Cover | | ☒ | ☐ | ___ | Window Treatments |
| ☐ | ☒ | ___ | Electronic Air Filter | | ☒ | ☐ | ___ | Refrigerator | | ☐ | ☒ | ___ | Wood Stove |
| ☒ | ☐ | ___ | Fireplace Screen/Door | | ☒ | ☐ | ___ | w/ ice maker | | | | | |

Other:

**B. As-Is Items.** Seller will not warrant the condition or working order of the following items and/or systems:

**C. As-Is Marketing.** Seller ☐ does **OR** ☒ does not authorize Broker to offer the entire Property in "As-Is" condition.

**D. Leased Items, Systems, and/or Service Contracts.** Any leased items, systems, or service contracts (including, but not limited to, termite or pest control, home warranty, fuel tanks, water treatment systems, lawn contracts, security system monitoring, and satellite contracts) DO NOT CONVEY absent an express written agreement by buyer and Seller. The following is a list of the leased items within Property:

Seller: *NJ* / ___     Broker: ___ / *FS*

7. **HOMEOWNER WARRANTY.** Seller has the option to purchase a homeowner warranty, which can be in effect during the Listing Period and will transfer to the buyer upon settlement. Seller should review the scope of coverage, exclusions and limitations.

Cost not to exceed $_____ Warranty provider to be _____

8. **UTILITIES; MAJOR SYSTEMS.** (Check all that apply)

Hot Water: ☐ Oil ☒ Gas ☐ Electric ☐ Other _____ Number of Gallons _____

Air Conditioning: ☐ Oil ☐ Gas ☒ Electric ☐ Heat Pump ☒ Other Central A/C ☐ Zones _____

Heating: ☐ Oil ☒ Gas ☐ Electric ☐ Heat Pump ☒ Other Forced Air ☐ Zones _____

Water Supply: ☒ Public ☐ Private Well ☐ Community Well

Sewage Disposal: ☒ Public ☐ Septic Approved for _____ Bedrooms

Type of Septic System: ☐ Community ☐ Conventional ☐ Alternative ☐ Experimental

Section 32.1-164:1 of the Code of Virginia requires Seller to disclose whether the onsite septic system serving Property is operating under a waiver of repair and/or maintenance requirements imposed by the State Board of Health. If the septic system is operating pursuant to a waiver, then Seller must provide the buyer with the "Disclosure Regarding Validity of Septic System Permit" prior to contract ratification. Such waiver is not transferable to the buyer.

Seller represents that the septic system ☐ is **OR** ☐ is not operating under a waiver from the State Board of Health.

9. **BROKER DUTIES.** Broker shall perform, and Seller hereby authorizes Broker to perform, the following duties. In performing these duties, Broker shall exercise ordinary care, comply with all applicable laws and regulations and treat all parties honestly.

**A.** Broker shall protect and promote the interests of Seller and shall provide Seller with services consistent with the standards of practice and competence that are reasonably expected of licensees engaged in the business of real estate brokerage. Seller acknowledges that Broker is bound by the bylaws, policies and procedures, and rules and regulations governing the Multiple Listing Service (MLS), the Code of Ethics of the National Association of REALTORS®, the Code of Virginia, and the Regional Rules and Regulations for the electronic lockbox system.

**B.** Broker shall use reasonable efforts and act diligently to seek buyers for Property at the price and terms stated herein or otherwise acceptable to Seller, to negotiate on behalf of Seller, to establish strategies for accomplishing Seller's objectives, to assist in satisfying Seller's contractual obligations, and to facilitate the consummation of the sale of Property.

**C.** Broker shall market Property, at Broker's discretion, including without limitation, description, interior and exterior photographs in appropriate advertising media, such as publications, mailings, brochures and internet sites; provided, however, Broker shall not be obligated to continue to market Property after Seller has accepted an offer.

**D.** Broker shall present all written offers or counteroffers to and from Seller in a timely manner, even if Property is subject to a ratified contract of sale, unless otherwise instructed by Seller in writing.

**E.** Broker shall not continue to market, show and/or permit showings after Property is subject to a ratified contract of sale, unless otherwise instructed by Seller in writing.

Seller: _NJ_ / _____ Broker: _____ / _FS_

**F.** Broker shall account, in a timely manner, for all money and property received in trust by Broker, in which Seller has or may have an interest.

**G.** Broker shall show Property during reasonable hours to prospective buyers and shall accompany or accommodate, as needed, other real estate licensees, their prospective buyers, inspectors, appraisers, exterminators and other parties necessary for showings and inspections of Property, to facilitate and/or consummate the sale of Property.

**Broker agrees that the showing instructions to be shared in the MLS with other real estate licensees and their prospective buyers are as follows:** _____
 **Please schedule showing online.**

Broker ☒ shall **OR** ☐ shall not install an electronic lockbox on Property to allow access and showings by persons who are authorized to access Property.

**H.** Broker ☒ shall **OR** ☐ shall not install "For Sale" signs on Property, as permitted. Seller is responsible for clearly marking the location of underground utilities, equipment or other items that may be damaged by the placement of the sign.

## 10. MARKETING/MLS/INTERNET ADVERTISING.

**A.** ☒ Seller authorizes **OR** ☐ Seller does not authorize Broker to market Property via the Multiple Listing Service ("MLS").

1) **If Seller authorizes Broker to market Property in MLS**, Broker shall disseminate, via MLS, information regarding Property, including listing price(s), final sales price, all terms, and all status updates during and after the expiration of this Agreement. Broker shall enter the listing information into MLS ☐ within three (3) business days of commencement of the Listing Period ☒ **OR** on or before: 04/29/2021_____ . In either event, Broker shall enter the listing information into MLS within one (1) business day of Public Marketing of Property. "Public Marketing" includes, but is not limited to, displaying flyers in windows, yard signs, digital marketing on public facing websites, brokerage website displays (including internet data exchanges and virtual office websites), digital communications marketing (email blasts) multi-brokerage listing sharing networks, and applications available to the general public.

2) **If Seller does not authorize Broker to market Property via MLS**, Broker shall instead market Property as an Office Exclusive Listing. "Office Exclusive Listing" means any listing Seller has prohibited Broker from Public Marketing. For each Office Exclusive Listing, Seller shall sign and deliver concurrently with this Agreement a "Waiver of Broker Submission to MLS" form or other acceptable certification that Seller does not authorize Broker to Publicly Market the listing via MLS or otherwise. Broker shall submit such waiver or other certification to MLS within three (3) business days of execution of this Agreement.

**B.** ☒ Seller authorizes **OR** ☐ Seller does not authorize Broker marketing Property through MLS to also make listing data available to third party websites. Seller understands that the listing data may get disseminated to third party websites through means other than MLS regardless of the selection above. Seller acknowledges that the accuracy of the listing data is controlled by the third-party websites and is outside of Broker's control. The parties agree and understand that third party websites include: 1) Broker's internet website; 2) the internet websites of licensed real estate salespersons or associate real estate brokers affiliated with Broker or other brokers participating in MLS; 3) any other internet websites (such as syndicated websites) in accordance with applicable MLS rules and regulations; and/or 4) printed media.

**C.** In the event Seller has opted into marketing Property in the MLS in subparagraph A above, Broker is hereby authorized by Seller to submit and market Property as follows:

☒ Seller authorizes **OR** ☐ Seller does not authorize the display of Property address on any internet website. In the event Seller does not authorize the display of the property address, only the ZIP code will be displayed.

☐ Seller authorizes **OR** ☒ Seller does not authorize the display of unedited comments or reviews of Property (or display a hyperlink to such comments or reviews) on MLS participants' internet websites. This provision does not control the display of such comments on third-party websites such as syndicated websites.

☐ Seller authorizes **OR** ☒ Seller does not authorize the display of an automated estimate of the market value of Property (or a hyperlink to such estimate) on MLS participants' internet websites. This provision does not control the display of such estimated value of Property on third-party websites such as syndicated websites.

**D.** ☐ Seller authorizes **OR** ☑ Seller does not authorize Broker to list Property under "coming soon" status in MLS. If Seller authorizes Broker to list Property under "coming soon" status in MLS, Broker shall list Property under "coming soon" status in MLS ☐ within three (3) business days of commencement of the Listing Period **OR** ☐ on or before: _____ . Property may be listed in the MLS under "coming soon" status for no more than 21 days from the date the listing is entered in MLS, except when a longer period is permitted by applicable MLS rules and regulations. Broker may engage in pre-marketing activities prior to the date that Property is entered in MLS under "active" status including, but not limited to: 1) placing a "coming soon" sign on Property; 2) notifying agents with other firms that Property is "coming soon"; and 3) placing advertisements and conduct other marketing activities at Broker's discretion. Broker shall not show Property to prospective buyers or tenants and/or their agents while under "coming soon" status.

**E.** During the term of this Agreement, Seller may, by written notice to Broker, authorize Broker to enable or disable use of any feature as described above. Broker agrees to update MLS database accordingly.

## 11. TYPES OF REAL ESTATE REPRESENTATION - DISCLOSURE AND INFORMED CONSENT.

**Seller representation** occurs by virtue of this Agreement with Seller's consent to use Broker's services and may also include any cooperating brokers who act on behalf of Seller as subagent of Broker. (Note: Broker may assist a buyer or prospective buyer by performing ministerial acts that are not inconsistent with Broker's duties as Seller's listing agent under this Agreement.)

**Buyer representation** occurs when buyers contract to use the services of their own broker (known as a buyer representative) to act on their behalf.

**Designated representation** occurs when a buyer and seller in one transaction are represented by different sales associate(s) affiliated with the same broker. Each of these sales associates, known as a designated representative, represents fully the interests of a different client in the same transaction. Designated representatives are not dual representatives if each represents only the buyer or only the seller in a specific real estate transaction. In the event of designated representatives, each representative shall be bound by client confidentiality requirements, set forth in the CONFIDENTIAL INFORMATION paragraph. The broker remains a dual representative.

Seller: _*NJ*_ / _____     Broker: _____ / _*FS*_

☐ Seller does not consent to designated representation and does not allow Property to be shown to a buyer represented by this Broker through another designated representative associated with the firm **OR**

☒ Seller consents to designated representation and allows Property to be shown to a buyer represented by this Broker through another designated representative associated with the firm.

**Dual representation** occurs when the same broker and the same sales associate represent both the buyer and seller in one transaction. In the event of dual representation, the broker shall be bound by confidentiality requirements for each client, set forth in the CONFIDENTIAL INFORMATION paragraph.

☒ Seller does not consent to dual representation and Seller does not allow Property to be shown to a buyer represented by this Broker through the same sales associate. **OR**

☐ Seller consents to dual representation and allows Property to be shown to a buyer represented by this Broker through the same sales associate.

**An additional disclosure is required before designated or dual representation is to occur for a specific transaction.**

Broker shall notify other real estate licensees via MLS whether Seller consents to designated or dual representation.

## 12. BROKER COMPENSATION

**A. Payment.** Seller shall pay Broker in cash total compensation of _____
_____ **4.5** % of the sales price plus $ 395.00 ("Compensation") if, during the term of this Agreement, anyone produces a buyer ready, willing and able to buy Property. Compensation is also earned if, within _____ **25** _____ days after the expiration or termination of this Agreement, a contract is ratified with a ready, willing, and able buyer to whom Property had been shown during the term of this Agreement; provided, however, that Compensation need not be paid if a contract is ratified on Property while Property is listed with another real estate company.

**B. Cooperating Broker.** Broker shall make a blanket unilateral offer of cooperation and compensation to other brokers in any MLS that Broker deems appropriate. To that end Broker shall offer a portion of Compensation to the cooperating broker as indicated:

Buyer Agency Compensation: _____ **2.5** _____ **OR**

Other Compensation: _____ **0** _____

*Note: Compensation may be shown by a percentage of the gross selling price, a definite dollar amount or "N" for no compensation.*

*Broker's compensation and the sharing of compensation between brokers are not fixed, controlled, recommended or suggested by any multiple listing service or Association of REALTORS®.*

**C. Variable Rate Commission.** If applicable, the Broker and Seller agree to a variable rate commission to be paid as follows: _____ **N/A** _____

**D. Retainer Fee.** Broker acknowledges receipt of a retainer fee in the amount of **-waived-** which ☐ shall **OR** ☐ shall not be subtracted from Compensation. The retainer fee is non-refundable and is earned when paid.

**E. Early Termination.** In the event Seller wishes to terminate this Agreement prior to the end of Listing Period, without good cause, Seller shall pay Broker _____ before Broker's execution of a written release.

Seller: *NJ* /          Broker: / *FS*

**13. CONFIDENTIAL INFORMATION** Broker shall maintain the confidentiality of all personal and financial information and other matters identified as confidential by Seller which were obtained by Broker during the brokerage relationship, unless Seller consents in writing to the release of such information or as otherwise provided by law. The obligation of Broker to preserve confidential information continues after termination of the brokerage relationship. Information concerning latent material defects about Property is not considered confidential information.

**14. AUTHORIZATION TO DISCLOSE OTHER OFFERS** In response to inquiries from buyers or cooperating brokers, Broker may not disclose, without Seller's authorization, the existence of other written offers on Property. If Seller does give such authorization, Seller acknowledges that Broker and sales associate(s) must disclose whether the offers were obtained by the listing agent, another member of the listing Broker's firm, or by a cooperating broker.

Seller [x] does **OR** [ ] does not authorize Broker and sales associate(s) to disclose such information to buyers or cooperating brokers.

**15. COMPLIANCE WITH FAIR HOUSING LAWS** Property shall be shown and made available without regard to race, color, religion, sex, handicap, familial status, or national origin as well as all classes protected by the laws of the United States, the Commonwealth and applicable local jurisdictions, or by the REALTOR® Code of Ethics.

**16. RELOCATION PROGRAM** Seller is participating in any type of relocation program:

[ ] Yes **OR** [x] No

If "Yes" (a) the program is named: _____

Contact Name _____ Contact Information _____

and (b) terms of the program are: _____

_____

If "No" or if Seller has failed to list a specific employee relocation program, then Broker shall have no obligation to cooperate with or compensate any undisclosed program.

**17. CONDOMINIUM ASSOCIATION** Seller represents that Property [x] is **OR** [ ] is not located within a development which is a Condominium or Cooperative. Condominiums or Cooperatives being offered for sale are subject to the receipt by buyers of the required disclosures, and Seller is responsible for payment of appropriate fees and for providing these disclosure documents to prospective buyers as prescribed in the Condominium Act, Section 55.1-1900 et seq., and the Cooperative Act, Section 55.1-2100, et seq., of the Code of Virginia.

[x] Seller **OR** [ ] Broker shall order the association disclosure documents at Seller's expense

[ ] at the time of listing **OR** [x] within 3 days following the date of contract ratification **OR**

[ ] _____ .

The Condominium or Cooperative dues are $ **285.00** per **month** (frequency of payment).

Special Assessment $ _____ for _____

Condominium or Cooperative Association Name: **Lincoln Park Condo Unit Owners Assoc.**

Management Company: **National Realty Partners** Phone #: **703-435-3800**

Seller represents that Seller [x] is **OR** [ ] is not current on all condominium association dues and/or special assessments.

Seller: *NJ* / Broker: *FS*

**18. PROPERTY OWNERS' ASSOCIATION.** Seller represents that Property ☒ is **OR** ☐ is not located within a development(s) which is subject to the Virginia Property Owners' Association Act, Section 55.1-1800, et seq., of the Code of Virginia. If Property is within such a development, Seller is responsible for payment of the appropriate fees and for providing these disclosure documents to the buyers.

☐ Seller **OR** ☒ Broker shall order the association disclosure documents at Seller's expense

☒ at the time of listing **OR** ☐ within 3 days following the date of contract ratification **OR**

☐ _____.

The Property Owners' Association dues are $ **124.00** per **month** (frequency of payment).
Special Assessment $ _____ for _____
Property Owners' Association Name: **West Market Community Association**
Management Company: **Gates Hudson Community Management** Phone #: **703-435-3777**
Seller represents that Seller ☒ is **OR** ☐ is not current on all property owners' association dues and/or special assessments.

**19. PROPERTY CONDITION.** Seller acknowledges that Broker has informed Seller of Seller's rights and obligations under the Virginia Residential Property Disclosure Act. Property ☐ is **OR** ☒ is not exempt from the Act. If not exempt, Seller has completed and provided to Broker a Residential Property Disclosure Statement, or any other applicable disclosures as may be required.

Seller acknowledges Broker may receive, from Seller or otherwise, reports, surveys, plats, home inspection report(s), appraisal(s), homeowner or other third-party warranty information or other similar document(s) concerning Property ("Property Report(s)"). Seller acknowledges Broker is required to disclose to prospective buyers all material adverse facts pertaining to the physical condition of Property actually known by Broker, including any such facts contained in Property Reports. Broker shall not, however, be obligated to discover latent defects in Property or to advise on property condition matters outside the scope of Broker's real estate license. Seller may authorize Broker to deliver any Property Report(s) to prospective buyer(s). Seller shall indemnify, save, and hold Broker harmless from all claims, complaints, disputes, litigation, judgments and attorney's fees arising from any misrepresentation by Seller or authorized delivery of Property Reports.

**20. LEAD-BASED PAINT DISCLOSURE.** Seller represents that the residential dwelling(s) at Property ☐ were **OR** ☒ were not constructed before 1978. If the dwelling(s) were constructed before 1978, Seller is subject to federal law concerning disclosure of the possible presence of lead-based paint at Property, and Seller acknowledges that Broker has informed Seller of Seller's obligations under the law. If the dwelling(s) were constructed before 1978, unless exempt under 42 U.S.C. 4852(d), Seller has completed and provided to Broker the form, "Sale: Disclosure And Acknowledgment Of Information On Lead-Based Paint And/Or Lead-Based Paint Hazards" or equivalent form.

**21. CURRENT LIENS.** Seller represents to Broker that the below information is true and complete to the best of Seller's information, knowledge, and belief and Seller understands that any loans identified below will be paid off at Settlement: *(Check all that are applicable)*

**A.** ☒ Property is not encumbered by any mortgage or deed of trust *(if box is checked, skip to G)*.
**B.** ☐ Property is security for a first mortgage or deed of trust loan held by (Lender Name):

Seller: *NJ* / Broker: *FS*

_____ with an approximate balance of $ _____.
This loan is a ☐  Conventional OR☐  FHA or☐ VA or☐ _____.

**C.** ☐  Property is security for a second mortgage or deed of trust loan held by (Lender Name): _____ with an approximate balance of $ _____.

**D.** ☐  Property is security for a line of credit or home equity line of credit held by (Lender Name): _____ with an approximate balance of $ _____.

**E.** ☐  Seller is current on all payments for the loans identified above.

**F.** ☐  Seller is not in default and has not received any notice(s) from the holder(s) of any loan identified above, or from any other lien holder of any kind, regarding a default under any loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure.

**G.** ☒  There are no liens secured against Property for Federal, State, or local income taxes; unpaid real property taxes; or unpaid condominium or homeowners' association fees or special assessments.

**H.** ☒  There are no judgments against Seller (including each owner for jointly held property). Seller has no knowledge of any matter that might result in a judgment that may potentially affect Property.

**I.** ☒  Seller has not filed for bankruptcy protection under Federal law and is not contemplating doing so during the term of this Agreement.

In the event Property is encumbered by a loan, Seller further agrees that Seller shall promptly disclose the name and contact information for the lender and account number to the Settlement Agent identified in a contract for the sale of the Property.

During the term of this Agreement, should any change occur with respect to answers A. through I. above, Seller shall immediately notify Broker and sales associate/listing agent, in writing, of such change.

**22. SELLER FINANCING** Seller ☐ does **OR** ☒ does not agree to offer seller financing by providing a _____ deed of trust loan in the amount of $ _____ with further terms to be negotiated.

**23. CLOSING COSTS** Fees for the preparation of the deed of conveyance, that portion of the settlement agent's fee billed to Seller, costs of releasing existing encumbrances, Seller's legal fees, Grantor's Tax, and any other proper charges assessed to Seller will be paid by Seller unless provided otherwise in the sales contract.

The "Seller's Estimated Cost of Settlement" form ☐ is **OR** ☒ is not attached. These estimates are for informational purposes only and will change based upon the terms and conditions of the purchase offer.

---

**Seller's Proceeds:**  The Seller acknowledges that Seller's proceeds may not be available at the time of settlement. The receipt of proceeds may be subject to Section 55.1-903 of the Code of Virginia, commonly referred to as the **Virginia Wet Settlement Act** , and may be subject to other laws, rules and regulations (e.g. Virginia estate statutes and the **Foreign Investment in Real Property Tax Act - FIRPTA** ). **Seller is advised to seek legal and/or financial advice concerning these matters.**

---

**24. IRS/FIRPTA.** Section 1445 of the Internal Revenue Service (IRS) Code may require a buyer or the settlement agent to report the gross sales price, Seller's federal tax identification number and other required information to the IRS. Seller shall provide to a buyer or the settlement agent such

Seller: _*NJ*_ / _____   Broker: _____ / _*FS*_

information upon request. In certain situations, the IRS requires a percentage of the sales price to be withheld from Seller's proceeds if Seller is a Foreign Person as defined by FIRPTA.

Seller ☐ is **OR** ☒ is not a "Foreign Person" as defined by FIRPTA.

## 25. SELLER DUTIES.

**A. Seller Representations and Warranties.** Seller is aware that Seller may be responsible for failing to disclose information and/or misrepresenting the condition of Property. Seller certifies the accuracy of the information provided to the Listing Broker and Seller warrants:

1)  Seller has capacity to convey good and marketable title to Property by general warranty deed and represents that Property is insurable by a licensed title insurance company with no additional risk premium.
2)  Seller is not a party to a listing agreement with another broker for the sale, exchange, or lease of Property.
3)  No person or entity has the right to purchase, lease or acquire Property, by virtue of an option, right of first refusal or otherwise.
4)  Seller ☐ is **OR** ☒ is not a licensed (active/inactive) real estate agent/broker.
5)  Seller ☐ has **OR** ☒ has no knowledge of the existence, removal or abandonment of any underground storage tank on Property.
6)  Property ☐ is **OR** ☒ is not tenant-occupied.
7)  Seller ☒ has **OR** ☐ does not have a recording system in Property. In the event Seller has a recording system in Property which records audio, Seller understands that recording of audio may result in violation of state and/or federal wiretapping laws.  Therefore, Seller hereby releases and holds harmless Broker, Broker's designated agents, sub-agents, sales associates and employees from any liability which may result from the recording of audio in Property.

**B. Access to Property.**  Seller shall provide keys to Broker for access to Property to facilitate Broker's duties under this Agreement. Seller shall allow Broker's unlicensed assistants in Property to perform ministerial acts as defined by 18VAC135-20-165.

If Property is currently tenant-occupied, Seller shall provide Broker with any current lease documents and contact information for current tenant and shall use best efforts to obtain the full cooperation of current tenants, in connection with showings and inspections of Property.

**C. Seller Assumption of Risk.**

1)  Seller retains full responsibility for Property, including all utilities, maintenance, physical security and liability until title to Property is transferred to buyer. Seller is advised to take all precautions for safekeeping of valuables and to maintain appropriate property and liability insurance through Seller's own insurance company.

    Broker is not responsible for the security of Property or for inspecting Property on any periodic basis. If Property is or becomes vacant during the Listing Period, Seller is advised to notify Seller's homeowner's insurance company and request a "Vacancy Clause" to cover Property.
2)  In consideration of the use of Broker's services and facilities and of the facilities of any MLS, Seller and Seller's heirs and assigns hereby release Broker, Broker's designated agents, sub-agents, sales associates and employees, any MLS and the directors, officers and employees thereof, including officials of any parent Association of REALTORS®, except for malfeasance on the part of such parties, from any liability to Seller for vandalism, theft or damage of any nature whatsoever to Property or its contents that occurs during the Listing Period. Seller waives

Seller: *NJ* / _____    Broker: *FS* _____

any and all rights, claims and causes of actions against them and holds them harmless for any property damage or personal injury arising from the use or access to Property by any persons during Listing Period.

## 26. MISCELLANEOUS PROVISIONS.

**A. Appropriate Professional Advice.** Broker can counsel on real estate matters, but if Seller desires legal advice, Seller is advised to seek legal counsel. Seller is advised further to seek appropriate professional advice concerning, but not limited to, the condition of Property or tax and insurance matters.

**B. Service Provider Referrals.** Broker or one of Broker's sales associates may refer a service provider to assist Seller in this transaction. This referral is not an endorsement, guarantee or warranty as to the quality, cost and/or timeliness of the services to be provided. Seller is advised to independently investigate all options for service providers and consider whether any service provider will work effectively with Seller. Seller is free to reject any referred service provider for any or no reason.

**C. Wire Fraud.** Seller should never transmit nonpublic personal information, such as credit or debit card, bank account or routing numbers, by email or other unsecured electronic communication. There are numerous e-mail phishing scams that involve fraudulent requests to wire funds in conjunction with a real estate transaction. If Seller receives any electronic communication directing the transfer of funds or to provide nonpublic personal information, even if that electronic communication appears to be from a representative of Broker, do not respond. Such requests, even if they may otherwise appear to be from Broker, could be part of a scheme to defraud Seller by misdirecting the transfer of sale proceeds or using Seller's identity to commit a crime. If Seller should receive wiring instructions via electronic means that appear to be from a legitimate source involved in Seller's real estate transaction, Seller should verify - using contact information other than that provided in the communication - that the instructions were sent by an actual representative of the requesting company. Conversely, if Seller has provided wiring instructions to a third party, it is important to confirm with the representative of said company that the wire instructions are not to be substituted without Seller's verified written consent. When wiring funds, never rely exclusively on an e-mail, fax or text communication.

**D. Subsequent Offers After Contract Acceptance.** After a sales contract has been ratified on Property, Broker recommends Seller obtain the advice of legal counsel prior to acceptance of any subsequent offer.

**E. Governing Law.** The laws of the Commonwealth of Virginia shall govern the validity, interpretation, and enforcement of this Agreement.

**F. Binding Agreement** . This Agreement will be binding upon the parties, and each of their respective heirs, executors, administrators, successors and permitted assigns. The provisions hereof will survive the sale of Property and will not be merged therein. This Agreement, unless amended in writing by the parties, contains the final and entire agreement and the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained.

## 27. ATTORNEYS' FEES. If any Party breaches this Agreement and a non-breaching Party retains legal counsel to enforce its rights hereunder, the non-breaching Party shall be entitled to recover against the breaching Party, in addition to any other damages recoverable against any breaching Party, all of its reasonable Legal Expenses incurred in enforcing its rights under this Agreement, whether or not suit is filed, and in obtaining, enforcing and/or defending any judgment related

Seller: _NJ_    Broker: _FS_

Authentisign ID: 10CE575F1-36E4-4E08-97C9-DE46CE16CAD

thereto. Should any tribunal of competent jurisdiction determine that more than one Party to the dispute has breached this Agreement, then all such breaching Parties shall bear their own costs. However, if the tribunal determines that one or more of the Parties is a "Substantially Prevailing Party," any such Substantially Prevailing Party shall be entitled to recover from any of the breaching Parties, in addition to any other damages recoverable against any breaching Party, all of its reasonable Legal Expenses incurred in enforcing its rights under this Agreement, whether or not suit is filed, and in obtaining, enforcing and/or defending any judgment related thereto. "Party" as used in this paragraph includes any third-party beneficiary identified herein. "Legal Expenses" as used in this paragraph includes attorneys' fees, court costs, and litigation expenses, if any, including, but not limited to, expert witness fees, and court reporter fees.

## 28. ADDITIONAL TERMS.

| 04/18/2021 | / _Nicole Irving_ | 04/19/2021 | _Fetneh Schacht_ |
|---|---|---|---|
| | 4/18/2021 10:17:50 AM MDT Nicole Irving | | 4/19/2021 11:06:20 AM EDT |
| Date | Seller | Date | Broker/Sales Manager |

| | / |
|---|---|
| Date | Seller |

| | / |
|---|---|
| Date | Seller |

| | / |
|---|---|
| Date | Seller |

*********************************************************************

### Sales Associate Contact Information

Sales Associate (Listing Agent): __Jean Lee__ _____ _____

Team Name (if applicable): _____

Phone: (W) **(703) 938-4200**          (Cell) **(703) 489-9280** _____

Email: **Jean.Lee@LongandFoster.com**          Fax: **(703) 938-6076**

### Supervising Broker Contact Information

Broker Name: _____ **Fetneh Schacht** _____

Phone: (W) **703-938-4200**          (Cell) _____

Email: **fetneh@longandfoster.com**          Fax: _____

**© 2021 Northern Virginia Association of REALTORS®, Inc.**

This is a suggested form of the Northern Virginia Association of REALTORS®,Inc. ("NVAR"). This form has been exclusively printed for the use of REALTOR® members of NVAR, who may copy or otherwise reproduce this form in identical form with the addition of their company logo. Any other use of this form by REALTOR® members of NVAR, Notwithstanding the above, no REALTOR® member of NVAR, or any other person, may copy or otherwise reproduce this form for purposes of resale.





## DISCLOSURE OF BROKERAGE RELATIONSHIP
## EXPLANATION TO CONSUMERS

Real estate licensees in Virginia are required by law to make prompt written disclosure of any brokerage relationship to members of the public who are unrepresented. Licensees must also make written disclosures and obtain timely written consents from their clients before entering into other brokerage relationships. The attached form is provided to you to satisfy these requirements and to help you understand the nature of the brokerage relationship of the licensee.

### THE LICENSEE'S DUTIES

A licensee must have a written brokerage agreement to represent a client and a licensee owes his client certain duties. A licensee who is not representing you in a transaction can nonetheless provide you other valuable information and assistance. However, you should always keep in mind whom the licensee represents in your transaction, and thus to whom that licensee owes the duties described below.

### WHOM DOES THE LICENSEE REPRESENT?

In any real estate transaction, a licensee may represent the seller, the buyer, or, under certain circumstances, both seller and buyer.

| | |
|---|---|
| The Seller | A licensee represents a seller via a written brokerage agreement called a listing agreement, in which case the licensee owes his primary responsibilities to the seller. The licensee must disclose his relationship with the seller whenever dealing with an unrepresented buyer. The licensee is also allowed to assist an unrepresented buyer with ministerial duties - such as filling in the blanks of a contract and holding the escrow deposit. |
| The Buyer | If a buyer desires to be represented by a licensee, then the buyer and the licensee must enter into a written brokerage agreement by which the licensee agrees to represent the interests of the buyer. The licensee must disclose his relationship with the buyer whenever dealing with an unrepresented seller. Furthermore, the licensee may perform ministerial duties for an unrepresented seller – such as delivering offers and counteroffers. |
| The Buyer and The Seller | A licensee and his firm may represent both the buyer and the seller in a particular transaction, but only with the informed written consent of both the buyer and the seller. A licensee representing both the buyer and seller in a dual capacity is necessarily limited in his ability to represent either the buyer or seller fully and exclusively. The licensee must safeguard the confidentiality of any information obtained within the confidentiality and trust of the brokerage relationship, unless disclosure of such information is required by law. Specifically, the licensee must not tell the buyer that the seller will accept a price lower than the listing price, nor tell the seller that the buyer will pay a price higher than the price offered. |
| Designated Licensees | Virginia law also permits a principal or supervising broker to designate different licensees affiliated with the broker to represent different clients in the same transaction. Designated agency/representation requires informed written consent from both parties. Unlike the dual relationship discussed in the previous paragraph, these designated licensees represent only the interest of their respective clients, and may therefore represent those interests fully. The principal or supervising broker who is supervising the transaction will be considered dual broker of both seller and buyer. Designated licensees may not disclose, except to their broker, personal or financial information received from the clients during the brokerage relationship and any other information a client requests to be kept confidential, unless required by law to be disclosed or the client consents to its disclosure in writing. |

COPYRIGHT©2012 by the VIRGINIA ASSOCIATION OF REALTORS®. All rights reserved. This form may be used only by members in good standing with the VIRGINIA ASSOCIATION OF REALTORS®. The reproduction of this form, in whole or in part, or the use of the name "VIRGINIA ASSOCIATION OF REALTORS®", in connection with any other form, is prohibited without prior written consent from the VIRGINIA ASSOCIATION OF REALTORS®.

LF209



04/18/2021

4/18/2021 10:17:52 AM ADT

Authentisign ID: 10...



# * ALERT *

## Important Consumer Information

 

### Anti-Fraud Disclosure Statement

Electronic communications such as e-mail, text messages and social media messaging are neither secure nor confidential. While **Long & Foster Real Estate, Inc. (Long & Foster)** has adopted policies and procedures to aid in avoiding fraud, even the best security protections can still be bypassed by unauthorized parties. Long & Foster will <u>never</u> send you any electronic communication with instructions to transfer funds or to provide nonpublic personal information, such as credit card, bank account or taxpayer identification numbers.

**YOU SHOULD NEVER TRANSMIT NONPUBLIC PERSONAL INFORMATION, SUCH AS CREDIT OR DEBIT CARD, BANK ACCOUNT OR ROUTING NUMBERS, BY EMAIL OR OTHER UNSECURED ELECTRONIC COMMUNICATION. EMAILS ATTEMPTING TO INDUCE FRAUDULENT WIRE TRANSFERS MAY APPEAR TO COME FROM A TRUSTED SOURCE.**

Please be aware that there are numerous e-mail phishing scams that involve fraudulent requests to wire funds in conjunction with a real estate transaction. Long & Foster recommends that if you receive any electronic communication directing you to transfer funds or provide nonpublic personal information, EVEN IF THAT ELECTRONIC COMMUNICATION APPEARS TO BE FROM A REPRESENTATIVE OF LONG & FOSTER, do not respond. Such requests, even if they may otherwise appear to be from Long & Foster, could be part of a scheme to defraud you by misdirecting the transfer of sale proceeds or using your identity to commit a crime.

If you should receive wiring instructions via electronic means that appear to be from a legitimate source involved in your real estate transaction, you should verify - using contact information other than that provided in the communication - that the instructions were sent by an actual representative of the requesting company. Conversely, if you have provided wiring instructions to a third party, it is important to confirm with the representative of said company that the wire instructions are not to be substituted without your verified written consent. If you have received wiring instructions that appear to be from Long & Foster, a settlement company or any other entity, please contact the representative with whom you are working at Long & Foster (in person or by telephone) for assistance. ***Please remember that when wiring funds, never rely exclusively on an e-mail, fax or text communication.***

ACKNOWLEDGMENT: I/we have read this Anti-Fraud Disclosure Statement and understand that Long & Foster will never send me/us any electronic communication with instructions to transfer funds or provide financial account numbers or other nonpublic personal information.

*Nicole Irving*                    04/18/2021

<small>4/18/2021 10:17:53 AM ADT</small>

| Signature | (Date) | Signature | (Date) |

LF444 Client Alert 11/2016

Authentisign ID: 10C




### SUMMARY OF RIGHTS AND OBLIGATIONS
### OF SELLERS AND PURCHASERS UNDER
### THE VIRGINIA RESIDENTIAL PROPERTY DISCLOSURE ACT

Virginia's Residential Property Disclosure Act (the "Act") (Virginia Code § 55.1-700 et seq.) requires real estate licensees to inform the parties to a transaction with whom they deal of their rights and obligations under the Act. The licensee providing this information to you is prepared to answer any questions you may have about what the Act means to you, and to furnish you with a copy of the Act at your request.

The Act applies to sales, exchanges, installment sales, or leases with option to purchase of residential real property improved with one to four dwelling units. The Act does not apply to: transfers pursuant to court order (estate administration, pursuant to writ execution, foreclosure, bankruptcy, condemnation, or by decree for specific performance); transfers among co-owners; transfers among spouses; transfers among parents or grandparents and their children or grandchildren; tax sales; transfers involving a government or housing authority; or (subject to certain exceptions discussed below) sales of new homes.

The Act requires sellers to furnish purchasers with a disclosure statement developed by the Virginia Real Estate Board. The statement must be furnished to the purchaser before final ratification of the purchase contract or the purchaser may terminate the contract or sue later for damages. The disclosures will be current as of the date of delivery. The seller will not be required to provide updated or additional disclosures if a transaction pursuant to a ratified real estate contract proceeds to settlement after the effective date of legislation amending any of the disclosures under § 55.1-700, provided that the correct disclosures were delivered under the law in effect at the time of delivery. The statement will direct purchasers to the RESIDENTIAL PROPERY DISCLOSURES web page (http://www.dpor.virginia.gov/News/Residential_Property_Disclosures/) for important information about the real property. Purchasers are advised to consult the webpage.

A seller, in furnishing a disclosure statement, makes no representations or warranties as to the condition of the property or any improvements located thereon nor with respect to the matters set forth and described at the RESIDENTIAL PROPERTY DISCLOSURES web page. (http://www.dpor.virginia.gov/News/Residential_Property_Disclosures/) Purchaser is advised to exercise whatever due diligence purchaser deems necessary, including a home inspection, as defined in Virginia Code § 54.1-500, in accordance with the terms and condition of the purchase contract, but in any event prior to settlement.

A builder of a new home must disclose to a purchaser in writing all known material defects which would constitute a violation of any applicable building code. In addition, for property located wholly or partially in any locality comprising Planning District 15 (the City of Richmond, the Town of Ashland, and the counties of Charles City, Chesterfield, Goochland, Hanover, Henrico, New Kent, and Powhatan), the builder (or seller, if the owner is not the builder) shall disclose in writing whether mining operations have previously been conducted on the property or the presence of any abandoned mines, shafts or pits. This disclosure does not abrogate any warranty or other obligations the builder may have to the purchaser, and must be made (i) when selling a completed home, before acceptance of the purchase contract, or (ii) when selling a home before or during construction, after issuance of a certificate of occupancy. No disclosure or statement of any kind is required if there is no such information to disclose. Any required disclosure may be, but need not be, contained in the disclosure statement described in this summary.

A purchaser must be furnished with a disclosure statement signed by the seller prior to final ratification of the purchase contract. If such statement is received after final ratification, the purchaser's sole remedy shall be to terminate the purchase contract by sending written notice to the seller either by hand delivery or U. S. Mail, postage prepaid, at or prior to the earliest of (i) three days after receiving the statement (if delivered in person); (ii) five days after postmark (if sent by U. S. Mail, postage prepaid); (iii) settlement; (iv) occupancy by purchaser; (v) purchaser's making written application for a mortgage loan if such application discloses that the termination right ends upon application; (vi) purchaser's execution of a written waiver of the right to terminate (such waiver may not be in the purchaser contract).

If the seller fails to provide the required disclosure statement, the contract may be terminated as set forth above. If the seller fails to provide the required disclosure statement, or the seller misrepresents, willfully or otherwise, the information required in such disclosure, except as a result of information provided by the locality in which the property is located, the purchaser may bring an action to recover actual damages suffered as a result of such violation. No purchaser of property located in a noise zone designated on the official zoning map of the locality as having a day-night average sound level of less than 65 decibels shall have a right to maintain an action for such damages. Any such action must be brought within one year of the date the purchaser received the disclosure statement. If no disclosure statement was provided to the purchaser, the action must be brought within one year of the date of settlement, or purchaser's occupancy of the property by lease with option to purchase.

Purchasers should be aware that neither a seller nor a real estate licensee is obligated to disclose facts or

©2020 Virginia REALTORS® For use by members in good standing only

**VAR FORM SUM1  Revised 07/20 Reviewed 07/2020**

occurences which have no effect on the physical structure of the property, its physical environment, or the improvements located thereon, or the fact that the property was the site of a homicide, felony, or suicide. Furthermore, it is a violation of federal law to disclose whether a previous occupant of the property was afflicted with the HIV virus or has AIDS. Purchasers should be aware that in providing a disclosure statement:

(a) The owner is making no representations or warranties as to the condition of the real property or any improvements thereon, or with regard to any covenants and restrictions, or any conveyance of mineral rights, as may be recorded among the land records affecting the real property or any improvements thereon. Purchasers should exercise whatever due diligence they deem necessary, including obtaining a home inspection and a residential building energy analysis as defined in §54.1-1144, in accordance with the terms and conditions as may be contained in the real estate purchase contract.

(b) The owner is making no representations with respect to any matters that may pertain to parcels adjacent to the subject property, including zoning classification or permitted uses of adjacent parcels.  Purchasers should exercise whatever due diligence they deem necessary with respect to adjacent parcels in accordance with the terms and conditions of the purchase contract, but in any event prior to settlement on the subject property.

(c) The owner makes no representations as to any matters that pertain to whether the provisions of any historic district ordinance affect the property.  Purchasers are advised to exercise whatever due diligence they deem necessary with respect to any historic district designated by the locality pursuant to Virginia Code § 15.2-2306, including review of any local ordinance creating such district or any official map adopted by the locality depicting historic districts, any materials available from the locality that explain any requirements to alter, reconstruct, renovate, restore, or demolish buildings or signs in the local historic district and the necessity of any local review board or governing body approvals prior to doing any work on a property located in a local historic district, in accordance with terms and conditions as may be contained in the purchase contract, but in any event prior to settlement on the property.

(d) The owner makes no representations with respect to whether the property contains any resource protection areas established in an ordinance implementing the Virginia Chesapeake Bay Preservation Act (§ 62.1-44.15:67 et seq.) adopted by the locality where the property is located pursuant to Virginia Code § 62.1-44.15:74.  Purchasers should exercise whatever due diligence they deem necessary to determine whether the provisions of any such ordinance affect the property, including review of any official map adopted by the locality depicting resource protection areas, in accordance with terms and conditions as may be contained in the purchase contract, but in any event prior to settlement on the property.

(e) The owner makes no representations with respect to information on any sexual offenders registered under Chapter 23 (§ 19.2-387 et seq.) of Title 19.2.  Purchasers are advised to exercise whatever due diligence they deem necessary with respect to such information, in accordance with the terms and conditions of the purchase contract, but in any event prior to settlement.  Such information may be obtained by contacting the local police department or the Department of State Police, Central Criminal Records Exchange, at (804) 674-2000, or on the Internet at http://sex-offender.vsp.virginia.gov/sor/.

(f) The owner makes no representations with respect to whether the property is within a dam break inundation zone.  Purchaser is advised to exercise whatever due diligence the purchaser deems necessary with respect to whether the property resides within a dam break inundation zone, including a review of any map adopted by the locality depicting dam break inundation zones.

(g) The owner makes no representations with respect to the presence of any wastewater system, including the type or size thereof or associated maintenance responsibilities related thereto, located on the property and the purchaser is advised to exercise whatever due diligence the purchaser deems necessary to determine the presence of any wastewater system on the property and the costs associated with maintaining, repairing, or inspecting any wastewater system, including any costs or requirements related to the pump-out of septic tanks, in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to that contract.

(h) The owner makes no representations with respect to any right to install or use solar energy collection devices on the property.

(i) The owner makes no representations with respect to whether the property is located in one or more special flood hazard areas and purchasers are advised to exercise whatever due diligence they deem necessary, including (i) obtaining a flood certification or mortgage lender determination of whether the property is located in one or more special flood hazard areas, (ii) reviewing any map depicting special flood hazard areas, (iii) contacting the Federal Emergency Management Agency (FEMA) or visiting the website for FEMA's National Flood Insurance Program or for the Virginia Department of Conservation and Recreation's Flood Risk Information system, and (iv) determining whether flood insurance is required, in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.

(j) The owner makes no representations with respect to whether the property is subject to one or more conservation or other easements and that purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract; and

(k) The owner makes no representations with respect to whether the property is subject to a community development authority approved by a local governing body pursuant to Article 6 (§15.2-5152 et seq.) of Chapter 51 of Title 15.2 of the Virginia Code and that purchasers are advised to exercise whatever due diligence a particular purchaser deems

©2020 Virginia REALTORS® For use by members in good standing only

necessary in accordance with terms and conditions as may be contained in the real estate purchase contract, including determining whether a copy of the resolution or ordinance has been recorded in the land records of the circuit court for the locality in which the community development authority district is located for each tax parcel included in the district pursuant to Virginia Code § 15.2-5157, but in any event, prior to settlement pursuant to such contract.

(l)    The seller represents that there are no pending enforcement actions pursuant to the Virginia Uniform Statewide Building Code (§ 36-97 et seq.) that affect the safe, decent and sanitary living conditions of the property of which the seller has been notified in writing by the locality, nor any pending violation of the local zoning ordinance that the seller has not abated or remedied within the time period set out in the written notice of violation from the locality or established by a court of competent jurisdiction, except as set out in the disclosure statement.

(m)   The seller makes no representations with respect to whether the property is located on or near deposits of marine clays (marumsco soils), and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary in accordance with the terms and conditions as may be contained in the real estate purchase contract, including consulting public resources regarding local soil conditions and having the soil and structural conditions of the property analyzed by a qualified professional.

(n)    The seller makes no representations with respect to whether the property is located in a locality classified as Zone 1 or Zone 2 by the U.S. Environmental Protection Agency's (EPA) Map of Radon Zones, and purchasers are advised to exercise whatever due diligence they deem necessary to determine whether the property is located in such a zone, including (i) reviewing the EPA's Map of Radon Zones or visiting the EPA's radon information website; (ii) visiting the Virginia Department of Health's Indoor Radon Program website; (iii) visiting the National Radon Proficiency Program's website; (iv) visiting the National Radon Safety Board's website that lists the Board's certified contractors; and (v) ordering a radon inspection, in accordance with the terms and conditions as may be contained in the real estate purchase contract, but in any event prior to settlement pursuant to such contract.

(o)    The seller makes no representations with respect to whether the property contains any pipe, pipe or plumbing fitting, fixture, solder, or flux that does not meet the federal Safe Drinking Water Act definition of "lead free" pursuant to 42 U.S.C. § 300g-6, and purchasers are advised to exercise whatever due diligence they deem necessary to determine whether the property contains any pipe, pipe or plumbing fitting, fixture, solder, or flux that does not meet the federal Safe Drinking Water Act definition of "lead free", in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event prior to settlement pursuant to such contract.

(p)    The seller makes no representations with respect to the existence of defective drywall on the property, and purchasers are advised to exercise whatever due diligence they deem necessary to determine whether there is defective drywall on the property, in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event prior to settlement pursuant to such contract. For purposes of this paragraph, "defective drywall" means the same as that term is defined in Virginia Code § 36-156.1.

(q)    The seller makes no representation with respect to the condition or regulatory status of any impounding structure or dam on the property or under the ownership of the common interest community that the owner of the property is required to join, and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary to determine the condition, regulatory status, cost of required maintenance and operation, or other relevant information pertaining to the impounding structure or dam, including contacting the Department of Conservation and Recreation or a licensed professional engineer.


If the property is located in a locality in which a military air installation is located, the seller must provide purchasers with a disclosure statement setting forth whether the property is located in a noise zone or accident potential zone, or both, if so designated on the official zoning map of the locality.  Such disclosure shall state the specific noise or accident potential zone, or both, in which the property is located.

Please acknowledge receiving a copy of this summary by signing below.

_Nicole Irving_                                              04/18/2021
_____        _____ (Date)
4/18/2021 10:17:54 AM ADT

_____        _____ (Date)

_____        _____ (Date)

_____        _____ (Date)

©2020 Virginia REALTORS® For use by members in good standing only
**VAR FORM SUM1  Revised 07/20** Reviewed  07/2020

Authentisign ID: 10...



**Virginia Real Estate Board**
http://www.dpor.virginia.gov/Consumers/Disclosure_Forms/

Department of Professional and Occupational Regulation

# RESIDENTIAL PROPERTY DISCLOSURE STATEMENT
## ACKNOWLEDGEMENT BY SELLER AND PURCHASER

The Virginia Residential Property Disclosure Act (§ 55.1-700 et seq. of the *Code of Virginia*) requires the owner of certain residential real propertywhenever the property is to be sold or leased with an option to buy-to provide notification to the purchaser of disclosures required by the Act and to advise the purchaser that the disclosures are listed on the Real Estate Board webpage.

Certain transfers of residential property are excluded from this requirement (see § 5.1-702).

PROPERTY ADDRESS/ LEGAL **12077 Trumbull Way** **Reston** , **VA** **20190**
DESCRIPTION: **Lincoln Park Condo UN 2077-8A PH 4**

**The purchaser is advised of the dislosures listed in the RESIDENTIAL PROPERT DISCLOSURE STATEMENT located on the Real Estate Board webpage at:**
http://www.dpor.virginia.gov/Consumers/Residential_Property_Disclosures

**The owner(s) hereby provides notification** as required under the Virginia Residential Property Disclosure Act (§ 55.1-700 et seq. of the *Code of Virginia*) and, if represented by a real estate licensee as provided in § 55.1-712, further acknowledges having been informed of the rights and obligations under the Act.

*Nicole Irving*
Owner  4/18/2021 10:17:55 AM ADT

Owner

04/18/2021
Date

Date

**The purchaser(s) hereby acknowledges receipt of notification** of disclosures as required under the Virginia Residential Property Disclosure Act (§ 55.1-700 et seq. of the *Code of Virginia*). In addition, if the purchaser is (i) represented by a real estate licensee or (ii) not represented by a real estate licensee but the owner is so represented as provided in §55.1-712, the purchaser further acknowledges having been informed of the rights and obligations under the Act.

Purchaser

Purchaser

Date

Date

DPOR rev 07/2020



# FEDERAL LEAD-BASED PAINT DISCLOSURE LAW AND REGULATIONS:
## INFORMATION FOR OWNERS OF RESIDENTIAL PROPERTY

*Note: 42 U.S.C 485 2d exempts from the disclosure requirements for lead-based paint certain transfers of residential property constructed before 1978. The exceptions are: property leased for 100 days or less with no possibility of renewal or extension; re-lease or renewal of a lease for the same property to the same tenant, where the landlord previously complied with the law's disclosures and has no new information about leadbased paint; housing for the elderly or disabled; foreclosure sales; property where there is no separate bedroom; and property that has been certified as lead-paint free under the law. All other residential properties constructed before 1978 are "target housing" subject to the law and regulations, and their owners must be informed of the following.*

**§35.88 Disclosure requirements for sellers and lessors**.

(a) The following activities shall be completed before the purchaser or lessee is obligated under any contract to purchase or lease target housing that is not otherwise an exempt transaction pursuant to §35.82. Nothing in this section implies a positive obligation on the seller or lessor to conduct any evaluation or reduction activities. (1) The seller or lessor shall provide the purchaser or lessee with an EPA-approved lead hazard information pamphlet. Such pamphlets include the EPA document entitled *Protect Your Family From Lead in Your Home* (EPA #747-K-94-001 ) or an equivalent pamphlet that has been approved for use in that State by EPA. (2) The seller or lessor shall disclose to the purchaser or lessee the presence of any known lead-based paint and/or lead-based paint hazards in the target housing being sold or leased. The seller or lessor shall also disclose any additional information available concerning the known lead-based paint and/or lead-based paint hazards, such as the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards, and the condition of the painted surfaces. (3) The seller or lessor shall disclose to each agent the presence of any known lead-based paint and/or lead-based paint hazards in the target housing being sold or leased and the existence of any available records or reports pertaining to lead-based paint and/or lead-based paint hazards. The seller or lessor shall also disclose any additional information available concerning the known lead-based paint and/or lead-based paint hazards, such as the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/ or lead-based paint hazards, and the condition of the painted surfaces. (4) The seller or lessor shall provide the purchaser or lessee with any records or reports available to the seller or lessor pertaining to lead-based paint and/or lead-based paint hazards in the target housing being sold or leased. This requirement includes records and reports regarding common areas. This requirement also includes records and reports regarding other residential dwellings in multifamily target housing, provided that such information is part of an evaluation or reduction of lead-based paint and/or lead-based paint hazards in the target housing as a whole.

(b) If any of the disclosure activities identified in paragraph (a) of this section occurs after the purchaser or lessee has provided an offer to purchase or lease the housing, the seller or lessor shall complete the required disclosure activities prior to accepting the purchaser's or lessee's offer and allow the purchaser or lessee an opportunity to review the information and possibly amend the offer.

**§35.90 Opportunity to conduct an evaluation.**

(a) Before a purchaser is obligated under any contract to purchase target housing, the seller shall permit the purchaser a 10-day period (unless the parties mutually agree, in writing, upon a different period of time) to conduct a risk assessment or inspection for the presence of leadbased paint and/or lead-based paint hazards.

(b) Notwithstanding paragraph (a) of this section, a purchaser may waive the opportunity to conduct the risk assessment or inspection by so indicating in writing.

**§35.92 Certification and acknowledgment of disclosure.**

(a) *Seller requirements.* Each contract to sell target housing shall include an attachment containing the following elements, in the language of the contract (e.g., English, Spanish): (1) A Lead Warning Statement consisting of the following language:

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including reading disabilities, reduced intelligence quotient, behavioral problems, and impaired*

NVAR - 1036 - 2/97
LF 228

Authentisign ID: 1CD8C8A91-31C1-EB11-85C0-0160810C6101

*memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

(2) A statement by the seller disclosing the presence of known lead-based paint and/or lead-paint based hazards in the target housing being sold or indicating no knowledge of the presence of lead-based paint and/or lead-based paint hazards. The seller shall also provide any additional information available concerning the known lead-based paint and/or lead-based paint hazards, such as the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards, and the condition of the painted surfaces. (3) A list of any records or reports available to the seller pertaining to lead-based paint and/or lead-based paint hazards in the housing that have been provided to the purchaser. If no such records or reports are available, the seller shall so indicate. (4) A statement by the purchaser affirming receipt of the information set out in such paragraphs (a)(2) and (a)(3) of this section and the lead hazard information pamphlet required under section 15 U.S.C. 2696. (5) A statement by the purchaser that he/she has either: (i) Received the opportunity to conduct the risk assessment or inspection required by §35.90(a); or (ii) Waived the opportunity. (6) When any agent is involved in the transaction to sell target housing on behalf of the seller, a statement that: (i) The agent has informed the seller of the seller's obligations under 42 U.S.C. 485 2d; and (ii) The agent is aware of his/her duty to ensure compliance with the requirements of this subpart. (7) The signatures of the sellers, agents, and purchasers, certifying to the accuracy of their statements, to the best of their knowledge, along with the dates of signature.

(b) *Lessor requirements.* Each contract to lease target housing shall include, as an attachment or within the contract, the following elements, in the language of the contract (e.g., English, Spanish): (1 ) A Lead Warning Statement with the following language:

*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of lead-based paint and/or lead-based hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

(2) A statement by the lessor disclosing the presence of known lead-based paint and/or lead-based paint hazards in the target housing being leased or indicating no knowledge of the presence of lead-based paint and/or lead-based paint hazards. The lessor shall also disclose any additional information available concerning the known lead-based paint and/or lead-based paint hazards, such as the basis for the determination that lead-based paint and/or lead-based paint hazards exist in the housing, the location of the lead-based paint and/or lead-based paint hazards and the condition of the painted surfaces. (3) A list of any records or reports available to the lessor pertaining to lead-based paint and/or leadbased paint hazards in the housing that have been provided to the lessee. If no such records or reports are available, the lessor shall so indicate. (4) A statement by the lessee affirming receipt of the information set out in paragraphs (b)(2) and (b)(3) of this section and the lead hazard information pamphlet required under 15 U.S.C. 2926. (5) When any agent is involved in the transaction to lease target housing on behalf of the lessor, a statement that: (i) The agent has informed the lessor of the lessor's obligations under 42 U.S.C. 485 2d; and (ii) The agent is aware of his/her duty to ensure compliance with the requirements of this subpart. (6) The signatures of the lessors, agents, and lessees certifying to the accuracy of their statements to the best of their knowledge, along with the dates of signature.

(c) *Retention of certification and acknowledgment information.* (1) The seller, and any agent, shall retain a *copy* of the completed attachment required under paragraph (a) of this section for no less than 3 years from the completion date of the sale. The lessor, and any agent, shall retain a copy of the completed attachment or lease contract containing the information required under paragraph (b) of this section for no less than 3 years from the commencement of the leasing period. (2) This recordkeeping requirement is not intended to place any limitations on civil suits under the Act, or to otherwise affect a lessee's or purchaser's rights under the civil penalty provisions of 42 U.S.C. 485 2d(b)(3).

(d) The seller, lessor, or agent shall not be responsible for the failure of a purchaser's or lessee's legal representative (where such representative receives all compensation from the purchaser or lessee) to transmit disclosure materials to the purchaser or lessee, provided that all required parties have completed and signed the necessary certification and acknowledgment language required under paragraphs (a) and (b) of this section.

RECEIVED: _Nicole Irving_     04/18/2021          _____

Signature     04/18/2021 10:17:56 AM ADT      Date         Signature          Date





NVAR - 1036 - 2/97

LF 228

**Authentisign ID: 1**

LONG&FOSTER | CHRISTIE'S
REAL ESTATE | INTERNATIONAL REAL ESTATE

**Affiliated Business Arrangement Disclosure Statement**

| | | | |
|---|---|---|---|
| Property: | **12077 Trumbull Way** | **Reston**, **VA** **20190** | |
| To: | **Nicole Irving** | From: | **Jean Lee** |
| | | Date: | **04/18/21** |

This is to give you notice that Long & Foster Real Estate, Inc. ("Long & Foster"), also doing business as Virginia Properties, Evers & Company Real Estate, and Northrop Realty[1], and the settlement service providers listed in the table below are part of a family of companies (the "Affiliated Companies") owned by Berkshire Hathaway, Inc. ("Berkshire Hathaway"), and each may refer to you the services of another. Each of the Affiliated Companies is indirectly owned, in whole or in part, by a common parent, HomeServices of America, Inc. ("HSoA"), a Berkshire Hathaway affiliate. The percentage of indirect ownership interest held by HSOA in each Affiliated Company is indicated in the table. Silverton Mortgage is a wholly-owned indirect subsidiary of Clayton Homes, a Berkshire Hathaway affiliate. Because of these relationships, the referral of a customer (including you) by any of the Affiliated Companies to another may provide the referring company, its affiliates, and/or their employees with a financial or other benefit.

While Long & Foster Insurance Agency, Inc. ("LFIA"), an Affiliated Company, does not have common ownership with Home Buyers Resale Warranty Corporation doing business as 2-10 Home Buyers Warranty ("2-10 Home Buyers Warranty"), Cinch Home Services, Inc. ("Cinch Home Services"), or HomeServe USA Repair Management Corp. ("HomeServe USA"), it does advertise them for a fixed service fee.

Mid-States Title Insurance Agency, Inc. ("Mid-States"), a Long & Foster affiliate, has business relationships with the following unaffiliated closing attorneys, pursuant to which Mid-States advertises these firms for a fixed service fee: Crawford and Keller, PLLC; Baird Mandalas Brockstedt, LLC; and Giordano, DelCollo, Werb & Gagne, LLC.

| AFFILIATED COMPANIES | |
|---|---|
| **SECTION A: Settlement of Your Loan and / or Title Insurance** | |
| Guaranty Title (NC) (d/b/a of Sage Title Group, LLC) (100%) | Infinity Settlements Agency (PA) (d/b/a of Sage Title Group, LLC) (100%) |
| Infinity Title Agency (NJ) (d/b/a of Sage Title Group, LLC) (100%) | RGS Property Closing Services (PA) (d/b/a of RGS Title LLC) (100%) |
| Sage Premier Settlements (PA, NJ, DE, MD) (d/b/a of Sage Title Group, LLC) (100%) | RGS Title LLC (VA, MD, DC, WV) (100%) |
| Sage Title Group, LLC (VA, MD, DC, WV) (100%) | Trident Land Transfer Company LP (PA, DE) (100%) |
| Bon Air/Long & Foster Title Agency LLC (VA) (50%) | Trident Land Transfer Company (NJ), LLC (NJ) (49%) |
| Attorneys Title Holdings, Incorporated (NC) (100%) | Premier Service Abstract, LLC (NJ) (49%) |
| Realm Title Agency, LLC (MD, DE) (51%) ("Realm")[2] | |
| **SECTION B: Property / Hazard / Flood Insurance** | |
| Long & Foster Insurance Agency, Inc. (100%) | Trident Insurance Agency Company (d/b/a of HomeServices Insurance, Inc.) (100%) |
| HomeServices Insurance, Inc. (100%) | HomeServices Insurance Northeast, LLC (50%) |
| **SECTION C: Mortgage Services** | |
| Prosperity Home Mortgage, LLC (100%) | Silverton Mortgage (d/b/a of Vanderbilt Mortgage and Finance, Inc.) (100%) |
| **SECTION D: Real Estate Services** | |
| Berkshire Hathaway HomeServices Fox & Roach, REALTORS®(PA, NJ, DE, MD) (d/b/a of Fox & Roach LP) (100%) | Berkshire Hathaway HomeServices Carolinas Realty, York Simpson Underwood Realty, Yost & Little Realty, and Pinehurst Realty Group (d/b/a of Preferred Carolinas Realty, Inc.) (NC, SC) (100%) |
| Houlihan Lawrence, Inc. (NY, CT) (100%) | |

Set forth below is the estimated charge or range of charges for each of the services listed. You are NOT required to use any of these service providers as a condition of the sale of the subject property or to obtain access to any settlement service.

**THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

| PROVIDER | SETTLEMENT SERVICE | ESTIMATED RANGE OF CHARGES |
|---|---|---|
| Providers listed in **Section A** above | Settlement Fees, including Document Preparation, Title Search & Exam Fees | $0-$2,000<br>Fees vary depending on transaction type and state |
| | Title Charges | See Title Insurance Chart below |
| Providers listed in **Section B** above | Homeowner's Insurance | $300-$10,000 plus per year; charges may vary based on coverage requested and other factors including multi-unit properties. |
| | Flood Insurance | Flood insurance is not included in this estimate but may be available for an additional fee and may be lender required. |
| Providers listed in **Section C** above | Loan Origination Fee | $0-$1,945; or up to 2.75% of the loan amount |
| | Appraisal | $300-$1,102 (may exceed for complex appraisal) |
| | Third Party Fees | $9.75-$310 |
| Providers listed in **Section D** above | Real Estate Brokerage Services | 3%-10% of the sales price plus up to $1,200 |

---

[1] Northrop Realty is also a trade name for The Northrop Team, P.C. ("Northrop"), a separate realty company that operates under Long & Foster's real estate license. Northrop is not an "Affiliated Company" as that term is used in this Affiliated Business Arrangement Disclosure.

[2] Realm is 49% owned by an unaffiliated entity in which an independent contractor real estate agent of Long & Foster, Creig Northrop, has an ownership interest. Accordingly, the referral of a customer (including you) to Realm may provide Mr. Northrop with a financial or other benefit.

**TITLE INSURANCE FOR AFFILIATES**
ESTIMATE OF RANGE OF CHARGES GENERALLY MADE BY PROVIDER

| STATE | SALES PRICE | PREMIUM FOR AFFILIATES |
|---|---|---|
| DE | First $100,000<br>$100,001 - $1,000,000<br>$1,000,001-$5,000,000 | $4.60 per $1,000 of coverage<br>add $3.90 per $1,000 of coverage<br>add $3.25 per $1,000 of coverage<br>Enhanced policy is 120% of above rates. Simultaneous issue of Lenders' Policy (DE) is $25. Lender required endorsements are $50 each. Closing Protection Letter (CPL) per Lender Policy is $125. |
| DC | First $250,000<br>$250,001 - $500,000<br>$500,001 - $1,000,000<br>$1,000,001-$5,000,000 | $6.84 per $1,000 of coverage<br>add $6.12 per $1,000 of coverage<br>add $5.40 per $1,000 of coverage<br>add $4.68 per $1,000 of coverage<br>Simultaneous issue of Lenders' Policy (DC) is $150. Closing Protection Letter (CPL) per Lender Policy is $50. |
| MD | First $250,000<br>$250,001 - $500,000<br>$500,001 - $1,000,000<br>$1,000,001- $2,000,000 | $5.75 per $1,000 of coverage<br>add $4.90 per $1,000 of coverage<br>add $4.20 per $1,000 of coverage<br>add $3.30 per $1,000 of coverage<br>Simultaneous issue of Lenders' Policy (MD) is $150. |
| NJ | First $100,000<br>$100,001 - $500,000<br>$500,001 - $2,000,000 | $5.25 per $1,000 of coverage<br>add $4.25 per $1,000 of coverage<br>add $2.75 per $1,000 of coverage<br>Enhanced policy is 120% of above rates. Simultaneous issue of Lenders' Policy is $25. Lender required endorsements are $25 each. Closing Service Letter per Lender Policy is $75. |
| NC | First $250,000<br>$250,001 - $500,000<br>$500,001 - $2,000,000<br>$2,000,001 - $7,000,000 | $2.51 per $1,000 of coverage<br>add $1.96 per $1,000 of coverage<br>add $1.28 per $1,000 of coverage<br>add $0.98 per $1,000 of coverage<br>Enhanced policy 120% of above rates. Simultaneous issue of Lenders' Policy is $26. Closing Protection Letter is an additional 10% if lenders' policy issued. Premium for issuance of commitment is $15. Lender required endorsements are $20 each. |
| PA | First $30,000<br>$30,001 - $45,000<br>$45,001 - $100,000<br>$100,001 - $500,000<br>$500,001 - $1,000,000<br>$1,000,001-$2,000,000 | $569.00 flat fee<br>add $7.41 per $1,000 of coverage<br>add $6.27 per $1,000 of coverage<br>add $5.70 per $1,000 of coverage<br>add $4.56 per $1,000 of coverage<br>add $3.42 per $1,000 of coverage<br>Lender-required endorsements (PA) are $50-$500. Closing Protection Letter (CPL) per Lender Policy is $125. |
| VA | First $250,000<br>$250,001 - $500,000<br>$500,001 - $1,000,000<br>$1,000,001- $2,000,000 | $4.68 per $1,000 of coverage<br>$4.44 per $1,000 of coverage<br>$4.08 per $1,000 of coverage<br>$2.70 per $1,000 of coverage<br>Simultaneous issue of Lender's Policy (VA) is $150. Closing Protection Letter (CPL) per Lender Policy is $20. |
| WV | First $100,000<br>$100,001 - $500,000<br>$500,001 - $2,500,000 | $4.68 per $1,000 of coverage<br>add $4.08 per $1,000 of coverage<br>add $3.60 per $1,000 of coverage<br>Enhanced policy is 120% of basic rates. Simultaneous issue of Lender's Policy is $100. Title insurance commitment fee per policy will not exceed $100. |

| CONTRACTED PROVIDERS | | |
|---|---|---|
| PROVIDER | SETTLEMENT SERVICE | ESTIMATED RANGE OF CHARGES |
| 2-10 Home Buyers Warranty<br>Cinch Home Services / HomeServe USA | Home Warranty | $499 - $1,620, depending on property and optional coverage |

ACKNOWLEDGEMENT: I/we have read this disclosure form and understand that the Affiliated Companies may refer me/us to purchase the above-described settlement service(s) from one another and that any such referrals may provide the referring company, its affiliates, and/or their employees with a financial or other benefit. I/we also understand that LFIA receives fixed fees for advertising, and related services performed for 2-10 Home Buyers Warranty and Cinch Home Services.

*Nicole Irving*                          04/18/2021

Signature                          (Date)                          Signature                          (Date)

04/18/2021 10:17:57 AM ADT



# SELLER'S AUTHORIZATION AND WAIVER
# FOR PHOTOGRAPHIC SERVICES ADDENDUM

With regard to the property known as:

**12077  Trumbull Way**                **2077-8**
(Street Address)                       (Unit)

**Reston**           , **VA**  **20190**
(City/State/Zip)

The undersigned Seller hereby agrees in this Addendum to the Listing Contract as follows:

1. **Authorization:**  Seller authorizes Agent to have interior and exterior photographs of the property taken (the "Photographic Services") and have such photographs (the "Photographs") digitized, reproduced, published, transmitted and disseminated and displayed in any  form or manner, including without limitation, by Agent, Agent's Broker and applicable Multiple Listing Service, (MLS) in and through the online realty information service operated by the applicable MLS or other forms of electronic distribution, and in books, displays, publications and newspapers as well as any other use, media, or means to aid in the sale or rental of Seller's property.

2. **Waiver:**  Seller hereby waives, acquits and forever releases Agent, Agent's Broker, applicable MLS, its officers, directors, employees and applicable MLS Shareholders, officers, directors, and representatives  from any responsibility or liability concerning any Photographic Services, and Photograph,   distribution  or  display  of any Photographs in any form or manner.

REALTOR®

**Long & Foster REALTORS**        Owner/Seller  *Nicole Irving*        04/18/2021
                                              **Nicole Irving**                Date

By  *Jean Lee*                      Owner/Seller  _____
    **Jean Lee**                                                          Date


LF231


8/11



# Mutual Agreement to Arbitrate Certain Disputes and to Waive Class Actions

The following provisions are hereby incorporated into the Listing Contract or Buyer Agency Contract ("Contract") between Long & Foster Real Estate, Inc. ("Broker/Licensee") and you ("You" or "Consumer") (together, the "Parties").

## Agreement to Arbitrate and Claims Included and Excluded from Arbitration:

The Parties hereby mutually agree that, other than Excluded Claims, any and all claims, disputes or controversies between them that in any way arise from or relate to (i) the Contract, (ii) the real estate transaction relating to the Contract (the "Transaction"); and/or (iii) the services, advertising, disclosures, practices and procedures related to the Contract or the Transaction (collectively, a "Claim") shall be submitted to arbitration. Arbitration shall be in lieu of commencing a lawsuit. BY AGREEING TO ARBITRATION, THE PARTIES EACH GIVE UP THEIR RIGHTS TO TRIAL BY ANY STATE OR FEDERAL COURT AND BY JURY, AND/OR TO FILING A COMPLAINT WITH ANY GOVERMENTAL OR ADMINISTRATIVE AGENCY. The arbitration shall be administered by an arbitrator agreed to by the Parties or, in the absence of agreement, by the American Arbitration Association ("AAA"). "Excluded Claim" means the following:

**(A)** any dispute about the validity, enforceability, coverage, or scope of this Agreement to Arbitrate Certain Disputes and to Waive Class Actions or any part thereof;

**(B)** any individual dispute that Consumer brings against Broker/Licensee in small claims court or Consumer's state's equivalent court, so long as that claim is not transferred, removed or appealed to a different court (in which event such dispute becomes a "Claim" and Broker/ Licensee then has the right to demand arbitration); and

**(C)** any dispute arising out of or relating to: (i) the presence of a material defect in the Property; (ii) alleged negligence, gross negligence, or breach of contract; or (iii) alleged misrepresentation, conspiracy, or breach of fiduciary duty, arising out of the facts which form the basis for any Excluded Claim described in the foregoing (C)(i-ii).

Excluded Claims do not include any arising under the Real Estate Settlement Procedures Act or any consumer fraud or consumer financial protection laws. Any Excluded Claim is for a court and not an arbitrator to decide.

## Location and Costs of Arbitration:

Any in-person arbitration hearing must be at a venue reasonably convenient to Consumer. Broker/Licensee will pay any and all fees of AAA and/or the arbitrator, if and to the extent Consumer prevails in the arbitration or if Consumer makes a written request for Broker/Licensee to pay such fees and Consumer acts reasonably and in good faith. If Consumer brings a Claim against Broker/Licensee in arbitration or Broker/Licensee elects to require arbitration of a Claim Consumer brings, then Broker/Licensee will pay Consumer's reasonable attorneys' and experts' fees if and to the extent Consumer prevails. Also, Broker/Licensee will bear any such fees if applicable law so requires. Regardless of the outcome of the arbitration, Broker/Licensee will not seek from Consumer reimbursement of any of the fees of the Administrator and arbitrator, or attorneys' fees and expert costs, unless Broker/Licensee is permitted to recover such fees from Consumer under the Contract and applicable law.

## Governing Law:

The Contract involves interstate commerce and is governed by the Federal Arbitration Act ("FAA") and not by any state arbitration law. The arbitrator must apply applicable substantive law consistent with the FAA and applicable statutes of limitations and claims of privilege recognized at law. The arbitrator may award any remedy provided by the substantive law that would apply if the action were pending in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts) and individual injunctive, equitable, and declaratory relief. At the timely request of either party, the arbitrator must provide a brief written explanation of the basis for the award.

## Arbitration Result and Right of Appeal:

Judgment upon the arbitrator's award may be entered by any court having jurisdiction.  The arbitrator's decision is final and binding, except for any right of appeal provided by the FAA.

## Prohibition against Certain Proceedings:

FOR CLAIMS SUBJECT TO ARBITRATION: **(1)  CLASS ACTION WAIVER**.  BOTH CONSUMER AND BROKER/LICENSEE HEREBY EACH UNCONDITIONALLY WAIVE ANY RIGHT TO PARTICIPATE IN A CLASS OR COLLECTIVE ACTION IN COURT OR IN A CLASS-WIDE ARBITRATION, EITHER AS A PLAINTIFF, CLASS REPRESENTATIVE, OR CLASS MEMBER, AND HEREBY UNCONDITIONALLY AGREE THAT ANY CLAIM WILL BE ADJUDICATED ON AN INDIVIDUAL BASIS ONLY; **(2)** NEITHER CONSUMER NOR BROKER/LICENSEE MAY ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION;  **(3)** CLAIMS BROUGHT BY OR AGAINST CONSUMER OR BROKER/LICENSEE MAY NOT BE JOINED OR CONSOLIDATED WITH CLAIMS BROUGHT BY OR AGAINST ANY OTHER PERSON (OTHER THAN NONSIGNATORY BROKER/LICENSEE AFFILIATES, AS SET FORTH BELOW); AND  **(4)** THE ARBITRATOR SHALL HAVE NO POWER OR AUTHORITY TO CONDUCT A CLASS-WIDE ARBITRATION, PRIVATE ATTORNEY GENERAL ARBITRATION, OR MULTIPLE-PARTY ARBITRATION.  THIS SUBSECTION DOES NOT APPLY TO ANY LAWSUIT OR ADMINISTRATIVE PROCEEDING FILED AGAINST BROKER/LICENSEE BY A STATE OR FEDERAL GOVERNMENT AGENCY EVEN WHEN SUCH AGENCY IS SEEKING RELIEF ON BEHALF OF A CLASS OF CONSUMERS, INCLUDING CONSUMER.  THIS MEANS THAT BROKER/LICENSEE WILL NOT HAVE THE RIGHT TO COMPEL ARBITRATION OF A CLAIM BROUGHT BY SUCH AN AGENCY.

## Non-Signatory Broker/Licensee Affiliates:

Non-signatory parent or other affiliated companies of Broker/Licensee shall have the benefit of electing to utilize this Agreement to Arbitrate Certain Disputes and to Waive Class Actions to the extent that a Claim is asserted against them (*i.e.*, a Claim that arises from the Contract, the Transaction, and/or the services, advertising, disclosures, practices and procedures related to the Contract or the Transaction).

## Severability:

If any portion of the aforementioned, other than the Class Action Waiver (provision (1) under Prohibition against Certain Proceedings), is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.  If a determination is made that the Class Action Waiver is unenforceable, only this sentence of the Dispute Resolution Provision will remain in force and the remaining provisions shall be null and void, provided that the determination concerning the Class Action Waiver shall be subject to appeal.

| | | |
|---|---|---|
| *Nicole Irving* | 04/18/2021 | |
| Signature | Date | |
| | | |
| Signature | Date | |
| | | |
| Signature | Date | |
| | | |
| Signature | Date | |

| | |
|---|---|
| *Jean Lee* | 04/18/2021 |
| Agent Signature | Date |
| *Fetneh Schacht* | 04/19/2021 |
| Branch Manager Signature | Date |

LF364   8/12/2019    4845-9810-3448.3

Authentisign ID: 8EBCFDD2-ABF2-447B-B954-B2EDB7D54315

### LISTING CONTRACT:
### EXCLUSIVE RIGHT TO SELL

This form approved by the Minnesota Association of REALTORS®,
which disclaims any liability arising out of use or misuse of this form.
© 2020 Minnesota Association of REALTORS®, Edina, MN

1. Date **August 18, 2022**

2. Page 1 of _____ pages

3. **DEFINITIONS:** This Contract involves the property located at _____ **1349 Bidwell St** ,

4. City of _____ **West Saint Paul** ,

5. County of _____ **Dakota** , State of Minnesota, Zip Code _____ **55118** ,

6. legally described as **18 28 22 E 215 FT OF N 80 FT OF S 159.44 FT OF E 660 FT OF SW 1/4 OF SE 1/4** ("Property").

7. Seller is _____ **Samuel Retterath, Justine Retterath** ("Seller").
   (e.g., individual(s), estate, trust, corporation, etc.)

8. Broker is _____ **Berkshire Hathaway HomeServices North Properties** ("Broker").
   (Real Estate Company Name)

9. This Contract starts on _____ **August 19, 2022** , and ends at 11:59 p.m. on

10. _____ **December 31, 2022** . This Contract terminates upon successful closing of the Property(ies) specified

11. in this Contract or expiration or cancellation of this Contract, whichever occurs first.

12. This Contract may only be canceled by written mutual agreement of the parties.

13. **PRICE:** Seller offers the Property for sale for the price of $ **339,900.00** , upon the following

14. terms: _____ **FHA, VA, Conventional, Cash** .

15. **LISTING:** Seller gives Broker the exclusive right to sell the Property. In exchange, Broker agrees to list and market
16. the Property for sale. Broker may place a "For Sale" sign and a lock box with keys on the Property, unless prohibited by
17. governing authority. Seller understands this Contract DOES NOT give Broker authority to rent or manage the Property.
18. Seller understands Broker may be a member of a Multiple Listing Service ("MLS"), and if Broker is a member of the
19. MLS, and where available, Broker may give information to the MLS concerning the Property. Broker may place
20. information on the Internet concerning the Property, including sold information (except as limited in the following MLS
21. Data Feed Options section). Upon final acceptance of a purchase agreement, Seller allows Broker to withdraw the
22. Property from the market. If Broker sells the Property, Broker may notify the MLS and member REALTORS® of the
23. price and terms of the sale. Seller acknowledges that neither Broker, the MLS, the Minnesota Association of
24. REALTORS®, nor any other broker is insuring Seller or occupant against theft, loss, or vandalism.

25. **MLS DATA FEED OPTIONS:**

26. EXPLANATIONS AND DEFINITIONS:

27. "**IDX site**" means a web site operated by a broker participating in the MLS on which the broker can advertise the
28. listings of other brokers in MLS, subject to certain MLS rules. The consumer visiting an IDX site is not required to
29. register on the site or to have a brokerage relationship with the broker displaying listings on the site.

30. "**Virtual office web site**" ("VOW") means a web site operated by a broker participating in the MLS that delivers
31. brokerage services to consumers over the world wide web. Visitors to a VOW are required to register on the site (with
32. their name and a real e-mail address) and enter a brokerage relationship with the broker operating the VOW. The
33. broker operating the VOW can then show the visiting customer/client nearly all of the information available to the
34. broker in MLS. The seller(s) of a listing has the right to opt out of certain kinds of data display under the MLS's VOW
35. policy. The MLS imposes various other rules and restrictions on VOWs.

36. For each of the following options, the MLS system automatically defaults to "Yes." Seller's instructions pertaining to
37. the Internet display of the MLS input data for the Property are as follows:

MN:LC:ERS-1 (8/20)    Copyright © 1984 - 2021 Minnesota Association of Realtors®. All rights reserved. Lone Wolf is licensed to provide the Minnesota Association of Realtors® forms and uses the Minnesota Association of Realtors name and marks.


Minnesota Realtors®

Authentisign ID: 8EBCFDD2-ABF2-447B-B954-B2EDB7D54315

**LISTING CONTRACT:**
**EXCLUSIVE RIGHT TO SELL**

38. Page 2

39.    Property located at <u>**1349 Bidwell St, West Saint Paul, Mn 55118**</u>                                                                .

40. **Option 1.**   **Listing display on the Internet.** If Seller selects "No," this listing will not be included in MLS data feeds
41.                   to Internet web sites that display property listing data, whether intended for advertising the Property or
42.                   providing online brokerage services (e.g., VOWs). Brokers participating in MLS can still disclose the listing
43.                   to customers/clients via other means, including e-mail, fax, mail, hand delivery, and orally.

44.                   Shall the Property listing be displayed on the Internet, including sold information?     ☒ Yes  ☐ No

45.                   Seller understands and acknowledges that if Seller has selected "No" for Option 1, consumers who
46.                   conduct searches for listings on the Internet will not see information about the Property in response to
47.                   their searches.

48.   **If "No" was selected at Option 1, skip Options 2-4. If "Yes" was selected for Option 1, continue to Option 2.**

49. **Option 2.**   **Listing address (house and unit numbers and street name) display on the Internet.** If Seller selects
50.                   "No," the address of the Property will be hidden on web sites receiving data feeds from MLS that result
51.                   in Internet listing display, whether intended for advertising the Property or providing online brokerage
52.                   services (e.g., VOWs). Brokers participating in MLS can still disclose the address to customers/clients
53.                   via other means, including e-mail, fax, mail, hand delivery, and orally.

54.                   Shall the listing address (house and unit numbers and street name) be displayed
55.                   on the Internet?                                        ☒ Yes  ☐ No

56. **Option 3.**   **An automated valuation of the Property listing or a link to an automated valuation of it may be**
57.                   **displayed adjacent to the listing.** Some VOWs or IDX sites may provide an automated valuation model
58.                   ("AVM") function/service. An AVM uses statistical calculations to estimate the value of a property based
59.                   upon data from public records, MLS, and other sources, and incorporating certain assumptions. The
60.                   accuracy of AVMs has sometimes been criticized because they do not take into consideration all relevant
61.                   factors in valuing a property. Seller, by selecting "No," may prohibit display of an automated valuation of
62.                   his or her listing adjacent to the listing.

63.                   Shall an automatic valuation of the Property listing or a link to an automated
64.                   valuation be displayed adjacent to the listing?                    ☒ Yes  ☐ No

65. **Option 4.**   **Comments or reviews of the Property by persons other than the displaying broker may be displayed**
66.                   **with or attached as a link to the listing data of the Property.** Some VOWs or IDX sites may provide
67.                   functionality that permits the customers/clients using the VOW or IDX site to enter comments or reviews
68.                   with the listing or by hyperlink to such comments or reviews. Note that the broker displaying the listing
69.                   on his or her VOW or IDX site may add commentary representing his or her professional judgment regarding
70.                   the listing's value, etc.

71.                   Shall comments or reviews of the Property by persons other than the displaying
72.                   broker be displayed with or attached as a link to the listing data of the Property?    ☐ Yes  ☒ No

73.   **LISTED FOR LEASE:** The Property ☐ **IS** ☒ **IS NOT** currently listed for lease. If **IS**, the listing broker is
                                           --------(Check one.)--------
74.     ------------------------------------------------- . If **IS NOT**, Seller ☐ **MAY** ☒ **MAY NOT** list the Property for lease during the
                                                ----------(Check one.)----------
75.   terms of this Contract with another broker.

76.   Nothing in this Contract shall prohibit Broker and Seller from entering into a listing agreement for the lease of this
77.   Property upon terms acceptable to both parties.

MN:LC:ERS-2 (8/20)        Copyright © 1984 - 2021 Minnesota Association of Realtors®. All rights reserved. Lone Wolf is licensed to provide
the Minnesota Association of Realtors® forms and uses the Minnesota Association of Realtors name and marks.



Authentisign ID: 8EBCFDD2-ABF2-447B-B954-B2EDB7D54315

## LISTING CONTRACT:
## EXCLUSIVE RIGHT TO SELL

78. Page 3

79.  Property located at **1349 Bidwell St, West Saint Paul, Mn  55118**                                                                                          .

80.  **SELLER'S OBLIGATION:** Seller shall notify Broker of relevant information important to the sale of the Property.
81.  Seller shall cooperate with Broker in selling the Property. Seller shall promptly inform Broker about all inquiries Seller
82.  receives about the Property. Seller agrees to provide and pay for any inspections and reports required by any
83.  governmental authority. Seller agrees to provide unit owners' association documents, if required. Seller shall remain
84.  responsible for security, maintenance, utilities, and insurance during the term of this Contract, and for safekeeping,
85.  securing and/or concealing any valuable personal property. Seller shall surrender any abstract of title and a copy of any
86.  owner's title insurance policy for this Property, if in Seller's possession or control, to buyer or buyer's designated title
87.  service provider. Seller shall take all actions necessary to convey marketable title by the date of closing as agreed to in
88.  a purchase agreement. Seller shall sign all documents necessary to transfer to buyer marketable title to the Property.
89.  Seller has the full legal right to sell the Property.

90.  Access to the Property: To facilitate the showing and sale of the Property, Seller authorizes Broker to:
91.      1.  access the Property;
92.      2.  authorize other brokers and their salespersons, inspectors, appraisers, contractors, and other industry
93.          professionals to access the Property at reasonable times and upon reasonable notice; and
94.      3.  duplicate keys to facilitate convenient and efficient showings of the Property.

95.  Authorizing access means giving Broker permission to allow the above-referenced persons to enter the Property, with
96.  or without a licensed salesperson present, disclosing to the other person any security codes necessary to enter the
97.  Property, and lending a key to the other person to enter the Property, directly or through a lockbox. Seller agrees to
98.  commit no act which might tend to obstruct Broker's performance here. If the Property is occupied by someone other
99.  than Seller, Seller shall comply with Minnesota law and any applicable lease provisions of an existing lease and provide
100. tenant with proper notice in advance of any Property showing. Seller understands the prospective buyers and others
101. authorized to access the Property may record the Property by photograph, video, or other medium while accessing
102. the Property.

103. **RECORDING ON THE PROPERTY:** Seller understands that MN Statute 626A.02 specifically prohibits the interception
104. of oral communications without the consent of at least one of the two parties to the communication. Seller should seek
105. appropriate legal advice regarding compliance with this statute if Seller intends to utilize technology that may intercept
106. oral communications between persons other than Seller.

107. **SELLER CONTENT LICENSE:** In the event Seller provides content, including, but not limited to, any photos or videos
108. of the Property ("Seller Content") to Broker, Seller grants to Broker a nonexclusive, perpetual, world-wide, transferable,
109. royalty free license to sub-license (including through multiple tiers), reproduce, distribute, display, perform, and create
110. derivative works of the Seller Content. Seller represents and warrants that Seller has authority to provide Seller Content
111. and Seller Content does not violate any restrictions regarding use including any third-party intellectual property rights
112. or laws. Seller agrees to execute any further documents that are necessary to effect this license.

113. **NOTICE:    THE COMPENSATION FOR THE SALE, LEASE, RENTAL, OR MANAGEMENT OF REAL PROPERTY**
114.                     **SHALL BE DETERMINED BETWEEN EACH INDIVIDUAL BROKER AND THE BROKER'S CLIENT.**

115. **BROKER'S COMPENSATION:**

116. Seller agrees to pay Broker a retainer fee of $ **0 0**                                                 at the commencement of this
117. Contract, which fee should be kept by Broker whether or not Seller sells the Property. The retainer fee will apply
118. toward satisfaction of any obligation to compensate Broker.

119. Seller shall pay Broker, as Broker's compensation, _____**4.000**_____ percent (%) of the selling price or
120. $ _____, whichever is greater, if Seller sells or agrees to sell the Property during
121. the term of this Contract.
122. Other: _____
123. _____

MN:LC:ERS-3 (8/20)        Copyright © 1984 - 2021 Minnesota Association of Realtors®. All rights reserved. Lone Wolf is licensed to provide
the Minnesota Association of Realtors® forms and uses the Minnesota Association of Realtors name and marks.

**Minnesota Realtors®**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    1349 Bidwell St

Authentisign ID: 8EBCFDD2-ABF2-447B-B954-B2EDB7D54315

**LISTING CONTRACT:**
**EXCLUSIVE RIGHT TO SELL**

124. Page 4

125. Property located at **1349 Bidwell St, West Saint Paul, Mn  55118** .

126. In addition, if before this Contract expires Broker presents a buyer who is willing and able to buy the Property at the
127. price and terms required in this Contract, but Seller refuses to sell, Seller shall still pay Broker the same compensation.
128. Seller agrees to pay Broker's compensation whether Broker, Seller, or anyone sells the Property. Seller hereby permits
129. Broker to share part of Broker's compensation with other real estate brokers, including brokers representing only the
130. buyer. Seller agrees to pay Broker's compensation in full upon the happening of any of the following events:
131.    1. the closing of the sale;
132.    2. Seller's refusal to close the sale; or
133.    3. Seller's refusal to sell at the price and terms specified above.

134. If, within ____**90**____ days *(not to exceed six (6) months)* after the expiration of this Contract, Seller sells or agrees to sell
135. the Property to anyone who:
136.    1.  during this Contract made inquiry of Seller about the Property and Seller did not tell Broker about the inquiry;
137.        or
138.    2.  during this Contract made an affirmative showing of interest in the Property by responding to an advertisement,
139.        or by contacting Broker or the licensee involved, or was physically shown the Property by Broker and whose
140.        name and address is on a written list Broker gives to Seller within 72 hours after the expiration of this Contract;
141. then Seller shall still pay Broker the compensation noted here, even if Seller sells the Property without Broker's
142. assistance. Seller understands that Seller does not have to pay Broker's compensation if Seller signs another valid
143. listing contract or facilitator services agreement for this Property after the expiration or cancellation of this Contract,
144. under which Seller is obligated to compensate another licensed real estate broker.

145. To secure the payment of Broker's compensation, Seller hereby assigns to Broker the gross proceeds from the sale
146. of the Property in an amount equal to the compensation due to Broker under this Contract.

147. **COMPENSATION DISCLOSURE:** Broker [X] **SHALL** [ ] **SHALL NOT** offer compensation to cooperating brokers.
        ---------------*(Check one.)*---------------

148. If **SHALL**, the compensation to cooperating brokers shall be as follows:

149. [X] ____**2.700**____ % of the gross sales price or $ _____, whichever is greater, to cooperating
150.    brokers representing buyer.

151. [ ] _____ % of the gross sales price or $ _____, whichever is greater, to cooperating
152.    brokers assisting buyer.

153. Other: _____
154.    _____

155. **CLOSING SERVICES:**

156. **NOTICE:**   THE  REAL  ESTATE  BROKER,  LICENSEE  REPRESENTING  SELLER,  OR  REAL  ESTATE
157.    CLOSING AGENT HAS NOT EXPRESSED AND, UNDER APPLICABLE STATE LAW, MAY NOT EXPRESS
158.    OPINIONS REGARDING THE LEGAL EFFECT OF THE CLOSING DOCUMENTS OR OF THE CLOSING
159.    ITSELF.

160. After a purchase agreement for the Property is signed, arrangements must be made to close the transaction. Seller
161. understands that no one can require Seller to use a particular person in connection with a real estate closing and that
162. Seller may arrange for a qualified closing agent or Seller's attorney to conduct the closing.

163. Seller's choice for closing services: (Check one.)
164. [X] Seller directs Broker to arrange for a qualified closing agent to conduct the closing.
165. [ ] Seller shall arrange for a qualified closing agent or Seller's attorney to conduct the closing.
166.
    _____   _____
    (Seller's Initials)          (Seller's Initials)

MN:LC:ERS-4 (8/20)        Copyright © 1984 - 2021 Minnesota Association of Realtors®. All rights reserved. Lone Wolf is licensed to provide
the Minnesota Association of Realtors® forms and uses the Minnesota Association of Realtors name and marks.

**Minnesota**
**Realtors®**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com        1349 Bidwell St

Authentisign ID: 8EBCFDD2-ABF2-447B-B954-B2EDB7D54315

## LISTING CONTRACT:
## EXCLUSIVE RIGHT TO SELL

167. Page 5

168. Property located at **1349 Bidwell St, West Saint Paul, Mn 55118** .

169. **ADDITIONAL COSTS:** Seller acknowledges that Seller may be required to pay certain closing costs, which may
170. effectively reduce the proceeds from the sale.

171. Seller understands that mortgage financing services are usually paid for by buyer; however, certain insured government
172. loans may require Seller to pay a portion of the fees for the mortgage loan. Seller understands that Seller shall not
173. be required to pay the financing fees on any mortgage without giving Seller's written consent.

174. **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Section 1445 of the Internal Revenue Code
175. provides that a transferee ("Buyer") of a United States real property interest must be notified in writing and must
176. withhold tax from the transferor ("Seller") if the transferor ("Seller") is a foreign person, provided there are no applicable
177. exceptions from FIRPTA withholding.

178. Seller represents and warrants that Seller ☐ **IS** ☒ **IS NOT** a foreign person (i.e., a non-resident alien individual,
‑‑‑‑(Check one.)‑‑‑‑

179. foreign corporation, foreign partnership, foreign trust, or foreign estate) for purposes of income taxation.

180. Due to the complexity and potential risks of failing to comply with FIRPTA, Seller should **seek appropriate legal and**
181. **tax advice regarding FIRPTA compliance, as Broker will be unable to confirm whether Seller is a foreign person**
182. **or whether the withholding requirements of FIRPTA apply.**

183. **WARRANTY:** There are warranty programs available for some properties which warrant the performance of certain
184. components of a property, which warranty programs Seller may wish to investigate prior to the sale of the Property.

185. **AGENCY REPRESENTATION:** If a buyer represented by Broker wishes to buy the Seller's Property, a dual
186. agency will be created. This means that Broker will represent both the Seller and the buyer, and owe the same
187. duties to the buyer that Broker owes to the Seller. This conflict of interest will prohibit Broker from advocating exclusively
188. on the Seller's behalf. Dual agency will limit the level of representation Broker can provide. If a dual agency should arise,
189. the Seller will need to agree that confidential information about price, terms, and motivation will still be kept
190. confidential unless the Seller instructs Broker in writing to disclose specific information about the Seller. All other
191. information will be shared. Broker cannot act as a dual agent unless both the Seller and the buyer agree to it. By
192. agreeing to a possible dual agency, the Seller will be giving up the right to exclusive representation in an in-house
193. transaction. However, if the Seller should decide not to agree to a possible dual agency, and the Seller wants Broker
194. to represent the Seller, the Seller may give up the opportunity to sell the Property to buyers represented by Broker.

195. Seller's Instructions to Broker:
196. Having read and understood this information about dual agency, Seller now instructs Broker as follows:

197. ☒ Seller will agree to a dual agency representation and will consider offers made by buyers represented by
198. Broker.

199. ☐ Seller will not agree to a dual agency representation and will not consider offers made by buyers represented
200. by Broker.

201. Real Estate Company Name: **Berkshire Hathaway HomeServices North Properties**

202. Seller: Samuel Retterath

203. By: *Cheryl Retterath*  08/19/2022  Seller: *Justine Retterath*
(Licensee) Cheryl Retterath  Justine Retterath

204. Date: 08/19/2022  08/19/2022

MN:LC:ERS-5 (8/20)  Copyright © 1984 - 2021 Minnesota Association of Realtors®. All rights reserved. Lone Wolf is licensed to provide
the Minnesota Association of Realtors® forms and uses the Minnesota Association of Realtors name and marks.


**Minnesota Realtors®**

Authentisign ID: 8EBCFDD2-ABF2-447B-B954-B2EDB7D54315

## LISTING CONTRACT:
## EXCLUSIVE RIGHT TO SELL

205. Page 6

206. Property located at **1349 Bidwell St, West Saint Paul, Mn 55118**                                                                    .

207. **OTHER POTENTIAL SELLERS:** Seller understands that Broker may list other properties during the term of this
208. Contract. Seller consents to Broker representing or assisting such other potential sellers before, during, and after the
209. expiration of this Contract.

210. **PREVIOUS AGENCY RELATIONSHIPS:** Broker, or licensee representing Seller, may have had a previous agency
211. relationship with a potential buyer of Seller's Property. Seller acknowledges that Seller's Broker, or licensee representing
212. Seller, is legally required to keep information regarding the ultimate price and terms the buyer would accept and the
213. motivation for buying confidential, if known.

214. **TERMINATION OF FIDUCIARY DUTIES:** Broker's fiduciary duties, except the duty of confidentiality, terminate upon
215. the successful closing of the Property(ies) specified in this Contract or expiration or cancellation of this Contract,
216. whichever occurs first.

217. **INDEMNIFICATION:** Broker will rely on the accuracy of the information Seller provides to Broker. Seller agrees
218. to indemnify and hold harmless Broker from and against any and all claims, liability, damage, or loss arising from any
219. misrepresentation, misstatement, omission of fact, or breach of a promise by Seller. Seller agrees to indemnify and hold
220. harmless Broker from any and all claims or liability related to damage or loss to the Property or its contents, or any
221. injury to persons in connection with the marketing of the Property. Indemnification by Seller shall not apply if the
222. damage, loss, or injury is the result of the gross negligence or willful misconduct of the Broker.

223. **FAIR HOUSING NOTICE:** Seller understands that Seller shall not refuse to sell or discriminate in the terms, conditions,
224. or privileges of sale, to any person due to his/her race, color, creed, religion, national origin, sex, marital status, status
225. with regard to public assistance, handicap (whether physical or mental), sexual orientation, or family status. Seller
226. understands further that local ordinances may include other protected classes.

227. **ADDITIONAL NOTICES AND TERMS:** As of this date Seller has not received notices from any municipality,
228. government agency, or unit owners' association about the Property that Seller has not informed Broker about in writing.
229. Seller agrees to promptly inform Broker, in writing, of any notices of such type that Seller receives during the term of
230. this Contract.

231. This shall serve as Seller's written notice granting Broker permission to obtain mortgage information (e.g., mortgage
232. balance, interest rate, payoff, and/or assumption figures) regarding any existing financing on the Property. A copy of
233. this document shall be as valid as the original.

234. **ENTIRE AGREEMENT:** This Contract and all addenda and amendments signed by the parties shall constitute the
235. entire agreement between Seller and Broker. Any other written or oral communication between Seller and Broker,
236. including, but not limited to, e-mails, text messages, or other electronic communications are not part of this Contract.
237. This Contract can be modified or canceled only in writing signed by Seller and Broker or by operation of law. All
238. monetary sums are deemed to be United States currency for purposes of this Contract.

239. **ELECTRONIC SIGNATURES:** The parties agree the electronic signature of any party on any document related to this
240. transaction constitute valid, binding signatures.

241. **CONSENT FOR COMMUNICATION:** Seller authorizes Broker and its representatives to contact Seller by mail, phone,
242. fax, e-mail, text message or other means of communication during the term of this Contract and anytime thereafter.

MN:LC:ERS-6 (8/20)          Copyright © 1984 - 2021 Minnesota Association of Realtors®. All rights reserved. Lone Wolf is licensed to provide
the Minnesota Association of Realtors® forms and uses the Minnesota Association of Realtors name and marks.          

## LISTING CONTRACT:
## EXCLUSIVE RIGHT TO SELL

243. Page 7

244. Property located at **1349 Bidwell St, West Saint Paul, Mn 55118** .

245. **OTHER**: _____

246. _____

247. _____

248. **BROKER**                                    **SELLER**

249. **ACCEPTED BY:** Berkshire Hathaway HomeServices North    **ACCEPTED BY:** _____
        (Real Estate Company Name)                              (Seller's Signature) 8/19/2022 1:00:58 PM CDT

250. By _Cheryl Retterath_                         **Samuel Retterath**
        (Licensee's Signature) 8/19/2022 12:51:31 PM CDT        (Seller's Printed Name)

251. **Cheryl Retterath**                          08/19/2022
        (Licensee's Printed Name)                   (Date)

252. 08/19/2022                                     _____
        (Date)                                       (Marital Status)

253. **7700 145th St. W.**                          _____
        (Address)                                    (Address)

254. **Apple Valley, MN 55124**                     _____
        (City/State/Zip)                             (City/State/Zip)

255. **(612) 760-4623**                             _____
        (Phone)                                      (Phone)

256. **cretterath@bhhsnorthproperties.com**         **ssretter@gmail.com**
        (E-Mail Address)                             (E-Mail Address)

257.                                                **SELLER**

258.                                                **ACCEPTED BY:** _Justine Retterath_
                                                      (Seller's Signature) 8/19/2022 1:17:34 PM CDT

259.                                                **Justine Retterath**
                                                      (Seller's Printed Name)

260.                                                08/19/2022
                                                      (Date)

261.                                                _____
                                                      (Marital Status)

262.                                                _____
                                                      (Address)

263.                                                _____
                                                      (City/State/Zip)

264.                                                _____
                                                      (Phone)

265.                                                **justine.shimota@gmail.com**
                                                      (E-Mail Address)

266.              **THIS IS A LEGALLY BINDING CONTRACT BETWEEN SELLER AND BROKER.**
267.        **IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL**

MN:LC:ERS-7 (8/20)    Copyright © 1984 - 2021 Minnesota Association of Realtors®. All rights reserved. Lone Wolf is licensed to provide the Minnesota Association of Realtors® forms and uses the Minnesota Association of Realtors name and marks. Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com


Minnesota Realtors®    1349 Bidwell St

Authentisign ID: 8EBCFDD2-ABF2-447B-B954-B2EDB7D54315



**BERKSHIRE
HATHAWAY**
HomeServices
**North Properties**

Addendum to Listing Contract

For the property located at: **1349 Bidwell St, West Saint Paul, Mn  55118**

**Administration Commission:** The seller's of the above mentioned property are aware that an administrative commission in the amount of $499.00 is being charged to the seller as a separate commission at closing. This commission consists of a flat fee paid to the broker in addition to the percentage commission. The Administration Commission is not designated for any specific service, but for all the services provided.

**Home Warranty, Lead Based Paint and Radon:** I hereby acknowledge that the following topics have been discussed with me:

☐Home Warranty Options
☐Discussed the topics of lead based paint and radon.

**Authorization to Divulge:** I have been informed of the Code regarding the disclosure and representation in all residential real estate transactions. I/We authorize our listing agent of Berkshire Hathaway HomeServices North Properties to do the following while marketing our home.

[X] Yes ☐ No Tell other Realtors and prospective buyers why you are selling a home.

[X] Yes ☐ No Grant permission to disclose whether or not multiple offers exist.

**Minnesota Carbon Monoxide Law:** As of January 1st, 2007 a new Minnesota carbon monoxide law requires that all newly constructed, single and multi☐family dwelling have a UL listed carbon monoxide alarm installed. As of August 1st, 2008 all existing single families are required to have appropriate number of CO detectors and August 1st, 2009 all multi☐family dwellings will need to come into compliance. The law states the 1 detector be installed within 10 feet of all bedrooms in the home. This may mean that some homes will require more that 1 detector if there are multiple sleeping area throughout the building. I have read and agree to have CO detectors placed in our home prior to closing.

**Dispute Resolution:** Any disputes, claims or controversies arising out of or related to this agreement or the relationship created thereby, including but not limited to claims with a statutory basis or those arising from tort, which fall into the jurisdiction of small claims courts shall be resolved in the applicable small claims' courts. Any other such disputes, claims or controversies, including those involving the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Minneapolis, Minnesota (or a mutually agreeable location) before a single arbitrator. The time for seeking any remedy under arbitration shall be limited to the period of any applicable statute(s) of limitation under Minnesota law as would be applied by Minnesota courts to each specific type of action(s) or claim(s). The arbitration shall be administered pursuant to JAMS' Streamlined Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction. Neither party to this agreement shall be entitled to join or consolidate claims or disputes by or against the other, or to include in any arbitration any claim or dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in any private attorney general capacity.

Authentisign

_____          08/19/2022
8/19/2022 1:00:41 PM CDT
Seller Signature                          Date
**Samuel Retterath**

Authentisign

*Justine Retterath*          08/19/2022
8/19/2022 2:19:47 PM CDT
Seller Signature                          Date
**Justine Retterath**

Authentisign ID: 50125QC0-8F47-491B-BBBA-D1BD5C6ED9A9

Approved by the Wisconsin Real Estate Examining Board
7-1-16 (Mandatory Use Date)

**Berkshire Hathaway HomeServices North**

Page 1 of 6, WB-1

## WB-1 RESIDENTIAL LISTING CONTRACT - EXCLUSIVE RIGHT TO SELL

1 **SELLER GIVES THE FIRM THE EXCLUSIVE RIGHT TO SELL THE PROPERTY ON THE FOLLOWING TERMS:**
2 ■ **PROPERTY DESCRIPTION:** Street address is: _____ W14247 Plummer Rd. _____
3 _____
4 in the _____ Village _____ of _____ Weyerhaeuser _____, County of _____ Rusk _____,
5 Wisconsin. Insert additional description, if any, at lines 303-308 or attach as an addendum per lines 309-310.
6 ■ **INCLUDED IN LIST PRICE:** Seller is including in the list price the Property, all Fixtures not excluded on lines 12-14,
7 and the following items: All appliances and personal property. _____
8 _____
9 _____
10 _____
11 _____.
12 ■ **NOT INCLUDED IN LIST PRICE:** _____
13 _____
14 _____.
15 **CAUTION: Identify Fixtures to be excluded by Seller or which are rented and will continue to be owned by the**
16 **lessor. (See lines 181-194).**
17 ■ **LIST PRICE:** _____ Three Hundred Thirty Thousand _____ Dollars ($330,000.00 ).
18 MARKETING Seller authorizes and the Firm and its agents agree to use reasonable efforts to market the Property.
19 Seller agrees that the Firm and its agents may market Seller's personal property identified on lines 7-11 during the term
20 of this Listing. The marketing may include: This is a 1-party listing contract and will be non- mls
21 _____
22 The Firm and its agents may advertise the following special financing and incentives offered by Seller: _____
23 _____
24 Seller has a duty to cooperate with the marketing efforts of the Firm and its agents. See lines 246-252 regarding the
25 Firm's role as marketing agent and Seller's duty to notify the Firm of any potential buyer known to Seller. Seller agrees
26 that the Firm and its agents may market other properties during the term of this Listing.
27 COMMISSION The Firm's commission shall be _____
28 ____ $2,000.00 + $200 Broker Admin Commission _____.
29 ■ **EARNED:** Seller shall pay the Firm's commission, which shall be earned, if, during the term of this Listing:
30   1) Seller sells or accepts an offer which creates an enforceable contract for the sale of all or any part of the Property;
31   2) Seller grants an option to purchase all or any part of the Property which is subsequently exercised;
32   3) Seller exchanges or enters into a binding exchange agreement on all or any part of the Property;
33   4) A transaction occurs which causes an effective change in ownership or control of all or any part of the Property; or
34   5) A ready, willing and able buyer submits a bona fide written offer to Seller or Firm for the Property at, or above, the list
35     price and on substantially the same terms set forth in this Listing and the current WB-11 Residential Offer to Purchase,
36     even if Seller does not accept the buyer's offer. A buyer is ready, willing and able when the buyer submitting the
37     written offer has the ability to complete the buyer's obligations under the written offer.
38 The Firm's commission shall be earned if, during the term of the Listing, one seller of the Property sells, conveys,
39 exchanges or options, as described above, an interest in all or any part of the Property to another owner, except by divorce
40 judgment.
41 ■ **DUE AND PAYABLE:** Once earned, the Firm's commission is due and payable in full at the earlier of closing or the date
42 set for closing, even if the transaction does not close, unless otherwise agreed in writing.
43 ■ **CALCULATION:** A percentage commission shall be calculated based on the following, if earned above:
44   • Under 1) or 2) the total consideration between the parties in the transaction.
45   • Under 3) or 4) the list price if the entire Property is involved.
46   • Under 3) if the exchange involves less than the entire Property or under 4) if the effective change in ownership or
47     control involves less than the entire Property, the fair market value of the portion of the Property exchanged or for
48     which there was an effective change in ownership or control.
49   • Under 5) the total offered purchase price.
50 **NOTE: If a commission is earned for a portion of the Property it does not terminate the Listing as to any remaining**
51 **Property.**
52 COMPENSATION TO OTHERS The Firm offers the following commission to cooperating firms: N/A _____
53 _____. (Exceptions if any): _____.
54 BUYER FINANCIAL CAPABILITY The Firm and its agents are not responsible under Wisconsin statutes or regulations to
55 qualify a buyer's financial capability. If Seller wishes to confirm a buyer's financial capability, Seller may negotiate inclusion of
56 a contingency for financing, proof of funds, qualification from a lender, sale of buyer's property, or other confirmation in any
57 offer to purchase or contract.

Berkshire Hathaway HomeServices North Properties, 9542 E 16 Frontage Road Onalaska WI 54650
Phone: (608) 386-8209    Fax:    Mike Pietrek                               W14247 Plummer Rd.
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Authentisign ID: 501250C0-8F47-401B-BBBA-D1BD5C6ED9A9

58 **DISPUTE RESOLUTION** The parties understand that if there is a dispute about this Listing or an alleged breach, and
59 the parties cannot resolve the dispute by mutual agreement, the parties may consider judicial resolution in court or may
60 consider alternative dispute resolution. Alternative dispute resolution may include mediation and binding
61 arbitration. Should the parties desire to submit any potential dispute to alternative dispute resolution, it is recommended
62 that the parties add such in Additional Provisions or in an Addendum.
63 **FAIR HOUSING** **Seller and the Firm and its agents agree that they will not discriminate against any**
64 **prospective buyer on account of race, color, sex, sexual orientation as defined in Wisconsin Statutes, Section**
65 **111.32(13m), disability, religion, national origin, marital status, lawful source of income, age, ancestry, family**
66 **status, status as a victim of domestic abuse, sexual assault, or stalking, or in any other unlawful manner.**
67 **DISCLOSURE TO CLIENTS**
68 Under Wisconsin law, a brokerage firm (hereinafter firm) and its brokers and salespersons (hereinafter agents) owe
69 certain duties to all parties to a transaction:
70 (a) The duty to provide brokerage services to you fairly and honestly.
71 (b) The duty to exercise reasonable skill and care in providing brokerage services to you.
72 (c) The duty to provide you with accurate information about market conditions within a reasonable time if you request
73 it, unless disclosure of the information is prohibited by law.
74 (d) The duty to disclose to you in writing certain Material Adverse Facts about a property, unless disclosure of the
75 information is prohibited by law. (See lines 195-198.)
76 (e) The duty to protect your confidentiality. Unless the law requires it, the firm and its agents will not disclose your
77 confidential information or the confidential information of other parties. (See lines 135-150.)
78 (f) The duty to safeguard trust funds and other property the firm or its agents holds.
79 (g) The duty, when negotiating, to present contract proposals in an objective and unbiased manner and disclose the
80 advantages and disadvantages of the proposals.
81 **BECAUSE YOU HAVE ENTERED INTO AN AGENCY AGREEMENT WITH A FIRM, YOU ARE THE FIRM'S CLIENT.**
82 **A FIRM OWES ADDITIONAL DUTIES TO YOU AS A CLIENT OF THE FIRM:**
83 (a) The firm or one of its agents will provide, at your request, information and advice on real estate matters that affect
84 your transaction, unless you release the firm from this duty.
85 (b) The firm or one of its agents must provide you with all material facts affecting the transaction, not just Adverse
86 Facts.
87 (c) The firm and its agents will fulfill the firm's obligations under the agency agreement and fulfill your lawful requests
88 that are within the scope of the agency agreement.
89 (d) The firm and its agents will negotiate for you, unless you release them from this duty.
90 (e) The firm and its agents will not place their interests ahead of your interests. The firm and its agents will not, unless
91 required by law, give information or advice to other parties who are not the firm's clients, if giving the information or
92 advice is contrary to your interests.
93 If you become involved in a transaction in which another party is also the firm's client (a "multiple representation
94 relationship"), different duties may apply.

95 **MULTIPLE REPRESENTATION RELATIONSHIPS AND DESIGNATED AGENCY**
96 ■ A multiple representation relationship exists if a firm has an agency agreement with more than one client who is a
97 party in the same transaction. If you and the firm's other clients in the transaction consent, the firm may provide
98 services through designated agency, which is one type of multiple representation relationship.
99 ■ Designated agency means that different agents with the firm will negotiate on behalf of you and the other client or
100 clients in the transaction, and the firm's duties to you as a client will remain the same. Each agent will provide
101 information, opinions, and advice to the client for whom the agent is negotiating, to assist the client in the negotiations.
102 Each client will be able to receive information, opinions, and advice that will assist the client, even if the information,
103 opinions, or advice gives the client advantages in the negotiations over the firm's other clients. An agent will not reveal
104 any of your confidential information to another party unless required to do so by law.
105 ■ If a designated agency relationship is not authorized by you or other clients in the transaction you may still authorize
106 or reject a different type of multiple representation relationship in which the firm may provide brokerage services to
107 more than one client in a transaction but neither the firm nor any of its agents may assist any client with information,
108 opinions, and advice which may favor the interests of one client over any other client. Under this neutral approach, the
109 same agent may represent more than one client in a transaction.
110 ■ If you do not consent to a multiple representation relationship the firm will not be allowed to provide brokerage
111 services to more than one client in the transaction.

Authentisign ID: 501250C0-8F47-401B-BBBA-D1BD5C6ED9A9

Property Address: W14247 Plummer Rd., Weyerhaeuser, WI 54895      Page 3 of 6, WB-1

112 **CHECK ONLY ONE OF THE THREE BELOW:**

113 [   ] The same firm may represent me and the other party as long as the same agent is not
114      representing us both (multiple representation relationship with designated agency).

115 [ x ] The same firm may represent me and the other party, but the firm must remain neutral
116      regardless if one or more different agents are involved (multiple representation relationship
117      without designated agency).

118 [   ] The same firm cannot represent both me and the other party in the same transaction (I reject
119      multiple representation relationships).

120 **NOTE: All clients who are parties to this agency agreement consent to the selection checked above. You may**
121 **modify this selection by written notice to the firm at any time. Your firm is required to disclose to you in your**
122 **agency agreement the commission or fees that you may owe to your firm. If you have any questions about the**
123 **commission or fees that you may owe based upon the type of agency relationship you select with your firm,**
124 **you should ask your firm before signing the agency agreement.**

125 **SUBAGENCY**
126 Your firm may, with your authorization in the agency agreement, engage other firms (subagent firms) to assist your firm by
127 providing brokerage services for your benefit. A subagent firm and the agents associated with the subagent firm will not put
128 their own interests ahead of your interests. A subagent firm will not, unless required by law, provide advice or opinions to
129 other parties if doing so is contrary to your interests.

130 **PLEASE REVIEW THIS INFORMATION CAREFULLY. An agent can answer your questions about brokerage**
131 **services, but if you need legal advice, tax advice, or a professional home inspection, contact an attorney, tax**
132 **advisor, or home inspector.**

133 This disclosure is required by section 452.135 of the Wisconsin statutes and is for information only. It is a plain language
134 summary of the duties owed to you under section 452.133 (2) of the Wisconsin statutes.

135 ■ **CONFIDENTIALITY NOTICE TO CLIENTS:** The Firm and its agents will keep confidential any information given to
136 the Firm or its agents in confidence, or any information obtained by the Firm and its agents that a reasonable person
137 would want to be kept confidential, unless the information must be disclosed by law or you authorize the Firm to
138 disclose particular information. The Firm and its agents shall continue to keep the information confidential after the Firm
139 is no longer providing brokerage services to you.
140 The following information is required to be disclosed by law:
141 1) Material Adverse Facts, as defined in section 452.01 (5g) of the Wisconsin statutes (see lines 195-198).
142 2) Any facts known by the Firm and its agents that contradict any information included in a written inspection report on
143      the property or real estate that is the subject of the transaction.
144 To ensure that the Firm and its agents are aware of what specific information you consider confidential, you may list
145 that information below (see lines 147-148). At a later time, you may also provide the Firm with other information you
146 consider to be confidential.
147 **CONFIDENTIAL INFORMATION:** _____
148 _____ .
149 **NON-CONFIDENTIAL INFORMATION** (The following may be disclosed by the Firm and its agents): _____
150 _____ .

151 **COOPERATION, ACCESS TO PROPERTY OR OFFER PRESENTATION** The parties agree that the Firm and its
152 agents will work and cooperate with other firms and agents in marketing the Property, including firms acting as
153 subagents (other firms engaged by the Firm - see lines 125-129) and firms representing buyers. Cooperation includes
154 providing access to the Property for showing purposes and presenting offers and other proposals from these firms to
155 Seller. Note any firms with whom the Firm shall not cooperate, any firms or agents or buyers who shall not be allowed
156 to attend showings, and the specific terms of offers which should not be submitted to Seller: _____
157 _____
158 **CAUTION: Limiting the Firm's cooperation with other firms may reduce the marketability of the Property.**

159 **EXCLUSIONS** All persons who may acquire an interest in the Property who are Protected Buyers under a prior listing
160 contract are excluded from this Listing to the extent of the prior firm's legal rights, unless otherwise agreed to in writing.
161 Within seven days of the date of this Listing, Seller agrees to deliver to the Firm a written list of all such Protected Buyers.
162 **NOTE: If Seller fails to timely deliver this list to the Firm, Seller may be liable to the Firm for damages and costs.**
163 The following other buyers _____
164 _____ are excluded from this Listing until _____ [INSERT DATE].
165 These other buyers are no longer excluded from this Listing after the specified date unless, on or before the specified date,
166 Seller has either accepted a written offer from the buyer or sold the Property to the buyer.

Authentisign ID: 501250C0-8F47-461B-BBBA-D1BD5C6ED9A9

167 **DEFINITIONS**

168 ■ <u>ADVERSE FACT</u>: An "Adverse Fact" means any of the following:

169 (a) A condition or occurrence that is generally recognized by a competent licensee as doing any of the following:

170     1) Significantly and adversely affecting the value of the Property;

171     2) Significantly reducing the structural integrity of improvements to real estate; or

172     3) Presenting a significant health risk to occupants of the Property.

173 (b) Information that indicates that a party to a transaction is not able to or does not intend to meet his or her
174     obligations under a contract or agreement made concerning the transaction.

175 ■ <u>DEADLINES – DAYS</u>: Deadlines expressed as a number of "days" from an event are calculated by excluding the day the
176 event occurred and by counting subsequent calendar days.

177 ■ <u>DEFECT</u>: "Defect" means a condition that would have a significant adverse effect on the value of the Property; that
178 would significantly impair the health or safety of future occupants of the Property; or that if not repaired, removed or
179 replaced would significantly shorten or adversely affect the expected normal life of the premises.

180 ■ <u>FIRM</u>: "Firm" means a licensed sole proprietor broker or a licensed broker business entity.

181 ■ <u>FIXTURES</u>: A "Fixture" is an item of property which is physically attached to or so closely associated with land or
182 buildings so as to be treated as part of the real estate, including, without limitation, physically attached items not easily
183 removable without damage to the premises, items specifically adapted to the premises, and items customarily treated
184 as fixtures, including, but not limited to, all: garden bulbs; plants; shrubs and trees; screen and storm doors and
185 windows; electric lighting fixtures; window shades; curtain and traverse rods; blinds and shutters; central heating and
186 cooling units and attached equipment; water heaters, water softeners and treatment systems; sump pumps; attached or
187 fitted floor coverings; awnings; attached antennas and satellite dishes; audio/visual wall mounting brackets (but not the
188 audio/visual equipment); garage door openers and remote controls; installed security systems; central vacuum systems
189 and accessories; in-ground sprinkler systems and component parts; built-in appliances; ceiling fans; fences; in-ground
190 pet containment systems (but not the collars); storage buildings on permanent foundations and docks/piers on
191 permanent foundations.
192 **CAUTION: Exclude any Fixtures to be retained by Seller or which are rented (e.g., water softener or other water**
193 **treatment systems, home entertainment and satellite dish components, L.P. tanks, etc.) on lines 12-14 and in**
194 **the offer to purchase.**

195 ■ <u>MATERIAL ADVERSE FACT</u>: A "Material Adverse Fact" means an Adverse Fact that a party indicates is of such
196 significance, or that is generally recognized by a competent licensee as being of such significance to a reasonable
197 party, that it affects or would affect the party's decision to enter into a contract or agreement concerning a transaction or
198 affects or would affect the party's decision about the terms of such a contract or agreement.

199 ■ <u>PERSON ACTING ON BEHALF OF BUYER</u>: "Person Acting on Behalf of Buyer" shall mean any person joined in interest
200 with buyer, or otherwise acting on behalf of buyer, including but not limited to buyer's immediate family, agents, employees,
201 directors, managers, members, officers, owners, partners, incorporators and organizers, as well as any and all corporations,
202 partnerships, limited liability companies, trusts or other entities created or controlled by, affiliated with or owned by buyer, in
203 whole or in part whether created before or after expiration of this Listing.

204 ■ <u>PROPERTY</u>: Unless otherwise stated, "Property", means all property included in the list price as described on lines 2-5.

205 ■ <u>PROTECTED BUYER</u>: Means a buyer who personally, or through any Person Acting on Behalf of Buyer, during the term
206 of this Listing:

207     1) Delivers to Seller or the Firm or its agents a written offer to purchase, exchange or option on the Property;

208     2) Views the Property with Seller or negotiates directly with Seller by communicating with Seller regarding any potential
209        terms upon which the buyer might acquire an interest in the Property; or

210     3) Attends an individual showing of the Property or communicates with agents of the Firm or cooperating firms regarding
211        any potential terms upon which the buyer might acquire an interest in the Property, but only if the Firm or its agents
212        deliver the buyer's name to Seller, in writing, no later than three days after the earlier of expiration or termination (lines
213        263-271) of the Listing. The requirement in 3) to deliver the buyer's name to Seller in writing, may be fulfilled as follows:

214        a) If the Listing is effective only as to certain individuals who are identified in the Listing, by the identification of the
215           individuals in the Listing; or,

216        b) If a buyer has requested that the buyer's identity remain confidential, by delivery of a written notice identifying the firm
217           or agents with whom the buyer negotiated and the date(s) of any individual showings or other negotiations.

218 A Protected Buyer also includes any Person Acting on Behalf of Buyer joined in interest with or otherwise acting on behalf of
219 a Protected Buyer, who acquires an interest in the Property during the extension of this listing period as noted on lines 220-224.

220 **EXTENSION OF LISTING**: The Listing term is extended for a period of one year as to any Protected Buyer. Upon
221 receipt of a written request from Seller or a firm that has listed the Property, the Firm agrees to promptly deliver to
222 Seller a written list of those buyers known by the Firm and its agents to whom the extension period applies. Should this
223 Listing be terminated by Seller prior to the expiration of the term stated in this Listing, this Listing shall be extended for
224 Protected Buyers, on the same terms, for one year after the Listing is terminated (lines 263-271).

Authentisign ID: 501250C0-8F47-401B-BBBA-D1BD5C6ED9A9

Page 5 of 6, WB-1

225 **OCCUPANCY** Unless otherwise provided, Seller agrees to give the buyer occupancy of the Property at time of closing
226 and to have the Property in broom swept condition and free of all debris and personal property except for personal
227 property belonging to current tenants, sold to the buyer or left with the buyer's consent.

228 **LEASED PROPERTY** If Property is currently leased and lease(s) will extend beyond closing, Seller shall assign Seller's
229 rights under the lease(s) and transfer all security deposits and prepaid rents (subject to agreed upon prorations) thereunder
230 to buyer at closing. Seller acknowledges that Seller remains liable under the lease(s) unless released by tenants.
231 **CAUTION: Seller should consider obtaining an indemnification agreement from buyer for liabilities under the**
232 **lease(s) unless released by tenants.**

233 **NOTICE ABOUT SEX OFFENDER REGISTRY** You may obtain information about the sex offender registry and
234 persons registered with the registry by contacting the Wisconsin Department of Corrections on the Internet at
235 http://www.doc.wi.gov or by telephone at (608)240-5830.

236 **REAL ESTATE CONDITION REPORT** Seller agrees to complete the real estate condition report provided by the Firm
237 to the best of Seller's knowledge. Seller agrees to amend the report should Seller learn of any Defect(s) after completion
238 of the report but before acceptance of a buyer's offer to purchase. Seller authorizes the Firm and its agents to distribute
239 the report to all interested parties and agents inquiring about the Property. Seller acknowledges that the Firm and its
240 agents have a duty to disclose all Material Adverse Facts as required by law.

241 **SELLER REPRESENTATIONS REGARDING DEFECTS** Seller represents to the Firm that as of the date of this
242 Listing, Seller has no notice or knowledge of any Defects affecting the Property other than those noted on the real estate
243 condition report.
244 **WARNING: IF SELLER REPRESENTATIONS ARE INCORRECT OR INCOMPLETE, SELLER MAY BE LIABLE FOR**
245 **DAMAGES AND COSTS.**

246 **SELLER COOPERATION WITH MARKETING EFFORTS** Seller agrees to cooperate with the Firm in the Firm's
247 marketing efforts and to provide the Firm with all records, documents and other material in Seller's possession or
248 control which are required in connection with the sale. Seller authorizes the Firm and its agents to do those acts
249 reasonably necessary to effect a sale and Seller agrees to cooperate fully with these efforts which may include use of a
250 multiple listing service, Internet advertising or a lockbox system on Property. Seller shall promptly refer all persons
251 making inquiries concerning the Property to the Firm and notify the Firm in writing of any potential buyers with whom Seller
252 negotiates or who view the Property with Seller during the term of this Listing.

253 **OPEN HOUSE AND SHOWING RESPONSIBILITIES** Seller is aware that there is a potential risk of injury, damage
254 and/or theft involving persons attending an "individual showing" or an "open house." Seller accepts responsibility for
255 preparing the Property to minimize the likelihood of injury, damage and/or loss of personal property. Seller agrees to
256 hold the Firm and its agents harmless for any losses or liability resulting from personal injury, property damage, or theft
257 occurring during "individual showings" or "open houses" other than those caused by the negligence or intentional
258 wrongdoing of the Firm or its agents. Seller acknowledges that individual showings and open houses may be
259 conducted by licensees other than agents of the Firm, that appraisers and inspectors may conduct appraisals and
260 inspections without being accompanied by agents of the Firm or other licensees, and that buyers or licensees may be
261 present at all inspections and testing and may photograph or videotape Property unless otherwise provided for in
262 additional provisions at lines 303-308 or in an addendum per lines 309-310.

263 **TERMINATION OF LISTING** Neither Seller nor the Firm has the legal right to unilaterally terminate this Listing absent a
264 material breach of contract by the other party. Seller understands that the parties to the Listing are Seller and the Firm.
265 Agents for the Firm do not have the authority to enter into a mutual agreement to terminate the Listing, amend the
266 commission amount or shorten the term of this Listing, without the written consent of the agent(s)' supervising broker. Seller
267 and the Firm agree that any termination of this Listing by either party before the date stated on line 312 shall be
268 effective by the Seller only if stated in writing and delivered to the Firm in accordance with lines 280-302 and effective
269 by the Firm only if stated in writing by the supervising broker and delivered to Seller in accordance with lines 280-302.
270 **CAUTION: Early termination of this Listing may be a breach of contract, causing the terminating party to**
271 **potentially be liable for damages.**

272 **EARNEST MONEY** If the Firm holds trust funds in connection with the transaction, they shall be retained by the Firm in the
273 Firm's trust account. The Firm may refuse to hold earnest money or other trust funds. Should the Firm hold the earnest money,
274 the Firm shall hold and disburse earnest money funds in accordance with Wis. Stat. Ch. 452 and Wis. Admin. Code Ch. REEB
275 18. If the transaction fails to close and the Seller requests and receives the earnest money as the total liquidated damages,
276 then upon disbursement to Seller, the earnest money shall be paid first to reimburse the Firm for cash advances made by the
277 Firm on behalf of Seller and one half of the balance, but not in excess of the agreed commission, shall be paid to the Firm as
278 full commission in connection with said purchase transaction and the balance shall belong to Seller. This payment to the Firm
279 shall not terminate this Listing.

Authentisign ID: 501250C0-8F47-401B-BBBA-D1BD5C6ED9A9

Property Address: W14247 Plummer Rd., Weyerhaeuser, WI 54895 _____ Page 6 of 6, WB-1

280 **DELIVERY OF DOCUMENTS AND WRITTEN NOTICES** Unless otherwise stated in this Listing, delivery of
281 documents and written notices to a party shall be effective only when accomplished by one of the methods specified at
282 lines 283-302.
283 (1) Personal Delivery: giving the document or written notice personally to the party, or the party's recipient for delivery
284 if named at line 285 or 286.
285 Seller's recipient for delivery (optional): _____
286 Firm's recipient for delivery (optional): _____
287 ☐ (2) Fax: fax transmission of the document or written notice to the following telephone number:
288 Seller: (_____) _____ Firm: (_____) _____
289 ☐ (3) Commercial Delivery: depositing the document or written notice fees prepaid or charged to an account with a
290 commercial delivery service, addressed either to the party, or to the party's recipient for delivery if named at line 285 or
291 286, for delivery to the party's delivery address at line 295 or 296.
292 ☐ (4) U.S. Mail: depositing the document or written notice postage prepaid in the U.S. Mail, addressed either to the
293 party, or to the party's recipient for delivery if named at line 285 or 286, for delivery to the party's delivery address at
294 line 295 or 296.
295 Delivery address for Seller: _____
296 Delivery address for Firm: _____
297 ☒ (5) E-Mail: electronically transmitting the document or written notice to the party's e-mail address, if given below at
298 line 301 or 302. If this is a consumer transaction where the property being purchased or the sale proceeds are used
299 primarily for personal, family or household purposes, each consumer providing an e-mail address below has first
300 consented electronically as required by federal law.
301 E-Mail address for Seller: 7dirtygrands@gmail.com
302 E-Mail address for Firm: mpietrek@bhhsnorthproperties.com
303 **ADDITIONAL PROVISIONS** This is  non MLS listing agreement.
304 _____
305 _____
306 _____
307 _____
308 _____
309 **ADDENDA** The attached addenda Listing Addendum, wire fraud, RESPA
310 _____ is/are made part of this Listing.
311 **TERM OF THE CONTRACT** From the _____ 14th _____ day of _____ April _____ , 2023 _____ , up
312 to the earlier of midnight of the _____ 1st _____ day of _____ May _____ , 2023 _____ , or the
313 conveyance of the entire Property.
314 **BY SIGNING BELOW, SELLER ACKNOWLEDGES RECEIPT OF A COPY OF THIS LISTING CONTRACT AND**
315 **THAT HE/SHE HAS READ ALL 6 PAGES AS WELL AS ANY ADDENDA AND ANY OTHER DOCUMENTS**
316 **INCORPORATED INTO THE LISTING.**

317 (x) _____ _____ Daniel M. Nelson _____ 04/14/2023
318 Seller's Signature ▲                         Print Name Here ▲                    Date ▲

319 (x) Theresa L. Nelson _____ Theresa L. Nelson _____ 04/14/2023
320 Seller's Signature ▲                         Print Name Here ▲                    Date ▲

321 (x) _____
322 Seller's Signature ▲                         Print Name Here ▲                    Date ▲

323 (x) _____
324 Seller's Signature ▲                         Print Name Here ▲                    Date ▲

325 Seller Entity Name (if any): _____
326                                               Print Name Here ▲

327 (x) _____
328 Authorized Signature ▲    Print Name & Title Here ▶                              Date ▲

329 (x) _____ Michael Pietrek _____ Berkshire Hathaway HomeServices North _____ 04/14/2023
330 Agent for Firm ▲              Print Name Here ▲              Firm Name ▲              Date ▲

Authentisign ID: 325B4766-A342-46B9-BC2D-C3448E1D05A3

Approved by the Wisconsin Real Estate Examining Board
**7-1-16** (Mandatory Use Date)

Berkshire Hathaway HomeServices

## WB-42 AMENDMENT TO LISTING CONTRACT

1 It is agreed that the Listing Contract dated _____ April 14, 2023 _____, between the undersigned, for sale/rental of the
2 property known as (Street Address/Description) _____ W14347 Plummer Rd. _____
3 _____ in the _____ Village _____ of
4 _____ Weyerhaeuser _____, County of _____ Rusk _____, Wisconsin is amended as follows:
5 The list price is changed from $_____ to $ _____ .
6 The expiration date of the contract is changed from midnight _____ , _____
7 to midnight _____ , _____ .
8 The following items are (added to)(deleted from) | STRIKE ONE | the list of property to be included in the list price:
9 _____
10 _____ .
11 Other: **This amendment is to change the address on all contracts to reflect the**
12 **actual property address to be: W14347 Plummer Rd., Weyerhaeuser WI.**
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____
26 _____
27 _____
28 _____
29 _____
30 _____
31 _____
32 _____
33 _____
34    ALL OTHER TERMS OF THIS CONTRACT AND ANY PRIOR AMENDMENTS REMAIN UNCHANGED.

35 Berkshire Hathaway HomeServices North                    (x) _Daniel M. Nelson_        04/14/2023
36 Firm Name ▲                                              Seller's/Owner's Signature ▲          Date ▲
37                                                          Print name ▶ Daniel M. Nelson
38 (x) _Michael Pietrek_              04/14/2023            (x) _Theresa L. Nelson_        04/14/2023
39 By Agent for Firm ▲                      Date ▲          Seller's/Owner's Signature ▲          Date ▲
40 Print name ▶ Michael Pietrek                             Print name ▶ Theresa L. Nelson

41 **CAUTION: This Listing belongs to the Firm. Agents for Firm do not have the authority to enter into a mutual**
42 **agreement to terminate a listing contract, amend the commission amount or shorten the term of a listing**
43 **contract, without the written consent of the Agent(s)' supervising broker.**

44 This written consent may be obtained with the supervising broker's signature below or a separate consent.

45 (x) _____
46 Supervising Broker's Signature ▲ Print name ▶                                              Date ▲

Berkshire Hathaway HomeServices North Properties, 9542 E 16 Frontage Road Onalaska WI 54650
Phone: (608) 386-8209        Fax:              Mike Pietrek                                 W14247 Plummer

Authentisign ID: 501250C0-8F47-401B-BBBA-D1BD5C6ED9A9



**BERKSHIRE
HATHAWAY**
HomeServices
**North Properties**

Addendum to Listing Contract

For the property located at: **W14247 Plummer Rd., Weyerhaeuser, WI  54895**

**Administrative Commission:** The seller's of the above mentioned property are aware that an administrative commission in the amount of **$200.00** is being charged to the seller as a separate commission at closing. This commission consists of a flat fee paid to the broker in addition to the percentage commission. The Administrative Commission is not designated for any specific service, but for all the services provided.

**Home Warranty, Lead Based Paint and Radon:** I hereby acknowledge that the following topics have been discussed with me:

-Home Warranty Options
-Discussed the topics of lead based paint and radon.

**Authorization to Divulge:** I have been informed of the Code regarding the disclosure and representation in all residential real estate transactions. I/We authorize our listing agent of Berkshire Hathaway HomeServices North Properties to do the following while marketing our home.

☐ Yes / ☒ No    Tell other Realtors and prospective buyers why you are selling a home.

☐ Yes / ☒ No    Grant permission to disclose whether or not multiple offers exist.

**Minnesota Carbon Monoxide Law:** As of January 1st, 2007 a new Minnesota carbon monoxide law requires that all newly-constructed, single and multi-family dwelling have a UL listed carbon monoxide alarm installed. As of August 1st, 2008 all existing single families are required to have appropriate number of CO detectors and August 1st, 2009 all multi-family dwellings will need to come into compliance. The law states the 1 detector be installed within 10 feet of all bedrooms in the home. This may mean that some homes will require more that 1 detector if there are multiple sleeping area throughout the building. I have read and agree to have CO detectors placed in our home prior to closing.

**Wisconsin Carbon Monoxide Law:** Wisconsin law requires working carbon monoxide (CO) and smoke detectors on all floors (including basements) of all residential properties (CO detectors are not required if no attached garage and no combustion sources of CO are present). Seller shall be responsible for installation (and cost) of all required smoke and CO detectors in proper locations per government guidelines.

**Dispute Resolution:** Any disputes, claims or controversies arising out of or related to this agreement or the relationship created thereby, including but not limited to claims with a statutory basis or those arising from tort, which fall into the jurisdiction of small claims courts shall be resolved in the applicable small claims' courts. Any other such disputes, claims or controversies, including those involving the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Minneapolis, Minnesota (or a mutually agreeable location) before a single arbitrator. The time for seeking any remedy under arbitration shall be limited to the period of any applicable statute(s) of limitation under Minnesota law as would be applied by Minnesota courts to each specific type of action(s) or claim(s). The arbitration shall be administered pursuant to JAMS' Streamlined Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction. Neither party to this agreement shall be entitled to join or consolidate claims or disputes by or against the other, or to include in any arbitration any claim or dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in any private attorney general capacity.

| | 04/14/2023 | | 04/14/2023 |
|---|---|---|---|
| *Daniel M. Nelson* | | *Theresa L. Nelson* | |
| Seller Signature | Date | Seller Signature | Date |
| **Daniel M. Nelson** | | **Theresa L. Nelson** | |

An Independently Owned and Operated Member of BHH Affiliates, LLC

Authentisign ID: 6E3E5CA1E-7126-4BD1-BE51-263543F6E612



a Berkshire Hathaway affiliate

**EXCLUSIVE RIGHT TO SELL
LISTING CONTRACT**

1. Date _____ 01/11/2017 _____

2. Page 1 of _____ pages

3. **DEFINITIONS:** This Contract involves the property located at 12572 Parkwood Dr _____ ,

4. legally described as PARKWOOD TOWNHOMES ADDITION 1 10 LOT 1 BLK 10 & INTEREST ATTRIBUTABLE TO COMMON AREA BEING LOT 1 BLK

5. 12 SUBJ TO CIC #256 _____ ("Property").

6. Seller is ____ The Trust of Clara Drill ~~FAMILY REVOKADO~~ Gloria Kowalczyk, Trustee ____ .
   TRUST

7. Broker is _____ **Edina Realty, Inc.** _____ .
   (Real Estate Company Name)

8. This Contract may only be canceled by written mutual agreement of the parties.

9. **LISTING:** Seller gives Broker the exclusive right to sell the Property for the price of $ _____ 234,900.00 _____ ;

10. Seller will require the following terms: _____

11. _____ . This Contract starts _____ Jan _____ 13 , 20 17 , and ends
    (year)

13. at 11:59 p.m. on _____ May _____ 31 , 20 17 . In exchange, Broker agrees to list the Property and try

14. to sell it. Broker may place a "For Sale" sign and a lock box with keys on the Property. Seller authorizes Broker to allow

15. showings and hold open houses at the Property at such dates and times as mutually agreed. Seller understands that

16. Seller shall be fully responsible for the safekeeping and security of any personal property which may be kept or maintained

17. on the Property. Seller understands Broker is a member of a local Multiple Listing Service (MLS), and Broker shall give

18. information to Broker's MLS concerning the Property as provided by MLS rules. Broker may also distribute information

19. regarding Seller's Property to the general public. Seller shall keep Broker notified of relevant information important

20. to the sale of the Property. If Broker sells the Property, Broker may notify Broker's MLS and members of the area

21. boards of REALTORS® of the price and terms of the sale. Seller understands that this Contract DOES NOT give

22. Broker authority to rent or manage Seller's Property. Broker may place information on the internet concerning the

23. property, including the Property's address. Seller understands that Seller has the additional options of allowing:

24. (1) an automated "valuation" of Seller's property, which may be lower than Seller's asking price, to appear alongside

25. the property on websites operated by other brokers; and (2) comments about Seller's property to appear

26. on these websites, including negative comments, made by persons other than the broker operating the website.

27. At this time, however, Seller declines options (1) and (2), understanding that Seller may change these selections at any time.

28. Seller understands that mortgage financing services are usually paid for by the buyer; however, certain

29. insured government loans may require the Seller to pay a portion of the fees for the mortgage loan. Seller

30. understands that Seller shall not be required to pay the financing fees on any mortgage without giving

31. Seller's written consent. Seller understands that Broker may list other properties during the term of this Contract.

32. **LISTED FOR LEASE:** The Property ☐ **IS** ☒ **IS NOT** currently listed for lease. If **IS**, the listing broker is
    ----------(Check one.)----------

33. _____ . If **IS NOT**, Seller ☐ **MAY** ☒ **MAY NOT** list the Property for lease during the
    ----------(Check one.)----------

34. terms of this Contract with another broker.

35. Nothing in this Contract shall prohibit Broker and Seller from entering into a listing agreement for the lease of this

36. Property upon terms acceptable to both parties.

37. **SELLER'S DUTIES:** Seller shall cooperate with Broker in selling the Property. Seller shall promptly

38. tell Broker about all inquiries Seller receives about the Property. Seller agrees to provide

39. and pay for any inspections and reports required by any governmental authority. Seller

40. agrees to provide home owners' association documents, if required. Seller shall remain responsible for security,

41. maintenance, utilities and insurance while Seller owns the Property, and for safekeeping, securing and/or concealing

42. any valuable personal property during Property showings or open houses. Seller shall surrender any

43. abstract of title and a copy of any owner's title insurance policy for this Property, if in Seller's possession or

44. control, to Buyer or Buyer's designated title service provider. Seller shall take all actions necessary to convey

ER 201C-1 (12/16)

InstanetFORMS



Authentisign ID: 6E35CA1E-7126-4B01-BEE1-263543F6E612

a Berkshire Hathaway affiliate

**EXCLUSIVE RIGHT TO SELL
LISTING CONTRACT**

45.      Page 2

46.  marketable title by the date of closing as agreed to in a purchase agreement. Seller shall sign all documents
47.  necessary to transfer to Buyer marketable title to the Property. Seller has the full legal right to sell the Property.

48.  ACCESS TO THE PROPERTY: Seller authorizes access to the Property to facilitate showing and the sale of
49.  the Property. This may include access by Broker and its associates, other brokers and their associates, and other
50.  professionals. Seller acknowledges and agrees that access may occur without a licensed salesperson present.

51.  **BROKER'S COMPENSATION:**

52.  **NOTICE:     THE COMPENSATION FOR THE SALE, LEASE, RENTAL OR MANAGEMENT OF REAL PROPERTY**
53.  **                     SHALL BE DETERMINED BETWEEN EACH INDIVIDUAL BROKER AND THE BROKER'S CLIENT.**

54.  Seller shall pay Broker, as Broker's compensation, _____6_____ percent (%) of the selling price and a brokers administrative

55.  commission• of $444.00 if Seller sells or agrees to sell the Property before this Contract ends,
56.  regardless of when the sale closes. Seller authorizes Broker to receive additional compensation from the Buyer.
57.  In addition, if before this Contract ends Broker presents a buyer who is willing and able to buy the Property at the price
58.  and terms required in this Contract, but Seller refuses to sell, Seller shall still pay Broker the same compensation. Seller
59.  agrees to pay Broker's compensation whether Broker, Seller or anyone sells the Property. Seller hereby permits Broker
60.  to share part of Broker's compensation with other real estate brokers, including brokers representing only the buyer.
61.  Seller understands that Edina Realty Sales Associates other than the Listing Sales Associate may, with Seller's
62.  permission, hold open houses at Seller's Property. Seller agrees to pay Broker's compensation in full upon the happening
       of any of the following events:
63.                    (1) the closing of the sale,
64.                    (2) Seller's refusal to close the sale; or
65.                    (3) Seller's refusal to sell at the price and terms required in this contract.
66.  If, within 6 months after the end of this Contract, Seller sells or agrees to sell the Property to anyone who:
67.  (1) during this Contract made inquiry of Seller about the Property and Seller did not tell Broker about the inquiry; or
68.  (2) during this Contract made an affirmative showing of interest in the Property or was physically shown the Property
69.  by Broker and whose name is on a written list Broker gives Seller within 72 hours after the end of this Contract; then
70.  Seller shall still pay Broker Broker's compensation on the selling price, even if Seller sells the Property without Broker's
71.  assistance. Seller understands that Seller does not have to pay Broker's compensation if Seller signs another valid
72.  listing contract for this Property after the expiration of this Contract, under which Seller is obligated to compensate
73.  another licensed real estate broker.
74.  To secure the payment of Broker's compensation Seller hereby assigns to Broker the proceeds from the sale of the
75.  Property in an amount equal to the compensation due Broker under this Contract.

76.  **CLOSING SERVICES:**
77.  **NOTICE:     THE REAL ESTATE BROKER, REAL ESTATE SALESPERSON OR REAL ESTATE CLOSING AGENT**
78.  **                     HAS NOT EXPRESSED AND, UNDER APPLICABLE STATE LAW, MAY NOT EXPRESS OPINIONS**
79.  **                     REGARDING THE LEGAL EFFECT OF THE CLOSING DOCUMENTS OR OF THE CLOSING ITSELF.**
80.  After a purchase agreement for the Property is signed, arrangements must be made to close the transaction. Seller understands
81.  that no one can require Seller to use a particular service provider in connection with a real estate closing and that Seller may
82.  arrange for a qualified closing agent or Seller's attorney to conduct the closing. Seller understands that Seller may be required to pay
83.  certain closing costs which may effectively reduce the proceeds from the sale. Different providers may offer these services
84.  at various prices.
85.  Seller's choice for closing services.
86.  (Initial one.)
87.  _____  _____  Seller wishes to have Edina Realty Title, Inc. provide closing and title services. Edina Realty Title, Inc. is
       (Seller)      (Seller)                     an affiliate of Edina Realty, Inc.

88.  _____  _____  Seller shall arrange for a qualified closing agent or Seller's attorney to conduct the closing.
       (Seller)      (Seller)

89.  _____  _____  Seller agrees to purchase the Edina Realty Home Warranty.
       (Seller)      (Seller)

90.  _____  _____  Seller declines to purchase the Edina Realty Home Warranty.
       (Seller)      (Seller)

ER 201C-2 (12/16)

InstanetFORMS

Authentisign ID: 6E35C41E-7426-4B01-BEE1-263543F6E612



a Berkshire Hathaway affiliate

**EXCLUSIVE RIGHT TO SELL
LISTING CONTRACT**

91.     Page 3      ·

---

92. **AGENCY REPRESENTATION:** If a Buyer represented by Broker wishes to buy the Seller(s) property, a dual agency will
93. be created. This means that Broker will represent both the Seller(s) and the Buyer(s), and owe the same duties
94. to the Buyer(s) that Broker owes to the Seller(s). This conflict of interest will prohibit Broker from advocating
95. exclusively on the Seller(s) behalf. Dual agency will limit the level of representation Broker can provide. If a dual
96. agency should arise, the Seller(s) will need to agree that confidential information about price, terms, and motivation
97. will still be kept confidential unless the Seller(s) instructs Broker in writing to disclose specific information about the
98. Seller(s). All other information will be shared. Broker cannot act as a dual agent unless both the Seller(s) and the
99. Buyer(s) agree to it. By agreeing to a possible dual agency, the Seller(s) will be giving up the right to exclusive
100. representation in an in-house transaction. However, if the Seller(s) should decide not to agree to a possible dual
101. agency, and the Seller(s) wants Broker to represent the Seller(s), the Seller(s) may give up the opportunity to sell
102. the property to Buyers represented by Broker.

103. Seller's Instructions to Broker: Having read and understood this information about dual agency, Seller(s) now instructs
104. Broker as follows:
105. [X]   Seller(s) will agree to a dual agency representation and will consider offers made by Buyers represented by
106.        Broker.
107. [ ]   Seller(s) will not agree to a dual agency representation and will not consider offers made by Buyers represented
108.        by Broker.

109. Real Estate Company Name: _____ **Edina Realty, Inc.** _____

110.                                                              Seller: _Authentisign_ _Gloria Kowalczyk_
111. By: _Kara Kowalczyk_                                         Seller: _1/12/2017 3:56:03 PM CST_
        (Licensee)
112.                                                              Date: _1/11/2017_

---

113. **ANTI-FRAUD DISCLOSURE:** Edina Realty and its agents will never provide you with wiring instructions via email
114. without verifying the information in person or over the phone. EMAILS ATTEMPTING TO INDUCE FRAUDULENT
115. WIRE TRANSFERS ARE COMMON AND MAY APPEAR TO COME FROM A TRUSTED SOURCE. If you receive an
116. email directing you to transfer funds via wire, EVEN IF THAT ELECTRONIC COMMUNICATION APPEARS TO BE
117. FROM Edina Realty or its agents, do not respond until you have verified it in one of the following ways:

118.    • Call your agent if the email appears to be from Edina Realty.
119.    • To verify instructions related to wiring funds to anyone other than Edina Realty, call the company or agent using
120.      a phone number you look up yourself, rather than a phone number in the email.

---

121. **FAIR HOUSING NOTICE:** Seller understands that Seller may not refuse to sell, or discriminate in the terms, conditions or privileges
122. of sale, to any person due to his/her race, color, creed, religion, national origin, sex, marital status, status with regard
123. to public assistance, handicap (whether physical or mental), sexual orientation or family status. Seller understands further
124. that local ordinances may include other protected classes.

125. **ADDITIONAL NOTICES AND TERMS:** As of this date Seller has not received notices from any municipality, government
126. agency or unit owners' association about the Property that Seller has not told Broker about, and Seller agrees to
127. promptly tell Broker of any notices of that type that Seller receives.

128. Seller, Broker, and Licensee agree that all intellectual property created by Broker or Licensee relating to the Property,
129. including but not limited to photographs, list price, property descriptions, and marketing remarks, shall be and remain
130. the intellectual property of the Broker.

ER 201C-3 (12/16)

InstanetFORMS



Authentisign ID: 6E3ECA1E-7126-4B01-BEE1-263543F6E612

a Berkshire Hathaway affiliate

**EXCLUSIVE RIGHT TO SELL
LISTING CONTRACT**

131.　　Page 4

132.　In the event Seller provides content, including, but not limited to, any photos or videos of the Property ("Seller Content")
133.　to Broker, Seller grants to Broker a nonexclusive, perpetual, world-wide, transferable, royalty free license to sub-license
134.　(including through multiple tiers), reproduce, distribute, display, perform and create derivative works of the Seller
135.　Content. Seller represents and warrants that Seller has authority to provide Seller Content and Seller Content does not
136.　violate any restrictions regarding use including any third-party intellectual property rights or laws. Seller agrees to
137.　execute any further documents that are necessary to effect this license.

138.　This shall serve as Seller's written notice granting Broker or the title company closing the sale of the Property permission
139.　to obtain mortgage information (e.g., mortgage balance, interest rate, payoff and/or assumption figures) regarding any
140.　existing financing on the Property. A copy of this document shall be as valid as the original.

141.　Edina Realty's policy is to offer cooperation and compensation to any real estate broker who may sell your property,
142.　subject to prior bilateral agreements, if any, and excluding the Broker's Administrative Commission. Equal
143.　compensation is offered irrespective of the cooperating broker's agency or non-agency status. For the commission
144.　percentage or amount to be offered to cooperating brokers pursuant to this listing contract, please consult your Edina
145.　Realty sales agent.

146.　Edina Realty's policy is to disclose to all parties to a potential transaction, either directly or through the parties' real
147.　estate agents, the existence of multiple or competing offers for the purchase of your property. We believe that this policy
148.　best serves the needs of both sellers and buyers. If you do not agree to have this information disclosed, please advise

149.　your Edina Realty agent in writing.

150.　*The Broker's Administrative Commission consists of a flat fee paid to the Broker in addition to the percentage commission.
151.　The Broker's Administrative Commission is not designated for any specific service, but for all the services provided by Broker.

152.　**FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Section 1445 of the Internal Revenue Code
153.　provides that a transferee ("Buyer") of a United States real property interest must be notified in writing and must
154.　withhold tax from the transferor ("Seller") if the transferor ("Seller") is a foreign person, provided there are no applicable
155.　exceptions from FIRPTA withholding.
156.　Seller represents and warrants that Seller ☐ IS ☒ IS NOT a foreign person (i.e., a non-resident alien
　　　　-----(Check one.)----
157.　individual, foreign corporation, foreign partnership, foreign trust, or foreign estate) for purposes of income taxation.

158.　Due to the complexity and potential risks of failing to comply with FIRPTA, Seller should seek appropriate legal and
159.　tax advice regarding FIRPTA compliance, as Broker will be unable to confirm whether Seller is a foreign  person
160.　or whether the withholding requirements of FIRPTA apply.

161.　**ARBITRATION:** Any controversy or claim between the parties to this Exclusive Right to Sell Listing Contract, its interpretation,
162.　enforcement or breach, including but not limited to claims arising from tort (which includes claims of fraud and fraud in
163.　the inducement), shall be settled by binding arbitration administered by and under the rules of National Center
164.　for Dispute Settlement (NCDS). While either party shall have all the rights and benefits of arbitration, both <u>parties are</u>
165.　<u>giving up the right to litigate such claims and disputes in a court or jury trial.</u> The results, determinations,
166.　findings, judgments and/or awards rendered through such arbitration shall be final and binding on the
167.　parties hereto and may be specifically enforced by legal proceedings. Judgment on the award may be entered
168.　into any court having jurisdiction. Neither party shall be entitled to join or consolidate disputes by or against others
169.　in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any
170.　arbitration in the interest of the general public or in any private attorney general capacity.

Authentisign ID: 6F3EC41E-7126-4BD1-BEE1-363543F6E612



a Berkshire Hathaway affiliate

**EXCLUSIVE RIGHT TO SELL
LISTING CONTRACT**

171.    Page 5

172. **CONSENT FOR COMMUNICATION:** Unless Seller has opted out under the procedure below, Seller gives Edina
173. Realty, HSA Home Warranty (provider of Edina Realty Warranties), and Edina Realty's affiliated companies express
174. permission to contact Seller by telephone, mail, fax, e-mail or other means of communication, even if the
175. telephone number is listed on a state, federal or company-specific do-not-call list.

176. **FEDERAL NOTICE.** The Edina Realty family of companies is providing this notice. Edina Realty has brokerage,
177. title, mortgage and insurance affiliates that are committed to the highest quality of service. If you choose, however,
178. you may limit the Edina Realty companies from marketing their products or services to you based on your personal
179. information that they receive from other Edina Realty companies, such as your contact and transaction information.
180. (Rest assured, we do not share your financial information with anyone.) Your choice to limit the marketing offers
181. from Edina Realty companies will apply until you tell us to change your choice.
182. To limit marketing offers, contact us by telephone toll-free at 1-877-270-1289.

183. **ELECTRONIC SIGNATURES:** The parties agree the electronic signature of any party on any document related to
184. this transaction constitute valid, binding signatures.

185. **ACCEPTED BY:** _Edina Realty, Inc._     **ACCEPTED BY:** _Kathi Drew_
                (Real Estate Company Name)                             (Licensee)

186. Date Signed: _____ **1/11/2017** , 20 _____

187. **ACCEPTED BY:** Authentisign _Gloria Kowalczyk_ **1/11/2017**     **ACCEPTED BY:** _____
         1/11/2017 3:58:06 PM CST
        (Seller)                    (Date)                       (Seller)            (Date)

188. _____      _____
   (Address)                                 (Address)

189. _____      _____
   (Phone)                                   (Phone)

190. _____      _____
   (E-mail address)                             (E-mail address)

191. I/we would like relocation services. Yes ☐     No ☐

192. Date Signed: _____ , 20 _____

193.             **THIS IS A LEGALLY BINDING CONTRACT BETWEEN SELLER AND BROKER.**

194.             **IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL**

DocuSign Envelope ID: 0478C0CC-9C66-4917-BA8E-9BD1BA829612

1059

Approved by the Wisconsin Real Estate Examining Board
7-1-16 (Mandatory Use Date)

**WISCONSIN REALTORS® ASSOCIATION**
4801 Forest Run Road
Madison, Wisconsin 53704
Page 1 of 6, WB-1

---

### WB-1 RESIDENTIAL LISTING CONTRACT - EXCLUSIVE RIGHT TO SELL

1 **SELLER GIVES THE FIRM THE EXCLUSIVE RIGHT TO SELL THE PROPERTY ON THE FOLLOWING TERMS:**
2 ■ **PROPERTY DESCRIPTION:** Street address is: 1059 LaBarge Rd
3 ___
4 in the Town of Hudson , County of St Croix ,
5 Wisconsin. Insert additional description, if any, at lines 303-308 or attach as an addendum per lines 309-310.
6 ■ **INCLUDED IN LIST PRICE:** Seller is including in the list price the Property, all Fixtures not excluded on lines 12-14,
7 and the following items: Range, Dishwasher, Refrigerator, Microwave, Washer, Dryer, TV Wall Mounts
8 ___
9 ___
10 ___
11 ___
12 ■ **NOT INCLUDED IN LIST PRICE:** Sellers personal property
13 ___
14 ___
15 **CAUTION: Identify Fixtures to be excluded by Seller or which are rented and will continue to be owned by the**
16 **lessor. (See lines 181-194).**
17 ■ **LIST PRICE:** Four hundred sixty nine thousand dollars Dollars ($ 469,000.00 ).
18 **MARKETING** Seller authorizes and the Firm and its agents agree to use reasonable efforts to market the Property.
19 Seller agrees that the Firm and its agents may market Seller's personal property identified on lines 7-11 during the term
20 of this Listing. The marketing may include: Internet marketing, realtor network, etc.
21 ___
22 The Firm and its agents may advertise the following special financing and incentives offered by Seller: N/A
23 ___
24 Seller has a duty to cooperate with the marketing efforts of the Firm and its agents. See lines 246-252 regarding the
25 Firm's role as marketing agent and Seller's duty to notify the Firm of any potential buyer known to Seller. Seller agrees
26 that the Firm and its agents may market other properties during the term of this Listing.
27 **COMMISSION** The Firm's commission shall be 6.0%
28 ___
29 ■ **EARNED:** Seller shall pay the Firm's commission, which shall be earned, if, during the term of this Listing:
30   1) Seller sells or accepts an offer which creates an enforceable contract for the sale of all or any part of the Property;
31   2) Seller grants an option to purchase all or any part of the Property which is subsequently exercised;
32   3) Seller exchanges or enters into a binding exchange agreement on all or any part of the Property;
33   4) A transaction occurs which causes an effective change in ownership or control of all or any part of the Property; or
34   5) A ready, willing and able buyer submits a bona fide written offer to Seller or Firm for the Property at, or above, the list
35     price and on substantially the same terms set forth in this Listing and the current WB-11 Residential Offer to Purchase,
36     even if Seller does not accept the buyer's offer. A buyer is ready, willing and able when the buyer submitting the
37     written offer has the ability to complete the buyer's obligations under the written offer.
38 The Firm's commission shall be earned if, during the term of the Listing, one seller of the Property sells, conveys,
39 exchanges or options, as described above, an interest in all or any part of the Property to another owner, except by divorce
40 judgment.
41 ■ **DUE AND PAYABLE:** Once earned, the Firm's commission is due and payable in full at the earlier of closing or the date
42 set for closing, even if the transaction does not close, unless otherwise agreed in writing.
43 ■ **CALCULATION:** A percentage commission shall be calculated based on the following, if earned above:
44   •   Under 1) or 2) the total consideration between the parties in the transaction.
45   •   Under 3) or 4) the list price if the entire Property is involved.
46   •   Under 3) if the exchange involves less than the entire Property or under 4) if the effective change in ownership or
47     control involves less than the entire Property, the fair market value of the portion of the Property exchanged or for
48     which there was an effective change in ownership or control.
49   •   Under 5) the total offered purchase price.
50 **NOTE: If a commission is earned for a portion of the Property it does not terminate the Listing as to any remaining**
51 **Property.**
52 **COMPENSATION TO OTHERS** The Firm offers the following commission to cooperating firms: 2.4%
53 ___ . (Exceptions if any): N/A
54 **BUYER FINANCIAL CAPABILITY** The Firm and its agents are not responsible under Wisconsin statutes or regulations to
55 qualify a buyer's financial capability. If Seller wishes to confirm a buyer's financial capability, Seller may negotiate inclusion of
56 a contingency for financing, proof of funds, qualification from a lender, sale of buyer's property, or other confirmation in any
57 offer to purchase or contract.

DocuSign Envelope ID: 0478C0CC-9C66-4917-BA8E-9BD1BA829612

58 **DISPUTE RESOLUTION** The parties understand that if there is a dispute about this Listing or an alleged breach, and
59 the parties cannot resolve the dispute by mutual agreement, the parties may consider judicial resolution in court or may
60 consider alternative dispute resolution. Alternative dispute resolution may include mediation and binding
61 arbitration. Should the parties desire to submit any potential dispute to alternative dispute resolution, it is recommended
62 that the parties add such in Additional Provisions or in an Addendum.

63 **FAIR HOUSING** Seller and the Firm and its agents agree that they will not discriminate against any
64 prospective buyer on account of race, color, sex, sexual orientation as defined in Wisconsin Statutes, Section
65 111.32(13m), disability, religion, national origin, marital status, lawful source of income, age, ancestry, family
66 status, status as a victim of domestic abuse, sexual assault, or stalking, or in any other unlawful manner.

67 **DISCLOSURE TO CLIENTS**
68 Under Wisconsin law, a brokerage firm (hereinafter firm) and its brokers and salespersons (hereinafter agents) owe
69 certain duties to all parties to a transaction:
70 (a) The duty to provide brokerage services to you fairly and honestly.
71 (b) The duty to exercise reasonable skill and care in providing brokerage services to you.
72 (c) The duty to provide you with accurate information about market conditions within a reasonable time if you request
73      it, unless disclosure of the information is prohibited by law.
74 (d) The duty to disclose to you in writing certain Material Adverse Facts about a property, unless disclosure of the
75      information is prohibited by law. (See lines 195-198.)
76 (e) The duty to protect your confidentiality. Unless the law requires it, the firm and its agents will not disclose your
77      confidential information or the confidential information of other parties. (See lines 135-150.)
78 (f) The duty to safeguard trust funds and other property the firm or its agents holds.
79 (g) The duty, when negotiating, to present contract proposals in an objective and unbiased manner and disclose the
80      advantages and disadvantages of the proposals.

81 **BECAUSE YOU HAVE ENTERED INTO AN AGENCY AGREEMENT WITH A FIRM, YOU ARE THE FIRM'S CLIENT.**
82 **A FIRM OWES ADDITIONAL DUTIES TO YOU AS A CLIENT OF THE FIRM:**

83 (a) The firm or one of its agents will provide, at your request, information and advice on real estate matters that affect
84      your transaction, unless you release the firm from this duty.
85 (b) The firm or one of its agents must provide you with all material facts affecting the transaction, not just Adverse
86      Facts.
87 (c) The firm and its agents will fulfill the firm's obligations under the agency agreement and fulfill your lawful requests
88      that are within the scope of the agency agreement.
89 (d) The firm and its agents will negotiate for you, unless you release them from this duty.
90 (e) The firm and its agents will not place their interests ahead of your interests. The firm and its agents will not, unless
91      required by law, give information or advice to other parties who are not the firm's clients, if giving the information or
92      advice is contrary to your interests.
93 If you become involved in a transaction in which another party is also the firm's client (a "multiple representation
94 relationship"), different duties may apply.

95 **MULTIPLE REPRESENTATION RELATIONSHIPS AND DESIGNATED AGENCY**
96 ▪ A multiple representation relationship exists if a firm has an agency agreement with more than one client who is a
97 party in the same transaction. If you and the firm's other clients in the transaction consent, the firm may provide
98 services through designated agency, which is one type of multiple representation relationship.
99 ▪ Designated agency means that different agents with the firm will negotiate on behalf of you and the other client or
100 clients in the transaction, and the firm's duties to you as a client will remain the same. Each agent will provide
101 information, opinions, and advice to the client for whom the agent is negotiating, to assist the client in the negotiations.
102 Each client will be able to receive information, opinions, and advice that will assist the client, even if the information,
103 opinions, or advice gives the client advantages in the negotiations over the firm's other clients. An agent will not reveal
104 any of your confidential information to another party unless required to do so by law.
105 ▪ If a designated agency relationship is not authorized by you or other clients in the transaction you may still authorize
106 or reject a different type of multiple representation relationship in which the firm may provide brokerage services to
107 more than one client in a transaction but neither the firm nor any of its agents may assist any client with information,
108 opinions, and advice which may favor the interests of one client over any other client. Under this neutral approach, the
109 same agent may represent more than one client in a transaction.
110 ▪ If you do not consent to a multiple representation relationship the firm will not be allowed to provide brokerage
111 services to more than one client in the transaction.

DocuSign Envelope ID: 0478C0CC-8C66-4917-BA8E-9BD1BA829812

Property Address:  1059 LaBarge Road, Hudson WI 54016                                          Page 3 of 6, WB-1

112                                 **CHECK ONLY ONE OF THE THREE BELOW:**

113    [ X ]    The same firm may represent me and the other party as long as the same agent is not
114              representing us both (multiple representation relationship with designated agency).

115    [   ]    The same firm may represent me and the other party, but the firm must remain neutral
116              regardless if one or more different agents are involved (multiple representation relationship
117              without designated agency).

118    [   ]    The same firm cannot represent both me and the other party in the same transaction (I reject
119              multiple representation relationships).

120  **NOTE: All clients who are parties to this agency agreement consent to the selection checked above. You may**
121  **modify this selection by written notice to the firm at any time. Your firm is required to disclose to you in your**
122  **agency agreement the commission or fees that you may owe to your firm. If you have any questions about the**
123  **commission or fees that you may owe based upon the type of agency relationship you select with your firm,**
124  **you should ask your firm before signing the agency agreement.**

125                                          **SUBAGENCY**
126  Your firm may, with your authorization in the agency agreement, engage other firms (subagent firms) to assist your firm by
127  providing brokerage services for your benefit. A subagent firm and the agents associated with the subagent firm will not put
128  their own interests ahead of your interests. A subagent firm will not, unless required by law, provide advice or opinions to
129  other parties if doing so is contrary to your interests.

130  **PLEASE REVIEW THIS INFORMATION CAREFULLY. An agent can answer your questions about brokerage**
131  **services, but if you need legal advice, tax advice, or a professional home inspection, contact an attorney, tax**
132  **advisor, or home inspector.**

133  This disclosure is required by section 452.135 of the Wisconsin statutes and is for information only. It is a plain language
134  summary of the duties owed to you under section 452.133 (2) of the Wisconsin statutes.

135  ■ **CONFIDENTIALITY NOTICE TO CLIENTS:** The Firm and its agents will keep confidential any information given to
136  the Firm or its agents in confidence, or any information obtained by the Firm and its agents that a reasonable person
137  would want to be kept confidential, unless the information must be disclosed by law or you authorize the Firm to
138  disclose particular information. The Firm and its agents shall continue to keep the information confidential after the Firm
139  is no longer providing brokerage services to you.
140  The following information is required to be disclosed by law:
141  1)   Material Adverse Facts, as defined in section 452.01 (5g) of the Wisconsin statutes (see lines 195-198).
142  2)   Any facts known by the Firm and its agents that contradict any information included in a written inspection report on
143        the property or real estate that is the subject of the transaction.
144  To ensure that the Firm and its agents are aware of what specific information you consider confidential, you may list
145  that information below (see lines 147-148). At a later time, you may also provide the Firm with other information you
146  consider to be confidential.
147  **CONFIDENTIAL INFORMATION:** N/A
148
149  **NON-CONFIDENTIAL INFORMATION** (The following may be disclosed by the Firm and its agents): N/A
150

151  **COOPERATION, ACCESS TO PROPERTY OR OFFER PRESENTATION:** The parties agree that the Firm and its
152  agents will work and cooperate with other firms and agents in marketing the Property, including firms acting as
153  subagents (other firms engaged by the Firm - see lines 125-129) and firms representing buyers. Cooperation includes
154  providing access to the Property for showing purposes and presenting offers and other proposals from these firms to
155  Seller. Note any firms with whom the Firm shall not cooperate, any firms or agents or buyers who shall not be allowed
156  to attend showings, and the specific terms of offers which should not be submitted to Seller:  N/A
157
158  **CAUTION: Limiting the Firm's cooperation with other firms may reduce the marketability of the Property.**
159  **EXCLUSIONS:** All persons who may acquire an interest in the Property who are Protected Buyers under a prior listing
160  contract are excluded from this Listing to the extent of the prior firm's legal rights, unless otherwise agreed to in writing.
161  Within seven days of the date of this Listing, Seller agrees to deliver to the Firm a written list of all such Protected Buyers.
162  **NOTE: If Seller fails to timely deliver this list to the Firm, Seller may be liable to the Firm for damages and costs.**
163  The following other buyers  N/A
164  _____ are excluded from this Listing until _____ [INSERT DATE].
165  These other buyers are no longer excluded from this Listing after the specified date unless, on or before the specified date,
166  Seller has either accepted a written offer from the buyer or sold the Property to the buyer.

DocuSign Envelope ID: 0478C0CC-9C66-4917-BA8E-9BD1DA829612

167 **DEFINITIONS**

168 ■ **ADVERSE FACT:** An "Adverse Fact" means any of the following:
169 (a)  A condition or occurrence that is generally recognized by a competent licensee as doing any of the following:
170          1) Significantly and adversely affecting the value of the Property;
171          2) Significantly reducing the structural integrity of improvements to real estate; or
172          3) Presenting a significant health risk to occupants of the Property.
173 (b)  Information that indicates that a party to a transaction is not able to or does not intend to meet his or her
174         obligations under a contract or agreement made concerning the transaction.

175 ■ **DEADLINES -- DAYS:** Deadlines expressed as a number of "days" from an event are calculated by excluding the day the
176 event occurred and by counting subsequent calendar days.

177 ■ **DEFECT:** "Defect" means a condition that would have a significant adverse effect on the value of the Property; that
178 would significantly impair the health or safety of future occupants of the Property; or that if not repaired, removed or
179 replaced would significantly shorten or adversely affect the expected normal life of the premises.

180 ■ **FIRM:** "Firm" means a licensed solo proprietor broker or a licensed broker business entity.

181 ■ **FIXTURES:** A "Fixture" is an item of property which is physically attached to or so closely associated with land or
182 buildings so as to be treated as part of the real estate, including, without limitation, physically attached items not easily
183 removable without damage to the premises, items specifically adapted to the premises, and items customarily treated
184 as fixtures, including, but not limited to, all: garden bulbs; plants; shrubs and trees; screen and storm doors and
185 windows; electric lighting fixtures; window shades; curtain and traverse rods; blinds and shutters; central heating and
186 cooling units and attached equipment; water heaters, water softeners and treatment systems; sump pumps; attached or
187 fitted floor coverings; awnings; attached antennas and satellite dishes; audio/visual wall mounting brackets (but not the
188 audio/visual equipment); garage door openers and remote controls; installed security systems; central vacuum systems
189 and accessories; in-ground sprinkler systems and component parts; built-in appliances; ceiling fans; fences; in-ground
190 pet containment systems (but not the collars); storage buildings on permanent foundations and docks/piers on
191 permanent foundations.

192 **CAUTION: Exclude any Fixtures to be retained by Seller or which are rented (e.g., water softener or other water**
193 **treatment systems, home entertainment and satellite dish components, L.P. tanks, etc.) on lines 12-14 and in**
194 **the offer to purchase.**

195 ■ **MATERIAL ADVERSE FACT:** A "Material Adverse Fact" means an Adverse Fact that a party indicates is of such
196 significance, or that is generally recognized by a competent licensee as being of such significance to a reasonable
197 party, that it affects or would affect the party's decision to enter into a contract or agreement concerning a transaction or
198 affects or would affect the party's decision about the terms of such a contract or agreement.

199 ■ **PERSON ACTING ON BEHALF OF BUYER:** "Person Acting on Behalf of Buyer" shall mean any person joined in interest
200 with buyer, or otherwise acting on behalf of buyer, including but not limited to buyer's immediate family, agents, employees,
201 directors, managers, members, officers, owners, partners, incorporators and organizers, as well as any and all corporations,
202 partnerships, limited liability companies, trusts or other entities created or controlled by, affiliated with or owned by buyer, in
203 whole or in part whether created before or after expiration of this Listing.

204 ■ **PROPERTY:** Unless otherwise stated, "Property", means all property included in the list price as described on lines 2-5.

205 ■ **PROTECTED BUYER:** Means a buyer who personally, or through any Person Acting on Behalf of Buyer, during the term
206 of this Listing:
207      1) Delivers to Seller or the Firm or its agents a written offer to purchase, exchange or option on the Property;
208      2) Views the Property with Seller or negotiates directly with Seller by communicating with Seller regarding any potential
209          terms upon which the buyer might acquire an interest in the Property; or
210      3) Attends an individual showing of the Property or communicates with agents of the Firm or cooperating firms regarding
211         any potential terms upon which the buyer might acquire an interest in the Property, but only if the Firm or its agents
212         deliver the buyer's name to Seller, in writing, no later than three days after the earlier of expiration or termination (lines
213         263-271) of the Listing. The requirement in 3), to deliver the buyer's name to Seller in writing, may be fulfilled as follows:
214           a) If the Listing is effective only as to certain individuals who are identified in the Listing, by the identification of the
215                individuals in the Listing; or,
216           b) If a buyer has requested that the buyer's identity remain confidential, by delivery of a written notice identifying the firm
217                or agents with whom the buyer negotiated and the date(s) of any individual showings or other negotiations.
218 A Protected Buyer also includes any Person Acting on Behalf of Buyer joined in interest with or otherwise acting on behalf of
219 a Protected Buyer, who acquires an interest in the Property during the extension of listing period as noted on lines 220-224.

220 **EXTENSION OF LISTING** The Listing term is extended for a period of one year as to any Protected Buyer. Upon
221 receipt of a written request from Seller or a firm that has listed the Property, the Firm agrees to promptly deliver to
222 Seller a written list of those buyers known by the Firm and its agents to whom the extension period applies. Should this
223 Listing be terminated by Seller prior to the expiration of the term stated in this Listing, this Listing shall be extended for
224 Protected Buyers, on the same terms, for one year after the Listing is terminated (lines 263-271).

DocuSign Envelope ID: 0478C0CC-9C66-4917-BA8F-9BD1BA829612

225 **OCCUPANCY** Unless otherwise provided, Seller agrees to give the buyer occupancy of the Property at time of closing
226 and to have the Property in broom swept condition and free of all debris and personal property except for personal
227 property belonging to current tenants, sold to the buyer or left with the buyer's consent.

228 **LEASED PROPERTY** If Property is currently leased and lease(s) will extend beyond closing, Seller shall assign Seller's
229 rights under the lease(s) and transfer all security deposits and prepaid rents (subject to agreed upon prorations) thereunder
230 to buyer at closing.  Seller acknowledges that Seller remains liable under the lease(s) unless released by tenants.
231 **CAUTION:  Seller should consider obtaining an indemnification agreement from buyer for liabilities under the**
232 **lease(s) unless released by tenants.**

233 **NOTICE ABOUT SEX OFFENDER REGISTRY** You may obtain information about the sex offender registry and
234 persons registered with the registry by contacting the Wisconsin Department of Corrections on the Internet at
235 http://www.doc.wi.gov or by telephone at (608)240-5830.

236 **REAL ESTATE CONDITION REPORT** Seller agrees to complete the real estate condition report provided by the Firm
237 to the best of Seller's knowledge. Seller agrees to amend the report should Seller learn of any Defect(s) after completion
238 of the report but before acceptance of a buyer's offer to purchase. Seller authorizes the Firm and its agents to distribute
239 the report to all interested parties and agents inquiring about the Property. Seller acknowledges that the Firm and its
240 agents have a duty to disclose all Material Adverse Facts as required by law.

241 **SELLER REPRESENTATIONS REGARDING DEFECTS** Seller represents to the Firm that as of the date of this
242 Listing, Seller has no notice or knowledge of any Defects affecting the Property other than those noted on the real estate
243 condition report.
244 **WARNING:  IF SELLER REPRESENTATIONS ARE INCORRECT OR INCOMPLETE, SELLER MAY BE LIABLE FOR**
245 **DAMAGES AND COSTS.**

246 **SELLER COOPERATION WITH MARKETING EFFORTS** Seller agrees to cooperate with the Firm in the Firm's
247 marketing efforts and to provide the Firm with all records, documents and other material in Seller's possession or
248 control which are required in connection with the sale. Seller authorizes the Firm and its agents to do those acts
249 reasonably necessary to effect a sale and Seller agrees to cooperate fully with these efforts which may include use of a
250 multiple listing service, Internet advertising or a lockbox system on Property. Seller shall promptly refer all persons
251 making inquiries concerning the Property to the Firm and notify the Firm in writing of any potential buyers with whom Seller
252 negotiates or who view the Property with Seller during the term of this Listing.

253 **OPEN HOUSE AND SHOWING RESPONSIBILITIES** Seller is aware that there is a potential risk of injury, damage
254 and/or theft involving persons attending an "individual showing" or an "open house."  Seller accepts responsibility for
255 preparing the Property to minimize the likelihood of injury, damage and/or loss of personal property.  Seller agrees to
256 hold the Firm and its agents harmless for any losses or liability resulting from personal injury, property damage, or theft
257 occurring during "individual showings" or "open houses" other than those caused by the  negligence or intentional
258 wrongdoing of the Firm or its agents. Seller acknowledges that individual showings and open houses may be
259 conducted by licensees other than agents of the Firm, that appraisers and inspectors may conduct appraisals and
260 inspections without being accompanied by agents of the Firm or other licensees, and that buyers or licensees may be
261 present at all inspections and testing and may photograph or videotape Property unless otherwise provided for in
262 additional provisions at lines 303-308 or in an addendum per lines 309-310.

263 **TERMINATION OF LISTING** Neither Seller nor the Firm has the legal right to unilaterally terminate this Listing absent a
264 material breach of contract by the other party.  Seller understands that the parties to the Listing are Seller and the Firm.
265 Agents for the Firm do not have the authority to enter into a mutual agreement to terminate the Listing, amend the
266 commission amount or shorten the term of this Listing, without the written consent of the agent(s)' supervising broker. Seller
267 and the Firm agree that any termination of this Listing by either party before the date stated on line 312 shall be
268 effective by the Seller only if stated in writing and delivered to the Firm in accordance with lines 280-302 and effective
269 by the Firm only if stated in writing by the supervising broker and delivered to Seller in accordance with lines 280-302.
270 **CAUTION:  Early termination of this Listing may be a breach of contract, causing the terminating party to**
271 **potentially be liable for damages.**

272 **EARNEST MONEY** If the Firm holds trust funds in connection with the transaction, they shall be retained by the Firm in the
273 Firm's trust account. The Firm may refuse to hold earnest money or other trust funds. Should the Firm hold the earnest money,
274 the Firm shall hold and disburse earnest money funds in accordance with Wis. Stat. Ch. 452 and Wis. Admin. Code Ch. REEB
275 18. If the transaction fails to close and the Seller requests and receives the earnest money as the total liquidated damages,
276 then upon disbursement to Seller, the earnest money shall be paid first to reimburse the Firm for cash advances made by the
277 Firm on behalf of Seller and one half of the balance, but not in excess of the agreed commission, shall be paid to the Firm as
278 full commission in connection with said purchase transaction and the balance shall belong to Seller. This payment to the Firm
279 shall not terminate this Listing.

DocuSign Envelope ID: 0478C0CC-9C66-4917-BA8E-9BD1BA829612

Property Address: 1059 LaBarge Road, Hudson WI 54016                    Page 6 of 6, WB-1

280 **DELIVERY OF DOCUMENTS AND WRITTEN NOTICES** Unless otherwise stated in this Listing, delivery of
281 documents and written notices to a party shall be effective only when accomplished by one of the methods specified at
282 lines 283-302.
283 (1) Personal Delivery: giving the document or written notice personally to the party, or the party's recipient for delivery
284 if named at line 285 or 286.
285 Seller's recipient for delivery (optional): _____
286 Firm's recipient for delivery (optional): _____
287 [  ] (2) Fax: fax transmission of the document or written notice to the following telephone number:
288 Seller: (_____) _____     Firm: (_____) _____
289 [  ] (3) Commercial Delivery: depositing the document or written notice fees prepaid or charged to an account with a
290 commercial delivery service, addressed either to the party, or to the party's recipient for delivery if named at line 285 or
291 286, for delivery to the party's delivery address at line 295 or 296.
292 [  ] (4) U.S. Mail: depositing the document or written notice postage prepaid in the U.S. Mail, addressed either to the
293 party, or to the party's recipient for delivery if named at line 285 or 286, for delivery to the party's delivery address at
294 line 295 or 296.
295 Delivery address for Seller: _____
296 Delivery address for Firm: _____
297 [ X ] (5) E-Mail: electronically transmitting the document or written notice to the party's e-mail address, if given below at
298 line 301 or 302. If this is a consumer transaction where the property being purchased or the sale proceeds are used
299 primarily for personal, family or household purposes, each consumer providing an e-mail address below has first
300 consented electronically as required by federal law.
301 E-Mail address for Seller: jrother.12@gmail.com          lrother78@yahoo.com
302 E-Mail address for Firm: lukesteele@edinarealty.com

303 **ADDITIONAL PROVISIONS**  N/A
304 _____
305 _____
306 _____
307 _____
308 _____

309 **ADDENDA** The attached addenda  LC Addendum
310 _____ is/are made part of this Listing.

311 **TERM OF THE CONTRACT** From the ___20th___ day of ___May___ ___2022___, up
312 to the earlier of midnight of the ___20th___ day of ___May___ ___2023___; or the
313 conveyance of the entire Property.

314 BY SIGNING BELOW, SELLER ACKNOWLEDGES RECEIPT OF A COPY OF THIS LISTING CONTRACT AND
315 THAT HE/SHE HAS READ ALL 6 PAGES AS WELL AS ANY ADDENDA AND ANY OTHER DOCUMENTS
316 INCORPORATED INTO THE LISTING.

317 (x) _____     _____     5/21/2022
318 Seller's Signature ▲                     Print Name Here ▲              Date ▲

319 (x) _Jennifer Rother_____     _____     5/21/2022
320 Seller's Signature ▲                     Print Name Here ▲              Date ▲

321 (x) _____     _____     _____
322 Seller's Signature ▲                     Print Name Here ▲              Date ▲

323 (x) _____     _____     _____
324 Seller's Signature ▲                     Print Name Here ▲              Date ▲

325 Seller Entity Name (if any): _____
326                                          Print Name Here ▲

327 (x) _____     _____
328 Authorized Signature ▲   Print Name & Title Here ▶                      Date ▲

329 (x) _Luke Steele_____     Edina Realty, Inc.               5/19/2022
330 Agent for Broker ▲                     Print Name Here ▲   Firm Name ▲   Date ▲