# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, JACK RAMEY, DANIEL UMPA, and JANE RUH, on behalf of himself and all others similarly situated, ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) ) | Case No: 1:19-cv-01610 |
| v. ) ) ) | Judge Andrea Wood |
| THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC., ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## DEFENDANT KELLER WILLIAMS REALTY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. GOVERNING LEGAL STANDARD ...................................................................................4

III. ARGUMENT..........................................................................................................................4

    A. THERE IS NO EVIDENCE OF ANYONE ASSOCIATED WITH KELLER WILLIAMS EVER DISCUSSING NAR'S COOPERATIVE COMPENSATION RULE. ...............................................6

    B. PLAINTIFFS CANNOT ESTABLISH KELLER WILLIAMS' PARTICIPATION IN A CONSPIRACY THROUGH INVOLVEMENT IN NAR. ............................................................7

    C. KELLER WILLIAMS' POLICY REQUIRING AGENTS TO JOIN THEIR LOCAL MLS (UNLESS EXEMPTED BY AN AGENT'S FRANCHISEE BROKERAGE) PROVIDES NO BASIS TO FIND KELLER WILLIAMS' KNOWING PARTICIPATION IN A CONSPIRACY. ...................................11

IV. CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................... 3

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) ...................................................... 5

*In re Baby Food Antitrust Litig.*, 166 F.3d 112 (3d Cir. 1999)), *aff'd*, 801 F.3d 758 (7th Cir. 2015) ........................................................................................................................................ 5

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758 (7th Cir. 2015) ............... 7

*In re Dairy Farmers of America, Inc., Cheese Antitrust Litig.*, 60 F. Supp. 3d 914 (N.D. Ill. 2014) ........................................................................................................................................ 5

*In re Text Messaging Antitrust Litig.*, 46 F. Supp. 3d 788 (N.D. Ill. 2014) ............................... 2, 9

*Kleen Prod. LLC v. Georgia-Pac. LLC*, 910 F.3d 927 (7th Cir. 2018) .......................................... 7

*Kleen Prod. LLC v. Int'l Paper*, 276 F. Supp. 3d 811 (N.D. Ill. 2017)*, aff'd sub nom. Kleen Prod. LLC v. Georgia-Pac. LLC*, 910 F.3d 927 (7th Cir. 2018) ................................................... 8, 9, 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........................... 1, 4, 14

*Miles Distributors, Inc. v. Specialty Const. Brands, Inc.*, 476 F.3d 442 (7th Cir. 2007) ............... 6

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) ........................................... 4, 5, 14

*Moore v. Boating Indus. Ass'n*, 819 F.2d 693 (7th Cir. 1987) ....................................................... 7

*Omnicare Inc. v. UnitedHealth Group Inc.*, 629 F.3d 697 (7th Cir. 2011) ..................... 4, 5, 11, 13

*Weit v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 641 F.2d 457 (7th Cir. 1981) .................... 9

**I.     INTRODUCTION**

At this outset of this case, Keller Williams Realty, Inc. ("Keller Williams")—along with the other Defendants—moved to dismiss Plaintiffs' complaint for failing to plausibly allege that Keller Williams knowingly participated in a conspiracy with anyone relating to the model multiple listing service rule at issue in this case, which the National Association of REALTORS® ("NAR") refers to as Policy Statement 7.23 (the "Cooperative Compensation Rule" or "Rule"). ECF 116. The Court denied that motion after interpreting from the allegations in Plaintiffs' complaint that "each Corporate Defendant expressly imposes [NAR's rules] upon their franchisees and realtors" and "reviewed, understood, and ultimately agreed to the NAR's rules, including the [Cooperative Compensation Rule]." ECF 184 at 10. The Court also found, after interpreting Plaintiffs' allegations in a light most favorable to them, that "the Corporate Defendants and their representatives were actively involved in the issuance and enforcement" of NAR's rules, *id.* at 13–14, and that the operation of the Cooperative Compensation Rule "was clearly a topic of considerable interest" to Keller Williams "and was an issue discussed among competitors." *Id.* at 15.

At this stage of the litigation, Plaintiffs are no longer entitled to rely on their allegations and inferences based on those allegations. Instead, they must provide evidence that "tends to exclude the possibility" that Keller Williams acted independently rather than in furtherance of any conspiracy. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). Plaintiffs cannot do so. After three years of discovery, involving sworn deposition of over 60 witnesses and the production of millions of pages of documents, Plaintiffs cannot produce evidence that supports the conclusions the Court drew from Plaintiffs' allegations.

The record is clear, and it is beyond genuine factual dispute that, far from being "a topic of considerable interest," the Cooperative Compensation Rule was *never* a topic of discussion

1

involving anyone at Keller Williams, either internally or with anyone outside of Keller Williams. There is simply no evidence of a single communication involving anyone from Keller Williams relating to the NAR Rule Keller Williams is alleged to have knowingly conspired to adopt, implement, or enforce; not a single email involving anyone from Keller Williams discussing the Rule; and not a single witness who testified to Keller Williams' involvement in any activities relating to the Rule.

Far from being "actively involved in the issuance and enforcement" of NAR's rules, Keller Williams has had no material involvement in NAR activities of any nature, much less any involvement in the Rule at issue in this litigation. This is not a case in which Defendants engaged in regular discussions with one another and the only question for the Court is whether Plaintiffs offered enough evidence of the substance of those discussions to support the existence of a conspiracy. *See, e.g.*, *In re Text Messaging Antitrust Litig.*, 46 F. Supp. 3d 788, 805–07 (N.D. Ill. 2014) (granting summary judgment in spite of regular interactions between defendant executives when plaintiffs "offer[ed] nothing other than speculation about the substance of these talks"), *aff'd*, 782 F.3d 867 (7th Cir. 2015). In this case, there is no evidence of any discussions about the Rule that involved Keller Williams and no evidence of "active[] involve[ment]" by Keller Williams in any NAR activities or NAR rulemaking.

And, far from "expressly impos[ing]" NAR's rules on independent contractor agents after reviewing, understanding, and agreeing to those rules, there is no evidence that Keller Williams ever even contemplated NAR's rules when it adopted its policy requiring agents to join their local REALTOR® board and MLSs (unless exempted by the agent's franchisee brokerage). The evidence is clear and beyond genuine factual dispute that Keller Williams independently adopted its policy in 1989 when the company began franchising independently owned and operated

brokerages, well before NAR's adoption of the Cooperative Compensation Rule in 1996, and that Keller Williams adopted and maintained its policy because the company believes that access to a MLS allows agents to effectively serve their buyer and seller clients.  In the face of this independent, non–conspiratorial interest on the part of Keller Williams in creating its policy, Plaintiffs must present evidence that tends "to rule out the possibility that [Keller Williams was] acting independently." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).  But Plaintiffs cannot do so because there is no evidence that Keller Williams ever considered requiring agent membership in MLSs as a way to ensure adherence with the Cooperative Compensation Rule (or, for that matter, any specific MLS rules).

   The record is also clear that Keller Williams does not monitor or enforce compliance with the policy, that certain franchisee brokerages do not require their agents to join MLSs, that agents affiliated with Keller Williams' franchisee brokerages would join MLSs because they regard it to be good for their businesses and not because of any purported requirement that they do so, and that some agents are, in fact, not even aware that the policy exists.  Nothing about the origins or operation of the policy is suggestive of a conspiracy.  Without some evidence that Keller Williams adopted the policy to ensure agent adherence with NAR's rules or indication that Keller Williams communicated about its policy with NAR or *anyone* outside the company—evidence that simply does not exist—Keller Williams' policy cannot support having Plaintiffs' claims against Keller Williams presented to a jury.

   With the benefit of a full discovery record, the evidence is clear that Keller Williams has not participated in a conspiracy with NAR or other Defendants relating to the Cooperative Compensation Rule.  Plaintiffs cannot produce evidence that Keller Williams "had a conscious commitment to a common scheme designed to achieve an unlawful objective," *Monsanto Co. v.*

*Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984), or a "unity of purpose or a common design and understanding" with other Defendants. *Omnicare Inc. v. UnitedHealth Group Inc.*, 629 F.3d 697, 706 (7th Cir. 2011) (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946)). As there is no genuine dispute as to any material fact concerning the first element of Plaintiffs' Sherman Act claim, the Court should grant summary judgment for Keller Williams.

## II. GOVERNING LEGAL STANDARD

Summary judgment is appropriate if the evidence shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To defeat a motion for summary judgment on a claim under Section 1 of the Sherman Act, a plaintiff must establish that there is a genuine issue of material fact regarding whether defendants entered into an illegal conspiracy. *Matsushita*, 475 U.S. at 585–86. In this Circuit, the Court must apply a two-part test to determine whether a plaintiff's evidence is sufficient to survive summary judgment. *Omnicare*, 629 F.3d at 707. The Court must first "assess whether [the plaintiff's] evidence of agreement is ambiguous—that is, whether it is equally consistent with the [d]efendants' permissible independent interests as it is with improper activity." *Id.* If the Court concludes "the evidence could support the conclusion that [d]efendants were acting independently, [it must] then look for any evidence that tends to exclude the possibility that [d]efendants were pursuing independent interests." *Id.* In other words, a plaintiff must "show that the inference of conspiracy is reasonable in light of the competing inference of independent action." *Id.* (citation omitted).

## III. ARGUMENT

"Section 1 of the Sherman Act is designed to prevent businesses from entering into collusive agreements . . . ." *Id.* at 705. To establish a claim for violation of Section 1 of the Sherman Act, Plaintiffs must establish (1) that a contract, combination or conspiracy exists, (2)

that the agreement unreasonably restrains trade, and (3) that they were injured. *See, e.g.*, *id.* As to the first requirement, Section 1 of the Sherman Act "does not reach conduct that is wholly unilateral." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984); *see also Monsanto*, 465 U.S. at 761 ("Independent action is not proscribed."). Proof of concerted action—that is, proof of a "conscious commitment to a common scheme designed to achieve an unlawful objective"—is essential to any claim under Section 1 of the Sherman Act. *Monsanto*, 465 U.S. at 768.

Plaintiffs must prove that each individual Defendant from which they seek to recover entered into an unlawful conspiracy. Plaintiffs cannot do so. At best, Plaintiffs' purported evidence of Keller Williams' involvement in a conspiracy is "equally consistent with [Keller Williams'] permissible independent interests as it is with improper activity," and therefore is "ambiguous." *Omnicare*, 629 F.3d at 707. There is no direct evidence of any communication, much less any agreement, between Keller Williams and anyone else concerning the Cooperative Compensation Rule. Direct evidence is "tantamount to an acknowledgement of guilt," *In re Text Messaging Antitrust Litig.*, 46 F. Supp. 3d at 803, and "is explicit and requires no inferences to establish the proposition or conclusion being asserted." *In re Dairy Farmers of America, Inc., Cheese Antitrust Litig.*, 60 F. Supp. 3d 914, 950 (N.D. Ill. 2014) (quoting *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999)), *aff'd*, 801 F.3d 758 (7th Cir. 2015). In spite of extensive discovery in this case, Plaintiffs have not uncovered a shred of any evidence of that nature, including any evidence of involvement by Keller Williams in any meetings, discussions, or other activities relating to the Cooperative Compensation Rule. There is no evidence of even a single instance in which the Cooperative Compensation Rule was the topic of an internal discussion among Keller Williams employees, much less any evidence that Keller Williams arrived at a

5

meeting of the minds concerning the Rule with NAR or anyone else. There is simply no direct evidence of any nature supporting Keller Williams' participation in the alleged conspiracy.

Plaintiffs also cannot prove the existence of Keller Williams' knowing participation in a conspiracy based on circumstantial evidence. Keller Williams has had almost no involvement in NAR or any other industry organization and even the scant evidence of the company's limited involvement is as consistent with Keller Williams' independent interests as it is with conspiracy. *Miles Distributors, Inc. v. Specialty Const. Brands, Inc.*, 476 F.3d 442, 449 (7th Cir. 2007) ("When a plaintiff attempts to defeat summary judgment by highlighting circumstantial evidence of a conspiracy, some of the evidence must tend to exclude the possibility that the alleged conspirators acted independently rather than in concert."). There is also nothing inherently conspiratorial about Keller Williams' policy requiring agents affiliated with its franchisee brokerages to join their local MLS (unless exempted by the agent's franchisee brokerage), and the evidence concerning the operation of its policy does not tend to exclude the possibility that Keller Williams acted entirely independently in all activities related to the policy.

### A. There is no evidence of anyone associated with Keller Williams ever discussing NAR's Cooperative Compensation Rule.

There is simply no evidence that anyone associated with Keller Williams ever discussed the Cooperative Compensation Rule or was present at any meeting at which the Cooperative Compensation Rule was a subject. *See* Statement of Material Facts ("SOMF") ¶ 9 (citing *Burnett* Trial Tr. (G. Keller) 2027:24–2028:8 (testifying that, in forty years in the industry, he had never once discussed the Cooperative Compensation Rule before the current litigation)). Indeed, some Keller Williams executives and affiliated independent contractor agents did not even know that NAR or MLSs maintained a rule requiring listing agents to offer compensation to other MLS participants. *Id.* ¶ 46. In a case alleging a conspiracy to adopt, implement, or enforce the

Cooperative Compensation Rule, this undisputed fact alone should provide a sufficient basis for the Court to conclude that Keller Williams never consciously committed to a common scheme with anyone relating to the Cooperative Compensation Rule. *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 763 (7th Cir. 2015) (affirming a grant of summary judgment to the defendants when "Appellants have not pointed to a single communication that suggests a meeting of the minds to fix prices"); *Kleen Prod. LLC v. Georgia-Pac. LLC*, 910 F.3d 927, 938 (7th Cir. 2018) (affirming grant of summary judgment to the defendants where the "[p]urchasers have no evidence indicating that the executives discussed illicit price-fixing or output restriction deals during their calls or meetings").

### B. Plaintiffs cannot establish Keller Williams' participation in a conspiracy through involvement in NAR.

To the extent Plaintiffs seek to have the jury infer the existence of a conspiracy involving Keller Williams merely from its involvement in NAR, Plaintiffs' effort fails. As an initial matter, Keller Williams is not a member of NAR. SOMF ¶ 8. And, as discussed below, Keller Williams has never been involved meaningfully in any NAR policymaking activities. *Id.* ¶ 10 (citing Cary Sylvester Dep., April 12, 2022, 134:18–135:01 (Keller Williams had "no involvement whatsoever" in NAR or other industry organizations). In any event, even if the facts were otherwise, Keller Williams cannot be held liable under Section 1 of the Sherman Act as a co-conspirator of NAR merely based on membership in the trade association. "Mere membership in a trade association, attendance at trade association meetings and participation in trade association activities are not, in and of themselves, condemned or even discouraged by the antitrust laws." *Moore v. Boating Indus. Ass'n*, 819 F.2d 693, 712 (7th Cir. 1987) (citation omitted). In order to hold an individual association member liable for association activities, "[t]here must . . . be some evidence of actual knowledge of, and participation in, an illegal scheme." *Id.*

Plaintiffs might point to efforts on the part of three employees associated with a now-disbanded department at Keller Williams that was formed in 2017, which sought to increase the company's involvement in industry activities and influence over NAR. SOMF ¶¶ 12, 15. But the record is clear that no initiative proposed by these employees received the support of Keller Williams' senior executives or was ever acted upon by the company. *Id.* ¶ 13 (citing Cary Sylvester Dep., Apr. 12, 2022, 122:1–16 (Keller Williams leadership was "not committed at all" to industry relations proposals and offered "zero feedback" on proposals)); Ashley Kelm Dep., Feb. 2, 2022, 102:3–103:2 ("We would send things up the chain. We would make recommendations and we would get no response . . . . It was just a cycle over and over and over again."); *id.* 115:5–116:8 ("[W]e've recommended a whole bunch of things as a team, tried to get everyone excited, tried to kind of set the tone for what this could be and how this might be helpful. But . . . we didn't really have the buy in from our leadership to push it forward. It just continued to be a bunch of great ideas, regurgitated over and over and over again."). The manager of the industry relations department resigned from Keller Williams after concluding that trying to get the company involved in industry activities "was a complete and total waste of my time." *Id.* ¶ 14. Keller Williams subsequently disbanded the department in 2019 and reassigned employees associated with it to other responsibilities. *See id.* ¶ 15. Accordingly, the Court cannot reasonably infer from the mere existence of the industry relations department for a short period of time that Keller Williams ever adopted the department's proposals for industry engagement, when there is no evidence whatsoever that Keller Williams did so and unrebutted evidence that Keller Williams did not. *See Kleen Prod. LLC v. Int'l Paper*, 276 F. Supp. 3d 811, 838–39 (N.D. Ill. 2017), *aff'd sub nom. Kleen Prod. LLC v. Georgia-Pac. LLC*, 910 F.3d 927 (7th Cir. 2018) (refusing to credit plaintiffs' unsupported interpretation of events over actual evidence offered by the defendants).

And, more importantly, even if the industry relations department's proposals had been adopted by Keller Williams, there is no evidence that any of its initiatives dealt in any way with the Cooperative Compensation Rule. Plaintiffs cannot point to Keller Williams ever contributing to a single NAR policy position, much less one relating in any way to the Cooperative Compensation Rule.

Plaintiffs also might point to rare instances in which representatives of Keller Williams attended a NAR meeting or other meeting involving competitors, but no evidence exists in this case concerning any discussion about the Cooperative Compensation Rule at any meeting attended by anyone from Keller Williams. Without some evidence that the Cooperative Compensation Rule was even a topic of discussion at any meeting, and the record is devoid of such evidence, the mere existence of meetings involving a representative of Keller Williams cannot support an inference of Keller Williams' knowing participation in a conspiracy. *See In re Text Messaging Antitrust Litig.*, 46 F. Supp. 3d at 806 ("The decision by a group of industry players to have a meeting or to talk at a dinner or cocktail reception does not constitute a conspiracy."); *Kleen*, 276 F. Supp. 3d at 835 ("Plaintiffs are merely speculating that Defendants colluded during these interactions."). There is no evidence that Keller Williams representatives attended meetings of NAR or other organizations for anything other than legitimate business reasons. Any involvement by Keller Williams representatives under such legitimate circumstances are not suggestive of any conspiracy. *See Weit v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 641 F.2d 457, 468–69 (7th Cir. 1981) (finding that an "opportunity to conspire" and "ability to conspire" without "evidence of actual conspiracy . . . is not sufficient to create a genuine issue of material fact as to the existence of a conspiracy").

9

Nor can the Court infer Keller Williams' involvement in any conspiracy based on the conduct of Keller Williams agents who Plaintiffs claim were involved in some way in NAR committees or MLS governance. Again, there is no evidence whatsoever that any of the entities in which Plaintiffs claim those independent contractor agents (who are affiliated with independently owned and operated franchisee brokerages) were involved considered the Cooperative Compensation Rule at any time. Plaintiffs cannot point to a single decision undertaken by any of those entities that relates to the conduct they challenge. But more fundamentally, when individual agents participate in governance of NAR, state or local REALTOR® organizations, or MLSs, they do so in their individual capacities and not as representatives of Keller Williams. SOMF ¶¶ 18–19. There is also no evidence that Keller Williams has any control or has ever attempted to exercise any control over any agents in their capacities as representatives of any REALTOR® or MLS organization. In fact, the only evidence is to the contrary: Keller Williams has no control over agent activities within those organizations. *Id.* ¶¶ 21–22 (citing Ashley Kelm Dep., Feb. 2, 2022, 105:1–106:17 (testifying that it "would be silly" for Keller Williams to think it could direct agent activities because "agents are all independent contractors and they all think about themselves and their businesses first" and make decisions based on "what's best for them")).

At this stage in the case, Plaintiffs cannot rest on allegations of involvement generally by Keller Williams or affiliated independent contractor agents in REALTOR® organizations or MLSs and survive summary judgment. Without any evidence of any involvement by anyone associated with Keller Williams in any meetings or policymaking activities relating to the Cooperative Compensation Rule, Plaintiffs cannot establish that Keller Williams had a unity of purpose with anyone relating to the Rule. And what limited evidence exists of the involvement by Keller

10

Williams or independent contractor agents not subject to Keller Williams' control in any meetings or industry organizations is "decidedly ambiguous," not more indicative of participation in a conspiracy than it is of independent conduct, and not sufficient to allow Plaintiffs to survive summary judgment. *Omnicare*, 629 F.3d at 708.

> C. **Keller Williams' policy requiring agents to join their local MLS (unless exempted by an agent's franchisee brokerage) provides no basis to find Keller Williams' knowing participation in a conspiracy.**

It is undisputed that Keller Williams does not maintain any policy explicitly requiring its franchisee brokerages or their affiliated agents to follow the Cooperative Compensation Rule, or NAR's Handbook generally. SOMF ¶ 27. But Plaintiffs ask the Court to infer the existence of such a requirement, and Keller Williams' conscious commitment to the alleged conspiracy, from Keller Williams' policy that affiliated agents join their local REALTOR® associations and MLSs (unless exempted by an agent's franchisee brokerage).[1] But there is no evidence that Keller Williams' policy was anything other than the product of entirely unilateral conduct on the part of Keller Williams and with a purpose consistent with the independent interests of affiliated independent contractor agents. Particularly in light of undisputed evidence of Keller Williams' lack of oversight over the policy and agents' uneven compliance with or even knowledge of the policy, the mere existence of this policy cannot be viewed to be more consistent with conspiracy than with independent conduct. *Matsushita*, 475 U.S. at 587–88. There is simply no basis on this record for the Court to conclude that Keller Williams "would have refrained from [adopting its

---

[1] The policy states that agents "will become members of their local Board/Association of REALTORS® and MLS *except when exempted by their* [*Team Leader*], and will keep their membership current and active at all times." *See* SOMF ¶ 23 (quoting 2019 Policies & Guidelines Manual § 4.9.4.2 (KWRI_00401–0515, at 0456)) (emphasis added). Each franchisee brokerage employs a Team Leader who is responsible for managing the brokerage's agent recruiting, training, and consulting activities. SOMF ¶ 5. Accordingly, the face of the policy permits each franchisee to unilaterally decide to exempt their independent contractor agents from the policy.

policy] but for the fact that [it was] conspiring" with NAR or the other Defendants. *See Kleen*, 276 F. Supp. 3d at 844.

The undisputed evidence reflects that Keller Williams adopted its policy that affiliated agents join their local REALTOR® association and MLS (unless exempted by an agent's franchisee brokerage) in 1989 when the company expanded from a real estate brokerage and became a franchisor. SOMF ¶ 24. Importantly, this was years before Plaintiffs allege that NAR adopted the Cooperative Compensation Rule at issue in this case. *See* Am. Compl. (ECF 84) ¶ 56. There is also no evidence in the record to which Plaintiffs could point to refute the evidence that Keller Williams adopted its policy solely because it believes that access to a MLS is important for agents to effectively serve buyers and sellers (with REALTOR® association membership often a prerequisite to becoming an MLS member) and not in any way to ensure that agents adhere to NAR rules. SOMF ¶¶ 25-26. Indeed, Plaintiffs themselves agree that MLS access is important for agents, *see* Am. Compl. (ECF 84) ¶ 13, making MLS membership entirely consistent with agents' independent interests and not at all indicative of the existence of a conspiracy. There is not a shred of evidence that a single agent joined an MLS because of Keller Williams' policy; but there is undisputed evidence that agents joined MLSs for their own business reasons and not at all because of the existence of Keller Williams' policy. *See* SOMF ¶ 28 (citing *Burnett* Trial Tr. (M. King) 2166:10–17 (testifying that, of the thousands of agents he recruited to join Keller Williams' franchisee brokerages, every one of them was already a member of his or her local MLS)); *id.* ¶ 29 (citing *Burnett* Trial Tr. (J. Davis) 2284:3–12 (testifying that she was unaware that Keller Williams required agents to join MLSs)). Under the framework in this Circuit for evaluating whether summary judgment is appropriate, evidence concerning Keller Williams' policy is "ambiguous" because it is "equally consistent with [Keller Williams'] permissible independent interests as it is

12

with improper activities," obligating Plaintiffs to present evidence that "tends to exclude the possibility that [Keller Williams was] pursuing independent interests." *Omnicare*, 629 F.3d at 707. There is no evidence in the record on which Plaintiffs could make that showing, necessitating the entry of summary judgment for Keller Williams.

Evidence concerning Keller Williams' monitoring and enforcement of the policy—or, more accurately, *the absence* of any monitoring by Keller Williams of compliance with the policy by franchisee brokerages or their affiliated independent contractor agents—only bolsters this conclusion. If Keller Williams sought to use its policy to ensure adherence by affiliated agents with the Cooperative Compensation Rule, it would monitor and enforce compliance. But the only evidence in the discovery record is to the contrary—that Keller Williams does not monitor compliance and has never taken any action against any franchisee brokerage based on its failure to comply with this policy. SOMF ¶¶ 30-32. There is also evidence that Keller Williams possessed knowledge of "noncompliance" by a franchisee brokerage and its agents and took no action to have the franchisee require its agents to join an MLS. *Id.* ¶¶ 33-34. Finally, an inference that Keller Williams adopted a policy requiring MLS membership because it wanted agents to comply with NAR's policy is particularly unreasonable and implausible in light of the policy's explicit exemption for agents who receive permission from their brokerage's "Team Leader." *Id.* ¶¶ 23, 35. If Keller Williams viewed the requirement as a way to make sure that agents complied with NAR policies, it would not have created an exemption that could be granted by franchisees without the approval of Keller Williams.

The fact that MLS rules can and do vary renders even more implausible the notion that Keller Williams maintains its policy as a means of ensuring agent adherence to the Cooperative Compensation Rule. Some MLSs are not affiliated with NAR and operate under their own rules

13

and not under NAR's model rules, *id.* ¶ 44, and some of those MLSs do not require listing agents to offer cooperative compensation. *Id.* ¶ 45. And even in MLSs that are affiliated with NAR, there is no uniformity in the interpretation of NAR's rules. For example, a number of MLSs affiliated with NAR have recently unilaterally reinterpreted the Cooperative Compensation Rule to permit listing agents to enter zero as cooperative compensation when they submit a listing to the MLS, when NAR had interpreted the policy to require an offer of at least one cent. ¶ 43.[2] Keller Williams could not plausibly have intended to use its policy that affiliated agents join MLSs to ensure their adherence to a Rule that does not exist in certain MLSs and that is interpreted differently in others.

Summary judgment is appropriate where the evidence is "as consistent with permissible competition as with illegal conspiracy." *Matsushita*, 475 U.S. at 588. Here, the balance tilts decidedly towards permissible, independent conduct on the part of Keller Williams. There is simply no evidence that Keller Williams' policy was intended to ensure agent adherence to NAR's rules or that, in practice, it had that effect. It would not be reasonable or permissible to infer from the mere existence of this policy that Keller Williams consciously committed to a common scheme with NAR or other Defendants.

---

[2] The fact that the Rule leaves the amount of compensation to be offered entirely to the discretion of the listing agent, SOMF ¶ 42, adds an additional layer of implausibility to the notion that Keller Williams "consciously committed to a common scheme designed to achieve an unlawful objective," *Monsanto*, 465 U.S. at 764, through a policy requiring affiliated agents to join their local MLS. Even if Keller Williams monitored and enforced the policy across all of the over 300 franchisee brokerages in the covered MLSs (which it does not), *id.* ¶ 3, and even if the policy imposed a blanket requirement not subject to unilateral exemption by franchisee brokerages (which it does not), and even if there were evidence that Keller Williams sought through the policy to have the tens of thousands of affiliated agents in the Covered MLSs adhere to the Cooperative Compensation Rule (which there is not), *see id.* ¶ 4, agents would *still* have unfettered discretion as to the amount of cooperative compensation they would offer with each listing. It is impossible to find Keller Williams' pursuit of an "unlawful objective" of increased commissions from the attenuated connection between the company's policy and a Rule that leaves to listing agents the choice of the amount of cooperative compensation they will offer with each listing. This is particularly true when, regardless of the Rule, multiple states have laws that expressly recognize and permit cooperative compensation. SOMF ¶¶ 62-69 (listing laws in states with one or more of the Covered MLSs).

## IV. CONCLUSION

For the foregoing reasons and the reasons stated in the Motion for Summary Judgment submitted by the National Association of REALTORS®, which Keller Williams joins and incorporates herein, the Court should grant summary judgment in Keller Williams' favor on Plaintiffs' claims.

Dated: December 19, 2023    *Counsel for Keller Williams Realty, Inc.*

/s/ Timothy Ray
Timothy Ray
timothy.ray@hklaw.com
William Ringhofer
william.ringhofer@hklaw.com
HOLLAND & KNIGHT LLP
150 North Riverside Plaza, Suite 2700
Chicago, IL 60606
(312) 263-3600

David C. Kully, *pro hac vice*
david.kully@hklaw.com
Anna P. Hayes, *pro hac vice*
anna.hayes@hklaw.com
HOLLAND & KNIGHT LLP
800 17th Street NW, Suite 1100
Washington, DC 20530
(202) 469-5415

Jennifer Lada, *pro hac vice*
jennifer.lada@hklaw.com
HOLLAND & KNIGHT LLP
31 West 52nd Street
12th Floor
New York, NY 10019
(212) 513-3513

Dina W. McKenney, *pro hac vice*
dina.mckenney@hklaw.com
HOLLAND & KNIGHT LLP
1772 Routh Street, Suite 1500
Dallas, Texas 75201
(212) 969-1757

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 19, 2023, a true and correct copy of the foregoing was filed electronically through the Court's ECF system which will send notification of the same to all counsel of record in this matter.

    /s/ David C. Kully

David C. Kully
Counsel for Keller Williams Realty, Inc.