# EXHIBIT 1

| | |
|---|---|
| CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, JACK RAMEY, DANIEL UMPA and JANE RUH on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No. 1:19-CV-01610<br><br>Judge Andrea R. Wood |

## DECLARATION OF JENNIFER M. KEOUGH
## REGARDING PROPOSED NOTICE PROGRAM

I, Jennifer M. Keough, declare as follows:

1.    I am Chief Executive Officer, President, and Co-Founder of JND Legal Administration LLC ("JND"). I have more than 20 years of legal experience creating and supervising notice and claims administration programs and have personally overseen well over 1,000 matters. I am regularly called upon to submit declarations in connection with JND's notice and administration work. A comprehensive description of my experience is attached as **Exhibit A**.

2.    I submit this Declaration based on my personal knowledge, as well as upon information provided to me by experienced JND employees and Class Counsel, to describe the proposed Notice Program and address why it is consistent with other best practicable court approved notice plans and the requirements of Rule 23 of the Federal Rules of Civil Procedure

("Rule 23"), the Due Process Clause of the United States Constitution, and any other applicable statute, law, or rule, as well as the Federal Judicial Center ("FJC") guidelines for best practicable due process notice.

## RELEVANT EXPERIENCE

3. JND is a leading legal administration services provider with its headquarters in Seattle, Washington and other offices within the United States. JND's class action division provides all services necessary for the effective implementation of class actions, including: (1) all facets of legal notice to potential class members, such as developing the final class members list and addresses for them, outbound mailing, email notification, and the design and implementation of media programs; (2) website design and deployment, including online claim filing capabilities; (3) call center and other contact support; (4) secure class member data management; (5) paper and electronic claims processing; (6) calculation design and programming; (7) payment disbursements through check, wire, PayPal, merchandise credits, and other means; (8) qualified settlement fund tax reporting; (9) banking services and reporting; and (10) all other functions related to the secure and accurate administration of class actions.

4. JND is an approved vendor for the United States Securities and Exchange Commission ("SEC"), the Federal Trade Commission ("FTC"), and the Consumer Financial Protection Bureau ("CFPB"). In addition, we have worked with a number of other government agencies including the U.S. Equal Employment Opportunity Commission ("EEOC"), the Office of the Comptroller of the Currency ("OCC"), the Federal Deposit Insurance Corporation ("FDIC"), the Federal Communications Commission ("FCC"), the Department of Justice ("DOJ"), and the Department of Labor ("DOL"). We also have Master Services Agreements with various corporations and banks that were only awarded after JND underwent rigorous reviews of our

systems, privacy policies, and procedures. JND has also been certified as SOC 2 Type 2 compliant by noted accounting firm Moss Adams.[1]

5.　　JND has been recognized by various publications, including the *National Law Journal*, the *Legal Times*, and the *New York Law Journal*, for excellence in class action administration. JND was named the #1 Class Action Claims Administrator in the U.S. by the national legal community for multiple consecutive years, and we were inducted into the *National Law Journal* Hall of Fame in 2022 and 2023 for having held this title. JND was also recognized last year as the Most Trusted Class Action Administration Specialists in the Americas by *New World Report* (formerly *U.S. Business News*) in the publication's 2022 Legal Elite Awards program.

6.　　The principals of JND collectively have over 80 years of experience in class action legal and administrative fields. JND has overseen the administration of some of the most complex administration programs in the country and regularly prepare and implement court-approved notice campaigns throughout the United States.

7.　　JND was appointed as the notice and claims administrator in the landmark $2.67 billion Blue Cross Blue Shield antitrust settlement in which we mailed over 100 million postcard notices; sent hundreds of millions of email notices and reminders; placed notice via print, television, radio, internet, and more; staffed a call center with 250 agents during the peak of the notice program; and received and processed more than eight million claims. I am the Court-appointed notice expert in that case. JND was also appointed the settlement administrator in the $1.3 billion Equifax Data Breach Settlement, where we received more than 18 million claims, and I supervised all aspects of direct notice. Email notice was sent twice to over 140 million class

---

[1] As a SOC 2 Compliant organization, JND has passed an audit under AICPA criteria for providing data security.

members, the interactive website received more than 130 million hits, and the call center was staffed with 500 agents at the peak of call volume.

8.    Other large JND matters include a voluntary remediation program in Canada on behalf of over 30 million people; the $1.5 billion Mercedes-Benz Emissions Settlements; the $120 million GM Ignition Switch Settlement, where we mailed nearly 30 million notices and processed over 1.5 million claims; and the $215 million USC Student Health Center Settlement on behalf of women who were sexually abused by a doctor at USC; as well as hundreds of other matters.

9.    Prior to forming JND with my partners, I was involved in many other large-scale notice and claims programs. For example, my team and I handled all aspects of mailed notice, website activities, call center operations, claim intake, scanning and data entry, and check distribution for the $20 billion Gulf Coast Claims Facility. In the $10+ billion BP Deepwater Horizon Settlement, I worked directly for Patrick Juneau, the Court-appointed claims administrator, in overseeing all inbound and outbound mail activities, all call center operations, all claim intake, scanning and data entry, and all check distributions for the program. I oversaw the entire administration process in the $3.4 billion Cobell Indian Trust Settlement (the largest U.S. government class action settlement ever).

10.    JND's Legal Notice Team, which operates under my direct supervision, researches, designs, develops, and implements a wide array of legal notice programs to meet the requirements of Rule 23 and relevant state court rules. In addition to providing notice directly to potential class members through direct mail and email, our media campaigns, which are regularly approved by courts throughout the United States, have used a variety of media including newspapers, press releases, magazines, trade journals, radio, television, social media, and the internet depending on the circumstances and allegations of the case, the demographics of the class, and the habits of its

members, as reported by various research and analytics tools. During my career, I have submitted several hundred declarations to courts throughout the country attesting to our role in the creation and launch of various notice programs.

11.     Relevant to this action, JND was appointed by the Court in *Burnett, et al. v. The National Association of Realtors, et al.*, Case No. 4:19-cv-00332-SRB (W.D. Missouri) as the Settlement Administrator in the proposed Nationwide Settlements with Defendants Anywhere and RE/MAX in connection with the *Burnett* action, this action, and *Nosalek v. MLS Property Information Network, Inc., et al.*, Case No. 1:20-cv-12244-PBS (D. Massachusetts), among others. The proposed Nationwide Settlement Class includes members of the Litigation Class in this action.

## LITIGATION CLASS

12.     JND has been asked by Class Counsel to prepare a Notice Program to reach Litigation Class Members in this action and inform them about their rights and options in the ongoing litigation against the non-settling defendants. The Litigation Class includes a damages and injunctive relief class.

13.     The Damages Litigation Class consists of "[h]ome sellers who paid a commission between March 6, 2015, and December 31, 2020, to a brokerage affiliated with a Corporate Defendant in connection with the sale of residential real estate listed on a Covered MLS[2] and in a covered jurisdiction."

---

[2] The Covered MLSs include Bright MLS (Delaware, Baltimore, Maryland area, District of Columbia, parts of New Jersey, Philadelphia, Pennsylvania area, Richmond, Virginia areas, parts of West Virginia); Carolina/Canopy MLS (Charlotte, North Carolina area, including portions of South Carolina); Triangle MLS (Research Triangle Area, North Carolina); Stellar MLS (Tampa, Orlando, and Sarasota, Florida areas);Miami MLS (Miami, Florida area); Florida Gulf Coast (Fort Myers, Florida area); Metro MLS (parts of Wisconsin, including the Milwaukee areas); Yes MLS/MLS Now (Cleveland, Ohio, Eastern Ohio, and parts of West Virginia); Columbus Realtors MLS (Columbus, Ohio areas); Northstar MLS (Minnesota, Wisconsin); Wasatch Front/Utah Real Estate (Salt Lake City, Utah area); REcolorado/Metrolist (Denver, Colorado area); Pikes Peak MLS (Colorado Springs, Colorado area); GLVAR MLS (Las Vegas, Nevada area); SABOR (San Antonio, Texas area); ACTRIS/ABOR (Austin, Texas area); HAR MLS (Houston, Texas area); NTREIS (Dallas, Texas area); ARMLS (Phoenix, Arizona area); and Realcomp II (Detroit, Michigan area).

14. The <u>Injunctive Relief Class</u> consists of "[c]urrent and future owners of residential real estate in the covered jurisdictions who are presently listing or will in the future list their home for sale on a Covered MLS."

15. Excluded from both the Classes are (i) sales of residential real estate for a price below $56,500, (ii) sales of residential real estate at auction, and (iii) employees, officers, and directors of defendants, the presiding Judge in this case, and the Judge's staff.

16. The Damages and Injunctive Relief Classes will collectively be referred to as the Litigation Class throughout this Declaration.

## NOTICE PROGRAM SUMMARY

17. The proposed Notice Program has been designed to provide the best notice practicable, consistent with the methods and tools employed in other court-approved notice programs. The FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* considers a notice plan with a 70%–95% reach effective.[3]

18. The proposed Notice Program consists of the following components:

    a. Direct notice to all *Moehrl* Litigation Class Members for whom the Defendants provide contact information or for whom contact information is located via other means (e.g. third-party data).

    b. An established shared website that will provide *Moehrl* Litigation Class Members and Nationwide Settlement Class Members access to information about both the Nationwide Settlements with Anywhere and RE/MAX and this ongoing Litigation against non-settling defendants, as well as copies of relevant case documentation.

---

[3] Reach is the percentage of a specific population group exposed to a media vehicle or a combination of media vehicles containing a notice at least once over the course of a campaign. Reach factors out duplication, representing total different net persons.

c.      An established shared toll-free telephone number with an Interactive Voice Recording system ("IVR") that Litigation and Settlement Class Members may call to obtain more information about both this Litigation and the Nationwide Settlements, and request copies of the long form notice for each matter. The IVR recording will be comprehensive; however, if operators become desired, JND will accommodate.

d.      The creation of a QR Code (a matrix barcode) that will allow quick and direct access to the shared website through a mobile device. Litigation and Settlement Class Members will be able to access information about both this Litigation and the Nationwide Settlements through the QR Code.

e.      A robust nationwide media effort that will direct Settlement and Litigation Class Members to the shared website, allowing access to information about both this Litigation and the Nationwide Settlements. The media effort will target members of the Settlement Class, which includes all members of the *Moehrl* Litigation Class. The campaign includes a targeted digital effort with the leading digital network (Google Display Network – "GDN"), the top social media platform (Facebook), and a respected programmatic partner (OMTD); a notice placement in a popular consumer magazine (*Better Homes & Gardens*); and additional efforts including an internet search campaign, the distribution of a national press release, and sponsorships with popular class action websites (TopClassActions.com and ClassAction.org).

19.     When approving the media effort proposed for the Nationwide Settlements, United States District Judge Stephen R. Bough stated in his order dated November 20, 2023: "*JND Legal Administration ("JND") is hereby APPOINTED as the Settlement Administrator to implement the*

*terms of the proposed Settlement Agreement. The Settlement Administrator is authorized to implement the parties' Class Notice Plan as outlined in the Declaration of Jennifer M. Keough.*"[4]

20.     Based on my experience in developing and implementing class notice programs, I believe the proposed Notice Program will meet, and in fact exceed, the standards for providing the best practicable notice in class action litigation.

21.     Each component of the proposed Notice Program is described in more detail in the sections below.

## DIRECT NOTICE

22.     An adequate notice plan needs to satisfy "due process" when reaching a class. The United States Supreme Court, in *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974), stated that direct notice (when possible) is the preferred method for reaching a class. In addition, Rule 23(c)(2) of the Federal Rules of Civil Procedure provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."

23.     As a result, at my direction, JND staff will effectuate direct individual notice to all members of the Litigation Class for whom Defendants provide contact information or for whom we are able to obtain such information through other means. We have also researched what information might be available from third parties to assist in effectuating direct notice.

24.     After receiving potential Litigation Class Member contact data, JND will promptly load the information into a secure, case-specific database for this matter. JND employs robust administrative, technical, and physical controls to protect confidential Litigation Class

---

[4] *Burnett, et al. v. The National Association of Realtors, et al.*, Case No. 4:19-cv-00332-SRB (W.D. Missouri) (Dkt. 1321, ¶ 9).

Member data and safeguard against the risk of loss, misuse, unauthorized access, disclosure, or modification of the data.

25.     Once the data is loaded, JND will scrub the data and utilize a number of advanced level research tools to ensure that it has the most up-to-date email addresses available. This includes performing what is called an email append process with relevant credit bureaus. The email append is, in effect, a reverse look-up so that we can derive an email address for those Litigation Class Members for whom we only have U.S. mail addresses. We will also identify any undeliverable addresses or duplicate records from the data and assign a unique identification number to each Litigation Class Member to identify them throughout the administration process.  A Litigation mail Notice will be sent to all Litigation Class Members for whom an email address can be located.

26.     Courts have approved notice programs in which email is the primary method of delivering notice to class members.

27.     For those Litigation Class Members where an email address is unavailable or where the email bounces back and cannot be ultimately delivered, JND proposes sending a Litigation Postcard Notice.

28.     Both the Litigation Email Notice and the Litigation Postcard Notice will be modeled off of the Litigation Long Form Notice and will identify and direct Litigation Class Members to an interactive shared website where they can review key documents related to the Nationwide Settlements and this Litigation.

29.     Both the Litigation Email Notice and the Litigation Postcard Notice will include a Spanish-language tag that will direct Spanish-speaking Litigation Class Members to the shared website for a notice in Spanish.

30.     Importantly, whether a Litigation Class Member is sent direct notice by email or postcard, the notice will satisfy the Federal Rules of Civil Procedure and due process.

**Email Notice**

31.     Prior to sending the Litigation Email Notice, JND will evaluate the email for potential spam language to improve deliverability. This process includes running the email through spam testing software, DKIM[5] for sender identification and authorization, and hostname evaluation. Additionally, we will check the send domain against the 25 most common IPv4 blacklists.[6]

32.     JND uses industry-leading email solutions to achieve the most efficient email notification campaigns. Our Data Team is staffed with email experts and software solution teams to conform each notice program to the particulars of the case. JND provides individualized support during the program and manages our sender reputation with the Internet Service Providers ("ISPs"). For each of our programs, we analyze the program's data and monitor the ongoing effectiveness of the notification campaign, adjusting the campaign as needed. These actions ensure the highest possible deliverability of the email campaign so that more potential Litigation Class Members receive notice.

33.     For each email campaign, including this one, JND will utilize a verification program to eliminate invalid email and spam traps that would otherwise negatively impact deliverability. We will then clean the list of email addresses for formatting and incomplete addresses to further identify all invalid email addresses.

---

[5] DomainKeys Identified Mail, or DKIM, is a technical standard that helps protect email senders and recipients from spam, spoofing, and phishing.

[6] IPv4 address blacklisting is a common practice. To ensure that the addresses being used are not blacklisted, a verification is performed against well-known IP blacklist databases. A blacklisted address affects the reputation of a company and could cause an acquired IP address to be blocked.

34.     To ensure readability of the email, our team will review and format the body content into a structure that is applicable to all email platforms, allowing the email to pass easily to the recipient. Before launching the email campaign, we will send a test email to multiple ISPs and open and test the email on multiple devices (iPhones, Android phones, desktop computers, tablets, etc.) to ensure the email opens as expected. A copy of the email is attached as Exhibit B.

35.     Additionally, JND will include an "unsubscribe" link at the bottom of the email to allow Litigation Class Members to opt out of any additional email notices from JND. This step is essential to maintain JND's good reputation among the ISPs and reduce complaints relating to the email campaign.

36.     Emails that are returned to JND are generally characterized as either "Hard Bounces" or "Soft Bounces." A Hard Bounce occurs when the ISP rejects the email due to a permanent reason such as the email account is no longer active. A Soft Bounce occurs when the email is rejected for temporary reasons, such as the recipient's email address inbox is full.

37.     When an email is returned due to a Soft Bounce, JND attempts to re-send the email notice up to three additional times in an attempt to secure deliverability. If the Soft Bounce email continues to be returned after the third re-send, the email is considered undeliverable. Emails that result in a Hard Bounce are also considered undeliverable.

**Postcard Notice**

38.     JND will send a color Litigation Postcard Notice to known Litigation Class Members for whom an email address is not available or for whom the Litigation Email Notice was deemed ultimately undeliverable. In my experience, the use of color will help differentiate the postcard from junk mail. A copy of the Litigation Postcard Notice is attached as exhibit C.

39.     Prior to sending the Litigation Postcard Notice, JND staff will run the mailing addresses through the United States Postal Service ("USPS") National Change of Address ("NCOA") database.[7] At my direction, JND staff will track all Litigation Postcard Notices returned undeliverable by the USPS and will promptly re-mail Litigation Postcard Notices that are returned with a forwarding address. Also, with my oversight, JND staff will take reasonable efforts to research and determine if it is possible to reach a Litigation Class Member for whom the Litigation Postcard Notice is returned without a forwarding address by mailing to a more recent mailing address at which the potential Litigation Class Member may be reached.

## NATIONWIDE MEDIA NOTICE

40.     In addition to the direct notice effort for the Litigation Class, JND will be effectuating a robust media campaign for the Nationwide Settlements and this Litigation, as further described below. This campaign will direct individuals to visit the shared website where information about both the Nationwide Settlements and this Litigation will be provided. All those eligible to participate in the Litigation Class are also eligible to participate in the Settlement Class

41.     The nationwide media campaign consists of a digital effort with GDN, Facebook, and OMTD, as well as a print notice placement in a popular consumer magazine (e.g., *Better Homes & Gardens*). The campaign is targeted to all members of the Nationwide Settlement Class, which includes all members of the *Moehrl* Litigation Class. In other words, Litigation Class Members constitute a subset of those targeted by the nationwide media campaign.

---

[7] The NCOA database is the official USPS technology product that makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream. This product is an effective tool to update address changes when a person has completed a change of address form with the USPS. The address information is maintained on the database for 48 months.

**Media Resources**

42.     JND utilizes the most reputable advertising media research tools to ensure that the best media is selected and that our reach calculations can withstand the most critical review and challenge. The media research tools we utilized in our analysis and will use to implement the nationwide media campaign include MRI, ComScore, Google Active View, Google Analytics, Google Tag Manager, and The Trade Desk.

43.     MRI data was used to analyze the demographics and media usage of potential Litigation and Settlement Class Members, as well as to determine the reach of our proposed print effort. Understanding who we are trying to reach is key in determining how best to reach them. MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media through probabilistic and address-based sampling. MRI is the leading producer of media and consumer research in the United States.

44.     JND used Comscore data to not only analyze where potential Litigation and Settlement Class Members are spending time on the internet, but more importantly, for calculating the reach of our proposed digital effort. Comscore's multi-reach platform allows us to analyze unduplicated audiences (net reach) across multiple platforms (e.g., Google, Facebook) and devices (desktop and mobile). Through the platform, we were able to assess the efficiency and effectiveness of our proposed media plan by reducing waste and improving campaign performance across all devices.

45.     At the time of implementation, our digital experts will verify and monitor our digital placements. Google Active View, which is accredited by the Media Rating Council (MRC), will be used to measure viewable impressions across the web and in apps. Google Active View

supports the Interactive Advertising Bureau (IAB) and MRC definition of viewability—a minimum of 50% of the ad is in view for a minimum of one second for display ads. In addition, over a hundred complex algorithms will be used to spot bad traffic as it happens to prevent invalid clicks, impressions, views, or interactions. These efforts prevent impressions from being served and counted when they have not been loaded onto a person's screen.

46.     JND will place a Google Analytics pixel across all case landing pages to monitor and track website traffic. Through the use of Google Analytics and custom UTM codes, our digital experts will be able to monitor the number of website visits, average time spent per visit, and the number of pages visited per session. Data will be broken down by source, or referring website, in order to make optimizations based on media placements that are driving the longest time on site and the largest number of claim form submissions. Demographic data such as age and gender, will be reviewed and optimized towards those groups who prove to be the most responsive and interactive with the shared website.

47.     JND will also place a 'Container Tag' across all case landing pages using Google Tag Manager, a tag management system (TMS) that allows advertisers to place and update measurement codes and code fragments on a landing page from a single source. With these codes placed within the container, website data is passed back to advertising platforms (such as Meta, Google, The Trade Desk), allowing machine learning to take place, optimizing towards placements and audiences that are driving site traffic and claim form submissions. All data collected through Google Tag Manager adheres to Google's Privacy Policies and Principles. No personally identifiable information (PII) is collected.

48.     JND places media through The Trade Desk, the leading Demand Side Platform (DSP) that champions transparency, as well as industry-wide collaboration and innovation. The

Trade Desk provides JND the same buying power/access to inventory as the biggest Fortune 100 companies. JND has access to nearly any website's banner inventory, streaming video, streaming audio and OTT (over-the-top) inventory. Through The Trade Desk's countless partnerships with data providers, JND also has access to leading technology to target and reach audiences based on criteria such as recent/frequent browsing habits, purchase data, recent and frequent geo locations, and more.

**Target Analysis**

49.     JND analyzed the demographics and media usage of potential Litigation and Settlement Class Members to determine how best to reach them. MRI data is available for adults 18 years of age or older (Adults 18+) who used a real estate agent to sell a property ("Home Sellers").

50.     Among other things, MRI data indicated that Homeowners are active internet users, with 98% using the internet and 67% visiting Facebook in a 30-day period. In terms of devices, 91% use their cellphone or smartphone to access the internet.

51.     JND considered these and other key demographics and media usage when designing our media effort and selecting targets.

**Digital Effort**

52.     The proposed digital effort consists of placements with GDN, the leading digital network; Facebook, the top social media platform; and OMTD, a respected programmatic partner. A total of 311 million digital impressions will be served among adults 35 years of age or older ("Adults 35+") with focused targeting included.[8]

53.     To concentrate our efforts on potential Litigation and Settlement Class Members, a

---

[8] Impressions or Exposures are the total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice. Impressions are a gross or cumulative number that may include the same person more than once. As a result, impressions can and often do exceed the population size.

portion of the GDN impressions will specifically target homeowners and/or users who have searched on Google for key terms related to this matter, such as Burnett, Moehrl, Sitzer, NAR, National Association of Realtors, Realogy, MLSs, RE/MAX, RE/MAX Settlement, or Anywhere Real Estate; people who browse websites similar to www.anywhere.re or www.remax.com; or people who use apps similar to RE/MAX Real Estate. A portion of the Facebook impressions will specifically target users who recently moved or expressed an interest in homeowner association, moving company, real estate, and/or RE/MAX. All of the programmatic impressions on OMTD will target users based on "length of residency" being between 3–10 years and those who are likely homeowners or anyone who sold a house one or more years ago to narrow our focus on potential Litigation and Settlement Class Members.

54.     Multiple targeting strategies will also be used to increase the effectiveness of our digital effort, including the following techniques:

a.      Predictive Targeting (GDN only) uses multiple data points (search queries, sites visited, and digital behavior trends) to make inferences regarding future behavior/performance for a given campaign.

b.      Audience Targeting optimizes efforts based on demographics, behavior, and interests of potential Litigation and Settlement Class Members.

c.      Geotargeting optimizes efforts based on the location of potential Litigation and Settlement Class Members.

d.      Keyword Targeting allows targeting to users based on their search queries, recent social media posts or engagement with websites or posts that feature specific keywords.

e.      Machine Learning will be used across all digital media platforms in order

to optimize campaigns in real time based on placements, times of day and sub-targets within the larger demo and geo target that are likely to drive claim form submissions.

55.     The digital activity will be served across all devices (desktop, laptop, tablet and mobile), with a heavy emphasis on mobile devices. The digital ads will directly link to the shared website, where Litigation and Settlement Class Members may access more information about this Litigation and the Nationwide Settlements, including the long form notice for each matter. A copy of the Long Form Notice for this Litigation is attached as Exhibit D.

**Print Effort**

56.     Print media will include a notice placement in *Better Homes & Gardens* magazine, a highly read consumer lifestyle magazine. *Better Homes & Gardens* publishes monthly with a circulation of 3.1 million and a readership of 18 million. It reaches 11% of Adults 35+ and extends reach to older homeowners who may not frequent the internet. A QR code will appear in the print ad for easy, direct access to the shared website through mobile devices.

**Additional Efforts**

57.     JND will undertake additional efforts to further disseminate notice to Litigation and Settlement Class Members, including an internet search campaign, a national press release, and sponsorships with popular class action websites.

58.     Given that web browsers frequently default to a search engine page, search engines are a common source to get to a specific website (i.e., as opposed to typing the desired URL in the navigation bar). As a result, JND proposes a Google search effort to assist interested Litigation and Settlement Class Members in finding the shared website. The Keyword List utilized with GDN will be applied and expanded to include additional keywords based on content on the shared website landing page, the legal names of the cases, as well as other case information. These

keywords are words/phrases that are bid on when they match the search term (or a variation of the search term) a person types into their Google search bar. When a search term matches to a keyword or phrase, a Responsive Search Ad (RSA) may be served, generating a tailored message relevant to the search term. RSAs utilize machine learning to pair various combinations of ad copy (headlines and descriptions) based on which groupings have worked well previously (i.e., produced a strong CTR/conversion performance), and what the platform anticipates will generate the ideal results from the unique searcher. When the RSA is clicked on, the visitor will be redirected to the shared website where they can get more information.

59.     To further assist in getting "word of mouth" out about this Litigation and the Nationwide Settlements, JND proposes the distribution of a press release at the start of the campaign to over 11,000 media outlets nationwide.

60.     Certain class action websites are frequented for updates on class action lawsuits. These sites, help drive potential class members to the case specific website. As a result, we propose sponsorship opportunities with TopClassActions.com and ClassAction.org.

## WEBSITE

61.     A shared informational, interactive website will be developed at my direction by JND staff so that potential Litigation and Settlement Class Members can obtain more information about their rights and options under this Litigation and the Nationwide Settlements. The website, www.RealEstateCommissionLitigation.com, will include separate tabs/webpages for this Litigation and the Nationwide Settlements. The webpages will have an easy-to-navigate design and will be formatted to emphasize important information and deadlines. Additionally, both webpages will contain, among other things, a Frequently Asked Questions section, a list of Important Dates and Important Documents, the ability to download a long form notice in both

English and Spanish for the relevant matter, and information about how Litigation and Settlement Class Members can access the toll-free telephone number.

62. The shared website will be mobile-enabled and ADA compliant, and will undergo significant penetration testing to make sure that the site cannot be breached as well as load testing to make sure that the site will be able to accommodate the expected traffic from a class this large. It will also be designed to maximize search engine optimization through Google and other search engines. Keywords and natural language search terms will be included in the site's metadata to maximize search engine rankings.

## TOLL-FREE NUMBER

63. JND will establish and maintain a shared toll-free telephone number with an automated IVR, available 24 hours a day, seven days a week, which will provide information related to this Litigation and the Nationwide Settlements. Litigation and Settlement Class Members will have the ability to request and receive notices by mail.

64. The shared website and IVR recordings will be designed to be comprehensive, answering all common questions; however, if operators become desired, JND will accommodate that need by providing an option to speak with a Customer Service Representative. JND has multiple call center sites, all in the United States, and can ensure enough staffing and redundancy to handle any volume of calls we receive on this matter.

## DEDICATED POST OFFICE BOXES

65. JND will establish two separate United States Post Office Boxes: one dedicated for Litigation and Settlement Class Members to submit letters, inquiries, and claim forms; and one dedicated strictly to receive exclusion requests for both matters.

## QR CODE

66.     JND will create a QR Code (a matrix barcode) that will allow quick and direct access to the shared website through mobile devices. The QR Code is included, where practicable, in printed notice documents (i.e., the postcard, and print publication notices).

## REACH

67.     The nationwide media effort alone will reach at least 70% of potential Litigation and Settlement Class Members. The extensive direct notice effort and the additional efforts, including an internet search campaign, the distribution of a press release, and class action sponsorships, will further extend reach. The proposed Notice Program is similar to and, indeed, more robust than that of other court approved programs and meets the high reach standard set forth by the FJC.

## NOTICE DESIGN AND CONTENT

68.     I have reviewed and provided input to the parties on the form and content for each of the attached notice document exhibits. Based on my experience designing court-approved class notice programs, in my opinion, each of these notice documents complies with Rule 23, the Due Process Clause of the United States Constitution, and any other applicable statute, law, or rule, as well as the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*.

69.     Each of these notice documents contains easy-to-read summaries of the Litigation and the options that are available to Litigation Class Members. Additionally, the notice documents provide instructions on how to obtain more information about the action and the Nationwide Settlements.

70.     The Litigation Long Form Notice will be posted on the Litigation section of the shared website and will be available by mail if requested. It provides details regarding, among other things, the nature of the action, who is in the Litigation Class, general descriptions of the claims asserted, references to the defenses of the Defendants; and the right of Litigation Class Members to obtain counsel or exclude themselves from the Litigation. The Litigation Long Form Notice also provides, inter alia, details on how and when to opt-out and, how and where to seek additional information.

71.     The Litigation Long Form Notice was used as the basis to create the summary forms of notice: Litigation Email Notice and Litigation Postcard Notice. These short-form notices provide, among other things, a summary of what the lawsuit is about, who is affected, how to opt out, and how and where to obtain more information.

72.     To the extent that some class members may speak Spanish as their primary language, the print notice documents include a subheading in Spanish at the top directing Spanish speaking Litigation Class Members to visit the Litigation section of the shared website for a notice in Spanish.

## OPT-OUTS

73.     Any Litigation Class Member may opt out of the Damages Class. To do so, Litigation Class Members must submit a written request to JND stating their intent to exclude themselves from the Damages Class. The exclusion request must include the Litigation Class Member's present name and address; a statement that they wish to be excluded from the *Moehrl, et al. v. National Association of Realtors, et al.* Litigation Class; and their handwritten signature. If the Litigation Class Member is deceased or incapacitated, the signature of the legally authorized representative of the Litigation Class Member must be included.

## **CONCLUSION**

74.　　In my opinion, the Notice Program provides the best notice practicable under the circumstances, is consistent with the requirements of Rule 23, and is consistent with other similar court-approved best notice practicable notice programs. The Notice Program is designed to reach as many Litigation Class Members as possible and inform them about the action and their rights and options, and provide them with the opportunity to review a plain language notice with the ability to easily take the next step and learn more about the action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 19, 2024, in Seattle, Washington.

_____
JENNIFER M. KEOUGH

# EXHIBIT A

# JENNIFER KEOUGH

CHIEF EXECUTIVE OFFICER AND CO-FOUNDER





## INTRODUCTION

Jennifer Keough is Chief Executive Officer and Co-Founder of JND Legal Administration ("JND"). She is the *only* judicially recognized expert in all facets of class action administration - from notice through distribution. With more than 20 years of legal experience, Ms. Keough has directly worked on hundreds of high-profile and complex administration engagements, including such landmark matters as the $20 billion Gulf Coast Claims Facility, $10 billion BP Deepwater Horizon Settlement, $3.4 billion Cobell Indian Trust Settlement (the largest U.S. government class action settlement ever), $3.05 billion VisaCheck/MasterMoney Antitrust Settlement, $2.67 billion Blue Cross Blue Shield antitrust settlement, $1.5 billion Mercedes-Benz Emissions Settlements, $1.3 billion Equifax Data Breach Settlement, $1 billion Stryker Modular Hip Settlement, $600 million Engle Smokers Trust Fund, $240 million Signet Securities Settlement, $215 million USC Student Health Center Settlement, and countless other high-profile matters.

Ms. Keough has been appointed notice expert in many notable cases and has testified on settlement matters in numerous courts and before the Senate Committee for Indian Affairs. She was appointed in 2022 as a Board member of the RAND Corporation's "Kenneth R. Feinberg Center for Catastrophic Risk Management and

Compensation (the Feinberg Center)." Among the Feinberg Center's missions is to identify and promote laws, programs, and institutions that reduce the adverse social and economic effects of natural and manmade catastrophes by:

- Improving incentives to reduce future losses

- Providing just compensation to those suffering losses while appropriately allocating liability to responsible parties

- Helping affected individuals, businesses, and communities to recover quickly

- Avoiding unnecessary legal, administrative, and other transaction costs

Ms. Keough is honored to be included on the Board, which consists of only 18 people, three of whom are federal district court judges. She is the only person from the legal administration industry on the Board.

Ms. Keough is also the only female CEO/Co-Founder in the field. She oversees more than 200 employees at JND's Seattle headquarters, as well as other office locations around the country. She manages all aspects of JND's class action business from day-to-day processes to high-level strategies. Her comprehensive expertise with noticing, claims processing, Systems and IT work, call center, data analytics, recovery calculations, check distribution, and reporting gained her the reputation with attorneys on both sides of the aisle as the most dependable consultant for all legal administration needs. Ms. Keough also applies her knowledge and skills to other divisions of JND, including mass tort, lien resolution, government services, and eDiscovery. Given her extensive experience, Ms. Keough is often called upon to consult with parties prior to settlement, is frequently invited to speak on class action issues and has authored numerous articles in her multiple areas of expertise.

Ms. Keough launched JND with her partners in early 2016. Just a few months later she was named as the Independent Claims Administrator ("ICA") in a complex BP Solar Panel Settlement. Ms. Keough also started receiving numerous appointments as notice expert and in 2017 was chosen to oversee a restitution program in Canada where every adult in the country was eligible to participate. Also, in 2017,

Ms. Keough was named a female entrepreneur of the year finalist in the 14th annual Stevie Awards for Women in Business. In 2015 and 2017, she was recognized as a "Woman Worth Watching" by Profiles in Diversity Journal.

Since JND's launch, Ms. Keough has also been featured in numerous news sources. In 2019, she was highlighted in an Authority Magazine article, "5 Things I wish someone told me before I became a CEO," and a Moneyish article, "This is exactly how rampant 'imposter syndrome' is in the workforce." In 2018, she was featured in several Fierce CEO articles, "JND Legal Administration CEO Jennifer Keough aids law firms in complicated settlements," "Special Report—Women CEOs offer advice on defying preconceptions and blazing a trail to the top," and "Companies stand out with organizational excellence," as well as a Puget Sound Business Journal article, "JND Legal CEO Jennifer Keough handles law firms' big business." In 2013, Ms. Keough appeared in a CNN article, "What Changes with Women in the Boardroom."

Prior to forming JND, Ms. Keough was Chief Operating Officer and Executive Vice President for one of the then largest legal administration firms in the country, where she oversaw operations in several offices across the country and was responsible for all large and critical projects. Previously, Ms. Keough worked as a class action business analyst at Perkins Coie, one of the country's premier defense firms, where she managed complex class action settlements and remediation programs, including the selection, retention, and supervision of legal administration firms. While at Perkins she managed, among other matters, the administration of over $100 million in the claims-made Weyerhaeuser siding case, one of the largest building product class action settlements ever. In her role, she established a reputation as being fair in her ability to see both sides of a settlement program.

Ms. Keough earned her J.D. from Seattle University. She graduated from Seattle University with a B.A. and M.S.F. with honors.

# LANDMARK CASES

Jennifer Keough has the distinction of personally overseeing the administration of more large class action programs than any other notice expert in the field. Some of her largest engagements include the following:

## 1. *Allagas v. BP Solar Int'l, Inc.*

**No. 14-cv-00560 (N.D. Cal.)**

Ms. Keough was appointed by the United States District Court for the Northern District of California as the Independent Claims Administrator ("ICA") supervising the notice and administration of this complex settlement involving inspection, remediation, and replacement of solar panels on homes and businesses throughout California and other parts of the United States. Ms. Keough and her team devised the administration protocol and built a network of inspectors and contractors to perform the various inspections and other work needed to assist claimants. She also built a program that included a team of operators to answer claimant questions, a fully interactive dedicated website with online claim filing capability, and a team trained in the very complex intricacies of solar panel mechanisms. In her role as ICA, Ms. Keough regularly reported to the parties and the Court regarding the progress of the case's administration. In addition to her role as ICA, Ms. Keough also acted as mediator for those claimants who opted out of the settlement to pursue their claims individually against BP. Honorable Susan Illston, recognized the complexity of the settlement when appointing Ms. Keough the ICA (December 22, 2016):

> *The complexity, expense and likely duration of the litigation favors the Settlement, which provides meaningful and substantial benefits on a much shorter time frame than otherwise possible and avoids risk to class certification and the Class's case on the merits…The Court appoints Jennifer Keough of JND Legal Administration to serve as the Independent Claims Administrator ("ICA") as provided under the Settlement.*

## 2. *Chester v. The TJX Cos.*

**No. 15-cv-01437 (C.D. Cal.)**

As the notice expert, Ms. Keough proposed a multi-faceted notice plan designed to reach over eight million class members. Where class member information was available, direct notice was sent via email and via postcard when an email was returned as undeliverable or for which there was no email address provided. Additionally, to reach the unknown class members, Ms. Keough's plan included a summary notice in eight publications directed toward the California class and a tear-away notice posted in all TJ Maxx locations in California. The notice effort also included an informational and interactive website with online claim filing and a toll-free number that provided information 24 hours a day. Additionally, associates were available to answer class member questions in both English and Spanish during business hours. Honorable Otis D. Wright, II approved the plan (May 14, 2018):

> ...the Court finds and determines that the Notice to Class Members was complete and constitutionally sound, because individual notices were mailed and/or emailed to all Class Members whose identities and addresses are reasonably known to the Parties, and Notice was published in accordance with this Court's Preliminary Approval Order, and such notice was the best notice practicable.

## 3. *Cobell v. Salazar*

**No. 96 CV 1285 (TFH) (D. D.C.)**

As part of the largest government class action settlement in our nation's history, Ms. Keough worked with the U.S. Government to implement the administration program responsible for identifying and providing notice to the two distinct but overlapping settlement classes. As part of the notice outreach program, Ms. Keough participated in multiple town hall meetings held at Indian reservations located across the country. Due to the efforts of the outreach program, over 80% of all class members were provided notice. Additionally, Ms. Keough played a role in creating the processes for evaluating claims and ensuring the correct distributions were made. Under Ms. Keough's supervision,

the processing team processed over 480,000 claims forms to determine eligibility. Less than one half of one percent of all claim determinations made by the processing team were appealed. Ms. Keough was called upon to testify before the Senate Committee for Indian Affairs, where Senator Jon Tester of Montana praised her work in connection with notice efforts to the American Indian community when he stated: "Oh, wow. Okay... the administrator has done a good job, as your testimony has indicated, [discovering] 80 percent of the whereabouts of the unknown class members." Additionally, when evaluating the Notice Program, Judge Thomas F. Hogan concluded (July 27, 2011):

> ...that adequate notice of the Settlement has been provided to members of the Historical Accounting Class and to members of the Trust Administration Class.... Notice met and, in many cases, exceeded the requirements of F.R.C.P. 23(c)(2) for classes certified under F.R.C.P. 23(b)(1), (b)(2) and (b)(3). The best notice practicable has been provided class members, including individual notice where members could be identified through reasonable effort. The contents of that notice are stated in plain, easily understood language and satisfy all requirements of F.R.C.P. 23(c)(2)(B).

## 4.   *FTC v. Reckitt Benckiser Grp. PLC*

### No. 19CV00028 (W.D. Va.)

Ms. Keough and her team designed a multi-faceted notice program for this $50 million settlement resolving charges by the FTC that Reckitt Benckiser Group PLC violated antitrust laws by thwarting lower-priced generic competition to its branded drug Suboxone.

The plan reached 80% of potential claimants nationwide, and a more narrowed effort extended reach to specific areas and targets. The nationwide effort utilized a mix of digital, print, and radio broadcast through Sirius XM. Extended efforts included local radio in areas defined as key opioid markets and an outreach effort to medical professionals approved to prescribe Suboxone in the U.S., as well as to substance abuse centers; drug abuse and addiction info and treatment centers; and addiction treatment centers nationwide.

### 5. Gulf Coast Claims Facility (GCCF)

The GCCF was one of the largest claims processing facilities in U.S. history and was responsible for resolving the claims of both individuals and businesses relating to the Deepwater Horizon oil spill. The GCCF, which Ms. Keough helped develop, processed over one million claims and distributed more than $6 billion within the first year-and-a-half of its existence. As part of the GCCF, Ms. Keough and her team coordinated a large notice outreach program which included publication in multiple journals and magazines in the Gulf Coast area. She also established a call center staffed by individuals fluent in Spanish, Vietnamese, Laotian, Khmer, French, and Croatian.

### 6. Health Republic Ins. Co. v. United States

**No. 16-259C (F.C.C.)**

For this $1.9 billion settlement, Ms. Keough and her team used a tailored and effective approach of notifying class members via Federal Express mail and email. Opt-in notice packets were sent via Federal Express to each potential class member, as well as the respective CEO, CFO, General Counsel, and person responsible for risk corridors receivables, when known. A Federal Express return label was also provided for opt-in returns. Notice Packets were also sent via electronic-mail. The informational and interactive case-specific website posted the notices and other important Court documents and allowed potential class members to file their opt-in form electronically.

### 7. In re Air Cargo Shipping Servs. Antitrust Litig.

**No. 06-md-1775 (JG) (VVP) (E.D.N.Y.)**

This antitrust settlement involved five separate settlements. As a result, many class members were affected by more than one of the settlements, Ms. Keough constructed the notice and claims programs for each settlement in a manner which allowed affected class members the ability to compare the claims data. Each claims administration program included claims processing, review of supporting evidence, and a deficiency notification process. The deficiency

notification process included mailing of deficiency letters, making follow-up phone calls, and sending emails to class members to help them complete their claim. To ensure accuracy throughout the claims process for each of the settlements, Ms. Keough created a process which audited many of the claims that were eligible for payment.

## 8. *In re Blue Cross Blue Shield Antitrust Litig.*

**Master File No.: 13-CV-20000-RDP (N.D. Ala.)**

JND was appointed as the notice and claims administrator in the $2.67 billion Blue Cross Blue Shield proposed settlement. To notify class members, we mailed over 100 million postcard notices, sent hundreds of millions of email notices and reminders, and placed notice via print, television, radio, internet, and more. The call center was staffed with 250 agents during the peak of the notice program. More than eight million claims were received. In approving the notice plan designed by Jennifer Keough and her team, United States District Court Judge R. David Proctor, wrote:

> *After a competitive bidding process, Settlement Class Counsel retained JND Legal Administration LLC ("JND") to serve as Notice and Claims Administrator for the settlement. JND has a proven track record and extensive experience in large, complex matters... JND has prepared a customized Notice Plan in this case. The Notice Plan was designed to provide the best notice practicable, consistent with the latest methods and tools employed in the industry and approved by other courts...The court finds that the proposed Notice Plan is appropriate in both form and content and is due to be approved.*

## 9. *In re Classmates.com*

**No. C09-45RAJ (W.D. Wash.)**

Ms. Keough managed a team that provided email notice to over 50 million users with an estimated success rate of 89%. When an email was returned as undeliverable, it was re-sent up to three times in an attempt to provide notice to the entire class. Additionally, Ms. Keough implemented a claims administration

program which received over 699,000 claim forms and maintained three email addresses in which to receive objections, exclusions, and claim form requests. The Court approved the program when it stated:

> The Court finds that the form of electronic notice... together with the published notice in the Wall Street Journal, was the best practicable notice under the circumstances and was as likely as any other form of notice to apprise potential Settlement Class members of the Settlement Agreement and their rights to opt out and to object. The Court further finds that such notice was reasonable, that it constitutes adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of Due Process...

## 10. *In re Equifax Inc. Customer Data Sec. Breach Litig.*

**No. 17-md-2800-TWT (N.D. Ga.)**

JND was appointed settlement administrator, under Ms. Keough's direction, for this complex data breach settlement valued at $1.3 billion with a class of 147 million individuals nationwide. Ms. Keough and her team oversaw all aspects of claims administration, including the development of the case website which provided notice in seven languages and allowed for online claim submissions. In the first week alone, over 10 million claims were filed. Overall, the website received more than 200 million hits and the Contact Center handled well over 100,000 operator calls. Ms. Keough and her team also worked closely with the Notice Provider to ensure that each element of the media campaign was executed in the time and manner as set forth in the Notice Plan.

Approving the settlement on January 13, 2020, Judge Thomas W. Thrash, Jr. acknowledged JND's outstanding efforts:

> JND transmitted the initial email notice to 104,815,404 million class members beginning on August 7, 2019. (App. 4, ¶¶ 53-54). JND later sent a supplemental email notice to the 91,167,239 class members who had not yet opted out, filed a claim, or unsubscribed from the initial email notice. (Id., ¶¶ 55-56). The notice plan also provides for JND to perform two additional supplemental email notice campaigns. (Id., ¶ 57)...JND has also developed

*specialized tools to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). As a result, class members have the opportunity to file a claim easily and have that claim adjudicated fairly and efficiently…The claims administrator, JND, is highly experienced in administering large class action settlements and judgments, and it has detailed the efforts it has made in administering the settlement, facilitating claims, and ensuring those claims are properly and efficiently handled. (App. 4, ¶¶ 4, 21; see also Doc. 739-6, ¶¶ 2-10). Among other things, JND has developed protocols and a database to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). Additionally, JND has the capacity to handle class member inquiries and claims of this magnitude. (App. 4, ¶¶ 5, 42). This factor, therefore, supports approving the relief provided by this settlement.*

## 11. *In re General Motors LLC Ignition Switch Litig.*

No. 2543 (MDL) (S.D.N.Y.)

<u>GM Ignition Switch Compensation Claims Resolution Facility</u>

Ms. Keough oversaw the creation of a Claims Facility for the submission of injury claims allegedly resulting from the faulty ignition switch. The Claims Facility worked with experts when evaluating the claim forms submitted. First, the Claims Facility reviewed thousands of pages of police reports, medical documentation, and pictures to determine whether a claim met the threshold standards of an eligible claim for further review by the expert. Second, the Claims Facility would inform the expert that a claim was ready for its review. Ms. Keough constructed a database which allowed for a seamless transfer of claim forms and supporting documentation to the expert for further review.

## 12. *In re General Motors LLC Ignition Switch Litig.*

No. 2543 (MDL) (S.D.N.Y.)

Ms. Keough was appointed the class action settlement administrator for the $120 million GM Ignition Switch settlement. On April 27, 2020, Honorable

Jesse M. Furman approved the notice program designed by Ms. Keough and her team and the notice documents they drafted with the parties:

> The Court further finds that the Class Notice informs Class Members of the Settlement in a reasonable manner under Federal Rule of Civil Procedure 23(e)(1)(B) because it fairly apprises the prospective Class Members of the terms of the proposed Settlement and of the options that are open to them in connection with the proceedings.

> The Court therefore approves the proposed Class Notice plan, and hereby directs that such notice be disseminated to Class Members in the manner set forth in the Settlement Agreement and described in the Declaration of the Class Action Settlement Administrator...

Under Ms. Keough's direction, JND mailed notice to nearly 30 million potential class members.

On December 18, 2020, Honorable Jesse M. Furman granted final approval:

> The Court confirms the appointment of Jennifer Keough of JND Legal Administration ("JND") as Class Action Settlement Administrator and directs Ms. Keough to carry out all duties and responsibilities of the Class Action Settlement Administrator as specified in the Settlement Agreement and herein...The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rules of Civil Procedure 23(c)(2)(b) and 23(e), and fully comply with all laws, including the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.

### 13. *In re Mercedes-Benz Emissions Litig.*

No. 16-cv-881 (D.N.J.)

JND Legal Administration was appointed as the Settlement Administrator in this $1.5 billion settlement wherein Daimler AG and its subsidiary Mercedes-Benz USA reached an agreement to settle a consumer class action alleging that the

automotive companies unlawfully misled consumers into purchasing certain diesel type vehicles by misrepresenting the environmental impact of these vehicles during on-road driving. As part of its appointment, the Court approved Jennifer Keough's proposed notice plan and authorized JND Legal Administration to provide notice and claims administration services.

> The Court finds that the content, format, and method of disseminating notice, as set forth in the Motion, Declaration of JND Legal Administration, the Class Action Agreement, and the proposed Long Form Notice, Short Form Notice, and Supplemental Notice of Class Benefits (collectively, the "Class Notice Documents") – including direct First Class mailed notice to all known members of the Class deposited in the mail within the later of (a) 15 business days of the Preliminary Approval Order; or (b) 15 business days after a federal district court enters the US-CA Consent Decree – is the best notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B). The Court approves such notice, and hereby directs that such notice be disseminated in the manner set forth in the Class Action Settlement to the Class under Rule 23(e)(1)...JND Legal Administration is hereby appointed as the Settlement Administrator and shall perform all duties of the Settlement Administrator set forth in the Class Action Settlement.

On July 12, 2021, the Court granted final approval of the settlement:

> The Court has again reviewed the Class Notice Program and finds that Class Members received the best notice practicable under the circumstances.

## 14. *In re MyFord Touch Consumer Litig.*

**No. 13-cv-3072 (EMC) (N.D. Cal.)**

Ms. Keough was retained as the Notice Expert in this $17 million automotive settlement. Under her direction, the JND team created a multi-faceted website with a VIN # lookup function that provided thorough data on individual car repair history. To assure all of the data was safeguarded, JND hired a third-party to attempt to hack it, demonstrating our commitment to ensuring the security of all client and claimant data. Their attempts were unsuccessful.

In his December 17, 2019 final approval order Judge Edward M. Chen remarked on the positive reaction that the settlement received:

> *The Court finds that the Class Notice was the best practicable notice under the circumstances, and has been given to all Settlement Class Members known and reasonably identifiable in full satisfaction of the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process... The Court notes that the reaction of the class was positive: only one person objected to the settlement although, by request of the objector and in the absence of any opposition from the parties, that objection was converted to an opt-out at the hearing.*

## 15. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*

**No. 2179 (MDL) (E.D. La.)**

Following the closure of the Gulf Coast Claims Facility, the Deepwater Horizon Settlement claims program was created. There were two separate legal settlements that provided for two claims administration programs. One of the programs was for the submission of medical claims and the other was for the submission of economic and property damage claims. Ms. Keough played a key role in the formation of the claims program for the evaluation of economic and property damage claims. Additionally, Ms. Keough built and supervised the back-office mail and processing center in Hammond, Louisiana, which was the hub of the program. The Hammond center was visited several times by Claims Administrator Pat Juneau -- as well as by the District Court Judge and Magistrate -- who described it as a shining star of the program.

## 16. *In re Stryker Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.*

**No. 13-2441 (MDL) (D. Minn.)**

Ms. Keough and her team were designated as the escrow agent and claims processor in this $1 billion settlement designed to compensate eligible U.S. Patients who had surgery to replace their Rejuvenate Modular-Neck and/or ABG II Modular-Neck hip stems prior to November 3, 2014. As the claims processor, Ms. Keough

and her team designed internal procedures to ensure the accurate review of all medical documentation received; designed an interactive website which included online claim filing; and established a toll-free number to allow class members to receive information about the settlement 24 hours a day. Additionally, she oversaw the creation of a deficiency process to ensure claimants were notified of their deficient submission and provided an opportunity to cure. The program also included an auditing procedure designed to detect fraudulent claims and a process for distributing initial and supplemental payments. Approximately 95% of the registered eligible patients enrolled in the settlement program.

### 17. *In re The Engle Trust Fund*

**No. 94-08273 CA 22 (Fla. 11th Jud. Cir. Ct.)**

Ms. Keough played a key role in administering this $600 million landmark case against the country's five largest tobacco companies. Miles A. McGrane, III, Trustee to the Engle Trust Fund recognized Ms. Keough's role when he stated:

> *The outstanding organizational and administrative skills of Jennifer Keough cannot be overstated. Jennifer was most valuable to me in handling numerous substantive issues in connection with the landmark Engle Trust Fund matter. And, in her communications with affected class members, Jennifer proved to be a caring expert at what she does.*

### 18. *In re Washington Mut. Inc., Sec. Litig.*

**No. 08-md-1919 MJP (W.D. Wash.)**

Ms. Keough supervised the notice and claims administration for this securities class action, which included three separate settlements with defendants totaling $208.5 million. In addition to mailing notice to over one million class members, Ms. Keough managed the claims administration program, including the review and processing of claims, notification of claim deficiencies, and distribution. In preparation for the processing of claims, Ms. Keough and her team established a unique database to store the proofs of claim and supporting documentation; trained staff to the particulars of this settlement; created multiple computer

programs for the entry of class member's unique information; and developed a program to calculate the recognized loss amounts pursuant to the plan of allocation. The program was designed to allow proofs of claim to be filed by mail or through an online portal. A deficiency process was established in order to reach out to class members who submitted incomplete proof of claims. The deficiency process involved reaching out to claimants via letters, emails, and telephone calls.

### 19. *King v. Bumble Trading Inc*

**No. 18-cv-06868-NC  (N.D. Cal.)**

Ms. Keough served as the notice expert in this $22.5 million settlement that alleged that Bumble's Terms & Conditions failed to notify subscribers nationwide of their legal right to cancel their Boost subscription and obtain a refund within three business days of purchase, and for certain users in California, that Bumble's auto-renewal practices violated California law.

JND received two files of class member data containing over 7.1 million records. Our team analyzed the data to identify duplicates and then we further analyzed the unique records, using programmatic techniques and manual review, to identify accounts that had identical information in an effort to prevent multiple notices being sent to the same class member. Through this process, JND was able to reduce the number of records to less than 6.3 million contacts.

Approving the settlement on December 18, 2020, Judge Nathanael M. Cousins, acknowledged the high success of our notice efforts:

> *Pursuant to the Court's Preliminary Approval Order, the Court appointed JND Settlement Administrators as the Settlement Administrator... JND sent court-approved Email Notices to millions of class members...Overall, approximately 81% of the Settlement Class Members were successfully sent either an Email or Mailed Notice...JND supplemented these Notices with a Press Release which Global Newswire published on July 18, 2020... In sum, the Court finds that, viewed as a whole, the settlement is sufficiently "fair, adequate, and reasonable" to warrant approval.*

## 20. *Linneman v. Vita-Mix Corp.*

**No. 15-cv-748 (S.D. Ohio)**

Ms. Keough was hired by Plaintiff Counsel to design a notice program regarding this consumer settlement related to allegedly defective blenders. The Court approved Ms. Keough's plan and designated her as the notice expert for this case. As direct notice to the entire class was impracticable due to the nature of the case, Ms. Keough proposed a multi-faceted notice program. Direct notice was provided by mail or email to those purchasers identified through data obtained from Vita-Mix and third parties, such as retailers, dealers, distributors, or restaurant supply stores. To reach the unknown class members, Ms. Keough oversaw the design of an extensive media plan that included: published notice in *Cooking Light*, *Good Housekeeping*, and *People* magazine and digital notice; placements through Facebook/Instagram, Twitter, and Conversant; and paid search campaign through Google and Bing. In addition, the program included an informational and interactive website where class members could submit claims electronically, and a toll-free number that provided information to class members 24 hours a day. When approving the plan, Honorable Susan J. Dlott stated (May 3, 2018):

> *JND Legal Administration, previously appointed to supervise and administer the notice process, as well as oversee the administration of the Settlement, appropriately issued notice to the Class as more fully set forth in the Agreement, which included the creation and operation of the Settlement Website and more than 3.8 million mailed or emailed notices to Class Members. As of March 27, 2018, approximately 300,000 claims have been filed by Class Members, further demonstrating the success of the Court-approved notice program.*

## 21. *Loblaw Card Program*

Jennifer Keough was selected by major Canadian retailer Loblaw and its counsel to act as program administrator in its voluntary remediation program. The program was created as a response to a price-fixing scheme perpetrated by some employees of the company involving bread products. The program

offered a $25 gift card to all adults in Canada who purchased bread products in Loblaw stores between 2002 and 2015. Some 28 million Canadian residents were potential claimants. Ms. Keough and her team: (1) built an interactive website that was capable of withstanding hundreds of millions of "hits" in a short period of time; (2) built, staffed and trained a call center with operators available to take calls twelve hours a day, six days a week; (3) oversaw the vendor in charge of producing and distributing the cards; (4) was in charge of designing and overseeing fraud prevention procedures; and (5) handled myriad other tasks related to this high-profile and complex project.

## 22. *McWilliams v. City of Long Beach*

**No. BC261469 (Cal. Super. Ct.)**

Ms. Keough and her team designed and implemented an extensive notice program for the City of Long Beach telephone tax refund settlement. In addition to sending direct notice to all addresses within the City of Long Beach utility billing system and from its GIS provider, and to all registered businesses during the class period, JND implemented a robust media campaign that alone reached 88% of the Class. The media effort included leading English and Spanish magazines and newspapers, a digital effort, local cable television and radio, an internet search campaign, and a press release distributed in both English and Spanish. The 12% claims rate exceeded expectations.

Judge Maren E. Nelson acknowledged the program's effectiveness in her final approval order on October 30, 2018:

> It is estimated that JND's Media Notice plan reached 88% of the Class and the overall reach of the Notice Program was estimated to be over 90% of the Class. (Keough Decl., at ¶12.). Based upon the notice campaign outlined in the Keough Declaration, it appears that the notice procedure was aimed at reaching as many class members as possible. The Court finds that the notice procedure satisfies due process requirements.

## 23. *New Orleans Tax Assessor Project*

After Hurricane Katrina, the City of New Orleans began to reappraise properties in the area which caused property values to rise. Thousands of property owners appealed their new property values and the City Council did not have the capacity to handle all the appeals in a timely manner. As a result of the large number of appeals, the City of New Orleans hired Ms. Keough to design a unique database to store each appellant's historical property documentation. Additionally, Ms. Keough designed a facility responsible for scheduling and coordinating meetings between the 5,000 property owners who appealed their property values and real estate agents or appraisers. The database that Ms. Keough designed facilitated the meetings between the property owners and the property appraisers by allowing the property appraisers to review the property owner's documentation before and during the appointment with them.

## 24. *USC Student Health Ctr. Settlement*

No. 18-cv-04258-SVW (C.D. Cal.)

JND was approved as the Settlement Administrator in this important $215 million settlement that provides compensation to women who were sexually assaulted, harassed and otherwise abused by Dr. George M. Tyndall at the USC Student Health Center during a nearly 30-year period. Ms. Keough and her team designed a notice effort that included: mailed and email notice to potential Class members; digital notices on Facebook, LinkedIn, and Twitter; an internet search effort; notice placements in USC publications/eNewsletters; and a press release. In addition, her team worked with USC staff to ensure notice postings around campus, on USC's website and social media accounts, and in USC alumni communications, among other things. Ms. Keough ensured the establishment of an all-female call center, whose operators were fully trained to handle delicate interactions, with the goal of providing excellent service and assistance to every woman affected. She also worked with the JND staff handling lien resolution for this case. Preliminarily approving the settlement, Honorable Stephen V. Wilson stated (June 12, 2019):

*The Court hereby designates JND Legal Administration ("JND") as Claims Administrator. The Court finds that giving Class Members notice of the Settlement is justified under Rule 23(e)(1) because, as described above, the Court will likely be able to: approve the Settlement under Rule 23(e)(2); and certify the Settlement Class for purposes of judgment. The Court finds that the proposed Notice satisfies the requirements of due process and Federal Rule of Civil Procedure 23 and provides the best notice practicable under the circumstances.*

## 25. *Williams v. Weyerhaeuser Co.*

**Civil Action No. 995787 (Cal. Super. Ct.)**

This landmark consumer fraud litigation against Weyerhaeuser Co. had over $100 million in claims paid. The action involved exterior hardboard siding installed on homes and other structures throughout the United States from January 1, 1981 to December 31, 1999 that was alleged to be defective and prematurely fail when exposed to normal weather conditions.

Ms. Keough oversaw the administration efforts of this program, both when she was employed by Perkins Coie, who represented defendants, and later when she joined the administration firm handling the case. The claims program was extensive and went on for nine years, with varying claims deadlines depending on when the class member installed the original Weyerhaeuser siding. The program involved not just payments to class members, but an inspection component where a court-appointed inspector analyzed the particular claimant's siding to determine the eligibility and award level. Class members received a check for their damages, based upon the total square footage of damaged siding, multiplied by the cost of replacing, or, in some instances, repairing, the siding on their homes. Ms. Keough oversaw the entirety of the program from start to finish.



# III.

# JUDICIAL RECOGNITION

Courts have favorably recognized Ms. Keough's work as outlined above and by the sampling of judicial comments from JND programs listed below.

## 1. Judge Edward J. Davila

***In re MacBook Keyboard Litig.,*** (May 25, 2023)
No. 18-cv-02813-EDJ (N.D. Cal.):

*The Settlement Agreement is being administered by JND Legal Administration ("JND")...the Settlement Administrator provided direct and indirect notice through emails, postcards, and the settlement website, in addition to the press and media coverage the settlement received...the Court finds that the Settlement Class has been provided adequate notice.*

## 2. Honorable David O Carter

***Gutierrez, Jr. v. Amplify Energy Corp.,*** (April 24, 2023)
21-cv-01628-DOC-JDE (C.D. Cal.):

*The Court finds that the Notice set forth in Article VI of the Settlement Agreement, detailed in the Notice Plan attached to the Declaration of Jennifer Keough of JND Legal Administration, and effectuated pursuant to the Preliminary Approval Order: (a) constitutes the best notice practicable under the circumstances of this Action; (b) constitutes due and sufficient notice to the Classes of the terms of the Settlement Agreement and the Final Approval Hearing; and (c) fully complied with the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law, including the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.*

### 3.  Honorable Joseph C. Spero

***Shuman v. Squaretrade Inc.,*** (March 1, 2023)
No. 20-cv-02725-JCS (N.D. Cal.):

*As of February 10, 2023, 703,729 Class Members were mailed or emailed at least one Notice that was not returned as undeliverable, representing over 99.76% of the total Class Member population. Supplemental Declaration of Jennifer Keough Regarding Notice Administration (dkt. no. 140-2) ("Keough Supp. Decl."), ¶ 7. The Court finds that notice was provided in the best practicable manner to class members and fulfills the requirements of due process.*

### 4.  Honorable J.P. Boulee

***In re TransUnion Rental Screening Sol. Inc. FCRA Litig.,*** (January 6, 2023)
20-md-02933-JPB (N.D. Ga.):

*The Parties have proposed JND Legal Administration as the Settlement Administrator for the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes. The Court has reviewed the materials about this organization and concludes that it has extensive and specialized experience and expertise in class action settlements and notice programs. The Court hereby appoints JND Legal Administration as the Settlement Administrator, to assist and provide professional guidance in the implementation of the Notice Plans and other aspects of the settlement administration.*

### 5.  Honorable David O Carter

***Gutierrez, Jr. v. Amplify Energy Corp.,*** (December 7, 2022)
21-cv-01628-DOC-JDE (C.D. Cal.):

*The Court appoints JND Legal Administration as the Settlement Administrator in this Action...The Court approves, as to form and content, the Direct Notices, Long Form Notices, and Email notices substantially in the forms attached as Exhibits B-J to the Declaration of Jennifer Keough In Support of Motion for Preliminary Approval of Class Action Settlement and Direction of Notice ("Keough Declaration").*

## 6.  Honorable Charles R. Breyer

*In re Volkswagen "Clean Diesel" Mktg., Sales Practice and Prods. Liab. Litig.*, (November 9, 2022)
MDL 2672 CRB (N.D. Cal.):

*The Settlement Administrator has also taken the additional step to allow potential class members to submit claims without any documentation on the settlement website, allowing the settlement administrator to seek out the documentation independently (which can often be found without further aid from the class member). Id. at 5; Third Keough Decl. (dkt. 8076) ¶ 3.  On October 6, 2022, the Settlement Administrator also sent reminder notices to the class members who have not yet submitted a claim, stating that they may file a claim without documentation, and their claim will be verified based on the information they provide.  Third Keough Decl. ¶ 4.  In any case, Lochridge's concerns about the unavailability of documentation have not been borne out by the majority of claimants: According to the Settlement Administrator, of the 122,467 claims submitted, 100,657 have included some form of documentation.  Id. ¶ 6.  Lochridge's objection on this point is thus overruled... Additionally, the claims process has been unusually successful—as of October 20, 122,467 claim forms have been submitted, covering 22% of the estimated eligible Class vehicles.  Third Keough Decl. ¶ 6.  This percentage rises to 24% when the Sport+ Class vehicles that have already received a software update (thus guaranteeing their owners a $250 payment without submission of a claim form) are included.  Id.  This reaction strongly favors approval of the settlement.*

## 7.  Honorable Joseph C. Spero

*Shuman v. Squaretrade Inc.*, (October 17, 2022)
No. 20-cv-02725-JCS (N.D. Cal.):

*JND Legal Administration is appointed to serve as the Settlement Administrator and is authorized to email and mail the approved Notice to members of the Settlement Class and further administer the Settlement in accordance with the Amended Agreement and this Order.*

### 8. Judge Stephen V. Wilson

***LSIMC, LLC v. Am. Gen. Life Ins. Co.,*** (September 21, 2022)
No. 20-cv-11518 (C.D. Cal.):

*JND Legal Administration LLC ("JND") shall be appointed to serve as Class Notice Administrator...*

### 9. Judge Valerie Figueredo

***Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York,*** (August 19, 2022)
No. 19-cv-06004 (S.D.N.Y.):

*The Court approves the retention of JND Legal Administration LLC ("JND") as the Notice Administrator.*

### 10. Honorable Dana M. Sabraw

***In re Packaged Seafood Prods. Antitrust Litig. (EPP Class),*** (July 15, 2022)
No. 15-md-02670 (S.D. Cal.):

*An experienced and well-respected claims administrator, JND Legal Administration LLC ("JND"), administered a comprehensive and robust notice plan to alert Settlement Class Members of the COSI Settlement Agreement...The Notice Plan surpassed the 85% reach goal...The Court recognizes JND's extensive experience in processing claim especially for millions of claimants...The Court finds due process was satisfied and the Notice Program provided adequate notice to settlement class members in a reasonable manner through all major and common forms of media.*

### 11. Honorable Charles R. Breyer

***In re Volkswagen "Clean Diesel" Mktg., Sales Practice and Prods. Liab. Litig.,*** (July 8, 2022)
MDL 2672 CRB (N.D. Cal.):

*As applied here, the Court finds that the content, format, and method of disseminating Notice—set forth in the Motion, the Declaration of Jennifer Keough on Settlement Notice Plan, and the Settlement Agreement and Release—is state of the art and satisfies Rule 23(c)(2) and all contemporary notice standards. The Court approves*

*the notice program, and hereby directs that such notice be disseminated in the manner set forth in the proposed Settlement Agreement and Declaration of Jennifer Keough on Settlement Notice Plan to Class Members under Rule 23(e)(1).*

## 12. Judge Fernando M. Olguin

**Gupta v. Aeries Software, Inc.,** (July 7, 2022)
No. 20-cv-00995 (C.D. Cal.):

*Under the circumstances, the court finds that the procedure for providing notice and the content of the class notice constitute the best practicable notice to class members and complies with the requirements of due process...The court appoints JND as settlement administrator.*

## 13. Judge Cormac J. Carney

**Gifford v. Pets Global, Inc.,** (June 24, 2022)
No. 21-cv-02136-CJC-MRW (C.D. Cal.):

*The Settlement also proposes that JND Legal Administration act as Settlement Administrator and offers a provisional plan for Class Notice...*

*The proposed notice plan here is designed to reach at least 70% of the class at least two times. The Notices proposed in this matter inform Class Members of the salient terms of the Settlement, the Class to be certified, the final approval hearing and the rights of all parties, including the rights to file objections or to opt-out of the Settlement Class...This proposed notice program provides a fair opportunity for Class Members to obtain full disclosure of the conditions of the Settlement and to make an informed decision regarding the Settlement.*

## 14. Judge David J. Novak

**Brighton Tr. LLC, as Tr. v. Genworth Life & Annuity Ins. Co.,** (June 3, 2022)
No. 20-cv-240-DJN (E.D. Va.):

*The Court appoints JND Legal Administration LLC ("JND"), a competent firm, as the Settlement Administrator.*

### 15. Judge Donovan W. Frank

***Advance Trust & Life Escrow Serv., LTA v. ReliaStar Life Ins. Co.,*** (June 2, 2022) No. 18-cv-2863-DWF-ECW (D. Minn.):

*The Court approves the retention of JND Legal Administration LLC ("JND") as the Notice Administrator.*

### 16. Honorable Philip S. Gutierrez

***Andrews v. Plains All Am. Pipeline, L.P.,*** (May 25, 2022) No. 15-cv-04113-PSG-JEM (C.D. Cal.):

*Court appoints JND Legal Administration as the Settlement Administrator in this Action...The Court approves, as to form and content, the Mail Notice and the Publication Notice, substantially in the forms attached as Exhibits D, E, and F to the Declaration of Jennifer Keough In Support of Motion for Preliminary Approval of Class Action Settlement and Direction of Notice ("Keough Declaration").*

### 17. Judge Victoria A. Roberts

***Graham v. Univ. of Michigan,*** (March 29, 2022) No. 21-cv-11168-VAR-EAS (E.D. Mich.):

*The Court has received and reviewed...the proposed notice plan as described in the Declaration of Jennifer Keough...The Court finds that the foregoing program of Class Notice and the manner of its dissemination is sufficient under the circumstances and is reasonably calculated to apprise the Settlement Class of the pendency of this Action and their right to object to the Settlement. The Court further finds that the Class Notice program is reasonable; that it constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and that it meets the requirements of due process and Federal Rule of Civil Procedure 23.*

## 18. Honorable Michael Markman

***DC 16 v. Sutter Health,*** (March 11, 2022)
No. RG15753647 (Cal. Super. Ct.):

*The Court approves and appoints JND Legal Administration ("JND") to serve as the notice provider and directs JND to carry out all duties and responsibilities of providing notice and processing requests for exclusion.*

## 19. Honorable P. Kevin Castel

***Hanks v. Lincoln Life & Annuity Co. of New York,*** (February 23, 2022)
No. 16-cv-6399 PKC (S.D.N.Y.):

*The Court appoints JND Legal Administration LLC ("JND"), a competent firm, as the Settlement Administrator...The form and content of the notices, as well as the manner of dissemination described below, meet the requirements of Rule 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

## 20. Judge David G. Campbell

***In re Arizona Theranos, Inc. Litig.,*** (February 2, 2022)
No. 16-cv-2138-DGC (D. Ariz.):

*The Court appoints JND Legal Administration ("JND") to serve as Class Administrator and directs JND to carry out all duties and responsibilities of the Class Administrator as specified in the Notice Plan...This approval includes the proposed methods of providing notice, the proposed forms of notice attached as Exhibits B through D to the Declaration of Jennifer M. Keough (Doc. 445-1 – "Keough Decl."), and the proposed procedure for class members to opt-out.*

## 21. Judge William M. Conley

***Bruzek v. Husky Oil Operations Ltd.,*** (January 31, 2022)
No. 18-cv-00697 (W.D. Wis.):

*The claims administrator estimates that at least 70% of the class received notice… the court concludes that the parties' settlement is fair, reasonable and adequate under Rule 23(e).*

## 22. Honorable Dana M. Sabraw

***In re Packaged Seafood Prods. Antitrust Litig. (DPP Class),*** (January 26, 2022)
No. 15-md-02670 (S.D. Cal.):

*The rigorous notice plan proposed by JND satisfies requirements imposed by Rule 23 and the Due Process clause of the United States Constitution. Moreover, the contents of the notice satisfactorily informs Settlement Class members of their rights under the Settlement.*

## 23. Honorable Dana M. Sabraw

***In re Packaged Seafood Prods. Antitrust Litig. (EPP Class),*** (January 26, 2022)
No. 15-md-02670 (S.D. Cal.):

*Class Counsel retained JND, an experienced notice and claims administrator, to serve as the notice provider and settlement claims administrator. The Court approves and appoints JND as the Claims Administrator. EPPs and JND have developed an extensive and robust notice program which satisfies prevailing reach standards. JND also developed a distribution plan which includes an efficient and user-friendly claims process with an effective distribution program. The Notice is estimated to reach over 85% of potential class members via notice placements with the leading digital network (Google Display Network), the top social media site (Facebook), and a highly read consumer magazine (People)… The Court approves the notice content and plan for providing notice of the COSI Settlement to members of the Settlement Class.*

### 24. Judge Alvin K. Hellerstein

***Leonard v. John Hancock Life Ins. Co. of NY,*** (January 10, 2022)
No. 18-CV-04994 (S.D.N.Y.):

*The Court finds that the manner of distribution of the Notices constitutes the best practicable notice under the circumstances as well as valid, due and sufficient notice to the Class and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the United States Constitution.*

### 25. Honorable Justice Edward Belobaba

***Kalra v. Mercedes-Benz Canada Inc.,*** (December 9, 2021)
No. 15-MD-2670 (Ont. Super. Ct.):

*THIS COURT ORDERS that JND Legal Administration is hereby appointed the Settlement Administrator to implement and oversee the Notice Program, the Claims Program, the Honorarium Payment to the Class Representative, and the payment of the Levy to the Class Proceedings Fund.*

### 26. Judge Timothy J. Corrigan

***Levy v. Dolgencorp, LLC,*** (December 2, 2021)
No. 20-cv-01037-TJC-MCR (M.D. Fla.):

*No Settlement Class Member has objected to the Settlement and only one Settlement Class Member requested exclusion from the Settlement through the opt-out process approved by this Court…The Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice. The Notice Program fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

### 27. Honorable Nelson S. Roman

***Swetz v. GSK Consumer Health, Inc.,*** (November 22, 2021)
No. 20-cv-04731 (S.D.N.Y.):

*The Notice Plan provided for notice through a nationwide press release; direct notice through electronic mail, or in the alternative, mailed, first-class postage prepaid for identified Settlement Class Members; notice through electronic media—such as Google Display Network and Facebook—using a digital advertising campaign with links to the dedicated Settlement Website; and a toll-free telephone number that provides Settlement Class Members detailed information and directs them to the Settlement Website. The record shows, and the Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order.*

### 28. Honorable James V. Selna

***Herrera v. Wells Fargo Bank, N.A.,*** (November 16, 2021)
No. 18-cv-00332-JVS-MRW (C.D. Cal.):

*On June 8, 2021, the Court appointed JND Legal Administration ("JND") as the Claims Administrator... JND mailed notice to approximately 2,678,266 potential Non-Statutory Subclass Members and 119,680 Statutory Subclass Members. Id. ¶ 5. 90% of mailings to Non-Statutory Subclass Members were deemed delivered, and 81% of mailings to Statutory Subclass Members were deemed delivered. Id. ¶ 9. Follow-up email notices were sent to 1,977,514 potential Non-Statutory Subclass Members and 170,333 Statutory Subclass Members, of which 91% and 89% were deemed delivered, respectively. Id. ¶ 12. A digital advertising campaign generated an additional 5,195,027 views. Id. ¶ 13...Accordingly, the Court finds that the notice to the Settlement Class was fair, adequate, and reasonable.*

### 29. Judge Mark C. Scarsi

***Patrick v. Volkswagen Grp. of Am., Inc.,*** (September 18, 2021)
No. 19-cv-01908-MCS-ADS (C.D. Cal.):

*The Court finds that, as demonstrated by the Declaration of Jennifer M. Keough and counsel's submissions, Notice to the Settlement Class was timely and properly effectuated in accordance with Fed. R. Civ. P. 23(e) and the approved Notice Plan set forth in the Court's Preliminary Approval Order. The Court finds that said Notice constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.*

### 30. Judge Morrison C. England, Jr.

***Martinelli v. Johnson & Johnson,*** (September 27, 2021)
No. 15-cv-01733-MCE-DB (E.D. Cal.):

*The Court appoints JND, a well-qualified and experienced claims and notice administrator, as the Settlement Administrator.*

### 31. Honorable Nathanael M. Cousins

***Malone v. Western Digital Corp.,*** (July 21, 2021)
No. 20-cv-03584-NC (N.D. Cal.):

*The Court hereby appoints JND Legal Administration as Settlement Administrator... The Court finds that the proposed notice program meets the requirements of Due Process under the U.S. Constitution and Rule 23; and that such notice program— which includes individual direct notice to known Settlement Class Members via email, mail, and a second reminder email, a media and Internet notice program, and the establishment of a Settlement Website and Toll-Free Number—is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto. The Court further finds that the proposed form and content of the forms of the notice are adequate and will give the Settlement Class Members sufficient information to enable them to make informed decisions as to the Settlement Class, the right to object or opt-out, and the proposed Settlement and its terms.*

## 32. Judge Mark H. Cohen

*Pinon v. Mercedes-Benz USA, LLC and Daimler AG,* (March 29, 2021)
No. 18-cv-3984 (N.D. Ga.):

*The Court finds that the content, format, and method of disseminating the Notice Plan, as set forth in the Motion, the Declaration of the Settlement Administrator (Declaration of Jennifer M. Keough Regarding Proposed Notice Plan) [Doc. 70-7], and the Settlement Agreement, including postcard notice disseminated through direct U.S. Mail to all known Class Members and establishment of a website: (a) constitutes the best notice practicable under the circumstances; (b) are reasonably calculated, under the circumstances, to apprise settlement class members of the pendency of the action, the terms of the proposed Settlement Agreement, and their rights under the proposed Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfies all requirements provided Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements. The Court further finds that the notices are written in plain language, use simple terminology, and are designated to be readily understandable by the Settlement Class.*

## 33. Honorable Daniel D. Domenico

*Advance Trust & Life Escrow Serv., LTA v. Sec. Life of Denver Ins. Co.,* (January 29, 2021)
No. 18-cv-01897-DDD-NYW (D. Colo.):

*The court approves the form and contents of the Short-Form and Long Form Notices attached as Exhibits A and B, respectively, to the Declaration of Jennifer M. Keough, filed on January 26, 2021...The proposed form and content of the Notices meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B)...The court approves the retention of JND Legal Administration LLC as the Notice Administrator.*

## 34. Honorable Virginia A. Phillips

***Sonner v. Schwabe N. Am., Inc.,*** (January 25, 2021)
No. 15-cv-01358 VAP (SPx) (C.D. Cal.):

*Following preliminary approval of the settlement by the Court, the settlement administrator provided notice to the Settlement Class through a digital media campaign. (Dkt. 203-5). The Notice explains in plain language what the case is about, what the recipient is entitled to, and the options available to the recipient in connection with this case, as well as the consequences of each option. (Id., Ex. E). During the allotted response period, the settlement administrator received no requests for exclusion and just one objection, which was later withdrawn. (Dkt. 203-1, at 11).*

*Given the low number of objections and the absence of any requests for exclusion, the Class response is favorable overall. Accordingly, this factor also weighs in favor of approval.*

## 35. Honorable R. Gary Klausner

***A.B. v. Regents of the Univ. of California,*** (January 8, 2021)
No. 20-cv-09555-RGK-E (C.D. Cal.):

*The parties intend to notify class members through mail using UCLA's patient records. And they intend to supplement the mail notices using Google banners and Facebook ads, publications in the LA times and People magazine, and a national press release. Accordingly, the Court finds that the proposed notice and method of delivery sufficient and approves the notice.*

## 36. Judge Vernon S. Broderick, Jr.

***In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,*** (December 16, 2020)
No. 14-md-02542 (S.D.N.Y.):

*I further appoint JND as Claims Administrator. JND's principals have more than 75 years-worth of combined class action legal administration experience, and JND has handled some of the largest recent settlement administration issues, including the Equifax Data Breach Settlement. (Doc. 1115 ¶ 5.) JND also has extensive*

*experience in handling claims administration in the antitrust context. (Id. ¶ 6.) Accordingly, I appoint JND as Claims Administrator.*

## 37. Honorable Laurel Beeler

**Sidibe v. Sutter Health,** (November 5, 2020)
No. 12-cv-4854-LB (N.D. Cal.):

*Class Counsel has retained JND Legal Administration ("JND"), an experienced class notice administration firm, to administer notice to the Class. The Court appoints JND as the Class Notice Administrator. JND shall provide notice of pendency of the class action consistent with the procedures outlined in the Keough Declaration.*

## 38. Judge Carolyn B. Kuhl

**Sandoval v. Merlex Stucco Inc.,** (October 30, 2020)
No. BC619322 (Cal. Super. Ct.):

*Additional Class Member class members, and because their names and addresses have not yet been confirmed, will be notified of the pendency of this settlement via the digital media campaign outlined by the Keough/JND Legal declaration…the Court approves the Parties selection of JND Legal as the third-party Claims Administrator.*

## 39. Honorable Louis L. Stanton

**Rick Nelson Co. v. Sony Music Ent.,** (September 16, 2020)
No. 18-cv-08791 (S.D.N.Y.):

*The parties have designated JND Legal Administration ("JND") as the Settlement Administrator. Having found it qualified, the Court appoints JND as the Settlement Administrator and it shall perform all the duties of the Settlement Administrator as set forth in the Stipulation…The form and content of the Notice, Publication Notice and Email Notice, and the method set forth herein of notifying the Class of the Settlement and its terms and conditions, meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process. and any other applicable law, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

## 40. Judge Steven W. Wilson

**Amador v Baca,** (August 11, 2020)
No. 10-cv-1649 (C.D. Cal.):

*Class Counsel, in conjunction with JND, have also facilitated substantial notice and outreach to the relatively disparate and sometimes difficult to contact class of more than 94,000 individuals, which has resulted in a relatively high claims rate of between 33% and 40%, pending final verification of deficient claims forms. Their conduct both during litigation and after settlement was reached was adequate in all respects, and supports approval of the Settlement Agreement.*

## 41. Judge Stephanie M. Rose

**Swinton v. SquareTrade, Inc.,** (April 14, 2020)
No. 18-CV-00144-SMR-SBJ (S.D. Iowa):

*This publication notice appears to have been effective.  The digital ads were linked to the Settlement Website, and Google Analytics and other measures indicate that, during the Publication Notice Period, traffic to the Settlement Website was at its peak.*

## 42. Judge Joan B. Gottschall

**In re Navistar MaxxForce Engines Mktg., Sales Practices and Prods.,** (January 3, 2020)
No. 14-cv-10318 (N.D. Ill.):

*WHEREAS, the Parties have agreed to use JND Legal Administration ("JND"), an experienced administrator of class action settlements, as the claims administrator for this Settlement and agree that JND has the requisite experience and expertise to serve as claims administrator; The Court appoints JND as the claims administrator for the Settlement.*

### 43. Honorable Steven I. Locke

***Donnenfield v. Petro, Inc.,*** (December 4, 2019)
No. 17-cv-02310 (E.D.N.Y.):

*WHEREAS, the Parties have agreed to use JND Legal Administration ("JND"), an experienced administrator of class action settlements, as the claims administrator for this Settlement and agree that JND has the requisite experience and expertise to serve as claims administrator; The Court appoints JND as the claims administrator for the Settlement.*

### 44. Honorable Amy D. Hogue

***Trepte v. Bionaire, Inc.,*** (November 5, 2019)
No. BC540110 (Cal. Super. Ct.):

*The Court appoints JND Legal Administration as the Class Administrator... The Court finds that the forms of notice to the Settlement Class regarding the pendency of the action and of this settlement, and the methods of giving notice to members of the Settlement Class... constitute the best notice practicable under the circumstances and constitute valid, due, and sufficient notice to all members of the Settlement Class. They comply fully with the requirements of California Code of Civil Procedure section 382, California Civil Code section 1781, California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and other applicable law.*

### 45. Judge Barbara Jacobs Rothstein

***Wright v. Lyft, Inc.,*** (May 29, 2019)
No. 17-cv-23307-MGC 14-cv-00421-BJR (W.D. Wash.):

*The Court also finds that the proposed method of distributing relief to the class is effective. JND Legal Administration ("JND"), an experienced claims administrator, undertook a robust notice program that was approved by this Court...*

## 46. Judge J. Walton McLeod

***Boskie v. Backgroundchecks.com,*** (May 17, 2019)
No. 2019CP3200824 (S.C. C.P.):

*The Court appoints JND Legal Administration as Settlement Administrator...The Court approves the notice plans for the HomeAdvisor Class and the Injunctive Relief Class as set forth in the declaration of JND Legal Administration. The Court finds the class notice fully satisfies the requirements of due process, the South Carolina Rules of Civil Procedure. The notice plan for the HomeAdvisor Class and Injunctive Relief Class constitutes the best notice practicable under the circumstances of each Class.*

## 47. Honorable James Donato

***In re Resistors Antitrust Litig.,*** (May 2, 2019)
No. 15-cv-03820-JD (N.D. Cal.):

*The Court approves as to form and content the proposed notice forms, including the long form notice and summary notice, attached as Exhibits B and D to the Second Supplemental Declaration of Jennifer M. Keough Regarding Proposed Notice Program (ECF No. 534-3). The Court further finds that the proposed plan of notice – including Class Counsel's agreement at the preliminary approval hearing for the KOA Settlement that direct notice would be effectuated through both U.S. mail and electronic mail to the extent electronic mail addresses can be identified following a reasonable search – and the proposed contents of these notices, meet the requirements of Rule 23 and due process, and are the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.The Court appoints the firm of JND Legal Administration LLC as the Settlement Administrator.*

## 48. Honorable Leigh Martin May

***Bankhead v. First Advantage Background Serv. Corp.,*** (April 30, 2019)
No. 17-cv-02910-LMM-CCB (N.D. Ga.):

*The Court appoints JND Legal Administration as Settlement Administrator... The Court approves the notice plans for the Class as set forth in the declaration of the JND Legal Administration. The Court finds that class notice fully satisfies the*

*requirements of due process of the Federal Rules of Civil Procedure. The notice plan constitutes the best notice practicable under the circumstances of the Class.*

### 49.  Honorable P. Kevin Castel

**Hanks v. Lincoln Life & Annuity Co. of New York,** (April 23, 2019)
No. 16-cv-6399 PKC (S.D.N.Y.):

*The Court approves the form and contents of the Short-Form Notice and Long-Form Notice (collectively, the "Notices") attached as Exhibits A and B, respectively, to the Declaration of Jennifer M. Keough, filed on April 2, 2019, at Docket No. 120...The form and content of the notices, as well as the manner of dissemination described below, therefore meet the requirements of Rule 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto...the Court approves the retention of JND Legal Administration LLC ("JND") as the Notice Administrator.*

### 50.  Judge Kathleen M. Daily

**Podawiltz v. Swisher Int'l, Inc.,** (February 7, 2019)
No. 16CV27621 (Or. Cir. Ct.):

*The Court appoints JND Legal Administration as settlement administrator...The Court finds that the notice plan is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process, ORCP 32, and any other applicable laws.*

### 51.  Honorable Kenneth J. Medel

**Huntzinger v. Suunto Oy,** (December 14, 2018)
No. 37-2018-27159 (CU) (BT) (CTL) (Cal. Super. Ct.):

*The Court finds that the Class Notice and the Notice Program implemented pursuant to the Settlement Agreement and Preliminary Approval Order constituted the best notice practicable under the circumstances to all persons within the definition of the Class and fully complied with the due process requirement under all applicable statutes and laws and with the California Rules of Court.*

## 52. Honorable Thomas M. Durkin

***In re Broiler Chicken Antitrust Litig.,*** (November 16, 2018)
No. 16-cv-8637 (N.D. Ill.):

*The notice given to the Class, including individual notice to all members of the Class who could be identified through reasonable efforts, was the best notice practicable under the circumstances. Said notice provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure and the requirements of due process.*

## 53. Judge Maren E. Nelson

***Granados v. Cnty. of Los Angeles,*** (October 30, 2018)
No. BC361470 (Cal. Super. Ct.):

*JND's Media Notice plan is estimated to have reached 83% of the Class. The overall reach of the Notice Program was estimated to be over 90% of the Class. (Keough Decl., at ¶12.). Based upon the notice campaign outlined in the Keough Declaration, it appears that the notice procedure was aimed at reaching as many class members as possible. The Court finds that the notice procedure satisfies due process requirements.*

## 54. Judge Cheryl L. Pollak

***Dover v. British Airways, PLC (UK),*** (October 9, 2018)
No. 12-cv-5567 (E.D.N.Y.), in response to two objections:

*JND Legal Administration was appointed as the Settlement Claims Administrator, responsible for providing the required notices to Class Members and overseeing the claims process, particularly the processing of Cash Claim Forms...the overwhelmingly positive response to the Settlement by the Class Members, reinforces the Court's conclusion that the Settlement is fair, adequate, and reasonable.*

## 55. Judge Edward J. Davila

*In re Intuit Data Litig.,* (October 4, 2018)
No. 15-CV-1778-EJD (N.D. Cal.):

*The Court appoints JND Legal Administration ("JND") to serve as the Settlement Administrator…The Court approves the program for disseminating notice to Class Members set forth in the Agreement and Exhibit A thereto (herein, the "Notice Program"). The Court approves the form and content of the proposed forms of notice, in the forms attached as Attachments 1 through 3 to Exhibit A to the Agreement. The Court finds that the proposed forms of notice are clear and readily understandable by Class Members. The Court finds that the Notice Program, including the proposed forms of notice, is reasonable and appropriate and satisfies any applicable due process and other requirements, and is the only notice to the Class Members of the Settlement that is required.*

## 56. Judge Ann D. Montgomery

*In re Wholesale Grocery Prod. Antitrust Litig.,* (November 16, 2017)
No. 9-md-2090 (ADM) (TNL) (D. Minn.):

*Notice provider and claims administrator JND Legal Administration LLC provided proof that mailing conformed to the Preliminary Approval Order in a declaration filed contemporaneously with the Motion for Final Approval of Class Settlement. This notice program fully complied with Fed. R. Civ. P. 23, satisfied the requirements of due process, is the best notice practicable under the circumstances, and constituted due and adequate notice to the Class of the Settlement, Final Approval Hearing and other matters referred to in the Notice.*

## 57. Honorable David O. Carter

*Hernandez v. Experian Info. Sols., Inc.,* (April 6, 2018)
No. 05-cv-1070 (C.D. Cal.):

*The Court finds, however, that the notice had significant value for the Class, resulting in over 200,000 newly approved claims—a 28% increase in the number of Class members who will receive claimed benefits—not including the almost 100,000*

*Class members who have visited the CCRA section of the Settlement Website thus far and the further 100,000 estimated visits expected through the end of 2019. (Dkt. 1114-1 at 3, 6). Furthermore, the notice and claims process is being conducted efficiently at a total cost of approximately $6 million, or $2.5 million less than the projected 2009 Proposed Settlement notice and claims process, despite intervening increases in postage rates and general inflation. In addition, the Court finds that the notice conducted in connection with the 2009 Proposed Settlement has significant ongoing value to this Class, first in notifying in 2009 over 15 million Class members of their rights under the Fair Credit Reporting Act (the ignorance of which for most Class members was one area on which Class Counsel and White Objectors' counsel were in agreement), and because of the hundreds of thousands of claims submitted in response to that notice, and processed and validated by the claims administrator, which will be honored in this Settlement.*



# IV. CASE EXPERIENCE

Ms. Keough has played an important role in hundreds of matters throughout her career. A partial listing of her notice and claims administration case work is provided below.

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Aaland v. Contractors.com and One Planet Ops* | 19-2-242124 SEA | Wash. Super. Ct. |
| *A.B. v. Regents of the Univ. of California* | 20-cv-09555-RGK-E | C.D. Cal. |
| *Achziger v. IDS Prop. Cas. Ins.* | 14-cv-5445 | W.D. Wash. |
| *Adair v. Michigan Pain Specialist, PLLC* | 14-28156-NO | Mich. Cir. |
| *Adkins v. EQT Prod. Co.* | 10-cv-00037-JPJ-PMS | W.D. Va. |
| *Advance Trust & Life Escrow Serv. LTA, v. N. Am. Co. for Life and Health Ins.* | 18-CV-00368 | S.D. Iowa |
| *Advance Trust & Life Escrow Serv., LTA v. ReliaStar Life Ins. Co.* | 18-cv-2863-DWF-ECW | D. Minn. |
| *Advance Trust & Life Escrow Serv., LTA v. Sec. Life of Denver Ins. Co.* | 18-cv-01897-DDD-NYW | D. Colo. |
| *Ahmed v. HSBC Bank USA, NA* | 15-cv-2057-FMO-SPx | N.D. Ill. |
| *Alexander v. District of Columbia* | 17-1885 (ABJ) | D.D.C. |
| *Allagas v. BP Solar Int'l, Inc.* | 14-cv-00560 (SI) | N.D. Cal. |
| *Allen v. Apache Corp.* | 22-cv-00063-JAR | E.D. Okla. |
| *Amador v. Baca* | 10-cv-1649 | C.D. Cal. |
| *Amin v. Mercedes-Benz USA, LLC* | 17-cv-01701-AT | N.D. Ga. |
| *Armstead v. VGW Malta Ltd.* | 2022-CI-00553 | Ky. Cir. Ct. |
| *Andrews v. Plains All Am. Pipeline, L.P.* | 15-cv-04113-PSG-JEM | C.D. Cal. |
| *Anger v. Accretive Health* | 14-cv-12864 | E.D. Mich. |
| *Arnold v. State Farm Fire and Cas. Co.* | 17-cv-148-TFM-C | S.D. Ala. |
| *Arthur v. Sallie Mae, Inc.* | 10-cv-00198-JLR | W.D. Wash. |
| *Atkins v. Nat'l. Gen. Ins. Co.* | 16-2-04728-4 | Wash. Super. Ct. |
| *Atl. Ambulance Corp. v. Cullum & Hitti* | MRS-L-264-12 | N.J. Super. Ct. |
| *Backer Law Firm, LLC v. Costco Wholesale Corp.* | 15-cv-327 (SRB) | W.D. Mo. |
| *Baker v. Equity Residential Mgmt., LLC* | 18-cv-11175 | D. Mass. |
| *Bankhead v. First Advantage Background Servs. Corp.* | 17-cv-02910-LMM-CCB | N.D. Ga. |
| *Barbanell v. One Med. Grp., Inc.* | CGC-18-566232 | Cal. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Barrios v. City of Chicago* | 15-cv-02648 | N.D. Ill. |
| *Beaucage v. Ticketmaster Canada Holdings, ULC* | CV-20-00640518-00CP | Ont. Super. Ct. |
| *Belanger v. RoundPoint Mortg. Servicing* | 17-cv-23307-MGC | S.D. Fla. |
| *Belin v. Health Ins. Innovations, Inc.* | 19-cv-61430-AHS | S.D. Fla |
| *Beltran v. InterExchange, Inc.* | 14-cv-3074 | D. Colo. |
| *Benson v. DoubleDown Interactive, LLC* | 18-cv-00525-RSL | W.D. Wash. |
| *Bland v. Premier Nutrition Corp.* | RG19-002714 | Cal. Super. Ct. |
| *Blankenship v. HAPO Cmty. Credit Union* | 19-2-00922-03 | Wash. Super. Ct. |
| *Blasi v. United Debt Serv., LLC* | 14-cv-0083 | S.D. Ohio |
| *Bollenbach Enters. Ltd. P'ship. v. Oklahoma Energy Acquisitions* | 17-cv-134 | W.D. Okla. |
| *Boskie v. Backgroundchecks.com* | 2019CP3200824 | S.C. C.P. |
| *Botts v. Johns Hopkins Univ.* | 20-cv-01335-JRR | D. Md. |
| *Boyd v. RREM Inc., d/b/a Winston* | 2019-CH-02321 | Ill. Cir. Ct. |
| *Bradley v. Honecker Cowling LLP* | 18-cv-01929-CL | D. Or. |
| *Brasch v. K. Hovnanian Enter. Inc.* | 30-2013-00649417-CU-CD-CXC | Cal. Super. Ct. |
| *Brighton Tr. LLC, as Tr. v. Genworth Life & Annuity Ins. Co.* | 20-cv-240-DJN | E.D. Va. |
| *Brna v. Isle of Capri Casinos* | 17-cv-60144 (FAM) | S.D. Fla. |
| *Bromley v. SXSW LLC* | 20-cv-439 | W.D. Tex. |
| *Browning v. Yahoo!* | C04-01463 HRL | N.D. Cal. |
| *Bruzek v. Husky Oil Operations Ltd.* | 18-cv-00697 | W.D. Wis. |
| *Careathers v. Red Bull N. Am., Inc.* | 13-cv-369 (KPF) | S.D.N.Y. |
| *Carillo v. Wells Fargo Bank, N.A.* | 18-cv-03095 | E.D.N.Y. |
| *Carmack v. Amaya Inc.* | 16-cv-1884 | D.N.J. |
| *Cavallaro v USAA* | 20-CV-00414-TSB | S.D. Ohio |
| *Cecil v. BP Am. Prod. Co.* | 16-cv-410 (RAW) | E.D. Okla. |
| *Chapman v. GEICO Cas. Co.* | 37-2019-00000650-CU-CR-CTL | Cal. Super. Ct. |
| *Chester v. TJX Cos.* | 15-cv-1437 (ODW) (DTB) | C.D. Cal. |
| *Chieftain Royalty Co. v. BP Am. Prod. Co.* | 18-cv-00054-JFH-JFJ | N.D. Okla. |
| *Chieftain Royalty Co. v. Marathon Oil Co.* | 17-cv-334 | E.D. Okla. |
| *Chieftain Royalty Co. v. Newfield Exploration Mid-Continent Inc.* | 17-cv-00336-KEW | E.D. Okla. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Chieftain Royalty Co. v. SM Energy Co.* | 18-cv-01225-J | W.D. Okla. |
| *Chieftain Royalty Co. v. XTO Energy, Inc.* | 11-cv-00029-KEW | E.D. Okla. |
| *Christopher v. Residence Mut. Ins. Co.* | CIVDS1711860 | Cal. Super. Ct. |
| *City of Los Angeles v. Bankrate, Inc.* | 14-cv-81323 (DMM) | S.D. Fla. |
| *Cline v Sunoco, Inc.* | 17-cv-313-JAG | E.D. Okla. |
| *Cline v. TouchTunes Music Corp.* | 14-CIV-4744 (LAK) | S.D.N.Y. |
| *Cobell v. Salazar* | 96-cv-1285 (TFH) | D.D.C. |
| *Common Ground Healthcare Coop. v. United States* | 17-877C | F.C.C. |
| *Condo. at Northpointe Assoc. v. State Farm Fire & Cas. Co.* | 16-cv-01273 | N.D. Ohio |
| *Cooper Clark Found. v. Oxy USA* | 2017-CV-000003 | D. Kan. |
| *Corker v. Costco Wholesale Corp.* | 19-cv-00290-RSL | W.D. Wash. |
| *Corona v. Sony Pictures Entm't Inc.* | 14−CV−09600−RGK−E | C.D. Cal. |
| *Courtney v. Avid Tech., Inc.* | 13-cv-10686-WGY | D. Mass. |
| *Cowan v. Devon Energy Corp.* | 22-cv-00220-JAR | E.D. Okla. |
| *DC 16 v. Sutter Health* | RG15753647 | Cal. Super. Ct. |
| *D'Amario v. Univ. of Tampa* | 20-cv-03744 | S.D.N.Y. |
| *Dahy v. FedEx Ground Package Sys., Inc.* | GD-17-015638 | C.P. Pa. |
| *Dargoltz v. Fashion Mkting & Merch. Grp.* | 2021-009781-CA-01 | Fla. Cir. Ct. |
| *DASA Inv., Inc. v. EnerVest Operating LLC* | 18-cv-00083-SPS | E.D. Okla. |
| *Davis v. Carfax, Inc.* | CJ-04-1316L | D. Okla. |
| *Davis v. State Farm Ins.* | 19-cv-466 | W.D. Ky. |
| *DDL Oil & Gas, LLC v Tapstone Energy, LLC* | CJ-2019-17 | D. Okla. |
| *DeCapua v. Metro. Prop. and Cas. Ins. Co.* | 18-cv-00590 | D.R.I. |
| *DeFrees v. Kirkland and U.S. Aerospace, Inc.* | CV 11-04574 | C.D. Cal. |
| *Deitrich v. Enerfin Res. I Ltd. P'ship* | 20-cv-084-KEW | E.D. Okla. |
| *de Lacour v. Colgate-Palmolive Co.* | 16-cv-8364-KW | S.D.N.Y. |
| *Delkener v. Cottage Health Sys.* | 30-2016-847934 (CU) (NP) (CXC) | Cal. Super. Ct. |
| *DeMarco v. AvalonBay Communities, Inc.* | 15-cv-00628-JLL-JAD | D.N.J. |
| *Diel v Salal Credit Union* | 19-2-10266-7 KNT | Wash. Super. Ct. |
| *Dinsmore v. ONEOK Field Serv. Co., L.L.C.* | 22-cv-00073-GKF-CDL | N.D. Okla. |
| *Dinsmore v. Phillips 66 Co.* | 22-CV-44-JFH | E.D. Okla. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Djoric v. Justin Brands, Inc.* | BC574927 | Cal. Super. Ct. |
| *Doan v. CORT Furniture Rental Corp.* | 30-2017-00904345-CU-BT-CXC | Cal. Super. Ct. |
| *Doan v. State Farm Gen. Ins. Co.* | 1-08-cv-129264 | Cal. Super. Ct. |
| *Dobbins v. Bank of Am., N.A.* | 17-cv-00540 | D. Md. |
| *Doe v. California Dep't. of Pub. Health* | 20STCV32364 | Cal. Super. Ct. |
| *Donnenfield v. Petro, Inc.* | 17-cv-02310 | E.D.N.Y. |
| *Dougherty v. Barrett Bus. Serv., Inc.* | 17-2-05619-1 | Wash. Super. Ct. |
| *Doughtery v. QuickSIUS, LLC* | 15-cv-06432-JHS | E.D. Pa. |
| *Dover v. British Airways, PLC (UK)* | 12-cv-5567 | E.D.N.Y. |
| *Duarte v. US Metals Ref. Co.* | 17-cv-01624 | D.N.J. |
| *Dwyer v. Snap Fitness, Inc.* | 17-cv-00455-MRB | S.D. Ohio |
| *Dye v. Richmond Am. Homes of California, Inc.* | 30-2013-00649460-CU-CD-CXC | Cal. Super. Ct. |
| *Edwards v. Arkansas Cancer Clinic, P.A.* | 35CV-18-1171 | Ark. Cir. Ct. |
| *Edwards v. Hearst Commc'ns., Inc.* | 15-cv-9279 (AT) (JLC) | S.D.N.Y. |
| *Elec. Welfare Trust Fund v. United States* | 19-353C | Fed. Cl. |
| *Engquist v. City of Los Angeles* | BC591331 | Cal. Super. Ct. |
| *Expedia Hotel Taxes & Fees Litig.* | 05-2-02060-1 (SEA) | Wash. Super. Ct. |
| *Family Med. Pharmacy LLC v. Impax Labs., Inc.* | 17-cv-53 | S.D. Ala. |
| *Family Med. Pharmacy LLC v. Trxade Grp. Inc.* | 15-cv-00590-KD-B | S.D. Ala. |
| *Farmer v. Bank of Am.* | 11-cv-00935-OLG | W.D. Tex. |
| *Farris v. Carlinville Rehab and Health Care Ctr.* | 2019CH42 | Ill. Cir. Ct. |
| *Ferrando v. Zynga Inc.* | 22-cv-00214-RSL | W.D. Wash. |
| *Fielder v. Mechanics Bank* | BC721391 | Cal. Super. Ct. |
| *Finerman v. Marriott Ownership Resorts, Inc.* | 14-cv-1154-J-32MCR | M.D. Fla. |
| *Fishon v. Premier Nutrition Corp.* | 16-CV-06980-RS | N.D. Cal. |
| *Fitzgerald v. Lime Rock Res.* | CJ-2017-31 | Okla. Dist. Ct. |
| *Folweiler v. Am. Family Ins. Co.* | 16-2-16112-0 | Wash. Super. Ct. |
| *Fosbrink v. Area Wide Protective, Inc.* | 17-cv-1154-T-30CPT | M.D. Fla. |
| *Franklin v. Equity Residential* | 651360/2016 | N.Y. Super. Ct. |
| *Frederick v. ExamSoft Worldwide, Inc.* | 2021L001116 | Ill. Cir. Ct. |
| *Frost v. LG Elec. MobileComm U.S.A., Inc.* | 37-2012-00098755-CU-PL-CTL | Cal. Super. Ct. |
| *FTC v. AT&T Mobility, LLC* | 14CV4785 | N.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
| --- | --- | --- |
| *FTC v. Consumerinfo.com* | SACV05-801 AHS (MLGx) | C.D. Cal. |
| *FTC v. Fashion Nova, LLC* | C4759 | |
| *FTC v. Reckitt Benckiser Grp. PLC* | 19CV00028 | W.D. Va. |
| *Gehrich v. Howe* | 37-2018-00041295-CU-SL-CTL | N.D. Ga. |
| *Gifford v. Pets Global, Inc.* | 21-cv-02136-CJC-MRW | C.D. Cal. |
| *Gomez v. Mycles Cycles, Inc.* | 37-2015-00043311-CU-BT-CTL | Cal. Super. Ct. |
| *Gonzalez v. Banner Bank* | 20-cv-05151-SAB | E.D. Wash. |
| *Gonzalez-Tzita v. City of Los Angeles* | 16-cv-00194 | C.D. Cal. |
| *Graf v. Orbit Machining Co.* | 2020CH03280 | Ill. Cir. Ct. |
| *Gragg v. Orange Cab Co.* | C12-0576RSL | W.D. Wash. |
| *Graham v. Univ. of Michigan* | 21-cv-11168-VAR-EAS | E.D. Mich. |
| *Granados v. Cnty. of Los Angeles* | BC361470 | Cal. Super., Ct. |
| *Gudz v. Jemrock Realty Co., LLC* | 603555/2009 | N.Y. Super. Ct. |
| *Gupta v. Aeries Software, Inc.* | 20-cv-00995 | C.D. Cal. |
| *Gutierrez, Jr. v. Amplify Energy Corp.* | 21-cv-01628-DOC-JDE | C.D. Cal. |
| *Hahn v. Hanil Dev., Inc.* | BC468669 | Cal. Super. Ct. |
| *Haines v. Washington Trust Bank* | 20-2-10459-1 | Wash. Super. Ct. |
| *Halperin v. YouFit Health Clubs* | 18-cv-61722-WPD | S.D. Fla. |
| *Hanks v. Lincoln Life & Annuity Co. of New York* | 16-cv-6399 PKC | S.D.N.Y. |
| *Harrington v. Wells Fargo Bank NA* | 19-cv-11180-RGS | D. Mass. |
| *Harris v. Chevron U.S.A., Inc.* | 15-cv-00094 | W.D. Okla. |
| *Hartnett v. Washington Fed., Inc.* | 21-cv-00888-RSM-MLP | W.D. Wash. |
| *Hawker v. Pekin Ins. Co.* | 20-cv-00830 | S.D. Ohio |
| *Hay Creek Royalties, LLC v Mewbourne Oil Co.* | CIV-20-1199-F | W.D. Okla. |
| *Hay Creek Royalties, LLC v. Roan Res. LLC* | 19-cv-00177-CVE-JFJ | N.D. Okla. |
| *Health Republic Ins. Co. v. United States* | 16-259C | F.C.C. |
| *Heathcote v. SpinX Games Ltd.* | 20-cv-01310 | W.D. Wis. |
| *Henry Price Trust v Plains Mkting* | 19-cv-00390-RAW | E.D. Okla. |
| *Hernandez v. Experian Info. Sols., Inc.* | 05-cv-1070 (DOC) (MLGx) | C.D. Cal. |
| *Hernandez v. Wells Fargo Bank, N.A.* | 18-cv-07354 | N.D. Cal. |
| *Herrera v. Wells Fargo Bank, N.A.* | 18-cv-00332-JVS-MRW | C.D. Cal. |
| *Hicks v. State Farm Fire and Cas. Co.* | 14-cv-00053-HRW-MAS | E.D. Ky. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Hill v. Valli Produce of Evanston* | 2019CH13196 | Ill. Cir. Ct. |
| *Hill-Green v. Experian Info. Solutions, Inc.* | 19-cv-708-MHL | E.D. Va. |
| *Holmes v. LM Ins. Corp.* | 19-cv-00466 | M.D. Tenn. |
| *Holt v. Murphy Oil USA, Inc.* | 17-cv-911 | N.D. Fla. |
| *Hoog v. PetroQuest Energy, L.L.C.* | 16-cv-00463-KEW | E.D. Okla. |
| *Horton v. Cavalry Portfolio Serv., LLC and Krejci v. Cavalry Portfolio Serv., LLC* | 13-cv-0307-JAH-WVG and 16-cv-00211-JAH-WVG | C.D. Cal. |
| *Howell v. Checkr, Inc.* | 17-cv-4305 | N.D. Cal. |
| *Hoyte v. Gov't of D.C.* | 13-cv-00569 | D.D.C. |
| *Hufford v. Maxim  Inc.* | 19-cv-04452-ALC-RWL | S.D.N.Y. |
| *Huntzinger v. Suunto Oy* | 37-2018-27159 (CU) (BT) (CTL) | Cal. Super. Ct. |
| *In re Air Cargo Shipping Servs. Antitrust Litig.* | 06-md-1775 (JG) (VVP) | E.D.N.Y. |
| *In re Am. Express Fin. Advisors Sec. Litig.* | 04 Civ. 1773 (DAB) | S.D.N.Y. |
| *In re AMR Corp. (Am. Airlines Bankr.)* | 1-15463 (SHL) | S.D.N.Y. |
| *In re Arizona Theranos, Inc. Litig.* | 16-cv-2138-DGC | D. Ariz. |
| *In re Auction Houses Antitrust Litig.* | 00-648 (LAK) | S.D.N.Y. |
| *In re AXA Equitable Life Ins. Co. COI Litig.* | 16-cv-740 | S.D.N.Y. |
| *In re Banner Health Data Breach Litig.* | 16-cv-02696 | D. Ariz. |
| *In re Blue Cross Blue Shield Antitrust Litig.* | 13-CV-20000-RDP | N.D. Ala. |
| *In re Broiler Chicken Antitrust Litig.* | 16-cv-08637 | N.D. Ill. |
| *In re Chaparral Energy, Inc.* | 20-11947 (MFW) | D. Del. Bankr. |
| *In re Classmates.com* | C09-45RAJ | W.D. Wash. |
| *In re Equifax Inc. Customer Data Sec. Breach Litig.* | 17-md-2800-TWT | N.D. Ga. |
| *In re Farm-raised Salmon and Salmon Prod. Antitrust Litig.* | 19-cv-21551-CMA | S.D. Fla. |
| *In re General Motors LLC Ignition Switch Litig.* | 14-md-2543 | S.D.N.Y. |
| *In re Glob. Tel\*Link Corp. Litig.* | 14-CV-5275 | W.D. Ark. |
| *In re Guess Outlet Store Pricing* | JCCP No. 4833 | Cal. Super. Ct. |
| *In re Intuit Data Litig.* | 15-CV-1778-EJD | N.D. Cal. |
| *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig. (Indirect-Purchasers)* | 14-md-02542 | S.D.N.Y. |
| *In re LIBOR-Based Fin. Instruments Antitrust Litig.* | 11-md-2262 (NRB) | S.D.N.Y. |
| *In re MacBook Keyboard Litig.* | 18-cv-02813-EDJ | N.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
| --- | --- | --- |
| *In re Mercedes-Benz Emissions Litig.* | 16-cv-881 (KM) (ESK) | D.N.J. |
| *In re MyFord Touch Consumer Litig.* | 13-cv-3072 (EMC) | N.D. Cal. |
| *In re Navistar MaxxForce Engines Mktg., Sales Practices and Prods. Liab. Litig.* | 14-cv-10318 | N.D. Ill. |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* | 2179 (MDL) | E.D. La. |
| *In re Packaged Seafood Products Antitrust Litig. (DPP and EPP Class)* | 15-md-02670 | S.D. Cal. |
| *In re PHH Lender Placed Ins. Litig.* | 12-cv-1117 (NLH) (KMW) | D.N.J. |
| *In re Pokémon Go Nuisance Litig.* | 16-cv-04300 | N.D. Cal. |
| *In re Polyurethane Foam Antitrust Litig.* | 10-md-196 (JZ) | N.D. Ohio |
| *In re Pre-Filled Propane Tank Antitrust Litig.* | 14-md-02567 | W.D. Mo. |
| *In re Processed Egg Prod. Antitrust Litig.* | 08-MD-02002 | E.D. Pa. |
| *In re Resistors Antitrust Litig.* | 15-cv-03820-JD | N.D. Cal. |
| *In re Rockwell Med. Inc. Stockholder Derivative Litig.* | 19-cv-02373 | E.D. N.Y. |
| *In re Sheridan Holding Co. I, LLC* | 20-31884 (DRJ) | Bankr. S.D. Tex. |
| *In re Stryker Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.* | 13-md-2441 | D. Minn. |
| *In re: Subaru Battery Drain Prods. Liab. Litig.* | 20-cv-03095-JHR-MJS | D.N.J. |
| *In re The Engle Trust Fund* | 94-08273 CA 22 | Fla. 11th Cir. Ct. |
| *In re TransUnion Rental Screening Sol. Inc. FCRA Litig.* | 20-md-02933-JPB | N.D. Ga. |
| *In re Unit Petroleum Co.* | 20-32738 (DRJ) | Bankr. S.D. Tex. |
| *In re Volkswagen "Clean Diesel" Mktg., Sales Practice and Prods. Liab. Litig.* | MDL 2672 CRB | N.D. Cal. |
| *In re Washington Mut. Inc. Sec. Litig.* | 8-md-1919 (MJP) | W.D. Wash. |
| *In re Webloyalty.com, Inc. Mktg. & Sales Practices Litig.* | 06-11620-JLT | D. Mass. |
| *In re Wholesale Grocery Prod. Antitrust Litig.* | 9-md-2090 (ADM) (TNL) | D. Minn. |
| *In re Yahoo! Inc. Sec. Litig.* | 17-cv-373 | N.D. Cal. |
| *In the Matter of the Complaint of Dordellas Finance Corp.* | 22-cv-02153-DOC-JDE | C.D. Cal. |
| *James v. PacifiCorp.* | 20cv33885 | Or. Cir. Ct. |
| *Jerome v. Elan 99, LLC* | 2018-02263 | Tx. Dist. Ct. |
| *Jet Capital Master Fund L.P. v. HRG Grp. Inc.* | 21-cv-552-jdp | W.D. Wis. |

| CASE NAME | CASE NUMBER | LOCATION |
| --- | --- | --- |
| *Jeter v. Bullseye Energy, Inc.* | 12-cv-411 (TCK) (PJC) | N.D. Okla. |
| *Johnson v. Hyundai Capital Am.* | BC565263 | Cal. Super. Ct. |
| *Johnson v. MGM Holdings, Inc.* | 17-cv-00541 | W.D. Wash. |
| *Johnston v. Camino Natural Res., LLC* | 19-cv-02742-CMA-SKC | D. Colo. |
| *Jones v. USAA Gen. Indem. Co.* | D01CI200009724 | D. Neb. |
| *Jordan v. WP Co. LLC, d/b/a The Washington Post* | 20-cv-05218 | N.D. Cal. |
| *Kain v. Economist Newspaper NA, Inc.* | 21-cv-11807-MFL-CI | E.D. Mich. |
| *Kalra v. Mercedes-Benz Canada Inc.* | CV-16-550271-00CP | Ont. Super. Ct. |
| *Kennedy v. McCarthy* | 16-cv-2010-CSH | D. Conn. |
| *Kent v. R.L. Vallee, Inc.* | 617-6-15 | D. Vt. |
| *Kernen v. Casillas Operating LLC* | 18-cv-00107-JD | W.D. Okla. |
| *Khona v. Subaru of Am., Inc.* | 19-cv-09323-RMB-AMD | D.N.J. |
| *Kin-Yip Chun v. Fluor Corp.* | 8-cv-01338-X | N.D. Tex. |
| *King v. Bumble Trading Inc.* | 18-cv-06868-NC | N.D. Cal. |
| *Kissel v. Code 42 Software Inc.* | 15-1936 (JLS) (KES) | C.D. Cal. |
| *Kokoszki v. Playboy Enter., Inc.* | 19-cv-10302 | E.D. Mich. |
| *Komesar v. City of Pasadena* | BC 677632 | Cal. Super. Ct. |
| *Kommer v. Ford Motor Co.* | 17-cv-00296-LEK-DJS | N.D.N.Y. |
| *Konecky v Allstate* | CV-17-10-M-DWM | D. Mont. |
| *Krueger v. Ameriprise Fin., Inc.* | 11-cv-02781 (SRN/JSM) | D. Minn. |
| *Kunneman Props. LLC v. Marathon Oil Co.* | 17-cv-00456-GKF-JFJ | N.D. Okla. |
| *Lambert v. Navy Fed. Credit Union* | 19-cv-00103-LO-MSN | E.D. Va. |
| *Langan v. Johnson & Johnson Consumer Co.* | 13-cv-01471 | D. Conn. |
| *Langer v. CME Grp.* | 2014CH00829 | Ill. Cir. Ct. |
| *Larson v. Allina Health Sys.* | 17-cv-03835 | D. Minn. |
| *Lee v. Hertz Corp., Dollar Thrifty Auto. Grp. Inc.* | CGC-15-547520 | Cal. Super. Ct. |
| *Lee v. PetroQuest Energy, L.L.C.* | 16-cv-00516-KEW | E.D. Okla. |
| *Leonard v. John Hancock Life Ins. Co. of NY* | 18-CV-04994 | S.D.N.Y. |
| *Lerman v. Apple Inc* | 15-cv-07381 | E.D.N.Y. |
| *Levy v. Dolgencorp, LLC* | 20-cv-01037-TJC-MCR | M.D. Fla. |
| *Linderman v. City of Los Angeles* | BC650785 | Cal. Super. Ct. |
| *Linneman v. Vita-Mix Corp.* | 15-cv-748 | S.D. Ohio |

| CASE NAME | CASE NUMBER | LOCATION |
|-----------|-------------|----------|
| *Liotta v. Wolford Boutiques, LLC* | 16-cv-4634 | N.D. Ga. |
| *Lippert v. Baldwin* | 10-cv-4603 | N.D. Ill. |
| *Lloyd v. CVB Fin. Corp.* | 10-cv-6256 (CAS) | C.D. Cal. |
| *Loblaw Card Program* | Remediation Program | |
| *Loftus v. Outside Integrated Media, LLC* | 21-cv-11809-MAG-DRG | E.D. Mich. |
| *LSIMC, LLC v. Am. Gen. Life Ins. Co.* | 20-cv-11518 | C.D. Cal. |
| *Mabrey v. Autovest* | CGC-18-566617 | Cal. Super. Ct. |
| *Macias v. Los Angeles County Dep't. of Water and Power* | BC594049 | Cal. Super. Ct. |
| *Malin v. Ambry Gentics Corp.* | 30-2018-00994841-CU-SL-CXC | Cal. Super. Ct. |
| *Malone v. Western Digital Corp.* | 20-cv-03584-NC | N.D. Cal. |
| *Marical v. Boeing Employees' Credit Union* | 19-2-20417-6 | Wash. Super. Ct. |
| *Markson v. CRST Int'l, Inc.* | 17-cv-01261-SB (SPx) | C.D. Cal. |
| *Martin v. Lindenwood Univ.* | 20-cv-01128 | E.D. Mo. |
| *Martinelli v. Johnson & Johnson* | 15-cv-01733-MCE-DB | E.D. Cal. |
| *McCall v. Hercules Corp.* | 66810/2021 | N.Y. Super. Ct. |
| *McClellan v. Chase Home Fin.* | 12-cv-01331-JGB-JEM | C.D. Cal. |
| *McClintock v. Continuum Producer Serv., LLC* | 17-cv-00259-JAG | E.D. Okla. |
| *McClintock v Enter.* | 16-cv-00136-KEW | E.D. Okla. |
| *McGann v. Schnuck Markets Inc.* | 1322-CC00800 | Mo. Cir. Ct. |
| *McGraw v. Geico Gen. Ins. Co.* | 15-2-07829-7 | Wash. Super. Ct. |
| *McKibben v. McMahon* | 14-2171 (JGB) (SP) | C.D. Cal. |
| *McKnight Realty Co. v. Bravo Arkoma, LLC* | 17-CIV-308 (KEW); 20-CV-428-KEW | E.D. Okla. |
| *McNeill v. Citation Oil & Gas Corp.* | 17-CIV-121 (KEW) | E.D. Okla. |
| *McWilliams v. City of Long Beach* | BC361469 | Cal. Super. Ct. |
| *Messner v. Cambridge Real Estate Servs., Inc.* | 19CV28815 | Or. Cir. Ct. |
| *Metzner v. Quinnipiac Univ.* | 20-cv-00784 | D. Conn. |
| *Mid Is. LP v. Hess Corp.* | 650911/2013 | N.Y. Super. Ct. |
| *Miller Revocable Trust v DCP Operating Co., LP* | 18-cv-00199-JH | E.D. Okla. |
| *Miller v. Carrington Mortg. Serv., LLC* | 19-cv-00016-JDL | D. Me. |
| *Miller v. Guenther Mgmt. LLC* | 20-2-02604-32 | Wash. Super. Ct. |
| *Miller v. Mut. of Enumclaw Ins. Co.* | 19-2-12357-1 | Wash. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| Milstead v. Robert Fiance Beauty Sch., Inc. | CAM-L-328-16 | N.J. Super. Ct. |
| Mitchell v Red Bluff Res. Operating, LLC | CJ-2021-323 | D. Okla. |
| Moeller v. Advance Magazine Publishers, Inc. | 15-cv-05671 (NRB) | S.D.N.Y. |
| Mojica v. Securus Techs., Inc. | 14-cv-5258 | W.D. Ark. |
| Molnar v. 1-800-Flowers Retail, Inc. | BC 382828 | Cal. Super. Ct. |
| Monteleone v. Nutro Co. | 14-cv-00801-ES-JAD | D.N.J. |
| Moodie v. Maxim HealthCare Servs. | 14-cv-03471-FMO-AS | C.D. Cal. |
| Muir v. Early Warning Servs., LLC | 16-cv-00521 | D.N.J. |
| Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd. | 12-3824 | E.D. Pa. |
| Nasseri v. Cytosport, Inc. | BC439181 | Cal. Super. Ct. |
| Nesbitt v. Postmates, Inc. | CGC-15-547146 | Cal. Super. Ct. |
| New Orleans Tax Assessor Project | Tax Assessment Program | |
| NMPA Late Fee Program Grps. I-IVA | Remediation Program | CRB |
| Noble v. Northland | UWY-CV-16-6033559-S | Conn. Super. Ct. |
| Novoa v. GEO Grp., Inc. | 17-cv-02514-JGB-SHK | C.D. Cal. |
| Nozzi v. Housing Auth. of the City of Los Angeles | CV 07-0380 PA (FFMx) | C.D. Cal. |
| Nwabueza v. AT&T | C 09-01529 SI | N.D. Cal. |
| Nwauzor v. GEO Grp., Inc. | 17-cv-05769 | W.D. Wash. |
| O'Donnell v. Fin. Am. Life Ins. Co. | 14-cv-01071 | S.D. Ohio |
| Ostendorf v. Grange Indem. Ins. Co. | 19-cv-01147-ALM-KAJ | S.D. Ohio |
| Paetzold v. Metro. Dist. Comm'n | X07-HHD-CV-18-6090558-S | Conn. Super. Ct. |
| Palmer v City of Anaheim | 30-2017-00938646 | Cal. Super. Ct. |
| Parker v. Time Warner Entm't Co. | 239 F.R.D. 318 | E.D.N.Y. |
| Parker v. Universal Pictures | 16-cv-1193-CEM-DCI | M.D. Fla. |
| Patrick v. Volkswagen Grp. of Am., Inc. | 19-cv-01908-MCS-ADS | C.D. Cal. |
| Pauper Petroleum, LLC v. Kaiser-Francis Oil Co. | 19-cv-00514-JFH-JFJ | N.D. Okla. |
| Pemberton v. Nationstar Mortg. LLC | 14-cv-1024-BAS (MSB) | S.D. Cal. |
| Pena v. Wells Fargo Bank | 19-cv-04065-MMC-TSH | N.D. Cal. |
| Perchlak v. Liddle & Liddle | 19-cv-09461 | C.D. Cal. |
| Perez v. DIRECTV | 16-cv-01440-JLS-DFM | C.D. Cal. |
| Perez v. Wells Fargo Co. | 17-cv-00454-MMC | N.D. Cal. |
| Peterson v. Apria Healthcare Grp., Inc. | 19-cv-00856 | M.D. Fla. |

| CASE NAME | CASE NUMBER | LOCATION |
|-----------|-------------|----------|
| Petersen v. Costco Wholesale Co. | 13-cv-01292-DOC-JCG | C.D. Cal. |
| Phillips v. Hobby Lobby Stores, Inc. | 18-cv-01645-JHE; 16-cv-837-JHE | N.D. Ala. |
| Pierce v Anthem Ins. Cos. | 15-cv-00562-TWP-TAB | S. D. Ind. |
| Pine Manor Investors v. FPI Mgmt., Inc. | 34-2018-00237315 | Cal. Super. Ct. |
| Pinon v. Mercedes-Benz USA, LLC and Daimler AG | 18-cv-3984 | N.D. Ga. |
| Podawiltz v. Swisher Int'l, Inc. | 16CV27621 | Or. Cir. Ct. |
| Press v. J. Crew Grp., Inc. | 56-2018-512503 (CU) (BT) (VTA) | Cal. Super. Ct. |
| Pruitt v. Par-A-Dice Hotel Casino | 2020-L-000003 | Ill. Cir. Ct. |
| Purcell v. United Propane Gas, Inc. | 14-CI-729 | Ky. 2nd Cir. |
| Quezada v. ArbiterSports, LLC | 20-cv-05193-TJS | E.D. Pa. |
| Ramos v. Hopele of Fort Lauderdale, LLC | 17-cv-62100 | S.D. Fla. |
| Rayburn v. Santander Consumer USA, Inc. | 18-cv-1534 | S.D. Ohio |
| RCC, P.S. v. Unigard Ins. Co. | 19-2-17085-9 | Wash. Super. Ct. |
| Reed v. Scientific Games Corp. | 18-cv-00565-RSL | W.D. Wash. |
| Reirdon v. Cimarex Energy Co. | 16-CIV-113 (KEW) | E.D. Okla. |
| Reirdon v. XTO Energy Inc. | 16-cv-00087-KEW | E.D. Okla. |
| Rhea v. Apache Corp. | 14-cv-00433-JH | E.D. Okla. |
| Rice v. Burlington Res. Oil & Gas Co., LP | 20-cv-00431-GFK-FHM | N.D. Cal. |
| Rice v. Insync | 30-2014-00701147-CU-NP-CJC | Cal. Super. Ct. |
| Rice-Redding v. Nationwide Mut. Ins. Co. | 18-cv-01203 | N.D. Ga. |
| Rich v. EOS Fitness Brands, LLC | RIC1508918 | Cal. Super. Ct. |
| Rick Nelson Co. v. Sony Music Ent. | 18-cv-08791 | S.D.N.Y. |
| Rocchio v. Rutgers, The State Univ. of New Jersey | MID-L-003039-20 | N.J. Super. Ct. |
| Rollo v. Universal Prop. & Cas. Ins. | 2018-027720-CA-01 | Fla. Cir. Ct. |
| Rosado v. Barry Univ., Inc. | 20-cv-21813 | S.D. Fla. |
| Rosenberg, D.C., P.A. v. Geico Gen. Ins. Co. | 19-cv-61422-CANNON/Hunt | S.D. Fla. |
| Roth v. GEICO Gen. Ins. Co. and Joffe v. GEICO Indem. Co. | 16-cv-62942 | S.D. Fla. |
| Rounds v. FourPoint Energy, LLC | CIV-20-00052-P | W.D. Wis. |
| Routh v. SEIU Healthcare 775NW | 14-cv-00200 | W.D. Wash. |
| Ruppel v. Consumers Union of United States, Inc. | 16-cv-2444 (KMK) | S.D.N.Y. |
| Russett v. Nw. Mut. Life Ins. Co., | 19-cv-07414-KMK | S.D.N.Y. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Saccoccio v. JP Morgan Chase* | 13-cv-21107 | S.D. Fla. |
| *Salgado v. UPMC Jameson* | 30008-18 | C.P. Pa. |
| *Sanders v. Glob. Research Acquisition, LLC* | 18-cv-00555 | M.D. Fla. |
| *Sandoval v. Merlex Stucco Inc.* | BC619322 | Cal. Super. Ct. |
| *Santa Barbara Channelkeeper v. State Water Res. Control Bd.* | 37-2020-00005776 | Cal. Super. Ct. |
| *Schlesinger v. Ticketmaster* | BC304565 | Cal. Super. Ct. |
| *Schulte v. Liberty Ins. Corp.* | 19-cv-00026 | S.D. Ohio |
| *Schwartz v. Intimacy in New York, LLC* | 13-cv-5735 (PGG) | S.D.N.Y. |
| *Seegert v. P.F. Chang's China Bistro* | 37-2017-00016131-CU-MC-CTL | Cal. Super. Ct. |
| *Sholopa v. Turkish Airlines, Inc.* | 20-cv-03294-ALC | S.D.N.Y. |
| *Shumacher v. Bank of Hope* | 18STCV02066 | Cal. Super. Ct. |
| *Sidibe v. Sutter Health* | 12-cv-4854-LB | N.D. Cal. |
| *Smith v. Pulte Home Corp.* | 30-2015-00808112-CU-CD-CXC | Cal. Super. Ct. |
| *Soderstrom v. MSP Crossroads Apartments LLC* | 16-cv-233 (ADM) (KMM) | D. Minn. |
| *Solorio v. Fresno Comty. Hosp.* | 15CECG03165 | Cal. Super. Ct. |
| *Solberg v. Victim Serv., Inc.* | 14-cv-05266-VC | N.D. Cal. |
| *Sonner v. Schwabe N. Am., Inc.* | 15-cv-01358 VAP (SPx) | C.D. Cal. |
| *Speed v. JMA Energy Co., LLC* | CJ-2016-59 | Okla. Dist. Ct. |
| *Staats v. City of Palo Alto* | 2015-1-CV-284956 | Cal. Super. Ct. |
| *Stanley v. Capri Training Ctr.* | ESX-L-1182-16 | N.J. Super. Ct. |
| *Staunton Lodge No. 177 v. Pekin Ins. Co.* | 2020-L-001297 | Ill. Cir. Ct. |
| *Steele v. PayPal, Inc.* | 05-CV-01720 (ILG) (VVP) | E.D.N.Y. |
| *Stewart v. Early Warning Serv., LLC* | 18-cv-3277 | D.N.J. |
| *Stier v. PEMCO Mut. Ins. Co.* | 18-2-08153-5 | Wash. Super. Ct. |
| *Stillman v. Clermont York Assocs. LLC* | 603557/09E | N.Y. Super. Ct. |
| *Stout v. The GEO Grp., Inc.* | 37-2019-00000650-CU-CR-CTL | Cal. Super. Ct. |
| *Strano v. Kiplinger Washington Editors, Inc.* | 21-cv-12987-TLL-PTM | E.D. Mich. |
| *Strickland v. Carrington Mortg. Servs., LLC* | 16-cv-25237 | S.D. Fla. |
| *Strohm v. Missouri Am. Water Co.* | 16AE-CV01252 | Mo. Cir. Ct. |
| *Stuart v. State Farm Fire & Cas. Co.* | 14-cv-04001 | W.D. Ark. |
| *Sullivan v Wenner Media LLC* | 16–cv–00960–JTN–ESC | W.D. Mich. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Swafford v. Ovintiv Exploration Inc.* | 21-cv-00210-SPS | E.D. Okla. |
| *Swetz v. GSK Consumer Health, Inc.* | 20-cv-04731 | S.D.N.Y. |
| *Swinton v. SquareTrade, Inc.* | 18-CV-00144-SMR-SBJ | S.D. Iowa |
| *Sylvain v. Longwood Auto Acquisitions, Inc.* | 2021-CA-009091-O | Fla. Cir. Ct. |
| *Terrell v. Costco Wholesale Corp.* | 16-2-19140-1-SEA | Wash. Super. Ct. |
| *Timberlake v. Fusione, Inc.* | BC 616783 | Cal. Super. Ct. |
| *Tkachyk v. Traveler's Ins.* | 16-28-m (DLC) | D. Mont. |
| *T-Mobile Remediation Program* | Remediation Program | |
| *Townes, IV v. Trans Union, LLC* | 04-1488-JJF | D. Del. |
| *Townsend v. G2 Secure Staff* | 18STCV04429 | Cal. Super. Ct. |
| *Trepte v. Bionaire, Inc.* | BC540110 | Cal. Super. Ct. |
| *Tyus v. Gen. Info. Sols. LLC* | 2017CP3201389 | S.C. C.P. |
| *Udeen v. Subaru of Am., Inc.* | 10-md-196 (JZ) | D.N.J. |
| *Underwood v. NGL Energy Partners LP* | 21-CV-0135-CVE-SH | N.D. Okla. |
| *United States v. City of Austin* | 14-cv-00533-LY | W.D. Tex. |
| *United States v. City of Chicago* | 16-c-1969 | N.D. Ill. |
| *United States v. Greyhound Lines, Inc.* | 16-67-RGA | D. Del. |
| *USC Student Health Ctr. Settlement* | 18-cv-04258-SVW | C.D. Cal. |
| *Van Jacobs v. New World Van Lines, Inc.* | 2019CH02619 | Ill. Cir. Ct. |
| *Vasquez v. Libre by Nexus, Inc.* | 17-cv-00755-CW | N.D. Cal. |
| *Vassalle v. Midland Funding LLC* | 11-cv-00096 | N.D. Ohio |
| *Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York* | 19-cv-06004 | S.D.N.Y. |
| *Viesse v. Saar's Inc.* | 17-2-7783-6 (SEA) | Wash. Super. Ct. |
| *Wahl v. Yahoo! Inc.* | 17-cv-2745 (BLF) | N.D. Cal. |
| *Wake Energy, LLC v. EOG Res., Inc.* | 20-cv-00183-ABJ | D. Wyo. |
| *Watson v. Checkr, Inc.* | 19-CV-03396-EMC | N.D. Cal. |
| *Weimar v. Geico Advantage Ins. Co.* | 19-cv-2698-JTF-tmp | W.D. Tenn. |
| *Weiner v. Ocwen Fin. Corp.* | 14-cv-02597-MCE-DB | E.D. Cal. |
| *Welsh v. Prop. and Cas. Ins. Co. of Hartford* | 20-2-05157-3 | Wash. Super. Ct. |
| *White Family Minerals, LLC v. EOG Res., Inc.* | 19-cv-409-KEW | E.D. Okla. |
| *Williams v. Children's Mercy Hosp.* | 1816-CV 17350 | Mo. Cir. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Williams v. Weyerhaeuser Co.* | 995787 | Cal. Super. Ct. |
| *Wills v. Starbucks Corp.* | 17-cv-03654 | N.D. Ga. |
| *Wilner v. Leopold & Assoc,* | 15-cv-09374-PED | S.D.N.Y. |
| *Wilson v. Santander Consumer USA, Inc.* | 20-cv-00152 | E.D. Ark. |
| *Wornicki v. Brokerpriceopinion.com, Inc.* | 13-cv-03258 (PAB) (KMT) | D. Colo. |
| *Wright v. Lyft, Inc.* | 14-cv-00421-BJR | W.D. Wash. |
| *Wright v. Southern New Hampshire Univ.* | 20-cv-00609 | D.N.H. |
| *Yamagata v. Reckitt Benckiser, LLC* | 17-cv-03529-CV | N.D. Cal. |
| *Yates v. Checkers* | 17-cv-09219 | N.D. Ill. |
| *Yeske v. Macoupin Energy* | 2017-L-24 | Ill. Cir. Ct. |
| *Z.B. v. Birmingham Cmty. Charter High Sch.* | 19STCV17092 | Cal. Super. Ct. |

# EXHIBIT B

Dear Home Seller,

<p style="text-align:center;color:blue;font-weight:bold;">

**If you sold a home,
and paid a commission to a real estate broker or agent,
a class action lawsuit may affect your rights.**

*A federal court ordered this Notice. It is not an ad from a lawyer.
Your legal rights may be affected whether you act or do not act.  Please read this notice carefully.*

*Para una notificación en español, visite www.RealEstateCommissionLitigation.com/Moehrl*

This notice is to inform you of your rights related to the class action lawsuit *Moehrl et al. v. National Association of Realtors, et al., No. 1:19-cv-01610* ("*Moehrl v. NAR*" or "*Moehrl*"), pending in the United States District Court for the Northern District of Illinois (the "Court"). Notice of related settlements will be provided separately and is mentioned here.

### WHAT IS THIS LAWSUIT ABOUT?

The lawsuit alleges the existence of an anticompetitive agreement that resulted in home sellers paying inflated commissions to real estate brokers or agents in violation of antitrust law. Defendants deny the allegations, and the Court has not decided whether Defendants did anything wrong.

### WHO IS INCLUDED IN THE LITIGATION DAMAGES CLASS?

Plaintiffs are a class of home sellers certified by the Court. To be part of the "Litigation Damages Class" in the ongoing *Moehrl* lawsuit, you need to have (1) sold a home between March 6, 2015, and December 31, 2020; (2) used a real estate agent or broker affiliated with a "Corporate Defendant" to sell the home; (3) paid a commission to your agent or broker; and (4) listed the home for sale on what is referred to as a "Covered MLS."

Defendants include The National Association of Realtors ("NAR") and several large real estate brokerage firms referred to here as "Corporate Defendants". The Corporate Defendants are Keller Williams; RE/MAX; Anywhere Real Estate f/k/a Realogy (which is affiliated with brands including Better Homes and Gardens, Century 21, Coldwell Banker, Corcoran, ERA Real Estate, and Sotheby's) (collectively "Anywhere"); and HomeServices of America and certain of its subsidiaries (which are together affiliated with brands including Berkshire Hathaway HomeServices, BHHS, Ebby Halliday, Edina Realty, First Webber, Kentwood,  Long & Foster, Lovejoy, Midwest Preferred, Preferred Carolinas, Real Living, RLRE, ReeceNichols, Roy H. Long Realty) (collectively, "HomeServices").

The Covered MLSs and jurisdictions are:

- Bright MLS (Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, Virginia, West Virginia)
- Carolina/Canopy MLS (North Carolina, South Carolina)
- Triangle MLS (North Carolina)
- Stellar MLS (Florida)
- Miami MLS (Florida)
- Florida Gulf Coast MLS (Florida)
- Realcomp II (Michigan)
- Metro MLS (Wisconsin)
- Northstar MLS (Minnesota, Wisconsin)
- Yes MLS/MLS Now (Ohio, West Virginia)
- Columbus Realtors MLS (Ohio)
- Wasatch Front MLS/Utah Real Estate (Utah)
- REcolorado/Metrolist (Colorado)

- Pikes Peak MLS (Colorado)
- GLVAR MLS (Nevada)
- SABOR (Texas)
- ACTRIS/ABOR (Texas)
- HAR MLS (Texas)
- NTREIS (Texas)
- ARMLS (Arizona)

### HAVE THERE BEEN ANY SETTLEMENTS?

Plaintiffs have entered into proposed Nationwide Settlements for $138.5 million and other benefits with two of the Defendants—Anywhere and RE/MAX (the "Settling Defendants"). If finally approved, the settlements will resolve claims against Anywhere and RE/MAX raised in this lawsuit as well as in at least two other lawsuits: *Burnett, et al. v. National Association of Realtors, et al.*, Case No. 19-CV-00332-SRB (Western District of Missouri); and *Nosalek v. MLS Property Information Network, Inc. ("MLS PIN"), et al.*, Case No. 1:20-cv-12244-PBS (District of Massachusetts). The *Moehrl v. NAR* case will proceed in federal court in Illinois against any defendants who do not settle.

### WHO IS INCLUDED IN THE SETTLEMENT CLASS?

The Settlement Class is broader than the *Moehrl* Litigation Damages Class. It includes home sellers who are members of the *Moehrl* Litigation Damages Class, as well as many other home sellers. You may be eligible to benefit from the Nationwide Settlements, if you: (1) sold a home during the "Eligible Date Range"; (2) listed the home that was sold on a multiple listing service ("MLS") anywhere in the United States; and (3) paid a commission to any real estate brokerage in connection with the sale of the home. The Settlement Agreements include a Release of Claims. Notice regarding the Nationwide Settlements and the claims being released are being provided separately. Additional information, including the "Eligible Date Range" is available at: www.RealEstateCommissionLitigation.com.

### WHAT ARE YOUR RIGHTS AND OPTIONS?

You may have rights under both the ongoing *Moehrl* lawsuit and the Nationwide Settlements.

**<u>*Moehrl* Lawsuit – Litigation Damages Class</u>:**

There is no money available now in the ongoing *Moehrl* lawsuit against the Non-Settling Defendants, and no guarantee there will be. However, your legal rights are affected, and you have a choice to make now.

**<u>Nationwide Settlements – Settlement Class</u>:**

Your legal rights are also affected under the proposed Settlements with RE/MAX and Anywhere, and you have a choice to make now.

**<u>Rights and Options</u>:**

- Do Nothing. (Stay in the ***Moehrl lawsuit***. Await the outcome. Give up certain rights.)
  <u>Note: To get a payment in the **Settlements**, you must submit a claim by May 9, 2025</u>.
- Ask to be Excluded from Both the Settlements and the *Moehrl* Litigation Damages Class.
- Ask to be Excluded from the Settlements – But Not the *Moehrl* Litigation Damages Class.
- Ask to be Excluded from the *Moehrl* Litigation damages Class – But Not the Settlements.

To learn more about your rights, options, and benefits, go to www.RealEstateCommissionLitigation.com/Moehrl.

To exclude yourself (opt out) of the *Moehrl* Litigation Damages Class, you must send an "Exclusion Request" in the form of a letter sent by mail, including (a) your name and address, and (b) a statement that you want to be excluded from the Litigation Damages Class certified in *Moehrl et al. v. National Association of Realtors, et al.* You may also get an Exclusion Request form at www.RealEstateCommissionLitigation.com/Moehrl. To be accepted, your Exclusion Request letter must be postmarked by **April 13, 2024**, and addressed to:

<div align="center">

Moehrl et al. v. The National Association of Realtors et al.

c/o JND Legal Administration – Exclusion Dpt.

PO Box 91486

Seattle, WA 98111

</div>

To object to or exclude yourself (opt-out) from one or both of the settlements with Settling Defendants, you must do so by **April 13, 2024**. The deadline to submit a claim for a payment in the Nationwide Settlements is **May 9, 2025**. To learn more about the Nationwide Settlements, how to file a claim, and rights you would be releasing, go to www.RealEstateCommissionLitigation.com.

## THE TRIAL

As long as the *Moehrl* case isn't resolved by a settlement or otherwise, Plaintiffs will have to prove their claims at a trial to recover from any Defendants who do not have approved settlements. The Court appointed the law firms Hagens Berman Sobol Shapiro LLP, Cohen Milstein Sellers & Toll PLLC, and Susman Godfrey L.L.P. to represent members of the *Moehrl* Litigation Classes as Class Counsel. You do not need to attend the trial. Class Counsel will present the case for Plaintiffs and the Litigation Classes, and lawyers for the Defendants will present on their behalf. You or your own lawyer are welcome to come at your own expense.

## HOW DO YOU GET MORE INFORMATION?

This notice is only a summary. To learn more, visit www.RealEstateCommissionLitigation.com/Moehrl, call 888-995-0207, email info@RealEstateCommissionLitigation.com, or write to *Moehrl v. National Association of Realtors*, c/o JND Legal Administration, PO Box 91479, Seattle, WA 98111.

Unsubscribe

# EXHIBIT C

RESIDENTIAL REAL ESTATE BROKER
COMMISSIONS ANTITRUST SETTLEMENTS

**NOTICE OF PROPOSED SETTLEMENTS**

**If you sold a home, and paid a commission to a real estate broker or agent, a class action lawsuit may affect your rights.**

*A federal court ordered this Notice.*
*It is not an ad from a lawyer.*

*Your legal rights may be affected whether you act or do not act. Please read this notice carefully.*

*Para una notificación in español, visite*
*www.RealEstateCommissionLitigation.com/Moehrl*

This notice is to inform you of your rights related to the class action lawsuit *Moehrl et al. v. National Association of Realtors, et al., No. 1:19-cv-01610* ("*Moehrl v. NAR*" or "*Moehrl*"), pending in the United States District Court for the Northern District of Illinois (the "Court"). Notice of related settlements will be provided separately and is mentioned here.

*Moehrl et al. v. The National Association of Realtors et al.*
c/o JND Legal Administration
PO Box 91486
Seattle WA 98111

«Barcode»
Postal Service: Please do not mark barcode

«Full_Name»
«CF_CARE_OF_NAME»
«CF_ADDRESS_1»
«CF_ADDRESS_2»
«CF_CITY», «CF_STATE» «CF_ZIP»
«CF_COUNTRY»

## What is this Lawsuit About?

The lawsuit alleges the existence of an anticompetitive agreement that resulted in home sellers paying inflated commissions to real estate brokers or agents in violation of antitrust law. Defendants deny the allegations, and the Court has not decided whether Defendants did anything wrong.

## Who is Included in the Litigation Damages Class?

Plaintiffs are a class of home sellers certified by the Court. To be part of the "Litigation Damages Class" in the ongoing *Moehrl* lawsuit, you need to have (1) sold a home between March 6, 2015, and December 31, 2020; (2) used a real estate agent or broker affiliated with a "Corporate Defendant" to sell the home; (3) paid a commission to your agent or broker; and (4) listed the home for sale on what is referred to as a "Covered MLS."

Defendants include The National Association of Realtors ("NAR") and several large real estate brokerage firms referred to here as "Corporate Defendants". The Corporate Defendants are Keller Williams; RE/MAX; Anywhere Real Estate f/k/a Realogy (which is affiliated with brands including Better Homes and Gardens, Century 21, Coldwell Banker, Corcoran, ERA Real Estate, and Sotheby's) (collectively "Anywhere"); and HomeServices of America and certain of its subsidiaries (which are together affiliated with brands including Berkshire Hathaway HomeServices, BHHS, Ebby Halliday, Edina Realty, First Webber, Kentwood, Long & Foster, Lovejoy, Midwest Preferred, Preferred Carolinas, Real Living, RLRE, ReeceNichols, Roy H. Long Realty) (collectively, "HomeServices").

The Covered MLSs and jurisdictions are:

- Bright MLS (Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, Virginia, West Virginia)
- Carolina/Canopy MLS (North Carolina, South Carolina)
- Triangle MLS (North Carolina)
- Stellar MLS (Florida)
- Miami MLS (Florida)
- Florida Gulf Coast MLS (Florida)
- Realcomp II (Michigan)
- Metro MLS (Wisconsin)
- Northstar MLS (Minnesota, Wisconsin)

- Columbus Realtors MLS (Ohio)
- Wasatch Front MLS/Utah Real Estate (Utah)
- REcolorado/Metrolist (Colorado)
- Pikes Peak MLS (Colorado)
- GLVAR MLS (Nevada)
- SABOR (Texas)
- ACTRIS/ABOR (Texas)
- HAR MLS (Texas)
- NTREIS (Texas)
- ARMLS (Arizona)

## Have there been any Settlements?

Plaintiffs have entered into proposed Nationwide Settlements for $138.5 million and other benefits with two of the Defendants—Anywhere and RE/MAX (the "Settling Defendants"). If finally approved, the settlements will resolve claims against Anywhere and RE/MAX raised in this lawsuit as well as in at least two other lawsuits: *Burnett, et al. v. National Association of Realtors, et al.*, Case No. 19-CV-003322-SRB (Western District of Missouri); and *Nosalek v. MLS Property Information Network, Inc. ("MLS PIN"), et al.*, Case No. 1:20-cv-12244-PBS (District of Massachusetts). The *Moehrl v. NAR* case will proceed in federal court in Illinois against any defendants who do not settle.

## Who is Included in the Settlement Class?

The Settlement Class is broader than the *Moehrl* Litigation Damages Class. It includes home sellers who are members of the *Moehrl* Litigation Damages Class, as well as many other home sellers. You may be eligible to benefit from the Nationwide Settlements, if you: (1) sold a home during the "Eligible Date Range"; (2) listed the home that was sold on a multiple listing service ("MLS") anywhere in the United States; and (3) paid a commission to any real estate brokerage in connection with the sale of the home. The Settlement Agreements include a Release of Claims. Notice regarding the Nationwide Settlements and the claims being released is being provided separately. Additional information, including the "Eligible Date Range" is available at: www.RealEstateCommissionLitigation.com.

## What are your Rights and Options?

You may have rights under both the ongoing *Moehrl* lawsuit and the Nationwide Settlements.

**_Moehrl_ Lawsuit – Litigation Damages Class:**
There is no money available now in the ongoing *Moehrl* lawsuit against the Non-Settling Defendants, and no guarantee there will be. However, your legal rights are affected, and you have a choice to make now.

**Nationwide Settlements – Settlement Class:**
Your legal rights are also affected under the proposed Settlements with RE/MAX and Anywhere, and you have a choice to make now.

**Rights and Options:**
- Do Nothing. (Stay in the *Moehrl lawsuit*. Await the outcome. Give up certain rights.)
  Note: To get a payment in the *Settlements*, you must submit a claim by May 9, 2025.
- Ask to be Excluded from Both the Settlements and the *Moehrl* Litigation Damages Class.
- Ask to be Excluded from the Settlements – But Not the *Moehrl* Litigation Damages Class.
- Ask to be Excluded from the *Moehrl* Litigation damages Class – But Not the Settlements.

To learn more about your rights, options, and benefits, go to www.RealEstateCommissionLitigation.com/Moehrl.

To exclude yourself (opt out) of the *Moehrl* Litigation Damages Class, you must send an "Exclusion Request" in the form of a letter sent by mail, including (a) your name and address, and (b) a statement that you want to be excluded from the Litigation Damages Class certified in *Moehrl et al. v. National Association of Realtors, et al*. You may also get an Exclusion Request form at www.RealEstateCommissionLitigation.com/Moehrl. To be accepted, your Exclusion Request letter must be postmarked by **April 13, 2024**, and addressed to:

Moehrl et al. v. The National Association of Realtors et al.
c/o JND Legal Administration – Exclusion Dpt.
PO Box 91486
Seattle, WA 98111

To object to or exclude yourself (opt-out) from one or both of the settlements with Settling Defendants, you must do so by **April 13, 2024**. The deadline to submit a claim for a payment in the Nationwide Settlements is **May 9, 2025**. To learn more about the Nationwide Settlements, how to file a claim, and rights you would be releasing, go to www.RealEstateCommissionLitigation.com.

## The Trial

As long as the *Moehrl* case isn't resolved by a settlement or otherwise, Plaintiffs will have to prove their claims at a trial to recover from any Defendants who do not have approved settlements. The Court appointed the law firms Hagens Berman Sobol Shapiro LLP, Cohen Milstein Sellers & Toll PLLC, and Susman Godfrey L.L.P. to represent members of the *Moehrl* Litigation Classes as Class Counsel. You do not need to attend the trial. Class Counsel will present the case for Plaintiffs and the Litigation Classes, and lawyers for the Defendants will present on their behalf. You or your own lawyer are welcome to come at your own expense.

## How Do You Get More Information?

This notice is only a summary. To learn more, visit www.RealEstateCommissionLitigation.com/Moehrl, call 888-995-0207, email info@RealEstateCommissionLitigation.com, or write to *Moehrl v. National Association of Realtors*, c/o JND Legal Administration, PO Box 91479, Seattle, WA 98111.



# EXHIBIT D

**RESIDENTIAL REAL ESTATE BROKER COMMISSIONS ANTITRUST LITIGATION**

*Moehrl v. The National Association of Realtors (NAR)*, **1:19-cv-01610 (N.D. Ill.)**

# If you sold a home,
# and paid a commission to a real estate broker or agent,
# then a class action may affect your rights.

*A federal court ordered this Notice. It is not an ad from a lawyer.*
*Your legal rights may be affected whether you act or do not act.*

*Para una notificación en español, visite www.RealEstateCommissionLitigation.com/Moehrl.*

- A federal court has certified a class action alleging the existence of an anticompetitive agreement that resulted in home sellers paying inflated commissions to real estate brokers or agents in violation of antitrust law. The case is referred to as *"Moehrl v. National Association of Realtors"* or *"Moehrl,"* and it includes people who sold homes in many areas across the United States.

- This Notice is to inform you of your rights related to the ongoing lawsuit. Proposed settlements have been reached with two of the five defendants. Notice of those settlements has been published separately and is also referenced here.

- To be a member of the "Litigation Damages Class" in the *Moehrl* lawsuit you must have (1) sold a home between March 6, 2015, and December 31, 2020; (2) used a real estate agent or broker affiliated with a "Corporate Defendant" to sell the home; (3) paid a commission to your agent or broker; and (4) listed the home for sale on what is referred to as a "Covered Multiple Listing Service" or "Covered MLS" in certain jurisdictions.

| What Are the Covered MLSs and States/Jurisdictions? | |
|---|---|
| **Covered MLS** | **States/Jurisdictions** |
| Bright MLS | Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, Virginia, West Virginia |
| Carolina/Canopy MLS | North Carolina, South Carolina |
| Triangle MLS | North Carolina |
| Stellar MLS | Florida |
| Miami MLS | Florida |

**Questions? Visit www.RealEstateCommissionLitigation.com/Moehrl or call 888-995-0207**

| | |
|---|---|
| Florida Gulf Coast MLS | Florida |
| Metro MLS | Wisconsin |
| Yes MLS/MLS Now | Ohio, West Virginia |
| Columbus Realtors MLS | Ohio |
| Northstar MLS | Minnesota, Wisconsin |
| Wasatch Front MLS/Utah Real Estate | Utah |
| REcolorado/Metrolist | Colorado |
| Pikes Peak MLS | Colorado |
| GLVAR MLS | Nevada |
| SABOR | Texas |
| ACTRIS/ABOR | Texas |
| HAR MLS | Texas |
| NTREIS | Texas |
| ARMLS | Arizona |
| Realcomp II | Michigan |

- The *Moehrl* Litigation Damages Class is also limited to people who used a real estate broker or agent (or "listing agent") to help sell their home. And that agent or broker needs to have been affiliated with one of these Corporate Defendants. Below is a list of some of the brands associated with each Defendant.

| Relevant Brands | |
|---|---|
| **Defendant** | **Example Brands** |
| Keller Williams | Keller Williams |
| RE/MAX | RE/MAX |
| Anywhere Real Estate f/k/a Realogy | • Better Homes and Gardens<br>• Century 21<br>• Coldwell Banker<br>• Corcoran<br>• ERA Real Estate<br>• Sotheby's |

| HomeServices of America, Long & Foster, HSF Affiliates, and BHH Affiliates | • Berkshire Hathaway HomeServices<br>• BHHS<br>• Ebby Halliday<br>• Edina Realty<br>• First Webber<br>• Kentwood<br>• Long & Foster<br>• Lovejoy<br>• Midwest Preferred<br>• Preferred Carolinas<br>• Real Living / RLRE<br>• ReeceNichols<br>• Roy H. Long Realty |
|---|---|

- Two of the Defendants—Anywhere and RE/MAX (the "Settling Defendants")—have entered into settlement agreements that would recover $138.5 million and other benefits for members of a nationwide class of home sellers. This "Settlement Class" is broader than the *Moehrl* Litigation Damages Class; it includes home sellers who are members of the *Moehrl* Litigation Damages Class, along with many other home sellers, as described in Section [XX]. A federal court in Missouri has preliminarily approved the settlements, and attorneys are working to provide notice and seek final approval. You may have rights under both the ongoing *Moehrl* litigation (as a member of the Litigation Damages Class) and the Nationwide Settlements (as a member of the Settlement Class). You may object to or exclude yourself (opt-out) from one or both of the settlements with Settling Defendants by **April 13, 2024.** The deadline to file a claim for a payment in the Nationwide Settlements is **May 9, 2025**. To learn more about the Nationwide Settlements, how to submit a claim, and the rights you would be giving up, go to www.RealEstateCommissionLitigation.com. Further notice of the Nationwide Settlements is being published separately.

- The *Moehrl* lawsuit, which is the subject of this Notice, is proceeding in federal court in Illinois against the remaining Defendants—the National Association of Realtors, Keller Williams, and HomeServices of America and certain of its subsidiaries (the "Non-Settling Defendants"). Defendants deny the allegations, and the Illinois Court in the *Moehrl* case has not decided whether Defendants did anything wrong.

- There is no money available now in the *Moehrl* lawsuit against the Non-Settling Defendants, and no guarantee there will be. However, your legal rights are affected, and you have a choice to make now:

| YOUR LEGAL RIGHTS AND OPTIONS IN THE *MOEHRL* LAWSUIT | |
|---|---|
| **DO NOTHING** | **Stay in *Moehrl* lawsuit. Await the outcome. Give up certain rights.** <br><br> By doing nothing, you keep the possibility of getting money or benefits that may come from a trial or future settlement in the ***Moehrl*** lawsuit. But you give up any rights to sue Defendants separately about the same legal claims in this lawsuit. <br><br> ** Note:  To get a payment in the ***Settlements*** with RE/MAX and Anywhere, you must submit a claim by May 9, 2025. |
| **ASK TO BE EXCLUDED FROM BOTH THE SETTLEMENTS AND *MOEHRL* LITIGATION DAMAGES CLASS** <br><br> **BY APRIL 13,2024** | **Get out of *Moehrl* lawsuit. Get no benefits from it. Keep rights.** <br><br> If you ask to be excluded from both the ***Settlements*** and the ***Moehrl*** Litigation Damages Class, and money or benefits are later awarded, you won't share in those. But you keep any rights to sue Defendants separately about the same legal claims in this lawsuit. If you exclude yourself, you may hire your own lawyer, at your own cost, to appear in court for you. |
| **ASK TO BE EXCLUDED FROM THE SETTLEMENTS – BUT NOT THE *MOEHRL* LITIGATION DAMAGES CLASS** <br><br> **BY APRIL 13,2024** | Defendants RE/MAX and Anywhere <br> If you ask to be excluded from one or both of the Nationwide Settlements with RE/MAX and Anywhere, you won't share in any money or benefits from these settlements. But if the settlements are approved, you will keep any rights to sue these defendants individually about the same legal claims in this lawsuit. If the settlements aren't approved, you'll remain a member of the *Moehrl* Litigation Damages Class, including for purposes of claims against RE/MAX and Anywhere, as well as the other defendants. <br><br> Defendants NAR, HomeServices, Keller Williams <br> By not excluding yourself from the Litigation Damages Class, you keep the possibility of getting money or benefits that may come from a trial or a future settlement with these defendants. But you give up any rights to sue these defendants separately about the same legal claims in this lawsuit. |

| | |
|---|---|
| **ASK TO BE EXCLUDED FROM THE *Moehrl* LITIGATION DAMAGES CLASS – BUT NOT THE SETTLEMENTS**<br><br>**BY APRIL 13, 2024** | <u>Defendants RE/MAX and Anywhere</u><br>By not asking to exclude yourself from the Nationwide Settlements with RE/MAX and Anywhere, you may be eligible to receive money or benefits from those settlements. But you give up any rights to sue those defendants separately about the same legal claims in this lawsuit.<br><br><u>Defendants NAR, HomeServices, Keller Williams</u><br>If you ask to be excluded from the Litigation Damages Class, and money or benefits are later awarded against these defendants, you won't share in them. But you keep any rights to sue these defendants separately about the same legal claims in this lawsuit. If you exclude yourself, you may hire your own lawyer, at your own cost, to appear in court for you. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice. To ask to be excluded, you must act before **April 13, 2024.**

- The Plaintiffs must prove their claims at trial against any Defendants who have not settled. If additional money or benefits are obtained from Non-Settling Defendants, you will be notified about how to ask for a share.

## BASIC INFORMATION

| **1.** | **What is this Notice about?** |
|---|---|

This Notice has been posted for the benefit of potential members of the *Moehrl* Litigation Damages Class. If you are uncertain about whether you are a member of the Litigation Damages Class, you may contact the Settlement Administrator at 888-995-0207.

This Notice explains that the Court has allowed, or "certified," a class action lawsuit that may affect you. You have legal rights and options that you may exercise before the Court holds a trial. The trial is to decide whether the claims being made against Defendants, on your behalf, are correct.

Judge Andrea Wood of the United States District Court for the Northern District of Illinois is overseeing the class action. The lawsuit is known as *Moehrl et al. v. National Association of Realtors, et al.*, No. 1:19-cv-01610 (*"Moehrl v. NAR"* or *"Moehrl"*).

| **2.** | **What is this lawsuit about?** |
|---|---|

The lawsuit claims that Defendants created and implemented rules that require home sellers to pay commissions to the broker or agent representing the buyer and that caused home sellers to pay total

5

**Questions? Visit www.RealEstateCommissionLitigation.com/Moehrl or call 888-995-0207**

commissions at inflated rates. They also allege that Defendants enforced these rules through anticompetitive and unlawful practices.

The lawsuit claims that these rules are anticompetitive and unfair, and that they violate antitrust laws. Specifically, the lawsuit alleges violation of the Sherman Act (a federal antitrust statute found at 15 U.S.C. § 1 *et seq.*). You can read Plaintiffs' Consolidated Amended Class Action Complaint at www.RealEstateCommissionLitigation.com.

## 3.      What is a class action and who is involved?

In a class action, one or more people called Class Representatives (in this case, Christopher Moehrl, Michael Cole, Steve Darnell, Jack Ramey, Daniel Umpa, and Jane Ruh) sue on behalf of other people who have similar claims. The people together are a "Class" or "Class Members."

The home sellers who sued Defendants—and all the Class Members like them—are called Plaintiffs. The companies they sued (in this case, the National Association of Realtors, RE/MAX, Keller Williams, Anywhere, HomeServices of America and certain HomeServices subsidiaries) are called Defendants. One court resolves the issues for everyone in the Class—except for those who choose to exclude themselves from the Class.

## 4.      Why is this lawsuit a class action?

The Court decided that this lawsuit can be a class action and move toward a trial because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. Specifically, the Court found that: (1) there are numerous people who fit the class definitions; (2) there are legal questions and facts that are common to each of them; (3) the Plaintiffs' claims are typical of the claims of the rest of the Litigation Classes; (4) Plaintiffs, and the lawyers representing the Litigation Classes, will fairly and adequately represent class members' interests; (5) the common legal questions and facts are more important than questions that affect only individuals; and (6) this class action will be more efficient than having individual lawsuits.

## 5.      How do Defendants answer?

Defendants dispute Plaintiffs' allegations and deny liability to Plaintiffs and the Litigation Classes. You can read Defendants' Answers to the Consolidated Amended Class Action Complaint at www.RealEstateCommissionLitigation.com. Settling Defendants (Anywhere and RE/MAX) have entered into settlement agreements. The Defendants who have not entered into settlement agreements will argue their defenses at a trial. (*See* "The Trial" below on page [XX].)

## 6.      Has the Court decided who is right?

The Court in *Moehrl* has not decided whether Plaintiffs or Defendants are correct. By establishing the Litigation Classes and issuing this Notice, the Court is not suggesting that Plaintiffs will win

6

or lose this case. Plaintiffs and the Litigation Classes must still prove their claims at a trial. (*See* "The Trial" below on page [XX].)

## 7. What are Plaintiffs asking for?

Plaintiffs are asking the Court to rule that the challenged rules created and implemented by Defendants are anticompetitive, and that they violate federal antitrust law. Plaintiffs are also asking the Court to require the Defendants to reimburse home sellers for the amount they overpaid in commissions to real estate agents or brokers involved with their transaction.

## WHO IS IN THE LITIGATION CLASSES?

You need to decide whether you are affected by this lawsuit.

## 8. Am I part of the Litigation Classes?

If you meet the following criteria, then you may qualify to be a member of the Litigation Damages Class in the *Moehrl* lawsuit:

**(1) sold a home between March 6, 2015 and December 31, 2020;**

**(2) used a real estate agent or broker affiliated with a "Corporate Defendant" to sell the home;**

**(3) paid a commission to your agent or broker; and**

**(4) listed the home for sale on what is referred to as a "Covered MLS."**

In this lawsuit, the Court certified a Litigation Damages Class and an Injunctive Relief Class, as defined below. (Together, the "Litigation Classes") You can only opt out of the Litigation Damages Class.

**Litigation Damages Class**:

Home sellers who paid a commission between March 6, 2015, and December 31, 2020, to a brokerage affiliated with a Corporate Defendant in connection with the sale of residential real estate listed on a Covered MLS and in a covered jurisdiction.

**Litigation Injunctive Relief Class**:

Current and future owners of residential real estate in the covered jurisdictions who are presently listing or will in the future list their home for sale on a Covered MLS.

Excluded from the Litigation Classes are (i) sales of residential real estate for a price below $56,500, (ii) sales of residential real estate at auction, and (iii) employees, officers, and directors

of defendants, the presiding Judge in this case, and the Judge's staff.

| **9.** | **I am still not sure if I am included.** |
|---|---|

If you are still not sure whether you are included, you can get free help at www.RealEstateCommissionLitigation.com, or by calling or writing to the lawyers in this case, at the phone number or address listed in item No. <mark>[XX]</mark> below.

## YOUR RIGHTS AND OPTIONS

You have to decide whether to stay in the Litigation Damages Class or ask to be excluded before the trial, and you have to decide this now.

| **10.** | **What happens if I do nothing at all?** |
|---|---|

### *Moehrl* litigation against the Non-Settling Defendants:
You don't have to do anything now if you want to keep the possibility of getting money or benefits from the ongoing *Moehrl* lawsuit against the Non-Settling Defendants (NAR, Keller Williams, and HomeServices of America and certain of its subsidiaries). By doing nothing, you are staying in the Litigation Damages Class. If you stay in the Litigation Damages Class and the Plaintiffs obtain money or benefits, either as a result of the trial or a settlement, you will be notified about how to apply for a share (or how to ask to be excluded from any settlement).

Keep in mind that if you do nothing now, regardless of whether Plaintiffs win or lose at trial, you will not be able to sue, or continue to sue, Defendants—as a part of any other lawsuit—about the same legal claims that are the subject of this lawsuit. This means that if you do nothing, you will be legally bound by all the orders the Court issues and judgments the Court makes in the *Moehrl* class action lawsuit.

### Nationwide Settlements:
\*\*To secure rights you may have to a payment under the proposed settlements with the Settling Defendants (Anywhere and RE/MAX), *you may need to take action soon*. Separate notice and information about your right to submit a claim by **May 9, 2025**, are available at www.RealEstateCommissionLitigation.com.

| **11.** | **Why would I ask to be excluded?** |
|---|---|

If you already have your own lawsuit against Defendants concerning the rules at issue or wish to initiate your own lawsuit, then you need to ask to be excluded from the Litigation Damages Class. If you exclude yourself from the Litigation Damages Class—which also means to remove yourself from the Litigation Damages Class, and is sometimes called "opting-out"—you won't get any money or benefits from this lawsuit even if Plaintiffs prevail as a result of the trial or from any settlement between Non-Settling Defendants and the Plaintiffs. However, you may then be able to sue or continue to sue Non-Settling Defendants for the issues in this lawsuit. If you exclude

yourself, you will not be legally bound by the Court's judgments in this class action.

If you start your own lawsuit against Non-Settling Defendants after you exclude yourself, you'll have to hire and pay your own lawyer for that lawsuit, and you'll have to prove your claims. If you do exclude yourself so you can start or continue your own lawsuit against Non-Settling Defendants, you should talk to your own lawyer soon, because your claims may be subject to a statute of limitations.

| 12. | How do I ask the Court to exclude me from the Litigation Damages Class? |
| --- | --- |

***Moehrl* litigation against Defendants who have not settled**:
To ask to be excluded from the *Moehrl* Litigation Damages Class, you must send an "Exclusion Request" in the form of a letter sent by mail, stating that you want to be excluded from the *Moehrl et al. v. National Association of Realtors, et al.* Litigation Damages Class. You must include your name and address, and sign the letter. You may also get an Exclusion Request form at www.RealEstateCommissionLitigation.com/Moehrl.

Your Exclusion Request letter must be postmarked by **April 13, 2024,** and addressed to

<div align="center">

*Moehrl v. The National Association of Realtors et al.*
c/o JND Legal Administration – Exclusion Dpt.
PO Box 91486
Seattle, WA 98111

</div>

**Nationwide Settlements:**
If you wish to object to or exclude yourself (opt-out) from one or both of the Nationwide Settlements, you must do so by **April 13, 2024**. Go to ww.RealEstateCommissionLitigation.com to learn more.

<div align="center">

## THE LAWYERS REPRESENTING YOU

</div>

| 13. | Do I have a lawyer in this case? |
| --- | --- |

The Court decided that the following law firms are qualified to represent you and all Members of the Litigation Classes in the *Moehrl* litigation:

- Hagens Berman Sobol Shapiro LLP
- Cohen Milstein Sellers & Toll PLLC
- Susman Godfrey LLP

These lawyers are called "Class Counsel." You will not be charged for these lawyers. They are experienced in handling similar cases against other entities. More information about the law firms, their practices, and their lawyers' experience are available on their law firm websites at: www.hbsslaw.com, www.cohenmilstein.com, and www.susmangodfrey.com.

9

**Questions? Visit www.RealEstateCommissionLitigation.com/Moehrl or call 888-995-0207**

| **14.** | **Should I get my own lawyer?** |
|---|---|

You do not need to hire your own lawyer because Class Counsel is working on your behalf. But, if you want your own lawyer, you may need to pay that lawyer. For example, you can ask him or her to appear in Court for you if you want someone other than Class Counsel to speak for you.

| **15.** | **How will the lawyers be paid?** |
|---|---|

If Class Counsel get money or benefits for the Litigation Classes in the *Moehrl* litigation, they may ask the Court for fees and expenses. You won't have to pay these fees and expenses. If the Court grants Class Counsels' request, the fees and expenses would be either deducted from any money obtained for the Litigation Classes or paid separately by Defendants.

Regarding the proposed Nationwide Settlements with Settling Defendants (Anywhere and RE/MAX), Settlement Class Counsel will ask the Court for fees and expenses. More information about this can be found at www.RealEstateCommissionLitigation.com.

## THE TRIAL

The Court will schedule a trial to decide who is right in this case.

| **16.** | **How and when will the Court or Jury decide who is right?** |
|---|---|

As long as the case isn't resolved by a settlement or otherwise, Class Counsel will have to prove Plaintiffs' claims at a trial. During the trial, a Jury or the Judge will hear all of the evidence to help them reach a decision about whether the Plaintiffs or Defendants are right about the claims in the lawsuit. There is no guarantee that Plaintiffs will win, or that they will get any money or benefits for the Litigation Classes.

| **17.** | **Do I have to come to the trial?** |
|---|---|

You do not need to attend the trial. Class Counsel will present the case for Plaintiffs, and Defendants who have not settled will present the defenses. You or your own lawyer are welcome to come at your own expense.

| **18.** | **Will I get money after the trial?** |
|---|---|

If Plaintiffs obtain money or benefits as a result of the trial or a settlement, you will be notified about how to participate. We do not know how long this will take.

**ARE THERE OTHER REAL ESTATE COMMISSION LAWSUITS OR SETTLEMENTS?**

If you sold a home on a non-Covered MLS, or with a broker not affiliated with a Defendant in this case (*Moehrl*), you may have rights in connection with other lawsuits or settlements that encompass other MLSs and real estate brokerage firms.

| 19. | Have there been any Settlements? |
|-----|----------------------------------|

You may be eligible to receive a recovery from Nationwide Settlements with Settling Defendants (Anywhere and RE/MAX) if you: (1) sold a home during the "Eligible Date Range"; (2) listed the home that was sold on a multiple listing service ("MLS") anywhere in the United States; and (3) paid a commission to any real estate brokerage in connection with the sale of the home. The deadline to submit a claim for a payment in the Nationwide Settlements is **May 9, 2025**.

Participation in the Nationwide Settlements requires a Release of Claims. This Release may affect your rights, and may carry obligations, in the future. You may view terms of the release, and an explanation of the "Eligible Date Range," at www.RealEstateCommissionLitigation.com.

| 20. | Are there other similar cases? |
|-----|--------------------------------|

There are other class actions involving similar claims that are related to the proposed Nationwide Settlements with Settling Defendants (Anywhere and RE/MAX): *Burnett, et al. v. The National Association of Realtors, et al*., Case No. 19-CV-00332-SRB, pending in the Western District of Missouri; and *Nosalek v. MLS Property Information Network, Inc. ("MLS PIN"), et al*., Case No. 20-CV-12244-PBS, pending in the district of Massachusetts; among others. The settlements will settle the claims against Settling Defendants that were brought in this case and those cases, but they will not settle the claims against other Defendants in the cases.

In the *Burnett* case, a jury returned a verdict for $1.78 billion against certain of the Non-Settling Defendants—the National Association of Realtors, Keller Williams, and HomeServices of America and certain of its subsidiaries. The *Burnett* case covers certain home sales on the following MLSs in Missouri: Heartland, MARIS, Columbia Board of Realtors MLS, and Southern Missouri MLS.

## GETTING MORE INFORMATION

| 21. | Are more details available? |
|-----|-----------------------------|

You can find more information about the ongoing *Moehrl* lawsuit that is the subject of this Notice at www.RealEstateCommissionLitigation.com. There you will find the Consolidated Amended Class Action Complaint that Plaintiffs submitted, Defendants' Answers to the Complaint, the Court's Order Certifying the Class, and additional information about the status of the case.

At the same website, you can also find information about the Nationwide Settlements with Settling Defendants.

If you have additional questions about this case (which is called the *Moehrl* lawsuit) or the Nationwide Settlements, you may contact Class Counsel (listed above) or the Claims Notice

11

**Questions? Visit www.RealEstateCommissionLitigation.com/Moehrl or call 888-995-0207**

Administrator by calling 888-995-0207, sending an email to info@RealEstateCommissionLitigation.com, or writing to Moehrl v. National Association of Realtors, c/o JND Legal Administration, PO Box 91479, Seattle, WA 98111.